1

                    UNITED STATES DISTRICT COURT
                    SOUTHERN DISTRICT OF NEW YORK

In re:                              :
                                          Docket #18cv12355
 SHATSKY, et al.,                   :

                    Plaintiffs,     :

  - against -                       :

 THE PALESTINIAN LIBERATION         :
 ORGANIZATION, et al.,                    New York, New York
                                    : November 6, 2020
                    Defendants.
------------------------------------:

                       PROCEEDINGS BEFORE
                THE HONORABLE MARY KAY VYSKOCIL,
          UNITED STATES DISTRICT COURT MAGISTRATE JUDGE

APPEARANCES:

For Plaintiffs:          COHEN & GRESSER, LLP
                         BY:
                         800 Third Avenue
                         New York, New York 10022

For Defendants:          SQUIRE PATTON BOGGS LLP
                         BY:  MITCHELL BERGER, ESQ.
                         1211 Avenue of the Americas
                         New York, New York 10036

Transcription Service: Carole Ludwig, *Transcription Services*
                       155 East Fourth Street #3C
                       New York, New York 10009
                       Phone:  (212) 420-0771
                       Email:  Transcription420@aol.com

Proceedings recorded by electronic sound recording;
Transcript produced by transcription service.

<u>**INDEX**</u>

<u>**E X A M I N A T I O N S**</u>

| <u>**Witness**</u> | <u>**Direct**</u> | <u>**Cross**</u> | <u>**Re-<br>Direct**</u> | <u>**Re-<br>Cross**</u> | <u>**Court**</u> |
|---|---|---|---|---|---|
| None | | | | | |

<u>**E X H I B I T S**</u>

| <u>**Exhibit<br>Number**</u> | <u>**Description**</u> | <u>**ID**</u> | <u>**In**</u> | <u>**Voir<br>Dire**</u> |
|---|---|---|---|---|
| None | | | | |

1

```
 1                        PROCEEDING                    3

 2            THE COURT:  I'm sorry, go ahead.

 3            ATTORNEY FOR PLAINTIFF:   That's okay.  We filed

 4   a protective action here, this action, so that we'd have –

 5            THE COURT:   Let me just stop you right there.

 6   What does that mean, a protective action, and how's that

 7   not abusive of the judicial process?

 8            ATTORNEY FOR PLAINTIFF:   So the reason it's not

 9   abusive of the judicial process is we filed the case in

10   the event that the D.C. action was dismissed for lack of

11   personal jurisdiction, recognizing the plaintiffs, or that

12   the defendants had raised a personal jurisdiction defense

13   and recognizing the possibility that the statute of

14   limitations could expire and we could find ourselves in a,

15   you know, unable to establish personal jurisdiction after

16   the dismissal of the proceeding in D.C., we filed a

17   protective action, this action in front of this court and

18   stated so that in the event that the D.C. proceedings were

19   dismissed for a lack of personal jurisdiction, we would

20   have a timely action to fall back on.  It was never the

21   intention --

22            THE COURT:   I understand what you're saying,

23   but, frankly, I mean, you know, the court is not really

24   here to provide guarantees for your strategic decisions.

25   But we are where we are.  I mean I don't understand why
```

PROCEEDING                                                    4

you could not have, you know, the jurisdiction you're

asserting here, just like D.C., is not dependent on any

fact-based connection to the jurisdiction the way you

would normally be arguing in terms of a personal

jurisdiction analysis.  It's predicated upon a federal,

federally enacted statute.

        So if you can get jurisdiction here, you

could've gotten jurisdiction there once the statute was

passed.  Now, I understand the statute postdates the

filing of your lawsuit, but did you move for leave to

amend?

        ATTORNEY FOR PLAINTIFF:  In front of the D.C.,

in front of the D.C. district court, we did not move for,

we did not for leave.  If the question is did we move for

a leave to amend to assert the PSJVTA as a ground for

personal jurisdiction, no, we didn't because the statute

wasn't enacted until after the D.C. district court had

already granted summary judgment.

        THE COURT:  But you were then in the district

court, I mean in the circuit court.  Did you ask there?

        ATTORNEY FOR PLAINTIFF:  I don't believe a

request was made in front of the – I mean I know the

questions around the PSJVTA were raised in front of the

D.C. circuit, and it was actually the defendants' position

```
 1                          PROCEEDING                    5

 2   that if there were going to be issues around the

 3   application of the PSJVTA, that those questions should be

 4   litigated before this court in this action rather than in

 5   the D.C. action.

 6           THE COURT:   I did see that.  I can see that is

 7   in correspondence that the defendant sent to the clerk of

 8   the circuit court.  So let me ask you, is your claim here,

 9   does your complaint reference the PSJVTA?

10           ATTORNEY FOR PLAINTIFF:   It does not, although

11   the PSJVTA, as far as we're concerned here, is not the

12   substantive cause of action, but here leaves a vehicle for

13   establishing personal jurisdiction over the defendants,

14   and there are plenty --

15           THE COURT:   Right, I understand that.

16           ATTORNEY FOR PLAINTIFF:   Oh, sure.  Okay.

17           THE COURT:   I understand that, but in the first

18   instance a complaint on its face has to plead a basis for

19   jurisdiction, and you're telling me you've only pled the

20   same statute that the D.C. circuit found was not

21   sufficient to confer jurisdiction, correct?

22           ATTORNEY FOR PLAINTIFF:   Well, no, actually the

23   D.C. circuit never found that the PSJVTA was insufficient

24   to establish jurisdiction.

25           THE COURT:   Oh, it found that the original
```

```
 1                         PROCEEDING                    6
 2  statute, which is all you've pled here, was insufficient.
 3             ATTORNEY FOR PLAINTIFF:   That's correct, Your
 4  Honor, so what we're --
 5             THE COURT:   Right.
 6             ATTORNEY FOR PLAINTIFF:   -- what we're - but
 7  there are sort of two points, if I may, Your Honor.  I
 8  don't mean to talk over the Court.
 9             THE COURT:   It's all right.  I understand the
10  difficulty with telephonic hearings.
11             ATTORNEY FOR PLAINTIFF:   I'm so sorry.  So the
12  point is that there are two aspects of jurisdiction here.
13  One is personal jurisdiction; the other is subject matter
14  jurisdiction.  Of course, there's no question that subject
15  matter jurisdiction must be alleged in the complaint, and
16  we've done that.  Personal jurisdiction, on the other
17  hand, is not required to be pled because that is a, and
18  courts have said it, because that's a waivable defense.  I
19  mean I suppose it's possible, I don't think it's likely,
20  but it's possible that the defendants could decide that
21  they don't want to assert personal jurisdiction as a
22  defense and that they didn't want to do that, the case
23  could proceed.
24             So, you know, courts have held that personal
25  jurisdiction need not, you know, the basis for personal
```

