# Exhibit A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

———————————————————————— x

SHABTAI SCOTT SHATSKY, individually          :
and as personal representative of the Estate of
Keren Shatsky, JO ANNE SHATSKY,             :
individually and as personal representative of
the Estate of Keren Shatsky, TZIPPORA        :
SHATSKY SCHWARZ, YOSEPH SHATSKY,
SARA SHATSKY TZIMMERMAN, MIRIAM             :
SHATSKY, DAVID RAPHAEL SHATSKY,
GINETTE LANDO THALER, individually and as    :    Case No. 18 Civ. 12355 (MKV)
personal representative of the Estate of Rachel
Thaler, MICHAEL THALER, individually and as   :
personal representative of the Estate of Rachel
Thaler, LEOR THALER, ZVI THALER, ISAAC       :    Plaintiffs' First Request for Production
THALER, HILLEL TRATTNER, RONIT                    of Documents, Electronically Stored
TRATTNER, ARON S. TRATTNER, SHELLEY         :    Information and Things in Connection
TRATTNER, EFRAT TRATTNER, HADASSA                with Jurisdictional Discovery
DINER, YAEL HILLMAN, STEVEN BRAUN,          :
CHANA FRIEDMAN, ILAN FRIEDMAN,
MIRIAM FRIEDMAN, YEHIEL FRIEDMAN,           :
ZVI FRIEDMAN and BELLA FRIEDMAN,
                                             :

                    Plaintiffs,              :

              - against -                    :

                                             :
THE PALESTINE LIBERATION
ORGANIZATION and THE PALESTINIAN            :
AUTHORITY (a/k/a "The Palestinian Interim
Self-Government Authority" and/or "The       :
Palestinian National Authority"),
                                             :
                    Defendants.
———————————————————————— x

PLEASE TAKE NOTICE that, pursuant to Rules 26 and 34 of the Federal Rules

of Civil Procedure (the "Federal Rules"), the Local Civil Rules of this Court (the "Local Rules")

and the Court's Order dated February 8, 2021 (Dkt. No. 60), Plaintiffs request that defendants

The Palestine Liberation Organization and The Palestinian Authority produce the documents,

electronically stored information ("ESI") and things described below for inspection and copying,

at the offices of Cohen & Gresser LLP, 800 Third Avenue, New York, New York   10022, within

30 days after the service of these requests (the "Requests"), in accordance with the Federal

Rules, the Local Rules and the definitions and instructions set forth below.

Definitions

1.      The definitions set forth in Rule 26.3(c) of the Local Rules are

incorporated herein by reference and apply to these Requests.

2.      "Benefit" means any tangible or intangible benefit of any kind to a person

(including any Prisoner or Designee), including payments of money to or for the benefit of such

person, delivery of securities or other property to or for the benefit of such person, providing

employment to such person, and increasing such person's salary or rank.

3.      "Defendant," "you" and "your" means and refers to PLO and/or PA, and

includes but is not limited to the Commission for Prisoners and Ex-Prisoners, Department of

Diplomacy and Public Affairs, General Department of Prisoners and Ex-Prisoners, General

Department of the Police, General Intelligence Service, Institute for the Care of the Injured and

the Martyrs' Families a/k/a Foundation for the Care of the Families of Martyrs, or Foundation

Care/Families of Martyrs & Wounded, Ministry of Education, Ministry of Finance, Ministry of

Foreign Affairs, Ministry of the Interior and National Security, Ministry of Social Affairs,

Ministry of Prisoners Affairs, Ministry for Prisoners and Ex-Prisoners, Mission to the United

Nations, National Security Organization and Administration Institution, Palestine National Fund,

Preventative Security Service, Public Security Administration, Public Security Organization and

Administration Institution, Security Forces Organization and Administration Institution, and any

predecessor or successor to any of the foregoing.

4.      "Designee" means any person designated by another person, including by a Prisoner, a Martyr or a Defendant, to receive any payment or other Benefit.

5.      "FASC" means the First Amended and Supplemental Complaint that Plaintiffs filed in this action on November 25, 2020 (Dkt. No. 50).

6.      "Including" means "including without limitation."

