

Squire Patton Boggs (US) LLP
2550 M Street, NW
Washington, D.C.  20037

O  +1 202 457 6000
F  +1 202 457 6315
squirepattonboggs.com

Gassan A. Baloul
T  +1 202 457 6155
gassan.baloul@squirepb.com

**VIA ECF**

March 31, 2021

Hon. Mary Kay Vyskocil
United States District Court Judge, Southern District of New York
500 Pearl Street, Room 2230
New York, New York 10007-1312

**Re:  *Shatsky v. PLO*, Case No. 18-cv-12355-MKV**

Dear Judge Vyskocil:

On behalf of Defendants Palestinian Authority ("PA") and the Palestine Liberation Organization ("PLO"), and pursuant to Rules 4(A)(i) and 9(B) of Your Honor's Individual Rules of Practice in Civil Cases, we write to seek leave to file a motion to seal the entirety of Plaintiffs' Exhibit G attached to the parties' joint letter on discovery (ECF 65).  Pursuant to Rule 9(B)(i) of Your Honor's Individual Rules of Practice in Civil Cases Defendants, we have filed Plaintiffs' Exhibit G under seal for viewing by Selected Parties. Exhibit G is comprised of confidential Palestinian government records produced by Defendants in partially redacted form and marked "CONFIDENTIAL" pursuant to the Superseding Stipulation and Order Concerning Production of Confidential Documents and Information (ECF 64) ("Order"), the terms of which provide a basis for this Court to maintain the confidentiality of these records.  Independent of the Order, as outlined below, compelling reasons support this request because the Exhibit constitutes Defendants' confidential and sensitive government records, which include personal and financial information of non-parties whose privacy and security interests would be compromised by disclosure on the public record.  Plaintiffs take no position with respect to Defendants' anticipated motion to seal (i.e., Plaintiffs neither consent to nor oppose the motion).

There is good cause to seal the records that comprise Exhibit G, which, as an initial matter, are not "judicial documents" subject to a presumption of public access at this stage of the litigation. *See Brown v. Maxwell*, 929 F.3d 41, 49 (2d Cir. 2019) (to be designated as a judicial document, an item "must be relevant to the performance of the judicial function and useful in the judicial process").  Documents passed between the parties in discovery "play no role in the performance of Article III functions," and thus "lie entirely beyond the presumption[ of public access]'s reach…." *SEC v. TheStreet.com*, 273 F.3d 222, 232 (2d Cir. 2001) (quoting *United States v. Amodeo*, 71 F.3d 1044, 1050 (2d Cir. 1995) ("*Amodeo II*"); *see also Nichols v. Noom Inc.*, No. 20-

Squire Patton Boggs (US) LLP is part of the international legal practice Squire Patton Boggs, which operates worldwide through a number of separate legal entities.

Please visit squirepattonboggs.com for more information.

Squire Patton Boggs (US) LLP                                                                    Hon. Mary Kay Vyskocil
**VIA ECF**                                                                                              March 31, 2021

CV-3677, 2021 U.S. Dist. LEXIS 43009, at *3-4 (S.D.N.Y. Mar. 8, 2021) (same). That rule is not changed by the fact that the documents may be relevant to later dispositive motions. *See*, *e.g.*, *Winfield v. City of N.Y.*, No. 15-cv-05236, 2017 U.S. Dist. LEXIS 103612, at *11-12 (S.D.N.Y. July 5, 2017) (courts assess "judicial document" status by evaluating it in connection with "the issues before the court"; accordingly, a preliminary expert report was maintained under seal while the court adjudicated discovery disputes, even though the report was "no question…an essential component of Plaintiffs' case on the merits") (citing *Newsday LLC v. Cty. of Nassau*, 730 F.3d 156, 166-67 (2d Cir. 2013)).

"[T]he mere filing of a paper or document with the court is insufficient to render that paper a judicial document subject to the right of public access." *United States v. Amodeo*, 44 F.3d 141, 145-46 (2d Cir. 1995) ("*Amodeo I*"). Further, when, as here, the parties have described the contents of the documents in public submissions in sufficient fashion for the court to resolve the dispute before it (*see* ECF 65), the documents should remain under seal because any "public[] interest in that information is already served, and would not be furthered by unsealing [the document] here." *In re Civil Contempt by Doe*, No. 12-mc-0557, 2016 U.S. Dist. LEXIS 80882, at *18 n.3 (E.D.N.Y. June 20, 2016). Further, because the court can resolve the discovery dispute based on the parties' narrative description of the documents, they are not "relevant to the performance of the judicial function and useful in the judicial process." *Brown*, 929 F.3d at 49 (internal quotation marks and citation omitted).

Absent the presumption of public access, a party seeking to maintain confidentiality of a document submitted to the court need only demonstrate "good cause," defined as "a minimal showing of possible harm from disclosure." *Byrnes v. Empire Blue Cross Blue* Shield, 98 Civ. 8520, 2000 U.S. Dist. LEXIS 702, at *19 (S.D.N.Y. Jan. 24, 2000). Good cause is evident here, given that unsealing Exhibit G would result in the public disclosure of confidential government records thereby revealing private financial information of non-party Palestinian residents.

