```
                    UNITED STATES DISTRICT COURT
                  SOUTHERN DISTRICT OF NEW YORK


In re:                              :
                                         Docket #1:18-cv-12355
SHATSKY, et al.,                    : MKV

                    Plaintiffs,     :

   - against -                      :

The Palestine Liberation            : New York, New York
Organization, et al.,                 April 29, 2021
                                    :
                    Defendants.        TELEPHONE CONFERENCE
------------------------------------ :


                    PROCEEDINGS BEFORE
            THE HONORABLE JUDGE MARY KAY VYSKOCIL,
                 UNITED STATES DISTRICT JUDGE

APPEARANCES:

For Plaintiffs:          COHEN & GRESSER, LLP
                         BY:  STEPHEN MATTHEW SINAIKO, ESQ.
                         800 Third Avenue
                         New York, New York 10022
                         212-957-7600

                         COHEN & GRESSER, LLP
                         BY:  RONALD F. WICK, ESQ.
                            ERICA C. LAI, ESQ.
                         2001 Pennsylvania Avenue, NW
                         Washington, D.C.  20006
                         202-851-2070



Transcription Service:   Carole Ludwig, *Transcription Services*
                         155 East Fourth Street #3C
                         New York, New York 10009
                         Phone:  (212) 420-0771
                         Email:  Transcription420@aol.com

Proceedings conducted telephonically and recorded by
electronic sound recording;
Transcript produced by transcription service
```

APPEARANCES - CONTINUED:

For Plaintiffs:          WINSTON & STRAWN LLP
                         BY:  SOFIA ROA ARGUELLO, ESQ.
                              DAVID KOLANSKY, ESQ.
                         200 Park Avenue
                         New York, New York 10166
                         212-294-5304

For Defendants:          SQUIRE PATTON BOGGS (US) LLP
                         BY:  MITCHELL RAND BERGER, ESQ.
                              GASSAN ADNAN BALOUL, ESQ.
                         1211 Avenue of the Americas
                         New York, New York 10036
                         212-872-9800

                         SQUIRE PATTON BOGGS (US) LLP
                         BY:  JOSEPH STEWART ALONZO, ESQ.
                         30 Rockefeller Plaza
                         New York, New York 10112
                         212-872-9831

## INDEX

### E X A M I N A T I O N S

| Witness | Direct | Cross | Re-Direct | Re-Cross |
|---------|--------|-------|-----------|----------|
| None | | | | |

### E X H I B I T S

| Exhibit Number | Description | ID | In | Voir Dire |
|----------------|-------------|----|----|-----------|
| None | | | | |

```
 1                          PROCEEDINGS                    4

 2              HONORABLE MARY KAY VYSKOCIL (THE COURT):  Good

 3     afternoon.  This is Judge Vyskocil.

 4              Ms.  Dempsey, would you call the case, please?

 5              THE CLERK:  Good afternoon, your Honor.  We're

 6     here in the matter of 18-civil-12355, Shatsky et al v.

 7     Palestine Liberation Organization et al.

 8              Counsel, starting with plaintiff, please state

 9     your name for the record.

10              MR. STEPHEN SINAIKO:  Good afternoon, Judge.  My

11     name is Steve Sinaiko.  I am with Cohen & Gresser here in

12     New York City, and I'm here this afternoon on behalf of the

13     plaintiffs.

14              THE COURT:  All right, good afternoon.

15              MR. RONALD WICK:  Good afternoon, your Honor.

16     This is Ron Wick with Cohen & Gresser, also on behalf of

17     the plaintiffs.

18              [Judge leaves session briefly to get papers.]

19              THE COURT:  I'm sorry.  Could I ask plaintiff's

20     counsel to begin again with appearances?

21              MR. SINAIKO:  Certainly, your Honor.  My name is

22     Steve Sinaiko; I'm with Cohen & Gresser here in New York

23     City, and I'm here this afternoon on behalf of the

24     plaintiffs.

25              THE COURT:  All right, good afternoon,
```

```
 1                        PROCEEDINGS                  5
 2  Mr. Sinaiko.
 3            MR. WICK:  And this is Ron Wick with Cohen &
 4  Gresser in Washington, DC, also for the plaintiffs.
 5            THE COURT:  All right.  Good afternoon, Mr. Wick.
 6            Other appearances for the plaintiffs?
 7            MS. ERICA LAI:  Erica Lai from Cohen & Gresser
 8  from Washington, DC, also on behalf of the plaintiffs.
 9            THE COURT:  Good afternoon, Ms. Lai.
10            MS. SOFIA ARGUELLO:  Good afternoon, your Honor.
11  This is Sofia Arguello from Winston & Strawn in New York, also
12  on behalf of the plaintiffs.
13            THE COURT:  Good afternoon, Ms. Arguello.
14            MR. ABBE LOWELL:  And, your Honor, this is Abbe
15  Lowell, also of Winston & Strawn, appearing on behalf of the
16  plaintiffs.
17            THE COURT:  All right.  Good afternoon, Mr. Lowell.
18            Anyone else for the plaintiffs?
19            Mr. Kolansky is not on the line?
20            MR. DAVID KOLANSKY:  Your Honor, I'm here.  This
21  is David Kolansky on behalf of plaintiffs, from Winston &
22  Strawn in New York.  I have not filed an official
23  appearance in this case, however.
24            THE COURT:  Okay.  I see.  All right.  Anyone else
25  on behalf of the plaintiffs?
```

```
 1                          PROCEEDINGS                   6
 2              All right, then, on behalf of the defendants,
 3     please?
 4              MR. MITCHELL BERGER:  Good afternoon, your Honor.
 5     This is Mitchell Berger from Squire Patton Boggs for the
 6     defendants.
 7              THE COURT:  Good afternoon, Mr. Berger.
 8              MR. MITCHELL BERGER:  Good afternoon.
 9              THE COURT:  Other --
10              MR. GASSAN BALOUL:  Good afternoon, your Honor.
11     This is Gassan Baloul from Squire Patton Boggs on behalf of
12     defendants.
13              THE COURT:  Good afternoon, Mr. Baloul.
14              MR. JOSEPH ALONZO:  Good afternoon, your Honor.
15     Joe Alonzo from Squire Patton Boggs on behalf of the
16     defendants.
17              THE COURT:  Good afternoon.  Are there any other
18     appearances?
19              All right, then, thank you.  So we are here for
20     basically a discovery conference to deal with the
21     squabbling that is going on among the parties.  We're
22     conducting today's conference remotely by telephone because
23     we remain subject to certain restrictions as a result of
24     COVID-19, and frankly, for the efficiency and cost savings
25     to all parties.
```

```
 1                        PROCEEDINGS                    7

 2            Having said that, today's contact information was

 3   posted on ECF, and the hearing is open to the press and the

 4   public as if we were in open court.  Anybody wishing to

 5   access today's proceedings is able to do so using that

 6   contact information.  I would remind everyone on the call

 7   that, as with all court proceedings, you are strictly

 8   prohibited from recording or rebroadcasting any portion of

 9   today's proceedings.

10            I would ask, given the large number of people that

11   we have on the line, that everyone -- and that's whether

12   you've stated an appearance on the record not -- please

13   mute your lines to cut down on background noise and

14   interference on the phone lines.  When you do address the

15   Court, obviously, you need to unmute your line, and please

16   identify yourself for the record so that it is clear to the

17   Court who is addressing me.

18            So, as I said, we're here because the parties seem

19   to, in my view, unnecessarily be behaving rather

20   unprofessionally and unable to deal with in a professional

21   manner the discovery issues in this case.

22            At ECF number 60 on -- I believe the date was

23   February 8th -- I entered an Order authorizing the

24   plaintiffs to conduct jurisdictional discovery to determine

25   whether the defendants are subject to personal jurisdiction
```

1
2   under the Promoting Security and Justice for Victims of

3   Terrorism Act, the PSJVTA of 2019.  Apparently the

4   plaintiffs have served discovery, document requests,

5   noticed depositions and served Requests for Admissions.  It

6   is the Court's understanding that the defendants have

7   produced a handful of documents pursuant to the document

8   demand, some of which they have redacted.  And they take

9   the position that since at least one of those documents

10  establishes a payment as defined in the statute in relation

11  to a terrorist act that injured or killed a US national,

12  that they don't need to produce discovery with respect to

13  any of the other prongs of the statute establishing

14  jurisdiction.  As I understand defendants' position, it's

15  because the plaintiffs in their Complaint specifically

16  allege jurisdiction under that prong of the statute.

