```
                    UNITED STATES DISTRICT COURT
                    SOUTHERN DISTRICT OF NEW YORK


In re:                              :
                                       Docket #1: 18-cv-12355
SHATSKY, et al.,                    : MKV

                    Plaintiffs,     :

   - against -                      :

THE PALESTINE LIBERATION            : New York, New York
ORGANIZATION, et al.,                 July 6, 2021
                                    :
                    Defendants.       TELEPHONE CONFERENCE
------------------------------------ :


                     PROCEEDINGS BEFORE
            THE HONORABLE JUDGE MARY KAY VYSKOCIL,
                 UNITED STATES DISTRICT JUDGE

APPEARANCES:

For Plaintiffs:          COHEN & GRESSER, LLP
                         BY:  STEPHEN MATTHEW SINAIKO, ESQ.
                         800 Third Avenue
                         New York, New York 10022
                         212-957-7600

                         COHEN & GRESSER, LLP
                         BY:  RONALD F. WICK, ESQ.
                         2001 Pennsylvania Avenue, NW
                         Washington, D.C.  20006
                         202-851-2070



Transcription Service:   Carole Ludwig, Transcription Services
                         155 East Fourth Street #3C
                         New York, New York 10009
                         Phone:  (212) 420-0771
                         Email:  Transcription420@aol.com

Proceedings conducted telephonically and recorded by
electronic sound recording;
Transcript produced by transcription service
```

APPEARANCES - CONTINUED:

For Defendants:          SQUIRE PATTON BOGGS LLP
                         BY:  MITCHELL RAND BERGER, ESQ.
                              GASSAN BALOUL, ESQ.
                         1211 Avenue of the Americas
                         New York, New York 10036
                         212-872-9800

                         SQUIRE PATTON BOGGS LLP
                         BY:  JOSEPH STEWART ALONZO, ESQ.
                         30 Rockefeller Plaza
                         New York, New York 10112
                         212-872-9831

<u>**INDEX**</u>

**E X A M I N A T I O N S**

| <u>**Witness**</u> | <u>**Direct**</u> | <u>**Cross**</u> | <u>**Re-<br>Direct**</u> | <u>**Re-<br>Cross**</u> |
|---|---|---|---|---|
| None | | | | |

