

Squire Patton Boggs (US) LLP
2550 M Street, NW
Washington, D.C.  20037

O   +1 202 457 6000
F   +1 202 457 6315
squirepattonboggs.com

Gassan A. Baloul
T    +1 202 457 6155
gassan.baloul@squirepb.com

**VIA ECF & EMAIL**

August 17, 2021

Hon. Debra Freeman
Chief U.S. Magistrate Judge
United States District Court
for the Southern District of New York
500 Pearl Street
New York, New York 10007-1312

Re:    *Shatsky v. PLO*, No. 18-cv-12355 (MKV) (DF)

Dear Judge Freeman:

This letter responds to the letter motion by counsel for Plaintiffs in *Sokolow v. Palestine Liberation Organization*, No. 04-394 (GBD), filed at 9:55 p.m. on Saturday, August 14, 2021 [ECF 99], asking the Court to overturn the confidentiality designations of Defendants Palestinian Authority and Palestine Liberation Organization ("Defendants") for portions of the depositions of the leadership of the Permanent Observer Mission of the State of Palestine to the United Nations (the "Mission"):  Ambassador Riyad Mansour (Chief of Mission); Ambassador Feda Abdelhady-Nasser (Deputy Chief of Mission); and Nadia Ghannam (Public Affairs Advisor).  Those portions of the depositions, among others, were designated as confidential under the Court's Stipulation and Order Concerning Production of Confidential Documents and Information [ECF 64] ("Confidentiality Order").

There is no merit to the *Sokolow* Plaintiffs' motion, nor does it present exigent circumstances notwithstanding the vexatious late weekend-night filing.  Further, it is telling that the *Shatsky* Plaintiffs—that is, the Plaintiffs *in this action*—have not sought to lift Defendants' confidentiality designations.  That is because the *Shatsky* Plaintiffs know that the confidentiality of the depositions of Ambassador Mansour, Ambassador Abdelhady-Nasser, and Advisor Ghannam was a key factor in avoiding disputes during those depositions over whether the examination improperly veered into subjects covered by UN functional immunity.  Instead, the parties were able to work around the immunity issue when Defendants allowed questioning on topics relating to the work of Palestine's UN Mission, while reserving Defendants' immunity arguments.  *See* Conference Tr. (7/27/21) at 124 ([Defendants' counsel]: "I believe I issued a total

45 Offices in 20 Countries

Squire Patton Boggs (US) LLP is part of the international legal practice Squire Patton Boggs, which operates worldwide through a number of separate legal entities.

Please visit squirepattonboggs.com for more information.

of three instructions during the course of depositions taken on July 8, July 22nd and July 23rd, and I think you should infer from the fact that you haven't heard from us on any of those dates that there was no dispute over those instructions") at 125 (Mr. Wick:  "I think -- I would agree with Mr. Berger.· I think -- I wouldn't say we've had no disputes, but we sort of worked around them").

Only now that the depositions are over have the *Sokolow* Plaintiffs, as mere intervenors in this action, sought to interfere with Defendants' expectations of confidentiality.  But the *Sokolow* plaintiffs do not demonstrate any harm from the confidentiality designations, or any need to lift them.  To the contrary, using their rights of access to the *Shatsky* depositions granted under an *agreed* modification of the Confidentiality Order [ECF 95], the *Sokolow* Plaintiffs already have filed the full deposition transcripts in the *Sokolow* case to be considered by Judge Daniels under seal.  *See Sokolow* Dkt. # 1039.

Having suffered no impairment of their ability to litigate in *Sokolow* using their access to the *Shatsky* depositions, the *Sokolow* Plaintiffs' motion is merely about forcing public disclosure of these confidential depositions.  Their request is contrary to the law of this Circuit, which rejects the "presumption that discovery materials should be publicly available whenever possible, *i.e.* absent a showing of good cause for shielding them from view."  *SEC v. TheStreet.com*, 273 F.3d 222, 231 n.9 (2d Cir. 2001).  Instead, "the public had no presumptive right of access to pretrial depositions at common law.  And there is no reason to believe that the enactment of the Federal Rules altered that status quo."  *Haidon v. Town of Bloomfield*, No. 3:19-119, 2021 U.S. Dist. LEXIS 137498, at *9 (D. Conn. July 23, 2021).

