# Arnold & Porter

Kent A. Yalowitz
+1 212.836.8344 Direct
Kent.Yalowitz@arnoldporter.com

August 18, 2021

**BY ECF**

Hon. Debra Freeman
United States District Court
 for the Southern District of New York
500 Pearl Street
New York, New York 10007-1312

Re: *Shatsky et al. v. Palestine Liberation Organization et al.*,
18 Civ. 12355 (MKV) (DF)—Reply in Support of Letter-Motion [ECF 100]

Dear Judge Freeman:

Defendants letter of August 17 [ECF 103] does not sustain their burden, under Rule 26(c) and the confidentiality order currently in place, to show "good cause" for maintaining the confidentiality of deposition transcripts and documents concerning their promotional activities. Our request to overrule defendants confidentiality designations [ECF 100] should be granted.

## A.     Defendants Bear the Burden of Making a "Particular and Specific" Demonstration of Fact Showing that Disclosure Would Result In Serious Injury

The question before the Court is governed by Rule 26(c)(1), under which a court may order confidentiality for "good cause." The burden of establishing good cause lies with the party seeking to prevent the disclosure, *see Gambale v. Deutsche Bank AG,* 377 F.3d 133, 139 (2d Cir. 2004), and the rule requires a "particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements," *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 102 n.16 (1981) (cleaned up). Courts have required foreign governments seeking protection to show a need "to protect important military secrets, extremely sensitive foreign policy questions, and other national-security related issues" like "intelligence collection systems." *Compagnie Francaise d'Assurance Pour le Com. Exterieur v. Phillips Petroleum Co.*, 105 F.R.D. 16, 25 (S.D.N.Y. 1984) (citations omitted).

Defendants do not even cite Rule 26(c); nor do they acknowledge—much less attempt to satisfy—its requirements. Defendants also fail to discuss or cite the text of Paragraph 14 of the Confidentiality Order they invoke. That order provides *expressly* that, in connection with any application to the Court concerning an objection "to any designation of confidentiality," "the burden of proving that Discovery Material should be treated as Confidential Material shall rest with the Designating Party asserting confidentiality." Stipulation and Order Concerning Production of Confidential Documents and Information (Mar. 11, 2021) [ECF 64].

Defendants' factual showing does not come close to meeting the good-cause standard. It is not a secret that defendants gave press interviews in the United States to MSNBC and other news outlets, maintained public Twitter and Facebook accounts in English, and met in the United States with individuals and organizations who had no formal connection to the United Nations (such as students and community groups). Defendants have articulated no harm from disclosure of the self-evident fact that ███████████████████████████████████████████

# Arnold&Porter

Hon. Debra Freeman
August 18, 2021
Page 2

███████████████████████████████[1]██████████████████████████████████[2]

Instead, defendants assert that their promotional activities "and the underlying rationale and strategy for those activities, are among the most sensitive of all governmental information." ECF 103 at 3. Defendants also say they will suffer a "chilling effect" if it becomes public that they engage in promotional activities to ███████████████████████████████████████. *Id.* at 4. These implausible assertions are exactly the kind of "broad allegations of harm unsubstantiated by specific examples or articulated reasoning" that numerous judges in this district have held "fail to satisfy the test." *See In re Parmalat Sec. Litig.*, 258 F.R.D. 236, 244 (S.D.N.Y. 2009).[3]

Finally, defendants have no explanation for their improper "wholesale designations of deposition transcripts as confidential." *See New Falls Corp. v. Soni*, No. Civ. 166805 (ADS) (AKT), 2020 WL 2836787, at *12 (E.D.N.Y. May 29, 2020).

## B.   Defendants' Attempt to Shift the Burden Is Unavailing

Notwithstanding Rule 26(c)(1) and Paragraph 14 of the Confidentiality Order, defendants assert that the burden has shifted to the party *challenging* confidentiality, relying on *Scanlan v. Town of Greenwich*, No. 18 Civ. 1322 (KAD), 2021 WL 1352994 (D. Conn. Apr. 12, 2021). But that case is inapposite here, for three reasons.

