IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SHABTAI SCOTT SHATSKY, *et al.*,

                              Plaintiffs,

v.

THE PALESTINE LIBERATION
ORGANIZATION and THE PALESTINIAN
AUTHORITY,

                              Defendants.

Case No. 18-cv-12355 (MKV) (DCF)

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR
SUMMARY JUDGMENT ON THE FEDERAL CLAIMS AND
<u>MOTION TO DISMISS THE NON-FEDERAL CLAIMS</u>**

August 20, 2021

Mitchell R. Berger (MB-4112)
mitchell.berger@squirepb.com
2550 M Street, N.W.
Washington, D.C. 20037
Telephone: (202) 457-6000
Facsimile:  (202) 457-6315

**SQUIRE PATTON BOGGS (US) LLP**

Gassan A. Baloul (GB-4473)
gassan.baloul@squirepb.com
Joseph S. Alonzo (JA-1378)
joseph.alonzo@squirepb.com
1211 Avenue of the Americas
26th Floor
New York, NY 10036
Telephone: (212) 872-9800
Facsimile:  (212) 872-9815

*Attorneys for Defendants*

## TABLE OF CONTENTS

TABLE OF CONTENTS ............................................................................................... i

TABLE OF AUTHORITIES ....................................................................................... ii

PRELIMINARY STATEMENT .................................................................................. 1

PROCEDURAL AND FACTUAL BACKGROUND ................................................. 3

I.      Proceedings in This Court ............................................................................ 3

II.     The *Shatsky I* Discovery Record ................................................................. 4

III.    The Undisputed Facts From the *Shatsky I* Discovery Record. .................... 5

ARGUMENT ............................................................................................................... 7

I.      PLAINTIFFS' CLAIMS ARE RIPE FOR SUMMARY JUDGMENT BASED ON THE *SHATSKY I* DISCOVERY RECORD .................................. 7

II.     DEFENDANTS SHOULD BE GRANTED SUMMARY JUDGMENT ON PLAINTIFFS' ATA PRIMARY LIABILITY CLAIM. ................................. 9

A.     Nazal's Salary Does Not Create a Triable Issue of Fact ............................. 11

1.      Plaintiffs Adduced No Admissible Evidence in *Shatsky I* Connecting Nazal to the Bombing ................................................................................... 11

2.      The 2007 ISA Report Is Not Part of the *Shatsky I* Discovery Record and Is Nonetheless Inadmissible Hearsay ............................................................. 13

B.     Rental Payment for PFLP Qalqilya Office Does Not Create a Triable Issue of Fact ....... 16

C.     Post-Bombing Payments to Family Members Do Not Create a Triable Issue of Fact. .... 16

III.    DEFENDANTS SHOULD BE GRANTED SUMMARY JUDGMENT ON PLAINTIFFS' ATA SECONDARY LIABILITY CLAIMS. ......................... 17

A.     Plaintiffs Cannot Show that Defendants Engaged in a JASTA Conspiracy with the "Person Who Committed" the Bombing ....................................... 17

B.     Plaintiffs Cannot Show JASTA Aiding and Abetting Liability ................... 19

1.      Plaintiffs Cannot Show that Defendants Knowingly and Substantially Assisted the Bombing ................................................................................... 19

2.      Plaintiffs Cannot Show that Defendants Were "Aware" They Were "Assuming a Role" in Violent Terrorist Activity. .............................................................. 21

IV.    PLAINTIFFS' NON-FEDERAL CLAIMS SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM. ............................................................... 22

CONCLUSION ......................................................................................................... 25

# <u>TABLE OF AUTHORITIES</u>

**Cases**

*AD/SAT v. AP*, 181 F.3d 216 (2d Cir. 1999) .................................................................. 9

*Bah v. Everlast Logistics LLC,* 297 F. Supp. 3d 426 (S.D.N.Y. 2018) ........................... 9

*Brady v. Lynes*, No. 05 Civ. 6540, 2008 U.S. Dist. LEXIS 43512 (S.D.N.Y. May 31, 2008) ..... 23

*Cialino v. O'Neill*, 44 A.D.3d 816 (2d Dep't 2007) ....................................................... 23

*Cty. of Los Angeles v. Davis,* 440 U.S. 625 (1979) ......................................................... 9

*Daniels v. Jacobs,* 753 F. App'x. 748 (11th Cir. 2018) ................................................... 7

*DVL, Inc. v. Niagara Mohawk Power Corp.*, 490 Fed. App'x 378 (2d Cir. 2012) ....................... 9

*Estate of Botvin v. Islamic Republic of Iran*, 772 F. Supp. 2d 218 (D.D.C. 2011) ....................... 25

*Estate of Parsons v. Palestinian Auth.*, No. 07-cv-1847, 2008 U.S. Dist. LEXIS 124833 (D.D.C. Sept. 30, 2008) ............................................................ 23

*Every v. Makita,* No. 02 Civ. 8545, 2005 U.S. Dist. LEXIS 24881 (S.D.N.Y. Oct. 24, 2005) ...... 9

*Freeman v. HSBC Holdings PLC*, 413 F. Supp. 3d 67 (E.D.N.Y. 2019) ..................................... 18

*Geiss v. Weinstein Co. Holdings LLC*, 383 F. Supp. 3d 156 (S.D.N.Y. 2019) ............................ 17

*Gill v. Arab Bank, PLC,* 893 F. Supp. 2d 542 (E.D.N.Y. 2012) ................................ 12, 13, 15, 16

*Gilmore v. Palestinian Interim Self-Gov't Auth.*, 53 F. Supp. 3d 191 (D.D.C. 2014) ........ 9, 11, 15

*Gilmore v. Palestinian Interim Self-Government Auth.*,  843 F.3d 958 (D.C. Cir. 2016) .......................................................................................................... 9, 11, 15, 16

*Goldstein v. Mass. Mut. Life Ins. Co.*, 32 A.D.3d 821 (2d Dep't 2006) ....................................... 23

*Gonzalez v. Google LLC,* 2021 U.S. App. LEXIS 18515 (9th Cir. June 22, 2021) ..................... 19

*Haas v. Del. Hudson Ry, Co.,* 282 Fed. App'x 84 (2d Cir. 2008) ................................................. 8

*Halberstam v. Welch,* 705 F.2d 472 (D.C. Cir. 1983) ..................................................... 19, 20, 21

*Hamm v. United States*, 483 F.3d 135 (2d Cir. 2007) .................................................................. 17

*Honickman v. Blom Bank Sal,* 2021 U.S. App. LEXIS 22480 (2d Cir. July 29, 2021) ........... 21, 22

*Kaplan v. Lebanese Canadian Bank, SAL,* 999 F.3d 842, 2021 U.S. App. LEXIS 17105 (2d Cir. June 9, 2021) ..................................................................................... 2, 17, 19, 21

*Karaduman v. Newsday*, 416 N.E. 2d 557 (N.Y. 1980) ................................................ 24

*Kemper v. Deutsche Bank AG*, 911 F.3d 383 (7th Cir. 2018)................................. 17, 18

*Linde v. Arab Bank PLC*, 882 F.3d 314, 329 (2d Cir. 2018) ........................... 19, 20, 22

*Livnat v. Palestinian Auth.*, 851 F.3d 4 (D.C. Cir. 2017). ............................................ 6

*Marketxt Holdings Corp. v. Engel & Reiman, P.C.*, 693 F. Supp. 2d 387 (S.D.N.Y. 2010)........ 24

*McCray v. City of N.Y.*, No. 03 Civ. 9685, 2007 U.S. Dist. LEXIS 90875 (S.D.N.Y. Dec. 11, 2007) ............................................................................................................. 23

*O'Sullivan v. Deutsche Bank AG*, No. 17 CV 8709, 2020 U.S. Dist. LEXIS 32024 (S.D.N.Y. Feb. 25, 2020) ........................................................................................................ 18

*O'Sullivan v. Deutsche Bank AG*, 2019 U.S. Dist. LEXIS 53134 (S.D.N.Y. Mar. 28, 2019).......... ..................................................................................................................... 17, 18, 19

*Ocasio v. United States*, 136 S. Ct. 1423 (2016) ........................................................ 18

*Owens v. BNP Paribas*, 897 F.3d 266 (D.C. Cir. 2018) ........................................ 10, 17

*Owens v. Republic of Sudan*, 864 F.3d 751 (D.C. Cir. 2017) ...................................... 10

*Parker v. Freightliner Corp.,* 940 F.2d 1019 (7th Cir. 1991) ........................................ 8

*R. J. v. Humana of Fla., Inc.,* 652 So. 2d 360 (Fla. 1995) ........................................... 24

*Raskin v. Wyatt Co.,* 125 F.3d 55 (2d Cir. 1997) ......................................................... 9

