UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SHABTAI SCOTT SHATSKY, *et al.*,

Plaintiffs,

- against -

THE PALESTINE LIBERATION
ORGANIZATION and THE PALESTINIAN
AUTHORITY,

Defendants.

Case No. 18-cv-12355 (MKV) (DCF)

Plaintiffs' Memorandum of Law in Opposition to Defendants'
Motion to Dismiss for Lack of Personal Jurisdiction

Cohen & Gresser LLP

Stephen M. Sinaiko
Oliver Haker
Eszter A. Vincze
800 Third Avenue
New York, New York  10022
(212) 957-7600
*ssinaiko@cohengresser.com*
*ohaker@cohengresser.com*
*evincze@cohengresser.com*

Melissa H. Maxman (admitted *pro hac vice*)
Ronald F. Wick (admitted *pro hac vice*)
2001 Pennsylvania Avenue, NW
Suite 300
Washington, DC  20006
(202) 851-2070
*mmaxman@cohengresser.com*
*rwick@cohengresser.com*

Attorneys for Plaintiffs

## Table of Contents

Page

Preliminary Statement..................................................................................................... 1

Argument ......................................................................................................................... 3

I.  DEFENDANTS HAVE ENGAGED IN ACTIVITIES THAT CONSTITUTE
    CONSENT TO PERSONAL JURISDICTION UNDER THE PSJVTA. ........................... 4

    A.  Defendants Have Consented to Jurisdiction Under 18 U.S.C. §
        2334(e)(1)(A). ................................................................................................ 4

    B.  Defendants Have Consented to Jurisdiction Under 18 U.S.C. §
        2334(e)(1)(B). ................................................................................................ 6

        1.  Defendants Have Maintained a Non-Exempt Facility in the United
            States. ................................................................................................ 7

        2.  Defendants Conducted Non-Exempt Activities in the United States. ........ 8

II. THE PSJVTA DOES NOT VIOLATE DUE PROCESS. ................................................ 11

    A.  Consent Is a Valid Basis for Personal Jurisdiction. ................................................ 11

    B.  The PSJVTA Is a Valid Consent Statute. ................................................................. 12

        1.  The PSJVTA Gave Defendants Fair Warning That Their Conduct
            Would Make Them Subject to Suit in The United States. ....................... 13

        2.  The PSJVTA Reasonably Advances Legitimate Government
            Interests. ........................................................................................... 15

    C.  Reciprocity Is Not a Prerequisite for Consent to Personal Jurisdiction. ............... 18

        1.  Consent Does Not Require "Reciprocity" To Satisfy Due Process .......... 18

        2.  Even If Reciprocity Were Required, It Is Satisfied Here. ....................... 22

    D.  Defendants' Fallback Arguments Lack Merit. ........................................................ 23

Conclusion ..................................................................................................................... 25

Table of Authorities

Page(s)

Cases

*Acorda Therapeutics Inc. v. Mylan Pharms. Inc.,*
    817 F.3d 755 (Fed. Cir. 2016) ............................................................................................... 24

*Am. Dairy Queen Corp. v. W.B. Mason Co.,*
    2019 WL 135699 (D. Minn. Jan. 8, 2019) ........................................................................ 20, 21

*Armstrong v. Pomerance,*
    423 A.2d 174 (Del. 1980) .................................................................................................. 19, 20

*Bank Markazi v. Peterson,*
    136 S. Ct. 1310 (2016) ...................................................................................................... 24, 25

*Beatie v. City of New York,*
    123 F.3d 707 (2d Cir. 1997) .................................................................................................. 17

*Bostock v. Clayton County,*
    140 S. Ct. 1731 (2020) ........................................................................................................... 11

*Brown v. Lockheed Martin Corp.,*
    814 F.3d 619 (2d Cir. 2016) ............................................................................................. 20, 21

*Burger King Corp. v. Rudzewicz,*
    471 U.S. 462 (1985) .......................................................................................................... 12, 13

*Capitol Records LLC v. Vimeo, LLC,*
    826 F.3d 78 (2d Cir. 2016) .................................................................................................... 11

*Chen v. Dunkin' Brands, Inc.,*
    954 F.3d 492 (2d Cir. 2020) ....................................................................................... 15, 20, 21

*College Savings Bank v. Florida Prepaid Postsecondary*
    *Education Expense Board,* 527 U.S. 666 (1999) ........................................................ 14, 15, 19

*Cty. of Sacramento v. Lewis,*
    523 U.S. 833 (1998) .......................................................................................................... 12, 13

*Daimler v. AG Bauman,*
    571 U.S. 117 (2014) ...................................................................................................... 23, 24, 25

*Daliberti v. Republic of Iraq,*
    97 F. Supp. 2d 38 (D.D.C. 2000) .......................................................................................... 17

*Dennis v. Higgins,*
   498 U.S. 439 (1991) ............................................................................................ 19

*Eli Lilly & Co. v. Gottstein,*
   617 F.3d 186 (2d Cir. 2010) ...................................................................... 12, 18

*In re Fairfield Sentry Ltd.,*
   627 B.R. 546 (Bankr. S.D.N.Y. 2021) .................................................................. 12

*Forest Lab'ys, Inc. v. Amneal Pharms. LLC,*
   2015 WL 880599 (D. Del. Feb. 26, 2015), *report and recommendation*
   *adopted,* 2015 WL 1467321 (D. Del. Mar. 30, 2015) ........................................ 24

*Genuine Parts Co. v. Cepec,*
   137 A.3d 123 (Del. 2016) ................................................................................ 20, 21

*Haig v. Agee,*
   453 U.S. 280 (1981) ............................................................................................ 17

*Hassoun v. Searls,*
   968 F.3d 190 (2d Cir. 2020) ............................................................................... 16

*Hawkins v. i-TV Digitalis Tavkozlesi zrt.,*
   935 F.3d 211 (4th Cir. 2019) ............................................................................. 12

*Heller v. Doe,*
   509 U.S. 312 (1993) ............................................................................................ 17

*Hess v. Pawloski,*
   274 U.S. 352 (1927) ............................................................................................ 19

*Insurance Corporation of Ireland, Ltd. v. Compagnie*
   *des Bauxites de Guinee,* 456 U.S. 694 (1982) ............................................. 11, 12

*Klieman v. Palestinian Authority,*
   923 F.3d 1115 (D.C. Cir. 2019) ...................................................................... 21, 25

*Klinghoffer v. S.N.C. Achille Lauro,*
   937 F.2d 44 (2d Cir. 1991), *on remand,*
   795 F. Supp. 112 (S.D.N.Y. 1992) ............................................................ 9, 10, 25

*Koontz v. St. Johns River Water Mgmt. Dist.,*
   570 U.S. 595 (2013) ............................................................................................ 23

*Leonard v. USA Petroleum Corp.,*
   829 F. Supp. 882 (S.D. Tex. 1993) ................................................................. 20, 21

*Litecubes, LLC v. N. Light Prod., Inc.*,
   523 F.3d 1353 (Fed. Cir. 2008)...................................................................24

*Metropolitan Life Ins. Co. v. Robertson-Ceco Corp.*,
   84 F.3d 560 (2d Cir. 1996)..........................................................................4

