# LOWELL DECL. EX. 96b

# Original



בתי המשפט



בפני הרכב:

כב' השופטת שרה סירוטה, ס.נ.- אב"ד
כב' השופט אברהם  טל
כב' השופט ד"ר עמירם בנימיני

מדינת ישראל                                    **המאשימה**

המחלקה לעניינים פליליים, בטחוניים
ועניינים מיוחדים בפרקליטות המדינה
ע"י ב"כ עוה"ד ד. חן, ר. חזן, א. בר-נתן

- נ ג ד -

מרואן בן חטיב ברגותי                           **הנאשם**

יליד 1959, ת.ז. 959251745
מרמאללה (במעצר מיום 15.4.02)
ע"י הסניגוריה הציבורית

# הכרעת – דין

Gilmore 00601

SHATSKY-009286



# בתי המשפט



**בית המשפט המחוזי בתל-אביב-יפו**    תפ"ח 1158/02

# תוכן - עניינים

**חלק ראשון: מבוא**    עמ' 2

**חלק שני: מסכת הראיות**    עמ' 6

**א.  הפת"ח הותנים וגדודי חללי אלאקצא כאירגוני טרור**    עמ' 6

**ב.  מעמדן של הנאשם ותפקידיו בארגוני הטרור, ותמיכתו בפיגועים**
**כנגד ישראל**    עמ' 8

**ג.  עדויותיהם של פעילי הטרור מהפת"ח בדבר קשריהם עם הנאשם**

מעורבותם בפיגועים שביצעו והתייחסות הנאשם בחקירתו לעדויות אלו עמ' 16

(1) נאצר עויס .......................................................... עמ' 16

(2) נאצר נאג'י אבו חמיד .......................................... עמ' 20

(3) אחמד ברגותי .................................................... עמ' 22

(4) מוחמד מצלח (אבו סטחה)...................................... עמ' 27

(5) ג'מאל אחויל.................................................... עמ' 27

(6) נאצר א-שויש.................................................... עמ' 28

(7) עלי עיאדיה...................................................... עמ' 30

(8) איסמעיל רדאידה, מוהנד אבו חלאוה וכמאל אבו ועד............... עמ' 30

(9) נאסר (חלום) נאג'י אבו חמיד.................................... עמ' 34

(10) זיאד חמודה.................................................... עמ' 34

(11) ריאד עמור.................................................... עמ' 35

(12) נאצר חאג'י.................................................... עמ' 35

(13) תחריר ברגותי.................................................. עמ' 36

(14) אחמד מוצפר.................................................. עמ' 37

(15) שריף נאג'י.................................................... עמ' 37

(16) אמיד אבו רדאחה.............................................. עמ' 38

(17) אשרף ג'יאבר.................................................. עמ' 39

Gilmore 00602

SHATSKY-009287



בתי המשפט



בית המשפט המחוזי בתל-אביב-יפו          תפ"ח 1158/02

ד.  **דברי הנאשם בחקירתו וראיות נוספות בדבר תפקידו ומעורבותו בפיגועים**
    **נגד ישראל** .............................................................. עמ' 40

(1)  אחריותו של הנאשם לפעילות חוליות הטרור ומידת
     שליטתו בהן ............................................................... עמ' 40

(2)  מעורבותו האישית של הנאשם בפיגועי הטרור שבוצעו
     חוליות שתחת פיקודו ...................................................... עמ' 44

     (אא) הפיגוע בתחנת הדלק בגבעת זאב.................................... עמ' 47

     (בב) רצח הנזיר היווני במעלה אדומים................................... עמ' 48

     (גג) הפיגוע במסעדת "סי פוד מרקט" בתל-אביב.......................... עמ' 48

     (דד) ניסיון לפיגוע ליד קניון מלחה בירושלים............................ עמ' 49

(3)  אספקת כספים ואמל"ח לשם ביצוע פיגועי טרור...................... עמ' 49

(4)  סיוע למבוקשים ולמשפחות העצורים והחללים........................ עמ' 51

(5)  גיוס פעילים לארגוני הטרור והדרכתם................................. עמ' 52

(6)  קריאותיו הפומביות של הנאשם לבצע פיגועים כנגד ישראל...... עמ' 53


ה.  **הקשר של הנאשם לפיגועים נשוא כתב האישום** ...................... עמ' 56

(1)  רצח טליה ובנימין כהנא ז"ל ליד עפרה........................... עמ' 56

(2)  רצח עקיבא פשקוס ז"ל באזור התעשיה בעטרות..................... עמ' 57

(3)  רצח הנזיר היווני ציפוקטסיס גרמנוס ז"ל במעלה אדומים........ עמ' 59

(4)  רצח יניב ושרון בן שלום ז"ל ודורון יוסף סוורי ז"ל בכביש 443 ..עמ' 59

(5)  רצח מאיר וייזבוייז ז"ל בכביש מס' 9 בירושלים..................... עמ' 61

(6)  רצח אליהו כהן ז"ל בפיגוע ירי בכביש 443 ליד גבעת זאב......... עמ' 62

(7)  רצח יואלה חן ז"ל ליד תחנת דלק גבעונים בכביש 443.......... עמ' 63

(8)  רצח 6 אנשים באולם השמחות "ארמון דוד" בחדרה............... עמ' 64

(9)  רצח שתי נשים בפיגוע ירי ברחוב יפו פינת לונץ בירושלים....... עמ' 66

(10) פיגוע ירי בשכונת נוה-יעקב בירושלים בו נהרגה השוטרת גלית
     ארביב ז"ל................................................................. עמ' 66

(11) רצח גד רגיאן ז"ל במפעל בשקביץ בעטרות....................... עמ' 69

(12) הפיגוע במסעדת "סי פוד מרקט" בתל אביב......................... עמ' 70

Gilmore 00603

SHATSKY-009288





בתי המשפט

בית המשפט המחוזי בתל-אביב-יפו                    תפ"ח 1158/02

(13) פיגוע ירי במלון "ג'רמי" בנתניה ................................................................... עמ' 72

(14) רצח קונסטנטין דנילוב ז"ל בבאקה אלע'רביה ..................................... עמ' 73

(15) פיגוע ירי בין עטרת לביר-זית ...................................................................... עמ' 74

(16) ניסיון פיגוע בפאב "ביאנקיני" בירושלים .............................................. עמ' 75

(17) פיגוע ירי בכביש 9 ליד הגבעה הצרפתית בירושלים ................... עמ' 77

(18) ניסיון לפיגוע התאבדות בבית חנינא בירושלים .......................... עמ' 78

(19) פיגוע ירי בכביש בית אל- פסגות ............................................................ עמ' 78

(20) ניסיון פיגוע בקניון מלחה בירושלים ................................................ עמ' 79


חלק שלישי: הערכת הראיות ומשקלן                                         עמ' 81


חלק רביעי: ניתוח משפטי ומסקנות                                          עמ' 92

1.   פעילות וחברות בארגון טרוריסטי                                         עמ' 92

2.   אחריותם של מבצע בצוותא, משדל ומסייע והאבחנה ביניהם        עמ' 94

    א. מבצע בצוותא לעומת מסייע ...................................................................... עמ' 96

    ב. עבירת הסיוע ....................................................................................................... עמ' 104

    ג. עבירת השידול והאבחנה בין מבצע בצוותא למשדל ................. עמ' 112

    ד. אחריותו של מנהיג חבורה עבריינית כמבצע בצוותא או כמשדל... עמ' 117


3.   מסקנות בעניין אחריותו של הנאשם כמבצע בצוותא, משדל ומסייע    עמ' 123

    א. פיגוע הרצח בתחנת הדלק בגבעת זאב ................................................ עמ' 135

    ב. רצח חזניר הזווגי ציפוקטקיס גרמונט ז"ל במעלה אדומים ........ עמ' 136

    ג. פיגוע הרצח במסעדת "סי פוד מרקט" בתל אביב ........................ עמ' 138

    ד. ניסיון פיגוע ליד קניון מלחה בירושלים ............................................. עמ' 139


חלק חמישי: סיכום                                                        עמ' 139



בתי המשפט

בית המשפט המחוזי בתל-אביב-יפו



הכרעת – דין

חלק ראשון : מבוא

1. בתאריך 14.8.2002 הוגש נגד הנאשם כתב-אישום, המייחס לו מספר עבירות של רצח בכוונה תחילה לפי סעיף 300(א)(2) לחוק העונשין, התשל"ז-1977 (להלן: "חוק העונשין"); סיוע לרצח לפי סעיף 300(א)(2) ביחד עם סעיף 31 לחוק העונשין; שידול לרצח לפי סעיף 300(א)(2) יחד עם סעיף 30 לחוק העונשין; ניסיון לרצח לפי סעיף 305(1) לחוק העונשין; קשירת קשר לביצוע פשע לפי סעיף 499 לחוק העונשין; פעילות וחברות באירגון טרור לפי סעיפים 2 ו-3 לפקודת מניעת טרור, התש"ח-1948.

2. כתב-האישום מייחס לנאשם שותפות, אירגון וביצוע של פעולות-טרור כנגד מטרות ישראליות, אשר החלו בספטמבר 2000 במסגרת אירועים המכונים "אינתיפאדת אלאקצא" (להלן: "האינתיפאדה"). על-פי הנטען בכתב-האישום, עמד הנאשם בראש אירגוני-טרור באיזור יהודה ושומרון (איו"ש): אירגון ה"פתח" (להלן: "הפתח"), אירגון ה"תנזים" השייך לפתח (להלן: "התנזים") ואירגון "גדודי חללי אלאקצא", הכולל התארגנויות של פעילי טרור של התנזים שביצעו פעולות טרור כנגד מטרות ישראליות (להלן: "גדודי חללי אלאקצא"). הנאשם היה זה שתיאם וקישר בין גורמי השטח והבכירים בשלושת האירגונים הנ"ל (כולם יחד יכונו להלן: "אירגוני הטרור"), אשר היו אחראים לביצוען של פעולות-טרור נגד מטרות ישראליות.

כתב האישום מפרט את שמותיהם של שמונה פעילי טרור בכירים, שפעלו תחת הנהגתו של הנאשם בביצוע פעולות הטרור, והם נאסר עויס (להלן: "עויס"), אחמד ברגותי, נאצר אבו חמיד (להלן: "אבו חמיד"), ראא'ד כרמי (להלן: "כרמי"), מהנד דיריה (אבו חלאווה) (להלן: "מהנד"), מחמד מצלח (אבו סטחה) (להלן: "אבו סטחה"), מנצור שרים (להלן: "שרים") ומחמוד טיטי (להלן: "טיטי").

Gilmore 00605
SHATSKY-009290

2




בתי המשפט

בית המשפט המחוזי בתל-אביב-יפו



הנאשם ומפקדי השטח גייסו פעילים לאירגוני הטרור, הפעילו אותם ודאגו לספק להם אמצעי לחימה (אמל"ח) וכסף. הנאשם עסק גם בהכשרת פעילי הטרור למטרתם ובגיוס כספים לאירגוני הטרור. כמו כן שידל הנאשם ועודד את פעילי הטרור לבצע פיגועים כנגד מדינת ישראל באמצעי התקשורת, בכינוסים שונים ובאמצעות הפצת כרוזי הסתה.

כתב-האישום מייחס לנאשם בסעיפים 8-15 מעורבות ואחריות לבצע 37 פיגועים ופעולות-טרור, אשר בוצעו ברובם בתחומי מדינת-ישראל על-ידי מפקדי השטח והפעילים בחודשים דצמבר 2000 ועד אפריל 2002, ושבהם קופחו חייהם של רבים מאזרחי מדינת-ישראל וחיליה, ונפצעו רבים אחרים. חלק ממעשי הטרור מפורטים בכתב האישום, ורובם מפורטים רק בנספח לכתב האישום.

3.      ראיות התביעה כוללות את עדויותיהם של אנשי מערכת הביטחון, חוקרי השב"כ ואנשי המשטרה שעסקו בחקירת הנאשם; עדויותיהם של אזרחים וגורמים אחרים שהיו עדים לפיגועים נשוא כתב האישום; מסמכים שנתפסו על ידי צה"ל במשרדי הפת"ח ובמשרדו של הנאשם; חוות דעת של מומחים ממערכת הביטחון בעניין פעילות ארגוני הטרור ומעמדו ותפקידו של הנאשם בהם; עדויותיהם של פעילים בארגוני הטרור והדברים שמסרו בחקירתם בשב"כ ובמשטרה; אמרות הנאשם שהעידו על ידי אנשי השב"כ בדו"חות כתובים, ואשר חלקם הוקלטו ותומללו; דברים שאמר הנאשם למדובבים שהוכנסו לתאו במהלך חקירתו ולמקורבו אחמד ברגותי שנעצר עמו; דברי הנאשם בכלי התקשורת לפני מעצרו, והודעות הנאשם במשטרה.

תמלילי חקירתו של הנאשם בשב"כ הוגשו על ידי חוקרי השב"כ שניהלו את החקירה שהוקלטה וזיהו את קולו של הנאשם בה ("מופזי" בעמ' 58, "נדב" בעמ' 79, "סמיות" בעמ' 86-85 ו"ידני" בעמ' 90). שיחתו של הנאשם עם אחמד ברגותי הוגשה על ידי החוקר "רוברטי" (עמ' 65). הקלטות מחקירת הנאשם ומחקירת המדובבים פלוני 1 ופלוני 3 תומללו על ידי נתן בסו (עמ' 174).

Gilmore 00606
SHATSKY-009291

3





בתי המשפט

תפ"ח 1158/02                                  בית המשפט המחוזי בתל-אביב-יפו

חוקרי השב"כ שהעידו אישרו את נכונות הכתוב בזכ"דים שרשמו במהלך חקירתו של
הנאשם (זכ"דים ת/6 - ת/96). מדובר בדו"חות שנרשמו בעברית לגבי חקירה שהתנהלה
בערבית ובערבית (הנאשם דובר עברית טובה), בהם נרשמו עיקרי הדברים שנאמרו על ידי
הנאשם (ראה החוקר "סטיב" בעמי 53, החוקר "אמילי" בעמי 55 והחוקר "רון" בעמי 60).

4.     אשר להודעות הנאשם במשטרה, הרי שהנאשם הודיע בכל חקירותיו במשטרה -
בניגוד לדרך בה נהג בעת חקירותיו בשב"כ - כי הוא כופר בזכותה של המשטרה לחקור
אותו, ולכן סירב לענות על שאלות החוקרים (ראה הודעות ת/99-ת/109). לפיכך, הודעותיו
של הנאשם כוללות שאלות רבות שהוצגו לו על ידי החוקרים, וסירובו להשיב עליהן.
במקרים בודדים ביותר התייחס הנאשם בקצרה לדברים שאמר לו החוקר, ובהזדמנויות
אלו הכחיש לחלוטין את כל הטענות שהוצגו לו - גם אלה בהם הודה בחקירתו בשב"כ.
הנאשם הכחיש כי היה מנהיגם של גדודי חללי אלאקצא והתנזים (הודעה ת/101 עמי 6,
הודעה ת/105 עמי 2, הודעה ת/106 עמי 3); הכחיש כי הכיר את פעילי הטרור שהעידו כי
היו בקשר עמו (כפי שיפורט להלן), ואפילו הכחיש כי הכיר את ראיד כרמי (ת/104 עמי 8).
כל אלו הוכחו, כפי שיבואר להלן, לא רק מפי פעילי השטח, אלא גם מפי הנאשם עצמו,
מהמסמכים שנתפסו במשרדו, אשר הנאשם הכחיש בחקירתו כל קשר אליהם, וטען כי
כתב ידו לא מופיע עליהם (ראה הודעות ת/108-ת/109).

הודעותיו של הנאשם הוגשו על ידי החוקרים דוד זריהן ורפי נוריאל (עמי 113, 38), אשר
הסבירו כי הנאשם סירב לחתום על האזהרה ועל ההודעה, וכי הוא נחקר בעברית. זריהן
אף העיד כי הנאשם סירב למסור טביעת אצבע ולהצטלם. הנאשם אמר באופן כללי
בהודעתו ת/106 כי כל ההאשמות כנגדו אינן נכונות, וכי הוא חף מכל אשמה.

5.     בפתח משפטו העלה הנאשם טענות מקדמיות הנוגעות לסמכות בית משפט זה
לשפוט אותו, ואלה נדחו בהחלטת בית המשפט מיום 19.01.03 (עמי 1-34 לפרוטוקול).
הנאשם בחר שלא להסתייע בשירותי סניגור, ואף דחה נמרצות ובעקביות כל ניסיון של
בית המשפט לשכנעו להיעזר בסניגוריה הציבורית או בסניגור מטעמו.

Gilmore 00607

SHATSKY-009292

4




בתי המשפט

<u>בית המשפט המחוזי בתל-אביב-יפו</u>

בית המשפט הטיל אמנם על הסניגוריה הציבורית לייצג את הנאשם, חרף בקשותיה
החוזרות ונשנות להשתחרר מייצוגו, ולמעשה היא מייצגת את הנאשם גם כיום ונכחה בכל
הדיונים. ואולם הסניגוריה הציבורית בחרה להיעתר לבקשת הנאשם שלא להעלות טענות
כלשהן מטעמו במהלך המשפט, לרבות טענות משפטיות, ואף לא לחקור את העדים.

כך התנהל ההליך על פי בחירתו של הנאשם, אשר ממשיך לכפור בסמכות בית המשפט
לשפוט אותו. בנסיבות אלו בחר הנאשם גם שלא להגיב על כתב האישום. כמו כן נמנע
הנאשם מלהעיד בעצמו או להביא עדים מטעמו. עם זאת, הנאשם הגיב מידי פעם על דברי
העדים או על טענות שטענה ב"כ המאשימה במהלך הדיון, ודבריו נרשמו בפרוטוקול
כלשונם. בנוסף הגיב הנאשם על סיכומי התביעה בעל פה (שהוגשו גם בכתב), בנאום
סניגוריה שנשא במסגרת הסיכומים בעל פה, ואשר לא התייחס לגופן של ההאשמות
שהועלו כנגדו. למותר לציין כי הנאשם קיבל בעצמו, ובאמצעות הסניגוריה הציבורית, את
כל חומר הראיות, הפרוטוקולים והסיכומים.

6.     העבירות נשוא כתב האישום הן ברובן "עבירות פנים" הנוגעות לפיגועים שבוצעו
בישראל, וחלקן "עבירות חוץ", שבוצעו בתחומי האיזור (קרי: יהודה ושומרון). ואולם,
כפי שהבהרנו בהחלטה שניתנה בנוגע לטענותיו המקדמיות של הנאשם, מוסמך בית משפט
בישראל לדון בעבירות חוץ כנגד בטחון המדינה, או נגד אזרח או תושב ישראלי, יהא מקום
ביצוע העבירה אשר יהא (סעיף 13(א)-(ב) לחוק העונשין, תשל"ז-1977). זו היא אותה
"תחולה פרוטקטיבית", אשר נועדה להגן על אזרחים ותושבים ישראלים כנגד פעולות
טרור הנעשות בחסות ובגיבוין של מדינות אחרות (ש"ז פלר, מ. קרמניצר, <u>יוגובה לחיבור</u>
<u>בגנות התחולה הנצינונלית של דיני העונשין</u>, פלילים ה1 (1996) 65, בעמ' 83, והשווה דעתו
של י. שרר, שם בעמ' 5). עוד נפסק בהחלטה שניתנה בטענותיו המקדמיות של הנאשם, כי
לא נראה שהתנאים הקבועים בסעיף 14(ב) לחוק העונשין רלבנטיים למקרה זה, אם הם
חלים כלל על הסמכות הפרוטקטיבית שבסעיף 13 לחוק (להבדיל מהסמכות הפרסונלית
שבסעיף 14), שכן הרשות הפלסטינאית איננה מדינה. העבירות המיוחסות לנאשם בכתב
האישום הן עבירות כנגד בטחון המדינה, כנגד אזרחיה ותושביה, ועל כן הן נופלות
במסגרת סעיף 13 לחוק העונשין, ובית משפט זה מוסמך לדון בהן.

Gilmore 00608

SHATSKY-009293

5



בתי המשפט



בית המשפט המחוזי בתל-אביב-יפו            תפ"ח 02/1158

חלק שני :    מסכת הראיות

א.    הפת"ח, התנזים וגדודי חללי אלאקצא כאירגוני טרור

7.    ראש חטיבת המחקר באגף המודיעין של צה"ל, תא"ל י. קופרווסר, הגיש במהלך עדותו (עמ' 38) חוות דעת בה התייחס לפעילותם של הפת"ח, התנזים וגדודי חללי אלאקצא (ת/1). אל חוות הדעת צורפו מסמכי שלל שנתפסו על ידי צה"ל במבצע "חומת מגן" הנוגעים לעניין זה. הפת"ח (ראשי תיבות בערבית של "התנועה לשחרור פלסטין") דגל מאז יסודו על ידי יאסר ערפאת בשנת 1959 במאבק מזוין כנגד ישראל, אשר התבטא בביצוע פיגועי טרור נגד יעדים ישראליים בארץ ובחו"ל. לאחר חתימת הסכמי אוסלו נדחק עיקרון "המאבק המזוין" למקום משני, אך נותר כאופציה להשגת מטרות הארגון במקרה שהמו"מ עם ישראל לא יצלח. עם פרוץ האינתיפאדה השניה בחודש ספטמבר 2000, הוביל הפת"ח את פיגועי הטרור בשטחים, וזאת באמצעות שתי ועדות עליוניות המנהלות את הפעילות - האחת באזור יהודה ושומרון, והשניה באזור רצועת עזה. בראש הוועדה העליונה של אזור יהודה ושומרון עמד הנאשם עד ליום מעצרו (סעיפים 3-1 לחוו"ד).

הדרג המבצע של הפת"ח כלל את פעילי השטח של התנועה - התנזים (ארגון - בערבית). פעילי התנזים מהווים את חוד החנית בפעילות החבלנית של הפת"ח כנגד ישראל. גדודי חללי אלאקצא הוא שם כיסוי להתארגנויות טרור של הפת"ח, אשר נוטלות אחריות פומבית למעשי הטרור. אנשי "הגדודים" הם למעשה פעילים של הפת"ח, כאשר מרבית ההתארגנויות רואות באנשם מקור סמכות מרכזי לפעילותם (סעיפים 5-4 לחוו"ד).

התנזים וגדודי חללי אלאקצא מהווים, על פי חוות דעתו של תא"ל קופרווסר, את הזרוע הצבאית הבלתי ממוסדת של הפת"ח, שבראשה עמד הנאשם. מסמך שלל המצורף כנספח א' לחוו"ד של תא"ל קופרווסר הוא מכתב החתום בידי הפת"ח וגדודי חללי אלאקצא גם יחד.

Gilmore 00609

SHATSKY-009294

6



בתי המשפט



<u>בית המשפט המחוזי בתל-אביב-יפו</u>                    תפ"ח 1158/02

מסמכי שלל אחרים שצורפו לחוות הדעת מראים כי גדודי חללי אלאקצא פונים בבקשה
לסיוע כספי מיאסר ערפאת (מסמך 2), וכי הפת"ח וגדודי חללי אלאקצא חתומים על
כרוזים המשבחים פעילות טרור שבוצעה בתחומי ישראל (מסמכים 3, 5). במסמך 6 שצורף
לחוו"ד, ואשר נשלח ביום 8.5.01 מאת גדודי חללי אלאקצא אל הנאשם, מופיע פירוט
פעילותם של גדודי חללי אלאקצא במחוז ג'נין (כולל פיגוע באום אלפאחם), ובקשה לסיוע
באמצעי לחימה וכסף לשם המשך הביצוע של פעילות זו. מסמכים אחרים של גדודי חללי
אלאקצא שהופנו ליאסר ערפאת, כוללים בקשות לסיוע למבוקשים הנרדפים על ידי
ישראל ולמשפחות החללים (נספח ב' ומסמכים 2-4 לנספח זה). חלק מן המסמכים נכתבו
על ידי הנאשם. יצויין כי כינויו של הנאשם היה, על שם בנו הבכור, "אבו אלקסאם"
(הודעת הנאשם ת/107 עמ' 1, והדרך בה פנה אחויל אל הנאשם בעמ' 164).

8.     על פי חוות דעתו של תא"ל קופרווסר ביצעו אנשי הפת"ח למעלה מ- 1,200 פיגועים
כנגד ישראל (נכון ליום 18.8.02), בהם נהרגו 176 ישראלים ונפצעו רבים אחרים. פיגועים
אלו כוללים התאבדות, וירי ממרגמות ונשק קל. במהלך האינתיפאדה עברו התארגנויות
הטרור של הפת"ח יותר ויותר לביצוע פיגועי התאבדות בתחומי ישראל (סעיף 5 לחוו"ד).
בחודשים שקדמו למבצע "חומת מגן" ביצעו גדודי חללי אלאקצא פיגועי התאבדות
בחדרה, ירושלים, תל אביב, מחולה, מחנה 80, מחסום מכבים, נתניה, אשדוד, כפר סבא
ואפרת, ובעקבות כך הוכנסו לרשימה האמריקאית של ארגוני הטרור ביום 27.3.02 (סעיף
10 לחוו"ד ונספח ג' המפרט את פיגועי ההתאבדות שבוצעו על ידי תנועת הפת"ח).

9.     לגבי חוות הדעת של תא"ל קופרווסר יש לומר, כי מבחינת דיני הראיות איננו
רשאים להסתמך על הערכות ומסקנות מודיעיניות אשר מבוססות על מקורות מידע שונים
שלא הובאו בפני בית המשפט, בהיותם עדות שמיעה. נוכל לסמוך על חוו"ד זו רק במידה
שהיא תואמת ראיות קבילות אחרות שהובאו בפנינו. אולם, פעילות הטרור הנתונה הפת"ח
של שלושת הארגונים הנ"ל עולה בבירור מראיות ישירות רבות שהובאו במשפט, כולל
הודאות שמסרו בחקירותיהם הנאשם ופעילי הטרור, כפי שיפורט בהמשך הכרעת הדין.

Gilmore 00610

SHATSKY-009295

7



בתי המשפט



**בית המשפט המחוזי בתל-אביב-יפו**　　　　תפ"ח 1158/02

נאצר אבו חמיד, שהיה אחד ממפקדי השטח הבכירים ביהודה ושומרון, סיפר בהודעתו
במשטרה (ת/149(א)), בעמ' 2-3, 8-7, 17-13), על הקמת גדודי חללי אלאקצא ביום 1.1.01,
על מנת שיהוו מיליציה של הפת"ח, ויבצעו פיגועים כנגד מתנחלים וחיילי צה"ל. הוא
מפרט בהודעתו הנ"ל (וכן בהודעתו ת/149 (ג)) את הפיגועים שבוצעו על ידו וע"י אנשיו
כנגד מטרות אזרחיות וצבאיות של ישראל, תחת הנהגתו ובסיועו של הנאשם (כפי שיפורט
בהמשך).

