**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SHABTAI SCOTT SHATSKY, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> THE PALESTINE LIBERATION ORGANIZATION and THE PALESTINIAN AUTHORITY, <br><br> Defendants. | Case No. 18-cv-12355 (MKV) (DCF) |

**DEFENDANTS' REPLY BRIEF IN SUPPORT OF
<u>MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION</u>**

October 27, 2021

Mitchell R. Berger (MB-4112)
mitchell.berger@squirepb.com
2550 M Street, N.W.
Washington, D.C. 20037
Telephone: (202) 457-6000
Facsimile: (202) 457-6315

**SQUIRE PATTON BOGGS (US) LLP**

Gassan A. Baloul (GB-4473)
gassan.baloul@squirepb.com
Joseph S. Alonzo (JA-1378)
joseph.alonzo@squirepb.com
1211 Avenue of the Americas
26th Floor
New York, NY 10036
Telephone: (212) 872-9800
Facsimile: (212) 872-9815

*Attorneys for Defendants*

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................... ii

ARGUMENT ............................................................................................................................ 1

I. Exercising Personal Jurisdiction in this Case Would Be Unconstitutional ............................... 1

    A. "Fair Warning" and a "Legitimate Government Objective" Do Not Constitute Valid Consent to Personal Jurisdiction .......................................................... 1

    B. The Activities Specified in the PSJVTA Do Not Show Consent to Personal Jurisdiction in the United States ................................................................................ 4

    C. The PSJVTA's "Deemed Consent" Provision Violates Separation of Powers ............ 8

II. Plaintiffs Fail to Establish Jurisdiction under the PSJVTA's U.S. Activities Prong ............... 8

CERTIFICATE OF SERVICE

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Armstrong v. Pomerance*,
   423 A.2d 174 (Del. 1980) ................................................................................................5

*Bank Markazi v. Peterson*,
   136 S. Ct. 1310 (2016) ....................................................................................................8

*Brewer v. Williams*,
   430 U.S. 387 (1977) ........................................................................................................8

*Burger King Corp. v. Rudzewicz*,
   471 U.S. 462 (1985) ....................................................................................................2, 3

*Chen v. Dunkin' Brands, Inc.*,
   954 F.3d 492 (2d Cir. 2020) ............................................................................................5

*City of Boerne v. Flores*,
   521 U.S. 507 (1997) ........................................................................................................8

*College Savings Bank v. Fla. Prepaid Postsecondary Educ. Bd.*,
   527 U.S.666 (1999) ................................................................................................3, 4, 7

*County of Sacramento v. Lewis*, ................................................................................................3
   523 U.S. 833 (1998)

*Eli Lilly & Co. v. Gottstein*,
   617 F.3d 186 (2d Cir. 2010) ............................................................................................6

*Enron Power Mktg. v. Luzenac Am.*,
   2006 U.S. Dist. LEXIS 62922 (S.D.N.Y. Aug. 31, 2006) ...............................................9

*Fuld v. PLO*,
   No. 20-cv-3374 (S.D.N.Y. Aug. 27, 2021) .....................................................................1

*Hess v. Pawloski*,
   274 U.S. 352 (1927) .....................................................................................................5, 6

*Ins. Corp. of Ir. v. Compagnie des Bauxites de Guinee*,
   456 U.S. 694 (1982) ........................................................................................................5

*Klinghoffer v. S.N.C. Achille Lauro Ed Altri-Gestione*,
   937 F.2d 44 (2d Cir. 1991) ..............................................................................................9

*Mendelsohn v. Meese*,
 695 F. Supp. 1474 (S.D.N.Y. 1988) ............................................................................... 7

*Sokolow v. PLO*,
 No. 04-cv-397 (S.D.N.Y. Sept. 20, 2021) ...................................................................... 1

*Sun Forest Corp. v. Shvili*,
 152 F. Supp. 2d 367 (S.D.N.Y. 2001) ............................................................................ 6

*United States v. Gomez*,
 877 F.3d 76 (2d Cir. 2017) ............................................................................................. 6

*United States v. PLO*,
 695 F. Supp. 1456 (S.D.N.Y. 1988) ........................................................................ 7, 10

