# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

SHABTAI SCOTT SHATSKY, *et al.*,

                        Plaintiffs,

v.

THE PALESTINE LIBERATION ORGANIZATION and THE PALESTINIAN AUTHORITY,

                        Defendants.

Case No. 18-cv-12355 (MKV) (DCF)

## DEFENDANTS' REPLY IN FURTHER SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT ON THE FEDERAL CLAIMS AND MOTION TO DISMISS THE NON-FEDERAL CLAIMS

October 27, 2021

Mitchell R. Berger (MB-4112)
mitchell.berger@squirepb.com
2550 M Street, N.W.
Washington, D.C. 20037
Telephone: (202) 457-6000
Facsimile: (202) 457-6315

**SQUIRE PATTON BOGGS (US) LLP**

Gassan A. Baloul (GB-4473)
gassan.baloul@squirepb.com
Joseph S. Alonzo (JA-1378)
joseph.alonzo@squirepb.com
1211 Avenue of the Americas
26th Floor
New York, NY 10036
Telephone: (212) 872-9800
Facsimile: (212) 872-9815

*Attorneys for Defendants*

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ...................................................................................................... ii

I.  Plaintiffs Cannot Defeat Summary Judgment With New, Inadmissible Evidence............. 1

    A.  Plaintiffs Cannot Create A Triable Issue of Fact with New Evidence That Was Not Properly Disclosed in Discovery. .................................................................... 2

    B.  Plaintiffs' New Evidence Is Inadmissible Hearsay................................................. 2

        1.  2007 ISA Report ......................................................................................... 3

        2.  The Kaabi Statement.................................................................................. 5

    C.  Testimony from the New "Experts" Cannot Defeat Summary Judgment. ............. 6

        1.  Plaintiffs' "Experts" Act as Conduits for Inadmissible Hearsay. ............... 6

        2.  Plaintiffs' "Experts" Offer no Specialized Methodology or Expertise....... 7

II.  On the Admissible Evidence, Defendants Should Be Granted Summary Judgment.......... 8

    A.  Defendants Are Not Vicariously Liable for the Purported Acts of Nazal. ............. 8

    B.  The Governmental Payments and Programs At Issue Here Do Not Support ATA Primary or Secondary Liability............................................................................... 8

        1.  The Three Governmental Actions Do Not Create a Triable Issue of Fact on Proximate Causation for ATA Primary Liability......................................... 9

        2.  The Governmental Actions Do Not Create a Triable Issue of Fact on JASTA Secondary Liability. ..................................................................... 10

CONCLUSION............................................................................................................................ 10

## TABLE OF AUTHORITIES

**Cases**

*AD/SAT v. AP*, 181 F.3d 216 (2d Cir. 1999) .................................................................................. 3

*Beech Aircraft Corp. v. Rainey,* 488 U.S. 153 (1988) .................................................................... 3

*Capitol Records, Inc. v. MP3tunes, LLC,* 821 F. Supp. 2d 627 (S.D.N.Y. 2011),
   *appealed on other grounds*, 844 F.3d 79 (2d Cir. 2016) ............................................................ 8

*DVL, Inc. v. Niagara Mohawk Power Corp.*, 490 F. App'x 378 (2d Cir. 2012) ............................ 2

*Gill v. Arab Bank, PLC*, 893 F. Supp. 2d 542 (E.D.N.Y. 2012) ................................................. 3, 5

*Gilmore v. Palestinian Interim Self-Government Auth.*, 53 F. Supp. 3d 191 (D.D.C. 2014),
   *aff'd,* 843 F.3d 958 (D.C. Cir. 2016) ................................................................................. passim

*Gilmore v. Palestinian Interim Self-Government Auth.*, 843 F.3d 958 (D.C. Cir. 2016) ....... 1, 5, 6

*Haas v. Del. & Hudson Ry. Co.,* 282 F. App'x 84 (2d Cir. 2008) ................................................... 2

*Honickman v. Blom Bank Sal*, 6 F.4th 487 (2d Cir. 2021) ........................................................... 10

*Hutchinson v. Groskin*, 927 F.2d 722 (2d Cir. 1991) ..................................................................... 6

*In re September 11 Litig.,* 621 F. Supp. 2d 131 (S.D.N.Y. 2009) ............................................... 3, 5

