**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| SHABTAI SCOTT SHATSKY, individually and as personal representative of the Estate of Keren Shatsky, et al., | |
| Plaintiffs, | **REDACTED** |
| v. | |
| THE PALESTINE LIBERATION ORGANIZATION and THE PALESTINIAN AUTHORITY (a/k/a "The Palestinian Interim Self-Government Authority" and/or "The Palestinian National Authority"), | Case No. 18-cv-12355 (MKV) (DCF) |
| Defendants. | |

**DEFENDANTS' RESPONSE TO PLAINTIFFS' COUNTERSTATEMENT OF**
**MATERIAL FACTS PURPORTEDLY RAISING A GENUINE ISSUE FOR TRIAL**

Pursuant to Federal Rule of Civil Procedure 56 and Local Civil Rule 56.1, Defendants Palestinian Authority ("PA") and Palestine Liberation Organization ("PLO") (collectively, "Defendants") respectfully submit the following Response to Plaintiffs' Counterstatement of Material Facts Purportedly Raising a Genuine Issue for Trial.

In this Section, Defendants address each of Plaintiffs' specific statements of fact, explaining why the materials relied upon by Plaintiffs fail to raise a genuine issue of material fact that precludes summary judgment[1]:

49.     The Popular Front for the Liberation of Palestine ("PFLP") is a known foreign terrorist organization ("FTO") that is opposed to negotiations with Israel.  Lowell Decl., Ex. 33 at SHATSKY-006177-78; Ex. 34 at SHATSKY-002913 (according to the PFLP, "the conflict with the Zionist enemy is a fatal conflict that cannot be solved through the ongoing negotiations. It can only be solved through a struggle . . . ."); *id.* at SHATSKY-002918 (emphasizing that "the Front opposes the Camp David Summit and any agreements that might be reached"); Levitt Decl. at 9 (stating the U.S. State Department designated the PFLP a foreign terrorist organization in 1997).

**Response:**  The assertions in Paragraph 49 do not create a genuine issue of material fact because, as shown below, they: rely on inadmissible hearsay; rely on materials that are outside of the *Shatsky I*[2] discovery record; and rely on "expert" testimony inadmissible under Federal Rule of Evidence 702.

First, Plaintiffs cite inadmissible hearsay in support of this statement by reference to the news magazine articles in Exhibit 34.  *Jordonne v. Ole Bar & Grill, Inc.*, Case No. 13 Civ. 1573, 2016 U.S. Dist. LEXIS 56943, at *19-20 (S.D.N.Y. 2016) (finding newspaper articles are inadmissible hearsay); *McAllister v. New York City Police Dep't*, 49 F. Supp. 2d 688, 705 n.12 (S.D.N.Y. 1999) ("Newspaper articles are hearsay . . . and . . . are not admissible evidence."); *Holmes v. Gaynor*, 313 F. Supp. 2d 345, 358 n. 1 (S.D.N.Y. 2004) (holding newspaper article

---

[1] The immateriality of Plaintiffs' statements of fact is highlighted by Plaintiffs' failure to even reference over half of them in their Opposition to Defendants' Motion for Summary Judgment [ECF 133], and many others are only referenced in passing in the Background section of the Opposition. *See* Opp. at 3-5.
[2] *Shatsky v. PLO*, Case No. 02-2280 (D.D.C.).

inadmissible on hearsay grounds).  Exhibit 33, which purports to be a report published by the U.S. Department of State, contains inadmissible hearsay for which no sources are identified and no potential exception is provided.  *See, e.g.*, *In re September 11 Litig.*, 621 F. Supp. 2d 131, 156 (S.D.N.Y. 2009) (holding that the "9/11 Report" is an inadmissible document and finding that large portions of the Report are "based on sources that are not completely trustworthy or acceptable in American courts.").  Plaintiffs' Exhibit 33 was additionally precluded by the D.C. District Court ("D.D.C.") in *Shatsky I*, 312 F.R.D. 219, 230 (D.D.C. 2015), as it was produced months after the close of discovery and could not be tested or explored by Defendants in discovery.

Second, the Levitt Declaration is outside of the *Shatsky I* discovery record.  The D.D.C. precluded Plaintiffs from submitting expert testimony or reports from their liability experts [*Shatsky I,* ECF 242 at 4], and Defendants have not had the opportunity to depose the declarant. Regardless, the Levitt Declaration cannot support this statement, as it is inadmissible expert testimony under Rule 702.  The declaration, in particular the statement referenced here, merely repeats facts of which Levitt has no personal knowledge and that requires no expert methodology. *See Highland Capital Mgt., L.P. v. Schneider*, 379 F.Supp.2d 461, 468-469 (S.D.N.Y. 2005) (an expert cannot simply "rehash[]" facts  about which he has no personal knowledge).

This statement proves nothing against Defendants and is therefore non-material to the matters at issue in this case.

50.    The PFLP uses terrorist attacks against Israelis, including suicide bombings, to carry out its objectives. Indeed, in its official magazine, Al-Hadaf, the PFLP boasted about the number of successful attacks it had carried out against Israel and Israelis.  *See* ECF 120-5, Ex. E ("Malouh Dep.") at 116:21-23 (Al-Hadaf is "the magazine that speaks in the name of the PFLP."); Lowell Decl., Ex. 34 at SHATSKY-002913 (paying tribute to those who "sacrificed themselves"); *id.* at SHATSKY-002918 (stating that PFLP members will "pursue shahada [martyrdom]" until Palestinians achieve their goals).

**Response:**  The assertions in Paragraph 50 do not create a genuine issue of material fact because, as shown below, they: mischaracterize the cited material and rely on inadmissible hearsay.

Mr. Malouh's deposition testimony does not support these statements, and the remainder of Plaintiffs' citations are to inadmissible hearsay in the form of news magazine articles (Exhibit 34).  *E.g., Jordonne v. Ole Bar & Grill, Inc.*, Case No. 13 Civ. 1573, 2016 U.S. Dist. LEXIS 56943, at \*19-20 (S.D.N.Y. 2016) (finding newspaper articles are inadmissible hearsay).

These statements prove nothing against Defendants and therefore are non-material to the matters at issue in this case.

51.    The PFLP officially endorses the use of terrorism to achieve its goals. For example, its leader in Ramallah, Ahmed Saadat, was convicted for his terrorist activities as a PFLP member. *See* Lowell Decl., Ex. 35; Ex. 36 (Layla Khaled – a member of the Palestinian National Counsel and a member of the PFLP's Central Committee who was convicted of multiple airplane hijackings – stating in an interview 31 years after her "self-sacrificing operations" that "the importance of the confrontation, the armed struggle and the popular Intifada has been clearly proved.").

**Response:**  The assertions in Paragraph 51 do not create a genuine issue of material fact because, as shown below, they: rely on inadmissible hearsay; lack authentication; and rely on materials that are outside of the *Shatsky I* discovery record.

Plaintiffs cite inadmissible hearsay in support of this statement by reference to a news magazine article in Exhibit 36.  *E.g., Jordonne v. Ole Bar & Grill, Inc.*, Case No. 13 Civ. 1573, 2016 U.S. Dist. LEXIS 56943, at \*19-20 (S.D.N.Y. 2016) (finding newspaper articles are inadmissible hearsay).  Exhibit 35 purports to be a decision issued by the Military Court in Judea in the matter of *The Military Prosecutor v. Ahmed Sadat Yousef Abed Alrasoul*, dated December 25, 2008.  Plaintiffs have failed to authenticate the document, and the document generally constitutes inadmissible hearsay for which no potential exception is provided.  *See, e.g.*, *Small v. United States*, 544 U.S. 385, 393-94 (2005) (holding that a foreign conviction could not serve as a

predicate to liability); *United States v. $ 125,938.6, et al.*, 537 F.3d 1287, 1292 (11th Cir. 2008) (holding that "none of the relevant facts found in the judgment of conviction were admissible"). Moreover, a history of improper tactics applied by Israeli security forces against Palestinian detainees makes documents like Exhibit 35 generally unreliable.  *See, e.g.*, Amnesty International, Israel      and      Occupied      Palestinian      Territories      2020,      available      at https://www.amnesty.org/en/location/middle-east-and-north-africa/israel-and-occupied-palestinian-territories/report-israel-and-occupied-palestinian-territories/      ("Palestinian   civilians, including children . . . were prosecuted in military courts that did not meet international fair trial standards. . . .  Israeli soldiers, police and ISA officers continued to torture and otherwise ill-treat Palestinian detainees, including children, with impunity.  Reported methods included beating, slapping, painful shackling, sleep deprivation, use of stress positions and threats of violence against family members.").  *See also* Lowell Decl., Ex. 35 at 17-18 (tribunal judge noting the "contradiction between [a witness's] statement and his account given in Court" and recommending that his colleagues "prefer" the statement that inculpated the defendant without providing a rationale for doing so).

Exhibit 36 cited by Plaintiffs is a news magazine article, and is inadmissible hearsay. *Jordonne v. Ole Bar & Grill, Inc.*, Case No. 13 Civ. 1573, 2016 U.S. Dist. LEXIS 56943, at *19-20 (S.D.N.Y. 2016) (finding newspaper articles are inadmissible hearsay).  Additionally, it was precluded by the D.D.C. in *Shatsky I*, 312 F.R.D. 219, 230 (D.D.C. 2015), as it was produced months after the close of discovery and could not be tested or explored by Defendants in discovery.

These statements prove nothing against Defendants and therefore are non-material to the matters at issue in this case.

52.     The PFLP carried out car bombings in 2001 and, on October 17, 2001, assassinated Israeli cabinet minister Rehav'am Ze'evi.  *See* Lowell Decl., Ex. 37 at SHATSKY-008263; *see also* Ex. 38 at SHATSKY-007584 (describing the assassination).

**Response:**  The assertions in Paragraph 52 do not create a genuine issue of material fact because, as shown below, they: rely on inadmissible hearsay; lack authentication; and rely on materials that are outside the *Shatsky I* discovery record.

Exhibit 37, which purports to be a report published by the U.S. Department of State, contains inadmissible hearsay for which no sources are identified and no potential exception is provided.  *See, e.g.*, *In re September 11 Litig.*, 621 F. Supp. 2d 131, 156 (S.D.N.Y. 2009) (holding that the "9/11 Report" is an inadmissible document and finding that large portions of the Report are "based on sources that are not completely trustworthy or acceptable in American courts."). Exhibit 38 purports to be a verdict and sentence issued by an Israeli Court for Ahad Gholmeth. Plaintiffs have failed to authenticate the document, and the document generally constitutes inadmissible hearsay for which no potential exception is provided.  *See, e.g.*, *Small v. United States*, 544 U.S. 385, 393-94 (2005) (holding that a foreign conviction could not serve as a predicate to liability); *United States v. $ 125,938.6, et al.*, 537 F.3d 1287, 1292 (11th Cir. 2008) (holding that "none of the relevant facts found in the judgment of conviction were admissible"). Furthermore, Plaintiffs' Exhibits 37 and 38 were precluded by the District Court in *Shatsky I*, 312 F.R.D. 219, 230 (D.D.C. 2015), as they were produced long after the close of discovery and could not be tested or explored by Defendants in discovery.  Moreover, a history of improper tactics applied by Israeli security forces against Palestinian detainees makes military court judgments like Exhibit 38 generally unreliable.  See, e.g., Amnesty International, Israel and Occupied Palestinian Territories 2020, available at https://www.amnesty.org/en/location/middle-east-and-north-africa/israel-and-occupied-palestinian-territories/report-israel-and-occupied-palestinian-

territories/ ("Palestinian civilians, including children . . . were prosecuted in military courts that did not meet international fair trial standards. . . .  Israeli soldiers, police and ISA officers continued to torture and otherwise ill-treat Palestinian detainees, including children, with impunity.  Reported methods included beating, slapping, painful shackling, sleep deprivation, use of stress positions and threats of violence against family members.").  *See also* Lowell Decl., Ex. 38 at ¶ 12 (indicating that no evidence was presented beyond confessions obtained by the ISA and police).

These statements prove nothing against Defendants and therefore are non-material to the matters at issue in this case.

53.     On February 16, 2002, the PFLP continued its plan and pattern of terror and carried out the Karnei Shomron Bombing, causing injury to Plaintiffs in this action.  *See* Spitzen Decl. at ¶¶ 24–28 (stating "[t]he PFLP immediately and repeatedly confirmed that it executed the Bombing").  Sadeq Ahed Mahmoud Abdel Hafez ("Hafez"), a PFLP operative, was responsible for detonating the explosive device in the attack.  *See* Lowell Decl., Ex. 24 at 07:000013 (stating Hafez was affiliated with "The Popular Front"); Ex. 39 at 07:000017 (stating Hafez died on February 16, 2002); Ex. 24 at 07:000012-13 (stating that on February 16, 2002, Hafez carried out a ███████████████Redacted███████████████ near the city of Qalqilya); *id.* at 07:000015 (stating Hafez "shall be considered a Shahid [one who met his death as a martyr] (of the Al-Aqsa Martyrs)"); Spitzen Decl. at ¶¶ 17–23 (stating that "[t]he suicide bomber was Sadeq Ahed Abdel Hafez, identity number 922361217").

**Response:**  The assertions in Paragraph 53 do not create a genuine issue of material fact because, as shown below, they: rely on inadmissible evidence; lack authentication; rely on materials that are outside of the *Shatsky I* discovery record; and rely on "expert" testimony inadmissible under Federal Rule of Evidence 702.

Defendants do not dispute for the purpose of summary judgment that Sadeq Abdel Hafez carried out the Karnei Shomron attack at issue in this case.  But Plaintiffs reference the social investigative report cited as Exhibit 24, whose author had no first-hand knowledge of Hafez's political affiliation, to claim that Hafez was not only affiliated with the PFLP, but a *PFLP operative.  See, e.g.*, *Wado v. Xerox Corp.*, 991 F. Supp. 174, 191 (W.D.N.Y. 1998) (finding that

because deponent "had no firsthand knowledge of whether" factual allegation against defendant was true, her testimony was "pure hearsay and [could] not be considered on" summary judgment).

Plaintiffs also attempt to support the above statements further by reference to their expert's repetition of the contents of (1) an unauthenticated online post and (2) excerpts from a news magazine, both of which constitute inadmissible hearsay.  First, the Spitzen Declaration is outside of the *Shatsky I* discovery record.  The District Court in *Shatsky I*, ECF 242 at 4, precluded Plaintiffs from submitting expert testimony or reports from their liability experts, and Defendants have not had the opportunity to depose the declarant.  Regardless, the Spitzen Declaration is inadmissible expert testimony under Rule 702, and the statements referenced here are simply restatements of facts about which Spitzen has no personal knowledge, improperly presented "solely for the purpose of constructing a factual narrative based upon record evidence." *Highland Capital Mgt., L.P. v. Schneider*, 379 F.Supp.2d 461, 469 (S.D.N.Y. 2005).  Moreover, Spitzen infers that the PFLP carried out the Karnei Shomron attack because it claimed responsibility for it soon after its occurrence, but U.S. courts have rejected that reasoning.  *Strauss v. Credit Lyonnais, S.A.*, 925 F. Supp. 2d 414, 449 (E.D.N.Y. 2013) (noting that terrorists have a "perverse" incentive to take "credit" for attacks they did not commit, and that such claims are "not reliable") (quoting *Gill v. Arab Bank, PLC*, 893 F. Supp. 2d 542, 569 (E.D.N.Y. 2012)).

Plaintiffs have not provided any admissible evidence of a connection between Hafez and the PFLP, let alone with Defendants.[3]  These statements prove nothing against Defendants and therefore are non-material to the matters at issue in this case.

---

[3] As Plaintiffs bear the burden of proof for their ATA claims, Defendants' burden on summary judgment "may be discharged by 'showing' … that there is an absence of evidence to support the nonmoving party's case*." Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  *See also Berry v. Marchinkowski*, 137 F. Supp. 3d 495, 521 (S.D.N.Y. 2015)  ("[W]hen the burden of proof at trial would fall on the nonmoving party, it ordinarily is sufficient for the movant to point to a lack of evidence to go to the trier of fact on an essential element of the nonmovant's claim.") (quoting *CILP Assocs., L.P. v. PriceWaterhouse Coopers LLP*, 735 F.3d 114, 123 (2d Cir. 2013)).  To avoid summary

54.     The PFLP's announcement claiming responsibility for the attack, published on al-Jazeera, identified Sadeq Hafez and stated that he was affiliated with the PFLP. Lowell Decl., Ex. 40 at SHATSKY-008012-13.

**Response:**  The assertions in Paragraph 54 do not create a genuine issue of material fact because, as shown below, they: rely on inadmissible hearsay and rely on materials that are outside of the *Shatsky I* discovery record.

The news article cited by Plaintiffs constitutes inadmissible hearsay and thus has no bearing on who claimed responsibility for the Karnei Shomron attack.  *E.g., Jordonne v. Ole Bar & Grill, Inc.*, Case No. 13 Civ. 1573, 2016 U.S. Dist. LEXIS 56943, at *19-20 (S.D.N.Y. 2016) (finding newspaper articles are inadmissible hearsay).  U.S. courts have also recognized that claims of responsibility for terror attacks are "not reliable."  *Strauss v. Credit Lyonnais, S.A.*, 925 F. Supp. 2d 414, 449 (E.D.N.Y. 2013) (noting that terrorists have a "perverse" incentive to take "credit" for attacks they did not commit) (quoting *Gill v. Arab Bank, PLC*, 893 F. Supp. 2d 542, 569 (E.D.N.Y. 2012)).  Furthermore, Plaintiffs' Exhibit 40 was precluded by the District Court in *Shatsky I*, 312 F.R.D. 219, 230 (D.D.C. 2015), as it was produced long after the close of discovery and could not be tested or explored by Defendants in discovery.

The statement is non-material to the issues in this case because it proves nothing against Defendants.

55.     Defendants conceded in *Shatsky I* that Hafez was the bomber who carried out the attack. *See Shatsky v. Palestine Liberation Org.*, 2017 WL 2666111, at *10 (D.D.C. June 20, 2017) ("*Shatsky I*") ("Defendants have conceded . . . that Hafez was the bomber.").

**Response:**  The assertion in Paragraph 55 does not create a genuine issue of material fact because Plaintiffs have failed to cite admissible evidence connecting Hafez to Defendants.

---

judgment, Plaintiffs must then come forward with admissible evidence to fill the void, which they have not done. *Celotex*, 477 U.S. at 324.

Defendants do not dispute for the purpose of summary judgment that Hafez carried out the Karnei Shomron attack. As explained in Defendants' Response to Paragraph 53, *supra*, Plaintiffs have not provided any admissible evidence of a connection between Hafez and the PFLP, let alone Defendants.

56.     The mastermind behind the attack was Ra'ed Nazal ("Nazal"), a known PFLP military leader. Ilan Decl. ¶ 14; Guez Decl. ¶¶ 11–13; Lowell Decl. Ex. 41 at 8–9 (interview with Allam Kaabi); Dahbour Dep. at 50:24-52:19.

**Response:**  The assertion in Paragraph 56 does not create a genuine issue of material fact because, as shown below, it: relies on inadmissible hearsay; relies on materials that Plaintiffs failed to disclose in the *Shatsky I* discovery record; and lacks foundation.

The media interview of Allam Kaabi in Exhibit 41 was not timely produced in *Shatsky I* and therefore should be excluded here. Regardless, it constitutes inadmissible hearsay and cannot support the above statement. Assuming Kaabi is "unavailable" as Plaintiffs argue, Opp. at 15, his statement does not meet any of the hearsay exceptions encompassed in Rule 804(b). Plaintiffs claim the statement is admissible under Rule 804(b)(3), but the statement was not self-inculpatory as it related entirely to the alleged actions of Ra'ed Nazal. Therefore, the statement does not qualify for the exception under Rule 804(b)(3) and is inadmissible hearsay. *United States v. Herring*, 754 Fed. App'x 67, 68 (2d Cir. 2019) ("This particularized analysis requires courts to parse out and exclude 'non-self-inculpatory statements, even if they are made within a broader narrative that is generally self-inculpatory.'") (quoting *Williamson v. United States*, 512 U.S. 594, 600-01 (1994)). *See also Shatsky I*, 292 F. Supp. 3d 188, 194-95 (D.D.C. 2017) (finding the Kaabi statement non-self-inculpatory and, therefore, inadmissible hearsay). Similarly, Mr. Dahbour's testimony regarding the Karnei Shomron attack constitutes inadmissible hearsay-within-hearsay, as his testimony is based on what he heard from the media or from intelligence files. *E.g.*,

*Jordonne v. Ole Bar & Grill, Inc.*, Case No. 13 Civ. 1573, 2016 U.S. Dist. LEXIS 56943, at *19-20 (S.D.N.Y. 2016) (finding newspaper articles are inadmissible hearsay); *United States v. El-Mezain*, 664 F.3d 467, 500 (5th Cir. 2011) (holding that PA intelligence files constituted "classic hearsay," were not admissible under the residual hearsay exception (Fed. R. Evid. 807), and did not meet the standard for admissibility under the public records exception). *See also* Dahbour Dep. 88:19 ("I know from the media."); *id.* at 90:24-91:8 (referring to "Israeli allegations" regarding Nazal).

Plaintiffs' remaining support for this statement is the Israel Security Agency's ("ISA's") 2007 report ("2007 ISA Report"), introduced through two witnesses. Plaintiffs were aware of but failed to timely produce the 2007 ISA Report in *Shatsky I.* ECF 119 at 19-20. Plaintiffs also failed to disclose Messrs. Ilan and Guez as witnesses in *Shatsky I,* and Mr. Ilan is now deceased. Plaintiffs should be precluded from relying on any of this untimely evidence that has not been tested in discovery.

The 2007 ISA Report's conclusions regarding the Karnei Shomron Bombing are also inadmissible hearsay. With no information concerning the purported investigation of the Bombing, including who conducted it and how it was conducted, or from what sources the conclusions were derived, the Report's bottom-line conclusions on the Bombing are untrustworthy and not admissible under Fed. R. Evid. 803(8). *See Gilmore v. Palestinian Interim Self-Government Auth.,* 53 F. Supp. 3d 191, 203-04 (D.D.C. 2014) (report's findings did not satisfy Fed. R. Evid. 803(8)'s trustworthiness requirement because, without information concerning "who those [recording] officials are, where they got their information, and under what circumstances," the court could not conclude that the findings were reliable), *aff'd,* 843 F.3d 958, 969-70 (D.C. Cir. 2016); *In re September 11 Litig.,* 621 F. Supp. 2d at 156 (excluding 9/11 report because

findings are based "on sources that are not completely trustworthy or acceptable in American courts").

