Squire Patton Boggs (US) LLP
2550 M Street, NW
Washington, D.C.  20037

O    +1 202 457 6000
F    +1 202 457 6315
squirepattonboggs.com


Gassan A. Baloul
T    +1 202 457 6155
gassan.baloul@squirepb.com

October 27, 2021

**VIA ECF**

The Honorable Mary Kay Vyskocil
United States District Judge
United States District Court, Southern District of New York
500 Pearl Street, Room 2230
New York, NY 10007

**Re:** *Shatsky v. PLO*, **No. 1:18-cv-12355-MKV-DCF**

Dear Judge Vyskocil:

      On behalf of Defendants Palestinian Authority and Palestine Liberation Organization, and pursuant to Rule 9(B) of Your Honor's Individual Rules of Practice in Civil Cases and Paragraph 17 of Your Honor's Superseding Protective Order entered in this case (ECF 64, "Protective Order"), Defendants respectfully submit this letter-motion to seal certain portions of (1) Defendants' Response to Plaintiffs' Statement of Purported Material Facts ("56.1 Response") [ECF 146] and (2) the Declaration of Joseph S. Alonzo Filed in Further Support of Defendants' Motion to Dismiss ("Second Alonzo Declaration") [ECF 144] and Exhibits 21, 22, and 23 thereto. These documents address, discuss, and/or quote from certain exhibits to the Declaration of Abbe David Lowell [ECF 136] ("Lowell Declaration") and an exhibit to the Declaration of Oliver Haker [ECF 130] ("Haker Declaration") that are the subject of a letter-motion to seal filed by Defendants on October 11, 2021.  *See* Defs.' Letter, ECF 138.  For the same reasons that the exhibits themselves should be maintained under seal, the portions of the above-referenced documents addressing, discussing, and/or quoting from the exhibits should also be kept under seal.  As to the exhibits to the Lowell Declaration, Plaintiffs "take no position as to the confidentiality" of this information.  ECF 137 at 1.

<u>The Materials Sealed with the Haker and Spitzen Declarations:</u>

      In addition to addressing certain exhibits to the Lowell Declaration, Defendants' October 11, 2021 letter also moved to keep under seal other confidential documents filed by Plaintiffs on

45 Offices in 20 Countries

Squire Patton Boggs (US) LLP is part of the international legal practice Squire Patton Boggs, which operates worldwide through a number of separate legal entities.

Please visit squirepattonboggs.com for more information.

Squire Patton Boggs (US) LLP                                           The Honorable Mary Kay Vyskocil
                                                                        October 27, 2021
**VIA ECF**

October 4, 2021.  ECF 138 at 3 n.1.  Here, Defendants explain why those documents,[1] exhibits to the Haker Declaration [ECF 130] and the Spitzen Declaration [ECF 131], ought to remain under seal.

*Applicable Law:* With the exception of depositions of diplomatic personnel addressed below, the materials that Defendants seek to keep under seal consist of sensitive governmental information, as well as the personal and financial information of non-party Palestinian residents.  Because public disclosure of that personal and financial information would harm the privacy and security interests of those individuals, these records, and deposition testimony discussing them, should remain under seal.  *United States v. Amodeo,* 71 F.3d 1044, 1050-51 (2d Cir. 1995) ("[t]he privacy interests of innocent third parties . . . should weigh heavily in a court's balancing equation.") (internal quotation marks and citation omitted).  The privacy interests of non-parties are accorded even greater weight when, as here, their information is primarily financial in nature.  *See SEC v. Telegram Grp., Inc.,* No. 19-cv-9439, 2020 U.S. Dist. LEXIS 106592, at *8-9 (S.D.N.Y. June 17, 2020) ("protecting the privacy interests of non-parties, including their business and financial records, represents a legitimate basis for sealing documents.").  Palestinian law similarly recognizes the harm that might result from publicizing such information, and it forbids the disclosure thereof.  *See* Palestinian Banking Law No. 2 of 2002, Art. 26 ("No such person shall disclose any [customer financial] information or enable a third party outside the bank to have access to it"); Decree No. 10 of 2018 on Cybercrime, Art. 22 (forbidding "arbitrary" "interference with the privacy of any person or the affairs of his family, home or correspondence.").

