

Squire Patton Boggs (US) LLP
2550 M Street, NW
Washington, D.C.  20037

O   +1 202 457 6000
F   +1 202 457 6315
squirepattonboggs.com

Gassan A. Baloul
T   +1 202 457 6155
gassan.baloul@squirepb.com

VIA Email and ECF

December 20, 2021

Hon. Debra Freeman
Chief U.S. Magistrate Judge
United States District Court
for the Southern District of New York
500 Pearl Street
New York, New York 10007-1312

**Re:** *Shatsky v. PLO*, No. 18-12355 (MKV) (DF) – Rationales for redactions to jurisdictional discovery materials that were submitted by Plaintiffs in connection with their opposition to Defendants' motion to dismiss

Dear Judge Freeman:

Defendants Palestine Liberation Organization and Palestinian Authority ("Defendants") submit this letter in compliance with Paragraph 2(a) of this Court's Order of December 6, 2021 [ECF 151].  Pursuant to that Order, Defendants revised the confidentiality designations for the jurisdictional discovery deposition transcripts of (a) Ambassador Riyad Mansour, Chief of Mission of the Permanent Observer Mission of the State of Palestine to the United Nations ("Mission"), (b) Ambassador Feda Abdelhady-Nasser, Deputy Chief of Mission, and (c) Nadia Ghannam, Mission Media Affairs Advisor, and provided Plaintiffs with the revised confidentiality designations for those deposition transcripts on December 13 under Judge Vyskocil's Stipulation and Order Concerning Production of Confidential Documents and Information (Mar. 11, 2021) [ECF 64] ("Confidentiality Order").

As directed by Paragraph 2(a) of this Court's December 6, 2021 Order, this letter explains why the remaining confidentiality redactions in the deposition pages and exhibits filed by Plaintiffs in connection with their opposition to Defendants' motion to dismiss are narrowly tailored to serve Defendants' interests and consistent with the presumption in favor of public access to judicial documents.  The redactions fall into three categories:  (1) the Mission's internal procedures, diplomatic strategy and rationales for implementing that strategy, internal deliberations, and the non-public UN official-capacity activities of Ambassadors Mansour and Abdelhady-Nasser as Chief and Deputy Chief of the Mission (collectively, "UN functions"); (2) security concerns,

45 Offices in 20 Countries

Squire Patton Boggs (US) LLP is part of the international legal practice Squire Patton Boggs, which operates worldwide through a number of separate legal entities.

Please visit squirepattonboggs.com for more information.

including both the internal layout of the Mission and the travel and habits of Mission personnel; and (3) sensitive personal information such as family and medical details.

Defendants' prior briefing on confidentiality [ECF 105, 114], referred to in this Court's order, and incorporated by reference herein, provides legal support and background for Defendants' interests behind maintaining the confidentiality.  In short, these depositions are not yet judicial documents, and may never be if they "play no role" in the district court's decision.  *United States v. Amodeo*, 71 F.3d 1044, 1050 (2d Cir. 1995).  In addition, because UN functional immunity covers all actions performed by Mission diplomats and staff in an "official capacity," any testimony where they describe their official-capacity work should be treated as confidential in its *entirety*, unless that testimony later becomes part of a judicial opinion.  As explained in Defendants' prior briefing, disclosure would be especially unfair as most of the sensitive material in the depositions would not even exist if Defendants had not relied on the Confidentiality Order to allow Plaintiffs leeway to examine the deponents on these issues.  *See SEC v. TheStreet.com*, 273 F.3d 222, 230 (2d Cir. 2001) (citing *Palmieri v. State of New York*, 779 F.2d 861, 865 (2d Cir. 1985) (the burden to unseal is "heavier than it might otherwise be" where "the very papers and information apparently would not even have existed but for the magistrate's personal assurances of confidentiality, upon which the appellants apparently relied").

Nevertheless, as ordered, Defendants have provided redactions focused on the three sensitive and confidential topics listed above.  The first topic, comprising the Mission's UN functions, constitutes both information protected by UN functional immunity, and "highly sensitive government information" under Paragraph 2 of the Confidentiality Order.  *See Van Aggelen v. UN*, 311 F. App'x 407, 409 (2d Cir. 2009) (describing UN functional immunity as covering "all acts performed in [the person's] official capacity"); *Brzak v. UN*, 597 F.3d 107, 113 (2d Cir. 2010) (UN "functional immunity" applies to "acts that the defendants performed in exercise of their official functions, namely, their management of the office in which the plaintiffs worked").  Together with the secrecy of private discussions with UN officials, diplomats, and other stakeholders, the inviolability of the Mission's UN functions is the bedrock upon which modern diplomacy rests.  The public has no right, actual or historical, to such information.

