

Squire Patton Boggs (US) LLP
2550 M Street, NW
Washington, D.C.  20037

O   +1 202 457 6000
F   +1 202 457 6315
squirepattonboggs.com

Gassan A. Baloul
T   +1 202 457 6155
gassan.baloul@squirepb.com

**VIA Email and ECF**

December 20, 2021

Hon. Debra Freeman
Chief U.S. Magistrate Judge
United States District Court
for the Southern District of New York
500 Pearl Street
New York, New York 10007-1312

**Re:** *Shatsky v. PLO*, **No. 18-12355 (MKV) (DF) – Rationales for redactions to jurisdictional discovery materials that were *not* submitted by Plaintiffs in connection with their opposition to Defendants' motion to dismiss**

Dear Judge Freeman:

    Defendants Palestine Liberation Organization and Palestinian Authority ("Defendants") submit this letter in compliance with Paragraph 2(b) of this Court's Order of December 6, 2021 [ECF 151].  Pursuant to that Order, Defendants revised the confidentiality designations for the jurisdictional discovery deposition transcripts of (a) Ambassador Riyad Mansour, Chief of Mission of the Permanent Observer Mission of the State of Palestine to the United Nations ("Mission"), (b) Ambassador Feda Abdelhady-Nasser, Deputy Chief of Mission, and (c) Nadia Ghannam, Media Affairs Adviser.

    As directed by Paragraph 2(b) of this Court's Order, this letter sets out the bases for Defendants' objection to disclosure of the additional jurisdictional discovery materials sought by Arnold & Porter and Michael Wagenheim—materials that were *not* submitted by Plaintiffs in connection with their opposition to the motion to dismiss—as well as legal authority supporting Defendants' position.  Contemporaneously with this letter, Defendants are submitting for *in camera* review: (a) a full, unredacted version of the additional material sought by Arnold & Porter and Wagenheim and (b) a version of the additional material with the proposed redactions.

    As with the redactions to the documents filed by Plaintiffs in connection with their opposition to Defendants' motion to dismiss, Defendants' redactions to these discovery documents fall into three general categories:  (1) Mission internal procedures, diplomatic strategy and rationales for implementing that strategy, and internal deliberations, and the non-public UN

Squire Patton Boggs (US) LLP is part of the international legal practice Squire Patton Boggs, which operates worldwide through a number of separate legal entities.

Please visit squirepattonboggs.com for more information.

official-capacity activities of Ambassadors Mansour and Abdelhady-Nasser as Chief and Deputy Chief of the Mission (collectively, "UN functions"); (2) security concerns, including the internal layout of the Mission, travel habits, routines of Mission personnel, and cybersecurity; and (3) sensitive personal information such as family and medical details.

Defendants' prior briefing on confidentiality [ECF 105, 114], referred to in this Court's Order, and incorporated by reference herein, provides legal support and background for Defendants' interests behind maintaining the confidentiality of each of these categories. In short, the Second Circuit requires courts to consider "the degree to which the subject matter is traditionally considered private rather than public." *Mirlis v. Greer*, 952 F.3d 51, 61 (2d Cir. 2020) (citation omitted). A foreign mission's functions and diplomacy are traditionally considered to be among the most private and sensitive of all government information. *See In re Terrorist Attacks*, No. 03-MDL-01570, 2019 U.S. Dist. LEXIS 121935, *241 (S.D.N.Y. July 22, 2019) ("[C]onsulates and diplomatic missions have a strong interest in maintaining the confidentiality of their records."). Together with the confidentiality of private discussions with UN officials, diplomats, and other stakeholders, the inviolability of internal Mission affairs is the bedrock upon which modern diplomacy rests.

