

Squire Patton Boggs (US) LLP
2550 M Street, NW
Washington, D.C.  20037

O    +1 202 457 6000
F    +1 202 457 6315
squirepattonboggs.com


Gassan A. Baloul
T    +1 202 457 6155
gassan.baloul@squirepb.com

**VIA Email and ECF**

January 6, 2022

The Honorable Mary Kay Vyskocil
United States District Judge
United States District Court
 for the Southern District of New York
500 Pearl Street, Room 2230
New York, New York 10007-1312

Re:     *Shatsky v. PLO*, No. 18-12355 (MKV) (DF) – Notice of Supplemental Authority

Dear Judge Vyskocil:

On behalf of Defendants, we write to submit the attached decision of the Pennsylvania Supreme Court, *Mallory v. Norfolk S. Railway*, No. 3 EAP, 2021 Pa. LEXIS 4318, 2021 WL 6067172 (Dec. 22, 2021), as supplemental authority in support of Defendants' Motion to Dismiss for Lack of Personal Jurisdiction [Dkt 116] and their reply brief [Dkt 143].

*Mallory* ratifies Defendants' argument that the PSJVTA does not satisfy due process standards for "voluntary consent," but instead exemplifies unconstitutional "*compelled submission*" to personal jurisdiction "by *legislative command*," 2021 Pa. LEXIS 4318, *59 (emphasis added), that has consistently been rejected by the courts.  And *Mallory* tracks the Supreme Court's holding in *College Savings Bank* that there is a "fundamental difference" between a voluntary waiver of jurisdictional defenses and constitutionally-insufficient mere "notice" that Congress intends to subject a defendant to suit.  *College Savings Bank v. Florida Prepaid Postsec. Ed. Expense Bd.*, 527 U.S. 666, 679-81 (1999).  *See* Dkt 143 at 3-4.

Defendants featured constitutional challenges to statutes containing analogous "consent" provisions, including lower-court decisions holding that Pennsylvania's business registration statute violates due process by imposing personal jurisdiction on any registered foreign corporation—even if the corporation has no meaningful contacts with the State.  *See* Dkt 116 at 11-13, 18, 20.  Plaintiffs attempted to distinguish the registration cases on the basis that—unlike the PSJVTA—those statutes did not "expressly" provide  notice that registering to do business would create jurisdiction.  Dkt 135 at 20.  The United States similarly asserted that the business

45 Offices in 20 Countries

Squire Patton Boggs (US) LLP is part of the international legal practice Squire Patton Boggs, which operates worldwide through a number of separate legal entities.

Please visit squirepattonboggs.com for more information.

registration cases did not demonstrate any constitutional infirmity with the "deemed consent" provisions of the PSJVTA.  Dkt 141 at 16-17, 21.

The Pennsylvania Supreme Court resolved those issues, striking down the state's business registration statute providing for imposed consent because "*[l]egislatively coerced consent* to general jurisdiction *is not voluntary consent* and cannot be constitutionally sanctioned."  *Mallory*, 2021 Pa. LEXIS 4318, *63 (emphasis added).  In striking down legislatively-deemed consent as incompatible with due process, the court further held that:

- Subjecting foreign corporations to "a Hobson's choice" of consent to jurisdiction or pulling out of a state "can hardly be characterized as voluntary and is instead coerced."  *Id*. at *59.

- The Pennsylvania statute (unlike the other statutes mentioned by Plaintiffs) provides "reasonable notice" to foreign corporations that registration constituted consent to jurisdiction, but even express notice "does not render the consent voluntary."  *Id*. at *58.

- Allowing legislatively-coerced consent would renders the due process requirements for general and specific jurisdiction "superfluous"—just as there would be no need to determine where a corporation is at home, "there would be no need to examine the affiliations between the forum State and the underlying case to establish specific jurisdiction."  *Id*. at *60 n.19.  As Defendants have explained, the PSJVTA is correctly viewed as imposing general jurisdiction over Defendants, because the Anti-Terrorism Act claims on which the PSJVTA centers do not arise from the factual predicates to PSJVTA jurisdiction.  Dkt 116 at 16, 19-20.  However, *Mallory* explains that the due-process defects would be the same even if the PSJVTA is viewed as imposing specific jurisdiction.

- Legislatively-imposed "consent" is constitutionally distinct from truly voluntary consent, such as consent "by appearance, contractually agreeing to personal jurisdiction, or stipulating to personal jurisdiction."  *Id*. at *59, 61.

- Legislatively-imposed consent cannot bypass the Due Process Clause:  "Simply stated, a statute may not require what the Constitution prohibits."  *Id*. at *51.  And if a "legislative mandate of consent by registration satisfied due process by constituting voluntary consent to general jurisdiction, all states could enact it, rendering every national corporation subject to the general jurisdiction of every state."  *Id*. at *60.

Defendants respectfully submit that *Mallory* supports Defendants' argument that legislatively-imposed "deemed consent" to jurisdiction under the PSJVTA is not knowing and voluntary consent.  Like the Pennsylvania statute, the PSJVTA's provision of "notice" to Defendants "does not render consent voluntary" or transform "compelled submission" to jurisdiction "by legislative command" into "voluntary consent."  *Id*. at *59.  *Mallory* further illustrates the due process problems inherent in any statute – including the PSJVTA – that purports to manufacture "consent" from conduct that does not otherwise satisfy the requirements of jurisdictional due process.

Squire Patton Boggs (US) LLP

Judge Vyskocil
January 6, 2022

Respectfully submitted,

Squire Patton Boggs (US) LLP

Gassan A. Baloul

cc:     All counsel (by ECF)

# Mallory v. Norfolk S. Ry. Co.

Supreme Court of Pennsylvania

September 21, 2021, Argued; December 22, 2021, Decided

No. 3 EAP 2021

**Reporter**

2021 Pa. LEXIS 4318 *; 2021 WL 6067172

ROBERT MALLORY, Appellant v. NORFOLK SOUTHERN RAILWAY COMPANY, Appellee

**Prior History:**  [*1] Appeal from the Order Entered February 7, 2018 in the Court of Common Pleas of Philadelphia County, Civil Division at No: 170901961.

Mallory v. Norfolk S. Ry. Co., 241 A.3d 479, 2020 Pa. Super. Unpub. LEXIS 3425 (Oct. 30, 2020)

**Counsel:** For Robert Mallory, Appellant: Daniel Caleb Levin, Levin Sedran & Berman, Philadelphia, PA; Laurence S. Berman, Levin Sedran & Berman, Philadelphia, PA; Luke Thomas Pepper, Levin Sedran & Berman, Philadelphia, PA.

For Locks Law Firm, Appellant Amicus Curiae: Andrew John DuPont, Locks Law Firm, Philadelphia, PA; Jonathan W. Miller, Locks Law Firm, Philadelphia, PA.

For Norfolk Southern Railway Company, Appellee: David Alan Damico, Burns White LLC, Pittsburgh, PA; Daniel Brennen Donahoe, Burns White LLC, Pittsburgh, PA; Bruce Philip Merenstein, Schnader Harrison Segal & Lewis LLP, Philadelphia, PA; Ira L. Podheiser, Burns White LLC, Pittsburgh, PA; Ralph G. Wellington, SCHNADER, HARRISON SEGAL & LEWIS LLP, Schnader Harrison Et Al, Philadelphia, PA.

For Philadelphia Association of Defense Counsel, Washington Legal Foundation, Appellee Amicus Curiae: James Michael Beck, Life Sciences, Reed Smith Llp, Philadelphia, PA.

For CSX Transportation, Inc., Appellee Amicus Curiae: Sharon L. Caffrey, Duane Morris LLP, Philadelphia, PA.

For The Pennsylvania Association for [*2] Justice, Appellee Amicus Curiae: Ruxandra Maniu Laidacker, Appeals, The Criminal, Kline & Specter Pc, Philadelphia, PA; Charles Lyman Becker, Appeals and Litigation Department, City of Philadelphia Law Department, Philadelphia, PA.

For CSX Transportation, Inc., Appellee Amicus Curiae: Theresa A. Langschultz, Duane Morris, L.L.P., Philadelphia, PA.

**Judges:** BAER, C.J., SAYLOR, TODD, DONOHUE,

DOUGHERTY, WECHT, MUNDY, JJ. Justices Saylor, Todd, Donohue, Dougherty, Wecht and Mundy join the opinion. Justice Mundy files a concurring opinion.

**Opinion by:** BAER

# Opinion

## CHIEF JUSTICE BAER

### I. Introduction

Under Pennsylvania law, a foreign corporation "may not do business in this Commonwealth until it registers" with the Department of State of the Commonwealth. 15 Pa.C.S. § 411(a). Further, "qualification as a foreign corporation under the laws of this Commonwealth" constitutes a sufficient basis to enable Pennsylvania courts to exercise general personal jurisdiction over a foreign corporation. 42 Pa.C.S. § 5301(a)(2)(i). Pursuant to these statutes, a Virginia resident filed an action in Pennsylvania against a Virginia corporation, alleging injuries in Virginia and Ohio. The plaintiff asserted that Pennsylvania courts have general personal jurisdiction over the case based [*3] exclusively upon the foreign corporation's registration to do business in the Commonwealth.

The trial court held that our statutory scheme, affording Pennsylvania courts general personal jurisdiction over foreign corporations that register to do business in the Commonwealth, regardless of the lack of continuous and systematic affiliations within the state that render the corporation essentially at home here, fails to comport with the Due Process Clause of the Fourteenth Amendment to the United States Constitution.[1] The trial court further reasoned that it would violate due process to construe a foreign

---

[1] The Due Process Clause of the Fourteenth Amendment provides that "No State shall . . . deprive any person of life, liberty, or property, without due process of law." U.S. CONST. amend. XIV, § 1.

corporation's compliance with our mandatory registration statute as voluntary consent to Pennsylvania courts' exercise of general personal jurisdiction. In this direct appeal, we address the propriety of the trial court's ruling.

Based on the United States Supreme Court's decision in *Daimler AG v. Bauman*, 571 U.S. 117, 134 S. Ct. 746, 187 L. Ed. 2d 624 (2014), and its predecessor *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 131 S. Ct. 2846, 180 L. Ed. 2d 796 (2011), we agree with the trial court that our statutory scheme violates due process to the extent that it allows for general jurisdiction over foreign corporations, absent affiliations within the state that are so continuous and systematic as to render the foreign corporation essentially at home in Pennsylvania. We further agree that compliance with Pennsylvania's mandatory **[*4]** registration requirement does not constitute voluntary consent to general personal jurisdiction. Accordingly, we affirm the trial court's order, which sustained the foreign corporation's preliminary objections and dismissed the action with prejudice for lack of personal jurisdiction.

