# Arnold & Porter

**Kent A. Yalowitz**
+1 212.836.8344 Direct
Kent.Yalowitz@arnoldporter.com

January 10, 2022

<u>**BY ECF**</u>

Hon. Debra Freeman
United States District Court
  for the Southern District of New York
500 Pearl Street
New York, New York 10007-1312

>  Re:  *Shatsky et al. v. Palestine Liberation Organization et al.*,
>        18 Civ. 12355 (MKV) (DF)—Supplement in Support of Letter-Motion [ECF 100]

Dear Judge Freeman:

I write further in support of Arnold & Porter's letter-motion dated August 13, 2021 [ECF 100].

As the Court is aware, Arnold & Porter's interest in the confidentiality issue before this Court derives from the fact that we agreed to be bound by the Confidentiality Order in this case as the price of access to the jurisdictional discovery taken in this case for use in *Sokolow v. Palestine Liberation Org.*, No. 04 Civ. 397 (GBD), pending before Judge Daniels. Based on that discovery, we have asked Judge Daniels to make findings of fact concerning defendants' U.S. activities relevant to the standard set forth in 18 U.S.C. § 2334(e)(1)(B). Letter to Hon. George B. Daniels from Kent A. Yalowitz (Aug. 13, 2021), *Sokolow v. Palestine Liberation Org.*, No. 04 Civ. 397 (GBD) [ECF 1038]. For the Court's convenience, I enclose a copy of the letter (without exhibits) as submitted to Judge Daniels requesting such findings of fact.

Following your honor's order dated December 6, 2021, defendants de-designated substantial portions of the deposition transcripts we relied on in our request to Judge Daniels for findings of fact. However, there are still three areas that defendants have not de-designated, based on their claim of "functional immunity." Those are

> (1) testimony that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ;
>
> (2) testimony and documents indicating the name of one community group with whom defendants' representatives met, in their official capacities; and
>
> (3) testimony that Dr. Mansour made press appearances and public appearances and spoke with non-U.N. groups ▮▮▮▮▮▮▮ .

Thus, defendants continue to demand confidential treatment for testimony and documents underlying the following proposed findings of fact in on our letter to Judge Daniels of August 13, 2021:



Hon. Debra Freeman
January 10, 2022
Page 2

    5.  During this period [after January 4, 2020], defendants ███████████ ████████████████████████████████████████████████████████████████.[2]

    6.  ████████████████████████████████████████████████████████████████████████████████████████████.[3]

    7.  ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████.[5] Dr. Mansour and Ms. Abdelhady-Nasser participated in such meetings in their official capacities on behalf of defendants.[6]

\* \* \*

    9.  Dr. Mansour also made an in-person appearance at the Beit Hanina Cultural Center in Brooklyn, and virtual appearances at conferences organized by the Arab-American Anti-Discrimination Committee, Seton Hall University, ████████████, and Bridgewater State University.[7]

    10.  ████████████████████████████████████████████████████████████████████"[8]

\* \* \*

    13.  During the relevant period, Dr. Mansour made press appearances and public appearances (such as university lectures) and spoke with non-U.N. groups ███████████████████████████████████.[9]

    Defendants claim that this information must be cloaked with confidentiality because it is protected by "functional immunity," on the theory that it concerns "diplomatic strategy and rationales for implementing that strategy … and the non-public [U.N.] official-capacity activities" of their senior staff of their U.N. observer mission. ECF 154 at 1-2; ECF 155 at 1-2.

---

[1] Ghannam Dep. 147.

[2] Ghannam Dep. 187, 199.

[3] Ghannam Dep. 166, 168, 169-70, 175, 178, 181, 182, 183-84, 189, 190, 195, 201.

[4] Mansour Dep. Ex. 4; Abdelhady-Nasser Dep. Exs. 5, 6.

[5] *E.g.*, Abdelhady-Nasser Dep. 60-61, 72, 84, 86, 94, 109-10, 114, 117; Mansour Dep. 70, 90, 92-93.

[6] Abdelhady-Nasser Dep. 86; Mansour Dep. 52, 92, 93, 96-97, 107, 112.

[7] Mansour Dep. 44-52, 67-68, 90-91, 97, 106; Mansour Dep. Ex. 5.

[8] Mansour Dep. 92, 97, 99, 107, 112; Abdelhady-Nasser Dep. 87.

[9] Mansour Dep. 65, 67, 70, 75, 77, 86, 91, 94, 98, 107, 111, 113.

**Arnold & Porter**

Hon. Debra Freeman
January 10, 2022
Page 3

We disagree, for two reasons.

