

Squire Patton Boggs (US) LLP
2550 M Street, NW
Washington, D.C.  20037

O   +1 202 457 6000
F   +1 202 457 6315
squirepattonboggs.com

Gassan A. Baloul
T   +1 202 457 6155
gassan.baloul@squirepb.com

**VIA Email and ECF**

January 13, 2022

Hon. Debra Freeman
Chief U.S. Magistrate Judge
United States District Court
for the Southern District of New York
500 Pearl Street
New York, New York 10007-1312

Re:   *Shatsky v. PLO*, No. 18-12355 (MKV) (DF) – Response to Arnold & Porter letter

Dear Judge Freeman:

We submit this letter on behalf of Defendants Palestine Liberation Organization and Palestinian Authority ("Defendants") in response to Arnold & Porter's ("A&P") letter of January 10, 2022.  Defendants dispute A&P's characterizations of Defendants' legal and factual positions—but have already addressed the majority of their arguments in prior filings.  Indeed, this is A&P's *third* unprompted letter that, under the guise of addressing confidentiality designations, in fact requests findings regarding what actions of Palestine's UN Mission fall within or outside of the factual predicates of the PSJVTA.  *See* A&P letters, ECF 99, 108, 159.  Tellingly, A&P does not mention, let alone challenge, <u>even a single specific confidentiality designation submitted by Defendants</u>.  Nor does A&P address the recent *Fuld* decision that the PSJVTA cannot constitutionally provide jurisdiction over Defendants (*see* ECF 157).  Given that we have already briefed confidentiality at length (*see* ECF 105, 114, 154, 155), this letter largely will be limited to addressing the few new arguments A&P presents, and we will respectfully refer this Court to Defendants' previous filings for the arguments A&P is merely repeating.[1]

**1.  A&P's new arguments do not have merit**.  *First*, A&P cites to 22 U.S.C. § 4309a—a statute that actually undermines its claims.  That statute acknowledges the United States' "obligation" under the UN Headquarters Agreement to allow any individuals "authorized by the United Nations to conduct official business" to obtain "<u>facilities</u> in order to conduct such activities within or in proximity to the United Nations Headquarters District."  22 U.S.C. § 4309a(a)(1)

---

[1] A&P also attached a letter they sent to Judge Daniels in the *Sokolow* case on August 13, 2021.  ECF 159 at 7.  Defendants' response to that letter can be found at *Sokolow*, No. 04-397, ECF 1040 (8/20/21), but for the Court's convenience has also been attached hereto as Exhibit A.

45 Offices in 20 Countries

Squire Patton Boggs (US) LLP is part of the international legal practice Squire Patton Boggs, which operates worldwide through a number of separate legal entities.

Please visit squirepattonboggs.com for more information.

Squire Patton Boggs (US) LLP                                                                    Judge Freeman
                                                                                                January 13, 2021

(emphasis added).  The statute merely reserves the ability of Congress to make "reasonable regulation including regulation of the location and size of such <u>facilities</u>."  *Id*. (emphasis added).  This facility-focused reservation applies to <u>all</u> UN missions, is extremely limited in scope, and has nothing to do with the UN functional immunity that protects the official-capacity activities and papers of UN missions.

*Second*, A&P misleadingly asserts that a member of Iran's UN Mission was indicted for public advocacy, claiming that this suggests UN functional immunity does not apply to media interviews.  But the defendant in that case was <u>not</u> an official member of Iran's UN mission.  *See* Indictment [ECF 6], Affidavit [ECF 16], Motion [ECF 44], Order [Feb. 19, 2021], *United States v. Afrasiabi*, No. 21-cr-0046 (E.D.N.Y.).  Indeed, the key point of the indictment is that Mr. Afrasiabi was receiving <u>secret</u> payments through Iran's UN mission to <u>masquerade as an independent advocate</u> for Iran.  The defendant admitted he was not an employee of the mission, much less a "diplomat," but was merely an "outside consultant" for Iran.  The indictment alleges Mr. Afrasiabi's failure to disclose the payments under the Foreign Agents Registration Act.  By contrast, U.S. law has long authorized the activities of Palestine's UN Mission (*e.g.*, *United States v. PLO*, 695 F. Supp. 1456, 1471 (S.D.N.Y. 1988)), and the United States (which has intervened in this case and related cases, and is well aware of the activities of Palestine's UN Mission) has never claimed that the Mission exceeded its UN mandate or engaged in advocacy requiring FARA registration.  Indeed, the United States agreed that Palestine's UN Mission did not even "fall within the terms of the" PSJVTA's predecessor statute, even though that statute applied to all Palestinian offices "*in the jurisdiction of the United States*."  U.S. Brief, *Klieman v. Palestinian Auth.*, No. 15-7034, at 6 (D.C. Cir. Feb. 15, 2019) (emphasis added).

