# Attachment

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

MARK I. SOKOLOW, et al.,

        *Plaintiffs*,

    v.

PALESTINE LIBERATION ORGANIZATION, et al.,

        *Defendants*.

Case No. 04 Civ. 397 (GBD)

---

## PLAINTIFFS' SUPPLEMENTAL MEMORANDUM REGARDING CONSTITUTIONALITY OF THE PSJVTA

ARNOLD & PORTER
    KAYE SCHOLER LLP
250 West 55th Street
New York, NY 10019
T: (212) 836-8000
F: (212) 836-8689

*Attorneys for Plaintiffs*

January 14, 2022

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................................... 1

ARGUMENT ......................................................................................................................... 2

    A.    The *Fuld* Court Incorrectly Disregarded the Reasonableness Test ....................... 2

    B.    The *Fuld* Court Incorrectly Imposed A Heightened Standard Of Review of "Voluntariness" By Misapplying the Supreme Court's *College Savings* Case .... 10

    C.    The *Fuld* Court Incorrectly Failed to Consider Important Governmental Interests ............................................................................................................ 16

CONCLUSION .................................................................................................................... 17

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Asahi Metal Indus. Co. v. Superior Ct.*,
480 U.S. 102 (1987) ................................................................................................16

*Bendix Autolite Corp. v. Midwesco Enters., Inc.*,
486 U.S. 888 (1988) ..................................................................................................4

*Birchfield v. North Dakota*,
136 S. Ct. 2160 (2016) ....................................................................................9, 10, 13

*Bosse v. Oklahoma*,
137 S. Ct. 1 (2016) ....................................................................................................6

*Breithaupt v. Abram*,
352 U.S. 432 (1957) ..................................................................................................8

*Burger King Corp. v. Rudzewicz*,
471 U.S. 462 (1985) ..................................................................................................1

*Carnival Cruise Lines, Inc. v. Shute*,
499 U.S. 585 (1991) ................................................................................................12

*Cleland v. Nat'l Coll. of Bus.*,
435 U.S. 213 (1978) ............................................................................................14, 15

*Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.*,
527 U.S. 666 (1999) ............................................................................................11, 12

*Cooper Tire & Rubber Co. v. McCall*,
863 S.E.2d 81 (Ga. 2021) ......................................................................................5, 6

*Cty. of Sacramento v. Lewis*,
523 U.S. 833 (1998) ..................................................................................................2

*Daimler AG v. Bauman*,
571 U.S. 117 (2014) ..................................................................................................5

*Edelman v. Jordan*,
415 U.S. 651 (1974) ................................................................................................12

*Ford Motor Co. v. Montana Eighth Judicial Dist. Ct.*,
141 S. Ct. 1017 (2021) ......................................................................................1, 4, 6

*Fuld v. Palestine Liberation Org.*,
No. 20 Civ. 3375 (JMF) (S.D.N.Y. Jan. 6, 2022) ............................................................ *passim*

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
564 U.S. 915 (2011)................................................................................................................5

*Hess v. Pawloski*,
274 U.S. 352 (1927)................................................................................................................3

*Immediato v. Rye Neck Sch. Dist.*,
73 F.3d 454 (2d Cir. 1996)...................................................................................................10

*Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinee*,
456 U.S. 694 (1982)..........................................................................................................12, 13

*Int'l Shoe Co. v. Washington*,
326 U.S. 310 (1945)................................................................................................................6

*J. McIntyre Mach., Ltd. v. Nicastro*,
564 U.S. 873 (2011)..............................................................................................................16

*Kulko v. Superior Ct.*,
436 U.S. 84 (1978)................................................................................................................16

*Lingle v. Chevron U.S.A. Inc.*,
544 U.S. 528 (2005)................................................................................................................2

*Mallory v. Norfolk S. Ry. Co.*,
No. 3 EAP 2021, 2021 WL 6067172 (Pa. Dec. 22, 2021)...................................................5, 6

*Mississippi Pub. Corp. v. Murphree*,
326 U.S. 438 (1946)................................................................................................................4

*Missouri v. McNeely*,
569 U.S. 141 (2013)................................................................................................................8

*Obergefell v. Hodges*,
576 U.S. 644 (2015)..............................................................................................................14

*Oregon v. Elstad*,
470 U.S. 298 (1985)..............................................................................................................10

*PennEast Pipeline Co., LLC v. New Jersey*,
141 S. Ct. 2244 (2021)..........................................................................................................12

*Penn. Fire Ins. Co. v. Gold Mining & Milling Co.*,
243 U.S. 93 (1917)................................................................................................................3

iii

*Port Auth. Trans-Hudson Corp. v. Feeny*,
   495 U.S. 299 (1990)..................................................................................12

*Schneckloth v. Bustamonte*,
   412 U.S. 218 (1973)..............................................................................13, 14

