

Squire Patton Boggs (US) LLP
2550 M Street, NW
Washington, D.C. 20037

O   +1 202 457 6000
F   +1 202 457 6315
squirepattonboggs.com

Gassan A. Baloul
T   +1 202 457 6155
gassan.baloul@squirepb.com

**VIA Email and ECF**

February 25, 2022

The Honorable Mary Kay Vyskocil
United States District Judge
United States District Court
 for the Southern District of New York
500 Pearl Street, Room 2230
New York, New York 10007-1312

Re:    *Shatsky v. PLO*, No. 18-12355 (MKV) (DF) – **Response to Plaintiffs' Feb. 23rd Letter**

Dear Judge Vyskocil:

On behalf of Defendants, we write in response to Plaintiffs' February 23, 2022 letter (Dkt. 162), which addresses two notices of supplemental authority filed by Defendants nearly two months ago. As Plaintiffs acknowledge, the parties in the *Sokolow* case have already filed supplemental memoranda addressing the same issues—yet Plaintiffs only provided the Court with a copy of one of those memoranda. Accordingly, to ensure the Court has access to the full record in *Sokolow*, Defendants respectfully attach a copy of the supplemental memorandum they filed in *Sokolow* (Tab A).

In response to Plaintiffs' new arguments, Defendants emphasize the following key points regarding the courts' recent decisions in *Fuld* and *Mallory*, as developed more fully in their supplemental *Sokolow* memorandum:

**1. In *Fuld*, Judge Furman squarely rejected Plaintiffs' argument that the PSJVTA gives rise to valid "consent" jurisdiction over Defendants.** As Judge Furman explained, the PSJVTA's "deemed consent" provisions do not satisfy the Due Process Clause because "the conduct to which Congress attached jurisdictional consequences in the PSJVTA is not 'of such nature as to justify the fiction' that Defendants actually consented to the jurisdiction of the Court." *Fuld v. PLO*, 2022 U.S. Dist. LEXIS 3102, *18-19 (S.D.N.Y. Jan. 6, 2022). Plaintiffs attempt to obfuscate *Fuld*'s central holding, asserting that Judge Furman "soundly rejected Defendants' argument that a consent-to-jurisdiction statute requires reciprocity." (Pls. Letter at 2.) Judge Furman recognized that "reciprocity" is a feature of many consent-to-jurisdiction decisions, *id.* at *38 n.10, but did not need to reach the broader question whether "'deemed consent' jurisdiction

Squire Patton Boggs (US) LLP is part of the international legal practice Squire Patton Boggs, which operates worldwide through a number of separate legal entities.

Please visit squirepattonboggs.com for more information.

in all its forms would necessarily be unconstitutional," precisely because he agreed with
Defendants that the conduct specified by the PSJVTA does *not* support a reasonable inference of
knowing and voluntary consent to jurisdiction. *Id.* at *38-39. In other words, while reciprocity or
an exchange of benefits may give rise to implied consent to jurisdiction, Judge Furman agreed
with Defendants that the PSJVTA does not satisfy that (or any other) valid consent framework. *Id.*

**2. Plaintiffs' claims regarding Defendants' purported U.S. activities do not
distinguish this case from *Fuld*.** Plaintiffs similarly mischaracterize the factual record at issue in
*Fuld*, asserting that Judge Furman did not consider a variety of "[f]acts revealed in discovery"
regarding Defendants' U.S. activities "which were not alleged in the *Fuld* complaint." That
assertion is simply false.

Contrary to Plaintiffs' claims, the jurisdictional allegations at issue in *Fuld* were virtually
identical to the factual claims described in Plaintiffs' latest letter. Like Plaintiffs in this case, the
*Fuld* plaintiffs specifically alleged that Defendants: (1) conducted "political propaganda activities
and proselytizing" in the United States to influence U.S. policy; (2) held "press conferences" with
non-UN entities (such as retired Israeli politicians) to discuss Palestinian issues; (3) maintained "a
website and Twitter and Facebook accounts … through which they publish communications in
English adapted and intended to influence the public within the United States"; (4) updated these
social-media accounts "while physically present in the United States"; and (5) used the physical
site of Palestine's UN Mission in New York to publish these communications. *Compare* Am.
Compl. ¶¶ 75-95, ECF 21, *Fuld v. PLO*, No. 20-CV-3374 (S.D.N.Y.) (*Fuld* plaintiffs' allegations),
*with* Pls. Letter at 3-4 (listing the same types of activities).

