# Arnold & Porter

Kent A. Yalowitz
+1 212.836.8344 Direct
Kent.Yalowitz@arnoldporter.com

August 13, 2021

**BY ECF**

Hon. Debra Freeman
United States District Court
 for the Southern District of New York
500 Pearl Street
New York, New York 10007-1312

    Re:    *Shatsky et al. v. Palestine Liberation Organization et al.*,
              18 Civ. 12355 (MKV) (DF)

Dear Judge Freeman:

    This firm is an intervenor in the above-referenced case for purposes of certain discovery issues pursuant to the Court's Memo Endorsement Order (July 2, 2021) [ECF 95].

    We write to seek the Court's assistance with a dispute arising out of defendants' invocation of "functional immunity" in connection with deposition testimony.[1] In particular, defendants argue that their "functional immunity" requires the Court to maintain certain deposition transcripts as confidential almost in their entirety. We disagree and seek the Court's ruling on this issue.

## Background

    We represent the plaintiffs in *Sokolow v. Palestine Liberation Organization*, No. 04 Civ. 394 (GBD). At issue in that case (as here) is whether defendants have consented to jurisdiction pursuant 18 U.S.C. § 2334(e). That case is currently on remand from the Second Circuit, following a remand to the Second Circuit from the Supreme Court.

    On July 2, 2021, this Court granted our motion to intervene and modify the existing protective order to allow Arnold & Porter to access and use in *Sokolow* the confidential jurisdictional discovery materials produced in this case. Memo Endorsement Granting Unopposed Letter Motion for Permissive Intervention (July 2, 2021) [ECF 95].

    On August 6, 2021, we obtained access to certain deposition transcripts and documents

---

[1] We understand Judge Vyskocil's Order of Reference (June 29, 2021) [ECF 93], as clarified by Your Honor on July 27, 2021, to encompass this issue. The transcript of the parties' call with Your Honor reads, in part:

> How are you doing with the functional immunity question? I wanted to circle back with you on it. I did talk to Judge Vyskocil, and she did indicate to me that if you make your record, if things come up at a deposition and they eventually need a ruling, she would like me to address that following the depositions based on whatever record you make.
>
> And so I may need briefing from you on that subject if you want run into problems with it, but I wanted to know how you were doing.

**Arnold & Porter**

Hon. Debra Freeman
August 13, 2021
Page 2

that were designated "confidential" in their entirety by defendants.[2] The testimony and documents at issue concern the following topics:

1. Defendants' press interviews given in the United States.
2. Defendants' maintenance of their public social media accounts in the United States, including the purposes of such accounts.
3. Defendants' meetings in the United States with individuals and organizations who had no formal connection to the United Nations (such as students and community groups), including the purposes of such meetings.

On August 9, 2021, we objected to defendants' designations of confidentiality. We exchanged detailed email correspondence with defendants, and we met and conferred with them by telephone for approximately 45 minutes on August 11, 2021. Defendants maintain that their "functional immunity" requires the Court to maintain the deposition transcripts as confidential. Despite good-faith efforts, we have been unable to resolve the dispute.

Having failed to reach agreement, we address the dispute to this Court in accordance with Local Civil Rule 37.2, Judge Vyskocil's Order of Reference to Your Honor [ECF 93], Rule I.C of Your Honor's Individual Practices, and Paragraph 14 of the Stipulation and Order Concerning Production of Confidential Documents and Information (Mar. 11, 2021) [ECF 64], which provides:

> Any Party who objects to any designation of confidentiality may at any time before the trial of this Action serve upon counsel for the Designating Party or person a written notice stating the grounds of the objection. If the Parties cannot reach agreement promptly, counsel for all affected Parties will address their dispute to this Court in accordance with Rule 3.D of this Court's Individual Practices.[3] In connection with any such application to the Court under this paragraph, the burden of proving that Discovery Material should be treated as Confidential Material shall rest with the Designating Party asserting confidentiality.

### Legal Standard

Rule 26(c) authorizes the Court to maintain the confidentiality of discovery materials, including deposition transcripts, only upon a showing of good cause. *See* Fed. R. Civ. P. 26(c)(1).

---

[2] At issue are the following materials:
1. Deposition of Feda Abdelhady-Nasser pp. 1-4, 58-128, 189-191 (Ex. 1 hereto).
2. Deposition of Nadia Ghannam pp. 1-4, 39-41, 144-201 (Ex. 2 hereto).
3. Deposition of Riyad Mansour pp. 1-14, 44-77, 86-120, 177-82 (Ex. 3 hereto).
4. Abdelhady-Nasser Deposition Exhibits 4-6 (Exs. 4-6 hereto).
5. Mansour Deposition Exhibits 3-4 (Exs. 7-8 hereto).

