UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:__3/18/2022__
```

---

SHABTAI SCOTT SHATSKY, *individually and as personal representative of the Estate of Keren Shatsky*, et al.,

                                    Plaintiffs,

        -v-

THE PALESTINE LIBERATION ORGANIZATION and THE PALESTINIAN AUTHORITY (a/k/a "The Palestinian Interim Self-Government Authority" and/or "The Palestinian National Authority),

                                    Defendants.

---

18-cv-12355 (MKV)

OPINION AND ORDER
GRANTING
MOTION TO DISMISS

MARY KAY VYSKOCIL, District Judge:

        Before the Court are Defendants' motions to dismiss for lack of personal jurisdiction [ECF No. 115] and for summary judgment [ECF No. 118].  For the reasons set forth below, the motion to dismiss for lack of personal jurisdiction is GRANTED, and the motion for summary judgment is DENIED as moot.  In addition, all outstanding motions to seal filings and strike exhibits are DENIED [ECF Nos. 137, 138, 142, 147, 158].

## I.        BACKGROUND[1]

### A.  The Suicide Bombing

        In 2002, a suicide bomber entered a pizzeria in the Israeli town of Karnei Shomron and detonated an explosive device [ECF Nos. 50 ("FAC") ¶ 1; 121 ("Def. 56.1") ¶ 16; 134 ("Pl. 56.1") ¶ 16].  The terrorist killed or wounded at least six United States citizens.  *See* FAC ¶¶ 1, 10–22; Pl. 56.1 ¶¶ 69–82 [ECF No. 146 ("Def. Response to Pl. 56.1") ¶¶ 69–82]. Among the American

---

[1] All of the facts mentioned in this Opinion are undisputed, unless otherwise noted.

casualties were two teenage girls, 14-year-old Keren Shatsky and 15-year-old Rachel Thaler.  FAC ¶¶ 10, 12; Pl. 56.1 ¶ 69; Def. Response to Pl. 56.1 ¶ 69.

### B.  The Parties

Plaintiffs are the families of the murdered girls, United States citizens who were injured in the attack, and family members of the injured.   Defendants are the Palestine Liberation Organization ("PLO") and the Palestinian Authority ("PA").  The PLO and PA are the government of the Palestinian people.  *See Waldman v. Palestine Liberation Org.*, 835 F.3d 317, 322, 323, 329 (2d Cir. 2016) ("*Waldman I*"); Def. 56.1 ¶¶ 2, 3; (describing "the PA and PLO as [Palestine's] government"); Pl. 56.1 ¶¶ 2, 3; FAC ¶ 38 ("Both Defendants hold themselves out as the 'State of Palestine'").  Our government has never recognized the sovereignty of the PLO and PA, although they have argued in other litigation that our courts should treat them as sovereign.  *See* Def. 56.1 ¶ 3; Pl. 56.1 ¶ 3; *Waldman I*, 835 F.3d at 323; *Klinghoffer v. S.N.C. Achille Lauro Ed Altri-Gestione Motonave Achille Lauro in Amministrazione Straordinaria*, 937 F.2d 44, 47 (2d Cir. 1991).  The President and Congress have cited the ties of the PLO and PA to terrorism in deciding not recognize, and otherwise structuring U.S. relations with, the PLO and PA.  *See, e.g.*, 22 U.S.C. § 5201(a); Determination and Designation of Benefits Concerning Palestine Information Office, 52 Fed. Reg. 37,035 (Oct. 2, 1987); International Security and Development Cooperation Act of 1985, Pub. L. No. 99-83, § 1302.

### C.  Congressional Action To Establish Federal Court Jurisdiction over the PLO and PA, and Frustration in the Courts

Congress enacted the Anti-Terrorism Act of 1992 ("ATA"), 18 U.S.C. §§ 2331 *et seq.*, to create a "legal response," in U.S. courts, to "international terrorism," H.R. Rep. No. 102-1040, at 5 (1992) ("1992 House Report"); *see* Pub. L. No. 102-572, § 1003(a), 106 Stat. 4506, 4521-24 (1992) (adding 18 U.S.C. §§ 2331, 2333-2338).  The statute provides that United States nationals

harmed by an act of international terrorism "may sue therefor in any appropriate district court of the United States." 18 U.S.C. § 2333(a). It permits actions against anyone who "planned" or "who aids and abets, by knowingly providing substantial assistance" to "the person who committed such an act of international terrorism." *Id*. § 2333(d)(2).