1

2   jurisdiction and facts relating to personal jurisdiction

3   need not be pled in the complaint.  We can amend our

4   complaint to do that if the Court thinks we need to, but I

5   think the law is that we don't have to do that.

6          THE COURT:   All right, I understand your

7   position.  Let me just ask you one more question though,

8   do you specifically – I'm trying to pull up your original

9   complaint.  I don't have it right in front of me.  Do you

10  specifically reference the anti-terrorism statute, the

11  earlier statute?

12         ATTORNEY FOR DEFENDANT:   Oh, yes.  We

13  specifically reference the anti-terrorism act.  The

14  claims, the complaint includes claims asserted under

15  the anti-terrorism act.  And the original complaint —

16  yes, that's right, Your Honor, and actually the

17  complaint also includes allegations of conduct that if the

18  conduct had occurred after the trigger dates, in the

19  promoting security and justice for victims of terrorism

20  act, would be a basis for concluding that there had been a

21  consent.

22          So the only question really is, and it's kind of

23  astonishing that in their correspondence the defendants

24  haven't addressed it because everybody knows that that's

25  the issue here, are they still doing it?  Are they still

1
2   making these pay-to-slay payments to individuals who've
3   been convicted of crimes relating to terrorist acts that
4   killed Americans or who died in terrorist acts that
5   resulted in the death of Americans?  Or, you know, have
6   they engaged in other conduct that, you know, in the
7   United States that under the statute would trigger a
8   consent to personal jurisdiction?
9           THE COURT:   Right, I understand that, and
10  that's why you want to take jurisdictional discovery,
11  right?
12          ATTORNEY FOR PLAINTIFF:   Precisely, we want – I
13  mean, look, we think we can make an excellent start toward
14  establishing personal jurisdiction.  Maybe we can even use
15  public source information to prove it, but if the
16  defendants are denying that they've engaged in conduct
17  that would trigger jurisdiction under the statute, we
18  would like an opportunity to conduct targeted discovery so
19  that we can prove it to the Court.
20          THE COURT:   All right, so the question I have
21  for you is, given that you did reference the earlier
22  statute, isn't it for the sake of good order better for
23  your complaint to now reference the statute on which you
24  are trying to rely?
25          ATTORNEY FOR PLAINTIFF:   If the Court thinks

```
 1                          PROCEEDING                      9
 2   it's necessary, we don't actually think it's necessary to
 3   do, but if the Court believes it would be helpful or
 4   appropriate for us to do that, we could certainly amend
 5   our complaint to include allegations relating to the
 6   current statute.
 7            THE COURT:   All right, anything else you want
 8   to tell me at this point?
 9            ATTORNEY FOR PLAINTIFF:   I suppose the only
10   thing I would add is that if we are going to, you know,
11   we are going to conduct the jurisdictional discovery
12   which we've requested, we think the sensible thing to do
13   would be to have that discovery take place in, you know,
14   in a sort of targeted way in a defined period of time
15   before the briefing of motions to dismiss just so that the
16   issues can be addressed one time instead of more than one
17   time.
18            THE COURT:   I understand.  How long are you
19   telling me you need?
20            ATTORNEY FOR PLAINTIFF:   So we could actually
21   issue discovery requests relating to, you know, relating
22   to the issues that the PSJVTA raises next week, and we
23   could serve interrogatories, we could serve document
24   requests, and maybe we could serve some deposition notices
25   promptly.  The question will be how long it takes the
```

1
2   defendants to comply with these requests.  As I understand
3   it, you know, there is actually with respect to these pay-
4   to-slay payment there actually is, you know, there
5   actually is sort of a well-defined process that the
6   Palestinian Authority can establish.  They maintain files
7   and records on individuals who engage in these acts of
8   terrorism and who are entitled to receive these, you know,
9   are entitled to receive these payments.  So the records
10  exist, they've been produced in other litigation by these
11  defendants, so there's actually no reason that the
12  documents couldn't be produced to us relatively promptly
13  if we get reasonable cooperation.

14          So ordinarily in a situation like this, I say we
15  probably need, you know, 60 or 90 days to get the
16  documents and do the discovery, but a lot of it is going
17  to depend on how much, you know, how much cooperation we
18  get from the defendants.  So we also have the added
19  complication of COVID-19 here.