7.      "Identify," when used in connection with an entity, institution, organization, agency, unincorporated association, fictitious entity or any other legal entity, means to provide (a) the entity's legal name, as well as any "doing business as" or other trade names or aliases; (b) the address of its principal office; (c) the type of entity; and (d) the jurisdiction under whose laws the entity is or was organized.

8.      "Investigation File" means a document or set of documents concerning an investigation by or on behalf of a Defendant concerning an individual or an incident and includes without limitation any document created or maintained by any branch of the Palestinian Security Forces, including the Preventative Security Service and the General Intelligence Service.

9.      "Martyr" means any individual (a) who died while committing, conspiring to commit or participating in, any act or series of acts that injured or killed a National of the United States, or (b) whose death resulted from committing, conspiring to commit or participating in the commission of any such act or series of acts.

10.      "Martyr File" means a collection of documents concerning an application by a family member, family, Designee, or other beneficiary of a Martyr for benefits or recognition in light of such individual's death, and includes documents concerning the consideration, processing, approval, or disapproval of such an application, including the

complete paper file from the PA's Ministry of Social Affairs and any predecessor or successor thereto.

11.     "Martyr Payment" refers to a provision of money or other Benefit by a Defendant, directly or indirectly, to a family member, the family, a Designee, or any other beneficiary of a Martyr, by reason of the Martyr's death.

12.     "Mission" means the Defendants' Permanent Observer Mission to the United Nations in New York.

13.     "National of the United States" has the meaning given such term in 18 U.S.C. § 2331(2).

14.     "PA" means The Palestinian Authority a/k/a The Palestinian National Authority, and includes any administration, agency, association, authority, bureau, center, commission, council, department, directorate, division, establishment, foundation, institute, institution, instrumentality, ministry, mission, organization, office, organ, or unit of or controlled by or under common control with The Palestinian Authority; anyone acting on behalf of, or at the direction of, The Palestinian Authority; and any predecessor or successor in interest, agent, representative, employee, consultant, attorney, or entity acting under the direction or control of any of the foregoing.

15.     "PLO" means The Palestine Liberation Organization, and includes any administration, agency, association, authority, bureau, center, commission, council, department, directorate, division, establishment, foundation, institute, institution, instrumentality, ministry, mission, organization, office, organ, or unit of or controlled by or under common control with The Palestine Liberation Organization; anyone acting on behalf of, or at the direction of, The Palestine Liberation Organization; and any predecessor or successor in interest, agent,

- 4 -

representative, employee, consultant, attorney, or entity acting under the direction or control of any of the foregoing.

16.    "Prisoner" means any living or deceased individual who has been imprisoned or detained for committing, conspiring to commit, or participating in any act or series of acts that injured or killed a National of the United States.

17.    "Prisoner File" means a collection of documents concerning an application by a Prisoner, a family member, family, Designee, or other beneficiary of a Prisoner for benefits or recognition in light of such Prisoner's imprisonment or former imprisonment, and includes without limitation documents concerning the consideration, processing, approval, or disapproval of such an application.

18.    "Prisoner Payment" means a payment of money or other Benefit by a Defendant, directly or indirectly, to a Prisoner or a family member, family, Designee, or other beneficiary of a Prisoner to receive such payment, pursuant to Palestinian Authority Law No. 14 and/or No. 19 of 2004, Palestinian Authority Government Decision No. 23 of 2020, or any successor or amendment, or any related provision of Palestinian law, regulation, policy, custom or practice.  The term "Prisoner Payment" includes (a) a payment of money or provision of a Benefit to a family member, family, Designee, or other beneficiary of a Prisoner who was imprisoned at the time of payment; (b) a payment for the use of a Prisoner, including a benefit or expense relating to the Prisoner's imprisonment, regardless of whether such Prisoner is employed by a Defendant; (c) a payment of money or provision of a Benefit to an individual who was formerly imprisoned but is not currently imprisoned, whether styled as a "loan," "salary" or otherwise, if such payment or Benefit was approved by or in coordination with the Commission for Prisoners and Ex-Prisoners' Affairs or a related, affiliated, predecessor or successor entity;

(d) a payment of money or provision of a Benefit on behalf of a person who was formerly imprisoned or the family member or other Designee of an individual who was imprisoned at the time of payment, such as the payment of any debt or obligation for benefits such as tuition or health care; (e) a payment of money or provision of a Benefit to any former prisoner who is or was an employee of a Defendant and who receives any credit, such as increased rank, seniority or salary, due to his or her time in prison; and (f) any Benefit provided by or through or in coordination with the Commission for Prisoners and Ex-Prisoners' Affairs or a related, affiliated, predecessor or successor entity.