Regardless of whether these records are considered "judicial documents," for the reasons set forth below, compelling interests overcome any presumption of public access that may apply to materials filed with the Court in connection with jurisdictional discovery proceedings. *See Brown*, 929 F.3d at 50 ("a court's authority to oversee discovery . . . is ancillary to the court's core role in adjudicating a case," and so "the presumption of public access in filings submitted in connection with discovery disputes . . . is generally somewhat lower than the presumption applied to material introduced at trial, or in connection with dispositive motions . . . .").

First, the privacy interests of third parties weigh heavily in favor of sealing Defendants' confidential records that comprise Exhibit G. *Amodeo II*, 71 F.3d at 1050-51 ("[t]he privacy interests of innocent third parties . . . should weigh heavily in a court's balancing equation.") (internal quotation marks and citation omitted). This is especially true for records that contain third-party financial information like the records at issue here. *SEC v. Telegram Grp., Inc.*, No. 19-cv-9439, 2020 U.S. Dist. LEXIS 106592, at *8-9 (S.D.N.Y. June 17, 2020) ("protecting the privacy interests of non-parties, including their business and financial records, represents a

legitimate basis for sealing documents.").[1]  Indeed, Palestinian privacy law prohibits the disclosure of the financial information such as that contained in Exhibit G.  *See* Palestinian Banking Law No. 2 of 2002, Art. 26 ("No such person shall disclose any [customer financial] information or enable a third party outside the bank to have access to it")[2]; Decree No. 10 of 2018 on Cybercrime, Art. 22 (forbidding "arbitrary" "interference with the privacy of any person or the affairs of his family, home or correspondence.").

Second, a sealing order is appropriate where the security of third parties is put at risk by public disclosure.  *United States v. Armstrong*, 185 F. Supp. 3d 332, 334 n.1, 338 (E.D.N.Y. 2016) (ordering that government letters remain under seal because their potential effect on the "safety and privacy" of the witness and his family overcame the public right of access); *Walker v. City of New York*, No. 15 CV 500, 2017 U.S. Dist. LEXIS 99238, at *15 (E.D.N.Y. June 26, 2017) (redacting summary judgment papers where the safety of a witness and his family were at risk); *United States v. Edelin*, 283 F. Supp. 2d 8, 10 n.2 (D.D.C. 2003) (sealing a motion containing personal identifying information of an alternate juror out of concern for the juror's safety).  Exhibit G identifies third-party individuals whose family members have been implicated in certain attacks, and thus publicly revealing their identities subjects them to the risk of retribution.  *See*, *e.g.*, The West Bank and Gaza 2018 Human Rights Report § 1(f), U.S. Department of State, Bureau of Democracy, Human Rights and Labor, https://www.state.gov/wp-content/uploads/2019/03/ISRAEL-AND-THE-GOLAN-HEIGHTS-2018.pdf (last visited Mar. 25, 2021) (describing the displacement of 45 Palestinians in 2018 as a result of "punitive demolitions" against "the homes of the families of Palestinians implicated in attacks against Israelis.").

Third, Exhibit G contains sensitive, non-public government records, which are also of the type traditionally protected under Palestinian law.  *See* Decree No. 10 of 2018 on Cybercrime, Art. 22, cited *infra*; Presidential Decree No. 9 of 2010, Art. 32.2 (only allowing disclosure of banking records with the bank client's consent or upon Palestinian court order).  Foreign laws of that type provide the Court with ample authority to maintain Exhibit G under seal.  *See Strauss v. Crédit Lyonnais, S.A.*, 2011 U.S. Dist. LEXIS 122694, at *19-22 (E.D.N.Y. Oct. 6, 2011) (sealing records in part because French law prohibited the documents' disclosure); *Oussama El Omari v. Ras Al Khaimah Free Trade Zone Auth.*, No. 16-CV-3895, 2017 U.S. Dist. LEXIS 136172, at *14 (S.D.N.Y. Aug. 17, 2017) (sealing a report, commissioned by the ruler of political subdivision of a foreign state, because it contained "highly sensitive, traditionally nonpublic . . . information . . . of a foreign government") (internal quotation marks and citation omitted).

For these reasons, the Court should seal Exhibit G in its entirety, and Defendants respectfully request that the Court grant Defendants leave to file a motion and accompanying memorandum of law to seal Plaintiffs' Exhibit G.

---

[1] The concern for non-party privacy interests is no different when those interests are jeopardized by the disclosure of government documents.  *United States v. Donato*, Nos. 03-CR-929; 05-CR-60, 2016 U.S. Dist. LEXIS 198424, at *6-8 (E.D.N.Y. Dec. 16, 2016) (sealing government documents that posed a harm to the privacy interests of cooperating witnesses and Bureau of Prison staff members).

[2] Arabic and English versions of Palestinian Banking Law No. 2 of 2002 were previously filed in *Linde v. Arab Bank*, No. 10-cv-00626, ECF 190-2, at 91-171 (E.D.N.Y. Apr. 9, 2012).

Squire Patton Boggs (US) LLP  Hon. Mary Kay Vyskocil
**VIA ECF**  March 31, 2021

Very truly yours,

Squire Patton Boggs (US) LLP

Gassan A. Baloul