17  Defendants also resist the attempt by the plaintiffs to

18  conduct depositions.  As I understand it, five potential

19  witnesses have been noticed for deposition.

20          After I scheduled today's conference to deal with

21  those issues and with the corresponding request by the

22  plaintiffs to enlarge the time within which discovery had

23  to be completed and modify the schedule for the summary

24  judgment motions that defendants have told me they intend

25  to make, I received additional letters.  Those letters

```
 1                         PROCEEDINGS                    9
 2   complain about defendants' responses to Requests for
 3   Admissions that were served.
 4         And then there are another round of letters
 5   dealing with a request by the plaintiffs to take additional
 6   discovery under Rule 56 in connection with the contemplated
 7   Motion for Summary Judgment by the defendants.
 8         So -- and then there's another letter in between
 9   suggesting that I have to deal with everything at today's
10   conference.
11         So let me just first say at the outset the flurry
12   of letter writing needs to come to an end.  The Court
13   doesn't need letters from the parties suggesting to us how
14   to manage the docket.  It's apparent to the Court that I
15   should deal with all of the outstanding issues when I have
16   parties in before me.  So I don't need a letter from the
17   litigants suggesting that to me.
18         Next, with respect to the request to take
19   discovery in regard to the contemplated summary judgment
20   motions, I agree completely with the defendants that that
21   letter is premature.  And, frankly, I put it in the
22   category of what I'm talking about where I don't think
23   people are behaving very professionally or with the level
24   of experience and expertise and reputation that the two
25   firms before me -- actually, I guess it's more than two
```

1                            PROCEEDINGS                    10

2    firms -- three firms before me have.  The letters are

3    written largely on behalf of -- on the letterheads Squire

4    Patton Boggs and Cohen & Gresser.  I haven't seen anything

5    addressed to me from Winston & Strawn, so I'm addressing

6    the comments about the letter-writing campaign largely to

7    Squire Patton Boggs and Cohen & Gresser.  You just need to

8    stop this letter-writing campaign.

9              But I agree with Squire Patton Boggs that the

10   request for Rule 56 discovery is premature, and it's denied

11   right now without prejudice.  Let's wait until the motions

12   get made and see what the arguments are before you start

13   saying you need discovery to respond to those motions.  So

14   that takes care of the letter motion at 76 and the

15   opposition at 77 on the docket.

16             With respect to the discovery requests I have

17   carefully read all of the documents that you've submitted

18   to me.  And I have the following observations before I hear

19   from people.  First of all, the defendants do not get to

20   unilaterally say, "I've given you a document that fits

21   within one of the prongs of the statute which you,

22   plaintiffs, say is sufficient to establish jurisdiction;

23   and, therefore, I'm not going to give you anything beyond

24   those handful of documents, and I'm not giving you anything

25   with respect to the rest of the prongs."  That's just not

PROCEEDINGS                    11

1

2    defendant's call -- unless the defendants are prepared to

3    stipulate that personal jurisdiction exists in this case.

4    If you're not prepared to do that, you need to respond to

5    the discovery and turn over documents with respect to each

6    of the potential prongs of the statute.

7              Having said that -- and the same is true, frankly,

8    with respect to the Requests for Admissions.  One of the

9    objections that I read with respect to the documentary

10   discovery notices is that, well, some of this may be

11   appropriate to deal with in Requests for Admissions.  And

12   then as I read the correspondence that came in about the

13   Requests for Admissions, it seems that the position that

14   was taken is that, among other things, is that the Requests

15   for Admissions are -- let me just find the part that I'm

16   trying to remember here -- that they go to things beyond

17   that one prong of the statute that you're talking about and

18   that, in any event, they're overly broad, you can't use

19   them to obtain an admission of a fact already known, and I

20   take it there's some suggestion facts are known by virtue

21   of the documents that we've produced.  It is not

22   appropriate to respond to a Request for Admission by

23   saying, "Well, you can get the information out of the

24   documents."

25             Now, having said that, the plaintiffs' discovery

1

2  demands are grossly overbroad and abusive.  I think I read

3  somewhere there were 200 Requests for Admissions.  That's

4  just ridiculous.  I authorized jurisdictional discovery in

5  this case; I did not authorize the kind of abusive, overly

6  broad discovery that has been propounded here.  So, for

7  example, the plaintiffs are not entitled to decades of

8  information when all I have ordered is jurisdictional

9  discovery, and this statute was passed in 2019.  So

10  decades' worth of information is simply inappropriate in

11  this case.

12          Now, finally, with respect to the depositions, the

13  wholesale refusal to produce witnesses is inappropriate and

14  overruled, and the witnesses should be produced.  To the

15  extent the defendant has a legitimate objection, for

16  example, there's an argument that some of the questions

17  that will be asked will invade functional immunity under

18  the United Nations, I guess it's Headquarters Charter.  If

19  questions get asked that invade privileged areas, object on

20  the record at the deposition that that's not a grounds to

21  wholesale refuse to produce someone.  So I'm going to order

22  one by one -- let's deal with the depositions -- and I am

23  ruling that the five witnesses are to be produced.

24          With respect to the Requests for Admissions and

25  the document demands, I am ordering that it is not

1                            PROCEEDINGS                    13

2    appropriate, and I'm overruling an objection based on the

3    fact that we've already produced one document that

4    establishes or falls within the first prong of the statute

5    for jurisdictional purposes.  And absent an admission or a

6    stipulation on the record by the defendants -- I'm not

7    saying you -- clearly you don't waive your challenge to the

8    legitimacy or the constitutionality of the statute

9    itself -- but unless you're prepared to stipulate that

10   under the statute as written you are subject to

11   jurisdiction, the objections to the discovery are

12   overruled.

13            Having said that, I am directing the plaintiffs to

14   go back and pare back your discovery and limit it to

15   jurisdictional discovery of a reasonable amount with the

16   time parameters in mind that I've just suggested.