**E X H I B I T S**

| <u>**Exhibit<br>Number**</u> | <u>**Description**</u> | <u>**ID**</u> | <u>**In**</u> | <u>**Voir<br>Dire**</u> |
|---|---|---|---|---|
| None | | | | |

```
 1                        PROCEEDINGS                    4

 2            THE COURT:  This is Judge Freeman.  This should be

 3   Shatsky v. The Palestine Liberation Organization, et al.,

 4   18cv12355.  Let me have your appearances for the record

 5   starting on plaintiffs' side.

 6            MR. STEPHEN SINAIKO:  Good morning, Your Honor, my

 7   name is Steve Sinaiko, I'm with Cohen & Gresser here in New

 8   York City, and I am here this morning on behalf of the

 9   plaintiffs with at least one of my colleagues.

10            MR. RONALD WICK:  Good morning, Your Honor, this

11   is Ron Wick, also with Cohen & Gresser.  I'm in Washington,

12   D.C., also for the plaintiffs.

13            THE COURT:  Anyone else for the plaintiffs?

14   Okay, how about on defendants' side?

15            MR. MITCHELL BERGER:  Good morning, Your Honor, is

16   Mitchell Berger from Squire Patton Boggs for the

17   defendants.

18            THE COURT:  Anyone else on defendants' side?

19            MR. JOSEPH ALONZO:  Good morning, Your Honor, also

20   Joseph Alonzo from Squire Patton Boggs for the defendants.

21            THE COURT:  All right, and is there anyone else

22   who's not introduced him or herself yet?  No? I have my law

23   clerk on?

24            THE CLERK:  Hi, Judge, I'm on.

25            THE COURT:  Okay.  Is that everybody?
```

```
 1                         PROCEEDINGS                    5
 2              MR. BERGER:   I was expecting my colleague Gassan
 3    Baloul to join, but there's no reason to delay getting
 4    started if he hasn't.
 5              THE COURT:   So I've been looking at the docket on
 6    this case and trying to figure out what it is you might
 7    need me to do.  The reference at the parties' request was
 8    quite narrow.  It was just to assist in resolving disputes
 9    that may come up at depositions with respect to scope of
10    discovery.  Who just joined please?  This is Judge Freeman.
11              MR. GASSAN BALOUL:   This is Gassan Baloul from
12    Squire Patton Boggs.
13              THE COURT:   I'm sorry?
14              MR. BALOUL:   This is Gassan Baloul from Squire
15    Patton Boggs.
16              THE COURT:   I'm having trouble hearing.  Is
17    someone else able to --
18              MR. BERGER:   That's my colleague Gassan Baloul
19    from Squire Patton Boggs for the defendants.
20              THE COURT:   Okay, your connection is not great.
21    All right, so as I was saying, it looks like you were
22    looking for and were granted the services of a magistrate
23    judge, that would be me, to assist in resolving disputes
24    about questions that may be asked at depositions which I
25    gather you have a limited time now to conduct.  Maybe some
```

```
 1                          PROCEEDINGS                    6
 2  have already been conducted, I hope that's the case with
 3  time running.  But I'm not sure what help you think you're
 4  going to need given that you had a fairly lengthy
 5  conference with Judge Vyskocil and she gave you guidance
 6  with respect to the proper scope of this jurisdictional
 7  discovery.  So can I hear from counsel as to what you're
 8  envisioning my role would be and why you think you need me
 9  and when you think you need me, if, in fact, you need  Just
10  identify yourself before you speak each time.
11          MR. SINAIKO:   Certainly, you know, it's Steve
12  Sinaiko for the plaintiffs.  I think the reason that we
13  asked for a magistrate judge to be assigned to assist with
14  depositions is because the case actually presents some
15  unusual issues of personal jurisdiction under the Promoting
16  Security and Justice for Victims of Terrorism Act, and we
17  also are expecting that the defendants are going to use,
18  are going to assert functional immunity as a grounds, you
19  know, functional diplomatic immunity based on their
20  participation as permanent observers at the United Nations
21  as a reason why some of the witnesses in the case don't
22  need to answer questions that we may pose to them at their
23  depositions concerning activities of the defendants in the
24  United States which are an express element of personal
25  jurisdiction under the statute I mentioned a moment ago.
```

```
 1                         PROCEEDINGS                    7
 2              So I think the idea was that we wanted to have a
 3   magistrate judge who would be able to help us sort out
 4   these issues if they come up, you know, as promptly as
 5   possible so that the depositions can be completed in
 6   advance of the discovery cutoff that Judge Vyskocil had set
 7   for us.  The depositions, the first of the depositions is
 8   set to happen this coming Thursday, that's I think the 8th
 9   of July, and then the deposition schedule, just a bunch of
10   issues.  The deposition schedule resumes on the 22nd and 23rd
11   of July, and then there are depositions I believe Tuesday
12   through Friday of the following week as well.
13              So that's the schedule and that's in a high level
14   way the, you know, the nature of the assistance that we
15   anticipate needing, and then I think, you know, the other
16   reason to have a conference call, apart from letting Your
17   Honor know what the schedule was, was to find out how Your
18   Honor would like to address these issues if and when they
19   come up.
20              THE COURT:  Well, first of all, why do you
21   anticipate that you will have problems?  And if you think
22   you're going to have problems on certain topics, can you
23   talk about your concerns ahead of time and try to reach
24   agreement on certain key points so that you don't have to
25   be reacting in the middle of a deposition and trying to
```

```
 1                        PROCEEDINGS                    8
 2  find a judge who may or may not be tied up?  Because I have
 3  a fairly busy schedule, I have things on my calendar, and I
 4  do take calls from depositions when I can.  When I can't, I
 5  generally tell people, you know, make a record, keep going
 6  and reserve it and come back to me as soon as you're able
 7  or as soon as I'm able to hear you which might be later in
 8  the day, might be at a lunch break, might be, you know, on
 9  a written record.
10          But why do you think you're going to have
11  problems, and if you can anticipate what those problems are
12  going to be, why can't we talk about them or you talk about
13  them with each other ahead of time and see if you can head
14  off the problems?
15          MR. SINAIKO:   Your Honor, Steve Sinaiko again.
16  And I appreciate that.  I think one of the principal issues
17  is that the plaintiffs in the case don't actually concede
18  that there is such a thing as functional immunity here, and
19  even if there were such a thing, we don't concede that it
20  applies to these defendants.  So in our view this
21  functional immunity argument wouldn't be a basis for the
22  defendants to direct their witnesses to refuse to answer
23  any questions.  But obviously the defendants take a
24  different view, and I'm not sure that that's an issue that
25  we're going to be able to resolve in advance of the
```

```
 1                         PROCEEDINGS                     9
 2   depositions.
 3           Now that said, I mean even with the issue
 4   unresolved, to the extent there are --
 5           THE COURT:   Well, Judge Vyskocil already ruled
 6   that defendants can make objections based on functional
 7   immunity if they believe that they have a legitimate
 8   objection on that ground.   She didn't say, she didn't rule
 9   there was no such thing and that such objection would be
10   improper.   She said the defendants have what they believe
11   to be a legitimate objection under the U.N. whatever it is,
12   headquarters charter, that they can assert those
13   objections.   So are you going to be looking to me to make a
14   ruling that there is no such thing and questions have to be
15   answered?
16           MR. SINAIKO:   Well, certainly, I mean, you know,
17   obviously we were, you know, we've seen Judge Vyskocil's
18   rulings as well, and while she said that the defendants are
19   free to make objections based on privilege if they think
20   that they have such objections, I don't think that she made
21   a ruling that they are entitled to assert this purported
22   privilege.   On the other hand, like I said, I don't think
23   that the issue necessarily will need to be resolved in that
24   direct a way depending on how the questioning unfolds at
25   the deposition.   But I mean I think our first position --
```

1                              PROCEEDINGS                    10

2              THE COURT:   Well, hold on a second, if you are

3    looking for a ruling as to whether a privilege or immunity

4    is being properly asserted, I'm going to have to have a lot

5    more to go on than seat of the pants, someone calling me in

6    the middle of a deposition and saying this question is

7    improper because or this question is proper because or

8    should be answered or should not be answered.  I'm going to

9    have to understand what this immunity is, I'm going to have

10   to understand what the argument is as to why it does or

11   does not apply, I'm going to have to understand what you

12   believe the scope of it is.  This is not like attorney-

13   client privilege or delivery of process privilege or

14   something we see frequently.  This is something that I

15   don't have day to day in my cases.