As this Court knows both from Judge Vyskocil's Order of Reference [ECF 93] and from the discovery conference held with Your Honor on July 6, 2021, the parties anticipated that depositions of the Mission's leadership would generate disputes over whether Plaintiffs' examination invaded the functional immunity of the Mission and its personnel.  Heeding this Court's admonitions, Defendants sought to pretermit such disputes by allowing questions concerning the activities of Ambassador Mansour, Ambassador Abdelhady-Nasser, and Advisor Ghannam, and the underlying motivation and rationale for those activities (*e.g.*, Mansour Dep. (Ex. 1) at 30-35, 45-49, 50-52), while preserving their position on functional immunity, and in the expectation of confidentiality as formalized by Defendants' invocation of the Confidentiality Order for those depositions.  *See, e.g., id.* at 78 ("[Defendants' Counsel:] But if you will agree that his answer to this question does not otherwise waive our claim of functional immunity, he may answer."), at 90 ([Defendants' Counsel:] "the very cover page of the calendar says that it is subject to claims of functional immunity and jurisdictional immunity. We put it in the public calendar because it's listed as a public event in the UN's public calendar.")

During the course of these depositions, the *Shatsky* Plaintiffs never suggested that the depositions would be in the public domain.  Defendants would have taken a *very* different approach to the depositions if they knew the *Shatsky* Plaintiffs—or the *Sokolow* Plaintiffs as intervenors— would challenge confidentiality.  Courts are properly reluctant to overturn a party's reliance on a confidentiality order.  When a deponent "reasonably relie[s] on a [protective order] in providing testimony," "there is a strong presumption against modification of that order."  *Scanlan v. Town*

Squire Patton Boggs (US) LLP                                                                                                Judge Freeman
                                                                                                                             August 17, 2021

*of Greenwich*, No. 18-1322, 2021 U.S. Dist. LEXIS 70126, at *17-18 (D. Conn. Apr. 12, 2021) (determining whether it would be "presumptively unfair for the Court to remove [] confidentiality designations" from deposition transcripts) (cleaned up).  In such a case, the burden falls on the party seeking to remove the confidentiality designation to "present a compelling need to redesignate" the materials.  *Id*. at *30-32; *Ceglia v. Zuckerberg*, No. 10-569, 2011 U.S. Dist. LEXIS 90280, at *6-7 (W.D.N.Y. Aug. 12, 2011) (rejecting attempt to de-designate confidential items on privilege log where designating party "could have entertained a reasonable belief" as to their confidential nature as required by the court's protective order).  As noted, the *Sokolow* Plaintiffs present no such "compelling need," because they have made full use of the *Shatsky* depositions in the *Sokolow* proceedings.

      Defendants reasonably relied on the Confidentiality Order to designate these depositions and other discovery materials as confidential.  Paragraph 2(a) of the Confidentiality Order specifically protects "highly sensitive governmental information."  [ECF 64 at 3].  The activities of a diplomatic mission to the United Nations—which negotiates and interacts with representatives of the entire world—and the underlying rationale and strategy for those activities, are among the most sensitive of all governmental information.  *See, e.g.*, *In re Terrorist Attacks*, 2019 U.S. Dist. LEXIS 121935, at *241 (S.D.N.Y. July 22, 2019) ("[C]onsulates and diplomatic missions have a strong interest in maintaining the confidentiality of their records.").

      The sensitivity of this information is underscored by the UN functional immunity covering the Mission, its personnel, and its activities.  The UN Secretariat has specifically confirmed the rights and immunities the Mission and its personnel under the UN Charter and the UN Headquarters Agreement, because the State of Palestine (like its predecessor the PLO) is an invitee to the United Nations:

> It is widely accepted that certain functional privileges and immunities flow by necessary intendment from the Charter of the United Nations and the Headquarters Agreement, without which the invited entity would not be in a position to carry out its functions. …
>
> Functional privileges and immunities certainly extend to immunity from legal process in respect of words spoken and written or any act performed *in the exercise of the observer functions*. … *Any measure which might impede* the maintenance of facilities of the Permanent Observer Mission of Palestine to the United Nations in New York or *its ability to discharge its official functions* would contravene the Charter of the United Nations**,** the Headquarters Agreement and the relevant General Assembly resolutions.