*First*, the sensitive nature of the evidence in *Scanlon* was self-evident and not disputed: The plaintiff alleged that she was sexually assaulted as a minor and that the defendants colluded to cover up the crime and similar crimes against other girls. *Id.* at *1. As the *Scanlon* court explained, "[t]he events and allegations underlying plaintiff's claims are of a sensitive nature, and involve many parties who are or were minors at the time of those events. As a result, the need for confidentiality has been of particular concern to the parties and the Court. The Court permitted plaintiff and Peter Roe to proceed under pseudonyms." *Id.* After three years of litigation, the plaintiff decided to reveal her identity and sought to disclose extensive confidential information to the press. *Id.* at *2. On that basis, the court found that the plaintiff was, in effect, seeking a modification of the protective order. *Id.* The court therefore shifted the burden to the party seeking to modify the order. That is not this case. Here, we do not seek to *eliminate* the protective order's confidential

---

[1] Ghannam Dep. 166, 168, 169-70, 175, 178, 181, 182, 183-84, 189, 190, 195 (ECF 100 Ex. 2).

[2] Mansour Dep. 92, 97, 99, 107 (ECF 100 Ex. 3); Abdelhady-Nasser Dep. 87 (ECF 100 Ex. 1).

[3] *Accord JMG Improvements, Inc. v. Arch Specialty Ins.*, No. 20 Civ. 2882 (RA) (GWG), 2021 WL 3173022, at *3 (S.D.N.Y. July 26, 2021); *Tyson Foods, Inc. v. Keystone Foods Holdings, Ltd.*, No. 19 Civ. 10125 (ALC), 2020 WL 5819864, at *3 (S.D.N.Y. Sept. 30, 2020); *Coventry Cap. US LLC v. EEA Life Settlements, Inc.*, No. 17 Civ. 7417 (VMH) (BP), 2017 WL 5125544, at *3 (S.D.N.Y. Nov. 2, 2017); *Tropical Sails Corp. v. Yext, Inc.*, No. 14 Civ. 7582 (JFK), 2016 WL 1451548, at *3 (S.D.N.Y. Apr. 12, 2016); *Ashmore v. CGI Grp. Inc.*, 138 F. Supp. 3d 329, 351 (S.D.N.Y. 2015), *aff'd*, 923 F.3d 260 (2d Cir. 2019); *Forte v. Liquidnet Holdings, Inc.*, No. 14 Civ. 2185 (AT) (AJP), 2014 WL 12775220, at *5 (S.D.N.Y. Dec. 2, 2014); *N.Y. v. Actavis, PLC*, No. 14 Civ. 7473 (RWS), 2014 WL 5353774, at *2–3 (S.D.N.Y. Oct. 21, 2014); *EEOC v. Kelley Drye & Warren LLP*, No. 10 Civ. 655 (LTS)(MHD), 2012 WL 691545, at *3 (S.D.N.Y. Mar. 2, 2012).

# Arnold&Porter

Hon. Debra Freeman
August 18, 2021
Page 3

treatment of "sensitive government information"; we seek to *apply* the order as written. The information at issue simply is not "sensitive."

**Second**, the *Scanlon* court made particularized and extensive findings of specific reliance on confidentiality by specific individuals. As the court explained, the parties and the court had proceeded through discovery protecting "the identities of Peter Roe, minors, their parents, and alleged sexual assault victims." *Id.* at *5; *see id.* at *8 ("The Court has taken the privacy interests at stake here very seriously, and has *repeatedly* taken steps to ensure that sensitive and identifying information remains confidential.") (emphasis by the court). Both the plaintiffs' own counsel *and* the court itself had given express assurances to defendants and non-party witnesses that deposition transcripts "would remain confidential," and the court "relied on counsel's representation about the confidential nature of the deposition in directing [a non-party witness] to answer certain questions" about her children. *Id.* at *9; *see id.* at *10 ("Plaintiff's counsel invoked the SPO when seeking deposition testimony from the defendants and witness, and their agreement to provide materials or testimony was based at least in part on counsel's assurances") (cleaned up).