*Rothstein v. UBS AG*, 708 F.3d 82 (2d Cir. 2013) ................................................... 1, 10

*Scherer v. Equitable Life Assur. Soc'y*, 262 Fed. App'x 324 (2d Cir. 2008)................ 9

*Schlotthauer v. Sanders*, 153 A.D.2d 731 (2d Dep't 1989).......................................... 23

*Shatsky v. PLO*, 292 F. Supp. 3d 188 (D.D.C. 2017) ....................................... 5, 12, 17

*Shatsky v. PLO*, 312 F.R.D. 219 (D.D.C. 2015) .................................................... *passim*

*Shatsky v. PLO*, 955 F.3d 1016 (D.C. Cir. 2020) ......................................................... 1

*Shatsky v. PLO*, No. 02-cv-2280 , 2017 U.S. Dist. LEXIS 94946 (D.D.C. June 20, 2017) ........... 1

*Siegel v. HSBC Holdings, Inc.,* 933 F.3d 217 (2d Cir. 2021) ........................................................ 22

*Sokolow v. PLO*, 60 F. Supp. 3d 509 (S.D.N.Y. 2014)............................................................. *passim*

*Strauss v. Credit Lyonnais, S.A.*, 925 F. Supp. 2d 414 (E.D.N.Y. 2013) ...................................... 13

*Stuart v. American Cyanamid Co.*, 158 F.3d 622 (2d Cir. 1998) ................................................... 23

*Sty-Lite Co. v. Eminent Sportswear Inc.*, No. 01 Civ. 3320, 2002 U.S. Dist. LEXIS 119
(S.D.N.Y. Jan. 7, 2002)............................................................................................................... 7

*Tokio Marine & Fire Ins. Co. v. Rosner,* 206 Fed. App'x. 90 (2d Cir. 2006) .............................. 12

*Twersky v. Yeshiva Univ.*, 993 F. Supp. 2d 429 (S.D.N.Y. 2014) ................................................ 23

*United States v. El-Mezain*, 664 F.3d 467 (5th Cir. 2011)............................................................. 15

*United States v. Hamilton*, 334 F.3d 170 (2d Cir. 2003) .............................................................. 20

*Waldman v. PLO*, 835 F.3d 317 (2d Cir. 2016)..................................................................... 2, 22

*Weiss v. Nat'l Westminster Bank,* 993 F.3d 144 (2d Cir. 2021) ................................... 2, 10, 21, 22

*Williams v. City of Daytona Beach*, No. 6:04-CV-1879-ORL-19, 2005 U.S. Dist. LEXIS 46776
(M.D. Fla. June 20, 2005)......................................................................................................... 24

*Williamson v. United States,* 512 U.S. 594 (1994) ...................................................................... 11

*Wultz v. Bank of China*, 306 F.R.D. 112 (S.D.N.Y. 2013) .......................................................... 23

*Wultz v. Islamic Republic of Iran*, 755 F. Supp. 2d 1 (D.D.C. 2010) .......................................... 24

*Zell v. Meek*, 665 So. 2d 1048 (Fla. 1995) .................................................................................. 24

## Statutes

18 U.S.C. § 2333.......................................................................................................................... 10

## Rules

Fed. R. Civ. P. 12.......................................................................................................................... 3

Fed. R. Civ. P. 56.......................................................................................................................... 9

Fed. R. Civ. P.17 ........................................................................................................ 23

Fed. R. Evid. 801 ....................................................................................................... 14

Fed. R. Evid. 803 ....................................................................................................... 14

Fed. R. Evid. 804 ............................................................................................ 11, 14, 15

N.Y. C.P.L.R. § 202 ................................................................................................... 23

N.Y. C.P.L.R. § 214 ................................................................................................... 23

N.Y. C.P.L.R. § 215 ................................................................................................... 23

N.Y. C.P.L.R. § 1025.............................................................................................. 22, 23

**Other Authorities**

CA 148/80 *Vaknin v. Beit Shemesh Local Council* 37(1) PD 113, 133 [1982] (Isr.) ................... 24

Restatement (Second) of Agency § 82 (1958) ............................................................. 17

## PRELIMINARY STATEMENT

After 15 years of protracted litigation, the United States District Court for the District of Columbia ("D.D.C.") granted summary judgment in favor of Defendants on Anti-Terrorism Act ("ATA") and non-federal claims arising from the same overseas bombing at issue in this duplicative lawsuit. *Shatsky v. PLO*, No. 02-cv-2280 (RJL) (D.D.C.) ("*Shatsky I*"). On a completed discovery record, the D.D.C. rejected Plaintiffs' claims because they had no admissible evidence linking Defendants to the bombing. *Shatsky v. PLO*, 2017 U.S. Dist. LEXIS 94946, at *17-18 (D.D.C. June 20, 2017) ("SJ Order").[1] In reviewing the parties' pre-motion submissions here, this Court determined that there was no need for additional merits discovery. ECF 60 at 2. The *Shatsky I* discovery record compels summary judgment for Defendants here, just as it did in the predecessor suit.

Plaintiffs' ATA primary-liability claim fails because Plaintiffs have no admissible evidence that connects Defendants to the "act of international terrorism" for which they sue— much less any evidence that Defendants substantially contributed to that act. *See* SJ Order at *24-32; *see also Rothstein v. UBS AG*, 708 F.3d 82, 91-92 (2d Cir. 2013) (proximate cause requires proof that a defendant's conduct was "a substantial factor in the sequence of responsible causation," the central question of which is "whether the alleged violation led directly to the plaintiff's injuries") (internal citations omitted).

Plaintiffs' claim for ATA secondary liability fails for the same lack of substantial

---

[1] The D.C. Circuit vacated the D.D.C.'s summary judgment decision only because it agreed with Defendants that they were not subject to personal jurisdiction. *Shatsky v. PLO*, 955 F.3d 1016, 1038 (D.C. Cir. 2020). The D.C. Circuit identified only one potential open issue: whether the Promoting Security and Justice for Victims of Terrorism Act of 2019 ("PSJVTA") might provide an alternative basis for personal jurisdiction. Instead of litigating this issue in another re-filed lawsuit before the district judge who presided over *Shatsky I*, Plaintiffs abandoned that case and elected to pursue their claims here. As set forth in Defendants' contemporaneously-filed Motion to Dismiss, the PSJVTA cannot supply jurisdiction here.

connection between Defendants and the bombing.  *See Kaplan v. Lebanese Canadian Bank, SAL,* 999 F.3d 842, 855 (2d Cir. 2021) (JASTA conspiracy claims require that a defendant "conspire[d] with" the principal actor that committed the attacks at issue); *Weiss v. Nat'l Westminster Bank,* 993 F.3d 144, 167 (2d Cir. 2021) (no JASTA aiding and abetting liability where, based on a completed discovery record, "plaintiffs could not show that NatWest was knowingly providing substantial assistance to Hamas, or that NatWest was generally aware that it was playing a role in Hamas's acts of terrorism.").

Plaintiffs' non-federal claims must be dismissed.  Defendants lack the capacity to be sued for non-federal claims because, as the Second Circuit and the D.D.C. have recognized, Defendants are unincorporated associations.  *Waldman v. PLO*, 835 F.3d 317, 332 (2d Cir. 2016); SJ Order at *33.  In addition, the New Plaintiffs'[2] non-federal claims are time barred, and Plaintiffs' claims for negligence, emotional distress, civil conspiracy, and vicarious liability/respondeat superior lack essential elements and therefore fail to state a claim.

Defying this Court's ruling that it "sees no need for other discovery" (ECF 60 at 2), Plaintiffs intend to oppose this Motion with materials that the D.D.C. expressly excluded from the *Shatsky I* discovery record—opinions from stricken putative experts and documents precluded for discovery violations.  *Shatsky I*, ECF 242 at 3; *Shatsky I*, 312 F.R.D. 219, 227-29 (D.D.C. 2015) (excluding Plaintiffs' liability experts disclosed four months late "notwithstanding th[e] Court's explicit warnings not to do so" and precluding Plaintiffs from using any document, at summary judgment or trial, produced after the close of discovery).  The D.D.C.'s document preclusion order focused on 73 late-disclosed exhibits in opposition to summary judgment, a number of which Plaintiffs did not disclose until nearly a year after discovery closed and <u>after</u> Defendants had

---

[2] In addition to the *Shatsky I* Plaintiffs, three new Plaintiffs have sued here: Efrat Trattner, Hadassa Diner, and Yael Hillman ("New Plaintiffs") are siblings of *Shatsky I* Plaintiff Hillel Trattner, who was allegedly injured in the bombing.

moved for summary judgment. *Shatsky I*, 312 F.R.D. at 222. Plaintiffs' failure to follow the D.D.C.'s directives and repeated discovery abuses justified the D.D.C.'s preclusion of all documents they produced after the close of discovery: "were the Court to limit preclusion to a mere seventy-three late-produced exhibits appended to plaintiffs' summary judgment opposition, it is highly likely that plaintiffs would return with reams of other untimely evidence that is equally prejudicial to defendants' case." *Id.* at 229. That is exactly what Plaintiffs seek to do here: ignore explicit court rulings rooted in their own discovery abuses. The Court should not countenance Plaintiffs' persistent obduracy and should strike Plaintiffs' materials from outside the *Shatsky I* discovery record.