*In re Mid-Atl. Toyota Antitrust Litig.*,
   525 F. Supp. 1265 (D. Md. 1981)..........................................................20, 21

*Molinari v. Bloomberg*,
   564 F.3d 587 (2d Cir. 2009).....................................................................15, 16

*PennEast Pipeline Co., LLC v. New Jersey*,
   141 S. Ct. 2244 (2021)..............................................................................15

*Shaffer v. Heitner*,
   433 U.S. 186 (1977)..................................................................................20

*Shatsky v. Palestine Liberation Org.*,
   955 F.3d 1016 (D.C. Cir. 2020).................................................................14

*Sullivan v. A.W. Chesterton, Inc.*,
   384 F. Supp. 3d 532 (E.D. Pa. 2019)........................................................23

*Sullivan v. Finkelstein*,
   496 U.S. 617 (1990).............................................................................10, 11

*Sun Forest Corp. v. Shvili*,
   152 F. Supp. 2d 367 (S.D.N.Y. 2001).......................................................18

*Swarna v. Al-Awadi*,
   622 F.3d 123 (2d Cir. 2010).........................................................................8

*Swenson v. Thibaut*,
   39 N.C. App. 77 (1978) .........................................................................19, 20

*Ungar v. Palestinian Auth.*,
   153 F. Supp. 2d 76 (D.R.I. 2001) ..............................................................25

*United States v. Gomez*,
   877 F.3d 76 (2d Cir. 2017).........................................................................19

*United States v. Ni Fa Yi*,
   951 F. Supp. 42 (S.D.N.Y. 1997) ..............................................................16

*Vasquez v. Hong Kong & Shanghai Banking Corp.*,
   477 F. Supp. 3d 241 (S.D.N.Y. 2020).........................................................3

*Waldman v. Palestine Liberation Org.*,
    835 F.3d 317 (2d Cir. 2016)..................................................................13, 25

*Waldman v. Palestine Liberation Org.*,
    925 F.3d 570 (2d Cir. 2019)..............................................................................21

*Wellness Int'l Network, Ltd. v. Sharif*,
    575 U.S. 665 (2015)..........................................................................................19

*Wilmington PT Corp. v. Mitra*,
    2021 WL 2333554 (E.D.N.Y. June 7, 2021) ...................................................12

*Wisconsin Department of Revenue v. William Wrigley, Jr., Co.*,
    505 U.S. 214 (1992)..........................................................................................10

*Wuchter v. Pizzutti*,
    276 U.S. 13 (1928)............................................................................................19

<u>Statutes</u>

18 U.S.C. § 2333.......................................................................................... *passim*

22 U.S.C. § 2378c-1 note................................................................................18

22 U.S.C. § 5201(b).........................................................................................17

22 U.S.C. § 5202................................................................................17, 21, 22

Promoting Security and Justice for Victims of Terrorism Act,
    Pub. L. No. 116-94, Div. J., Tit. IX, § 903, 133 Stat. 3082 (codified at 18
    U.S.C. § 2334(e))....................................................................................... *passim*

Taylor Force Act, Pub. L. No. 115-141 ....................................................17, 18

<u>Other Authorities</u>

165 Cong. Rec. S7182 (Dec. 19, 2019) ..........................................................16

11 Op. OLC 104 (1987)....................................................................................3

U.S. Const. Amend. V ................................................................................13, 22

U.S. Const. Amend. XIV .........................................................................3, 13, 15

Dustin E. Buehler, *Jurisdictional Incentives*, 20 Geo. Mason L. Rev. 105, 140
    (2012)..............................................................................................................16

*Fowler's Dictionary of Modern English Usage* (4th ed. 2015) .......................10

John T. Parry, *Due Process, Borders, and the Qualities of Sovereignty – Some Thoughts on J. McIntyre Machinery v. Nicastro*, 16 Lewis & Clark L. Rev. 827 (2012)........................................................................................................................16

Plaintiffs respectfully submit this memorandum of law, the Declarations of Nick Kaufman ("Kaufman Decl."), Arieh Dan Spitzen ("Spitzen Decl.") and Oliver Haker ("Haker Decl."), and the accompanying exhibits ("Exh."), in opposition to the motion by Defendants the Palestine Liberation Organization ("PLO") and the Palestinian Authority ("PA") to dismiss this action for lack of personal jurisdiction.

### Preliminary Statement

On February 16, 2002, Sadeq Abdel Hafez entered a shopping center pizzeria in the Israeli town of Karnei Shomron and detonated an explosive device laden with nails and metal scraps to maximize its lethality. The attack killed or wounded over thirty people, including six U.S. citizens (the "U.S. Victims") -- two teenage girls who died and four other people who suffered injuries. Extensive evidence links the PLO and the PA (together, "Defendants") to the attack, as Plaintiffs demonstrate in opposition to Defendants' summary judgment motion. Subsequently, ███████

████████████████████████████████████████████████████████████████

████████████████████████████████  Plaintiffs in this action, the U.S. Victims (or their estates) and members of their families, seek to hold the PLO and the PA accountable for their roles in the Karnei Shomron bombing under, *inter alia*, the Anti-Terrorism Act ("ATA"), 18 U.S.C. § 2333.

Defendants now move to dismiss for lack of personal jurisdiction. But their undisputed conduct triggers the jurisdictional provisions of the Promoting Security and Justice for Victims of Terrorism Act ("PSJVTA"), Pub. L. No. 116-94, Div. J., Tit. IX, § 903, 133 Stat. 3082. The PSJVTA provides that Defendants consent to personal jurisdiction in ATA actions by either (i) making payments, after April 18, 2020, to terrorists who murdered or injured U.S. citizens, or to the family members or designees of such terrorists, or (ii) engaging in non-exempt activities or maintaining any non-exempt facility in the U.S. after January 4, 2020. *See* 18 U.S.C. § 2334(e)(1).

Moreover, Congress directed that the PSJVTA be "liberally construed to carry out the purposes of Congress to provide relief for victims of terrorism." PSJVTA § 903(d)(1)(A), 133 Stat. 3085.

Defendants were aware of the PSJVTA and its jurisdictional provisions upon the statute's enactment. Despite that awareness, Defendants ████████████████████████████████ ████████████████████ that, under the PSJVTA, manifest their consent to personal jurisdiction.

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

Contrary to Defendants' position, the PSJVTA exemption does not reach these activities. 18 U.S.C. §§ 2334(e)(3)(A), (B).

Absent any serious dispute that their conduct triggers jurisdiction under the PSJVTA, Defendants devote their brief almost entirely to arguing that the PSJVTA is unconstitutional. It is not. Federal statutes specifying conduct that effects a consent to personal jurisdiction -- particularly where, as here, the consent is only as to ATA claims -- satisfy due process if they provide fair warning to defendants and are reasonably related to a legitimate government objective. The PSJVTA satisfies both requirements. Not only did the PSJVTA provide fair warning, but Defendants admittedly *received* that warning. Moreover, by making federal courts available in ATA actions against defendants who pay for acts of terror or otherwise engage in non-exempt

activities in the United States, the PSJVTA advances legitimate government interests in deterring international terrorism, protecting U.S. citizens from terrorism, and compensating terror victims.