10.　　גם מדברים שאמר הנאשם בחקירתו, וממסמכים שנכתבו בכתב ידו, ניתן ללמוד
על פעילותם של ארגוני הטרור הנ"ל. הנאשם הסביר את דרך פעולתן של החוליות המכונות
"גדודי חללי אלאקצא", שלדבריו ביצעו "פעילות צבאית" (ת/19 סעיף 14, שהוגש ואושר
על ידי החוקר "מופ7" בעמ' 58). כך גם הסביר הנאשם בחקירתו את הדרך שבה נוצרו
גדודי חללי אלאקצא באזור יהודה ושומרון, ופעלו בצורה מפוזרת, וטען כי הפת"ח לא
פיקח על פעילותם ; אך הוא הודה כי חוליות אלו פנו אליו לקבלת כסף, משום שראו בו
"אחראי של פת"ח בגדה המערבית" (תמליל ת/98 (ה) עמ' 60-61). כפי שיבואר בהמשך,
הפנו פעילי הטרור מגדודי חללי אלאקצא את בקשותיהם לסיוע כספי לשם רכישת נשק
וביצוע פיגועים אל הנאשם, והלה היה פונה בשמם ועבורם אל יו"ר הרשות הפלסטינאית
ומנהיג הפת"ח, יאסר ערפאת. מכאן ברור הקשר של גדודי חללי אלאקצא לארגון הפת"ח,
והקשר של הנאשם לגדודים אלו.

## ב.　　מעמדו של הנאשם ותפקידיו בארגוני הטרור, ותמיכתו בפיגועים כנגד ישראל

11.　　תא"ל קופרווסר הגיש בעדותו חוו"ד נוספת, המתייחסת למעורבותו של הנאשם
בטרור (ת/2). לחוו"ד זו צורפה שורה של נספחים הכוללים ראיונות עם הנאשם באמצעי
התקשורת השונים וממסמכים שכתב הנאשם או שנמצאו במשרדו. גם חוות דעת זו כפופה
להערה שפורטה בסעיף 9 לעיל, בנוגע לקבילותן של הערכות מודיעיניות הנסמכות על
מקורות מידע שלא פורטו ולא הובאו בפנינו, ולכן גם בנושא זה נזקק לראיות עצמאיות
וקבילות שהובאו במשפט.

Gilmore 00611

SHATSKY-009296

8





בתי המשפט



בית המשפט המחוזי בתל-אביב-יפו     תפ"ח 1158/02

12. בחוות הדעת של תא"ל קופרווסר ת/2 נאמר כי הנאשם היה עד למעצרו ראש הועדה העליונה של הפת"ח ביהודה ושומרון, ולפיכך שימש כמנהיג הפת"ח בגדה. זאת ניתן ללמוד מן המסמכים השונים שכתב הנאשם ושנכתבו אליו, ואשר צורפו לחוות הדעת ת/1 ות/2. בתפקידו הנ"ל היווה הנאשם מקור סמכות מרכזי לבכירי הפת"ח, וציונו מקשר בין ראש הרשות הפלסטינאית, יאסר ערפאת, לבין דרגי השטח בתנועה (סעיפים 1-2).

עוד נאמר בחוות הדעת הנ"ל (סעיף 4), כי עם פרוץ האינתיפאדה בחודש ספטמבר 2000, תפס הנאשם חלק מרכזי ביותר בהובלת הטרור נגד ישראל על ידי גורמי פת"ח ובכלל מעורבותו באה לידי ביטוי בדרכים שונות: **ראשית,** הנאשם היווה מקור השראה והתווה את מדיניות הפיגועים, באמצעות פגישות אישיות עם פעילי הטרור של תנועת הפת"ח והתבטאויות פומביות. **שנית,** הנאשם היה מקור סמכות ומימון לפעילי הטרור של תנועת הפת"ח: הוא נתפס בעיני גדודי חללי אלאקצא כמנהיג המרכזי בפעילותם, שימש כצינור קשר בינם לבין יו"ר הרשות הפלסטינאית והעביר לרשותם סכומי כסף המסתכמים בעשרות אלפי שקלים לצורך פעילות הטרור. **שלישית,** הנאשם העביר הנחיות ישירות לפעילי הטרור - הן במישור האסטרטגי, והן במישור הטקטי הנוגע לפיגועים נקודתיים.

13. הנאשם לא הסתיר בחקירתו בשב"כ את עמדתו הברורה, לפיה תנועת הפת"ח חייבת להוביל את "המאבק המזוין כנגד ישראלי", וכי זו הדרך היחידה להשגת מטרות העם הפלסטיני לאחר כשלון תהליך השלום, ולאחר שהנאשם עצמו היה פעיל שלום במשך שנים רבות (זכ"יד ת/59 סי' 2-5, שהוגש ואושר על ידי החוקר "יואדי" בעמ' 96). הוא הבהיר כי כאשר הוא משתמש בביטוי "מאבק מזוין", הוא מתכוון לפיגועים (תמליל חקירה ת/98 יא עמ' 2-3). הנאשם הסביר כי מנהיגי הפת"ח חששו מהיחלשות כוחם ברחוב הפלסטיני למול התנועות האיסלאמיות, דבר שדרבן אותם לנקוט קו של פיגועים כנגד ישראל (זכ"יד ת/21 סעיף 5, שהוגש ואושר על ידי החוקר "רוברטי" בעמי 63 (בטעות נרשם בפרוטוקול ת/41); זכ"יד ת/23 סי' 5, שהוגש ואושר על ידי החוקר "דני" בעמי 90 ; זכ"יד ת/27 סי' 10-12 וזכ"יד ת/55 סי' 3 שהוגשו ואושרו על ידי החוקר "סמית'" בעמי' 85 ; זכ"יד ת/30 סי' 8-12 וזכ"יד ת/58 סי' 5 שהוגשו ואושרו על ידי החוקר "יאמלי" בעמי' 54 ; זכ"יד ת/40 סי' 15 שהוגש ואושר על ידי החוקר "מופזי" בעמי' 58 ; זכ"יד ת/70 סי' 3 שהוגש ואושר על ידי החוקר "סטיבי" בעמי' 53).

Gilmore 00612

SHATSKY-009297

9




ביתי המשפט

<u>בית המשפט המחוזי בתל-אביב-יפו</u>    תפ"ח 1158/02

הנאשם אמר בחקירתו כי "עמדתנו המוצהרת הינה מאבק מזוין מול הכיבוש הישראלי, ומי שיש לו נשק שיבצע פיגועים זה הקו הכללי" (ת/23 ס' 5, וכן ראה זכ"ד ת/6 ס' 12-11, שהוגש ואושר על ידי החוקר "רוברט" בעמ' 62). הוא הסביר כי לפי השקפתו פיגועים שיכאיבו לישראל יקדמו את השלום, ויגרמו לישראלים להבין שיש להם מה להפסיד (ת/40 סעיף 15, ות/70 סעיף 4). הנאשם הבהיר כי מבחינתו אזרחים ישראליים החיים בהתנחלויות הם אויב שיש לפגוע בו (זכ"ד ת/63 ס' 16, שהוגש ואושר על ידי החוקר "נאור" בעמ' 82). הוא אף אמר כי פיגועים כנגד מתנחלי יהודה ושומרון הם לגיטימיים, גם כאשר מדובר בנשים וילדים (זכ"ד ת/6 ס' 13, שהוגש ואושר ע"י החוקר "רוברט" בעמוד 62, זכ"ד ת/77 ס' 2 שהוגש ואושר על ידי החוקרים "צדוק" ו"אופיר" בעמ' 83, 87).

הנאשם חזר והדגיש במהלך חקירתו כי בניכוח שהתנהל בתוך הרשות והפת"ח בעניין סוג הפיגועים כנגד ישראל - דגלו ערפאת והוא בקו הקובע כי יש להתמקד בפיגועים כנגד צה"ל והמתנחלים, בעוד שמנהיגים כמו אבו עלא ואבו מאזן התנגדו לכל סוג של אלימות; רק מעט מאנשי הפת"ח תמכו בפיגועים בתוך ישראל (ת/27 סעיפים 13-12 ; ת/30 סעיף 8 ; ת/70 סעיף 3). חרף התנגדויתם של ערפאת והנאשם לפיגועים בתוך ישראל, הם איבדו שליטה על החוליות ופעילי השטח במהלך האינתיפאדה (זכ"ד ת/55 ס' 3ו', שהוגש ואושר על ידי החוקר "סמית" בעמ' 85).

14.    עמדתו של הנאשם כמפורט לעיל באה לידי ביטוי גם בדבריו בחקירה שתומללו. לגבי עמדתו של הנאשם כי אין לבצע פיגועי התאבדות בתוך ישראל, הוא הסביר כי פגיעה בהתנחלויות כמוה כפגיעה בצבא, ולכן בעניין זה לא היה ויכוח בתוך הפת"ח; אך הוא הודה כי בתקופה האחרונה שלפני מעצרו החל הפת"ח לבצע גם פיגועי התאבדות בתוך ישראל, ואף אישר כי הפת"ח נגרר לתוך פעילות זו כדי שלא להשאיר את השליטה בשטח לאירגונים האיסלאמים (ת/98ד עמ' 29-27). הנאשם הסביר כי הוא באופן אישי הסתייג מכל פעילות בתוך ישראל, אך תמך "במאבק המזוין כנגד הכיבוש הישראלי", ואף עשה זאת בצורה פומבית בטלויזיה (ת/98ז עמ' 7, 10).

Gilmore 00613
SHATSKY-009298



10



בתי המשפט

בית המשפט המחוזי בתל-אביב-יפו      תפ"ח 1158/02

הנאשם אישר כי בחמשת החודשים האחרונים שקדמו למעצרו נטל הפת"ח תפקיד מרכזי בהסלמת רמת האלימות, והנהיג את המלחמה; הנאשם לא כיחד כי הוא נטל חלק בכך (ת/98יב עמי 35, ת/98ח עמי 3-4).

הנאשם הדגיש בחקירתו כי הוא תמך בהסכם השלום, ופעל למענו במשך 10 שנים, אך ההסלמה נבעה לדבריו מהעדר תקווה להשגת פתרון פוליטי עם ראש הממשלה שרון (ת/98 יב עמי 44-45). הנאשם אף הביע דעתו כי הפלשתינאים טעו כאשר דחו את הצעות ישראל, ועוד יותר מכך את הצעת הנשיא קלינטון, בועידת "קמפ דיויד", שכן לו קיבלו את ההצעות הללו - היתה להם היום מדינה עצמאית (זכ"יד ת/95, שהוגש ואושר על ידי החוקר "אופיר" בעמי 87).

15.   על גישתו של הנאשם בנושא הפיגועים, ועל תפקידו של הפת"ח בביצוע פיגועים כנגד ישראל, ניתן ללמוד גם משיחות שניהל הנאשם עם המדובבים שהוכנסו לתאו. המדובב שכונה "פלוני 1", הציג עצמו בפני הנאשם כפלשתינאי משכם, הוא מסר לחוקרי השב"כ את הדברים שאמר לו הנאשם לאחר קיום השיחות, ואלו נרשמו בזכדי"ם של חוקרי השב"כ שהעידו במשפט ("רוברט" בעמי 154, "מיקי" בעמי 155, "אופיר" בעמי 156 ו"מופז" בעמי 157), וכן העיד פלוני 1 עצמו (עמי 107-101). פלוני 1 הוא העיד כי הוא קרא את כל הדו"חות שרשמו אנשי השב"כ על שיחותיו עם הנאשם, ואישר את תוכנם (עמוד 105). בדרך דומה פעל והופעל המדובב פלוני 3, שזיהה את קולו של הנאשם בקלטות ת/124ב (ראה עדותו בעמי 107-110, ומוצגים ת/122-ת/125).

על פי עדותו של פלוני 1, סיפר לו הנאשם שהוא היה זה זה שהקים את גדודי חללי אלאקצא והיה אחראי עליהם (עמי 106). בזכ"יד שנרשם מפיו (ת/117 שהוגש ואושר על ידי החוקר "רוברט" בעמי 154), אמר פלוני 1 כי הנאשם אמר לו שהאינתיפאדה למעשה היתה מתוכננת לאור המצב המדיני, הרחבת ההתנחלויות והמשך הכיבוש והלחץ על הפלסטינאים בשטחים, וכי ביקורו של אריאל שרון בהר הבית היה רק "הקש ששבר את גב הגמלי", והצית את האינתיפאדה שהיתה צפויה ממילא (ראה גם זכ"יד ת/25 סי 18, שהוגש ואושר על ידי החוקר "מופז" בעמי 58).

Gilmore 00614

SHATSKY-009299



בתי המשפט



**בית המשפט המחוזי בתל-אביב-יפו**       תפ"ח 1158/02

לאחר האירוע בהר הבית, ביקשו מנגנוני הביטחון של הפת"ח מערפאת להורות על הפסקת האינתיפאדה, וערפאת לא הגיב. הנאשם עצמו סיפר כי עוז בזעם את הישיבה לאור בקשת המנגנונים, וכי הוא שונא עליהם משום ש"ימשך את העם להשלמת המצב". הנאשם אמר לפלוני 1 כי מטרת האינתיפאדה הייתה פגיעה בחיילים ובמתנחלים כדי לגרום לעזיבתם, וכדי להוכיח לעולם שהפלסטינאים נלחמים בכיבוש. ואולם, לאחר שישראל החלה במדיניות החיסולים, ובעיקר לאחר שפגענ ברא"איד כרמי, עבר הפת"ח לפעול בתוך ישראל במטרה לפגוע באזרחים, על מנת לפגוע בכלכלת ישראל ובתיירות, ולהפעיל לחץ על הרחוב הישראלי שילחץ על הממשלה לסגת מהשטחים (שם, ס' 12-13, 17, 20-21). כמו כן אמר הנאשם לפלוני 1 כי מבחינתו הפיגועים מהווים הגנה עצמית של הפלסטינים, אשר מוכנים להושיט יד לשלום, וכי פיגועי ההתאבדות נובעים מן הכיבוש ומן המצב של הפלסטינאים בשטחים (זכ"ד ת/110 ס' 22, 27).

עמדתו של הנאשם התומכת בהמשך האינתיפאדה באה לידי ביטוי גם במכתב ששלח ליאסר ערפאת ביום 31.12.00 (ת/5 (N42)).

16.      באשר למדיניות הפיגועים של הפת"ח, הסביר הנאשם בחקירתו כי כאשר ערפאת היה מעונין בהפסקת אש, הוא היה דואג להעביר הנחיה זו לגורמים רבים, ובהם הנאשם; אך כאשר היה מעונין בהמשך הפעולות הוא דאג שהפעילים, כולל הנאשם, יבינו זאת מהתגובות, ובעיקר אי-התגובות שלו. הנאשם אמר: **"אם הוא (ערפאת) למשל, לא רוצה בהפסקת אש הוא מסתדר אחרת. לא אומר שום דבר"** (זכ"ד ת/24 ס' 3ב, שהוגש ואושר על ידי החוקר "סמיתי" בעמ' 85, ותמליל חקירתו של הנאשם ת/98 עמ' 32-33). הנאשם אמר שערפאת מעולם לא הורה לו בצורה מפורשת לבצע פיגועים. אך הוא הוסיף כי מהעובדה שערפאת התנגד לביצוע פיגועים בתוך ישראל בלבד, ניתן היה להבין שהוא תומך בפיגועים בשטחים, ולכן גם לא הורה להפסיקם; ערפאת אמר בתקשורת כמה פעמים כי **"מיליון שאהידים בדרכם לירושלים"**, והנאשם שאל באופן רטורי ואם אין זו הצהרה התומכת בביצוע פיגועים (זכ"ד ת/60 ס' 4-7 שהוגש ואושר על ידי החוקר "אמילי" בעמ' 54; זכ"ד ת/61 ס' 8-1, שהוגש ואושר על ידי החוקר "מיקי" בעמ' 81; זכ"ד ת/62 ס' 3-5 שהוגש ואושר על ידי החוקר "זני" בעמ' 90).

Gilmore 00615

SHATSKY-009300

12





בתי המשפט

<u>בית המשפט המחוזי בתל-אביב-יפו</u>　　　　<u>תפ"ח 1158/02</u>

הנאשם הסביר כי לא היה צורך בהוראות ישירות של ערפאת לביצוע פיגועים, שכן הדברים היו מובנים מבין השורות (זכ"ד ת/63 ס' 13-11 שהוגש ואושר על ידי החוקר "נאור" בעמ' 82). הנאשם הוסיף כי גם האינתיפאדה לא פרצה בהוראתו של ערפאת, אך היא לא היתה ממשיכה להתקיים אלמלא תמיכתו בה, אף כי הוא לא היה צריך לתת הנחיה מפורשת לביצוע פיגועים (זכ"ד ת/64 שהוגש ואושר על ידי החוקר "רוברט" בעמ' 62, ות/66 שהוגש ואושר על ידי החוקר "אמיל" בעמ' 54). עוד ציין הנאשם כי הבין את תמיכתו של ערפאת בפיגועים גם לאור העובדה שערפאת היה מאשר לו את הבקשות הכספיות שהגיש עבור פעילי השטח של הפת"ח שביצעו פיגועים (זכ"ד ת/70 ס' 17נח', שהוגש ואושר על ידי החוקר "סטיב" בעמ' 53). הנאשם תיאר את הקשר שלו עם ערפאת כ"אישי וישיר" (תמליל שיחה ת/98ח עמ' 55).

גם לנאשם, מסתבר, היתה דרך משלו להודיע לאנשי החוליות על הפסקת הפיגועים ועל חידושם. הוא הסביר בחקירתו כי כאשר רצה בהפסקת אש היה מתקשר לחוליות הגדולות, אם כי קרה שהיו אנשים שלא שמעו להוראתו; כאשר הנאשם היה מעוניין בחידוש האש הוא היה מודיע על כך בטלוויזיה, כאשר קרא "למאבק מזויין". כאשר נשאל כיצד היה מודיע על רצונו בחידוש האש, השיב הנאשם:

"לא רוצה אש, אני מדבר בטלוויזיה אם אני רוצה שלום, יעני אני לא מתקשר לפלוני ואומר לו ואללה תבצע בשבילנו פיגוע, ואללה תעשה לנו לא יודע מה, אין אצלי כזה דבר, אני דובר בשם התנועה בפועל קורא לאינתיפאדה אני קורא למאבק מזויין" (ת/98ח עמ' 3).

חרף דברים אלו של הנאשם, הרי שמעדותו של פעיל הטרור עויס עולה שהנאשם הורה לו לחדול מביצוע פיגועים בעת ביקורו של השליח האמריקאי אנתוני זיני באיזור (ראה להלן). מן הדברים שאמר המדובב פלוני 1 בחקירתו, בעקבות שיחותיו עם הנאשם, עולה כי הנאשם הביע כעס רב על כך כך שעויס מסר פרטים אלו בחקירתו (זכ"ד ת/113א ס' 9-8, זכ"ד ת/114א ס' 8 שהוגש ואושר על ידי החוקר "רוברט" בעמ' 154). כמו כן הובאו ראיות על מקרים אחרים בהם הורה הנאשם באופן ישיר לפעילי הטרור המקורבים אליו לבצע פיגועים כנגד ישראלים (ראה להלן).

Gilmore 00616

SHATSKY-009301

13



בתי המשפט

<u>בית המשפט המחוזי בתל-אביב-יפו</u>　　　　　　　תפ"ח 1158/02

17.　בתחילת חקירתו בשב"כ הכחיש הנאשם כי היה מנהיג התנועה וגדודי חללי אלאקצא, אך אישר את אחריותו לפעילות הצבאית של הפת"ח (זכ"ד ת/17 סי 6, שהוגש ואושר על ידי החוקר "ארבל" בעמ' 80, זכ"ד ת/43 סי 6 שהוגש ואושר על ידי החוקר "רוברט" בעמ' 62, ותמליל חקירה ת/98א' עמי 43-44). הנאשם טען כי גדודי חללי אלאקצא אינם אלא חוליות מפוזרות בכל שטח הגדה המערבית, ושאין להן מבנה מאורגן ומסודר ומפקדה מרכזית (תמליל שיחה ת/98ז' עמי 60-61). עוד אמר הנאשם בחקירתו כי ערפאת היה, למעשה, מפקדו הישיר והממונה עליו, ואת עצמו הגדיר כ"אחראי לכל פעילות פת"ח בגדה מעצם היותו מזכ"ל הארגון בגדה" (ת/24 סי 3ב, 5).

הנאשם אישר כי הוא היה מנהיג "השטח" של הפת"ח, בעוד שיאסר ערפאת עמד בראש הפת"ח (תמליל שיחה ת/98א עמי 67). כך הסביר הנאשם בחקירתו גם את העובדה שאנשי החוליות פנו אליו לקבלת כסף, משום שראו בו "מפקד", וכן "אחראי של פת"ח בגדה המערבית", בשל היותו הדובר הפוליטי של התנועה, ומשום שנקט קו ועמדה התומכים בהמשך המאבק בכיבוש (תמליל ת/98 עמי 3-4, 61, ת/98 עמ' 33-35). הנאשם הסביר כיצד הוא נראה בעיני אנשי החוליות, ובאומרו: "אני המפקד שלהם, הם חושבים אותי לסמל שלהם", ואף אישר כי אין אדם אחר שנחשב כמנהיג שלהם (ת/98ט עמי 6-7).

בדברים שהשמיע במהלך משפטו טען הנאשם לא פעם כי הוא היה "מנהיג פוליטי" בפת"ח, בהדגישו את תפקידו כמזכ"ל הפת"ח בגדה, והיותו חבר הפרלמנט הפלסטינאי. כך גם טען בתחילת חקירתו בשב"כ. גם בחקירתו במשטרה הכחיש הנאשם כי היה אחראי על התנועים או על גדודי חללי אלאקצא (ת/106 עמי 3, 6). ואולם במהלך חקירתו בשב"כ הודה הנאשם כי היה מפקד הפת"ח מפקד בגדה ומפקד התנועים (זכ"ד ת/18 סי 3 שהוגש ואושר על ידי החוקר "נדב" בעמי 78), וכי הקים את גדודי חללי אלאקצא והיה אחראי על פעילותם, מטעם זה התנגדה לפעילותו מנגנוני הביטחון של הרשות (דברי פלוני 1 בזכ"ד ת/117 סי 15, שהוגש על ידי החוקר "רוברט" בעמי 154).

Gilmore 00617

SHATSKY-009302

14



בית המשפט המחוזי בתל-אביב-יפו                    תפ"ח 1158/02

הנאשם אמר למדובב "פלוני 3" בשיחתם, כי הוא אכן אחראי על הפת"ח ועל גדודי חללי אלאקצא, אך הוא "לא משוגע לחתום" את שמו על דף נייר בו הדברים ירשמו; כאשר המדובב אמר לנאשם כי הוא בכל זאת אחראי למעשי המפגעים, השיב הנאשם כי הוא אמנם אחראי אך "הוא לא טיפש לומר זאת לחוקרים" (זכ"ד ת/123 עמ' 2, שהוגש על ידי החוקר "אופירי"). במפגש בין הנאשם לבין אחמד ברגותי בעת מעצרם, כאשר הוקלטו ללא ידיעתם, סיפר הנאשם לאחמד כי אמר בחקירתו שאין לו כל קשר לגדודי חללי אלאקצא. השניים צחקו, ואחמד יעץ לנאשם לומר כי רק לו - לאחמד - יש קשר עם הגדודים; הנאשם השיב לו כי אמר בחקירתו שהיה מפטר את אחמד לו ידע שיש לו קשר עם הגדודים, ואחמד צחק למשמע הדברים (תמליל שיחה ת/127ג עמ' 87).

הנאשם אישר בחקירתו כי לבד מהיותו מנהיג פוליטי, הוא גם שימש כאחראי על העניינים הצבאיים של הפת"ח (זכ"ד ת/59 סי' 6 שהוגש ואושר על ידי החוקר "ואדי"" בעמ' 96). הנאשם הגדיר עצמו כ"אחראי על כל הפעילות של התנזים בפת"ח באזור שלו" (תמליל ת/98ד עמ' 42). הוא אף הודה כי היה "אחראי לכל הנעשה כגון אספקת כספים לחוליות, ולכישות נשק וביצוע פיגועים" (זכ"ד ת/29 סי' 11ג שהוגש ואושר על ידי החוקר "סמיתי" בעמ' 85), וכי הוא נחשב כ"מפקד צבאי", וכ"אחראי על העניינים הצבאיים של הפת"ח", בנוסף להיותו מנהיג פוליטי ונבחר ציבור (זכ"ד ת/19 סי' 2 וזכ"ד ת/59 סי' 5- 6, שהוגשו ואושרו על ידי החוקר "מופזי" בעמ' 58).

הנאשם אמר כי בשנה שקדמה למעצרו "החל מוצא עצמו יותר ויותר עוסק בעניינו אמל"ח ועניינו פעילות צבאית" (זכ"ד ת/25 סי' 19, שהוגש ואושר על ידי החוקר "מופזי" בעמ' 58, וכן ראה תמליל שיחה ת/98ד עמ' 15). הוא הסביר כי היה חייב ליטול חלק "בפעילות הצבאית" על מנת לשלוט ברחוב הפלסטינאי ולדחוק את רגלי החמאס'ט והג'יהאד האיסלאמי, ועל מנת שיוכל להצביע על עצמו בעתיד כעל מי שפעל וחן למען השלום והן במלחמה (זכ"ד ת/52, שהוגש ואושר על ידי החוקר "סמיתי" בעמ' 85).

Gilmore 00618

SHATSKY-009303

15



בתי המשפט



בית המשפט המחוזי בתל-אביב-יפו          תפ"ח 1158/02

ג.    עדויותיהם של פעילי הטרור מהפת"ח בדבר קשריהם עם הנאשם
      ומעורבותו בפיגועים שביצעו והתייחסות הנאשם בחקירתו לעדויות אלו

18.   התביעה איננה טוענת כי הנאשם יזם או נטל חלק ישיר בביצוע הפיגועים נשוא
      כתב האישום, שכן היא ערה לכך שמחומר הראיות עולה כי למפקדי השטח ולפעילי השטח
      הוקנו סמכויות רחבות ומרחב תמרון רב בביצוע הפיגועים, והם לא נדרשו לקבל אישור
      מהנאשם לכל פיגוע. התביעה גם מסכימה כי הנאשם לא ידע מראש על כל פיגוע ופיגוע :
      הוא היה מודע באופן כללי לפעילותם של מפקדי השטח ופעילי הטרור הכפופים לו, אשר
      פעלו בהתאם למדיניות הפיגועים שהוא היה שותף לעיצובה ; לעיתים עודכן לפני הפיגוע,
      ולעיתים עודכן בדיעבד (עמ' 47 לסיכומי התביעה).