*Vasquez v. Hong Kong & Shanghai Banking Corp.*,
 477 F. Supp. 3d 241 (S.D.N.Y. 2020) ............................................................................ 9

*Wellness Int'l Network, Ltd. v. Sharif*,
 575 U.S. 665 (2015) ............................................................................................. 5, 6, 8

*Wilmington PT Corp. v. Mitra*,
 2021 U.S. Dist. LEXIS 106680 (E.D.N.Y. June 7, 2021) ............................................. 6

**Statutes**

18 U.S.C. § 2334(e)(1)(B) ..................................................................................................... 8, 10

18 U.S.C. § 2334(e)(3)(A) ........................................................................................................... 9

22 U.S.C. § 5201(b) ..................................................................................................................... 7

**Other Authorities**

UN G.A. Res 67/19, *State of Palestine in the United Nations*, A/RES/67/19 (Nov.
 29, 2012); UN Press Release, *State of Palestine to Gain Enhanced Rights,
 Privileges in General Assembly Work, Sessions When It Assumes 2019 Group
 of 77 Chairmanship* (Oct. 16, 2018) *at*:
 https://www.un.org/press/en/2018/ga12078.doc.htm. ............................................... 10

Plaintiffs' defense of the PSJVTA's "deemed consent" provisions reads the "voluntary" component entirely out of the "knowing and voluntary" test for consent jurisdiction.[1] As due process requires, courts always search for evidence—beyond mere legislative say-so—that a defendant's non-litigation conduct reflects a "voluntary" submission to jurisdiction. Voluntariness often is self-evident from a forum-selection clause or an appearance in litigation without contesting jurisdiction. When it is not, courts most commonly assess whether the defendant has accepted some benefit from the forum conditioned on submission to jurisdiction. Under this reciprocity barometer for voluntariness, the PSJVTA violates due process because, as Plaintiffs concede, *nothing* in the PSJVTA authorizes Defendants to engage in activity that is otherwise prohibited. The PSJVTA thus falls on the wrong side of the line between securing *voluntary* consent to jurisdiction, and merely announcing legislative intent to *subject* Defendants to jurisdiction.

Plaintiffs' boundless view of legislative authority defies due process because it allows Congress to "effect" a defendant's consent to personal jurisdiction simply by declaring that certain activities "shall be deemed consent"—even when those same activities are not sufficiently connected to the forum to satisfy the Due Process Clause. No court has ever held Congress can by fiat transform constitutionally-inadequate contacts with the forum into grounds for "deemed consent" to jurisdiction. The PSJVTA also violates separation of powers because it directs courts to find "voluntary" consent *whenever* its factual predicates are met, regardless of whether Defendants' specific conduct satisfies the traditional "knowing and voluntary" standard.

**I.      Exercising Personal Jurisdiction in this Case Would Be Unconstitutional.**

      **A.      "Fair Warning" and a "Legitimate Government Objective" Do Not Constitute Valid Consent to Personal Jurisdiction.**

---

[1] The United States agrees the "knowing and voluntary" test governs. ECF 141 at 8. Defendants respectfully request the Court take judicial notice of their Response to the Government's look-alike brief in *Fuld*. *See* ECF 58, *Fuld v. PLO*, No. 20-cv-3374 (S.D.N.Y. Aug. 27, 2021). Judge Daniels granted such judicial notice when the Government filed the same look-alike brief in *Sokolow*. *See* ECF 1047, *Sokolow v. PLO*, No. 04-cv-397 (S.D.N.Y. Sept. 20, 2021).

Plaintiffs' defense of the constitutionality of the PSJVTA proceeds from the false premise that Congressional efforts to dictate what constitutes "consent" to personal jurisdiction are subject only to rational-basis review. Plaintiffs repeatedly assert that "statutes specifying conduct that effects a consent to personal jurisdiction … satisfy due process if they provide fair warning to defendants and are reasonably related to a legitimate government objective." Opp. 2; *see also id.* at 11-13 (describing "fair warning" and a "legitimate governmental interest" as the "necessary prerequisites" for a valid consent statute). Noticeably absent from this discussion, however, is a single case applying this standard to a consent statute, let alone holding Congress may "effect[] a consent to personal jurisdiction" merely by providing fair warning in furtherance of a legitimate interest. Indeed, despite their artful reference to "federal statutes" (plural) effecting such consent, Plaintiffs do not cite a single statute—other than the PSJVTA—employing this framework.