*Kaplan v. Lebanese Canadian Bank, SAL,* 999 F.3d 842 (2d Cir. 2021) .................................... 10

*Kemper v. Deutsche Bank AG,* 911 F.3d 383 (7th Cir. 2018) ........................................................ 9

*Mantel v. Microsoft Corp.,* Case No. 16-cv-5277, 2018 U.S. Dist. LEXIS 53549
   (S.D.N.Y. Mar. 29, 2018) ........................................................................................................... 2

*Monell v. Dep't of Soc. Servs.,* 436 U.S. 658 (1978) ..................................................................... 8

*Nachtsheim v. Beech Aircraft Corp.,* 847 F.2d 1261 (7th Cir. 1988) ......................................... 4, 5

*Owens v. BNP Paribas, S.A.*, 897 F.3d 266 (D.C. Cir. 2018) ........................................................ 9

*Raskin v. Wyatt Co.*, 125 F.3d 55 (2d Cir. 1997) ........................................................................... 7

*Rothstein v. UBS AG,* 708 F.3d 82 (2d Cir. 2013) ......................................................................... 9

*Schansman v. Sberbank of Russia PJSC,* Case No. 19 CV 2985, 2021 U.S. Dist. LEXIS 188647 (S.D.N.Y. Sept. 30, 2021) .................................................................................................. 10

*Sharkey v. J.P. Morgan Chase & Co.*, 978 F. Supp. 2d 250 (S.D.N.Y. 2013) .............................. 7

*Shatsky v. PLO*, 312 F.R.D. 219 (D.D.C. 2015) ........................................................................... 1

*Shatsky v. PLO*, 292 F. Supp. 3d 188 (D.D.C. 2017) ............................................................ 1, 5, 6

*Shatsky v. PLO*, No. 02-cv-2280 , 2017 U.S. Dist. LEXIS 94946 (D.D.C. June 20, 2017) ....... 3, 8

*Sokolow v. Palestine Liberation Org.,* 60 F. Supp. 3d 509 (S.D.N.Y. 2014) ................................ 8

*Strauss v. Credit Lyonnais, S.A.,* Case No. 06-cv-702, 2017 U.S. Dist. LEXIS 165722 (E.D.N.Y. Sept. 30, 2017)................................................................................................... 3, 5

*Tracy v. Islamic Republic of Iran,* Case No. 01-2517, 2003 U.S. Dist. LEXIS 15844 (D.D.C. Aug. 21, 2003).................................................................................................... 8

*United States v. Duncan*, 42 F.3d 97 (2d Cir. 1994)..................................................................... 7

*United States v. Herring*, 754 F. App'x 67 (2d Cir. 2019) ........................................................... 6

*United States v. Mejia*, 545 F.3d 179 (2d Cir. 2008) ................................................................ 6, 7

*Vazquez v. Carlos Lopez Rosario,* 134 F.3d 28 (1st Cir. 1998)..................................................... 8

*Waldman v. PLO,* 835 F.3d 317 (2d Cir. 2016).............................................................................. 8

*Weiss v. Nat'l Westminster Bank, PLC,* 278 F. Supp. 3d 636 (E.D.N.Y. 2017)............................. 3

*Williamson v. United States*, 512 U.S. 594 (1994) ....................................................................... 6

**Rules**

Fed. R. Civ. P. 59........................................................................................................................... 1

Fed. R. Evid. 802 ........................................................................................................................... 8

Fed. R. Evid. 803 ............................................................................................................... 3, 4, 5, 8

**Other Authorities**

4 J. Weinstein & M. Berger, Weinstein's Evidence para. 803(8)[01] (1987) ............................... 5

Advisory Committee's Notes on Fed. R. Evid. 803(8)................................................................... 3

Plaintiffs recognize they cannot defeat summary judgment on the discovery record that they developed through their same counsel in the predecessor suit, *Shatsky v. PLO*, No. 02-cv-2280 (RJL) (D.D.C.) ("*Shatsky I*"), particularly after this Court "s[aw] no need for other discovery" [ECF 60 at 2]. But rather than seek supplemental Rule 56(d) discovery (as they once foreshadowed [ECF 76 at 2]), Plaintiffs unilaterally rely on new and inadmissible evidence that has never been the subject of discovery. Such evidence cannot defeat summary judgment because it is untimely and has never been explored or tested in discovery, and because it is inadmissible hearsay and/or seeks to channel inadmissible hearsay. Regardless, Plaintiffs' evidence of alleged support (both new and old) relates to governmental payments or programs by Defendants that the D.D.C. correctly concluded in *Shatsky I* are unconnected with the attack at issue, and which cannot support either primary or secondary liability under the Anti-Terrorism Act ("ATA").[1]