Plaintiffs improperly seek to introduce the Report's contents through two witnesses who were not involved in any Karnei Shomron Bombing investigation or the creation of the Report's conclusions regarding the Bombing.  Nor do the witnesses have personal knowledge of the purported factual investigation conducted or the circumstances under which the findings concerning the Karnei Shomron Bombing were reached.  Therefore, they do not—and cannot— identify the source of the information that led to the findings or how the findings were made.  Thus, the witnesses cannot lay a foundation for the Report's admission.  *Gilmore v. Palestinian Interim Self-Government Auth.,* 53 F. Supp. 3d 191, 213 (D.D.C. 2014) (rejecting similar "generalized and conclusory" testimony because it failed to address, among other things, the types of sources relied upon and the protocols and processes in place to confirm the accuracy of the sources), *aff'd,* 843 F.3d 958, 973 (D.C. Cir. 2016).

Further, Mr. Ilan's declaration, submitted in *Shatsky v. Syrian Arab Republic,* No. 08-cv-00496-RJL (D.D.C.), is hearsay; it is an out-of-court statement submitted for the truth of the matter asserted and is not subject to any exceptions.  Moreover, Paragraph 14 of Mr. Ilan's declaration, which quotes from the 2007 ISA Report, is hearsay within hearsay and not admissible under Fed. R. Evid. 805 because each statement in the multiple levels of hearsay does not fall within a hearsay exception.  *United States v. Cruz,* 894 F.2d 41, 44 (2d Cir. 1990).  For these same reasons, Mr. Guez's repetition and endorsement of Paragraph 14 of Mr. Ilan's declaration is inadmissible because it contains multiple levels of hearsay that do not fall within any hearsay exceptions.  Moreover, his additional statements that the hearsay is accurate and "reliable" are likewise inadmissible.  *Gilmore,* 53 F. Supp. 3d at 212.

The statement is non-material to the issues in this case because it proves nothing against Defendants. Plaintiffs have not provided any admissible evidence linking Nazal with the Karnei Shomron Bombing.

57.     Israel's investigation into the Karnei Shomron Bombing culminated with a determination that Ra'ed Nazal planned the Bombing and that the PFLP carried it out. *See* 2007 ISA Report at 59; Ilan Decl. ¶ 14; Guez Decl. ¶¶ 11–13; Spitzen Decl. at ¶¶ 24–28.

**Response:** The assertions in Paragraph 57 do not create a genuine issue of material fact because, as shown below, they rely on inadmissible hearsay; rely on materials that Plaintiffs failed to disclose in the *Shatsky I* discovery record; and lack foundation.

For the purpose of summary judgment, Defendants do not dispute that the Israel Security Agency ("ISA") published a report containing the above conclusion. Plaintiffs attempt to support this statement through the ISA's 2007 report ("2007 ISA Report"), introduced through two witnesses. Plaintiffs were aware of but failed to timely produce the 2007 ISA Report in *Shatsky I*. ECF 119 at 19-20. Plaintiffs also failed to disclose Messrs. Ilan and Guez as witnesses in *Shatsky I,* and Mr. Ilan is now deceased. Plaintiffs should be precluded from relying on any of this untimely evidence that has not been tested in discovery.

The 2007 ISA Report's conclusions regarding the Karnei Shomron Bombing are also inadmissible hearsay. With no information concerning the purported investigation of the Bombing, including who conducted it and how it was conducted, or from what sources the conclusions were derived, the Report's bottom-line conclusions on the Bombing are untrustworthy and not admissible under Fed. R. Evid. 803(8). *See Gilmore v. Palestinian Interim Self-Government Auth.,* 53 F. Supp. 3d 191, 203-04 (D.D.C. 2014), (report's findings did not satisfy Fed. R. Evid. 803(8)'s trustworthiness requirement because, without information concerning "who those [recording] officials are, where they got their information, and under what circumstances,"

the court could not conclude that the findings were reliable), *aff'd,* 843 F.3d 958, 969-70 (D.C. Cir. 2016); *In re September 11 Litig.,* 621 F. Supp. 2d at 156 (excluding 9/11 report because findings are based "on sources that are not completely trustworthy or acceptable in American courts").

Plaintiffs improperly seek to introduce the Report's contents through two witnesses who were not involved in the Karnei Shomron Bombing investigation or the creation of the Report's conclusions regarding the Bombing. Nor do the witnesses have personal knowledge of the purported factual investigation conducted or the circumstances under which the findings concerning the Karnei Shomron Bombing were reached. Therefore, they do not—and cannot— identify the source of the information that led to the findings or how the findings were made. Thus, the witnesses cannot lay a foundation for the Report's admission. *Gilmore v. Palestinian Interim Self-Government Auth.,* 53 F. Supp. 3d 191, 213 (D.D.C. 2014) (rejecting similar "generalized and conclusory" testimony because it failed to address, among other things, the types of sources relied upon and the protocols and processes in place to confirm the accuracy of the sources), *aff'd,* 843 F.3d 958, 973 (D.C. Cir. 2016).

Further, Mr. Ilan's declaration, submitted in *Shatsky v. Syrian Arab Republic,* No. 08-cv-00496-RJL (D.D.C.), is hearsay; it is an out-of-court statement submitted for the truth of the matter asserted and is not subject to any exceptions. Moreover, Paragraph 14 of Mr. Ilan's declaration, which quotes from the 2007 ISA Report, is hearsay within hearsay and not admissible under Fed. R. Evid. 805 because each statement in the multiple levels of hearsay does not fall within a hearsay exception. *United States v. Cruz,* 894 F.2d 41, 44 (2d Cir. 1990). For these same reasons, Mr. Guez's repetition and endorsement of Paragraph 14 of Mr. Ilan's declaration is inadmissible because it contains multiple levels of hearsay that do not fall within any hearsay exceptions.

Moreover, his additional statements that the hearsay is accurate and "reliable" are likewise inadmissible. *Gilmore,* 53 F. Supp. 3d at 212.

Moreover, the Spitzen Declaration is outside of the *Shatsky I* discovery record. The D.D.C. in *Shatsky I*, ECF 242 at 4, precluded Plaintiffs from submitting expert testimony or reports from their liability experts, and Defendants have not had the opportunity to depose the declarant. Regardless, the Spitzen Declaration cannot support this statement of fact, as it is inadmissible expert testimony. Spitzen's conclusion—*i.e.* a "detailed written announcement by the PFLP so quickly after the Karnei Shomron Bombing strongly indicates that the senior PFLP leadership had prior knowledge of the attack," ¶ 25—is not based in specialized expertise but concerns matters a juror "is ... capable of understanding on his or her own." *United States v. Mejia*, 545 F.3d 179, 194 (2d Cir. 2008). Spitzen merely restates facts from the *Al-Hadaf* magazine and draws basic conclusions therefrom, a practice which "attempts to substitute the expert's judgment for the jury's." *Nimely v. City of New York*, 414 F.3d 381, 398 (2d Cir. 2005).

The statement is non-material to the matters at issue in this case because it proves nothing against Defendants. Plaintiffs have not provided any admissible evidence linking Nazal with the Karnei Shomron Bombing.

58.    Nazal was killed on April 26, 2002 during an Israeli military raid in connection with his role in the Karnei Shomron Bombing. Lowell Decl., Ex. 6 at 07:000203, 07:000205.

**Response:** The assertions in Paragraph 58 do not create an issue of material fact because, as shown below, they: mischaracterize the cited materials and rely on inadmissible hearsay.

Defendants do not dispute for the purposes of summary judgment that Nazal was killed on April 26, 2002 during an Israeli military raid, but Plaintiffs distort the evidence they cite. The documents cited by Plaintiffs as Exhibit 6 do not support their assertion that he was killed "in connection with his role in the Karnei Shomron Bombing." They merely state ▮▮▮Redacted▮▮▮

<span style="background-color:black; color:white;">Redacted</span>  In any event, these documents are intelligence files, and given their reliance on informants and other untrustworthy sources, they constitute inadmissible hearsay and cannot be considered.  *See, e.g.*, *United States v. El-Mezain*, 664 F.3d 467, 500 (5th Cir. 2011) (holding that PA intelligence files constituted "classic hearsay," were not admissible under the residual hearsay exception (Fed. R. Evid. 807), and did not meet the standard for admissibility under the public records exception).

The statement is non-material to the issues in this case because it proves nothing against Defendants.  Plaintiffs have not provided any admissible evidence linking Nazal with the Karnei Shomron Bombing.

59.    A 2007 Report by the Israel Security Agency (a/k/a "Shin Bet" or "Shabak") investigated the suicide bombing in Karnei Shomron and concluded "[t]he attack was planned and executed by the PFLP military network in Qalqilya, under the direction of Raad Madi, in collaboration with the PFLP network in Nablus, headed by Ahad Oulma." Ilan Decl. ¶ 14; Guez Decl. ¶¶ 11–13.

**Response:**  The assertions in Paragraph 59 do not create an issue of material fact because, as shown below, they: rely on inadmissible hearsay, rely on materials that Plaintiffs failed to disclose in the *Shatsky I* discovery record; and lack foundation.

Plaintiffs' support for this statement is the Israel Security Agency's ("ISA's") 2007 report ("2007 ISA Report"), introduced through two witnesses.  Plaintiffs were aware of but failed to timely produce the 2007 ISA Report in *Shatsky I*.  ECF 119 at 19-20.  Plaintiffs also failed to disclose Messrs. Ilan and Guez as witnesses in *Shatsky I,* and Mr. Ilan is now deceased.  Plaintiffs should be precluded from relying on any of this untimely evidence that has not been tested in discovery.

The 2007 ISA Report's conclusions regarding the Karnei Shomron Bombing are also inadmissible hearsay.  With no information concerning the purported investigation, including who

conducted it and how it was conducted, or from what sources the conclusions were derived, the Report's bottom-line conclusions on the Bombing are untrustworthy and not admissible under Fed. R. Evid. 803(8).  *See Gilmore v. Palestinian Interim Self-Government Auth.,* 53 F. Supp. 3d 191, 203-04  (D.D.C. 2014) (report's findings did not satisfy Fed. R. Evid. 803(8)'s trustworthiness requirement because, without information concerning "who those [recording] officials are, where they got their information, and under what circumstances," the court could not conclude that the findings were reliable), *aff'd,* 843 F.3d 958, 969-70 (D.C. Cir. 2016); *In re September 11 Litig.,* 621 F. Supp. 2d at 156 (excluding 9/11 report because findings are based "on sources that are not completely trustworthy or acceptable in American courts").

Plaintiffs improperly seek to introduce the Report's contents through two witnesses who were not involved in the Karnei Shomron Bombing investigation or the creation of the Report's conclusions regarding the Bombing.  Nor do the witnesses have personal knowledge of the purported factual investigation conducted or the circumstances under which the findings concerning the Karnei Shomron Bombing were reached.  Therefore, they do not—and cannot— identify the source of the information that led to the findings or how the findings were made.  Thus, the witnesses cannot lay a foundation for the Report's admission.  *Gilmore v. Palestinian Interim Self-Government Auth.,* 53 F. Supp. 3d 191, 213 (D.D.C. 2014) (rejecting similar "generalized and conclusory" testimony because it failed to address, among other things, the types of sources relied upon and the protocols and processes in place to confirm the accuracy of the sources), *aff'd,* 843 F.3d 958, 973 (D.C. Cir. 2016).

Further, Mr. Ilan's declaration, submitted in *Shatsky v. Syrian Arab Republic,* No. 08-cv-00496-RJL (D.D.C.), is hearsay; it is an out-of-court statement submitted for the truth of the matter asserted and is not subject to any exceptions.  Moreover, Paragraph 14 of Mr. Ilan's declaration,

which quotes from the 2007 ISA Report, is hearsay within hearsay and not admissible under Fed. R. Evid. 805 because each statement in the multiple levels of hearsay does not fall within a hearsay exception. *United States v. Cruz,* 894 F.2d 41, 44 (2d Cir. 1990). For these same reasons, Mr. Guez's repetition and endorsement of Paragraph 14 of Mr. Ilan's declaration is inadmissible because it contains multiple levels of hearsay that do not fall within any hearsay exceptions. Moreover, his additional statements that the hearsay is accurate and "reliable" are likewise inadmissible. *Gilmore,* 53 F. Supp. 3d at 212.

60.     Allam Kaabi, a member of the PFLP Central Committee and head of the PFLP's Prisoner Committee in Gaza, and in 2002 a senior leader of the PFLP's military wing, the Abu Ali Mustafa Brigades in Nablus, confirmed Ra'ed Nazal's involvement in the Bombing. Lowell Decl., Ex. 41 at 8–9; *see also* Spitzen Decl. ¶¶ 36–37 (discussing Kaabi's titles and his statement confirming Nazal's involvement in the attack).

**Response:** The assertions in Paragraph 60 do not create a genuine issue of material fact because, as shown below, they: rely on inadmissible hearsay; rely on materials that are outside of the *Shatsky I* discovery record; and rely on "expert" testimony inadmissible under Federal Rule of Evidence 702.

First, the Kaabi Statement was not timely disclosed and should be excluded on that basis. In addition, it is inadmissible hearsay for which no exception applies. Assuming Kaabi is "unavailable" as Plaintiffs argue, Opp. at 15, his statement does not meet any of the hearsay exceptions encompassed in Rule 804(b). Plaintiffs claim the statement is admissible under Rule 804(b)(3), but the statement was not self-inculpatory as it related entirely to the alleged actions of Ra'ed Nazal. Therefore, the statement does not qualify for the exception under Rule 804(b)(3) and is inadmissible hearsay. *United States v. Herring*, 754 Fed. App'x 67, 68 (2d Cir. 2019) ("This particularized analysis requires courts to parse out and exclude 'non-self-inculpatory statements, even if they are made within a broader narrative that is generally self-inculpatory.'") (quoting

*Williamson v. United States*, 512 U.S. 594, 600-01 (1994)); *see also Shatsky I*, 292 F. Supp. 3d 188, 194-95 (D.D.C. 2017) (finding the Kaabi Statement non-self-inculpatory and, therefore, inadmissible hearsay).

Second, the Spitzen Declaration is outside of the *Shatsky I* discovery record.  The D.D.C. in *Shatsky I*, ECF 242 at 4, precluded Plaintiffs from submitting expert testimony or reports from their liability experts, and Defendants have not had the opportunity to depose the declarant. Regardless, Spitzen's Declaration cannot support this statement of fact, as it is inadmissible expert testimony.  Spitzen recites hearsay—a video by Kaabi on a Facebook page purported to be that of the PFLP—and draws a conclusion therefrom, instructing that "there is no reasonable basis to doubt [Kaabi's] cumulative statements."  Spitzen Decl. ¶ 37.  This testimony merely "undertakes to tell the jury what result to reach," and is thus inadmissible under Rule 702.  *Nimely v. City of New York*, 414 F.3d 381, 398 (2d Cir. 2005).  Moreover, insofar as this statement regards Kaabi's credibility, "expert opinions that constitute evaluations of witness credibility, even when such evaluations are rooted in scientific or technical expertise, are inadmissible under Rule 702."  *Id.*

The statement is non-material to the issues in this case because it proves nothing against Defendants.  Plaintiffs have not provided any admissible evidence linking the PFLP to the Karnei Shomron Bombing.

61.    In a video interview posted by the PFLP on its Facebook page on December 17, 2016, Kaabi stated "the Karnei Shomron operation was executed by comrade Ra'ed Nazal from Qalqilya in coordination with the comrades in the [Abu Ali Mustafa] Brigades in Nablus." *Id.*

**Response:**  The assertions in Paragraph 61 do not create a genuine issue of material fact because they: rely on inadmissible hearsay; rely on materials that are outside of the *Shatsky I* discovery record; and rely on "expert" testimony inadmissible under Federal rule of Evidence 702.

Defendants incorporate by reference Defendants' Response to Plaintiffs' Counterstatement Paragraph 60.

62.     Kaabi termed this attack "a joint, distinguished effort" between the PFLP's Abu Ali Mustafa Brigades in Nablus, of which Kaabi was a leader at the time, and Nazal in Qalqilya. *Id.*

**Response:**  The assertions in Paragraph 62 do not create a genuine issue of material fact because they: rely on inadmissible hearsay; rely on materials that are outside of the *Shatsky I* discovery record; and rely on "expert" testimony inadmissible under Federal rule of Evidence 702. Defendants incorporate by reference Defendants' Response to Plaintiffs' Counterstatement Paragraph 60.

63.     Kaabi currently resides in the Gaza Strip and cannot be located. *See* Spitzen Decl. ¶ 43, n.23 ("I attempted several times to obtain contact information for Kaabi in the Gaza Strip, such as a phone number or email address. To that end I called several PFLP offices and officials (without of course revealing my identity or the purpose of the inquiry), but I was unable to obtain contact information for Kaabi.").

**Response:**  The assertions in Paragraph 63 do not create a genuine issue of material fact because, as shown below, they: rely on inadmissible hearsay; rely on materials that are outside of the *Shatsky I* discovery record; and rely on "expert" testimony inadmissible under Federal rule of Evidence 702.   Defendants incorporate by reference Defendants' Response to Plaintiffs' Counterstatement Paragraph 60.

64.     Defendants knew in real time that between 1999 and the time of the Bombing, Nazal was the leader and commander of the PFLP's militant wing, the Abu Ali Mustafa Brigades, in Qalqilya.  Dahbour Dep. at 35:11-13, 52:3-9, 53:3-12 (acknowledging that at the time Nazal was released from prison, it was well known "he was PFLP and head of Abu Ali Mustafa Brigade").

**Response:**  The assertions in Paragraph 64 do not create a genuine issue of material fact because, as shown below, they: rely on inadmissible hearsay.  Mr. Dahbour's testimony that it was "well known" that Nazal was a part of the PFLP and the head of the Ali Abu Mustafa Brigade is inadmissible hearsay.  *See Jianjun Chen v. 2425 Broadway Chao Rest., LLC*, Case No. 16-cv-

5735, 2019 U.S. Dist. LEXIS 43893, at *9 n.4 (S.D.N.Y. Mar. 18, 2019) (refusing to credit on summary judgment deposition testimony where the deponent did not establish personal knowledge over the information, but instead provided that "[e]verybody knows"); *Buckner v. County of Sullivan*, Case No. 12-CV-3770, 2015 U.S. Dist. LEXIS 12642, at *23 (S.D.N.Y. Feb. 3, 2015) ("But Plaintiff's only evidence supporting this allegation is hearsay - his own testimony about what 'everybody knew' but what he had never personally observed.").

65.    At the time of and prior to the Bombing, Nazal was the elected head of the PFLP in Qalqilya, a fact known to the Defendants. Dahbour Dep. at 50:24-52:19; *see also* Lowell Decl., Ex. 15 at SHATSKY-002814 (Nazal was "elected as a member of the leadership of the Qalqilya region, and participated as an active member in the Sixth National Conference of the Popular Front.").

**Response:**  The assertions in Paragraph 65 do not create a genuine issue of material fact because, as shown below, they: rely on inadmissible hearsay.

First, Mr. Dahbour's testimony that it was "well known" that Nazal was a part of the PFLP and the head of the Ali Abu Mustafa Brigade is inadmissible hearsay. *See Jianjun Chen v. 2425 Broadway Chao Rest., LLC*, Case No. 16-cv-5735, 2019 U.S. Dist. LEXIS 43893, at *9 n.4 (S.D.N.Y. Mar. 18, 2019) (refusing to credit on summary judgment deposition testimony where the deponent did not establish personal knowledge over the information, but instead provided that "[e]verybody knows"); *Buckner v. County of Sullivan*, Case No. 12-CV-3770, 2015 U.S. Dist. LEXIS 12642, at *23 (S.D.N.Y. Feb. 3, 2015) ("But Plaintiff's only evidence supporting this allegation is hearsay - his own testimony about what 'everybody knew' but what he had never personally observed.").  Second, Exhibit 15 is a web page from the website www.pflp.ps and is inadmissible hearsay. *See Loussier v. Universal Music Group, Inc.*, Case No. 02 Civ. 2447, 2005 U.S. Dist. LEXIS 37545, at *11 (S.D.N.Y. July 14, 2005) ("The printouts from the eBay website are inadmissible hearsay"); *Nixon v. Inquisitr Ltd.*, Case No. 20-CV-1819, 2021 U.S. Dist. LEXIS

156255, at *9 (E.D.N.Y. Aug. 17, 2021) ("The Glassdoor website submitted by Plaintiff constitutes hearsay and is not admissible as support for his claim.").

Nazal's purported leadership position in the PFLP is non-material to the issues in this case. Plaintiffs have not provided any admissible evidence linking Nazal to the Karnei Shomron Bombing.

66.     The PA's GIS maintained a thick file on Ra'ed Nazal. *See* Dahbour Dep. at 50–51 (estimating that the GIS file was "three and a half to four centimeters" thick).

**Response:** The assertion in Paragraph 66 does not create a genuine issue of material fact, including because Plaintiffs do not cite any admissible evidence connecting Nazal to the Karnei Shomron Bombing.

67.     There is significant additional admissible evidence showing that the PFLP carried out the Karnei Shomron Bombing. *See, e.g.*, *Shatsky I*, DE 77 at 35 ("[i]n fact, it is likely that a radical militant wing (Abu Ali Mustafa Brigades) of the Popular Front for the Liberation of Palestine ("PFLP") committed the [Karnei Shomron] attack."); Lowell Decl., Ex. 42 at SHATSKY-000902-03 (PFLP publication referring to Hafez as its comrade and hero who carried out an act of martyrdom on February 16, 2002); Ex. 43 at SHATSKY-000908 (same); Ex. 44 at SHATSKY-000913 (same); SHATSKY-003271 (same); Ex. 40 at SHATSKY-008012-14 (report from Al-Jazeera that the PFLP claimed responsibility for the bombing); Ex. 33 at SHATSKY-006061 (report from the U.S. Department of State that the PFLP claimed responsibility for the bombing); Spitzen Decl. at ¶¶ 24–28 (discussing the communiqué published by the PFLP shortly after the attack on its official website).

**Response:** The assertions in Paragraph 67 do not create a genuine dispute of material fact because, as shown below, they: rely on inadmissible evidence, rely on materials that are outside of the *Shatsky I* discovery record; and rely on "expert" testimony inadmissible under Federal Rule of Evidence 702.