The security risks posed by disclosure of these documents also counsel against making them public.  *E.g.*, *Walker v. City of New York,* No. 15 CV 500, 2017 U.S. Dist. LEXIS 99238, at *15 (E.D.N.Y. June 26, 2017) (redacting summary judgment papers where the safety of a witness and his family were at risk); *United States v. Edelin,* 283 F. Supp. 2d 8, 10 n.2 (D.D.C. 2003) (sealing a motion containing personal identifying information of an alternate juror out of concern for the juror's safety).  Both the Rule 30(b)(6) testimony and the government records that Defendants request remain under seal identify third-party family members of individuals who were implicated in certain attacks.  Revealing their identities to the public at large could expose them to retributive action.  *See, e.g.,* The West Bank and Gaza 2018 Human Rights Report § 1(f), U.S. Department of Democracy, Human Rights and Labor, https://www.state.gov/wp-content/uploads/2019/03/ISRAEL-AND-THE-GOLAN-HEIGHTS-2018.pdf (last visited Oct. 25, 2021) (describing the displacement of 45 Palestinians in 2018 as a result of "punitive demolitions" against "the homes of the families of Palestinians implicated in attacks against Israelis.").

Furthermore, the sensitive, private government information included in these documents and deposition transcripts has historically been protected under Palestinian law.  *See* Decree No. 10 of 2018 on Cybercrime, Art. 22, cited *supra;* Presidential Decree No. 9 of 2010, Art. 32.2 (only allowing disclosure of banking records with the bank client's consent or upon Palestinian court order).  Courts routinely maintain the confidentiality of such information out of a sense of comity.

---

[1] Specifically, Defendants seek to keep under seal Exhibits 1-3, 18-19, 21-22, 24-27, 37-38, 40-43, 45-48, 50-51, 53-56, 58-67, 69-82, 84-87, 89-92, 94-101, 104-07, 109-10, 112-21, 124-46, 150-51, 153-54, 158-71, 173-248, and 264-65 to the Haker Declaration and Exhibits 3 and 14-17 to the Spitzen Declaration.

2

Squire Patton Boggs (US) LLP  
**VIA ECF**

The Honorable Mary Kay Vyskocil  
October 27, 2021

*See Strauss v. Crédit Lyonnais, S.A.,* 2011 U.S. Dist. LEXIS 122694, at *19-22 (E.D.N.Y. Oct. 6, 2011) (sealing records in part because French law prohibited the documents' disclosure); *Oussama El Omari v. Ras Al Khaimah Free Trade Zone Auth.,* No. 16-CV-3895, 2017 U.S. Dist. LEXIS 136172, at *14 (S.D.N.Y. Aug. 17, 2017) (sealing a report, commissioned by the ruler of political subdivision of a foreign state, because it contained "highly sensitive, traditionally nonpublic . . . information . . . of a foreign government") (internal quotation marks and citation omitted).

Exhibits 1, 2, 264, and 265 to the Haker Declaration contain deposition testimony by the Chief and Deputy Chief of Palestine's Permanent Observer Mission to the United Nations related to the "US activities" prong of the PSJVTA. The Observer Mission's activities, which include meetings with the diplomats of other nations, as well as the strategy and rationale behind the Mission's activities, deserve protection from public disclosure given their highly sensitive nature. *See, e.g., In re Terrorist Attacks,* Case No. 03-MDL-01570, 2019 U.S. Dist. LEXIS 121935, at *241 (S.D.N.Y. July 22, 2019) ("[C]onsulates and diplomatic missions have a strong interest in maintaining the confidentiality of their records.").

Finally, Exhibit 6 to the Lowell Declaration and Exhibit 16 to the Spitzen Declaration contain Palestinian General Intelligence Service files. The detrimental effects that disclosure would have on local law enforcement and counter-terrorism efforts call strongly for maintaining them under seal. *See In re Guantanamo Bay Detainee Litig.*, 787 F. Supp. 2d 5, 19-20 (D.D.C. 2011) (citing *CIA v. Sims*, 471 U.S. 159, 175 (1989)).

For the foregoing reasons, Defendants respectfully request that the Court grant Defendants' motion to seal the above materials or, in the alternative, allow Defendants to file a full memorandum of law to address the sealing of these materials.

Very truly yours,

Squire Patton Boggs (US) LLP

*/s/ Gassan A. Baloul*  
Gassan A. Baloul