Functional immunity and confidentiality also necessarily cover details that would compromise the personal security and affairs of Mission personnel because that would materially "impede" the ability of the Mission to "discharge its official functions."  United Nations Juridical Yearbook, Chapter VI, Section A(13) (2000).  Ambassadors Mansour and Abdelhady-Nasser, and Ms. Ghannam are the public face of Palestine at the UN, making them targets for potential harassment.  *See Long v. OPM*, 692 F.3d 185, 195-98 (2d Cir. 2012) (affirming redaction of federal employees' sensitive duty-station information from FOIA request).  Courts are "obligat[ed] … to refrain from impairing the function of the" Mission.  *United States v. PLO*, 695 F. Supp. 1456, 1471 (S.D.N.Y. 1988).  And the United States urges district courts to follow the UN's interpretation of those protections to avoid a "political and legal quagmire."  U.S. Stat. of Interest, *Ungar v. Palestinian Auth.*, No. 18-MS-0302, at 25 (S.D.N.Y. Sept. 12, 2005).  In addition, some of the redacted information also qualifies as "[p]ersonal private medical" information protected under Paragraph 2 of the Confidentiality Order.

Squire Patton Boggs (US) LLP

Judge Freeman
December 20, 2021

Consistent with the above and pursuant to the Court's Order, the following charts provide detailed reasons for the redactions from the pages of the Mansour, Abdelhady-Nasser, and Ghannam depositions that were submitted by Plaintiffs in connection with their opposition to Defendants' motion to dismiss.

**Deposition of Ambassador Riyad Mansour**

| Page | Rationales for Redactions |
|---|---|
| 18:23-19:10 | The testimony provides information related to the Mission's UN functions, specifically internal Mission functions or strategy, and presents a security concern as it relates to the places of residence of Dr. Mansour, his wife, and one member of the Mission personnel. |
| 23:11-25:22 | The testimony provides information related to the Mission's UN functions, specifically internal Mission functions or strategy, and presents a security concern as it relates to the physical layout of the UN Mission. |
| 27:19-28:10 | The testimony provides information related to the Mission's UN functions, specifically internal Mission functions or strategy, and presents a security concern as it relates to the places of residence of Dr. Mansour and one member of the Mission personnel. |
| 29:15-25; 30:1-2; 30:5-18; 30:21-25; 31:1-9 | The testimony provides information related to the Mission's UN functions, specifically, internal Mission functions or strategy. The testimony also presents a security concern as it concerns the place of residence of Dr. Mansour and the identity of Dr. Mansour's personal driver. |
| 74:20; 75:1-14 | The testimony provides information related to UN functions, specifically, non-public UN official-capacity activities of the Ambassador, including the identity of the organization that the Mission privately met with to discuss UN topics, and internal mission functions or strategy, including the rationale and objectives for meeting with the organization. The testimony also relates to the Ambassador's physical location during the meeting, which presents a security concern. |
| 91:15-17; 91:22-92:12; 92:16-93:7 | The testimony provides information related to the Mission's UN functions, specifically, internal Mission functions or strategy, including the rationale and objectives for the Mission's appearance at an event concerning UN topics, as well as the Ambassador's location while participating at a virtual event, which presents a security concern. |
| 94:17-20 | The testimony provides information related to the Ambassador's physical location while conducting UN business, which presents a security concern. |
| 97:1-10 | The testimony provides information related to the Mission's UN functions, specifically, internal Mission functions or strategy, including the rationale and objectives for the Mission's participation in an interaction with a civil society organization that concerned UN topics. |