Functional immunity covers actions of the Palestinian UN Mission and its personnel performed in an "official capacity" or that "relate[]" to official actions, such as "management of the office." *Brzak v. UN*, 597 F.3d 107, 113 (2d Cir. 2010); *Van Aggelen v. UN*, 311 F. App'x 407, 409 (2d Cir. 2009); *see also Nouinou v. Smith*, No. 20-8682, 2021 U.S. Dist. LEXIS 182293, *10 (S.D.N.Y. Sep. 22, 2021) ("Because the allegations in the Second Amended Complaint arise from Plaintiff's employment at the UN and relate to acts performed by Smith within his official capacity as a UN employee, Smith enjoys functional immunity from suit for Plaintiff's claims."). Courts apply that same standard for official actions occurring under "residual immunity" pursuant to the Vienna Conventions, which also covers actions like "decision-making" for official functions *In re Terrorist Attacks on Sept. 11, 2001*, No. 03-MDL-01570, 2020 U.S. Dist. LEXIS 166886, *260, 269 (S.D.N.Y. Aug. 27, 2020), or information "obtained in [an] official capacity," *Giraldo v. Drummond Co.*, 808 F. Supp. 2d 247, 248 (D.D.C. 2011).

Nor is there any presumption of public access to discovery material like these depositions (which have not been cited in the pending dispositive motions)—much less the *jurisdictional* discovery material in this case which bears no relation to the merits of Plaintiffs' claims. *See Brandon v. NPG Records, Inc.*, No. 1:19-cv-01923, 2020 U.S. Dist. LEXIS 76705, *29 (S.D.N.Y. Apr. 30, 2020) (granting motion to seal "jurisdictional discovery documents"); *Ross v. Abbott Vascular Inc.*, No. 19-cv-03794, 2020 U.S. Dist. LEXIS 156906, *2-3 (N.D. Cal. Aug. 28, 2020) (granting a motion to seal jurisdictional discovery because it met the lower "good cause" rather than "compelling reason" burden as it was tangentially related to the merits of the case).

If this Court rejects confidentiality, Mission personnel would be unable to perform their official functions in a confidential manner, Palestine's UN functions would be upended, and other diplomats would understandably hesitate to agree to future meetings or communications with Palestinian envoys. *Cf. In re Subpoena Served upon Comp. of Currency*, 967 F.2d 630, 633 (D.C.

Cir. 1992) (recognizing the "possibility of future timidity by ... employees who will be forced to recognize that their secrets are violable" as a factor supporting upholding confidentiality);*see* Anna Raphael, Note, *Retroactive Diplomatic Immunity*, 69 Duke L.J. 1425, 1431 (2020) ("Diplomacy would be unworkable if … receiving states were able to 'open diplomatic bags and read their contents, listen to their telephone calls, hack into diplomats' e-mails,' and so forth."). In *Tachiona v. United States*, 386 F.3d 205, 216-20 (2d Cir. 2004), the Second Circuit held that UN diplomats are accorded immunity, finding that Zimbabwe President Mugabe was entitled to immunity under the Convention on Privileges and Immunities of the United Nations as a temporary U.N. representative of his nation.

In addition, internal Mission procedures and purposes qualify as "highly sensitive government information" under Paragraph 2 of Judge Vyskocil's Stipulation and Order Concerning Production of Confidential Documents and Information (Mar. 11, 2021) [ECF 64] ("Confidentiality Order"). As such, the disclosure of this material remains "presumptively unfair" given Defendants' reliance on the Confidentiality Order when giving Plaintiffs leeway to examine the deponents about the Mission's UN functions. *SEC v. TheStreet.com*, 273 F.3d 222, 230 (2d Cir. 2001) (citing *Palmieri v. State of New York*, 779 F.2d 861, 865 (2d Cir. 1985)); *see also United States v. Amodeo*, 71 F.3d 1044, 1049 (2d Cir. 1995) ("[T]he weight to be given the presumption of access must be governed by the role of the material at issue ... and the resultant value of such information to those monitoring the federal courts."). Moreover, as explained in *Alcon Vision, LLC v. Lens.com*, No. 18-0407, 2020 U.S. Dist. LEXIS 118670, *34 (E.D.N.Y. July 7, 2020), "the public has no overriding interest in disclosure of [documents] which were submitted only for purposes of demonstrating that this Court has personal jurisdiction ... those exhibits may remain under seal as they are unrelated to determining the parties' substantive rights."