## II. Basic Principles of Personal Jurisdiction

To facilitate an understanding of the legal issue presented, we begin with a brief summary of the basic principles of personal jurisdiction. Personal jurisdiction is the authority of a court over the parties in a particular case. *Ruhrgas Ag v. Marathon Oil Co.*, 526 U.S. 574, 577, 119 S. Ct. 1563, 143 L. Ed. 2d 760 (1999). Personal jurisdiction was originally tied directly to a defendant's presence within the forum state. *Pennoyer v. Neff*, 95 U.S. 714, 722, 24 L. Ed. 565 (1878) (holding that "every State possesses exclusive jurisdiction and sovereignty over persons and property within its territory"). Service of process on a defendant physically present in the forum State conferred personal jurisdiction over that defendant. *Id.* at 724. This territorial approach limited personal jurisdiction over corporations which, pursuant to state statutes, were generally only "present" in their state of incorporation and, thus, could not be served in other states, regardless of whether they conducted significant business in other **[*5]** states. *Id.* at 720 (providing that the "authority of every tribunal is necessarily restricted by the territorial limits of the State in which it is established. Any attempt to exercise authority beyond those limits would be deemed in every other forum . . . an illegitimate assumption of power. . ."). In an effort to subject foreign corporations to the jurisdiction of local courts in controversies arising from transactions in the forum State, states thereafter enacted registration statutes requiring foreign corporations to appoint instate registered agents to receive service of process. *Morris & Co. v. Skandinavia Ins. Co.*, 279 U.S. 405, 408-09, 49 S. Ct. 360, 73 L. Ed. 762 (1929).

In 1945, the United States Supreme Court decided *International Shoe Co. v. Washington*, 326 U.S. 310, 66 S. Ct. 154, 90 L. Ed. 95 (1945), in which the Court shifted its personal jurisdiction analysis away from the territorial approach described in *Pennoyer* and towards the modern-day contacts-focused analysis. *International Shoe*, 326 U.S. at 316-17. In that seminal decision, the High Court clarified that the Fourteenth Amendment's Due Process Clause protects the defendant's liberty interest in not being subject to the binding judgments of a forum with which the defendant has no meaningful "contacts, ties, or relations." *Id.* at 319. The Court explained that a tribunal's authority depends upon the defendant's minimum contacts with the forum State such that the maintenance of the suit "does not **[*6]** offend traditional notions of fair play and substantial justice." *Id.* at 316 (citing *Milliken v. Meyer*, 311 U.S. 457, 463, 61 S. Ct. 339, 85 L. Ed. 278 (1940)).

This focus on the nature and extent of a corporate defendant's relationship with the forum State led to the recognition of two categories of personal jurisdiction: specific (case-linked) jurisdiction and general (all-purpose) jurisdiction. *Ford Motor Co., v. Mont. Eighth Judicial Dist. Court*, 141 S.Ct. 1017, 1024, 209 L. Ed. 2d 225 (2021). For a state court to exercise specific jurisdiction, there must be an affiliation between the forum State and the underlying case or controversy, such as an activity or occurrence that takes place in the forum State and is, therefore, subject to the state's regulation. *Id.* at 1025.

Conversely, general jurisdiction extends to all claims brought against a foreign corporation; the claims "need not relate to the forum State or the defendant's activity there." *Id.* at 1024. A state may exercise general jurisdiction where the "continuous corporate operations within a state [are] so substantial and of such a nature as to justify suit against it on causes of action arising from dealings entirely distinct from those activities." *International Shoe*, 326 U.S. at 318. Thus, historically, a court could exercise general jurisdiction over all claims against a corporate defendant if the defendant had "continuous and systematic" business contacts **[*7]** in the forum state. *Id.* at 318. As discussed in detail, *infra*, the High Court's decisions in *Goodyear* and *Daimler*, however, have narrowed the concept of a state court's constitutionally permissible exercise of general personal jurisdiction over a foreign corporation, thereby altering the governing analysis.

Additionally, while not at issue in *Goodyear* and *Daimler*, it is well established that the requirement of personal jurisdiction "recognizes and protects an individual liberty interest," which, like other individual rights, may be waived in a variety of ways, including consenting to the personal jurisdiction of the court by appearance, contractually agreeing to personal jurisdiction, or stipulating to personal jurisdiction.

*Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702-03, 102 S. Ct. 2099, 72 L. Ed. 2d 492 (1982). Thus, consent to jurisdiction by waiving one's due process rights is an independent basis for jurisdiction, assuming that the consent is given voluntarily. *See Brady v. United States*, 397 U.S. 742, 748, 90 S. Ct. 1463, 25 L. Ed. 2d 747 (1970) (observing that waivers of constitutional rights must be voluntary, knowing, and intelligent).

### III. *Goodyear* and *Daimler* Decisions

As the High Court's decisions in *Goodyear* and *Daimler* serve as the crux of this appeal, we review them at this juncture. In *Goodyear*, North Carolina plaintiffs whose sons died in a bus accident in France filed a wrongful death action in [*8] North Carolina against Goodyear USA, an Ohio corporation, and three Goodyear subsidiaries organized and operated in Luxembourg, Turkey, and France. The action alleged that the accident was caused by a defective tire manufactured at the plant of the foreign subsidiary in Turkey. Goodyear's foreign subsidiaries challenged North Carolina's exercise of general jurisdiction. The state courts found that general jurisdiction over the foreign subsidiaries was proper because some of the tires made abroad by the foreign subsidiaries had reached North Carolina through the stream of commerce. The issue on appeal was whether that exercise of general jurisdiction was consistent with due process. *Goodyear*, 564 U.S. at 923. The Court concluded that it was not.

Preliminarily, the High Court, in an opinion by Justice Ginsburg, observed that there was no specific (case-linked) jurisdiction in North Carolina because the accident occurred in France and the allegedly defective tire was manufactured and sold abroad. *Id.* at 919. Notably, regarding general (all-purpose) jurisdiction, the Court explained that "[a] court may assert general jurisdiction over foreign (sister-state or foreign country) corporations to hear any and all claims against [*9] them when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." *Id.* at 919 (citing *International Shoe*, 326 U.S. at 317). The Court emphasized that only a limited set of affiliations with a forum State satisfy this requisite for general jurisdiction. The Court held that for an individual, general jurisdiction is appropriate in the individual's domicile; for a corporation, general jurisdiction attaches in an equivalent place where the corporation is regarded as at home, such as the place of incorporation or the principal place of business. *Id.* at 924.

The High Court rejected the contention that there was general jurisdiction in North Carolina because some of the tires made abroad by Goodyear's foreign subsidiaries had reached that state through the stream of commerce. The Court opined that such attenuated connections with North Carolina were inadequate to support the exercise of general jurisdiction, as they did not establish the "continuous and systematic general business contacts" required under *International Shoe* to justify suit against Goodyear on causes of action entirely distinct from those connections. *Id.* at 929. Rather, the Court found, affiliations relating to the "stream of commerce" [*10] or the flow of a manufacturer's products into the forum State bolsters an affiliation germane to specific jurisdiction, and not general jurisdiction. Otherwise, the Court opined, any substantial manufacturer or seller of goods would be amenable to suit on any claim for relief, wherever its products are distributed. *Id.* at 929. Accordingly, the Court concluded that because Goodyear's foreign subsidiaries were not in any sense "at home" in North Carolina, those subsidiaries could not be required to submit to the general jurisdiction of that state's courts. *Id.* at 929.

A few years later, the High Court again addressed general jurisdiction in *Daimler*, also written by Justice Ginsburg. *Daimler* examined whether due process permitted California courts to exercise general (all-purpose) jurisdiction over DaimlerChrysler Aktiengesellschaft ("Daimler"), a German corporation, for claims filed in California by Argentina residents based on alleged human rights violations committed abroad by one of Daimler's subsidiaries. The plaintiffs asserted that the court had general jurisdiction over Daimler under California's long-arm statute, based on the contacts that the subsidiary had with California. *Daimler*, 571 U.S. at 121. Employing an agency theory, the lower [*11] court determined that the subsidiary acted as Daimler's agent for jurisdictional purposes, and imputed the subsidiary's contacts to Daimler, thereby deeming proper the exercise of general jurisdiction over Daimler.

The Supreme Court reversed, finding that the lower court's agency theory would subject foreign corporations to general jurisdiction whenever they have an in-state subsidiary or affiliate. This outcome, the Court opined, would "sweep beyond even the 'sprawling view of general jurisdiction'" rejected by the Court in *Goodyear*. *Daimler*, 571 U.S. at 136 (citing *Goodyear*, 564 U.S. at 929). Even assuming the subsidiary's contacts were imputable to *Daimler*, the Court concluded that there would be no basis to subject Daimler to general jurisdiction in California because its slim contacts with the forum State did not render it "at home" there. *Id.*

Reiterating *Goodyear's* sentiment that only a limited set of affiliations with a forum State will subject a defendant corporation to a state's general jurisdiction, such as the place of incorporation or principal place of business, the Court asserted that "these bases afford plaintiffs recourse to at least

one clear and certain forum in which a corporate defendant may be sued on any and all claims."[2] *Id.* at 137. Germane [*12] to this appeal, the High Court viewed as "unacceptably grasping" the notion that general jurisdiction lies in any forum where a corporation engages in a substantial, continuous, and systematic course of business. *Id.* at 138. The Court found that the terms "continuous and systematic" as set forth in *International Shoe* described instances in which the exercise of specific, and not general, jurisdiction would be appropriate. *Id.* at 138.

The general jurisdiction inquiry under *Goodyear*, the Court opined, "is not whether a foreign corporation's in-forum contacts can be said to be in some sense 'continuous and systematic;' rather, it is whether that corporation's "affiliations with the State are so 'continuous and systematic' as to render [it] essentially at home in the forum State." *Id.* at 139 (citing *Goodyear*, 564 U.S. at 919). The Court explained that such inquiry does not focus exclusively on the magnitude of the defendant's in-state contacts; "[g]eneral jurisdiction instead calls for an appraisal of a corporation's activities in their entirety, nationwide and worldwide." *Id.* at 139 n.20. Notably, the Court posited, "[a] corporation that operates in many places can scarcely be deemed at home in all of them." *Id.* Otherwise, the Court reasoned, "'at home' would be synonymous with 'doing [*13] business' tests framed before specific jurisdiction evolved in the United States." *Id.*

The High Court emphasized that neither *Daimler* nor its subsidiary was incorporated in California or had its principal place of business there. The Court opined that if the plaintiffs' broad notion of general jurisdiction were to be adopted, "[s]uch exorbitant exercises of all-purpose jurisdiction would scarcely permit out-of-state defendants 'to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit.'" *Id.* at 139 (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472, 105 S. Ct. 2174, 85 L. Ed. 2d 528 (1985)). Thus, the Court held that it was error for the lower court to hold that *Daimler*, even with its subsidiary's contacts attributed to it, was at home in California and subject to suit there on claims brought by foreign plaintiffs that alleged no connection with California. *Id.* at 139. In sum, the Court viewed subjecting *Daimler* to the general jurisdiction of California to be wholly inconsistent with the "fair play and substantial justice" due process demands. *Id.* at 142 (citing *International Shoe*, 326 U.S. at 316).

As noted, neither *Goodyear* nor *Daimler* involved the exercise of general jurisdiction based upon grounds of consent, as manifested by the foreign corporation's registration to [*14] do business in the forum State.