**First:** Under binding authority in this Court, invitees of the United Nations, including defendants, simply have no immunity at all. *Klinghoffer v. S.N.C. Achille Lauro*, 937 F.2d 44, 48 (2d Cir. 1991). This rule has also been articulated by a unanimous line of district court cases, including decisions by Judges of this District,[10] and by the American Law Institute.[11] Those authorities are correct. The text of the UN-related treaties that would be the source of any such immunity do not support a finding of functional immunity or any other kind of immunity for these defendants. Those treaties extend immunity to "members" of the United Nations, not to "members and non-member observers." Thus, Section 105(2) of the U.N. Charter extends immunity to "Representatives of the Members of the United Nations." Sections 11 and 12 of the Convention on Privileges and Immunities of the U.N. extend immunities to "Representatives of Members" (§ 11) and to former "representatives of Members" (§ 12). And the U.N. Headquarters Agreement extends immunities to representatives "designated by a Member." As one court put it, in rejecting a request for immunity by defendants, the text of these treaties confirm that "close is simply not good enough." *Unger v. Palestinian Auth.*, 315 F. Supp. 2d 164, 184 (D.R.I. 2004).

**Second:** Defendants' functional immunity argument cannot be accepted even on its own terms. Given the de-designations, the remaining question is whether "functional immunity" extends to media interviews, social-media posts, and meetings with student groups and community groups—all of which took place outside the U.N. Headquarters District.

Defendants' claim boils down to the assertion that anything done anywhere in the United States by any member, with the purpose of furthering any cause endorsed by any body associated with the United Nations, would qualify for functional immunity if done by a U.N. member or observer. This position is inconsistent with U.S. law and U.N. practice.

**a.** U.S. law is clear that the "conduct of any activities … outside the United Nations Headquarters District by any individual … authorized by the United Nations to conduct official business in connection with that organization or its agencies … may be permitted or denied or subject to reasonable regulation, as determined to be in the best interests of the United States and pursuant

---

[10] *E.g.*, *Knox v. Palestine Liberation Org.*, 306 F. Supp. 2d 424, 446 (S.D.N.Y. 2004) ("granting the immunities Defendants seek would in fact conflict with declared United States public policy regarding the Defendants"); *United States v. Palestine Liberation Org.*, 695 F. Supp. 1456, 1459 (S.D.N.Y. 1988) ("The PLO … is not accredited to the United States and does not have the benefits of diplomatic immunity.") (footnotes omitted); *Ungar v. Palestinian Auth.*, 228 F. Supp. 2d 40, 49 (D.R.I. 2002) ("the fundamental problem with the PA defendants' argument is that neither the PLO nor the PA is a Member of the United Nations."), *aff'd mem.*, No. 03-1544, 2003 WL 21254790 (1st Cir. May 27, 2003).

[11] *Restatement (Third) of the Foreign Relations Law of the United States* § 469 reporter's note 8 (1987) ("[P]ersons invited by the United Nations to its Headquarters generally must be admitted to the United States and allowed access to the headquarters district, but they enjoy no privileges or immunities.").

# Arnold & Porter

Hon. Debra Freeman
January 10, 2022
Page 4

to this chapter." 22 U.S.C. § 4309A(b)(1).

Recently, the United States indicted an individual employed by the Permanent Mission of the Islamic Republic of Iran to the United Nations. (Iran, unlike defendants, is a member of the United Nations and maintains a U.N. mission despite its lack of diplomatic relations with the United States. *See* Compl. & Aff. in Support of Application for Arrest Warrant, ¶ 5, *United States v. Afrasiabi*, No. 21 Cr. 46 (ERK) (ECF 1).) The indictment charges that the defendant violated the Foreign Agents Registration Act, 22 U.S.C. § 611 *et seq.*, which imposes registration and disclosure obligations on persons who act as publicity agents and public-relations counsel for foreign principals. Indictment, *United States v. Afrasiabi*, No. 21 Cr. 46 (ERK) (E.D.N.Y. Jan. 25, 2021) (ECF 6).

According to evidence presented by the Untied States in that case, the defendant (Afrasiabi) is an employee of Iran's U.N. Mission, who, among other things "[i]n the course of his employment, "made television appearances to advocate for" Iran's views on world events, and "authored articles and opinion pieces" espousing Iran's position on various matters of foreign policy. *See* Compl. & Aff. in Support of Application for Arrest Warrant, ¶ 13, *United States v. Afrasiabi*, No. 21 Cr. 46 (ERK) (ECF 1). The evidence on the docket in that case includes extensive quotations from written correspondence and describes telephone conversations between Afrasiabi and individuals in Iran's U.N. Mission on matters of substance relating to these public-relations activities. *E.g.*, *id.* ¶¶ 36-38, 40-42, 44-45, 47-48, 50-56, 58-59, 69-75, 84-93.