*Third*, A&P claims that a UN mission's official business cannot include discussions with media and civil society organizations, even though Defendants have already demonstrated that <u>UN missions commonly perform precisely those activities</u>.  *See* Alonzo Decl., ECF No. 144 ¶¶ 2-20 (citing many media interviews by, and university events headlined by, representatives of UN member states).  Even the PSJVTA's legislative history shows that "engag[ing] in public advocacy and civil society activities" is exactly the kind of conduct by Palestine's UN Mission that Congress views as falling outside of PSJVTA jurisdiction.  Statement of Sen. Leahy, 166 Cong. Rec. S627, 116th Cong. (daily ed. Jan. 28, 2020).

A&P devotes an entire page of its letter to the illogical claim that Palestine's 1998 General Assembly floor-rights somehow created a "limitation" on what qualifies as official UN business.  ECF 159 at 5.  This also ignores both Palestine's 2012 change-in-status at the UN to a Non-member Observer State[2] and Defendants' showing that Palestine's official UN duties include working with civil society organizations as a permanent member of the Committee on the Exercise of the

---

[2] G.A. Res, *State of Palestine in the UN*, A/RES/67/19 (Nov. 29, 2012), https://undocs.org/en/A/RES/67/19 (recognizing Palestine as a non-member State).  This change in status allowed Palestine to join the Vienna Convention on Diplomatic Relations ("VCDR") in 2014.  VCDR Signatories (Apr. 18, 1961), 500 U.N.T.S. 241, https://treaties.un.org/pages/viewdetails.aspx?src=treaty&mtdsg_no=iii-3&chapter=3.  Although the U.S. does not recognize Palestine as a sovereign state, the UN's decision on the immunities applicable to Palestine's Mission deserve deference.  *See* U.S. Stat. of Interest, *Ungar v. Palestinian Auth.*, No. 18-0302, at 25 (S.D.N.Y. Sept. 12, 2005) (asking court to defer to the UN on the rights of Palestine's mission to avoid a "political and legal quagmire").

Squire Patton Boggs (US) LLP                                                      Judge Freeman
                                                                                  January 13, 2021

Inalienable Rights of the Palestinian People (CEIRPP), as well as wide-ranging activities including leading the Group of 77 and other UN-related organizations.[3] *See* ECF 105, at 5-6.  The CEIRPP in particular explains that it "has a mandate from the United Nations General Assembly 'to extend its cooperation and support to Palestinian and other civil society organizations.' In keeping with this mandate, a network of more than 1,000 civil society organizations from all regions of the world, active on the question of Palestine, has been established over the years."[4]

      **2. A&P's recycling of old arguments is not persuasive.**  A&P's letter generally revisits its prior arguments that Palestine's UN Mission is not entitled to functional immunity.  Defendants have repeatedly pointed out that this is wrong, and that Judge Vyskocil allowed Defendants to instruct deponents not to answer questions that "invade functional immunity under the United Nations …. Headquarters Charter."  ECF 105 at 4 (quoting hearing transcript).  A&P's position that the Headquarters Agreement is irrelevant is undermined by A&P's own cases, which confirm that Palestine's Mission "is an invitee of the United Nations under the Headquarters Agreement and its status is protected by that agreement."  *Id*. (quoting *United States v. PLO*, 695 F. Supp. at 1471).  "Courts are therefore 'obligat[ed] … to refrain from impairing the function of the PLO Observer Mission to the United Nations.'"  *Id*. (same).  A&P also relies (as it has in its previous filings) on cases (namely *Klinghoffer*, *Ungar*, and *Knox*) holding that the PA and PLO lack sovereign immunity from suit, which, as Defendants have already pointed out, is entirely different from the UN functional immunity from certain discovery that would impair the Mission's ability to perform its functions.  *Id*.; ECF 154 at 2.