*Ex parte Schollenberger*,
   96 U.S. 369 (1877)...............................................................................3, 4

*South Dakota v. Neville*,
   459 U.S. 553 (1983)...................................................................................8

*St. Clair v. Cox*,
   106 U.S. 350 (1882)...................................................................................3

*Tenet v. Doe*,
   544 U.S. 1 (2005).......................................................................................6

*M/S Bremen v. Zapata Off-Shore Co.*,
   407 U.S. 1 (1972)....................................................................................12

*Troxel v. Granville*,
   530 U.S. 57 (2000)....................................................................................14

*Washington v. Glucksberg*,
   521 U.S. 702 (1997)..................................................................................14

*Washington v. Superior Ct. of Wash.*,
   289 U.S. 361 (1933)...............................................................................3, 4

*Zemel v. Rusk*,
   381 U.S. 1 (1965)....................................................................................16

**Statutes**

Anti-Terrorism Act of 1987, Pub. L. 100-204, Title X, 101 Stat. 1406.

   22 U.S.C. § 5202......................................................................................6

Promoting Security and Justice for Victims of Terrorism Act of 2019,
   Pub. L. 116-94, Division J, Title IX, § 903, 133 Stat. 3082-3085

   18 U.S.C. § 2334(e) ........................................................................ *passim*

Taylor Force Act, Pub. L. 115-141, Division S, Title X, § 1004, 132 Stat. 1144

   22 U.S.C. § 2378c-1..................................................................................6

**Other Authorities**

*Constitution of the United States: Analysis and Interpretation*, S. Doc. No. 112-9
    (2012 & Supp. 2020)....................................................................................................12

Plaintiffs respectfully submit this memorandum to address the decision in *Fuld v. Palestine Liberation Org.*, No. 20 Civ. 3375 (JMF) (S.D.N.Y. Jan. 6, 2022), holding unconstitutional the Promoting Security and Justice for Victims of Terrorism Act.

## INTRODUCTION

In constitutional law, the standard of review matters. A statute might survive rational-basis review, but not a *per se* rule. As plaintiffs have explained, a statute concerning personal jurisdiction must satisfy two legal tests. *First*, the exercise of personal jurisdiction must be "'reasonable, in the context of our federal system of government.'" *Ford Motor Co. v. Montana Eighth Judicial Dist. Ct.*, 141 S. Ct. 1017, 1023 (2021) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 317 (1945)). *Second*, the defendants must receive "fair warning that a particular activity may subject them to the jurisdiction of a foreign sovereign." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985). These two criteria—reasonableness and fair warning—are the same ones that the Supreme Court has repeatedly applied in reviewing implied-consent statutes.

The *Fuld* court expressly acknowledged that the PSJVTA "easily satisfie[s]" the requirement that it reasonably serve a "legitimate governmental objective," slip op. 19 n.7, and implicitly acknowledged that it also satisfies the fair warning standard, *id.* at 21. But the court considered these two tests to be inadequate. It asserted (without explanation) that rational-basis review "adds little" to the fair notice test. *Id.* at 19 n.7. As for fair notice, it said: "to hold that fair notice and an opportunity to conform one's behavior are the only requirements for 'deemed consent' jurisdiction to comport with due process would be to hold that personal jurisdiction is limited only by reach of the legislative imagination—which is to say, that there are no constitutional limits at all." *Id.* at 21. The court instead applied a *per se* ban on implied consent drawn from a case far afield from personal jurisdiction. The court therefore struck the statute down as unconstitutional.

This conclusion resulted from three missteps. *First*, the *Fuld* court incorrectly disregarded

1

the Supreme Court cases applying a reasonableness standard to implied-consent statutes, upholding such statutes when they are reasonable and striking them down when unreasonable. *Second*, the court imported an inapposite case creating a *per se* ban on implied consent in the very different sovereign-immunity context, which incorrectly imposed an insurmountable standard of review. *Third*, the court incorrectly excluded consideration of the important federal interests at stake.

## ARGUMENT

### A.    The *Fuld* Court Incorrectly Disregarded the Reasonableness Test

The *Fuld* court asserted that upholding the PSJVTA "would effectively mean that there are no due process limitations on the exercise of personal jurisdiction." Slip op. 20. This view permeated the court's opinion. *See id.* at 2 ("no constitutional limits"), 22 ("legislative whim"), 27 ("Congress cannot simply declare anything it wants to be consent"). Thus, at its base, the *Fuld* opinion assumes that rational-basis review imposes no limiting principle. This assumption fails to recognize the work done by the rational-basis test, the "core of the concept" of due process applied to government action, which protects persons from "the exercise of power without any reasonable justification in the service of a legitimate governmental objective." *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 845-46 (1998). Contrary to the *Fuld* decision's assumption, this traditional due-process test does not mean that "anything" goes. Statutes based on nothing but "legislative whim" are unconstitutional precisely because "a regulation that fails to serve any legitimate governmental objective may be so arbitrary or irrational that it runs afoul of the Due Process Clause." *Lingle v. Chevron U.S.A. Inc.*, 544 U.S. 528, 542 (2005). The Supreme Court has evaluated implied consent statutes for reasonableness as long ago as 1877 and as recently as 2016. The *Fuld* court disregarded these cases. The PSVJTA is constitutional because it meets the standard applied in these cases.