Accepting those allegations as true, Judge Furman correctly concluded they were ""too
thin to support a meaningful inference of consent to jurisdiction in this country," because they do
not "even remotely signal[] approval or acceptance of the Court's jurisdiction" or an intent "to
submit to the laws of the United States or to the jurisdiction of an American court." *Fuld*, 2022
U.S. Dist. LEXIS 3102 at *9-11, 19 (cleaned up). Plaintiffs fail to identify any material difference
in the alleged jurisdictional facts at issue, nor do they contest Judge Furman's broader conclusion
that Congress cannot "simply [take] conduct in which the PLO and PA had previously engaged—
conduct that the Second and D.C. Circuits had held was insufficient to support personal jurisdiction
…—and declare[] that such conduct 'shall be deemed' to be consent."[1] *Id.* at *18-19. Put simply,
Plaintiffs' list of "facts revealed in discovery" does not alter the legal conclusion that, to pass

---

[1] Notably, Plaintiffs offer no response to Judge Furman's analysis of purported "martyr payments,"
which take place entirely overseas.  As Judge Furman concluded, "Inferring consent to jurisdiction
in the United States from … 'martyr payments' that have no direct connection to the United States,
let alone to litigation in a United States court … would stretch the idea of consent beyond its
breaking point."  *Fuld*, 2022 U.S. Dist. LEXIS 3102 at *19.

constitutional "muster," "the predicate conduct would have to be a much closer proxy for actual consent than the predicate conduct at issue is here." *Id.* at *20.[2]

**3. Judge Furman appropriately considered governmental interests in asserting jurisdiction in ATA actions.** Contrary to Plaintiffs' assertions (*see* Pls. Letter at 4), Judge Furman expressly sought and considered the interests asserted by the United States. *See Fuld*, 2022 U.S. Dist. LEXIS 3102 at *10. As Judge Furman recognized, however, the mere fact the Government asserts an interest in permitting recovery in ATA actions does not mean that the Court can dispense with basic due process protections. Governmental interests in foreign affairs and national security "do not automatically trump the Court's own obligation to secure the protection that the Constitution grants to individuals." *Id.* at *34-35. Federal courts have consistently rejected the argument that "applying due-process protections to limit personal jurisdiction in Antiterrorism Act cases would thwart Congress's intent to provide redress," because "Congress cannot wish away a constitutional provision." *Livnat v. Palestinian Auth.*, 851 F.3d 45, 53 (D.C. Cir. 2017).

**4. Exercising personal jurisdiction over Defendants under the PSJVTA's "deemed consent" provisions would not be reasonable.** Plaintiffs continue to confuse the governing legal standard, claiming at various points in their letter that Judge Furman should have applied "rational basis" or "reasonableness" review. (*See* Pls. Letter at 4-5) Contrary to these assertions, the *Fuld* decision makes clear that Judge Furman well understood the legal standards applicable to "consent" jurisdiction. As Judge Furman recognized (and as the parties and the U.S. Government all agreed in motions briefing), the applicable test is whether Defendants' purported "consent" was "knowing and voluntary." *Fuld*, 2022 U.S. Dist. LEXIS 3102 at *17. Plaintiffs offer no support for their assertion that the constitutionality of the PSJVTA should be assessed under "rational basis review," rather than under the governing "knowing and voluntary" test applicable to consent-jurisdiction statutes. *Brown v. Lockheed Martin Corp.*, 814 F.3d 619, 640-41 (2d Cir. 2016); *see also* Defs. Supp. Mem. in *Sokolow*, Tab A at 1-3, 7-8.

---

[2] Plaintiffs also fail to explain how the activities described in their Letter would trigger personal jurisdiction under the PSJVTA in the first instance. As this Court knows, the PSJVTA expressly provides that "no court may consider" Defendants' UN activities, meetings with government officials, or *any activities "ancillary to" such activities*. As part of its UN activities, the Palestinian Mission is expected to "participate[] in the work of" the UN Committee on the Exercise of the Inalienable Rights of the Palestinian People (CEIRPP). *See* Report, CEIRPP, UN Doc. A/75/35. The CEIRPP's express purpose is to "mobilize the international community" to provide "the broadest possible international support" for the Palestinian people by "end[ing] … the Israeli occupation," supporting the "two-State solution," "highlighting the illegality of Israeli settlement activities in the West Bank," and "rais[ing] international awareness of the political, human rights and humanitarian developments on the ground." Programme of Work for 2020, CEIRPP, UN Doc. A/AC.183/2020/1 (Feb. 7, 2020). Defendants' efforts to "raise public awareness" and "advocate for the Palestinian cause" (*see* Letter at 3-4) are all plainly "ancillary to" Defendants' participation on the UN-CEIRPP.

Moreover, contrary to Plaintiffs' claims that Judge Furman "eschewed … any reasonableness analysis at all," *Fuld* expressly held that the inference a defendant "inten[ded] to submit to the laws of the forum" is "*reasonable* … only where the defendant's statements or conduct actually signal approval or acceptance," which "in turn, requires … the party's consent to be 'knowing and voluntary.'" *Id.* at *17 (emphasis added). As Judge Furman concluded, "subjecting foreign parties to jurisdiction based on conduct that has no direct contact with the United States, let alone nexus with litigation in the United States, would not accord with the 'fair play and substantial justice' due process demands." *Id.* at *37.