[3] We understand Judge Vyskocil's Order of Reference to encompass the "functional immunity" issue and thus supersede this provision of the protective order. *See supra* n.1

**Arnold & Porter**

Hon. Debra Freeman
August 13, 2021
Page 3

The burden of establishing good cause lies with the party seeking to prevent the disclosure. *See Gambale v. Deutsche Bank AG,* 377 F.3d 133, 139 (2d Cir. 2004). "To establish good cause for a protective order under Rule 26(c), the courts have insisted on a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements." *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 102 n.16 (1981) (cleaned up); *In re Parmalat Sec. Litig.*, 258 F.R.D. 236, 244 (S.D.N.Y. 2009) (requiring "a particular and specific demonstration of fact showing that disclosure would result in an injury sufficiently serious to warrant protection; broad allegations of harm unsubstantiated by specific examples or articulated reasoning fail to satisfy the test").

### Discussion

Defendants argue that the discovery materials must remain confidential because they enjoy "functional immunity" arising from the UN-related treaties. Their functional-immunity argument is both irrelevant and incorrect.

**1.** Defendants' claim of "functional immunity" is irrelevant because defendants do not seek *immunity* here, but *confidentiality*. "Confidentiality" is the "state of having the dissemination of certain information restricted." Black's Law Dictionary, *Confidentiality* (11th ed. 2019). Immunity, in contrast, "shields a defendant from suit," *Walczyk v. Rio*, 496 F.3d 139, 153 (2d Cir. 2007), and protects certain individuals "from compelled testimony," *Wultz v. Bank of China*, 32 F. Supp. 3d 486, 493 (S.D.N.Y. 2014); *In re Terrorist Attacks*, No. 03-MDL-1570 (GBD) (SN), 2020 WL 8611024, at *8 (S.D.N.Y. Aug. 27, 2020) ("immunity" is an exemption "from giving testimony"). As defendants have *already* provided the testimony at issue, it is confidentiality they seek, not immunity. And there is no principle that testimony must be treated as confidential merely because it concerns a topic about which the testifier *might have elected to attempt to* claim immunity.

To the contrary, courts do not allow litigants to enjoy confidentiality without "a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements." *Gulf Oil Co.*, 452 U.S. at 102 n.16. Indeed, when foreign governments have made blanket demands of privilege, like those made by defendants here, they have been rejected: "no American privilege exists protecting 'sensitive' documents in general without a more particularized showing [by a foreign government] as to the reason for their sensitivity." *Ghana Supply Comm'n v. New England Power Co.*, 83 F.R.D. 586, 590 (D. Mass. 1979). In the context presented here, courts have insisted that foreign governments show that non-disclosure is necessary "to protect important military secrets, extremely sensitive foreign policy questions, and other national-security related issues" such as "intelligence collection systems." *Compagnie Francaise d'Assurance Pour le Com. Exterieur v. Phillips Petroleum Co.*, 105 F.R.D. 16, 25 (S.D.N.Y. 1984) (citations omitted).

The testimony at issue here does not involve such matters. It indicates that defendants engaged in public relations activities while physically in the United States,[4] with a purpose to "raise public awareness" and "bring attention" to issues of interest to defendants.[5] It shows that defendants held approximately 50 in-person or virtual meetings with persons who had no formal

---

[4] Ghannam Dep. 144-45, 154-55 (Ex. 2 hereto).

[5] Ghannam Dep. 166, 168, 169-70, 175, 178, 181, 182, 183-84, 189, 190, 195, 201 (Ex. 2 hereto).

**Arnold & Porter**

Hon. Debra Freeman
August 13, 2021
Page 4

connection to the United Nations.[6] And it shows that one purpose of these public appearances was to "advocate for the Palestinian cause."[7]

Many such meetings involved speaking to students or community groups.[8] For example, Dr. Riyad Mansour, defendants' Permanent Observer to the UN, attended (via Zoom) a meeting of the Beit Sahour USA Convention in November 2020.[9] Dr. Mansour appeared in his official capacity.[10] In his comments, he commended "movements and organizations and solidarity committees" at "American universities," who are "supporting justice for the Palestinian people and lobbying the government, lobbying Congress," adding: "we urge them to become even more active, especially in light of the arrival a new administration in Washington."[11]

Defendants cannot offer the requisite particular or specific showing that disclosing this information will adversely affect "extremely sensitive foreign policy questions." *Compagnie Francaise d'Assurance Pour le Com. Exterieur*, 105 F.R.D. at 25.