Plaintiffs bring this action under the ATA against the PLO and PA, seeking redress for the 2002 suicide bombing. Plaintiffs allege that the PLO and PA are responsible for the attack, including that someone on the government payroll planned it, which allegations Defendants dispute. *See* FAC ¶¶ 1 (alleging that a government "officer and employee . . . planned the attack while on the [government] payroll"), 41 (alleging that the PLO and PA have a longstanding practice of providing "'martyr' payments" to "the families of suicide terrorists" to encourage such attacks); Def. 56.1 ¶¶ 26, 29, 38; Pl. 56.1 ¶¶ 26, 29, 38, 50, 51, 53; Def. Response to Pl. 56.1 ¶¶ 50, 51, 53. There is no dispute that, after the 2002 attack, Defendants deemed the suicide bomber a martyr and have made payments to his family in accordance with Palestinian law. *See* Def. 56.1 ¶¶ 5, 6, 28, 29, 30; Pl. 56.1 ¶¶ 5, 6, 28, 29, 30, 101, 117, 118, 123, 124; Def. Response to Pl. 56.1 ¶¶ 101, 117, 118, 123, 124 [ECF Nos. 116 ("Def. Mem.") at 3; 119 ("Def. MSJ") at 20 (Defendants made payments to the suicide bomber's family after the bombing)].

A number of families have, like Plaintiffs, brought lawsuits under the ATA against the PLO and PA based on different terrorist attacks in Israel that killed and injured Americans. In this district, in *Sokolow v. Palestine Liberation Org.*, No. 04-CV-397, Judge Daniels conducted a seven-week jury trial, and the jury returned a verdict in favor of the plaintiffs and awarded them more than $650 million dollars. However, the Second Circuit vacated the judgment, holding that the district court had lacked personal jurisdiction over the PLO and PA. *Waldman I*, 835 F.3d at 322, 324.

In response to this ruling, in 2018, Congress enacted, and the President signed, the Anti-Terrorism Clarification Act ("ATCA"), Pub. L. No. 115-253, § 4, 132 Stat. 3183, 3184 (adding 18 U.S.C. § 2334(e)). The statute provided that, "for purposes of any civil action under [the ATA], a defendant shall be deemed to have *consented* to personal jurisdiction in such civil action if," after a certain date, the defendant "accepts" certain "form[s] of assistance" that the United States was providing to the PA, or "maintain[s]" an office pursuant to a "waiver or suspension" of a provision that otherwise prohibited the PLO from maintaining an office in the United States. *Id*. (emphasis added). The *Sokolow* plaintiffs immediately moved to recall the mandate in *Waldman I*, but the Second Circuit denied their motion on the ground that the *Sokolow* plaintiffs had not established either of the factual predicates of the ATCA. *Waldman v. Palestine Liberation Org*., 925 F.3d 570, 574 (2d Cir. 2019) ("*Waldman II*").

The political branches responded again, leaving no room to doubt Congress's intention to define the jurisdiction of the federal courts to include ATA suits against the PLO and PA. In 2019, Congress enacted, and the President signed, the Promoting Security and Justice for Victims of Terrorism Act ("PSJVTA"). Pub. L. No. 116-94, div. J, tit. IX, § 903, 133 Stat. 3082. Indeed, the PSJVTA amends the definition of "defendant" specifically to include the PLO and PA. Pub. L. No. 116-94, div. J, tit. IX, § 903(b)(5), 133 Stat. 3082, 3083.