20          So my sense is, you know, we would probably want
21  to have, because I assume as well that the documents are
22  going to be foreign language documents, we would probably
23  want to have the documents and then have 60 days after we
24  receive the documents to get them translated, digest them,
25  understand our position, and – oh, I'm sorry.

```
 1                        PROCEEDING                    11
 2            THE COURT:   I'm going to interrupt you.  You
 3   are talking about asking me to put a 2018 case which is an
 4   old case in the Southern District, reportable by me as a
 5   stale old case, you're asking me basically to put it on
 6   hold for another six months while you conduct discovery?
 7   I mean why didn't you serve this discovery over the
 8   summer?
 9            ATTORNEY FOR PLAINTIFF:   Your Honor, we're not
10   entitled to serve discovery in this case until there's
11   been a 26(f) conference and waiting until the Court
12   otherwise authorizes.  The defendants asked for time to
13   respond, we gave it to them as a courtesy, there hasn't
14   been a 26(f) conference, and we've --
15            THE COURT:   Why not --
16            ATTORNEY FOR PLAINTIFF:   -- made our request
17   for jurisdiction discovery.
18            THE COURT:   Why not?  Discovery under the
19   federal rules is self-effectuating.  You do not need to
20   come to the court to ask to have a 26(f) conference.
21   You're supposed to do that as responsible professionals on
22   your own, and you're supposed to exchange initial
23   disclosures promptly.  So you're basically telling me
24   nothing has happened in this case.  Is that correct?
25            ATTORNEY FOR PLAINTIFF:   Your Honor, as I said,
```

```
 1                        PROCEEDING                  12
 2  we, you know, when the D.C. circuit ruled and after a
 3  determination was made with respect to whether there would
 4  be a petition for cert in that case, we reached out to the
 5  defendants, we made service.  You know, the defendants
 6  asked for some time to respond which we granted them, and
 7  as soon as they responded, as soon as they put their
 8  letter in, we respond, you know, we put our request in for
 9  discovery the same day.
10          THE COURT:   And by response do you mean respond
11  to the complaint or that hasn't happened yet?
12          ATTORNEY FOR PLAINTIFF:   No, no, they put their
13  response to the complaint, I mean they filed a letter with
14  the court which Your Honor has, and it's on for a
15  conference today, asking for permission to make a motion
16  to dismiss.
17          THE COURT:   Okay.  All right, let me hear from
18  the defendants.
19          MR. MITCHELL BERGER:   Good morning, Your Honor,
20  it's Mitchell Berger.  If I may, I'd like to address your
21  summary of past proceedings which I think are going to be
22  relevant and then ask, respond to your question about what
23  we've been doing and then talk about what we would like to
24  do going forward, and all of this requires some context,
25  which is the original --
```

1                         PROCEEDING                    13

2              THE COURT:   Counsel.  So excuse me.  Let me

3    just say please bear in mind I have read both opinions out

4    of D.C., I've read all the letters.  I am fairly familiar,

5    and we've been at this for almost a half hour.  I

6    appreciate you haven't spoken yet, but I don't want a

7    total rehash of what you've said in your letters and of

8    what happened in D.C.  All right?

9              MR. BERGER:   Totally understand, Your Honor.

10   You had asked us to correct the Court if we had any

11   disagreement about the past history of this case, and one

12   of those has to do with Your Honor's summary about whether

13   there was a request for jurisdiction discovery in D.C.,

14   and on that point I simply wanted to let the Court know

15   that didn't happen in D.C.  Next point is there have been

16   three of these lawsuits of which this is only one.

17             THE COURT:   Counsel, slow down so I can ask you

18   questions if I have them.  All right?  Isn't it a fact

19   that that there was no jurisdiction discovery in D.C.

20   because your clients, I don't know whether it was you or,

21   who was representing the defendants in D.C. as well, but

22   wasn't there a letter to the court in D.C. saying, I think

23   it was to the circuit court and maybe even to the clerk of

24   the court, saying that the jurisdictional discovery under

25   this new PSJVTA, which the circuit had suggested might

```
 1                        PROCEEDING              14

 2   provide an avenue for jurisdiction, you represented to the

 3   court in a letter dated December 30, 2019 that that

 4   discovery might more appropriately happen, the best

 5   vehicle for plaintiffs to advance their PSJVTA arguments

 6   are the two pending duplicative actions in New York, one

 7   of which is this case.  Correct?

 8            MR. BERGER:   All but the last part.  The other

 9   duplicative case was pending in D.C., and it was not clear

10   to us, Your Honor, which one the plaintiffs would chose to

11   pursue.  So they had two cases in front of Judge Leon and

12   they had this case, as Your Honor pointed out, that was

13   originally before Judge Woods.  What happened, and to

14   answer Your Honor's question about what we've been doing,

15   is, first, we waited until, and they waited until their

16   time to seek certiorari from the D.C. circuit opinion

17   expired, and that was July.  When the plaintiffs asked to

18   then lift the stay in this case and have voluntarily

19   dismissed the other case in D.C., we conferred and we said

20   if you're pursuing the PSJVTA, we would like you to amend

21   your complaint so we will know what your allegations are

22   and we can take it forward from there.  And their position

23   at that time, which is contrary to their offer to Your

24   Honor today, was we don't need to amend the complaint.

25   So, therefore, we had to proceed by way of, in essence,
```

1

2  shadow boxing.  That is what we raised in our premotion

3  conference letter.

4          Thirdly --

5          THE COURT:   Counsel, slow down.  But you did

6  not answer my question, did you not represent to the D.C.

7  circuit that whatever jurisdictional discovery was going

8  to happen with respect to whether the PSJVTA created

9  jurisdiction over your clients could better happen either

10 in the second case in front of Judge Leon, which you're

11 now telling me was dismissed voluntarily, or in this case

12 in front of me?  Didn't you tell that to the D.C. circuit

13 in order to have discovery not happen there?

14         MR. BERGER:   No, I respectfully disagree, Your

15 Honor.  I don't think that's what we said, and it relates

16 to my point about the broader context and what's going on

17 in two parallel cases in this district.  What we said was

18 --

19         (interposing)

20         THE COURT:   -- me this letter that I just read

21 to you dated December 30, 2019 where – signed by – who's

22 speaking, by the way?  I'm sorry.