19.    "United Nations Headquarters" means the geographic area within the City, County and State of New York bounded by First Avenue, East 42nd Street, East 48th Street, and the East River.

<u>Instructions</u>

1.    The rules of construction set forth in Rule 26.3(d) of the Local Rules are incorporated herein by reference and apply to these Requests.

2.    In your written response to these Requests, please restate each Request immediately prior to your response thereto.

3.    In responding to these Requests, you shall produce all responsive documents, items of ESI and things in your possession, custody or control, or in the possession, custody or control of your agents, attorneys, employees, consultants or other representatives.

4.    A document, item of ESI or thing shall be deemed to be within your control if you have the right to secure the document, item of ESI or thing, or a copy of it, from another person.

5.      Each document, item of ESI or thing called for by these Requests should be produced in its entirety, including any transmittal sheets, cover letters, exhibits, attachments, appendices, or enclosures, and without abbreviation, deletion, excision, or redaction, regardless of whether you consider the entire document, item of ESI or thing to be relevant or responsive to these Requests.  If documents responsive to these Requests are normally kept in a file or other folder, that file or folder must also be produced.  If a document, item of ESI or thing responsive to these Requests cannot be produced in full, such document, item of ESI or thing shall be produced to the extent possible with an explanation stating why production of the remainder is not possible. If information is redacted from a document, item of ESI or thing that is produced in response to a Request, identify the redaction by stamping the word "Redacted" on the document, item of ESI or thing at each place where information has been redacted, and separately log each redaction on the privilege log prepared in accordance with Rule 26(b)(5) of the Federal Rules and Rule 34.1 of the Local Rules.

6.      Documents, items of ESI and things that are responsive to these Requests shall be produced as they have been kept in the usual course of business, or shall be organized or labeled to correspond to the enumerated Requests.

7.      If there are no documents, items of ESI or things responsive to any particular Request, you must so state in writing.

8.      If any document, item of ESI or thing, or any portion of any document, item of ESI or thing, is withheld under a claim of privilege, immunity, or protection, including the attorney-client privilege or work product doctrine, you shall provide a written privilege log of those documents, items of ESI or things in accordance with Rule 26(b)(5) of the Federal Rules and Rule 34.1 of the Local Rules.  Such privilege log shall specifically identify the following:  (a)

the type of document, item of ESI or thing (*e.g.*, letter, memorandum); (b) any addressor or author, any addressee, and any other indicated or blind copied recipients, and where not apparent, the relationship of the addressee or author, addressees, and recipients to each other; (c) the general subject matter of the document, item of ESI or thing; (d) the date of the document, item of ESI or thing; (e) the number of pages (or, in the case of ESI, the file size), and a description of any attachments or appendices; (f) all persons to whom the document, item of ESI or thing was distributed, shown or explained; and (g) the nature and basis of the privilege or grounds for withholding being asserted.  The statement regarding any grounds asserted for withholding any document, item of ESI or thing from production shall include all facts necessary to assess the validity of the basis for withholding the document, item of ESI or thing.

9. Although some of the Requests may overlap, each Request shall be construed independently, and no Request should be read as limiting any other Request.  However, you are requested to produce a document, item of ESI or thing only once, even if it is responsive to multiple Requests.

10. If, in responding to these Requests, you claim any ambiguity in interpreting a Request or a Definition or Instruction applicable thereto, you should not rely on such claim of ambiguity as a basis for refusing to produce documents, ESI and things in response to such Request, but you shall set forth, as part of your response to such Request, the language deemed to be ambiguous and the interpretation chosen to be used in producing documents, ESI and things responsive to the Request.

11. In the event that you claim that a Request is overly broad or unduly burdensome, you shall respond to that portion of the Request that is unobjectionable and specifically identify the respect in which you consider the Request to be overly broad or unduly

burdensome.  If your objection relates only to part of the Request, produce all documents, ESI and things that do not fall within the scope of your objection.