17            Now, I will hear from people if they wish to be

18   heard; but, as far as I'm concerned, you have my views on

19   the subject, and the final thing we need to talk about is a

20   new schedule.  I'm telling the parties right now the

21   defendant, in my view, is in contempt of my Order that

22   jurisdictional discovery should take place.  The defendant

23   does not get to define what that discovery should be,

24   absent a stipulation which moots the need for the

25   discovery, in which case you should have made the

```
 1                          PROCEEDINGS                    14
 2   stipulation and written to the Court saying the need for
 3   discovery is now mooted.  And you haven't done that.  Any
 4   further obstruction of discovery, I will entertain
 5   applications for sanctions.  Having said that, the
 6   plaintiffs' discovery is also overly broad and abusive.
 7   But the proper remedy for that is for someone to bring on a
 8   Motion for a Protective Order.
 9            So is there anybody who wishes to be heard with
10   respect to the Court's guidance on these discovery issues?
11            MR. SINAIKO:  Your Honor, this is Steve Sinaiko
12   for the plaintiffs.
13            THE COURT:  All right, the plaintiffs first, and
14   then I'll hear from the defendants.  It's the plaintiffs'
15   discovery.  But I'm warning you do not spit back at me
16   everything you've said in all of these volumes of letters.
17   I've read them all with great care.
18            MR. SINAIKO:  Thank you very much, your Honor.  I
19   certainly don't want to -- I don't want to delay you with a
20   recitation of what's in our papers; I would not do that.
21   What I do want to point out is that --
22            THE COURT:  All right, I'm sorry, excuse me.  Who
23   is speaking to me?
24            MR. SINAIKO:  It's Steve Sinaiko for the
25   plaintiffs.
```

1                      PROCEEDINGS                    15

2              THE COURT:  All right, Mr. Sinaiko, go ahead.

3              MR. SINAIKO:  As I said, I don't want to go back

4   over what's already set out in the letters -- and I know

5   you've read them, and that's as it should be.  What I did

6   want to point out were a couple of things.  Number one, our

7   document requests actually are tailored to the time limits

8   that are set out in the PSJVTA, that is to say, I think

9   April 18th, you know, for prisoner payments and martyr

10  payments, and I think it was January -- there was a date in

11  January of 2020 with respect to US facilities and

12  activities.

13             That said, there is a need for some -- with

14  respect to the prisoner payments issue, we're only

15  interested in seeking discovery with respect to payments

16  that were made during the time period that is relevant to

17  the PSJVTA, but what I want to clarify is the underlying

18  events that made a -- that is to say, the terrorist attacks

19  that make a particular payment a prisoner payment or a

20  martyr payment that triggers the PSJVTA, those events can

21  be back some time.  And, in fact, in some instances, they

22  date back a long time because, as we understand it, the

23  defendants' practices to continue making payments in

24  respect of terrorist activities long after the activities

25  take place, and we still have to make a prima facie showing

1

2  that these terrorist acts occurred and that the payments

3  are being made by reason of the imprisonment of the person

4  in respect of whom the payment is being made or the death

5  of that person.  So there are some documents that we'll

6  need that go back beyond the time period, you know, beyond

7  the narrow time frames that the PSJVTA sets.  But we only

8  want, you know --

9           THE COURT:  [indiscernible] --

10           MR. SINAIKO:  Oh, I'm sorry.

11           THE COURT:  -- during the time frame, right?

12           MR. SINAIKO:  Sorry?

13           THE COURT:  But the payments have to be made

14  during the relevant time frame.

15           MR. SINAIKO:  Of course.  And we've only asked for

16  documents relating to payments that were made during the

17  time frame, and we're only interested in US activities and

18  facilities that are in place or being used during the

19  statutory time frames.  The other -- the information or

20  documents that we want that predates the time frames is

21  just, you know, with respect to other elements of the

22  statute that also need to be established, you know, to

23  which we also need to make our prima facie case.  So that

24  said, we are certainly prepared to work with the

25  defendants.  We have had a number of conferences with them,

```
 1                      PROCEEDINGS              17
 2  a number of meet-and-confers to try to work out our
 3  differences.  We are prepared to -- we're prepared to work
 4  to narrow our requests in a cooperative way.
 5           With respect to the US activities and facilities
 6  prong of the PSJVTA, our efforts to narrow the requests
 7  that we've made really are going to have to be done in a
 8  cooperative way.  We're going to need some help from the
 9  defendants in order to appropriately tailor those requests.
10  So we're prepared to work with -- you know, we're prepared
11  to work to limit our requests appropriately, but the only
12  point I want to make is we're going to need some help from
13  the defendants to get that done.
14           THE COURT:  All right, counsel, defendants don't
15  have an obligation to tell the other side what kind of
16  discovery they should be asked for.  So --
17           MR. SINAIKO:  Well, of course, your Honor.
18           THE COURT:  Hold on.  Hold on.
19           MR. SINAIKO:  I'm sorry.
20           THE COURT:  So narrow your requests, send a letter
21  or call the other side.  And it sounds like you probably
22  all should do the things initially in writing because you
23  can't agree on anything.  So narrow your requests and
24  settle on, with my guidance that I've given you, what you
25  believe are appropriate document demands and RFAs that
```

1
2    you're going to press.  The other side then has an

3    opportunity to give you objections or try to get you to

4    narrow them further.  If you don't, either they move for a

5    Protective Order or you move to compel, and the party

6    that's abusing the process is going to be subject to

7    sanctions.

8              MR. SINAIKO:  Yes, your Honor.  If I could, the

9    one point I had in mind -- and this is something that we

10   had raised with Mr. Berger during one of our meet-and-

11   confers some time ago -- it would be very helpful to us

12   from the perspective of narrowing our requests with respect

13   to the US facilities and activities prong of the statute --

14   if we had, you know, in our hands a document that lists the

15   individuals who are either employees or agents of the

16   defendants or otherwise conducting activities in the United

17   States on their behalf during the relevant period because

18   if we have a list of that nature, we can focus, you know,

19   on the description of what these people's jobs are here in

20   the United States, it would be possible for us to formulate

21   discovery requests that are tailored, you know, to the

22   nature of the activities that might be going on here in our

23   country.