16              So do not expect me to make rulings in the middle

17   of a deposition as to whether a privilege is being properly

18   asserted.  You're going to have to give me briefing on that

19   if you want, and I don't know that Judge Vyskocil

20   anticipated referring it to me to make that decision.

21              MR. SINAIKO:   I totally appreciate that, Your

22   Honor.  It's Steve Sinaiko again.  And that was actually

23   the reason that we felt like it would be appropriate to

24   have a conference call with Your Honor in advance of the

25   depositions so that we could discuss a process for getting

```
 1                        PROCEEDINGS                    11
 2   Your Honor whatever briefing she might need so that rulings
 3   on these issues can be made in a reasoned way.
 4             THE COURT:   Well, did you have the understanding
 5   from Judge Vyskocil that she was looking to me to define
 6   and rule on the scope of this immunity and its
 7   applicability in this case generally?  Because, you know,
 8   I'm not sure that she had that in mind when you wrote the
 9   letter and said, you know, make some rulings during the
10   deposition.  You know, if she envisioned your briefing me
11   fully on an issue and my opining on it in an advisory way
12   or otherwise.  I mean I realize that cases can be referred
13   to magistrate judges for all discovery matters and to make
14   rulings with respect to all discovery matters, but, again,
15   what you asked for was fairly limited, and I think what the
16   letter sounded like and what she probably envisioned was
17   you have a quick dispute at a deposition, you call up, you
18   each make your pitch, and I try to resolve it and keep you
19   moving along, not that I'd make a ruling that could
20   substantially impact the case in some manner.
21             MR. SINAIKO:   Well, Your Honor, I think it was
22   reasonably clear from the conference with the judge that,
23   you know, with Judge Vyskocil that is, that issues are
24   likely to come up at the deposition will turn on, most of
25   the depositions, will turn on questions of this functional
```

```
 1                          PROCEEDINGS              12
 2  immunity.  I mean I guess --
 3          THE COURT:   She already said that the objections
 4  can be made.  If defendants believe they have this
 5  legitimate objection, they can make those objections to the
 6  questions.  So if you're asking me to rule or anticipating
 7  that there's going to be such an objection made and asking
 8  me to rule that it's an improper objection and that the
 9  question should be answered, she's already ruled that the
10  objection can be made.  Hold on one sec here.  Let me get
11  the transcript here.  Hang on a second.
12          (pause in proceeding)
13          THE COURT:   She said, To the extent the defendant
14  has legitimate objection, for example, there's an argument
15  that will be asked, I guess the question will be asked will
16  invade functional immunity under the United Nations
17  Headquarters Charter, if questions get asked that invade
18  privileged areas, object on the record at the deposition.
19  She's already said if, I mean maybe what you're focusing on
20  is it a legitimate objection and you want me to rule
21  whether it's a legitimate objection or not, but that's
22  going, you know, that's – I interpret that – I interpret
23  her comments to mean that if defendants' counsel acting in
24  good faith with their obligation to assert a position
25  that's well founded by law or in their view legitimately
```

appropriate as an extension of existing law, if they in

good faith believe that they have a basis for objection,

it's not going to be sanctionable, it's not going to be

frivolous, they have a good faith basis for that objection,

they can make that objection on the record at the

deposition.  I don't think what she was saying was the

nuances will be determined by Judge Freeman who will

determine the scope of privilege and decide whether each

and every objection is a legitimate one or not.

        And to the extent you have an argument that no

such objections are permissible, no such objections would

be legitimate, that's – and so any objection that's made on

that ground is going to be an objectionable objection.

That's asking a big fundamental question that I'm not sure

she envisioned that I would decide.  If what you're asking

is, look, we think that, to the extent objections are made,

they could only even potentially be legitimate if they are

XYZ but not if they're, you know, ABC, then you should be

discussing that ahead of time.  And if there's something

narrow that you can put in front of me for guidance and

that you can provide me some letters on and some case law

support for, I can take a look at it.  But if your

depositions are starting up real fast, that's got to be put

in front of me real fast, and I've got to have a chance to

PROCEEDINGS                    14

1

2   look at it real fast.

3          MR. BERGER:   Your Honor, this is Mitchell --

4          THE COURT:   But I'm not going to be making some

5   wholesale ruling, I don't think, that this sort of immunity

6   simply doesn't apply in this case and it's wholly improper.

7          MR. BERGER:   Your Honor, Mitchell Berger for the

8   defendants.  If the Court would just give me a few minutes

9   to give you our perspective on this.  We come out I think

10  where Your Honor has indicated which is we did brief this

11  in front of Judge Vyskocil.  If you look at docket number

12  66, page 4 where we lay out the authorities on functional

13  immunity in docket number 65 at page 4.  So Judge Vyskocil

14  did not address this in a vacuum.

15         But as importantly what we certainly understood

16  her to say is not only may we make objections, but we may

17  instruct the witness not to answer because otherwise we

18  loose the benefit of the functional immunity.  We have some

19  pretty good sense of where the lines are drawn for

20  functional immunity because we have produced calendars from

21  the U.N. Mission.  So in terms of when the ambassador – for

22  example, Thursday's the deposition of the Palestinian

23  ambassador to the UN.  When he had a meeting, where he had

24  a meeting, how he had a meeting, like whether it was

25  virtual or whether it was in person, those are fair game.

```
 1                        PROCEEDINGS                    15
```

 2  What was discussed at a meeting, why the meeting took

 3  place, that's not fair game under functional immunity.  And

 4  who the ambassador met with may depend on the circumstances

 5  be subject to immunity because who may reveal the what and

 6  the why that is protected by functional immunity.