UN Juridical Yearbook, Chap. VI, § A(13) (2000) at https://legal.un.org/unjuridicalyearbook/pdfs/english/by_volume/2000/chpVI.pdf (emphasis added).[1]  Palestine's UN Mission would find it impossible to discharge its official functions if its

---

[1] The *Sokolow* Plaintiffs cite to *other* UN Yearbook discussions concerning *other* UN invitees [ECF 99, at 6], but even then ignore the language that precedes and contextualizes the sentence they quote: "It has been the consistent view of the Organization that a permanent observer delegation, as an invitee to meetings of United Nations organs, is entitled to enjoy in that capacity certain functional immunities necessary for the performance of official functions vis-

3

Squire Patton Boggs (US) LLP                                              Judge Freeman
                                                                          August 17, 2021

discussions with other countries, UN bodies, and other stakeholders (including civil society) did not enjoy confidentiality. *Cf. Akzo N.V. v. United States ITC*, 808 F.2d 1471, 1483 (Fed. Cir. 1986) (recognizing the "chilling effect" that would result from disclosure of "confidential business information").

The courts are in agreement with the UN that Palestine's Mission "is an invitee of the United Nations under the Headquarters Agreement and its status is protected by that agreement." *United States v. PLO*, 695 F. Supp. 1456, 1471 (S.D.N.Y. 1988). Courts are therefore "obligat[ed] … to refrain from impairing the function of the PLO Observer Mission to the United Nations." *Id*. Indeed, the United States has urged district courts to follow the UN's interpretation of the UNHQA to avoid a "political and legal quagmire." U.S. Stat. of Interest, *Ungar v. Palestinian Auth.*, No. 18-0302, at 25 (S.D.N.Y. Sept. 12, 2005). In addition, Judge Vyskocil recognized during an April 29, 2021, hearing Defendants' right to assert objections during these depositions, and issue instructions not to answer, when "questions that will be asked will invade functional immunity under the United Nations … Headquarters Charter." Hearing Tr. [ECF 81] (Apr. 29, 2021) at 12:14-21; *see also id.* at 39:6-11.

Functional immunity—and the corresponding necessity for confidentiality—covers all acts of the Mission and its Ambassadors and personnel that are performed "in the exercise of the observer functions" (Juridical Yearbook, *supra*) or otherwise in an "official capacity." *See Van Aggelen v. UN*, 311 F. App'x 407, 409 (2d Cir. 2009) (citing UN Charter and CPIUN and describing functional immunity as covering "all acts performed in [the person's] official capacity"); *Brzak v. UN*, 597 F.3d 107, 113 (2d Cir. 2010) ("functional immunity" under the CPIUN applies to "acts that the defendants performed in exercise of their official functions, namely, their management of the office in which the plaintiffs worked"). Courts apply the same standard for "residual immunity" under the Vienna Conventions. For example, *In re Terrorist Attacks*, No. 03-mdl-1570, 2020 U.S. Dist. LEXIS 166886, *260, 269 (S.D.N.Y. Aug. 27, 2020), held that a former diplomat could refuse questions about his "decision-making performed in the exercise of official functions" under residual immunity. Both functional and residual immunity ask whether the actions implicate an official function and were "performed in the exercise of the [official] functions in question." *Id*. at *262 (cleaned up); *Giraldo v. Drummond Co.*, 808 F. Supp. 2d 247, 248 (D.D.C. 2011) (applying immunity to information "relating to acts taken in his official capacity as a government official" or "obtained in his official capacity as a government official").[2]

---

à-vis those organs." Permanent Observer Mission of the African Union, 2014 U.N. Jur. Y.B. 328; Permanent Observer Mission of the Org. of the Islamic Conf., 1999 U.N. Jur. Y.B. 409.

[2] The *Sokolow* Plaintiffs incorrectly dismiss UN functional immunity as nothing except the ability to avoid suit [ECF 99, at 3], but their cases do not support their claims. For example, *Walczyk v. Rio*, 496 F.3d 139, 144 (2d Cir. 2007), discussed qualified immunity from claims for unlawful arrest and search—which has nothing to do with this case. And *Wultz v. Bank of China Ltd.*, 32 F. Supp. 3d 486, 493 (S.D.N.Y. 2014), granted a motion to quash the deposition of former Israeli security officer under "foreign sovereign immunity." More puzzling is their reliance on cases like *Ghana Supply Com. v. New England Power Co.*, 83 F.R.D. 586, 595 (D. Mass. 1979), which held that "[w]hen an agency of government institutes suit, any obligation to disclose relevant information extends to the government Qua government requiring disclosure of all documents in its possession, custody or control."