Here, the record reveals no such assurances and no such reliance. In advance of the depositions, the parties identified a looming dispute about "functional immunity" and proactively sought an order of reference to Your Honor in order to address "potential assertions of United Nations functional immunity." Memo Endorsement Granting Joint Letter Application (June 25, 2021) [ECF 92]. Yet in their letter-application (*id.*), in their pre-deposition conference with this Court on July 6, 2021 [ECF 96], and at two of the three depositions, no one invoked the confidentiality order or even *suggested* that testimony would be given only if treated as confidential. At the third deposition, the witness testified about her personal health, which defendants designated as confidential, saying "[w]e are going to designate all of these health-related questions… confidential pursuant to the Protective Order in this action." Ghannam Dep. 14. We have no quarrel with the confidential treatment of that testimony. Defendants also contend that two "no-waiver" agreements made on the fly at one of the depositions "formalized" their "expectation of confidentiality. ECF 101 at 2. But neither exchange contains the word "confidential" or any iteration of that word. In short, in contrast to *Scanlon*, defendants offer no evidence that they or anyone else relied on a specific promise of confidentiality of the information at issue here.

**Third**, the *Scanlon* court found it important that the plaintiff "ha[d] not given any reason for her request to remove the confidentiality protection." *Id.* at 10. Here, although the burden rests with defendants to show good cause for continued confidentiality, we have identified two reasons for the de-designation, both of which were discussed in the meet-and-confer process, but neither of which is mentioned by defendants in their letter to the Court. To begin, this case is one of four pending cases in which defendants' promotional activities are at issue by operation of 18 U.S.C. § 2334(e). Yet defendants have used and are continuing to use the confidentiality order as a "tool to prevent opposing counsel from cooperating with one another to advocate effectively for their clients." *Royal Park Invs. SA/NV v. Deutsche Bank Nat'l Tr. Co.*, 192 F. Supp. 3d 400, 406 (S.D.N.Y. 2016). We understand that counsel for defendants have admonished the plaintiffs in another case not to coordinate with other plaintiffs and have objected to our discussion of confidential information with counsel for the plaintiffs in yet another such case. Defendants' over-designation has

# Arnold & Porter

Hon. Debra Freeman
August 18, 2021
Page 4

therefore caused (and continues to case) concrete harm. In addition, as discussed below, the right to public access supports disclosure.

## C.   The Right to Public Access Supports Disclosure

The documents at issue on this application implicate common-law and First Amendment rights of public access, having been filed (under seal) in the *Sokolow* case, No. 04 Civ. 397 (GBD) [ECF 1039]. In such cases, the court proceeds in a three-step process. *See Mirlis v. Greer*, 952 F.3d 51, 59 (2d Cir. 2020). In the first step, the court determines whether the document is a "judicial document," that is, "one that has been placed before the court by the parties and that is relevant to the performance of the judicial function and useful in the judicial process." *Id.* (quotation marks omitted). Documents relevant to a "pending motion to dismiss for lack of personal jurisdiction" are "judicial documents," because they are "relevant to the performance of the judicial function." *In re Methyl Tertiary Butyl Ether (MTBE) Prod. Liab. Litig.*, No. 07 Civ. 10470 (SAS), 2013 WL 3531600, at *3 (S.D.N.Y. July 12, 2013).

In the second step, the court "proceeds to determine the weight of the presumption of access to that document…, [which] is 'governed by the role of the material at issue in the exercise of Article III judicial power and the resultant value of such information to those monitoring the federal courts.' *Mirlis*, 952 F.3d at 59. While the documents at issue here concern a matter of jurisdiction rather than an adjudication on the merits, they are nonetheless of substantial public interest. Indeed, the issue of personal jurisdiction over these defendants has led to the enactment of two federal statutes[4] and has induced substantial press coverage over the past several years.[5]

In the third step, "the court must identify all of the factors that legitimately counsel against disclosure of the judicial document, and balance those factors against the weight properly accorded the presumption of access." *Mirlis*, 952 F.3d at 59. This requires consideration of "the degree to which the subject matter is traditionally considered private rather than public, as well as the nature and degree of the injury to which the party resisting disclosure would be subjected were the privacy interest not protected." *Id.* at 61 (cleaned up). As discussed above, defendants have identified no harm that would befall them by disclosure of their public-relations activities (most of which are available from public-sources anyway), especially in light of the self-evident purposes for those

---

[4] Pub. L. 115-253, § 4, 134 Stat. 3183; Pub. L. 116-94, div. J, tit. IX, § 903, 133 Stat. 3082.