## PROCEDURAL AND FACTUAL BACKGROUND

### I.      Proceedings in This Court.

Plaintiffs are the alleged victims of a 2002 suicide bombing in the West Bank Israeli settlement of Karnei Shomron (the "Bombing"), or their relatives and representatives. Plaintiffs acknowledge this action is duplicative of *Shatsky I*. *See* ECF 12 at 1 ("Plaintiffs originally filed their ATA suit against the PLO and PA in 2002, in the [D.D.C.]."). At Plaintiffs' request, this action was stayed pending the D.C. Circuit's decision in *Shatsky I*. ECF 12, 13, 16, 17, 19-22.

Following the D.C. Circuit's *Shatsky I* decision, Plaintiffs filed their First Amended and Supplemental Complaint ("FAC"). ECF 40-47; 50. Defendants filed a pre-motion conference letter seeking leave to file dispositive motions with respect to Plaintiffs' federal and non-federal claims. ECF 53. Defendants argued that Plaintiffs' federal claims were ripe for summary judgment based on the full discovery record from *Shatsky I*, while the non-federal claims should be dismissed pursuant to Rule 12(b)(6). *Id.* at 2-3.

The Court granted Defendants' request and ordered Defendants to file their contemplated dispositive motion based on the discovery record developed in *Shatsky I*. ECF 60 at 2-3. Having

"carefully reviewed the parties' letters," the Court concluded that there was "<u>no need for other</u>
<u>discovery</u>." *Id.* (emphasis added). Noting that "[t]his case was stayed for two years while the
parties litigated in D.C., through the summary judgment stage, a claim based on the same facts at
issue here," *id.* at 2, the Court rejected: (1) Plaintiffs' argument that summary judgment was
premature because the D.D.C. "inappropriately limited the summary judgment record" by
excluding Plaintiffs' late-disclosed documents and experts (ECF 54 at 2); and (2) Plaintiffs'
invitation to develop evidence in this case that was not considered in *Shatsky I*, including expert
testimony and a 2007 report referenced for the first time in Plaintiffs' FAC (ECF 54 at 3).

## II.     The *Shatsky I* Discovery Record.

*Shatsky I* was filed in November 2002. *Shatsky I*, ECF 3 (Compl.). *Shatsky I* proceeded
through summary judgment on a schedule Plaintiffs requested. *See Shatsky I*, ECF 135 at 4-5;
ECF 136 (scheduling order). Plaintiffs ignored their requested deadlines and discovery proved
discordant. As the D.D.C. noted, Plaintiffs waited until the eve of the close of discovery to serve
over 100 requests for production and then, "eager to obtain the discovery that they had waited until
the eleventh hour to seek, began peppering the Court with discovery motions, seeking all manner
of relief from the strictures of a discovery deadline to which they themselves consented." *Shatsky*
*I,* 312 F.R.D. at 221. Plaintiffs filed <u>10</u> discovery motions <u>after the close of discovery</u>. *Shatsky I*
ECF 168, 169, 172, 175, 181, 197, 202, 212, 231, and 243. The D.D.C. "rejected each and every
application," including Plaintiffs' motions to extend fact and expert discovery deadlines, "finding
plaintiffs' motions both <u>meritless</u> and <u>untimely</u>." *Shatsky I*, 312 F.R.D. at 221 (emphasis added).

Plaintiffs ignored and persistently violated the D.D.C.'s discovery orders and deadlines.
The D.D.C. observed that, "[i]n its thirteen years presiding over the case, [it] ha[d] been witness
to plaintiffs' casual, if at times flagrant, disregard for the rules of federal procedure, to say nothing
of their apparent indifference to the dictates of common civility." *Id.* For example, Plaintiffs

submitted their liability expert reports four months after the deadline passed despite the D.D.C.'s instructions not to do so.  *See*, *e.g.*, *id.* at 227-28.  Defendants moved to exclude Plaintiffs' untimely-disclosed experts and their late-produced documents, a number of which were disclosed <u>for the first time</u> as exhibits to Plaintiffs' summary judgment opposition.  In excluding Plaintiffs' experts, the D.D.C. found that Plaintiffs repeatedly had flouted "clear and repeated denials of their requests to extend their liability expert deadline."  *Shatsky I*, ECF 242 at 2.  Accordingly, "the only fair and just outcome [was] to preclude plaintiffs from offering the testimony of the expert reports served after the deadline."  *Id.* at 3.

"Against [a] patchwork of discovery infractions, <u>plaintiffs made nearly seventy percent of their document production *after* the close of discovery</u> and did so notwithstanding the Court's numerous warnings that the discovery deadline was an immutable one."  *Shatsky I,* 312 F.R.D. at 228 (emphasis added)*.*  As such, after multiple rounds of briefing and oral argument, the D.D.C. sanctioned Plaintiffs by excluding all of their late-produced documents.  *Id.* at 228-29.

On this record, after briefing, oral argument, and further post-argument supplemental briefing, the D.D.C. granted summary judgment.  The undisputed facts established during discovery (and set forth below) compelled the D.D.C. to dismiss Plaintiffs' claims because they did not have admissible evidence linking Defendants to the Bombing.  SJ Order at *28.[3]

## III.    The Undisputed Facts From the *Shatsky I* Discovery Record.

The 1993 Oslo Accords established the PA as Palestine's domestic government.  Defs.' Stat. of Facts as to Which There Is No Gen. Iss. ("SOF") ¶ 2.  The PA lacks exclusive authority over defined territorial limits, however, and Israel retains control over external security.  *See Livnat*

---

[3] The D.D.C. also denied Plaintiffs' motion to alter or amend the judgment based on "new" hearsay evidence, which actually predated the summary judgment ruling by six months.  *See Shatsky I*, 292 F. Supp. 3d 188, 190, 192-93 (D.D.C. 2017) (finding Plaintiffs' so-called "new" evidence was not "newly discovered or previously unavailable despite the exercise of due diligence," and was, in any event, "clear[ly]…not admissible").

*v. Palestinian Auth.*, 851 F.3d 45, 47 (D.C. Cir. 2017).  In 2002, Israel retained exclusive civil and security control in Area C of the West Bank, which included Israeli settlements such as Karnei Shomron.  SOF ¶¶ 15, 17.  The PLO is the international diplomatic representative of the Palestinian people.  SOF ¶ 1.  Palestine is not recognized by the U.S. as sovereign, but 139 U.N. Member States do so, and the U.N. has awarded Palestine Non-Member State status.  SOF ¶ 3.

With the signing of the Oslo Accords, all factions within the PLO umbrella organization were required to become non-violent political parties, and all military elements were outlawed.  SOF ¶ 4.  To facilitate non-violence, the PLO provided modest support—such as rent, transportation, and accommodations—to its constituent political factions.  SOF ¶ 5.  The Popular Front for the Liberation of Palestine ("PFLP"), a faction of the PLO, initially objected to the Oslo Accords and its PLO membership was suspended.  SOF ¶ 13.  But in 1999, it returned to the political process and rejoined the PLO, accepting the military-prohibitions of the Oslo Accords.  *Id.*  On October 22, 2001, the Palestinian Supreme Council on National Security issued a decree outlawing the military wing of the PFLP.  SOF ¶ 14.

The PA also has paid stipends to the families of Palestinians detained or killed by Israel or the PA; this ensures their basic standard of living, which in turn enhances security by blunting the financial allure of terrorism.  SOF ¶ 6.  Palestinian families financially impacted by the loss of a wage-earner or the costs of providing food, clothing, and supplies to an imprisoned relative are thought to be more susceptible to that allure.  SOF ¶ 7.  Once released, ex-prisoners receive financial and employment support from the PLO or PA to ensure their welfare and to minimize recidivism.  SOF ¶ 9.  Israel had a similar National Insurance program, supporting needy families of Arab-Israeli prisoners in Israeli prisons regardless of the reason for detention.  SOF ¶ 8.

Plaintiffs allege a PA security employee, Ra'ed Nazal ("Nazal"), planned the Bombing. The admissible evidence of Defendants' alleged complicity is limited to the political support and post-incarceration and other social welfare programs described above.  There is no admissible evidence linking Nazal to the Bombing.