Defendants attempt to undo the PSJVTA by concocting a purported constitutional rule that jurisdictional consent statutes satisfy due process only if they also provide a reciprocal "benefit" that defendants accept as a "bargain" for their consent to jurisdiction. No such rule exists. While some courts have found that a defendant's acceptance of a benefit is a factor supporting the exercise of jurisdiction, Defendants cite no case -- and we are aware of none -- holding that constitutional due process invariably requires reciprocity. To the contrary, courts have found implied consent to jurisdiction where the consenting party receives no benefit at all.

Neither is there any merit to Defendants' argument that the PSJVTA violates separation of powers. The PSJVTA creates no "legislative rule of decision." Nor does it "supersede" prior decisions regarding personal jurisdiction over the PLO and PA in ATA cases. While prior cases addressed personal jurisdiction based on minimum contacts analysis, the PSJVTA creates criteria for determining whether Defendants have *consented* to personal jurisdiction. For the same reason, Defendants' reliance on case law interpreting the minimum contacts standard is misplaced.

Because Defendants' undisputed conduct demonstrates consent under the PSJVTA to personal jurisdiction in this action, the Court should deny their motion.

Argument

In assessing a plaintiff's evidence on a motion to dismiss for lack of personal jurisdiction, courts apply a standard "akin to that on a motion for summary judgment," construing the evidence "in the light most favorable to the plaintiff" and resolving "all doubts . . . in its favor." *Vasquez v. Hong Kong & Shanghai Banking Corp.*, 477 F. Supp. 3d 241, 250 (S.D.N.Y. 2020) (citation omitted). Where, as here, the court has permitted jurisdictional discovery but has not conducted an evidentiary hearing, a plaintiff may defeat the motion by making a prima facie showing of

personal jurisdiction, including "an averment of facts that, if credited by the ultimate trier of fact, would suffice to establish jurisdiction over the defendant." *Metropolitan Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 567 (2d Cir. 1996) (citation and punctuation omitted). Plaintiffs have carried that burden by showing that Defendants' conduct operates as a consent to jurisdiction under the PSJVTA.

I.   **DEFENDANTS HAVE ENGAGED IN ACTIVITIES THAT CONSTITUTE CONSENT TO PERSONAL JURISDICTION UNDER THE PSJVTA.**

The PSJVTA specifies three types of conduct that constitute a defendant's consent to personal jurisdiction in ATA cases.  First, defendants consent by making payments to family members or designees of terrorists who have injured or killed U.S. nationals.  18 U.S.C. § 2334(e)(1)(A).  Second, defendants consent by establishing or maintaining a non-exempt facility in the United States.  *Id.* § 2344(e)(1)(B)(i), (ii).  And third, defendants consent by engaging in non-exempt activities in the United States.  *Id.* § 2344(e)(1)(B)(iii).  Plaintiffs need prove only one of these prongs to establish jurisdiction.

A.   Defendants Have Consented to Jurisdiction Under 18 U.S.C. § 2334(e)(1)(A).

Under the PSJVTA, a defendant "shall be deemed to have consented to personal jurisdiction" in ATA cases if, after April 18, 2020, it:

> makes any payment, directly or indirectly --
>
> (i) to any payee designated by any individual who, after being fairly tried or pleading guilty, has been imprisoned for committing any act of terrorism that injured or killed a national of the United States, if such payment is made by reason of such imprisonment; or
>
> (ii) to any family member of any individual, following such individual's death while committing an act of terrorism that injured or killed a national of the United States, if such payment is made by reason of the death of such individual . . . .

18 U.S.C. § 2334(e)(1)(A).

███████████████████████████████████████████

███████████████████████████████████████████████████

████████████████████████████████   ████████████████████

█████████████████████████████████████████████████████

█████████████████████████████████████████████████████

█████████████████████████████████████████████████████

█████████████████████████████████████████████████████

██████████████████████████████████   ████████████████████

█████████████████████████████████████████████████████

█████████████████████████████████████████████████████

███████████████████   Defendants concede in their brief ("Def. Br.") that they have made "at least

one" payment meeting the PSJVTA criteria.  *Id.* at 3.  ████████████████████████

█████████████████████████████████████████████

█████████████████████████████████████████████████████

█████████████████████████████████████████████████████

█████████████████████████████████████████████████████

█████████████████████████████████████████████████████

█████████████████████████████████████████████████████

█████████████████████████████████████████████████████

█████████████████████████████████████████████████████

█████████████████████████████████████████████████████

█████████████████████████████████████████████████████

█████████████████████████████████████████████████████

█████████████████████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

B.    Defendants Have Consented to Jurisdiction Under 18 U.S.C. § 2334(e)(1)(B).

In relevant part, the PSJVTA also provides that a defendant "shall be deemed to have consented to personal jurisdiction" in ATA cases if, after January 4, 2020, the defendant

> (i) continues to maintain any office, headquarters, premises, or other facilities or establishments in the United States; . . . or

> (iii) conducts any activity while physically present in the United States on behalf of the Palestine Liberation Organization or the Palestinian Authority.

18 U.S.C. § 2334(e)(1)(B).  Subparagraph (B) is subject to several exceptions, including:

> (A) any office, headquarters, premises, or other facility or establishment used exclusively for the purpose of conducting official business of the United Nations;

> (B) any activity undertaken exclusively for the purpose of conducting official business of the United Nations; . . . or

> (F) any personal or official activities conducted ancillary to activities listed under this paragraph.

*Id.* § 2334(e)(3).  Defendants have satisfied 18 U.S.C. § 2334(e)(1)(B) by both maintaining a

non-exempt facility and conducting non-exempt activities in the United States.

       1.     <u>Defendants Have Maintained a Non-Exempt Facility in the United States.</u>

████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

████████████████████████████████████████████ Defendants

have consented to jurisdiction under § 2334(e)(1)(B).

      Defendants rely on the exemption in 18 U.S.C. § 2334(e)(3)(A), which provides that a

facility "used exclusively for the purpose of conducting official business of the United Nations"

cannot be considered to determine whether Defendants shall be deemed to have consented to

jurisdiction under the PSJVTA.  Def. Br. 24.  But Defendants have regularly conducted activities

other than the "official business of the United Nations" ████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

███████████████████████████████

███████████████████ is not official business of the United Nations. *See Swarna v. Al-Awadi*, 622 F.3d 123, 134-36 (2d Cir. 2010) ("actions that pertain to [the] household or personal life" of U.N. mission staff, including their interactions with domestic employees, do not qualify as "official acts"). Nor is appearing on MSNBC's "Morning Joe" program or advocating for the Palestinian cause to U.S. college students. Defendants' argument that such activities are ancillary to official U.N. business -- which they are not -- fails ████████████████████ While Section 2334(e)(3)(F) exempts *activities* that are "ancillary" to U.N. business, there is no "ancillary" exemption for Defendants' U.S. *facilities*, which trigger jurisdiction under the PSJVTA unless they are "*specifically* exempted by paragraph (3)(A)," that is, used "*exclusively* for conducting official business of the United Nations." 18 U.S.C. §§ 2334(e)(3)(A), (e)(4) (emphasis added). Defendants thus have consented to jurisdiction under § 2334(e)(1)(B).