      כפי שעולה מהראיות שתפורטנה להלן, היה הנאשם מנהיגם של חוליות הטרור מקרב
      התנזים וגדודי חללי אלאקצא. לפחות חלק מחברי חוליות אלו סרו למרותו, ופעלו על פי
      המדיניות שהתווה. בנוסף על כך, עולה בבירור מן הראיות שהנאשם סייע למפקדי
      החוליות ופעילי הטרור באספקת אמצעי לחימה ומימון כספי. במספר מקרים אישר
      הנאשם מראש ביצוע פיגועים כנגד ישראל. יש, אפוא, לבחון בפרק זה מי היו פעילי הטרור
      שפעלו תחת הנהגתו של הנאשם, ומה היו קשריו של הנאשם עם פעיליים אלו. בפרק הבא
      יבחנו הפיגועים שבהם היו מעורבים פעילי טרור אלו, ומידת הקשר של הנאשם אליהם.

      (1)   נאצר עויס

19.   נאצר עויס (להלן : "עויס") היה אחד מפעילי הטרור הבכירים של התנזים באזור
      שכם. בגין פעילותו זו הוא נדון בבית משפט זה ל - 14 מאסרי עולם ועוד 50 שנות מאסר
      בפועל במצטבר (ת/172א-ב). בעדותו (עמ' 180-182) סרב עויס להשיב על שאלות, ולאחר
      שהוקרז כעד עוין הוגשו הודעותיו במשטרה לפי סעיף 10א. לפקודת הראיות (ת/172 –
      ת/177). הדבר היחיד שהיה מוכן עויס לומר בעדותו הוא כי כל מה שנרשם בהודעותיו הם
      שקרים של השב"כ, וגם כתב היד המופיע בהודעותיו הוא של אנשי השב"כ. הוא טען כי
      עבר אמצעי חקירה מאוד קשים.

Gilmore 00619

SHATSKY-009304

16



**בתי המשפט**



<u>בית המשפט המחוזי בתל-אביב-יפו</u>     תפ"ח 1158/02

ההודעות שמסר עויס במשטרה נכתבו בכתב ידו ותורגמו לעברית על ידי החוקר שגבה את
ההודעות ואישר את גבייתן, ואף העיד כי ההודעות נגבו מרצונו החופשי של עויס (רס"מ
רוני עמאר בעמ' 191-192). כמו כן, הוגשו דוחות שרשמו חוקרי השב"כ על דברי עויס
בחקירתו (ת/178א-ד). דברים אלו אושרו על ידי חוקרי השב"כ, שהעידו כי הדברים נאמרו
על ידי עויס מרצונו החופשי, אם כי מדובר במסמך שאיננו משקף אלא את תמצית
החקירה, ולא את הדברים כפי שנאמרו מילה במילה ("יאריאל" בעמ' 203, "עדי" בעמ'
204, "יואל" בעמ' 204-205). זכ"ד ת/178ג' נרשם בידי החוקר "צדוק", שלא התייחס אליו
בעדותו (עמ' 83-84), ולא חזר להעיד לאחר עדותו של עויס, ולכן יש להתעלם ממנו.

20.   עויס סיפר בהודעתו ת/172ב (עמ' 1-2), שנכתבה בכתב ידו, כי לאחר פרוץ
"אינתיפאדת אלאקצא" בחודש ספטמבר 2000, הוא החל לבצע פיגועים כנגד מטרות
ישראליות, ובאותה עת עבד במנגנון הביטחון הלאומי הפלסטיני בשכם בדרגה של סרן
(נקיב). הוא ביצע פיגועי ירי ופיגועים נוספים נגד מטרות ישראליות באזור יהודה ושומרון
ובתוך ישראל, ופרט בהודעותיו ת/172-ת/174 פיגועים אלו, שכללו ירי לעבר עמדות
צבאיות ורכבים צבאיים; מסירת אמצעי לחימה לאחרים לשם ביצוע פיגועי התאבדות
בירושלים, בנתניה וחדרה, ועוד.

21.   עויס אמר בהודעותיו כי ביצע את הפיגועים בשם גדודי חללי אלאקצא, בהסבירו
כי גוף זה משתייך לתנועת הפת"ח ותנזים הפת"ח, וכי הנאשם היה האחראי על התנזים
(ת/172ב עמ' 3). עויס אמר כי המימון לפיגועים בא מאנשי התנזים, וכי הנאשם עצמו מימן
את הנשק לפיגועים בהם היה היה מעורב עויס - לעיתים באופן ישיר, ולעיתים באמצעות מנאג'ד
אלמצרי - בידיעה שעויס מבצע פיגועים נגד מטרות ישראליות. במקרה אחד העביר הנאשם
לעויס שיק מאושר על ידי היו"יר ערפאת (עמ' 6-7). עוד אמר עויס בחקירתו כי היה זה בקשר
עם הנאשם לכל אורך הזמן; הוא נשאל אם הנאשם ידע על כך שהוא מבצע פיגועים כנגד
מטרות ישראליות, והשיב (עמ' 4-5):

Gilmore 00620

SHATSKY-009305

17



**בתי המשפט**



<u>בית המשפט המחוזי בתל-אביב-יפו</u>       תפ"ח 1158/02

"כן ידע ושמי אף פורסם בעיתונות ובטלוויזיה וברדיו והייתי משוחח עמו מידי פעם וכשהמצב הפוליטי היה מתדרדר ורע לנו היה מבקש שנמשיך בפיגועים וכשנפגש שמעון פרט ועמרי שרון עם מנהיגים ברשות התקשר אליי מרואן ברגותי וביקש שנעצור את הפיגועים... באותה ותקופה הית זיני באזור ומרואן אמר לי שעדיף מאחר והגנרל זיני נפגש עם מנהיגים ברשות שלא נבצע פיגועים בשם חללי אלאקצא ויש לציין שהתקדמו בשיחות לא בוצעו פיגועים".

הנאשם הביע כעס כנגד בפני המדובר "פלוני 1" על כך כך שעויס הודה בחקירתו כיצד נהג הנאשם בעת ביקורו של הגנרל זיני באזור (ת/113א סעיפים 8-9, ת/114א סעיף 8, שהוגשו ואושרו על ידי החוקר "דובריט" בעמ' 154, ותמליל חקירת הנאשם ת/98ח עמ' 3).

22.    אשר לקשריו עם הנאשם, אמר עויס בחקירתו בשב"כ כי הגיש לנאשם בקשת סיוע עבור שורה של פעילי שטח, וכי הוא עצמו קיבל שלוש פעמים כסף מהנאשם (זכ"ד ת/178א סעיף 10). הנאשם היה הממונה עליו בתנזים, והעביר לו ולפעילים אחרים סיוע כספי, לאחר קבלת אישור מהיו"ר ערפאת (ת/178בב סעיף 10). בדרך כלל קיבל עויס את הכספים מהנאשם באמצעות המתווך מאג'ד אלמצרי, אך לעיתים היה הנאשם שולח לו כספים בצורה ישירה ; עויס לא נהג לומר לנאשם מה מטרת הכסף, אך ברחבי הגדה ידעו היטב מה טיב הפעילות של עויס (ת/178ד סעיף 5יא).

עויס אמר בחקירתו כי הפיגועים של התנזים בוצעו בידיעת מנהיגי התנזים ובסיועם. לאחר הפיגוע באולם השמחות בחדרה, וכל זמן שהתנהלו שיחות עם ישראל, הם היו מורים על הפסקת הפיגועים ; ואולם כאשר השיחות לא התקדמו, שבו הפעילים לבצע פיגועים, עד שניתנה להם הוראה חדשה על ידי המנהיגים להפסיקם. במסגרת זו נתן הנאשם הוראה להפסיק את הפיגועים בעת ביקורם של הגנרל זיני ומנהיגים מרוסיה ומאירופה בארץ (ת/178ד סעיף 5י).

Gilmore 00621

SHATSKY-009306

Case 1:02-cv-02280-RJC Document 294-36 Filed 11/12/10 Page 24 of 74

18



בתי המשפט



23. דבריו של עויס בחקירתו בכל הנוגע לקשריו עם הנאשם נתמכים בדברים שאמר הנאשם בחקירתו בשב"כ. כאשר הופגשו הנאשם ועויס במהלך החקירה (ת/79ב), ועויס החל לקרוא את הודעתו במשטרה, ציווה עליו הנאשם לומר כי מדובר בזיוף, ועויס אכן מיהר לומר לו כך (החוקר "צדוק" בעמ' 84). ואולם הנאשם עצמו אישר בחקירה כי עויס היה הפעיל הצבאי הבכיר ביותר של תנזים פת"ח בשכם, ואחראי על גדודי חללי אלאקצא בשכם (זכ"יד ת/90 ס' 7, שהוגש ואושר על ידי החוקר "סטיבי" בעמ' 53). הנאשם הודה כי ידע שעויס מבצע "פעילות צבאית" עניפה, וכאשר רצה להבטיח הפסקה של הפיגועים היה פונה גם לעויס ומורה לו על הפסקת הפיגועים (זכ"יד ת/24 ס' 6, שהוגש ואושר על ידי החוקר "סמית" בעמ' 85, ותמליל שיחה ת/98ט עמי 2-3).

הנאשם הודה כי מסר לידי עויס באמצעות מאג'ד אלמצרי ואחמד ברגותי סכום של כ-20,000 ש"ח, ואולי אף 50,000 - 70,000 ש"ח, למימון פעילותו, וכי קיבל אישור לכך מהינ"ר ערפאת, בלא שציין את מטרת הסיוע הכספי (זכ"יד ת/19 ס' 16, שהוגש ואושר על ידי החוקר "מופז" בעמ' 58 ; זכ"יד ת/38 ס' 4, שהוגש ואושר על ידי החוקר "סמית" בעמ' 85 ; זכ"ידים ת/40 ס' 8 ו- ת/41 ס' 9, שהוגשו ואושרו על ידי החוקר "מופז" בעמ' 58 ; תמליל חקירה ת/98ט עמ' 3-4). הנאשם אף הודה כי חלק מהכספים שהעביר לידי עויס נועדו לרכישת 1000 כדורים לרובה M-16 ולרובה מסוג "גליל", ואף הצהיר כי הוא "מקבל אחריות על כל הכסף שנאצר (עויס) קיבל עבור מימון פיגועים בשטחים ובבושים, עבור רכישת כלי נשק ותחמושת" (ת/41 ס' 6-9).

עוד אישר הנאשם בחקירתו כי עויס הפעיל חוליות שהיו מאורגנות תחת פיקודו של הנאשם (זכ"יד ת/29 ס' 1, שהוגש ואושר על ידי החוקר "סמית" בעמ' 85). אך הנאשם הדגיש כי הוא עצמו לא הורה לעויס לבצע פיגועים (זכ"יד ת/31 ס' 6). לעומת זאת, המדובב "פלוני 1" העיד כי הנאשם אמר לו כי נתן לעויס הוראות לבצע פיגועים (עמי 104).
הנאשם הודה גם כי לאחר הפיגוע בנווה יעקב או בגשר עטרה (הנאשם לא זכר איזה מהם) שלח אליו עויס את הכרוז הנוטל אחריות, והנאשם אישר זאת בשיחה עם עויס (זכ"יד ת/49 סעיף 7, שהוגש ואושר על ידי החוקר "אמילי" בעמ' 54, וזכ"יד ת/52 שהוגש ואושר על ידי החוקר "סמית" בעמ' 85).

Gilmore 00622
SHATSKY-009307

19



בתי המשפט



ביית המשפט המחוזי בתל-אביב-יפו     תפ"ח 1158/02

### (2) נאצר נאג'י אבו חמיד

24. נאצר נאג'י אבו חמיד (להלן: "**אבו חמיד**") היה אחד ממנהיגי התנזים וגדודי חללי אלאקצא באיזור ירושלים ורמאללה, ואף הוא היה כפוף לנאשם וקיבל ממנו סיוע לצורך ביצוע פיגועים כנגד ישראל. בגין פעילותו זו נדון אבו חמיד, על סמך הודאתו, לשבעה מאסרי עולם ועוד 50 שנות מאסר במצטבר (ת/148א-ב). בעדותו סרב אבו חמיד להשיב על שאלות כלשהן, הוכרז כעד עויין והודעותיו משטרה הוגשו לפי סעיף 10א. לפקודת הראיות (עמ' 40-41). הודעות אלו (ת/149א-ד) הוגשו באמצעות חוקרי המשטרה אברהים אלקרעאן, יעקב ברזני ומשה לוי (עמ' 194-195, 207, 211), אשר העידו כי אבו חמיד מסרן מרצונו החופשי וחתם עליהן. ההודעות נמסרו בעברית בעברית לפי בקשתו של אבו חמיד, אשר לדברי החוקרים דובר עברית היטב.

25. בהודעותיו פרט אבו חמיד את פיגועי הרצח כנגד ישראלים בהם היה מעורב, וסיפר כי פנה אל הנאשם לקבלת סיוע כספי לרכישת תחמושת, והנאשם הפנה אותו אל קרובו אחמד ברגותי המכונה "אלפרנסי"; הלה אכן מסר כמה פעמים לאבו חמיד כסף לרכישת נשק ותחמושת (ת/149א, עמ' 9, ת/149ג עמ' 5-6). גם חברים אחרים בחוליה של אבו חמיד פנו לנאשם לקבלת כספים לצורך רכישת נשק (ת/149 עמ' 6). בשלב מסוים פנה אבו חמיד לנאשם לשם מימון רכישת מקלע, ובסופו של דבר הכסף למטרה זו ניתן לו על ידי אחמד ברגותי (ת/149ג עמ' 7). אבו חמיד אף סיפר כי הנאשם נפגש עם סוחר נשק בעניין רכישת רימוני יד, שהיו לבסוף רק רימוני הלם (עמ' 7-8).

אבו חמיד אמר כי הוא הקים את גדודי חללי אלאקצא לאחר תחילת האינתיפאדה בחודש דצמבר 2000 (עמ' 4). הוא הסביר כי הוצע לו לצרף את החוליה שבראשה עמד למנגנוני הביטחון של הרשות הפלסטינאית בראשות תאופיק טיראווי, אך הוא העדיף את הצעתו של הנאשם להיות כפוף לו, ולקבל ממנו משכורת לו ולאנשיו, כיוון שראה בנאשם "מנהיג פוליטי שלא ישקר" (ת/149א עמ' 15-16).

Gilmore 00623

SHATSKY-009308



בתי המשפט



בית המשפט המחוזי בתל-אביב-יפו                     תפ"ח 1158/02

לאחר מכן גייס אבו חמיד פעילים נוספים לתמיכה בנאשם, הקים את גדודי חללי אלאקצא, והחל לבצע פיגועים כנגד מחסומי צה"ל והמתנחלים (עמ' 17). הוא אמר לגבי הנאשם כי ראה בו "מנהיג פוליטי", אם כי הוא עצמו השתייך לפלג הצבאי של הארגון (עמ' 17). כאשר נהרג מפקד החוליה, הכיר אבו חמיד את יורשו לנאשם (ת/149 עמי 7).

באחת מהודעותיו סיפר אבו חמיד על אירוע בו נכח יחד עם חברי חוליה אחרים, ואחד מהם סיפר לנאשם על כוונתו לבצע פיגוע באזור שכם, וביקש מהנאשם סיוע ברכישת נשק ומכונית, וכן ביקש מהנאשם ליצור קשר עם עויס על מנת שיעזור בביצוע הפיגוע. אבו חמיד אמר כי הנאשם התקשר עם עויס, שאכן סייע לחולייה לבצע פיגוע; לאחר הפיגוע הוא דיווח לנאשם כי בהיתקלות עם חיילי צה"ל איבדו חברי החוליה את הנשק, והנאשם הבטיח לטפל בנושא (ת/149 עמי 9).

לקראת סוף שנת 2001, כאשר החל ירי מרגמות לעבר ישובים ישראליים, שוחח אבו חמיד עם הנאשם על הצורך להשיג מרגמות בעלות טווח ירי גדול יותר. אבו חמיד פנה אל הנאשם לשם מימון רכישת פצצות המרגמה, והנאשם השיב לו כי מחירן גבוה מדי, וכי "יש לו הפתעה" בעניין זה, כפי שיסביר לו אחמד ברגותי; האחרון הסביר לאבו חמיד כי יש כבר בידיהם מרגמה ופצצות (ת/149ג עמי 10). אבו חמיד אף דיווח לנאשם על ביצוע ירי מרגמה לעבר הישוב פסגות, והנאשם ביקש שלא לספר על כך לאיש, באומרו כי אם ערפאת ידע על כך הוא יכניס אותו לכלא (עמ' 11).

26.     מהודעותיו של אבו חמיד ניתן להתרשם שהוא השתדל למנוע מן הנאשם מעורבות ישירה בפיגועים, ואף אמר לפעילים האחרים שלא לסבך את הנאשם במעשיהם, שכן הנאשם צריך להישאר "מנהיג פוליטי" (ת/149ג עמי 8-9, 12). במסגרת ניסיונו של אבו חמיד לחפות על מעורבותו של הנאשם בפיגועים, הוא ניסה לגמד גם את חלקו של אחמד ברגותי, שהיה מקורבו ועוזרו של הנאשם; אבו חמיד הודה בזהירות כי ניסה תחילה להעלים את חלקו של אחמד ברגותי ברצח טליה ובנימין כהנא ז"ל, אשר בוצע באמצעות נשק שמסר אחמד ברגותי למפגע (ת/149ד עמ' 5, וראה פרטי האירוע בפרק ה(1) להלן).

Gilmore 00624
SHATSKY-009309

21



בתי המשפט



בית המשפט המחוזי בתל-אביב-יפו                          הפ"ח 1158/02

27.  הנאשם הודה בחקירתו כי הנחה את עלי עאידיה (איש הכספים שלו) לרכוש
אמל"ח עבור הפעילות של התנזים, ולהעביר את האמל"ח לאבו חמיד. הנאשם אף מתייחס
בחקירתו לאירוע המתואר בהודעתו של אבו חמיד, הנוגע לרכישת רימונים מקולקלים
(זכ"יד ת/43 ס' 5-2, שהוגש ואושר על ידי החוקר "רוברטי" בעמ' 62). הנאשם הודה כי
החוליות של אבו חמיד זכו לסיוע מצדו בסכום של כ- 40,000 ₪ (זכ"יד ת/63 ס' 20, שהוגש
ואושר על ידי החוקר "נאורי" בעמ' 82). הנאשם אמר כי כאשר קיבל החלטה אסטרטגית
לבצע פיגועים הוא הקים חוליה, כאשר את הפיגועים הוביל, בין היותר, אבו חמיד (זכ"יד ת/
35 ס' 1, שהוגש ואושר על ידי החוקר "דני" בעמ' 90). כאשר נשאל הנאשם בחקירתו מי
מאנשי חוליות הפיגועים היו תחת שליטתו, הוא אמר על אבו חמיד: "הוא נחשב עלי"
(תמליל שיחה ת/98יא עמ' 34, שבו בטעות נרשם בעברית "אחמד" במקום אבו חמיד).


(3)  אחמד ברגותי


28.  אחמד ברגותי (המכונה "אלפרנסי") הוא קרוב משפחה של הנאשם, אשר היה
עוזרו הקרוב, בנוסף על היותו נהג ושומר ראשו של הנאשם (ראה דברין בהודעתו ת/165א
עמ' 1, וזכ"יד ת/165ו שהוגש ואושר על ידי החוקרים "אדם" ו"דני" בעמ' 200-201).
אחמד ברגותי אמר בחקירתו כי היה נתון למרותו המלאה והישירה של הנאשם  (זכ"יד
ת/165י שהוגש ואושר על ידי החוקר "אדם" בעמ' 201). אין זה מקרה שאחמד ברגותי
נעצר יחד עם הנאשם, שכן שמו עולה בחומר הראיות בהקשרים רבים הנוגעים לפיגועים
שביצעו פעילי השטח של התנזים וגדודי חללי אלאקצא.


אחמד ברגותי סירב להשיב על שאלות כלשהן בעת עדותו (עמ' 161-163), ולאחר שהוכרז
כעד עוין הוגשו הודעותיו במשטרה לפי סעיף 10א. לפקודת הראיות (ת/165א1-ה).
הודעות אלו הוגשו ואושרו על ידי השוטרים דוד מזרחי, יצחק יעקובוב ומשה משה (בעמ'
184, 171 ו- 207-206). החוקרים העידו כי תחקרו את אחמד ברגותי בערבית, אך רשמו את
עדותו בעברית (שלא על פי המקובל והנדרש). כל החוקרים העידו כי ההודעות נמסרו
מרצונו החופשי של הנחקר.

Gilmore 00625
SHATSKY-009310

22



**בתי המשפט**



<u>בית המשפט המחוזי בתל-אביב-יפו</u>　　　　　　<u>תפ"ח 1158/02</u>

כמו כן הוגש מסמך שכתב אחמד ברגותי בכתב ידו בערבית ותורגם (ת/165(ג)(1-2)), והוא הודה בחקירתו כי כתב מסמך זה בכתב ידו (מזרחי בעמ' 185). בנוסף, הוגשו על ידי חוקרי השב"כ זכ"ידים שנרשמו במהלך חקירתו של אחמד ברגותי (ת/165ו-טו, שהוגשו ואושרו כדלקמן :ת/165ו על ידי "אדם" בעמ' 201 ו"דני" בעמ' 200 ; ת/165ז על ידי "אדם" בעמ' 201 ; ת/165יג על ידי "אדם" בעמ' 201 ; ת/165יד על ידי "דני" בעמ' 200). הזכ"ידים ת/165 ז-ח, ת/165יא-יב ו- ת/165טו לא זכו להתייחסות כלשהי בעדויותיהם של חוקרי השב"כ "מיקי", "ארבלי", "אדם" ו"דקל", ולכן יש להתעלם מהם.

29.　　　אחמד ברגותי סיפר בחקירתו כי הוא ועויס היו האחראים על גדודי חללי אלאקצא בשנה שקדמה למעצרו (הודעה ת/165ה). הוא סיפר בהודעותיו על מעורבותו הישירה והעקיפה בפיגועים שבוצעו כנגד ישראל, ועל כלי הנשק והרכב שסיפק לפעילי השטח שיצאו לבצע פיגועים שונים באזור יהודה ושומרון ובתוך ישראל, כולל פיגועי התאבדות.

באשר לפיגוע במסעדת *"סי פוד מרקט"* בתל-אביב, סיפר אחמד ברגותי כי כאשר קיבל הודעה שהמפגע אברהים חסונה עומד לצאת ולבצע את הפיגוע, וגם כאשר דווח לו כי הלה כבר יצא לדרכו עם מוביליו, הוא התקשר לנאשם והודיעו על כך; הנאשם אישר את הפיגוע *לפני ביצועו*, אך הורה שלא יבוצע בתוך ישראל אלא בשטחים; אחמד ברגותי אמר לו : "יהיה בסדר" (זכ"יד ת/165יי"ג שהוגש ואושר על ידי החוקר "אדם" בעמ' 201 וזכ"יד ת/165 יי"ד שהוגש ואושר על ידי החוקר "דני" בעמ' 200). מייד לאחר ביצוע הפיגוע ב"סי פוד מרקט", שאחמד ברגותי עצמו היה מעורב בהוצאתו לפועל, הוא התקשר אל הנאשם בשעה 03:15 לפנות בוקר ודיווח לו על ביצוע הפיגוע; הנאשם נשמע מרוגז (הודעה ת/165ג עמ' 1, זכ"יד ת/165יד). לדברי אחמד ברגותי, אמר לו הנאשם להודיע לעויס שלא ליטול אחריות על פיגוע זה קודם שידבר עם הנאשם, שכן הנאשם היה מעוניין לנסח את הכרוז (ת/165ד עמ' 1, וזכ"יד ת/165יד). אחמד ברגותי נשאל מדוע מדווח דיווח על הפיגוע לנאשם, והוא השיב : *"למרוואן ברגותי הודעתי באופן רגיל".*

Gilmore 00626

SHATSKY-009311

23



בתי המשפט

<u>בית המשפט המחוזי בתל-אביב-יפו</u>



30. אחמד ברגותי סיפר בחקירתו גם על הפיגוע בתחנת הדלק בגבעת זאב, שנעשה כנקמה על חיסולו של ראיד כרמי. לדבריו, הוא ביקש מהמבצע אבו סטחה שלא להודיע על כך מראש לנאשם. אך אבו סטחה שוחח עם הנאשם על כך, והנאשם אמר לו שלא לבצע את הפיגוע, כנראה משום שחשש לחייו של אבו סטחה שהיה שומר ראשו (זכ"ד ת/165ג עמי 2 וזכ"ד ת/165ג שהוגש ואושר על ידי החוקר "אדם" בעמי 201). זו אחת הדוגמאות לניסיונו של אחמד ברגותי במהלך כל החקירה לחפות על מעשי הנאשם, שכן הנאשם עצמו נטל בחקירתו אחריות לפיגוע זה, וברור מדבריו שהוא הורה על ביצועו (ראה סעיפים 66(5) ופרק ה(7) להלן).

במקרה אחר, עליו סיפר אחמד ברגותי בחקירתו, דחה הנאשם את בקשתה של צעירה בת 15 לבצע פיגוע התאבדות, באומרו "שהיא עוד צעירה לעשות זאת", והורה לאחמד ברגותי להודיע לה זאת (ת/165ג עמי 4, וזכ"ד ת/165יג סי 2י, שהוגש ואושר על ידי החוקר "אדם" בעמי 201). גרסה דומה עולה מדברי הנאשם בחקירתו (זכ"ד ת/25 סי 6-7, שהוגש ואושר על ידי החוקר "סמיתי" בעמי 85, ותמליל חקירה ת/98י עמי 8-9).

במקרה נוסף עליו סיפר אחמד ב/רגותי, התקשר ג'יהאד ג'יעורה לנאשם בבקשה לבצע פיגוע, והנאשם אמר לו שלא לעשות זאת בתוך ישראל או בירושלים; ואולם ג'יעורה השאיר מכונית תופת שהתפוצצה למחרת ליד קניון מלחה בירושלים, חרף דברי הנאשם (ת/165 עמי 18). דברים אלו אושרו על ידי הנאשם בחקירתו (ראה סעיף 66(ה) ופרק ה(20) להלן).

31. לאורך כל חקירתו, ניכרת אצל אחמד ברגותי מגמה ברורה לגמד ולהעלים את מעורבותו של הנאשם בפיגועים השונים. כאשר היה מזכיר את שמו של הנאשם, היה זה בדרך כלל על מנת לציין שהנאשם התנגד לביצוע הפיגוע. עם זאת, אחמד ברגותי אישר בהודעה שנכתבה בכתב ידו כי כי שורה של פעילי שטח בחוליות קיבלו כספים ממשרדו של הנאשם ובידיעתו, וכי הכספים שקיבל מהנאשם שימשו אותו לצורך ביצוע פיגועים שלו ושל אחרים (הודעה ת/165ג(1) עמי 6, הודעה ת/165ג עמי 2 וזכ"ד ת/165יג סי 2ג ו- זי שהוגש ואושר על ידי החוקר "אדם" בעמי 201).

Gilmore 00627

SHATSKY-009312

24



בתי המשפט



בית המשפט המחוזי בתל-אביב-יפו                    תפ"ח 1158/02

כמו כן ברור מדברי אחמד ברגותי כי הנאשם היה מורה לו מדי פעם להפסיק או לדחות את
ביצוע הפיגועים (זכ"ד ת/165ניג ס' 2ח, שהוגש ואושר על ידי החוקר "אדם" בעמ' 201).
מכאן עולה כי במקרים אחרים הם בוצעו באישורו של הנאשם, גם אם לא ידע מראש על
כל פיגוע ופיגוע.