Plaintiffs purport to derive the "fair warning" prong of their test from *Burger King Corp. v. Rudzewicz*—a case that has nothing to do with any "[f]ederal statute[] specifying conduct that effects a consent to personal jurisdiction." Opp. 2, 12. *Burger King* addressed the "purposeful availment" requirement of the traditional due-process analysis, holding that when a defendant "has purposefully directed his activities" at the forum and the claims "arise out of or relate to those activities," the defendant has "fair warning"—given the nature of his contacts with the forum—he may be subject to suit there.[2] 471 U.S. 462, 471-75 (1985) (cleaned up). Far from sanctioning legislatively-coerced (or "deemed") consent, the Court reiterated that "[t]he Due Process Clause protects an individual's liberty interest in not being subject to the binding judgments of a forum with which he has established no meaningful 'contacts, ties, or relations.'" *Id.* at 471-72. That

---

[2] Plaintiffs' reliance on *Burger King*, a seminal "minimum contacts" case, is particularly ironic, given their claim that "*Defendants'* reliance on case law interpreting the minimum contacts standard is misplaced." (Opp. 3 (emphasis added).) The first prong of Plaintiffs' own test is grounded in "case law interpreting the minimum contacts standard."

holding plainly does not support the exercise of personal jurisdiction here, given the courts' consistent holdings that Defendants lack substantial contacts with the United States. (Mot. 3–6.)

The same is also true of the "legitimate governmental interest" prong of Plaintiffs' purported test, which they claim to derive from *County of Sacramento v. Lewis*—another case that has nothing to do with consent to jurisdiction. *See* Opp. 12-13. *Lewis* addressed "whether a police officer violates … substantive due process by causing death through deliberate or reckless indifference to life in a high-speed automobile chase." 523 U.S. 833, 836 (1998). The case does not discuss—let alone establish the "necessary prerequisites" for—"effecting consent" to personal jurisdiction. Rather, the Court merely reaffirmed the basic principle that the "touchstone" of due process is protection from arbitrary government action. *Id.* at 845.

While fair warning and non-arbitrariness are obviously elements of due process generally, Plaintiffs cite no authority establishing they are the sole criteria for determining whether the government can "effect[] consent" to personal jurisdiction by legislative fiat—and for good reason. There is no such rule. The Supreme Court has never held the government can simply declare, in furtherance of some "legitimate" interest, that a defendant "shall be deemed to have consented" to jurisdiction by engaging in certain activities. To the contrary, the Court has consistently held it would *violate* due process to *subject a defendant to jurisdiction* in a forum "with which he has established no meaningful 'contacts, ties, or relations.'" *Burger King*, 471 U.S. at 471-72. And the Court rejected Plaintiffs' watered-down "consent" test in *College Savings Bank*, 527 U.S. 666, 679-81 (1999), explaining the "fundamental difference" between a knowing and *voluntary* waiver of jurisdictional defenses, and mere "notice" that Congress intends to *subject* a defendant to suit.

Plaintiffs claim *College Savings Bank* "provides no meaningful guidance here" because "state sovereign immunity is a poor analogue to personal jurisdiction." Opp. 15. The decision itself

refutes that assertion, as the Court expressly relied on the broader principle that "constructive consent is not a doctrine commonly associated with the surrender of *constitutional rights*" to hold that a state's waiver of sovereign immunity must be "know[ing]" and "voluntary." 527 U.S. at 681-82 (emphasis added). Both state sovereign immunity and lack of personal jurisdiction are jurisdictional defenses grounded in the Constitution. Plaintiffs fail to explain why Supreme Court precedent addressing waiver of jurisdictional defenses would be less "analogous" than their own authorities, which address high-speed police chases, bankruptcy court jurisdiction, and car searches for narcotics. *See* Opp. 12-13, 18-19.