## I.     Plaintiffs Cannot Defeat Summary Judgment With New, Inadmissible Evidence.

Plaintiffs rely on materials outside the *Shatsky I* discovery record ("New Evidence") to oppose summary judgment, including:

(1) a 2007 report ("2007 ISA Report" or "Report") [ECF 136-28] that Plaintiffs were aware of but did not produce at any point during *Shatsky I*.

(2) 57 untested items[2] produced after the close of *Shatsky I* discovery whose use the D.D.C. precluded at summary judgment or trial. *See Shatsky I*, 312 F.R.D. 219, 227-30 (D.D.C. 2015).

(3) an interview with Allam Kaabi (the "Kaabi Statement") [ECF 136-54] published well before the D.D.C. granted summary judgment, which Plaintiffs raised in *Shatsky I* by way of a Fed. R. Civ. P. 59(e) motion, and which the D.D.C. concluded was untimely, inadmissible hearsay. *See Shatsky I*, 292 F. Supp. 3d 188, 193 (D.D.C. 2017).

(4) declarations of three purported experts (the "New Experts") [ECF 136-11, 136-12, 136-27] who were precluded from offering "liability" testimony in *Shatsky I*. *See Shatsky I*, ECF 242.

(5) declarations of two "fact" witnesses [ECF 136-36, 136-37] who were never disclosed in

---

[1] Plaintiffs concede their non-federal claims must be dismissed because Defendants are unincorporated associations. *See* Plaintiffs' Memorandum in Opposition to Defendants' Motion for Summary Judgment ("Opp.") [ECF 133] at 25.
[2] Lowell Decl. [ECF 136], Exs. 1-3, 18, 20-23, 25-27, 29-33, 36-38, 40-41, 70, 72-76, 79-81, 88-114.

*Shatsky I,* one of whom now apparently is deceased [ECF 136-135 at 5].³

### A.   Plaintiffs Cannot Create A Triable Issue of Fact with New Evidence That Was Not Properly Disclosed in Discovery.

Because Plaintiffs' "claim[s] [are] based on the same facts at issue" in *Shatsky I*, this Court saw "no need for other discovery" [ECF 60 at 2], rejecting Plaintiffs' suggestion that the Court "entertain [dispositive] motions after the parties buil[t] an appropriate record in this case, including through fact and expert discovery" [ECF 54 at 3]. Plaintiffs nonetheless argue that, by giving Defendants advance "notice," they can oppose summary judgment with material outside the *Shatsky I* discovery record. *See* Opp. at 2, 9-10. Second Circuit authority forecloses this gambit.⁴

Defendants will be prejudiced if Plaintiffs can rely on fact and "expert" testimony and documents that were not properly disclosed in discovery because, among things, Defendants have had no opportunity to: (1) test the documents and testimony in discovery; (2) depose the 5 individuals who have submitted declarations—none of whom was deposed in *Shatsky I* and one of whom is now deceased; or (3) designate their own experts or new witnesses in response to this New Evidence.⁵ And, given that Defendants moved for summary judgment based on the *Shatsky I* discovery record (without experts and relying only on documents produced in discovery), "a continuance cannot alleviate the prejudice Defendants would experience if discovery were reopened at this late stage." *Mantel,* 2018 U.S. Dist. LEXIS 53549, at *13.

### B.   Plaintiffs' New Evidence Is Inadmissible Hearsay.

Without any admissible evidence connecting Ra'ed Nazal ("Nazal") to the Karnei Shomron

---

³Defendants have sought leave to file a motion to strike the New Evidence. ECF 142.

⁴ A party cannot oppose summary judgment with evidence that was <u>not</u> produced during discovery. *See, e.g., DVL, Inc. v. Niagara Mohawk Power Corp.*, 490 F. App'x 378, 381 (2d Cir. 2012); *Mantel v. Microsoft Corp.,* Case No. 16-cv-5277, 2018 U.S. Dist. LEXIS 53549, at *12 (S.D.N.Y. Mar. 29, 2018).