Exhibits 42, 43, and 44 are printouts from the website www.pflp.ps, and thus are inadmissible hearsay. *See Loussier v. Universal Music Group, Inc.*, Case No. 02 Civ. 2447, 2005 U.S. Dist. LEXIS 37545, at *11 (S.D.N.Y. July 14, 2005) ("The printouts from the eBay website are inadmissible hearsay"). Exhibit 40 is not a "report" but a news article, and is thus inadmissible

hearsay.  *E.g.*, *Jordonne v. Ole Bar & Grill, Inc.*, Case No. 13 Civ. 1573, 2016 U.S. Dist. LEXIS 56943, at *19-20 (S.D.N.Y. 2016) (finding newspaper articles are inadmissible hearsay).  Exhibit 33 purports to be a report published by the U.S. Department of State and contains inadmissible hearsay for which no sources are identified and no potential exception is provided.  *See, e.g.*, *In re September 11 Litig.*, 621 F. Supp. 2d 131, 156 (S.D.N.Y. 2009) (holding that the "9/11 Report" is an inadmissible document and finding that large portions of the Report are "based on sources that are not completely trustworthy or acceptable in American courts.").  U.S. courts have additionally recognized that claims of responsibility for terror attacks are "not reliable."  *Strauss v. Credit Lyonnais, S.A.*, 925 F. Supp. 2d 414, 449 (E.D.N.Y. 2013) (noting that terrorists have a "perverse" incentive to take "credit" for attacks they did not commit) (citing *Gill v. Arab Bank, PLC*, 893 F. Supp. 2d 542, 569 (E.D.N.Y. 2012)).  Furthermore, Exhibits 33 and 40 were precluded by the court in *Shatsky I*, 312 F.R.D. 219, 230 (D.D.C. 2015), as they were disclosed months after the close of discovery and Defendants did not have a chance to test the documents in discovery.

Finally, the Spitzen Declaration is outside of the *Shatsky I* discovery record.  The D.D.C. in *Shatsky I*, ECF 242 at 4, precluded Plaintiffs from submitting expert testimony or reports from their liability experts, and Defendants have not had the opportunity to depose the declarant. Regardless, Spitzen's Declaration is inadmissible expert testimony.  Spitzen merely recites unauthenticated purported facts published on the website www.pflp.ps and in the *Al-Hadaf* news magazine.  *See Highland Capital Mgt., L.P. v. Schneider*, 379 F.Supp.2d 461, 468-469 (S.D.N.Y. 2005) (an expert cannot simply "rehash[]" facts  about which he has no personal knowledge).

The statement is non-material to the issues in this case because it proves nothing against Defendants.  Plaintiffs have not provided any admissible evidence connecting the PFLP to the Bombing.

68.     No other organization claimed responsibility for the Karnei Shomron attack that injured the Plaintiffs in this action. *See* Lowell Decl., Ex. 33 at SHATSKY-006061 (report from the U.S. Department of State that the PFLP claimed responsibility for the bombing); Ex. 40 at SHATSKY-008012-14 (report from Al-Jazeera that the PFLP claimed responsibility for the bombing); Ex. 42 at SHATSKY-000902-03 (PFLP publication referring to Sadeq Hafez as its comrade and hero who carried out an act of martyrdom); Ex. 43 at SHATSKY-000908 (same); Ex. 44 at SHATSKY-000913 (same); *see also* Spitzen Decl. at ¶¶ 24–28.

**Response:**  The assertions in Paragraph 68 do not create a genuine issue of material fact

because, as shown below, they: rely on inadmissible evidence, rely on materials that are outside of

the *Shatsky I* discovery record; and rely on "expert" testimony inadmissible under Federal Rule of

Evidence 702.   Defendants incorporate by reference Defendants' Response to Plaintiffs'

Counterstatement Paragraph 67.

69.     American teenagers Keren Shatsky and Rachel Thaler were killed as a result of the Bombing, and Plaintiffs Leor Thaler, Hillel Trattner, Ronit Trattner, Steven Braun, and Chana Friedman were injured in the Bombing. *See* Lowell Decl., Ex. 51; Ex. 49 at 21:17–20; Ex. 68 at 20:4–12; Ex. 69 at 38:21–40:11; Ex. 48 at 13:11–13.

**Response:**  Defendants do not dispute the assertions in Paragraph 69 for the purpose of

summary judgment, but the statement does not create a genuine issue of material fact.

70.     Plaintiffs Shabtai Scott Shatsky and Jo Anne Shatsky are citizens of the United States and are the personal representatives of the Estate of Keren Shatsky, a United States citizen killed in the Bombing. Lowell Decl., Ex. 46 at 1; Ex. 63.

**Response:**  Defendants do not dispute the assertions in Paragraph 70 for the purpose of

summary judgment, but the statement does not create a genuine issue of material fact.

71.     Plaintiffs Tzippora Shatsky Schwarz, Yoseph Shatsky, Sara Shatsky Tzimmerman, Miriam Shatsky, and David Raphael Shatsky are citizens of the United States and are the siblings of decedent Keren Shatsky, a United States citizen killed in the bombing. Lowell Decl., Ex. 53; Ex. 57; Ex. 58; Ex. 61.

**Response:**  Defendants do not dispute the assertions in Paragraph 71 for the purpose of

summary judgment, but the statement does not create a genuine issue of material fact.

72.    Plaintiffs Ginette Lando Thaler and Michael Thaler are the personal representatives of the Estate of Rachel Thaler, a United States citizen killed in the bombing. Michael Thaler is a citizen of the United States. Ex. 45 at 1.

**Response:**  Defendants do not dispute the assertions in Paragraph 72 for the purpose of summary judgment, but the statement does not create a genuine issue of material fact.

73.    Plaintiffs Leor Thaler, Zvi Thaler, and Isaac Thaler are citizens of the United States and are the siblings of decedent Rachel Thaler, a United States citizen killed in the bombing. Lowell Decl., Ex. 62; Ex. 67; Ex. 50 at 13:4–8, 13:13–15.

**Response:**  Defendants do not dispute the assertions in Paragraph 73 for the purpose of summary judgment, but the statement does not create a genuine issue of material fact.

74.    Plaintiff Leor Thaler suffered injuries as a result of the explosion. Lowell Decl., Ex. 51.

**Response:**  Defendants do not dispute the assertions in Paragraph 74 for the purpose of summary judgment, but the statement does not create a genuine issue of material fact.

75.    Plaintiff Hillel Trattner is a citizen of the United States and suffered injuries as a result of the explosion. Lowell Decl., Ex. 56.

**Response:**  Defendants do not dispute the assertions in Paragraph 75 for the purpose of summary judgment, but the statement does not create a genuine issue of material fact.

76.    Plaintiff Ronit Trattner is the spouse of Plaintiff Hillel Trattner, and she suffered injuries as a result of the explosion. Lowell Decl., Ex, 68 at 20:4–12.

**Response:**  Defendants do not dispute the assertions in Paragraph 76 for the purpose of summary judgment, but the statement does not create a genuine issue of material fact.

77.    Plaintiffs Aron S. Trattner and Shelley Trattner are citizens of the United States and are the parents of Plaintiff Hillel Trattner. Lowell Decl., Ex. 54; Ex. 59.

**Response:**  Defendants do not dispute the assertions in Paragraph 77 for the purpose of summary judgment, but the statement does not create a genuine issue of material fact.

78.    Plaintiffs Efrat Trattner, Hadassa Diner, and Yael Hillman are citizens of the United States are the sisters of Plaintiff Hillel Trattner. Lowell Decl., Ex. 46.

**Response:**  Defendants do not dispute the assertions in Paragraph 78 for the purpose of summary judgment, but the statement does not create a genuine issue of material fact.

79.     Plaintiff Steven Braun is a citizen of the United States and suffered injuries as a result of the explosion. Lowell Decl., Ex. 60.

**Response:**  Defendants do not dispute the assertions in Paragraph 79 for the purpose of summary judgment, but the statement does not create a genuine issue of material fact.

80.     Plaintiff Chana Friedman is a citizen of the United States and suffered injuries as a result of the explosion. Lowell Decl., Ex. 55.

**Response:**  Defendants do not dispute the assertions in Paragraph 80 for the purpose of summary judgment, but the statement does not create a genuine issue of material fact.

81.     Plaintiffs Ilan Friedman, Yehiel Friedman, Zvi Friedman, and Miriam Friedman are citizens of the United States and are the siblings of Plaintiff Chana Friedman. Lowell Decl., Ex. 57; Ex. 64; Ex. 65; Ex. 66.

**Response:**  Defendants do not dispute the assertions in Paragraph 81 for the purpose of summary judgment, but the statement does not create a genuine issue of material fact.

82.     Plaintiff Bella Friedman is a citizen of the United States and is the mother of Plaintiff Chana Friedman. Lowell Decl., Ex. 65.

**Response:**  Defendants do not dispute the assertions in Paragraph 82 for the purpose of summary judgment, but the statement does not create a genuine issue of material fact.

83.     Defendant PLO was founded in 1964 by Egypt and the Arab League. Shatsky I, DE 77-10 at ¶ 25. Defendant PA is an administrative organization established by the Oslo Accords to serve as a governing authority for Palestinians.

**Response:**  Defendants do not dispute the assertions in Paragraph 83 for the purpose of summary judgment, but these statements do not create a genuine issue of material fact.  The statements are non-material to the matters at issue in the case because they prove nothing against Defendants.

84.     The Interim Agreement on the West Bank and the Gaza Strip (Sept. 28, 1995) ("Oslo II Accords" or "Interim Agreement") created three distinct administrative divisions in the West Bank: Areas A, B and C.  *See* ECF 120-9, Ex. I ("Oslo II Accords"). The PA had full civil and security control over Area A.  Interim Agreement at Art. XIII.1. *Id.* at Art. XIII.2. Israel had full civil and security control over Area C, with planned transfer of that area to the PA. *Id.*; *id.* at Art. XVII.

**Response:**  Defendants do not dispute the statements in Paragraph 84 for the purpose of

summary judgment, but these statements do not create a genuine issue of material fact.  The

statements are non-material to the matters at issue in the case because they prove nothing against

Defendants.

85.     In many respects, the PLO and the PA have a unity of identity. The PLO, which negotiated the PA into existence, controls the PA. Lowell Decl., Ex. 70 at SHATSKY-007133 (testimony of PA witness in a civil case brought against the PA agreeing that the PA "answer[s] to" the PLO). The letterhead of many official documents consists of the names of both the PLO and the PA, with the latter name in the line below the former. *Id.* Indeed, Defendant PA produced documents appearing on the PLO's letterhead. *See, e.g.*, Lowell Decl., Ex. 4 at 07:000048; Ex. 21.

**Response:**  The assertions in Paragraph 85 do not create a genuine issue of material fact

because, as shown below, they: mischaracterize the cited materials; rely on inadmissible hearsay;

and rely on materials that were previously precluded from the *Shatsky I* discovery record.

Plaintiffs cite to no evidence that supports an assertion that the PA and PLO "have a unity

of identity" for purposes of responsibility under the ATA.  Moreover, the phrase "unity of identity"

is vague and ambiguous.  The PLO was founded in 1964 by Egypt and the Arab League, and

recognized as the representative of the Palestinian people by Israel as part of the Oslo Accords in

1993.  Defs.' SOF, ECF No. 121, ¶¶ 1-2.  The PA was established in 1993 by the Oslo Accords as

the interim government of parts of the West Bank and Gaza Strip.  *Id.* ¶ 2.  The PA's possession,

custody, control, and/or production of documents bearing the PLO letterhead, or the presence of

both entities' names on the letterhead of documents, do not support the above assertions.

Exhibit 21 purports to be a report submitted to Congress pursuant to the PLO Commitments Compliance Act of 1989.  The portions of Exhibit 21 quoted by Plaintiffs constitute inadmissible hearsay; no sources are identified and no potential hearsay exception is provided.  *See, e.g., In re September 11 Litig.,* 621 F. Supp. 2d 131, 156 (S.D.N.Y. 2009) (holding that the "9/11 Report" is an inadmissible document and finding that large portions of the Report are "based on sources that are not completely trustworthy or acceptable in American courts").  Exhibit 70 purports to be a judgment by a Tel Aviv-Jaffa District Court in *Goldman et al. v. Palestinian Authority*.  This decision is inadmissible hearsay.  *See, e.g.*, *Small v. United States*, 544 U.S. 385, 393-94 (2005) (holding that a foreign conviction could not serve as a predicate to liability); *United States v. $125,938.6, et al.*, 537 F.3d 1287, 1292 (11th Cir. 2008) (holding that "none of the relevant facts found in the judgment of conviction were admissible").  Furthermore, Exhibits 21 and 70 were precluded by the D.D.C. in *Shatsky I*, 312 F.R.D. 219, 230 (D.D.C. 2015), as they were disclosed months after the close of discovery and Defendants did not have a chance to test the documents in discovery.

The statements are non-material to the matters at issue in the case because they prove nothing against Defendants.


86.     "[S]hortly after [June 15, 2002, the PA] condemned an EU decision to designate the PFLP a terrorist organization, saying the PFLP was 'committed to the principles of the PLO.'" Lowell Decl., Ex. 21 at SHATSKY-009439.

**Response:**  The assertion in Paragraph 86 does not create a genuine issue of material fact because, as shown below, it: relies on inadmissible hearsay; relies on materials that were previously precluded from the *Shatsky I* discovery record; and is legally immaterial, because it does not demonstrate the proximate causation required for a primary liability ATA claim, nor the general awareness or substantial assistance required for a secondary liability ATA claim.

Exhibit 21 purports to be a report submitted to Congress pursuant to the PLO Commitments Compliance Act of 1989.  The portions of Exhibit 21 quoted by Plaintiffs constitute inadmissible hearsay; no sources are identified and no potential hearsay exception is provided.  *See, e.g., In re September 11 Litig.,* 621 F. Supp. 2d 131, 156 (S.D.N.Y. 2009) (holding that the "9/11 Report" is an inadmissible document and finding that large portions of the Report are "based on sources that are not completely trustworthy or acceptable in American courts").  Moreover, Plaintiffs continue to cherry-pick from this inadmissible evidence, failing to note that Exhibit 21 states that the "PA continued to recognize a distinct 'military wing' and 'political wing' of the PFLP…"  Ex. 21 at Shatsky-009439.  Furthermore, Exhibit 21 was precluded by the D.D.C. in *Shatsky I,* 312 F.R.D. 219, 230 (D.D.C. 2015), as it was disclosed months after the close of discovery and Defendants did not have a chance to test the document in discovery.

The assertions in Paragraph 86 relate to conduct that allegedly occurred *after* the attack at issue in this case.  Plaintiffs cannot argue that Defendants ratified any of the PFLP's alleged conduct based on Defendants' post-attack conduct.  *See* Defs.' Mem. in Supp. Mot. Summ. J. at 22-23 and n.11, ECF 119 at 22-23 and n.11 (collecting cases).  Thus, Plaintiffs' assertion cannot create a triable issue of causation, general awareness, or substantial assistance.

The statement is non-material to the matters at issue in the case because it proves nothing against Defendants.

87.    Raed Musa Ibrahim Nazal (Mahdi) was ███████████ Redacted ███████████ ███████ Lowell Decl., Ex. 6 at 07:000192.

**Response:**  The assertion in Paragraph 87 does not create a genuine issue of material fact because, as shown below, it: relies on inadmissible hearsay; relies on improper character evidence; and is legally immaterial, because it does not demonstrate the proximate causation required for a

primary liability ATA claim, nor the general awareness or substantial assistance required for a secondary liability ATA claim.

The GIS files on Nazal cited as Exhibit 6 contain inadmissible hearsay to which no hearsay exceptions apply. *United States v. El-Mezain*, 664 F.3d 467, 500 (5th Cir. 2011) (holding that PA intelligence files constituted "classic hearsay," were not admissible under the residual hearsay exception (Fed. R. Evid. 807), and did not meet the standard for admissibility under the public records exception). The cited material also constitutes improper character evidence. *See, e.g.*, *Scoma v. City of N.Y.*, No. 16-CV-6693 (KAM)(SJB), 2021 U.S. Dist. LEXIS 85360, at *33, *35-36 (E.D.N.Y. May 4, 2021) (precluding "evidence … relating to plaintiff's arrest and conviction history" after finding it "constitute[d] improper character evidence under [Federal Rule of Evidence] 404").

Nazal's purported activism against Israeli occupation is non-material to the matters at issue in this case because it proves nothing against Defendants. Plaintiffs offer no admissible evidence of a connection between Nazal and the Karnei Shomron Bombing.

88.    He was arrested for 25 days when he was thirteen years-old, and for thirteen months when he was fourteen years old. Lowell Decl., Ex. 15 at SHATSKY-002814.

**Response:** The assertion in Paragraph 88 does not create a genuine issue of material fact because, as shown below, it: relies on inadmissible hearsay; relies on inadmissible character evidence; and is legally immaterial, because it does not demonstrate the proximate causation required for a primary liability ATA claim, nor the general awareness or substantial assistance required for a secondary liability ATA claim.

Exhibit 15 is purported to be a printout from the website www.pflp.ps and constitutes inadmissible hearsay. *See Loussier v. Universal Music Group, Inc.*, Case No. 02 Civ. 2447, 2005 U.S. Dist. LEXIS 37545, at *11 (S.D.N.Y. July 14, 2005) ("The printouts from the eBay website

are inadmissible hearsay").  It also constitutes improper character evidence.  *See, e.g.*, *Scoma v. City of N.Y.*, No. 16-CV-6693 (KAM)(SJB), 2021 U.S. Dist. LEXIS 85360, at *33, *35-36 (E.D.N.Y. May 4, 2021) (precluding "evidence … relating to plaintiff's arrest and conviction history" after finding it "constitute[d] improper character evidence under [Federal Rule of Evidence] 404").

Nazal's purported arrest history is non-material to the matters at issue in this case because it proves nothing against Defendants.  Plaintiffs offer no admissible evidence of a connection between Nazal and the Karnei Shomron Bombing.

89.     During the first Intifada, Nazal was imprisoned by Israel for his PFLP activities. *Id.*

Redacted

; *see also* Ex. 6 at 07:000194.

**Response:**  The assertion in Paragraph 89 does not create a genuine issue of material fact, because, as shown below, it: relies on inadmissible hearsay; relies on inadmissible character evidence; and is legally immaterial, because it does not demonstrate the proximate causation required for a primary liability ATA claim, nor the general awareness or substantial assistance required for a secondary liability ATA claim.

The information cited in Exhibit 15—purported to be a printout from the website www.pflp.ps—is inadmissible hearsay.  *See Loussier v. Universal Music Group, Inc.*, Case No. 02 Civ. 2447, 2005 U.S. Dist. LEXIS 37545, at *11 (S.D.N.Y. July 14, 2005) ("The printouts from the eBay website are inadmissible hearsay").

Plaintiffs also cite to Exhibit 6—GIS intelligence files—even though the information they cite constitutes inadmissible hearsay-within-hearsay, as these are uncorroborated intelligence reports summarizing information heard from unnamed sources.  *United States v. El-Mezain*, 664 F.3d 467, 500 (5th Cir. 2011) (holding that PA intelligence files constituted "classic hearsay,"

were not admissible under the residual hearsay exception (Fed. R. Evid. 807), and did not meet the standard for admissibility under the public records exception). Both of the above exhibits also constitute improper character evidence. *See, e.g.*, *Scoma v. City of N.Y.*, No. 16-CV-6693 (KAM)(SJB), 2021 U.S. Dist. LEXIS 85360, at \*33, \*35-36 (E.D.N.Y. May 4, 2021) (precluding "evidence … relating to plaintiff's arrest and conviction history" after finding it "constitute[d] improper character evidence under [Federal Rule of Evidence] 404").

Nazal's purported arrest history is non-material to the matters at issue in this case because it proves nothing against Defendants. Plaintiffs offer no admissible evidence of a connection between Nazal and the Karnei Shomron Bombing.

90.      While in prison, he brutally murdered a fellow prisoner whom he suspected was a spy for the Israelis and was sentenced to life imprisonment. *See* Lowell Decl., Ex. 72 at SHATSKY-002947-48 (describing the heinous murder in Nazal's own words); Ex. 73 (describing the attack); Ex. 74 (showing photographs of the victim's injuries); Ex. 75 (same); Ex. 15 at SHATSKY-002814 (detailing Nazal's "struggle record").

**Response:**  The assertions in Paragraph 90 do not create a genuine issue of material fact because, as shown below, they: rely on inadmissible character evidence; rely on inadmissible hearsay; rely on materials that are outside of the *Shatsky I* discovery record; and are legally immaterial, because they do not demonstrate the proximate causation required for a primary liability ATA claim, nor the general awareness or substantial assistance required for a secondary liability ATA claim.

Plaintiffs cite an Israeli military judicial decision (as Exhibit 72), an Israeli military police investigation report (as Exhibit 73), two photography reports (as Exhibits 74 and 75), and a printout from the website www.pflp.ps (as Exhibit 15). All of the information in these exhibits constitutes improper character evidence. *See, e.g.*, *Scoma v. City of N.Y.*, No. 16-CV-6693 (KAM)(SJB), 2021 U.S. Dist. LEXIS 85360, at \*33, \*35-36 (E.D.N.Y. May 4, 2021) (precluding "evidence …

relating to plaintiff's arrest and conviction history" after finding it "constitute[d] improper character evidence under [Federal Rule of Evidence] 404"). The military court judicial decision is inadmissible hearsay. *See, e.g.*, *Small v. United States*, 544 U.S. 385, 393-94 (2005) (holding that a foreign conviction could not serve as a predicate to liability); *United States v. $ 125,938.6, et al.*, 537 F.3d 1287, 1292 (11th Cir. 2008) (holding that "none of the relevant facts found in the judgment of conviction were admissible"). The military police investigation report is also inadmissible hearsay. *See Gervacio v. Zall*, 345 F. App'x 638, 640 (2d Cir. 2009) (quoting Fed. R. Evid. 803(8) advisory committee's note) ("Police reports have generally been excluded except to the extent to which they incorporate firsthand observations of the officer."). Finally, Exhibit 15 is a printout of a web page, and thus is inadmissible hearsay. *See Loussier v. Universal Music Group, Inc.*, Case No. 02 Civ. 2447, 2005 U.S. Dist. LEXIS 37545, at *11 (S.D.N.Y. July 14, 2005) ("The printouts from the eBay website are inadmissible hearsay").

Moreover, a history of improper tactics applied by Israeli security forces against Palestinian detainees makes documents like Exhibits 72 and 73 generally unreliable. *See, e.g.*, Amnesty International, Israel and Occupied Palestinian Territories 2020, available at https://www.amnesty.org/en/location/middle-east-and-north-africa/israel-and-occupied-palestinian-territories/report-israel-and-occupied-palestinian-territories/ ("Palestinian civilians, including children . . . were prosecuted in military courts that did not meet international fair trial standards. . . . Israeli soldiers, police and ISA officers continued to torture and otherwise ill-treat Palestinian detainees, including children, with impunity. Reported methods included beating, slapping, painful shackling, sleep deprivation, use of stress positions and threats of violence against family members.").

Furthermore, Exhibits 72, 73, 74, and 75 were precluded by the D.D.C. in *Shatsky I*, 312 F.R.D. 219, 230 (D.D.C. 2015), as they were disclosed months after the close of discovery and Defendants did not have a chance to test the documents in discovery.

Nazal's purported criminal history is non-material to the matters at issue in this case because it proves nothing against Defendants.  Plaintiffs offer no admissible evidence of a connection between Nazal and the Karnei Shomron Bombing.