| | |
|---|---|
| 98:23-99:10 | The testimony provides information related to the Mission's UN functions, specifically, internal Mission functions or strategy, including the rationale and objectives for the Mission's interaction with a civil society organization at an event that concerned UN topics, as well as the Ambassador's physical location while participating at a virtual event, which presents a security concern. |
| 107:3-108:1; 108:4-6 | The testimony provides information related to the Mission's UN functions, specifically, internal Mission functions or strategy, including the rationale and objectives for the Mission's interaction with a civil society organization at an event that concerned UN topics, as well as the Ambassador's physical location while participating at a virtual event, which presents a security concern. |
| 110:1-13; 110:16-21 | The testimony provides information related to the Mission's UN functions, specifically, non-public UN official-capacity activities of the Ambassador, including private conversations between the Mission and various candidates for UN office, and internal Mission functions or strategy, including the Mission's rationale and objectives underlying those private communications. |
| 111:18-23; 112:4-25 | The testimony provides information related to the Mission's UN functions, specifically, internal Mission functions or strategy, including the rationale and objectives for the Mission's interaction with a news medium concerning UN topics, as well as the Ambassador's physical location while participating in a virtual interview, which presents a security concern. |
| 113:20-114:14 | The testimony provides information related to the Mission's UN functions, specifically, internal Mission functions or strategy, including the rationale and objectives for the Mission's interaction with a foreign news medium concerning UN topics, as well as the Ambassador's physical location while participating in a virtual interview, which presents a security concern. |

**Deposition of Ambassador Feda Abdelhady-Nasser**

| | |
|---|---|
| 192:18-25 | The testimony provides information related to the Mission's UN functions, specifically, internal Mission functions or strategy, including the rationale and objectives for the Mission's interaction with a foreign news medium concerning UN topics. |

**Deposition of Ms. Ghannam**

| | |
|---|---|
| 26:19-27:2 | This testimony contains Ms. Ghannam's private medical information. |
| 28:12-29:8 | This testimony contains Ms. Ghannam's private medical information. |
| 33:17 | This testimony contains private medical information relating to one of Ms. Ghannam's relatives. |
| 36:25-37:5 | This testimony contains private medical information relating to one of Ms. Ghannam's relatives. |

| | |
|---|---|
| 38:3 | This testimony contains the name of an individual known to be a minor, and thus is required to be redacted under Rule 5.2(a) of the Federal Rules of Civil Procedure. |
| 38:15-16 | This testimony relates to an opinion held by Ms. Ghannam "of a personal or intimate nature," Confidentiality Order ¶ 2, that may subject her to retribution as a public-facing individual and that is not relevant to the matters at issue in this litigation. |
| 142:4-143:7 | This testimony provides information related to the Mission's UN functions, specifically, internal Mission functions or strategy, including the degree to which various members of the Mission's personnel participate in certain decisions. |
| 150:1-151:2 | This testimony provides information related to the Mission's UN functions, specifically, internal Mission functions or strategy, including the rationale and objectives underlying an editorial decision by its advisor for media affairs regarding a particular communication.  It also provides information related to Ms. Ghannam's views concerning the scope of the United Nations' mandate, developed by her in her capacity as the Mission's advisor for media affairs. |
| 159:16-21 | This testimony provides information related to the Mission's UN functions, specifically, internal Mission functions or strategy, including the rationale and objectives underlying an editorial decision by its advisor for media affairs regarding a particular communication. |
| 160:8-161:22 | This testimony provides information related to the Mission's UN functions, specifically, internal Mission functions or strategy, including the rationale and objectives underlying an editorial decision by its advisor for media affairs regarding a particular communication. |
| 166:14-25 | This testimony provides information related to the Mission's UN functions, specifically, internal Mission functions or strategy, including the rationale and objectives underlying an editorial decision by its advisor for media affairs regarding a particular communication. |
| 167:24-168:9 | This testimony provides information related to the Mission's UN functions, specifically, internal Mission functions or strategy, including the rationale and objectives underlying an editorial decision by its advisor for media affairs regarding a particular communication. |
| 170:1-3 | This testimony provides information related to the Mission's UN functions, specifically, internal Mission functions or strategy, including the rationale and objectives underlying an editorial decision by its advisor for media affairs regarding a particular communication. |
| 172:11-20 | This testimony provides information related to the Mission's UN functions, specifically, internal Mission functions or strategy, including the rationale and objectives underlying an editorial decision by its advisor for media affairs regarding a particular communication.  It also provides information related to Ms. Ghannam's views concerning the scope of the United Nations' mandate, developed by her in her capacity as the Mission's advisor for media affairs. |