Functional immunity and confidentiality necessarily also cover information that would compromise the personal safety of Mission personnel because public disclosure of that information would materially "impede" the ability of the Mission to "discharge its official functions." United Nations Juridical Yearbook, Chapter VI, Section A(13) (2000). Some of that information also often qualifies as personal information protected under Paragraph 2 of the Confidentiality Order, for which disclosure serves no purpose other than to risk embarrassment or harassment of Mission diplomats and staff. *See Haidon v. Town of Bloomfield*, No. 3:19-119, 2021 U.S. Dist. LEXIS 137498, *9 (D. Conn. July 23, 2021) ("the public has "no presumptive right of access to pretrial depositions at common law").

Consistent with the above and pursuant to paragraph 2(b) of the Court's Order, the following charts provide specific reasons for the redactions from the portions of the Mansour, Abdelhady-Nasser, and Ghannam depositions that are sought by either Arnold & Porter or Wagenheim but were *not* submitted by Plaintiffs in connection with their opposition to Defendants' motion to dismiss.

**Deposition of Ambassador Riyad Mansour**.

| Page | Rationales for Redactions |
|---|---|
| 32:5-33:6; 34:15-35:6; 35:12-36:6 | This testimony provides information related to the Mission's UN functions, specifically, internal Mission functions or strategy, including the operating procedures for Dr. Mansour's official internal calendar as Ambassador to the United Nations. |
| 37:4-11 | This testimony provides information related to Dr. Mansour's place of residence. Therefore, public disclosure would present a security concern and there is no legitimate public interest in the information. |
| 40:15-23; 41:14-16; 41:20-24 | This testimony provides information related to the Mission's UN functions, specifically, internal Mission functions or strategy, including an internal meeting of Mission personnel concerning UN business and the regularity of conducting such meetings. |
| 52:5-18 | The testimony provides information related to the Mission's UN functions, specifically, internal Mission functions or strategy, including the rationale and objectives of the Mission in interacting with a civil society organization on UN topics. |
| 61:17-23 | The testimony provides information related to the Mission's UN functions, specifically, internal Mission functions or strategy, including the internal thought processes of Dr. Mansour as they relate to Mission business at the UN. |
| 61:24-66:4 | The testimony provides information related to the Mission's UN functions, specifically, the non-public UN official-capacity activities of the Ambassador, including the identity of the organization with which the Mission met privately to discuss UN topics, and the nature of the discussions during the meeting, and the Ambassador's physical location during UN business, which presents security concerns. |
| 67:11-12; 16-18; 67:21-22; 68:6, 12-16; 68:20-21; 68:23-69:14 | The testimony provides information related to the Mission's UN functions, specifically, non-public UN official-capacity activities of the Ambassador, including the identity of the organization with which the Mission met privately to discuss UN topics, the specific nature of and discussions during the interaction, and the Ambassador's physical location during UN business, which also presents security concerns. |
| 70:7; 70:15-16; 70:20-21; 70:23-24; 71:6; 71:8-13; 71:16-24 | The testimony provides information related to the Mission's UN functions, specifically the non-public UN official-capacity activities of the Ambassador, including the identity of a civil society organization with which the Mission interacted in relation to UN topics, Dr. Mansour's physical location during UN business, which also presents security concerns, and the participants in the interaction; as well as internal Mission functions or strategy, including the rationale and objectives of the Mission in engaging with the civil society organization. |
| 77:12; 77:15-16; | The testimony provides information related to the Mission's UN functions, specifically the non-public UN official-capacity activities of the |

Squire Patton Boggs (US) LLP                                                      Judge Freeman
                                                                                  December 20, 2021