*IV. Factual Background*

The record in the instant case establishes that on September 18, 2017, Appellant Robert Mallory ("Plaintiff"), a resident of Virginia, filed an action pursuant to the Federal Employer's Liability Act ("FELA"), 45 U.S.C. §§ 51-60, in the Philadelphia County Court of Common Pleas ("trial court") against Appellee Norfolk Southern Railway ("Defendant").[3] In his complaint, Plaintiff alleged that Defendant was a Virginia railway corporation with its principal place of business in Norfolk, Virginia. Complaint, 9/18/2017, at ¶ 2. The complaint asserted that while employed by Defendant in Ohio and Virginia from 1988 through 2005, he was exposed to harmful carcinogens. *Id.* at ¶¶ 7, 9-11. The complaint further alleged that Defendant's negligence, carelessness, and recklessness in failing to provide a safe workplace free from asbestos and other toxic chemicals caused him to develop colon cancer. *Id.* at ¶ 14-15. Plaintiff did not allege that he suffered any harmful occupational exposures in Pennsylvania.

Defendant filed preliminary objections, seeking dismissal of the complaint due to the lack of both specific and general personal jurisdiction. Defendant contended [*15] that the case did not arise in Pennsylvania, it was not otherwise "at home" in Pennsylvania, and it did not consent to jurisdiction by registering to do business in Pennsylvania. Preliminary Objection to Plaintiff's Complaint, 10/10/2017, at ¶ 5. Thus, Defendant alleged, it would violate due process for the court to assert jurisdiction over Plaintiff's action. *Id.* at ¶ 25 (asserting that the "right not to be called into courts without a legal or constitutional basis is an important one; it is the core of due process").

In response, Plaintiff argued that Defendant consented to personal jurisdiction by registering to do business in Pennsylvania pursuant to 42 Pa.C.S. § 5301(a)(2), which provides as follows:

(a) General rule. — The existence of any of the following relationships between a person and this Commonwealth shall constitute a sufficient basis of jurisdiction to enable the tribunals of this Commonwealth to exercise general personal jurisdiction

---

[2] The Court did not "foreclose the possibility that in an exceptional case[,] a corporation's operations in a forum other than its formal place of incorporation or principal place of business may be so substantial and of such a nature as to render the corporation at home in that State." *Id.* at 139 n.19 (citations omitted).

[3] FELA establishes a compensation structure for railroad workplace injuries which preempts state tort remedies and workers' compensation statutes. *Norfolk Southern Railway v. Sorrell*, 549 U.S. 158, 165, 127 S. Ct. 799, 166 L. Ed. 2d 638 (2007).

over such person, or his personal representative in the case of an individual, and to enable such tribunals to render personal orders against such person or representative:

* * *

(2) Corporations.

>   (i) Incorporation under or qualification as a foreign corporation [*16] under the laws of this Commonwealth.
>   (ii) Consent, to the extent authorized by the consent.
>   (iii) The carrying on of a continuous and systematic part of its general business within this Commonwealth.

42 Pa.C.S. § 5301(a)(2).

Following oral argument and by order dated February 6, 2018, the trial court sustained Defendant's preliminary objections and dismissed Plaintiff's complaint with prejudice for lack of personal jurisdiction. Plaintiff thereafter timely filed a notice of appeal to the Superior Court.

In the trial court's subsequently filed Pa.R.A.P. 1925(a) opinion, the Honorable Arnold New observed that the Due Process Clause of the Fourteenth Amendment to the United States Constitution limits the authority of a state court to exercise personal jurisdiction over non-resident defendants. Trial Court Opinion, 5/30/2018, at 3. The court observed that specific jurisdiction is linked to the case in controversy and depends upon an affiliation between the forum State and the underlying case, such as an occurrence that takes place in the forum State and is, therefore, subject to the state's regulation under the long arm statute.[4] The trial court concluded that it

---

[4] Pennsylvania's long-arm statute provides as follows:

(a) General rule. — A tribunal of this Commonwealth may exercise personal jurisdiction over a person . . . who acts directly or by an agent, as to a cause of action or other matter arising from such person:

(1) Transacting any business in this Commonwealth. Without excluding other acts which may constitute transacting business in this Commonwealth, any of the following shall constitute transacting business for the purpose of this paragraph:

>   (i) The doing by any person in this Commonwealth of a series of similar acts for the purpose of thereby realizing pecuniary benefit or otherwise accomplishing an object. * * *

>   (iv) The engaging in any business or profession within this Commonwealth, whether or not such business requires license or approval by any government unit of this Commonwealth.

lacked specific jurisdiction over Defendant because Plaintiff's action alleged a FELA violation arising from exposure to harmful carcinogens in Ohio [*17] and Virginia, and there was no allegation that Plaintiff was exposed to carcinogens in Pennsylvania. Trial Court Opinion, 5/30/2018, at 13.

The trial court next examined whether it had general jurisdiction over Defendant pursuant to *International Shoe*, which, as noted, permits a court to exercise general personal jurisdiction over a foreign corporation in "instances in which the continuous corporate operations within a state [are] so substantial and of such a nature as to justify suit against it on causes of action arising from dealings entirely distinct from those activities." Trial Court Opinion, 5/30/2018, at 4 (citing *International Shoe*, 326 U.S. at 318). The trial court noted that, for decades, courts interpreted this language as permitting a court to exercise general personal jurisdiction over a foreign corporate defendant so long as the foreign corporation's business activities within the forum State were continuous and substantial.

The trial court, however, opined that the general jurisdiction analysis was "dramatically altered" by the High Court's decisions in *Goodyear* and *Daimler*. Trial Court Opinion, 5/30/2018, at 4. When examined together, the trial court explained, *Goodyear* and *Daimler* hold that a court may only exercise general jurisdiction [*19] over a foreign corporation if its affiliations within the state are so continuous and systematic as to render the corporation essentially at home in the forum State; the place of incorporation and the principal place of business are the paradigmatic bases for general jurisdiction. *Id.* Thus, the trial court concluded, "for Pennsylvania courts to acquire general personal jurisdiction over foreign corporations under the current state of the law, the foreign corporation must be incorporated in Pennsylvania, have its principal place of business in Pennsylvania, or have consented to the exercise of jurisdiction." *Id.*

As Defendant was not incorporated in Pennsylvania and does not have its principal place of business in the Commonwealth, the trial court examined whether Defendant consented to jurisdiction. Acknowledging that foreign corporations may consent to the jurisdiction of a court by voluntarily appearing

---

(b) Exercise of full constitutional power over nonresidents. — In addition to the provisions of subsection (a) the jurisdiction of the tribunals of this Commonwealth shall extend to all persons who are not within the scope of section 5301 (relating to persons) to the fullest extent allowed under [*18] the Constitution of the United States and may be based on the most minimum contact with this Commonwealth allowed under the Constitution of the United States.

42 Pa.C.S. § 5322.

before the court, contractually agreeing to submit to a court's jurisdiction, or stipulating that a court has jurisdiction, the court found that none of those circumstances were present here. *Id.* at 5. The court then examined the specific claim of registration-based consent to general **[*20]** jurisdiction pursuant to Section 5301, set forth *supra* at 10.

The trial court concluded that Defendant's purported consent to jurisdiction by registering to do business in the Commonwealth was involuntary and, thus, invalid because the Associations Code requires foreign corporations to register with the Commonwealth before conducting business within Pennsylvania. Trial Court Opinion, 5/30/2018, at 6 (citing 15 Pa.C.S. § 411(a) (providing that "a foreign filing association or foreign limited liability partnership may not do business in this Commonwealth until it registers with the department [of state] under this chapter"); 15 Pa.C.S. § 102(a) (defining "association" as a "corporation for profit or not-for-profit. . ."); and 15 Pa.C.S. § 411(b) (providing that the penalty for a foreign corporation's failure to register is that it may not maintain an action in this Commonwealth)).

The trial court held that, "[c]ontrary to Plaintiff's argument, foreign corporations do not submit to general jurisdiction by choosing to register as [a] foreign business corporation in this Commonwealth." *Id.* at 7. Instead, the trial court held that Section 5301 of the Judiciary Act, 42 Pa.C.S. § 5301, when read in conjunction with Section 411 of the Associations Code, 15 Pa.C.S. § 411, "mandate[s] foreign corporations to submit to general jurisdiction **[*21]** as a condition of being permitted to conduct business within the Commonwealth." Trial Court Opinion, 5/30/2018, at 7. Thus, the court posited, a foreign corporation has only two choices: either do business in the Commonwealth while consenting to general personal jurisdiction, or not do business in Pennsylvania at all.

The trial court opined that this Hobson's choice violates Defendant's right to due process. It recognized that the Due Process Clause acts "as an instrument of interstate federalism" and divests the State of its power to render a valid judgment to avoid a territorial encroachment on the sovereignty of sister states. *Id.* at 8-9 (citing *Bristol-Myers Squibb Co. v. Superior Court*, 137 S. Ct. 1773, 1780-81, 198 L. Ed. 2d 395 (2017) ("*Bristol-Myers*") (providing that "[e]ven if the defendant would suffer minimal or no inconvenience from being forced to litigate before the tribunals of another State; even if the forum State has a strong interest in applying its law to the controversy; even if the forum State is the most convenient location for litigation, the Due Process Clause, acting as an instrument of federalism, may sometimes act to divest the

State of its power to render a valid judgment")[5] and *United Farm Bureau Mut. Ins. Co. v. Fidelity & Guaranty Co.*, 501 Pa. 646, 462 A.2d 1300 (Pa. 1983) (recognizing the federal limits placed on Pennsylvania courts' ability to regulate a foreign corporation's **[*22]** actions in our sister states)).

The trial court concluded that "[i]n light of the Supreme Court's repeated admonishment that the Due Process Clause prohibits a state from claiming general jurisdiction over every corporation doing business within its borders, it logically follows [that] the Due Process Clause also prohibits a state from forcing every corporation doing business within its borders to consent to general jurisdiction." Trial Court Opinion, 5/30/2018, at 11 (citations omitted).[6]

The trial court acknowledged Supreme Court precedent predating *International Shoe*, which permitted state courts to obtain personal jurisdiction over a foreign corporation through mandatory registration statutes or the requisite appointment of an instate agent to accept service of process. *Id.* at 12 (citing *Pennsylvania Fire Ins. Co. of Philadelphia v. Gold Issue Mining & Milling Co.*, 243 U.S. 93, 37 S. Ct. 344, 61 L. Ed. 610 (1917) (holding that an Arizona corporation consented to jurisdiction in Missouri when it complied with Missouri's foreign corporation law by appointing an agent to accept service of process as statutorily required); and *Ex parte Schollenberger*, 96 U.S. 369, 24 L. Ed. 853 (1877) (holding that a Pennsylvania federal court had personal jurisdiction over foreign insurance corporations because a Pennsylvania law required the corporations to appoint an agent to receive process there in **[*23]** consideration of granting the privilege of doing business). Categorizing these cases as relics of the *Pennoyer* era during which courts were prohibited from exercising personal jurisdiction over persons or corporations outside the geographic boundary of the courts, the trial court opined that the High Court implicitly overruled those cases in

---

[5] As explained *infra*, the High Court in *Bristol-Myers* recognized that when determining whether personal jurisdiction is present, courts should consider the effect of the defendant's "submission to the coercive power of a State that may have little legitimate interest in the claims in question," as the "sovereignty of each state implies a limitation of the sovereignty of all its sister states." *Bristol-Myers*, 137 S.Ct. at 1780 (citations omitted).

[6] In addition to relying upon the High Court's decisions in *Daimler* and *Goodyear*, the trial court also relied upon that Court's decision in *BNSF Railway Co. v. Tyrrell*, 137 S.Ct. 1549, 198 L. Ed. 2d 36 (2017), discussed *infra*, which held that a state civil procedural rule providing for general jurisdiction over all persons found within the state did not comport with due process. It explained that *Daimler's* holding "applies to all state-court assertions of general jurisdiction over nonresident defendants; the constraint does not vary with the type of claim asserted or business enterprise sued." *Id.* at 1559.