Afrasiabi moved to dismiss the indictment by invoking the same three treaties that defendants here rely on for their functional immunity argument: the U.N. Charter, the Convention on Privileges and Immunities of the United Nations, and the Headquarters Agreement. Defendant's Request for the Court's Dismissal of Complaint Sua Sponte on the Basis of Primacy of U.N. Obligations/Inadequacy of FARA, *United States v. Afrasiabi*, No. 21 Cr. 46 (ERK) (EDNY Feb. 18, 2021) (ECF 44). Afrasiabi wrote that "his consulting role for an aspect of the UN, which comprises country missions as well as specialized agencies, etc., provided de facto immunity and exemption irrespective of the fact that he is not a diplomat." *Id.* at 1.

But even though Iran, as a U.N. member, enjoys immunities set forth in those treaties, Judge Korman held that the treaties did not extend to the activities at issue: "The UN's agreements and alleged informal practices are not a basis to dismiss the indictment, which is founded on U.S. federal law." Order (Feb. 19, 2021).

Defendants here rely on *Brzak v. United Nations*, 597 F.3d 107, 113 (2d Cir. 2010), and similar cases, but *Brzak* was a case about the immunity of U.N. officials for "personnel management decisions," as were others relied on by defendants. Such decisions shed no light on the question whether promotional activities directed at the public and conducted outside the Headquarters District are official U.N. business entitled to functional immunity.

**b.** U.N. practice also undermines defendants' claim of functional immunity. The longstanding position of the Legal Advisor advocates for functional immunity, but only for activities "in their official capacity <u>before relevant United Nations organs</u>." *Permanent Observer Mission of the African Union*, 2014 U.N. Jur. Y.B. 328 (emphasis added); *see Permanent Observer Mission*

**Arnold & Porter**

Hon. Debra Freeman
January 10, 2022
Page 5

*of the Org. of the Islamic Conf.*, 1999 U.N. Jur. Y.B. 409; *Scope of Privileges and Immunities of a Permanent Observer Mission*, 1982 U.N. Jur. Y.B. 206; *Privileges and Immunities of a Person Designated by a Member State*, 1976 U.N. Jur. Y.B. 229; *see also Report of the Committee on Relations with the Host Country* ¶¶ 32-33 (Oct. 14, 1982), Supp. No. 26 (A/37/26) (Statement of the Legal Advisor).

This limitation comports with the actual U.N. document inviting the PLO to function as an observer, which sets out the particular "modalities" of its "participation in the sessions and work" of the United Nations:

1. The right to participate in the general debate of the General Assembly.

2. Without prejudice to the priority of Member States, Palestine shall have the right of inscription on the list of speakers under agenda items other than Palestinian and Middle East issues at any plenary meeting of the General Assembly, after the last Member State inscribed on the list of that meeting.

3. The right of reply.

4. The right to raise points of order related to the proceedings on Palestinian and Middle East issues, provided that the right to raise such a point of order shall not include the right to challenge the decision of the presiding officer.

5. The right to co-sponsor draft resolutions and decisions on Palestinian and Middle East issues. Such draft resolutions and decisions shall be put to a vote only upon request from a Member State.

6. The right to make interventions, with a precursory explanation or the recall of relevant General Assembly resolutions being made only once by the President of the General Assembly at the start of each session of the Assembly.

7. Seating for Palestine shall be arranged immediately after non-member States and before the other observers; and with the allocation of six seats in the General Assembly Hall.

8. Palestine shall not have the right to vote or to put forward candidates.

Annex to General Assembly Resolution 52/250, *Participation of Palestine in the work of the United Nations* (July 13, 1998).

These "modalities" all reflect participation in official business before relevant U.N. organs. They make no suggestion that participation in U.N. business as a non-member observer extends to engaging in public relations or meetings with community groups or student groups outside the Headquarters District.

# Arnold & Porter

Hon. Debra Freeman
January 10, 2022
Page 6

## Conclusion

The remaining materials do not qualify for confidential treatment under "functional immunity," and defendants' status at the United Nations gives them no special exception from the ordinary rules governing discovery in civil cases with respect to actions taken outside the Headquarters District.