      A&P also cites an outdated restatement that relies on materials from the early 1960s and a 1953 New York state case.  *See* Restat. (Third) of Foreign Relations, § 469, reporter's note 8 (1987).  A&P's arguments are contrary to the most recent UN opinion specific to Palestine's Mission, *see* UN Juridical Yearbook, Chapter VI, § A(13) (2000), as well as the United Nations' recognition of Palestine as a Non-member Observer State in 2012—which Defendants have repeatedly cited, and which A&P fails to address.  *See* ECF 105 at 3-4.  While A&P claims that functional immunity does not apply to virtual meetings held during the pandemic from the Palestinian Mission's premises, A&P's own authority relating to non-state missions makes clear that those missions have "inviolability for official papers and documents relating to their relations with the United Nations," explaining that "[i]f such inviolability is to have any meaning, it also necessarily extends to the premises of the mission".  Note to the Permanent Observer Mission of the African Union to the United Nations concerning full diplomatic status in the host country, UN Juridical Yearbook, Chapter VI, § A(1)(a) (2014).

      A&P also misses the point (again) with respect to *Brzak v. United Nations*, 597 F.3d 107, 113 (2d Cir. 2010), and other cases holding that functional immunity extends to UN official-capacity activities, including internal discussions, reasoning, and decision-making.  As explained

---

[3] UN Press Release, *State of Palestine to Gain Enhanced Rights, Privileges in G.A. Work, Sessions When It Assumes 2019 Group of 77 Chairmanship* (Oct. 16, 2018) *at*: https://www.un.org/press/en/2018/ga12078.doc.htm.
[4] United Nations, UISPAL, *Civil Society and the Question of Palestine: Overview*, at: https://www.un.org/unispal/data-collection/civil-society/ (last accessed Jan. 13, 2022).

3

Squire Patton Boggs (US) LLP                                                                 Judge Freeman
                                                                                            January 13, 2021

above, the Mission's internal reasoning "relating to their relations with the United Nations" must be protected if inviolability means anything. *See* ECF 105 at 4; ECF 154 at 2; ECF 155 at 2.

      Of course, this Court need not rely on functional immunity at all to decide what deposition testimony should remain confidential. As previously explained by Defendants, *see* ECF 114 at 1-2 & ECF 105 at 1-2, the filing of the depositions before Judge Daniels (or A&P's request for findings of fact) in *Sokolow* does not make the depositions judicial documents. A&P does not identify a "compelling need" to make the documents public, does not contend that testimony by diplomatic personnel is usually made public, and does not claim Palestine has no interest in the confidentiality of its internal decisions and the private meetings of its ambassadors. *See* ECF 114 at 1-2; ECF 154 at 2; ECF 155 at 2. Nor does A&P dispute that the private meetings and reasoning of a UN mission are supremely sensitive. ECF 105 at 3, citing *In re Terrorist Attacks*, No. 03-MDL-01570, 2019 U.S. Dist. LEXIS 121935, at *241 (S.D.N.Y. July 22, 2019) ("[C]onsulates and diplomatic missions have a strong interest in maintaining the confidentiality of their records.").

      A&P also ignores its own burden to show good cause to de-designate the deposition material as confidential, which applies here because Defendants produced the witnesses and documents in reasonable reliance on a pre-existing protective order. *See* ECF 105 at 2-4; ECF 114 at 2-3; ECF 154 at 2 ("[M]ost of the sensitive material in the depositions would not even exist if Defendants had not relied on the Confidentiality Order to allow Plaintiffs leeway to examine the deponents on these issues."); ECF 155 at 2 (noting Defendants' reliance on the order to produce witnesses and documents).

      In the end, A&P does not discuss even a single redaction submitted by Defendants, but instead asks this Court for sweeping legal pronouncements on contested jurisdictional issues. This Court should reject A&P's claims regarding functional immunity and the PSJVTA, which ultimately have nothing to say about Defendants' confidentiality designations.

                                         Respectfully submitted,

                                         Squire Patton Boggs (US) LLP

                                         Gassan A. Baloul

cc:     All counsel (by ECF)