**1. Consent Jurisdiction Before *International Shoe.*** As early as *Ex parte Schollenberger*, 96 U.S. 369 (1877), the Court upheld jurisdiction over an out-of-state defendant that had been

2

deemed to consent to suit by statutory appointment of an agent to receive process. The Court explained that a state that could exclude a foreign corporation could also allow the corporation to transact business in the state "'upon such conditions as may be prescribed by the law of the place,'" and that the condition that the foreign corporation "shall consent to be sued there" is "not unreasonable." *Id.* at 376 (quoting *Baltimore & O. R. Co. v. Harris*, 79 U.S. 65, 81-82 (1870), and citing *Lafayette Ins. Co. v. French*, 59 U.S. (18 How.) 404, 407 (1856)).

Later cases similarly rejected due process challenges to statutes under which consent to personal jurisdiction was "implied," so long as the state's jurisdictional interest was "reasonable" and the defendant had actual "notice of [the] suit." *St. Clair v. Cox*, 106 U.S. 350, 356 (1882). In *Penn. Fire Ins. Co. v. Gold Mining & Milling Co.*, 243 U.S. 93 (1917), the Court upheld a statute requiring an out-of-state business, as a condition of "obtain[ing] a license to do business," to "consent" to jurisdiction by designating an agent to receive service of process. *Id.* at 94. The defendant argued that the statute violated due process, but the Supreme Court disagreed. The defendant had implicitly consented to Missouri's jurisdiction through the "voluntary act" of registering for a business license, the Court explained, and its consent was valid even if "a mere fiction." *Id.* at 96. In *Hess v. Pawloski*, 274 U.S. 352 (1927), the Court upheld a statute providing for "implied consent" to jurisdiction by out-of-state motorists, because "the state may make and enforce regulations reasonably calculated to promote care on the part of all, residents and nonresidents alike, who use its highways." *Id.* at 356.

As the Court summarized the rule in another case upholding a statutorily "designated" corporate agent for receiving service of process:

> The state need not have admitted the corporation to do business within its borders…
> It has repeatedly been said that qualification of a foreign corporation in accordance
> with the statutes permitting its entry into the state constitutes an assent on its part
> to *all the reasonable conditions imposed*…. And for this reason a state may not

> exact arbitrary and unreasonable terms respecting suits against foreign corporations as the price of admission.

*Washington v. Superior Ct. of Wash.*, 289 U.S. 361, 364-65 (1933). These cases stand for the proposition that the power to exclude an entity from the forum encompasses the power to admit it on reasonable conditions, including the condition that its presence will be deemed to be consent to the exercise of personal jurisdiction. The *Fuld* court disregarded this entire line of precedent.

**2. Consent Jurisdiction Since *International Shoe*.** As the *Fuld* court recognized, *see* slip op. 9-10, the Supreme Court's modern personal jurisdiction jurisprudence draws on the principles articulated in *International Shoe*. Nothing in that case or its progeny can fairly be read to have rejected a reasonableness standard for reviewing statutes that allow for the exercise of personal jurisdiction. To the contrary, as the Supreme Court recently explained, *International Shoe* held that "a tribunal's authority depends on the defendant's having such 'contacts' with the forum State that 'the maintenance of the suit' is '*reasonable*, in the context of our federal system of government,' and 'does not offend traditional notions of fair play and substantial justice.'" *Ford Motor Co.*, 141 S. Ct. at 1024 (emphasis added) (quoting *Int'l Shoe*, 326 U.S. at 316-17).

That standard applies equally to jurisdiction based on consent, implied or express: The *International Shoe* Court itself cited deemed-consent cases with approval, explaining that in appropriate circumstances, corporate actions "may be deemed sufficient to render the corporation liable to suit," because they "were of such a nature as to justify" "resort to the legal fiction that it has given its consent." *Id.* at 318. Indeed, only one month after *International Shoe*, the Supreme Court upheld a consent-to-jurisdiction statute in *Mississippi Pub. Corp. v. Murphree*, 326 U.S. 438, 442 (1946) ("By designating an agent to receive service of process and consenting to be sued in the courts of the state, the corporation had consented to suit in the district court"). And the Court continued to assume the validity of such statutes long after that. *See Bendix Autolite Corp. v.*

4

*Midwesco Enters., Inc.*, 486 U.S. 888, 892 (1988) (stating that a corporation could appoint "a resident agent for service of process in Ohio and subject itself to the general jurisdiction of the Ohio court").