**5. The Pennsylvania Supreme Court's decision in *Mallory* confirms the distinction between "compelled" and "voluntary" consent.** *Mallory* is the latest in a series of cases holding that statutes conditioning the right to do business in a state on implied "consent" to personal jurisdiction violate the Due Process Clause. As Judge Furman explained, these decisions support the conclusion "that 'deemed consent' jurisdiction is limited by the Due Process Clause and that allowing Congress by legislative fiat to simply 'deem' conduct that would otherwise not support personal jurisdiction … to be 'consent' … would 'rob' the case law conditioning personal jurisdiction on sufficient contacts with the forum 'of meaning by a back-door thief.'" *Id.* at *25 (quoting *Brown*, 814 F.3d at 640).

Plaintiffs attempt to distinguish *Mallory* by arguing that business registration statutes impermissibly "force defendants to forfeit their ability to do business" in the state unless they consent to jurisdiction, whereas the PSJVTA "permits Defendants to avoid submitting themselves to jurisdiction simply by avoiding" the specified conduct. (Pls. Letter at 2.) Linguistic gymnastics aside, there is obviously no difference between "forcing" a party to forfeit its ability to engage in certain activities unless it consents to jurisdiction, and "permitting" a party "to avoid" consenting to jurisdiction by agreeing to forfeit its ability to engage in certain activities. As Judge Furman recognized, the business registration cases as well as the Supreme Court's decision in *College Savings Bank* all demonstrate that legislatively-coerced "consent" to jurisdiction does not satisfy the Due Process Clause. *Id.* at *25; *see also* Defs. Supp. Mem. in *Sokolow*, Tab A at 3-7.

Accordingly, Defendants respectfully submit that exercising personal jurisdiction over Defendants in this case would be unconstitutional for the reasons identified in the *Fuld* decision.

Respectfully submitted,

Squire Patton Boggs (US) LLP

Gassan A. Baloul

cc:      All counsel (by ECF)

# TAB A



Squire Patton Boggs (US) LLP
2550 M Street, NW
Washington, D.C.  20037

O   +1 202 457 6000
F   +1 202 457 6315
squirepattonboggs.com


Gassan A. Baloul
T   +1 202 457 6155
gassan.baloul@squirepb.com


**VIA ECF**

January 24, 2022

Hon. George B. Daniels
United States District Judge
United States District Court
for the Southern District of New York
500 Pearl Street
New York, New York 10007-1312


**Re:**    *Sokolow v. PLO*, No. 04-cv-00397 (GBD-RLE)

Dear Judge Daniels:

We are counsel to Defendants Palestine Liberation Organization and the Palestinian Authority ("Defendants") in this matter.  As proposed in our letter of January 18, 2022, we respectfully seek permission to submit the enclosed response to Plaintiffs' "supplemental" brief criticizing Judge Furman's decision in *Fuld v. PLO*, No. 20-3374 (Jan. 6, 2021).

Respectfully submitted,

Squire Patton Boggs (US) LLP

Gassan A. Baloul


cc:    All Counsel (via ECF)


45 Offices in 20 Countries

Squire Patton Boggs (US) LLP is part of the international legal practice Squire Patton Boggs, which operates worldwide through a number of separate legal entities.

Please visit squirepattonboggs.com for more information.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

MARK I. SOKOLOW, et al.,

                     Plaintiffs,

-against-

PALESTINE LIBERATION
ORGANIZATION, et al.,

                     Defendants.

Case No. 04 Civ. 397 (GBD)

---

## DEFENDANTS' REPLY TO PLAINTIFFS' BRIEF ADDRESSING THE *FULD* DECISION ON THE PSJVTA

**SQUIRE PATTON BOGGS (US) LLP**

Gassan A. Baloul (GB-4473)
gassan.baloul@squirepb.com
Mitchell R. Berger (MB-4112)
mitchell.berger@squirepb.com
2550 M Street, N.W.
Washington, D.C. 20037
Telephone: (202) 457-6000
Facsimile: (202) 457-6315

*Attorneys for Defendants Palestine Liberation
Organization and Palestinian Authority*

# <u>TABLE OF CONTENTS</u>

<u>**Page**</u>

TABLE OF AUTHORITIES ........................................................................................ ii

INTRODUCTION .................................................................................................... 1

    A.    Plaintiffs Mischaracterize the Due Process Analysis in *Fuld*, Which Does Not Apply "Strict Scrutiny" or Impose a "Per Se Ban" on Implied Consent. ................................................................................................ 2