Maintaining these discovery materials as secret would also be contrary to public policy as expressed in the Foreign Agents Registration Act (FARA), which requires *public* disclosure of the "political activities" of agents of a foreign government. Such activities are defined to include "any activity that the person engaging in believes will, or that the person intends to, in any way influence … any section of the public within the United States with reference to … political or public interests, policies, or relations of a government of a foreign country or a foreign political party." 22 U.S.C. § 611(o). Defendants' public-facing activities meet this standard, as they are admittedly intended to "advocate for the Palestinian cause," and to "raise public awareness" and "bring attention" to issues of interest to defendants. *See supra* nn.5, 7. The fact that this is defendants' intent is not surprising, and there is no need to keep it a secret.

Finally, defendants improperly made "wholesale designations of deposition transcripts as confidential." *New Falls Corp. v. Soni*, No. Civ. 166805 (ADS) (AKT), 2020 WL 2836787, at *12 (E.D.N.Y. May 29, 2020). Such a "blanket designation of an entire deposition transcript as … confidential … is suspect at a minimum if not directly violative of the Protective Order." *Golden v. Clear Advantage Mktg.*, No. 416 CV 00529 CRW SBJ, 2018 WL 8460172, at *1 (S.D. Iowa

---

[6] Mansour Dep. Ex. 4 (seven "civil society" meetings) (Ex. 8 hereto); Abdelhady-Nasser Dep. Exs. 5 (twenty-three "civil society" meetings), 6 (nineteen "civil society" meetings) (Exs. 5-6 hereto); *see* Abdelhady-Nasser Dep. 59 (defining "civil society" as "NGOs, academia, journalists, cultural institutions and others"), 72 (no formal connection) (Ex. 1 hereto).

[7] Mansour Dep. 92, 97, 99, 107, 112 (Ex. 3 hereto); Abdelhady-Nasser Dep. 87 (Ex. 1 hereto) (agreeing that one purpose of such meetings "was to put forward the Palestinian view").

[8] *E.g.*, Abdelhady-Nasser Dep. 60-61, 72, 84, 86, 94, 109-10, 114, 117 (Ex. 1 hereto); Mansour Dep. 70, 90, 92-93 (Ex. 3 hereto).

[9] Mansour Dep. Ex. 8 (Ex. 9 hereto).

[10] Mansour Dep. 93-94, 96-97 (Ex. 3 hereto).

[11] Mansour Dep. Ex. 8 (Ex. 9 hereto).

Arnold & Porter

Hon. Debra Freeman
August 13, 2021
Page 5

June 13, 2018); *see Edeh v. Equifax Info. Servs., LLC,* No. CIV. 11-2671 SRN/JSM, 2013 WL 2480676, at *3 n.3 (D. Minn. June 10, 2013) ("wholesale marking of a deposition transcript [as confidential] was not proper").

**2.** Defendants' immunity argument is also wrong. Indeed, it has been rejected time and again. Most important is the Second Circuit's decision in *Klinghoffer*:

> The PLO also maintains that it is immune from suit as a result of its status as a permanent observer at the UN. It relies for this argument on the Agreement Between the United Nations and the United States of America Regarding the Headquarters of the United Nations (the "Headquarters Agreement"), *reprinted at* 22 U.S.C.A. § 287 Note. By its terms, however, the Headquarters Agreement extends immunity only to representatives of members of the UN, not to observers such as the PLO. *See id.* § 15. We see no reason to extend the immunities provided by the Headquarters Agreement beyond those explicitly stated.