The PSJVTA also provides new factual predicates for conduct that are deemed consent to personal jurisdiction for suits under the ATA. As amended by the PSJVTA, the ATA provides, in relevant part, that a defendant "shall be deemed to have consented to personal jurisdiction" if, after April 18, 2020, it "makes any payment, directly or indirectly," to a family member of an individual who died while committing an act of terrorism that injured or killed an American "if such payment is made by reason of the death of such individual." 18 U.S.C. § 2334(e)(1)(A). The Act also

provides that a defendant will be "deemed to have consented to personal jurisdiction" if, after January 4, 2020, it "establishes," "procures," or "continues to maintain any office, headquarters, premises, or other facilities or establishments in the United States," or "conducts any activity while physically present in the United States on behalf of" the PLO or PA, except offices or facilities used "exclusively for the purpose of conducting official business of the United Nations" and "ancillary" activities. *Id*. §§ 2334(e)(1)(B) and 2334(e)(3).

**D. Procedural History of this Case**

Meanwhile, alongside these developments in the Second Circuit and Congress, the parties in this case were litigating in the District of Columbia. In *Shatsky v. PLO*, No. 02-cv-2280 (RJL) (D.D.C.) ("*Shatsky I*"), Judge Leon concluded, in 2017, that the court had personal jurisdiction over the PLO and PA but that they were entitled to summary judgment because Plaintiffs lacked admissible evidence linking the PLO and PA to the bombing. *Shatsky I*, 2017 WL 2666111, at \*5, 11 (D.D.C. June 20, 2017). The D.C. Circuit reversed and vacated. *Shatsky v. PLO*, 955 F.3d 1016 (D.C. Cir. 2020). It held that the PLO and PA were not subject to personal jurisdiction at the time of Judge Leon's decision granting summary judgment, but that the newly-enacted PSJVTA might provide such personal jurisdiction. *Id*. at 1038.

While the litigation in D.C. was ongoing, Plaintiffs filed the same case in this Court, which was originally assigned to Judge Woods. Plaintiffs requested a stay of this case pending the outcome of the litigation in D.C., stating that this case was a "protective suit," filed "prior to the expiry of the statute of limitations," in case the D.C. courts dismissed for lack of jurisdiction or venue [ECF No. 12]. Judge Woods sought the parties' "consent to transferring this case" to D.C. and directed the parties to explain why "the interests of justice" did not "favor transferring this

action" [ECF No. 13]. Ultimately, however, he allowed the case to remain, stayed, on the docket, ECF Nos. 17, 20, 22]. The case was later reassigned to me.

After the D.C. Circuit reversed and vacated Judge Leon's decision, Plaintiffs, obviously hoping for a better result from a different judge, abandoned the D.C. litigation and filed a letter asking this Court to lift the stay and allow this case to proceed [02-cv-2280 (RJL) (DDC) ECF No. 373; 18-cv-3141 (RJL) (DDC) ECF No. 5; 18-cv-12355 (MKV) (SDNY) ECF No. 27]. On the record at a conference, the Court asked Plaintiffs how the filing of this so-called "protective action" was "not abusive of the judicial process" [ECF No. 46 ("Tr.") at 3]. However, Defendants had argued to the D.C. Circuit that it should not remand *Shatsky I*, since a "pending duplicative action[]" was "a readily available, and better, vehicle for Plaintiffs to advance their PSJVTA arguments" [ECF No. 42-1]. *See* Tr. at 16. In the light of the prior decision in this Court to allow the case to remain open on the docket and the dismissal without prejudice of the D.C. litigation, I allowed this case to proceed.

Plaintiffs filed the First Amended Complaint, citing the PSJVTA as the basis for personal jurisdiction over the PLO and PA [ECF No. 50]. The Court granted Plaintiffs' request for jurisdictional discovery over Defendants' objection [ECF No. 60]. The Court also ruled that no other discovery would be permitted, since the factual record was fully developed during the D.C. litigation. After the conclusion of jurisdictional discovery, Defendants moved to dismiss for lack of personal jurisdiction on the ground that the PSJVTA is unconstitutional [ECF Nos. 115, 116 ("Def. Mem."), 117]. Defendants simultaneously moved for summary judgment [ECF Nos. 118, 119, 120, 121]. Plaintiffs opposed both motions [ECF Nos. 130, 131, 132, 133, 134, 135 ("Pl. Opp."), 136]. The United States filed a brief in defense of the constitutionality of the PSJVTA [ECF No. 141 ("USA Mem.")]. Defendants filed reply briefs [ECF Nos. 143, 144, 145, 146].