23         MR. BERGER:   This is Mitchell Berger, Your

24 Honor.

25         THE COURT:   All right, so Mr. Baloul said in a

1                        PROCEEDING                    16

2   letter dated December 30, 2019 to Mark Langer, clerk of

3   the D.C. circuit court, "Nor should this court remand to

4   direct factual development of this question, the question

5   being whether the PSJVTA could supply a new basis for

6   personal jurisdiction."  He went on to say, "Plaintiffs

7   are pursuing these same claims through two other lawsuits

8   filed in December 2018 as a vehicle to argue for

9   jurisdiction on alternative bases beyond those that this

10  court has been considering.  Those alternative

11  jurisdictional bases include a precursor to the PSJVTA,

12  the anti-terrorism clarification act.  Plaintiffs' two

13  pending duplicative actions provide a readily available

14  better vehicle for plaintiffs to advance their PSJVTA

15  arguments."  Now you're trying to argue the exact opposite

16  to me here, are you not?

17              MR. BERGER:   No, respectfully, Your Honor, I

18  disagree.  There are --

19              (interposing)

20              MR. BERGER:   -- we talked about argument --

21              THE COURT:   You're fine with discovery going

22  forward here then?

23              MR. BERGER:   No, Your Honor, and I'd like to

24  explain why if I could.

25              THE COURT:   Yeah, go ahead.  I want to

```
 1                          PROCEEDING                  17
 2  understand why the statement that I just read to you does
 3  not say what I'm understanding it to say.
 4          MR. BERGER:   Because, Your Honor, the word that
 5  your, that ended the sentence that Your Honor read and
 6  which appears earlier in that same paragraph had to do
 7  with their arguments, not facts, but with their arguments
 8  that the statute applied.  The very first question that we
 9  asked for plaintiffs when we conferred with them was are
10  you making those arguments, and their response, in
11  essence, was we don't have to tell you, and that is why we
12  asked them when we conferred.  There are three aspects,
13  respectfully, to whether or not the PSJVTA can supply
14  jurisdiction.  Two of those are purely legal arguments.
15          And we know this because the Second Circuit in
16  the Waldman case, which is referenced in the next
17  paragraph of the letter to which Your Honor referred me,
18  is proceeding before Judge Daniels without jurisdictional
19  discovery to take up PSJVTA arguments which includes
20  statutory construction arguments and constitutional
21  arguments.  And the plaintiffs in the Waldman Sokolow case
22  pursued or sought a jurisdictional discovery as well, and
23  we said that that was not an appropriate way forward
24  because the plaintiffs there likewise had not amended
25  their complaint.  Judge Daniels agreed that jurisdictional
```

1

2  discovery should not go forward there and, in fact, set

3  briefing to deal with the arguments, namely, statutory

4  construction and constitutional.

5          We have a third case pending before Judge Furman

6  called the *Fuld* case, F-U-L-D, which also raises PSJVTA

7  arguments.  And what we're trying, respectfully, Your

8  Honor, to do is to have an organized process across all

9  three cases, *Shatsky*, *Fuld*, and *Sokolow*, to handle the

10 PSJVTA issues which we know not only does Judge Daniels

11 have set for briefing before him, but the Second Circuit

12 expressly directed – I know Your Honor knows this so this

13 is in the letter that we sent – will immediately revert to

14 the Second Circuit for an authoritative determination.  So

15 --

16          THE COURT:   On the statutory construction and

17 the constitutional issue only.

18          MR. BERGER:   Well, on any issue.  They told

19 Judge Daniels to investigate all issues having to do with

20 the applicability of the PSJVTA, all issues.

21          THE COURT:   (inaudible) that Judge Daniels

22 declined to allow jurisdictional discovery and briefing on

23 the fact-based aspect of it, correct?

24          MR. BERGER:   Yes, he declined to do that, and

25 what we have asked the plaintiffs to do, Your Honor, and

| 1 | PROCEEDING | 19 |

2  this is why we think jurisdictional discovery is overkill,

3  they don't need to prove every possible factual predicate.

4  If they pled their factual predicates for PSJVTA

5  jurisdiction, then we would be able to determine either by

6  way of answering the complaint or otherwise, perhaps a

7  stipulation, if there was even any factual dispute.  It is

8  a complete overkill to allow discovery on jurisdictional

9  issues when it's the least consequential of the three when

10 there remain serious statutory construction and

11 constitutional arguments that the Second Circuit has

12 already chartered a path for how it wishes to resolve

13 them.  And if there's not going to be an interlocutory

14 appeal of any jurisdictional determination in this case,

15 then we run the risk of conflicting rulings.

16        So all we're seeking here, and we sought with

17 the plaintiffs from the outset, is let's have an orderly

18 process to deal with these issues because these issues are

19 going to go up to the Second Circuit, and it doesn't serve

20 either judicial efficiency or the parties' resources to

21 have three separate courts – Your Honor, Judge Daniels,

22 and Judge Furman in the *Fuld* case – all addressing the

23 same issues that are going to revert immediately to the

24 Second Circuit.

25        THE COURT:   Counsel, take a pause.  Take a

```
 1                           PROCEEDING                    20
 2   pause.  I have a question I'd like to ask.  All right?
 3   You are basically - first of all, let me just ask you,
 4   before I get to the other question I want to ask, what's
 5   the status of the Fuld case?
 6             MR. BERGER:   Our motion to dismiss is due on
 7   Monday, November 9.
 8             THE COURT:   And you're moving on the legal
 9   grounds or are you moving on factual grounds as well?
10             MR. BERGER:   Your Honor, we'll be moving on
11   legal grounds, and we will be making an argument that I
12   would like to make as well to Your Honor today, which is
13   that --
14             THE COURT:   Hold on, hold on.
15             MR. BERGER:   I'll stop, Your Honor.
16             THE COURT:   Did you tee up in front of Judge
17   Furman the same argument that you made to me that this is
18   all being litigated in front of Judge Daniels and we ought
19   to have everything handled in a coordinated fashion?
20             MR. BERGER:   The answer to that, Your Honor, is
21   that will be teed up on Monday, November 9, because we
22   originally moved to dismiss in Fuld back in August before
23   the Second Circuit had set this process in motion and the
24   plaintiffs in Fuld amended their complaint.  Judge Furman
25   set a schedule by which our response to the amended
```

1
2   complaint is due Monday.  We are going to make the

3   argument on Monday that I am hoping to make to Your Honor

4   today about how to handle the PSJVTA issues.