12.    For the purpose of reading, interpreting, and construing the scope of these Requests, terms not specifically defined shall be given their most expansive and inclusive interpretation.

13.    These Requests shall not be construed as a waiver or abridgment of, and are not intended to waive or abridge, any of Plaintiffs' claims or arguments, or any objection to any of discovery requests Defendants may serve, nor shall these Requests be construed as an admission of fact or any legal concession.

14.    You shall identify any documents, ESI or things responsive to these Requests have been lost, discarded, or destroyed, and you shall provide, without limitation, the following information for each such document, item of ESI or thing:  (a) the date of loss, discard, or destruction; (b) the manner of loss, discard, or destruction; (c) the reasons for loss, discard, or destruction; (d) the person authorizing loss, discard, or destruction; and (e) the person who lost, discarded or destroyed the document, item of ESI or thing.

15.    If any documents or things responsive to these Requests contain ESI, such documents or things must be produced in a form that contains all ESI (including metadata) for those documents or things.  Documents or things that are electronically searchable should be produced in a form that does not remove or downgrade this feature.

16.    Documents or things in electronic form, including e-mail, shall be produced in single-group, group IV tagged image file format ("TIFF") for black and white images, and single-page, Joint Photographic Experts Group ("JPEG") format for color images, in a separate folder labeled "Images."   Each image shall have a unique production number.

Metadata associated with ESI shall be produced in delimited text format in a separate folder labeled "Data."  Full extracted text files, if any, should be delivered as document-level text files named for the first Bates number in a separate folder labeled "Text."  Spreadsheets and database files shall be provided in native format, with an accompanying placeholder production-numbered TIFF file.  Each responsive spreadsheet filename shall be clearly labeled to indicate the placeholder production number that corresponds with each spreadsheet.

17.    If you object to any of these Requests, state in your response whether you are withholding any documents, ESI or things from production on the basis of such objection.

18.    Your obligation to respond to the Requests is continuing in nature.  If, subsequent to your production of documents, ESI and things in response to these Requests, you locate, find, acquire, create or become aware of additional responsive documents, ESI or things, you must promptly supplement your production with such additional documents, ESI or things, as required by Rule 26(e) of the Federal Rules.

<u>Documents, ESI and Things to Be Produced</u>

1.    Documents, including any charts or tables, sufficient to establish the hierarchical and/or organizational structure of the PA and the PLO at all times on and after January 1, 2019.

2.    All documents concerning any decision by a Defendant to cease, halt, defer, suspend, block, postpone, reroute, prevent, freeze, terminate, alter, or otherwise not make any Prisoner Payment or Martyr Payment on or after October 17, 2019.

3.    All documents concerning any complaint after October 17, 2019, that any Prisoner Payment or Martyr Payment was not made.

4.      All documents concerning any Martyr Payment or Prisoner Payment made on or after April 18, 2020, including any Martyr Payment or Prisoner Payment concerning any person listed on Exhibit A to the FASC.

5.      All Martyr Files and Prisoner Files concerning any person listed on Exhibit A to the FASC.

6.      All documents created on or after April 18, 2020 concerning any person, alive or deceased, listed on Exhibit A to the FASC, including documents concerning the employment, promotion or advancement of such person and/or any payment or other Benefit conferred on such person.

7.      All Investigation Files concerning any incident or person listed on Exhibit A to the FASC.

8.      All documents, including rosters, organization charts, and directories, reflecting the identities of any person who, on or after January 4, 2020, while physically present in the United States, was employed by, or provided labor or services to or on behalf of, any Defendant.

9.      All documents, including all calendars and schedules, concerning any activities of each person who, on or after January 4, 2020:

(a)      Was employed by, or provided labor or services to or on behalf of, a Defendant while physically present in the United States;

(b)      Conducted any activity on behalf of, in conjunction with, for the benefit of, or under the control of a Defendant while physically present in the United States; or

- 11 -

(c)     Was paid or reimbursed by a Defendant for any reason while physically in the United States or in connection with any activity while physically present in the United States.

10.     All documents concerning any instructions given by or on behalf of a Defendant on or after July 1, 2018 to any person to limit or alter his or her activities while physically present in the United States.