24             So I guess what I'm saying is with that list in

25   hand -- it would be very difficult for us to limit our

```
 1                        PROCEEDINGS                 19
 2  requests, you know, vis-à-vis the US --
 3             THE COURT:  -- asking for that?
 4             MR. SINAIKO:  I'm sorry?
 5             THE COURT:  Did you serve a request asking for
 6  that?
 7             MR. SINAIKO:  We did.  We served a request asking
 8  for that information, and it was declined.
 9             MR. BERGER:  No, that's not correct, your Honor.
10  But I'll wait for Mr. Sinaiko to finish.  This is Mitchell
11  Berger speaking.
12             THE COURT:  All right.
13             MR. SINAIKO:  We served a request asking for an
14  organization chart.  We served a request asking for the
15  identities of individuals who have conducted activities in
16  the United States on behalf of the defendants during the
17  relevant period.  And during the meet-and-confer, we
18  specifically requested a list along the lines of what I
19  just described, and Mr. Berger said that such a list was in
20  preparation for us.  But it was never delivered.  So
21  without that kind of information, it's actually difficult
22  for us to tailor the document requests in the way that the
23  Court is suggesting, although of course we're prepared to
24  make an effort to do that.  I guess what I'm trying to do
25  is lay down my marker and perhaps get the Court's
```

```
 1                        PROCEEDINGS                    20

 2  assistance in helping us get the information that we need

 3  in order to do this as efficiently as it can be done.

 4            THE COURT:  Look, counsel, I'm not going to teach

 5  you how to conduct discovery in this case, but the statute

 6  has several prongs and says, you know, if you make payments

 7  to recipients defined in the provision in relation to a

 8  terrorist act that injured or killed a US national, why

 9  aren't you just asking for all documents that reflect that?

10            MR. SINAIKO:  We've done that, your Honor.  We've

11  done that.

12            THE COURT:  So --

13            MR. SINAIKO:  I'm actually now talking about the

14  paper-sway prong of the statute, as we call it.  What I'm

15  now talking about is the prong of the statute relating to

16  activities undertaken on behalf of the defendants in the

17  United States during --

18            THE COURT:  I understand.  You --

19            MR. SINAIKO:  Okay.

20            THE COURT:  -- cut me off.  And I was going --

21            MR. SINAIKO:  I apologize.

22            THE COURT:  -- to say request number two should

23  say, "All documents relating to the maintenance of any

24  office or other facility or the engagement in any activity

25  in the United States," during the relevant time period.
```

```
 1                        PROCEEDINGS                    21
 2            MR. SINAIKO:  Okay.
 3            THE COURT:  To me, those are the two requests you
 4   ought to be making.
 5            MR. SINAIKO:  I think that's helpful, your Honor.
 6            THE COURT:  All right.  Let me hear from the
 7   defendants.
 8            MR. BERGER:  Thank you, your Honor.  This is
 9   Mitchell Berger from Squire Patton Boggs.  I had four quick
10   points I'd like to make.  One is given the point your Honor
11   made about functional immunity for the depositions, would
12   your Honor be open, as an alternative, to a 30(b)(6)
13   deposition of defendants that listed the topics so that we
14   would be able, in lieu of the 530(b)(1) depositions they've
15   noticed, so we'd be able to determine in advance whether
16   we're going to run into issues of immunity?  It strikes me
17   that that is a way of ferreting out in advance whether
18   there are objectionable topics on which we need the Court's
19   guidance rather than interrupting depositions to plague the
20   Court with discussions about objections.
21            THE COURT:  All right, look, my reaction to that
22   is certainly Mr. Sinaiko and his colleagues could serve a
23   30(b)(6) deposition notice in which they asked for the
24   person most knowledgeable with respect to the two
25   categories, the two prongs that could create jurisdiction.
```

```
 1                        PROCEEDINGS                      22

 2   And you could then pick the witness.  But they also are

 3   entitled to get witnesses whose identities are known to

 4   them if they have a good-faith belief consistent with their

 5   obligations as officers of the court.  And I'm not going to

 6   tell them that they can't act for somebody by name.

 7              MR. BERGER:  Certainly, your Honor.  And that

 8   leads to my second point, which is four of the five

 9   deponents they have noticed are senior officials of

10   Palestine's mission to the United Nations.  And not only do

11   they know the names, they apparently know what it is they

12   want to try to prove from these individuals because they

13   have both alleged these statements in their Complaint and

14   put them into the Requests for Admissions, and we have

15   admitted them.  And that's why, your Honor, respectfully,

16   we object that the depositions were not the most efficient

17   way to find out that information.

18              Given that we have admitted to their public

19   statements, we suspect that what they want to do is get

20   into areas of privilege.  And I certainly hear your Honor

21   and fully comply with the point about functional immunity;

22   however, it seems like we could avoid and narrow areas of

23   anticipated likely dispute if in lieu of the 30(b)(6)

24   deposition, for example, of the ambassador to the United

25   Nations, they ask what they wanted along the lines of what
```

PROCEEDINGS                    23

1

2  your Honor suggested about here are the subjects we want to

3  discuss, you know, activities in the United States falling

4  outside the exemptions in the statute.  That is a much

5  narrower deposition and one that will avoid areas of

6  dispute going forward.

7          THE COURT:  Well, I'm telling you -- I'm telling

8  them right now that the depositions are limited to the

9  categories that I summarized looking at the statute, the

10  two bases for the assertion of jurisdiction under the

11  statute.  Everything else is off limited.

12          MR. BERGER:  Thank you, your Honor.  That's very

13  helpful.  I hadn't fully appreciated that, and I do

14  appreciate the Court's guidance on that.

15          THE COURT:  All that's allowed is jurisdictional

16  discovery at this point.  And I, in fact, already ruled

17  that their request for merits discovery, which, you know,

18  they asked for in order to respond to your summary judgment

19  motions which haven't been made, is premature.

20          MR. BERGER:  Thank you, your Honor.  And that's a

21  very helpful clarification.

22          The second and third points I wanted to make go to

23  your Honor's point about the stipulation.  And this is what

24  has -- where I think our ability to speak with the Court is

25  helpful, which is the defendants don't contest that the

PROCEEDINGS                    24

1
2    payments that are reflected in the documents that we

3    produced satisfy the factual predicate of the PSJVTA

4    regarding payments.  What we have wanted to do is make sure

5    that any such statement that we do not contest that

6    predicate leaves us fully open to make our constitutional

7    arguments and other arguments, legal arguments, against

8    application of the statute.  If that helps narrow the areas

9    for jurisdictional discovery, we think we have been clear

10   that we do not contest that predicate.

11            THE COURT:  All right, let me make one

12   clarification about that.  I understand you to be -- well,

13   from the letters, I should say, what I understood was that

14   you are willing to concede or admit or stipulate to the

15   fact that there were payments made in relation to a

16   terrorist act that injured or killed a US national and that

17   your position was since you are willing to agree that that

18   statutory predicate has been met, you will not turn over

19   discovery with respect to the second prong about

20   maintaining an office or a facility or engaging in activity

21   in the United States that is not exempt.

22            MR. BERGER:  Respectfully, your Honor, that is not

23   correct.  If I might just for 30 seconds rewind the tape to

24   our November 2020 conference?  Your Honor directed the

25   plaintiffs to amend their Complaint to state their PSJVTA

1

2  theory.  They stated four theories under the PSJVTA, three

3  of which involve US activities.  We have provided discovery

4  with respect to all four of them.  Discovery has been

5  provided on the so-called consular activities in the United

6  States.  That occurred by way of third-party depositions in

7  which everybody participated.  Their so-called political

8  propaganda and proselytizing in the United States, which

9  appears at paragraph 70 through 83 of the Amended

10  Complaint, we have provided admissions on that issue in our

11  responses to Requests for Admissions, which fully address

12  the relevant paragraphs of the Amended Complaint alleging

13  such activities.  And we do not contest that as to the

14  fourth one, an office in the United States, we don't

15  contest that the UN mission is there.  The debate is purely

16  a legal one, which is whether or not that is an "office,"

17  quote/unquote, in the United States in the language of the

18  statute or whether it's exempt.