 7            There's very little doubt that functional immunity

 8  extends to the Palestinian embassy, the mission to the

 9  United Nations.  That's in the authorities that I mentioned

10  at docket 65 and 66, and we believe Judge Vyskocil said,

11  fine, make your objections, issue your instructions.  If it

12  requires resolution by the court, then, of course, you'll

13  all come back.

14            So from our perspective this call is helpful to

15  determine how best either Your Honor wants to approach

16  those questions of resolving instructions or if Your Honor

17  thinks that the kinds of issues I've just laid out are

18  better before Judge Vyskocil, then that's helpful as well.

19            THE COURT:   Well, who was it who asked for a

20  magistrate judge to be available, was it plaintiff?

21            MR. SINAIKO:   The parties jointly requested that

22  actually, Your Honor, because they think the parties, based

23  on our own interactions in advance of these depositions,

24  anticipate that there will be disputes as between us

25  regarding the appropriate scope of instructions, you know,

1                           PROCEEDINGS                    16

2    appropriate scope of instructions not to answer.  And as I

3    said a moment ago, we have our --

4          THE COURT:  Do you anticipate that any and all

5    problems that may arise relate to functional immunity as

6    opposed to anything else like whether the questioning is

7    broader than the relevant prongs of the statute or anything

8    like that?  Because I know there were other issues that

9    Judge Vyskocil addressed.  Do you think the main or even

10   the only issue where you're going to likely look for

11   guidance is on the scope of this immunity?

12         MR. SINAIKO:   My sense, Your Honor, is that the

13   scope of – and this is Steve Sinaiko again for the

14   plaintiffs.  My sense is that the scope of this supposed

15   immunity may not be the only issue, but it is likely to be

16   the principal issue, and actually given that privilege logs

17   that have been served on us already, we think that it's

18   going to be a substantial issue because --

19         THE COURT:  Well, I'm likely to rule that

20   defendants should think twice and three times about making

21   the objection and instructing a witness before doing so to

22   make sure you are confident that you believe you're on

23   solid ground and can support that objection and with good

24   case authority if called upon to do so afterwards.  And if

25   you believe that you can and you believe you're on solid

1                                PROCEEDINGS                      17

2  ground, make your objection, make your instruction.  It'll

3  be on the record and continue on with the deposition.  It

4  seems to me that that's what Judge Vyskocil envisioned and

5  that's what I would be inclined to enforce.

6           If there's something that really looks like it's a

7  frivolous objection, that there really is no basis for it

8  in the case law, defendants are cautioned that you may have

9  to be bringing back a witness again.  You may be sanctioned

10 for making frivolous objections.  You know, you need to

11 really think it through.  But if you think the parameters

12 are fairly clear, you think you've got a good faith basis

13 for asserting it, assert it, put it on the record.  And if

14 the objection, if with the objection you believe the case

15 law would support your instructing the witness not to

16 answer, then make the instruction, put it on the record,

17 but be prepared to support your actions down the road if

18 called upon to do so because invariably, it sounds like,

19 you're going to be called upon to do so.

20          MR. BERGER:   Your Honor, Mitchell Berger for the

21 defendants.  We hear that, and part of the reason why I'm

22 trying to be transparent about both what we've said before

23 about functional immunity and how we intend to apply it is

24 because we do believe it's on solid ground.  But Your Honor

25 can appreciate any privilege or immunity that if we don't

PROCEEDINGS                    18

1

2  protect the what did you discuss and why did you discuss

3  it, then the privilege is lost.  So we feel very strongly

4  we have a good faith basis.  We think the law supports us.

5  We are trying to draw --

6           THE COURT:  By the way, is it an absolute or is

7  it a qualified immunity?

8           MR. BERGER:  Well, functional immunity is by its

9  nature qualified in this sense that the language coming out

10  of the UN's legal secretariat is that the scope of immunity

11  relates to words spoken and deeds done, and I'm quoting

12  here from material we have put before Judge Vyskocil,

13  quote, "In the exercise of the observer function," so the

14  Palestinian Mission to the United Nations is an observer

15  mission.  So, so long as the conversations were held in the

16  exercise of the observer function, then we're quite

17  confident that functional immunity applies.  We are not

18  asserting, to be clear, diplomatic immunity which would be

19  absolute under the Vienna Convention, and so this is a

20  question by question, answer by answer assertion of

21  functional immunity.

22           But if I could return to Your Honor's question, I

23  do think there's a potential for other objections in terms

24  of scope because, as Your Honor knows, Judge Vyskocil said

25  in her order of April 29, docket number 80, that not only

```
 1                         PROCEEDINGS                   19
 2   is discovery limited to the jurisdictional bases, but she
 3   said expressly in the April 29 transcript at page 23,
 4   everything else is off limits.  So until we hear their
 5   questions, we don't know whether there will be other scope
 6   objections.  And there are other depositions coming up
 7   later where there may be scope objections.
 8             Perhaps, Your Honor, I could make a suggestion to
 9   the Court which is we're trying to be transparent, here's
10   where we're going to make our objections, here's where
11   we'll issue our instructions.  We'll get through the
12   morning session on the 8th with the U.N. ambassador.  If the
13   parties think it would be beneficial to speak with Your
14   Honor, perhaps during the lunch break at that deposition
15   and Your Honor has time to hear us on the 8th somewhere
16   around the lunch time, perhaps we can call and get some
17   additional guidance.  If not, we'll have to deal with it
18   some other way.
19             THE COURT:  All right, my schedule on the 8th is
20   as follows:  As of now, but that may well change, my
21   morning is fairly clear, and the reason I'm saying it may
22   well change is because I had to move some things off of
23   another morning, and I'm looking for a place to reschedule
24   them and they may end up there.  My lunch time is usually,
25   in terms of whether I have conferences scheduled, between -
```

| | PROCEEDINGS | 20 |

1
2  not necessarily whether I'm eating – between 1 and 2.