Squire Patton Boggs (US) LLP                                                         Judge Freeman
                                                                                     August 17, 2021

      The depositions were entirely devoted to activities of Ambassador Mansour, Ambassador Abdelhady-Nasser, and Advisor Ghannam in the discharge of the Mission's "observer functions", and in their "official capacit[ies]" as the *Sokolow* Plaintiffs themselves concede.  *See* 8/14/21 Ltr. at 4 & n.10 ("Dr. Mansour appeared in his official capacity").  There should be no dispute that the "observer functions" and "official" UN activities of Palestine's UN Mission include public outreach and advocacy of the type cited by the *Sokolow* Plaintiffs.  Illustratively, Palestine through the Mission participates in the UN Committee on the Exercise of the Inaliendable Rights of the Palestinian People ("CEIRPP").  The official business of the CEIRPP is to "focus … on diplomatic efforts and initiatives to support the achievement without delay of an end to the Israeli occupation that began in 1967 and of the two-State solution" and to work with governments, "permanent missions in New York and around the world," and "international conferences and events involving Member States, *civil society organizations and regional organizations," to "continue to mobilize the international community to stay steadfast in its support for the inalienable rights of the Palestinian people*."  CEIRPP Programme of Work, UN Doc. A/AC.183/2020/1 (Feb. 7, 2020), https://www.un.org/unispal/document/palestinian-rights-committee-programme-of-work-for-2020-a-ac-183-2020-1/ (emphasis added).  Outreach to civil society, regional organizations, and the international community to mobilize support for the rights of the Palestinian people thus is a core function of Palestine's UN Mission—and the ways in which it does so, and the underlying rationale, thus are properly subject to functional immunity and, as importantly, qualify as "highly sensitive government information" under the Confidentiality Order.

      Attempting to ignore the core UN purpose of the Mission's public outreach and advocacy, the *Sokolow* Plaintiffs prune out portions of the deposition testimony that plainly link the Mission's "advoca[cy] for the Palestinian cause" [ECF 99, at 4] to the Mission's UN functions.  The full quote forecloses the *Sokolow* Plaintiffs' effort to divorce such advocacy from the Mission's UN functions:



Q.
A.

Q.
A.

Mansour Depo. (Ex. 1) at 92.

      The Mission's public advocacy for the Palestinian people is not "self-promotional" [ECF 99, at 7], but instead goes to the heart of one of the longest-standing UN issues, the Question of Palestine.  UN G.A. Res. 3236, A/RES/3236 (XXIX) (Nov. 22, 1974); *see also supra* concerning

Squire Patton Boggs (US) LLP                                                                              Judge Freeman
                                                                                                          August 17, 2021

the CEIRPP mandate.[3]  The *Sokolow* Plaintiffs erroneously claim that public disclosure of the depositions is necessary to serve the purposes of the Foreign Agents Registration Act (FARA) [ECF 99, at 4], but FARA is entirely inapplicable to UN activities—and the United States government, which enforces FARA, has never contended otherwise.  Palestine's UN Ambassadors and Advisor Ghannam were clear that everything they have done is in exercise of the Mission's UN observer functions.[4]  The United States is well aware of the activities of Palestine's UN Mission, but does not claim that the Mission has exceeded its UN mandate or that it has broken any laws.  U.S. Br. at 4 [ECF 53], No. 20-3374, *Fuld v. PLO* (S.D.N.Y.).

In the end, the *Sokolow* Plaintiffs present no "compelling need to redesignate" the depositions, particularly when revoking confidentiality would be "presumptively unfair" given Defendants' reliance on the Confidentiality Order—which the *Shatsky* Plaintiffs have not challenged, and which facilitated the dispute-free conduct of those depositions.  *See Scanlan*, 2021 U.S. Dist. LEXIS 70126, at *17-18.  Further, the *Sokolow* Plaintiffs already have filed these depositions with Judge Daniels in *Sokolow*, and they present this Court no other rationale—let alone a "compelling" purpose—for removing the confidentiality designations concerning this highly sensitive government information.  The *Sokolow* Plaintiffs' motion should be denied.