[5] *See*, *e.g.*, Joyce Karam, "'The National' obtains US official document for Palestinian 'reset,'" *The National* (May 18, 2021); "Biden pledge to reopen PLO mission in Washington faces legal hurdles," *Reuters* (Jan. 29, 2021); Shira Efron and Ibrahim Eid Dalalsha, "Reopening the U.S. Consulate in Jerusalem: Subject to Israeli Discretion?" *Israel Policy Forum* (Jan. 14, 2021); JNS, "Can Biden renew aid to the Palestinians while still adhering to Taylor Force Act?" (Nov. 24, 2020); Sander Gerber and Ezra Husney, "Revisiting of Sokolow v. PLO gives hope to victims' families," *Jerusalem Post* (May 20, 2020); Charity Security Network, "Congress Enacts Partial Fix to Anti-Terrorism Clarification Act" (Feb. 4, 2020); Michael J. Koplow, "It's Time to Decide How We Treat the Palestinian Authority," *Israel Policy Forum* (Dec. 19, 2019); Yolande Knell, "US stops all aid to Palestinians in West Bank and Gaza," *BBC* (Feb. 1, 2019).

**Arnold&Porter**

Hon. Debra Freeman
August 18, 2021
Page 5

activities. Defendants also have no traditional expectation of privacy in such activities. To the contrary, it is obvious that defendants' public-facing activities meet the definition of "political activities" in the Foreign Agents Registration Act, requiring disclosure. *See* 22 U.S.C. § 611(*o*). Defendants point out that they have not been the subject of enforcement activity for violation of the statute, but they invoke no statutory exemption or other basis supporting any expectation that their promotional activities may be conducted in secret.

**D.      Defendants' Claim of Functional Immunity Does Not Support Confidentiality**

Defendants' claim of "functional immunity" is irrelevant because defendants do not seek *immunity* here, but *confidentiality*. For the most part, defendants simply ignore that distinction. It is certainly true that *immunity* can protect certain individuals "from compelled testimony." *Wultz v. Bank of China*, 32 F. Supp. 3d 486, 493 (S.D.N.Y. 2014); *In re Terrorist Attacks*, No. 03-MDL-1570 (GBD) (SN), 2020 WL 8611024, at *8 (S.D.N.Y. Aug. 27, 2020). But defendants have no answer to our point that they have *already* provided the testimony at issue, so immunity is utterly irrelevant to the issue at hand.

Instead, defendants merely assert that immunity carries a "corresponding necessity for confidentiality." ECF 103 at 4. That is incorrect. Immunity is different from confidentiality. It provides protection "from trial *and the attendant burdens of litigation,* and not just a defense to liability on the merits." *Wultz*, 32 F. Supp. 3d at 496 (emphasis by the court). Defendants do not cite a *single* authority from *any* source supporting the idea that a person with a claim of testimonial immunity can fail to assert that immunity and then demand that the testimony remain forever secret.

**E.      Defendants' Claim of Functional Immunity Is Wrong**

Defendants are silent about the numerous cases rejecting their functional immunity argument, most notably the Second Circuit's controlling decision in *Klinghoffer v. S.N.C. Achille Lauro*, 937 F.2d 44, 48 (2d Cir. 1991) ("By its terms … the Headquarters Agreement extends immunity only to representatives of members of the UN, not to observers such as the PLO. We see no reason to extend the immunities provided by the Headquarters Agreement beyond those explicitly stated.") (citation omitted). Those cases are black-letter law. *See Restatement (Third) of the Foreign Relations Law of the United States* § 469 reporter's note 8 (1987) ("[P]ersons invited by the United Nations to its Headquarters generally must be admitted to the United States and allowed access to the headquarters district, but they enjoy no privileges or immunities."). Defendants cite *United States v. Palestine Liberation Organization*, 695 F. Supp. 1456, 1471 (S.D.N.Y. 1988), but that court specifically observed that the PLO "does not have the benefits of diplomatic immunity," *id.* at 1459, and held only that the United States had a treaty obligation to permit the mission to remain open, which obligation had not been abrogated by Congress, *id.* at 1471.