## ARGUMENT

### I.   PLAINTIFFS' CLAIMS ARE RIPE FOR SUMMARY JUDGMENT BASED ON THE *SHATSKY I* DISCOVERY RECORD.

Before authorizing this motion for summary judgment, the Court "carefully reviewed" Plaintiffs' contention "that the D.C. district court denied them certain discovery" and held that "the Court sees no need for other discovery."  ECF 60 at 2.  Defendants accordingly move for summary judgment based on the *Shatsky I* discovery record, which encompasses not only extensive documents and depositions, but also the D.D.C.'s discovery sanctions orders precluding use of other materials.  This Court is fully empowered to preserve the integrity of the *Shatsky I* discovery record by adopting the parameters of that record established by the D.D.C. in this duplicative lawsuit—particularly when Plaintiffs concede that *Shatsky I* "was a different phase of the very same litigation."  ECF 81 at 33:13-14.  *See*, *e.g.*, *Sty-Lite Co. v. Eminent Sportswear Inc.*,  2002 U.S. Dist. LEXIS 119, at *6, *13 (S.D.N.Y. Jan. 7, 2002) (adopting the full and "extensive discovery" from a duplicative predecessor suit dismissed for lack of subject matter jurisdiction, rejecting plaintiff's request for further discovery given that plaintiff "had ample opportunity to conduct full discovery in the identical prior action," and entering summary judgment in favor of defendants).  The February 8 Order (ECF 60) thus "protect[s] Defendant[s] from the time, expense, and prejudice that would necessarily result if Plaintiff[s] were permitted to relitigate the case anew."  *Daniels v. Jacobs,* 753 F. App'x 748, 755-56 (11th Cir. 2018) (affirming district court's

condition that any refiled case would resume where the case left off, including enforcement of discovery deadline and preclusion of experts identified after expert disclosure deadline).

Plaintiffs' failure to honor their discovery obligations in *Shatsky I* "was categorically prejudicial." *Shatsky I*, 312 F.R.D. at 226. Because Defendants were "blindsided by the[] eleventh hour production" of documents, Defendants were unable to test the documents in the discovery process, and the late production of the documents "materially altered the evidentiary landscape after [D]efendants filed for summary judgment relief." *Id.* at 226-27. Defendants would suffer the <u>same</u> prejudice here if Plaintiffs can oppose summary judgment with materials expressly excluded by the D.D.C. *See Haas v. Del. Hudson Ry, Co.,* 282 Fed. App'x 84, 85-86 (2d Cir. 2008) (affirming district court's decision to strike late-filed witness affidavit from summary judgment opposition and finding that defendant's alleged familiarity with subject matter of the affidavit "does not diminish the prejudice caused by waiting until after the close of discovery and, moreover, after D&H had prepared and filed its motion for summary judgment" to submit affidavit).

This principle applies to the D.D.C.'s exclusion of Plaintiffs' proffered experts (*Shatsky I*, ECF 242 at 2-3), particularly given that no expert depositions were taken in *Shatsky I*, no party used liability experts in connection with summary judgment in *Shatsky I*, and Defendants' Motion here does not rely on expert testimony. *See Parker v. Freightliner Corp.,* 940 F.2d 1019, 1025 (7th Cir. 1991) (no abuse of discretion where district court sanctioned plaintiff for failing to comply with discovery orders by barring him from offering expert testimony, and then granted plaintiff's request to dismiss case without prejudice on condition that he would be barred from offering expert testimony in any refiled action). Further, "new affidavits from new experts advancing new theories" cannot be used to defeat summary judgment. *Every v. Makita,* 2005 U.S. Dist. LEXIS

24881, at *17 (S.D.N.Y. Oct. 24, 2005) (striking previously-undisclosed expert affidavits offered to oppose summary judgment).[4]   In any event, "an expert's report is not a talisman against summary judgment," *Raskin v. Wyatt Co.,* 125 F.3d 55, 66 (2d Cir. 1997), particularly when (as Plaintiffs attempted in *Shatsky I*) those declarations parrot inadmissible hearsay.[5]

## II.   DEFENDANTS SHOULD BE GRANTED SUMMARY JUDGMENT ON PLAINTIFFS' ATA PRIMARY LIABILITY CLAIM.

In *Shatsky I*, the D.D.C. determined that no reasonable jury could conclude that Defendants had proximately caused Plaintiffs' injuries and dismissed Plaintiffs' ATA primary-liability claim. SJ Order at *28.  The D.C. Circuit vacated the summary judgment decision solely on jurisdictional grounds and "did not reach any issue other than . . . jurisdiction," so this Court is "free to adopt [the D.D.C.'s] prior reasoning with respect to the merits of plaintiff's claims." *Scherer v. Equitable Life Assur. Soc'y*, 262 Fed. App'x 324, 325 (2d Cir. 2008).[6]

A district court "decide[s] questions regarding the admissibility of evidence on summary judgment" and only considers admissible evidence.  *Raskin,* 125 F.3d at 66; *see also* Fed. R. Civ. P. 56(c)(2).   "[I]t is well-settled that a party 'cannot rely on inadmissible hearsay in opposing a motion for summary judgment.'"   *AD/SAT v. AP*, 181 F.3d 216, 236 (2d Cir. 1999) (citation omitted).

---

[4] *See also DVL, Inc. v. Niagara Mohawk Power Corp.*, 490 Fed. App'x 378, 381-82 (2d Cir. 2012) (affirming district court's exclusion of expert declarations submitted in connection with summary judgment because expert testimony had not been disclosed in discovery); *Bah v. Everlast Logistics LLC,* 297 F. Supp. 3d 426, 434 (S.D.N.Y. 2018) ("This Court . . . has declined to consider expert affidavits submitted for the first time in opposition to summary judgment motions.") (collecting cases).

[5] *See Gilmore v. Palestinian Interim Self-Gov't Auth.*, 53 F. Supp. 3d 191, 212 (D.D.C. 2014) (excluding expert opinion purporting to identify the perpetrator of a terrorist attack by opining on whether "Plaintiffs' hearsay evidence is reliable," and thus added nothing to "commonsense and general deductive principles that any non-expert finder of fact would rely on"), *aff'd*,  843 F.3d 958, 972-73 (D.C. Cir. 2016) (holding it was "unclear how [the expert]'s approach differed from that of a layperson," so a jury was "just as competent to consider and weigh the evidence.").

[6] *See also Cty. of Los Angeles v. Davis,* 440 U.S. 625, 646 n.10 (1979) (Powell, J., dissenting) ("Although a decision vacating a judgment necessarily prevents the opinion of the lower court from being the law of the case, the expressions of the court below on the merits, if not reversed, will continue to have precedential weight . . .") (citation omitted).

To state a claim for ATA primary liability, Plaintiffs must show that their injuries occurred "by reason of" an act of international terrorism committed by Defendants.  18 U.S.C. § 2333(a); *see Weiss*, 993 F.3d at 160-61.  Both the Second and D.C. Circuits have held that the ATA's "by reason of" language requires a showing that the defendant's acts proximately caused plaintiff's injury.  *Rothstein v. UBS AG*, 708 F.3d 82, 95 (2d Cir. 2013); *Owens v. BNP Paribas*, 897 F.3d 266, 270, 273 (D.C. Cir. 2018).  Therefore, Plaintiffs must show that each Defendant's purported conduct was "a substantial factor in the sequence of responsible causation."  *Rothstein*, 708 F.3d at 91 (internal quotation omitted); *Owens v. Republic of Sudan*, 864 F.3d 751, 794 (D.C. Cir. 2017) (same), *rev'd on other grounds*, *Opati v. Republic of Sudan*, 140 S. Ct. 1601 (2020).

The D.D.C. correctly applied this standard in granting summary judgment to Defendants:

> [Section] 2333 of the ATA requires proof of proximate cause, as that term is typically defined.  A defendant proximately causes an act of international terrorism if his actions are a substantial factor in the sequence of responsible causation, and if the injury is reasonably foreseeable or anticipated as a natural consequence of those actions.

SJ Order at *23 (citing *Rothstein*, 708 F.3d at 97).

The D.D.C. observed that Plaintiffs' admissible "evidence" in support of their claims boils down to three things, none of which was linked to the Bombing by admissible evidence: (1) The PA paid a salary to Nazal; (2) the PLO paid rent for the PFLP office in Qalqilya; and (3) the PA made post-Bombing payments to the families of Nazal, Mohammad Wasef, Jamal Hindi, and Sadeq Hafez.  Accordingly, the D.D.C. correctly held that Plaintiffs failed to establish proximate causation and granted summary judgment for Defendants.  *Id.* at *17-18, *28 ("plaintiffs do indeed lack sufficient admissible evidence that would permit them to establish causation under the ATA," and thus "no reasonable jury could conclude that the PA proximately caused the bombing").