      2.    <u>Defendants Conducted Non-Exempt Activities in the United States.</u>

After January 4, 2020, both ███████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

███████████████████ For example, on November 14, 2020, Mansour spoke by videoconference from his office in the Townhouse to a Palestinian-American group. Haker Exh. 259. At the conference, Mansour urged Palestinian-American students "to recognize their own activism in supporting the justice of Palestinians" and "to become even more active especially on light of the arrival of the new administration in Washington DC." *Id.* Mansour told attendees: "You are not foreigners in this country since you are citizens of the United States of America. And don't act like foreigners you should act like everyone in this society." *Id.* ███████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

████████████████████████████████████████████

Defendants also updated their social media accounts ███████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

████████████████████████████████ Haker Exh. 271 (tweet addressing Israeli annexation);

Haker Exh. 267 (re-tweet of PLO Department of Public Policy position statement criticizing

Trump administration's policy); Haker Exh. 278 (tweet circulating petition "to sanction Israel for

breaking international law and committing crimes against humanity"); ██████████████████

████████████████████████████████████████████ Haker Exhs. 268-70, 272-77, 279-

84. ███████████████████████████████████████████████████████

████████████████████████████

These propaganda activities do not come within either of the statutory exceptions that

Defendants invoke. *First*, they were not "undertaken exclusively for the purpose of conducting

official business of the United Nations." 18 U.S.C. § 2334(e)(3)(B). They are exactly the type of

conduct by Defendants' U.N. representatives that the Second Circuit has deemed non-U.N.-related

and therefore jurisdictionally relevant. *See, e.g.*, *Klinghoffer v. S.N.C. Achille Lauro*, 937 F.2d 44,

52 (2d Cir. 1991) (finding non-U.N. activity where Mansour's predecessor periodically spoke "in

public and to the media in New York in support of the PLO's cause" and PLO engaged in "other proselytizing and fundraising activities"), *on remand*, 795 F. Supp. 112, 114 (S.D.N.Y. 1992) ("speeches," "interviews," "media appearances," and distribution of "informational pamphlets" were "sufficiently separate from [PLO's] UN activities that they may be considered in determining" to exercise personal jurisdiction).

*Second*, these propaganda activities do not come within the catch-all exception for "personal or official activities conducted ancillary to activities listed under this paragraph," 18 U.S.C. § 2334(e)(3)(F), because they are not "ancillary" to official U.N. business. Ancillary means "providing necessary support to the essential operations of a central organization." *Fowler's Dictionary of Modern English Usage* at 48 (4th ed. 2015). The Supreme Court's decision in *Wisconsin Department of Revenue v. William Wrigley, Jr., Co.*, 505 U.S. 214 (1992), consistent with that definition, illustrates the meaning of the "ancillary." In *Wrigley*, the Court considered the circumstances in which activities would be ancillary to conduct that covered by a certain tax immunity. *See id.* at 223-30. It held that conduct is "ancillary" only if it "serve[s] no independent business function apart from [its] connection to" the activity that is tax-immune, while conduct that the company "would have reason to engage in anyway" would not be "ancillary." *See id.* at 228-29. Applying *Wrigley*, Defendants' propaganda activities are not ancillary to official U.N. business: they have the obvious independent purpose of influencing U.S. policymakers and the U.S. public on issues of interest to Defendants. Defendants would have reason to engage in these activities even if they had no U.N. business to conduct.

Lacking case law supporting their definition of "ancillary," Defendants resort to a statement by Senator Leahy made *after* the PSJVTA's enactment. *See* Def. Br. 25. But the Supreme Court has recognized that "[a]rguments based on subsequent legislative history . . .

should not be taken seriously." *Sullivan v. Finkelstein*, 496 U.S. 617, 632 (1990) (Scalia, J.,

concurring), *cited with approval in Bostock v. Clayton County*, 140 S. Ct. 1731, 1748 (2020).

Moreover, Defendants' interpretation of "ancillary" would swallow the U.N. exemption

altogether: If meetings with non-U.N. officials, media appearances, public speeches, and the

dissemination of pro-Palestine propaganda are all "ancillary" to official U.N. business, it is

difficult to envision what is *not* "ancillary." *See Capitol Records LLC v. Vimeo, LLC*, 826 F.3d

78, 91 (2d Cir. 2016) ("When a statute sets forth a general principle, coupled with an exception to

it, it is logical to assume, in the face of ambiguity in the exception, that the legislature did not

intend the exception to be so broad as to leave nothing of the general principle."). Defendants

have thus consented to personal jurisdiction under all three prongs of the PSJVTA.

II.     THE PSJVTA DOES NOT VIOLATE DUE PROCESS.

        In arguing that the PSJVTA violates due process, Defendants consistently conflate the

"minimum contacts" necessary to establish jurisdiction with the prerequisites for *consent* to

jurisdiction over certain types of claims. The PSJVTA is a consent statute, and the necessary

prerequisites of fair warning and the reasonable furtherance of a legitimate governmental interest

are easily satisfied here. Thus, Defendants' constitutional challenge to the PSJVTA fails.

        A.     Consent Is a Valid Basis for Personal Jurisdiction.

        Defendants do not dispute that a party may consent to personal jurisdiction in a particular

forum, even in the absence of minimum contacts with that forum. In *Insurance Corporation of

Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694 (1982), the Supreme Court

explained that "the requirement of personal jurisdiction represents first of all an individual right"

that "like other such rights, [can] be waived." *Id.* at 703. The Court further recognized that "[a]

variety of legal arrangements have been taken to represent express or implied consent to the

personal jurisdiction of the court." *Id.* Federal courts have accordingly rejected challenges to the

exercise of personal jurisdiction where a person, through conduct, submits to the court's jurisdiction. *See, e.g., id.* at 704-07 (exercise of personal jurisdiction over defendant as sanction for disobeying discovery order did not violate due process); *Eli Lilly & Co. v. Gottstein*, 617 F.3d 186, 194-96 (2d Cir. 2010) (non-resident non-party "submitted himself to the personal jurisdiction" of the court by aiding and abetting in the violation of a protective order); *Wilmington PT Corp. v. Mitra*, 2021 WL 2333554, at *2 (E.D.N.Y. June 7, 2021) (defendants forfeited jurisdictional defense by agreeing to discovery plan and appearing at status conferences without filing jurisdictional motion).[1]

> B.      The PSJVTA Is a Valid Consent Statute.

Federal legislation specifying the conduct that will be deemed consent to personal jurisdiction need only meet two requirements to satisfy due process. *First*, the statute must provide persons with "fair warning that a particular activity may subject them to the jurisdiction of a foreign sovereign." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985) (alterations and citation omitted).[2] *Second*, there must be a reasonable relationship between the Government's exercise of

---

[1] Thus, where a party has consented to jurisdiction, minimum contacts analysis is irrelevant. *See, e.g., Hawkins v. i-TV Digitalis Tavkozlesi zrt.*, 935 F.3d 211, 228 (4th Cir. 2019) (noting requirement of minimum contacts "unless the party consents to jurisdiction") (citation and quotation marks omitted)); *In re Fairfield Sentry Ltd.*, 627 B.R. 546, 565 (Bankr. S.D.N.Y. 2021) (noting need to show foreign defendant's minimum contacts with U.S. when defendant "has not consented to jurisdiction by filing a proof of claim") (citation and quotation marks omitted)).