32.     בתחילת חקירתו ניסה הנאשם לגונן על קרוב משפחתו אחמד ברגותי, וטען כי
נעצר עמו משום "שעבר במקרה במקום" (זכ"ד ת/9 ס' 10 שהוגש ואושר על ידי החוקר
"רוברט" בעמ' 62). הנאשם טען כי אחמד ברגותי הפסיק לעבוד אצלו כנהג כשמונה
חודשים לפני מעצרו, ואין שום קשר ביניהם בנוגע לביצוע פיגועים (זכ"ד ת/10 ס' 1, שהוגש
ואושר על ידי החוקר "דני" בעמ' 90, וזכ"ד ת/21 ס' 23, שהוגש ואושר על ידי החוקר
"רוברט" בעמ' 63). בחקירתו במשטרה טען הנאשם כי אחמד ברגותי לא היה מזכיר או או
שומר ראש שלו (ת/104 עמ' 4). בפגישה שהיתה בין הנאשם לאחמד ברגותי בעת מעצרם,
ושהוקלטה ללא ידיעתם, תיאמו השניים עמדות לגבי החקירה, ואחמד ברגותי אמר
לנאשם כי טען בחקירה שהוא איננו קשור לנאשם, אלא רק שימש כנהגו ; הנאשם אמר כי
גם הוא אמר כך (תמליל שיחה ת/127א עמ' 2-3). אחמד ברגותי סיפר לנאשם באותה פגישה
מה בדיוק אמר בחקירותיו לגבי הנאשם, כשהם מתייחסים לפיגועים השונים אליהם
התייחס אחמד ברגותי בחקירתו (עמ' 4).

ואולם, בהמשך בחקירתו בשב"כ אישר הנאשם כי ידע שאחמד ברגותי קשור למספר
חוליות ולביצוע פיגועים רבים כנגד ישראל, וכי כאשר ביקש להפסיק את הפיגועים היה
מודיע זאת גם לאחמד ברגותי. לדבריו, אמר לאחמד ברגותי שהוא "לא מרשה" לבצע
פיגועים בתוך ישראל (תמליל ת/98יא עמ' 18-20). הנאשם אמר כי היה וניאום בינו לבין
אחמד ברגותי, שכלל דיווח ומתן כספים, וכי מבחינתו אחמד ברגותי היה אחראי על
הפעילות הצבאית באזור רמאללה ביחד עם אבו חמיד, וכי השניים היו מבצעים פיגועים
באמצעות מספר חוליות (זכ"ד ת/27 ס' 2-3 שהוגש ואושר על ידי החוקר "סמית" עמ' 85).
הנאשם הודה כי היה נותן כסף לאחמד ברגותי, ותמד בפעולותיו, אף כי טען שאחמד
ברגותי לא היה מדווח לו לפני ביצוע פיגועים (תמליל ת/98ח עמ' 3, 17, 20-24, וזכ"ד ת/24
ס' 4, שהוגש ואושר על ידי החוקר "סמית" בעמ' 85).

Gilmore 00628

SHATSKY-009313

25



בתי המשפט



בית המשפט המחוזי בתל-אביב-יפו     תפ"ח 1158/02

הנאשם הודה כי אחמד ברגותי היה מדווח לו לאחר ביצוע פיגועים (תמליל ת/98 עמ' 19-
25, 40, ותמליל ת/98יא עמ' 9). בשיחתו עם המדובב "פלוני 1", אמר הנאשם כי אחמד
ברגותי שילח ארבעה פיגועי התאבדות באישורו (עדות המדובב בעמ' 106). דברים אלו
תואמים דברים שאמר הנאשם בחקירתו, כאשר נטל אחריות על כמה פיגועים אותם אישר
אישית (ראה סעיף 66 להלן).

הנאשם לא הסתיר כי מסר לאחמד ברגותי עשרות אלפי דולרים לרכישת כלי נשק שונים,
כגון רובי צער ואקדחים, עבור אנשי החוליות שביצעו פיגועים כנגד ישראל. אחמד ברגותי
היה האחראי מטעם הנאשם על רכישת הנשק. הוא פעל תחת פיקודו של הנאשם, והיה
אחראי על "הפעילות הצבאית" באזור רמאללה. הנאשם הודה כי ידע שאחמד ברגותי
קשור לפיגועים כנגד ישראל, וביניהם פיגועים בירושלים ובי"סי-פוד מרקט" בתל אביב
(לכל אלה ראה: זכ"ד ת/23 סי 4-5 שהוגש ואושר על ידי החוקר "דני" בעמ' 90 ; זכ"ד ת/25
סי' 10-11 שהוגש ואושר על ידי החוקר "מופז" בעמ' 58 ; ת/27 סי' 2, 4 ו-1 ת/29 סי' 1 שהוגשו
ואושרו על ידי החוקר "סמית" בעמ' 85 ; ת/28 סי' 4 שהוגש ואושר על ידי החוקר "אבו
ואדי" בעמ' 96 ; ת/65 סי' 4 ו- ת/70 סי' 9 שהוגשו ואושרו על ידי החוקר "סטיב" בעמ' 53 ;
וכן ראה דברי הנאשם בתמלילים ת/98 עמ' 2-6, ת/98ח עמ' 20-24, ת/98 עמ' 10-11 ו-
ת/98יא עמ' 8).

לסיכום קשרי הנאשם עם אחמד ברגותי, ניתן לומר כי הקשר של הנאשם עם פעילי
הטרור היה באמצעות קרובו ומקורבו אחמד ברגותי. כפי שאמר הנאשם בחקירתו על
אחמד : "הוא יוצר קשר עם החוליות האלה. באופן ישיר איננם ישירות. יעני בלעדיו לא
היתה לי התקשרות ישירה עם אף חוליה" (תמליל ת/98יא עמ' 8). כאשר נשאל הנאשם
בחקירתו מי הם ראשי חוליות הפיגועים שפעלו תחת שליטתו, השיב הנאשם כי אחמד
ברגותי היה "חלקית תחת שליטתי וחלקית עבד עם נאצר (עויס)" (תמליל שיחה ת/98יא
עמ' 34).

Gilmore 00629

SHATSKY-009314

26



בתי המשפט



בית המשפט המחוזי בתל-אביב-יפו

תפ"ח 02/1158

### (4)    מוחמד מצלח (אבו סטחה)

33.    מוחמד מצלח המכונה "אבו סטחה" (להלן: "אבו סטחה") היה פעיל שטח נוסף,
שעמד בראש חוליה אשר ביצעה פיגועי רצח. הוא גם היה שומר ראשו של הנאשם בתקופה
מסוימת, ומקורב אליו. בגין פעילותו זו הורשע אבו סטחה על פי הודאתו ונדון לעונש של 9
מאסרי עולם במצטבר (ת/א155-ג). בעדותו פתח אבו סטחה בהצהרה כי לא היה לו שום
קשר עם הנאשם, וכי הנאשם הוא "**אדם פוליטי**" שאין לו קשר עם ה"פעולות הצבאיות".
מעבר לכך לא היה מוכן אבו סטחה להשיב על שאלה כלשהי, ולפיכך הוכרז כעד עוין
והוגשו הודעותיו במשטרה ת/א156-ג לפי סעיף 10א. לפקודת הראיות (עמ' 66-68).
ההודעה ת/156א לא הוגשה באמצעות מי שגבה אותה (השוטר יעקב ברזאני), ולפיכך יש
להתעלם ממנה. ההודעות ת/156ב-ג הוגשו ואושרו על ידי השוטרים מרקו דהאן ומשה לוי
(בעמ' 198, 210), אשר העידו כי ההודעות נמסרו מרצונו החופשי של אבו סטחה. החקירה
התנהלה בשפה הערבית אך ההודעות נרשמו בעברית (שלא על פי המקובל והנדרש).

בהודעותיו מפרט אבו סטחה את הפיגועים שביצע, ומדבריו עולה שאחמד ברגותי, עוזרו
הקרוב של הנאשם, היה מעורב ברבים מהם בצורה ממשית.

34.    הנאשם אישר בחקירתו כי אבו סטחה עבד במשרדו ופעל תחת אחריותו, באמצעות
אחמד ברגותי, וכי הוא ידע שאבו סטחה ביצע פיגועים שונים כנגד אזרחים בגבעת זאב
ובפסגת זאב (זכ"ד ת/30 סי' 2-3, שהוגש ואושר על ידי החוקר "אמילי" בעמ' 54, תמליל
ת/98יא עמ' 35). כאשר נשאל הנאשם מי הם ראשי חוליות הפיגועים שפעלו תחת שליטתו,
הוא כלל בהם את אבו סטחה, באומרו: "**אני לא בורח מזה**" (תמליל ת/98יא עמ' 34).

### (5)    ג'מאל אחויל

35.    ג'מאל אחויל (להלן: "אחוילי") היה פעיל שטח נוסף שקיבל סיוע מהנאשם, והיה
איש הקשר שלו במחנה הפליטים בג'נין.

Gilmore 00630

SHATSKY-009315



בתי המשפט



בית המשפט המחוזי בתל-אביב-יפו                                    תפ"ח 1158/02

אחזויל סירב להשיב על שאלות בעת עדותו, הוכרז כעד עוין והוגשה הודעתו במשטרה
ת/166 לפי סעיף 10א. לפקודת הראיות (עמ' 164-165), באמצעות השוטר מטאנס חדאד
שגבה אותה (עמ' 169). אחזויל כתב את הודעתו בכתב ידו, וחדאד תרגם אותה לעברית.

אחזויל פעל במסגרת גדודי חללי אלאקצא, ואמר בחקירתו כי קיבל סיוע כספי, בין היתר,
מהנאשם, והיה מחולק כסף זה לפעילים אחרים, וביניהם מבוקשים על ידי צה"ל; חלק
מהכסף שימש לרכישת נשק (ת/166 עמ' 1). אחזויל היה בקשר רצוף עם הנאשם, והיה
מדווח לו על פעילות גדודי חללי אלאקצא, ועל המתרחש במחנה ג'נין; לעיתים היו
הפעילים בגדודים אלו מדווחים לנאשם באופן ישיר, כפי שהיה עושה עויס (ת/166 עמ' 5).

הנאשם הכחיש בחקירתו במשטרה כי הכיר את אחזויל (ת/106 עמ' 6). אך בחקירתו בשב"כ
אמר הנאשם כי אחזויל היה מנהיג מחנה הפליטים בג'נין, וחבר בגדודי חללי אלאקצא,
אשר השתייך לחוליות של עויס. הנאשם הכיר היטב את אחזויל, אך טען שמעולם לא מסר
לידיו נשק או כסף, אם כי אחזויל פנה אליו בבקשות סיוע; הנאשם הסביר כי היה פועל מול
עויס, ועויס היה זה שהיה ממלא את בקשותיו של אחזויל (זכ"יד ת/31 סי' 9-7, שהוגש ואושר
על ידי החוקר "מופז'" בעמ' 58). כמו כן אישר הנאשם כי העביר לערפאת את בקשותיו של
אחזויל לקבלת סיוע (זכ"יד ת/67 סי' 4 שהוגש ואושר על ידי החוקר "אמילי" בעמ' 54).

(6)  נאצר א-שויש

36.   נאצר א-שויש (להלן: "שויש") היה אף הוא פעיל בפיגועים שביצעו גדודי חללי
אלאקצא. בגין פעילות זו הורשע על פי הודאתו, ונדון ל- 4 מאסרי עולם במצטבר (ת/157א-
ד). שויש סירב לענות על שאלות בעדותו, אך טען כי הנאשם הוא מנהיג פוליטי שאין לו
קשר לייעניינים צבאיים". הוא הוכרז כעד עוין, הכחיש את הדברים שאמר בחקירתו, ואף
טען כי לא הודה בכלום (עמ' 71-69). הודעותיו של שויש ת/158א-ב הוגשו לפי סעיף 10א.
לפקודת הראיות, באמצעות השוטרים מטאנס חדאד ועוואד עטאף (עמ' 165, 168).

Gilmore 00631

SHATSKY-009316

28



בתי המשפט



**בית המשפט המחוזי בתל-אביב-יפו**                      תפ"ח 1158/02

גובי ההודעות העידו כי ההודעות נרשמו בערבית בכתב ידו של הנחקר מרצונו החופשי,
ותורגמו לעברית על ידי החוקרים. השוטר חדאד העיד כי נכח במשפטו של שויש, והלה
אישר שם את הודעתו בטרם הורשע, שכן לא היה לו סניגור.

37.      בחקירתו (הודעה ת/158א, עמ' 6 והודעה ת/158ב, עמ' 2-4) סיפר שויש כי קיבל
חגורת נפץ במשקל של כ- 18 ק"ג במפקדת המודיעין המסכל ברמאללה על מנת לשמור
אותה ברכבו. לאחר מכן פגש את הנאשם בבית החולים בו טופלה אשתו, והנאשם ביקש
לשוחח אתו בנפרד. בשיחתם שאל אותו הנאשם האם הוא מכיר אנשים אשר יודעים כיצד
להכין חגורת נפץ, או כאלה שיש להם חגורת נפץ. באותו מעמד התקשר שויש לאדם שמסר
לו את חגורת הנפץ (מוזיד אלמצרי), וקיבל את הסכמתו למסור אותה לנאשם, והנאשם
הודיע לו שאחמד ברגותי ישוחח איתו בעניין. למחרת התקשר אחמד ברגותי אל שויש,
והאחרון מסר לו את חגורת הנפץ. שויש שמע באותו יום כי האדם שהחזיק את החגורה
נתפס בירושלים בדרכו לביצוע פיגוע התאבדות.

שויש נשאל בחקירתו האם הנאשם ידע על פיגועי התאבדות ופעילות צבאית, והשיב כי יום
לפני ביצוע פיגוע ההתאבדות על ידי מוחמד חשאיכה נפגש שויש עם הנאשם, וסיפר לו כי
אדם בשם עבד אלכרים אמור לשלוח מתאבד לישראל; הנאשם אמר לשויש להתקשר אליו
אם יזקוק לדבר מה בקשר לפיגוע, נתן לו סכום של 600 דולר, וביקש לעדכן אותו בפרטי
הפיגוע (עמי 6-7). הפיגוע בוצע בירושלים, ואז התקשר הנאשם אל שויש, אשר אמר לו כי
הפיגוע בוצע על ידי גדודי חללי אלאקצא. הנאשם ביקש ממנו להביא לו את הקלטות
המצולמת של המתאבד חשאיכה (עמי 6-7 להודעה ת/158א). בהודעתו השניה ת/158ב
סיפר שויש על הסיוע הכספי שקיבל מהנאשם (עמי 5).

38.      הנאשם הכחיש בחקירתו במשטרה כי הכיר את שויש, וכן הכחיש בהודעתו את
דבריו של שויש (ת/106 עמי 7-9). לא הובאו בפנינו ראיות נוספות על האירועים הנ"ל
אליהם התייחס שויש בחקירתו, ולכן אין כל חיזוק לדבריו אלו, ולא ניתן לסמוך ממצאים
עליהם.

Gilmore 00632

SHATSKY-009317





בתי המשפט



בית המשפט המחוזי בתל-אביב-יפו     תפ"ח 1158/02

(7)    **עלי עיאדיה**

39.    עלי עיאדיה (להלן: "עיאדיה") היה פעיל בתנזים שעסק בעיקר בהדרכת צעירים בשימוש בנשק, ובעניין זה פעל בהנחיית הנאשם. כמו כן השתתף בביצוע פיגועי ירי לעבר חיילים. בעדותו סרב להשיב על שאלות שנשאל, וטען כי הנאשם הוא "איש שלום" (עמ' 169-171). לפיכך הוכרז עד עוין, והודעתו ת/168 הוגשה לפי סעיף 10א לפקודת הראיות, באמצעות השוטר יעקב ברזני, שגבה אותה בשפה הערבית ותרגמה לעברית (עמ' 208).

40.    עיאדיה סיפר בחקירתו על מעורבותו של הנאשם בקורס הירי לצעירים (ת/168, עמ' 1-2), ועל הפיגועים שהוא עצמו ביצע. כמו כן אמר עיאדיה: "ראש התנזים מרוזן בירגותי היה יודע מכל אירועי הירי אותם ביצעו פעילי התנזים עוד לפני שעשו אותם והוא הסכים להם" (עמ' 5). הוא ציין כי כמה חודשים לפני מעצרו ביקש ממנו הנאשם "לקנות נשק מכל סוגיו", ולהעבירו דרך אבו חמדי (עמ' 5).

הנאשם הכחיש בחקירתו במשטרה את הדברים שאמר עיאדיה בחקירתו (ת/106 עמ' 7). ואולם באחת מחקירותיו הודה הנאשם כי הורה לעיאדיה לרכוש אמל"ח ולמסרם לאבו חמדי (זכ"ד ת/43א ס' 3, שהוגש ואושר על ידי החוקר "רוברט" בעמ' 92), דבר שמחזק את דברי עיאדיה בחקירתו.

(8)    **איסמעיל רדאידה, מוהנד אבו חלאוה וכמאל אבו ועד**

41.    איסמעיל רדאידה (להלן: "רדאידה") ביקש לבצע פיגוע, ופנה בעניין זה לנאשם. הוא ביצע את פיגוע הירי במעלה אדומים שבו נרצח הנוער היווני גרמנוס ציפוקטקיס ז"ל (ראה פרק ה(3) להלן). בגין פעילותו החבלנית הורשע רדאידה על פי הודאתו, ונדון למאסר עולם ועוד 20 שנות מאסר במצטבר. בעדותו בתיק זה (עמ' 42-44) סירב רדאידה להשיב על שאלות, הוכרז כעד עוין והודעותיו במשטרה הוגשו מכוח סעיף 10א. לפקודת הראיות (הודעות ת/151א-ת/151ג, הודעה בכתב יד ת/151ד שנקראה, שוחזרה ותורגמה, וקלטת בה שיחזר רדאידה את רצח הנייר ותומללה - ת/151א).

Gilmore 00633

SHATSKY-009318

30



בתי המשפט



בית המשפט המחוזי בתל-אביב-יפו                    תפ"ח 1158/02

הודעותיו של רדאידה הוגשו על ידי החוקרים מרקו דהאן ויצחק יעקובוב, שגבו את ההודעות בערבית, אך רשמו אותן בעברית (בניגוד למקובל ולנדרש), והעידו כי הן נמסרו מרצונו החופשי של רדאידה. הודעתו של רדאידה ת/151א נרשמה בכתב ידו בנוכחות יעקובוב (עמ' 171, 198). עורך השיחזור (מרקו דהאן) לא התייחס לכך בעדותו, ועל כן יש להתעלם מקלטת השיחזור, בהיותה אמרת חוץ של עד שלא הוגשה כדין.

42.    בהודעתו הראשונה (ת/151א) סיפר רדאידה כי החליט לבצע פיגוע כאשר ראה בטלויזיה שתינוקת פלסטינאית נהרגה, ועל כן ניגש למשרדו של הנאשם. השיחה ביניהם התנהלה ביחידות, ורדאידה אמר לנאשם כי הוא רוצה לבצע פיגוע ודרוש לו נשק לשם כך. הנאשם הפנה את רדאידה אל אדם בשם מוהנד (אבו חלאוה) שכינויו "עלאא" (להלן: "מוהנד"), והורה למוהנד להשיג נשק לרדאידה. בהודעתו השניה (ת/151ב) הוסיף רדאידה כי הוא הבהיר לנאשם שהנשק דרוש לו על מנת לבצע פיגועים נגד מטרות ישראליות, ואז הפנה אותו הנאשם אל מוהנד. מוהנד אמר לרדאידה כי ישיג לו שני רובי קלצ'ניקוב, וכי מעתה ואילך הקשר שלו יהיה עם מוהנד ולא עם הנאשם. כעבור כשבועיים התקשר מוהנד אל רדאידה, אשר בינתיים צירף אדם נוסף לפיגוע, והודיע כי הנשקים מוכנים. רדאידה קיבל את הנשקים והתחמושת ממוהנד, אשר תדרך את רדאידה ואת חברו כיצד להפעילם.

לאחר כמה ימים בהם הכינו רדאידה וחברו יאסר את הפיגוע, ותיצפתו לעבר כביש מעלה אדומים, הם ביצעו את הפיגוע, כאשר פתחו בירי לעבר הרכב שבו נסע הנזיר ונמלטו. למחרת התברר לרדאידה בחדשות כי הרג נזיר יווני, ומוהנד התקשר אליו ובא אליו בטענות על כך ; רדאידה הסביר כי חשב שמדובר במתנחל. רדאידה נשאל בחקירתו מדוע פנה לנאשם כאשר החליט לבצע פיגוע, והשיב כי ראה את הנאשם כמה פעמים בטלוויזיה והבין "שהוא האדם היחיד שיכול לעזור לי בהשגת הנשק" (עמ' 5).

בהודעתו השלישית (ת/151ג), גילה רדאידה כי כוונתו המקורית היתה לעשות פיגוע התאבדות, אך הנאשם אמר לו: "פיגועי התאבדות זה העבודה של החמאס והג'האד האיסלמי ושהתנזים עושה פיגועים נגד הצבא והמתנחלים".

Gilmore 00634

SHATSKY-009319

31



בתי המשפט



<u>בית המשפט המחוזי בתל-אביב-יפו</u>                    תפ"ח 02/1158

רד'אידה הוסיף ואמר: "מירואן ברגותי אמר שהוא מוכן לתת לי אמל"ח כדי שאני אעשה **פיגועים נגד חיילים ונגד מתנחלים**" (עמ' 1). גרסתו הנ"ל של רד'אידה עולה גם מן המסמך שכתב בכתב ידו (ת/151ד), אם כי בצורה מתומצתת יותר.

43.       דבריו של רד'אידה של תמכים בדברי הנאשם בחקירתו (תמליל ת/98יא עמי 37-38, ותמליל ת/98ד עמי 2-4, 11-12) שבהם נרשם בטעות השם איסמעיל אלדאבא במקום איסמעיל רדאידה). בחקירתו במשטרה הכחיש הנאשם כי מוהנד עבד במשרדו או היה סגנו, ואמר כי מוהנד לא קשור לתנוים (הודעה ת/102 עמי 3, ת/103 עמי 5, ת/105 עמי 2, ת/106 עמי 1). גם בתחילת חקירתו בשב"כ הכחיש הנאשם כי הכיר את רד'אידה, וכי מוהנד עבד במשרדו (זכ"יד ת/9 סי 8-9 וזכ"יד ת/21 סי 22 שהוגשו ואושרו ע"י החוקר "רוברט" בעמי 62-63).

ואולם בהמשך חקירתו הודה הנאשם כי רד'אידה בא אליו בהצעה לבצע פיגוע התאבדות, והנאשם אמר לו: "אנחנו לא עובדים בפיגועי התאבדות". הנאשם הפנה אותו אל מוהנד, ואמר למוהנד שרד'אידה "צריך אימון...תמצא לו מישהו". כמו כן אמר הנאשם: "סיפק איתו מוהנד וניסו לעשות פיגוע פה במעלה אדומים או במקום אחר, אני ידעתי יותר מאוחר... אז הם ירו על הרכב ונפצע מישהו אלחורי... נהרג יעני" ("אלחורי" משמעותו "כומר" בערבית - ע.ב.). הודאה דומה של הנאשם בגיוסו של רד'אידה לשם ביצוע פיגועים באמצעות מוהנד עולה מדברים שאמר בחקירותיו (ראה : זכ"יד ת/22 סי 12-16 וזכ"יד ת/40 סי 9 שהוגשו ואושרו על ידי החוקר "מופז" בעמי 58, זכ"יד ת/23 סי 6 שהוגש ואושר על ידי החוקר "דני" בעמי 90, ותמליל חקירתו של הנאשם ת/98ד עמי 21-26, ות/98ז עמי 8).

עוד הודה הנאשם בחקירתו כי נפגש עם מוהנד, והעביר לו כספים לצורך ביצוע פיגועים, לאחר שמוהנד סיפר לו כי החוליה שלו ביצעה מספר פיגועים, כולל רצח בני הזוג כהנא ז"יל. הנאשם אמר כי נתן למוהנד סך של כ- 3,000 דולר ואף נשק (זכ"יד ת/43 סי 14-16 שהוגש ואושר על ידי החוקר "רוברט" בעמי 62 ; זכ"יד ת/59 סי 10 שהוגש ואושר על ידי החוקר "ואדי" בעמי 56 ; זכ"יד ת/67 סי 6 שהוגש ואושר על ידי החוקר "אמילי" בעמי 54 ; זכ"יד ת/68 שהוגש ואושר על ידי החוקר "סטיבי" בעי 53).

Gilmore 00635

SHATSKY-009320





32

בתי המשפט

<u>בית המשפט המחוזי בתל-אביב-יפו</u>                    תפ"ח 1158/02

בתמליל חקירתו של הנאשם (ת/98ד עמ' 23-21), הוא מספר על כך שמוהנד הודיע לו
שהחוליה שלו נתפסה, והסביר שמוהנד התייחס *"לאלה שאנחנו סידרנו להם נשק"*.

44.     קשריו של הנאשם עם מוהנד עולים גם מדברים שאמר בהודעתו כמאל אבו ער
(להלן: *"ער"*), לפיהם הוא היה מקבל כסף ממוהנד ביידיעתו ובהוראתו של הנאשם. בדרך
זו הוא קיבל מהנאשם, באמצעות מוהנד, סכום של כ- 25,000 ₪, שרובו יועד לייצור
מרגמה וקניית אקדחים. בשלב מסוים החל הנאשם להתקשר ישירות אל ער, ולברר מהם
צרכיו. כמו כן אמר ער בחקירתו כי הנאשם היה מעביר לו כספים גם דרך ג'ימאל אחויל,
וכי לאחר ביצוע הפיגוע במירב התקשר אליו הנאשם כדי לברר שמות האנשים שהשתתפו
בפיגוע, על מנת להעביר להם כספים (ת/181ג עמ' 5-4, וזכ"יד ת/181ד סעי' 6). ועד אמר
בחקירתו כי הוא ומהנד היו מחליטים ביניהם למה הוא זקוק, ואז הנאשם היה שולח להם
את הכסף; הנאשם נהג להתקשר לוער ולברר שהכסף ששלח לו עם מוהנד אכן הגיע (זכ"יד
ת/181ד סעי' 6.1). בשלב מסוים ניתק הקשר בין ער לבין מוהנד, והנאשם אמר לוער כי יש
לו בעיות כלכליות, ואין לו כסף לקנות כדורים; בשלב זה הפנה הנאשם את ער לג'ימאל
אחויל לצורך קבלת כספים (זכ"דים ת/181ג סעי' 15 ו- ת/181ד סעי' 6.1).