If "fair warning" and a "legitimate governmental objective" were all that due process required to *subject* a defendant to personal jurisdiction, Congress and state legislatures could circumvent modern due-process jurisprudence simply by enacting statutes declaring that the same activities already held *insufficient* to confer jurisdiction under the Due Process Clause "shall be deemed consent" to personal jurisdiction. *See* Mot. 19-20. Plaintiffs offer no response to this argument,[3] nor do they cite a single case permitting Congress to transform constitutionally-inadequate contacts into consent to jurisdiction. Plaintiffs' insistence that this Court should nonetheless find Defendants "consented" to jurisdiction is thus an invitation to error.

### B. The Activities Specified in the PSJVTA Do Not Show Consent to Personal Jurisdiction in the United States.

To establish valid "consent" to personal jurisdiction, Plaintiffs bear the burden of demonstrating some "actions of the defendant" that "amount to a legal submission to the

---

[3] Plaintiffs fail to grasp this argument, asserting only that consent and minimum contacts should remain separate grounds for jurisdiction. Opp. 23-24. If legislatures were free to "deem" that defendants "consented" to jurisdiction merely by engaging in activities that flunk the minimum-contacts test, Plaintiffs fail to explain why such a rule would not swallow the minimum-contacts test. The fact that defendants may also "consent" to jurisdiction through litigation conduct or a forum-selection clause has no bearing on whether Plaintiffs' legislated "consent" theory would gut modern minimum-contacts decisions like *Daimler*. *See* Mot. 19-20.

jurisdiction of the court." *Ins. Corp. of Ir. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 704-05 (1982); *see also Wellness Int'l Network, Ltd. v. Sharif*, 575 U.S. 665, 685 (2015) ("emphasizing" consent to jurisdiction must be "knowing and voluntary"). Plaintiffs cannot satisfy that burden in this case, because none of the activities specified as grounds for "deemed consent" under the PSJVTA demonstrates Defendants' voluntary submission to jurisdiction.

As Defendants explained in their Motion (at 7-15), a well-established line of "implied consent" cases provides the appropriate framework for gauging the constitutionality of the PSJVTA. In the absence of express consent (*e.g.*, a forum-selection clause) or litigation conduct evincing submission to jurisdiction (*e.g.*, appearing without contesting jurisdiction), courts may infer consent to jurisdiction *from non-litigation conduct* when the defendant accepts some benefit from the forum conditioned upon such consent. By accepting the privilege of engaging in the specified *non-litigation* activity, the defendant signals its implicit agreement to accept the conditions imposed by the forum—including consent to personal jurisdiction.

In contrast to the lack of authority marshalled in support of Plaintiffs' purported test, the "implied consent" cases relied upon by Defendants expressly address statutes implying or "deeming" consent to personal jurisdiction. *See, e.g.*, *Hess v. Pawloski*, 274 U.S. 352, 354 (1927) (statute provided acceptance of "rights and privileges" of driving on public roads "shall be deemed equivalent" to appointment of registrar to accept service); *Armstrong v. Pomerance*, 423 A.2d 174, 175 n.1 (Del. 1980) (statute provided nonresident accepting corporate directorship "shall … be deemed thereby to have consented" to personal jurisdiction).[4] Plaintiffs nonetheless contest the applicability of these cases to the PSJVTA for three reasons, none of which withstands scrutiny.

---

[4] Plaintiffs assert the statutes at issue in "most" of Defendants' business registration cases "did not expressly provide that registering to do business in a state would constitute consent to personal jurisdiction." (Opp. 20.) Plaintiffs' careful use of the phrase "expressly" glosses over the fact that courts have long *interpreted* such statutes as conditioning the right to do business on consent to jurisdiction. *See, e.g.*, *Chen v. Dunkin' Brands, Inc.*, 954 F.3d 492, 498-99 (2d Cir.