⁵ *See, e.g., Haas v. Del. & Hudson Ry. Co.,* 282 F. App'x 84, 85-86 (2d Cir. 2008) (affirming exclusion of late-filed affidavit and finding that the fact that defendant "was allegedly familiar with the switch problems identified by [affiant] does not diminish the prejudice caused by waiting until after the close of discovery and, moreover, after [defendant] had prepared and filed its motion for summary judgment").

Bombing (the "Bombing"), "no reasonable jury could conclude that the PA proximately caused the bombing by paying Nazal a salary." *Shatsky I*, 2017 U.S. Dist. LEXIS 94946, at *28 (D.D.C. June 20, 2017) ("SJ Order"). Plaintiffs' two untimely items that seek to make this connection—the 2007 ISA Report and the Kaabi Statement—are both inadmissible hearsay that cannot be considered on summary judgment. *AD/SAT v. AP*, 181 F.3d 216, 236 (2d Cir. 1999).[6]

### 1. 2007 ISA Report[7]

Prior rulings admitting other, irrelevant sections of the Report [Opp. at 13] do not provide authority for submitting the different section of the Report discussing the Bombing. First and foremost, the defendants in those cases gave "no reason why these reports are unreliable." *Weiss v. Nat'l Westminster Bank, PLC,* 278 F. Supp. 3d 636, 647 (E.D.N.Y. 2017).[8] As we explained [ECF 119 at 21-22], the situation here is more akin to *Gilmore v. Palestinian Interim Self-Government Auth.,* 53 F. Supp. 3d 191, 203 (D.D.C. 2014), *aff'd,* 843 F.3d 958 (D.C. Cir. 2016), and *Gill v. Arab Bank, PLC*, 893 F. Supp. 2d 542, 571 (E.D.N.Y. 2012), where government reports, including ISA reports, were excluded on trustworthiness grounds. "Th[e] trustworthiness inquiry . . . [i]s the [] primary safeguard against the admission of unreliable evidence" and includes inquiry into questions such as the timeliness of the investigation, the investigator's skill or experience, whether a hearing was held, and the motivation of the officials conducting the investigation. *Beech Aircraft Corp. v. Rainey,* 488 U.S. 153, 167 n.11 (1988) (citing to Advisory Committee's Notes on Fed. R. Evid. 803(8)); *In re September 11 Litig.,* 621 F. Supp. 2d 131, 154 (S.D.N.Y. 2009).

---

[6] Although largely ignored in the Opposition, the other New Evidence submitted by Plaintiffs should also be excluded because it consists of multi-level hearsay contained in third-party publications, websites, intelligence files, reports and Israeli police and military court documents. *See* Defs.' Resp. to Pls.' 56.1 Statement ¶¶ 56, 60, 87-88, 105, 107, 127.

[7] Notably, Plaintiffs do not dispute Defendants' showing [ECF 119 at 19-20] that Plaintiffs were well aware of the 2007 ISA Report before discovery closed in *Shatsky I,* yet inexplicably chose not to produce it. Opp. at 13. The Report should be excluded on this basis alone.

[8] *See also Strauss v. Credit Lyonnais, S.A.,* Case No. 06-cv-702, 2017 U.S. Dist. LEXIS 165722, at *20 (E.D.N.Y. Sept. 30, 2017) (no argument that Report was untrustworthy as to any of the attacks at issue in *Strauss* or *Linde v. Arab Bank,* No. 4-cv-2799 (BMC)).

Plaintiffs unpersuasively distinguish *Gilmore*. Opp. at 14. *Gilmore*'s untrustworthiness conclusion was not based on the format of the findings (a webpage) but on the "complete absence" of "information as to how the material in the [Israel Ministry of Foreign Affairs] webpages was compiled or from what sources it [wa]s derived." 53 F. Supp. 3d at 203-04. Specifically, *Gilmore* found that the IMFA findings did not satisfy Fed. R. Evid. 803(8)'s trustworthiness requirement because, without information concerning "who those [recording] officials are, where they got their information, and under what circumstances," the court could not conclude that the findings were reliable. *Id.* at 204. The D.C. Circuit affirmed the exclusion of the reports because plaintiffs "offer[ed] no information explaining who made the findings or how they were made." *Gilmore*, 843 F.3d at 969-70.