91.     On September 9, 1999, Nazal was released from Israeli prison pursuant to a deal negotiated by the PA with Israel. Lowell Decl., Ex. 6 at 07:000192; Ex. 15 at SHATSKY-002814 (PFLP article noting that Nazal "killed a collaborator in the Jenin prison").

**Response:**  The assertions in Paragraph 91 do not create a genuine issue of material fact because, as shown below, they: rely on inadmissible hearsay; rely on inadmissible character evidence; and are legally immaterial, because they do not demonstrate the proximate causation required for a primary liability ATA claim, nor the general awareness or substantial assistance required for a secondary liability ATA claim.

Both the GIS intelligence files cited by Plaintiffs in Exhibit 6 and the website printout in Exhibit 15 constitute inadmissible hearsay and improper character evidence.  *United States v. El-Mezain*, 664 F.3d 467, 500 (5th Cir. 2011) (holding that PA intelligence files constituted "classic hearsay," were not admissible under the residual hearsay exception (Fed. R. Evid. 807), and did not meet the standard for admissibility under the public records exception).  *See Loussier v. Universal Music Group, Inc.*, Case No. 02 Civ. 2447, 2005 U.S. Dist. LEXIS 37545, at *11 (S.D.N.Y. July 14, 2005) ("The printouts from the eBay website are inadmissible hearsay"); *Scoma v. City of N.Y.*, No. 16-CV-6693 (KAM)(SJB), 2021 U.S. Dist. LEXIS 85360, at *33, *35-36 (E.D.N.Y. May 4, 2021) (precluding "evidence … relating to plaintiff's arrest and conviction

history" after finding it "constitute[d] improper character evidence under [Federal Rule of Evidence] 404").

The purported details of Nazal's release from prison are non-material to the matters at issue in this case because they prove nothing against Defendants.  Plaintiffs offer no admissible evidence of a connection between Nazal and the Karnei Shomron Bombing.

92.     Prior to his release, Nazal spent approximately 13 years in Israeli prisons. Lowell Decl., Ex. 6 at 07:000178.

**Response:**  The assertion in Paragraph 92 does not create a genuine issue of material fact because, as shown below, it: relies on inadmissible hearsay; relies on inadmissible character evidence; and is legally immaterial, because it does not demonstrate the proximate causation required for a primary liability ATA claim, nor the general awareness or substantial assistance required for a secondary liability ATA claim.

The GIS intelligence files cited by Plaintiffs in Exhibit 6 constitutes inadmissible hearsay and improper character evidence.  *United States v. El-Mezain*, 664 F.3d 467, 500 (5th Cir. 2011) (holding that PA intelligence files constituted "classic hearsay," were not admissible under the residual hearsay exception (Fed. R. Evid. 807), and did not meet the standard for admissibility under the public records exception).  *See, e.g.*, *Scoma v. City of N.Y.*, No. 16-CV-6693 (KAM)(SJB), 2021 U.S. Dist. LEXIS 85360, at *33, *35-36 (E.D.N.Y. May 4, 2021) (precluding "evidence … relating to plaintiff's arrest and conviction history" after finding it "constitute[d] improper character evidence under [Federal Rule of Evidence] 404").

Nazal's purported history of incarceration is non-material to the matters at issue in this case because it proves nothing against Defendants.  Plaintiffs offer no admissible evidence of a connection between Nazal and the Karnei Shomron Bombing.

93.     Upon his release from prison, Nazal was hired by the PA into its National Security apparatus, resumed his PFLP terrorist activities and was given the rank of Captain. *Id.* at 07:000192; Lowell Decl., Ex. 5 at 07:000055-57 (showing Nazal was paid a salary as an employee of the PA); Ex. 15 at SHATSKY-002814 (stating Nazal resumed his PFLP activities "since the first day of his release [from prison]").

**Response:**  The assertions in Paragraph 93 do not create a genuine issue of material fact because, as shown below, they: rely on inadmissible evidence; and mischaracterize the cited material.  Defendants admit for purposes of summary judgment that the PA hired Nazal as a Captain in Preventative Security pursuant to its policy of absorbing and rehabilitating Palestinians with military backgrounds who had been imprisoned by the Israelis.

But Plaintiffs fail to cite any admissible evidence that Nazal "resumed his PFLP terrorist activities" "[u]pon his release from prison."  Plaintiffs only cite to a website printout in Exhibit 15 in support of these assertions, which constitutes inadmissible hearsay.  *See Loussier v. Universal Music Group, Inc.*, Case No. 02 Civ. 2447, 2005 U.S. Dist. LEXIS 37545, at *11 (S.D.N.Y. July 14, 2005) ("The printouts from the eBay website are inadmissible hearsay").  Moreover, Plaintiffs mischaracterize the hearsay they cite because the printout makes no reference to "terrorist" activities.

The statement is non-material to the matters at issue in this case because it proves nothing against Defendants.  Plaintiffs offer no admissible evidence of a connection between Nazal and the Karnei Shomron Bombing.

94.     At the time the PA hired Nazal into this security post, it knew of his violent background and PFLP activities.  *See* Lowell Decl., Ex. 6 at 07:000192-98 (⬛⬛⬛ Redacted ⬛⬛⬛ *Id.* at 07:000200-01.

**Response:**  The assertions in Paragraph 94 do not create a genuine issue of material fact because, as shown below, they: rely on inadmissible hearsay; and rely on inadmissible character evidence.

Plaintiffs cite portions of GIS intelligence files in Exhibit 6 even though they constitute inadmissible hearsay-within-hearsay, as these are uncorroborated reports summarizing information heard from unnamed sources.  *United States v. El-Mezain*, 664 F.3d 467, 500 (5th Cir. 2011) (holding that PA intelligence files constituted "classic hearsay," were not admissible under the residual hearsay exception (Fed. R. Evid. 807), and did not meet the standard for admissibility under the public records exception).  They also constitute impermissible character evidence.  *See, e.g.*, *Scoma v. City of N.Y.*, No. 16-CV-6693 (KAM)(SJB), 2021 U.S. Dist. LEXIS 85360, at *33, *35-36 (E.D.N.Y. May 4, 2021) (precluding "evidence … relating to plaintiff's arrest and conviction history" after finding it "constitute[d] improper character evidence under [Federal Rule of Evidence] 404").

The statements are non-material to the matters at issue in this case because they prove nothing against Defendants.  Plaintiffs offer no admissible evidence of a connection between Nazal and the Karnei Shomron Bombing.

95.    Despite the PA's knowledge of Nazal's dangerous nature, it provided him with a handsome salary and gave him no job responsibilities. While he was employed by the PA, Nazal did not report to work or receive any assignments. ECF 120-10, Ex. J at 15.

**Response:**  The assertions in Paragraph 95 do not create a genuine issue of material fact because, as shown below, they: rely on inadmissible hearsay.  As indicated in Defendants' interrogatory response, Defendants do not dispute for the purpose of summary judgment that Nazal did not report to work, and that he consequently received no assignments, while employed by the

PA.  ECF 120-10, Ex. J at 15.  Plaintiffs ignore the remainder of Defendants' interrogatory response, which outlines the rationale behind employing those released from Israeli prison:

> The goal of the process was to control anti-Israeli violence by bringing suspected and/or convicted militants inside the security or police forces where there would be a better chance of reforming their behavior. Though not always successful, this process was seen at the time as the most productive way to diffuse a highly inflammatory situation, worsened by the repeated refusal of the Israeli government to honor the Oslo framework and recognize a permanent and vibrant Palestinian state while enabling the Palestinian security and intelligence full authority and jurisdiction to enforce the laws, maintain order and prevent acts of violence.

*Id.* at 15-16.

Plaintiffs fail to cite any admissible evidence for their assertion that the PA had "knowledge of Nazal's dangerous nature," and such assertions are exactly the type of improper character evidence precluded by Federal Rule of Evidence 404(a)(1).  *See, e.g.*, *Scoma v. City of N.Y.*, No. 16-CV-6693 (KAM)(SJB), 2021 U.S. Dist. LEXIS 85360, at *33, *35-36 (E.D.N.Y. May 4, 2021) (precluding "evidence … relating to plaintiff's arrest and conviction history" after finding it "constitute[d] improper character evidence under [Federal Rule of Evidence] 404").

The statements are non-material to the matters at issue in this case because they prove nothing against Defendants.  Plaintiffs offer no admissible evidence of a connection between Nazal and the Karnei Shomron Bombing.

96.    Prior to the Bombing, Nazal had become the leader of the PFLP's military wing in Qalqilya. Dahbour Dep. at 35:11-13; *see also* Lowell Decl., Ex. 15 at SHATSKY-002814 ([Ra'ed Nazal] was "elected as amember of the leadership of the Qalqilya region, and participated as an active member in the Sixth National Conference of the Popular Front." He was also "elected as a member of a central committee in a [PFLP] branch.").

**Response:**  The assertion in Paragraph 96 does not create a genuine issue of material fact because, as shown below, they: rely on inadmissible hearsay; and mischaracterize the cited material.

Plaintiffs' citation to Exhibit 15—a printout from the website www.pflp.ps—cannot be considered, as it constitutes inadmissible hearsay. *See Loussier v. Universal Music Group, Inc.*, Case No. 02 Civ. 2447, 2005 U.S. Dist. LEXIS 37545, at *11 (S.D.N.Y. July 14, 2005) ("The printouts from the eBay website are inadmissible hearsay"). Also, Plaintiffs' citation to Dahbour's deposition testimony is improper. The scope of Mr. Dahbour's Rule 30(b)(6) testimony did not include any topic related to Nazal, and Mr. Dahbour's testimony was based on second-hand knowledge rather than any personal experience or any preparation in advance of his deposition, making it inadmissible hearsay. *E.g.*, *Wado v. Xerox Corp.*, 991 F. Supp. 174, 191 (W.D.N.Y. 1998) (finding that because deponent "had no firsthand knowledge of whether" factual allegation against defendant was true, her testimony was "pure hearsay and [could] not be considered on" summary judgment). *See also* Dahbour Dep. 35:13 (responding "[t]his was well known, of course." when asked whether Nazal was a leader of the PFLP in Qalqilya). Furthermore, Plaintiffs distort Mr. Dahbour's testimony, as he did not provide any timeframe for Nazal's purported leadership of the PFLP. Dahbour Dep. 35:13.

Nazal's purported leadership position in the PFLP is non-material to the matters at issue in this case because it proves nothing against Defendants. Plaintiffs offer no admissible evidence of a connection between Nazal and the Karnei Shomron Bombing.

97.     Nazal actively recruited people to join the PFLP and carry out terrorist activities on behalf of the PFLP. *See* Lowell Decl., Ex. 76 at SHATSKY-007481 (Nazal recruited Nuraddin Said Daoud (Titan) to join the military cell of the PFLP); Shaked Decl. at 12 (discussing Nazal "spend[ing] his time planning[,] recruiting and training terrorists").

**Response:**  The assertions in Paragraph 97 do not create a genuine issue of material fact because, as shown below, they: rely on inadmissible hearsay; rely on inadmissible character evidence; rely on materials that are outside of the *Shatsky I* discovery record; and rely on "expert" testimony inadmissible under Federal Rule of Evidence 702.

Plaintiffs offer Exhibit 76—an Israeli military court judgment—as support, but the Israeli prosecutor's statements relied on by Plaintiffs constitute inadmissible hearsay-within-hearsay. *See, e.g.*, *Small v. United States*, 544 U.S. 385, 393-94 (2005) (holding that a foreign conviction could not serve as a predicate to liability); *United States v. $ 125,938.6, et al.*, 537 F.3d 1287, 1292 (11th Cir. 2008) (holding that "none of the relevant facts found in the judgment of conviction were admissible"). Moreover, these assertions constitute the improper character evidence precluded by Federal Rule of Evidence 404. *See, e.g.*, *Scoma v. City of N.Y.*, No. 16-CV-6693 (KAM)(SJB), 2021 U.S. Dist. LEXIS 85360, at *33, *35-36 (E.D.N.Y. May 4, 2021) (precluding "evidence … relating to plaintiff's arrest and conviction history" after finding it "constitute[d] improper character evidence under [Federal Rule of Evidence] 404"). Also, a history of improper tactics applied by Israeli security forces against Palestinian detainees makes military court documents like Exhibit 76 generally unreliable. *See, e.g.*, Amnesty International, Israel and Occupied Palestinian Territories 2020, available at https://www.amnesty.org/en/location/middle-east-and-north-africa/israel-and-occupied-palestinian-territories/report-israel-and-occupied-palestinian-territories/ ("Palestinian civilians, including children . . . were prosecuted in military courts that did not meet international fair trial standards. . . . Israeli soldiers, police and ISA officers continued to torture and otherwise ill-treat Palestinian detainees, including children, with impunity. Reported methods included beating, slapping, painful shackling, sleep deprivation, use of stress positions and threats of violence against family members.").

Further, the Shaked Declaration is outside of the *Shatsky I* discovery record. The D.D.C. in *Shatsky I*, ECF 242 at 4, precluded Plaintiffs from submitting expert testimony or reports from their liability experts, and Defendants have not had the opportunity to depose the declarant. Regardless, the Shaked Declaration is inadmissible expert testimony under Rule 702 and thus

cannot support this assertion.  Shaked's statement—"[b]y financially supporting the commander of PFLP terrorist activity in the Qalqilya region for two years prior to the bombing—thereby allowing Ra'ed Nazal to spend his time planning recruiting and training terrorists and planning and executing attacks—the defendants greatly increased the PFLP's ability to plan and carry out the February 16, 2002, bombing," Shaked Decl. at 12—is a conclusion based on no methodology or expertise and thus lies within the ken of the average juror, rendering it improper expert testimony.  *See United States v. Mejia*, 545 F.3d 179, 194 (2d Cir. 2008) (expert testimony properly excluded if "the subject matter of the expert's testimony is not beyond the ken of the average juror" (citation omitted)).

The statement is non-material to the matters at issue in this case because it proves nothing against Defendants.  Plaintiffs offer no admissible evidence of a connection between Nazal and the Karnei Shomron Bombing.

98.    The following was published on the PFLP's official website:

We will not be exaggerating if we say that the comrade, leader, shahid [martyr, Raed Nazal], is one of the most prominent PFLP leaders and warriors, who have returned to it its prestige, its presence, its role, and its popularity in the region of Qalqilya and in the northern [West Bank]. He also broadened the scope of its struggle and military activities during the Second Intifada. He became a symbol and model in the leadership of the Shahid Abu Ali Mustafa Brigades and cells, while at the same time the occupation and its intelligence agencies included him in their most-wanted list.

Lowell Decl., Ex. 77 at SHATSKY-002809.

**Response:**  The assertions in Paragraph 98 do not create a genuine issue of material fact because as shown below, they: rely on inadmissible hearsay.

Exhibit 77 is a printout from www.pflp.ps, but Plaintiffs offer no evidence that that website is "the PFLP's official website."  Moreover, to the extent Plaintiffs offer the above excerpt for the truth of its contents, the excerpt constitutes inadmissible hearsay.  *See Loussier v. Universal Music*

*Group, Inc.*, Case No. 02 Civ. 2447, 2005 U.S. Dist. LEXIS 37545, at *11 (S.D.N.Y. July 14, 2005) ("The printouts from the eBay website are inadmissible hearsay"); *Nixon v. Inquisitr Ltd.*, Case No. 20-CV-1819, 2021 U.S. Dist. LEXIS 156255, at *9 (E.D.N.Y. Aug. 17, 2021) ("The Glassdoor website submitted by Plaintiff constitutes hearsay and is not admissible as support for his claim.").

The statements are non-material to the matters at issue in this case because they prove nothing against Defendants.  Plaintiffs offer no admissible evidence of a connection between Nazal and the Karnei Shomron Bombing.

99.     During the years prior to the Bombing, while Nazal was a salaried PA employee, the PA knew, among other things, that:



**Response:**  The assertions in Paragraph 99 do not create a genuine issue of material fact because, as shown below, they: rely on inadmissible hearsay; and rely on inadmissible character evidence.

The GIS intelligence files cited by Plaintiffs in Exhibit 6 constitute inadmissible hearsay-within-hearsay, as they are uncorroborated intelligence reports summarizing information heard from unnamed sources.  *United States v. El-Mezain*, 664 F.3d 467, 500 (5th Cir. 2011) (holding

that PA intelligence files constituted "classic hearsay," were not admissible under the residual

hearsay exception (Fed. R. Evid. 807), and did not meet the standard for admissibility under the

public records exception).  Moreover, these assertions constitute the improper character evidence

precluded by Federal Rule of Evidence 404.  *See, e.g.*, *Scoma v. City of N.Y.*, No. 16-CV-6693

(KAM)(SJB), 2021 U.S. Dist. LEXIS 85360, at *33, *35-36 (E.D.N.Y. May 4, 2021) (precluding

"evidence … relating to plaintiff's arrest and conviction history" after finding it "constitute[d]

improper character evidence under [Federal Rule of Evidence] 404").

The statements are non-material to the issues in this case because they prove nothing

against Defendants.  Plaintiffs offer no admissible evidence of a connection between Nazal and

the Karnei Shomron Bombing.

100.    Despite its knowledge of Nazal's ongoing activities in the military wing of the
PFLP (which the PA claims to have outlawed months earlier), the PA continued to pay Nazal a
salary and allow him to operate freely within its jurisdiction. Lowell Decl., Ex. 5 at 07:00005557
(showing that Nazal was a salaried employee of the PA).

**Response:**  The assertions in Paragraph 100 do not create a genuine issue of material fact,

because, as shown below, they: mischaracterize the evidence cited by Plaintiffs; and are legally

immaterial, because they do not demonstrate the proximate causation required for a primary

liability ATA claim, nor the general awareness or substantial assistance required for a secondary

liability ATA claim.  They also do not support a claim for *respondeat superior* against Defendants.

The evidence cited by Plaintiffs only reflects payments by the PA to Nazal and his family.

Plaintiffs fail to cite any evidence for their assertions that the PA had knowledge of Nazal's PFLP

activities.

The statement, including the PA's purported knowledge of Nazal's PFLP activities, is non-

material to the issues in this case because it proves nothing against Defendants.  Plaintiffs offer no

admissible evidence of a connection between Nazal and the Karnei Shomron Bombing.

101.    After the Karnei Shomron Bombing occurred, the PLO and PA endorsed its execution, and even made martyr payments to Hafez's father, Ahed Mahmoud Abdallah Abdel Hafez, after the Bombing. Lowell Decl., Ex. 4 at 07:000048-50; Ex. 7.

**Response:**  The assertions in Paragraph 101 do not create a genuine issue of material fact, because, as shown below, they: use vague and ambiguous terminology; mischaracterize the evidence cited by Plaintiffs; and are legally immaterial, because they do not demonstrate the proximate causation required for a primary liability ATA claim, nor the general awareness or substantial assistance required for a secondary liability ATA claim.

The term "endorsed" is vague and ambiguous, and Plaintiffs fail to offer any evidence that supports their assertion that "the PLO and PA endorsed" the Karnei Shomron Bombing.  Plaintiffs cite a page that does not appear in Exhibit 4.  However, the material that Plaintiffs cite in Exhibit 7 and the page they intend to cite in Exhibit 4 merely reflect payments made to Hafez's family pursuant to a government policy geared towards providing a minimum standard of living to those who have lost a breadwinner as a result of the Israeli-Palestinian conflict.  A determination that the death of a family's breadwinner met the above definition, and social welfare payments made pursuant to a broader governmental policy, cannot qualify as an "endorsement."

The statement, including any support by Defendants to Hafez's family, is legally immaterial.   "A showing of support—even post-attack financial support to the families of terrorists—is not sufficient to demonstrate that Defendants were somehow responsible for the attacks."  *Sokolow v. PLO*, 60 F. Supp. 3d 509, 517 n.11 (S.D.N.Y. 2014).  *See also Shatsky I*, 2017 U.S. Dist. LEXIS 94946, at *32 (D.D.C. June 20, 2017) ("after-the-fact payments are not sufficient for a reasonable jury to conclude that defendants proximately caused the Karnei Shomron Bombing.").

The statement is non-material to the issues in this case because it proves nothing against Defendants. Plaintiffs offer no admissible evidence of a connection between Defendants and the Karnei Shomron Bombing.

102.   Upon Nazal's death on April 26, 2002, the PA continued to disburse his National Security salary to his family. Lowell Decl., Ex. 6 at 07:000202–207 (showing the PA National Security apparatus began making payments to Nazal's wife, after he had been declared a martyr).

**Response:**  Defendants do not dispute for purposes of summary judgment the statement in Paragraph 102, but this statement does not create a genuine issue of material fact because, as shown below, it is legally immaterial.  The statement does not demonstrate the proximate causation required for a primary liability ATA claim, nor the general awareness or substantial assistance required for a secondary liability ATA claim.  They also do not support a claim for *respondeat superior* against Defendants.

"A showing of support—even post-attack financial support to the families of terrorists— is not sufficient to demonstrate that Defendants were somehow responsible for the attacks." *Sokolow v. PLO*, 60 F. Supp. 3d 509, 517 n.11 (S.D.N.Y. 2014).  *See also Shatsky I*, 2017 U.S. Dist. LEXIS 94946, at *32 (D.D.C. June 20, 2017) ("after-the-fact payments are not sufficient for a reasonable jury to conclude that defendants proximately caused the Karnei Shomron Bombing.").

The statement is non-material to the issues in this case because it proves nothing against Defendants.  Plaintiffs offer no admissible evidence of a connection between Defendants and the Karnei Shomron Bombing.

103.   In May 2002, the PA posthumously promoted Nazal to the rank of Major. Lowell Decl., Ex. 5 at 07:000057.

**Response:**  Defendants do not dispute for purposes of summary judgment the statement in Paragraph 103, but this statement does not create a genuine issue of material fact because, as shown

below, it is legally immaterial.  The statement does not demonstrate the proximate causation required for a primary liability ATA claim, nor the general awareness or substantial assistance required for a secondary liability ATA claim.  They also do not support a claim for *respondeat superior* against Defendants.

"A showing of support—even post-attack financial support to the families of terrorists—is not sufficient to demonstrate that Defendants were somehow responsible for the attacks." *Sokolow v. PLO*, 60 F. Supp. 3d 509, 517 n.11 (S.D.N.Y. 2014).  *See also Shatsky I*, 2017 U.S. Dist. LEXIS 94946, at *32 (D.D.C. June 20, 2017) ("after-the-fact payments are not sufficient for a reasonable jury to conclude that defendants proximately caused the Karnei Shomron Bombing.").

The statement is non-material to the issues in this case because it proves nothing against Defendants.  Plaintiffs offer no admissible evidence of a connection between Defendants and the Karnei Shomron Bombing.

104.    In 2004, the PA converted its payments to Nazal's family to Martyr payments. *Id.* at 07:000057-62, 07:001083.

**Response:**  Defendants do not dispute for purposes of summary judgment the statement in Paragraph 104, but this statement does not create a genuine issue of material fact because, as shown below, it is legally immaterial.  The statement does not demonstrate the proximate causation required for a primary liability ATA claim, nor the general awareness or substantial assistance required for a secondary liability ATA claim.  They also do not support a claim for *respondeat superior* against Defendants.