| 173:15-18 | This testimony provides information related to the Mission's UN functions, specifically, internal Mission functions or strategy, including the rationale and objectives underlying an editorial decision by its advisor for media affairs regarding a particular communication. |
|---|---|
| 173:22-174:1 | This testimony provides information related to the Mission's UN functions, specifically, internal Mission functions or strategy, including an opinion and evaluation of another entity's social media outreach developed by Ms. Ghannam in her capacity as the Mission's advisor for media affairs. |
| 175:17-24 | This testimony provides information related to the Mission's UN functions, specifically, internal Mission functions or strategy, including the rationale and objectives underlying an editorial decision by its advisor for media affairs regarding a particular communication. |
| 177:11-14 | This testimony provides information related to the Mission's UN functions, specifically, internal Mission functions or strategy, including the degree to which various members of the Mission's personnel participate in certain decisions. |
| 178:2-5 | This testimony provides information related to the Mission's UN functions, specifically, internal Mission functions or strategy, including the degree to which various members of the Mission's personnel participate in certain decisions. |
| 178:18-23 | This testimony provides information related to the Mission's UN functions, specifically, internal Mission functions or strategy, including the rationale and objectives underlying an editorial decision by its advisor for media affairs regarding a particular communication. |
| 180:20-182:8 | This testimony provides information related to the Mission's UN functions, specifically, internal Mission functions or strategy, including the rationale and objectives underlying an editorial decision by its advisor for media affairs regarding a particular communication.  It also provides information related to Ms. Ghannam's views concerning the scope of the United Nations' mandate, developed by her in her capacity as the Mission's advisor for media affairs. |
| 183:21-184:5 | This testimony provides information related to the Mission's UN functions, specifically, internal Mission functions or strategy, including the rationale and objectives underlying an editorial decision by its advisor for media affairs regarding a particular communication. |
| 187:11-15 | This testimony provides information related to the Mission's UN functions, specifically, internal Mission functions or strategy, including the rationale and objectives underlying an editorial decision by its advisor for media affairs regarding a particular communication. |
| 189:5-190:14 | This testimony provides information related to the Mission's UN functions, specifically, internal Mission functions or strategy, including the rationale and objectives underlying an editorial decision by its advisor for media affairs regarding a particular communication. |

| | |
|---|---|
| 191:1-192:11; 192:16-193:6; 193:16; 194:1-2 | This testimony provides information related to the Mission's UN functions, specifically, internal Mission functions or strategy, including the rationale and objectives underlying editorial decisions made by its advisor for media affairs regarding a particular social media post. It also provides information related to Ms. Ghannam's views concerning the scope of the United Nations' mandate, developed by her in her capacity as the Mission's advisor for media affairs. |
| 195:1-6 | This testimony provides information related to the Mission's UN functions, specifically, internal Mission functions or strategy, including the rationale and objectives underlying an editorial decision by its advisor for media affairs regarding a particular communication. |
| 196:12-197:3 | This testimony provides information related to the Mission's UN functions, specifically, internal Mission functions or strategy, including the rationale and objectives underlying an editorial decision by its advisor for media affairs regarding a particular communication. |
| 198:10-22 | This testimony provides information related to the Mission's UN functions, specifically, internal Mission functions or strategy, including the rationale and objectives underlying an editorial decision by its advisor for media affairs regarding a particular communication. |
| 199:18-200:5 | This testimony provides information related to the Mission's UN functions, specifically, internal Mission functions or strategy, including the rationale and objectives underlying an editorial decision by its advisor for media affairs regarding a particular communication. |
| 201:3-17 | This testimony provides information related to the Mission's UN functions, specifically, internal Mission functions or strategy, including the rationale and objectives underlying an editorial decision by its advisor for media affairs regarding a particular communication. |

**Deposition exhibits:** Defendants maintain the confidentiality of the entire deposition exhibit filed by Plaintiffs with their opposition to the motion to dismiss.

| | |
|---|---|
| Ambassador Mansour Deposition Exhibit 3 | This exhibit is an hour-by-hour calendar for Ambassador Mansour for planned meetings and events that were mentioned in public sources, whether or not the meetings of events themselves were open to the public and whether or not the Ambassador's possible presence at the meeting or event was noted or recorded in public sources. This confidential list of the Ambassador's official-capacity activities is privileged under functional immunity. Granting public access to the Ambassador's daily schedule Making this document public also would create security concerns. |

Allowing this sensitive and confidential material to become public would interfere with the Mission's ability to function as a UN mission and expose security and personal information. Defendants are aware of no judicial decisions or other authority ordering the public disclosure of

Squire Patton Boggs (US) LLP                                                   Judge Freeman
                                                                               December 20, 2021

depositions discussing the official business or purposes of a foreign Mission or Embassy, or the public disclosure of the calendar and private meetings of a foreign ambassador.

                                                    Respectfully submitted,

                                                    /s/ *Gassan A. Baloul*
                                                    Gassan A. Baloul

cc:    All Counsel