| 77:18, 21<br>77:23-25;<br>78:9;<br>78:18-79:6 | Ambassador, including the identity of a civil society organization whom the Mission privately interacted with to discuss UN topics, the nature of the private UN discussions, and the Ambassador's physical location during UN business, which also presents security concerns. |
|---|---|
| 79:10-11;<br>79:13-21;<br>79:23-25;<br>80:1;<br>80:3;<br>80:6 | The testimony provides information related to the Mission's UN functions, specifically the non-public UN official-capacity activities of the Ambassador, including the identity of a civil society organization with which the Mission privately interacted to discuss UN topics and the nature of the private UN discussions. Additionally, the testimony provides information related to Dr. Mansour's place of residence, which presents a security concern. |
| 80:10-11, 14<br>80:18-20;<br>81:3-10 | The testimony provides information related to the Mission's UN functions, specifically, the non-public UN official-capacity activities of the Ambassador, including the identity, description, and nature of a UN seminar the Ambassador planned to attend. |
| 81:25-82:1 | The testimony provides information related to the Mission's UN functions, specifically, internal Mission functions or strategy, including the internal thought processes of Dr. Mansour as it related to a UN event. |
| 85:9-11 | The testimony provides information related to Dr. Mansour's routine and schedule at the UN, and, thus, presents a security concern. |
| 86:22-25 | The testimony provides information related to the Mission's UN functions, specifically, the non-public UN official-capacity activities of the Ambassador, including Dr. Mansour's physical location during UN business, which also presents a security concern. |
| 96:21-25 | The testimony contains information related to the Mission's UN functions, specifically, internal Mission functions or strategy, including the rationale and objectives of the Mission's interaction with media as it relates to UN topics. Please note that the remainder of this colloquy falls on page 97, which Plaintiffs attached to the Haker Declaration (and thus is addressed in our separate letter filed today related to the materials filed with Plaintiffs' opposition to the motion to dismiss). |
| 109:20-25 | The testimony provides information related to the Mission's UN functions, specifically the non-public UN official-capacity activities of the Ambassador, including the private conversations between the Mission and UN diplomatic representatives, as well as internal Mission functions or strategy, including information related to the rationale and objectives for the Mission's interactions with these candidates. Note that the remainder of this colloquy falls on page 110, which Plaintiffs attached to the Haker Declaration (and thus is addressed in our separate letter filed today related to the materials filed with Plaintiffs' opposition to the motion to dismiss). |
| 115:19-21;<br>116:1-117:10;<br>117:21-118:19 | The testimony provides information related to the Mission's UN functions, specifically, internal Mission functions or strategy, including the rationale and objectives for the Mission's involvement at a UN event. |

Squire Patton Boggs (US) LLP                                              Judge Freeman
                                                                         December 20, 2021

| 122:18-25 | The testimony provides the name of Dr. Mansour's personal driver, and thus, poses a security concern. |
|---|---|
| 123:12-13; 123:15-19; 124:1-2, 24 | The testimony provides information relating to Dr. Mansour's place of residence, thus posing a security concern, as well as diplomacy-related visits to the UN Mission. |
| 126:1 | The testimony provides information related to the Mission's UN functions, specifically, the non-public UN official-capacity activities of the Ambassador, including Dr. Mansour's physical location during UN business, which also presents security concerns. |
| 142:2-19 | The testimony provides information related to the Mission's UN functions, specifically, internal Mission functions or strategy, including the rationale and objectives of UN and diplomatic policies. |
| 152:25-153:16; 153:20-25; 154:10, 13-14; 154:17-18, 21 155:18-22; 155:25-156:11; 156:18-157:1; 157:8-11; 157:15-158:2; 158:8 | The testimony provides information related to the Mission's UN functions, specifically, internal Mission functions or strategy, including the social media strategy of the Mission, the rationale and objectives of that strategy, and the internal operating procedures of implementing that strategy. |
| 161:10-17 | The testimony provides information related to the Mission's UN functions, specifically, internal Mission functions or strategy, including the technology the Ambassador uses to perform certain UN functions creating a cybersecurity risk. |
| 161:18-163:15 | The testimony provides information related to the Mission's UN functions, specifically, non-public UN official-capacity activities of the Ambassador, including the physical location and travel of the Ambassador during UN business, which also presents security concerns. |
| 163:16-165:6 | The testimony provides information related to the personal activities of Dr. Mansour, including travel to visit family and private family information. |
| 167:7-172:9; 173:11-12 | The testimony provides information relating to Defendants' Responses and Objections to Plaintiffs' Amended First Set of Interrogatories, which are confidential as explained elsewhere. Thus, the testimony concerning these Interrogatories is equally confidential. |
| 174:17-176:6; 176:11-20; 176:23-177:15; 177:20-178:16; 178:19-179:11; 179:15-180:4; 180:7-181:4; | The testimony provides information relating to the Mission's UN functions, specifically, internal Mission functions or strategy, including the duties and internal responsibilities of Mission staff, as well as the rationale and objectives achieved by each person's UN activities. |