*International Shoe* and its progeny. *Id.* at 13.

The trial court concluded that "[b]y requiring foreign corporations to submit to general jurisdiction as a condition of doing business here, Pennsylvania's statutory scheme infringes upon our sister state's ability to try cases against their corporate citizens." *Id.* at 13. The court held that this "infringement runs counter to the concept of federalism and should not be tolerated." *Id.* at 13 (citing *Bristol-Myers*, 137 S.Ct. at 1780 (providing that "the states retain many essential attributes of sovereignty, including, in particular, the sovereign power to try causes in their courts . . . at times, this federalism interest must be decisive")). Accordingly, the trial court opined that its order dismissing the action for lack of personal jurisdiction over Defendant should be affirmed.

On June 28, 2018, nearly one month after the trial court issued its opinion, [*24] the Superior Court decided *Webb-Benjamin, LLC v. Int'l Rug Grp., LLC*, 2018 PA Super 187, 192 A.3d 1133 (Pa. Super. 2018) ("*Webb*"), which is relevant to the instant matter. In *Webb*, a foreign corporation argued that the Pennsylvania trial court's exercise of general jurisdiction based on its registration as a foreign association in Pennsylvania violated due process under the High Court's decision in *Daimler* because mere registration is insufficient to "render [it] essentially at home" in the Commonwealth. *Id.* at 1138.

Contrary to the trial court's interpretation of *Daimler* below, the Superior Court in *Webb* held that *Daimler* does not eliminate consent to jurisdiction by registering to do business in the Commonwealth pursuant to Section 5301, as *Daimler* "makes a clear distinction between jurisdiction by consent and the method of establishing personal jurisdiction that forms the basis of its analysis and holding." *Id.* (citing *Daimler*, 571 U.S. at 129). The *Webb* court further cited Pennsylvania federal district court decisions that reached the same conclusion. *Id.* (citing *Bors v. Johnson & Johnson*, 208 F.Supp. 3d 648 (E.D. Pa. 2016) (holding that consent remains a valid form of establishing personal jurisdiction under Section 5301 after *Daimler*); *Gorton v. Air & Liquid Sys. Corp.*, 303 F.Supp. 3d 278 (M.D. Pa. 2018) (rejecting claim that, pursuant to *Daimler*, consent by registration was no longer a valid method of obtaining personal jurisdiction).

Following the issuance of the *Webb* decision, the trial court in the instant case [*25] issued a supplemental opinion dated September 5, 2018. Therein, the court noted that the Superior Court's ruling in *Webb* was distinguishable because the *Webb* court did not address the federalism concerns underlying the trial court's decision here.

By memorandum dated October 30, 2020, the Superior Court, upon application of Defendant, transferred the instant appeal

to this Court pursuant to 42 Pa.C.S. § 722(7) (providing that the Supreme Court shall have exclusive jurisdiction over appeals from final common pleas court orders that declare a Pennsylvania statute invalid as repugnant to the Constitution). Superior Court Memorandum, 10/30/2020, at 3-4 (citing 42 Pa.C.S. § 5103 (providing that if an appeal is taken to a court that does not have jurisdiction of the appeal, the court shall transfer the record thereof to the proper tribunal of this Commonwealth where the appeal shall be treated as if originally filed there)). This appeal is now ready for disposition.

## V. The Parties' Arguments

Plaintiff, as Appellant, contends that the trial court erred by holding that Pennsylvania's statutory scheme requiring foreign corporations to register to do business in the Commonwealth and conferring general jurisdiction over the foreign corporation [*26] based upon that registration, violates due process. He contends that, rather than coercing involuntary consent to jurisdiction, the language of Section 5301 gives express notice that a foreign corporation that voluntarily registers to do business in Pennsylvania has consented to the general jurisdiction of Pennsylvania courts. *See* 42 Pa.C.S. § 5301(a)(2)(i) (setting forth as a sufficient basis for asserting general jurisdiction the "qualification as a foreign corporation under the laws of this Commonwealth"). According to Plaintiff, corporations that decide to operate in Pennsylvania are given a clear choice, *i.e.*, avail themselves of the privilege of doing business and profiting from their operations in the Commonwealth by submitting to the jurisdiction of Pennsylvania courts, or do not conduct business in Pennsylvania.

Plaintiff contends that none of the High Court decisions relied upon by the trial court stand for the proposition that a foreign corporation may not validly consent to general jurisdiction by registering to do business in a state. He posits that neither *Goodyear*, *Daimler*, *Tyrrell*, nor *Bristol Myers* addressed the validity of a foreign corporation's consent to general jurisdiction. Instead, Plaintiff submits, those [*27] cases focused on whether the foreign corporate defendant's contacts with the forum State were so systematic and continuous as to render them essentially at home in the forum State, and, thus, subject to general jurisdiction on that basis. *See, e.g.*, Brief for Appellant at 17 (citing *Tyrrell*, 137 S.Ct. at 1559 (declining expressly to examine whether the defendant consented to personal jurisdiction as that issue was not addressed by the lower court)).

Plaintiff maintains that the High Court has not, in fact, addressed the viability of consent to jurisdiction post-

*Daimler*, and federal district courts in the Third Circuit have held, consistent with his position, that registration to do business in Pennsylvania continues to constitute valid consent to jurisdiction after *Daimler*. Brief for Appellant at 13-14 (citing, *inter alia*, *Gorton v. Air and Liquid Systems Corp.*, 303 F.Supp. 3d 278, 296-97 (M.D. Pa. 2018) (rejecting claim that, pursuant to *Daimler*, consent by registration is no longer a valid method of obtaining personal jurisdiction; a corporation that applies for and receives a certificate of authority to do business in Pennsylvania consents to the general jurisdiction of state and federal courts in Pennsylvania); *Bors v. Johnson & Johnson*, 208 F.Supp. 3d 648, 655 (E.D. Pa. 2016) (holding that, post-*Daimler*, parties can agree to waive challenges to personal jurisdiction by registering [*28] to do business under a statute which specifically advises the registrant of its consent by registration)).[7]

Plaintiff submits that district courts from outside Pennsylvania also have held that compliance with a registration statute constitutes valid consent to jurisdiction. *See* Brief for Appellant at 15-16 (collecting cases). He argues that courts have so held because personal jurisdiction, unlike subject matter jurisdiction, is an individual right that a party may waive. Plaintiff concludes that the act of registering to do business, after being specifically advised by Section 5301's plain language that registration subjects the foreign corporation to personal jurisdiction, amounts to valid consent.

Finally, Plaintiff argues that his position is supported by century-old case law from the United States Supreme Court authorizing consent to jurisdiction through mandatory registration statutes or the requisite appointment of an in-state agent to accept service of process, such as *Pennsylvania Fire Ins. Co. of Philadelphia* and *Ex parte Schollenberger*, *supra*. Plaintiff contends that the trial court erred by holding that these cases were implicitly overruled by subsequent High Court decisions.

Accordingly, Plaintiff [*29] requests that we reverse the order of the trial court, and adopt the Superior's Court's decision in *Webb*, *supra*, that "*Daimler* does not eliminate consent as a method of obtaining personal jurisdiction," and that "pursuant to 42 Pa.C.S. § 5301, Pennsylvania may exercise general personal jurisdiction" over a plaintiff's claims

against a foreign defendant.[8] *Webb*, 192 A.3d at 1139.

In response, Defendant contends that it has not consented to general jurisdiction in Pennsylvania by complying with mandatory registration laws, and any finding to the contrary violates due process. Defendant observes that pursuant to 15 Pa.C.S. § 411(a), all foreign corporations doing business in Pennsylvania are required to register. Thus, the ability to do business in the Commonwealth hinges upon compliance with mandatory registration provisions and cannot serve as a voluntary relinquishment of due process rights. Indeed, Defendant maintains, every state has a mandatory corporate registration statute. If compliance with registration statutes served as voluntary consent to general jurisdiction, Defendant submits, many large corporations that deal in goods and services nationwide could theoretically be subject to general jurisdiction in all fifty states, a premise that is wholly [*30] inconsistent with *Daimler*. Brief for Appellee at 15 (citing *Daimler*, 571 U.S. at 139 n. 20 (providing that "[a] corporation that operates in many places can scarcely be deemed at home in all of them")).

Rather than a voluntary choice, Defendant agrees with the trial court that Pennsylvania's statutory scheme creates an impermissible Hobson's choice between relinquishing its right to due process by registering to do business in the Commonwealth and thereby submitting to the general jurisdiction of Pennsylvania courts, or foregoing the privilege of doing business in Pennsylvania. According to Defendant, this violates the doctrine of "unconstitutional conditions," which provides that "the government may not deny a benefit to a person because he exercises a constitutional right." Brief for Appellee at 24 (citing *Koontz v. St. Johns River Water Mgmt. Dist.*, 570 U.S. 595, 604, 133 S. Ct. 2586, 186 L. Ed. 2d 697 (2013)). The impossibility of the "choice" is particularly true, it asserts, considering that common carriers have no realistic opportunity to decide not to conduct business in the Commonwealth.

To conclude that registering as a foreign corporation invokes all-purpose general jurisdiction, Defendant submits, eviscerates the Supreme Court's general jurisdiction framework set forth in *Goodyear* and *Daimler*, and violates federal due process [*31] by failing to comport with *International Shoe*'s "traditional conception of fair play and substantial justice." Brief for Appellee at 21 (citing *International Shoe*, 326 U.S. at 320). Pursuant to *Goodyear*, Defendant maintains, a court may exercise general jurisdiction over a foreign corporation if the corporation's contacts with the forum State are so continuous and

---

[7] Plaintiff also cites several cases that were decided prior to *Daimler* to support his position that the trial court's ruling is erroneous. *See, e.g.*, Brief for Appellant at 13-14 (citing, *inter alia*, *Bane v. Netlink, Inc.*, 925 F.2d 637, 640 (3d Cir. 1991) (holding that "Pennsylvania law explicitly states that the qualification of a foreign corporation to do business is sufficient contact to serve as the basis for the assertion of personal jurisdiction")).

[8] The Pennsylvania Association for Justice and the Locks Law Firm have filed *amicus* briefs in support of Plaintiff.

systematic as to render the defendant "essentially at home in the forum State." *Id.* (citing *Goodyear*, 564 U.S. at 919). Other than the exceptional case, Defendant maintains, *Daimler* expressly held that a corporate defendant is "essentially at home" only where it incorporates or maintains its principal place of business. As it is a Virginia corporation with its principal place of business in Virginia, Defendant contends that it is not at home in Pennsylvania under *Daimler* merely because it registered to do business here, and thus, general jurisdiction cannot lie in this Commonwealth's courts.