Respectfully submitted,

Kent A. Yalowitz

Encl.
cc:  ECF Counsel

# Arnold & Porter

Kent A. Yalowitz
+1 212.836.8344 Direct
Kent.Yalowitz@arnoldporter.com

August 13, 2021

**BY ECF**

Hon. George B. Daniels
United States District Court
 for the Southern District of New York
500 Pearl Street
New York, New York 10007-1312

      Re:    *Sokolow et al. v. Palestine Liberation Organization et al.*
               No. 04 Civ. 397 (GBD) — Supplemental Information on Pending Matter

Dear Judge Daniels:

I write to provide certain information that was unavailable at the time of oral argument.

**First**: On July 23, 2021, the United States intervened and filed a memorandum of law in *Fuld v. Palestine Liberation Org.*, No. 20 Civ. 3374 (JMF) (S.D.N.Y. July 23, 2021) [ECF 53]. The United States argues that "Section 2334(e) is consistent with the Constitution and should be upheld." *Id.* at 2. I enclose a courtesy copy.

**Second**: On July 8, 22, and 23, 2021, the plaintiffs in *Shatsky v. Palestine Liberation Org.*, No. 18 Civ. 12355 (MKV), deposed employees of the PLO and PA in connection with their U.S. activities. Plaintiffs obtained copies of the transcripts and deposition exhibits on August 8, 2021. Plaintiffs respectfully submit the attached excerpts of transcripts and exhibits for the record in this case.

Based on these depositions, as well as the record in this case, plaintiffs respectfully request that the Court make the following findings of fact.

### A. U.S. Public-Relations Activities

1. After January 4, 2020, defendants' officers gave press interviews in English in the United States to media outlets including MSNBC,[1] NPR,[2] and Voice of America.[3]

2. Officers who gave press conferences or interviews were: (a) Mahmoud Abbas, Chairman of the PLO and President of the PA[4]; (b) Riyad Mansour, defendants' Permanent Observer to the United Nations[5]; and (c) Feda Abdelhady-Nasser, defendants' Deputy

---

[1] Mansour Dep. 110-11 (Ex. 3 hereto).

[2] Abdelhady-Nasser Dep. 189-91 (Ex. 1 hereto); Yalowitz Second Supp. Decl. (May 7, 2021) Ex. B [ECF 1027].

[3] Yalowitz Second Supp. Decl. (May 7, 2021) Ex. E [ECF 1027].

[4] *See* Yalowitz Decl. (Nov. 12, 2020) ¶ 208 [ECF 1018].

[5] Mansour Dep. 86, 110-13 (Ex. 3 hereto); Yalowitz Second Supp. Decl. (May 7, 2021) Ex. B [ECF 1027].

# Arnold & Porter

Hon. George B. Daniels
August 13, 2021
Page 2

      Permanent Observer to the United Nations.[6]

3. After January 4, 2020, defendants maintained publicly available social media accounts on Twitter and Facebook. Defendants updated these social media accounts with hundreds of posts, almost all of which were in English.[7]

4. The updates were made by defendants' employee while physically in the United States.[8]

5. During this period, ███████████████████████████████████████████████████████████████████████████████████████████[10]

6. ███████████████████████████████████████████████████████████████████████████████████████████[11]

7. ███████████████████████████████████████████████████████████████████████████████████████████[13] Dr. Mansour and Ms. Abdelhady-Nasser participated in such meetings in their official capacities on behalf of defendants.[14]

8. For example, Dr. Mansour attended (via zoom) a meeting of the Beit Sahour USA Convention in November 2020.[15] Dr. Mansour appeared in his official capacity.[16] In

---

[6] Abdelhady-Nasser Dep. 114, 189-91 (Ex. 1 hereto) & Ex. 7 (Ex. 7 hereto).

[7] Ghannam Dep. 144-201 (Ex. 2 hereto); *see* Yalowitz Decl. (Nov. 12, 2020) ¶ 215 & Exs. 35-36, 57-58 [ECF 1018]; Yalowitz Second Supp. Decl. (May 7, 2021) Exs. C, D [ECF 1027].

[8] Ghannam Dep. 144-45, 154-55 (Ex. 2 hereto); *see* Yalowitz Decl. (Nov. 12, 2020) ¶ 215 & Exs. 35-36, 57-58 [ECF 1018]; Second Supp. Yalowitz Decl. (May 7, 2021) Exs. C, F [ECF 1027].

[9] Ghannam Dep. 147 (Ex. 2 hereto).