To be sure, personal jurisdiction has undergone some changes since *International Shoe*. In *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915 (2011), and *Daimler AG v. Bauman*, 571 U.S. 117 (2014), the Supreme Court significantly restricted the availability of *general* jurisdiction "'over a foreign corporation that has not consented to suit in the forum,'" to cases in which the defendant corporation is "'essentially at home in the forum state.'" *Daimler*, 571 U.S. at 122, 129 (quoting *Goodyear*, 564 U.S. at 919, 928). Based on these cases, courts today are divided on whether cases upholding state business-registration statutes requiring consent to general (*i.e.*, all-purpose) jurisdiction. The courts have focused particularly on *Pennsylvania Fire*, which squarely upheld such a statute.

The Second Circuit, for its part, has stated that *Pennsylvania Fire* does not "govern categorically" in view of "doctrinal developments" that have "cabined the impact" of other cases from that era, and in light of "expectations created by the continuing expansion of interstate and global business." 814 F.3d at 683. But because the statute at issue there was not "drafted such that it could be fairly construed as requiring foreign corporations to consent to general jurisdiction," the *Brown* court found no need resolve the question—stating only that a case squarely presenting the issue of *Pennsylvania Fire*'s continued vitality would pose a "difficult constitutional question." *Id.* at 640.

That forecast was prescient. The issue has continued to divide the courts. Thus, Pennsylvania's Supreme Court refused to follow *Pennsylvania Fire* in *Mallory v. Norfolk S. Ry. Co.*, No. 3 EAP 2021, 2021 WL 6067172 at *18 (Pa. Dec. 22, 2021). In contrast, Georgia's Supreme Court came out the opposite way in *Cooper Tire & Rubber Co. v. McCall*, 863 S.E.2d 81, 90 (Ga. 2021),

holding that "[u]nless and until the United States Supreme Court overrules *Pennsylvania Fire,* that federal due process precedent remains binding on this Court and lower federal courts." *Cooper* thus followed the doctrine of vertical *stare decisis*, under which Supreme Court decisions "remain binding precedent until [that Court sees] fit to reconsider them, regardless of whether subsequent cases have raised doubts about their continuing vitality." *Bosse v. Oklahoma*, 137 S. Ct. 1, 2 (2016) (quotation marks omitted). That was appropriate: If a Supreme Court precedent "has direct application in a case, yet appears to rest on reasons rejected in some other line of decisions, the Court of Appeals should follow the case which directly controls, leaving to [the Supreme] Court the prerogative of overruling its own decisions." *Tenet v. Doe*, 544 U.S. 1, 10-11 (2005) (quotation marks omitted).[1]

Furthermore, nothing calls into question the overarching rule that the Supreme Court judges the exercise of personal jurisdictional by the traditional due process standard: whether doing so is *reasonable* in light of valid governmental objectives and in the context of our federal

---

[1]    Defendants ignore *Cooper* and highlight *Mallory*. But even beyond the fact that it disregards Supreme Court precedent, *Mallory* is distinguishable on several grounds.

**First**, the Pennsylvania statute at issue in *Mallory* created *general* jurisdiction in the state's courts for *all* disputes, even ones with "no connection to the Commonwealth." 2021 WL 6067172 at *18. By contrast, the PSJVTA is narrow and specific, and plainly connected to a "legitimate interest" of the federal government. *Id.*

**Second**, Pennsylvania's attempt to assert jurisdiction was an obvious "infringement upon the sovereignty of sister states," which had a far more direct interest in the relevant dispute *Id.* Both parties in *Mallory* were citizens of Virginia, and many of the plaintiff's alleged injuries were sustained there; the plaintiff's suit accordingly could have been brought—and should have been brought—in Virginia. *See id.* (finding such "federalism" concerns may be "determinative").

**Third**, the Pennsylvania statute at issue in *Mallory* forced businesses to choose between submitting to general jurisdiction or abandoning entirely the right to do business in the state. That was a quintessential "Hobson's choice," because the defendant railroad could not realistically cease doing business altogether in Pennsylvania. *Id.* at *20. Under the PSJVTA, by contrast, defendants are genuinely free to cease engaging in non-UN related activities on U.S. soil and paying terrorists for killing their American victims. Indeed, such conduct is presumptively *proscribed by* federal law. *See* 22 U.S.C. § 5202 (non-UN activities); 22 U.S.C. § 2378c-1 (pay for slay).

system. *See Ford Motor Co.*, 141 S. Ct. at 1024; *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 317 (1945). If the Supreme Court reevaluates *Pennsylvania Fire* and similar cases, it will be under the standards requiring fair notice and a rational nexus between the statute and a legitimate state interest. Indeed, the Second Circuit's decision in *Brown* itself reflects these two due process requirements. There, the Circuit expressed concern that the statute contained no "express language alerting the potential registrant that by complying with the statute and appointing an agent it would be agreeing to submit to the general jurisdiction of the state courts." 814 F.3d at 636. Similarly, the Circuit expressed concern about permitting "the exercise of general jurisdiction over a corporation in a state in which the corporation had done *no business at all*," *id.* at 640, which would reach "circumstances where the state's interests seem limited." *Id.* at 637 (emphasis added). As the *Fuld* court recognized, neither consideration would invalidate the PSJVTA, which provides fair notice of the jurisdictional consequences of the triggering conduct, and which applies solely to suits under the Anti-Terrorism Act, in which the Federal Government's interest is compelling.