    B.    The Supreme Court's Central Holding in *College Savings Bank* Strongly Supports Judge Furman's Analysis. ........................................................... 4

    C.    Plaintiffs' Other Cases Do Not Support Their Arguments. ................... 7

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                         **Page(s)**

*Aybar v. Aybar*,
2021 N.Y. LEXIS 2134 (N.Y. Oct. 7, 2021) ...........................................................................6

*Bank Markazi v. Peterson*,
136 S. Ct. 1310 (2016) ...........................................................................................................9

*Brewer v. Williams*,
430 U.S. 387 (1977) ...............................................................................................................9

*Brown v. Lockheed Martin Corp.*,
814 F.3d 619 (2d Cir. 2016) .....................................................................................1, 2, 3, 9

*Burger King v. Rudzewicz*,
471 U.S. 462 (1985) ............................................................................................................7, 8

*Chen v. Dunkin' Brands*,
954 F.3d 492 (2d Cir. 2020) ...................................................................................................3

*City of Boerne v. Flores*,
521 U.S. 507 (1997) ...............................................................................................................9

*Cleland v. Nat'l College of Business*,
435 U.S. 213 (1978) ...............................................................................................................8

*College Savings Bank v. Florida Prepaid Postsecondary Ed. Expense Bd.*,
527 U.S. 666 (1999) ...................................................................................................... *passim*

*Cooper Tire & Rubber Co. v. McCall*,
863 S.E.2d 81 (Ga. 2021) ......................................................................................................6

*Ford Motor v. Montana Eighth Judicial Dist.*
141 S. Ct. 1017 (2021) ...........................................................................................................7

*Koontz v. St. Johns River Water Mgmt. Dist.*,
570 U.S. 595 (2013) ...........................................................................................................9, 10

*Mallory v. Norfolk S. Railway*,
No. 3 EAP, 2021 Pa. LEXIS 4318, 2021 WL 6067172 (Dec. 22, 2021) ...........................6, 10

*Mitchell v. Wisconsin*,
139 S. Ct. 2525 (2019) ...........................................................................................................8

*Oregon v. Elstad*,
470 U.S. 298 (1985) ...............................................................................................................4

*Penn. Fire v. Gold Mining and Milling*,
   243 U.S. 93 (1917)..............................................................................................6

*Perry v. Sindermann*,
   408 U.S. 593 (1972)..........................................................................................10

*Schneckloth v. Bustamonte*,
   412 U.S. 218 (1973)............................................................................................8

*Waldman v. PLO*,
   835 F.3d 317 (2d Cir. 2016).....................................................................1, 2, 5, 9

*Wellness Int'l v. Sharif*,
   575 U.S. 665 (2015)............................................................................................9

## Introduction

Plaintiffs' fundamental critique of *Fuld* astonishingly insists that a mere "rational-basis" "standard of review" governs the constitutionality of the PSJVTA.  Pltfs. Supp. Br. (ECF 1050-1), at 1.  That argument cannot be squared with: either (i) the Second Circuit's original decision in this case (*Waldman I*) rejecting a mere reasonableness test for jurisdiction; or (ii) the governing "knowing and voluntary" standard for legislatively-imposed "consent" to personal jurisdiction that the Second Circuit reiterated in *Brown* and that the United States and Plaintiffs (previously) acknowledged.  Plaintiffs' invitation to depart from *Waldman I* and *Brown* is an invitation to error, particularly when the *Waldman I* mandate continues to bind this Court.

First, in language quoted by Judge Furman, *Waldman I* rejected Plaintiffs' prior jurisdictional-"consent" argument (based on statutory service of process under the ATA), holding that the statute "does not answer the constitutional question of whether due process is satisfied." *Waldman v. PLO*, 835 F.3d 317, 337, 343 (2d Cir. 2016), quoted in *Fuld* opn. at 21-22.[1]  There is only one way to read that language (and Judge Furman read it correctly):  A rational-basis statute like the ATA cannot alone dictate to courts that due process jurisdictional requirements are satisfied.  Something more than legislative say-so is required to satisfy due process.  In *Waldman I*, that something-more was "minimum contacts" with the forum sufficient to satisfy the due process purposeful-direction test.  *Id.* at 331.

---

[1] In *Waldman I*, Plaintiffs claimed that Defendants "consented to personal jurisdiction under the ATA by appointing an agent to accept process."  835 F.3d at 337.  The Second Circuit recognized that "the ATA permitted service of process on the representative of the PLO and PA in Washington," but held "*due process analysis*—considerations of minimum contacts and reasonableness—applies even when federal service-of-process statutes are satisfied.  Simply put, the exercise of personal jurisdiction *must comport with constitutional due process principles*."  *Id.* at 343 (citation omitted; emphasis added).