*Klinghoffer v. S.N.C. Achille Lauro*, 937 F.2d 44, 48 (2d Cir. 1991); *accord Knox v. Palestine Liberation Org.*, 306 F. Supp. 2d 424, 446 (S.D.N.Y. 2004) ("granting the immunities Defendants seek would in fact conflict with declared United States public policy regarding the Defendants"); *United States v. Palestine Liberation Org.*, 695 F. Supp. 1456, 1459 (S.D.N.Y. 1988) ("The PLO … is not accredited to the United States and does not have the benefits of diplomatic immunity.") (footnotes omitted); *Ungar v. Palestinian Auth.*, 228 F. Supp. 2d 40, 49 (D.R.I. 2002) ("the fundamental problem with the PA defendants' argument is that neither the PLO nor the PA is a Member of the United Nations."), *aff'd mem.*, No. 03-1544, 2003 WL 21254790 (1st Cir. May 27, 2003); *Ungar v. Palestinian Auth.*, 153 F. Supp. 2d 76, 91 (D.R.I. 2001) ("Because the PLO is not a Member of the U.N., but only an Observer, the PLO has no claim to diplomatic immunity.").

Those decisions are not only unanimous; they are correct, for three reasons: (a) *nothing* in the text of any UN-related treaty provides defendants with any immunity; (b) defendants' theory conflicts with U.S. law and practice; and (c) the lone legal opinion on which defendants rely does not support their theory.

**a.** Defendants rely principally on Section 105(2) of the UN Charter. But, by its terms, the text of that provision limits its protection to "Members":

> Representatives of the *Members* of the United Nations and officials of the Organization shall similarly enjoy such privileges and immunities as are necessary for the independent exercise of their functions in connection with the Organization. (Emphasis added.)

This text reaches "Members"—not "Members and Non-Member Observers," As the courts have repeatedly held, defendants simply are not "Members" of the United Nations. *See Ungar v. Palestinian Auth.*, 315 F. Supp. 2d 164, 184 (D.R.I. 2004) ("Members of the United Nations enjoy diplomatic immunity, Permanent Observers do not…. [T]he United Nations has not admitted the PA, the PLO, or Palestine as a full Member…. [C]lose is simply not good enough.").

"If the text of the treaty is clear and unambiguous, it is to be enforced according to its terms,

# Arnold & Porter

Hon. Debra Freeman
August 13, 2021
Page 6

without the need for extrinsic evidence." *Blue Ridge Invs., LLC v. Republic of Argentina*, 902 F. Supp. 2d 367, 376 (S.D.N.Y. 2012) (quotation omitted), *aff'd*, 735 F.3d 72 (2d Cir. 2013); *see Chan v. Korean Air Lines,* 490 U.S. 122, 135 (1989) ("where the text [of a treaty] is clear … we have no power to insert an amendment"); *Mar. Ins. Co. v. Emery Air Freight Corp.*, 983 F.2d 437, 440 (2d Cir. 1993) ("precedent and reason counsel that courts refrain from altering even slightly the plain, unambiguous language of a treaty negotiated among diverse sovereign nations"); *Didon v. Castillo*, 838 F.3d 313, 321 (3d Cir. 2016) ("As with a statute, where the text of a treaty is unambiguous, we apply the treaty as written and the analysis is complete.").

**b.** Defendants' assertion of immunity for their public-relations activities is also contrary to U.S. law and practice. Congress has determined that anything an invitee of the UN does outside of the Headquarters District[12] is subject to U.S. regulation: "The conduct of any activities … outside the United Nations Headquarters District by any individual … authorized by the United Nations to conduct official business … may be permitted or denied or subject to reasonable regulation, as determined to be in the best interests of the United States…." 22 U.S.C. § 4309A(b)(1). For example, an employee of the Iranian Mission to the United Nations is currently under indictment for making media appearances and publishing articles intended to influence U.S. policy and U.S. public opinion without registering under the FARA—*i.e.*, influencing U.S. public opinion was *outside* the scope of Iran's functional immunities as a UN member. *See* Indictment, *United States v. Afrasiabi*, No. 21-cr-0046 (ERK) (E.D.N.Y. Jan. 25, 2021). It is difficult to see how the staff of a non-member observer would have immunity that does not extend to the staff of an *actual* member state, such as Iran.

**c.** For their position that their supposed functional immunities protect their public-relations activities, defendants rely on a line in an opinion of the UN Legal Advisor that "immunity from legal process in respect of words spoken and written or any act performed in the exercise of the observer functions." *Status, Privileges and Immunities under International Law of the Permanent Observer Mission of Palestine to the United Nations*, 2000 U.N. Jur. Y.B. 359, 361. But even taken on its own terms, this statement does not support the sweeping protection defendants claim.