Defendants have also filed numerous requests to redact briefing and to seal or strike various exhibits, some of which requests the magistrate judge has addressed, and some of which remain outstanding [ECF Nos. 137, 138, 142, 147, 158].

While these motions were pending, other judges in this district issued decisions in similar cases against the PLO and PA. In *Fuld et al. v. PLO et al.*, 20-cv-3374 (JMF) (S.D.N.Y), Judge Furman granted Defendants' motion to dismiss for lack of personal jurisdiction. In a thorough, well-reasoned opinion, Judge Furman ruled that the "deemed consent" provisions of the PSJVTA are not consistent with the constitutional requirements of due process. He reasoned that "Congress cannot, consistent with the Constitution, simply decree that any conduct, without regard for its connections to the United States generally or to litigation in the United States specifically, signals a party's intent to submit to the jurisdiction of a United States court" [20-cv-3374, ECF No. 61 ("*Fuld*") at 2]. In *Sokolow*, back in the Southern District on remand, Judge Daniels agreed that, although the factual predicates for "deemed consent" were met, the PSJVTA is unconstitutional [04-cv-397, ECF No. 1054].

## II. LEGAL STANDARDS

On a motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing that the court has jurisdiction over the defendant. *See In re Terrorist Attacks*, 714 F.3d 659, 673 (2d Cir. 2013); *Vasquez v. H. K. & Shanghai Banking Corp.*, 477 F. Supp. 3d 241, 250 (S.D.N.Y. 2020). Where, as here, jurisdictional discovery has been conducted, "a plaintiff's *prima facie* showing" of personal jurisdiction "must be 'factually supported'; in other words, it must 'include an averment of facts that, if credited by [the ultimate trier of fact], would suffice to establish jurisdiction over the defendant.'" *Vasquez*, 477 F. Supp. 3d at 250 (alteration in original) (quoting *Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 567 (2d Cir. 1996)). A

plaintiff must demonstrate not only "a statutory basis for personal jurisdiction," but also that "the exercise of personal jurisdiction . . . comport[s] with constitutional due process principles." *In Re LIBOR-Based Financial Instruments Antitrust Litig.*, — F.4th —, Nos. 17-1569 et al., 2021 WL 6143556, at *11 (2d Cir. Dec. 30, 2021).

There are three traditional bases for the exercise of personal jurisdiction over a defendant. First, a court may exercise general jurisdiction over a defendant that is "essentially at home in the forum State." *Daimler AG v. Bauman*, 571 U.S. 117, 119 (2014). Second, a court may exercise "specific or conduct-linked jurisdiction" where there is a sufficient link between the defendant's conduct in the forum and the conduct at issue in the case. S*onera Holding B.V. v. Cukurova Holding A.S.*, 750 F.3d 221, 225 (2d Cir. 2014). Third, a defendant can consent to the exercise of personal jurisdiction. *See J. McIntyre Mach., Ltd. v. Nicasto*, 564 U.S. 873, 880 (2011) (plurality opinion); *D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 103 (2d Cir. 2006). Plaintiffs here rely on Defendants' conduct that the PSJVTA deems consent.

### III. DISCUSSION

I join my colleagues in concluding that the PSJVTA is unconstitutional, as applied to Defendants, because I am bound by Second Circuit precedent holding that the PLO and PA are entitled to constitutional due process. *See Waldman I*, 835 F.3d at 329. For purposes of Defendants' motion to dismiss for lack of personal jurisdiction, this case is essentially identical to *Fuld* and *Sokolow*, the decisions in those cases lay out all of the parties' arguments, and I will not belabor the discussion. The PLO and PA admit that they made payments to the family of the 2002 suicide bomber that the PSJVTA deems consent to personal jurisdiction. Def. Mem. at 3. The parties argue about whether the PLO and PA also meet the PSJVTA's test for consent to jurisdiction based on non-exempt (that is, non-U.N.-related) offices and activities in the United

States.  *See* Def. Mem. at 16–17; Pl. Opp. at 8.  Defendants argue that, in all events, the factual predicates under the PSJVTA are not sufficient to support the exercise of personal jurisdiction under the Due Process Clause of the Fifth Amendment.  I agree.