5            THE COURT:   All right, counsel, I mean have you

6   not made the argument?  You've told me you want me to wait

7   and see what Judge Daniels does.

8            MR. BERGER:   No, Your Honor, I'd like to give

9   Your Honor some legal authority that makes some sense

10  here.  I think we have three pass forward, all of which

11  demonstrate the jurisdictional discovery would be on the

12  one hand premature and on the other hand overkill.  So I'd

13  like to point out that if we filed a motion of the type we

14  sought to make in our premotion conference letter which,

15  A, challenged jurisdiction and, B, sought summary judgment

16  based on the 18-year-old history of the first *Shatsky* case

17  where full discovery was taken that under Federal Rule of

18  Civil Procedure 12(i) Your Honor has the authority to

19  defer ruling on the jurisdictional question in deference

20  to the Second Circuit proceedings.  Rule 12(i) plainly

21  allows that type of deferral, and I'd offer Your Honor a

22  cite to the *Kregler v. City of New York* case, 608 F. Supp.

23  2d 465 at 475, a Judge Marrero decision from 2009.  What

24  12(i) is designed to do is to avoid having to deal with

25  issues that may be complex, require further development

1

2    when there's an easier merits way out of it.

3            And towards that end, Your Honor, I'd also like

4    to offer you this proposition which was picked up in

5    another Southern District case, Wright & Miller says the

6    following, "When the jurisdictional question is complex or

7    difficult, a court simply may avoid the issue by resolving

8    the suit on the merits when they clearly must be decided

9    in favor of the party challenging jurisdiction, thereby

10   obviating any need to decide the question."  That's quoted

11   in a decision called *In re LIBOR-Based Financial*

12   *Instruments Antitrust Litigation* by Judge Buchwald, 216

13   U.S. Dist. LEXIS 51190 at pp. 112-133, n.8.

14           Our point is this, Your Honor, there's an

15   orderly way without embarking on months of jurisdictional

16   discovery to defer adjudication of the jurisdictional

17   issue, to let the Second Circuit deal with it after Judge

18   Daniels does, in the *Sokolow* case and then proceed on to

19   the summary judgment question.  That's precisely the type

20   of, there's an easier way to resolve this without taking

21   up the challenging jurisdictional question.  There's no

22   doubt there's a jurisdictional question under what Your

23   Honor has called the justice for victims act.  It's a

24   challenging one.  This case has been up to the Supreme

25   Court, back to the Second Circuit, this issue rather in

1

2  *Sokolow* has been up to the Supreme Court, back to the

3  Second Circuit, back to Judge Daniels, and the Second

4  Circuit said here's how we want to handle this PSJVTA

5  issue upon remand from the Supreme Court.

6        And what we're seeing in all of these cases –

7  *Fuld*, this case, and *Sokolow* – is that each of the

8  plaintiffs is trying to pick off a different approach in

9  each case, and what we're suggesting is there ought to be

10  a uniform approach across all three of these cases in

11  order to allow the Second Circuit to do the work that it

12  first assigned to Judge Daniels.  Rule 12(i) is the path

13  that allows the court to do that consistent with the

14  court's authority.  And that --

15        (interposing)

16        THE COURT:   -- counsel, a couple of points.

17  First of all, I'm looking at Rule 12(i).  Tell me what

18  respect that supports what you've just argued to me.

19        MR. BERGER:   Yes, Your Honor, I understand and

20  I read 12(i) myself and I asked myself that same question

21  which is why we researched the case law under Rule 12(i)

22  which provides exactly the authority that I mentioned, and

23  I can give Your Honor both the *Kregler* case that I cited

24  and it interprets Rule 12(i) in the way that I said and

25  the *Cooper Robertson Partners LLP v. Vale* decision, a

```
 1                          PROCEEDING                    24
 2   Judge Robert Carter decision, 143 F. Supp. 2d 367 at 370,
 3   and those interpret what I agree is the otherwise opaque
 4   language of Rule 12(i) --
 5            THE COURT:   It's not opaque.  Rule 12 talks
 6   about a hearing before trial.
 7            MR. BERGER:   I understand that, Your Honor, so
 8   let me offer you, if I may, a --
 9            THE COURT:   Counsel.  Counsel, can I ask you
10   the next question related to that?  Even if I assume
11   you're correct about this, that Rule 12(i) gives me the
12   vehicle to do what you're asking me to do.  You now want
13   me to allow you to move for summary judgment, right, based
14   on the Judge Leon opinion, correct?
15            MR. BERGER:   On the discovery record that
16   underlay Judge Leon's decision.  This was a fully
17   discovered case.
18            THE COURT:   I understand, I understand.  But
19   the D.C. circuit vacated the Judge Leon summary judgment
20   opinion.  So how can there possibly be any kind of
21   preclusive effect?  They vacated it based on your argument
22   that there was no jurisdiction in the first place, and so
23   he couldn't properly grant summary judgment.
24            MR. BERGER:   We're not arguing it for
25   preclusive effect, Your Honor.  What we're saying is that
```

1

2  the discovery record developed over many years before

3  Judge Leon would allow us to renew a motion for summary

4  judgment because there is no discovery left to take.  This

5  was a fully discovered case.  We're not arguing for

6  preclusive effect; we're saying that in the alternative,

7  given that this case, unusual among many having been

8  around for 18 years, provides all the bases for the

9  parties to have summary judgment proceedings even if there

10 were jurisdiction under the PSJVTA.  All of that discovery

11 is entirely admissible in this case.  There's no reason --

12       THE COURT:   Do you have the October 7 letter

13 sent by Mr. Baloul to me?