11.     All records of any transfer of money or any other thing of value made on or after July 1, 2019 to, from, on behalf of, or for the benefit of any Defendant to any person in the United States, including payroll records, bank records, reimbursement records, gift records, invoices, checks, electronic payment records, accounting records, receipts, correspondence concerning gifts, and any document concerning any payment of any kind.

12.     All records of any payment made on or after July 1, 2019 by, to, from, on behalf of, or for the benefit of a Defendant involving a United States financial institution or any financial institution with a branch or office in the United States.

13.     All records of all wire transfers made by, to, from, on behalf of, or for the benefit of a Defendant and denominated in U.S. dollars on or after July 1, 2019.

14.     Documents sufficient to identify:

(a)     Any person physically present in the United States who received any Martyr Payment or Prisoner Payment made by, on behalf of, or for the benefit of a Defendant on or after April 18, 2020;

(b)     Any United States financial institution, or other financial institution with a branch or office in the United States, to or through which a Defendant made any Martyr Payment or Prisoner Payment on or after April 18, 2020; and

- 12 -

(c)     The Martyr or Prisoner in respect of whose death or imprisonment a Martyr Payment or Prisoner Payment encompassed in Request 13(a) or Request 13(b) was received or made.

15.     All documents concerning or constituting communications on or after January 4, 2020 to or from any person in the United States by, on behalf of, or for the benefit of a Defendant, including letters, cables, emails, text messages, communications of any kind on social media, call logs, draft communications, and any other form of communication, electronic or otherwise.

16.     All documents concerning or constituting communications with the government and/or with officials of the United States by, on behalf of, or for the benefit of a Defendant about any and all incidents or persons listed on Exhibit A to the FASC, including letters, cables, emails, call logs, draft communications, and any other form of communication, electronic or otherwise.

17.     All documents, without regard to when such documents were dated, created or came into your possession, custody or control, that concern or constitute communications with the government and/or with officials of the United States by, or on behalf of, or for the benefit of a Defendant regarding any incident in which any National of the United States was killed or injured and in connection with which a Defendant made any Martyr Payment or Prisoner Payment on or after April 18, 2020.

18.     All documents concerning or constituting communications with any financial institution by, on behalf of, or for the benefit of a Defendant on or after November 1, 2019, concerning the financial institution's refusal or potential refusal to process a Prisoner Payment or Martyr Payment, including communications concerning (a) any decision by a

Defendant to make a Prisoner Payment or Martyr Payment in advance of the financial institution's refusal or potential refusal to process a Prisoner Payment or Martyr Payment, and (b) any efforts by a Defendant to coerce, compel, demand, induce, persuade, or pressure the financial institution to continue accepting, distributing, or processing a Prisoner Payment or Martyr Payment.

19.     All documents dated, created or that came into your possession on or after November 1, 2019 concerning the creation of any financial institution or other entity by, on behalf of, or for the benefit of a Defendant for the purpose of processing Prisoner Payments or Martyr Payments.

20.     All documents concerning any office, headquarters, premises, facility, physical establishment, or property located in the United States that has been maintained, established, procured, purchased, rented, or leased by a Defendant on or after January 4, 2020, including real estate purchase agreements, leasing records, property maintenance records, and tax records, and any documents concerning the purpose and activities for which any such properties have been used.

21.     All documents, calendars, agendas, and meeting notes created, modified, sent, received, or viewed by a person acting on behalf of, or for the benefit of a Defendant while physically present in the United States on or after January 4, 2020.

22.     All documents concerning any notarial, consular, or similar services conducted, performed, authorized, approved, or ratified by any employee, agent or representative of a Defendant in the United States on or after January 4, 2020, including documents concerning the authentication of birth and death certificates and other forms, or company registration in the PA.

23.     All invoices or bills for any mobile device, telephone (including any land-line telephone), electronic device, internet service, or cable service paid for by, on behalf of, or for the benefit of a Defendant and used by any person while physically present in the United States during any period on or after January 4, 2020.