19         But there really are no factual disputes, and it's

20  incorrect for Mr. Sinaiko to argue that we've only provided

21  discovery with respect to the payments prong, when in fact

22  we have provided discovery through admissions responses and

23  third-party discovery on the US activities prong.  Our only

24  argument, your Honor, has been whether it is sufficient in

25  order to allow us to move to a Motion to Dismiss, which

```
 1                         PROCEEDINGS              26

 2  raises entirely legal issues.

 3            THE COURT:  Right.  But -- so you told me with

 4  respect to the three US activities theories, you've given

 5  discovery by way of responses to Requests for Admissions.

 6  But you have shut down documentary discovery with respect

 7  to that, correct?

 8            MR. BERGER:  Yes, your Honor, because of our

 9  concern over functional immunity, which of course applies

10  to documents as well as to testimony.  And what they want,

11  in essence, is for us to open the files of the UN mission.

12  And from our standpoint, everything that they want from the

13  UN mission has to do with something that is covered by

14  functional immunity.

15            I mean, your Honor, we hear you loud and clear.

16  It is not our objective to be in contempt of the Court's

17  Order, but by the same token, we cannot waive the UN

18  mission's functional immunity under the UN Headquarters

19  Agreement.

20            THE COURT:  But your response needs to say, "We

21  will produce all responsive documents, subject to the

22  functional immunity privilege," or attorney-client or

23  whatever other privileges there might be.  You cannot say,

24  "I concede this and so I'm not giving you the documents."

25  Because they are entitled to probe and, you know, frankly,
```

```
 1                          PROCEEDINGS                    27
 2   challenge the accuracy of your concessions that there is
 3   this limited amount of activity.  And they're entitled to
 4   probe whether there's more activity than what you're
 5   conceding, for example.
 6             MR. BERGER:  Your Honor -- and I hear the Court
 7   loud and clear -- but I'm trying simply to get guidance so
 8   that we're not back here in three weeks and your Honor
 9   says, "Weren't you listening to me?" because we are
10   listening, and we're trying very hard to understand where
11   we go.
12             But, for example, there's an enormous amount of
13   documentation, all of which falls within the document
14   requests as currently stated, overbroad to be sure, that
15   effectively asks for every piece of paper during the post-
16   PSJVTA period generated within the UN mission of Palestine.
17   And that simply can't be something where we can turn that
18   over unless your Honor directs us to do so because it has
19   to do with the diplomacy of Palestine.
20             THE COURT:  But my answer, if I were in your
21   shoes, would be that that is overly broad, that is not --
22   every document generated by a mission doesn't go to
23   establishing that the mission exists, so that if you're
24   stipulating that the mission exists, then that one can be
25   taken off the table.  And I --
```

```
 1                         PROCEEDINGS                 28

 2              MR. BERGER:  We -- I'm sorry, your Honor; I didn't

 3    mean to interrupt.

 4              THE COURT:  I hear you that you may have a legal

 5    argument that that doesn't suffice for statutory purposes.

 6    And we'll deal with that separately once we get past

 7    discovery.

 8              So I think I was pretty loud and clear to the

 9    plaintiffs that I found their requests overly broad and

10    abusive.  So every document generated by a mission or every

11    document generated by activities in the United States is

12    overly broad, grossly overly broad.

13              MR. BERGER:  Thank you, your Honor.  And that's

14    very helpful.  And to answer your Honor's question of a

15    moment ago, we do not contest that the mission exists.  The

16    debate is purely a legal one about where the Court

17    ultimately will draw the line as to whether or not the

18    activities of mission personnel, which are known and which

19    are the subject both of their allegations and Requests for

20    Admissions that we have admitted, whether those fall within

21    or without the ambit of the statute.  And so we're not

22    resisting admitting those statements; and if there are

23    related documents that they want to focus on, then I

24    suppose that doesn't raise the functional immunity issue.

25    But their theory, as I read it and as it has been
```

```
 1
 2  articulated during our meet-and-confer process, is in
 3  essence the UN mission to the extent they're simply not
 4  standing on the floor of the General Assembly or the
 5  Security Council, that's the only thing that's protected.
 6            And our view is that, given the mandate of the
 7  mission to advocate for Palestinian statehood, the
 8  mission -- the personnel, when they're engaged in public
 9  advocacy, are covered by functional immunity.  And we're
10  never going to agree, plaintiffs and defendants, on that
11  one, and so we'll simply be arguing over it.  What we need
12  to be focusing on, respectfully, is facts.  Their Requests
13  for Admissions, for example, use language like, you know,
14  "within the meaning of the PSJVTA."  Those are requests
15  for -- I am sure, if they narrow their requests, we can
16  deal with that.
17            But our main concern is we can't be in a position
18  both here and generally of waiving the functional immunity
19  that protects the mission's papers.  But we do stipulate
20  that the mission exists.  We have admitted that the mission
21  personnel, the ambassador and others, have made the
22  statements that are alleged in the Complaint.  And we've
23  done that in responses to Requests for Admissions number 65
24  and 74 through 91.  And so in some instance our problem is
25  we don't think the plaintiffs are willing to believe what
```

 1

 2   they see from us.  Your Honor, I'm not trying to --

 3           THE COURT:  Well --

 4           MR. BERGER:  -- trying to re-argue.  I hear what

 5   you're saying.  That's our problem.

 6           THE COURT:  Right.  I think the problem is also a

 7   little bit different.  I do think, in fairness to your

 8   side, the plaintiffs are trying to use this to get some

 9   discovery that could be arguably merits based.  I do also

10   pick up -- and I'm willing to hear from you in response,

11   Mr. Sinaiko -- I do also pick up that you are, it seems,

12   not streamlining discovery to this case and you are looking

13   at, you know, other litigations that are pending elsewhere,

14   as well.  I could be wrong about that, but I would like to

15   hear from you why these stipulations don't moot much of the

16   discovery that you're asking for.

17           MR. SINAIKO:  Your Honor, Steve Sinaiko here.

18   Thank you very much for -- your inviting me to comment.

19   You know, Mr. Berger says that, for example, the question

20   whether the UN mission, you know, falls within -- you know,

21   the permanent observer mission falls within the UN

22   exemption under the PSJVTA is a pure legal question.  The

23   answer to that is it actually is both a fact and a legal

24   question because it depends on how that facility is used.

25   It may well be that Mr. Berger is prepared to stipulate

1

2  that the mission is used exclusively for purposes of the,

3  you know, official business of the United Nations, but I

4  don't think the plaintiffs are prepared to stipulate to

5  that.  As you acknowledged a moment ago, we're entitled to

6  test that assertion.  And the only way for us to test that

7  assertion was to talk to people who work there, get

8  documents and understand what exactly is going on there.

9          And, frankly, it's, you know, to Mr. Berger's

10  repeated point about having admitted a number of facts in

11  response to our Requests for Admissions -- and this again

12  is another point that your Honor made a moment ago, yeah,

13  they've admitted a lot of things that -- you know, they've

14  admitted a lot of public statements are in fact their

15  statements.  And they have vigorously taken the position

16  in the Sokolow litigation, because there's a brief that

17  they failed there that they put in front of your Honor,

18  that those activities are not, you know, are not a basis

19  for jurisdiction under the PSJVTA because they are

20  exclusively related to the official business of the United

21  Nations.  And, you know, our response to that, as well,

22  we're entitled to test that from a factual perspective, as

23  well; and, frankly, we're entitled, as you observed a

24  moment ago, to try to identify other activities that they

25  haven't admitted and that we weren't able to identify just

PROCEEDINGS                    32

 1 | by looking at public source documents.

 2 |         So there is actually significant factual discovery

 3 | that needs to be taken on these issues; and, you know, to

 4 | the extent that we're able to arrive at appropriate

 5 | parameters, you know, that's terrific, only I suppose one

 6 | question I had is to the extent that Mr. Berger feels it

 7 | necessary to withhold documents from production based on

 8 | immunities or privileges of the UN or diplomatic immunity

 9 | or whatever it is, is he going to provide us with a

10 | privilege log so that we can test those assertions of

11 | immunity, as well.

12 |         THE COURT:  I have a note to myself that one of

13 | the final things I want to say is that to the extent

14 | documents are withheld, yes, privilege logs need to be

15 | turned over.  The Federal Rules apply here, folks.

16 |         MR. BERGER:  Your Honor, Mitchell Berger again.

17 |         THE COURT:  Perhaps --

18 |         MR. BERGER:  I'm sorry.  I apologize, your Honor.

19 |         THE COURT:  Hold on.  Hold on.  And I have another

20 | matter that I have to get to shortly, so we're not going to

21 | go on indefinitely with this back-and-forth.

22 |         MR. SINAIKO:  Sure.  My one last comment, in

23 | response to your Honor's question about sort of why are we

24 | pursuing this discovery, the only reason that plaintiffs

PROCEEDINGS                          33

1

2  are pursuing this discovery is for the purpose of proving

3  up as necessary personal jurisdiction in this case.  We are

4  not pursuing this discovery for other litigation.  There's

5  a Confidentiality Order in place that prevents us from

6  disclosing to anybody information that the defendants give

7  us that is designated confidential.  So there's no sort of

8  nefarious purpose here.  The only purpose we have, the only

9  purpose, is obtaining discovery to prove jurisdiction as

10  necessary in this case.