3  Usually my scheduling allows for a break between 1 and 2.

4  Certainly on the 8th my guess is 12:30 to 2 is relatively

5  clear.  Two o'clock I have a conference that is likely to

6  be lengthy and somewhat intense, and so I will probably not

7  be available from 2 to at least 3 and possibly 4.  Okay.

8          So the end of the day on the 8th I could also be

9  available, you know, if you wanted to hold something and

10  give me a call at the end of the day, maybe after 4.

11  That's a little iffy.  If you try me and I'm tied up, I'll

12  be tried up.

13          I don't know if I'll be in chambers that day or

14  not.  We're also scheduled that day to have a computer

15  upgrade in chambers which means the IT people will be

16  swarming around, taking away our computers and replacing

17  them.  And we were – I don't know if that's really going

18  forward on that day.  It was – it was scheduled for that

19  day.  They might shift it.  But anyway, if that happens,

20  not only – I may end up working remotely that day because

21  if I need a computer, I may be better off if I'm actually

22  home than if I'm in chambers.  So there's that going on in

23  my chambers on that morning.

24          So if you need something, you can try in the

25  morning.  You can certainly try around lunchtime.  What you

```
 1                        PROCEEDINGS                21
 2  can do is you can call my chambers, and if no one answers,
 3  it's because we've all run away from the IT people to try
 4  to find another place to work.  You can just leave a
 5  voicemail in chambers.  A voicemail in chambers will kick
 6  to my email, it will pop up, I will get it.  Okay?  Leave a
 7  phone number where you can be called back, and I will get
 8  back to you if need be as long as I can.  Once we hit 2
 9  o'clock on that particular day, I'm going to be underwater
10  for at least a couple of hours.  Okay?
11          Picture during this call someone suddenly calls in
12  from a deposition, I say, oh, sorry, I gotta run, and then
13  I'm tied up for however long and leaving you all hanging.
14  If it's something, if I'm in the middle of a settlement
15  conference, if I'm in the middle of – and we just lost
16  somebody.  Do we still have plaintiff's counsel?
17          MR. SINAIKO:   Steve Sinaiko, I'm still here, Your
18  Honor.
19          THE COURT:   You still have someone speaking on
20  defendants' side?
21          MR. BERGER:   Yes, Your Honor, Mitchell Berger.
22          THE COURT:   Okay, we may have lost one of your
23  colleagues, but hopefully whoever dropped off will call
24  back.
25          Let me look at my calendar for the other days that
```

1                              PROCEEDINGS                      22

2   you mentioned, and, by the way, with respect to other sorts

3   of scope issues, for example, whether the questions relate

4   to the prongs of statute that are issue here on

5   jurisdiction or relate to other things when Judge Vyskocil

6   had said the depositions are limited to these categories

7   that are in the statute and the bases of the asserted

8   jurisdiction in this case under that statute and that

9   everything else is off limits.

10          I'll flip my warning to plaintiff on this.  I've

11  already cautioned defendants that if they're going to

12  object, they better think a few times about it and make

13  sure they're comfortable that they're on solid ground.  If

14  you're going to ask a question and defendants said, wait,

15  that's outside the scope of the statute and the prongs of

16  the statute that are at issue here, asserted basis for

17  jurisdiction, and Judge Vyskocil has said something outside

18  the scope of that is off limits, be confident that the

19  question you're asking can be justified as being within

20  that scope directed toward that prong, whichever one it is,

21  of the statute.  And if you can't make that argument with a

22  straight face and feel that it's well supported, do not be

23  asking that question.  Because, again, she already gave you

24  guidance on that, and I expect you, just like I expect

25  defendants, to adhere to the guidance she gave you.  Okay?

```
 1                         PROCEEDINGS                23
 2            Let me look at my calendar.  Tell me again what
 3   the second date is for depositions.
 4            MR. SINAIKO:   So we have the 8th with Mr. Mansour
 5   and then on the - he's the Permanent Observer of the
 6   Palestine Liberation Organization to the United Nations.
 7   On the 22nd and 23rd we have depositions scheduled of two
 8   other people who work at Permanent Observer Mission to the
 9   United Nations here in New York and then the following week
10   --
11            THE COURT:   The 22nd and 23rd - I mean the farther
12   out you go, the more room there is in my calendar.  As it
13   gets closer to the day, it tends to fill up more.  So what
14   I will do is for each of those days, the 22nd, 23rd.  I will
15   ask my deputy to carve out from 12 to 2 a space, not to
16   schedule anything at 12, to make sure that I have
17   availability from 12 to 2 on the 22nd, the 23rd, and then the
18   following week which days?
19            MR. SINAIKO:   So I believe and Mr. Berger can
20   confirm that we're scheduled to proceed Tuesday through
21   Thursday of the following week.  So that would be the 27th
22   to the 30th of July.
23            MR. BERGER:   Your Honor, Mitchell Berger.  I can
24   confirm that that's going to be easier and those
25   depositions are not going to involve functional immunity
```