                                                                                    Respectfully submitted,


                                                                                    /s/ *Gassan A. Baloul*
                                                                                    Gassan A. Baloul


cc:     All Counsel

---

[3] The *Sokolow* Plaintiffs wrongly mock Ambassador Mansour for saying "plastic" is within the UN's ambit.  Palestine previously served as chair of the UN Group of 77, and a report on the adverse environmental impact of plastic was submitted to the Group of 77 during the Ambassador's tenure as head of that UN group.  It discussed "the application of an efficient and sustainable eco-functional plastic materials industry development model based on the needs of developing countries."  The Group of 77 at the United Nations, https://www.g77.org/pgtf/project.php?id=INT/17/K05.

[4] The *Sokolow* Plaintiffs misleadingly assert that a person who was an "employee" or "staff" of Iran's UN Mission was indicted for advocating on behalf of Iran. [ECF 99, at 6].  The indictment says *nothing* about the defendant being a member of Iran's UN mission; indeed, the defendant denies that potentially-beneficial status, averring he was only an "outside consultant" for Iran and that "he is not a diplomat." *See* Indictment [ECF 6], Affidavit [ECF 16], Motion [ECF 44], *United States v. Afrasiabi*, No. 21-cr-0046 (E.D.N.Y.).

Squire Patton Boggs (US) LLP                                                                 Judge Freeman
                                                                                             August 17, 2021

the CEIRPP mandate.[3]  The *Sokolow* Plaintiffs erroneously claim that public disclosure of the depositions is necessary to serve the purposes of the Foreign Agents Registration Act (FARA) [ECF 99, at 4], but FARA is entirely inapplicable to UN activities—and the United States government, which enforces FARA, has never contended otherwise.  Palestine's UN Ambassadors and Advisor Ghannam were clear that everything they have done is in exercise of the Mission's UN observer functions.[4]  The United States is well aware of the activities of Palestine's UN Mission, but does not claim that the Mission has exceeded its UN mandate or that it has broken any laws.  U.S. Br. at 4 [ECF 53], No. 20-3374, *Fuld v. PLO* (S.D.N.Y.).

In the end, the *Sokolow* Plaintiffs present no "compelling need to redesignate" the depositions, particularly when revoking confidentiality would be "presumptively unfair" given Defendants' reliance on the Confidentiality Order—which the *Shatsky* Plaintiffs have not challenged, and which facilitated the dispute-free conduct of those depositions.  *See Scanlan*, 2021 U.S. Dist. LEXIS 70126, at *17-18.  Further, the *Sokolow* Plaintiffs already have filed these depositions with Judge Daniels in *Sokolow*, and they present this Court no other rationale—let alone a "compelling" purpose—for removing the confidentiality designations concerning this highly sensitive government information.  The *Sokolow* Plaintiffs' motion should be denied.

                                                                    Respectfully submitted,


                                                                    /s/ *Gassan A. Baloul*
                                                                    Gassan A. Baloul


cc:     All Counsel

---

[3] The *Sokolow* Plaintiffs wrongly mock Ambassador Mansour for saying "plastic" is within the UN's ambit.  Palestine previously served as chair of the UN Group of 77, and a report on the adverse environmental impact of plastic was submitted to the Group of 77 during the Ambassador's tenure as head of that UN group.  It discussed "the application of an efficient and sustainable eco-functional plastic materials industry development model based on the needs of developing countries."  The Group of 77 at the United Nations, https://www.g77.org/pgtf/project.php?id=INT/17/K05.

[4] The *Sokolow* Plaintiffs misleadingly assert that a person who was an "employee" or "staff" of Iran's UN Mission was indicted for advocating on behalf of Iran. [ECF 99, at 6].  The indictment says *nothing* about the defendant being a member of Iran's UN mission; indeed, the defendant denies that potentially-beneficial status, averring he was only an "outside consultant" for Iran and that "he is not a diplomat." *See* Indictment [ECF 6], Affidavit [ECF 16], Motion [ECF 44], *United States v. Afrasiabi*, No. 21-cr-0046 (E.D.N.Y.).