Defendants also skip over the text of the UN Charter, the supposed source of their immunity. The Charter reaches only "Members"—not "Members and Non-Member Observers." Defendants have nothing to say about the rule that the text of a treaty such as the Charter "is to be enforced according to its terms, without the need for extrinsic evidence." *Blue Ridge Invs., LLC v. Republic of Argentina*, 902 F. Supp. 2d 367, 376 (S.D.N.Y. 2012) (quotation marks omitted), *aff'd*, 735 F.3d 72 (2d Cir. 2013). Defendants ignore the federal statute subjecting their activities outside the

**Arnold & Porter**

Hon. Debra Freeman
August 18, 2021
Page 6

Headquarters District to U.S. regulation. 22 U.S.C. § 4309A(b)(1).[6] And they ignore the document that sets out with specificity the exact types of functions that defendants may perform as an observer, such as raising points of order during debates of the General Assembly or co-sponsoring draft resolutions. *See* Annex to G.A. Res. 52/250, *Participation of Palestine in the work of the United Nations* (July 13, 1998). That document plainly says *nothing* about promotional activities.

Defendants rely almost exclusively on an opinion of the UN Legal Advisor endorsing an implicit "immunity from legal process in respect of words spoken and written or any act performed in the exercise of the observer functions." *Status, Privileges and Immunities under International Law of the Permanent Observer Mission of Palestine to the United Nations*, 2000 U.N. Jur. Y.B. 359, 361. But they do not explain how to reconcile their aggressive reading of this opinion with the text of the UN Charter, with applicable U.S. legislation and case-law, or with the General Assembly Resolution defining the scope of their official activities. Defendants do not deny that their reading of this opinion is out of step with every other opinion of the *UN's legal advisor* on this topic, including one addressed to the PLO itself, which limits the assertion of functional immunity to "immunity from legal process in respect of words spoken or written and all acts performed by members of the delegation in their official capacity *before relevant United Nations organs*." *Legal Basis for the Observer Status of the Palestine Liberation Org.*, 1979 U.N. Jur. Y.B. 169, 170 (emphasis added).[7]

Finally, defendants do not dispute the authority holding that promotional activities of a member of a deliberative body do *not* qualify as "official business" of that body. ECF 100 at 7. Defendants assert that their promotional activities are "official business *of Palestine's UN Mission*," ECF 103 at 5 (emphasis added), but that assertion is irrelevant. Such activity is categorically *not* official business *of the UN.* And defendants propose no limiting principle; accepting their argument would to transform *any* activity related to *anything* of interest to the UN into the official business *of the UN*, thereby subjecting it to a claim of functional immunity.

### Conclusion

The materials at issue do not qualify for confidential treatment, and defendants' status at the UN gives them no special exception from the ordinary rules governing discovery in civil cases with respect to actions taken outside the Headquarters District.

---

[6] The Headquarters District is bounded by East 42nd Street, First Avenue, the East River, and East 48th Street. *See* Headquarters Agreement Annex 1, *reprinted at* 22 U.S.C. § 287 Note.

[7] *Accord Permanent Observer Mission of the African Union*, 2014 U.N. Jur. Y.B. 328; *Permanent Observer Mission of the Org. of the Islamic Conf.*, 1999 U.N. Jur. Y.B. 409; *Scope of Privileges and Immunities of a Permanent Observer Mission*, 1982 U.N. Jur. Y.B. 206; *Privileges and Immunities of a Person Designated by a Member State*, 1976 U.N. Jur. Y.B. 229; *see also Report of the Committee on Relations with the Host Country* ¶¶ 32-33 (Oct. 14, 1982), Supp. No. 26 (A/37/26) (Statement of the Legal Advisor).

# Arnold & Porter

Hon. Debra Freeman
August 18, 2021
Page 7

Respectfully submitted,

Kent A. Yalowitz

cc:   ECF Counsel