### A.   Nazal's Salary Does Not Create a Triable Issue of Fact.

Any salary the PA paid to Nazal "is only relevant to the issue of causation if there is admissible evidence that connects Nazal to the bombing." SJ Order at *24. There is no such evidence. *Id.* at *28 ("[P]laintiffs have identified no admissible evidence supporting their theory that Nazal planned the bombing."). Accordingly, the D.D.C. determined that "no reasonable jury could conclude that the PA proximately caused the bombing by paying Nazal a salary." *Id.*

### 1.   Plaintiffs Adduced No Admissible Evidence in *Shatsky I* Connecting Nazal to the Bombing.

In *Shatsky I*, Plaintiffs argued that three exhibits connected Nazal to the Bombing. The D.D.C. correctly excluded all three as inadmissible hearsay. First, the D.D.C. concluded that a custodial statement given to Israeli police by Mohammad Wasef ("Wasef") was inadmissible hearsay and did not fall within Federal Rule of Evidence 804(b)(3)'s hearsay exception for statements against interest because Plaintiffs offered no reason why Wasef was unavailable as a witness, and the statement was not against Wasef's interest as he blamed Nazal for the Bombing. SJ Order at *26. "As the Supreme Court has held, Rule 804(b)(3) does not allow admission of non-self-inculpatory statements, even if they are made within a broader narrative that is generally self-inculpatory." *Id.* at *25 (quoting *Gilmore,* 53 F. Supp. 3d at 211, and *Williamson v. United States,* 512 U.S. 594, 600-01 (1994) (internal quotations omitted)).[7]

Second, the D.D.C. held that testimony by Ibrahim Abdullah Hamad Dahbour asserting that Nazal was "involved" in the Bombing was also inadmissible because Dahbour's purported knowledge came from either media reports or intelligence files, both of which are inadmissible

---

[7] *See also Gilmore,* 843 F.3d at 971; *Sokolow v. Palestine Liberation Organization,* No. 04-cv-00397 (S.D.N.Y.), Dec. 16, 2014 Order (ECF 671) ("[s]tatements of unavailable witnesses inculpating third parties may not be admissible at this trial as statements against interest under Federal Rule of Evidence 804(b)(3).").

hearsay.  SJ Order at *26-27.  *See also Tokio Marine & Fire Ins. Co. v. Rosner,* 206 Fed. App'x 90, 95 (2d Cir. 2006) ("Nor can Rosner avoid summary judgment by pointing to a May 2003 news article . . . The article is inadmissible hearsay."); *Gill v. Arab Bank, PLC,* 893 F. Supp. 2d 542, 571 (E.D.N.Y. 2012) (finding official reports of the Israeli Security Agency to be inadmissible hearsay).  Finally, a PFLP website printout identifying Nazal as a PFLP leader and crediting him with certain actions is inadmissible because it "[made] no mention of Karnei Shomron or the bombing," and "offer[ed] no information explaining who made the[se] findings or how they were made."  SJ Order at *27-28 (alteration added).

Plaintiffs then filed a Rule 59(e) motion, raising for the first time a video of an interview with Allam Kaabi published on Facebook well before the entry of summary judgment wherein Kaabi purportedly links Nazal to the Bombing.  *See Shatsky I*, 292 F. Supp. 3d 188, 193 (D.D.C. 2017).  The D.D.C. criticized Plaintiffs' timeliness in identifying this evidence, but regardless determined that the evidence was "clear[ly] . . . not admissible" as a statement against interest as argued by Plaintiffs.  *Id*.  The D.D.C. correctly held that, "Rule 804(b)(3) does not permit admission of the statement identifying Nazal," as "Kaabi's statement *about Nazal* is not so self-inculpatory that a reasonable person would have made it only if he believed it to be true."  *Id*. at 194.  The D.D.C. reasoned, "even if Kaabi's narrative about the Karnei Shomron bombing is generally self-inculpatory, the collateral statement identifying Nazal cannot be admitted to prove Nazal had a role in the bombing because *that statement* does not inculpate Kaabi in anything."  *Id.* The D.D.C. additionally determined that even if the statement were found to inculpate Kaabi, "the ulterior motives at work in a claim of 'credit' for a terrorist attack undermine that claim's trustworthiness and prevent admission under Rule 804(b)(3)."  *Id.* at 195 (citing, *inter alia*, *Strauss*

*v. Credit Lyonnais, S.A.*, 925 F. Supp. 2d 414, 449 (E.D.N.Y. 2013), and *Gill*, 893 F. Supp. 2d at 569).

Should Plaintiffs again try to rely on this untimely inadmissible hearsay, this Court should follow the D.D.C.'s well-reasoned and well-supported analysis and exclude it.[8]

**2.     The 2007 ISA Report Is Not Part of the *Shatsky I* Discovery Record and Is Nonetheless Inadmissible Hearsay.**

In an effort to fill this evidentiary void, Plaintiffs have threatened to use discovery materials outside of the *Shatsky I* record, including a 2007 Israel Security Agency ("ISA") Report titled "Suicide Terrorists in the Current Conflict September 2000 – September 2007" ("Report"), which Plaintiffs reference in the FAC.  ECF 50 (FAC) ¶¶ 128, 129, and 140.

Any effort by Plaintiffs to use the Report contravenes this Court's February 8 Order and the D.D.C.'s directive that Plaintiffs "are **PRECLUDED** from using on summary judgment or for any other purpose…any [] documents that plaintiffs produced after the September 19, 2012 fact discovery deadline."  *Shatsky I*, 312 F.R.D. at 230 (emphasis in original and alteration added). This Court should enforce its Order precluding Plaintiffs from expanding the *Shatsky I* discovery record and strike any materials Plaintiffs submit—such as the Report—outside of that record.

Significantly, although the Report was published in 2007, Plaintiffs failed to identify or produce it <u>at all</u> during *Shatsky I*—not even in the reams of documents they produced after the close of discovery.  Plaintiffs unquestionably were aware of the Report, as they produced it in another lawsuit they had filed against Arab Bank PLC for the same Bombing (*Coulter v. Arab Bank,* No. 05-cv-0365-BMC-PK (E.D.N.Y.)).  Plaintiffs' expert in that case—Ronni Shaked, who

---

[8] Plaintiffs' 73 late-disclosed summary judgment exhibits excluded by the D.D.C. included inadmissible hearsay in the form of custodial interrogation statements similar to the Wasef statement and website pages like the PFLP printout considered by the D.D.C.  Beyond that Plaintiffs should be precluded from relying on these untimely documents by this Court's February 8 Order and the D.D.C.'s sanctions order, such documents are inadmissible hearsay for the same reasons that the Wasef and PFLP websites were found inadmissible in *Shatsky I*.  *See* SJ Order at *26-27.

was stricken by the D.D.C. in *Shatsky I*—cited the Report in his expert report that was served <u>on February 11, 2011</u>, well before discovery even commenced in *Shatsky I*.  *See Coulter,* ECF 759-3 at 141 (citing to L_C089061-145); the Report was produced by Plaintiffs at L_C089061-145 (available at [PX3811.pdf (osenlaw.com)](PX3811.pdf) (last visited Apr. 27, 2021)).  Given that Plaintiffs timely raised the Report in parallel litigation before discovery commenced in *Shatsky I*, they have no valid justification for their delay of more than a decade in raising it here.

Timeliness aside, the 2007 ISA Report's conclusions with respect to the Bombing are inadmissible hearsay.  With regard to the Bombing, the Report provides in its entirety:

> **February 16, 2002:** Suicide terrorist detonation at the shopping center in Karnei Shomron, 3 killed and 22 injured
>
> <u>**Zadek Abd al-Hafat**</u> – a resident of <u>Qalqilya</u>, **aged 19**, a student at the vocational college in Kalandia, detonated himself at a pizzeria in the shopping center in Karnei Shomron. The "Popular Front" claimed responsibility for the attack. The attack was planned and executed by the PFLP military network in Qalqilya, under the direction of **Raad Madi**, in collaboration with the PFLP network in Nablus, headed by **Ahad Oulma**.
>
> \*\*\*

These conclusory statements are hearsay.  Fed. R. Evid. 801.  On April 29, 2021—the day before the original due date of this Motion—Plaintiffs' counsel provided Defendants for the first time an unsigned declaration from Nimrod Guez, which according to Plaintiffs' counsel would be used to support the admissibility of the 2007 ISA Report—presumably under the hearsay exception for public records.  *See* Fed. R. Evid. 803(8).[9]  Rule 803(8) provides that "[a] record or statement of a public office" is admissible if "it sets out . . . factual findings from a legally authorized investigation[,]" if "the opponent does not show that the source of information or other circumstances indicate a lack of trustworthiness."  *Id.*

Here, neither the Report itself nor the proposed declarations explain the basis for the Report's conclusions.  For example, there is no reference to any investigation of the Bombing, let

---

[9] Plaintiffs' counsel indicated that Arieh Spitzen would also submit a declaration supporting the admissibility of the 2007 ISA Report, similar to what he submitted in *Shatsky v. Syria Arab Republic*, No. 08-00496, ECF 52-1 (D.D.C. Oct. 16, 2020).

alone details of that investigation, such as who conducted it, why it was conducted, and its specific "factual findings."  As the D.D.C. found in *Shatsky I,* "intelligence sources [are] hearsay where, as here, there is no information given to support their bottom-line conclusions."  SJ Order at *27.