[2] The *Burger King* Court recognized that consent is distinct from minimum contacts as a basis for the exercise of personal jurisdiction over non-residents: "Where a forum seeks to assert specific jurisdiction *over an out-of-state defendant who has not consented to suit there*, this fair warning requirement is satisfied if the defendant has purposefully directed his activities at residents of the forum and the litigation results from alleged injuries that arise out of or relate to those activities." *Id.* at 472 (emphasis added) (citations and quotation marks omitted).

power and a "legitimate governmental objective." *County of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998). The PSJVTA satisfies both requirements.[3]

> 1.   The PSJVTA Gave Defendants Fair Warning That Their Conduct
>      <u>Would Make Them Subject to Suit in The United States.</u>

The due process "fair warning" requirement "gives a degree of predictability to the legal system that allows potential defendants to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit." *Burger King*, 471 U.S. at 471 (citation omitted). The PSJVTA provides fair warning.

The PSJVTA expressly prescribes the actions that constitute consent to jurisdiction. 18 U.S.C. § 2334(e)(1). The PSJVTA also provided a 120-day window following adoption before "pay-for-slay" payments would operate as a to consent to jurisdiction, and a 15-day window following adoption before non-exempt facilities and activities on U.S. soil would have that effect. *See* 18 U.S.C. § 2334(e)(1)(A), (B). The PSJVTA also explicitly states that such consent is not to general jurisdiction, but only to jurisdiction in civil ATA cases. *See* 18 U.S.C. § 2334(e). By its plain terms, therefore, the PSJVTA gave Defendants clear and timely warning of the conduct that would be deemed a consent to jurisdiction and the universe of claims on which they could be haled into court. Moreover, Defendants not only tracked the enactment of the PSJVTA but also received written notice of its passage within days of enactment.[4] There is no question that Defendants

---

[3] The United States has taken the position that the PLO and similar entities "do not have constitutional rights." Constitutionality of Closing the Palestine Information Office, 11 Op. OLC 104, 120 & n. 7 (1987). The Second Circuit, however, has held that Defendants are entitled to due process rights. The Second Circuit also has ruled that the Fifth and Fourteenth Amendment due process standards relating to personal jurisdiction are identical. *See Waldman v. Palestine Liberation Org.*, 835 F.3d 317, 329-31, 338 & n.9 (2d Cir. 2016) ("*Waldman I*"). Plaintiffs preserve both of these questions for appeal.

[4] *See* Squire Patton Boggs (US) LLP, FARA Supp. Statement (Dec. 31, 2018), Att. D, https://efile.fara.gov/docs/2165-Supplemental-Statement-20190131-30.pdf (noting counsel for Defendants "advised [the PA] in connection with legal and strategic policy advice and advocacy

voluntarily chose to engage in the conduct described in 18 U.S.C. § 2334(e)(1)(A) and (B), knowing they would have to defend ATA claims in the United States.

Defendants' actions in response to the enactment of the Anti-Terrorism Clarification Act ("ATCA") demonstrate that they are quite capable of structuring their activities to avoid consenting to jurisdiction under a federal statute if they so choose. In December 2018, they informed the United States that they "unambiguously [made] the choice not to accept" the foreign aid assistance that would have subjected them to personal jurisdiction under the ATCA. *See* Haker Exh. 250. Defendants do not dispute that they structured their activities to avoid jurisdiction under the ATCA. *See* Def. Br. 16 n.3. They simply chose differently with respect to the PSJVTA. In short, while the Defendants had ample notice and opportunity to avoid jurisdiction under the PSJVTA, they elected to engage in conduct that they knew would cause them to be subject to personal jurisdiction in civil ATA suits. That is the essence of consent.

In misplaced reliance on *College Savings Bank v. Florida Prepaid Postsecondary Education Expense Board*, 527 U.S. 666 (1999), Defendants further contend that the PSJVTA cannot be valid because "[t]he Supreme Court has recognized in other contexts that legislatively-imposed 'consent' to jurisdiction is *not* knowing and voluntary simply because a statute provides advance notice that certain activities are deemed consent." Def. Br. 9 (emphasis in original). But *College Savings* is easily distinguishable. There, the Court considered whether a constructive waiver would be permitted where doing so would, "as a practical matter, permit Congress" to use

---

on foreign policy and related issues in the U.S. Government," including "developments within the U.S. Congress and the U.S. Administration related to the provision of U.S. aid"); Letter from Tejinder Singh to Hon. Mark J. Langer (Dec. 26, 2019), *Shatsky v. Palestine Liberation Org.*, No. 17-7168 (D.C. Cir. Doc. No. 1821532); *see also Shatsky v. Palestine Liberation Org.*, 955 F.3d 1016, 1038 (D.C. Cir. 2020) (noting Defendants' argument that until the effective date for the payments provision, consideration of the PSJVTA would be "speculative" because Defendants "might never make covered payments").

its powers under Article I of the Constitution to abrogate state sovereign immunity, even though "Congress can abrogate state sovereign immunity only when it legislates to enforce the Fourteenth Amendment," *College Savings*, 527 U.S. at 671, 683-84.[5]

Because state sovereign immunity is a poor analogue to personal jurisdiction, *College Savings* provides no meaningful guidance here. State sovereign immunity is "a fundamental aspect of the sovereignty which the States enjoyed *before* the ratification of the Constitution." *PennEast Pipeline Co., LLC v. New Jersey*, 141 S. Ct. 2244, 2258 (2021) (emphasis added) (citation omitted). Moreover, courts have repeatedly recognized that waivers of sovereign immunity "must be unequivocally expressed," and constructive waiver has "no place" in "sovereign-immunity jurisprudence." *PennEast*, 141 S. Ct. at 2258 (citation omitted); *College Savings*, 527 U.S. at 678 (citation omitted). In contrast, because personal jurisdiction "represents a restriction on judicial power not as a matter of sovereignty, but as a matter of individual liberty," the Court has recognized that "[a] variety of legal arrangements have been taken to represent express or implied consent to the personal jurisdiction of the court." *Bauxites*, 456 U.S. at 702-03. Defendants' challenge to the PSJVTA finds no support in the *College Savings* decision.

2.   The PSJVTA Reasonably Advances Legitimate Government Interests.

Substantive due process protects against arbitrary or irrational exercise of government power. *See Lewis*, 523 U.S. at 845-46. A statute that "neither interferes with a fundamental right nor singles out a suspect classification" need only evince a rational relationship to a legitimate

---

[5] Defendants also rely on *Chen v. Dunkin' Brands, Inc.*, 954 F.3d 492 (2d Cir. 2020), for the proposition that "[m]erely providing advance notice of jurisdictional consequences does not establish free and voluntary consent to jurisdiction, if implying consent would violate other due process limits." Def. Br. 13. But *Chen* addressed a statute that did *not* provide advance notice of jurisdictional consequences and thus does not support Defendants' argument.

government interest to satisfy substantive due process. *Molinari v. Bloomberg*, 564 F.3d 587, 606 (2d Cir. 2009) (quoting *Maloney v. Cuomo*, 554 F.3d 56, 59 (2d Cir. 2009)).[6]

In amending the ATCA's consent provisions through the PSJVTA, Congress advanced legitimate government interests of deterring international terrorism, protecting U.S. citizens abroad, and compensating terror victims. *See, e.g.*, 165 Cong. Rec. S7182 (Dec. 19, 2019) (Sen. Lankford) (bill "strike[s] a balance between Congress's desire to provide a path forward for American victims of terror to have their day in court and the toleration by the Members of this body to allow the PA/PLO to conduct a very narrow scope of activities on U.S. soil"); *id.* (Sen. Grassley) ("By cutting terrorists' financial lifelines, the ATA is a key part of the U.S. arsenal in fighting terrorism and protecting American citizens."). As the Government recently pointed out to another judge of this Court: "Congress enacted, and the President signed into law, the PSJVTA to facilitate providing a meaningful response to international terrorism." Haker Exh. 251 at 10.