45.     ועד ביצע מספר פיגועי ירי במסגרת פעילותם של גדוד חללי אלאקצא, והוא פרט
את הפיגועים בהם השתתף בהודעותיו במשטרה ובחקירתו בשב"כ. בעדותו סרב להשיב על
שאלות (עמ' 189-188), ולפיכך הוגשה הודעתו במשטרה (ת/181א-ב) לפי סעיף 10א.
לפקודת הראיות, באמצעות החוקר גדיר סאלח, שהעיד כי היא נמסרה מרצונו החופשי של
ועד בשפה הערבית, אך נרשמה בעברית (עמ' 209). כמו כן הוגשו שני זכ"דיםו מחקירתו של
ועד בשב"כ (ת/181ג-ד, שהוגשו באמצעות החוקר "נווה" בעמ' 205). אמרות החוץ של ער
אמנם אינן נתמכות בראיות נוספות, אך הובאו ראיות רבות על הסיוע שהגיש הנאשם
לאנשי השטח לצורך רכישת נשק לביצוע פיגועים.

Gilmore 00636
SHATSKY-009321

33



בתי המשפט



בית המשפט המחוזי בתל-אביב-יפו      תפ"ח 1158/02

### (9) נאסר (חלום) נאג'י אבו חמיד

46. נאסר חלום נאג'י אבו חמיד (להלן: "**חלום**") הוא אחיו של אבו חמיד, והוא ביצע פיגועי ירי מסגרת גדודי חללי אל-אקצא. חלום היה מעורב בפיגוע בו נורתה למוות השוטרת גלית ארביב ז"ל בנווה יעקב ירושלים (ראה פרק ה(10) להלן). הוא גם השתתף בהכנת הפיגוע הקטלני במסעדת "סי פוד מרקט" בתל אביב (ראה פרק ה(12) להלן). הוא הורשע על פי הודאתו ונדון לעונש של חמישה מאסרי עולם מצטברים (ת/161אי-בי). בעדותו סרב חלום להשיב על שאלות (עמ' 76-73), וטען כי הנאשם הוא מנהיג פוליטי שאין לו קשר עם "ענייניים צבאיים". לפיכך הוגשו הודעותיו במשטרה (ת/162אי-ג' על ידי השוטרים מזרחי ואלקרעאן בעמ' 184, 194). הקשר של חלום היה עם אחמד ברגותי, שהיה עוזרו הקרוב של הנאשם.

### (10) זיאד חמודה

47. זיאד חמודה (להלן: "**חמודה**") היה פעיל בתנזים. בעדותו סרב חמודה להשיב על שאלות, ולאחר שהוגשה הודעתו לפי סעיף 10א. לפקודת הראיות, כאשר הוכרז כעד עוין, הוא טען כי חתם על הודעתו על מנת שיעשו לו ניתוח אפנדציט (עמ' 197-166). הוא הכחיש את הדברים שאמר בהודעתו ת/167בי', וטען כי הנאשם הוא "איש שלום". הודעתו של חמודה נגבתה על ידי השוטר אבי עקיבא, אשר לא הובא לעדות, ולפיכך היא לא הוגשה כדין ויש להתעלם ממנה.

חמודה הורשע על פי הודאתו בשורה ארוכה של עבירות ביטחוניות (ת/167א). בכתב האישום בו הודה חמודה, נטען כי הוא גויס לתנזים על ידי הנאשם, לצורך הכשרה צבאית, והובטח לו כי הנאשם ידאג לו לסיוע כספי. כמו כן נטען בכתב האישום בו הודה חמודה כי הוא פנה אל הנאשם לקבלת נשק לצורך ביצוע פיגוע ירי לעבר הישוב פסגות, והנאשם הפנה אותו אל מוהנד לצורך קבלת נשק (פרט חמישי ופרט שביעי לכתב האישום). בחקירתו בשב"כ אישר הנאשם כי חמודה ביקש ממנו נשק, ולמיטב זכרונו לא קיבל זאת (זכ"ד ת/34 סי 5 שהוגש ואושר על ידי החוקר "איתי" בעמ' 52).

Gilmore 00637
SHATSKY-009322

34



בתי המשפט



בית המשפט המחוזי בתל-אביב-יפו                    תפ"ח 1158/02

במקום אחר בחקירתו אמר הנאשם כי ייתכן שחמודה קיבל ממנו רובה MP-5 (תמליל חקירה ת/98הי עמ' 67). אין בחומר הראיות דבר המפליל את הנאשם זולת הודאתו של חמודה בעובדות כתב האישום לפיו הורשע, ולא ניתן לבסס ממצאי כלשהו על סמך הודאה שכזו (ראה סעיף 132(ג) להלן). אך הובאו ראיות רבות אחרות בדבר הסיוע שהגיש הנאשם לאנשי השטח לצורך רכישת נשק לביצוע פיגועים.

(11)   ריאד עמור

48.   ריאד עמור (להלן : "עמור") היה פעיל שטח נוסף של התנזים, שפרט בחקירתו את הפיגועים בהם נטל חלק. בעדותו סרב להשיב על שאלות (עמי 172-174), וטען כי לא היה לו קשר עם הנאשם. הוא הוכרז כעד עוין, והודעותיו ת/169אי-בי הוגשו באמצעות השוטרים דוד מזרחי ויעקב ברזאני, שהעידו כי עמור מסר אותן ונתן עליהם מרצונו החופשי (עמי 186,208). ההודעות נגבו בערבית אך נרשמו בעברית (שלא על פי המקובל והדרוש). עמור הורשע עפ"י הודאתו בביצוע פיגועים רבים (ת/169גי-די).

49.   עמור סיפר בחקירתו כי פגש את הנאשם כחצי שנה לפני מעצרו, והנאשם אמר לו כי הוא מרוצה מהפעילות של עמור וחבריו בבית לחם, וכי עדיף שיעשו פיגועים כנגד הצבא ולא כנגד מטרות אזרחיות, כי "זה עושה בעיות", וייגורם כאב ראש ליו"רי" (ת/169אי עמי 3, ת/169בי עמי 11). הנאשם טען בחקירתו במשטרה כי איננו מכיר כלל את ריאד עמור (ת/104י עמי 9), ואין כל ראיה לסתור טענה זו זולת אמרת החוץ של עמור הטעונה חיזוק, שלא נמצא לה. אך הובאו ראיות רבות אחרות בדבר עמדתו הכללית של הנאשם בעד ביצוע פיגועים כנגד חיילים ומתנחלים.

(12)   נאצר חאגי

50.   נאצר חאגי (להלן) "חאגיי") פעל אף הוא במסגרת הפתייח, ופרט בהודעתו ת/170אי את הפיגועים בהם נטל חלק. בעדותו סרב תחילה להשיב על שאלות, ולאחר מכן הכחיש את כל מה שאמר בחקירתו (עמי 175-176).

Gilmore 00638

SHATSKY-009323

35



בתי המשפט



בית המשפט המחוזי בתל-אביב-יפו          תפ"ח 1158/02

לפיכך הוגשה הודעתו לפי סע' 10א. לפקודת הראיות, באמצעות החוקר משה לוי, שהעיד כי חאג'י מסר את ההודעה מרצונו החופשי לאחר שהוזהר בדבר זכויותיו (עמ' 211-212).

בהודעתו הנ"ל אמר חאג'י כי פנה יחד עם פעילים אחרים למשרדו של הנאשם בבקשה לקבל כספים ונשק. הנאשם אמר להם לחפש נשק, וכי הוא ימנע את רכישתו. מאוחר יותר נתן לו הנאשם 1,200 דולר לצורך רכישת נשק (עמ' 4-5). אין בחומר הראיות דבר לחיזוק אמרת החוץ הנ"ל של חאג'י הטעונה חיזוק, אך הובאו ראיות רבות לסייע שהגיש הנאשם לאנשי השטח ברכישת נשק לצורך ביצוע פיגועים.

(13)   **תחריר ברגותי**

51.   תחריר ברגותי (להלן : "**תחריר**"), שהוא קרוב משפחה של הנאשם, ביצע על פי מה שמסר בחקירתו פיגועי ירי רבים. הוא סרב להשיב על שאלות בבית משפט (עמ' 177-178), ולפיכך הוגשו הודעותיו במשטרה לפי סע' 10א. לפקודת הראיות (ת/171א'-ז'), באמצעות השוטר יעקב ברזאני שגבה אותן, והעיד כי ההודעות נמסרו מרצונו החופשי של תחריר בשפה הערבית, ותורגמו לעברית לאחר מכן (עמ' 207).

52.   תחריר אמר בחקירתו כי פנה אל הנאשם בבקשה לסייע לו להקים חוליה. הנאשם הבטיח לעזור לתחריר בכסף ובתחמושת, ולסייע לאנשיו אם יעצרו. הנאשם אף הציע לתחריר להיות אחראי על החוליה, ולהתרחק מפעילות בעצמו. תחריר הסביר בחקירתו כי פנה אל הנאשם על מנת לקבל נשק לחוליה שהקים (ת/171ד' עמ' 3). לאחר מכן נמשך הקשר באמצעות מוחנד, שרמז לו כי הנאשם אינו מעוניין שהוא יקח חלק בפעילות ; הנאשם עצמו הסביר בתחריר כי עמדתו זו נובעת מכך שחברי החוליה שלו  הם  נוכלים (ת/171 עמ' 4).

הנאשם הכחיש בחקירתו במשטרה את כל דבריו של תחריר (ת/104 עמ' 10-9). ואולם בחקירתו בשב"כ הודה הנאשם כי תחריר פנה אליו על מנת לבצע פיגועים, וביקש נשק לצורך כך.

Gilmore 00639

SHATSKY-009324

36



**בתי המשפט**



| | |
|---|---|
| ת"פ 1158/02 | **בית המשפט המחוזי בתל-אביב-יפו** |

אלא שלטענת הנאשם הוא לא נענה לבקשה (זכ"ד ת/30 ס' 1, שהוגש ואושר על ידי החוקר "אמילי" בעמ' 54). אין בחומר הראיות דבר זולת אמרת החוץ של תחריר, הטעונה חיזוק שלא נמצא, לסתירת טענתו של הנאשם. אך הובאו ראיות רבות לכך שהנאשם סייע לאנשי חוליות הטרור לרכוש נשק לצורך ביצוע פיגועים.

### (14)   אחמד מוצפר

53.   אחמד מוצפר היה סוחר נשק שסיפק כלי נשק לאנשי התנזים ולגדודי חללי אלאקצא. בעדותו (עמ' 186-188) סרב להשיב על שאלות, והתכחש לכל מה שאמר בחקירתו. מוצפר הוכרז כעד עוין והודעתו במשטרה הוגשה לפי סעיף 10א. לפקודת הראיות (ת/179), באמצעות החוקר יעקב ברזאני, שהעיד כי ההודעה נמסרה לאחר שמוצפר קיבל אזהרה לגבי זכויותיו, וחתם על ההודעה שנגבתה בערבית, אך נרשמה בעברית (עמ' 208).

בהודעתו סיפר מוצפר על פגישה שלו ושל חבריו במשרדו של הנאשם, יומיים לפני הריגתו של ראיד כרמי. הנאשם אמר להם כי הם צריכים להמשיך בפעילות בכפר מגוריהם, ולא ברמאללה, והבטיח לעזור להם. לאחר מותו של כרמי קיבל מוצפר הוראה לבצע פיגוע נקמה; ההוראה הגיעה ממחמוד גיאבר, שעבד במשרדו של הנאשם, ולכן הבין מוצפר שמדובר בהנחיה של הנאשם (ת/179 עמ' 6-7). הנאשם הכחיש בחקירתו במשטרה את דבריו של מוצפר (ת/104 עמ' 3), ואין ראיה לחיזוק אמרת החוץ של מוצפר, זולת הראיות הרבות שהובאו בדבר קריאתו של הנאשם לנקום בדרך פיגוע את מותו של כרמי.

### (15)   שריף נאג'י

54.   שריף נאגי (להלן: "שריף"), היה חבר בחוליה של אחיו אבו חמיד, שביצעה פיגועים כנגד אזרחים ישראלים, והוא גם היה שומר ראשו של הנאשם. שריף היה זה שליווה את המתאבד אברהים חסונה, אשר ביצע את הפיגוע ב"סי פוד מרקט" בתל-אביב, הוא פירט בהודעתו את כל מעלליו.

Gilmore 00640

SHATSKY-009325





בתי המשפט

<u>בית המשפט המחוזי בתל-אביב-יפו</u>                          תפ"ח 02/1158

שריף, כמו יתר חבריו, סרב בעדותו להשיב על שאלות, פרט לכך שטען כי הכיר את הנאשם
רק מהטלויזיה. הוא הוכרז כעד עוין והודעתו ת/182, אליה צורף כתב ידו המתורגם
בערבית ת/182א, הוגשה באמצעות החוקר אבי בן לולו, שהעיד כי ההודעה נמסרה מרצונו
החופשי של שריף (עמ' 210).

55.   בהודעתו ת/182 מספר שריף על פיגועי הירי שביצע לעבר חיילים ומתנחלים
במסגרת ארגון התנזים של פתייח. הוא הסביר כי ביצע את הפיגועים על מנת
שהאינתיפאדה תימשך דווקא משום שהוא מעניין בשלום, והוסיף : *כך היו אומרים לנו
ערפאת ומרואן ברגותי וחוסין אשיך היו אומרים בטלויזיה הפלשתינאית ובאלג'זירה...
הם היו אומרים שאם האינתיפאדה תימשך אז אנחנו נקבל יותר שטחים ויותר דברים
מישראל* (עמ' 4). הנאשם הכחיש בחקירתו במשטרה אמירת דברים אלו (ת/103 עמ' 5).

לאחר שהחוליה של שריף התפרקה בשל מותו של מוחמד עומסי, החל שריף לשמש כשומר
ראשו של הנאשם במשך כחצי שנה עד למעצרו. הוא אמר בחקירתו על הנאשם : *הייתי
שומע אותו אומר לאנשים שלו שימשיכו בפיגועים והיה אומר זאת בטלויזיה הישראלית
והערבית באופן חופשי* (עמ' 5). בחלקה השני של הודעתו סיפר שריף על חלקו בפיגוע
במסעדת "סי פוד מרקט" בתל-אביב, ועל מעורבותו של אחמד ברגותי בפיגוע (עמ' 5-11).
הנאשם הכחיש בחקירתו כי היה לו קשר כלשהו עם שריף, אם כי הכיר אותו (זכ"ד ת/34
ס' 4, שהוגש ואושר על ידי החוקר "איתי" בעמ' 52). ואולם הדברים שאמר שריף נתמכים
בראיות רבות שהובאו על כך שהנאשם היה קורא באמצעי התקשורת לבצע פיגועים כנגד
ישראל, וכך אף הורה לאנשיו לעשות.

(16)   <u>אמיד אבו רדאחה</u>

56.   אמיד אבו רדאחה (להלן : *אבו רדאחה*) היה פעיל נוסף בתנזים שביצע פיגועי ירי
לעבר חיילים ומתנחלים, כפי שסיפר בחקירתו. בעדותו טען שלא היה לו שום קשר עם
הנאשם ועם אחמד ברגותי, וכי לא קיבל נשק מהנאשם אלא מהרשות הפלשתינאית.

Gilmore 00641

SHATSKY-009326

38





בתי המשפט

הוא טען שהחוקרים כתבו בהודעתו דברים שלא אמר, והכחיש את הדברים המופיעים בהודעתו (עמ' 194-192). הודעתו של אבו רדאחה (ת/183) הוגשה באמצעות החוקר מאיר כהן, אשר העיד כי ההודעה נמסרה מרצונו החופשי של אבו רדאחה, נגבתה בערבית אך נרשמה בעברית (שלא על פי המקובל והנדרש), והנחקר חתם עליה (עמ' 209).

57.    אבו רדאחה סיפר בהודעתו כי את הנשק והתחמושת לביצוע פיגועים קיבל מהנאשם ומאחמד ברגותי, שאף נתנו לאנשי החוליה כסף להוצאות שוטפות (עמ' 2, 6). הנאשם הכחיש בחקירתו במשטרה את דבריו של אבו רדאחה (ת/104 עמ' 3). ואולם הובאו ראיות רבות על כך שהנאשם עסק באספקת כספים ונשק לאנשי השטח של התנזים לצורך ביצוע פיגועים כנגד ישראל.

### (17)    אשרף ג'אבר

58.    אשרף ג'אבר (להלן: "ג'אבר") היה אף הוא פעיל שטח בתנזים, שביצע פיגועים כנגד מטרות ישראליות יחד עם אחרים, וביניהם אבו רדאחה. ג'אבר סרב להשיב על שאלות בעדותו (עמ' 197-195), ולפיכך הוגשה הודעתו בצרוף שרטוט שערך (ת/א184-ב) באמצעות החוקר משה לוי, אשר העיד כי ההודעה נמסרה מרצונו הטוב של הנחקר, נגבתה בערבית ותורגמה לעברית (עמ' 212).

59.    בהודעתו ת/א184 סיפר ג'אבר על הפיגועים שביצע, וציין כי פנה עם חבריו למשרדו של הנאשם בבקשה לקבל תחמושת וכספים לחברי החוליה; הנאשם הבטיח כי הוא ישלם עבור התחמושת, ואכן עשה כן באמצעות אחמד ברגותי, שהכדורים נמסרו לו תמורת סך של 3,000 ₪. ג'אבר הסביר כי מסר את הכדורים לנאשם, משום שהוא ראש התנזים והוא מחלק את הכדורים לפעילי התנזים (עמ' 3-4).

הנאשם הודה בחקירתו כי ג'אבר ביקש ממנו סיוע כספי ונשק, אך אמר שאיננו זוכר מה בדיוק נתן לו (זכ"יד ת/48 סי' 2-3, שהוגש ואושר על ידי החוקר "רוברטי" בעמ' 62).

Gilmore 00642

SHATSKY-009327

39



בתי המשפט



בית המשפט המחוזי בתל-אביב-יפו          תפ"ח 1158/02

ז.   דברי הנאשם בחקירתו וראיות נוספות בדבר תפקידו ומעורבותו בפיגועים
     נגד ישראל

     (1)   אחריותו הכוללת של הנאשם לפעילות חוליות הטרור ומידת שליטתו בהן

60.   הנאשם, כאמור לעיל, לא הכחיש בחקירתו בשב"כ כי היה מפקדם ומנהיגם של
      פעילי השטח של הפת"ח בגדה, היה מפקד הפת"ח והתנוים בגדה, הקים את גדודי חללי
      אלאקצא והיה אחראי על פעילותם. הוא גם אישר כי היה אחראי על אספקת כספים
      ואמל"ח לחוליות השטח, וכן היה אחראי על פעילותגו הצבאית (ראה סעיף 17 לעיל).
      הנאשם הסביר בחקירתו כי מצא עצמו מעורב יותר ויותר בקשר עם "החוליות הצבאיות",
      אשר היו פונות אליו בבקשות סיוע שונות, שכן אנשים כמו ראיד כרמי ונאצר עויס ראו בו
      את מפקדם. הוא גם אמר כי הקשר שלו עם אנשי החוליות בוצע באמצעות עוזרו ונהגו
      האישי אחמד ברגותי. הנאשם עשה אבחנה בין פיגועים בתוך ישראל, שעליהם סרב לקחת
      אחריות, לבין פיגועים שביצע הפת"ח בגדה המערבית, עליהם הוא לוקח בחקירתו אחריות
      מלאה (זכ"יד ת/25 סי' 20, שהוגש ואושר על ידי החוקר "מופז" בעמ' 58). הנאשם הדגיש כי
      הוא אחראי לפעילות של הפת"ח בגדה, אך איננו בקיא בפרטים, כגון סוג הנשק, אופן
      רכישתו, תכנון הפיגועים וביצועם (זכ"יד ת/27 סי' 1, שהוגש ואושר על ידי החוקר "סמיתי"
      בעמ' 85).

      בחלק מחקירותיו טען הנאשם כי הוא איננו אחראי באופן ישיר מבחינה פיקודית לפעילותן
      של חוליות השטח (זכ"יד ת/42 סי' 7, שהוגש ואושר על ידי החוקר "יואדי" בעמ' 96). ואולם
      בשלבים אחרים של חקירתו הודה הנאשם כי הוא אחראי לפעילותן של החוליות שפעלו
      עם אחמד ברגותי ואבו סטחה, משום שאלה היו קרובים אליו והוא מימן את פעילותם;
      ביתר פירוט הוא ציין כי הוא רואה עצמו אחראי לשלושה פיגועים, בגבעת זאב, בגבעה
      הצרפתית, ובגשר עטרה (המבוא לזכ"יד ת/38 שהוגש ואושר על ידי החוקר "שמיתי" בעמ'
      85). הנאשם לא ראה עצמו אחראי, בדבריו אלה, לפיגועים שביצעו החוליות של עויס,
      מנצור שרם ואחרים שצוין, ולא ראה עצמו כמפקדם. הנאשם אמר על יחסיו עם עויס:
      "אני יש לי שליטה כבוד על נאצר, לא שליטה בפועל" (תמליל שיחה ת/98יא עמ' 17).

40



## בתי המשפט



בית המשפט המחוזי בתל-אביב-יפו          תפ"ח 1158/02

הנאשם הסביר בחקירתו, בהתייחסו לחוליות השטח שביצעו פיגועים כנגד ישראל (תמליל
שיחה ת/98א עמ' 4):

"החוליות האלה מצאה לעצמה יותר מכתובת אחת. מה זאת אומרת כתובת.
כתובת שהיא פונה אליו ומבקשת מימון. לתאם איתו את העבודה שלה, אני אחד
מהכתובות האלה, אני כתובת מכמה כתובות. ראשי מנגנוני הביטחון הם גם
כתובות".

מכאן נובע כי לדברי הנאשם לפחות חלק מהחוליות תיאמו עמו את הפיגועים, וראו בו
כתובת למימונם, כפי שאכן עולה מראיות רבות שהובאו בפנינו. הנאשם אמר בעניין זה כי
הקשר שלו עם החוליות לא היה ישיר, משום שהוא לא רצה להיכנס לתחום הצבאי, ולא
רצה לעסוק "בהרס" (תמליל שיחה ת/98א עמ' 6). אכן, בעיקרו של דבר, הקשר של
הנאשם עם חוליות הפיגוע התקיים באמצעות אנשי קשר שהיו מקורבים אל הנאשם,
ובעיקרו אחמד ברגותי. כפי שאמר הנאשם על אחמד ברגותי: "הוא יוצר קשר עם החוליות
האלה. באופן ישיר איתם ישירות. יעני בלעדיו לא היתה לי התקשרות ישירה עם שום
חוליה" (תמליל שיחה ת/98א עמ' 8).

הנאשם טען אמנם כי חוליות השטח היו מבצעות פיגועים גם אלמלא תמיכתו בהן, וגם
אלמלא הסיוע הכספי והארגוני שהעניק להן (זכ"ד ת/63 סי' 18-20 שהוגש ואושר על ידי
החוקר "נאור" בעמ' 82). טענה זו אינה מפחיתה במאומה מאחריותו של הנאשם
לפיגועים שביצעו חוליות אלו.

61.      בתחילת חקירתו בשב"כ הכחיש הנאשם כי היה אחראי למתן כספים ונשק לשם
ביצוע פיגועים (זכ"ד ת/14 סי' 4 שהוגש ואושר על ידי החוקר "גבי" בעמ' 93, זכ"ד ת/10 סי'
1, שהוגש ואושר על ידי החוקר "דני" בעמ' 90). ואולם בהמשך חקירתו הודה הנאשם
(זכ"ד ת/29 סי' 1ג-ד שהוגש ואושר על ידי החוקר "סמית" בעמ' 85):

Gilmore 00644

SHATSKY-009329

41



בתי המשפט

"במסגרת תפקידי כמזכיר הפת"ח אני אחראי לכל הנעשה כגון אספקת כספים לחוליות, רכישות נשק וביצוע פיגועים. יש חוליות רבות בשטח, חלקן מאורגנות תחת פיקודי באמצעות מס' אנשים כגון אחמד ברגותי, נאצר עויס, ויש בשטח גם חוליות לא מאורגנות מטעם הפת"ח שאליהן ועימן אין לי קשר".

הנאשם לא התכחש ליכולת ההשפעה שלו על חוליות הטרור שלהן סייע בכסף ובמתן נשק, ואמר בהתייחסו לחוליה שכזו (תמליל בחקירתו ת/98ד עמ' 32) : "אם אתה קניית לה נשק, אם אתה נותן לה את הנשק, אם אתה ממומן אותה ואתה מתכנן בשבילה. על זו אתה יכול להשפיע". ואולם הנאשם הוסיף: "משפיע, אותה לא יכול לשלוט" (שם, עמ' 37).

62.    הנאשם סיפר בחקירתו כי כאשר קיבל החלטה אסטרטגית לבצע פיגועים כנגד ישראל על מנת להתנגד לכיבוש, הוא הקים חוליות, וסיפק לה באופן לא ישיר כספים ואמל"ח לצורך ביצוע פיגועים. הוא ציין כי את הפיגועים הובילו בעיקר אבו חמיד, אחמד ברגותי ועויס (זכ"ד ת/35 ס' 1, שהוגש ואושר על ידי החוקר "דני" בעמי 90). מבחינתו, מי שהיה מטפל בפעילות הצבאית באזור רמאללה היו אחמד ברגותי ואבו חמיד, שהפעילו כמה חוליות (זכ"ד ת/27 ס' 2, שהוגש ואושר על ידי החוקר "סמיתי" בעמי 85).

הנאשם הודה כי תמך באחמד ברגותי וסייע לו בכספים, וכי ידע שהוא אחראי לביצוע פיגועים שונים (תמליל ת/98ח עמי 20-24). כמו כן, הודה הנאשם כי היה מעודד את ראיד כרמי לבצע "פעילות כנגד הכיבוש", וסייע לו מבחינה כספית, כאשר בקשות הסיוע הועברו לערפאת שאישר אותם (זכ"יד ת/67 ס' 8, שהוגש ואושר על ידי החוקר "אמילי" בעמי 54). בחקירתו במשטרה, לעומת זאת, הכחיש הנאשם כל קשר עם ראיד כרמי (ת/104 עמי 8), ובתחילת חקירתו בשב"כ טען כי העביר לו כספים בלא שידע לאיזו מטרה נועדו (זכ"ד ת/18 ס' 5, שהוגש ואושר על ידי החוקר "נדב" בעמי 78).

63.    קשריו של הנאשם עם פעילי הטרור של הפת"ח, והסיוע השוטף שהגיש להם, עולים בבירור מן המסמכים שנתפסו על ידי צה"ל במבצע "חומת מגן" במשרדי הארגונים, כולל משרדו של הנאשם (קלסר ת/5).