*First*, Plaintiffs knock down a straw man, arguing Defendants' implied-consent theory must be wrong because consent does not *always* require reciprocity. Opp. 18-19. That assertion misapprehends Defendants' argument. When a defendant expressly consents to jurisdiction via a forum-selection clause or waives any objection through litigation conduct, reciprocity obviously is not necessary because such conduct already shows defendant's agreement to submit to jurisdiction. Mot. 7-8. But the question in this case is what happens in the *absence* of express consent or litigation conduct. The "implied consent" cases demonstrate that acceptance of a benefit conditioned upon consent is a reliable barometer of the requisite voluntariness—but there is no such reciprocity here. Plaintiffs offer no alternative to this settled line of cases, nor do they identify any case implying consent from *non-litigation* conduct absent a reciprocal benefit or privilege.[5]

*Second*, Plaintiffs attempt to minimize the significance of the implied consent cases, asserting they do not "consider[] the question whether a consent-to-jurisdiction statute could be valid without 'reciprocity.'" Opp. 19. That argument misses the point. If an implied consent statute were constitutional so long as it provided "fair warning" and reasonably advanced a "legitimate" interest (as Plaintiffs now assert), the courts' analyses in those cases would have focused on those two factors—but they did not. Instead, the courts properly analyzed the *defendant's conduct*, examining whether the decision to engage in the specified activity reflected an implicit agreement to consent to jurisdiction. *See, e.g.*, *Hess*, 274 U.S. at 354-57 (holding defendant's "acceptance"

---

2020) (noting this "longstanding interpretation" of New York's statute). As Defendants explained in their Motion (at 12), such efforts to coerce "consent" are increasingly under attack post-*Daimler*.

[5] None of the cases relied upon by Plaintiffs addresses implied consent to personal jurisdiction based on non-litigation conduct. *See* Opp. at 11-12, 18-19. Four of the cases involve consent via forum-selection clauses or litigation conduct. *See Wellness Int'l*, 575 U.S. at 674-85 (consent to adjudication of claims by bankruptcy judge); *Eli Lilly & Co. v. Gottstein*, 617 F.3d 186, 194-96 (2d Cir. 2010) (submission to jurisdiction by aiding and abetting breach of court's protective order); *Sun Forest Corp. v. Shvili*, 152 F. Supp. 2d 367, 379-80 & n.21 (S.D.N.Y. 2001) (forum-selection clause); *Wilmington PT Corp. v. Mitra*, 2021 U.S. Dist. LEXIS 106680, *5-6 (E.D.N.Y. June 7, 2021) (submission by agreeing to discovery plan and attending status conferences). The fifth case is completely inapposite, as it addresses consent to a car search for narcotics. *See United States v. Gomez*, 877 F.3d 76, 98 (2d Cir. 2017).

of the "rights and privileges" of driving on public roads signified implicit "agreement" to jurisdiction); *College Savings Bank*, 527 U.S. at 680 (finding no consent to suit in sovereign immunity context based on "mere presence in a field subject to congressional regulation"). The courts' discussion of the benefit or privilege conferred by the forum would have been unnecessary if the government could "effect consent" merely by providing "fair warning" in furtherance of some "legitimate government objective."

*Third*, Plaintiffs assert that even if reciprocity were required to satisfy due process, the PSJVTA confers a "benefit" on Defendants by allowing them to "engag[e] with the society and economy of the United States."[6] Opp. 22. This argument cannot be squared with Congress' persistent actions to block Defendants from any such benefit or engagement. The Anti-Terrorism Act of 1987 broadly prohibits Defendants from maintaining any office or conducting activities in the United States. *See* Mot. 16-18. Although Plaintiffs assert the ATA's restrictions are "more limited in scope" (Opp. 22), this Court has previously held just the opposite: The ATA is a "wide gauged restriction of PLO activity within the United States," *United States v. PLO*, 695 F. Supp. 1456, 1471 (S.D.N.Y. 1988), designed to deprive Defendants of the "many benefits which accrue to organizations operating in the United States, including political stability, access to our press and capital infrastructure, and … the patina of legitimacy," *Mendelsohn v. Meese*, 695 F. Supp. 1474, 1484 (S.D.N.Y. 1988); *see* 22 U.S.C. § 5201(b) (declaring Congress' intent to deny the PLO the "benefit" of operating in the United States).