The 2007 ISA Report's four-line entry concerning the Bombing likewise offers no information about who made the findings or how they were made, and the declarations of Spitzen, Guez, and Ilan [ECF 136-11, 136-36 and 136-37] do not fill these gaps. Indeed, it is clear from the declarations that none of these declarants was involved in any investigation of the Bombing or the creation of the Report's conclusions regarding the Bombing. Nor do the declarants have personal knowledge of the purported factual investigation conducted or the circumstances under which the findings concerning the Bombing were reached, and therefore, they do not—and cannot—identify the source of the information that led to the conclusions or how any findings were made. *Nachtsheim v. Beech Aircraft Corp.,* 847 F.2d 1261, 1274 (7th Cir. 1988) (affirming exclusion of a report under Fed. R. Evid. 803(8) where plaintiffs "knew 'nothing about [the author's] qualifications, source of his knowledge, the accuracy of that information, [and] what prompted the'" report).[9] The *Gilmore* court also rejected similar "generalized and conclusory"

---

[9] In *Nachtsheim,* the Seventh Circuit recognized that "'[t]here may be instances when questions raised about the manner in which the record was made or kept . . . must be satisfactorily explained by a custodian or other qualified

- 4 -

testimony by a purported expert witness because it failed to address, among other things, the types of sources relied upon to reach the findings or the protocols and processes in place to confirm the accuracy of the sources. 53 F. Supp. 3d at 213-14.

Moreover, here as in *Gill,* 893 F. Supp. 2d at 571, the Report is simply a conduit for inadmissible hearsay.[10] For example, Spitzen opines [ECF 136-11 at 17] that Israeli intelligence services find statements like the Kaabi Statement [ECF 136-54], which is inadmissible hearsay [*Shatsky I,* 292 F. Supp. 3d at 193], to be "very credible." The relevant "motivation" of the reporting officials is also at issue, given that the Israeli military killed Nazal in April of 2002 and justified its action by announcing that Nazal "was responsible for sending a suicide bomber to a mall in the settlement of Karnei Shomron."[11] Regardless, with no indication as to how the conclusions were reached and what sources were relied upon, the 2007 ISA Report's conclusions on the Bombing are untrustworthy and should be excluded as inadmissible hearsay. *See In re September 11 Litig.,* 621 F. Supp. 2d at 156 (excluding 9/11 report because findings are based "on sources that are not completely trustworthy or acceptable in American courts").

### 2. The Kaabi Statement

The D.D.C. issued a lengthy opinion rejecting the admissibility of the Kaabi Statement, criticizing Plaintiffs' timeliness in identifying it, questioning whether Kaabi was unavailable, and ultimately concluding the statement was "clear[ly] . . . not admissible" as a statement against interest under Fed. R. Evid. 804(b)(3). *Shatsky I,* 292 F. Supp. 3d 188, 193 (D.D.C. 2017). Other than asserting that the D.D.C.'s opinion "is incorrect" and not binding on this Court [Opp. at 15],

---

witness, if the judge is not to exclude for lack of trustworthiness.'" 847 F.2d at 1272-73 (quoting 4 J. Weinstein & M. Berger, Weinstein's Evidence para. 803(8)[01] at 803-234 to -235 (1987)).

[10] This case and *Gill* can be distinguished from *Strauss* where there was corroborating admissible evidence supporting the findings in the Report. *Strauss,* 2017 U.S. Dist. LEXIS 165722, at *23-24.

[11] Michael A. Lev, *Israelis hunt militants in new West Bank raid*, THE CHICAGO TRIBUNE (April 27, 2002), https://www.chicagotribune.com/news/ct-xpm-2002-04-27-0204270133-story.html. *See also* Pls.' SOF [ECF 134], ¶ 58.