"A showing of support—even post-attack financial support to the families of terrorists—is not sufficient to demonstrate that Defendants were somehow responsible for the attacks." *Sokolow v. PLO*, 60 F. Supp. 3d 509, 517 n.11 (S.D.N.Y. 2014).  *See also Shatsky I*, 2017 U.S.

Dist. LEXIS 94946, at *32 (D.D.C. June 20, 2017) ("after-the-fact payments are not sufficient for a reasonable jury to conclude that defendants proximately caused the Karnei Shomron Bombing.").

The statement is non-material to the issues in this case because it proves nothing against Defendants.  Plaintiffs offer no admissible evidence of a connection between Defendants and the Karnei Shomron Bombing.

105.    Over a decade after Nazal's death, the PFLP and its members continue to glorify their terrorist leader, Raed Nazal. *See, e.g.*, Lowell Decl., Ex. 77; Ex. 78; Ex. 79.

**Response:**  The assertions in Paragraph 105 do not create an issue of material fact because, as shown below, they: rely on inadmissible hearsay; mischaracterize the cited materials; and rely on material from outside the *Shatsky I* discovery record.

The documents cited by Plaintiffs—printouts from the website www.pflp.ps (in Exhibits 77 and 78) and a news magazine article (in Exhibit 79)—constitute inadmissible hearsay.  *See Loussier v. Universal Music Group, Inc.*, Case No. 02 Civ. 2447, 2005 U.S. Dist. LEXIS 37545, at *11 (S.D.N.Y. July 14, 2005) ("The printouts from the eBay website are inadmissible hearsay"); *Nixon v. Inquisitr Ltd.*, Case No. 20-CV-1819, 2021 U.S. Dist. LEXIS 156255, at *9 (E.D.N.Y. Aug. 17, 2021) ("The Glassdoor website submitted by Plaintiff constitutes hearsay and is not admissible as support for his claim."); *Jordonne v. Ole Bar & Grill, Inc.*, Case No. 13 Civ. 1573, 2016 U.S. Dist. LEXIS 56943, at *19-20 (S.D.N.Y. 2016) (finding newspaper articles are inadmissible hearsay).

Plaintiffs also fail to provide evidence for their claim that these sources speak on behalf of the PFLP or its members, or that the PFLP glorified Nazal as a "terrorist leader."

Furthermore, Exhibit 79 was precluded by the D.D.C. in *Shatsky I*, 312 F.R.D. 219, 230 (D.D.C. 2015), as Plaintiffs did not disclose it until well after the close of discovery and Defendants did not have a chance to test the document in discovery.

Any purported glorification of Nazal by the PFLP is non-material to the issues in this case. The PFLP's purported support for Nazal over a decade after the Bombing has no connection to Defendants and fails to demonstrate any responsibility by the PA and PLO for the Karnei Shomron Bombing.

106.    During the relevant period, the PFLP maintained and operated headquarters and offices in the West Bank cities of Jenin, Nablus, Qalqilya, Ramallah and Tulkarem, and in various locations throughout the Gaza Strip, which were all within the PA's jurisdiction, with the PA's knowledge. *See* Shaked Decl. at 9.

**Response:**  Defendants do not dispute for the purpose of summary judgment the statement in Paragraph 106, but this statement does not create a genuine issue of material fact because the geography of the PFLP's offices is non-material to the issues in this case.  Plaintiffs offer no admissible evidence of a connection between any PFLP office and the Karnei Shomron Bombing.

107.    The PFLP regularly utilized its offices in the West Bank and Gaza Strip (territory governed by Defendant PA) for terrorist purposes and to carry out terrorism-related activities. *See* Shaked Decl. at 9–10; Lowell Decl., Ex. 76 at SHATSKY-007481 (showing convicted violent terrorist, Nuraddin Said Daoud, was recruited to the PFLP's military wing in the PFLP's Qalqilya office); Ex. 38 at SHATSKY-007605 (witness in criminal case testifying that the PFLP office in Ramallah was used to recruit people into "the military wing of the Organization, for the purpose of carrying out terror attacks").

**Response:**  The assertions in Paragraph 107 do not create an issue of material fact because, as shown below, they: rely on inadmissible hearsay; rely on material from outside the *Shatsky I* discovery record; and rely on "expert" testimony that is inadmissible under Federal Rule of Evidence 702.

Plaintiffs cite portions of unauthenticated Israeli military court documents from Exhibits 38 and 76 even though they constitute inadmissible hearsay-within-hearsay.  The material cited from Exhibit 76 is part of a military court indictment sheet in which the prosecutor summarizes statements allegedly made by a member of the PFLP.  The material cited from Exhibit 38 is a military tribunal's summary of a witness's testimony.  Factual statements from foreign indictments

and convictions are not admissible under any hearsay exception.  *See, e.g.*, *Small v. United States*, 544 U.S. 385, 393-94 (2005) (holding that a foreign conviction could not serve as a predicate to liability); *United States v. $ 125,938.6, et al.*, 537 F.3d 1287, 1292 (11th Cir. 2008) (holding that "none of the relevant facts found in the judgment of conviction were admissible").  Moreover, a history of improper tactics applied by Israeli security forces against Palestinian detainees makes military court documents like Exhibit 76 generally unreliable.  *See, e.g.*, Amnesty International, Israel    and    Occupied    Palestinian    Territories    2020,    available    at https://www.amnesty.org/en/location/middle-east-and-north-africa/israel-and-occupied-palestinian-territories/report-israel-and-occupied-palestinian-territories/   ("Palestinian   civilians, including children . . . were prosecuted in military courts that did not meet international fair trial standards. . . .  Israeli soldiers, police and ISA officers continued to torture and otherwise ill-treat Palestinian detainees, including children, with impunity.  Reported methods included beating, slapping, painful shackling, sleep deprivation, use of stress positions and threats of violence against family members.").

Furthermore, Exhibits 38 and 76 were precluded by the D.D.C. in *Shatsky I*, 312 F.R.D. 219, 230 (D.D.C. 2015), as Plaintiffs did not disclose them until well after the close of discovery and Defendants did not have a chance to test the documents in discovery.

The Shaked Declaration is also outside of the *Shatsky I* discovery record.  The D.D.C. in *Shatsky I*, ECF 242 at 4, precluded Plaintiffs from submitting expert testimony or reports from their liability experts, and Defendants have not had the opportunity to depose the declarant. Regardless, the Shaked Declaration is inadmissible expert testimony under Rule 702 and thus cannot support this assertion.  The portion cited here merely summarizes evidence submitted by the defendants and draws conclusions therefrom relying on no expert methodology or expertise.

*See Highland Capital Mgt., L.P. v. Schneider*, 379 F.Supp.2d 461, 469 (S.D.N.Y. 2005) (expert testimony cannot be used "solely for the purpose of constructing a factual narrative based upon record evidence"); *Ridge Clearing & Outsourcing Solutions, Inc. v. Khashoggi*, 2011 U.S. Dist. LEXIS 91353, at *5-6 (S.D.N.Y. Aug. 12, 2011) (expert testimony improper where "a layperson could easily make these findings without the need to resort to expert testimony").

The statement is non-material to the issues in this case.  Plaintiffs offer no admissible evidence of a connection between any PFLP office and the Karnei Shomron Bombing.

108.   All or some of the offices were financed by the PA. *See* ECF 120-4, Ex. D ("Barahme Dep.") at 28, 48, Sept. 11, 2012 (admitting that the PA funded several PFLP offices).

**Response:**  Defendants do not dispute for purposes of summary judgment that the PA financed offices belonging to the PLO's various political factions, but that does not create a genuine issue of material fact because, as shown below, it is legally immaterial.  The statement does not demonstrate the proximate causation required for a primary liability ATA claim, nor the general awareness or substantial assistance required for a secondary liability ATA claim.

One of the ways in which Palestinian law safeguards political expression is the provision of minimal rent support to various political parties.  *See* ECF 120-4, Ex. D ("Barahme Dep."), at 32:7-13.[4]  However, there is no evidence that any minimal rent support provided to the PFLP, as a member-faction of the PLO, proximately caused Plaintiffs' injuries or that rent support for any PFLP office substantially assisted the Karnei Shomron Bombing.  *Shatsky v. PLO,* 2017 U.S. Dist. LEXIS 94946, at *31 (D.D.C. June 20, 2017) ("[T]he proffered evidence of support to the Qalqilya office is insufficient to establish the existence of the proximate cause element of plaintiffs' case.").

---

[4] Contrary to Plaintiffs' assertions [ECF 134 at 3], it is proper to rely on testimony from a party's own Rule 30(b)(6) witnesses to support its summary judgment motion.  *Societe Generale Energie Corp. v. N.Y. Marine & Gen. Ins. Co.*, 368 F. Supp. 296, 299 n. 3 (S.D.N.Y. 2005) (crediting defendant's 56.1 statement where the 30(b)(6) testimony cited in the statement was based upon the defendant organization's knowledge).

As such, the assertion in this purported statement of fact does not raise a genuine issue of material fact.

109.    From at least June 1, 2000 through May 30, 2002, the PFLP rented office space for its headquarters in Qalqilya. Lowell Decl., Ex. 4 at 07:000042 (lease agreement for June 1, 2000 to May 30, 2001).

**Response:**  Defendants do not dispute for the purpose of summary judgment that the PFLP rented space for its headquarters in Qalqilya during the indicated time period, but that does not create a genuine issue of material fact because, as shown below, it is legally immaterial.  The statement does not demonstrate the proximate causation required for a primary liability ATA claim, nor the general awareness or substantial assistance required for a secondary liability ATA claim.

Plaintiffs lack any evidentiary support that the PFLP office in Qalqilya, or anyone working in that office, had any connection to the Karnei Shomron Bombing.  *Shatsky v. PLO,* 2017 U.S. Dist. LEXIS 94946, at *30 (D.D.C. June 20, 2017) ("[N]o reasonable jury could find that the PLO's payment of rent for the Qalqilya office 'caused' the bombing simply because that office is located in a place physically 'proximate' to the attack.").  Further, there is no evidence that any minimal rent support provided to the PFLP, as a member-faction of the PLO, proximately caused Plaintiffs' injuries or that rent support for any PFLP office substantially assisted the Karnei Shomron Bombing.  *Id.* at *31.

As such, the assertion in this purported statement of fact does not raise a genuine issue of material fact.

110.    On January 30, 2000, the Deputy Head of the Palestine National Council asked PA head Yasser Arafat to approve the PA's payment of the PFLP's rent "▉▉▉▉▉▉▉▉ Redacted ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉"  The evidence suggests that Arafat indeed approved the payment. *Id.* at 07:000041. The evidence suggests that Arafat indeed approved the payment.  *See id.* (showing ▉▉▉▉▉▉▉▉ Redacted ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉).

**Response:**  Defendants do not dispute the assertions in Paragraph 110 for the purpose of summary judgment, but that does not create a genuine issue of material fact because, as shown below, it is legally immaterial.  The statement does not demonstrate the proximate causation required for a primary liability ATA claim, nor the general awareness or substantial assistance required for a secondary liability ATA claim.

Plaintiffs lack evidentiary support that the PFLP office in Qalqilya, or anyone working in that office, had any connection to the Karnei Shomron Bombing.  There is no evidence that any minimal rent support provided to the PFLP, as a member-faction of the PLO, proximately caused Plaintiffs' injuries or that rent support for any PFLP office substantially assisted the Karnei Shomron Bombing.  *Shatsky v. PLO,* 2017 U.S. Dist. LEXIS 94946, at *31 (D.D.C. June 20, 2017) ("[T]he proffered evidence of support to the Qalqilya office is insufficient to establish the existence of the proximate cause element of plaintiffs' case.").

As such, the assertion in this purported statement of fact does not raise a genuine issue of material fact.

111.    The PA's financial support for the PFLP's Qalqilya headquarters continued at least through 2001 and 2002. *See id.* (Arafat's July 4, 2001 approval of the PA's payment of the PFLP's rent in his own handwriting and with his own signature); *id.* at 07:000040 (noting ▮▮▮Redacted▮▮▮ ).

**Response:**  Defendants do not dispute for the purpose of summary judgment that the PA paid the rent for the PFLP office in Qalqilya through May 2002, but that does not create a genuine issue of material fact because, as shown below, it is legally immaterial.  The statement does not demonstrate the proximate causation required for a primary liability ATA claim, nor the general awareness or substantial assistance required for a secondary liability ATA claim.

Plaintiffs lack any evidentiary support that the PFLP office in Qalqilya, or anyone working in that office, had any connection to the Karnei Shomron Bombing. *Shatsky v. PLO,* 2017 U.S. Dist. LEXIS 94946, at *30 (D.D.C. June 20, 2017) ("[N]o reasonable jury could find that the PLO's payment of rent for the Qalqilya office 'caused' the bombing simply because that office is located in a place physically 'proximate' to the attack.").  Moreover, there is no evidence that any minimal rent support provided to the PFLP, as a member-faction of the PLO, proximately caused Plaintiffs' injuries or that rent support for any PFLP office substantially assisted the Karnei Shomron Bombing. *Id.* at *31.

As such, the assertion in this purported statement of fact does not raise a genuine issue of material fact.

112.    Pursuant to Arafat's orders, the PA paid the annual rent for the PFLP's offices in the Gaza Strip and in the West Bank, including in Qalqilya, Nablus, and Ramallah. *See id.* at 07:000035-37, 07:000046-47 (showing PA rent payments for the PFLP's headquarters for the period from June 1, 2001 to May 31, 2002); ECF 120-4, Ex. D ("Barahme Dep.") at 28, 48 (admitting that the PA funded several PFLP offices).

**Response:**  Defendants do not dispute for the purpose of summary judgment that the PA paid the rent for the PFLP office in Qalqilya through May 2002, but that does not create a genuine issue of material fact because, as shown below, it is legally immaterial.  The statement does not demonstrate the proximate causation required for a primary liability ATA claim, nor the general awareness or substantial assistance required for a secondary liability ATA claim.

Plaintiffs lack any evidentiary support that the PFLP offices in Qalqilya, Nabulus, or Ramallah, or anyone working in those offices, had any connection to the Karnei Shomron Bombing.  There is no evidence that any minimal rent support provided to the PFLP, as a member-faction of the PLO, proximately caused Plaintiffs' injuries or that rent support for any PFLP office substantially assisted the Karnei Shomron Bombing. *Shatsky v. PLO,* 2017 U.S. Dist. LEXIS

94946, at *31 (D.D.C. June 20, 2017) ("[T]he proffered evidence of support to the Qalqilya office is insufficient to establish the existence of the proximate cause element of plaintiffs' case.")

As such, the assertion in this purported statement of fact does not raise a genuine issue of material fact.

113.    The PA also granted the landlord who rented office space to the PFLP certain income tax benefits in connection with his transactions with the PFLP. Ex. 154 at 07:000038-39.

**Response:**   The assertions in Paragraph 113 do not create a genuine issue of material fact because, as shown below, they: mischaracterize the evidence cited by Plaintiffs; and are legally immaterial because they do not demonstrate the proximate causation required for a primary liability ATA claim, nor the general awareness or substantial assistance required for a secondary liability ATA claim.

Plaintiffs ignore testimony by the PA that shows that the landlord did not receive any benefits based on his transactions "with the PFLP."  Nadime Barahme's Rule 30(b)(6) testimony clarified that the documents cited by Plaintiffs indicate only that the landlord "reached a settlement with the property tax department and that he is clear."  Barahme Dep. 84:5-85:21.

Plaintiffs lack evidentiary support that the PFLP office in Qalqilya, or anyone working in that office, had any connection to the Karnei Shomron Bombing.  There is no evidence that any minimal rent support provided to the PFLP, as a member-faction of the PLO, proximately caused Plaintiffs' injuries or that rent support for any PFLP office substantially assisted the Karnei Shomron Bombing.  *Shatsky v. PLO,* 2017 U.S. Dist. LEXIS 94946, at *31 (D.D.C. June 20, 2017) ("[T]he proffered evidence of support to the Qalqilya office is insufficient to establish the existence of the proximate cause element of plaintiffs' case.").

As such, the assertion in this purported statement of fact, which incorrectly labels Exhibit 4 as "Ex. 154"—its previous designation in Plaintiffs' 56.1 Statement from 2013—does not raise a genuine issue of material fact.

114.   Indeed, ███████████████████████ Redacted ███████████████████████
███████ Ex. 158 at 07:000193.

**Response:**  The assertions in Paragraph 114 do not create a genuine issue of material fact because, as shown below, they: rely on inadmissible hearsay; mischaracterize the cited materials; and are legally immaterial, because they do not demonstrate the proximate causation required for a primary liability ATA claim, nor the general awareness or substantial assistance required for a secondary liability ATA claim.

Plaintiffs incorrectly label Exhibit 6 as "Ex. 158," which was the Exhibit's previous designation in Plaintiffs' 56.1 Statement made in 2013.  The portion of Exhibit 6 cited by Plaintiffs constitutes inadmissible hearsay-within-hearsay, as it comes from an uncorroborated intelligence report that summarizes information heard from unnamed sources.  *United States v. El-Mezain*, 664 F.3d 467, 500 (5th Cir. 2011) (holding that PA intelligence files constituted "classic hearsay," were not admissible under the residual hearsay exception (Fed. R. Evid. 807), and did not meet the standard for admissibility under the public records exception).

Plaintiffs also mischaracterize the hearsay upon which they rely, as ██████ Redacted ██████
██████████████████████████████████████████ *See* Ex. 6 at 07:000193.

Plaintiffs lack any evidentiary support that the PFLP office in Qalqilya, or anyone working in that office, had any connection to the Karnei Shomron Bombing.  *Shatsky v. PLO*, 2017 U.S. Dist. LEXIS 94946, at *30 (D.D.C. June 20, 2017) ("[N]o reasonable jury could find that the PLO's payment of rent for the Qalqilya office 'caused' the bombing simply because that office is located in a place physically 'proximate' to the attack.").  There is no evidence that any minimal

rent support provided to the PFLP, as a member-faction of the PLO, proximately caused Plaintiffs'

injuries or that rent support for any PFLP office substantially assisted the Karnei Shomron

Bombing. *Id.* at \*31 ("[T]he proffered evidence of support to the Qalqilya office is insufficient to

establish the existence of the proximate cause element of plaintiffs' case.").

    As such, the assertion in this purported statement of fact does not raise a genuine issue of

material fact.

    115.    Other PFLP offices within the PA's jurisdiction were used to recruit terrorists.
Lowell Decl., Ex. 38 at SHATSKY-007605 (witness in a criminal case testified that "he met with
the Defendant in the PFLP offices in Ramallah, where the Defendant recruited him for the military
wing of the Organization, for the purpose of carrying out terror attacks."); Shaked Decl. at 9–12.

    **Response:**  The assertions in Paragraph 115 do not create a genuine issue of material fact

because, as shown below, they: rely on inadmissible hearsay; rely on material from outside the

*Shatsky I* discovery record; and rely on "expert" testimony inadmissible under Federal Rule of

Evidence 702.

    The testimony cited by Plaintiffs in Exhibit 38 is a hearsay statement derived from an

unauthenticated and inadmissible hearsay Israeli sentencing document.  Such statements are not

admissible under any hearsay exception.  *See, e.g.*, *Small v. United States*, 544 U.S. 385, 393-94

(2005) (holding that a foreign conviction could not serve as a predicate to liability); *United States*

*v. $ 125,938.6, et al.*, 537 F.3d 1287, 1292 (11th Cir. 2008) (holding that "none of the relevant

facts found in the judgment of conviction were admissible").

    This document was also precluded by the D.D.C. in *Shatsky I*, 312 F.R.D. 219, 230 (D.D.C.

2015), as it was disclosed months after the close of discovery and Defendants did not have a chance

to test the document in discovery.

The Shaked Declaration is also outside of the *Shatsky I* discovery record.  The District Court in *Shatsky I*, Case No 02-cv-02280, ECF #242 at 4 (D.D.C. April 11, 2013), precluded Plaintiffs from submitting expert testimony or reports from their liability experts, and Defendants have not had the opportunity to depose the declarant.  Regardless, the material cited in Plaintiffs' expert's declaration similarly cannot support this statement.  It is inadmissible expert testimony under Rule 702 because Shaked's statements are merely restatements of facts about which he has no personal knowledge, improperly presented "solely for the purpose of constructing a factual narrative based upon record evidence."  *Highland Capital Mgt., L.P. v. Schneider*, 379 F.Supp.2d 461, 469 (S.D.N.Y. 2005).  Indeed, Shaked merely cites a number of Israeli judicial decisions as support for his claim that the PFLP used its offices to recruit and fund terrorists.  *See* Shaked Decl. at 10, n. 21.  As explained above, such judicial decisions cannot be considered for the factual statements contained therein.  Moreover, Shaked's claim is not based on specialized expertise; instead it concerns matters a juror is perfectly "capable of understanding on his or her own."  *United States v. Mejia*, 545 F.3d 179, 194 (2d Cir. 2008).

There is no evidence that any minimal rent support provided to the PFLP, as a member-faction of the PLO, proximately caused Plaintiffs' injuries or that rent support for any PFLP office substantially assisted the Karnei Shomron Bombing.  *Shatsky v. PLO,* 2017 U.S. Dist. LEXIS 94946, at *31 (D.D.C. June 20, 2017).

As such, the assertion in this purported statement of fact does not raise a genuine issue of material fact.

116.   The PA provided a car, driver, and apartment to the Deputy Secretary General of the PFLP, Abdel Rahim Malouh, who served as the PFLP representative on the PLO's Executive Committee. *See* ECF 120-5, Ex. E ("Malouh Dep.") at 12:22-13:7, 36:1-22; 37:8-38:18 (showing the PA authorized payment of the expenses related to the car, driver, and apartment of Malouh).

**Response:**  Defendants do not dispute that they paid certain living expenses for members of the PLO's leadership, but that does not create an issue of material fact because, as shown below, it is legally immaterial.  The statement does not demonstrate the proximate causation required for a primary liability ATA claim, nor the general awareness or substantial assistance required for a secondary liability ATA claim.

During the relevant period, the PFLP was one of the largest political parties under the umbrella of the PLO, and during that time the PA distinguished between the PFLP's political and military wings, as the Palestinian Supreme Council on National Security had outlawed the latter on October 22, 2001.  Defs.' SOF ¶ 6.  Plaintiffs ignore the portion of Abdel Rahim Malouh's testimony in which he explains that the "PLO cover[ed] the expenses of *all members* of the [PLO's] Executive Committee…."  Malouh Dep. 13:2-3 (emphasis added).  Malouh's membership in the Executive Committee was the "only reason" it paid for his car and apartment.  *Id.* at 13:4-7.