6

Squire Patton Boggs (US) LLP									Judge Freeman
											December 20, 2021

| | |
|---|---|
| 181:9-11; 181:16-182:8; 182:12-23; 183:6-14; 183:18-184:9; 184:14-185:8; 185:12-16 | |
| 187:10-188:4; 188:7-19; 189:17-190:6 | The testimony provides information relating to the Mission's UN functions, specifically, internal Mission functions or strategy, including whether the Mission interacted with certain UN-related civil society organizations listed in an exhibit by Plaintiffs. |
| 191:9-10 | The testimony provides information relating to the Mission's UN functions, specifically, internal Mission functions or strategy, including the plans of the Ambassador and the Mission to attend and participate in a UN event. |

**Deposition of Ambassador Feda Abdelhady-Nasser**

| Pages | Rationale for Redaction |
|---|---|
| 66:16-67:3; 67:19-21 | The testimony provides information related to the Mission's UN functions, specifically, internal Mission functions or strategy, including the internal meetings of the Mission. |
| 68:3-69:14 | The testimony provides information related to the Mission's UN functions, specifically, internal Mission functions or strategy, including the internal thought processes of the Ambassador and the nature of the Ambassador's internal UN Mission business. |
| 69:25; 70:5, 7-12, 18, 23 71:4, 21, 25; 72:3, 11, 13-14 | The testimony provides information related to the Mission's UN functions, specifically, non-public UN official-capacity activities of the Ambassador, including the identity of a civil society organization with which the Ambassador met privately to discuss UN topics; as well as internal Mission functions or strategy, including the rationale and objectives of the interaction. |
| 73:4-5; 73:7-13; 73:15-19; 74:17; 74:19-76:2 | The testimony provides information related to the Mission's UN functions, specifically, the non-public UN official-capacity activities of the Ambassador, including the identity of a civil society organization with which the Ambassador met privately to discuss UN topics and the nature of the interaction; as well as internal Mission functions or strategy, including the rationale and objectives of the interaction. |
| 76:8; 76:11-13; 76:16-17; 76:19 | The testimony provides information related to the Mission's UN functions, specifically, the non-public UN official-capacity activities of the Ambassador, including a private interaction between the Ambassador and a UN diplomatic representative and the location of the interaction. |
| 76:22-77:5; 77:20-78:1 | The testimony provides information related to the Mission's UN functions, specifically, the non-public UN official-capacity activities of the |

| | |
|---|---|
| | Ambassador, including the identity of a UN body with which the Ambassador interacted during a meeting closed to the public. |
| 78:7-8, 10-13; 78:17-21, 23-25 79:3-5, 9-16; 79:18, 20, 22, 25 80:2 | The testimony provides information related to the Mission's UN functions, specifically, non-public UN official-capacity activities of the Ambassador, including the identity of a civil society organization with which the Ambassador met privately to discuss UN topics and the nature of the interaction; as well as internal Mission functions or strategy, including the rationale and objectives of the Ambassador in engaging in the interaction. |
| 80:11-12; 80:16-81:9; 81:12-15 | The testimony provides information related to the Mission's UN functions, specifically, the non-public UN official-capacity activities of the Ambassador, including the identity of a group of UN representatives with which the Ambassador interacted during a meeting closed to the public, as well as the nature of the meeting. |
| 81:23-24; 82:2-4; 82:12-15; 82:19-24 | The testimony provides information related to the Mission's UN functions, specifically, the non-public UN official-capacity activities of the Ambassador, including the identity of a civil society organization with which the Ambassador privately interacted to discuss UN topics, as well as the nature of the meeting. |
| 83:5-16 83:19-21; 83:23; 84:1 | The testimony provides information related to the Mission's UN functions, specifically, the non-public UN official-capacity activities of the Ambassador, including the identities of individuals representing a civil society organization and a UN body with whom the Ambassador privately interacted to discuss UN topics, as well as the location of the Ambassador during the telephonic interaction, which also presents security concerns. |
| 84:6-7, 10-19; 85:11, 13, 16-20; 85:23; 86:2, 7-18; 87:2-10, 13-16; 87:25-88:17; 88:20-89:9; 89:14-15, 18-23 | The testimony provides information related to the Mission's UN functions, specifically, the non-public UN official-capacity activities of the Ambassador, including the identity of a civil society organization with which the Ambassador privately interacted to discuss UN topics and the nature of the meeting; as well as internal Mission functions or strategy, including the rationale and objectives of the Mission in engaging in the meeting. |
| 90:12-13, 16-20; 90:22, 90:24; 91:1-3, 10-12; 91:13-14, 17; 92:8 | The testimony provides information related to the Mission's UN functions, specifically, the non-public UN official-capacity activities of the Ambassador, including the identity of individuals from a civil society organization with whom the Ambassador privately interacted to discuss UN topics. |
| 92:15; 92:20-24; 93:1-2 | The testimony provides information related to the Mission's UN functions, specifically, the non-public UN official-capacity activities of the Ambassador, including the identity of a UN official with whom the Ambassador met privately, as well as the nature of the meeting. |
| 93:67; 93:9-12; 93:15-18 | The testimony provides information related to the Mission's UN functions, specifically, the non-public UN official-capacity activities of the |