Defendant interprets *Daimler* as further holding that a court cannot subject a foreign corporation to general all-purpose jurisdiction based exclusively on the fact that it conducts business in the forum State. *See Daimler*, 571 U.S. at 138 (holding that pursuant to the Due Process Clause, subjecting a foreign corporation to general jurisdiction in every state in which it "engages in [*32] a substantial, continuous, and systematic course of business" is "unacceptably grasping"). Acknowledging the case law relied upon by Plaintiff for the contrary position, Defendant asserts that other courts have resolved the issue consistent with its view. *See* Supplemental Brief for Appellee at 3-5 (citing *In re Asbestos Products Liability Litigation (No. VI)*, 384 F.Supp. 3d 532, 540-41 (E.D. Pa. 2019) (holding that "mandatory statutory regime purporting to confer consent to jurisdiction in exchange for the ability to legally do business in a state is contrary to the rule in *Daimler* and, therefore, can no longer stand"); *Reynolds v. Turning Point Holding Co. LLC*, 2020 U.S. Dist. LEXIS 33163, 2020 WL 953279 (E.D. Pa. Feb. 26, 2020) (adopting the analysis in *In re Asbestos Products Liability Litigation (No. VI)*); *Fend v. Allen-Bradley Co.*, 2019 U.S. Dist. LEXIS 205730, 2019 WL 6242119 (E.D. Pa. Nov. 20, 2019) (same)).

Defendant also agrees with the trial court that Plaintiff's position infringes upon the doctrine of federalism, as discussed in *Bristol-Myers*, *supra*, where the Court considered sovereignty concerns in its personal jurisdiction analysis. It observes that personal jurisdiction "[e]nsure[s] that the States through their courts, do not reach out beyond the limits imposed on them by their status as coequal sovereigns in a federal system." Brief for Appellee at 23 (citing *World-Wide Volkswagen Corp., v. Woodson*, 444 U.S. 286, 292-93, 100 S. Ct. 559, 62 L. Ed. 2d 490 (1980)). As clarified in *Bristol-Myers*, Defendant avers, the Due Process Clause acts as an instrument of interstate federalism, which may divest the State of [*33] the power to render a valid judgment. Defendant asserts that Pennsylvania should not reach beyond its limits by adjudicating the instant action involving a Virginia plaintiff, a Virginia defendant, and a cause of action based on events that occurred in Virginia. As noted by the trial court, Defendant submits, "the Pennsylvania Long-Arm

Statute cannot override the sovereignty of the individual states, nor can it alter the Constitution's deliberate framework of interstate federalism." Brief for Appellee at 24.

Defendant further asserts that the Superior Court's 2018 decision in *Webb*, which held to the contrary, should be rejected on due process grounds, a basis that the *Webb* court did not explore in its opinion. Brief for Appellee at 14 (citing Trial Court Supplemental Opinion, 9/5/2018 (distinguishing *Webb* from the instant case on grounds that the *Webb* court "did not address the federalism concerns" underlying the trial court's decision)).

Finally, Defendant agrees with the trial court that High Court decisions rendered prior to *International Shoe*, which permitted courts to obtain personal jurisdiction over foreign corporations *via* mandatory registration statutes, are relics that have subsequently been implicitly overruled. [*34] [9] Accordingly, Defendant requests that we affirm the order of the trial court declaring unconstitutional Pennsylvania's general jurisdiction statute.[10]

In his reply brief, Plaintiff contends that the High Court's discussion of the requisite contacts necessary to demonstrate that a defendant is "at home" in the forum state is inapplicable because he is not seeking jurisdiction based on Defendant's contacts with the Commonwealth. Rather, Plaintiff asserts, he is seeking jurisdiction based exclusively upon Defendant's consent to jurisdiction as manifested by its registration to do business in Pennsylvania, the constitutional validity of which has never been addressed by the High Court.

Additionally, although Plaintiff litigated this matter on the premise that Defendant was required to register as it conducted business in Pennsylvania, and that such registration served as voluntary assent to general jurisdiction, for the first time in this litigation, Plaintiff asserts in his reply brief that Defendant was not required to register to do business in Pennsylvania because, as a railroad engaged in interstate

---

[9] Defendant offers additional grounds to affirm the trial court's decision based on, *inter alia*, the Dormant Commerce Clause because states may not impose burdens on interstate commerce that exceed any local state interest. *Id.* at 26. Defendant further alleges that Plaintiff waived the central argument in its appeal because his complaint does not contain an averment that Defendant was a foreign corporation registered to do business in the Commonwealth. *Id.* at 30.

[10] An *amicus* brief in support of Defendant has been filed jointly by the Pennsylvania Defense Institute, the Philadelphia Association of Defense Counsel, and the Washington Legal Foundation. Additionally, CSX Transportation, Inc., has filed an *amicus* brief in favor of Defendant.

commerce, the registration requirement does not apply. *See [\*35]* 15 Pa.C.S. § 403(a)(11) (describing eleven activities that are not considered "doing business in this Commonwealth" for registration purposes, one of which is "[d]oing business in interstate or foreign commerce"). Plaintiff posits that because Defendant was not required to register to do business at all, its registration cannot be viewed as coercive in violation of due process.

Plaintiff posits that Defendant registered to do business in Pennsylvania n because it was required to do so, but to obtain the statutory benefits attendant therewit such as gaining all of the same benefits and privileges of Pennsylvania corporation Reply Brief for Appellant at 8 (citing 15 Pa.C.S. § 402(d) (providing that a registere foreign association, except as otherwise provided by law, shall enjoy the same rights an privileges as a domestic entity); *id.* at 9 (citing 15 Pa.C.S. § 1502(a) (setting forth gener powers of business corporations)). Plaintiff submits that the only penalty arising from th failure to register is that the foreign corporation may not "maintain an action or proceedin in Pennsylvania. Reply Brief for Appellant at 10 (citing 15 Pa.C.S. § 411(b)). Whi conceding that the statutory scheme encourages foreign corporations to register, Plaint concludes that such encouragement **[\*36]** does not constitute coercion in violation of due process.[11], [12]

---

[11] Responding to Defendant's contentions, Plaintiff also submits that Pennsylvania's registration statute does not violate the Commerce Clause because it regulates purely intrastate commerce. He further submits that the registration statute does not violate the unconstitutional conditions doctrine because the statute affords foreign corporations a clear choice to either register to obtain the benefits of a Pennsylvania corporation and consent to general jurisdiction or decline to register and forego the benefits of Pennsylvania corporations. Finally, Plaintiff maintains that he did not waive the assertion that Defendant registered as a foreign corporation in Pennsylvania because Defendant concedes this fact. Reply Brief for Appellant at 15 n.11 (citing R.19).

[12] We summarily dispose of an additional claim in Plaintiff's reply brief. Plaintiff contends that Defendant failed to present to the trial court a facial or as-applied challenge to Section 5301(a)(2); thus, the constitutional issue was waived, and the trial court should not have entertained the issue. This claim is unpersuasive. In its preliminary objections to Plaintiff's complaint, Defendant contended that the court lacked both specific and general jurisdiction because the case did not arise in Pennsylvania, Defendant is not "at home" in Pennsylvania pursuant to *Goodyear* and *Daimler*, and it did not consent to jurisdiction by registering to do business pursuant to Section 5301(a)(2). Preliminary Objections to Plaintiff's Complaint, 10/10/2017, at ¶¶ 5, 9. Indeed, an entire section of Defendant's preliminary objections, captioned "Norfolk Southern Did Not Consent To Jurisdiction In Pennsylvania, And The Due Process Clause of the Fourteenth Amendment Prohibits The Exercise of

Defendant refutes Plaintiff's reliance on Section 403(a)(11) of the Associations Code. While it concedes that, as a railroad, most of its activities in Pennsylvania involve interstate commerce, which would not, by itself, constitute "doing business," Defendant asserts that it is only when a foreign corporation engages exclusively in interstate commerce that a state is precluded from requiring the corporation to register, as to do so would violate the Commerce Clause. Defendant asserts that it unquestionably also engages in some intrastate activities, as Plaintiff has readily conceded in the trial court and on appeal to this Court. Supplemental Brief for Appellee, at 2 n.6 (citing Plaintiff's Memorandum of Law in Support of Plaintiff's Response to Defendant's Preliminary Objections, 10/27/2017, at 11 (asserting that Defendant and its predecessors "have been doing business in this State for over 100 years"); and Brief for Appellant [Plaintiff] at 8-9 (outlining Defendant's extensive operations in Pennsylvania, including owning 2,278 miles of track and operating eleven rail yards and three locomotive repair shops)). Thus, Defendant maintains, it is clear that **[\*37]** it conducts business in Pennsylvania and is subject to the registration requirement. Defendant posits that Plaintiff's effort to distract from the issue at hand should be rejected.[13]

## VI. Standards of Review

The important constitutional issue before this Court presents a question of law over which our standard of review is *de novo*, and our scope of review is plenary. *Commonwealth v. Torsilieri*, 232 A.3d 567, 575 (Pa. 2020). This case is before the Court upon the trial court's sustaining of Defendant's preliminary objections. The standard for reviewing

---

General Jurisdiction Based on Compliance with Mandatory Business Registration Requirements," was dedicated to the issue. *Id.* at Section A.4; ¶¶ 24-32. Accordingly, the trial court did not err in addressing the issue, and there is no impediment to this Court's appellate review.

[13] This Court subsequently granted Plaintiff's application to file a post-submission communication, informing the Court of the Georgia Supreme Court's decision in *Cooper Tire & Rubber Co. v. McCall*, 312 Ga. 422, 863 S.E.2d 81 (Ga. 2021). There, notwithstanding *Goodyear* and *Daimler*, the Georgia Supreme Court declined to overrule its previous holding that its state courts may exercise general personal jurisdiction over a foreign corporation that is authorized to transact business in Georgia. While recognizing tension between its decision and the High Court's recent decisions on the issue, the Georgia Court found itself constrained by the High Court's pre-*International Shoe* decision in *Pennsylvania Fire Insurance Co., supra*, which sanctioned the concept of general corporate jurisdiction by consent. Respectfully, for the reasons set forth *infra*, we are unpersuaded by this position.

preliminary objections in the nature of a demurrer is limited. The question presented by the demurrer is whether, on the facts averred, the law says with certainty that no recovery is possible. *Excavation Techs., Inc. v. Columbia Gas Co.*, 604 Pa. 50, 985 A.2d 840, 842 (Pa. 2009). Where a doubt exists as to whether a demurrer should be sustained, that doubt should be resolved in favor of overruling it. *Id.*

There is a strong presumption that a statutory scheme is constitutional; the presumption may be rebutted only by proof that the law clearly, palpably, and plainly violates the constitution. *Ladd v. Real Estate Comm'n*, 230 A.3d 1096, 1109-10 (Pa. 2020); 1 Pa.C.S. § 1922(3) (providing that the "General Assembly does not intend to violate the Constitution of the United States or of this Commonwealth").

Further, it is well settled that in resolving a defendant's **[\*38]** challenge to personal jurisdiction, the burden is on the defendant, as the moving party, to object to jurisdiction; once raised by a defendant, the burden of establishing personal jurisdiction under Pennsylvania's long arm statute is placed on the plaintiff asserting jurisdiction. *Hammons v. Ethicon, Inc.*, 240 A.3d 537, 561 (Pa. 2020) (citing *Biel v. Herman Lowenstein, Inc.*, 411 Pa. 559, 192 A.2d 391, 393 (Pa. 1963)).