[10] Ghannam Dep. 187, 199 (Ex. 2 hereto); *see* Second Supp. Yalowitz Decl. (May 7, 2021) Ex. D [DE-1027].

[11] Ghannam Dep. 166, 168, 169-70, 175, 178, 181, 182, 183-84, 189, 190, 195, 201 (Ex. 2 hereto).

[12] Mansour Dep. Ex. 4 (███████████████████) (Ex. 9 hereto); Abdelhady-Nasser Dep. Exs. 5 (███████████████████████████), 6 (███████████████████████████) (Exs. 5, 6 hereto); *see* Abdelhady-Nasser Dep. 59 (defining "civil society" as "NGOs, academia, journalists, cultural institutions and others"), 72 (no formal connection) (Ex. 1 hereto).

[13] *E.g.*, Abdelhady-Nasser Dep. 60-61, 72, 84, 86, 94, 109-10, 114, 117 (Ex. 1 hereto); Mansour Dep. 70, 90, 92-93 (Ex. 3 hereto); *see* Yalowitz Supp. Decl. (Feb. 9, 2021) Exs. C, D [ECF 1023].

[14] Abdelhady-Nasser Dep. 86 (Ex. 1 hereto); Mansour Dep. 52, 92, 93, 96-97, 107, 112 (Ex. 3 hereto).

[15] Mansour Dep. 93-94 & Mansour Dep. Ex. 8 (Exs. 3, 11 hereto).

[16] Mansour Dep. 93-94, 96-97 (Ex. 3 hereto).

# Arnold & Porter

Hon. George B. Daniels
August 13, 2021
Page 3

    his comments, he commended "movements and organizations and solidarity committees" at "American universities," who are "supporting justice for the Palestinian people and lobbying the government, lobbying Congress," adding: "we urge them to become even more active, especially in light of the arrival a new administration in Washington."[17]

9. Dr. Mansour also made an in-person appearance at the Beit Hanina Cultural Center in Brooklyn, and virtual appearances at conferences organized by the Arab-American Anti-Discrimination Committee, Seton Hall University, ███████, and Bridgewater State University.[18]

10. ███████████████████████████████████████████████████████████[19]

**B. U.S. Facility**

11. At all times since January 4, 2020, Defendants have owned a townhouse at 115 East 65th Street.[20]

12. The townhouse has offices for Dr. Mansour and other staff of the mission.[21]

13. During the relevant period, Dr. Mansour made press appearances and public appearances (such as university lectures) and spoke with non-UN groups ███████████████.[22]

14. Defendants updated their Twitter and/or Facebook account from the Townhouse around 60 times.[23]

Respectfully yours,

Kent A. Yalowitz

Encls.
cc: ECF Counsel

---

[17] Mansour Dep. Ex. 8 (Ex. 11 hereto).

[18] Mansour Dep. 44-52, 67-68, 90-91, 97, 106 (Ex. 3 hereto); Mansour Dep. Ex. 5 (Ex. 10 hereto).

[19] Mansour Dep. 92, 97, 99, 107, 112 (Ex. 3 hereto); Abdelhady-Nasser Dep. 87 (Ex. 1 hereto) (█████████████████████████████████████████████████████).

[20] *See* Mansour Dep. 120 (Ex. 3 hereto); *see* Yalowitz Decl. (Nov. 12, 2020) Ex. 59 [ECF 1018].

[21] Mansour Dep. 14, 177-82 (Ex. 3 hereto).

[22] Mansour Dep. 65, 67, 70, 75, 77, 86, 91, 94, 98, 107, 111, 113 (Ex. 3 hereto).

[23] Ghannam Dep. 152-53 (Ex. 2 hereto).

# Arnold & Porter

Hon. George B. Daniels
August 13, 2021
Page 4

## Index of Exhibits

| Number | Description |
|---|---|
| 1 | Abdelhady-Nassar Deposition Transcript Excerpts |
| 2 | Ghannam Deposition Transcript Excerpts |
| 3 | Mansour Deposition Transcript Excerpts |
| 4 | Abdelhady-Nasser Dep. Ex. 4 |
| 5 | Abdelhady-Nasser Dep. Ex. 5 |
| 6 | Abdelhady-Nasser Dep. Ex. 6 |
| 7 | Abdelhady-Nasser Dep. Ex. 7 |
| 8 | Mansour Dep. Ex. 3 |
| 9 | Mansour Dep. Ex. 4 |
| 10 | Mansour Dep. Ex. 5 |
| 11 | Mansour Dep. Ex. 8 (transcript) |