The *Fuld* decision asserts that *Brown* and similar cases "strongly suggest … that allowing Congress by legislative fiat to simply deem conduct that would otherwise not support personal jurisdiction in the United States to be consent, as it tried to do here, would rob the case law conditioning personal jurisdiction on sufficient contacts with the forum of meaning by a back-door thief." Slip op. 18-19 (cleaned up). To the contrary, *Brown* said nothing about "legislative fiat" (*id.* at 19), and offered no forecast on how the Circuit would assess the constitutionality of a federal consent statute providing fair notice by way of a clear statutory mandate that reasonably advances legitimate federal interests—particularly in a case where the Federal Government's power to exclude these defendants is unquestioned. *Brown* went out of its way to point out that "a carefully drawn statute that expressly required consent to general jurisdiction … at least in cases brought by

state residents, might well be constitutional." 814 F.3d at 637.

    **3. Other Deemed-Consent Laws.** Personal jurisdiction is not the only field in which the Supreme Court has evaluated "deemed consent" under a "reasonableness" standard. For example, "all 50 States have adopted implied consent laws that require motorists, as a condition of operating a motor vehicle within the State, to consent to BAC [blood alcohol concentration] testing if they are arrested or otherwise detained on suspicion of a drunk-driving offense." *Missouri v. McNeely*, 569 U.S. 141, 161 (2013). The Supreme Court first described such statutes in *Breithaupt v. Abram*, 352 U.S. 432 (1957), in which it upheld BAC analysis of blood drawn from an unconscious suspect, because "modern scientific methods, and strict enforcement of traffic laws," are "reasonable means to make automobile driving less dangerous." *Id.* at 439. The Court said (albeit in *dicta*) that a "deemed consent" statute reflected a "fair assumption" that a driver "would consent to have a blood test." *Id.* at 434 n.2.

    In *South Dakota v. Neville*, 459 U.S. 553 (1983), the Court rejected a due process challenge to South Dakota's "implied consent" statute. The statute at issue there provided that "any person operating a vehicle in South Dakota is deemed to have consented" to a BAC test, and that refusal to take the test upon request by a police officer would lead to a one-year revocation of the suspect's driver's license. *Id.* at 559-60. The Court held that the Due Process Clause did not bar admission at trial of evidence that the suspect had refused a BAC test—use of such evidence was not "fundamentally unfair." *Id.* at 565. In so ruling, the Court emphasized that South Dakota had "warned" drivers about the consequences of refusing the test, and "these warnings comported with the fundamental fairness required by due process." *Id.* at 566. In addition, the Court held that the statute imposed no "impermissible coercion" in violation of the Fifth Amendment's privilege against self-incrimination. *Id.* at 562; *see id.* at 561-64. Unlike the *Fuld* court, the Supreme Court in *Neville*

8

did not second-guess whether the statutorily deemed consent was or was not an adequate "proxy" for "actual consent." *Fuld*, slip op. 15, 28.

More recently, the Supreme Court applied the reasonableness test to implied-consent statutes in the Fourth Amendment context. At issue in *Birchfield v. North Dakota*, 136 S. Ct. 2160 (2016), were statutes not only implying consent, but imposing civil and criminal penalties on motorists who refuse to have their BAC evaluated using breathalyzer tests and blood draws. The Court approved generally of "implied-consent laws that impose civil penalties and evidentiary consequences on motorists who refuse to comply" with BAC tests, but noted that "there must be a limit to the consequences to which motorists may be deemed to have consented by virtue of a decision to drive on public roads." *Id.* at 2185. The Court accordingly explained that when evaluating the validity of a motorist's implied consent to a search, "reasonableness is always the touchstone of Fourth Amendment analysis." *Id.* at 2186.

Under that test, the Court upheld laws providing for implied consent to the breathalyzer test, but invalidated laws imposing criminal penalties for refusal to submit a blood sample. Breath tests do not implicate significant privacy concerns; they require a "negligible" physical intrusion; and they leave no biological sample in the government's possession. *Id.* at 2176-78. Blood draws, by contrast, require piercing the skin to extract a part of the subject's body; they also result in a durable biological sample, from which the government may exact information beyond a BAC reading. *Id.* at 2177-78. As a result, the Court explained, "their reasonableness must be judged in light of the availability of the less invasive alternative of a breath test." *Id.* at 2184. Applying the reasonableness standard, the Court held that criminal penalties for refusal to submit to a blood draw cannot be justified by motorists' "legally implied consent." *Id.* at 2185-86.