Second, when it comes to legislatively-imposed "consent" jurisdiction, the something-more due process requires is "free and voluntary" consent. *Brown v. Lockheed Martin Corp.*, 814 F.3d 619, 640-41 (2d Cir. 2016). Consistent with *Waldman I*, the Second Circuit in *Brown* held that a rational-basis statute providing "consent" jurisdiction still "would implicate Due Process and other constitutional concerns" (*id.* at 626), which legislative reasonableness alone could not satisfy. Judge Furman correctly understood the import of this language, and quoted it in determining the PSJVTA does not provide "knowing and voluntary" consent. *Fuld* opn. at 17.

*Waldman I* and *Brown* squarely refute Plaintiffs' core argument that the PSJVTA must be constitutional because it has a "rational-basis." Applying those decisions, which Judge Furman recognized are consonant with the Supreme Court's *College Savings Bank* decision, *Fuld* correctly held that the PSJVTA pushes the concept of voluntary consent "well beyond its breaking point." *Fuld* opn. at 28. As *Fuld* established, the PSJVTA is not a legislative magic wand that can create "deemed consent" out of facts the Second Circuit previously found could not constitutionally support jurisdiction under the Due Process Clause.

## A. Plaintiffs Mischaracterize the Due Process Analysis in *Fuld*, Which Does Not Apply "Strict Scrutiny" or Impose a "Per Se Ban" on Implied Consent.

This Court should reject Plaintiffs' strange effort to supplant the "knowing and voluntary" Due Process standard with a "rational-basis" standard that would let Congress rather than the Judiciary "answer the constitutional question of whether due process is satisfied." *Waldman I*, 835 F.3d at 343. Plaintiffs misstate Judge Furman's decision by claiming that it "applied heightened scrutiny" and "a strict level of scrutiny" (ECF 1050-1 at 10, 14) when it should have instead applied the lower, "rational-basis" standard of review (*id.* at 1). *Fuld* did not apply strict scrutiny at all—the opinion did not use the words "strict," "scrutiny," or "heightened." Instead, Judge Furman analyzed whether "deemed consent" under the PSJVTA qualified as "voluntary" consent pursuant

to the Due Process Clause, exactly the analysis the United States and the *Fuld* parties agreed should apply. *Fuld* opn. at 1. It is Plaintiffs who argue the PSVJTA should be analyzed under a standard ("rational-basis" review) that courts have *never* applied to personal-jurisdiction statutes.

Plaintiffs similarly misrepresent the *Fuld* opinion by claiming it created "a *per se* ban on implied consent." ECF 1050-1 at 1. To the contrary, Judge Furman explained that the Supreme Court "blessed the concept of implied consent," which may legitimately arise from a "variety of legal arrangements," such as forum-selection clauses, stipulation, or a parties' appearance without objecting to personal jurisdiction. *Fuld* opn. at 11-12, 23 n.8 (citation omitted). Judge Furman correctly concluded that legislatively-imposed "deemed consent" bears no similarity to those types of valid arrangements, because it is not "voluntary." *Id*. at 14, 27-28.

Other Second Circuit cases support this holding. As Judge Furman explained, *Brown* and *Chen v. Dunkin' Brands*, 954 F.3d 492, 498-99 (2d Cir. 2020), "strongly suggest" that "'deemed consent' jurisdiction is limited by the Due Process Clause" and that Congress may not "deem" conduct to be "consent" that "would otherwise not support personal jurisdiction in the United States." *Fuld* opn. at 18-19 (citation omitted). To pass muster under the constitutional requirement of voluntariness, the predicate conduct in a "deemed consent" statute "would have to be a much closer proxy for actual consent than the predicate conduct at issue is here." *Id.* at 15. In other words, in the absence of the forum contacts required by *Daimler v. Bauman,* 571 U.S. 117 (2014), and *Walden v. Fiore*, 134 S. Ct. 1115 (2014), due process requires conduct "'of such a nature as to justify the fiction' that the party actually consented to submit itself to the jurisdiction of the court." *Fuld* opn. at 14, quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 318 (1945). No one, not even Plaintiffs, contends that Defendants have actually consented to jurisdiction.

**B.     The Supreme Court's Central Holding in *College Savings Bank* Strongly Supports Judge Furman's Analysis.**

As Judge Furman recognized, the Supreme Court rejected Plaintiffs' watered-down consent test in *College Savings Bank v. Florida Prepaid Postsecondary Ed. Expense Bd.*, 527 U.S. 666, 679-81 (1999), explaining there is a "fundamental difference" between a knowing and voluntary waiver of jurisdictional defenses, and mere "notice" that Congress intends to *subject* a defendant to suit.  Plaintiffs accuse Judge Furman of selectively editing his quotations, arguing that *College Savings Bank* "does not apply here" because its holding limiting legislatively-imposed constructive waiver of constitutional rights is actually dicta and is, in any case, limited to state sovereign immunity.  ECF 1050-1 at 11-12.