The long-standing position of the Legal Advisor is that permanent observer delegations enjoy functional immunity "from legal process in respect of words spoken or written and all acts performed by members of the observer delegation in their official capacity <u>before relevant United Nations organs</u>." *Permanent Observer Mission of the African Union*, 2014 U.N. Jur. Y.B. 328 (emphasis added); *Permanent Observer Mission of the Org. of the Islamic Conf.*, 1999 U.N. Jur. Y.B. 409; *Scope of Privileges and Immunities of a Permanent Observer Mission*, 1982 U.N. Jur. Y.B. 206; *Privileges and Immunities of a Person Designated by a Member State*, 1976 U.N. Jur. Y.B. 229; *see also Report of the Committee on Relations with the Host Country* ¶¶ 32-33 (Oct. 14, 1982), Supp. No. 26 (A/37/26) (Statement of the Legal Advisor).

The opinion on which defendants rely simply uses "in the exercise of the observer functions" as a synonym for the phrase "before relevant United Nations organs," which appears in all

---

[12] The Headquarters District is bounded by East 42nd Street, First Avenue, the East River, and East 48th Street. *See* Headquarters Agreement Annex 1, *reprinted at* 22 U.S.C. § 287 Note.

# Arnold & Porter

Hon. Debra Freeman
August 13, 2021
Page 7

of the other relevant Legal Advisor opinion. Only two years before this opinion was issued, the General Assembly set out the types of functions defendants may perform as an observer, such as raising points of order during debates of the General Assembly or co-sponsoring draft resolutions. Annex to General Assembly Resolution 52/250, *Participation of Palestine in the work of the United Nations* (July 13, 1998). Viewed in light of Resolution 52/250, it is obvious that self-promotional activities are not "performed *in the exercise of* the observer function."

      Defendants have nonetheless argued in our discussions that because a certain UN committee wants to "raise international awareness" of the "inalienable rights of the Palestinian people," and defendants' promotional activities further that "cause," their immunity extends to any promotional activities they engage in within the United States. By defendants' logic, *anything* done *anywhere* in the United States in furtherance of *any* cause endorsed by *anyone* within the UN would qualify for functional immunity. As Dr. Mansour put it in furtherance of this extreme position, "if they invite me…to speak [to a non-UN organization] about plastic and its negative effect on our environment, that is within my exclusive domain in exercising my authority as observership activities as the Observer." Mansour Dep. 74 (Ex. 3 hereto). This approach is illogical and has no limit. If it were correct, observers would have immunities equal to those of accredited diplomats, and they do not. *See Report of the Committee on Relations with the Host Country* ¶¶ 32-33 (Oct. 14, 1982), Supp. No. 26 (A/37/26) (Statement of the Legal Advisor).

      Finally, self-promotion like that at issue here is well understood to differ from the official business of a deliberative body. In an analogous context, courts have held that a deliberative body's "official business" simply does not include self-promoting public relations activities by its members. *See Hoellen v. Annunzio*, 468 F.2d 522, 526 (7th Cir. 1972) (Congress); *Rising v. Brown*, 313 F. Supp. 824, 826-27 (C.D. Cal. 1970) (same). Contrary to defendants' position, the UN's Legal Advisor has never opined that self-promotion by a non-member observer is official business of the United Nations, which that office has defined as the "performance of official duties on behalf of the United Nations," attending to "the business of the Organization," or "an official act." *See, e.g., Area of Service and Legal Status of Legal Advisers Appointed Under the Regular Programme of Technical Assistance and Assigned to the ECAFE Region*, 1968 U.N. Jur. Y.B. 194-95; *Conditions Under Which Officials and Representatives of Members of International Organizations Are Admitted to and Reside in the United States*, 1985 U.N. Jur. Y.B. 148.

## Conclusion

The materials at issue (*see supra* n.2) do not qualify for confidential treatment.

Respectfully submitted,

Kent A. Yalowitz

Enclosures
cc:   ECF Counsel

**Arnold & Porter**

Hon. Debra Freeman
August 13, 2021
Page 8

## Index of Exhibits

| Number | Description |
|---|---|
| 1 | Abdelhady-Nassar Deposition Transcript Excerpts |
| 2 | Ghannam Deposition Transcript Excerpts |
| 3 | Mansour Deposition Transcript Excerpts |
| 4 | Abdelhady-Nasser Dep. Ex. 4 |
| 5 | Abdelhady-Nasser Dep. Ex. 5 |
| 6 | Abdelhady-Nasser Dep. Ex. 6 |
| 7 | Mansour Dep. Ex. 3 |
| 8 | Mansour Dep. Ex. 4 |
| 9 | Mansour Dep. Ex. 8 (transcript) |