Plaintiffs and the United States argue that due process requires only that consent to personal jurisdiction be knowing and voluntary and, since the PLO and PA had notice of the PSJVTA and chose to continue making martyr payments, the PLO and PA knowingly and voluntarily consented to personal jurisdiction.  *See* Pl. Opp. at 11–14; USA Mem. at 8–10.  Plaintiffs and the United States stress that a "variety of legal arrangements have been taken to represent . . . implied consent to . . . personal jurisdiction." *Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 703 (1982); Pl. Opp. at 11–12; USA Mem. at 8.  However, a court cannot imply a knowing and voluntary consent to personal jurisdiction consistent with the Due Process Clause unless it is reasonable to infer from the defendant's conduct or the legal arrangement "an intention to submit" to the forum. *J. McIntyre*, 564 U.S. at 881; *see Int'l Shoe Co. v. Washington*, 326 U.S. 310, 318 (1945) (for conduct to imply consent, the conduct must be "of such a nature as to justify the fiction" that the party actually consented to submit itself to the jurisdiction of the court).

As Judge Furman explained in *Fuld*, it is not reasonable to infer an intention to consent to suit in U.S. courts from the factual predicates in the PSJVTA.  Rather, Congress identified "conduct in which the PLO and PA had previously engaged — conduct that the Second and D.C. Circuits had held was insufficient to support personal jurisdiction in *Waldman I* and *Shatsky I* — and declared that such conduct 'shall be deemed' to be consent." *Fuld* at 14.  Constitutional due process requires more than notice and the opportunity to conform ones conduct for effective consent to jurisdiction.

It is inconsistent with our constitutional system, however, to extend due process protections to foreign governments.  Our system leaves it to the political branches to decide how to deal with foreign governments, including whether to protect them from suit in U.S. courts.  *See Frontera Res. Azerbaijan Corp. v. State Oil Co. of Azerbaijan Republic*, 582 F.3d 393, 399 (2d Cir. 2009) (explaining that the Supreme Court has "[n]ever . . . suggested that foreign nations enjoy rights derived from the Constitution," and courts have instead "relied on principles of comity and international law to protect foreign governments in the American legal system") (quoting and adopting the reasoning of *Price v. Socialist People's Libyan Arab Jamahiriya*, 294 F.3d 82, 97–99 (D.C. Cir. 2002)); *Price*, 294 F.3d at 99 ("[S]erious practical problems might arise were we to hold that foreign states may cloak themselves in the protections of the Due Process Clause. For example, the power of Congress and the President to freeze the assets of foreign nations, or to impose economic sanctions on them, could be challenged as deprivations of property without due process of law.  The courts would be called upon to adjudicate these sensitive questions, which in turn could tie the hands of the other branches as they sought to respond to foreign policy crises. The Constitution does not command this.").

The Due Process Clause of the Fifth Amendment provides that "no *person* shall be . . . deprived of life, liberty or property without due process of law."  U.S. Const. amend. V (emphasis added).  The PLO and PA are not persons for purposes of constitutional due process. The Supreme Court long ago explained that "the word 'person' in the context of the Due Process Clause of the Fifth Amendment cannot, by any reasonable mode of interpretation, be expanded to encompass the States of the Union."  *South Carolina v. Katzenbach*, 383 U.S. 301, 323 (1966). The Second Circuit then made the manifestly correct observation that it would make no sense to place "foreign states . . . in a more favored position" than U.S. states.  *Frontera Res. Azerbaijan*

*Corp.*, 582 F.3d at 399.  Thus, "foreign states do not enjoy due process protections from the exercise of the judicial power because foreign states, like U.S. states, are not 'persons' for the purposes of the Due Process Clause." *Gater Assets Ltd. v. AO Moldovagaz*, 2 F.4th 42, 49 (2d Cir. 2021).  This reasoning should apply to the PLO and PA.