14       MR. BERGER:   I do, Your Honor.

15       THE COURT:   Which argues that "even if the

16 PSJVTA supplied jurisdiction, plaintiffs' federal claims

17 should be subject to immediate entry of summary judgment"

18 – immediate – "based on the previously binding D.D.C.

19 decision."

20       MR. BERGER:   Yes, Your Honor, and after reading

21 the plaintiffs' objection to that in their subsequent

22 response, we had an alternative proposal to make to Your

23 Honor, which is rather than do that, and as we said, and

24 Your Honor will see this, on page 3 of docket number 43

25 which was our response to plaintiffs' letter application

1                          PROCEEDING                    26

2    for jurisdictional discovery, we say in the first full

3    paragraph on page 3 that the same discovery record taken

4    in *Shatsky* is equally admissible in this lawsuit and

5    compels the same conclusion that plaintiffs cannot

6    establish causation, an element of both primary and

7    secondary liability.

8            So our modified proposal as of our last letter

9    to the Court is that we should be allowed, even if there

10   were jurisdiction, to move for summary judgment based on

11   the prior case record.

12           THE COURT:   All right, I understand.   I

13   appreciate your modifying your position in response to

14   what plaintiff pointed out.

15           MR. BERGER:   And I'd like to offer, Your Honor,

16   one additional case cite, again, because I too spent some

17   time wrestling with Rule 12(i).   But here's – Wright &

18   Miller 5C § 1373, citing a Southern District case.   It

19   says Rule 12(i) authorizes deferral of a complex issue,

20   and I'm quoting here, "when a related matter is pending in

21   another tribunal."   And it cites *United States v.*

22   *Cigarette Manufacturers*, sorry, *Merchandizers Association*,

23   18 F.R.D. 497 (S.D.N.Y. 1955).

24           That's our point.   You have the PSJVTA issues

25   pending in another tribunal.   It is pending either before

```
 1                          PROCEEDING                    27
 2   Judge Daniels in the Southern District or, given the
 3   unique terms of the remand by the Second Circuit, it will
 4   be pending in the Second Circuit, and there is no reason
 5   to duplicate that effort on the PSJVTA in this case.  And
 6   when Rule 12(i) says, look, you can skip over a
 7   complicated jurisdictional issue that is pending in
 8   another tribunal and proceed to an easy merits issue, our
 9   respectful suggestion is that there's no need to go on
10   this long detour of jurisdictional discovery when you can
11   table the jurisdictional issue and proceed to summary
12   judgment.  If these principles anywhere, surely they apply
13   here.  This is an 18-year-old case --
14              (interposing)
15              MR. BERGER:   -- that involves depositions --
16              THE COURT:   I get all of that, and I get the
17   path that you're proposing to me.  I have other questions
18   for you.  Is your argument with respect to jurisdiction
19   solely about personal jurisdiction or also subject matter
20   jurisdiction?
21              MR. BERGER:   It is solely, Your Honor, about
22   personal jurisdiction.
23              THE COURT:   Okay.
24              MR. BERGER:   And, Your Honor, if I may, Your
25   Honor asked a very important and intriguing question
```

PROCEEDING                        28

1

2   because, as I believe Your Honor may be suggesting, the

3   Second Circuit recently addressed this issue like in the

4   *Butcher v. Wendt* case, came out of the Second Circuit in

5   September, that said when jurisdiction does not involve an

6   Article 3 subject matter jurisdiction question but

7   involves only statutory jurisdiction which is what we have

8   here, a new statute that purports to grant jurisdiction,

9   the court can assume hypothetical jurisdiction and proceed

10  to easy merits issue.

11          THE COURT:   I asked you the question about

12  subject matter versus personal, that's exactly what I'm

13  getting at.

14          MR. BERGER:   Yes, Your Honor, and we think

15  there are many paths to that same conclusion, so one is

16  Rule 12(i), the second is hypothetical jurisdiction.  The

17  third one, but I heard Your Honor reject it, so I'm not

18  suggesting it, is the case could be further stayed pending

19  *Sokolow*.  But any one of the first two, 12(i) or

20  hypothetical jurisdiction, would allow this Court to say,

21  look, I understand the Second Circuit is dealing with this

22  issue and going to do so in the near term and do so

23  authoritatively, s either I'm going to defer the personal

24  jurisdiction question and proceed to summary judgment or

25  I'm going to assume without deciding that there's

1

2  hypothetical personal jurisdiction and proceed to summary

3  judgment.

4          Your Honor, we hear you loud and clear about the

5  age of this case, and trust me, this case against our

6  client was filed 18 years ago, November of 2002.  It is

7  fully discovered.  We're keen to say that even if there

8  were jurisdiction, and the Second Circuit will tell us

9  whether there is, the Court could proceed to summary

10 judgment.  If the Court doesn't want to do that, then the

11 Court can certainly put this case on hold pending the

12 outcome in *Sokolow*, and we're not just trying to convince

13 Your Honor that this is the right approach.  We're trying

14 to convince, and will on Monday make our argument to Judge

15 Furman that this is the right way forward.  Because the

16 one thing that would really in our respectful submission

17 damage the judicial system is to have three separate

18 district courts wrestling with the same issue.

19         THE COURT:   I don't buy that, and I don't want

20 to hear that.  As a judge, I have an obligation to deal

21 with issues before me, and lots of times different

22 district judges come out differently, and that's why

23 appellate courts exist.  So that argument is just not

24 compelling to me at all.