24.     All documents dated, created or that came into your possession on or after January 4, 2020 concerning:

(a)     Any social media account or web feed identified with the Mission;

(b)     Any website, social media account, or web feed accessed, modified, managed, or changed by a person acting, while physically present in the United States, on behalf of, or for the benefit of, a Defendant;

(c)     Any website, social media account, or web feed hosted in the United States on which a Defendant or any person acting on behalf of or for the benefit of a Defendant posted any content, including "palestineun.org";

(d)     Any computer or computer server physically present in the United States and accessed, modified, managed, or changed by any person, wherever located, on behalf of, or for the benefit of, any Defendant; or

(e)     Communications with any media outlet by any person on behalf of or for the benefit of a Defendant while physically present in the United States.

25.     All bank statements for all bank accounts maintained or used by any person acting on behalf of or for the benefit of a Defendant while physically present in the United States on or after January 4, 2020.

26.    All documents concerning any expenses paid or reimbursed by, on behalf of, or for the benefit of a Defendant in connection with any travel by any person to or from the United States on or after January 4, 2020.

27.    All documents concerning any expenses paid or reimbursed by, on behalf of, or for the benefit of a Defendant in connection with activities in the United States on or after January 4, 2020.

28.    All documents concerning:

(a)    Any activity conducted by a Defendant, or any person acting on behalf of or for the benefit of a Defendant, in connection with the Third International Meeting for Science in Palestine held at the Massachusetts Institute of Technology from January 10 to 12, 2020;

(b)    Any activity conducted by Mahmoud Abbas while physically present in the United States on or after January 4, 2020, including documents concerning the press conference held by Mr. Abbas at the United Nations Headquarters and Mr. Abbas' meeting with Ehud Olmert, both on February 11, 2020;

(c)    any meeting, communication or appearance (including public or virtual appearances) by Riyad Mansour on or after January 4, 2020, while he was physically present in the United States and outside the United Nations Headquarters;

(d)    any meeting, communication or appearance (including public or virtual appearances) by Feda Abdelhandy-Nasser on or after January 4, 2020, while she was physically present in the United States and outside the United Nations Headquarters;

(e)     any meeting, communication or appearance (including public or virtual appearances) by Nadya Rasheed on or after January 4, 2020, while she was physically present in the United States and outside the United Nations Headquarters;

(f)     any meeting, communication or appearance (including public or virtual appearances) by Majed Bamya on or after January 4, 2020, while he was physically present in the United States and outside the United Nations Headquarters;

(g)     any meeting, communication or appearance (including public or virtual appearances) by Abdallah Abushawesh on or after January 4, 2020, while he was physically present in the United States and outside the United Nations Headquarters;

(h)     any meeting, communication or appearance (including public or virtual appearances) by Nada Tarbush on or after January 4, 2020, while she was physically present in the United States and outside the United Nations Headquarters;

(i)     any meeting, communication or appearance (including public or virtual appearances) by Saher Salam on or after January 4, 2020, while he was physically present in the United States and outside the United Nations Headquarters; and

(j)     any meeting, communication or appearance (including public or virtual appearances) by Nadia Ghannam on or after January 4, 2020, while she was physically present in the United States and outside the United Nations Headquarters.

29.     All documents concerning communications made by, on behalf of, or for the benefit of a Defendant with any of the following persons on or after October 1, 2019:

(a)     George Saba, of Michigan;

(b)     Ahmad Alahmad, of California;

(c)     Ghassan Barakat, of Illinois;

- 17 -

(d)     Yousif Marei, of Illinois;

(e)     Awni Abu Hdba, of New Jersey;

(f)     Samir J. Farhat, of Florida;

(g)     Areej Barghouthi, of Illinois;

(h)     Sadeddin A. Malley, of Illinois;

(i)     Fuad Ateyeh, of California; or

(j)     Hesham Mohd, of Louisiana.


Dated: New York, New York                    Cohen & Gresser LLP
       February 8, 2021


By:_____*/s/ Stephen M. Sinaiko*_____
       Stephen M. Sinaiko
800 Third Avenue
New York, New York   10022
(212) 957-7600
*ssinaiko@cohengresser.com*

Ronald F. Wick (Admitted *Pro Hac Vice*)
2001 Pennsylvania Avenue, NW
Suite 300
Washington, DC   20006
(202) 851-2070
*rwick@cohengresser.com*

*Attorneys for Plaintiffs*