11        THE COURT:  You just quoted to me about the

12  positions they took in the DC case.

13        MR. SINAIKO:  Of course.  That was a different

14  phase of the very same litigation, your Honor.

15        THE COURT:  It's not the same litigation as what's

16  front of me.

17        MR. SINAIKO:  I mean, are we talking about the

18  litigation that took place in front of Judge Leon and

19  subsequently in front of the DC Circuit arising out of the

20  [indiscernible] suicide bombing?

21        THE COURT:  Counsel, I really don't know.  You're

22  the one that just a few minutes ago talked to me about the

23  other case.  And then you turn around and say, "I'm only

24  litigating for purposes of this case."  So, then, stick to

25  this case and don't talk to me about statements they made

```
 1                          PROCEEDINGS                    34
 2   in a different case.
 3             MR. SINAIKO:  Oh, I'm so sorry, your Honor.  I
 4   was -- yes, now I know exactly what you're talking about
 5   now.  I was momentarily confused.  Yes, there was a brief
 6   that they filed, that the defendants filed, these very same
 7   defendants, in the Sokolow litigation that is pending in
 8   front of Judge Daniels.  And, actually, the only point I
 9   made was the activities that the defendants have admitted
10   to engaging in in this case by way of their responses to
11   our Requests for Admissions are the very same activities
12   that the defendants have argued to Judge Daniels don't fall
13   within the PSJVTA's jurisdictional provisions.  So, yes, I
14   did make a reference to an argument that the defendants
15   asserted in the Sokolow case because I fully anticipate
16   that they'll assert the same arguments in this case --
17             THE COURT:  Look, counsel --
18             MR. SINAIKO:  -- which is why --
19             THE COURT:  -- I'm tired of you, you know,
20   anticipating what's going to happen and then, you know, we
21   go off on these tangents arguing about it.  If and when it
22   happens, let's deal with it.  Until it happens, I don't
23   really want to hear about it.
24             MR. SINAIKO:  Certainly, your Honor.
25             THE COURT:  Now, let me try to bring this to some
```

 1

 2  kind of closure.  With respect to any claims of privilege

 3  or any documents withheld that clearly fall within the

 4  scope of a legitimate discovery request, under the Federal

 5  Rules there do need to be privilege logs that get produced.

 6  Having said that, I think I made it pretty clear,

 7  Mr. Sinaiko, that I do not consider a request that says,

 8  "Give me every document relating to activity conducted at

 9  the UN mission," is an appropriate request.  So by when are

10  you going to narrow your requests?