1
2    but they will involve scope issues.  But because the
3    witnesses will be testifying virtually from the Middle East
4    and each of the two 30(b)(6) designees will be testifying
5    over a two-day period from 7:30 in the morning eastern time
6    till 11:30 in the morning eastern time, there it would be
7    convenient I would think in between day one and day two,
8    given that the entire east coast afternoon is available, to
9    speak to you on perhaps the Tuesday midday and the Thursday
10   midday of that week which I think is the 27th and the 29th of
11   July.
12            THE COURT:   All right, the --
13            MR. SINAIKO:   That's probably right.
14            THE COURT:   So if you're looking for a block of
15   time, on the 27th, again, if it would be helpful, I could
16   block out 12 to 2.  On the 29th I already have something
17   scheduled at 12, but I could hear from you probably from 1
18   to 2.
19            MR. SINAIKO:   Right, Your Honor, it's Steve
20   Sinaiko.  There is - I agree with Mr. Berger that we don't
21   anticipate significant difficulties around the depositions
22   to which he was referring a moment ago, the 30(b)(6)
23   witnesses who are going to testify from the Middle East.
24   And to the extent there are issues with those depositions,
25   the schedule makes it easier for us to address them with

```
 1                        PROCEEDINGS                  25
 2   Your Honor.  There is the possibility, it's not, you know,
 3   it's not set in stone, but there is scheduled currently
 4   another deposition on the 30th that might be double-tracked
 5   with the second half of one of the 30(b)(6) witnesses, and
 6   that is a deposition that, if it proceeds, would involve
 7   the same issues as, you know, the immunity that we've been
 8   discussing.
 9            THE COURT:   Right now my most heavily scheduled
10   day is the 29th, and I have a doctor's appointment in the
11   afternoon of the 28th.  I don't think you were looking for
12   the afternoon of the 28th.  So the afternoon of the 27th as
13   of now it's okay, and like I said, I can carve out 12 to 2
14   for you.  The 29th I could carve out 1 to 2, and the 30th I
15   could do 12 to 2 if that's helpful if you have something
16   double-teamed on the 30th.
17            MR. SINAIKO:   Your Honor, I think that's perfect
18   from a scheduling perspective.
19            THE COURT:   All right, so let's back it up.  Let
20   me just jot down all the dates.  The 21st was it and the
21   23rd, 22nd and 23rd?
22            MR. BERGER:   22nd and 23rd, Your Honor.
23            THE COURT:   22nd and 23rd I'll try to block out 12
24   to 2.  I'll try to block out 12 to 2 every day except the
25   29th where I already have something at 12.  Okay?  And for
```

1

2  this coming, for this next, for the deposition that's next

3  up is this coming Thursday, the 8th, I'll try to block out

4  again 12 to 2.  I'll try to block out 12 to 2 every day

5  except for that one day when I already have something at

6  12.  Okay?  Which is the 29th.  All of the other days I'll

7  try to carve that out for you to call in if you need to.

8       But just temper your expectations about what kind

9  of rulings you'll be able to get from me.  I mean I do

10 handle rulings, I do handle disputes from depositions when

11 they occur, and I try to make rulings.  Sometimes my

12 rulings are make your record, you know, sometimes that's

13 the way that I resolve it.  Sometimes it's that question is

14 confusing, you should reframe it or, you know, stop making

15 speaking objections or, you know, the kinds of things

16 people call me, they say somebody's being harassing or

17 whatever, I lecture people.

18       But be prepared to have the court reporter read

19 back to me a particular question, a particular answer, and

20 just understand that most likely I'm going to look to you

21 to tell me with straight faces that you have a good faith

22 and you believe sound basis for asking a question because

23 you believe it is geared to one of the prongs of the

24 statute at issue.  And you have a good basis on the other

25 side for asserting immunity and you have case law to

PROCEEDINGS                    27

1

2   support it, and the case law would also support the

3   instruction, you know, in which case I'm going to say make

4   it, put it on the record.

5          So there may be issues around the edges where I

6   make specific rulings and say yes or no on a particular

7   question or a particular response, but more likely I'm

8   going to be looking to you to look carefully at what Judge

9   Vyskocil ruled already and adhere to it.

10          And I'll touch base with her and see if we can put

11   our heads together about our expectations are about this

12   immunity.  If she says I would actually like it if you

13   would look at the broader question of the immunity and, you

14   know, make broader rulings on it, then I will do so.  I

15   just have some doubt that that's what she had in mind.  But

16   if she does, then I will get back to you, probably through

17   my clerk who's on this line, and ask you for some briefing.

18   Okay?

19          MR. BERGER:   Thank you, Your Honor.  This is

20   Mitchell Berger for defendants.  Just one other thought in

21   advance of what I'm sure inevitably will be a call to you

22   on Thursday which --

23          THE COURT:   By the way, you do not have to call

24   me.  If the period from 12 to 2 comes and goes and I don't

25   hear from you, do not feel that you're letting me down or

1                          PROCEEDINGS                    28

2   that you're violating some court order that you must call

3   me.  You do not have to call me.  I would welcome a lack of

4   calls.

5          MR. BERGER:   Well, Your Honor, speaking for the

6   defendants, we would welcome not having a call as well

7   because we've, as I said, tried to be transparent about how

8   we're going to approach this and what instructions we're

9   going to issue.  So we're not going to be looking to call.