In *Gilmore*, the D.D.C. found substantially identical Israeli government reports purporting to connect a terrorist organization and individual with an attack inadmissible under Rule 803(8). 53 F. Supp. 3d at 203.  Like here, "[p]laintiffs ha[d] not provided one iota of information as to how the material in the [report] was compiled or from what sources it is derived."  *Id.*  The *Gilmore* court found that the reports were not reliable, as their contents could not show that they "set[ ] out matters personally observed by any Israeli official, no less one with a 'legal duty to report,' or factual findings from a legally authorized investigation."  *Id.* (citing *United States v. El-Mezain*, 664 F.3d 467, 497-507 (5th Cir. 2011), for the principle that reports are inadmissible under Rule 803(8) absent information showing (1) where or how the declarant obtained the information; (2) the circumstances under which the documents were created; (3) the duty of the authors to prepare such documents; or (4) the procedures and methods used to reach the stated conclusions).[10]  The D.C. Circuit affirmed the exclusion of the reports because plaintiffs "offer[ed] no information explaining who made the findings or how they were made."  *Gilmore*, 843 F.3d at 969-70.

Likewise, in *Gill*, Judge Weinstein found two similar ISA reports inadmissible where the "relevant portions of the ISA reports appear[ed] to be based directly on" an untrustworthy confession that relayed "information of uncertain provenance about the relationship between the Defenders of al-Aqsa and Hamas."  893 F. Supp. 2d at 571.  The court further emphasized that "[t]he authors of the report, employed by a national security agency, [were] not subject to effective

---

[10] *El-Mezain* addressed the residual hearsay exception, and not Rule 803(8).  However, *Gilmore* applied *El-Mezain*'s trustworthiness inquiry for 803(8), as both rules require courts to address the "trustworthiness" of the offered evidence.

cross-examination[,]" and plaintiff had not adduced any independent evidence to support the trustworthiness of the information in the ISA reports.  *Id.*

As in *Gilmore* and *Gill,* Plaintiffs here have not adduced any independent admissible evidence supporting the hearsay conclusions in the Report, and "have not provided one iota of information as to how the" conclusions in the Report were reached.  With no trustworthy investigatory evidence from Israeli authorities in the *Shatsky I* record, and no indication as to how the ISA reached its conclusion as it relates to Nazal, the Report is untrustworthy as to the Bombing.  Thus, consistent with *Gilmore* and *Gill*, the Report is inadmissible hearsay not subject to an exception and, separate from the fact that it is not part of the *Shatsky I* record, should be excluded on that basis.  *Gilmore,* 843 F.3d at 969-70; *Gill,* 893 F. Supp. 2d at 571.

## B.   Rental Payment for PFLP Qalqilya Office Does Not Create a Triable Issue of Fact.

There is no evidence that connects the PFLP's Qalqilya office to the Bombing.  Accordingly, as the D.D.C. correctly held, "no reasonable jury could find that the PLO's payment of rent for the [PFLP's] Qalqilya office 'caused' the bombing . . . ."  SJ Order at *30.

## C.   Post-Bombing Payments to Family Members Do Not Create a Triable Issue of Fact.

Post-Bombing payments to the families of Nazal, Wasef, Hindi, and Hafez also could not have proximately caused the Bombing, as the D.D.C. correctly held.  No reasonable jury could conclude that any payments by Defendants to the families of Nazal, Wasef, or Hindi were a substantial factor in causing the Bombing because "plaintiffs have not identified any admissible evidence linking [them] to the Karnei Shomron bombing."  SJ Order at *31.  A jury could not reasonably find that these payments to the family of Hafez were a substantial factor in causing the Bombing, because the payments post-dated the Bombing, and there is "no evidence suggesting that Hafez knew his family would receive martyrdom payments, or that Hafez was motivated by

the prospect of such payments."  *Id.* at \*32 (citing *Sokolow v. PLO*, 60 F. Supp. 3d 509, 517 n.11 (S.D.N.Y. 2014) ("A showing of support—even post-attack financial support to the families of terrorists—is not sufficient to demonstrate that [defendant is] somehow responsible for the attacks.").[11]

After 15 years of litigation in *Shatsky I*, the D.D.C. properly granted summary judgment to Defendants on Plaintiffs' primary liability ATA claim because Plaintiffs could not adduce any evidence to link Defendants to the Bombing.  No further discovery is warranted, and this Court should grant summary judgment for this same reason.[12]

## III.   DEFENDANTS SHOULD BE GRANTED SUMMARY JUDGMENT ON PLAINTIFFS' ATA SECONDARY LIABILITY CLAIMS.

Plaintiffs have not shown, and cannot show, admissible evidence establishing the essential elements of a JASTA secondary-liability claim.

### A.   Plaintiffs Cannot Show that Defendants Engaged in a JASTA Conspiracy with the "Person Who Committed" the Bombing.

The Second Circuit's recent decision in *Kaplan* confirms that JASTA conspiracy claims require that a defendant "conspire[d] with" the principal actor that committed the attacks at issue. 999 F.3d  at 855.  *See also O'Sullivan v. Deutsche Bank AG*, 2019 U.S. Dist. LEXIS 53134, at \*35 (S.D.N.Y. Mar. 28, 2019).   "The crux of any conspiracy is an agreement between the co-conspirators."  *Kemper v. Deutsche Bank AG*, 911 F.3d 383, 395 (7th Cir. 2018) (citing *Ocasio v.*

---

[11] *See Owens*, 897 F.3d at 274 (post-attack events "have no bearing on what actions 'caused' the bombings."); *see also Hamm v. United States*, 483 F.3d 135, 140 (2d Cir. 2007) (post-tort conduct cannot constitute ratification of an antecedent tort absent evidence that the tort "was done or professedly done on [the defendant's] account.") (emphasis added) (quoting Restatement (Second) of Agency § 82 (1958)); *Geiss v. Weinstein Co. Holdings LLC*, 383 F. Supp. 3d 156, 172 n.9 (S.D.N.Y. 2019) (same).

[12] As both the D.D.C. and Plaintiffs "acknowledge[d]", the D.D.C.'s finding in *Shatsky I* that Plaintiffs had identified no admissible evidence supporting their theory that Nazal planned the Bombing "also precluded recovery on any theory of *respondeat superior*."  *Shatsky I*, 292 F. Supp. 3d at 190 n.2.  The same is true here with respect to Count VII of Plaintiff's FAC.

*United States*, 136 S. Ct. 1423, 1429 (2016)).  "Although 'a conspirator [need] not agree to commit or facilitate each and every part of the offense,' she must 'reach an agreement with the <u>specific intent</u> that' the conspiratorial goal be completed."  *Id.*  A JASTA conspiracy claim will not lie where, as here, there are no "facts from which the Court could infer that Defendants shared the common goal of committing an act of international terrorism."  *O'Sullivan v. Deutsche Bank AG*, 2020 U.S. Dist. LEXIS 32024, at *18 (S.D.N.Y. Feb. 25, 2020).

To the extent Plaintiffs' JASTA claim is based on a conspiracy theory, it fails under these standards (as does Plaintiffs' non-federal civil conspiracy claim).  There is no evidence that either Defendant had any contact <u>at all</u>—much less reached the requisite agreement—with Hafez, and "the plain text of JASTA's *conspiracy* liability provision requires that a defendant conspire directly with the person or entity that committed the act of international terrorism that injured the plaintiff."  *Freeman v. HSBC Holdings PLC*, 413 F. Supp. 3d 67, 98 n.41 (E.D.N.Y. 2019).  Nor is there evidence that Defendants agreed with the PFLP to commit any act of "international terrorism" as defined in the ATA, let alone the Bombing.  *See O'Sullivan*, 2019 U.S. Dist. LEXIS 53134, at *35 (for a JASTA conspiracy claim, "a defendant must have conspired to commit an act of international terrorism.").  Indeed, there is no evidence that either the PA or the PLO had <u>any</u> advance knowledge of the Bombing.  *Cf. Id.* at *37 (for civil conspiracy under JASTA, co-conspirators' activities must be "so coordinated and monolithic" that they demonstrate the secondary defendant "shared a common purpose or plan").