Deterring international terrorism, protecting U.S. citizens abroad, and compensating terror victims are legitimate government interests. "[T]he Government's interest in combating terrorism is an urgent objective of the highest order." *Hassoun v. Searls*, 968 F.3d 190, 204 (2d Cir. 2020) (citation omitted). Thus, courts recognize that, when Congress acts to deter international terrorism, it pursues a legitimate government interest. *See, e.g.*, *United States v. Ni Fa Yi*, 951 F. Supp. 42, 45 (S.D.N.Y. 1997) (reasoning that "combating international terrorism[] is undoubtedly a legitimate federal governmental end"). Protecting U.S. citizens and compensating terror victims

---

[6] Defendants do not suggest that the PSJVTA should be afforded any greater scrutiny. Nor could they. "[T]he Court has never indicated that personal jurisdiction implicates a fundamental right." John T. Parry, *Due Process, Borders, and the Qualities of Sovereignty – Some Thoughts on J. McIntyre Machinery v. Nicastro*, 16 Lewis & Clark L. Rev. 827, 853 (2012); *see also* Dustin E. Buehler, *Jurisdictional Incentives*, 20 Geo. Mason L. Rev. 105, 140 (2012) ("[S]ubstantive due process places minimal limitations on the extraterritorial jurisdiction of state courts because a court's assertion of personal jurisdiction does not infringe on fundamental rights").

are also legitimate government interests. *See, e.g., Daliberti v. Republic of Iraq*, 97 F. Supp. 2d 38, 52 (D.D.C. 2000) (state-sponsored terrorism exception to the Foreign Sovereign Immunities Act did not violate Equal Protection Clause because "[t]he distinction made by Congress between those states that have been designated as sponsors of terrorism and those that have not is rationally related to its purpose of protecting U.S. citizens by deterring international terrorism and providing compensation for victims of terrorist acts").

The PSJVTA's provisions are also reasonably related to the legitimate government ends it pursues. Statutes subject to rational basis review are "accorded a strong presumption of validity." *Heller v. Doe*, 509 U.S. 312, 319-20 (1993). "To uphold the legislative choice, a court need only find some 'reasonably conceivable state of facts that could provide a rational basis' for the legislative action." *Beatie v. City of New York*, 123 F.3d 707, 712 (2d Cir. 1997) (quoting *Heller*, 509 U.S. at 712). The PSJVTA satisfies this standard. Congress and the Executive Branch have long placed limitations on the PLO's operations in the United States, taking into account concerns shared by both branches regarding the PLO's historical support for terrorism. *See, e.g.*, 22 U.S.C. §§ 5201(b), 5202. Thus, it is entirely reasonable for the United States to condition the PLO's ability to do so on its consent to personal jurisdiction in civil actions under the ATA.

The payments that are deemed consent under 18 U.S.C. § 2334(e)(1)(A) also bear a reasonable relationship to the waiver of personal jurisdiction. They are made to the family members and designees of terrorists who have killed or injured U.S. nationals, thus implicating the Government's duty to protect Americans abroad. *See Haig v. Agee*, 453 U.S. 280, 299 (1981) (noting Secretary of State's responsibility to protect American citizens traveling abroad). Moreover, Congress has found that Defendants' pay-for-slay payments incentivize the very type of terrorism Congress sought to combat in creating a civil action under the ATA. *See* Taylor Force

Act, Pub. L. No. 115-141, § 1002(1) (Findings) (22 U.S.C. § 2378c-1 note).  Thus, deeming the

conduct described in 18 U.S.C. §§ 2334(e)(1)(A) and (B) to be a consent to personal jurisdiction

in ATA actions advances the government's legitimate interests in deterring international terrorism,

protecting U.S. citizens abroad, and compensating victims of terrorism.

The PJSVTA provides fair warning and is reasonably related to legitimate government

interests, thus satisfying the requirements of due process.

C.    Reciprocity Is Not a Prerequisite for Consent to Personal Jurisdiction.

Defendants do not and cannot dispute that they were given fair warning of the jurisdictional

consequences of their conduct, or that the PSJVTA is reasonably related to a legitimate U.S.

interest.  Instead, Defendants have created, out of whole cloth, a third supposed prerequisite:  The

receipt of a "government 'benefit'" in exchange for consent.  Def. Br. 9.  There is no such

prerequisite, but even if there were, the PSJVTA would satisfy it.

1.    Consent Does Not Require "Reciprocity" To Satisfy Due Process

"[A] voluntary consent to jurisdiction need not be supported by consideration."  *Sun Forest*

*Corp. v. Shvili*, 152 F. Supp. 2d 367, 380 (S.D.N.Y. 2001).  For example, a non-resident non-party

who aids and abets a party in violating a court order obtains no reciprocal benefit from the forum

for engaging in such conduct.  That non-party is nonetheless subject to personal jurisdiction.  *See,*

*e.g., Eli Lilly & Co.*, 617 F.3d at 194-96 (concluding trial court had personal jurisdiction to issue

injunction as to non-resident non-party).  Similarly, a party that refuses "to comply with a

discovery order directed at establishing jurisdictional facts" may be deemed to have submitted to

jurisdiction, even though it has received no reciprocal benefit.  *Bauxites*, 456 U.S. at 695, 704-05.

Valid exercise of jurisdiction based on consent requires no bargain or reciprocity.

This is consistent with courts' assessment of consent when other constitutional rights are

at stake.  Courts do not require reciprocity to deem consent to law-enforcement searches effective.

See, e.g., *United States v. Gomez*, 877 F.3d 76, 98 (2d Cir. 2017).  Nor is reciprocity required for valid consent to the adjudication of rights by non-Article III courts.  *See, e.g., Wellness Int'l Network, Ltd. v. Sharif*, 575 U.S. 665, 674-86 (2015).  Defendants offer no reason why a statute prescribing conduct that operates as a consent to jurisdiction with respect to specific claims requires a departure from these traditional notions of consent.[7]

Defendants' cited authorities demonstrate only that an implied consent statute *may* offer a benefit in exchange for consent to jurisdiction.  For example, in *Hess v. Pawloski*, 274 U.S. 352 (1927), the Supreme Court considered a statute that explicitly provided that "[t]he acceptance by a nonresident of the rights and privileges conferred" by using the state's roads "shall be deemed equivalent" to service of process.  *Id.* at 354 (quoting Mass. Gen. L. ch. 90 (1923)).  The statute considered by the Supreme Court in *Wuchter v. Pizzutti*, 276 U.S. 13 (1928), similarly conditioned the use of the state's roads on consent to service of process, but the Court held the statute unconstitutional because it did not expressly provide for actual notice of the suit to the defendant.  *Id.* at 24-25.  Neither *Hess* nor *Wuchter* considered the question whether a consent-to-jurisdiction statute could be valid without "reciprocity," let alone answered that question in the negative.