Gilmore 00645

SHATSKY-009330

42



בתי המשפט



תפ"ח 1158/02 **בית המשפט המחוזי בתל-אביב-יפו**

התביעה הגישה חוות דעת של מומחה מז"פ המוכיחה כי הנאשם חתום על חלק מהמסמכים, ולגבי חלקם האחר ניתן להסיק מסקנות מתחייבות מעצם העובדה שהם נשלחו אל הנאשם, או נמצאו במשרדו. רס"ן ל', סגן מפקד היחידה העוסקת באיסוף מסמכי שלל, העיד על תפיסת המסמכים, סימונם ומיונם (בעמ' 46-48). המסמכים שנתפסו הועברו לחוקר השב"כ "עוגן" (ראה עדותו בעמ' 48), אשר זיהה בעדותו את המסמכים שצורפו לזכד"יים מחקירתו של הנאשם (עמ' 48-50). הנאשם אמר בשיחתו עם אחמד ברגותי, שהוקלטה בלא ידיעתם של שניים, כי מדובר במסמכים שנתפסו במשרדו, והשניים היו מוטרדים מאוד מכך שתפסו את "כל הארכיון" של הנאשם; הנאשם אמר "*כל הארכיון המשרד, כאן*" (ת/127גג עמ' 61-62).

חוות דעת מז"פ לגבי כתב ידו של הנאשם (ת/5), ניתנה על ידי יאיר בן שמש, והיא התבססה על שלושה כתבי יד של הנאשם, שלגביהם הוא אישר בחקירתו כי הם נכתבו בכתב ידו (שלושת המסמכים בת/5 הם 12, 94-96 ו- 35, והנאשם מתייחס אליהם בזכד"יים ת/28, ת/32ב, ת/47, ת/85 ות/85א, שהוגשו ואושרו על ידי חוקרי השב"כ "ואדי" בעמ' 96 ו"אופיר" בעמ' 87). חוקר מז"פ חילק את המסמכים לארבעה קטגוריות: אלה שנכתבו על ידי הנאשם ללא ספק של ממש; אלה שקיימת אפשרות סבירה שנכתבו על ידו; אלה שסביר מאוד שנכתבו על ידו; ואלה שהנאשם זיהה בחקירתו כי הם נכתבו על ידו. בחקירתו במשטרה הכחיש הנאשם לגבי כל מסמך שהוצג לו כי כונב ידו מופיע עליו (ת/108-109).

64. מסמך ת/5 (5-3) הוא דו"ח שנשלח לנאשם ביום 8.5.01, וסוקר את פעילות גדודי חללי אלאקצא באזור ג'נין. בדו"ח מופיעים מספר החברים והמבוקשים בקרב גדודי חללי אלאקצא, חלוקתם של הגדודים, פירוט פעילותם ותוצאות הפיגועים שביצעו. בין הפעולות שביצעו הגדודים לפי מסמך זה מניים פיגועי ירי בכבישי יהודה ושומרון, הריגתם ופציעתם של מתנחלים, ופיגוע בתוך שטח ישראל (אום אלפאחם), שבו נהרג קצין ישראלי ונפצעה אזרחית. בנוסף כולל המכתב בקשה לסייע לגדודים לסייע מבחינה כספית.

Gilmore 00646

SHATSKY-009331

43



בתי המשפט



בית המשפט המחוזי בתל-אביב-יפו     תפ"ח 1158/02

### מעורבותו האישית של הנאשם בפיגועי הטרור שביצעו חוליות שנתות פיקודו  (2)

65.   מיד עם מעצרו טען הנאשם כי הוא "איש פוליטי", אשר אינו מעורב בפעילות צבאית ובביצוע, תכנון, מימון או הנחיה של פיגועים נגד כוחות הביטחון או נגד ישראלים (זכ"דים ת/6 ס' 3 ות/9 ס' 2 שהוגשו ואושרו ע"י החוקר "רוברט" בעמ' 62, זכ"ד ת/14 ס' 4 שהוגש ואושר על ידי החוקר "גבי" בעמ' 93). ואולם, בהמשך חקירתו בשב"כ הודה הנאשם במעורבות עמוקה בפעילות "הצבאית", שהיא שפה נקיה לביצוע פיגועי רצח כנגד אזרחים ישראלים. במקרים מסוימים, כך מסתבר מדברי הנאשם, הוא אף הורה על ביצוע פיגועים באופן ספציפי, או נתן את אישורו המוקדם לביצועם.

הנאשם טען בחקירתו כי הוא עצמו מעולם לא תכנן פיגוע לפרטי פרטיו, וכי החוליות היו מערבות את אחמד ברגותי, ולא אותו, בביצוע הפיגועים שלא תמיד היו על דעתו (זכ"ד ת/72 ס' 3, שהוגש ואושר על ידי החוקר "דני" בעמ' 90). כך למשל הדגיש הנאשם כי הוא דחה את כל ניסיונותיו של אחמד ברגותי להביא אליו אנשים שיבצעו פיגועי התאבדות (זכ"ד ת/53 ס' 11-13, שהוגש ואושר על ידי החוקר "מופז" בעמ' 58). עם זאת, הנאשם הודה כי הוא "נושא באחריות קולקטיבית על הפעילות של אנשי הפת"ח הצבאיים" (זכ"ד ת/21 ס' 14, שהוגש ואושר על ידי החוקר "רוברט" בעמ' 63). הנאשם אמר בחקירתו: "אני לא הוצאתי פקודות לשום חוליה חוליה שוואלה באגו ואמרגו ואלה אנו רוצים את הפיגוע פלוני במקום מסויים כזה, את זה אנחנו משאירים בשבילה ובשביל האמירה שלה, ולרצון האישי שלה..." (תמליל שיחה ת/98יא עמ' 9).

לדברי הנאשם, לאחר הריגתו של ראיד כרמי בחודש ינואר 2001, עברו הפיגועים לתוך שטח ישראל. הוא ניסה להפעיל את השפעתו על החוליות שסרו למרותו על מנת למתן את הפיגועים בתוך ישראל, אך לא תמיד הצליח בכך (זכ"ד ת/70 ס' 17, שהוגש ואושר על ידי החוקר "סטיבי" בעמ' 53). כך למשל אירע בעניינו של מנצור שרם, שהיה אחראי לפיגוע ההתאבדות בחדרה כנקמה על הריגתו של כרמי.

Gilmore 00647

SHATSKY-009332

44



בתי המשפט



בית המשפט המחוזי בתל-אביב-יפו     תפ"ח 1158/02

הנאשם שוחח על כך לאחר הפיגוע עם עויס ומנצור ודיווח על כך לערפאת (זכ"ד ת/45 ס' 6
‎-11, שהוגש ואושר על ידי החוקר "ואדי" בעמ' 96). יצויין כי מנצור שרם היה מחליפו של
ראיד כרמי, ומינוי זה אושר על ידי הנאשם (ראה דברי אחמד ברגותי בהודעתו ת/165יג
עמ' 5).

הנאשם אמר בחקירתו כי בדרך כלל היה שומע על הפיגועים לאחר ביצועם מעויס או
מאחמד ברגותי, וכי לא היה יורד לפרטים כיצד בוצע הפיגוע ועל ידי איזו חוליה; הוא
פירט בחקירתו את הפיגועים שלגביהם קיבל דיווח לאחר ביצועם (זכ"ד ת/70 ס' 9, 12, 17,
שהוגש ואושר על ידי החוקר "סטיב" בעמ' 53, וזכ"ד ת/39 ס' 8 שהוגש ואושר על ידי
החוקר "ואדי" בעמ' 96). הנאשם הדגיש אמנם לכל אורך חקירתו כי פרט למקרה אחד
הוא לא היה מעורב בעצמו בנטילת האחריות הפומבית על הפיגועים שביצעו גדודי חללי
אלאקצא. מי שהיה מוציא את גילוי הדעת לאחר הפיגוע היה עויס בתיאום עם אחמד
ברגותי. ואולם לא זו בלבד שאחמד ברגותי פעל כזרועו הארוכה של הנאשם, אלא
שהנאשם עצמו הוסיף על הדברים דלעיל ואמר: "אני נותן כיסוי לעניין הזה, פוליטי
תקשורתי... אני מדבר על העניין הזה... אני קורא למאבק, אני מעריך את הפיגועים
האלה במאבק וכו'..." (תמליל שיחה ת/98יא עמ' 46-40). במילים אחרות: הנאשם היה
נוטל אחריות על הפיגועים באמצעי התקשורת, בצורה עקיפה וכוללנית מבלי להתייחס
לפיגוע ספציפי, ואילו פקודיו היו נוטלים את האחריות הספציפית לכל פיגוע ופיגוע.

מה שברור מדברי הנאשם הוא שמפקדי חוליות הטרור ראו בו את מנהיגם, וכי הוא תמך
בהם וסייע להם באספקת אמל"ח לאורך כל פעילותם, ביודעו שהם מבצעים פיגועי רצח
כנגד מטרות צבאיות ומטרות אזרחיות בשטחי יהודה ושומרון ובתחומי ישראל, כולל פיגועי
התאבדות - שלטענת הנאשם היו למורת רוחו. העובדה שפעילי הטרור חבו חובת דיווח
לנאשם, מוכיחה שהם הבינו כי הם כפופים לנאשם וכי הם סרו למרותו. כאשר המשיך
הנאשם לתמוך בפעילים אלו ולסייע להם לאחר שדיווחו לו על פיגועים - גם כשהיו אלה
פיגועי התאבדות בתוך ישראל - הביע הנאשם בכך את תמיכתו בהמשך פעילותם, כולל
פעילות שהוא כביכול לא תמך בה.

Gilmore 00648

SHATSKY-009333

45



בתי המשפט



בית המשפט המחוזי בתל-אביב-יפו                    תפ"ח 1158/02

הנאשם עצמו סיפר בחקירתו כי יאסר ערפאת נתן בו על הפיגועים שבוצעו בתוך ישראל
(זכ"ד ת/141 ס' 10, שהוגש ואושר על ידי החוקר "רוברט" בעמ' 58); מכאן נובע שגם
ערפאת ראה בנאשם אחראי לכל הפיגועים שבוצעו על ידי חוליות התנזים וגדודי חללי
אלאקצא שתחת פיקודו של הנאשם.

הנאשם נתן אישור, ולו בדיעבד, לפיגועים שביצעו החוליות שסרו למרותו : בחלקם תמך
במפורש, ובחלקם האחר תמך בהתנהגות או בהסכמה שבשתיקה. הוא הפעיל את החוליות
שתחת פיקודו בצורה עקיפה, באמצעות הכפופים והמקורבים לו, כגון אחמד ברגותי, אבו
חמיד, אבו סטחה ועויס, תוך שמירה על ריחוק מן המפגעים עצמם, והימנעות מכוונת
מלערב עצמו באופן אישי בתכנון הפיגועים וביצועם. גם נטילת האחריות על הפיגועים
נעשתה על ידי הנאשם בצורה "נקיה" ועקיפה - לא באמצעות גילוי דעת של גדודי חללי
אלאקצא, אלא בצורה פוליטית, כביכול, ומרומזת בתקשורת.

66.    מן האמור לעיל עולה כי הנאשם הודה בחקירתו בדברים אשר עולים בבירור גם
מעדותיהם של פעילי הטרור, דהיינו, כי מבחינה פיקודית הוא היה אחראי על פעילות
התנזים וגדודי חללי אלאקצא בגדה המערבית, שראו בנאשם את מנהיגם; סייע לפעילי
הטרור במתן כספים ואמל"ח לצורך ביצוע הפיגועים; הנהיג באופן אישי חלק מחוליות
הטרור, באמצעות מקורביו ; עודד את חוליות הטרור לבצע פיגועים כנגד ישראל ; קיבל
דיווחים מן החוליות לאחר ביצוע הפיגועים - וכל זאת ביודעו כי חוליות יאלו מבצעות
פיגועי רצח והתאבדות גם בתוך ישראל, וגם כנגד אזרחים.

זאת ועוד : הנאשם אף הודה בחקירתו במעורבות אישית הנוגעת לפיגועי רצח ספציפיים
של החוליות שבהנהגתו, כדלקמן :

Gilmore 00649
SHATSKY-009334

46



בתי המשפט



בית המשפט המחוזי בתל-אביב-יפו                              ת"פ 1158/02

(אא)    הפיגוע בתחנת הדלק בגבעת זאב

לאחר הריגתו של ראיד כרמי ביום 14.1.02, קרא הנאשם בטלויזיה של אבו דאבי לגדודי חללי אלאקצא לבצע פיגועי נקמה כנגד ישראל (ת/3 מיום 14.1.02). ואולם הנאשם לא הסתפק בקריאה פומבית זו. הוא הורה לאחמד ברגותי להוציא לפועל פיגוע נקמה על מותו של כרמי. ואכן, ביום 15.1.02 בערב נתן אחמד ברגותי נשק לאבו סטחה על מנת לבצע את הפיגוע כאמור. בערב יום זה ירו חברי התולים של אבו סטחה לעבר מכוניתה של יואלה חן ז"ל ליד גבעת זאב, רצחו אותה ופצעו את הנוסעת שהיתה עמה (על פיגוע זה ראה פרק ה(7) להלן).

הנאשם הודה בחקירתו כי לאחר מותו של כרמי הוא אמר לאחמד ברגותי כי הוא מעונין בפיגוע נקם, ואחמד וחבריו ביצעו את הפיגוע בגבעת זאב, ודיווחו לו לאחר מכן כי היתה הרוגה אחת בפיגוע (תמליל ת/98יא, עמי 44-45). הוא אף הודה כי פיגוע זה בוצע על פי הוראתו, ונטל אחריות לביצועו (זכ"ד ת/23 סי 8-10, שהוגש ואושר על ידי החוקר "דני" בעמי 90 ; זכ"ד ת/24 סי 5 והמבוא לזכ"ד ת/38 שהוגשו ואושרו על ידי החוקר "סמית" בעמי 85 ; זכ"ד ת/26 סי 3-6, שהוגש ואושר על ידי החוקר "נדב" בעמי 79). הנאשם אמר: "אני דיברתי בטרוף האבלים, שצריך לנקום ולהשיב על המעשה הזה...", אם כי לטענתו לא היה מדובר ב"פקודה" שהוא נתן לאחמד ברגותי. באחד מחקירותיו הודה הנאשם: "אמרנו לאחמד שיענן יבצע פיגוע" (תמליל שיחה ת/98ב עמי 19, וכן עמי 20-45).

הנאשם הסביר כי חיסולו של כרמי הביא לאובדן השליטה בפת"ח, ולכן "קרא להשובה על חיסול של ראיד כרמי בכל אמצעי התקשורת... ובאמת החלו התגובות. ובפעם הראשונה פת"ח הוצה את הקו האדום בביצוע פיגועים בתוך ישראלי" (תמלילי חקירה ת/98ר עמי 30-31, ו- ת/98יא עמי 10-9, 15-12, 44-45). הוא ציין בחקירתו כי ההוראה שנתן לבצע פיגוע נקמה בעקבות הריגתו של כרמי נבעה מכך שהוא חש אחריות למותו של כרמי בעריצומה של הפסקת אש, שבה קרא הנאשם לכל הפלגים להפסיק את הפיגועים על סמך התחייבות של ראש השב"כ שלא לבצע פעולות חיסול כנגד אנשי הפת"ח;

Gilmore 00650

SHATSKY-009335

47





בתי המשפט

### בית המשפט המחוזי בתל-אביב-יפו

היתה זו הפעם היחידה בה הימרה את פיו של ערפאת, אשר דרש באותה עת שלא לבצע פיגועים (זכ"ד 31/ת ס' 12, שהוגש ואושר על ידי החוקר "מופז" בעמ' 58, תמליל שיחה ת/98 עמ' 29-31, תמליל שיחה ת/98יא' עמ' 11-13). הודאה זו של הנאשם תואמת את הדברים שאמר בחקירתו אחמד ברגותי (ראה סעיף 30 לעיל), וכן הדברים שאמרו אבו סטחה (הודעה ת/156ב עמ' 5) ומוצפר (סעיף 53 לעיל).

#### (בב)    רצח הנזיר היווני במעלה אדומים

הנאשם אישר כי כאשר הציע לו רדאידה לבצע פיגוע התאבדות, הוא הפנה אותו אל מוהנד על מנת שיכוון אותו לביצוע פיגועים מהסוג שחוליות הפת"ח מבצעות, בעקבות כך בוצע הפיגוע במעלה אדומים בו נרצח נזיר יווני, מתוך מחשבה כי מדובר ביהודי (ראה דברי רדאידה בסעיפים 42-43 להלן, ופרק 3(ה) להלן הדן בפיגוע זה).

#### (גג)    הפיגוע במסעדת "סי פוד מרקט" בתל-אביב

הנאשם קשר עצמו בחקירתו בצורה ברורה לפיגוע במסעדת "סי פוד מרקט" בתל-אביב, שבו נרצחו שלושה אנשים (על פיגוע זה ראה פרק 3(יב) להלן). אמנם בתחילת חקירתו בשב"כ טען הנאשם כי אין לו קשר לפיגוע זה, שעויט עומד מאחוריו, וכי ערפאת כעס מאוד על ביצוע פיגוע זה (זכ"ד 25/ת ס' 12-13, שהוגש ואושר על ידי החוקר "מופז" בעמ' 58). ואולם, בהמשך חקירתו הודה הנאשם כי ידע מפי מקורבו אחמד ברגותי, שהיה אחד ממתכנני הפיגוע, על הכוונה לבצע את הפיגוע, וזאת כשבוע לפני ביצועו; אחמד הודיע לנאשם כי אברהים חסונה - המפגע - מוכן לביצוע הפיגוע. הנאשם הדגיש כי הוא לא ליווה את ביצוע הפיגוע, ואף הניח את אחמד ברגותי שהפיגוע יבוצע ביהודה ושומרון, בהתנחלות או במחסום צבאי, ולא בתוך ישראל (זכ"דים ת/44 סעיפים 3-3 ו- 7-3 ת/53 ס' 3, שהוגש ואושרו על ידי החוקר "מופז" בעמ' 58; זכ"ד ת/50 ס' 1, שהוגש ואושר על ידי החוקר "וואדי" בעמ' 96; זכ"ד ת/52 שהוגש ואושר על ידי החוקר "סמית" בעמ' 85).

Gilmore 00651

SHATSKY-009336

48



בתי המשפט

תפ"ח 1158/02

דברין אלו של הנאשם תואמים את גרסתו בחקירה של אחמד ברגותי, פרט לכך שהאחרון אמר בחקירתו כי דיווח לנאשם לא רק זמן מה לפני הפיגוע, אלא גם ממש בשעה שבה יצא המפגע לדרך, וכי הנאשם היה מעורב בניסוח הכרוז הנוטל אחריות לאחר ביצוע הפיגוע (ראה סי׳ 29 לעיל). הנאשם, לעומת זאת, אמר בחקירתו כי לא היה מעורב בניסוח הכרוז שקיבל אחריות על הפיגוע הנ"ל, אם כי הודה שנתן אישור לפרסם כרוז הנוטל אחריות על פיגוע אחר שהתבצע בגשר עטרות (פיגוע מסי׳ 18 בנספח לכתב האישום) (זכ"ד ת/52 הנ"ל וזכ"ד ת/58 סי׳ 3, שהוגש ואושר על ידי החוקר ״מופזי״ בעמי 58).

סיכומו של דבר : הנאשם הודה, כפי שאף עולה מדברי אחמד ברגותי, כי הוא אישר מראש את ביצוע הפיגוע הנ"ל, אם כי ההוראה היתה להרוג אנשים אחרים במקום אחר.

### (דד)   ניסיון לפיגוע ליד קניון מלחה בירושלים

הנאשם סיפר בחקירתו כי העניק סיוע, באמצעות אחמד ברגותי, לפעילים שביצעו פיגועים באזור חברון. באחד הימים דיווח לו אחמד ברגותי כי אחד מפעילים אלה (גיהאד גיעארה) מתכנן פיגוע התאבדות בירושלים. הנאשם אמר כי נתן הנחיה באמצעות אחמד ברגותי שהפיגוע יבוצע בשטחים הכבושים ולא בתוך ישראל (על פיגוע זה ראה פרק ה(20) להלן). למחרת דווח לו כי פיגוע ההתאבדות ליד קניון מלחה בירושלים נכשל (זכ"ד ת/36, שהוגש ואושר על ידי החוקר ״סמית״ בעמי 85). גם כאן אישר הנאשם לבצע פיגוע כנגד ישראל, אם כי במקום אחר.

### (3)   אספקת כספים ואמל"ח לשם ביצוע פיגועי טרור

67.   בתחילת חקירתו בשב"כ טען הנאשם כי איננו עוסק בטרור, וכי מעולם לא מסר לאף אדם נשק ולא ירה בנשק (זכ"ד ת/10 סי׳ 1, שהוגש ואושר על ידי החוקר ״דני״ בעמי 90). ואולם בהמשך חקירתו הודה הנאשם כי היה אחראי על מתן כספים ואמצעי לחימה לחוליות השטח של התנזים וגדודי חללי אלאקצא, וכי ידע כי אלה משמשים לביצוע פיגועים כנגד ישראל.

Gilmore 00652
SHATSKY-009337

49



בתי המשפט



בית המשפט המחוזי בתל-אביב-יפו                              תפ"ח 1158/02

כפי שאמר הנאשם: "במסגרת התפקידי כמזכיר הפת"ח אני אחראי לכל הנעשה כגון
אספקת כספים לחוליות, רכישות נשק וביצוע פיגועים" (ראה הציטוט מזכ"ד ת/29 בס'
61 לעיל, וכן ראה זכ"ד ת/59 ס' 7, שהוגש ואושר על ידי החוקר "ואדי" בעמ' 96).
הנאשם הסביר כי היה מעביר את בקשות הפעילים לרכישת אמל"ח ליאסר ערפאת תחת
הכותרת "סיוע אישיי", או "סיוע כלכליי" (זכ"יים ת/22 ס' 6, ו-ת/25 ס' 14 שהוגשו ואושרו
על ידי החוקר "מופז" בעמ' 58). הנאשם אף הודה כי בכך שרכש נשק לחוליות, הוא השיג
השפעה על פעילותו (ס' 61 לעיל). עוד הודה הנאשם כי סייע מבחינה כספית לאחמד ברגותי
ולראיד כרמי, ותמך בהם לצורך ביצוע פיגועים (ראה ס' 62 לעיל).

מסמך ת/5 (70-73) שנתפס במבצע "חומת מגן", הוא מכתב של ראיד כרמי אל הנאשם
מיום 20.1.02, בו מבקש כרמי סיוע לרשימה של פעילים, ובהם כאלו שהיו מעורבים
בפיגועי טרור על פי הראיות שהובאו בתיק זה; הנאשם הפנה את הבקשה ליאסר ערפאת
בכתב ידו (לפי חוות דעת מז"יפ ת/5). מכתב נוסף שנתפס הוא ת/5(140), שבו פנה מבוקש
בשם סאמח אבו חניש לנאשם בבקשה להחזיר לו נשק שהוחרם; כתב ידו של הנאשם
נמצא על המכתב (חוות דעת מז"יפ ת/5). במכתב ת/5(103) פנתה אל הנאשם קבוצת פעילים
בבקשה לרכישת כלי נשק, וציינו כי הם ביצעו התקפות רבות כנגד הצבא ומתנחלים, והפכו
למבוקשים; גם על מכתב זה מצוי כתב ידו של הנאשם (לפי חוות דעת מז"יפ ת/5).

68.         הנאשם הסביר בחקירתו כי הן החוליות, והן בודדים מן החוליות, היו פונים אליו
לקבלת כספים לשם מימון רכישת נשק ולמטרות אחרות, והוא היה מעביר בקשות אלו
ליאסר ערפאת (זכ"ד ת/19 ס' 14, זכ"ד ת/22 ס' 6 וזכ"ד ת/25 ס' 14, 19, שהוגשו ואושרו
על ידי החוקר "מופז" בעמ' 58; זכ"ד ת/70 ס' 10, שהוגש ואושר על ידי החוקר "סטיבי"
בעמ' 53; תמלילי חקירתו של הנאשם: ת/98 בעמ' 13-16, 20-21, ות/98יא עמ' 7, 17-18,
30, ות/98 עמ' 13-14). לדבריו הוא לא היה מציין בפנייתו לערפאת כי הכסף מיועד
לרכישת נשק (זכ"ד ת/30 ס' 6, שהוגש ואושר על ידי החוקר "אמילי" בעמ' 54). במסגרת
פעילות זו נרכשו כ- 15 כלי נשק ותחמושת בהם בוצעו פיגועים (זכ"ד ת/29 ס' ה', שהוגש
ואושר על ידי החוקר "סמיתי" בעמ' 85, זכ"ד ת/60 ס' 5, שהוגש ואושר על ידי החוקר
"אמילי" בעמ' 54).

Gilmore 00653
SHATSKY-009338

50



בתי המשפט



בית המשפט המחוזי בתל-אביב-יפו                    ת.פ"ח 1158/02

הנאשם הדגיש כי הפעילות הצבאית לא היתה יכולה להתקיים בלא מימון של ערפאת (ת/60 הנ"ל ס' 7). הוא אמר בעניין זה: "יש מישהו שבא ואומר לי אני רוצה אלף שקל, אולי הוא מקבל אלף שקל, אני לא שואל אותו, אולי אחרי שבוע הוא ילך לירות, לא אכפת לי" (ת/98יא עמ' 30). הנאשם לא יכול היה לזכור בחקירתו את פרטי הסיוע הכספי שהגיש לפעילי השטח של הפת"ח, והסביר כי מאות פעילים היו פונים אליו בבקשת סיוע כספי לשם מימון הפעילות הצבאית (זכ"יד ת/49 ס' 10, שהוגש ואושר על ידי החוקר "יאמיל" בעמ' 54).

69.     במסגרת רכישות הנשק עבור פעילי הטרור, הסכים הנאשם למימן רכישת מרגמה בסך של 1,500 דינר, והנאשם פירט בחקירתו את הבעיות המבצעיות שבהפעלתה (זכ"יד ת/29 ס' ו' וזכ"יד ת/38 ס' 2, שהוגשו ואושרו על ידי החוקר "סמותי" בעמ' 85 ; זכ"יד ת/42 ס' 13-15, שהוגש ואושר על ידי החוקר "יואדי", בעמ' 96 ; תמליל חקירתו של הנאשם ת/98 יא עמ' 7-8). הנאשם ציין בחקירתו כי הוא עצמו התנגד לירי ממרגמה לעבר ישראל, משום שהוכח שהירי איננו גורם נזק לישראלים, אך עלול לגרום נזק רב לפלשתינאים (זכ"יד ת/38 הנ"ל). גרסתו של הנאשם בעניין זה תואמת את גרסתו של אבו-חמידי, אשר הסביר כי הירי במרגמה בוצע לעבר הישוב פסגות, וכי הנאשם ביקש שלא לדבר על כך עם איש (ראה סעיף 25 לעיל).

סיוע למבוקשים ולמשפחות העצורים והחללים          (4)

70.     הנאשם מימן בפעילותו לא רק את פעילי הטרור, אלא גם את בני משפחותיהם. הוא הודה בחקירתו כי העביר או העביר לערפאת בקשות לסייע למשפחות המתאבדים, ואף הצדיק זאת בכך שאין הבדל בין מתאבד לבין אדם שנהרג, כולם בעיניו "שהידים", קרי : מי שמת מות קדושים (זכ"יד ת/10 שהוגש ואושר על ידי החוקר "דני" בעמ' 90 ; זכ"יד ת/54 ס' 5, שהוגש ואושר על ידי החוקר "יואדי" בעמ' 96 ; שיחת הנאשם עם המרובב "פלוני 3" ת/124 ג עמ' 7, 22-23). כמו כן דאג הנאשם למימון משפחות העצורים והמבוקשים מקרב פעילי הפת"ח (שיחת הנאשם עם "פלוני 3" ת/124ג עמ' 22-23).