The PSJVTA does not free Defendants from these restrictions, nor does it purport to authorize Defendants to "engage with the society and economy" of the US in exchange for consent

---

[6] Notably, Plaintiffs do not dispute the "payments" prong of the PSJVTA fails to confer any benefit on Defendants. *Compare* Mot. 15-16 *with* Opp. 22-23. Plaintiffs have thus forfeited any argument that Defendants' unilateral decision to continue making payments overseas demonstrates an implied agreement to jurisdiction in the United States.

to jurisdiction.[7] To the contrary, Plaintiffs argue expressly (Opp. 22-23) that Defendants' U.S. activities are "non-exempt" from the prohibitions of the 1987 Act, confirming the absence of any benefit conferred by the PSJVTA as a condition for voluntary consent to jurisdiction.

### C. The PSJVTA's "Deemed Consent" Provision Violates Separation of Powers.

Although Congress maintains inherent authority to pass new substantive law, Congress oversteps its authority when it attempts to "usurp a court's power to interpret and apply the law to the [circumstances] before it" by "direct[ing] the result without altering the legal standards governing the effect of [the specified activity]." *Bank Markazi v. Peterson*, 136 S. Ct. 1310, 1323-24 (2016); *see also City of Boerne v. Flores*, 521 U.S. 507, 536 (1997) (holding Congress cannot override the judiciary's responsibility to "say what the law is"). The PSJVTA violates these basic principles by directing courts that they must *always* find "voluntary" consent to jurisdiction if the PSJVTA's factual predicates are met. *See Wellness Int'l*, 575 U.S. at 685. Determining whether a defendant has waived its constitutional rights is a quintessential judicial question, requiring "application of constitutional principles to the facts as found." *Brewer v. Williams*, 430 U.S. 387, 403 (1977). Plaintiffs' characterization of the PSJVTA as "specifying conduct that effects a consent to personal jurisdiction" (Opp. 2) merely confirms the constitutional violation.[8]

## II. Plaintiffs Fail to Establish Jurisdiction under the PSJVTA's U.S. Activities Prong.

Defendants strongly disagree with Plaintiffs' characterization of the payment programs, which even-handedly provide for families burdened by the loss of breadwinners due to Israeli

---

[7] Instead, the PSJVTA merely maintains the *status quo*, which limits Defendants' U.S. activities to those authorized by the UN Headquarters Agreement. (*See* Mot. 16-17 & n.6.) The sole provision relied upon by Plaintiffs—18 U.S.C. § 2334(e)(1)(B)—merely provides that Defendants "shall be deemed to have consented to personal jurisdiction" if they maintain an office or conduct any activity in the U.S. (Opp. 22-23.) Plaintiffs fail to identify any provision affirmatively permitting Defendants to conduct operations in the U.S., or freeing them from long-standing restrictions.

[8] Plaintiffs' and the Government's claim that the PSJVTA applies only to a "narrow" set of ATA cases against these Defendants (*see* Opp. 21, 23; U.S. Br. 18-19) merely exacerbates the constitutional violation. If Congress were free to single out particular types of claims or defendants for differential treatment under the Due Process Clause, "it is difficult to conceive of a principle that would limit congressional power." *Boerne*, 521 U.S. at 529.

detention, or injury/death in the Israeli-Palestinian conflict.[9] Nonetheless, the Court can move directly to the constitutional issues because Defendants do not contest the PSJVTA "payment" prong. But if this Court does reach the "U.S. activities" prong, it should hold that Plaintiffs have not met their burden to present facts that "establish jurisdiction over the defendant." *Vasquez v. Hong Kong & Shanghai Banking Corp.*, 477 F. Supp. 3d 241, 250 (S.D.N.Y. 2020).

***The Palestinian UN Mission Facilities Do Not Satisfy the PSJVTA.*** The physical premises of Palestine's UN Mission does not trigger jurisdiction because § 2334(e)(3)(A) provides that "no court may consider … any office … used exclusively for the purpose of conducting official business of the [UN]." This exemption is not defeated by Plaintiffs' inapposite reliance on a case holding that sexual slavery of a housekeeper is not covered by residual diplomatic immunity. (Opp. 7-8, citing *Swarna v. Al-awardi*.) Plaintiffs also do not explain (*id.* at 8) how the PSJVTA's "exclusive use" test can be applied without considering the "activities" for which the Mission is "used." Because "use[]" necessarily considers "activities," the PSJVTA's "ancillary activities" exception necessarily applies in assessing how the Mission is "used."