Plaintiffs fail to explain why the D.D.C.'s persuasive application of bedrock hearsay rules is inconsistent with Second Circuit law, and indeed, it is not.  Moreover, Plaintiffs ignore the D.D.C.'s conclusion, which is consistent with Second Circuit law that, "even if Kaabi's narrative about the Karnei Shomron bombing is generally self-inculpatory, the collateral statement identifying Nazal cannot be admitted to prove Nazal had a role in the bombing because *that statement* does not inculpate Kaabi in anything." *Id.*[12]

### C. Testimony from the New "Experts" Cannot Defeat Summary Judgment.

#### 1. Plaintiffs' "Experts" Act as Conduits for Inadmissible Hearsay.

Plaintiffs' "experts" cannot create a triable issue of fact because their declarations "simply transmit . . . hearsay to the jury." *United States v. Mejia*, 545 F.3d 179, 197 (2d Cir. 2008).  *See also Hutchinson v. Groskin*, 927 F.2d 722, 725 (2d Cir. 1991) (experts cannot act as mere "conduit[s] for hearsay testimony").  Here, each declaration merely restates inadmissible hearsay, including purported facts from the PFLP's website, the 2007 ISA Report, and the Al-Hadaf publication.[13]  In *Gilmore*, the court confronted the same situation, where a purported expert, Alon Eviatar, opined that "it is . . . more likely than not, that Muhanah Abu Halawa carried out the October 30, 2000 murder of Mr. Gilmore."  53 F. Supp. 3d at 211.  Eviatar's conclusion, like that of the "experts" here, arose from mere "deductions and observations that flow[ed] directly from the content of the hearsay statements" and included statements that the hearsay was "believ[able]" and "reliable."  *Id.* at 213.  Because this testimony simply "repeat[ed] hearsay evidence," the district court excluded it on summary judgment (*id.* at 213–14 (quoting *Mejia*, 545 F.3d at 197)),

---

[12] *United States v. Herring*, 754 F. App'x 67, 68 (2d Cir. 2019) ("This particularized analysis requires courts to parse out and exclude 'non-self-inculpatory statements, even if they are made within a broader narrative that is generally self-inculpatory.'") (quoting *Williamson v. United States*, 512 U.S. 594, 600-01 (1994)).

[13] *See, e.g.*, Spitzen Decl., ECF 136-11, ¶¶ 23, 24, 27, 45; Shaked Decl., ECF 136-12 at 11–12. Spitzen, for instance, quotes the 2007 ISA Report for the proposition that Nazal directed the Bombing, and then states his "opinion" that the 2007 ISA Report's findings are "reliable."  Spitzen Decl., ¶¶ 45–49.

and the D.C. Circuit affirmed. *See Gilmore*, 843 F.3d at 972.

### 2. Plaintiffs' "Experts" Offer no Specialized Methodology or Expertise.

The New Experts' testimony is inadmissible and cannot create a triable issue of fact because the "experts" apply no methodology or expertise in reaching their conclusion, but simply draw conclusions that the jury is just as competent to draw. Courts reserve expert testimony for subject matters "beyond the ken of the average juror"—those matters that the average juror "is not capable of understanding on his or her own." *Mejia*, 545 F.3d at 191, 194. Applying this principle, *Gilmore* struck Eviatar's testimony for "not identif[ying] any particular methodology he used to form his opinion." 53 F. Supp. 3d at 212. Instead, Eviatar merely made "the type of generalized inferences that a lay person, and the jury itself, could draw without any expert assistance." *Id*. at 213; *see also Gilmore*, 843 F.3d at 973 (affirming the district court: "[Eviatar] did not explain how this methodology led to his opinions . . . [and i]t was . . . unclear how Eviatar's approach differed from that of a layperson"). An expert cannot merely tell the jury what fact-finding to reach, *United States v. Duncan*, 42 F.3d 97, 101 (2d Cir. 1994), nor simply "rehash evidence" for the "purpose of constructing a factual narrative based upon record evidence," *Sharkey v. J.P. Morgan Chase & Co.*, 978 F. Supp. 2d 250, 252 (S.D.N.Y. 2013).

Each declaration here has the same defects, and cannot create a triable issue of fact. "[A]n expert's report is not a talisman against summary judgment." *Raskin v. Wyatt Co.*, 125 F.3d 55, 66 (2d Cir. 1997). Spitzen improperly opines that the 2007 ISA Report's conclusion that Nazal directed the bombings was "reliable" simply because the ISA's report is "specific and detailed," was published six years after the attack, and was "the fruit of professional, painstaking and conscientious intelligence and investigative work." Spitzen Decl. at ¶¶ 45–49. As the *Gilmore* court found, this type of trust-me testimony invades the jury's province.