There is no evidence that any such minimal support provided to the PFLP, as a member-faction of the PLO, proximately caused Plaintiffs' injuries or that such minimal support substantially assisted the Karnei Shomron Bombing.  *See Shatsky v. PLO,* 2017 U.S. Dist. LEXIS 94946, at *31 (D.D.C. June 20, 2017).

As such, the assertion in this purported statement of fact does not raise a genuine issue of material fact.

117.    The Palestinian Ministry of Detainees and Ex-Detainees Affairs "pays a monthly stipend from the Palestinian National Authority to the families of all prisoners held in Israeli prisons." Lowell Decl., Ex. 81 at SHATSKY-007968; *see also* Ex. 69 (PA witness in an Israeli civil case testified that the PA makes prisoner payments); Ex. 15 at SHATSKY-002814 (monthly stipend from the Palestinian National Authority to the families of prisoners held in Israeli prisons).

**Response:**  Defendants do not dispute that they make social security payments to the families of detainees in Israeli prisons that meet the eligibility requirements set under Palestinian

law, but that does not create a genuine issue of material fact because such payments do not demonstrate the proximate causation required for a primary liability ATA claim, nor the general awareness or substantial assistance required for a secondary liability ATA claim.

These payments are made pursuant to a government policy geared towards providing a minimum standard of living to those who have lost a breadwinner as a result of the Israeli-Palestinian conflict.  They are not ratification of the underlying act, *see* Defs.' Mem. in Supp. Mot. Summ. J. at 22-23 and n.11, ECF 119 (collecting cases), and thus, cannot create a triable issue of causation, general awareness, or substantial assistance.

As a result, the statement is non-material to the issues in this case because it proves nothing against Defendants.

118.   These stipends "are paid to all prisoners without exception and with no discrimination, as all of them are considered soldiers of the homeland." Lowell Decl., Ex. 81 at SHATSKY- 007968.

**Response:**  The assertions in Paragraph 118 do not create a genuine issue of material fact because, as shown below, they: rely on inadmissible hearsay; evidence precluded from the *Shatsky I* discovery record; are factually inaccurate; and are legally immaterial because prisoner payments do not demonstrate the proximate causation required for a primary liability ATA claim, nor the general awareness or substantial assistance required for a secondary liability ATA claim.

Exhibit 81 purports to be a "publication" from the "website of the PA Ministry of Detainees & Ex-Detainees Affairs (www.freedom.ps)," but Palestinian government websites traditionally end with the domain "gov.ps."  As such, it is inadmissible hearsay.  This undated Internet post was also precluded in *Shatsky I*, 312 F.R.D. 219, 230 (D.D.C. 2015), as it was disclosed months after the close of discovery and Defendants did not have a chance to test the document in discovery.

Plaintiffs ignore testimony by Defendants' Rule 30(b)(6) deponent—Abdel Jabbar Salem—which explains that prisoners do not receive payments "without exception and with no discrimination"; prisoners must meet certain eligibility requirements before their families can receive these social security payments. Pls.' Ex. 13 at 45:8-20. *See also id.* at 49:4-21 (explaining that another source of income disqualifies a prisoner's family from receiving payments); Pls.' Ex. 14 at 195:3-18 (testifying that the government entity responsible for authorizing payments verifies the family's documentation … to ensure that the family is in need.").

Finally, these prisoner payments are made pursuant to a government policy geared towards providing a minimum standard of living to those who have lost a breadwinner as a result of the Israeli-Palestinian conflict. They are not ratification of the underlying act, *see* Defs.' Mem. in Supp. Mot. Summ. J. at 22-23 and n.11, ECF 119 (collecting cases), and thus, cannot create a triable issue of causation, general awareness, or substantial assistance.

As a result, the statement is non-material to the issues in this case because it proves nothing against Defendants.

119.    Single prisoners receive 1000 Shekels. *Id.* The wives of the married prisoners receive 300 Shekels, plus 50 Shekels for every child under 18 years of age. *Id.*

**Response:**  The assertions in Paragraph 119 do not create a genuine issue of material fact because, as shown below, they rely on inadmissible hearsay; evidence precluded from the *Shatsky I* discovery record; are contradicted by other evidence submitted by Plaintiffs; and are legally immaterial because prisoner payments do not demonstrate the proximate causation required for a primary liability ATA claim, nor the general awareness or substantial assistance required for a secondary liability ATA claim.

Exhibit 81 purports to be a "publication" from the "website of the PA Ministry of Detainees & Ex-Detainees Affairs (www.freedom.ps)," but Palestinian government websites traditionally

end with the domain "gov.ps." As such, it is inadmissible hearsay. This undated Internet post was also precluded in *Shatsky I*, 312 F.R.D. 219, 230 (D.D.C. 2015), as it was disclosed months after the close of discovery and Defendants did not have a chance to test the document in discovery.

Plaintiffs have also offered evidence in support of their opposition to Defendants' motion to dismiss that contradicts the above assertion. *See, e.g.,* Haker Decl. Ex. 222, ECF No. 130 ( ██████████████████████ Redacted ██████████████████████ ██████ ).

Finally, these prisoner payments are made pursuant to a government policy geared towards providing a minimum standard of living to those who have lost a breadwinner as a result of the Israeli-Palestinian conflict. They are not ratification of the underlying act, *see* Defs.' Mem. in Supp. Mot. Summ. J. at 22-23 and n.11, ECF 119 (collecting cases), and thus, cannot create a triable issue of causation, general awareness, or substantial assistance.

As a result, the statement is non-material to the issues in this case because it proves nothing against Defendants.

120.     The stipend is paid "according to a special salary scale and according to the period of time spent in prison," not according to financial need. *Id.*

**Response:**  The assertions in Paragraph 120 do not create a genuine issue of material fact because, as shown below, they rely on inadmissible hearsay; evidence precluded from the *Shatksy I* discovery record; are factually inaccurate; and are legally immaterial because prisoner payments do not demonstrate the proximate causation required for a primary liability ATA claim, nor the general awareness or substantial assistance required for a secondary liability ATA claim.

Exhibit 81 purports to be a "publication" from the "website of the PA Ministry of Detainees & Ex-Detainees Affairs (www.freedom.ps)," but Palestinian government websites traditionally end with the domain "gov.ps." As such, it is inadmissible hearsay. This undated Internet post was

also precluded in *Shatsky I*, 312 F.R.D. 219, 230 (D.D.C. 2015), as it was disclosed months after the close of discovery and Defendants did not have a chance to test the document in discovery.

Plaintiffs also ignore testimony by Defendants' Rule 30(b)(6) deponent—Abdel Jabbar Salem—which explains that financial need of the prisoner's family is a *prerequisite* to receiving these social security payments.  Pls.' Ex. 14 at 195:3-18 (explaining that the government entity that authorizes the payment confirms that the family has no other source of income); Pls.' Ex. 13 at 49:4-21 (same).  *See also* Pls.' Ex. 13 at 64:14-25, 68:5-13 (testifying that the authorizing entity requires periodic updates to the family's documentation to ensure that it is still eligible for payments).

Finally, these prisoner payments are made pursuant to a government policy geared towards providing a minimum standard of living to those who have lost a breadwinner as a result of the Israeli-Palestinian conflict.  They are not ratification of the underlying act, *see* Defs.' Mem. in Supp. Mot. Summ. J. at 22-23 and n.11, ECF 119 (collecting cases), and thus, cannot create a triable issue of causation, general awareness, or substantial assistance.

As a result, the statement is non-material to the issues in this case because it proves nothing against Defendants.

121.    PFLP members Mohammed W. Nazal (Lowell Decl., Ex. 82), Jamal Hindi (Lowell Decl., Ex. 83), Yusef Ra'i (Lowell Decl., Ex. 84) and Mahjer Ra'i (Lowell Decl., Exs. 85, 86, 87) received these payments.

**Response:**  Plaintiffs do not dispute that the families of the individuals named in Paragraph 121, like many needy families whose breadwinner has been imprisoned, received social security payments from the Ministry of Detainees and Ex-Detainees Affairs, but that does not create a genuine issue of material fact because, as shown below, it is legally immaterial.  The statement

does not demonstrate the proximate causation required under a primary liability ATA claim, nor the general awareness or substantial assistance required under a secondary liability ATA claim.  .

These payments are made pursuant to a government policy geared towards providing a minimum standard of living to those who have lost a breadwinner as a result of the Israeli-Palestinian conflict.  Exhibits 82 through 87 reflect payments made after the bombing at issue in this case, and Plaintiffs cannot argue that Defendants ratified any of the above-named individuals' alleged actions based on Defendants' post-attack conduct.  *See* Defs.' Mem. in  Mot. Summ. J. at 22-23 and n.11, ECF 119 (collecting cases).  Thus, these payments cannot create a triable issue of causation, general awareness, or substantial assistance.

As a result, the statement is non-material to the issues in this case because it proves nothing against Defendants.

122.    In addition to making payments to terrorists, the Palestinian Ministry of Detainees and Ex-Detainees Affairs also has lobbied for their release from prison. *See, e.g.*, Lowell Decl., Ex. 29 at SHATSKY-007763 (statement by the Minister of Detainees and Ex-Detainees Affairs that his goal was the release of 700 military prisoners); Ex. 30 at SHATSKY-007965 (the PA Minister of Detainees and Ex-Detainees Affairs states that the Palestinian prisoners are "not criminals as the Israeli politicians and media describe them . . . [T]hey are national warriors and they have a [just] cause according to the laws of the United Nations."); Ex. 31 (PA Minister "called on the Palestinian leadership to give the issue of the prisoners a special care and priority so that we can liberate them from the Israeli prisons"); Ex. 32 (arguing for the release of prisoners who had been sentenced to life imprisonment).

**Response:**  The assertions in Paragraph 122 do not create a genuine issue of material fact because, as shown below, they rely on inadmissible hearsay; evidence precluded from the *Shatsky I* discovery record; and are legally immaterial because such assertions do not demonstrate the proximate causation required for a primary liability ATA claim, nor the general awareness or substantial assistance required for a secondary liability ATA claim.

Exhibits 29, 30, 31, and 32 purport to be publications from the "website of the PA Ministry of Detainees & Ex-Detainees Affairs (www.freedom.ps)," but Palestinian government websites

traditionally end with the domain "gov.ps."  As such, they are in admissible hearsay.  These printouts were also precluded in *Shatsky I*, 312 F.R.D. 219, 230 (D.D.C. 2015), as they were disclosed months after the close of discovery and Defendants did not have a chance to test the documents in discovery.

Moreover, Exhibits 29, 30, and 31 indicate that the statements included therein post-date the attack at issue in this case by over six years.  Plaintiffs cannot argue Defendants' post-attack conduct constitutes ratification of the bombing at issue in this case.  *See* Defs.' Mem. in Supp. Mot. Summ. J. at 22-23 and n.11, ECF 119 (collecting cases).  Plaintiffs have also failed to offer any evidentiary support or explanation of how the prisoners referenced in the above statement qualify as "terrorists" under the Anti-Terrorism Act's definition for that term.

Plaintiffs fail to explain how Defendants' conduct pursuant to a broad governmental objective caused Plaintiffs' injuries.  As a result, payments made to the families of certain detainees in Israeli prisoners are non-material to the issues in this case because they prove nothing against Defendants.

123.    The PLO and PA also made "martyr payments" to families of individual suicide terrorists who were designated as "martyrs," which were paid from funds under the control of the PA Ministry of Finance. *See* Ghannam Dep. at 28, 42, 49, 59-60, 146 ( Redacted ); Spitzen Decl. ¶ 22 (stating that "defendants operate an 'Institution for Families of the Martyrs and the Injured,' which makes payments to families of suicide terrorists).

**Response:**  The assertions in Paragraph 123 do not create a genuine issue of material fact because, as shown below, they: rely on materials from outside the *Shatsky I* record; rely on "expert" testimony inadmissible under Federal Rule of Evidence 702; mischaracterize the evidence cited by Plaintiffs; and are legally immaterial, because they do not demonstrate the proximate causation

required for a primary liability ATA claim, nor the general awareness or substantial assistance required for a secondary liability ATA claim.

The Spitzen Declaration is outside of the *Shatsky I* discovery record.  The District Court in *Shatsky I*, ECF #242 at 4, precluded Plaintiffs from submitting expert testimony or reports from their liability experts, and Defendants have not had the opportunity to depose the declarant.

The Spitzen Declaration is inadmissible expert testimony under Rule 702, and the statement referenced here is simply a restatement of facts about which Spitzen has no personal knowledge, improperly presented "solely for the purpose of constructing a factual narrative based upon record evidence."  *Highland Capital Mgt., L.P. v. Schneider*, 379 F.Supp.2d 461, 469 (S.D.N.Y. 2005).  Furthermore, the Spitzen Declaration cannot support this statement of fact because  Spitzen's statement regarding martyr payments is not based in specialized expertise, but rather concerns matters a juror "is ... capable of understanding on his or her own."  *United States v. Mejia*, 545 F.3d 179, 194 (2d Cir. 2008).  The statement quoted from Paragraph 22 of the Spitzen Declaration (which Plaintiffs incorrectly cite as Paragraph 21), merely repeats statements regarding which Spitzen has no personal knowledge and that require no expert methodology.  *See Schneider*, 379 F.Supp.2d at 468-469 (an expert cannot simply "rehash[]" facts  about which he has no personal knowledge).

So-called "martyr payments" are financial support provided under a governmental policy geared towards providing a minimum standard of living to those who have lost a breadwinner as a result of the Israeli-Palestinian conflict.  Pls.' Ex. 11, at 49:2-10.  Mr. Ghannam clarified that

<div style="background:black;color:white;text-align:center">Redacted</div>

*Id.* at 63:5-20.  Plaintiffs have not offered any evidentiary support or explanation of

how the individuals designated as martyrs qualify as "terrorists" under the Anti-Terrorism Act's definition for that term.

Furthermore, Plaintiffs cannot argue that any payments made after the attack at issue in this case somehow constituted ratification of the acts that led up to the attack. *See* Defs.' Mem. in Supp. Mot. Summ. J. at 22-23 and n.11, ECF 119 (collecting cases). Thus, these payments cannot create a triable issue of causation, general awareness, or substantial assistance.

Plaintiffs fail to explain how payments made by Defendants pursuant to a broad governmental objective caused Plaintiffs' injuries. As a result, payments made to the families of Palestinians who died in the Israeli-Palestinian conflict are non-material to the issues in this case because they prove nothing against Defendants.

124.   After the Karnei Shomron Bombing, the PLO and PA made martyr payments to Hafez's father, Ahed Mahmoud Abdallah Abdel Hafez. Lowell Decl., Ex. 4 at 07:000048-50; Ex. 7; Ex. 24 (showing Hafez was affiliated with the PFLP and that his family was entitled to receive martyrdom payments as a result of Hafez dying in a " ████████████ Redacted ████████████ ████████  on February 16, 2002).

**Response:** The assertions in Paragraph 124 do not create a genuine issue of material fact because, as shown below, they: rely on inadmissible hearsay; and are legally immaterial because they do not demonstrate the proximate causation required under a primary liability ATA claim, nor the general awareness or substantial assistance required under a secondary liability ATA claim.

First, Exhibit 24 does not establish that Hafez was affiliated with the PFLP. The portion cited by Plaintiffs was prepared by a social worker with no firsthand knowledge of its contents; as such it is inadmissible hearsay. *See, e.g., Wado v. Xerox Corp.*, 991 F. Supp. 174, 191 (W.D.N.Y. 1998) (finding that because deponent "had no firsthand knowledge of whether" the factual allegation against defendant was true, her testimony was "pure hearsay and [could] not be considered on" summary judgment).

Second, Plaintiffs cite a page that does not appear in Exhibit 4.  However, the material that Plaintiffs cite in Exhibit 7 and the page they intend to cite in Exhibit 4 merely reflect payments made to Hafez's family pursuant to a government policy geared towards providing a minimum standard of living to those who have lost a breadwinner as a result of the Israeli-Palestinian conflict.  Pls.' Ex. 11, at 49:2-10.  Mr. Ghannam clarified that ███████████████████████ *Id.* at 63:5-20.

In addition, "[a] showing of support—even post-attack financial support to the families of terrorists—is not sufficient to demonstrate that Defendants were somehow responsible for the attacks."  *Sokolow,* 60 F. Supp. 3d at 517 n.11.  Plaintiffs cannot argue that Defendants ratified Hafez's actions merely on the basis of Defendants' post-attack conduct.  *See* Defs.' Mem. in Supp. Mot. Summ. J. at 22-23 and n.11, ECF 119 (collecting cases).  Thus, these payments cannot create a triable issue of causation, general awareness, or substantial assistance.  Plaintiffs offer no admissible evidence of a connection between Defendants and the Karnei Shomron Bombing.

125.    In July 2000, Arafat, Israeli Prime Minister Ehud Barak and United States President Bill Clinton met at Camp David in an effort to negotiate an end to the Israeli-Palestinian conflict. The Camp David Summit ended without an agreement. Upon his return to the Palestinian territories after the failed Camp David talks, Arafat decided to start a violent resistance known as the Second Intifada or Al-Aqsa Intifada. PA Minister of Communications explained:

> Whoever thinks that the Intifada started because of the hated Sharon's visit to Al-Aqsa Mosque is mistaken. That was only the straw breaking the Palestinian people's patience. This Intifada was already planned since [Arafat] the President returned from the recent talks at Camp David.

Lowell Decl., Ex. 17.

**Response:**  The assertions in Paragraph 125 do not create a genuine issue of material fact because, as shown below, they: rely on inadmissible hearsay; and are legally immaterial.  The statement does not demonstrate the proximate causation required for a primary liability ATA

claim, nor the general awareness or substantial assistance required for a secondary liability ATA claim because it has nothing to do with the Karnei Shomron Bombing or the individuals allegedly involved in that bombing.

Plaintiffs' Exhibit 17 purports to be an Arabic language video, which has not been authenticated, with English subtitles, which have not been certified for accuracy. Exhibit 17 is inadmissible hearsay, as it appears to be from a news media organization. *See Jordonne v. Ole Bar & Grill, Inc.*, Case No. 13 Civ. 1573, 2016 U.S. Dist. LEXIS 56943, at *19-20 (S.D.N.Y. 2016) (finding newspaper articles are inadmissible hearsay).

The assertions in Paragraph 125 are non-material to the matters at issue in this case because they have nothing to do with the Karnei Shomron Bombing or the individuals allegedly involved in that bombing.

126.    Arafat's wife, Suha, explained why she left Palestine during the Second Intifada, stating:

> [Arafat] said: "You have to leave Palestine, because I want to carry out an Intifada, and I'm not prepared to shield myself behind my wife and little girl." Everyone said: "Suha abandoned him," but I didn't abandon him. **He ordered me to leave him because he had already decided to carry out an Intifada after the Oslo Accords and after the failure of Camp David**.

Lowell Decl., Ex. 18 (emphasis added).

**Response:**  The assertions in Paragraph 126 do not create a genuine issue of material fact because, as shown below, they: rely on inadmissible evidence; and rely on material precluded from the *Shatsky I* record.

Exhibit 18 purports to be an Arabic language video, which has not been authenticated, with English subtitles which have not been certified for accuracy. The video is inadmissible double hearsay as it purports to contain statements from a person unrelated to this litigation who is

regurgitating hearsay and appears to be a video from a news media organization.  *See Jordonne v. Ole Bar & Grill, Inc.*, Case No. 13 Civ. 1573, 2016 U.S. Dist. LEXIS 56943, at *19-20 (S.D.N.Y. 2016) (finding newspaper articles are inadmissible hearsay).

Additionally, Exhibit 18 was precluded by the D.D.C. in *Shatsky I*, 312 F.R.D. 219, 230 (D.D.C. 2015), as it was disclosed months after the close of discovery and Defendants did not have a chance to test the document in discovery.

The assertions in Paragraph 126 are non-material to the matters at issue in this case because they have nothing to do with the Karnei Shomron Bombing or the individuals allegedly involved in that bombing.

127.    In the period from 2001 to 2002, "the [PA's] efforts to thwart terrorist operations were minimal." Lowell Decl., Ex. 33 at SHATSKY-006116; *see also* Lowell Decl., Ex. 37 at SHATSKY- 008263-64.

**Response:**  The assertions in Paragraph 127 do not create a genuine issue of material fact because, as shown below, they: rely on inadmissible hearsay; and rely on materials precluded from the *Shatsky I* discovery record.

Exhibits 33 and 37, which purport to be reports published by the U.S. Department of State, contain inadmissible hearsay for which no sources are identified and no potential exception is provided.  *See, e.g.*, *In re September 11 Litig.*, 621 F. Supp. 2d 131, 156 (S.D.N.Y. 2009) (holding that the "9/11 Report" is an inadmissible document and finding that large portions of the Report are "based on sources that are not completely trustworthy or acceptable in American courts.").

Furthermore, Plaintiffs' Exhibits 37 and 38 were precluded by the D.D.C. in *Shatsky I*, 312 F.R.D. 219, 230 (D.D.C. 2015), as they were produced long after the close of discovery and Defendants did not have a chance to test the documents in discovery.

The assertions in Paragraph 127 are non-material to the matters at issue in this case because they have nothing to do with the Karnei Shomron Bombing or the individuals allegedly involved in that bombing.

128.    According to the State Department, "Arafat did not take sufficient sustained action to end the violence," and the PA arrested few terrorists, most of whom were quickly released or not kept under credible conditions of arrest. Lowell Decl., Ex. 49 at SHATSKY-008517; Ex. 89 at SHATSKY-008441, SHATSKY-008445.

**Response:**  The assertions in Paragraph 128 do not create a genuine issue of material fact because, as shown below, they: rely on inadmissible hearsay; and rely on material precluded from the *Shatsky I* discovery record.

Exhibits 49 and 89 purport to be reports made to the United States Congress.  The portions of Exhibits 49 and 89 cited by Plaintiffs constitute inadmissible hearsay for which no sources are identified and no potential exception is provided.  *See, e.g.*, *In re September 11 Litig.*, 621 F. Supp. 2d 131, 156 (S.D.N.Y. 2009) (holding that the "9/11 Report" is an inadmissible document and finding that large portions of the Report are "based on sources that are not completely trustworthy or acceptable in American courts.").

Furthermore, Exhibit 89 was precluded by the D.D.C. in *Shatsky I*, 312 F.R.D. 219, 230 (D.D.C. 2015), as it was produced long after the close of discovery and Defendants did not have a chance to test the document in discovery.

The assertions in Paragraph 128 are non-material to the matters at issue in this case because they have nothing to do with the Karnei Shomron Bombing or the individuals allegedly involved in that bombing.

129.    Indeed, militants were often under "house arrest" pursuant to which "the detained person was kept in comfortable surroundings and allowed to stay in touch with associates." Lowell Decl., Ex. 90 at SHATSKY-005040; *see also* Lowell Decl., Ex. 91 at SHATSKY-009452, SHATSKY-009454 (it was "clear" that PLO elements involved in violence against Israelis were not "disciplined"); Ex. 21 at SHATSKY-009437 (same); Ex. 90 at SHATSKY-005039 (the

"weight of the evidence" would indicate that the PLO and PA knew of various organizations' "involvement in the violence and did little to rein them in").