|  | Ambassador, including the identity of a UN diplomatic representative with whom the Ambassador met privately and the nature of the interaction. |
|---|---|
| 94:12-13, 18-21 94:25-95:2; 95:5-7; 95:13-20; 95:22, 25 96:5, 8, 10 | The testimony provides information related to the Mission's UN functions, specifically, the non-public UN official-capacity activities of the Ambassador, including the identity of an individual of civil society with whom the Ambassador met privately to discuss UN topics and the nature of the interaction; as well as internal Mission functions or strategy, including the rationale and objectives of the Ambassador in engaging with the individual. |
| 97:4; 97:8-9; 97:13-14 | The testimony provides information related to the Mission's UN functions, specifically, the non-public UN official-capacity activities of the Ambassador, including the identity of a UN diplomatic representative with whom the Ambassador met privately, and the nature of the meeting. |
| 97:17; 97:20-24 | The testimony provides information related to the Mission's UN functions, specifically, the non-public UN official-capacity activities of the Ambassador, including the identity of a UN diplomatic representative with whom the Ambassador met privately, and the nature of the meeting. |
| 98:3-4, 7-8; 98:11, 13 | The testimony provides information related to the Mission's UN functions, specifically, the non-public UN official-capacity activities of the Ambassador, including the identity of a UN diplomatic representative with whom the Ambassador met privately. |
| 98:19; 98:23-99:3; 99:5-6, 15-19; 99:21-100:8; 100:11, 14-15; 100:22, 24-25 | The testimony provides information related to the Mission's UN functions, specifically, the non-public UN official-capacity activities of the Ambassador, including the identity of a civil society organization with which the Ambassador met privately to discuss UN topics, the nature of the interaction, and the internal thought processes of the Ambassador; as well as internal Mission functions or strategy, including the rationale and objectives of the Ambassador in interacting with this organization. |
| 101:9 101:12-13; 101:16-18; 101:2-13; | The testimony provides information related to the Mission's UN functions, specifically, non-public UN official-capacity activities of the Ambassador, including the identity of a civil society organization with which the Ambassador met privately to discuss UN topics and the nature of the interaction; as well as internal Mission functions or strategy, including the internal thought processes of the Ambassador. |
| 102:18-19; 102:21-103:3 | The testimony provides information related to the Mission's UN functions, specifically the non-public UN official-capacity activities of the Ambassador, including the identity of a UN official with whom the Ambassador met privately. |
| 103:10-14 | The testimony provides information related to the Mission's UN functions, specifically the non-public UN official-capacity activities of the Ambassador, including the nature of an internal meeting between the Ambassador and another member of the Mission. |
| 105:9-10; 105:14-22 | The testimony provides information related to the Mission's UN functions, specifically the non-public UN official-capacity activities of the |