### VII. Section 403(a)(11)

Preliminarily, we address Plaintiff's claim, set forth in his reply brief, that Defendant, as a railway corporation, is exempt from the registration requirement pursuant to Section 403(a)(11) of the Associations Code because it engages in interstate commerce. As noted, Plaintiff's claim is inconsistent with the position he has taken throughout this litigation, *i.e.*, that Defendant conducts business in Pennsylvania, is subject to the registration requirement set forth in Section 411(a) of the Associations Code, and voluntarily consented to general jurisdiction pursuant to 42 Pa.C.S. § 5301(a)(2)(i), which provides that qualification as a foreign corporation under the laws of this Commonwealth serves as a sufficient basis for Pennsylvania courts to exercise general personal jurisdiction.

We further observe that issues presented to this Court for the first time in a reply brief are waived. *See* Pa.R.A.P. 2113 (providing that the scope of the reply **[\*39]** brief is limited to matters raised by appellee's brief); *Commonwealth v. Fahy*, 558 Pa. 313, 737 A.2d 214, 218 n.8 (1999) (holding that an appellant is prohibited from raising new issues in a reply brief). Nevertheless, because the mandatory nature of the registration requirement lies at the center of our due process analysis, we examine the issue and, respectfully, find it unpersuasive.[14]

To determine whether Section 403(a)(11) exempts Defendant from the registration requirement, we must review the governing statutory provisions. We keep in mind that the Statutory Construction Act directs that the object of all interpretation and construction of statutes is to ascertain and effectuate the intention of the General Assembly. 1 Pa.C.S. § 1921(a). When interpreting statutory text, a court gives significant weight to the plain language of the statute because it is the best indicator of legislative intent. *Terra Firma Builders, LLC v. King*, 249 A.3d 976, 983 (Pa. 2021). Courts presume that the General Assembly did not intend a result that is absurd, impossible of execution, or unreasonable. 1 Pa.C.S. § 1922(1). As noted, courts likewise assume that the General Assembly does not intend to violate the Constitution. *Id.* § 1922(3). Furthermore, the words of a statute shall be construed according to rules of grammar and according to their common and approved usage. *Id.* at § 1903(a).

As referenced **[\*40]** throughout, Section 411 of the Associations Code provides that, except in circumstances inapplicable here, "a foreign filing association or foreign limited liability partnership may not do business in this Commonwealth until it registers with the department under this chapter."[15] 15 Pa.C.S. § 411(a). Regarding the penalty for failing to register, Section 411 further states that a foreign corporation "doing business in this Commonwealth may not maintain an action or proceeding in this Commonwealth unless it is registered to do business under this chapter."[16] *Id.* at 411(b). Additionally, Section 411 requires registered corporations to "have and continuously maintain, in this Commonwealth, a registered office." *Id.* at § 411(f).

Germane to this discussion, the Associations Code does not define the phrase "doing business;" instead, Section 403 enumerates a non-exhaustive list of "[a]ctivities not constituting doing business." Section 403 states, in relevant part:

> (a) General rule. - Activities of a foreign filing association or a foreign limited liability partnership that

---

[14] Following oral argument, pursuant to this Court's directive, the parties filed supplemental briefs regarding the effect of Section 403(a)(11) on this appeal.

[15] "Foreign filing association" is defined as a "foreign association, the formation of which requires the filing of a public organic record," and the definition of "association" includes, *inter alia*, a "corporation for profit or not for profit." *Id.* at § 102.

[16] The failure to register does not preclude the foreign corporation from defending an action filed in this Commonwealth. *Id.* at § 411(c).

do not constitute doing business in this Commonwealth under this chapter shall include the following: * * *

(11) Doing business in interstate commerce.

15 Pa.C.S. § 403(a)(11).

Contrary to Plaintiff's contention, this provision **[\*41]** does not create a blanket exemption from the registration requirement for all foreign corporations who engage in interstate commerce. The plain text provides simply that the activity of engaging in interstate commerce, in and of itself, is not an activity that affords a sufficient basis to confer upon Pennsylvania courts general jurisdiction over a foreign corporation. When interpreting statutory language, we must listen attentively not only to what the statute says, but also to what the statute does not say. *Woodford v. Commonwealth Ins. Department*, 243 A.3d 60, 74-75 (Pa. 2020). Section 403 does not indicate that a foreign corporation that conducts intrastate business in Pennsylvania is somehow immunized from the registration statute if it also engages in interstate commerce.

The *Commentary* to Section 403 supports our plain language interpretation, explaining that Section 403 is set forth in a negative fashion by enumerating the certain activities that do not constitute doing business, thereby indicating that "any conduct more regular, systematic, or extensive than that described in subsection (a) constitutes doing business and requires the foreign association to register to do business." 15 Pa.C.S. § 403 cmt. The *Commentary* further provides examples of typical conduct requiring registration including, "maintaining **[\*42]** an office to conduct local intrastate business, selling personal property not in interstate commerce, entering into contracts relating to the local business or sales, and owning or using real estate for general purposes." *Id.* Defendant maintains that it engages in these types of intrastate activities in Pennsylvania in addition to engaging in interstate commerce as a railroad.

Defendant asserts that Plaintiff had conceded this fact in the litigation below, only to change his position in his reply brief filed in this Court. *See* Supplemental Brief for Appellee at 2 n.6 (citing Plaintiff's Memorandum of Law in Support of Plaintiff's Response to Defendant's Preliminary Objections, 10/27/2017, at 11 (asserting that Defendant and its predecessors "have been doing business in this State for over 100 years"); Brief for Appellant [Plaintiff] at 8-9 (outlining Defendant's extensive operations in Pennsylvania, including owning 2,278 miles of track and operating eleven rail yards and three locomotive repair shops). Plaintiff never argued in response to Defendant's preliminary objections that Defendant was not "doing business" for registration purposes, or that factual development was necessary **[\*43]** to determine that issue. Instead, Plaintiff accepted that Defendant was doing

business in the Commonwealth for purposes of the registration statute and contended that Pennsylvania could condition the privilege of doing business on a foreign corporation's submission to general jurisdiction in the Commonwealth's courts.

We are aligned not only with Defendant's interpretation of the governing statute, but also with its recitation of the record. Pursuant to Section 403(a)(11), a foreign corporation that conducts intrastate business in Pennsylvania is not excused from the registration requirement merely because it also engages in interstate commerce. This conclusion also is made clear in the *Commentary* to Section 403(a)(11), which indicates that the limitation set forth therein "reflect[s] the provisions of the United States Constitution that grant to the United States Congress exclusive power over interstate commerce, and preclude[s] states from imposing restrictions or conditions upon this commerce." 15 Pa.C.S. § 403 cmt. It additionally advises that this section should be interpreted "in a manner consistent with judicial decisions under the United States Constitution." *Id.* Federal jurisprudence supports our construction of Section 403(a). *See Eli Lilly & Co. v. Sav-On-Drugs, Inc.*, 366 U.S. 276, 278-79, 81 S. Ct. 1316, 6 L. Ed. 2d 288 (1961) (deeming **[\*44]** it well established that, pursuant to the federal Commerce Clause, a state may not require a foreign corporation to get a certificate of authority to do business if its activities in the state are limited to "wholly interstate" business; however, a foreign corporation "could not escape state regulation merely because it is also engaged in intrastate commerce").

Accordingly, we hold that Section 403(a)(11) does not, as a matter of law, exempt Defendant from the registration requirement; thus, that provision has no impact on this appeal. As Defendant was required to register to do business in this Commonwealth, we next examine whether that registration served as voluntary consent to general jurisdiction in Pennsylvania courts.

*VIII. Merits Analysis*

Proceeding to examine the merits of the issue presented, we begin by acknowledging that the High Court has not addressed the question of whether it violates due process when a state conditions the privilege of doing business in the forum State upon the foreign corporation's submission to general jurisdiction. As the parties have demonstrated cogently, since the Court's pronouncement in *Daimler*, courts across the nation, both state and federal, have grappled with issues concerning whether **[\*45]** compliance with a particular registration statute constitutes valid consent to general jurisdiction, and have reached disparate results.

In fact, the precise issue presented in this appeal may be peculiar to Pennsylvania. While all states require foreign corporations to register to do business within their boundaries, most state statutes do not provide expressly that the act of registering to do business constitutes a specific basis upon which a court may assert general jurisdiction over all claims against a foreign corporation. *See Tanya J. Monestier, Registration Statutes, General Jurisdiction, and the Fallacy of Consent*, 36 Cardozo L. Rev. 1343, 1363 (2015) (providing that "[e]very state has a registration statute that requires corporations doing business in the state to register with the state and appoint an agent for service of process") (footnote omitted); *id.* at 1366 (stating that "[o]nly one state, Pennsylvania, actually purports to directly address the jurisdictional consequences of registering to do business").[17] Thus, until the High Court speaks on the interplay between consent to jurisdiction by registration and the due process limits on general jurisdiction, it is our role to interpret that Court's governing case law **[\*46]** on the topic and apply it to the facts presented.

As articulated fully *supra*, the parties disagree regarding the impact that *Daimler* and *Goodyear* have on the present inquiry. Plaintiff argues that the High Court's rulings in those cases shed little, if any, light on this appeal because they are silent regarding whether a foreign corporation voluntarily consents to general jurisdiction by registering to do business in a state, particularly where the state statute places the corporation on notice that registration results in submission to general jurisdiction. Plaintiff views the general jurisdiction analysis in *Goodyear* and *Daimler*, examining whether the foreign corporation's contacts with the forum State were so systematic and continuous as to render them essentially at home in the forum State, as inapplicable to the issue of whether such foreign corporation's consent to general jurisdiction is voluntary.

---

[17] It is for this reason that we do not rely extensively on case law of our sister states which have held that registering to do business does not constitute valid consent to general jurisdiction. *See e.g. Genuine Parts Co. v. Cepec*, 137 A.3d 123 (Del. 2016); *Aspen Am. Ins. Co. v. Interstate Warehousing, Inc.*, 2017 IL 121281, 418 Ill. Dec. 282, 90 N.E.3d 440 (Ill. 2017); *State ex rel. Norfolk Southern Ry. v. Dolan*, 512 S.W.3d 41 (Mo. 2017); *DeLeon v. BNSF Ry. Co.*, 2018 MT 219, 392 Mont. 446, 426 P.3d 1 (Mont. 2018); *Figueroa v. BNSF Ry. Co.*, 361 Ore. 142, 390 P.3d 1019 (Ore. 2017); *Segregated Account of Ambac Assur. Corp v. Countrywide Home Loans*, 2017 WI 71, 376 Wis. 2d 528, 898 N.W.2d 70 (Wis. 2017). While we find these decisions persuasive and well-reasoned, we recognize that the constitutional rulings therein did not involve statutes, like our own, that provide expressly that qualification as a foreign corporation constitutes a sufficient basis to allow a court to exercise general jurisdiction over a foreign corporation.

Defendant, on the other hand, interprets *Goodyear* and *Daimler* as setting forth the minimum due process requirements for general jurisdiction, which apply in every case where general jurisdiction is asserted. It maintains that because all foreign corporations that conduct business in Pennsylvania must register, the ability **[\*47]** to do business in the Commonwealth hinges upon compliance with mandatory registration provisions and cannot serve as a voluntary relinquishment of due process rights.