Even then, however, the Court did not rule out *all* laws providing for implied consent to

9

blood draws. It cautioned that "nothing we say here should be read to cast doubt" on "implied-consent laws that impose *civil penalties* and *evidentiary consequences* on motorists who refuse" to agree to blood draws. *Id.* at 2185 (emphasis added). Contrary to *Fuld*, the Supreme Court did not invalidate deemed-consent statutes generally or indicate that such statutes subject constitutional rights "to mere legislative whim," *Fuld* slip op. 22. Nor did it hold that a deemed-consent statute must employ a sufficiently close "proxy for actual consent." *Id.* at 15, 28. Instead, the Court held that the Constitution protects motorists from *unreasonable* government action, while respecting the legislative prerogative to address legitimate government interests. Applying the "reasonableness" standard, the Court approved of civil penalties to enforce deemed-consent statutes requiring a blood test, but determined that "motorists cannot be deemed to have consented to submit to a blood test on pain of committing a *criminal* offense." 136 S. Ct. at 2186 (emphasis added).

**B.    The *Fuld* Court Incorrectly Imposed a Heightened Standard of Review of "Voluntariness" By Misapplying the Supreme Court's *College Savings* Case**

The Due Process Clause "does not stand as a bar to all governmental regulations that may in some sense implicate a plaintiff's 'liberty' [or 'property']. Rather, the level of scrutiny with which [courts] will examine a governmental regulation turns on the nature of the right at issue." *Immediato v. Rye Neck Sch. Dist.*, 73 F.3d 454, 460 (2d Cir. 1996). The level of scrutiny given to a person's *consent* also varies according to the nature of the right at issue. Thus, a defendant's actions are "'voluntary' within the meaning of the Due Process Clause" if they are the product of "'a free and unconstrained will.'" *Oregon v. Elstad*, 470 U.S. 298, 304 (1985) (quoting *Haynes v. Washington,* 373 U.S. 503, 514 (1963)).

The *Fuld* court did not apply that standard. It applied a strict level of scrutiny to the PSJVTA's consent provisions, effectively adopting a *per se* rule that consent to jurisdiction can never be legally implied unless the predicate conduct is a "close[] proxy" for "actual" (*i.e.*, express)

consent. Slip op. 15, 28. The court's rationale for applying this standard is unpersuasive.

**1. *College Savings*.** The court placed its heaviest reliance on *dicta* from *College Savings Bank v. Florida Prepaid Postsecondary Education Expense Board*, 527 U.S. 666 (1999), a case forbidding constructive waiver of state sovereign immunity. *Fuld* said that the case "all but compels" a holding that the PSJVTA is unconstitutional. Slip op. 16-17. But the holding of *College Savings* does not apply here, and the *dicta* on which *Fuld* relied did not address the law governing cases like this one.

The *College Savings* Court overruled *Parden v. Terminal R. Co.*, which had held that "Congress conditioned the right to operate a railroad in interstate commerce upon amenability to suit in federal court as provided by the Act; by thereafter operating a railroad in interstate commerce, Alabama must be taken to have accepted that condition and thus to have consented to suit." 377 U.S. 184, 192 (1964). The *College Savings* Court thus held that Congress does not have authority "to exact constructive waivers of sovereign immunity through the exercise of Article I powers." *Id.* at 683. The Court described *Parden* as "an anomaly in the jurisprudence of sovereign immunity, explaining that "we cannot square *Parden* with our cases requiring that a State's express waiver of sovereign immunity be unequivocal." 527 U.S. at 680. It also explained that upholding constructive waiver of sovereign immunity would, "as a practical matter, permit Congress to [use Article I powers to abrogate] … the constitutionally grounded principle of state sovereign immunity," *id.* at 683-84, even though "Congress can abrogate state sovereign immunity only when it legislates to enforce the Fourteenth Amendment," *id.* at 671. Because of the special context of state sovereignty, the Court underscored that its "test for determining whether a State has waived its immunity from federal-court jurisdiction is a stringent one." *Id.* at 675 (quotation marks omitted).

The *Fuld* court did not discuss this reasoning. The court relied on the statement that:

> *Parden*-style waivers are simply unheard of in the context of *other* constitutionally protected privileges. As we said in *Edelman*, "[c]onstructive consent is not a doctrine commonly associated with the surrender of constitutional rights."