But even the portion of *College Savings Bank* that Plaintiffs cite refutes their claim, as it states that waivers are "simply unheard of in the context of *other* constitutionally protected privileges."  *College Savings Bank*, 527 U.S. at 681 ("constructive" consent is not "commonly associated with the surrender of constitutional rights").  The Supreme Court proceeded to rely on the broader constitutional standard applicable to the waiver of (or consent to waive) other constitutional rights, such as the right to counsel in a criminal case in *Johnson v. Zerbst*, the right to a civil jury trial in *Aetna Ins. v. Kennedy*, and the denial of the due process right to a fair hearing in *Ohio Bell Tel. v. Public Utilities Comm*.  *Id*. at 682.[2]  The Court also gave an example from another field of law:

> For example, imagine if Congress amended the securities laws to provide with unmistakable clarity that anyone committing fraud in connection with the buying or selling of securities in interstate commerce would not be entitled to a jury in any federal criminal prosecution of such fraud.  Would persons engaging in securities

---

[2] The Court could have added to this list the case cited by Plaintiffs on page 10, *Oregon v. Elstad*, 470 U.S. 298, 304 (1985), which held that the consent of an in-custody suspect must be the product of a "free and unconstrained will."  Though that standard only applies to custodial statements of criminal defendants, *id.*, it amply demonstrates the Court's policy of granting every reasonable presumption against finding consent or waiver of constitutional rights.

fraud after the adoption of such an amendment be deemed to have 'constructively waived' their constitutionally protected rights to trial by jury in criminal cases? …. The answer, of course, is no.

*Id.* at 681-82. The Court emphasized that courts should "indulge in every reasonable presumption against waiver of fundamental constitutional rights," because even "speak of the 'constructive waiver' of a constitutional protected privilege'" is "anomalous." *Id.* at 682 (citation omitted). "Voluntary" consent means nothing if Congress can "exact constructive waivers of" jurisdictional protections simply "through the exercise of Article I powers." *Id.* at 683.

The express purpose of these comparisons was to show the Court's approach to constructive consent and "waiver" was consistent across a broad spectrum of constitutional rights—explicitly including due process and jurisdictional defenses. *College Savings Bank*, 527 U.S. 681-82. The Court used those comparisons to hold that "[s]tate sovereign immunity, no less than the right to trial by jury in criminal cases, is constitutionally protected." *Id.* To allow Congress to create constructive waivers without meaningful consent would "permit Congress to circumvent" existing law to achieve a prohibited result through other means. *Id.* at 683-84.

Judge Furman correctly applied *College Savings Bank*, holding that "the principles underlying *College Savings Bank* are not specific to the Eleventh Amendment, but rather apply to constitutional rights broadly." *Fuld* opn. at 15-17. For the deemed consent provisions of the PSJVTA, "the most that can be said with certainty is that" the PLO and PA have "been put on notice that Congress intends to subject [them] to suits" in the United States. *Id.*, quoting *College Savings Bank*, 527 U.S. at 681. That is because Congress took conduct that "the Second and D.C. Circuits had held was insufficient to support personal jurisdiction in *Waldman I*, *Livnat*, *Shatsky*, and *Klieman* — and declared that such conduct 'shall be deemed' to be consent." *Id.* at 14. Just as *in College Savings* Bank, Judge Furman found that allowing Congress to create consent through

the "sleight of hand" of simply adding "deemed consent" to a jurisdictional statute would mean
that "there are no constitutional limits at all" other than the "legislative imagination." *Id.* at 20-
21. The *Fuld* opinion carefully follows the path laid out by the Supreme Court in *College Savings
Bank* for statutes that rely on fictional consent to create jurisdiction.[3]

If "fair warning" and a "legitimate governmental objective" were all that due process
required to subject a defendant to personal jurisdiction, as Plaintiffs claim, then Congress and state
legislatures could circumvent modern due-process jurisprudence simply by enacting statutes
declaring that the same activities already held *insufficient* to confer jurisdiction under the Due
Process Clause "shall be deemed consent" to personal jurisdiction. Plaintiffs offer no response to