By virtue of its decision in *Waldman I*, the Second Circuit precedent paradoxically places the PLO and PA "in a more favored position" with respect to the safeguards of due process than both U.S. states and foreign sovereigns with whom the political branches have established friendly relations.  *Frontera Res. Azerbaijan Corp.*, 582 F.3d at 399.  The Second Circuit concluded that, because the executive has never recognized the PLO and PA as sovereign, they must therefore be entitled to due process.  *See Waldman I*, 835 F.3d at 329.  In *Livnat v. Palestinian Authority*, the D.C. Circuit squarely addressed the question whether the Due Process Clause applies to a foreign government that is not recognized as a sovereign state. That court concluded that, unlike foreign sovereigns, the Palestinian Authority is entitled to due process protections because "*Price*'s primary rationales hinge on sovereignty."  851 F.3d 45, 50 (D.C. Cir. 2017).  I respectfully disagree.  *Price* explained that the Supreme Court has never suggested that our Constitution protects "foreign *nations*" and that stretching the Due Process Clause to "protect foreign *governments*" would create serious separation-of-powers problems in our constitutional system. *Price*, 294 F.3d at 97–99 (emphasis added).

Congress has the "power to define the jurisdiction of inferior federal courts," subject only to "other constitutional limitations." *Yakus v. United States*, 321 U.S. 414, 443 (1944).  As set forth above, Congress has repeatedly enacted legislation that leaves no doubt about its intention to define our jurisdiction to include ATA suits against the PLO and PA. *Supra* at 2–5.  Yet the courts have interceded to protect the PLO and PA from suit.

In *Waldman I*, the Second Circuit stressed that the "executive's determination" not to recognize the PLO and PA as sovereign "is conclusive," citing *Zivotofsky ex rel. Zivotofsky v. Kerry*, 576 U.S. 1, 17 (2015). *Waldman I*, 835 F.3d at 329. But that case underscores the authority of the President, rather than the judgment of the "judicial department," in foreign relations. *Zivotofsky*, 576 U.S. at 18–19. The executive has, in the past, structured relations based on its explicit understanding that the PLO and PA are not entitled to constitutional protections of any kind. *See* Constitutionality of Closing the Palestine Information Office, an Affiliate of the Palestine Liberation Organization, 11 Op. O.L.C. 104, 106 (Aug. 14, 1987) ("As noted, the starting point of our analysis is that the PLO itself, as a foreign political entity, has no constitutional rights."). I think that understanding was correct.

Nevertheless, I am bound by Second Circuit precedent holding that the PLO and PA are entitled to due process protections. As such, I must conclude that the PSJVTA is unconstitutional as applied to the PLO and PA, and I must grant Defendants' motion to dismiss, without prejudice, for lack of personal jurisdiction. Because the Court lacks jurisdiction, I cannot consider the merits of Defendants' summary judgment motion. *See Waldman I*, 835 F.3d at 344.

Finally, I briefly address the Defendants' outstanding motions to seal filings and strike exhibits on the ground that they contain confidential government information and sensitive personal information of non-parties.[2] In an Order dated December 6, 2021, the magistrate judge observed that "Defendants may have indiscriminately designated entire documents, entire deposition transcripts, and large portions of transcripts" for sealing [ECF No. 151]. Having reviewed the unredacted materials, I do not believe the cited interests in confidentiality overcome

---

[2] I note that the Court retains authority to rule on such collateral, docket-management questions even in the absence of personal jurisdiction. I also note the irony of Defendants asserting their interest in maintaining the confidentiality of government documents while cloaking themselves in the protections of the Due Process Clause.

the "strong presumption in favor of public access" to judicial documents. *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 126 (2d Cir. 2006).

## IV.    CONCLUSION

For the reasons set forth above, Defendants' motion to dismiss for lack of personal jurisdiction [ECF No. 115] is GRANTED.  Defendants' motion for summary judgment [ECF No. 118] is DENIED as moot.  All outstanding motions to seal filings and strike exhibits are DENIED [ECF Nos. 137, 138, 142, 147, 158].

**SO ORDERED.**

**Date:  March 18, 2022**
**       New York, NY**

**MARY KAY VYSKOCIL**
**United States District Judge**