25         There are a couple of other things I'd like to

```
 1                         PROCEEDING                    30

 2  explore with you both sides though.  What is the schedule

 3  in Sokolow?

 4           MR. BERGER:   Your Honor, the opening brief from

 5  the plaintiffs is due, pursuant to an extension that they

 6  just requested, is due on November the 12th.  Our

 7  response, pursuant to that schedule, is Due January 8, and

 8  the plaintiffs' reply is due February 9.

 9           THE COURT:   All right, so I mean there's no

10  assurance you're going to have a ruling from the Second

11  Circuit even by the end of next summer.

12           MR. BERGER:   That's correct, Your Honor.

13           THE COURT:   All right.  And you say you have

14  argument on Monday in front of Judge Furman.

15           MR. BERGER:   No, Your Honor, we're filing our

16  motion to dismiss on Monday the 9th in which we will be

17  making this argument.  We had previously moved to dismiss

18  for lack of jurisdiction and under 12(b)(6) but the

19  plaintiffs amended, so our opening brief on our motion to

20  dismiss the amended complaint is due Monday.

21           THE COURT:   So you moved on personal

22  jurisdiction grounds?

23           MR. BERGER:   We moved on personal jurisdiction

24  because the plaintiff, including under the PSJVTA, because

25  the plaintiffs there had personal jurisdiction allegations
```

PROCEEDING                      31

2  that they included in their complaint to which we

3  responded and said the factual basis for personal

4  jurisdiction under the PSJBTA is incorrect.  It's

5  processes like that that caused us, Your Honor, to say to

6  the plaintiffs, look, the D.C. circuit said if you have

7  new facts that you feel support --

8           THE COURT:   I get it.  (inaudible) rehash all

9  that.  I get it.  You asked them to amend and they didn't.

10  I get that.  But can you finish telling me about the case

11  in front of Judge Furman?

12           MR. BERGER:   Yes, Your Honor.

13           THE COURT:   You moved to dismiss for lack of

14  personal jurisdiction and then they amended, is that

15  right?

16           MR. BERGER:   And 12(b)(6).  And then they

17  amended, that's correct, Your Honor.

18           THE COURT:   And what did they amend to do, just

19  add more meat on the bones of their allegations or did

20  they assert something different?

21           MR. BERGER:   They amended to basically, Your

22  Honor, as the plaintiffs' letters here do, to copy the

23  *Sokolow* allegations about PSJVTA jurisdiction, they added

24  some minor additional factual allegations, but mostly what

25  they did was they imported the *Sokolow* PSJBTA jurisdictional

```
1                          PROCEEDING                    32
2    allegations.
3              THE COURT:   Okay, and then you filed a new motion
4    to dismiss or you just renewed the one you previously had
5    made?
6              MR. BERGER:   We will be filing our new motion to
7    dismiss on Monday in which we will make the same suggestion
8    I've made to Your Honor.
9              THE COURT:   Okay.  One final question about the
10   case before Judge Furman, and then I want to hear from
11   plaintiffs again in response to what you're proposing.  You
12   don't have any indication from him whether he's going to
13   entertain argument, right?
14             MR. BERGER:   I don't have that, Your Honor.  Judge
15   Furman, when we filed an original motion to dismiss, set kind
16   of two prescriptive schedules.  One is that the plaintiffs had
17   X days to amend, and if they amended, then we had a choice of
18   standing on our previous motion or refiling.  We chose the
19   refiling option.  That's all that he's done so far.  And he
20   has adjourned sine die the original initial scheduling
21   conference in that case because of the motions that were
22   filed, and he gave us the opportunity to refile.
23             THE COURT:   Are there any plaintiffs in the *Fuld*
24   case that overlap with the plaintiffs here?
25             MR. BERGER:   No, Your Honor.
```

1

2          THE COURT:   And what about in the case in front of

3   Judge Daniels?

4          MR. BERGER:   No, Your Honor.  And I know you don't

5   want me to be argumentative, but I just want to reinforce one

6   point which is that part of our point which is there aren't

7   case specific issues under the PSJVTA.  They're common across

8   all three of these cases.

9          THE COURT:   I understand that.  I just wanted to

10  know whether these plaintiffs, these exact groups of

11  plaintiffs were getting three separate bites at the apple

12  here.  That's what I'm trying to get at.

13         MR. BERGER:   Not across those three cases, Your

14  Honor.

15         THE COURT:   Okay.  All right.  Actually before I

16  let you go, one final question, why shouldn't I grant leave to

17  and here so that we're at least knowing what complaint we're

18  or what allegations we're working off of?

19         MR. BERGER:   We don't oppose that, and, in fact,

20  we've urged them to amend.

21         THE COURT:   Okay.  All right, thank you.  So let me

22  turn back to the plaintiffs.  Counsel, my reaction after

23  listening to both of you, I was going to say patiently, maybe

24  I wasn't so patient, but why are you not amending your

25  complaint to be clear about what it is that you're arguing so

1

2  that if and when we get to motion practice, everybody knows

3  what the target is?

4            ATTORNEY FOR PLAINTIFF:   Well, Your Honor, can I go

5  again for the plaintiffs?  We think the defendants know

6  perfectly well what the factual issues are around jurisdiction

7  under the PSJBTA.  The questions are twofold:  One, are the

8  defendants making payments by, you know, to individuals

9  imprisoned or killed in connection with, you know, the

10 commission of terrorists acts in which American citizens were

11 injured, that's number one.  And number --

12           THE COURT:  And do you --

13           (interposing)

14           THE COURT:  Do you plead in your complaint that

15 they've done that?

16           ATTORNEY FOR PLAINTIFF:   We allege that they were

17 doing it prior to the trigger date under the PSJBTA, and the

18 reason that it's prior to is because – oh, go ahead.

19           THE COURT:   That's not sufficient, right?

20           ATTORNEY FOR PLAINTIFF:   Well, under the statute

21 there's a trigger date, so obviously those allegations are not

22 allegations that would result, if true would result in a

23 consent to jurisdiction under the PSJBTA.  But --

24           THE COURT:   Right.  For right now, on the basis of

25 your pleadings, they're entitled to dismissal by your

1

2  admission.