11          MR. SINAIKO:  Well, I would think, as I said

12  before, that it would be helpful to have some information

13  from Mr. Berger in advance of serving the revised discovery

14  requests.  I don't know if Mr. Berger is prepared to

15  provide that information, but, for example, if he was

16  prepared to provide us with a list of agents and employees

17  and others who engage in activities in the United States on

18  behalf of the defendants, I think that would be very

19  helpful to us in terms of focusing our discovery requests

20  and making them targeted in a way that will minimize

21  future, you know, future disputes and future conversations

22  of this sort with the Court, which we obviously don't want

23  to burden you with.  So I think --

24          MR. BERGER:  Your Honor -- excuse me.  Mitchell

25  Berger --

```
 1                        PROCEEDINGS                      36
 2            MR. SINAIKO:  -- it's --
 3            MR. BERGER:  -- speaking.  I did provide --
 4            MR. SINAIKO:  I'm not quite done.
 5            MR. BERGER:  -- we did provide that list.  It is
 6   nothing more than a roster of the personnel of Palestine's
 7   UN mission.  Again, this is a legal argument.  They're
 8   saying, "Well, that can't be all.  We think you've got
 9   secret sleeper agents elsewhere."  They simply won't
10   believe what they see and hear.
11            MR. SINAIKO:  No list was ever provided, Mitch.
12   I'm sorry, no list was ever provided to us.  I know that
13   you said you had a list that your clients were working on
14   preparing in Palestine that they were going to supply to
15   us.  But I don't think that list was ever sent.  So maybe
16   if you sent it to me before you --
17            THE COURT:  Counsel, stop.  Stop.  Mr. Berger, if
18   you say you've already provided a list, send it again.  And
19   I'd like it to be sent within -- what day is it today,
20   Thursday? -- I'd like it to be sent by close of business
21   Monday.
22            MR. BERGER:  Absolutely, your Honor.
23            THE COURT:  Thank you.  All right.
24            MR. SINAIKO:  And we'd be pleased to serve a
25   revised document request.  I don't know, can we do it
```

```
 1                          PROCEEDINGS                    37
 2  within seven days after they provide us with this list?
 3              THE COURT:  Is this Mr. Sinaiko?
 4              MR. SINAIKO:  It is Mr. Sinaiko.  I'm so sorry.
 5  I'm still not completely accustomed to doing these things
 6  by telephone.  But, yes.  Would it be all right if we
 7  served our revised document requests within seven days
 8  after we receive the list from Mr. Berger?
 9              THE COURT:  One week from Monday.
10              MR. SINAIKO:  Correct.
11              THE COURT:  Let me just pull out a calendar here.
12  Monday is May 3rd, hard to believe.  So by May 10th you
13  will revise your requests.  And by "revise" them, I mean
14  narrow them.  I --
15              MR. SINAIKO:  Of course.
16              THE COURT:  -- don't mean -- all right, by --
17              MR. SINAIKO:  We get it.
18              THE COURT:  -- when will a revised set of
19  responses be due?
20              MR. BERGER:  I'm sorry, your Honor.  If that's --
21  this is Mitchell Berger -- if that's directed to us, again,
22  it's hard to know in a vacuum how much narrower their
23  requests will be and whether, for example, the need to log
24  documents in the embassy, all of which is going to require
25  physical review, I mean, respectfully, if they're going to
```

```
 1                        PROCEEDINGS                    38
 2  be narrowed, we would like to have 30 days to respond.  I
 3  mean, I understand your Honor's going to set a new schedule
 4  here, but that would be --
 5            THE COURT:  That's what I'm doing.
 6            MR. BERGER:  Yes, absolutely.
 7            THE COURT:  That's what I'm doing.
 8            MR. BERGER:  Right.  No, your Honor, I'm just
 9  respectfully suggesting that, given that we are dealing
10  with a mystery until we see their revised requests and
11  given everything else your Honor has said, we'd like 30
12  days to respond.
13            THE COURT:  Right.  I mean, you're allowed 30 days
14  under the Federal Rules, so I'm going to give you 30 days.
15  But I am telling the parties right now this is your final
16  extensions, and this schedule on jurisdictional discovery
17  is final.  And I'm going to, at the end, set the deadline
18  for motion practice, just as I did in the last Order.
19  There will be no further extensions.  The defendants will
20  be permitted to file their motion on the deadlines that we
21  set.  And jurisdictional discovery is coming to a close.
22  If there are motions that need to be made, if somebody is
23  disobeying a discovery order or not providing legitimate
24  discovery, there are motions that can be brought on.  And
25  sanctions will be imposed for abuses of the discovery
```

```
1                         PROCEEDINGS                    39

2    process.  But this has to come to a close.  This is a 2018

3    case.  So responses will be due on or before June 10.

4              Now, the depositions that have been noticed -- as

5    I said, depositions, you're free, Mr. Sinaiko, to ask for a

6    30(b)(6) if that would streamline things, but I'm not going

7    to tell you that you cannot take depositions of named

8    individuals.  I am telling you that if counsel on the other

9    side has a legitimate objection on the grounds of

10   privilege, that is an acceptable reason to instruct not to

11   answer.

12             MR. SINAIKO:  Right.  And we understand the rules

13   that your Honor is setting.

14             THE COURT:  The rule's in the Federal Rules.  I'm

15   not making this up as we go along.

16             MR. SINAIKO:  It's Steve Sinaiko, your Honor.  I

17   get it.

18             THE COURT:  Right.  Depositions are to be

19   completed -- let me just go back to my prior Order.  How

20   long had I given you for depositions?

21             MR. SINAIKO:  I don't think, your Honor, that

22   there actually was a specific schedule -- it's Steve

23   Sinaiko again -- I don't think there was a specific

24   schedule set for the taking of depositions.  I think the

25   Court simply set an overall 60-day period for completing
```

```
 1                        PROCEEDINGS              40
 2  jurisdictional discovery.  But I agree that, you know, with
 3  the idea that it would be helpful to actually have a time
 4  when the depositions are supposed to take place.
 5            THE COURT:  All right, so I am going to just give
 6  you a further 60 days to get this all done.  And that
 7  includes what we've already talked about.  So 60 days from
 8  today everything is finished, including the depositions.
 9            MR. SINAIKO:  But if we don't get -- I guess the
10  idea is --
11            THE COURT:  Who is this?
12            MR. SINAIKO:  -- that we'll have plaintiffs --
13  we'll have plaintiffs' documents by May 10th, and then
14  we'll have, you know, basically 30 days following that to
15  take our depositions.
16            THE COURT:  Who was that speaking, please?
17            MR. SINAIKO:  This is Steve Sinaiko.  I'm so
18  sorry.
19            THE COURT:  Okay, I'm sorry, but I can't, you
20  know, identify your voices over the phone.
21            MR. SINAIKO:  I apologize, your Honor.  I
22  recognize that doing these things by telephone is
23  difficult.
24            MR. BERGER:  So, you know, Mitchell Berger here,
25  if I might?  I understand what Mr. Sinaiko is suggesting.
```

```
 1                        PROCEEDINGS                  41
 2   And perhaps the way to just have some clarity on that is we
 3   understand your Honor has set June 10th for our date for
 4   responding in documents.  And to avoid waste of time, since
 5   I'm sure they will want whatever documents we've produced
 6   in advance of the depositions, depositions perhaps should
 7   be taken following production of documents and before the
 8   end, of course, of the 60-day jurisdictional discovery
 9   period that your Honor has set.
10              THE COURT:  Well, that's --
11              MR. SINAIKO:  Your Honor --
12              MR. BERGER:  We would respectfully suggest that.
13              MR. SINAIKO:  Your Honor, it's Steve Sinaiko.  I
14   actually think Mr. Berger and I agree on this.  We do agree
15   that depositions shouldn't be taken until after documents
16   are produced.  If documents aren't being produced until,
17   you know, the second week of June, I would think that we
18   would want to have 30 days after that to review the
19   documents that are produced and take the depositions.  So
20   if we could have the schedule run through maybe 30 days
21   after the document production, which would be sometime in
22   July -- and I think that would put us, you know, with an
23   extension of more than 60 days from the original
24   schedule -- that would be terrific.
25              THE COURT:  I didn't say anything about the
```

```
 1                        PROCEEDINGS                    42
 2   original schedule.  I said from today.
 3            MR. BERGER:  Oh, okay.  I'm sorry.  I thought you
 4   said -- I thought you were adverting to 60 days from the
 5   original -- yeah, a 60-day extension of the original
 6   schedule.  But 60 days from today sounds like it would --
 7            THE COURT:  I said -- folks, I said 60 days from
 8   today.  So I acknowledge that you're not going to get your
 9   revised document demands out until May 10th, which is
10   roughly one week from today, but -- and responses then due
11   June 10th.  So July 10th, which is a Saturday, so it's
12   July 9th, all depositions will be completed.  If the
13   parties are able to agree that you're not going to actually
14   start taking the depositions until the documents are turned
15   over on June 10th, that's fine.  But I'm not going to put
16   that in an Order.
17            MR. SINAIKO:  Your Honor, it's Steve Sinaiko.
18   That's fine with us.  One further question, your Honor.
19   Will we be getting revised responses to the interrogatories
20   that we previously served, in light of your Honor's rulings
21   today?
22            THE COURT:  I don't really know anything about
23   interrogatories.  That's the one round of letters you
24   didn't send me.  Are there issues with that, as well?
25            MR. SINAIKO:  Well, there were, your Honor.  They
```

```
 1                          PROCEEDINGS                    43

 2   were actually addressed in one of the letters, one of the

 3   joint letters that we sent you on March 24th.

 4            THE COURT:  I'm sorry.

 5            MR. SINAIKO:  It dealt with both document

 6   production and interrogatory responses because --

 7            THE COURT:  I'm sorry, you're right; it does.

 8            MR. SINAIKO:  No worries.  The position that

 9   defendants took with respect to interrogatories was

10   substantially the same as the position that they took on

11   documents, which is to say they would provide the limited