10         But I just wanted to lay one other thought out for

11  the Court in advance of potentially hearing from us on the

12  8th which does actually affect how what may be a series of

13  questions get asked and whether they raise immunity or even

14  whether they need to be answered, which is the focus of the

15  questioning here is whether the defendants have engaged,

16  according to the language of the statute, in any,

17  quote/unquote, "any activity."  So to the extent the same

18  question is asked a hundred times about a hundred different

19  types of activity, regardless of the immunity issue, there

20  comes a point where enough is enough.

21         I don't expect Your Honor to rule on that.  I'm

22  just saying that in terms of what happens is Mr. Sinaiko

23  says we've saved up 20 template questions, they all ask the

24  same thing, I don't think we need Your Honor to be

25  resolving the question on all 20.  These are, you know,

```
 1                         PROCEEDINGS                    29
 2   when Judge Vyskocil said the jurisdictional predicates, one
 3   of those jurisdictional predicates is the word any, even so
 4   it becomes a question of what becomes cumulative.
 5             THE COURT:   Look, I'm not sure this is what
 6   you're saying, but if there are numerous questions and
 7   responses that are all of a piece, that all follow the same
 8   kind of pattern, the argument is the same on all of them,
 9   you certainly don't need to raise all of them with me, and
10   you should take whatever answer I give you and extrapolate
11   with respect to others that are similar.  I'm not sure if
12   you're saying something other than that.
13             MR. BERGER:   Your Honor, I think that's obviously
14   very helpful guidance and that is part of what I'm saying.
15   The only other thing that I'm saying is that sometimes if
16   there is a tough nut to crack on immunity but it's cracked
17   in a way that supports the immunity instruction, then I
18   guess what I am saying is what Your Honor is saying, that
19   we'll extrapolate from there.  But I hope the plaintiffs --
20             THE COURT:   I don't know what that means.  I
21   don't understand, without a concrete example I don't know
22   what you're talking about.
23             MR. BERGER:   All right, well, let me there to be
24   as concrete as possible.  We have produced calendars for
25   the ambassador and the deputy ambassador to the U.N.  Each
```

1

2      of them has well over a hundred line items.  We've also

3      produced a privilege log for the ambassador and the deputy

4      ambassador concerning meetings, and they probably have well

5      over 200 line items.  It seems to me needless to go through

6      every one of the line items in the calendar regardless of

7      the immunity issue if the goal here is to prove that the

8      defendants have engaged in, quote/unquote, "any activity"

9      falling under the statute.  We know from the plaintiffs'

10     briefing that they're focused on things that don't raise

11     questions of private conversations.  They're focused, for

12     example, on addresses the ambassador made to various

13     universities.

14          And so to consciously try to invade the privilege

15     in private conversations I guess my point is is that is a

16     reason to respect the privilege when they don't need to go

17     there in order to do what Judge Vyskocil told them to do

18     which is focus on the jurisdictional predicates.

19          THE COURT:  Well, look, I gather these are all

20     plaintiffs' depositions, plaintiffs are taking these

21     depositions or is it some on each side?

22          MR. BERGER:  No, you're correct.  Mitchell

23     Berger, Your Honor, that's correct.  These are

24     jurisdictional discovery depositions.  They're all

25     plaintiffs' --

```
 1                        PROCEEDINGS                    31
 2            THE COURT:   So plaintiff is taking these
 3   depositions.  So, plaintiff, you have a certain number of
 4   hours for these depositions.  You may not get the witnesses
 5   back again.  If there are objections and they come back to
 6   the Court afterwards and you say we need you to rule
 7   specifically on these objections and if you overrule them,
 8   we need to have the witness back, the Court may say no.  So
 9   you have to look at the time that you have and use it
10   wisely, and if you spend a large portion of your time going
11   into areas where you're getting objections and you're
12   getting frustrated and whatever, think about is there
13   something else I better be doing with my time as well or
14   instead of this where I'll get testimony, where I'm assured
15   of getting testimony or the testimony may be usable on the
16   issue of jurisdiction.  So if there is something that is
17   public on which they would not, certainly not be immunity
18   even if immunity is available and that would be useful
19   territory, maybe make sure you spend some of your time on
20   that because think of every deposition as this may be your
21   one shot at it for the jurisdictional discovery and you may
22   not get, you may but you may not get the witness back
23   again.  All right?  So --
24            MR. SINAIKO:   Your Honor, it's Steve – oh, I
25   apologize.
```

```
 1                        PROCEEDINGS                    32
 2          THE COURT:   No, no, I'm sorry, I'm probably just
 3   repeating myself here.  Go ahead.
 4          MR. SINAIKO:   It's Steve Sinaiko, and we
 5   certainly appreciate that guidance.  I think our concern
 6   around these issues is that we're going to be precluded by
 7   instructions from probing the basis for the privilege
 8   assertions in a way that would allow us to build a record
 9   that the privilege doesn't apply if it exists at all.  So -
10   -
11          THE COURT:   Well, any and all privilege
12   questions, and I think I heard this from defendant, I don't
13   think they would disagree with this, there are going to be
14   certain foundational questions to establish whether or not
15   something is legitimately privileged.  Even attorney-client
16   you can ask who the people were who were having the
17   conversation and whether there was anybody else in the room
18   at the time, you know, and general subject matter.  Just
19   like on a privilege log, you're supposed to identify
20   general subject matter without revealing the content of the
21   advice requested or advice given.
22          There are certainly questions that will help
23   establish whether there is or is not a ground for an
24   immunity objection.  And I'm assuming defendants recognize
25   that there are such questions and will allow such questions
```

```
1                        PROCEEDINGS                    33
2   to be answered.
3           So I mean I don't know exactly what is needed here
4   in order to trigger this privilege.  You already know what
5   the person's job was, what the role was, you know, whether
6   something was spoken within that role if that's part of the
7   test.  Then you have to answer the questions that would
8   enable the parties and the Court to determine whether it's
9   privileged or enable you to argue that it is, would enable
10  plaintiffs to argue it is not, and to enable the Court to
11  determine who's right.
12          So I don't expect anything and everything
13  surrounding a meeting, for example, to result in an
14  instruction.  I only – and I think defense counsel already
15  said this, that they feel that there's a line.
16          MR. BERGER:  For defendants, Your Honor, Mitchell
17  Berger again.  Yes, we hear that loud and clear and we're
18  trying to not only draw those lines appropriately but to be
19  transparent about where we're drawing those lines.
20          MR. SINAIKO:   Your Honor, it's Steve Sinaiko for
21  the plaintiffs.  If the depositions unfold as Your Honor is
22  suggesting, that should be fine.
23          THE COURT:   All right, look, your goal, I would
24  say your mission but that sounds like it might be a pun,
25  your goal should be to proceed without need for calling me.
```