Despite a fully developed record, the only admissible evidence in support of Plaintiffs' purported "conspiracy" are the same payments addressed above, which are "so far removed from the acts of terrorism that injured Plaintiffs that the Court cannot infer that Defendants shared the common

goal of committing an act of international terrorism." *Id.* at *37 (dismissing JASTA conspiracy claim).[13]

### B.   Plaintiffs Cannot Show JASTA Aiding and Abetting Liability.

In enacting JASTA, Congress stated that the proper legal framework for assessing JASTA aiding and abetting claims is set out in *Halberstam v. Welch,* 705 F.2d 472 (D.C. Cir. 1983), including that "the defendant must knowingly and substantially assist the principal violation" and "the defendant must be generally aware of his role as part of an overall illegal or tortious activity at the time he provides the assistance." *Kaplan,* 999 F.3d at 856 (quoting *Halberstam,* 705 F.2d at 477).

### 1.   Plaintiffs Cannot Show that Defendants Knowingly and Substantially Assisted the Bombing.

*Kaplan* clarified that the "knowingly" component of "substantial assistance" for a JASTA "aiding and abetting an act of terrorism" claim (999 F.3d at 860) requires "actual knowledge" (*id.* at 863-64) that the defendant's alleged facilitative conduct substantially assisted "someone who performed wrongful conduct." *Id.* at 856 (quoting *Halberstam,* 705 F.2d at 478). "That knowledge component 'is designed to avoid' imposing liability on 'innocent, incidental participants.'" *Id.* at 864 (quoting *Halberstam,* 705 F.2d at 485 n.14).

As to the "substantial assistance" inquiry, *Halberstam* identified six factors relevant to determining "how much encouragement or assistance is substantial enough" to show that the defendant "substantially assist[ed] the principal violation"—here, the Bombing. *Linde v. Arab Bank PLC*, 882 F.3d 314, 329 (2d Cir. 2018) (quoting *Halberstam*, 705 F.2d at 483-84, 487). Those six factors are: (1) the nature of the act encouraged; (2) the amount of assistance given by defendant;

---

[13] *See also Gonzalez v. Google LLC,* 2021 U.S. App. LEXIS 18515, at *78 (9th Cir. June 22, 2021) ("Google's sharing of revenue with members of ISIS does not, by itself, support the inference that Google tacitly agreed to commit homicidal terrorist acts with ISIS . . . ").

(3) defendant's presence or absence at the time of the tort; (4) defendant's relation to the principal; (5) defendant's state of mind; and (6) the period of defendant's assistance. *Id.* (citing *Halberstam*, 705 F.2d at 483-84).

The discovery record from *Shatsky I* lacks any admissible evidence showing that either Defendant provided knowing and substantial assistance to the Bombing or to Hafez. Defendants were not present during the Bombing. Nor did either Defendant provide <u>any</u> funds or any other assistance, for <u>any</u> period of time, to Hafez. Defendants only made welfare payments to Hafez's family <u>after</u> the Bombing. As the D.D.C. correctly held in *Shatsky I*, there is no evidence that Hafez was aware of the possibility of such payments, much less that they motivated him to commit the Bombing. Nor is there evidence that either Defendant had prior knowledge that Hafez intended to commit the Bombing, much less that Defendants harbored terroristic intent. There is likewise no admissible evidence that any funds, personnel, or any other support provided by Defendants were used to plan, facilitate, or carry out the Bombing.

Payments made to family members who are not alleged to have been involved in the Bombing <u>after</u> it was carried out could not logically have "substantially assisted" in the Bombing. *See Sokolow*, 60 F. Supp. 3d at 517 n.11; SJ Order at *32; *see also United States v. Hamilton*, 334 F.3d 170, 180 (2d Cir. 2003) ("a person cannot be found guilty of aiding and abetting a crime that already has been committed."). This is particularly true where, as here, there is no evidence that Hafez knew of, or was motivated by, these payments. SJ Order at *32. Further, as there is no admissible evidence that Nazal was involved in the Bombing, the PA's payment of Nazal's salary could not have substantially assisted the Bombing. Nor could a rental payment for the PFLP's Qalqilya office, as there is no admissible evidence that that office, or anyone working there, was involved in the Bombing.

With no evidence connecting this alleged support to the Bombing, it is not surprising that Plaintiffs also do not have any evidence that Defendants <u>actually knew</u> that any alleged support assisted the Bombing or its perpetrators.  In *Weiss,* the Second Circuit affirmed the district court's futility finding as to plaintiffs' proposed JASTA amendments "given the undisputed evidence adduced, in connection with the summary judgment motions, as to the state of NatWest's knowledge." 993 F.3d at 166-67.  Specifically, the Second Circuit found that plaintiffs could not show that NatWest knowingly provided substantial assistance to Hamas where there was evidence that the purported Hamas-controlled charities did perform charitable work, no evidence of knowledge by Natwest that the transfers were for any terroristic purpose, and no evidence that the charities funded terrorist attacks or recruited persons to carry out such attacks.  *Id.*  Likewise here, Plaintiffs have adduced no evidence that the PA or PLO had any advanced knowledge of the Bombing or any other "actual knowledge" of wrongful conduct, and there is no admissible evidence that any funds, personnel, or any other support provided by Defendants were used to plan, facilitate, or carry out the Bombing.  Thus, just as in *Weiss,* given the undisputed record in this case, Plaintiffs cannot show that Defendants were knowingly providing substantial assistance to the Bombing.  *Id.*

### 2.    Plaintiffs Cannot Show that  Defendants Were "Aware" They Were "Assuming a Role" in Violent Terrorist Activity.

"For the *Halberstam* general-awareness standard, a plaintiff must plead and prove, *inter alia,* that the defendant was '*generally* aware of his role as part of an overall illegal or tortious activity."  *Kaplan,* 999 F.3d at 863.  However, *Kaplan* made clear that "knowingly providing material support to an FTO, without more, does not as a matter of law satisfy the general awareness element."  *Id.* at 860.  Further, the defendant "must be generally aware of its role in an overall illegal activity from which the act that caused the plaintiff's injury was *foreseeable*."  *Honickman v. Blom Bank Sal,* 2021 U.S. App. LEXIS 22480, at *15 (2d Cir. July 29, 2021).  Nothing about Defendants'

incidental support for the PFLP would have made the Bombing foreseeable, or demonstrates awareness of involvement in the PFLP's terrorist activities. As the D.D.C. correctly determined, Defendants' incidental support for the PFLP as a political faction is immaterial because Plaintiffs did not proffer any evidence demonstrating a connection between this support and the Bombing. SJ Order at *29. Without such a connection, this support also fails to give rise to any inference that Defendants were "aware" that they were playing a "role" in the Bombing or any PFLP terrorist activity. *Linde*, 882 F.3d at 329; *Weiss,* 993 F.3d at 166-67; *Siegel v. HSBC Holdings, Inc.,* 933 F.3d 217, 224 (2d Cir. 2021) (allegation that banking defendant was aware that client was believed by some to have links to terrorist organizations insufficient to establish the "general awareness" element of JASTA aiding and abetting liability).[14]   The payment of Nazal's salary is similarly irrelevant, as there is no admissible evidence that Nazal was involved in the Bombing. Plaintiffs' JASTA aiding-and-abetting claim fails as a matter of law.

## IV.   PLAINTIFFS' NON-FEDERAL CLAIMS SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM.

Under N.Y. C.P.L.R. § 1025 (as under District of Columbia law), unincorporated associations lack the capacity to be sued. The Second Circuit has recognized that the PA and PLO "are unincorporated associations." *Waldman I*, 835 F.3d at 332. In dismissing the non-federal claims in *Shatsky I*, the D.D.C. correctly noted that the parties in this action "**acknowledge** that the PA and PLO 'both are unincorporated associations.'" SJ Order at *33 (emphasis added); *see also Sokolow*, 60 F. Supp. 3d at 523-24 ("Courts that have considered this issue agree that" the PA and PLO "are most appropriately treated as unincorporated associations.") (collecting cases).

---

[14] *See also Honickman*, 2021 U.S. App. LEXIS 22480, at *22 (rejecting argument that, because "[m]oney is fungible," JASTA aiding-and-abetting liability can be premised solely on knowing and material support to an FTO).