Nor does *Armstrong v. Pomerance*, 423 A.2d 174 (Del. 1980), or *Swenson v. Thibaut*, 39 N.C. App. 77 (1978), support Defendants' position.  Because *Swenson* held that the defendant had sufficient minimum contacts with the forum, there was no need for the court to address the validity

---

[7] Defendants' reliance on *College Savings* highlights that their "reciprocity" theory is untethered from the law.  Def. Br. 15.  The *College Savings* Court concluded that Florida did not constructively waive its sovereign immunity against suit under the Lanham Act by participating in interstate commerce, even though Florida *did* receive the reciprocal benefit of participating in interstate commerce.  *College Savings*, 527 U.S. at 680-91; *see also Dennis v. Higgins*, 498 U.S. 439, 449 (1991) (noting that the Commerce Clause "*was* intended to benefit those . . . who are engaged in interstate commerce.").

of a consent statute. *Id.* at 97.[8]  Similarly, the *Armstrong* court applied the minimum contacts test

to conclude that a statute creating jurisdiction over non-resident directors was consistent with due

process. *Armstrong*, 423 A.2d at 176.  Neither case addressed the exercise of personal jurisdiction

pursuant to a consent statute rather than under minimum contacts analysis.

Defendants' citation to cases involving business registration statutes is also unavailing.

The statutes at issue in most of those cases did not expressly provide that registering to do business

in a state would constitute consent to personal jurisdiction.  *See Chen*, 954 F.3d at 499 ("nothing

in the statutory text . . . expressly conditions registration on consent to general jurisdiction in the

state"); *Genuine Parts Co. v. Cepec*, 137 A.3d 123, 142 (Del. 2016) ("[n]othing in the registration

statutes explicitly says that a foreign corporation registering thereby consents to the personal

jurisdiction of this state"); *Am. Dairy Queen Corp. v. W.B. Mason Co.*, 2019 WL 135699, at \*3

(D. Minn. Jan. 8, 2019) (considering statute that subjected foreign corporations to service of

process after registration); *Leonard v. USA Petroleum Corp.*, 829 F. Supp. 882, 886-87 (S.D. Tex.

1993) (same); *In re Mid-Atl. Toyota Antitrust Litig.*, 525 F. Supp. 1265, 1277 (D. Md. 1981)

(considering statute requiring non-resident corporations to designate secretary of state as a process

agent).  The exception, *Brown v. Lockheed Martin Corp.*, 814 F.3d 619 (2d Cir. 2016), addressed

a statute that provided for service of process on non-resident corporations and "appear[ed]

designed to confer what [could] fairly be characterized as specific jurisdiction." *Id.* at 634.  But

absent any dispute as to whether the defendant in *Brown* was subject to specific jurisdiction, the

constitutionality of the statute was not at issue. *Id.* at 622.

---

[8] The *Swenson* court noted that the Supreme Court's decision in *Shaffer v. Heitner*, 433 U.S. 186
(1977), is "susceptible to an interpretation that a 'consent' statute such as [the North Carolina
statute at issue] would be valid on its face." *Id.*

Further, the issue in most of these cases was whether the statutes in question -- unlike the PSJVTA, which involves *only* ATA claims -- subjected the defendant to general jurisdiction on *any* cause of action, "no matter where the matter arose and no matter how limited the state's interest in the dispute." *Brown*, 814 F.3d at 622; *see also Chen*, 954 F.3d at 496; *Genuine Parts*, 137 A.3d at 125-26; *Am. Dairy Queen*, 2019 WL 135699, at *4 (defendant argued Minnesota statute "offers no notice to foreign corporations that they are consenting to general personal jurisdiction when they register"); *Leonard*, 829 F. Supp. at 886. And *Mid-Atlantic Toyota* held only that a *business registration* statute "necessarily incorporates the Due Process 'minimum contacts' requirement." *Id.* at 1278. It did not hold, nor could it, that *all* implied consent statutes *must* include a reciprocal benefit.

Finally, contrary to Defendants' suggestion, the holdings concerning the ATCA in *Waldman v. Palestine Liberation Org.*, 925 F.3d 570 (2d Cir. 2019) ("*Waldman II*"), and *Klieman v. Palestinian Authority*, 923 F.3d 1115 (D.C. Cir. 2019), do not advance their "reciprocity" argument. Def. Br. 14. The *Waldman II* and *Klieman* courts merely held that, because Defendants had not accepted certain types of foreign aid from the United States, or maintained an office in the United States pursuant to a waiver of 22 U.S.C. § 5202 -- the conduct that, under the ATCA, would operate as a consent to personal jurisdiction -- Defendants had not triggered the ATCA's consent provision. *Waldman II*, 925 F.3d at 575; *Klieman*, 923 F.3d at 1128-31. Neither *Waldman II* nor *Klieman* considered (let alone answered) the question whether a consent-to-jurisdiction statute can be valid *only* if it confers some sort of benefit on the defendant. And Defendants incorrectly claim that the Government's amicus brief in *Klieman* "made precisely [their] reciprocity or exchange-of-benefits point concerning . . . the ATCA." Def. Br. 13. In fact, as Defendants' brief reflects, the Government argued in *Klieman* only that

- 21 -

> it was reasonable and consistent with the Fifth Amendment for Congress and the
> Executive to determine that the [PLO's] maintenance of an office in this country
> after a waiver . . ., or the [PA's] continued receipt of certain foreign assistance,
> should be "deemed" consent to personal jurisdiction in civil cases under the ATA.

Def. Br. 23. But that is in no way an argument that due process *requires* reciprocity or benefit in

consent-to-jurisdiction statutes. Rather, as the Government recently pointed out, defending the

constitutionality of the PSJVTA in the *Fuld* case: "to say . . . that it is *reasonable* to deem an

exchange of benefits for conditions as valid consent to personal jurisdiction is far different from

saying that an exchange is *necessary* to consent." Haker Exh. 251 at 15 n.7 (emphasis added).

Defendants offer no authority for the latter proposition.

2.   Even If Reciprocity Were Required, It Is Satisfied Here.

Even if Defendants' proposed "reciprocity" test were grounded in law, the PSJVTA would

satisfy it. With regard to their non-exempt U.S. activities, *see* 18 U.S.C. § 2334(e)(1)(B),

Defendants *did* receive a "benefit" by engaging with the society and economy of the United States.