Gilmore 00654

SHATSKY-009339

51



בתי המשפט

<div dir="rtl">

בית המשפט המחוזי בתל-אביב-יפו      ת.פ״ח 1158/02

בנושא זה נתפסו כמה וכמה מסמכים במבצע ״חומת מגן״, אשר מהווים בקשות סיוע שהפנו המבוקשים לנאשם לצורך רכישת אמל״ח, ועל מנת להסיר מעליהם את עול הפרנסה (ראה: ת/5 (2-12) שהנאשם אישר בעת חקירתו אשר תועדה בזכ״יד ת/47 שהוגש ואושר על ידי החוקר ״יואדי״ בעמ׳ 96 ; ת/5 (64-65), ת/5 (87), ת/5 (105), ת/5 (117), ת/5 (118)). כמו כן דאג הנאשם להסדיר מיניים או מקומות עבודה למבוקשים (ראה למשל המכתבים ת/5 (78-79), שלפי חוות דעת מז״פ ת/5 סביר מאוד להניח כי נכתבו על ידי הנאשם).

מסמך נוסף הוא ת/5 (133), הכולל פנה לנאשם לסייע לאנשים בתנועת ״אלאקצא״ שביצעו פיגועים ונעצרו על ידי ישראל, ולמבוקשים אחרים; הנאשם העיר על משמעות ״ייעיפות להצלחתם בסיועו״, ולפי חוות דעת מז״פ ת/5 הערה זו נכתבה, במידה שאינה מותירה ספק של ממש, בידי הנאשם.

עימאד אלשקיר הוא פעיל תנזים שרצח ישראלי בסלפית, וכאשר הפך להיות מבוקש פנה לנאשם בבקשה לקבלת עזרה, ואף סיפר לו על מעשה הרצח שביצע. הוא הסביר בעדותו כי -פנה אל הנאשם, משום שהיה ידוע שהנאשם מסייע במקרים שכאלו, אך תיאר את הנאשם ״כאיש פוליטי שלא משתתף בדברים צבאיים״ (עמ׳ 182-184).

### (5)    גיוס פעילים לאירגוני הטרור והדרכתם

71.    הנאשם אישר בחקירתו בשב״כ את הדברים שמסר במשטרה אבו חמיד, לפיהם העניק הנאשם סיוע כספי לשם הקמת מחנה אימונים צבאי לפעילי התנזים, על מנת להכשירם ללוחמת גרילה ושימוש בנשק (הודעת אבו חמיד ת/149ג עמ׳ 1-2). הנאשם אף אישר כי ראיין בעצמו את הצעירים המתאמנים במשרדו (זכ״יד ת/28 סעיפים 10-11, שהוגש ואושר על ידי החוקר ״יואדי״ בעמ׳ 96, זכ״יד ת/34 סי׳ 3, שהוגש ואושר על ידי החוקר ״יאתי״ בעמ׳ 52, ותמליל חקירת הנאשם ת/98יא עמ׳ 9). בחקירתו במשטרה הכחיש הנאשם כל קשר לאימונים או הדרכה של פעילי השטח (ת/106 עמ׳ 3).

</div>

Gilmore 00655

SHATSKY-009340

52



בתי המשפט



הפ"ח 1158/02

אבו חמיד סיפר בהודעתו הנ"ל (עמ' 6-7) כיצד מינה הנאשם את מוהנד כמפקד חוליה לאחר מותו של המפקד הקודם. הנאשם גם אישר בחקירתו את הדברים שאמר במשטרה רדאיידה, בנוגע לתהליך גיוסו באמצעות הנאשם (ראה ס' 43 לעיל). מדבריו הנאשם ורדאיידה עולה כי הנאשם שמע מרדאיידה על כוונתו לבצע פיגוע ירי, והפנה אותו למטרה זו אל מוהנד, שהיה מפקד שטח בכיר שביצע שביצעע פיגועים כנגד מטרות ישראליות. כתוצאה מהפנייה זו בוצע הפיגוע שבו נרצח הנזיר היווני.

<u>(6)   קריאותיו הפומביות של הנאשם לבצע פיגועים כנגד ישראל</u>

72.   כפי שכבר בואר לעיל, לא הסתיר הנאשם בחקירתו את תמיכתו בביצוע פיגועים כנגד מטרות צבאיות ואזרחיות בגדה המערבית, קרי: חיילים ומתנחלים (ראה ס' 13-16 לעיל). הנאשם גם הסביר כי מידי פעם היה מורה לחוליות שטר למרותו להפסיק את הפיגועים, ולאחר מכן היה מודיע על חידושם, וזאת באמצעות הופעות פומביות בטלוויזיה (ראה ס' 16 לעיל). הנאשם היה ער להשפעה שיש לדבריו על מבצעי הפיגועים, ואמר: "אני משפיע כי אני מדבר באמצעי התקשורת. יעני אני אומר את העמדה באמצעי התקשורת... המילה שלי נשמעת ופאילו אני דובר בשם תנועת הפת"ח" (תמליל חקירה ת/98ד עמ' 33, וכן ראה עמ' 39-37). הנאשם אף לא הכחיש כי אנשי החוליות היו פונים אליו לקבלת סיוע, משום שהיה מופיע כדובר הפת"ח בתקשורת, ונקט עמדה הקוראת למאבק מזוין (תמליל חקירה ת/98ה עמ' 61). הוא הודה כי עודד בהופעותיו הפומביות את הפעילים לבצע פיגועים בתוך השטחים כנגד הצבא (תמליל חקירה ת/98י עמ' 25, וזכ"ד ת/29י ס' 1ב, שהוגש ואושר על ידי החוקר "סמית" בעמ' 85).

73.   קריאותיו הפומביות של הנאשם לביצוע פיגועים כנגד ישראל תועדו בידי אמ"ן, והוגשו בקלסטר ת/3 (כולל הקלטות המקוריות ת/3א-ב) על ידי ראש חטיבת המחקר באמ"ן, תא"ל י. קופרווסר (עמ' 38). בעניין זה יש להתעלם ממסמכים הכלולים בקלסטר ת/3, אשר אינם תיעוד של דברים שאמר הנאשם עצמו ברדיו או בטלוויזיה, ושאף הוקלטו. כתבה עיתונאית או ידיעה אחרת המייחסת לנאשם אמירת דברים כאלה או אחרים איננה קבילה לפי דיני הראיות, בהיותה עדות שמיעה.

Gilmore 00656
SHATSKY-009341

53



בתי המשפט

<u>בית המשפט המחוזי בתל-אביב-יפו</u>

באופן כללי ניתן לומר כי מעיון בדברים שאמר הנאשם לכלי התקשורת השונים, עולה בבירור כי הוא מדבר בשם גזודי חללי אלאקצא והתנזים, ועומד בראשם. הנאשם קורא לגופים אלה - לעיתים בצורה ברורה ולעיתים בצורה משתמעת - להמשיך ולבצע פיגועים כנגד ישראל. לאחר כל פעולה של ישראל, הוא הודיע בשם תנועת הפתי"ח וגדודי חללי אלאקצא כי הנקמה לא תאחר לבוא (ראה למשל ראיונות בטלוויזיה של אבו דאבי בימים 14.1.02, ו- 15.8.01). למרות טענתו של הנאשם כי התנגד לפיגועים בתוך ישראל, הוא נשמע בראיונות השונים תומך בפיגועים שבוצעו בתוך ישראל, ואף משבח את מבצעיהם (ראה הצדקת הפיגוע בנתניה בראיון לטלוויזיה של אלגזירה ביום 18.5.01, הצדקת הפיגוע בירושלים בטלוויזיה של אלגזירה ביום 9.8.01, ופיגוע נוסף בירושלים אותו הצדיק הנאשם בטלוויזיה "יוטן" ביום 31.10.02).

74.     במהלך הלווייתו של עמאד אלענאתי ביום 2.10.00, אמר הנאשם בטלוויזית "יוטן" רמאללה: "חלפו ימים בהם רק אנו מקריבים קורבנות. עלינו לנקום. יש להרוג ישראלים. יש להרוג ישראלים. כן, יש לנו כדורים. יש לנו רובים והם יופנו לעבר הכיבוש".

בראיון טלפוני לעיתון "אלשרק אלאוסט" ביום 1.3.01 נשאל הנאשם האם ההתנגדות של הפלסטינאים עלולה להתפתח מאבנים לכלי נשק, והשיב: "המאבק המזוין הוא חלק מהאינתיפאדה כעת ואין משתמכים רק על אבנים. מאז תחלת האינתיפאדה הצלחנו להרוג מתוכם 66 ופצענו 416 וזוהי הוצאה טובה".

ביום 29.10.01 התראיין הנאשם לטלוויזית "יוטן" רמאללה, ונשאל מהי הגובתו לשני פיגועים שהתבצעו באותו יום בחדרה ובבאקה אלעירבייה, והשיב: "זכותו של העם הפלסטיני, ולמעשה חובה על לוחמיו, להגיב על התוקפנות כנגמה על מעשי הטבח שהתבצעו בבית רימא, בית לחם וטול כרם. לפיכך מה שארע היום הינו הגובה טבעית של הלוחמים הפלסטיניים למעשי הטבח הישראליים".

Gilmore 00657
SHATSKY-009342

54



בתי המשפט



בית המשפט המחוזי בתל-אביב-יפו                                    תפ"ח 02/158

ביום 4.3.02 התראיין הנאשם לעיתון "אלזמאן" היוצא בלונדון, ולדברי הכתב נצ'אל
אלליתי אמר הנאשם כי שני פיגועי ההתאבדות (בבית ישראל וליד עפרה) הינם "מספר
המופנה לישראלים כדי שיחזלו מהמיכתם בשרון".

לאחר מותו של ראיד כרמי ביום 14.1.02 קרא הנאשם לגדודי חללי אלאקצא לבצע פיגועי
נקמה כנגד ישראל, וזאת בטלוויזיה של אבו דאבי (ת/3 - מיום 14.1.02). כך הודה הנאשם
בחקירתו (תמליל שיחה ת/198 עמ' 78).

ביום 19.5.01 שודרה בטלוויזיה של "יטי" רמאללה תהלוכה שבראשה עמדו הנאשם ובכיר
בחמאס. במהלך התהלוכה דיבר הנאשם ברמקול אל ההמון, והילל את הרוגי
האינתפיאדה, וביניהם מבצע הפיגוע בנתניה. כמו כן הבטיח הנאשם להמשיך ולפגוע
במתנחלים, וביירך את הפוגעים במתנחלים.

Gilmore 00658

SHATSKY-009343

55



בתי המשפט



<div dir="rtl">

בית המשפט המחוזי בתל-אביב-יפו      תפ"ח 1158/02

## ה. הקשר של הנאשם לפיגועים נשוא כתב האישום

75. בכתב האישום מיוחסת לנאשם מעורבות ב- 37 פיגועים שפורטו בנספח לכתב האישום, ואשר בוצעו על ידי מפקדי השטח ופעילי הטרור שהיו כפופים לנאשם. בסיכומיה התירחסה התביעה אך ורק ל- 21 פיגועים מתוך הנספח שצורף לכתב האישום, ולפיכך גם הכרעת הדין תתייחס אך ורק לאותם 21 פיגועים, שבעניינם הובאו ראיות שלטענת התביעה קושרות את הנאשם לביצועם. ההתייחסות לפיגועים אלה תכלול את הראיות שהובאו לגבי התרחשות הפיגוע עצמו, מי היו מתכנניו ומבצעיו ומה היה הקשר של הנאשם לפיגוע או למתכננים או המבצעים.

### (1) רצח טליה ובנימין כהנא ז"ל ליד עפרה

76. ביום 31.12.00 בשעה 06.30, בוצע ירי מן המארב בכביש מספר 60 ליד הישוב עפרה, לעבר מכוניתם של בני הזוג טליה ובנימין כהנא ז"ל והמשת ילדיהם. כתוצאה מן הירי התדרדרה המכונית לתעלה בצד הכביש. בפיגוע נרצחו בני הזוג כהנא (תעודות פטירה ת/128א'-ב'), ונפצעו חמשת ילדיהם (ראה דוחו"ת פעולה של אלי קונ'מן ורפי"ק עפר שלוש ת/128ג'-ד', לוחות התצלומים ת/128ח'- ט' שהוגשו ע"י קונג'מן ושלוש בעדויותיהם בעמ' 121, 127, ותעו"ץ של רפי"ק עובדיה ת/128ה'). בבדיקת מז"פ התברר על פי הוודומילים של רובה הקלצ'ינקוב שנתפסו בגזירה כי הנשק ששימש בפיגוע זה, שימש גם בפיגוע מספר 6 בנספח לכתב האישום, שבו נרצח אליהו כהן ז"ל ליד גבעת זאב (חוו"ד המומחה האוורד סילברוטר ת/128ו'-ז').

77. בחקירתו במשטרה הודה אבו חמיד כי הוא היה זה שסיפק את הנשק והתחמושת למפגע שרצח את בני הזוג כהנא ז"ל, אחמד עינדיר (הודעתו של אבו חמיד ת/149)(א) עמ' 4-6, שנגבתה ע"י רס"ר אברהים אלקורעאן, על פי עדותו בעמ' 194). בהודעתו הנ"ל סיפר אבו חמיד כי עינדיר ביקש ממנו את הנשק (קלצ'ינקוב) והתחמושת לצורך ביצוע ירי לעבר רכב ישראלי ליד רמאללה, ולמחרת דיווח לו על ביצוע רצח בני הזוג כהנא ז"ל, כפי שהסתבר לו מן הדיווח ברדיו.

</div>

Gilmore 00659

SHATSKY-009344

56



בתי המשפט

בית המשפט המחוזי בתל-אביב-יפו

בעניין זה רשאים אנו להתייחס אך ורק לעדותו של אבו חמיד, ומצווים אנו להתעלם מן
הדברים שאמר לו עינדור לגבי ביצוע הפיגוע, בהיותם עדות שמיעה. לפיכך, אין בפני בית
המשפט ראיה קבילה על ביצוע הרצח בנשק שמסר אבו חמיד לעינדור. לכן, גם אין ראיה
הקושרת את הנאשם לרצח בני הזוג כהנא ז"ל (הנאשם סיפר בחקירתו כי הכיר את עינדור,
שנהרג מפליטת כדור - זכ"יד ת/68 סי' 2). אמנם הובאו ראיות למכביר בדבר אחריותו
הכוללת והעליונה של הנאשם לפיגועים שנעשו על ידי אנשי הפת"ח בגדה המערבית,
בהיותו מי שהנהיג פעילות זו, קרא לביצועה וסייע להוצאתה לפועל באספקת כספים
ואמל"ח. ואולם אין ראיה קבילה על כך שהפיגוע הנ"ל אכן בוצע בידי אנשי הפת"ח.

הראיה הקבילה היחידה שיש בעניין זה היא שהנאשם סייע לאבו חמיד לרכוש נשק
ותחמושת לצורך ביצוע פיגועים, כפי שהודו בחקירתם אבו חמיד והנאשם (ראה פרק ג(2)
לעיל), וכי אבו חמיד אכן מסר את הנשק שרכש בסיועו של הנאשם לעינדור למטרת ביצוע
פיגוע ירי. מעבר לכך אין בפנינו ראיות.

(2)    רצח עקיבא פשקוס ז"ל באזור התעשיה בעטרות

78.    ביום 25.1.01 בשעה 18:25 בוצע ירי מן המארב לעבר רכבו של אלעזר עקיבא
פשקוס ז"ל באזור התעשייה בעטרות. המונח נסע ברכב G.M.C., ונורה באקדח קליבר 9
מ"מ (ראה חוו"ד מז"פ ת/129ג). כתוצאה מן הירי נפטר המנוח (תעודת פטירה ת/129א),
והוא נמצא במכוניתו ללא רוח חיים כדקה לאחר הירי (ראה עדותו של הרמן ספאק בעמ'
150, דו"ח של רפי"ק ליאור נדיבי ת/129ב, ועדותו בעמ' 132). הארוע מתואר גם בתמונות
שצולמו על ידי אבינועם אליה, שצורפו לתעודת ציבור שהגיש (ת/129ד).

79.    אחמד ברגותי הודה בחקירתו כי הוא מסר לאבו סטחה ולאדם אחר רכב לצורך
ביצוע פיגוע, ולאחר כמה שעות, השניים דיווחו לו כי ירו על יהודי שנסע ברכב G.M.C.
באיזור עטרות, וכי הוא נפגע מהירי (הודעה ת/165א' עמי 3, שהוגשה ע"י העד דוד מזרחי
בעמי 184).

Gilmore 00660

SHATSKY-009345

57



בתי המשפט

<u>בית המשפט המחוזי בתל-אביב-יפו</u>    תפ"ח 1158/02

אבו סטחה הודה בחקירתו כי ביצע את הפיגוע באיזור התעשיה בעטרות, וירה באקדח אל
עבר נהג שנסע ברכב G.M.C ספארי בצבע אפור (כפי שנראה בתמונות ת/129ד' שצולמו
לאחר הפיגוע), ולאחר מכן דיווח על כך לאחמד ברגותי, שהוא - כפי שאמר אבו סטחה -
"ניהל וידי ימיני" של הנאשם (הודעה ת/156ב', שהוגשה ע"י השוטר מרקו דהן בעמ' 198).

80.    אין בידי התביעה ראיה כלשהי הקושרת את הנאשם בצורה ישירה לפיגוע הנ"ל.
עם זאת, הובאו ראיות כלליות למכביר לפיהן היה אחמד ברגותי עוזר הקרוב של הנאשם,
ופעל בידיעתו ותחת חסותו בארגון וביצוע פיגועים. הנאשם הודה כי מימן פיגועים שאחמד
ברגותי היה מעורב בהם ותמך בפעולותיו, וכי אחמד ברגותי היה מדווח לו לאחר ביצוע
הפיגועים. הנאשם גם הודה כי מבחינתו אחמד ברגותי היה האחראי על הפעילות הצבאית
באיזור רמאללה, וכי הוא פעל בתיאום עם הנאשם. הנאשם אף הבהיר בחקירתו כי הקשר
שלו עם חוליות הטרור נעשה באמצעות אחמד ברגותי (ראה פרק ג.3) לעיל).

גם אבו סטחה היה מקורב לנאשם, ובתקופה מסוימת אף שימש כשומר ראשו. הנאשם
אישר בחקירתו כי אבו סטחה עבד במשרדו והיה תחת אחריותו, באמצעות אחמד ברגותי,
והוא ידע שהשניים מבצעים פיגועים כנגד אזרחים באיזור ירושלים (ראה פרק ג.4) לעיל).

גם הנאשם אמר בחקירתו כי הוא רואה עצמו אחראי לפעילותו של החוליות שפעלו עם
אחמד ברגותי ואבו סטחה - להבדיל מחוליות אחרות - משום ששניים אלו היו קרובים
אליו, והוא מימן את פעילותם (ראה סעיף 60 לעיל). הנאשם אף הכיר בכך שבאמצעות
הסיוע והנשק שנתן לחוליות אלו הוא רכש השפעה על פעילותו (ראה סעיף 61 לעיל).

כל אלה באים בנוסף לאחריות העל של הנאשם כמפקדם ומנהיגם של כל פעילי הטרור של
הפתח"א בגדה המערבית, כפי שהוא עצמו הודה (ראה סעיף 65 לעיל), ובנוסף לעובדה
שהנאשם עודד באופן פומבי ופרטני את פעילי הטרור לבצע פיגועים.

השאלה המשפטית הקשה, האם די בכל אלה כדי לבסס אחריות פלילית של הנאשם
למעשה הרצח שבוצע בפיגוע זה - כאשר אין כל ראיה הקושרת את הנאשם ישירות לפיגוע
- תיבחן בפרק המסקנות.

Gilmore 00661

SHATSKY-009346

58



בתי המשפט

### (3) רצח הנזיר היווני ציפוקטסיס גרמנוס ז"ל במעלה אדומים

81. ביום 12.6.01 בשעה 22.30 בוצע ירי מן המארב בכביש ירושלים מעלה אדומים, לעבר רכבו הפרטי של הנזיר היווני ציפוקטסיס גרמנוס ז"ל מסוג טנדר פג'ו, שנשא לוחית זיהוי ישראלית. מן הירי נרצח גרמנוס ז"ל (תעודת פטירה ת/132א' וחווי"ד פתולוגית של פרופ' היס ת/130ב'י). על פיגוע זה העידו רפ"ק ניסים מזרחי (עמ' 131), שהגיש את דו"ח הביקור הראשוני בזירה ותצלומים (ת/130ג'-ד'), וכן הוגשה תעי"צ (ת/130ו') על ידי רס"ב אבי לוי ממז"ח. התרמילים שנתפסו בזירה נבדקו במז"פ (ראה חווי"ד מומחה של רפ"ק אבי קופמן, ת/130ז'-ט').

82. רדאידה הודה בחקירתו כי הוא ביצע את הפיגוע הנ"ל, ותיאר את נסיבות ביצועו. הוא סיפר כי פנה אל הנאשם על מנת לבצע פיגוע התאבדות. הנאשם הפנה אותו אל מוהנד, והורה למוהנד לתת נשק לרדאידה, וכך היה. הנאשם אמר לרדאידה כי התנגים עושה פיגועים נגד הצבא והמתנחלים, ולא פיגועי התאבדות, וכי הוא נותן לו נשק למטרה זו. ואכן, בנשק (קלצ'ניקוב) שקיבל רדאידה ממוהנד, על פי הוראתו הישירה של הנאשם, הוא ביצע את רצח הנזיר גרמנוס ז"ל כפי שתואר בחקירתו, בהסבירו כי סבר בטעות שמדובר במתנחל (ראה פרק ג)(8) לעיל סעי 41-42).

83. הנאשם עצמו אישר בחקירתו את דבריו של רדאידה, ואמר כי הפנה אותו אל מוהנד לאחר שביקש להתאבד, ולאחר מכן שמע כי הוא הרג בטעות את הנזיר היווני (סעיף 43 לעיל). לאור כל אלה ברורה אחריותו הישירה והאישית של הנאשם לפיגוע זה.

### (4) רצח יניב ושרון בן שלום ז"ל ודורון יוסף סווירי ז"ל בכביש 443

84. ביום 25.8.01 בשעה 22.30 נרצחו בני הזוג יניב ושרון בן שלום ז"ל, וכן יוסף סווירי ז"ל (אחיה של שרון), שנסעו יחד עם שני ילדיהם במכונית מסוג "פאסאט" בעלת לוחית זיהוי ישראלית, וזאת שעה שנסעו בכביש 443 ליד תחנת דלק "דור אנרגיה" (ראה תעודות פטירה וחווי"ד פתולוגיות ת/131א'-ג').



בתי המשפט

בית המשפט המחוזי בתל-אביב-יפו                    תפ"ח 02/1158

את תוצאות הפיגוע תיארו השוטרים חיים טולדנו ורס"מ שבי עובדיה (עמ' 123, 139, ודוחו"ת הפעולה שלהם ת/131ד'-ה', בליווי לוח תצלומים ת/131ו'). הקליעים שנתפסו נשלחו לבדיקת מז"פ, ונמצא שהם נורו משני כלי נשק : תת מקלע MP5 וקלצ'ניקוב (חוו"ד מומחה ת/131ז').

85.    אחמד ברגותי סיפר בחקירתו כי מסר את רובה ה- MP5 שלו לאבו סטחה, לאחר שאבו סטחה ביקש זאת עבור החוליה שלו, וכעבור זמן מה, שמע מאבו סטחה, וגם בחדשות, כי חברי החוליה שלו ביצעו פיגוע בו הרגו 3 יהודים ליד בית עור (הודעה ת/165א' עמ' 2, שהוגשה על ידי רס"ר מזרחי בעמ' 184). גם אבו סטחה סיפר בחקירתו, כי קיבל מאחמד ברגותי את רובה ה- MP5 ומחסנית מלאה כדורים, ומסר אותם לשניים מהחוליה שלו : חוסאם ופיראס. השניים סיפרו לו כי ביצעו את הפיגוע ליד בית עור, בו נהרגו 3 ישראלים (הודעה ת/156ב' עמ' 3, שהוגשה על ידי החוקר דהן בעמ' 198).

מבצע הפיגוע, חוסאם שחאדה, אישר בחקירתו כי הוא ואחר ביצעו את הפיגוע ליד בית עור בכביש 443, בסמוך לתחנת הדלק "דור", כאשר ירה במכונית לבנה מסוג "פאסאט" (ראה התצלומים). הוא ציין כי את הירי ביצע ברובה ה- MP5 שקיבל מאחמד ברגותי, ושותפו לפיגוע היה מצוייד בקלצ'ניקוב. למחרת שמע שחאדה בחדשות כי נהרגו 3 ישראלים כתוצאה מהפיגוע, ודיווח על כך לאחמד ברגותי, שהעביר את הדיווח לנאשם (הודעה ת/160א' עמ' 4-5, שהוגשה על ידי דהאן בעמ' 198). שחאדה סירב להשיב על שאלות בעדותו. לפיכך הוכרז כעד עוין והוגשו הודעותיו ת/160א'-ג'. כמו כן הוגשו כתב האישום, הכרעת הדין וגזר הדין שניתנו בעניינו (ת/159א'-ד'). הוא אמר בעדותו אך ורק : "אני סיפרתי מה שהיה ולא רוצה להגיד כלום" (עמ' 73). שחאדה הורשע בביצוע פיגוע זה.

86.    לא הובאה ראיה הקושרת את הנאשם לפיגוע זה, זולת הקשר העקיף של הנאשם, כאמור לעיל, לפיגועים בהם היו מעורבים מקורביו, אחמד ברגותי ואבו סטחה (ראה סעיף 80 לעיל). הנאשם סיפק כספים ונשק לחברי החוליות, באמצעות אחמד ברגותי, לשם ביצוע פיגועים, והנשק ששימש בפיגוע זה סופק על ידי אחמד ברגותי.

Gilmore 00663
SHATSKY-009348

60



בתי המשפט

<div dir="rtl">

בית המשפט המחוזי בתל-אביב-יפו      תפ"ח 1158/02

השאלה האם די בכל אלה כדי לבסס אחריות פלילית של הנאשם למעשי הרצח שבוצעו בפיגוע זה, כאשר אין ראיה הקושרת את הנאשם ישירות לפיגוע, תבחן בפרק המסקנות.