In any case, the PSJVTA does not interfere with the UN Headquarters Agreement, which "effectively removes control over the UN Headquarters and related areas from the jurisdiction of the United States" based "on the legal fiction that the UN Headquarters is not really United States territory at all." *Klinghoffer v. S.N.C. Achille Lauro Ed Altri-Gestione*, 937 F.2d 44, 51 (2d Cir. 1991). Congress would have said so if it intended to abrogate the decades-long safeguards in the Headquarters Agreement. *Enron Power Mktg. v. Luzenac Am.*, 2006 U.S. Dist. LEXIS 62922, *36 (S.D.N.Y. Aug. 31, 2006) ("Congress is unlikely to intend any radical departures from past practice without making a point of saying so."). Because "activities" must occur "while physically

---

[9] Second Alonzo Decl. ¶¶ 22-23 (Oct. 27, 2021).

- 9 -

present in the United States" under the PSJVTA, 18 U.S.C. § 2334(e)(1)(B), the activities on the premises of the UN Mission are exempt. *PLO*, 695 F. Supp. at 1458-59 (explaining Palestine's UN-created right to be in New York).

***Social Media, Videoconferences, and Other Speech of Palestine's UN Mission Do Not Trigger Jurisdiction under the U.S. Activities Factual Predicate.*** Plaintiffs argue (at 8–9) that UN and ancillary activities cannot include advocacy for the Palestinian cause, even though such advocacy is omnipresent at the UN. ECF 117, ¶5. Plaintiffs ignore the UN Committee on the Exercise of the Inalienable Rights of the Palestinian People, whose mandate embraces (as official UN business) all of Palestine's efforts to mobilize governments, "permanent missions in New York and around the world," and "civil society organizations" to support "the inalienable rights of the Palestinian people." Second Alonzo Decl. ¶24. Plaintiffs instead focus on a handful of news interviews. But U.S. media regularly interview UN missions and observers on UN issues, including the Palestinian question. *Id.* ¶¶ 2-21. UN missions frequently talk with civil society organizations, universities, and student groups. *Id.* Plaintiffs' reliance on old cases ignores both modern UN practice and Palestine's UN status change, allowing it to, *inter alia*, debate in the General Assembly, address the Security Council, and chair the Group of 77.[10] Finally, *Wrigley* did not interpret the word "ancillary" (Opp. 10); it was the Court's description of the "independent business function" test. But if education and advertising are ancillary to selling gum, they are ancillary to official UN business. "Ancillary" asks if Palestine's UN Mission is conducting the normal, standard activities of a UN Mission—and the answer is a clear "yes."

---

[10] UN G.A. Res 67/19, *State of Palestine in the United Nations*, A/RES/67/19 (Nov. 29, 2012); UN Press Release, *State of Palestine to Gain Enhanced Rights, Privileges in General Assembly Work, Sessions When It Assumes 2019 Group of 77 Chairmanship* (Oct. 16, 2018) *at*: https://www.un.org/press/en/2018/ga12078.doc.htm.

Dated: October 27, 2021

                    Respectfully Submitted,

                    **SQUIRE PATTON BOGGS (US) LLP**

                    */s/  Gassan A. Baloul*

| | |
|---|---|
| Mitchell R. Berger (MB-4112) | Gassan A. Baloul (GB-4473) |
| mitchell.berger@squirepb.com | gassan.baloul@squirepb.com |
| 2550 M Street, N.W. | Joseph S. Alonzo (JA-1378) |
| Washington, D.C. 20037 | joseph.alonzo@squirepb.com |
| Telephone: (202) 457-6000 | 1211 Avenue of the Americas |
| Facsimile:  (202) 457-6315 | 26th Floor |
| | New York, NY 10036 |
| | Telephone: (212) 872-9800 |
| | Facsimile:  (212) 872-9815 |

*Attorneys for Defendants*

## **CERTIFICATE OF SERVICE**

I hereby certify that on October 27, 2021, a true and correct copy of the foregoing was served through the Court's CM/ECF System on all counsel of record in this action.


 */s/ Gassan A. Baloul*
Gassan A. Baloul

*Attorney for Defendants*