## II.     On the Admissible Evidence, Defendants Should Be Granted Summary Judgment.

### A.     Defendants Are Not Vicariously Liable for the Purported Acts of Nazal.

Defendants are entitled to summary judgment on Plaintiffs' vicarious liability theory of ATA liability for several reasons. *First,* Plaintiffs have conceded that their theory of vicarious liability is <u>not</u> "viable absent evidence that Nazal carried out the bombing." *Shatsky I,* ECF 354-1 at 7 n.1. *Second,* there is no evidence to establish the requisite employment relationship between the PA and Nazal (it is undisputed that he performed no services); that any terrorist activity was within the scope of Nazal's employment;[14] or that Nazal occupied a policymaking position.[15] *Third,* Plaintiffs cannot argue ratification based on post-attack conduct [Opp. at 16]. *See* ECF 119 at 22-23 and n.11 (collecting cases).[16]

### B.     The Governmental Payments and Programs At Issue Here Do Not Support ATA Primary or Secondary Liability.

After excluding Plaintiffs' inadmissible hearsay (both new and old)[17], they are left with the same three pieces of admissible evidence that the D.D.C. addressed in *Shatsky I*, all of which stem from post-Oslo Accords Palestinian government policies to combat terrorism and promote political stability, and none of which are linked to the Bombing: (1) The PA paid a salary to Nazal;

---

[14] *Capitol Records, Inc. v. MP3tunes, LLC,* 821 F. Supp. 2d 627, 649 (S.D.N.Y. 2011) ("For an employer to be liable for the conduct of its employees, a plaintiff must demonstrate that the alleged wrongful conduct was performed in the course of employment."), *appealed on other grounds*, 844 F.3d 79 (2d Cir. 2016).

[15] *See Monell v. Dep't of Soc. Servs.,* 436 U.S. 658, 691, 694 (1978) (governments are not liable for the acts of lower level employees). The rule is not limited to § 1983 claims. *See Tracy v. Islamic Republic of Iran,* Case No. 01-2517, 2003 U.S. Dist. LEXIS 15844, at *23-24 (D.D.C. Aug. 21, 2003) (applying *Monell* rule to claims against Iran for providing material assistance to terrorists).

[16] *Sokolow v. Palestine Liberation Org.,* 60 F. Supp. 3d 509 (S.D.N.Y. 2014) [Opp. at 2, 11] is also not vicarious liability authority to the contrary, as the *Sokolow* court's summary judgment decision was vacated when the Second Circuit reversed and remanded. *See Waldman v. PLO,* 835 F.3d 317 (2d Cir. 2016).

[17] The D.D.C. correctly excluded the General Intelligence Services ("GIS") files [ECF 136-9] relied upon by Plaintiffs [Opp. at 18] as inadmissible hearsay. *See* SJ Order at *27 ("intelligence sources [are] hearsay where, as here, there is no information given to support their bottom-line conclusions"). These reports collect unverified statements by third parties, with no indicia of trustworthiness and without any other attribute satisfying a hearsay exception. *See* ECF 120-07 at 41:7-10. They contain hearsay within hearsay from unknown sources, and are not admissible under Fed. R. Evid. 802(d)(2) or 803(8). *Vazquez v. Carlos Lopez Rosario,* 134 F.3d 28, 33-34 (1st Cir. 1998); *see also supra* Section I(B)(1).

(2) the PLO paid rent for the PFLP office in Qalqilya; and (3) the PA made post-Bombing payments to families of alleged PFLP members. *See* ECF 119 at 16; *see also* Opp. at 1, 5, 18, 22.

### 1. The Three Governmental Actions Do Not Create a Triable Issue of Fact on Proximate Causation for ATA Primary Liability.

Plaintiffs cannot demonstrate that the "[b]ombing would not have been possible without the aid and material support of the PLO and PA." Opp. at 5. Rather, Plaintiffs' three "causation" facts indisputably emanate from broadly applicable Palestinian government policies. *See* SOF ¶¶ 5-7, 9 [ECF 121]. ATA case law recognizes that governments—like Defendants— have "many legitimate agencies, operations, and programs to fund." *Rothstein v. UBS AG,* 708 F.3d 82, 97 (2d Cir. 2013). This is true even for state-sponsors of terrorism, which Defendants are not. *Kemper v. Deutsche Bank AG,* 911 F.3d 383, 393 (7th Cir. 2018) (recognizing that "Iran is involved in substantial nonterrorist activities"); *Owens v. BNP Paribas, S.A. ("Owens II"),* 897 F.3d 266, 275 (D.C. Cir. 2018).