**Response:**  The assertions in Paragraph 129 do not create a genuine issue of material fact because, as shown below, they: rely on inadmissible hearsay; and rely on material precluded from the *Shatsky I* discovery record.

Exhibits 21, 90, and 91 purport to be reports submitted to Congress pursuant the PLO Commitments Compliance Act of 1989 that constitute inadmissible hearsay for which no sources are identified and no potential exception is provided.  *See, e.g.*, *In re September 11 Litig.*, 621 F. Supp. 2d 131, 156 (S.D.N.Y. 2009) (holding that the "9/11 Report" is an inadmissible document and finding that large portions of the Report are "based on sources that are not completely trustworthy or acceptable in American courts.").

Furthermore, Exhibits 21, 90, and 91 were precluded by the D.D.C. in *Shatsky I*, 312 F.R.D. 219, 230 (D.D.C. 2015), as they were produced long after the close of discovery and Defendants did not have a chance to test the documents in discovery.

The assertions in Paragraph 129 are non-material to the matters at issue in this case because they have nothing to do with the Karnei Shomron Bombing or the individuals allegedly involved in that bombing.

130.    During the Second Intifada, which began in September 2000 and ended in February 2005, the PLO and the PA used the new level of autonomy it obtained under the Oslo Agreement to prepare and execute violent attacks against Israel and its citizens. Lowell Decl., Ex. 3.

**Response:**  The assertions in Paragraph 130 do not create a genuine issue of material fact because, as shown below, they: rely on inadmissible hearsay; and rely on material precluded from the *Shatsky I* discovery record.

Exhibit 3 purports to be an Arabic language video with English subtitles that appears to have been broadcast on "Al Alam Television," and is thus inadmissible hearsay.  *See Jordonne v.*

*Ole Bar & Grill, Inc.*, Case No. 13 Civ. 1573, 2016 U.S. Dist. LEXIS 56943, at *19-20 (S.D.N.Y. 2016) (finding newspaper articles are inadmissible hearsay).  Additionally, Plaintiffs have not properly authenticated the video or certified for accuracy the English subtitles within the video.

Exhibit 3 was also precluded by the D.D.C. in *Shatsky I*, 312 F.R.D. 219, 230 (D.D.C. 2015), as it was produced long after the close of discovery and Defendants did not have a chance to test the document in discovery.

The assertions in Paragraph 130 are non-material to the matters at issue in this case because they have nothing to do with the Karnei Shomron Bombing or the individuals allegedly involved in that bombing.

131.   In his capacity as Chairman of the PLO and President of the PA, Arafat rallied the PA security forces, various organizations, including terrorist organizations, and ordinary Palestinians, including women and children, to carry out the violent attacks against Israel and its citizens that occurred during the Second Intifada. Lowell Decl., Ex. 2 at SHATSKY-006781 (¶ 51), SHATSKY- 006784 (¶ 54); Ex. 92 (Deputy Director of the PA's Political and National Education Authority stated in a May 2002 interview that the Intifada and "all its directives belong to the President and Supreme Commander Yasser Arafat."); Ex. 93 at SHATSKY-008102-03 (former Palestinian Authority MP, Secretary General of the Fatah in the West Bank and Palestinian military leader during the Second Intifada who is currently serving five consecutive life sentences in Israeli prison for planning terrorist operations explained the violent nature of the Intifada during an interview).

**Response:**  The assertions in Paragraph 131 do not create a genuine issue of material fact because, as shown below, they: rely on inadmissible hearsay; and rely on material precluded from the *Shatsky I* discovery record.

Exhibit 2 purports to be a judgment issued by the Tel Aviv – Jaffa District Court in the matter of *Estate of Late Mentin Amit Amos et al. v. Bezeq Israel Telecommunications Ltd. et al.* dated February 26, 2013.  This decision is inadmissible hearsay.  *See, e.g.*, *Small v. United States*, 544 U.S. 385, 393-94 (2005) (holding that a foreign conviction could not serve as a predicate to liability); *United States v. $ 125,938.6, et al.*, 537 F.3d 1287, 1292 (11th Cir. 2008) (holding that

"none of the relevant facts found in the judgment of conviction were admissible").  Specifically, Paragraph 51 of Exhibit 2 is triple hearsay, as it is an expert's restatement of documents containing third-party statements of which he has no personal knowledge.

Plaintiffs' Exhibit 92 is an Arabic language video, which has not been authenticated, with English subtitles, which have not been certified for accuracy.  Furthermore, it is inadmissible hearsay to which no exception applies.  Exhibit 93 cited by Plaintiffs is a news magazine article, and is inadmissible hearsay.  *Jordonne v. Ole Bar & Grill, Inc.*, Case No. 13 Civ. 1573, 2016 U.S. Dist. LEXIS 56943, at *19-20 (S.D.N.Y. 2016) (finding newspaper articles are inadmissible hearsay).

Furthermore, Plaintiffs' Exhibits 2, 92, and 93 were precluded by the D.D.C. in *Shatsky I*, 312 F.R.D. 219, 230 (D.D.C. 2015), as they were disclosed months after the close of discovery and Defendants did not have a chance to test the documents in discovery.

The assertions in Paragraph 131 are non-material to the matters at issue in this case because they have nothing to do with the Karnei Shomron Bombing or the individuals allegedly involved in that bombing.

132.    Under Arafat's direct leadership as Chairman of the PLO and President of the PA, the period during which the Karnei Shomron Bombing occurred was characterized by significant terrorist activity. Lowell Decl., Ex. 21 at SHATSKY-009435.

**Response:**  The assertions in Paragraph 132 do not create a genuine issue of material fact because, as shown below, they: rely on inadmissible hearsay; and rely on materials precluded from the *Shatsky I* discovery record.

Exhibit 21 purports to be a report submitted to Congress pursuant the PLO Commitments Compliance Act of 1989.  The portions of Exhibit 21 quoted by Plaintiffs constitute inadmissible hearsay for which no sources are identified and no potential exception is provided.  *See, e.g.*, *In re*

*September 11 Litig.*, 621 F. Supp. 2d 131, 156 (S.D.N.Y. 2009) (holding that the "9/11 Report" is an inadmissible document and finding that large portions of the Report are "based on sources that are not completely trustworthy or acceptable in American courts.").

Additionally, Plaintiffs' Exhibit 21 was precluded by the D.D.C. in *Shatsky I*, 312 F.R.D. 219, 230 (D.D.C. 2015), as it was disclosed months after the close of discovery and Defendants did not have a chance to test the document in discovery.

The assertions in Paragraph 132 are non-material to the matters at issue in this case because they have nothing to do with the Karnei Shomron Bombing or the individuals allegedly involved in that bombing.

133.    "Terrorist groups including Hamas, Palestinian Islamic Jihad (PIJ), the Popular Front for the Liberation of Palestine (PFLP) and the Al Aqsa Martyrs Brigades (AAMB) continued to be very active" in the period from December 2001 to June 2002. *Id.*

**Response:**  The assertions in Paragraph 133 do not create a genuine issue of material fact because, as shown below, they: rely on inadmissible hearsay; and rely on materials precluded from the *Shatsky I* discovery record.  Defendants incorporate by reference Defendants' Response to Plaintiffs' Counterstatement Paragraph 132.

134.    These terrorist groups "utilized a variety of terrorist tactics, including suicide bombers, pipe bombs, mortar attacks, roadside bombings and ambushes, drive-by shootings, and shooting at Israeli homes and military and civilian vehicles." *Id.*; *see also* Lowell Decl., Ex. 90 at SHATSKY- 005036-39.

**Response:**  The assertions in Paragraph 134 do not create a genuine issue of material fact because, as shown below, they: rely on inadmissible hearsay; and rely on materials precluded from the *Shatsky I* discovery record.  Defendants incorporate by reference Defendants' Response to Plaintiffs' Counterstatement Paragraph 132.

Exhibit 90 purports to be a report submitted to Congress pursuant the PLO Commitments Compliance Act of 1989.  The portion of Exhibit 90 cited by Plaintiffs constitutes inadmissible

hearsay for which no sources are identified and no potential exception is provided.  *See, e.g.*, *In re September 11 Litig.*, 621 F. Supp. 2d 131, 156 (S.D.N.Y. 2009) (holding that the "9/11 Report" is an inadmissible document and finding that large portions of the Report are "based on sources that are not completely trustworthy or acceptable in American courts.").

Furthermore, Plaintiffs' Exhibit 90 was precluded by the D.D.C. in *Shatsky I*, 312 F.R.D. 219, 230 (D.D.C. 2015), as it was produced months after the close of discovery and Defendants did not have a chance to test the document in discovery.

The assertions in Paragraph 134 are non-material to the matters at issue in this case because they have nothing to do with the Karnei Shomron Bombing or the individuals allegedly involved in that bombing.

135.    Arafat himself was directly involved in terrorist activities. *See* Lowell Decl., Ex. 94 (July 2009 statement by Muhammad Dahlan, head of the Palestinian Preventive Security Services from 1999 until 2002 and Palestinian Minister of State Security from April until September 2003, that: "I lived with Chairman Yasser Arafat for years. Arafat would condemn [terror] operations by day while at night he would do honorable things.").

**Response:**  The assertions in Paragraph 135 do not create a genuine issue of material fact because, as shown below, they: rely on inadmissible hearsay; and rely on materials precluded from the *Shatsky I* discovery record.

Exhibit 94 is an Arabic language video, which has not been authenticated, with English subtitles, which have not been certified for accuracy.  Furthermore, it is inadmissible hearsay to which no exception applies, as it is an out-of-court statement by an individual not associated with Defendants at the time the statement was made.

Plaintiffs' Exhibit 94 was also precluded by the D.D.C. in *Shatsky I*, 312 F.R.D. 219, 230 (D.D.C. 2015), as it was produced months after the close of discovery and Defendants did not have a chance to test the document in discovery.

The assertions in Paragraph 135 are non-material to the matters at issue in this case because they have nothing to do with the Karnei Shomron Bombing or the individuals allegedly involved in that bombing.

136.     The U.S. Department of State confirmed that the period between December 16, 2001 and June 15, 2002, which includes the date of the Karnei Shomron Bombing, saw numerous incidents of terrorism in the region. Lowell Decl., Ex. 81 at SHATSKY-007968.

**Response:**  The assertions in Paragraph 136 do not create a genuine issue of material fact because, as shown below, they: rely on inadmissible hearsay; and rely on materials precluded from the *Shatsky I* discovery record.

Exhibit 81 cited by Plaintiffs is not a U.S. Department of State report or statement as claimed by Plaintiffs.  Regardless, all of the Department of State reports cited by Plaintiffs throughout their Counterstatement and attached to the Declaration of Abbe Lowell are inadmissible hearsay.  *See, e.g.*, *In re September 11 Litig.*, 621 F. Supp. 2d 131, 156 (S.D.N.Y. 2009) (holding that the "9/11 Report" is an inadmissible document and finding that large portions of the Report are "based on sources that are not completely trustworthy or acceptable in American courts.").

Furthermore, all of the Department of State reports were precluded by the D.D.C. in *Shatsky I*, 312 F.R.D. 219, 230 (D.D.C. 2015), as they were produced months after the close of discovery and Defendants did not have a chance to test the documents in discovery.

The assertions in Paragraph 136 are non-material to the matters at issue in this case because they have nothing to do with the Karnei Shomron Bombing or the individuals allegedly involved in that bombing.

137.     During the Second Intifada, the Israel Defense Forces ("IDF") conducted a large-scale military operation in the West Bank known as Operation Defensive Shield. The IDF recovered numerous documents and obtained information by questioning captured terrorists.

Lowell Decl., Ex. 22 at SHATSKY-005540.  The captured documents show among other things that:

    a.     Arafat was personally involved in the planning and execution of terror attacks. *Id.* at SHATSKY-005538.

    b.     Arafat personally authorized funding for terrorists and terrorist activities. *Id.* at SHATSKY-005538, SHATSKY-005547-52; *see also* Lowell Decl., Ex. 2 at SHATSKY-006781 (¶ 51) (where an Israeli court concluded Arafat "approv[ed] . . . money for the attackers and their families, and specif[ied] the sums to be given to them."); Ex. 21 at SHATSKY-009438 (where the U.S. Department of State stated that the payments "were likely made with the knowledge that the intended recipients had been involved in violence and terrorism.").

    c.     Head of the PA's General Intelligence Service Tawfik Tirawi and PA financial officer Fouad Shubaki, two of Arafat's closest aides, operated the ongoing logistics of ensuring financial aid and support of terrorism. Lowell Decl., Ex. 22 at SHATSKY- 005538.

    d.     Arafat and his men used the funds donated to them by other countries, including the European Union, to finance terrorist activity. *Id.* at SHATSKY-005539; *see also* Lowell Decl., Ex. 23 (providing evidence that international financial aid to the PA was redirected to terrorist elements).

**Response:** The assertions in Paragraph 137 do not create a genuine issue of material fact because, as shown below, they: rely on inadmissible hearsay; and rely on materials precluded from the *Shatsky I* discovery record.

First, Exhibits 22 and 23 purport to be internet printouts from the website of the Israel Ministry of Foreign Affairs, and are thus inadmissible hearsay.  *See Loussier v. Universal Music Group, Inc.*, Case No. 02 Civ. 2447, 2005 U.S. Dist. LEXIS 37545, at *11 (S.D.N.Y. July 14, 2005) ("The printouts from the eBay website are inadmissible hearsay").  *See also Gilmore v. Palestinian Interim Self-Gov't Auth.*, 53 F. Supp. 3d 191, 203 (D.D.C. 2014) (excluding IMFA printouts as inadmissible hearsay), *aff'd*,  843 F.3d 958, 969-70 (D.C. Cir. 2016).

Second, Exhibit 2 purports to be a judgment issued by the Tel Aviv – Jaffa District Court in the matter of *Estate of Late Mentin Amit Amos et al. v. Bezeq Israel Telecommunications Ltd. et al.* dated February 26, 2013.  This decision is inadmissible hearsay.  *See, e.g., Small v. United*

*States*, 544 U.S. 385, 393-94 (2005) (holding that a foreign conviction could not serve as a predicate to liability); *United States v. $ 125,938.6, et al.*, 537 F.3d 1287, 1292 (11th Cir. 2008) (holding that "none of the relevant facts found in the judgment of conviction were admissible"). Specifically, Paragraph 51 of Exhibit 2 is triple hearsay, as it is an expert's restatement of documents containing third-party statements of which he has no personal knowledge.

Third, the evidence cited by Plaintiffs as Exhibit 21 is a report submitted to Congress pursuant to the PLO Commitments Compliance Act of 1989. The portions of Exhibit 21 quoted by Plaintiffs constitute inadmissible hearsay; no sources are identified and no potential hearsay exception is provided. *See, e.g., In re September 11 Litig.,* 621 F. Supp. 2d 131, 156 (S.D.N.Y. 2009) (holding that the "9/11 Report" is an inadmissible document and finding that large portions of the Report are "based on sources that are not completely trustworthy or acceptable in American courts").

Additionally, Exhibits 2, 21, 22, and 23 were all precluded by the D.D.C. in *Shatsky I*, 312 F.R.D. 219, 230 (D.D.C. 2015), as they were produced months after the close of discovery and Defendants did not have a chance to test the documents in discovery.

The assertions in Paragraph 137 are non-material to the matters at issue in this case because they have nothing to do with the Karnei Shomron Bombing or the individuals allegedly involved in that bombing and therefore prove nothing against Defendants.

138.    Additional evidence linking Arafat to terrorism was discovered in January 2002, when "Israeli forces boarded the vessel *Karine-A* in the Red Sea and uncovered nearly 50 tons of Iranian arms, including Katyusha missiles, apparently bound for militants in the West Bank and Gaza Strip." Lowell Decl., Ex. 37 at SHATSKY-008264.

**Response:**  The assertions in Paragraph 138 do not create a genuine issue of material fact because, as shown below, they: rely on inadmissible hearsay; and rely on materials precluded from the *Shatsky I* discovery record.

Exhibit 37 purports to be a report published by the U.S. Department of State, and the portions cited by Plaintiffs constitute inadmissible hearsay for which no sources are identified and no exception is provided. *See, e.g., In re September 11 Litig.,* 621 F. Supp. 2d 131, 156 (S.D.N.Y. 2009) (holding that the "9/11 Report" is an inadmissible document and finding that large portions of the Report are "based on sources that are not completely trustworthy or acceptable in American courts").

Exhibit 37 was also precluded by the D.D.C. in *Shatsky I*, 312 F.R.D. 219, 230 (D.D.C. 2015), as it was disclosed months after the close of discovery and Defendants did not have a chance to test the document in discovery.

The assertions in Paragraph 138 are non-material to the matters at issue in this case because they have nothing to do with the Karnei Shomron Bombing or the individuals allegedly involved in that bombing and therefore prove nothing against Defendants.

139.    Fouad Shubaki, a PA financial official and one of Arafat's close aides, was involved in the smuggling operation. According to the U.S. Department of State, "Shubaki and other PA officials involved [in the smuggling incident] work very closely with PA Chairman Arafat, raising serious questions of his involvement and foreknowledge." Lowell Decl., Ex. 21 at SHATSKY-009437; *see also* Lowell Decl., Ex. 95 at SHATSKY-008149 (statement of Hon. Benjamin A. Gilman, Chairman, House International Relations Subcommittee on the Middle East and South Asia, that credible evidence uncovered by the Israelis "links Arafat and many of his associates directly to the planning and financing of specific terrorist acts as well as the illegal importation of 50 tons of heavy weaponry into the Palestinian-controlled territories.").

**Response:**  The assertions in Paragraph 139 do not create a genuine issue of material fact because, as shown below, they: rely on inadmissible hearsay; and rely on materials precluded from the *Shatsky I* discovery record.

First, the evidence cited by Plaintiffs as Exhibit 21 is a report submitted to Congress pursuant to the PLO Commitments Compliance Act of 1989.  The portions of Exhibit 21 quoted by Plaintiffs constitute inadmissible hearsay; no sources are identified and no potential hearsay

exception is provided.  *See, e.g., In re September 11 Litig.,* 621 F. Supp. 2d 131, 156 (S.D.N.Y. 2009) (holding that the "9/11 Report" is an inadmissible document and finding that large portions of the Report are "based on sources that are not completely trustworthy or acceptable in American courts").Exhibit 95 is additionally hearsay-within-hearsay as the declarant cites "credible evidence" without actually providing the sources of said evidence.  This is classic hearsay and there is no applicable exception available.

Furthermore, both Exhibits 21 and 95 were precluded by the D.D.C. in *Shatsky I*, 312 F.R.D. 219, 230 (D.D.C. 2015), as they were produced months after the close of discovery and Defendants did not have a chance to test the documents in discovery.

The assertions in Paragraph 139 are non-material to the matters at issue in this case because they have nothing to do with the Karnei Shomron Bombing or the individuals allegedly involved in that bombing and therefore prove nothing against Defendants

140.    The U.S. Department of State has stated that "[i]t was clear that some members of the PA security forces and Chairman Arafat's Fatah faction within the PLO were deeply involved in the violence." Lowell Decl., Ex. 90 at SHATSKY-005039; Ex. 91 at SHATSKY-009454; Ex. 21 at SHATSKY-009440.

**Response:**  The assertions in Paragraph 140 do not create a genuine issue of material fact because, as shown below, they: rely on inadmissible hearsay; and rely on materials precluded from the *Shatsky I* discovery record.

Exhibits 90, 91, and 21 purport to be reports submitted to Congress pursuant to the PLO Commitments Compliance Act of 1989.  The portions of Exhibit 21 quoted by Plaintiffs constitute inadmissible hearsay; no sources are identified and no potential hearsay exceptions are provided. *See, e.g., In re September 11 Litig.,* 621 F. Supp. 2d 131, 156 (S.D.N.Y. 2009) (holding that the "9/11 Report" is an inadmissible document and finding that large portions of the Report are "based on sources that are not completely trustworthy or acceptable in American courts").

Furthermore, all three exhibits were precluded by the D.D.C. in *Shatsky I*, 312 F.R.D. 219, 230 (D.D.C. 2015), as they were produced months after the close of discovery and Defendants did not have a chance to test the documents in discovery.

The assertions in Paragraph 140 are non-material to the matters at issue in this case because they have nothing to do with the Karnei Shomron Bombing or the individuals allegedly involved in that bombing and therefore prove nothing against Defendants.

141.    "[E]lements within the PLO, specifically Tanzim, Force 17 and members of other security forces, were involved in acts of violence against Israelis" during the Second Intifada. Lowell Decl., Ex. 91 at SHATSKY-009452; *see also* Lowell Decl., Ex. 21 at SHATSKY-009436. "Some personnel in the [PA] security services, including several senior officers, . . . assist[ed] terrorist operations." Lowell Decl., Ex. 33 at SHATSKY-006116; *see also* Lowell Decl., Ex. 21 at SHATSKY-008441 ("Many members of Palestinian security services and the Fatah faction of the PLO participated with civilians and terrorist groups in violent attacks against Israeli settlers, other civilians, and soldiers.").

**Response:**  The assertions in Paragraph 141 do not create a genuine issue of material fact because, as shown below, they: rely on inadmissible hearsay; and rely on materials precluded from the *Shatsky I* discovery record.

Exhibits 91 and 21 purport to be reports submitted to Congress pursuant to the PLO Commitments Compliance Act of 1989; Exhibit 33 purports to be a report published by the U.S. Department of State.  All three exhibits are inadmissible hearsay for which no sources are identified and no potential hearsay exceptions are applicable.

Furthermore, all three exhibits were precluded by the D.D.C. in *Shatsky I*, 312 F.R.D. 219, 230 (D.D.C. 2015), as they were produced months after the close of discovery and Defendants did not have a chance to test the documents in discovery.

The assertions in Paragraph 141 are non-material to the matters at issue in this case because they have nothing to do with the Karnei Shomron Bombing or the individuals allegedly involved in that bombing and therefore prove nothing against Defendants.

142.    Members of Presidential Security/Force 17, a unit of the PA's national security apparatus, also executed terrorist attacks alongside other PA and Fatah officers. *See* Lowell Decl., Ex. 96 at ¶¶ 2, 42–45 (detailing Presidential Security/Force 17 employee Mohannad Sa'id Munib Abu Halawah's terrorist activities with Marwan Barghouti between 2000-2002); Ex. 97 at SHATSKY-009126 (showing that Halawah was a Presidential Security/Force 17 employee in the period from September 2000 to March 2002).

**Response:**  The assertions in Paragraph 142 do not create a genuine issue of material fact because, as shown below, they: rely on inadmissible hearsay; and rely on materials precluded from the *Shatsky I* discovery record.