Squire Patton Boggs (US) LLP															Judge Freeman
																December 20, 2021

| | |
|---|---|
| | Ambassador, including the identity of a UN organization whom the Ambassador met privately. |
| 106:9-10; 106:12-17; 106:19-22; 106:24-107:4 | The testimony provides information related to the Mission's UN functions, specifically the non-public UN official-capacity activities of the Ambassador, including the identity of a member of civil society who formerly directed a UN agency and with whom the Ambassador met privately to discuss UN topics, as well as the nature of the interaction. |
| 107:7-11 | The testimony provides information related to the Mission's UN functions, specifically, internal Mission functions or strategy, including the internal policy relating to work in the Mission building. |
| 107:13-15; 107:17-21 | The testimony provides information related to the Mission's UN functions, specifically, the non-public UN official-capacity activities of the Ambassador, including the identity of two civil society organizations with which the Ambassador met privately and the location of the Ambassador during UN business, which also presents security concerns. |
| 108:2; 108:9; 108:12-24; 109:4-10 | The testimony provides information related to the Mission's UN functions, specifically, the non-public UN official-capacity activities of the Ambassador, including the identity of a UN organization with which the Ambassador met privately and the nature of the meeting; as well as internal Mission functions or strategy, including the internal process used by the Ambassador to prepare for and participate in the meeting. |
| 109:14; 109:17; 109:19-21 | The testimony provides information related to the Mission's UN functions, specifically, non-public UN official-capacity activities of the Ambassador, including the identity of a UN diplomatic representative with whom the Ambassador met privately. |
| 109:25-110:2; 110:5-13; 110:15-17 | The testimony provides information related to the Mission's UN functions, specifically, the non-public UN official-capacity activities of the Ambassador, including the identity of an individual of civil society with whom the Ambassador met privately to discuss UN topics, the nature of the interaction, and the location of the Ambassador during the interaction, which also presents security concerns. |
| 110:19-10; 110:24-25 | The testimony provides information related to the Mission's UN functions, specifically, the non-public UN official-capacity activities of the Ambassador, including the identity of a UN entity with which the Ambassador met. |
| 111:5; 111:9-17 | The testimony provides information related to the Mission's UN functions, specifically, the non-public UN official-capacity activities of the Ambassador, including the identity of a UN entity with which the Ambassador met. |
| 111:22-23; 112:2-11 | The testimony provides information related to the Mission's UN functions, specifically, the non-public UN official-capacity activities of the Ambassador, including the identity of an entity with which the Ambassador had a closed meeting, as well as internal Mission functions or strategy, |

10

|  | including the rationale and objectives of the Ambassador's attendance at the meeting. |
|---|---|
| 112:17-18; 112:22-113:6; 113:9-10 | The testimony provides information related to the Mission's UN functions, specifically, the non-public UN official-capacity activities of the Ambassador, including the identity of an individual of civil society with whom the Ambassador met to discuss UN topics, the nature of the interaction, and the location of the Ambassador during the interaction, which also presents security concerns. |
| 113:12-13; 113:18-25 | The testimony provides information related to the Mission's UN functions, specifically, the non-public UN official-capacity activities of the Ambassador, including the identity of a UN entity with which the Ambassador met to discuss UN topics and the nature of the interaction. |
| 114:3, 8-13; 114:19-115:14; 115:16, 22-23; 115:25-116:14; 116:18-19; 116:24-117:1; 117:2-13 | The testimony provides information related to the Mission's UN functions, specifically, the non-public UN official-capacity activities of the Ambassador, including the identity of a civil society organization with which the Ambassador met to discuss UN topics and the nature of the interaction; as well as internal Mission functions or strategy, including the rationale and objectives of the Ambassador's engagement with the civil society organization. |
| 117:18-20; 117:22-25; 119:10-11; 119:13-23; 119:25-120:11; 120:13-14; 120:16-18; 120:20-121:7; 121:13-14 | The testimony provides information related to the Mission's UN functions, specifically, the non-public UN official-capacity activities of the Ambassador, including the identity of a civil society organization with which the Ambassador met to discuss UN topics, the nature of the interaction, and the Ambassador's physical location during UN business, which also presents security concerns; as well as internal Mission functions or strategy, including the rationale and objectives of the Ambassador's engagement with the civil society organization. |
| 121:20; 121:23-122:2; 122:6-123:3; 123:5-10; 123:19-124:2; 124:10-14 | The testimony provides information related to the Mission's UN functions, specifically the non-public UN official-capacity activities of the Ambassador, including the identity of a civil society organization with which the Ambassador met to discuss UN topics and the nature of the interaction; as well as internal Mission functions or strategy, including the rationale and objectives of the Ambassador's engagement with the civil society organization. |
| 125:20-24; 126:6-7 | The testimony provides information related to the Mission's UN functions, specifically, internal Mission functions or strategy, including the rationale and objectives of the Ambassador's engagement with the civil society organization. |
| 128:2; 128:5-6; 128:11; 128:13-22; 128:25 | The testimony provides information related to the Mission's UN functions, specifically, the non-public UN official-capacity activities of the Ambassador, including the identity of a member of the foreign press with whom the Ambassador met with privately and the nature of the interaction; as well as internal Mission functions or strategy, including information |