Upon a close examination of the High Court's most recent directives, we are persuaded that our statutory scheme fails to comport with the guarantees of the Fourteenth Amendment; thus, it clearly, palpably, and plainly violates the Constitution. It is beyond cavil that a "state court's assertion of jurisdiction exposes defendants to the State's coercive power, and is therefore subject to review for compatibility with the Fourteenth Amendment's Due Process Clause." *Goodyear*, 564 U.S. at 918. The Due Process Clause protects the defendant's liberty interest in not being subject to the binding judgments of a forum with which the defendant has no meaningful "contacts, ties, or relations." *International Shoe*, 326 U.S. at 319.

It bears repeating that personal jurisdiction originally was tied directly to a defendant's presence within the forum State, and service of process on a defendant physically present in the forum State conferred personal jurisdiction over that defendant. *Pennoyer*, 95 U.S. at 722. Thus, states enacted registration statutes that required foreign corporations to appoint in-state registered agents to receive service of process, thereby rendering them "present" in the forum **[\*48]** State for purposes of subjecting them to the jurisdiction of local courts in cases arising from transactions within the forum State. *Morris & Co. v. Skandinavia Ins. Co.*, 279 U.S. at 408-09.

As noted, in 1945, the seminal decision in *International Shoe* transformed the personal jurisdiction analysis from the territorial approach applied in *Pennoyer* to a contacts-focused methodology. *International Shoe*, 326 U.S. at 316-17. The Court explained that a tribunal's authority depends upon the defendant's minimum contacts with the forum State such that the maintenance of the suit "does not offend traditional notions of fair play and substantial justice." *Id.* at 316 (citing *Milliken v. Meyer*, 311 U.S. at 463). Distinguishing general (all-purpose) jurisdiction, at issue here, from specific (case-linked) jurisdiction, the Court in *International Shoe* described general jurisdiction as encompassing "instances in which the continuous corporate operations within a state [are] so substantial and of such a nature as to justify suit against it on causes of action arising from dealings entirely distinct from those activities." *Id.* at 318. Accordingly, general jurisdiction

could be exercised within the confines of due process where a foreign corporation conducted substantial and continuous activities in the forum State.

As recognized astutely by the trial court, the High Court's decisions decades [*49] later in *Goodyear* and *Daimler* "dramatically altered" the general jurisdiction analysis by narrowing significantly the constitutional bases upon which a state court could exercise general personal jurisdiction over a foreign corporation. Trial Court Opinion, 5/30/2018, at 4. *Goodyear* and *Daimler* held expressly that "[a] court may assert general jurisdiction over foreign (sister-state or foreign-country) corporations to hear any and all claims against them when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." *Daimler*, 571 U.S., at 127 (quoting *Goodyear*, 564 U. S. at 919). The "paradigm" forums in which a corporate defendant is "at home," the High Court explained, are the corporation's place of incorporation and its principal place of business. *Daimler*, 571 U.S. at 137; *Goodyear*, 564 U.S. at 924.

The Court observed that in an "exceptional case," a corporate defendant's operations in another forum "may be so substantial and of such a nature as to render the corporation at home in that State." *Daimler*, 571 U.S. at 139 n.19. As the textbook example of an "exceptional case," the Court cited *Perkins v. Benguet Consol. Mining Co.*, 342 U.S. 437, 448, 72 S. Ct. 413, 96 L. Ed. 485, 63 Ohio Law Abs. 146 (1952), which held that where war had forced the foreign corporation's owner to relocate the enterprise temporarily from the Philippines to Ohio, Ohio then became the center of the corporation's [*50] activities, which was sufficient to confer Ohio courts with general jurisdiction over the foreign corporation. *Id.* at 448.

The exercise of jurisdiction over Defendant in this case does not satisfy due process as required by *Goodyear* and *Daimler*. Here, a Virginia plaintiff filed the FELA action against Defendant, a foreign railway company, which is incorporated in Virginia and has its principal place of business there, alleging injuries in Virginia and Ohio. It is obvious that no specific jurisdiction lies in Pennsylvania as there is no connection whatsoever between the case and the forum State. It is equally clear that Defendant did not incorporate in Pennsylvania and does not have its principal place of business here. Further, there is no indication that this is an otherwise "exceptional case," as arose in *Perkins*, *supra*, where the circumstances demonstrated that Defendant is essentially "at home" in Pennsylvania so as to afford our courts general jurisdiction.

Instead, Plaintiff alleges jurisdiction based exclusively on Defendant's compliance with a mandatory registration statute. While not set forth in the registration statute itself, Pennsylvania's long-arm statute provides in Section 5301(a)(2)(i) that "qualification as a foreign corporation [*51] under the laws of this Commonwealth" constitutes a sufficient basis to enable Pennsylvania courts to exercise general personal jurisdiction over the foreign corporation. 42 Pa.C.S. § 5301(a)(2)(i). This provision affords Pennsylvania courts general personal jurisdiction over foreign corporations, regardless of whether the foreign corporation has incorporated in the Commonwealth, established its principal place of business here, or is otherwise "at home" in Pennsylvania. Indeed, the foreign corporation need not even engage in business in the Commonwealth; the mere completion of the act of registering to do so affords Pennsylvania judicial tribunals general jurisdiction over the foreign corporation. *Id.* The Legislature's grant of such broad jurisdictional authority is incompatible with the Fourteenth Amendment. Simply stated, a statute may not require what the Constitution prohibits.

As Defendant posits, to conclude that registering as a foreign corporation invokes all-purpose general jurisdiction eviscerates the Supreme Court's general jurisdiction framework set forth in *Goodyear* and *Daimler* and violates federal due process by failing to comport with *International Shoe*'s "traditional conception of fair play and substantial justice." *International Shoe*, 326 U.S. at 320. It would also be contrary [*52] to *Daimler's* directive that a court cannot subject a foreign corporation to general all-purpose jurisdiction based exclusively on the fact that it conducts business in the forum state. *See Daimler*, 571 U.S. at 138 (holding that pursuant to the Due Process Clause, subjecting a foreign corporation to general jurisdiction in every state in which it "engages in a substantial, continuous, and systematic course of business" is "unacceptably grasping").

Moreover, we concur with the trial court that Pennsylvania's statutory scheme of requiring foreign corporations to submit to general jurisdiction as a condition of doing business here is contrary to the concept of federalism, as set forth by the High Court in *Bristol-Myers, supra. See* Trial Court Opinion, 5/30/2018, at 13 (opining that "[b]y requiring foreign corporations to submit to general jurisdiction as a condition of doing business here, Pennsylvania's statutory scheme infringes upon our sister state's ability to try cases against their corporate citizens").

In *Bristol-Myers*, the Court recognized that when determining whether personal jurisdiction is present, courts should consider the effect of the defendant's "[submission] to the coercive power of a State that may have little legitimate interest [*53] in the claims in question," as the "sovereignty

of each state implies a limitation of the sovereignty of all its sister states." *Id.*, 137 S.Ct. at 1780 (citations omitted). The Court held that this federalism may be determinative, as "the Due Process Clause, acting as an instrument of interstate federalism, may sometimes act to divest the State of its power to render a valid judgment." *Id.* at 1781 (citing *World-Wide Volkswagen Corp., v. Woodson*, 444 U.S. at 294). The factual predicate underlying the instant appeal illustrates the textbook example of infringement upon the sovereignty of sister states, as Pennsylvania has no legitimate interest in a controversy with no connection to the Commonwealth that was filed by a non-resident against a foreign corporation that is not at home here.

Additionally, we are unpersuaded by Plaintiff's reliance upon Supreme Court cases decided during the *Pennoyer* era, when courts applied a territorial approach to general jurisdiction, as opposed to analyzing the foreign corporation's affiliations with the forum State as mandated by *International Shoe. See, e.g., Pennsylvania Fire Ins. Co. of Philadelphia v. Gold Issue Mining & Milling Co.*, 243 U.S. at 95-96 (holding that an Arizona corporation consented to jurisdiction in Missouri when it complied with Missouri's foreign corporation law by appointing an agent to accept service of process as statutorily required); and *Ex parte Schollenberger*, 96 U.S. at 376-77 (holding [*54] that a Pennsylvania federal court had personal jurisdiction over foreign insurance corporations because a Pennsylvania law required the corporations to appoint an agent to receive process in the Commonwealth in consideration of granting the privilege of doing business).

The High Court has cautioned against relying upon cases decided before *International Shoe* due to concerns that these cases were adjudicated in an era when territorial analysis governed jurisdictional questions. *See Daimler*, 571 U.S. at 138 n.18 (discounting a party's reliance upon pre-*International Shoe* cases "decided in the era dominated by *Pennoyer's* territorial thinking" because such cases "should not attract heavy reliance today"); *see also Shaffer v. Heitner*, 433 U.S. 186, 212, 97 S. Ct. 2569, 53 L. Ed. 2d 683 & n.39 (1977) (*superceded by statute)* (providing that "all assertions of state-court jurisdiction must be evaluated according to the standards set forth in *International Shoe* and its progeny" and that "[t]o the extent that prior decisions are inconsistent with this standard, they are overruled"). Thus, we decline to follow *Pennoyer*-era High Court decisions that resolve questions of general jurisdiction because they do not hold significant precedential weight in federal jurisprudence on the issue.

Accordingly, we hold that our statutory scheme is unconstitutional to the extent [*55] that it confers upon Pennsylvania courts general jurisdiction over foreign corporations that are not "at home" in Pennsylvania pursuant

to *Goodyear* and *Daimler*. Respectfully, we reject the Superior Court's decision in *Webb*, which held to the contrary.

The High Court's decision in *BNSF Railway Co. v. Tyrrell*, *supra*, decided after *Goodyear* and *Daimler*, supports our conclusion. In that case, two non-residents of Montana commenced a FELA action against a railway company ("BNSF") in a Montana state court, alleging injuries incurred while working for the company outside of Montana. The state court rejected the railway company's contention that it was not "at home" in Montana pursuant to *Daimler*, holding that Montana could exercise general personal jurisdiction over the railway company under, *inter alia*, Montana Rule of Civil Procedure 4(b)(1), which provided for the exercise of general jurisdiction over "persons found within" the State. *Tyrrell*, 137 S.Ct. at 1554. The state court further rejected BSNF's claim that the state rule violated due process.

The High Court reversed, finding that the state rule providing for general jurisdiction over all persons found within the state did not comport with due process. Rejecting the plaintiff's contention that *Daimler* was distinguishable because it did not involve a FELA claim or a railroad defendant, [*56] the High Court explained that *Daimler's* holding "applies to all state-court assertions of general jurisdiction over nonresident defendants; the constraint does not vary with the type of claim asserted or business enterprise sued." *Id.* at 1559. The Court noted that BNSF was not incorporated in Montana and did not maintain its principal place of business there.

Acknowledging that BNSF had over 2,000 miles of railroad track and employed more than 2,000 workers in Montana, the High Court reiterated that "the general jurisdiction inquiry does not focus solely on the magnitude of the defendant's in-state contacts." *Id.* (citing *Daimler*, 571 U.S. at 139 n.20). Instead, the Court asserted that the inquiry "calls for an appraisal of a corporation's activities in their entirety;" "[a] corporation that operates in many places can scarcely be deemed at home in all of them." *Id.* The Court concluded that the business BNSF conducted in Montana was sufficient to subject it to specific jurisdiction over claims relating to such affiliations, but insufficient pursuant to *Goodyear* and *Daimler* to subject BNSF to general jurisdiction over the claims alleged therein, which were unrelated to any activity occurring in the forum State. *Id.*

We would be remiss to omit [*57] that the High Court in *Tyrell* expressly declined to address the plaintiff's argument that BSNF consented to personal jurisdiction in Montana, as the state court had not entertained that contention. *Tyrrell*, 137 S.Ct. at 1559. Nonetheless, armed with the guidance of the Court's decisions in *Goodyear*, *Daimler*, *Bristol-Myers*, and *Tyrell* and in consideration of jurisprudence governing

consent to jurisdiction, we proceed to that next step and analyze the constitutional validity of consent to jurisdiction by registration.