527 U.S. at 681 (quoting *Edelman v. Jordan*, 415 U.S. 651, 673 (1974)) (emphasis and alterations in *College Savings*). The *Fuld* court edited that language to suggest that it concerned cases outside the sovereign immunity context; but *Edelman*, too, was a sovereign-immunity case. That Court held that a state's participation in "a program through which the Federal Government provides assistance for the operation by the State of a system of public aid is not sufficient to establish consent on the part of the State to be sued in the federal courts." 415 U.S. at 673. The *Edelman* Court emphasized the particular need for "the most express language" in determining "whether a State has waived its constitutional protection under the Eleventh Amendment." *Id.*

State sovereign immunity differs from personal jurisdiction in ways that matter here. Immunity is "a fundamental aspect of the sovereignty which the States enjoyed before the ratification of the Constitution." *PennEast Pipeline Co., LLC v. New Jersey*, 141 S. Ct. 2244, 2258 (2021) (quotation marks omitted). As such, it "goes to the very heart of the federal system." *Constitution of the United States: Analysis and Interpretation*, S. Doc. No. 112-9 (2012 & Supp. 2020). Even before *College Savings*, the Court imposed "a particularly strict standard" of review on statutes impairing such immunity. *Port Auth. Trans-Hudson Corp. v. Feeny*, 495 U.S. 299, 305 (1990).

In contrast, the requirement of personal jurisdiction is not a "matter of sovereignty" at all, but of "individual liberty." *Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702-03 (1982). The Supreme Court has held that express consent to personal jurisdiction should be upheld unless "enforcement would be unreasonable and unjust." *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 15 (1972). It has upheld a forum clause in a cruise-ship ticket as "reasonable" where the passenger was "deemed to have knowledge" of the clause. *Carnival Cruise*

*Lines, Inc. v. Shute*, 499 U.S. 585, 593 (1991). It has also explained that "[a] variety of legal arrangements have been taken to represent express or implied consent to the personal jurisdiction of the court," and that the "actions of the defendant may amount to a legal submission to the jurisdiction of the court, whether voluntary or not." *Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 703, 704-05 (1982).

In short, sovereign immunity and personal jurisdiction are different because the Supreme Court has long forbidden constructive waivers of State sovereign immunity, while it has long permitted constructive consent to personal jurisdiction, if *reasonable*. Thus, *College Savings*'s holding does not apply here, and its central principles—the need for unequivocal clarity in the waiver of sovereign immunity and the structural limits on Congress' Article I powers—provide no useful guidance.

**2. Fourth Amendment Cases.** The *Fuld* court drew a direct comparison between the rights at issue here and those at stake under the Fourth Amendment, noting that "[l]aw enforcement may conduct a warrantless search on consent." Slip. op. 22. That comparison should have led the court to the opposite conclusion: Under the Fourth Amendment's "reasonableness" standard, consent is deemed involuntary only when the defendant's "will has been overborne and his capacity for self-determination critically impaired." *Schneckloth v. Bustamonte*, 412 U.S. 218, 225-26 (1973). Defendants cannot meet that standard. Notably, the Supreme Court has explained that the reasonableness standards for consent under the Fourth Amendment "does not differ in substance" from the reasonableness standard applicable under Due Process Clause, *Birchfield*, 136 S. Ct. 2186, and the Court has assessed implied-consent statutes under that standard. *Id.*

**3. Fundamental Rights.** The *Fuld* court also expressed concern that reviewing implied-consent statutes for mere reasonableness could have "staggering implications" "with respect to a

host of individual constitutional rights." Slip op. 22. Here, the *Fuld* court relied on dicta from *College Savings* that Congress could not pass a law to provide that "anyone committing fraud in connection with the buying or selling of securities in interstate commerce would not be entitled to a jury in any federal criminal prosecution of such fraud." Slip op. 16 (quoting 527 U.S. at 681-82). This concern was misplaced. Constitutional guarantees protecting a criminal defendant's fair trial are not easily waived, because the government bears a "heavy burden before waiver [can] be found." *Schneckloth*, 412 U.S. at 236-27. In *Schneckloth*, the Court refused to extend this "strict standard" to the Fourth Amendment "reasonableness" context, because of the "vast difference" between the two. *Id.* at 243. The Court explained that "unlike those constitutional guarantees that protect a defendant at trial, it cannot be said every reasonable presumption ought to be indulged against voluntary relinquishment" of the right to demand a search warrant. *Id.*

The *Fuld* court said repeatedly that it was protecting a "fundamental constitutional right." *Id.* at 2, 16, 21. This may help explain why the court applied heightened scrutiny. The Due Process Clause "includes a substantive component that 'provides heightened protection against government interference with certain fundamental rights and liberty interests.'" *Troxel v. Granville*, 530 U.S. 57, 65 (2000) (plurality) (quoting *Washington v. Glucksberg,* 521 U.S. 702, 719 (1997)). But this case does not concern a "fundamental right," as the due process cases use that term. A right does not merit heightened protection if not enumerated in the Bill of Rights or involving intimate "personal choices central to individual dignity and autonomy." *Obergefell v. Hodges*, 576 U.S. 644, 663 (2015). Rights that do not qualify under this definition are reviewed to ensure that they are "rationally related to legitimate government interests." *Glucksberg*, 521 U.S. at 728.