---

[3] The century-old registration cases Plaintiffs cite (ECF 1050-1 at 2-4) rely on "reasonable"
conditions imposed "as the price of admission." But as the New York Court of Appeals recently
held, old consent-registration cases relied on "*Pennoyer v Neff's* territorial approach, that in-state
service on a foreign corporation present in the state afforded general jurisdiction." *Aybar v. Aybar*,
2021 N.Y. LEXIS 2134, *10 (N.Y. Oct. 7, 2021). *Aybar* held that, based on current jurisdictional
law, that approach was no longer "reasonable" and therefore the registration statute no longer
created personal jurisdiction. *Id*. at 16-17. Plaintiffs also attempt to distinguish *Mallory v. Norfolk
S. Railway* as a case involving general jurisdiction. ECF 1050-1 at 6 n.1. But *Mallory* itself
explains the analysis is the same for general and specific jurisdiction because coerced-consent
renders both equally "superfluous." 2021 Pa. LEXIS 4318, 60 n.19 (Dec. 22, 2021). The PSJVTA
is, in any case, more akin to general rather than specific jurisdiction, as it purports to create
jurisdiction for any ATA case based on activities (payments in Palestine, and activities or physical
presence in the U.S.) bearing no connection to Plaintiffs' specific claims. *See* ECF 1048 at 2. The
decision in *Cooper Tire & Rubber Co. v. McCall*, 863 S.E.2d 81 (Ga. 2021), is an outlier among
those recent state supreme court cases. Based on a quirk in state law (which precluded the exercise
of specific jurisdiction over foreign corporations in state court), *Cooper Tire* held that abandoning
its prior interpretation of the business registration statute was unworkable because then out-of-
state businesses could not be sued at all. *Id*. at 91-92 (encouraging the legislature to pass a statute
that would allow for modern specific and general jurisdiction).

In any case, *Penn. Fire v. Gold Mining and Milling*, 243 U.S. 93 (1917), is not binding authority
even if it is still good law. *Penn. Fire* distinguished prior cases (*id*. at 95-96, discussing *Old Wayne
Mutual* and *Simon*) that held the voluntary action of doing business in a state could not create
jurisdiction where the defendant did not also take the affirmative action to comply with the state
statute by appointing an agent for service of process. *Id*. at 96 ("The case of service upon an agent
voluntarily appointed was left untouched"). Just as in those cases distinguished by *Penn. Fire*,
Defendants took no affirmative actions submitting themselves to personal jurisdiction.

this argument, nor do they cite *even a single case permitting Congress to transform constitutionally-inadequate contacts into consent to jurisdiction*.

### C.    Plaintiffs' Other Cases Do Not Support Their Arguments.

Plaintiffs purport to derive the "fair warning" prong of their test from *Burger King v. Rudzewicz* and *Ford Motor v. Montana Eighth Judicial Dist*—cases that have nothing to do with any federal statute specifying conduct that purportedly effects a consent to personal jurisdiction. (ECF 1050-1 at 1).  *Burger King* addressed traditional due-process minimum-contacts analysis, holding that when a defendant "has purposefully directed his activities" at the forum and the claims "arise out of or relate to those activities," the defendant has "fair warning"—given the nature of his contacts with the forum—he may be subject to suit there.  471 U.S. 462, 471-75 (1985) (cleaned up).  Far from sanctioning legislatively-coerced (or "deemed") consent, *Burger King* reiterated that "[t]he Due Process Clause protects an individual's liberty interest in not being subject to the binding judgments of a forum with which he has established no meaningful 'contacts, ties, or relations.'" *Id.* at 471-72.  Similarly, *Ford Motor* addressed the requirement that the lawsuit "arise out of or relate to the defendant's contacts with the forum," finding that Ford's in-forum actions of "advertising, selling, and servicing the model of vehicle the suit claims is defective" were sufficiently "related to" plaintiffs' claims to support specific jurisdiction.  141 S. Ct. 1017, 1024, 1026 (2021).  These holdings do not support the exercise of personal jurisdiction here, given the consistent holdings that Defendants lack sufficient contacts with the United States.

While fair warning and non-arbitrariness are obviously elements of due process generally, Plaintiffs cite no authority establishing they are the sole criteria for determining whether the government can effect consent to personal jurisdiction by legislative fiat (ECF 1050-1 at 2)—and for good reason. There is no such rule. The Supreme Court has never held the government can simply declare, in furtherance of some "legitimate" interest (*id*. at 7), that a defendant shall be

deemed to have consented to *jurisdiction* by engaging in certain activities.  To the contrary, the Court has consistently held it would *violate* due process to subject a defendant to jurisdiction in a forum "with which he has established no meaningful 'contacts, ties, or relations.'"  *Burger King*, 471 U.S. at 471-72.

Plaintiffs place great importance on cases requiring drivers to submit to blood alcohol testing as a *condition* of operating a vehicle in the state (ECF 1050-1 at 8-10), but fail to explain why Supreme Court precedent addressing waiver of jurisdictional defenses (like *College Savings Bank*) is less "analogous" to the PSJVTA than cases addressing vehicle searches related to DUI offenses.  In each of those cases (*Missouri v. McNeely*, *Breithaupt v. Abram*, *Birchfield v. North Dakota*, and *South Dakota v. Neville*), the defendant was physically present in the state, enjoying the benefits of its roads, and submitted to a search as a consequence of disobeying the laws applicable to motorists using those roads.  These decisions exemplify the type of "reciprocity" that Judge Furman identified as a feature of many "consent" jurisdiction cases.  *Fuld* opn. at 28 n.10.