3          ATTORNEY FOR PLAINTIFF:  Well, we don't agree with

4  that, Your Honor, respectfully, because, as I said, you know,

5  as I said earlier, a complaint is not required to allege

6  (indiscernible) for personal jurisdiction.  In the event that

7  there is a motion to dismiss based on lack of personal

8  jurisdiction, we would be entitled to oppose that motion not

9  only based on the allegations in our complaint but also on the

10  basis of other evidence that we could put in front of the

11  Court.  So I don't --

12          THE COURT:  Counsel, it's cleaner for us all, for

13  the court, for defendants, and everybody else who's going to

14  look at this, to understand what the allegations were that

15  they were moving to dismiss.  Why are you resisting amending?

16          ATTORNEY FOR PLAINTIFF:  Your Honor, we're not

17  resisting.  If the Court believes that it would be appropriate

18  for us to amend the complaint to include specific allegations

19  relating to facts that would trigger personal jurisdiction

20  under the PSJVTA, we're prepared to do that, although, as I

21  said at the beginning and as I explained to Mr. Berger when we

22  spoke earlier, when we spoke at the very beginning of all

23  this, we just don't it's necessary under the law.  But if

24  that's something the Court wants us to do, we're, of course,

25  prepared to do it.

```
 1                          PROCEEDING                      36
 2             THE COURT:   All right, well, counsel, I just told
 3   you what my reaction would be to a motion to dismiss the
 4   complaint that doesn't contain allegations that hits the
 5   trigger.  So if you wish to amend, leave is granted, and you
 6   need to do that within two weeks.
 7             ATTORNEY FOR PLAINTIFF:   Your Honor, just under all
 8   of the circumstances, given that our clients are in Israel and
 9   that there are some logistical issues, could we have 30 days
10   to amend our complaint?
11             THE COURT:   No, counsel, you've been talking about
12   this for how long.  You know what the allegations are.  If you
13   run into, you know, extraordinary circumstances that you
14   cannot overcome and you make a specific showing, you can come
15   back to me for an extension, but right now the order is two
16   weeks.
17             ATTORNEY FOR PLAINTIFF:   Okay, that's fine, Your
18   Honor.  That's fine.
19             THE COURT:   Thank you, that's the ruling.
20             ATTORNEY FOR PLAINTIFF:   Okay.  Your Honor, I don't
21   know that Your Honor wants to hear me on this, but there are a
22   number of points that Mr. Berger made with which I disagree
23   relating to the impact of the proceedings before Judge Leon in
24   this case sort of regardless of the D.C. circuit's vacate
25   order.
```

2          THE COURT:   No, I don't really --

3          ATTORNEY FOR PLAINTIFF:   I don't know if Your Honor

4    wants to hear us on that now, and if not, we can be heard on

5    it later, but I do have some reactions to it to share.

6          THE COURT:   I don't need to hear it right now

7    because it will become relevant only if and when we get to the

8    stage where defendants are renewing their request for leave to

9    move for summary judgment.  I'm not going to grant that just

10   yet.  I'm not saying no, Mr. Berger, on the summary judgment,

11   I'm just not prepared to entertain it just yet.

12         ATTORNEY FOR PLAINTIFF:   Right --

13         MR. BERGER:   Understood, Your Honor, and if I may

14   just ask a housekeeping question then so that we don't burden

15   you with additional letters, which is if they amend in two

16   weeks and we wish to either proceeding by summary judgment or

17   a motion, how would Your Honor like us to proceed?  Shall we

18   write another premotion conference letter?  Does Your Honor

19   want us to respond within the two weeks to an amended

20   complaint that Rule 15 would give us?  We'll do, of course,

21   whatever the Court wants, but I want to make sure that we're

22   not working at cross-purposes with Your Honor's direction.

23         THE COURT:   All right, I mean to be perfectly

24   honest, I want to go back and look at the Second Circuit

25   decisions again, and I will enter an order with instructions

```
 1                         PROCEEDING                    38

 2  about how we're going to proceed once we get an amended

 3  complaint.

 4            MR. BERGER:  Absolutely, Your Honor, thank you.

 5            THE COURT:  All right, is there anything else from

 6  either side that we need to talk about today then in light of

 7  what I've ordered?

 8            MR. BERGER:  Not from the defendants, Your Honor.

 9            ATTORNEY FOR PLAINTIFF:  Apart from the point I

10  raised a moment ago which we can raise later if necessary,

11  just a question of sort of, you know, the impact of the

12  rulings in the D.C. litigation which we think, you know, we

13  just disagree with the defendants' position in a lot of

14  different ways on that point, not anything for us at the

15  moment.  I assume that, right, we'll file our amended

16  complaint and Your Honor will proceed.

17            THE COURT:  Right.  Correct.  All right, anything

18  else at this point?

19            MR. BERGER:  Nothing, Your Honor, thank you.

20            ATTORNEY FOR PLAINTIFF:  Nothing for the

21  plaintiffs, Your Honor, thanks for hearing us this morning.

22            THE COURT:  All right, thank you both very much.

23  Have a good rest of the day and please stay healthy and safe,

24  everyone.

25            MR. BERGER:  Thank you.
```

```
 1                          PROCEEDING                    39

 2             ATTORNEY FOR PLAINTIFF:   And you, and everybody.

 3             THE COURT:   Thank you.

 4             ATTORNEY FOR PLAINTIFF:   Thank you.

 5             (Whereupon the matter is adjourned.)

 6

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

40

C E R T I F I C A T E

        I, Carole Ludwig, certify that the foregoing

transcript of proceedings in the United States District

Court, Southern District of New York, *Shatsky, et al.*

*versus Palestinian Liberation Organization, et al.*, Docket

#18cv12355, was prepared using PC-based transcription

software and is a true and accurate record of the

proceedings.


Signature_____

                    Carole Ludwig

Date:  November 12, 2020