12   number --

13            THE COURT:  Look, you don't need to repeat it.  I

14   was --

15            MR. SINAIKO:  Understood.

16            THE COURT:  -- trying to say that where I said

17   revised document requests by May 10th, you can narrow your

18   interrogatories as well by May 10th.  If they don't need

19   narrowing, I'm not going to micromanage that.  And

20   responses to the document requests and interrogatories will

21   be due on June 10th.

22            MR. SINAIKO:  Perfect.  Thank you, your Honor.

23            THE COURT:  And depositions will go thereafter.

24            Now, what about the Requests for Admissions?

25            MR. BERGER:  Your Honor, this is Mitchell Berger.
```

```
 1                        PROCEEDINGS                    44
 2   Is that question directed to Mr. Sinaiko about narrowing
 3   the 200 Requests for Admissions that they propounded?
 4            THE COURT:  I suppose it is, yes.
 5            MR. SINAIKO:  So, first of all, just to dispose of
 6   that notion a little bit, we served two identical sets.
 7   And I'm not sure this makes any difference, but to be
 8   perfectly accurate, we served two substantially identical
 9   sets of about 97 Requests for Admissions on each of the
10   defendants.  But they were substantially identical.  You
11   know, if we are -- I mean, we do have concerns about the
12   responses that we got to the Requests for Admissions
13   because, as we pointed out before, they are inappropriate
14   in a lot of ways.  We've already talked about that.
15   There's no need to rehash it here.  But I suppose we could,
16   at some point during the -- you know, at some point during
17   this period for, you know, for -- extended period for
18   jurisdictional discovery, serve a revised set of Requests
19   for Admissions if we're so advised, and Mr. Berger
20   presumably could respond to them consistent with the
21   rulings that we've gotten today.
22            THE COURT:  All right, here's where I am on the
23   Requests for Admissions.  The Federal Rules are pretty
24   clear about the impact of a nonresponse or an inadequate or
25   inappropriate response to a Requests for Admissions.  So
```

```
 1                           PROCEEDINGS                    45
 2   the parties act at their own peril.  If they haven't been
 3   properly responded to or objected to, then the rules say in
 4   certain instances that that's deemed to be an admission.
 5           MR. BERGER:  Your Honor, this is Mitchell Berger
 6   for defendants.  And we hear you loud and clear.  And as a
 7   point of --
 8           THE COURT:  In the --
 9           MR. BERGER:  -- information I want to -- excuse
10   me, your Honor.  I apologize.
11           THE COURT:  In the meantime, I've told the
12   plaintiffs that I think the requests are overly broad.  And
13   I don't care if it's, you know, 100 to each party identical
14   or 97 to each party identical set, 97 Requests for
15   Admissions on the very narrow question of whether
16   jurisdiction exists under the terms of the statute, not is
17   the statute constitutional, not can you make out a claim on
18   the merits, but can you establish the predicates for
19   jurisdiction, it doesn't seem to me that you should need 97
20   questions or Requests for Admissions.  So you might very
21   well want to go back and narrow them.  I am not going to
22   micromanage or tell people how to litigate their cases.
23   But I'm giving you my guidance.  So, Mr. Sinaiko, it's up
24   to you.  They --
25           MR. SINAIKO:  Your Honor, it's Steve --
```

```
 1                         PROCEEDINGS                    46

 2            THE COURT:  -- as co --

 3            MR. SINAIKO:  -- your Honor -- I'm so sorry.

 4            THE COURT:  May 10th is the deadline for revising

 5   your demands; June 10th is the deadline for responses to

 6   the revised demands.  If they are not revised, they'll have

 7   whatever impact they have when we get to dealing with them.

 8   And that's all the guidance I'm going to give people on

 9   that.

10            MR. SINAIKO:  Your Honor, this is Steve Sinaiko.

11   One question.  May we have -- is it required that we

12   serve -- if we're going to serve revised Requests for

13   Admissions, do those need to be served by May 10th, as

14   well, or could we serve those, you know, at a later time as

15   long as the responses to them are due in advance of

16   July 9th?

17            THE COURT:  I'm going to direct that you and

18   Mr. Berger talk to each other and figure that out so that

19   responses can be received by whenever you need them, and

20   all jurisdictional discovery will be completed by July 9th.

21            MR. SINAIKO:  Your Honor, it's Steve Sinaiko.

22   Thank you very much for that guidance.  I appreciate it.

23            THE COURT:  Mr. Berger, anything from you?

24            MR. BERGER:  I was simply going to complete the

25   thought so there's a full record on the Requests for
```

```
 1                         PROCEEDINGS                    47
 2   Admissions, which is particularly in light of what your
 3   Honor said about the consequences under the rules, we
 4   either admitted or denied every single request, which is
 5   what the rules require.  But we look forward to narrowed
 6   requests from plaintiffs.
 7             THE COURT:  If he chooses to.
 8             So all right, now, given that we've set July 9th
 9   as the cutoff for all jurisdictional discovery -- and I'm
10   warning people if there are issues on which you need
11   rulings from the Court, you need to ask for a Protective
12   Order or a Motion to Compel sufficiently in advance so that
13   you get a ruling and discovery can be completed by
14   July 9th.  Don't wait until July 9th or 10th to first start
15   complaining to me.
16             MR. SINAIKO:  Your Honor, if I could?  It's Steve
17   Sinaiko.  Obviously -- you know, to the extent that
18   depositions run close to July 9th, it may not be possible
19   for us to raise issues relating to the depositions in
20   advance of that date.  I'm assuming that that would not be
21   a problem.
22             THE COURT:  Mr. Sinaiko, that --
23             MR. SINAIKO:  In other words, I'm assuming that if
24   there were a problem with the --
25             THE COURT:  [indiscernible]
```

```
 1                        PROCEEDINGS                  48
 2          MR. SINAIKO:  -- depositions --
 3          THE COURT:  -- own peril, sir.  You know, the
 4  level of guidance that you seem to be needing here and, you
 5  know, anticipation or problems that you ought to work out
 6  professionally is just mind boggling to me.  I'm not
 7  responding any further with respect to how you ought to
 8  comport your, you know, behavior or conduct this
 9  litigation.
10          MR. SINAIKO:  Your Honor, Steve Sinaiko --
11          THE COURT:  Final --
12          MR. SINAIKO:  -- we're just trying to do this in a
13  way that's going to be acceptable to the Court.  But I get
14  the message.
15          THE COURT:  The final thing I would like to talk
16  about is, Mr. Berger, you have told the Court that you plan
17  to file a Motion for Summary Judgment.  Under the existing
18  Order, how long had you -- I don't have the Order right in
19  front of me -- how long had you asked for to file your
20  motion?
21          MR. BERGER:  Your Honor, had set a date of 21 days
22  following the close of discovery.  So the deadline for
23  filing motions was tomorrow, 21 days after an April 9th
24  cutoff of jurisdictional discovery.  We were going to file
25  both a Motion to Dismiss on TSJVTA grounds and a Motion for
```

```
 1                        PROCEEDINGS                    49
 2   Summary Judgment based on the preexisting discovery.
 3   Twenty-one days is ample.  If following the close of
 4   discovery on July 9th -- I haven't looked at a calendar to
 5   see whether July 30th is a weekend or a weekday, but I'm
 6   doing so now.
 7            THE COURT:  July 30th is a Friday.  So July 30th,
 8   any motions will be made.  How long had I allowed for
 9   oppositions?
10            MR. BERGER:  Your Honor had allowed two weeks --
11   this is Mitchell Berger -- two weeks for opposition and one
12   week for reply.  But I'm sure both parties would be happy
13   to have a more generous set of time limits.  But, of
14   course, we'll do whatever the Court wants.
15            THE COURT:  Give me one moment, please.  I just
16   want to email about something with one of my clerks.  So
17   give me one moment, all right?
18            MR. BERGER:  Certainly.
19            THE COURT:  All right, Mr. Sinaiko, how long are
20   you asking to get an opposition in?
21            MR. SINAIKO:  You know, your Honor, I think if we
22   could have three weeks to do our opposition papers, that
23   would be the same amount of time that Mr. Berger is getting
24   to do his opening papers, that would be terrific.
25            THE COURT:  Okay.  So three weeks from July 30th
```

```
 1                         PROCEEDINGS                    50
 2   is August 20th.
 3            MR. SINAIKO:  I suppose I should ask -- your
 4   Honor, I suppose I should ask Mr. Lowell if that's all
 5   right for him, as he probably has some roll in preparing
 6   these papers, as well.
 7            MR. LOWELL:  Your Honor, this is Abbe Lowell.  I
 8   was going to wait, but I was going to ask for that three
 9   weeks.  And if that makes sense, that's great.
10            THE COURT:  Perfect.  So August 20th is three
11   weeks.
12            Then, Mr. Berger, how long -- you're saying both
13   sides want more time.  How long do you want for your reply?
14            MR. BERGER:  If we could have two weeks, your
15   Honor, which looks like September 3rd, as a Friday, that
16   would be ideal.
17            THE COURT:  Okay.  Friday, September 3rd.
18            All right, anything else from anybody?
19            MR. BERGER:  Thank you, your Honor.
20            THE COURT:  All right, then --
21            MR. SINAIKO:  Nothing else for the plaintiffs,
22   your Honor.  Thank you.
23            THE COURT:  All right, thank you.  We are
24   adjourned, then.  Everyone have a nice rest of the day, and
25   please stay safe and healthy.
```

```
 1                      PROCEEDINGS                      51

 2           MR. SINAIKO:  Thank you, your Honor.

 3           MR. BERGER:  Thank you, Judge.

 4           (Whereupon, the matter is adjourned.)

 5

 6

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1                                                              52

2

3                        C E R T I F I C A T E

4

5           I, Carole Ludwig, certify that the foregoing

6    transcript of proceedings in the case of Shatsky et al v

7    The Palestine Liberation Organization et al, Docket #18-cv-

8    12355-MJV, was prepared using digital transcription

9    software and is a true and accurate record of the

10   proceedings.

11

12

13

14   Signature_____

15                       Carole Ludwig

16   Date:    May 3, 2021

17

18

19

20

21

22

23

24

25