1                             PROCEEDINGS                    34

2   That's ideal.  What that means is you're working well

3   together and cooperatively together, you're trying to work

4   through issues on your own before you raise them with me

5   and you're successfully making your positions clear and the

6   things that you think are important and building your

7   records.

8            And I'm not sure how well you've been working

9   together in this case.  It seemed to me from taking a look

10  at the transcript of the conference before Judge Vyskocil

11  that she may have had the sense that you weren't working

12  all that well together.  I think she suggested at one point

13  you put things in writing because you weren't able to talk

14  with each other.  Am I remembering that correctly?

15           You need to be able to confer fully in good faith

16  about any and all discovery disputes before raising them

17  with the Court, including an issue that comes up at a

18  deposition, you go off the record, you talk about it, you

19  confer fully, you see if you can resolve it, you see if you

20  can narrow it, you see if you can work around it to some

21  extent.  You see if, you know, you say what if I ask a

22  background question on this, would that get us somewhere.

23  You see if you can – do it as much as you can do without

24  running into problems before you reach a point where you

25  are really at impasse on some issue and you need the

 1
 2    Court's intervention.  All right, I enforce the good faith
 3    conference requirement, and I don't see why a dispute that
 4    arises at a deposition should be any different from any
 5    other discovery dispute in terms of that good faith
 6    conference requirement.  All right?
 7            MR. BERGER:  Your Honor, Mitchell Berger for
 8    defendants.  We hear you loud and clear.  I think things
 9    have taken a dramatic shift since the April 29 conference
10    with Judge Vyskocil.  I think we've been able to confer in
11    good faith about a number of issues, and I expect we may be
12    able to do so here and toward that end that's why I've
13    tried to be transparent both with the Court now and with
14    plaintiffs as well in advance about where we're going to be
15    drawing the lines.  So other than not knowing their
16    questions, we have no secrets about where our objections
17    and instructions are.
18            THE COURT:  All right.  Go carry on and I expect
19    you'll be able to work together.  I see no reason why you
20    cannot.  And, you know, you have to have a little trust in
21    the other side too that if they're tell you they have a
22    good faith basis for something and that they believe they
23    can support it, on either side, that, okay, they're
24    counsel, they say they've got a good faith basis for
25    something, they say they believe they can support it if

```
 1                          PROCEEDINGS                    36
 2   push comes to shove and there's a later motion made, move
 3   on, make the record, move on.  And if you're really at
 4   that's ridiculous, that's frivolous, how could you do that,
 5   that's well outside what Judge Vyskocil said, you know, how
 6   can you even say that and you're just going at it like
 7   this, that's not good faith conference, that shouldn't be
 8   happening.  If something really degenerates and you really
 9   can't get anywhere and you really think it's critical, then
10   you get in touch with me and I will make myself available
11   and try to help you as best as I can in that moment.  All
12   right?
13            MR. SINAIKO:   Your Honor, it's Steve Sinaiko.  We
14   certainly always make every effort to work in good faith
15   with the defendants, and it's certainly not our goal to
16   need to involve you with the depositions, but, you know, to
17   call you from the depositions --
18            THE COURT:   There should be very little reason
19   for you to call me given the guidance you've already had
20   both from Judge Vyskocil and from me.  There really should
21   be very little reason - most depositions go forward without
22   calling judges.  So you should be able to do it.  If you
23   really need me, you have times blocked out when you can
24   contact me.  Okay?
25            MR. SINAIKO:   Your Honor --
```

```
 1                        PROCEEDINGS                    37

 2             MR. BERGER:   Thank you, Your Honor.

 3             MR. SINAIKO:   -- we appreciate it.

 4             THE COURT:   All right, you're welcome.  Take

 5   care, everybody.

 6             MR. SINAIKO:   Thank you for your time today.

 7             THE COURT:   All right, bye bye.

 8             (Whereupon, the matter is adjourned.)

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

38

## C E R T I F I C A T E

I, Carole Ludwig, certify that the foregoing transcript of proceedings in the case of Shatsky et al v The Palestine Liberation Organization et al, Docket #18-cv-12355-MJV, was prepared using digital transcription software and is a true and accurate record of the proceedings.


Signature_____

                    Carole Ludwig
Date:     July 12, 2021