Accordingly, pursuant to C.P.L.R. § 1025 and Fed. R. Civ. P.17(b)(3), "Defendants do not have the capacity to be sued on Plaintiffs' non-federal claims under New York law," and **all** of Plaintiffs' non-federal claims (FAC Counts 3-7) must be dismissed.  *Sokolow*, 60 F. Supp. 3d at 523 (dismissing non-federal claims against PA and PLO).[15]

In addition, the New Plaintiffs' non-federal claims are time-barred.  Plaintiffs filed this action on December 31, 2018, more than 16 years after the Bombing.  "New York courts generally apply New York's statute[s] of limitations even when the injury giving rise to the action occurred outside New York."  *Wultz v. Bank of China*, 306 F.R.D. 112, 114 (S.D.N.Y. 2013) (quoting *Stuart v. American Cyanamid Co.*, 158 F.3d 622, 627 (2d Cir. 1998)).[16]

Here, all of the New Plaintiffs' claims are time-barred by New York's statutes of limitation: Count 3 (negligence) is subject to a three-year statute of limitation[17]; Count 4 (intentional or negligent infliction of emotional distress) is subject to a one or three-year statute of limitation[18]; and Counts 5 (civil conspiracy), 6 (aiding and abetting), and 7 (vicarious liability/*respondeat superior*), to the extent they constitute stand-alone causes of action, are subject to the same limitations periods that apply to the underlying tort(s).[19]  Accordingly, all of the New Plaintiffs'

---

[15] *See also Estate of Parsons v. Palestinian Auth.*, 2008 U.S. Dist. LEXIS 124833, at *13-14 (D.D.C. Sept. 30, 2008) (holding that the PA and PLO are unincorporated associations and dismissing non-federal claims); SJ Order at *32-33 ("Defendants contend that they are entitled to summary judgment on plaintiffs' non-federal tort law claims because the PA and PLO lack the legal capacity to be sued in tort. . . .  I agree.").  Note that in *Shatsky I*, Plaintiffs did not appeal the dismissal of their non-federal claims.  955 F.3d at 1025 n.2.

[16] "This general rule, however, is subject to a traditional statutory exception, New York's 'borrowing' statute.'"  *Wultz*, 306 F.R.D. at 114 (quoting *Stuart*, 158 F.3d at 627).  Under New York's borrowing statute, C.P.L.R. § 202, "'when a nonresident plaintiff sues upon a cause of action that arose outside of New York, the court must apply the shorter limitations period . . . of either: (1) New York; or (2) the state where the cause of action accrued.'"  *Wultz*, 306 F.R.D. at 114 (quoting *Stuart*, 158 F.3d at 627) (emphasis added).  Here, New York's statutes of limitation apply.

[17] *See, e.g.*, C.P.L.R. § 214(5); *McCray v. City of N.Y.*, 2007 U.S. Dist. LEXIS 90875, at *101 (S.D.N.Y. Dec. 11, 2007) (citing *Cialino v. O'Neill*, 44 A.D.3d 816, 844 (2d Dep't 2007)).

[18] *See, e.g.*, C.P.L.R. § 215(3); C.P.L.R. 214(5); *Twersky v. Yeshiva Univ.*, 993 F. Supp. 2d 429, 441 (S.D.N.Y. 2014) (quoting *Goldstein v. Mass. Mut. Life Ins. Co.*, 32 A.D.3d 821, 821 (2d Dep't 2006)).

[19] *See, e.g.*, *Brady v. Lynes*, 2008 U.S. Dist. LEXIS 43512, at *28 (S.D.N.Y. May 31, 2008) (citing *Schlotthauer v. Sanders*, 153 A.D.2d 731, 732 (2d Dep't 1989)); *Wultz*, 306 F.R.D. at 116 (quoting *Marketxt Holdings Corp. v. Engel*

non-federal claims must be dismissed.

Moreover, dismissal of Plaintiffs' non-federal claims is appropriate because Plaintiffs have failed to plead required elements of those claims.  Plaintiffs have pleaded their negligence cause of action under both Israeli and Florida law.  To the extent that Israeli law applies, the negligence claim must be dismissed because the Amended Complaint does not allege, and could not plausibly allege, that Defendants' actions were the "but-for" cause of Plaintiffs' injuries.[20]

Plaintiffs Michael Thaler and Isaac Thaler assert their emotional-distress claims under Florida law.  But neither Plaintiff has plausibly alleged that their emotional distress "flow[s] from physical injuries the plaintiff sustained in an impact,"[21]; or that they meet the "bystander test" for such a claim.[22]  Accordingly, to the extent these Plaintiffs base their emotional-distress claim on a theory of negligent infliction of emotional distress, this claim must be dismissed.

Finally, Plaintiffs' seventh cause of action, for "vicarious liability/respondeat superior," fails to plausibly state a claim for reasons independent of the flaws discussed above.  <u>First</u>, to find liability under Israeli law, and particularly Article 25 of the CWO, a principal or employer must "expressly"

---

& *Reiman, P.C.*, 693 F. Supp. 2d 387, 393 (S.D.N.Y. 2010)); *Karaduman v. Newsday*, 416 N.E. 2d 557, 563-64 (N.Y. 1980).

[20] *Wultz v. Islamic Republic of Iran*, 755 F. Supp. 2d 1, 63 (D.D.C. 2010) (citing CA 148/80 *Vaknin v. Beit Shemesh Local Council* 37(1) PD 113, 133 [1982] (Isr.)) ("Israeli courts determine factual causation under the tort of negligence by applying a but-for causation test."); *Id.* (quoting *Vaknin*, 37(1) PD at 144) ("'[T]he meaning of this test is that a breach of the duty is a factor *sine qua non*' resulting in injury, not merely a 'fundamental and substantial factor' contributing to injury.").

[21] *See*, *e.g.*, *Williams v. City of Daytona Beach*, 2005 U.S. Dist. LEXIS 46776, at *17 (M.D. Fla. June 20, 2005) (quoting *R. J. v. Humana of Fla., Inc.*, 652 So. 2d 360, 362 (Fla. 1995))

[22] *Id.* at *18-19 (citing *Zell v. Meek*, 665 So. 2d 1048, 1054 (Fla. 1995)) (bystander claims require (1) that the plaintiff suffer a <u>physical injury</u>; (2) that the plaintiff's physical injury be caused by the psychological trauma; (3) that the plaintiff must be "involved in some way in the event causing the negligent injury to another"; and (4) that the plaintiff must have a close personal relationship to the directly injured person).

authorize or ratify an assault.[23]   Plaintiffs' fact-free, conclusory allegation that Defendants "authorized, ratified and condoned" the alleged acts of the PFLP, Nazal, or Hafez, FAC ¶ 205, cannot be credited here and does not plausibly allege <u>express</u> authorization or ratification.

Second, despite Plaintiffs' fact-free allegation that "Nazal was an agent, officer and employee of Defendants" acting within his scope of agency and employment, FAC ¶ 203, there is no admissible evidence that Nazal had any involvement in the Bombing.  And even assuming for Rule 12 purposes that Nazal did have any such involvement, Plaintiffs' own allegations confirm that any involvement was not within the scope of Nazal's employment with Defendants.  *See* FAC ¶ 135.

Third, to the extent Plaintiffs suggest that post-Bombing payments by Defendants "ratified" any purported acts in connection with the Bombing, that allegation fails as a matter of law, because a vicarious liability claim cannot be sufficiently stated on the basis of such post-incident payments by the Palestinian government.  *See Sokolow*, 60 F. Supp. 3d at 517 n.11.  ("A showing of support— even post-attack financial support to the families of terrorists—is not sufficient to demonstrate that Defendants were somehow responsible for the attack[]"); *see also supra* at II.C.

## <u>CONCLUSION</u>

After 15 years of protracted litigation, Plaintiffs could adduce no admissible evidence linking Defendants to the Karnei Shomron Bombing.  Accordingly, just as the D.D.C. did in *Shatsky I,* this Court should grant summary judgment in favor Defendants.

---

[23] *Estate of Botvin v. Islamic Republic of Iran*, 772 F. Supp. 2d 218, 229-30 (D.D.C. 2011) (quoting CWO Art. 25) ("no principal or employer will be liable for any assault committed by his agent or employee unless he has <u>expressly</u> authorized or ratified such assault.").

Dated:  August 20, 2021

                                          Respectfully Submitted,

                                          **SQUIRE PATTON BOGGS (US) LLP**

                                          /s/ *Gassan A. Baloul*
Mitchell R. Berger (MB-4112)              Gassan A. Baloul (GB-4473)
mitchell.berger@squirepb.com              gassan.baloul@squirepb.com
2550 M Street, N.W.                       Joseph S. Alonzo (JA-1378)
Washington, D.C. 20037                    joseph.alonzo@squirepb.com
Telephone: (202) 457-6000                 1211 Avenue of the Americas
Facsimile:  (202) 457-6315                26th Floor
                                          New York, NY 10036
                                          Telephone: (212) 872-9800
                                          Facsimile:  (212) 872-9815

                                          *Attorneys for Defendants*

## **CERTIFICATE OF SERVICE**

I hereby certify that on August 20, 2021, I caused a true and correct copy of the foregoing

Motion for Summary Judgment to be served through the Court's CM/ECF System on all counsel

of record in this action.


<u>/s/ *Gassan A. Baloul*</u>
Gassan A. Baloul
*Attorney for Defendants*