While Defendants claim that "the Anti-Terrorism Act of 1987 has expressly denied [them] the

'benefit' of operating in the United States," Def. Br. 16, the operative provisions of the 1987 law

were more limited in scope: prohibiting (1) "receiv[ing] anything of value except information

material from the PLO," (2) "expend[ing] funds from the PLO," and (3) "establish[ing] or

maintain[ing] an office, headquarters, premises, or other facilities or establishments within the

jurisdiction of the United States at the behest or direction of, or with funds provided by," the PLO,

22 U.S.C. § 5202. Neither the 1987 law nor the Government's enforcement choices prohibited

Defendants from disseminating propaganda in the United States through speeches, media

interviews, and social media posts. As discussed in section I.B *supra*, Defendants have now taken

that opportunity to engage in non-exempt U.S.-based conduct that falls within the ambit of 18

U.S.C. § 2334(e)(1)(B), and Congress's decision to deem such conduct consent to ATA jurisdiction is entirely consistent with due process.

In a footnote, Defendants suggest that if they exchanged consent under the PSJVTA for a benefit -- as they did for their non-exempt U.S. activities -- then the PSJVTA runs afoul of the unconstitutional conditions doctrine. *See* Def. Br. 18 n.7. Contrary to Defendants' claims, that doctrine does not apply here. The unconstitutional conditions doctrine "vindicates the Constitution's enumerated rights by preventing the government from coercing people into giving them up." *Koontz v. St. Johns River Water Mgmt. Dist.*, 570 U.S. 595, 604 (2013). But not all conditions are prohibited by this doctrine. A government condition does not offend the doctrine so long as (1) there is a "nexus" between the condition imposed and a legitimate government interest and (2) "rough proportionality" between the means and ends. *See id.* at 605-06. The PSJVTA satisfies that test. The scope of consent provided under the PSJVTA is narrow -- applicable only to ATA claims and in furtherance of the legitimate government interests of deterring international terrorism, protecting U.S. citizens abroad, and compensating terror victims. To the extent that Defendants are permitted to operate in the United States, it is reasonable and proportional for the United States to condition their ability to do so on their consent to personal jurisdiction in civil actions under the ATA.[9]

### D.  Defendants' Fallback Arguments Lack Merit.

Defendants offer an assortment of fallback arguments that are equally unpersuasive.

*First*, relying principally on *Daimler v. AG Bauman*, 571 U.S. 117 (2014), Defendants posit that upholding the PSJVTA "would swallow the 'minimum contacts' test." Def. Br. 19-21. But

---

[9] The PSJVTA is thus easily distinguishable from the Pennsylvania statute that the district court invalidated in *Sullivan v. A.W. Chesterton, Inc.*, 384 F. Supp. 3d 532 (E.D. Pa. 2019), under which non-resident corporations, by registering to do business in the state, consented to *general* jurisdiction. *See id.* at 539.

that argument boils down to an assertion that consent jurisdiction statutes must be based on minimum contacts -- a proposition that, if endorsed, would effectively eliminate consent as a basis for personal jurisdiction.  Moreover, *Daimler* did not affect the exercise of personal jurisdiction on the basis of consent.  Rather, "*Daimler* confirms that consent to jurisdiction is an alternative to the minimum contacts analysis discussed in that case."  *Acorda Therapeutics Inc. v. Mylan Pharms. Inc.*, 817 F.3d 755, 769 (Fed. Cir. 2016) (O'Malley, J., concurring)); *see also Forest Lab'ys, Inc. v. Amneal Pharms. LLC*, 2015 WL 880599, at *13 (D. Del. Feb. 26, 2015) ("in the one instance in which Daimler mentions consent to jurisdiction -- in the context of a discussion regarding general jurisdiction -- it does so to distinguish the concept of consent from the circumstances relevant to its decision"), *report and recommendation adopted*, 2015 WL 1467321 (D. Del. Mar. 30, 2015).[10]

*Second*, Defendants' argument that the PSJVTA violates separation of powers because it undercuts prior judicial decisions is meritless.  *See* Def. Br. 22-24.  The PSJVTA did not purport to alter prior decisions considering whether the PA and the PLO have sufficient minimum contacts with the United States, or whether they met the factual predicates for consent under the ATCA. Rather, the PSJVTA creates new deemed-consent criteria for the courts to apply for the first time and is thus a proper exercise of legislative power.  Congress may always supply a "new legal standard effectuating the lawmakers' reasonable policy judgment." *Bank Markazi v. Peterson*, 136

---

[10] Defendants imply that Congress's authority to create personal jurisdiction (adjudicative jurisdiction) is more limited than its authority to legislate (prescriptive jurisdiction).  *See* Def. Br. 21 n.8.  The authorities Defendants cite in support of this assertion merely stand for the banal proposition that whether a statute has extraterritorial reach and whether a U.S. court has personal jurisdiction over a defendant are two separate inquiries, and due process concerns govern the latter. *See, e.g., Litecubes, LLC v. N. Light Prod., Inc.*, 523 F.3d 1353, 1363 (Fed. Cir. 2008) (acknowledging "[i]f Congress has extended a cause of action to reach extraterritorial activity, there is no independent bar to the federal courts adjudicating such extraterritorial disputes, providing a court has personal jurisdiction over defendants").

S. Ct. 1310, 1326 (2016). Statutes properly exercise legislative power if they "[leave] for judicial determination whether any particular actions [fall within] the new prescription." *Id.* "Applying laws implementing Congress' policy judgments, with fidelity to those judgments, is commonplace for the Judiciary," *id.*, and setting forth a new basis for courts to consider in evaluating whether the exercise of personal jurisdiction over Defendants in civil ATA actions is proper does not violate the separation of powers.

*Finally*, Defendants claim that exercising jurisdiction over them would offend traditional notions of fair play and substantial justice. *See* Def. Br. 21-22. But at the time of the suit-related conduct in this case, courts routinely held Defendants subject to jurisdiction for committing acts of terror outside the United States similar to the one at issue in this case. *See, e.g., Ungar v. Palestinian Auth.*, 153 F. Supp. 2d 76, 88 (D.R.I. 2001); *Klinghoffer*, 795 F. Supp. at 114. More recent decisions declining to exercise jurisdiction over Defendants reflect re-evaluations of the minimum contacts analysis in light of *Daimler*. *See, e.g., Waldman I*, 835 F.3d at 325-26 (explaining Defendants had moved for reconsideration of their motion to dismiss for lack of personal jurisdiction after *Daimler*); *Klieman*, 923 F.3d at 1119 (same). But there is nothing unfair, or inconsistent with notions of substantial justice, in requiring Defendants to answer in the United States for an ATA claim that presupposes conduct that injured or killed Americans. The PSJVTA does nothing more.

Conclusion

For all of the foregoing reasons, Plaintiffs respectfully request that the Court deny Defendants' motion to dismiss for lack of personal jurisdiction.

Dated: New York, New York
       October 4, 2021

Respectfully submitted,

Cohen & Gresser LLP


By: _____ */s/ Stephen M. Sinaiko* _____
            Stephen M. Sinaiko
            Oliver Haker
            Eszter A. Vincze
       800 Third Avenue
       New York, New York   10022
       (212) 957-7600
       *ssinaiko@cohengresser.com*
       *ohaker@cohengresser.com*
       *evincze@cohengresser.com*

       Melissa H. Maxman (admitted *pro hac vice*)
       Ronald F. Wick (admitted *pro hac vice*)
       2001 Pennsylvania Avenue, NW
       Suite 300
       Washington, D.C.   20006
       (212) 851-2070
       *mmaxman@cohengresser.com*
       *rwick@cohengresser.com*

       Attorneys for Plaintiffs