(5)    <u>רצח מאיר וייזבוייז ז"ל בכביש מס' 9 בירושלים</u>

87.    ביום 15.9.01 בשעה 23:15 נורה מן המארב רכב שנסע בכביש מס' 9 בירושלים, מהגבעה הצרפתית לשדרות גולדה מאיר. ברכב מסוג רנו אקספרס בצבע לבן נהג משה וייס, אשר העיד כי נפגע מכדור ונמצא בגופו עד היום בעמוד השדרה, ואילו בן דודו מאיר וייזבוייז ז"ל נהרג מן הירי (עמ' 138, תעודת פטירה ת/132ב, דו"ח פעולה של רפ"ק ליאור נדיבי ת/132ג ועדותו של נדיבי בעמ' 132, וכן לוח התצלומים ת/132ג). בזירה נתפסו תרמילי רובה שנשלחו לבדיקת מז"פ, ונקבע כי הם נורו, כפי הנראה, מאקדח ומתת-מקלע MP-5, שממנו נורו גם הירויות הקטלניות שרצחו שלושה אנשים באירוע מס' 4 הנ"ל (חוו"ד מז"פ ת/132ד).

88.    תוסאא שחאדה אמר בהודעתו ת/160א עמ' 6, שנגבתה על ידי רס"מ מרק דהן (עמ' 198 לפרוטוקול), כי קיבל מאחמד ברגותי אקדח ותת-מקלע MP-5, ונסע עם שניים אחרים (פיראס והייתם) ברכב עד שהגיע לכביש מס' 9 לכיוון רמות והגבעה הצרפתית. כאשר הבחינו ברכב טנדר מסחרי בצבע לבן, הם פתחו באש לעבר נוסעי הרכב ונמלטו לרמאללה. לאחר האירוע ביקש שחאדה מאבו סטחה, שעבד במשרדו של הנאשם, לדווח לנאשם ולאחמד ברגותי על ביצוע הירי. למחרת הוא שמע כי אחד הנוסעים שנפגע מן הירויות מת מפצעיו (ראה גם סעיף 85 לעיל בנוגע לעדותו של שחאדה). דבריו של שחאדה נתמכים בדברים שאמרו אחמד ברגותי ואבו סטחה בחקירותיהם (ראה סעיף 85 לעיל).

89.    הקשר של הנאשם לפיגוע זה, כמו לפיגוע מס' 4 הנ"ל שבוצע אף הוא על ידי שחאדה, איננו ישיר, שכן לא הובאו ראיות למעורבותו של הנאשם בפיגוע זה. הקשר העקיף של הנאשם לפיגוע נובע מכך שהוא הוצא הוצא לפועל על ידי מקורביו ועוזריו של הנאשם, אחמד ברגותי ואבו סטחה, שהנאשם אף מימן את פעולותיהם, כולל רכישת כלי נשק.

</div>

Gilmore 00664

SHATSKY-009349

61



בתי המשפט

<u>בית המשפט המחוזי בתל-אביב-יפו</u>                                        <u>תפ"ח 1158/02</u>

השאלה המשפטית האם די בכל אלה כדי לבסס אחריות פלילית של הנאשם למעשה הרצח
שבוצע בפיגוע זה - כאשר אין כל ראיה הקושרת את הנאשם ישירות לפיגוע - תבחן בפרק
המסקנות.

(6)    <u>רצח אליהו כהן ז"ל בפיגוע ירי בכביש 443 ליד גבעת זאב</u>

90.    ביום 21.12.00 בשעה 20:30 נורה מן המארב רכבו של אליהו כהן ז"ל, בנוסעו
בכביש 443 כקילומטר וחצי מהישוב גבעת זאב (ראה תעודת פטירה ת/133א, חוו"ד
פתולוגית ת/133ב, ודו"ח מעבדה ניידת מז"פ ת/133ג שעליו העיד רפ"ק שלוש בעמ' 127).
על פיגוע זה העיד בריאן מלקולם שפירא, שהיה עד ראיה לפיגוע (עמ' 149). בבדיקות
התרמילים שנתפסו בזירה נמצא כי כלי הנשק ששימש לפיגוע היה כפי הנראה רובה
קלצ'ניקוב, ששימש גם לביצוע רצח בני הזוג כהנא ז"ל (ראה חוו"ד ת/133ד - ת/128ו).

91.    אבו חמיד סיפר בחקירתו על פעילותה של חוליית אחמד עינזור, שביצעה פיגוע זה
(הודעה ת/149א עמ' 10-12, שנגבתה על ידי אלקורעאן: עדותו בעמ' 194). אבו חמיד אמר
בחקירתו כי סיפק לעינזור רובה קלצ'ניקוב ותחמושת שקיבל למטרה זו מאחמד ברגותי,
וכי אישר לעינזור לבצע את הירי בכביש 443 שבו נהרג אליהו כהן ז"ל. עוד סיפר אבו חמיד
כי את הפיגוע ביצעו מוהנד ושוויש, וזאת על פי מה שסיפר לו מוהנד לאחר ביצוע הפיגוע.
מוהנד לא היה עד במשפט, ואילו חקירתו של שוויש, שגם העיד בפנינו, איננה מתייחסת
לאירוע זה, והפיגוע הנ"ל לא נכלל בכתב האישום שהוגש כנגד שוויש (ת/157א).

לאור האמור לעיל, יש בידינו אך ורק את עדותו של אבו חמיד, לפיה אישר לבצע פיגוע ירי
כנגד רכב ישראלי בסוף שנת 2000 בכביש 443 וסיפק נשק לביצועו. אין בפנינו ראיה קבילה
לגבי זהות מבצע הפיגוע, ולכן גם אין ראיה קבילה הקושרת את הנאשם לפיגוע באמצעות
אבו חמיד.

Gilmore 00665
SHATSKY-009350

62



בתי המשפט

<u>בית המשפט המחוזי בתל-אביב-יפו</u>                    תפ"ח 1158/02

כל שיש בפנינו הן ראיות לפיהן הנאשם סייע לאבו חמיד לרכוש נשק ותחמושת לצורך
ביצוע פיגועים, וכי אבו חמיד מסר את הנשק שרכש בסיוע הנאשם לעינדור למטרת ביצוע
פיגועי ירי (זה המצב גם לגבי רצח בני הזוג כהנא ז"ל, שבוצע באותו כלי נשק: ראה פרק
ה(1) לעיל).

### (7)    <u>רצח יואלה חן ז"ל ליד תחנת דלק גבעונים בכביש 443</u>

92.    ביום 15.1.02 בשעה 19:55 הגיעה יואלה חן ז"ל ברכב "פיאט אונו" לתחנת הדלק
בצומת גבעונים, ולידה ישבה רשל עיני. שני מחבלים התקרבו לעבר רכבה, וירו בשתיים
מטווח קצר עשרות כדורים. כתוצאה מן הירי נרצחה יואלה חן ז"ל (תעודת פטירה 134א),
ורשל עיני נפצעה בראשה ובכתפה. עד ראיה לאירוע, סמי וקנין, העיד כי ראה שני בחורים
נמלטים בריצה לעבר הכפר השכן אלג'יב לאחר ביצוע הירי, והוא סייע בחילוץ הנוסעות
(עמ' 143). כמו כן תיארו את האירוע רפי"ק עמי לייפר ורס"ב אלי קוג'מן (בעמ' 130
לפרוטוקול ודו"חות ת/134ב-ד, בנוסף ללות תצלומים ת/134ב ות- ת/134ד2).

93.    הפיגוע בו נרצחה יואלה חן ז"ל בוצע בהוראתו הישירה של הנאשם, כנקמה על
הריגתו של ראיד כרמי יום לפני הפיגוע, ובכך הודה הנאשם בחקירתו. הנאשם סיפר
בחקירתו כי הורה למקורבו אחמד ברגותי לבצע פיגוע נקמה זה, וכי אחמד דיווח לו על
ביצוע הפיגוע. הנאשם אף נטל אחריות לביצוע פיגוע זה, וציין כי זו היתה הפעם הראשונה
בה ביצע הפת"ח פיגוע בתוככי ישראל (ראה סעיף 66(א) לעיל).

דבריו של הנאשם בחקירתו מתיישבים עם הדברים שאמרו בחקירתם אחמד ברגותי, אבו
סטחה ומוצאב (ראה סעיפים 30 ו- 53 לעיל, הודעת אבו סטחה ת/156ב עמ' 5-6 שעל
גבייתה העיד דהן בעמ' 198, והודעות אחמד ברגותי ת/165א עמ' 3 ות/165ב עמ' 1-2 שעל
גבייתן העיד מזרחי בעמ' 184). הם תיארו את הפיגוע שבוצע בתחנת הדלק באמצעות ירי
לעבר מכונית "פיאט אונו", שבו נרצחה אישה אחת ונפצעה חברתה. אבו סטחה, שביצע
את הירי, טען כי תחילה החליט שלא לירות בשתיים בהיותן נשים, אך לאחר שהחלו
לצעוק ירה עליהן יחד עם חברו טארק.

Gilmore 00666

SHATSKY-009351

63



בתי המשפט

<u>בית המשפט המחוזי בתל-אביב-יפו</u>                        ת.פ"ח 1158/02

אבו סטחה טען כי ביצע את הפיגוע לפי הוראת אחמד ברגותי, בעוד שהאחרון טען כי אבו סטחה היה יוזם הפיגוע, ולשם כך מסר לו רובה 5 - M16. אחמד ברגותי טען בהודעתו כי אבו סטחה אמר לו כי דיונתו על כוונתו לבצע את הפיגוע לנאשם לפני הביצוע, וכי הנאשם אמר לו שלא יצא לפיגוע זה.

אחמד ברגותי הסביר כי אבו סטחה היה שומר ראשו ונהגו של הנאשם, ולכן הנאשם חשש לחייו. בשיחה שהתקיימה בין הנאשם לבין אחמד ברגותי במהלך מעצרם, כאשר הוקלטו ללא ידיעתם, תיאמו השניים גרסאות לגבי פיגוע זה, ואחמד ברגותי אמר לנאשם כי הדגיש בחקירתו שהוא הורה על ביצוע הפיגוע מאחורי גבו של הנאשם (תמליל שיחה ת/128ג עמ' 14, 17). ואולם הנאשם, כאמור לעיל, הודה כי הורה לבצע את הפיגוע, ומכאן ברור כי מקורבו אחמד ברגותי ניסה לחלצו מן המעורבות הישירה בפיגוע זה, כמו גם בפיגועים אחרים.

(8)    <u>רצח 6 אנשים באולם השמחות "ארמון דוד" בחדרה</u>

94.    ביום 17.1.02 בשעה 22:45 בוצע פיגוע ירי באולמי "ארמון דוד" בחדרה. המחבל עבד אלסאלם חסונה ירה במאבטח בכניסה לאולם, פרץ פנימה ופתח באש מנשק אוטומטי לעבר קהל החוגגים באירוע בת-המצווה של נינה קרדשוב, עד שכמה מהם השתלטו עליו, והוא נורה למות (חוו"ד פתולוגית ת/135י). כתוצאה מן הירי נרצחו 6 אנשים ועשרות נפצעו, חלקם באורח קשה. הנרצחים הם: בוריס מליחוב ז"ל (תעודת פטירה ת/135ב), דינה ביניייב ז"ל (תעודת פטירה ת/135ג), אנטולי בקשייב ז"ל (תעודת פטירה ת/135ד), אבי יזדי ז"ל (תעודת פטירה ת/135ה), אדוארד בקשייב ז"ל (חוו"ד פתולוגית ת/135ו) ואהרון בן ישראל אליס ז"ל (חוו"ד פתולוגית ת/135ז). עד הראייה קונסטנטין קרדשוב סיפר בעדותו על התרחשות האירוע (עמ' 125), וניתן לראות את האירוע גם במצגת של המשטרה וקלטות שצולמו בעת האירוע (ת/135א, ת/135יא-יב). בזירות נתפס רובה סער אם-16 ורימון ששימש את המחבל (ראה חוו"ד ת/135ח-ט ועדותו של הֶפֶּיֶק לייפר בעמ' 130).

Gilmore 00667

SHATSKY-009352

64



בתי המשפט

95.   נאסר עויס היה אחראי על ביצוע הפיגוע הנ"ל, והוא זה שמסר את הנשק לצורך
ביצועו למחבל חסונה (הודעתו ת/172ב, שעל גבייתה העיד רס"ן עאמר בעמ' 191). כך עולה
גם מהודעתו של אחמד ברגותי, שסיפר כי עויס דיווח לו על ביצוע הפיגוע באולם השמחות
בחדרה (הודעה ת/165ד שעל גבייתה העיד רס"ר יעקובוף מעמ' 171). אחמד ברגותי סיפר
כי שמע על ביצוע הפיגוע בטלוויזיה בהיותו עם הנאשם, ומיד התקשר לעויס שנטל אחריות
על ביצוע הפיגוע.

גם אבו חמיד התייחס בחקירתו לפיגוע זה, והסביר כי אף הוא היה נקמה על חיסולו של
ראיד כרמי, ולכן המפגע יצא מטול-כרם, שבה התגורר כרמי (ת/149ב עמ' 14-15, שעל
גבייתה העיד רס"ר אלקורעאן בעמ' 194).

96.   אין כל ראיה ישירה לכך שהנאשם היה מעורב באופן ישיר בתכנון הפיגוע הנ"ל, או
ידע על ביצועו מראש. הנאשם טען כי היה שומע דיווח על הפיגועים מאחמד ברגותי ומעויס
רק לאחר ביצועם, ובשיחתו עם המדובב "פלוני 1" אמר כי ידע על הפיגוע רק בדיעבד
(דו"ח ת/118 ס' 4 שהוגש על ידי "רוברט"י). הקשר העקיף של הנאשם לפיגוע בחדרה נובע
מכך שסיפק לעויס כספים ואמל"ח לצורך ביצוע הפיגועים, הלה ראה בו מנהיג ומפקד,
ולכן גם דיווח לו לאחר כל פיגוע. הנאשם הודה באספקת כספים לעויס לצורך רכישת נשק,
ואמר כי כאשר רצה להבטיח הפסקה של הפיגועים היה פונה בעניין זה גם לעויס (ראה
סעיף 23 לעיל). עם זאת, הנאשם לא ראה עצמו אחראי לפעולותיו של עויס, בניגוד
לפעולותיהם של אחמד ברגותי, אבו סטחה ואבו חמיד (ראה סעיפים 60 ו- 65 לעיל). גם
עויס סיפר בחקירתו כי ביצע את הפיגועים שהוציא לפועל במסגרת תנזים פת"ח, שעליו
היה אחראי הנאשם, וכי הנאשם סייע לו במימון הפיגועים ואספקת נשק. הוא ציין כי
הנאשם היה ממונה עליו (ראה סעיפים 21-22 לעיל).

השאלה המשפטית האם די בכל אלה כדי לבסס אחריות פלילית של הנאשם למעשה הרצח
שבוצעו בפיגוע זה - כאשר אין כל ראיה הקושרת את הנאשם ישירות לפיגוע - תיבחן בפרק
המסקנות.

Gilmore 00668

SHATSKY-009353

65



בתי המשפט

<u>בית המשפט המחוזי בתל-אביב-יפו</u>                 תפ"ח 1158/02

(9)     <u>רצח שתי נשים בפיגוע ירי ברחוב יפו פינת לונץ בירושלים</u>

97.     ביום 22.1.02 בשעה 16:20 פתח המחבל סעיד רמדאן באש מרובה M-16 לעבר עוברים ושבים ברחוב יפו פינת לונץ בירושלים, עד אשר נורה ונהרג. כתוצאה מן הירי נרצחו שרה המבורגר ז"ל ואורה סנדלר ז"ל (תעודות פטירה ת/136ב-א), ונפצעו עשרות אזרחים. על האירוע העיד חנן בן נעים, שהרג את המחבל (עמ' 121). כמו כן הוגשה מצגת של המשטרה לגבי האירוע, והוגש דו"ח פעולה של רפ"ק נדיבי שהעיד במשפט (ת/136א, ת/136ד והעדות בעמ' 132). נשקו של המחבל נתפס ונשלח למז"פ (ת/136ה ועדותם של רס"מ אזולאי ורפ"ק לייפר בעמ' 130-134).

98.     אחמד ברגותי נטל בחקירתו אחריות על הוצאתו לפועל של הפיגוע הנ"ל (ראה הודעה ת/165א עמ' 4-5, שעל גבייתה העיד מזרחי בעמ' 184). הוא סיפר כי החליט להחדיר מחבל מתאבד לתוך ישראל, ולשם כך נעזר בעויס, אשר שלח אליו את המפגע סעיד רמאדן. השניים הכינו את המפגע לפיגוע, לקחו אותו להתפלל, קנו לו בגדים והשיגו עבורו רובה M-16 וכדורים. באותו יום אחר הצהריים שמע אחמד על ביצוע הפיגוע בירושלים.

אין ראיה ישירה הקושרת את הנאשם לפיגוע הנ"ל, והוא אף סיפר בחקירתו כי הוא וערפאת כעסו על אחמד ברגותי בשל ביצוע הפיגוע (תמליל שיחה ת/98יא עמ' 32). מעורבותו העקיפה של הנאשם בפיגועים שביצעו אחמד ברגותי ועויס, בעצמם או באמצעות אחרים, בוארה לעיל. השאלה המשפטית האם די בכל אלה כדי לבסס אחריות פלילית של הנאשם למעשה הרצח שבוצע בפיגוע זה - כאשר אין כל ראיה הקושרת את הנאשם ישירות לפיגוע - תבחן בפרק המסקנות.

(10)     <u>פיגוע ירי בשכונת נוה-יעקב בירושלים בו נהרגה השוטרת גלית ארביב ז"ל</u>

99.     ביום 25.2.02 בשעה 18:25 בוצע פיגוע ירי על ידי מפגע באמצעות רובה M-16 ורימון יד בכביש הראשי של שכונת נוה-יעקב בירושלים.

Gilmore 00669
SHATSKY-009354



בתי המשפט

<u>בית המשפט המחוזי בתל-אביב-יפו</u>                                   תפ"ח 1158/02

מעדותו של עד הראיה, השוטר אדם גרפילד, עולה כי המחבל פתח באש לעבר כלי רכב
שנעו בכביש, וכן לעבר אזרחים ושוטרים שהגיעו למקום. בניידת המשטרה של גרפילד
ישבה גם השוטרת גלית ארביב ז"ל, אשר הסתתרה על המחבל באקדח שלוף. המחבל רצח
ביריות את השוטרת ארביב ז"ל (תעודת פטירה ת/137ב), פצע קשות את השוטר גרפילד,
שנותר נכה עד היום, ואת השוטר עמיחי דהן. רימון שהשליך המחבל לא התפוצץ (ראה
עדותו של גרפילד בעמ' 127, עדותו של רפ"ק ליאור נדיבי בעמ' 132 והדו"חות והצילומים
שהגיש ת/137ג, ת/137ז, וכן המוצגת ת/137א ולוח התצלומים ת/137ו). נשקו של המחבל,
הרימון שלא התפוצץ ותרמילי הכדורים שירה נתפסו והועברו לבדיקת מז"פ (עדות רפ"ק
עמי לייפר בעמ' 130,  חוו"יד של רפ"ק אבי קאופמן ת/137ד-ה  וחוו"יד של פק"ד יניב רון
ת/137ו).

100.    המחבל שנתפס במהלך הפיגוע הוא ראמי נור, כפי שאמר נאסר אבו חמיד בהודעתו
ת/149ג בעמ' 11-12 (שהוגשה על ידי רס"מ יעקב בראזני בעמ' 207). אבו חמיד סיפר כי
בעת שהוא ואחיו, חלום אבו חמיד, צפו בפיגוע הנ"ל בנוה-יעקב בטלוויזיה, הזכיר לו אחיו
כי המפגע ראמי נור היה בביתם יום לפני כן, וחלום אמר כי הוא זה שמסר לראנ'ו נור רובה
16-M וכדורים, ושילח אותו לפיגוע לאחר שצילם קלטת וידיאו שהראה לאחיו נאסר לאחר
הפיגוע. חלום אמר לאחיו נאסר כי קיבל את הנשק ואת המפגע ראמי נור מאחמד ברגותי.
אבו חמיד הביע בהודעתו הנ"ל כעס על כך, בהסבירו שפיגוע זה עלול לסבך את הנאשם,
בשל קרבותו לאחמד ברגותי, כאשר הסתבר שהמפגע שהמפגע נותר בחיים ויחקר בידי השב"כ.

עוד סיפר אבו חמיד בהודעתו הנ"ל, כי יאסר ערפאת הזמין למשרד את הנאשם ואת
אחמד ברגותי בעקבות הפיגוע; אחמד ברגותי ברח, והודיע לאבו חמיד שיתכן שעומדים
לעצור את הנאשם בגלל הפיגוע הנ"ל. הנאשם אמר לאבו חמיד לאחר מכן, כי הסביר
לערפאת שבאותו שלב לא היתה הוראה על הפסקת אש, וכי הוא - הנאשם - עומד מאחורי
אנשיו כל עוד ערפאת לא יוציא הוראה נשיאותית להפסקת הפיגועים. אבו חמיד גם סיפר
בהודעתו כי אחמד ברגותי הודה בפניו כי מסר את הנשק לאחיו של אבו חמיד (חלום),
לצורך ביצוע הפיגוע בנוה-יעקב.

Gilmore 00670
SHATSKY-009355

67



**בתי המשפט**

101. מן הדברים האמורים לעיל עולה כי נאסר אבו חמיד לא נטל חלק בתכנון ובהוצאה לפועל של הפיגוע הנ"ל, ומי שעשו זאת היו אחיו חלום ואחמד ברגותי, שהיו עדים במשפט. חלום אבו חמיד הורשע על פי הודאתו בשורה של מעשי טרור, כולל אחריותו לביצוע הפיגוע הנ"ל בנוה-יעקב (ראה פרט 13 בכתב האישום המתוקן ת/161א, ופסק הדין ת/161 ב). חלום סיפר על אחריותו לפיגוע הנ"ל, כמפורט לעיל, בהודעותיו ת/162א-ב, שנגבו על ידי אברהים אלקורעאן (עדותו בעמ' 194) ורס"ר דוד מזרחי (עדותו בעמ' 184).

חלום סיפר בהודעותיו הנ"ל (ת/162א עמ' 9-6, ת/162ב עמ' 4-2) כי הכין את ראמי נור לביצוע הפיגוע, ארגן לו מסיע ומסר לו רימון רסס ורובה M-16 כדורים. בעת שהכין את ראמי נור לפיגוע, הגיע אחמד ברגותי ובירר כיצד מתקדמים העניינים בעניין תכנון הפיגוע; אחמד ברגותי רצה שהפיגוע יעשה במקום הומה אדם בירושלים, אך לבסוף סוכם שהוא יבוצע בצפון ירושלים בשל המחסומים, ואחמד ברגותי אישר זאת.

102. אחמד ברגותי אישר בחקירתו את הקשר שלו לפיגוע בנוה-יעקב. בהודעתו ת/165א סיפר כי נאסר עויס שלח אליו את המפגע ראמי נור לצורך ביצוע הפיגוע בנוה-יעקב, ואז הפנה את ראמי נור אל חלום אבו חמיד כדי שיסייע לו להיכנס לירושלים (הודעה ת/165א עמ' 6, שנגבתה על ידי רס"ר מזרחי לפי עדותו בעמ' 184). גם אחמד ברגותי, כמו חברו נאסר אבו חמיד, סיפר בחקירתו על כך שבעקבות הפיגוע זומן יחד עם הנאשנו למשרדו של ערפאת; הנאשם שאל אותו אם הוא אחראי לפיגוע, אחמד ברגותי השיב בחיוב, ושמע מהנאשם שערפאת כעס על ביצוע הפיגוע (הודעה ת/165ג עמ' 5 שנגבתה על ידי רס"ר מזרחי לפי עדותו בעמ' 184).

103. לאור האמור לעיל מתכנני הפיגוע היו עויס ואחמד ברגותי. בעת פגישותם של אחמד ברגותי והנאשם בחקירה, כאשר הוקלטו ללא ידיעתם, חזר אחמד כמה פעמים והדגיש בפני הנאשם כי סיפר בחקירתו שהנאשם שמע על הפיגוע הנ"ל רק לאחר הביצוע (תמליל שיחה ת/127ג עמ' 4, 11).

Gilmore 00671
SHATSKY-009356

68



בתי המשפט

אין ראיות הקושרות את הנאשם לפיגוע זה בצורה ישירה, זולת הקשר הנובע ממעורבותו
הכוללת והעקיפה בפיגועים שתכננו וביצעו אחמד ברגותי ועויס, כמבואר לעיל (ראה
סעיפים 80, 86 ו 96 לעיל). לא לחינם זימן יאסר ערפאת את ברגותי לבירור לאחר ביצוע
הפיגוע הנ"ל, שכן גם הוא סבר שהנאשם הוא הכתובת לטענות בענין. השאלה המשפטית
האם די בכל אלה כדי לבסס אחריות פלילית של הנאשם למעשה הרצח שבוצע בפיגוע זה -
כאשר אין כל ראיה הקושרת את הנאשם ישירות לפיגוע - תבחן בפרק המסקנות.

### (11) רצח גד רגיואן ז"ל במפעל בשקביץ בעטרות

104. ביום 27.2.02 בשעה 06:30 נרצח גד רגיואן ז"ל במפעל "יקפה בשקביץ" באיזור
התעשיה בעטרות, על ידי עבד אלמגיד מוהדי שהועסק בעבר במפעל (תעודת פטירה ת/138א1
וחווי"ד פתולוגית ת/138ב1). זהרן שחאדה שהיה במקום סיפר כי כאשר שמע את היריות
ראה אדם נמלט מן המקום, וגד רגיואן שכב על הרצפה וביקש להזעיק עזרה (עמ' 146).

גד רגיואן ז"ל נפטר כתוצאה מן הירי, ומותו נקבע במקום (ראה דו"ח פעולה ת/138ג1
ועדותו של רפ"ק ליאור נדיבי בעמ' 132, וכן דו"ח המעבדה הניידת שרשם רפ"ק ניסים
מזרחי ת/138ד ועדותו בעמ' 131). תצלומי זירת האירוע הוגשו כמוצגים ת/138ד ו- 138ה1,
על ידי מזרחי ונדיבי בעדויותיהם. הרצח בוצע באמצעות אקדח (חווי"ד ת/138ה), שכמה
קליעים שנורו ממנו פגעו פגיעות קטלניות בגופו של המנוח (חווי"ד ת/138ב).

105. אבו חמיד סיפר בהודעתו ת/149ב (עמ' 28-25) כי פנה אליו עבד אלמגיד שסיפר לו
כי עבד במפעל של משפחת רגיואן, וביקש לבצע פיגוע יחד עם אדם בשם רמזי. השלושה
ישבו ותכננו את הפיגוע, ואבו חמיד נתן לכל אחד מן השניים אקדח. כעבור 20 דקות דיווח
רמזי לאבו חמיד על ביצוע הפיגוע, ועבד אלמגיד סיפר כיצד ירה למוות ברגיואן ז"ל.
אבו חמיד התקשר למשטרה ונטל אחריות על ביצוע הפיגוע בשם גדודי חללי אלאקצא
(הודעתו של אבו חמיד הוגשה על ידי רס"ר אלקוראען בעמ' 194).



Gilmore 00672

SHATSKY-009357