When, as here, an ATA plaintiff's liability-causation theory depends on governmental payments or actions, "the need for facts specifically connecting a defendant's actions to the ultimate terrorist attack is especially acute." *Kemper,* 911 F.3d at 393. Because governmental actions necessarily implicate non-terroristic objectives—even when state-sponsors of terrorism are defendants—causation cannot be established based on generalized claims of a pattern and practice of terrorist support, but that is all Plaintiffs do here [Opp. at 16-20]. *See, e.g., Rothstein,* 708 F.3d at 97 (no proximate cause where plaintiffs cannot show that "the moneys UBS transferred to Iran were in fact sent to Hizbollah or Hamas or that Iran would have been unable to fund the attacks by Hizbollah and Hamas without the cash provided by UBS"); *Owens II,* 897 F.3d at 276 (to satisfy proximate cause plaintiffs must alleged that "BNPP *substantially* contributed to Plaintiffs' injuries because the funds to Sudan 'actually [were] transferred to al Qaeda . . . and aided in' the embassy

- 9 -

bombings") (citation omitted).  Here, Plaintiffs have not causally linked the three governmental actions at issue to the Bombing.[18]  This is true even if they can somehow connect Nazal to the Bombing with their untimely and inadmissible evidence.

### 2. The Governmental Actions Do Not Create a Triable Issue of Fact on JASTA Secondary Liability.

Importantly, Plaintiffs concede that JASTA requires "actual knowledge" by Defendants.  Opp. at 21.  Yet, they fail to point to any evidence demonstrating that Defendants had "actual knowledge" that their alleged facilitative conduct substantially assisted "someone who performed wrongful conduct."  *Kaplan v. Lebanese Canadian Bank, SAL,* 999 F.3d 842, 856 (2d Cir. 2021).  Instead, their JASTA arguments resort to a fungibility-of-money theory of JASTA liability that the Second Circuit has rejected.  *Id.* at 859 ("[A]iding and abetting an act of international terrorism requires more than the provision of material support to a designated terrorist organization.") (citation omitted); *Honickman v. Blom Bank Sal*, 6 F.4th 487, 498-99 (2d Cir. 2021) (rejecting argument that, because "[m]oney is fungible," JASTA aiding-and-abetting liability can be premised solely on knowing and material support to an FTO).

### CONCLUSION

Plaintiffs' flurry of New Evidence should be not be considered; it is untimely and inadmissible.  Even it is considered, however, the governmental actions that Plaintiffs rely upon are not acts of international terrorism, and are not causally or substantially connected to the Bombing, and thus do not support either primary or secondary ATA liability.

---

[18] Plaintiffs reliance on *Schansman v. Sberbank of Russia PJSC,* Case No. 19 CV 2985, 2021 U.S. Dist. LEXIS 188647 (S.D.N.Y. Sept. 30, 2021) to argue that they do not need to is misplaced because *Schansman* did not involve government actions.

Dated: October 27, 2021

Respectfully Submitted,

**SQUIRE PATTON BOGGS (US) LLP**

| | |
|---|---|
| Mitchell R. Berger (MB-4112) | */s/ Gassan A. Baloul* |
| mitchell.berger@squirepb.com | Gassan A. Baloul (GB-4473) |
| 2550 M Street, N.W. | gassan.baloul@squirepb.com |
| Washington, D.C. 20037 | Joseph S. Alonzo (JA-1378) |
| Telephone: (202) 457-6000 | joseph.alonzo@squirepb.com |
| Facsimile: (202) 457-6315 | 1211 Avenue of the Americas |
| | 26th Floor |
| | New York, NY 10036 |
| | Telephone: (212) 872-9800 |
| | Facsimile: (212) 872-9815 |

*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on October 27, 2021, I caused a true and correct copy of the foregoing Defendants' Reply in Further Support of Their Motion for Summary Judgment to be served through the Court's CM/ECF System on all counsel of record in this action.

*/s/ Gassan A. Baloul*
Gassan A. Baloul
*Attorney for Defendants*