Exhibit 96 purports to be the verdict of Marwan Barghouti from the Tel Aviv District Court dated May 20, 2004.  *See, e.g.*, *Small v. United States*, 544 U.S. 385, 393-94 (2005) (holding that a foreign conviction could not serve as a predicate to liability); *United States v. $ 125,938.6, et al.*, 537 F.3d 1287, 1292 (11th Cir. 2008) (holding that "none of the relevant facts found in the judgment of conviction were admissible").  A history of improper tactics applied by Israeli security forces against Palestinian detainees makes military court documents like Exhibit 96 generally unreliable.  *See, e.g.*, *Israel and Occupied Palestinian Territories 2020*, Amnesty International, https://www.amnesty.org/en/location/middle-east-and-north-africa/israel-and-occupied-palestinian-territories/report-israel-and-occupied-palestinian-territories/ (last visited October 26, 2021) ("Palestinian civilians, including children . . . were prosecuted in military courts that did not meet international fair trial standards. . . .  Israeli soldiers, police and ISA officers continued to torture and otherwise ill-treat Palestinian detainees, including children, with impunity.  Reported methods included beating, slapping, painful shackling, sleep deprivation, use of stress positions and threats of violence against family members.").

Exhibit 97 is an "evaluation report" that does not establish that the author had first-hand knowledge of the events being reported; therefore, the report is inadmissible hearsay.  *See, e.g.,* *Wado v. Xerox Corp.*, 991 F. Supp. 174, 191 (W.D.N.Y. 1998) (finding that because deponent

"had no firsthand knowledge of whether" factual allegation against defendant was true, her

testimony was "pure hearsay and [could] not be considered on" summary judgment).

Furthermore, both exhibits were precluded by the D.D.C. in *Shatsky I*, 312 F.R.D. 219, 230

(D.D.C. 2015), as they were produced months after the close of discovery and Defendants did not

have a chance to test the documents in discovery.

The assertions in Paragraph 142 are non-material to the matters at issue in this case because

they have nothing to do with the Karnei Shomron Bombing or the individuals allegedly involved

in that bombing.

143.    Muhammad Dahlan, head of the Palestinian Preventive Security Services from
1999 until 2002 and Palestinian Minister of State Security from April until September 2003, has
repeatedly stated that the PSS protected terrorists before and during the Second Intifada. *See*
Lowell Decl., Ex. 98 (stating during a June 16, 2007 broadcast on Al-Arabiya TV, that: "Forty
percent of the Martyrs in this Intifada belonged to the Palestinian security forces. The Palestinian
security forces were those who protected and hid half of the Hamas [military] leadership and of
the Hamas military force during the Intifada."); *id.* at SHATSKY-009448 ("We, in the Gaza Strip,
a whole year before the Intifada, all the staff of the Hamas Movement and the Islamic Jihad were
under the protection of the Preventive Security Force and the Palestinian security apparatus . . .
when this Intifada began we did not constitute a barrier in face of any Palestinian faction that
wished to express its warrior position and protect the Palestinian people and the interests of the
Palestinian Authority."); *id.* at SHATSKY-009447 ("All the important leaders of Hamas were
protected by us. We did not make them a favor, this was a national duty and a Palestinian political
decision. After that they proved to be ungrateful and the first thing that they did was to kill the
security officers who provided protection for the wanted Hamas staff. This caused me a greater
pain that [sic] all other disputes.").

**Response:**  The assertions in Paragraph 143 do not create a genuine issue of material fact

because, as shown below, they: rely on inadmissible hearsay; rely on materials precluded from the

*Shatsky I* discovery record; and mischaracterize the cited materials.

Exhibit 98 purports to be an Arabic language video, which has not been authenticated, with

English subtitles which have not been certified for accuracy, that appears to have been broadcast

on "Al-Arabiya Television."  Exhibit 98 is classic hearsay as it is an out-of-court statement by an

individual not associated with Defendants at the time the statement was made.  Additionally**,** such

news media items are inadmissible hearsay.  *See Jordonne v. Ole Bar & Grill, Inc.*, Case No. 13 Civ. 1573, 2016 U.S. Dist. LEXIS 56943, at *19-20 (S.D.N.Y. 2016) (finding newspaper articles are inadmissible hearsay).

Furthermore, Exhibit 98 was precluded by the D.D.C. in *Shatsky I*, 312 F.R.D. 219, 230 (D.D.C. 2015), as it was produced months after the close of discovery and Defendants did not have a chance to test the document in discovery.  Interestingly, Plaintiffs' Exhibit 98 does not contain any of the statements Plaintiffs quote under "SHATSKY-009448" and "SHATSKY-009447."

The assertions in Paragraph 143 are non-material to the matters at issue in this case because they have nothing to do with the Karnei Shomron Bombing or the individuals allegedly involved in that bombing and therefore prove nothing against Defendants.

144.    On June 29, 2009, Ashraf Al-Ajrami, former PA Minister of Prisoners, stated on PA TV (Fatah)

> The master of resistance is, without doubt and without question, the Shahid (Martyr) Yasser Arafat. Even this Intifada, whose flag Hamas has tried to wave unjustly, forcibly, falsely and fraudulently – that [Intifada] flag belongs to Yasser Arafat alone . . . These [Palestinian Authority security] forces paid the heavy price in the second Intifada, both as (martyrs) Shahids and as prisoners. The largest number of prisoners are from the security forces. They are the ones who bore arms and carried out the greatest and most important operations (i.e., terror attacks) against the Israeli occupation – and especially against soldiers, and some of the most famous operations (i.e., terror attacks) in the West Bank – Ein- Arik, Wadi Al-Haramiyeh, Sorda, and others. These were carried out by the heroes of the Palestinian security forces, who protected the homeland and the national interest, while Hamas merely looked on for many months before starting [on operations].

Lowell Decl., Ex. 99.

**Response:**  The assertions in Paragraph 144 do not create a genuine issue of material fact because, as shown below, they: rely on inadmissible hearsay; and rely on materials precluded from the *Shatsky I* discovery record.

Exhibit 99 purports to be an Arabic language video, which has not been authenticated, with English subtitles, which have not been certified for accuracy.  The video and statements therein are inadmissible hearsay for which no exception applies.

Furthermore, Exhibit 99 was precluded by the D.D.C. in *Shatsky I*, 312 F.R.D. 219, 230 (D.D.C. 2015), as it was produced months after the close of discovery and Defendants did not have a chance to test the document in discovery.

The assertions in Paragraph 144 are non-material to the matters at issue in this case because they have nothing to do with the Karnei Shomron Bombing or the individuals allegedly involved in that bombing and therefore prove nothing against Defendants.

145.  On May 11, 2011, Adli Sadeq, PLO Ambassador to India, wrote in Al-Hayat Al-Jadida

> Palestinian experience has taught us that when the moment of resistance arrives, whether the calculations are mistaken or accurate, it is the legitimate leadership that will be on the frontlines, and constitute who will push society into the confrontation. This is what happened in the lengthy second Intifada, when the [PA] security services and Hamas fought together.

Lowell Decl., Ex. 16.

**Response:**  The assertions in Paragraph 145 do not create a genuine issue of material fact because, as shown below, they:  rely on inadmissible hearsay.

Exhibit 16 is inadmissible hearsay purportedly contained in a news magazine.  *Jordonne v. Ole Bar & Grill, Inc.*, Case No. 13 Civ. 1573, 2016 U.S. Dist. LEXIS 56943, at *19-20 (S.D.N.Y. 2016) (finding newspaper articles are inadmissible hearsay).  Additionally, Plaintiffs

have failed to authenticate the document, and it is unclear whether it originates from an internet source or a hard copy source.

The assertions in Paragraph 145 are non-material to the matters at issue in this case because they have nothing to do with the Karnei Shomron Bombing or the individuals allegedly involved in that bombing and therefore prove nothing against Defendants.

146.   "Some PA officials made public statements justifying Palestinian attacks on Israelis, stating that such attacks were in response to the occupation. Additionally, Fatah leaders made public statements urging Palestinians to continue all aspects of the Intifada, including violent attacks." Lowell Decl., Ex. 89 at SHATSKY-008445. For example:

   a. Lowell Decl., Ex. 100 (October 2000 broadcast on Palestinian Authority Television (PA TV), during which Dr. Ahmed Yousuf Abu Halabiah, a member of the Palestinian Shari'ah (Islamic religious law) Rulings Council, and Rector of Advanced Studies at the Islamic University stated, *inter alia*: "The Jews...do not have any moderates or any advocates of peace. They are all liars. They must be butchered and must be killed, as Allah the Almighty said [in the Quran]: 'Fight them, Allah will punish them by your hands. He will humiliate them, and grant you victory over them.'... Have no mercy on the Jews anywhere in any country...Wherever you are - kill those Jews and those Americans who are like them and those who stand with them. They are all together in one trench against the Arabs and the Muslims."); Ex. 101 (September 27, 2013, speech by PLO representative and PA ambassador to Libya praising terrorists and celebrating the Second Intifada).

   b. On August 3, 2001, during the official Friday sermon broadcast on official PA TV, PA cleric Dr. Muhammad Ibrahim Madi stated:

> I was delighted when a youth said to me: "Oh, Sheikh, I am 14 years old, I have 4 more years, and then I will blow myself up among Allah's enemies. I will blow myself up among the Jews." I said: "My little son, I'll ask Allah [to grant] you Martyrdom." We are blowing them up in Hadera, we are blowing them up in Tel-Aviv and in Netanya in fulfillment of the mastery that Allah gave us over this riff-raff. If there is no way out of death, it is shameful for us to die as cowards…Blessings upon anyone who has charged at a soldier for the sake of Allah. Blessings upon anyone who has

acted for the sake of Allah and has gone on raids for His sake. Blessings upon anyone who has brought up his sons with the education of Jihad and Martyrdom-seeking. Blessings upon anyone who has saved a single bullet in order to put it through a Jew's head. We shall enter Jerusalem as conquerors and Jaffa as conquerors, and Haifa as conquerors and Ashkelon as conquerors. Lowell Decl., Ex. 102 .

  c.  On May 18, 2001, Sheikh Muhammad Abd Al Hadi La'afi, the senior PA religious official, made statements in Al-Hayat Al-Jadida, the PA's official daily publication inciting anti-Jewish sentiment. Lowell Decl., Ex. 103.

  d.  Marwan Barghouti – former Palestinian Authority MP and Secretary General of Fatah in the West Bank stated during an interview: "I think that the occupation army and all its elements and components, including the settlers and the settlements, are targets for the attacks of the Intifada and the resistance, including the Al- Aqsa Martyrs Brigades." Lowell Decl., Ex. 104.

  e.  The PA's official newspaper, Al-Hayat Al-Jadida, also published articles glorifying terrorists and terrorist activities. *See* Lowell Decl., Ex. 105 (May 19, 2001, Al-Hayat Al-Jadida publication glorifying the acts of a suicide bomber); Ex. 106 (March 11, 2002, Al- Hayat Al-Jadida report glorifying female bombers); Ex. 107 (June 23, 2002, article published in Al-Hayat Al-Jadida glorifying and stating effectiveness of martyrdom); Ex. 108 (Al-Hayat Al-Jadida reporting on PFLP's rally to celebrate the second anniversary of Nazal's martyrdom); Ex. 109 (Al-Hayat Al-Jadida reporting on a sporting tournament named after Nazal).

  **Response:** The assertions in Paragraph 146 do not create a genuine issue of material fact because, as shown below, they: rely on inadmissible hearsay; and rely on materials precluded from the *Shatsky I* discovery record.

  Exhibit 89 purports to be reports made to the United States Congress.  It is inadmissible hearsay for which no sources are identified and no potential exception is provided.  *See, e.g., In re September 11 Litig.*, 621 F. Supp. 2d 131, 156 (S.D.N.Y. 2009) (holding that the "9/11 Report" is

an inadmissible document and finding that large portions of the Report are "based on sources that are not completely trustworthy or acceptable in American courts").

Exhibits 100 and 102 purport to be Arabic language videos, which have not been authenticated, with English subtitles, which have not been certified for accuracy. They are also inadmissible hearsay for which no exception applies. Exhibits 101 and 104 purport to be translated transcripts of a speech and an interview, but Plaintiffs have not produced a video or recording of the original speech and interview, which were likely in Arabic—not in English. The transcripts are inauthentic, unreliable, and inadmissible hearsay for which no exception exists. Exhibits 103, 105, 106, 107, 108, and 109 are news magazine articles; therefore, they are inadmissible hearsay. *Jordonne v. Ole Bar & Grill, Inc.*, Case No. 13 Civ. 1573, 2016 U.S. Dist. LEXIS 56943, at *19-20 (S.D.N.Y. 2016) (finding newspaper articles are inadmissible hearsay).

Exhibits 89 and 100 through 109 were all precluded by the D.D.C. in *Shatsky I*, 312 F.R.D. 219, 230 (D.D.C. 2015), as they were all produced months after the close of discovery and Defendants did not have a chance to test the documents in discovery.

The assertions in Paragraph 146 are non-material to the matters at issue in this case because they have nothing to do with the Karnei Shomron Bombing or the individuals allegedly involved in that bombing and therefore prove nothing against Defendants.

147. During the Second Intifada, official PA publications, such as Al-Shurta Magazine, a monthly publication of the Palestinian Police; Al-Shuhada, a monthly bulletin published by the Political Guidance for the Border-Region Forces; Watani, a General Security Forces magazine; Humat-Al-Areen, whose Editor in Chief is Director General of Political Guidance and General Inspection for Presidential Security Force 17, issued propaganda to incite hatred of Jews and encouraged Palestinians to carry out terrorist attacks. *See, e.g.*, Lowell Decl., Ex. 110 at SHATSKY-006844 (suggesting Palestinians should devise ways to kill more Israelis and fewer Palestinians); *id.* at SHATSKY-006845 (saluting "devoted martyrs"); Ex. 111 at SHATSKY-006881 (Palestinians engaging in the Intifada are not terrorists, but the "dirty [international] alliance" purporting to combat terrorism are hypocrites); Ex. 112 at SHATSKY-007702-03 ("[Our leadership's position must also be] that all efforts by Palestinian forces should be turned towards inflaming the popular Intifada until the image of the infamous child who challenges Israeli tanks

with stones appears..."); Ex. 113 at SHATSKY-006978 ("From the Land of Palestine, we say to our mothers: 'The mother that ululates in her sons' martyrdom procession will ululate at the eternal gates of Heaven.'").

**Response:**  The assertions in Paragraph 147 do not create a genuine issue of material fact because, as shown below, they: rely on inadmissible hearsay; and rely on materials precluded from the *Shatsky I* discovery record.

Exhibits 110 (Al-Shurta), 111 (Al-Shuhada), 112 (Al-Shuhada), and 113 (Humat Al-Areen) purport to be articles from the identified publications.  Plaintiffs have not established these publications are "official PA publications" associated with Defendants.  These publications are inadmissible hearsay for which no exception applies and which should not be considered on summary judgment.

Furthermore, all four exhibits were precluded by the D.D.C. in *Shatsky I*, 312 F.R.D. 219, 230 (D.D.C. 2015), as they were all produced months after the close of discovery and Defendants did not have a chance to test the documents in discovery.

The assertions in Paragraph 147 are non-material to the matters at issue in this case because they have nothing to do with the Karnei Shomron Bombing or the individuals allegedly involved in that bombing and therefore prove nothing against Defendants.

148.    The U.S. Department of State has reported that "senior PLO and PA leaders did little to prevent – and may even have encouraged – an atmosphere of incitement to violence in the Palestinian media and through the public statements of Palestinian officials." Lowell Decl., Ex. 90 at SHATSKY-005038; *see also* Ex. 90 at SHATSKY-005039 (The PA "tolerated an atmosphere that promoted or supported the use of violence."); Ex. 91 at SHATSKY-009452 (Senior PLO and PA leaders "did little to prevent – and may even have encouraged – an atmosphere of incitement to violence in the Palestinian media and through public statements of Palestinian officials.").

**Response:** The assertions in Paragraph 148 do not create a genuine issue of material fact because, as shown below, they: rely on inadmissible hearsay; and rely on materials precluded from the *Shatsky I* discovery record.

Exhibits 90 and 91 purport to be reports submitted to Congress pursuant the PLO Commitments Compliance Act of 1989. The portions of Exhibits 90 and 91 cited by Plaintiffs constitute inadmissible hearsay for which no sources are identified and no potential exception is provided. *See, e.g.*, *In re September 11 Litig.*, 621 F. Supp. 2d 131, 156 (S.D.N.Y. 2009) (holding that the "9/11 Report" is an inadmissible document and finding that large portions of the Report are "based on sources that are not completely trustworthy or acceptable in American courts.").

Furthermore, both exhibits were precluded by the D.D.C. in *Shatsky I*, 312 F.R.D. 219, 230 (D.D.C. 2015), as they were all produced months after the close of discovery and Defendants did not have a chance to test the documents in discovery.

The assertions in Paragraph 148 are non-material to the matters at issue in this case because they have nothing to do with the Karnei Shomron Bombing or the individuals allegedly involved in that bombing and therefore prove nothing against Defendants.

149.    The U.S. Department of State has observed: "Some programs broadcast on the PA and PLO controlled or influenced mass media had the effect of inciting Palestinians to violence" by "glorifying martyrdom and legitimizing the use of violence." Lowell Decl., Ex. 90 at SHATSKY- 005039; *see also* Lowell Decl., Ex. 114 (poem published on February 27, 2003, in Al-Hayat Al-Jadida, the PA's official daily publication, written from the point of view of martyr son to his mother glorifying martyrdom).

**Response:**  The assertions in Paragraph 149 do not create a genuine issue of material fact because, as shown below, they: rely on inadmissible hearsay; and rely on materials precluded from the *Shatsky I* discovery record.

Exhibit 90 purports to be a report submitted to Congress pursuant the PLO Commitments Compliance Act of 1989. The portion of Exhibits 90 cited by Plaintiffs constitutes inadmissible hearsay for which no sources are identified and no potential exception is provided. *See, e.g.*, *In re September 11 Litig.*, 621 F. Supp. 2d 131, 156 (S.D.N.Y. 2009) (holding that the "9/11 Report" is

an inadmissible document and finding that large portions of the Report are "based on sources that are not completely trustworthy or acceptable in American courts.").  Exhibit 114 is from a news magazine article, and is inadmissible hearsay.  *Jordonne v. Ole Bar & Grill, Inc.*, Case No. 13 Civ. 1573, 2016 U.S. Dist. LEXIS 56943, at *19-20 (S.D.N.Y. 2016) (finding newspaper articles are inadmissible hearsay).  Plaintiffs offer no evidence for the claim that the magazine was an "official daily publication" of the Defendant PA.

Furthermore, both exhibits were precluded by the D.D.C. in *Shatsky I*, 312 F.R.D. 219, 230 (D.D.C. 2015), as they were all produced months after the close of discovery and Defendants did not have a chance to test the documents in discovery.

The assertions in Paragraph 149 are non-material to the matters at issue in this case because they have nothing to do with the Karnei Shomron Bombing or the individuals allegedly involved in that bombing and therefore prove nothing against Defendants.

150.    The PLO and the PA recklessly disregarded the likelihood that the support it provided to the PFLP would be used to further terrorist activity. *See* ECF 120-3, Ex. C ("Amayra Dep.") at 42:1-13 (testimony of Raed Taha Mahmud Amayra acknowledging that members of the PA National Security apparatus were known to carry out terrorist operations while employed by the PA).

**Response:**  The assertions in Paragraph 150 do not create a genuine issue of material fact because, as shown below, they are legally immaterial.  The assertions do not demonstrate the proximate causation required for a primary liability ATA claim, nor the general awareness or substantial assistance required for a secondary liability ATA claim.

Plaintiffs fail to connect support to the political faction of the PFLP to terrorist attacks conducted by Palestinian persons who had jobs in the "PA National Security apparatus."  As Mr. Amayra's testimony shows, the PA arrested, interrogated, and prosecuted such persons.  ECF 120-3, Ex. C ("Amayra Dep.") at 42:16-21.  Moreover, there is no evidence that any of the minimal

support provided to the PFLP, as a member-faction of the PLO, proximately caused Plaintiffs' injuries or that such minimal support substantially assisted the Karnei Shomron Bombing. *Shatsky v. PLO,* 2017 U.S. Dist. LEXIS 94946, at *30 (D.D.C. June 20, 2017) ("[N]o reasonable jury could find that the PLO's payment of rent for the Qalqilya office 'caused' the bombing simply because that office is located in a place physically 'proximate' to the attack."); *id.* at *31 ("[T]he proffered evidence of support to the Qalqilya office is insufficient to establish the existence of the proximate cause element of plaintiffs' case.").

As such, the assertions in this purported statement of fact do not raise a genuine issue of material fact.

151.    A 2007 televised broadcast by a key PA security official, Mohammed Dahlan, admitted that the PA explicitly understood that the men hired into its own security forces were conducting a significant number of terrorist operations. Lowell Decl., Ex. 98.

**Response:**  The assertions in Paragraph 151 do not create a genuine issue of material fact because, as shown below, they: rely on inadmissible hearsay; and rely on materials precluded from the *Shatsky I* discovery record.

Exhibit 98 purports to be an Arabic language video, which has not been authenticated, with English subtitles, which have not been certified for accuracy, that appears to have been broadcast on "Al-Arabiya Television."  Such news articles are inadmissible hearsay.  *See Jordonne v. Ole Bar & Grill, Inc.*, Case No. 13 Civ. 1573, 2016 U.S. Dist. LEXIS 56943, at *19-20 (S.D.N.Y. 2016) (finding newspaper articles are inadmissible hearsay).

Furthermore, Exhibit 98 was precluded by the D.D.C. in *Shatsky I*, 312 F.R.D. 219, 230 (D.D.C. 2015), as it was produced months after the close of discovery and Defendants did not have a chance to test the document in discovery.  Plaintiffs' Exhibit 98 does not contain any of the statements Plaintiffs quote under "SHATSKY-009448" and "SHATSKY-009447."

The assertions in Paragraph 151 are non-material to the matters at issue in this case because they have nothing to do with the Karnei Shomron Bombing or the individuals allegedly involved in that bombing.

October 27, 2021

Respectfully Submitted,

**SQUIRE PATTON BOGGS (US) LLP**

*/s/ Gassan A. Baloul*

Mitchell R. Berger (MB-4112)
mitchell.berger@squirepb.com
2550 M Street, N.W.
Washington, D.C. 20037
Telephone: (202) 457-6000
Facsimile:  (202) 457-6315

Gassan A. Baloul (GB-4473)
gassan.baloul@squirepb.com
Joseph S. Alonzo (JA-1378)
joseph.alonzo@squirepb.com
1211 Avenue of the Americas
26th Floor
New York, NY 10036
Telephone: (212) 872-9800
Facsimile:  (212) 872-9815

*Attorneys for Defendants*