|  | related to the rationale and objectives of the Ambassador in engaging in the interaction. |
|---|---|

**Deposition of Ms. Ghannam**

| Pages | Justification for Redaction |
|---|---|
| 39:18-41:12 | This testimony provides information related to the Mission's UN functions, specifically internal Mission functions or strategy, including the rationale and objectives behind its outreach to the public via social media, as well as the delegation of various responsibilities among the Mission's personnel. |

**Deposition exhibits**

Regarding the deposition exhibits requested by Arnold & Porter or Mr. Wagenheim but *not* submitted by Plaintiffs in connection to the motion to dismiss, Defendants have withdrawn their confidentiality designations of all exhibits save the following:

| Ambassador Mansour Deposition Exhibit 4 | This privilege log represents an hour-by-hour redacted calendar for Ambassador Mansour's non-public UN official-capacity activities, covering private meetings and events. The names and events were not produced in discovery because they represent, in large part, the Ambassador's most sensitive and confidential non-public UN official-capacity activities. But even the remaining descriptions are often more than sufficient to establish the identities of the individuals involved (note that "PR" stands for "Permanent Representative to the UN"). Like Exhibit 3, this confidential list of the Ambassador's non-public UN official-capacity activities and is privileged under functional immunity. Making this document public would create security concerns as well. |
|---|---|
| Ambassador Mansour Deposition Exhibit 14 | This exhibit is Defendants' Responses and Objections to Plaintiffs Amended First Set of Interrogatories, which was marked as confidential under the Confidentiality Order. Discovery materials directly related to the merits are not subject to the presumption of public access, much less the jurisdictional discovery responses here, which bear no relation to the merits. |
| Ambassador Abdelhady-Nasser Deposition Exhibit 4 | This exhibit is an hour-by-hour calendar for Ambassador Abdelhady-Nasser for planned meetings and events that were mentioned in public sources, whether or not the meetings or events themselves were open to the public and whether or not the Ambassador's possible presence at the meeting or event was noted or recorded in public sources. This confidential list of the Ambassador's non-public UN official-capacity activities is privileged under functional immunity. Making this document public would also create security concerns. |

Squire Patton Boggs (US) LLP                                                                 Judge Freeman
                                                                                              December 20, 2021

| | |
|---|---|
| Ambassador Abdelhady-Nasser Deposition Exhibit 6 | This privilege log represents an hour-by-hour redacted calendar for Ambassador Abdelhady-Nasser's non-public UN official-capacity activities, covering private meetings and events.  The names and events were not produced in discovery because they represent, in large part, the Ambassador's most sensitive and confidential official-capacity activities.  But even the remaining descriptions are often more than sufficient to establish the identities of the individuals involved (note that "PR" stands for "Permanent Representative to the UN").  Like Mansour Exhibit 3, this confidential list of the Ambassador's official diplomatic activities is privileged under functional immunity.  Making this document public would also create security concerns. |

      Allowing this sensitive and confidential material to become public would interfere with the Mission's ability to function as a UN Mission and expose security and personal information. Defendants are aware of no judicial decisions or other authority ordering the public disclosure of depositions discussing the official business or purposes of a foreign Mission or Embassy, or the public disclosure of the calendar and private meetings of a foreign ambassador.

                                                                              Respectfully submitted,

                                                                              /s/ *Gassan A. Baloul*
                                                                              Gassan A. Baloul


cc:     All Counsel