As referenced, the requirement of personal jurisdiction "recognizes and protects an individual liberty interest," which, like other individual rights, may be waived in a variety of ways, including consenting to the personal jurisdiction of the court by appearance, contractually agreeing to personal jurisdiction, or stipulating to personal jurisdiction. *Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinee*, 456 U.S. at 702-03. Accordingly, consent to jurisdiction by waiving one's due process rights is an independent basis for jurisdiction, assuming that the consent is given voluntarily. *See Brady v. United States*, 397 U.S. at 748 (observing that waivers of constitutional rights must be voluntary, knowing, and intelligent).

Thus, to find that Defendant consented to the general jurisdiction of Pennsylvania courts when it registered to do [*58] business here, we must conclude that it voluntarily, knowingly, and intelligently waived its due process liberty interest in not being subject to the binding judgments of a forum with which it has no meaningful "contacts, ties, or relations." *International Shoe*, 326 U.S. at 319. Unlike other states, whose statutes do not expressly condition the privilege to do business upon submission to general jurisdiction, foreign corporations are given reasonable notice that "qualification as a foreign corporation under the laws of this Commonwealth" constitutes "a sufficient basis" to "enable the tribunals of the Commonwealth to exercise general personal jurisdiction" over a foreign corporation.[18] 42 Pa.C.S. § 5301(a)(2)(i). That notice, however, does not render the consent voluntary.

Pursuant to the unconstitutional conditions doctrine, the government may not deny a benefit to a person because that person exercised a constitutional right. *See Koontz v. St. Johns River Water Mgmt. Dist.*, 570 U.S. at 604 (explaining that the unconstitutional conditions doctrine prevents the government from coercing people into relinquishing constitutional rights); *see also Perry v. Sindermann*, 408 U.S. 593, 597, 92 S. Ct. 2694, 33 L. Ed. 2d 570 (1972) (holding that the state "may not deny a benefit to a person on a basis that infringes his constitutionally protected interests"). Nearly a century ago, the United [*59] States Supreme Court clarified that "the state, having power to deny a privilege altogether, may grant it upon such conditions as it sees fit to impose. But the power

of the state in that respect is not unlimited; and one of the limitations is that it may not impose conditions which require the relinquishment of constitutional rights." *Frost v. R.R. Comm'n*, 271 U.S. 583, 593-94, 46 S. Ct. 605, 70 L. Ed. 1101 (1926). The Court cautioned that if the state could compel the surrender of one constitutional right as a condition of the grant of a privilege, it could compel a surrender of all constitutional rights, thereby manipulating them out of existence. *Id.* at 594.

In accord with this jurisprudence, we hold that a foreign corporation's registration to do business in the Commonwealth does not constitute voluntary consent to general jurisdiction but, rather, compelled submission to general jurisdiction by legislative command. In enacting Section 5301(a)(2)(i), the General Assembly impermissibly conditioned the privilege of doing business in Pennsylvania upon a foreign corporation's surrender of its constitutional right to due process in violation of the protections delineated in *Goodyear* and *Daimler*, which subject foreign corporations to general jurisdiction over all claims against them only in a state where the [*60] corporation is essentially at home. The compelled submission to general jurisdiction further violates the doctrine of federalism, as the "sovereignty of each state implies a limitation on the sovereignty of all its sister states." *Bristol-Myers*, 137 S.Ct at 1780.[19]

As observed cogently by the trial court, a foreign corporation desiring to do business in Pennsylvania can either lawfully register to do business and submit to the general jurisdiction of Pennsylvania courts or not do business in Pennsylvania at all.[20] Trial Court Opinion, 5/30/2018, at 11. We agree that "[f]aced with this Hobson's choice, a foreign corporation's consent to general jurisdiction in Pennsylvania can hardly be

---

[18] We further observe that Section 5301(a)(2)(ii) provides notice that a foreign corporation's consent affords a separate basis upon which Pennsylvania courts may assert general jurisdiction over a foreign corporation. 42 Pa.C.S. § 5301(a)(2)(ii).

[19] We further note that a contrary result would render application of specific jurisdiction superfluous as applied to foreign corporations registered to do business in Pennsylvania, as there would be no need to examine the affiliations between the forum State and the underlying case to establish specific jurisdiction over a particular controversy because general jurisdiction would always lie based merely upon the foreign corporation's registration.

[20] Of course, a corporation could conduct business in Pennsylvania unlawfully without registering to do business, but in doing so, it would be forced to relinquish its right to "maintain an action or proceeding in this Commonwealth." 15 Pa.C.S. § 411(b). Thus, the foreign corporation would be compelled to surrender its constitutional guarantee to access to the courts. *See* PA. CONST. art. I, § 11 (providing that "All courts shall be open; and every man for an injury done him in his lands, goods, person or reputation shall have remedy by due course of law. . ."). This scenario would equally amount to coercion, as opposed to voluntary consent to the general jurisdiction of Pennsylvania courts.

characterized as voluntary," and instead is coerced. *Id.* It cannot be ignored that if Pennsylvania's legislative mandate of consent by registration satisfied due process by constituting voluntary consent to general jurisdiction, all states could enact it, rendering every national corporation subject to the general jurisdiction of every state. This reality flies in the face of *Goodyear* and *Daimler* and cannot be condoned. The High Court made clear that a state cannot claim, consistent with due process, general jurisdiction over every corporation doing [*61] business within its borders. Trial Court Opinion, 5/30/2018, at 14 (citing *Tyrrell*, 137 S.Ct. at 1558; *Daimler*, 1571 U.S. at 126-127; and *Goodyear*, 564 U.S. at 923). Likewise, a "corporation that operates in many places can scarcely be deemed at home in all of them." *Daimler*, 571 U.S. at 139 n.20.

Our holding does not conflict with federal jurisprudence acknowledging that the liberty interest involved in personal jurisdiction may be waived by consenting to the personal jurisdiction of a tribunal by appearance, contractually agreeing to personal jurisdiction, or stipulating to personal jurisdiction. These constitutionally sanctioned methods of consent to jurisdiction involve the foreign corporation's voluntary consent to submit to the jurisdiction of the court with regards to a particular claim brought by a particular plaintiff, which the High Court's analysis in *Daimler* did not foreclose. Conversely, consent by registration requires the foreign corporation to consent to general jurisdiction over all claims filed by any plaintiff against the foreign corporation in the forum State, thereby relinquishing its due process liberty right to be free from suits in a forum within which it has no meaningful contacts, in exchange for the privilege of conducting business in the forum state. *Daimler* expressly prohibits [*62] such broad exercise of general jurisdiction. Further, unlike consent by registration, contractual forms of consent to jurisdiction are subject to reformation if they are the product of economic duress or contracts of adhesion. Consent by registration compelled by statute affords no avenue for relief to address challenges to the court's exercise of jurisdiction.

*IX. Conclusion*

The Supreme Court has afforded substantial protection to foreign corporations' Fourteenth Amendment due process rights, guaranteeing that they will not be subject to judgments on any and all claims filed against them in a forum state in which they are not at home. The Court has delineated expressly that foreign corporations are at home in their state of incorporation and the state in which they have established their principal place of business. Further, the Court has made clear that foreign corporations cannot be subject to general jurisdiction in every state in which they conduct business, as they could not possibly be at home in all of them.

Based on these principles, the Supreme Court of Delaware, in rejecting the contention that a foreign corporation's registration to do business constituted implied consent to general jurisdiction [*63] in Delaware's courts, noted cogently, "Our citizens benefit from having foreign corporations offer their goods and services here. If the cost of doing so is that those foreign corporations will be subject to general jurisdiction in Delaware, they rightly may choose not to do so." *Genuine Parts Co. v. Cepec*, 137 A.3d at 142. The Delaware Court further observed that "It is one thing for every state to be able to exercise personal jurisdiction in situations when corporations face causes of action arising out of specific contacts in those states; it is another for every major corporation to be subject to the general jurisdiction of all fifty states." *Id.* at 143.

These sentiments ring true in Pennsylvania. Our statutory scheme of conditioning the privilege of doing business in the Commonwealth on the submission of the foreign corporation to general jurisdiction in Pennsylvania courts strips foreign corporations of the due process safeguards guaranteed in *Goodyear* and *Daimler*. Legislatively coerced consent to general jurisdiction is not voluntary consent and cannot be constitutionally sanctioned. Accordingly, our statutory scheme is unconstitutional to the extent that it affords Pennsylvania courts general jurisdiction over foreign corporations that are not [*64] at home in the Commonwealth.

Accordingly, we affirm the order of the trial court, which sustained Defendant's preliminary objections and dismissed the action with prejudice for lack of personal jurisdiction.

Justices Saylor, Todd, Donohue, Dougherty, Wecht and Mundy join the opinion.

Justice Mundy files a concurring opinion.

**Concur by:** MUNDY

# Concur

## CONCURRING OPINION

### JUSTICE MUNDY

I join the Majority Opinion in full. I write separately to note the unique jurisdictional expanse under the Federal Employers' Liability Act ("FELA"), 45 U.S.C. § 51 *et seq.*

2021 Pa. LEXIS 4318, *64

The FELA provides that "[e]very common carrier by railroad ... shall be liable in damages to any person suffering injury while he is employed by such carrier ... for such injury or death resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier." 45 U.S.C. § 51. Section 56 of the FELA states, in part:

> Under this chapter an action may be brought in a district court of the United States, in the district of the residence of the defendant, or in which the cause of action arose, or in which the defendant shall be doing business at the time of commencing such action. The jurisdiction of the courts of the United States under this chapter shall be concurrent with that of the courts of the several states.

45 U.S.C. § 56. A reasonable **[*65]** interpretation of this language is that Congress conferred to the several states personal-jurisdiction over railroads doing business within their borders, providing employees an avenue to pursue FELA claims. The Supreme Court addressed this issue in *BNSF Railway Co. v. Tyrell*, 137 S.Ct. 1549, 198 L. Ed. 2d 36 (2017), and determined otherwise. According to the High Court, the first quoted sentence of Section 56 does not address jurisdiction at all, but, rather, is a venue provision setting out the proper locations for FELA suits filed in federal court. *Id.* at 1553. The Court further determined the term "concurrent jurisdiction" in the second sentence refers to subject-matter rather than personal-jurisdiction and simply clarifies that state courts can hear FELA claims. *Id.* Therefore, a state must still satisfy the due process requirements set out in *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 131 S. Ct. 2846, 180 L. Ed. 2d 796 (2011) and *Daimler AG v. Bauman*, 571 U.S. 117, 134 S. Ct. 746, 187 L. Ed. 2d 624 (2014) to exercise personal-jurisdiction over a defendant in an FELA action, notwithstanding Section 56.

---

**End of Document**