The Supreme Court's decision in *Cleland v. National College of Business*, 435 U.S. 213 (1978), illustrates why applying heightened scrutiny in *Fuld* was error. *Cleland* involved

14

legislative restrictions on veterans' educational benefits. "While agreeing that the restrictions were rationally related to legitimate legislative objectives, the District Court concluded that veterans' educational benefits approach 'fundamental and personal rights' and therefore a more 'elevated standard of review' was appropriate." *Id.* at 220. The Supreme Court reversed. "The District Court's error was not its recognition of the importance of veterans' benefits but its failure to give appropriate deference to Congress' judgment as to how best to combat abuses that had arisen in the administration of those benefits."

The "right" at issue here is avoiding U.S. jurisdiction while conducting activities on U.S. soil that are regulated by U.S. law, or while paying monthly salaries to murderers of U.S. citizens. The *Fuld* court went astray by treating that right as if it were so fundamental as to be effectively beyond the reach of Congress to affect through legislation. The court stated, for instance, that even though the PLO and PA "realistically could choose to abandon" their pay-for-slay payments and their non-UN activities in the United States, those facts have "no bearing on the voluntariness of the waiver." Slip op. 17. That is faulty logic and makes no sense in the context of the applicable standard of review. The PSJVTA did not overwhelm defendants' free will—whether by force, threat, or otherwise. They have *chosen* of their own free will to continue paying financial rewards to terrorists who kill U.S. citizens, and they have *chosen* of their own free will to continue conducting non-UN activities on U.S. soil. No criminal sanctions compelled them to make these choices, and the negative consequences defendants suffered are no more coercive than those deemed reasonable in cases like *Birchfield*, *Neville*, *Murphree*, *Washington v. Superior Court*, and *Hess*. Defendants may *prefer* to avoid the jurisdiction of the United States courts while continuing the conduct specified in the PSJVTA, but that *preference* merits nothing greater than a right to demand "reasonableness" before being deemed to have consented, just as in *Carnival Cruise Lines*.

15

Contrary to the colorful language in *Fuld*, the consequence of defendants' informed choice—subjecting them to a fair trial on the merits in a civil action in the United States—is not even close to a case of "extorted actual consent." *Id.* at 14.

**C.     The *Fuld* Court Incorrectly Failed to Consider Important Governmental Interests**

By disregarding the "reasonable justification" test, the *Fuld* court also failed to consider the important federal interests in deterring and disrupting international terrorism and compensating U.S. terror victims and their families. The court even went so far as to imply that the national security and foreign policy interests expressed by the political branches were *irrelevant* because the court was aware of no "authority for the proposition that the test for personal jurisdiction … varies by context." Slip op. 27. This also misapprehended the relevant due process standards.

"[P]ersonal jurisdiction requires a forum-by-forum, or sovereign-by-sovereign, analysis." *J. McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873, 884 (2011) (plurality). "Like any standard that requires a determination of 'reasonableness,'" the test for personal jurisdiction "is not susceptible of mechanical application…. We recognize that this determination is one in which few answers will be written in black and white. The greys are dominant and even among them the shades are innumerable." *Kulko v. Superior Ct.*, 436 U.S. 84, 92 (1978) (quotation marks omitted); *see Asahi Metal Indus. Co. v. Superior Ct.*, 480 U.S. 102, 115 (1987) ("the Federal interest in Government's foreign relations policies, will be best served by a careful inquiry into the reasonableness of the assertion of jurisdiction in the particular case"); *cf. Zemel v. Rusk*, 381 U.S. 1, 14 (1965) (upholding travel restrictions to Cuba against a due process challenge because "[t]he requirements of due process are a function not only of the extent of the governmental restriction imposed, but also of the extent of the necessity for the restriction").

## CONCLUSION

For the foregoing reasons, the Court should hold that the PSJVTA constitutional.

Dated: January 14, 2022
      New York, New York

                          Respectfully submitted,

                          ARNOLD & PORTER
                             KAYE SCHOLER LLP

By:   _____
                          Kent A. Yalowitz
                             KENT.YALOWITZ@ARNOLDPORTER.COM
                          David Russell
                             DAVID.RUSSELL@ARNOLDPORTER.COM
                          250 West 55th Street
                          New York, NY 10019
                          T: (212) 836-8344

                          – and –

                          Dirk C. Phillips
                             DIRK.PHILLIPS@ARNOLDPORTER.COM
                          Stephen K. Wirth
                             STEPHEN.WIRTH@ARNOLDPORTER.COM
                          601 Massachusetts Ave. NW
                          Washington, DC 20001