Given that reciprocity, the defendants in those cases unsurprisingly did not challenge the courts' personal jurisdiction.  Similarly, *Schneckloth v. Bustamonte*, 412 U.S. 218, 220 (1973), did not involve questions of either jurisdiction or implied consent because the defendant gave repeated, explicit consent to a vehicle search.  Moreover, the Supreme Court's most recent word on such Fourth Amendment searches (which Plaintiffs fail to cite) makes clear the Court did *not* rely on a consent theory: "our decisions have not rested on the idea that these laws do what their popular name might seem to suggest—that is, create actual consent to all the searches they authorize." *Mitchell v. Wisconsin*, 139 S. Ct. 2525, 2532-33 (2019).  Other cases, like *Cleland v. Nat'l College of Business*, 435 U.S. 213 (1978), which involved statutory restrictions on previously-legislated veterans' benefits, have absolutely nothing in common with this case or the PSJVTA.

Plaintiffs therefore offer the wrong constitutional framework when they invite this Court to rely on Fourth Amendment cases to overturn the Second Circuit's due process analysis—both in this case (*Waldman I*) and *Brown*, as applied by Judge Furman in *Fuld*—and hold that due process is not a "fundamental right" even though it is clearly enumerated in the Constitution. *See* ECF 1050-1 at 13-14. As *Waldman I* explained "the exercise of personal jurisdiction must comport with constitutional due process principles." *Waldman I*, 835 F.3d at 343 (citation omitted). Tellingly, Plaintiffs cannot find even a single case applying their "fair-warning and legitimate-objective" test to any consent statute, let alone a statute creating personal jurisdiction.

Finally, Plaintiffs argue Defendants' right to jurisdictional due process should be defined solely by the PSJVTA's factual predicates (ECF 1050-1 at 15), a notion that cannot be squared either with due process or with separation-of-powers. Although Congress maintains inherent authority to pass new substantive law, Congress oversteps its authority when it attempts to "usurp a court's power to interpret and apply the law to the [circumstances] before it" by "direct[ing] the result without altering the legal standards governing the effect of [the specified activity]." *Bank Markazi v. Peterson*, 136 S. Ct. 1310, 1323-24 (2016); *see also City of Boerne v. Flores*, 521 U.S. 507, 536 (1997) (holding Congress cannot override the judiciary's responsibility to "say what the law is"). The PSJVTA violates these basic principles by directing courts that they must *always* find "voluntary" consent to jurisdiction if the PSJVTA's factual predicates are met. *See Wellness Int'l v. Sharif*, 575 U.S. 665, 685 (2015). Determining whether a defendant has waived its constitutional rights is a quintessential judicial question, requiring "application of constitutional principles to the facts as found." *Brewer v. Williams*, 430 U.S. 387, 403 (1977).[4]

---

[4] The PSJVTA also violates the unconstitutional conditions doctrine, which "vindicates the Constitution's enumerated rights by preventing the government from coercing people into giving them up." *Koontz v. St. Johns River Water Mgmt. Dist.*, 570 U.S. 595, 604 (2013). The "predicate

Respectfully submitted,

Squire Patton Boggs (US) LLP

Gassan A. Baloul (GB-4473)
gassan.baloul@squirepb.com
Mitchell R. Berger (MB-4112)
mitchell.berger@squirepb.com
2550 M Street, N.W.
Washington, D.C. 20037
Telephone: (202) 457-6000
Facsimile:  (202) 457-6315

*Attorneys for Defendants Palestine Liberation Organization and Palestinian Authority*

---

for any unconstitutional conditions claim is that the government could not have constitutionally ordered the person to do what it attempted to pressure the person into doing." *Id*. at 612.  In other words, Congress cannot condition Defendants' due process jurisdictional rights on doing whatever Congress says as that "would allow the government to 'produce a result which [it] could not command directly.'"  *Perry v. Sindermann*, 408 U.S. 593, 597 (1972) (citation omitted).  In fact, courts have invalided business registration cases on precisely those grounds, holding that State cannot condition to right to do business on (coerced) consent to personal jurisdiction.  *Mallory*, 2021 Pa. LEXIS 4318, *58-60.

## CERTIFICATE OF SERVICE

I hereby certify that on January 24, 2022, a true and correct copy of the foregoing was filed with the Clerk via the Court's CM/ECF system, which will send notice of such filing to all counsel who are registered CM/ECF users.

/s/ *Gassan A. Baloul*
Gassan A. Baloul (GB-4473)