Abdel Jabbar Salem Volume II
July 28, 2021

```
 1                 Salem - Confidential
 2    because of the crimes described in the Hebrew
 3    indictment.   Correct?
 4        A.   Yes, correct.
 5        Q.   And so just to be clear, he is
 6    receiving payment because he is in prison for
 7    the charges described in the indictment?
 8             MR. BERGER:  Objection.  Asked and
 9        answered.
10        Q.   You may answer, Mr. Salem.
11        A.   According to the Israeli allegations,
12    according to the indictments from the Israeli
13    part.
14        Q.   And that is why he is in prison,
15    because of the allegations in the indictment?
16        A.   Yes.  Correct.
17        Q.   And he is receiving payments because
18    he's in prison.
19             MR. BERGER:  (Inaudible.)
20             THE COURT REPORTER:  Mr. Berger, I
21        could not hear you.  I'm sorry.
22             MS. MAXMAN:  Mr. Berger, I couldn't
23        hear a word you said.
24             MR. BERGER:  I said, objection, asked
25        and answered, misstates his testimony.
```

Abdel Jabbar Salem Volume II
July 28, 2021

```
 1              Salem - Confidential
 2        Exhibit 8 for identification, as of this
 3        date.)
 4              (File for Mohammed Abdel-Basset Awda
 5        Haroub, Bates Number JD 1348 through 1367,
 6        was marked Salem Exhibit 9 for
 7        identification, as of this date.)
 8        Q.   Do you have those documents before
 9   you, sir?
10        A.   Yes.
11        Q.   So, first, I'll turn your -- both of
12   these documents involve a prisoner named
13   Mohammed Abdel-Basset Awda Haroub.
14              Do you see that?
15        A.   Yes, correct.
16        Q.   And you've seen these before, correct?
17        A.   Yes.  I am the one who prepared them
18   in collaboration with the attorneys and the
19   assistants, yes.
20        Q.   And Exhibit 8 is -- which is the 363
21   and 364, this is the salary statement, or
22   allocation statement, for Mr. Haroub.  Correct?
23        A.   Correct.
24        Q.   And I'm going to ask you to turn to
25   page 364.
```

Abdel Jabbar Salem Volume II
July 28, 2021

Salem - Confidential

1

2          This delineates statements from the

3   fourth month of 2020 to the fifth month of 2021,

4   correct?

5       A.   Correct.

6       Q.   And I'm going to turn your attention

7   to -- it appears between November of 2020 and

8   September of -- I'm sorry, November and December

9   of 2020, Mr. Haroub received an increase in his

10  allocation.

11          Do you see that?

12          THE INTERPRETER:  Sure.  I'll repeat

13      the question.

14          (The interpreter spoke to the

15      witness.)

16      A.   Yes.  The payments increases and

17  decreases depending on variables.  This detainee

18  may have had some restrictions on his salaries

19  that were removed or he may have bank loans

20  which have been paid.  So it usually varies, but

21  usually it doesn't increase that much.

22      Q.   Am I correct, he's getting almost

23  double in 2021 what he got in 2020.  Is that

24  correct?

25      A.   One month was doubled only.  And,

Abdel Jabbar Salem Volume II
July 28, 2021

Salem - Confidential

1
2    are paid.

3         Sorry.  The allocations, not the
4    salaries.

5         Q.   Mr. Haroub receives the allocations
6    because he's in prison, correct?

7              MR. BERGER:  Objection.  Asked and
8         answered.  Misstates his prior testimony.

9              You may answer again.

10        A.   Haroub's mother received the
11   allocations because Mohammed Haroub is in
12   prison.

13        Q.   And I'll ask you to look through
14   Exhibit 9 at the Hebrew documents, which are
15   1365 through 1367.

16             I'm sorry.  And also 1351 through
17   1358.

18             And am I correct that these Hebrew
19   documents are the documents you've described
20   before, the indictment and the records of the
21   Israeli court?

22        A.   Yes, correct.

23        Q.   And these describe the reasons for
24   which the Israeli government imprisoned
25   Mr. Haroub?

Abdel Jabbar Salem Volume II
July 28, 2021

Salem - Confidential

1

2      A.   As it's obvious, he was imprisoned

3  either on a security or a political background.

4  And it was certified and studied by the

5  attorneys and it's written in Arabic, that --

6      Q.   Okay.

7      A.   -- it was on a security background

8  from the Israeli court.

9          MR. BALOUL:  Excuse me.  This is

10         Gassan Baloul.  We object to the

11         translation.  Would you like the witness to

12         repeat the answer, or would you like me to

13         make the representation?

14         MS. MAXMAN:  As you wish.

15         MR. BALOUL:  You tell me.

16         MS. MAXMAN:  Sure.  Why don't you give

17         us your translation.

18         MR. BALOUL:  Okay.  The witness said,

19         from his discussion with the lawyers at the

20         Prisoners Affairs, they confirmed that this

21         document is -- identifies an offense that's

22         either a security or a political offense.

23         And as the -- it's written in Arabic.  The

24         word "amne," means security.  Therefore,

25         he's assured himself that this is a -- an

Abdel Jabbar Salem Volume II
July 28, 2021

 1                  Salem - Confidential

 2         offense that fits the description of the

 3         law.

 4         Q.    So your answer to my question is that

 5    these documents do describe the reason that

 6    Mr. Haroub is in prison.  For security reasons,

 7    correct?

 8         A.    Definitely is correct.

 9         Q.    And Mr. Haroub is receiving payment

10    for being in prison for the reasons described in

11    Exhibit 9.  Correct?

12              MR. BERGER:  Again, we object to the

13         translation.  The word "reward" was not

14         used.

15              THE INTERPRETER:  I'm sorry.  Can you

16         repeat that again.

17              MR. BERGER:  I said, again, we object

18         to the translation.  The word "reward" was

19         not used.  It was a -- a payment, not

20         reward.

21              MR. BALOUL:  Payment.  The Arabic

22         translation translated "payment" into

23         "reward."

24              MS. MAXMAN:  I don't see that on the

25         transcript.

Abdel Jabbar Salem Volume II
July 28, 2021

Salem - Confidential

1

2          THE INTERPRETER:  I didn't say

3     "reward."

4          MS. MAXMAN:  If you're in agreement

5     that "reward" was not used -- and I did not

6     hear the translator say the word "reward,"

7     so -- and it's not on the transcript.

8          THE INTERPRETER:  And just to

9     clarify --

10         MR. BERGER:  Your question did not.

11    We agree your question did not.  We are

12    objecting to the translation into Arabic of

13    your question.

14         MS. MAXMAN:  Oh.  I see.

15         Let me say the question again.

16    Q.   Does Mr. Haroub -- strike that.

17         Am I correct that Mr. Haroub is

18    receiving payments for being in prison for the

19    reasons described in Exhibit 9?

20         MR. BERGER:  Object to the form of the

21    question.  Misstates his prior testimony.

22    A.   No.

23    Q.   Okay.  We're in agreement that

24    Mr. Haroub's family, his mother, is receiving

25    payment, correct?

Abdel Jabbar Salem Volume II
July 28, 2021

```
 1              Salem - Confidential
 2      A.   Correct.
 3      Q.   And we're in agreement that he is
 4  imprisoned for security reasons.
 5      A.   According to the Israeli indictment,
 6  yes.
 7      Q.   And those -- and that's described in
 8  these papers.
 9      A.   Yes, correct.
10      Q.   And he is receiving payments because
11  he's in prison.  By the government -- forgive
12  me.  Let me correct that.  I'm sorry.
13           His mother is receiving payment
14  because of his imprisonment.  Correct?
15           MR. BERGER:  Objection.
16           Go ahead.  Sorry.
17           Object to the form of the question.
18      Misstates his prior testimony.
19           You may answer again.
20      A.   The detainee's mother receives his
21  allocations because he's prison -- he's present
22  in prison.
23      Q.   Thank you.
24           MS. MAXMAN:  We're going to turn --
25      we're going to turn to the next exhibits,
```

Abdel Jabbar Salem Volume II
July 28, 2021

Salem - Confidential

1

2   which are Tabs 18 and 19, Elizabeth.

3        And those Bates numbers are -- is

4   there a question?

5        THE INTERPRETER:  Can you repeat the

6   pages again.

7        MS. MAXMAN:  Yeah.  Oh, sorry.  I was

8   about to.  Sorry.

9        So Bates Numbers 524 through 525,

10  Exhibit 10.

11       And Bates Numbers 1782 through 1804

12  will be Exhibit 11.

13       (Bates Numbers 524 through 525,

14  allocation statements and the prison

15  records for Yahia Muhamad Naif Abdullah

16  Hajj Hamad, were marked Salem Exhibit 10

17  for identification, as of this date.)

18       (Bates Numbers 1782 through 1804,

19  Bates Numbers 524 through 525, allocation

20  statements and the prison records for Yahia

21  Muhamad Naif Abdullah Hajj Hamad, were

22  marked Salem Exhibit 11 for identification,

23  as of this date.)

24  Q.   And I'm going to represent to you that

25  these are the allocation statements and the

Abdel Jabbar Salem Volume II
July 28, 2021

1                 Salem - Confidential

2     prison records for Yahia Muhamad Naif Abdullah

3     Hajj Hamad.

4             You see those?

5         A.   Yes, correct.

6         Q.   I'm going to turn your attention to

7     page 525.

8         A.   Yes, ma'am.

9         Q.   Do you know Mr. Hamad personally, sir?

10        A.   No, I don't know him.

11        Q.   Am I correct that page 525 shows the

12    allocations to Mr. Hamad from April 2020 to May

13    of 2021?

14        A.   The allocations?

15        Q.   Yes.

16        A.   Yes, correct.

17        Q.   Have you seen this document before?

18        A.   Yes.  Correct.

19        Q.   And similarly to what we just saw with

20    Mr. Haroub, Mr. Hamad was paid $2,000 -- 2,000

21    shekels a month in -- for most of 2020, and then

22    his payments increased in 2021 to 3950 shekels.

23            You see that?

24        A.   It didn't increase.  It's allocation

25    setups, and there is a lot of variables that

Abdel Jabbar Salem Volume II
July 28, 2021

```
 1                 Salem - Confidential

 2    determines it.  And this is guided in the

 3    financial department in the Detainees Affairs.

 4    That may go up or down.

 5         Q.   How do you know that?

 6         A.   Because I deal with salaries and

 7    various factors that applies to the salaries.

 8    The same applies to allocations.  For example,

 9    if a child reaches the age of majority, he is

10    removed from the allocation.  If the mother

11    dies, her portion is taken away.

12              After speaking with the attorneys,

13    these types or inspection are done on a monthly

14    basis and sent to the Ministry of Finance to be

15    paid.  These factors or variables are -- this is

16    what affects the allocations.  And it may

17    increase or decrease.

18         Q.   You'll agree here it's only increased.

19         A.   I don't agree.

20         Q.   Oh.  I'm sorry.

21         A.   In December it increased, and in

22    January it decreased again.  And this indicates

23    it's not a normal increment.

24         Q.   But you'll agree with me that for

25    February, March, April, and May, of 2021, he
```

Abdel Jabbar Salem Volume II
July 28, 2021

1                    Salem - Confidential

2   received, or his family received, 3,950 shekels;

3   whereas, for most of 2020, he received 2,000.

4        A.    Yes, I agree with you, according to

5   the information in the documents, and these are

6   correct documents.

7        Q.    And looking at page 1787, Mr. Hamad

8   has received a life sentence.

9             Do you see that?

10            And on page 1788, his authorized

11  beneficiary is his mother.

12            Do you see that?

13       A.    Hiyam Jawbat Abdullah, correct.

14       Q.    And further in this document, there

15  are pages in Hebrew, which presumably outline

16  the indictment or the reasons for his

17  imprisonment.

18       A.    According to the issuance from the

19  attorneys in the Detainees Affair, they said his

20  imprisonment is based on the security

21  background, according to the indictment list by

22  the Israeli court.

23       Q.    Okay.  And so he's in prison; and,

24  therefore, he's receiving these allocations,

25  correct -- or his mother is receiving these

Abdel Jabbar Salem Volume II
July 28, 2021

```
 1              Salem - Confidential
 2    allocations.  Correct?
 3         MR. BERGER:  Object to the form of the
 4         question.  Misstates his testimony.  But
 5         you may answer.
 6         A.   Based on him being in prison,
 7    according to the list of indictment, the
 8    allocations are dispensed to his mother.
 9         Q.   Okay.  Thanks.
10              Something else?
11         A.   I'm sorry.
12              THE COURT REPORTER:  I'm sorry.  What
13         did you say?
14         A.   The reason, it's stated that there
15    is -- the financial needs for the family because
16    of the detainee being in prison.
17         Q.   Okay.  We can take one more comfort
18    break.  I'm almost done.
19              THE VIDEOGRAPHER:  Okay.  We are now
20         off the record.  The time is 13:29 UTC
21         time.
22              (A recess was taken from 13:29 to
23         13:44.)
24              THE VIDEOGRAPHER:  We are back on the
25         record.  The time is 13:44 UTC time.
```

1                  Salem - Confidential

2          MS. MAXMAN:  Okay.  Thank you.  The

3     next exhibit that I'm going to be using

4     are, Elizabeth, Tab 20, 21, and 25.

5          Tab 20 is Bates-numbered 533 through

6     534.  Tab 21 is 1857 through 1878.  And

7     that's the original.  And then the

8     translation of the indictment,

9     unfortunately, that -- into English, is in

10    a separate exhibit.  It is in Tab 25.

11         Oh, let me correct that.  I'm sorry.

12    Tab 21 is 1857 through 1886.

13         And then the translation of pages --

14    of the -- two more pages -- shoot.

15         1880 through -87, is Tab 25.

16         -86.  Sorry.

17         And, Mr. Court Reporter, we are --

18    Bates Numbers 533 to 534 will be

19    Exhibit 12.  Yes.  Exhibit 12.

20         (Bates Numbers 533 to 534, Prisoner

21    File for Alaa Raed Saleh Zughayer, was

22    marked Salem Exhibit 12 for identification,

23    as of this date.)

24         MS. MAXMAN:  And Exhibit 13 will be

25    1865 -- I'm sorry, 1857 through 1886.

Abdel Jabbar Salem Volume II
July 28, 2021

Salem - Confidential

1

2          (Bates Numbers 1857 through 1886,

3     Prisoner File for Alaa Raed Saleh Zughayer,

4     was marked Salem Exhibit 13 for

5     identification, as of this date.)

6          MS. MAXMAN:  And then Exhibit 14 will

7     be the translation of 1880 to 1886.

8          (Bates Numbers 1880 to 1886, Prisoner

9     File for Alaa Raed Saleh Zughayer, was

10    marked Salem Exhibit 14 for identification,

11    as of this date.)

12    Q.   Can you -- do you have those in front

13 of you, Mr. Salem?

14    A.   Yes.  Correct.

15    Q.   Okay.  Great.

16         So, first, I'm going to turn you --

17 oh, and I'm going to represent to you that these

18 documents all have to do with a prisoner named

19 Alaa Raed Saleh Zughayer.

20    A.   Correct.

21    Q.   All right.  Turning your attention to

22 page 534 of Exhibit 12.

23         It appears that Mr. Zughayer is

24 receiving 2,000 shekels a month except for the

25 two months where he gets a clothing additional

Abdel Jabbar Salem Volume II
July 28, 2021

                    Salem - Confidential

1
2    allowance.

3             Have you seen this document before?

4       A.   Yes.  Definitely, I had the time to

5    look at these documents.  During the phase of

6    preparation, I saw all the documents.

7       Q.   Okay.  And turning to Exhibit 13, and

8    to pages 1875 through 1878, I'm trying to see --

9    this does not seem to designate a beneficiary.

10   Do you see something that -- do you see

11   something that I'm missing?

12            Oh, wait.  Sorry.  I found it.  On

13   page 1877, he's designated as his beneficiary

14   himself.

15      A.   The prisoner himself, yes.

16      Q.   Okay.  And there doesn't appear to

17   be -- strike that.

18            When a prisoner designates himself as

19   the recipient, how does -- how does the money

20   transfer take place?  Is it wired to his

21   account?

22      A.   All the allocations are sent through

23   the banks.

24      Q.   Okay.  Now, on page --

25            MS. MAXMAN:  I'm sorry.  Forgive me.

Abdel Jabbar Salem Volume II
July 28, 2021

1          Salem - Confidential

2     I'm having a problem reading the Bates

3     numbers these -- on some of these papers.

4     So just give me a minute.  We're going to

5     have to pull them up online.  The printouts

6     didn't give me the Bates.

7     Q.   I'm looking at Bates Number 1861.

8          And it appears that Mr. Zughayer is

9  sentenced to -- sentence of 16 years, 5 months,

10 and 29 days.

11         Do you see that?

12    A.   Yes, correct.

13    Q.   Okay.  And do you see, further in, on

14 Bates number -- well, it's the last couple pages

15 of the exhibit.  Forgive me on the Bates

16 numbers.

17         But it's starting with page -- with

18 page 1852 through 1868.  There's a Hebrew --

19 what appears to be the indictment.

20    A.   Yes, correct.

21    Q.   Am I correct that Mr. Zughayer is in

22 prison for security or political reasons?

23         THE INTERPRETER:  I'm sorry.  Just to

24     clarify.

25         (Interpreter spoke to the witness.)

Abdel Jabbar Salem Volume II
July 28, 2021

```
 1              Salem - Confidential
 2       A.    Definitely.  The attorneys affirmed,
 3  after reviewing the file and the list of
 4  indictment presented from the court, that the
 5  background for the imprisonment is either
 6  political or security.
 7       Q.    And because of his imprisonment, he's
 8  receiving the allocations listed on page 534.
 9  Correct?
10       A.    Because of his presence in prison and
11  also because this goes to his family.  Even
12  though it's under his name, the beneficiary is
13  his family, because of their needs.
14       Q.    How do you know that?
15       A.    I know because most of the Palestinian
16  families, when their sons are in prison and stay
17  in prison, most of them are in need.
18       Q.    But you don't know that for sure about
19  Mr. Zughayer, do you?
20       A.    I'm sure because the family goes and
21  submit the documents and the application to
22  dispense the allocations when their son is in
23  prison.  Otherwise, if they are not in need,
24  they don't go and submit the documents.
25            And most of the times, the Detainees
```

Abdel Jabbar Salem Volume II
July 28, 2021

Salem - Confidential

1
2   Affairs make sure and certifies the needs,
3   because they have branches and multiple
4   locations.
5        Q.   I don't see anywhere in Exhibit 13 the
6   name of any family member that submitted this.
7   Can you show me where you -- what you're
8   referring to.
9        A.   There is a -- this document, or
10  request, is a form that was formed by one of the
11  family members.  The name is not listed for the
12  person who filled it, but the directorate wrote
13  on it, "No objection."  And this form is not
14  filled unless a member of the family goes and
15  fills it.
16       Q.   How do you know that?
17       A.   This form is usually the first thing
18  to be filled in the directorate, and its sent to
19  the Detainees Affairs.  And usually this form is
20  filled either by a family member or a person who
21  knows them if the family member can't fill the
22  form.
23       Q.   Without his imprisonment, pursuant to
24  the indictment, no allocation would be paid to
25  him, correct?

Abdel Jabbar Salem Volume II
July 28, 2021

Salem - Confidential

1

2   A.   If he was not in prison and his family

3   is in need, there is another program of

4   assistance.  They dispense assistance through a

5   public assistance program.  So if he was not in

6   prison, they will get allocations or assistance.

7   Q.   But he, Mr. Zughayer -- I can't

8   pronounce his name -- Zughayer is indeed

9   receiving payments because he's in prison for

10  the reasons listed in the indictment.

11       MR. BERGER:  Objection.  Form,

12   misstates his testimony.  You may answer.

13   A.   Mr. Zughayer receives the allocations

14  because of him being in prison based on the

15  indictment list from the Israeli part.  And the

16  attorneys and the Detainees Affairs affirmed

17  that it's dispensed because the family is in

18  need.

19   Q.   On page 1865 -- which is in Hebrew,

20  unfortunately, so I know you can't read it --

21  I'm going to represent to you, from an English

22  translation that I have that's included for your

23  attorney's benefit on Exhibit 25 -- I'm sorry,

24  on Tab 25, which is Exhibit -- no, no.  Oh, I'm

25  sorry.

Abdel Jabbar Salem Volume II
July 28, 2021

1                    Salem - Confidential

2          record.  The time is 14:33 UTC time.

3          Q.   Mr. Salem, I'm going to direct your

4     attention to -- on Exhibit 13, pages 1875

5     through 1878.

6               Can you tell me what this document is?

7          A.   This document is the information for

8     the prisoner.

9          Q.   And this is a four-page -- a four-page

10    document that is an official Palestinian

11    Authority document, correct?

12         A.   This is a form that is filled, in the

13    directories, in the subdirectories.

14         Q.   It's a preprinted form, correct?

15         A.   Yes, it's a printed form.

16         Q.   And it's created by the Palestinian

17    Authority, correct?

18         A.   The -- it's created by the Detainees

19    Affairs or the subdirectorates.

20         Q.   Of the Palestinian Authority?

21         A.   Yes, correct.

22         Q.   Okay.  And what is the purpose of this

23    form?  Why is this form created?

24         A.   The purpose of the creation of this

25    form is to submit it to the -- the purpose of

Abdel Jabbar Salem Volume II
July 28, 2021

1              Salem - Confidential

2    this form is to be submitted to the Detainees

3    and Freed Affairs.  It includes individual

4    information about the detainee:  the name, the

5    identification number.  And included with this

6    form, definitely there is the Red Cross document

7    and any identification document from -- for the

8    detainee to be sent to the Detainees Affairs to

9    be inspected.

10       Q.   And if a prisoner is seeking

11   compensation of any type, whether continued

12   salary or allocation, he must fill out or have

13   someone fill out this form.

14       A.   The ones who is filling this form is

15   the family of the detainee, because they -- the

16   detainee is in prison.  And the family is the

17   ones who submits the information to receive the

18   allocation.

19       Q.   If this form is not submitted, would a

20   prisoner be -- or his family -- be entitled to

21   any compensation?

22       A.   If the family does not submit a

23   request to receive the allocations, the

24   allocations will not be dispensed.

25       Q.   And this is the form on which they

Abdel Jabbar Salem Volume II
July 28, 2021

Salem - Confidential

1

2    must make the request, correct?

3         A.    This form is included with the list of

4    indictment, if it's present, or the certificate

5    from the Red Cross.  And it will be submitted

6    all to the Detainees Affairs.  And when it is

7    submitted, this means that the family is in need

8    of these allocations.

9         Q.    And without this form -- if this form

10   is not submitted, no allocations will be made.

11             Am I correct?

12        A.    Definitely, yes.

13        Q.    Okay.  Let's look at this form.  On

14   page 1875, it asks for personal information on

15   the prisoner.

16             Do you see that?  Or ex-prisoner.

17        A.    Yes.  It's a prisoner.  It includes

18   information regarding -- regarding detainee.

19        Q.    Okay.  And let's -- and that includes,

20   for example, religion, marital status, refugee

21   status, education.

22        A.    Yes.

23        Q.    And then turning to the next page,

24   1876, it asks for more information about the

25   prisoner; am I right?

Abdel Jabbar Salem Volume II
July 28, 2021

1                    Salem - Confidential

2        A.    Yes, more information.

3        Q.    And that includes information about

4   his arrest and also if he has any illnesses?

5        A.    Yes, correct.

6        Q.    And then turning over to page 1877, it

7   asks for information concerning the

8   beneficiaries of the prisoner's allowance.

9        A.    Correct.

10       Q.    And then on page 1878, it asks for his

11  employment or his advisor's information, and

12  then asks for documents to be attached.

13             You see that?

14       A.    Yes, I see it.

15       Q.    And those documents are -- include

16  that -- they ask for include the prisoner's ID,

17  the indictment, bank account card, children's

18  birth certificates, copies of education

19  certificates, and other things.  Additional

20  wife, or wives, verdict decision, marriage

21  certificate.

22       A.    Yes.  It's asking, yeah, for a lot of

23  documents and information.

24       Q.    And this information -- this document,

25  the personal information form, is the same or

Abdel Jabbar Salem Volume II
July 28, 2021

1              Salem - Confidential
2     similar to the ones that we've seen in the other
3     prisoners' files we've looked at over the last
4     two days; am I right?
5         A.   Most likely, it's similar.  It's a
6     list of personal information about the detainee
7     asking about the information, but the most
8     important document is the indictment.
9         Q.   And in this document that we've just
10    looked at, this does not ask for any financial
11    information about the prisoner's family; am I
12    correct?
13            MR. BERGER:  Objection to the form.
14        Misstates the document.
15            But you may answer.
16        A.   As long as the families of the
17    detainee goes and submits the form to the
18    Detainees Affairs office -- or their one of
19    their offices, this means that the family is in
20    it, even though it's not listed on this form.
21        Q.   But the Palestinian Authority form
22    never asks for documentation evidencing the
23    family's need.
24            MR. BERGER:  Same objection.
25        Misstates the document.

Abdel Jabbar Salem Volume II
July 28, 2021

1

2                    C E R T I F I C A T E

3

4   STATE OF NEW YORK    )
                         )   Ss.:
5   COUNTY OF NEW YORK   )

6            I JEFFREY BENZ, a Certified Realtime

7       Reporter, Registered Merit Reporter and

8       Notary Public within and for the State of

9       New York, do hereby certify:

10           That ABDEL JABBAR SALEM, the witness

11      whose examination is hereinbefore set

12      forth, was duly sworn by me and that this

13      transcript of such examination is a true

14      record of the testimony given by such

15      witness.

16           I further certify that I am not

17      related to any of the parties to this

18      action by blood or marriage; and that I am

19      in no way interested in the outcome of this

20      matter.

21           IN WITNESS WHEREOF, I have hereunto

22      set my hand this 30th of July, 2021.

23      --------------------------

24           JEFFREY BENZ, CRR, RMR

25

# Exhibit 143

CONFIDENTIAL                                SHATSKY-JDO1110-T

[Palestinian Authority emblem]

State of Palestine

Ministry of Detainees and Ex-Detainees Affairs

General Administration for Administrative and Financial Affairs

Archive Department

| 3203 | Mohammad Atiya Mahmoud Abu Warda |
|------|----------------------------------|

Important note: The file contains two files of two separate prisoners.

Kindly pay attention to this to avoid confusing the two.



CONFIDENTIAL                                          SHATSKY-JD01111-T

          [English:] **TO WHOM IT MAY CONCERN**

                                                     No. 15801

This certificate is valid only if the English and Arabic parts match each other.

According to the information received from the Israeli Authorities, the International
Committee of the Red Cross certifies that

**Mr/Mrs.** <u>MOHAMMAD ATIEH MAHMOUD ABU-WARDEH</u>

**From:** <u>HEBRON</u>     **ID No.** <sup>Redacted</sup><u>535-9</u>          *30* 3203

**Was arrested by the Israeli Authorities on Day:** <u>04</u> **Month:** <u>11</u> **Year:** <u>2002</u>

**He/She is to date:  Sentenced**

**Length of sentence / administrative period:** <u>LIFE SENTENCE</u>

**He/She was released on (dd/mm/yyyy):** xxxxxxxxxxxxxxxxxxxxxxxxxxxxx `·xx`

*(handwritten signature and date: 10.14) Sentenced*

**(Tick the box and underline the correct designation)**

          [Arabic:] **TO WHOM IT MAY CONCERN**

> CERTIFIED UPDATE
> 09.08.2019
> International Committee of
> the Red Cross

This certificate is valid only if the English and Arabic parts match each other.

According to the information received from the Israeli Authorities, the International
Committee of the Red Cross certifies that

**Mr/Mrs.** <u>MOHAMMAD ATIEH MAHMOUD ABU-WARDEH</u>

**From:** <u>HEBRON</u>     **ID No.** <sup>Redacted</sup><u>535-9</u>          *30* 3203

**Was arrested by the Israeli Authorities on Day:** <u>04</u> **Month:** <u>11</u> **Year:** <u>2002</u>

**He/She is to date:  Awaiting Trial ☐   Sentenced ☒   Administrative ☐**

**Length of sentence / administrative period:** _____

**He/She was released on Day:** //////  **Month:** _////_  **Year:** _//////_

**(Tick the box and underline the correct designation)**

**Date: 03.06.2005**                  SYLVAIN BEAUCHAMP
                                      [Stamp of
**Place: HEBRON/IT**                  the Red
                                      Cross]
                                      ICRC Delegate

CONFIDENTIAL                                          SHATSKY-JD01111-T

CONFIDENTIAL

SHATSKY-JD01113-T



[English:] **TO WHOM IT MAY CONCERN**

No. 15801

*3203*

This certificate is valid only if the English and Arabic parts match each other.

According to the information received from the Israeli Authorities, the International Committee of the Red Cross certifies that

**Mr/Mrs.** MOHAMMAD ATIEH MAHMOUD ABU-WARDEH

**From:** HEBRON   **ID No.** Redacted 535-9        *30* 3203

**Was arrested by the Israeli Authorities on Day:** 04 **Month:** 11 **Year:** 2002

**He/She is to date:  Sentenced**

**Length of sentence / administrative period:** LIFE SENTENCE

**He/She was released on (dd/mm/yyyy):** xxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxx

**(Tick the box and underline the correct designation)**



[Arabic:] **TO WHOM IT MAY CONCERN**

*449331*

*Confirmation renewal*

This certificate is valid only if the English and Arabic parts match each other.

According to the information received from the Israeli Authorities, the International Committee of the Red Cross certifies that

**Mr/Mrs.** MOHAMMAD ATIEH MAHMOUD ABU-WARDEH

**From:** HEBRON   **ID No.** Redacted 535-9

**Was arrested by the Israeli Authorities on Day:** 04 **Month:** 11 **Year:** 2002

**He/She is to date:  Awaiting Trial ☐  Sentenced ☒  Administrative ☐**

**Length of** sentence **/ administrative period:** LIFE SENTENCE

**He/She was released on Day:** /////// **Month:** //// **Year:** ///////

**(Tick the box and underline the correct designation)**

**Date:** 03.06.2005

**Place:** HEBRON/IT

SYLVAIN BEAUCHAMP
[Stamp of the Red Cross]
ICRC Delegate

CERTIFIED UPDATE
09.14.2019
International Committee of the Red Cross

CONFIDENTIAL

SHATSKY-JD01113-T

CONFIDENTIAL                    *3203*                SHATSKY-JD01114-T

                [English:] **TO WHOM IT MAY CONCERN**        *Audit*

                                                          No. 15801

This certificate is valid only if the English and Arabic parts match each other.

According to the information received from the Israeli Authorities, the International
Committee of the Red Cross certifies that

**Mr/Mrs.** MOHAMMAD ATIEH MAHMOUD ABU-WARDEH

**From:** HEBRON    **ID No.** <sup>Redacted</sup> 535-9        *449331*

**Was arrested by the Israeli Authorities on Day:** 04 **Month:** 11 **Year:** 2002

**He/She is to date:  Sentenced**

**Length of** sentence **/ administrative period:** LIFE SENTENCE

**He/She was released on (dd/mm/yyyy):** xxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxx

**(Tick the box and underline the correct designation)**

         [Arabic:] TO WHOM IT MAY CONCERN      *449331*

                                                      *The Ten-Year Increment*

This certificate is valid only if the English and Arabic parts match each other.

According to the information received from the Israeli Authorities, the International
Committee of the Red Cross certifies that

**Mr/Mrs.** MOHAMMAD ATIEH MAHMOUD ABU-WARDEH

**From:** HEBRON    **ID No.** <sup>Redacted</sup> 535-9

**Was arrested by the Israeli Authorities on Day:** 04 **Month:** 11 **Year:** 2002

**He/She is to date:  Awaiting Trial** ☐ **Sentenced** ☒ **Administrative** ☐

**Length of sentence / administrative period:** _____

**He/She was released on Day:** //////  **Month:** _____ //// ____ **Year:** _____ //////

**(Tick the box and underline the correct designation)**

**Date:** 03.06.2005                      SYLVAIN BEAUCHAMP
                   ┌─────────────────────┐  [Stamp of
**Place:** HEBRON/IT │ CERTIFIED UPDATE     │  the Red
                   │ 11.22.2012           │  Cross]
                   │ International Committee of │ ICRC Delegate
                   │ the Red Cross        │
                   └─────────────────────┘

CONFIDENTIAL                                  SHATSKY- JD01114-T

                   **P.P BARABARA LECQ**

CONFIDENTIAL                          3203                    SHATSKY-JD01115-T

       [English:] **TO WHOM IT MAY CONCERN**       *[Illegible word in Arabic]*

                                                            No. 15801

This certificate is valid only if the English and Arabic parts match each other.

According to the information received from the Israeli Authorities, the International
Committee of the Red Cross certifies that

**Mr/Mrs.** MOHAMMAD ATIEH MAHMOUD ABU-WARDEH

**From:** HEBRON    **ID No.** <sup>Redacted</sup>535-9              449331

**Was arrested by the Israeli Authorities on Day:** 04 **Month:** 11 **Year:** 2002

**He/She is to date:** Sentenced

**Length of** sentence / administrative period: LIFE SENTENCE

**He/She was released on (dd/mm/yyyy):** xxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxx

**(Tick the box and underline the correct designation)**

       449331__ **[Arabic:] TO WHOM IT MAY CONCERN**   *Month 8 - 4350*

                              *Month 10 - 4350*      *Confirmation renewal*

This certificate is valid only if the English and Arabic parts match each other.

According to the information received from the Israeli Authorities, the International
Committee of the Red Cross certifies that

**Mr/Mrs.** MOHAMMAD ATIEH MAHMOUD ABU-WARDEH

**From:** HEBRON    **ID No.** <sup>Redacted</sup>535-9

**Was arrested by the Israeli Authorities on Day:** 04 **Month:** 11 **Year:** 2002

**He/She is to date:** Awaiting Trial ☐  Sentenced ☒  Administrative ☐

**Length of** sentence / administrative period: LIFE SENTENCE

**He/She was released on Day:** /////// **Month:** //// **Year:** ///////

**(Tick the box and underline the correct designation)**

**Date:** 03.06.2005                          SYLVAIN BEAUCHAMP

**Place:** HEBRON/IT          CERTIFIED UPDATE        [Stamp of
                                10.06.2011           the Red
                         International Committee of   Cross]
                               the Red Cross      ICRC Delegate

CONFIDENTIAL                   **P.P BARABARA LECQ**           SHATSKY- JD01115-T

CONFIDENTIAL

SHATSKY-JD01116-T

| [English] Palestinian National Authority Ministry of Detainees & Freed Detainees Affair Hebron | In the Name of Allah, the Merciful, the Compassionate [Emblem of the Palestinian Authority] | [English] Palestinian National Authority Ministry of Detainees & Freed Detainees Affair Hebron |
|---|---|---|

### Main Prisoner Form

| Form no.: | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Form issuance date: | 3.23.2011 | | | Ministry's administration/branch: | | Hebron | | |

**1. Basic information concerning the prisoner:**

449331

| ID no. (9 digits) | Redacted | | | | 5 | 3 | 5 | 9 |
|---|---|---|---|---|---|---|---|---|

| Four-part name: | First name | Father's name | Grandfather's name | Family name |
|---|---|---|---|---|
| | Mohammad | Atiya | Mahmoud | Abu Warda |

| Mother's name: | [illegible] Abu Warda | | Gender: | ☒ Male   ☐ Female |
|---|---|---|---|---|
| DoB: | Redacted .76 | | Place of birth: | Al-Fawwar |
| Education: | ☐ Illiterate   ☐ Elementary   ☐ High school | ☐ Diploma   ☒ University   ☐ Higher education | | |
| Profession prior to arrest: | Laborer | | Organization: | Hamas |
| Arrest date: | 11.4.2002 | | Place of arrest: | Gilboa |
| Arrest status: | ☐ Detained   ☒ Sentenced   ☐ Administrative | | ☐ Free   ☐ Other | |

| In case of life sentence according to ICRC Certificate | Day | Month | Year | Expected release date according to verdict: | Day | Month | Year |
|---|---|---|---|---|---|---|---|
| | | | | | | | 48 life terms |

| Permanent residence: | Governorate: | Hebron | Residential complex: | Redacted |
|---|---|---|---|---|
| Notes: | | | | |

**2. Information concerning previous arrests:**

Number of previous arrests: _____ . Only those attested to by ICRC certificates, in chronological order from newest to oldest.

| No. | Arrest date | Arrest type | Release date | Arrest period | | | Notes |
|---|---|---|---|---|---|---|---|
| | | | | Day | Month | Year | |
| 1. | | | | | | | |
| 2. | | | | | | | |
| 3. | | | | | | | |
| 4. | | | | | | | |
| 5. | | | | | | | |

1

| [English] Ramallah, P.O Box 2105 Tel: 02226423 02-2213993 Hebron/wad altoufah st – almaha building Tel: 02-2226423 Fax: 02-2213993 | E-mail: asarehb@planet.edu | [Arabic] Ramallah, P.O Box 2105 Tel: 02226423 02-2213993 Hebron/wad altoufah st – almaha building Tel: 02-2226423 Fax: 02-2213993 |
|---|---|---|

CONFIDENTIAL

SHATSKY-JD01116-T

CONFIDENTIAL                                                      SHATSKY-JD01117-T

| [English] Palestinian National Authority Ministry of Detainees & Freed Detainees Affair Hebron | In the Name of Allah, the Merciful, the Compassionate [Emblem of the Palestinian Authority] | [English] Palestinian National Authority Ministry of Detainees & Freed Detainees Affair Hebron |

## 3. Social Status Information:

| Marital Status: | □ Single | ☑ Married | | □ Divorced | | □ Widow | |
|---|---|---|---|---|---|---|---|
| If Married: | Enter data of spouse and children | | | | | | |
| Spouse's ID No. | Redacted | 4 | 4 | 9 | 9 | Marriage Contract Date | |
| Spouse Name | Noura Burhan A-Din Kamel Abu Wardah | | | | Number of Children: | | 1 |

| Data on children from first wife: (sons under 18, unmarried daughters of all ages) | | | | |
|---|---|---|---|---|
| No. | Name | DoB | Marital Status | Education |
| 1. | Hamza | Redacted .2003 | | |
| 2. | | | | |
| 3. | | | | |
| 4. | | | | |
| 5. | | | | |
| 6. | | | | |
| 7. | | | | |
| 8. | | | | |
| 9. | | | | |

## 4. Information of Authorized Representative (Beneficiary):

| Beneficiary's ID: | Redacted | | | 4 | 4 | 9 | 4 | |
|---|---|---|---|---|---|---|---|---|
| Authorized Representative – Beneficiary's Name: | Noura Barhan Ad-Din Kamel Abu Wardeh | | | | Relationship: | Son's wife | | |
| Date of Authorization if Available: | | | Authorization's Period of Validity: | | | | | |
| Bank: | | | Bank Branch: | | | | | |
| Account No.: | Redacted | | Redacted | | | Redacted | | |
| Landline Phone No.: | | | Cell Phone No.: | | | | | |
| Permanent Beneficiary's Address: | Governorate: | Hebron | Residential complex: | | | Redacted | | |
| Notes: | | | | | | | | |

| Applicant's Notes: | |
|---|---|
| Confirmation: | I the undersigned confirm and testify that all of the information provided in this application is correct and I take responsibility for it. |
| Applicant's Signature: | Noura |

2

[English] Ramallah, P.O Box 2105
Tel: 02226423 02-2213993
Hebron/wad altoufah st – almaha building
Tel: 02-2226423 Fax: 02-2213993

E-mail: asarehb@planet.edu

[Arabic] Ramallah, P.O Box 2105
Tel: 02226423 02-2213993
Hebron/wad altoufah st – almaha building
Tel: 02-2226423 Fax: 02-2213993

CONFIDENTIAL                                                      SHATSKY-JD01117-T

CONFIDENTIAL                                                                SHATSKY-JD01118-T

|                                    | In the Name of Allah, the Merciful, the Compassionate |                                    |
| --- | --- | --- |
| [English] Palestinian National Authority Ministry of Detainees & Freed Detainees Affair Hebron | [Emblem of the Palestinian Authority] | [English] Palestinian National Authority Ministry of Detainees & Freed Detainees Affair Hebron |

**5. For Official Use:**

| | | | |
| --- | --- | --- | --- |
| Advisor/Employee's Name: | Muhammad [illegible] | | |
| Advisor/Employee's Notes: | | | |
| Date: | 3.23.2011 | Stamp and Signature: | [handwritten signature] |
| Administration Head's Name: | Ibrahim [illegible] | | [Handwritten signature and round stamp: P.A. / Dep. Detainees & Ex-detainees / Hebron Administration |
| Administration Head's Notes: | No objection | | |
| Date: | 3.23.2011 | Stamp and Signature: | |

**Attached Documents: Check (V) alongside attached documents (confirmation and approval of the Administration's head)**

| | | | |
| --- | --- | --- | --- |
| ☐ | Prisoner/Ex-prisoner's copy of ID | ☑ | Beneficiary's copy of ID |
| ☑ | ICRC certificates | ☑ | Indictment |
| ☐ | Verdict decision (if available) | ☐ | Copy of bank account card |
| ☐ | Copy of authorized marriage certificate | ☐ | Copies of children's birth certificates |
| ☐ | Addendum of additional wife/wives | ☐ | Other (specify) |

**6. Confirmation and Approval:**

| 1. Confirmation by Prisoners' Affairs | ☐ I approve the confirmation of the Prisoner Form (per regulations and laws) | |
| --- | --- | --- |
| Name of authorized employee: | | |
| Date: | Stamp and signature: | |
| | ☐ I do not approve the confirmation of the Prisoner Form | |
| Reasons and causes: | | |
| 2. Confirmation by Legal Affairs: | ☐ I approve the confirmation of the Prisoner Form (per regulations and laws) | |
| Name of authorized employee: | | |
| Date: | Stamp and signature: | |
| | ☐ I do not approve the confirmation of the Prisoner Form | |
| Reasons and causes: | | |

3

CONFIDENTIAL                                                                SHATSKY-JD01118-T

CONFIDENTI

SHATSKY-JD01120-T

[Handwritten: Prosecution]

**Israel Defense Forces**

In the Military Court                     Court File: 02 / [Handwritten: 1962]

sitting in: Adorayim                      Prosecution File: 993/02

Before a Panel                            Police File: 4274/02

<u>In the case between the Military Prosecutor-the Prosecution</u>

-v-

**Mohammad Atiya Mahmoud Abu Warda**
ID No. Born on Redacted , 1976, Resident of Al-Fawar Refugee Camp / Hebron
Detainee as of November 4, 2002

the Defendant

<u>Indictment</u>

| |
|---|
| [Stamp:] Indictment |
| Received |
| On: December 22, 2002 |
| And recorded [Illegible] |
| [Illegible] Court |
| [Signature] |

<u>The above Defendant is hereby indicted for committing the following offenses:</u>

    <u>First Count:</u>

<u>Nature of the Offense:</u> Membership in an unlawful association, an offense pursuant to
        Section 85(1)(A) of the Defense Regulations (Emergency), 1945.

<u>Details of the Offense:</u> The above-named Defendant, while in the region, was a member
        of an unlawful association from 1992-1993 or around that time until the
        day of his arrest. To wit, at the aforementioned time, the Defendant was
        recruited by Ibrahim Sarahna as a member of the Hamas organization,
        which is an unlawful association. As part of his membership in the
        organization, the Defendant engaged in the activities that are described
        in the indictment. The Defendant's membership in the organization
        continued until the day of his arrest.

    <u>Second Count:</u>

<u>Nature of the Offense:</u> Membership in an unlawful association, an offense pursuant to
        Section 85(1)(A) of the Defense Regulations (Emergency), 1945.

<u>Details of the Offense:</u> The above-named Defendant, while in the region, was a
member of an unlawful association from 1993 or around that time until the day of his
arrest. To wit, at the aforementioned time, during the course of his studies at "Dar al-
Mu'allimin" College in Ramallah, the Defendant was a member of the "Islamic Bloc"
movement, which is an unlawful association. As part of his membership, the
Defendant filled positions in the movement as described in the Third and Fourth
Counts of the indictment.

CONFIDENTIAL

SHATSKY-JD01120-T

CONFIDENTI                                                          SHATSKY-JD01121-T

**Third Count:**

**Nature of the Offense:** Holding a position in an unlawful association, an offense pursuant to Section 85(1)(b) of the Defense Regulations (Emergency), 1945.

**Details of the Offense:** The above-named Defendant, while in the region, in the framework of his membership in the Islamic Bloc, filled a position on behalf of an unlawful association from 1993 or around that time until 1996 or around that time.

To wit, at the aforementioned time, the Defendant served as a member of the culture committee of the Islamic Bloc, which is an unlawful association. As part of that, the Defendant organized various events, processions, and assemblies in the name of the movement.

**Fourth Count:**

**Nature of the Offense:** Holding a position in an unlawful association, an offense pursuant to Section 85(1)(b) of the Defense Regulations (Emergency), 1945.

**Details of the Offense:** The above-named Defendant, while in the region, in the framework of his membership in the Islamic Bloc, filled a position on behalf of an unlawful association during the course of 1996 until his arrest by the Palestinian Authority.

To wit, during the aforementioned period, the Defendant served as emir of the the Islamic Bloc, which is an unlawful association. That service of the Defendant was terminated upon his arrest by the Palestinian Authority on March 4, 1996.

**Fifth Count:**

**Nature of the Offense:** Intentional causation of death, an offense pursuant to Section 51(A) to the Security Provisions (Judea and Samaria) Order (No. 378), 5730-1970, and Section 14 to the the Criminal Liability Order.

**Details of the Offense:** The above-named Defendant, while in the region, with others, intentionally caused the death of a person on February 25, 2002.

To wit, in Gaza, shortly after the death of Yahya Ayyash, the head of the Izz a-Din al-Qassam Brigades, which is the military wing of the Hamas organization, the successor to that post, Mohammed Deif, contacted Hassan Abdel Rahman Hassan Salameh, a member of the said organization, and notified him that the organization intended to perform horrific terror attacks in Israel as revenge for the killing of Yahya Ayyash by IDF forces. After Hassan gave his consent therefor, Mohammed informed him that he would send a cell from Gaza to Israel, comprising two members, Abu Hani and Suheil, who would be equipped with a cellular phone, in order to steal a car and prepare a hideout in an orchard in Ashdod. When they completed their mission, they contacted him with the cellular phone, and then he, Hassan, went out to meet them, bearing with him three suitcases that contained 13 kg. of TNT explosive material.

CONFIDENTI

A week later, after the cell members notified Mohammed Deif that they successfully carried out their mission, Mohammed equipped Hassan with suitcases containing explosive material in a small case in which there were six hand grenades and two handguns, with a cellular phone, and with the sum of 1,500 dinars. Mohammed also provided Hassan with the names of Akram Kwasama and Ayman a-Razem, members of the Hamas organization.

CONFIDENTIAL

SHATSKY-JD01121-T

CONFIDENTIAL

SHATSKY-JD01122-T

who reside in Jerusalem, whom he had trained in the use of weapons in Gaza, and Ayman's telephone numbers, showed him their pictures in order that he would be able to identify them, and informed him that they were ready for operations and that they are expecting a telephone call from him. Hassan Salameh took the aforementioned luggage, infiltrated the fence that surrounds the Palestinian Authority territories into Israel, and called the cell members who were in Ashdod in order that they would come pick him up. When the two arrived at the meeting place, they loaded the suitcases of explosive material into the vehicle that they had stolen and drove Hassan to the orchard in Ashdod. Hassan Salameh left the suitcases of explosive material in the hands of Abu Hani and Suheil in the orchard in Ashdod and made his way to the West Bank, to Hebron, from where he brought, at his request, to Ramallah by Saliman Kwasama, a Hamas member known to Hassan from the time that they had stayed together in a prison in Israel. Hassan made his way to the student dormitory in Abu Dis, contacted Ayman Razam, and requested to meet him together with Akram Kwasama at the entrance to the college. Already that night, the three met and agreed that the next day in the evening they would travel in the vehicle that Ayman and Akram would provide to the orchard in Ashdod and they would take with them the explosive material and the other military equipment that Hassan had brought with him from Gaza. The next day, around 6:30 pm, the three made their way to the orchard in Ashdod in a white utility van that Ayman and Akram had provided, took with them the suitcases of explosive material and the small case that contained the military equipment, and traveled to Jerusalem, where they hid them in the mosque located in the neighborhood of Ras al-Amud . The next morning, Akram and Ayman drove Hassan to Ramallah and took their leave of him but not before agreeing that that evening, the two of them would transport the suitcases of explosive material to Ramallah. Around 6:30 pm, in the area of the Ramallah hospital, Hassan Salameh met with Akram and Ayman, took from them the suitcases of explosive material that they had brought with them, and instructed them to search for sites that would be appropriate for carrying out the planned terror attacks in Israel such as those at which a good deal of Israeli citizens would die. Hassan agreed with both of them that from then on, they would meet every week at a particular time and place in order that he would update them with developments. Afterward, the two returned to Jerusalem while Hassan made his way with the suitcases of explosive material to the Ramallah safe house of Muhi a-Din Sharif, a senior operative in the Izz a-Din al-Qassam Brigades who is wanted in Israel, where he hid them.

CONFIDENTIAL

Afterward, on Saturday, February 17, 1996, Hassan Salameh met at the Dar al-Mu'allimin College in Ramallah with Abd Rabbo Sheikh al-Eid, a Hamas member known to Hassan from the period of their stay together in an Israeli prison, and informed him that he needs people who are ready to perform suicide terror attacks. Abd Rabbo told Hassan that the Defendant could help him in that regard, and the two agreed that they would meet for a second time on the following Monday so that Hassan could discuss the matter with the Defendant.

The next day, on Sunday, February 18, 1996, Abd Rabbo contacted the Defendant, told him that his friend, a person whom he trusts absolutely, needs an additional person who would work with him in a military operation in the framework of the Izz a-Din al-Qassam Brigades and suggested that he join him. The Defendant requested to consider the proposal and after approximately a half hour, answered Abd Rabbo that he would like to meet with his friend. Still on that same day, Hassan Salameh met with Ayman and Akram, who advised him that bus line 18 in Jerusalem and the Ashkelon junction are suitable as locations for the execution of suicide terror attacks.

CONFIDENTIAL

SHATSKY-JD01122-T

3

CONFIDENTIAL

SHATSKY-JD01123-T

Akram drove Hassan to the Ashkelon junction to enable him to see for himself whether the location suited their needs, and the latter gave his approval for the execution of the suicide terror attack at that place. During the night, the two returned to Jerusalem, where Hassan slept at Ayman's house. On the morning of the next day, Monday, February 19, 1996, Hassan instructed Akram and Akram to urgently rent a house in Abu Dis in order that he could bring there the suicide attackers whom he would recruit and agreed with them that he would meet them on Wednesday near the hospital in Ramallah. Afterward, Akram brought Hassan to Ramallah.

Around 12:00 pm, Hassan met Abd Rabbo and the Defendant in the Zayid Kutum mosque in Ramallah as had been agreed between Hassan and Abd Rabbo. After Abd Rabbo left the two to themselves, Hassan offered the Defendant to engage in a military operation in the framework of the Izz a-Din al-Qassam Brigades. The Defendant answered Hassan that he is an ardent supporter of the organization's ways, but because of his study workload, he cannot assist him with the operation himself. Hassan asked the Defendant if he could recruit two people for the suicide terror attack, and the latter responded that he would work on it.

Still on that same day, the Defendant contacted Ibrahim Sarahna and Majdi Mohammed Mahmut Abu Warda and suggested to them to carry out the suicide terror attack in the name of the Izz a-Din al-Qassam Brigades. The two gave their consent to that.

On Wednesday, February 21, 1996, the two met at the designated place and time. The Defendant updated Hassan regarding his recruitment of Majdi Abu Warda and Ibrahim Sarahna to execute the planned suicide terror attacks, and it was agreed that he would bring the two to a meeting with Hassan on the next day in the mosque. In the evening, Hassan met with Akram and Ayman near the hospital in Ramallah, as they had agreed, and they apprised him of their renting a house in Abu Dis as he had requested of them. Hassan told the two that he located two suicide attackers to execute the planned terror attacks, and the three resolved that the terror attacks on bus line 18 and at the Ashkelon junction would be carried out on the following Sunday, February 25, 1996. Afterward, Hassan informed the two that he would wait for them on Friday in Ramallah with the suicide attackers and instructed them to take and bring them to the house that they had rented in Abu Dis.

On Thursday, February 22, 1996, the Defendant brought Majdi Abu Warda and Ibrahim Sarahna to a meeting with Hassan Salameh in a mosque in Ramallah and left them to have a discussion amongst themselves. Hassan notified the two that he would meet them on Friday after the afternoon prayer in the mosque in Ramallah.

On Friday, February 23, 1996, at the designated place and time, Hassan met the two and brought them to the safe house that served Muhi a-Din Sharif in Ramallah. In the evening, Hassan pulled out the three suitcases of explosive material, took out from them approximately 3 kg. of explosive material such that 10 kg. of TNT remained therein, and left, in the evening hours, together with Majdi and Ibrahim, while he was equipped with the carrying cases that contained explosive devices, two handguns, and approximately five of the six hand grenades that he had received from Mohammed Deif, toward the hospital in Ramallah. There the three met with Ayman

SHATSKY-JD01123-T

CONFIDENTIAL

SHATSKY-JD01124-T

and Akram, who had arrived at the location in a Subaru, and led the three, with their luggage, to the house that they had rented in Abu Dis.

On the next day, Saturday, February 24, 1996, Hassan assembled the two explosive devices from 10 kg. of TNT, a battery, and numerous metal pellets that served as shrapnel for amplifying the killing, placed them in two carrying cases, and explained to Majdi and Ibrahim how to operate them. Afterward, Ayman and Akram gave to Majdi, who was designated to perform the suicide terror attack on bus line 18 in Jerusalem, new clothing, and to Ibrahim, who was designated to carry out the suicide terror attack at the Ashkelon junction, an IDF uniform, and the two were left to stay the night in the rented house in Abu Dis while Akram gave Hassan a ride to Ramallah after having scheduled a meeting in the city with Akram and Ayman on Wednesday, February 28, 1996.

On Sunday, February, 25, 1996, around 6:45 am, on the corner of Yafo Street and Sarey Yisrael Street in Jerusalem, Majdi Abu Warda detonated the explosive device while riding on Egged bus line 18 in Jerusalem. As a result, Majdi was killed. It also caused the death of Jonathan Barnea, of blessed memory. Jonathan was 20 years old at his death.

Simultaneously, around 7:30 am, next to the hitchhikers pickup spot at the southbound Ashkelon junction, Ibrahim Sarahna, who was wearing an IDF uniform, detonated the explosive device that he carried with him. As a result, Ibrahim was killed.

### Sixth Count:

**Nature of the Offense:** Intentional causation of death, an offense pursuant to Section 51(A) to the Security Provisions (Judea and Samaria) Order (No. 378), 5730-1970, and Section 14 to the Criminal Liability Order.

**Details of the Offense:** The above-named Defendant, while in the region, on February 25, 2002, under the circumstances that are described in the Fifth Count, intentionally caused, together with others, the death of a person.

To wit, at the aforementioned time, the Defendant intentionally caused, by his actions that are set forth in the Fifth Count, the death of Itzik Gaby, of blessed memory, who was 16 years old at his death. Itzik, of blessed memory, found his death as a result of Majdi Abu Warda's detonation of an explosive device on Egged bus line 18 in Jerusalem.

### Seventh Count:

**Nature of the Offense:** Intentional causation of death, an offense pursuant to Section 51(A) to the Security Provisions (Judea and Samaria) Order (No. 378), 5730-1970, and Section 14 to the Criminal Liability Order.

**Details of the Offense:** The above-named Defendant, while in the region, on February 25, 2002, under the circumstances that are described in the Fifth Count, intentionally caused, together with others, the death of a person.

To wit, at the aforementioned time, the Defendant intentionally caused, by his actions that are set forth in the Fifth Count, the death of Moshe Reuven, of blessed memory, who was 19 years old at his death. Moshe, of blessed memory, found his death as a result of Majdi Abu Warda's detonation of an explosive device on Egged bus line 18 in Jerusalem.

CONFIDENTIAL

SHATSKY-JD01125-T

### Eighth Count:

**Nature of the Offense:** Intentional causation of death, an offense pursuant to Section 51(A) to the Security Provisions (Judea and Samaria) Order (No. 378), 5730-1970, and Section 14 to the Criminal Liability Order.

**Details of the Offense:** The above-named Defendant, while in the region, on February 25, 2002, under the circumstances that are described in the Fifth Count, intentionally caused, together with others, the death of a person.

To wit, at the aforementioned time, the Defendant intentionally caused, by his actions that are set forth in the Fifth Count, the death of Eliya Nimoytin, of blessed memory, who was 19 years old at his death. Eliya, of blessed memory, found his death as a result of Majdi Abu Warda's detonation of an explosive device on Egged bus line 18 in Jerusalem.

### Ninth Count:

**Nature of the Offense:** Intentional causation of death, an offense pursuant to Section 51(A) to the Security Provisions (Judea and Samaria) Order (No. 378), 5730-1970, and Section 14 to the Criminal Liability Order.

**Details of the Offense:** The above-named Defendant, while in the region, on February 25, 2002, under the circumstances that are described in the Fifth Count, intentionally caused, together with others, the death of a person.

To wit, at the aforementioned time, the Defendant intentionally caused, by his actions that are set forth in the Fifth Count, the death of Sharon Chanuka, of blessed memory, who was 20 years old at his death. Sharon, of blessed memory, found his death as a result of Majdi Abu Warda's detonation of an explosive device on Egged bus line 18 in Jerusalem.

### Ninth Count:

**Nature of the Offense:** Intentional causation of death, an offense pursuant to Section 51(A) to the Security Provisions (Judea and Samaria) Order (No. 378), 5730-1970, and Section 14 to the Criminal Liability Order.

**Details of the Offense:** The above-named Defendant, while in the region, on February 25, 2002, under the circumstances that are described in the Fifth Count, intentionally caused, together with others, the death of a person.

To wit, at the aforementioned time, the Defendant intentionally caused, by his actions that are set forth in the Fifth Count, the death of Yiliam Weinstein, of blessed memory, who was 54 years old at his death. William, of blessed memory, found his death as a result of Majdi Abu Warda's detonation of an explosive device on Egged bus line 18 in Jerusalem.

CONFIDENTIAL

### Tenth Count:

**Nature of the Offense:** Intentional causation of death, an offense pursuant to Section 51(A) to the Security Provisions (Judea and Samaria) Order (No. 378), 5730-1970, and Section 14 to the Criminal Liability Order.

**Details of the Offense:** The above-named Defendant, while in the region, on February 25, 2002, under the circumstances that are described in the Fifth Count, intentionally caused, together with others, the death of a person. To wit, at the aforementioned time, the Defendant intentionally caused, by his actions that are set forth in the Fifth Count, the death of Merav Nachum, of blessed memory, who was 19 years old at her death. Merav, of blessed memory, found her death as a result of Majdi Abu Warda's detonation of an explosive device on Egged bus line 18 in Jerusalem.

SHATSKY-JD01125-T

CONFIDENTIAL

SHATSKY-JD01126-T

## Eleventh Count:

**Nature of the Offense:** Intentional causation of death, an offense pursuant to Section 51(A) to the Security Provisions (Judea and Samaria) Order (No. 378), 5730-1970, and Section 14 to the Criminal Liability Order.

**Details of the Offense:** The above-named Defendant, while in the region, on February 25, 2002, under the circumstances that are described in the Fifth Count, intentionally caused, together with others, the death of a person.

To wit, at the aforementioned time, the Defendant intentionally caused, by his actions that are set forth in the Fifth Count, the death of Gad Shiloni, of blessed memory, who was 22 years old at his death. Gad, of blessed memory, found his death as a result of Majdi Abu Warda's detonation of an explosive device on Egged bus line 18 in Jerusalem.

## Twelfth Count:

**Nature of the Offense:** Intentional causation of death, an offense pursuant to Section 51(A) to the Security Provisions (Judea and Samaria) Order (No. 378), 5730-1970, and Section 14 to the Criminal Liability Order.

**Details of the Offense:** The above-named Defendant, while in the region, on February 25, 2002, under the circumstances that are described in the Fifth Count, intentionally caused, together with others, the death of a person.

To wit, at the aforementioned time, the Defendant intentionally caused, by his actions that are set forth in the Fifth Count, the death of Gavriel Kraus, of blessed memory, who was 24 years old at his death. Gavriel, of blessed memory, found his death as a result of Majdi Abu Warda's detonation of an explosive device on Egged bus line 18 in Jerusalem.

## Thirteenth Count:

**Nature of the Offense:** Intentional causation of death, an offense pursuant to Section 51(A) to the Security Provisions (Judea and Samaria) Order (No. 378), 5730-1970, and Section 14 to the Criminal Liability Order.

**Details of the Offense:** The above-named Defendant, while in the region, on February 25, 2002, under the circumstances that are described in the Fifth Count, intentionally caused, together with others, the death of a person.

To wit, at the aforementioned time, the Defendant intentionally caused, by his actions that are set forth in the Fifth Count, the death of Anatoly Kushnirov, of blessed memory, who was 36 years old at his death. Anatoly, of blessed memory, found his death as a result of Majdi Abu Warda's detonation of an explosive device on Egged bus line 18 in Jerusalem.

CONFIDENTIAL

**Fourteenth Count:**

**Nature** of the **Offense:** Intentional causation of death, an offense pursuant to Section 51(A) to the Security Provisions (Judea and Samaria) Order (No. 378), 5730-1970, and Section 14 to the Criminal Liability Order.

**Details of the Offense:** The above-named Defendant, while in the region, on February 25, 2002, under the circumstances that are described in the Fifth Count, intentionally caused, together with others, the death of a person.

To wit, at the aforementioned time, the Defendant intentionally caused, by his actions that are set forth in the Fifth Count, the death of Jenna Kushnirov, of blessed memory, who was 37 years old at her death. Jenna, of blessed memory, found her death as a result of Majdi Abu Warda's detonation of an explosive device on Egged bus line 18 in Jerusalem.

7

SHATSKY-JD01126-T

8

CONFIDENTIAL

SHATSKY-JD01127-T

**Fifteenth  Count:**

**Nature of the Offense:** Intentional causation of death, an offense pursuant to Section 51(A) to the Security Provisions (Judea and Samaria) Order (No. 378), 5730-1970, and Section 14 to the Criminal Liability Order.

**Details of the Offense:** The above-named Defendant, while in the region, on February 25, 2002, under the circumstances that are described in the Fifth Count, intentionally caused, together with others, the death of a person.

To wit, at the aforementioned time, the Defendant intentionally caused, by his actions that are set forth in the Fifth Count, the death of Mattiyahu Eisenfeld, of blessed memory, who was 25 years old at his death. Mattiyahu, of blessed memory, found his death as a result of Majdi Abu Warda's detonation of an explosive device on Egged bus line 18 in Jerusalem.

**Sixteenth Count:**

**Nature of the Offense:** Intentional causation of death, an offense pursuant to Section 51(A) to the Security Provisions (Judea and Samaria) Order (No. 378), 5730-1970, and Section 14 to the Criminal Liability Order.

**Details of the Offense:** The above-named Defendant, while in the region, on February 25, 2002, under the circumstances that are described in the Fifth Count, intentionally caused, together with others, the death of a person.

To wit, at the aforementioned time, the Defendant intentionally caused, by his actions that are set forth in the Fifth Count, the death of Sara Duker, of blessed memory, who was 23 years old at her death. Sara, of blessed memory, found her death as a result of Majdi Abu Warda's detonation of an explosive device on Egged bus line 18 in Jerusalem.

**Seventeenth Count:**

**Nature of the Offense:** Intentional causation of death, an offense pursuant to Section 51(A) to the Security Provisions (Judea and Samaria) Order (No. 378), 5730-1970, and Section 14 to the Criminal Liability Order.

**Details of the Offense:** The above-named Defendant, while in the region, on February 25, 2002, under the circumstances that are described in the Fifth Count, intentionally caused, together with others, the death of a person.

To wit, at the aforementioned time, the Defendant intentionally caused, by his actions that are set forth in the Fifth Count, the death of Saline Zaguri, of blessed memory, who was 20 years old at her death. Saline, of blessed memory, found her death as a result of Majdi Abu Warda's detonation of an explosive device on Egged bus line 18 in Jerusalem.

CONFIDENTIAL

**Eighteenth Count:**

**Nature of the Offense:** Intentional causation of death, an offense pursuant to Section 51(A) to the Security Provisions (Judea and Samaria) Order (No. 378), 5730-1970, and Section 14 to

the Criminal Liability Order.

**Details of the Offense:** The above-named Defendant, while in the region, on February 25, 2002, under the circumstances that are described in the Fifth Count, intentionally caused, together with others, the death of a person.

To wit, at the aforementioned time, the Defendant intentionally caused, by his actions that are set forth in the Fifth Count, the death of Michael Yirigen, of blessed memory, who was 16 years old at his death. Michael, of blessed memory, found his death as a result of Majdi Abu Warda's detonation of an explosive device on Egged bus line 18 in Jerusalem.

SHATSKY-JD01127-T

CONFIDENTIAL

SHATSKY-JD01127

8

CONFIDENTIAL

### Nineteenth Count:

**Nature of the Offense:** Intentional causation of death, an offense pursuant to Section 51(A) to the Security Provisions (Judea and Samaria) Order (No. 378), 5730-1970, and Section 14 to the Criminal Liability Order.

**Details of the Offense:** The above-named Defendant, while in the region, on February 25, 2002, under the circumstances that are described in the Fifth Count, intentionally caused, together with others, the death of a person.

To wit, at the aforementioned time, the Defendant intentionally caused, by his actions that are set forth in the Fifth Count, the death of Yitzhak Yachnes, of blessed memory, who was 54 years old at his death. Yitzhak, of blessed memory, found his death as a result of Majdi Abu Warda's detonation of an explosive device on Egged bus line 18 in Jerusalem.

### Twentieth Count:

**Nature of the Offense:** Intentional causation of death, an offense pursuant to Section 51(A) to the Security Provisions (Judea and Samaria) Order (No. 378), 5730-1970, and Section 14 to the Criminal Liability Order.

**Details of the Offense:** The above-named Defendant, while in the region, on February 25, 2002, under the circumstances that are described in the Fifth Count, intentionally caused, together with others, the death of a person.

To wit, at the aforementioned time, the Defendant intentionally caused, by his actions that are set forth in the Fifth Count, the death of Boris Shenopolsky, of blessed memory, who was 55 years old at his death. Boris, of blessed memory, found his death as a result of Majdi Abu Warda's detonation of an explosive device on Egged bus line 18 in Jerusalem.

### Twenty-first Count:

**Nature of the Offense:** Intentional causation of death, an offense pursuant to Section 51(A) to the Security Provisions (Judea and Samaria) Order (No. 378), 5730-1970, and Section 14 to the Criminal Liability Order.

**Details of the Offense:** The above-named Defendant, while in the region, on February 25, 2002, under the circumstances that are described in the Fifth Count, intentionally caused, together with others, the death of a person.

To wit, at the aforementioned time, the Defendant intentionally caused, by his actions that are set forth in the Fifth Count, the death of Peretz Gantz, of blessed memory, who was 61 years old at his death. Peretz,

CONFIDENTIAL

CONFIDENTIAL

of blessed memory, found his death as a result of Majdi Abu Warda's detonation of an explosive device on Egged bus line 18 in Jerusalem.

### Twenty-second Count:

**Nature of the Offense:** Intentional causation of death, an offense pursuant to Section 51(A) to the Security Provisions (Judea and Samaria) Order (No. 378), 5730-1970, and Section 14 to the Criminal Liability Order.

**Details of the Offense:** The above-named Defendant, while in the region, on February 25, 2002, under the circumstances that are described in the Fifth Count, intentionally caused, together with others, the death of a person.

To wit, at the aforementioned time, the Defendant intentionally caused, by his actions that are set forth in the Fifth Count, the death of Svetlana Jelozniak, of blessed memory, who was 33 years old at her death. Svetlana, of blessed memory, found her death as a result of Majdi Abu Warda's detonation of an explosive device on Egged bus line 18 in Jerusalem.

SHATSKY-JD01128-T

CONFIDENTIAL

SHATSKY-JD01129-T

CONFIDENTIAL

**Twenty-third Count:**

**Nature of the Offense:** Intentional causation of death, an offense pursuant to Section 51(A) to the Security Provisions (Judea and Samaria) Order (No. 378), 5730-1970, and Section 14 to the Criminal Liability Order.

**Details of the Offense:** The above-named Defendant, while in the region, on February 25, 2002, under the circumstances that are described in the Fifth Count, intentionally caused, together with others, the death of a person. To wit, at the aforementioned time, the Defendant intentionally caused, by his actions that are set forth in the Fifth Count, the death of Simeon Birkshvili, of blessed memory, who was 60 years old at his death. Simeon, of blessed memory, found his death as a result of Majdi Abu Warda's detonation of an explosive device on Egged bus line 18 in Jerusalem.

**Twenty-fourth Count:**

**Nature of the Offense:** Intentional causation of death, an offense pursuant to Section 51(A) to the Security Provisions (Judea and Samaria) Order (No. 378), 5730-1970, and Section 14 to the Criminal Liability Order.

**Details of the Offense:** The above-named Defendant, while in the region, on February 25, 2002, under the circumstances that are described in the Fifth Count, intentionally caused, together with others, the death of a person. To wit, at the aforementioned time, the Defendant intentionally caused, by his actions that are set forth in the Fifth Count, the death of Yitzchak Elbaz, of blessed memory, who was 57 years old at his death. Yitzchak, of blessed memory, found his death as a result of Majdi Abu Warda's detonation of an explosive device on Egged bus line 18 in Jerusalem.

**Twenty-fifth Count:**

**Nature of the Offense:** Intentional causation of death, an offense pursuant to Section 51(A) to the Security Provisions (Judea and Samaria) Order (No. 378), 5730-1970, and Section 14 to the Criminal Liability Order.

**Details of the Offense:** The above-named Defendant, while in the region, on February 25, 2002, under the circumstances that are described in the Fifth Count, intentionally caused, together with others, the death of a person. To wit, at the aforementioned time, the Defendant intentionally caused, by his actions that are set forth in the Fifth Count, the death of Omer Masudi, of blessed memory, who was 59 years old at his death. Omer, of blessed memory, found his death as a result of Majdi Abu Warda's detonation of an explosive device on Egged bus line 18 in Jerusalem.

CONFIDENTIAL

CONFIDENTIAL

## Twenty-sixth Count:

**Nature of the Offense:** Intentional causation of death, an offense pursuant to Section 51(A) to the Security Provisions (Judea and Samaria) Order (No. 378), 5730-1970, and Section 14 to the Criminal Liability Order.

**Details** of the **Offense:** The above-named Defendant, while in the region, on February 25, 2002, under the circumstances that are described in the Fifth Count, intentionally caused, together with others, the death of a person. To wit, at the aforementioned time, the Defendant intentionally caused, by his actions that are set forth in the Fifth Count, the death of Aryeh Barashi, of blessed memory, who was 39 years old at his death. Aryeh, of blessed memory, found his death as a result of Majdi Abu Warda's detonation of an explosive device on Egged bus line 18 in Jerusalem.

10

CONFIDENTIAL

SHATSKY-JD01129-T

SHATSKY-JD01130-T

**Twenty-seventh Count:**

**Nature of the Offense:** Intentional causation of death, an offense pursuant to Section 51(A) to the Security Provisions (Judea and Samaria) Order (No. 378), 5730-1970, and Section 14 to the Criminal Liability Order.

**Details of the Offense:** The above-named Defendant, while in the region, on February 25, 2002, under the circumstances that are described in the Fifth Count, intentionally caused, together with others, the death of a person. To wit, at the aforementioned time, the Defendant intentionally caused, by his actions that are set forth in the Fifth Count, the death of Navon Shevo, of blessed memory, who was 23 years old at his death. Navon, of blessed memory, found his death as a result of Majdi Abu Warda's detonation of an explosive device on Egged bus line 18 in Jerusalem.

**Twenty-eighth Count:**

**Nature of the Offense:** Intentional causation of death, an offense pursuant to Section 51(A) to the Security Provisions (Judea and Samaria) Order (No. 378), 5730-1970, and Section 14 to the Criminal Liability Order.

**Details of the Offense:** The above-named Defendant, while in the region, on February 25, 2002, under the circumstances that are described in the Fifth Count, intentionally caused, together with others, the death of a person. To wit, at the aforementioned time, the Defendant intentionally caused, by his actions that are set forth in the Fifth Count, the death of Wael Omar Mahmoud Kwasama, of blessed memory, who was 24 years old at his death. Wael, of blessed memory, found his death as a result of Majdi Abu Warda's detonation of an explosive device on Egged bus line 18 in Jerusalem.

**Twenty-ninth Count:**

**Nature of the Offense:** Intentional causation of death, an offense pursuant to Section 51(A) to the Security Provisions (Judea and Samaria) Order (No. 378), 5730-1970, and Section 14 to the Criminal Liability Order.

**Details of the Offense:** The above-named Defendant, while in the region, on February 25, 2002, under the circumstances that are described in the Fifth Count, intentionally caused, together with others, the death of a person. To wit, at the aforementioned time, the Defendant intentionally caused, by his actions that are set forth in the Fifth Count, the death of Chofit Ayash, of blessed memory, who was 20 years old at her death. Chofit, of blessed memory, found her death as a result of Ibrahim Sarahna's detonation of an explosive device near the hitchikers pick-up spot at the Ashkelon junction.

**Thirtieth Count:**

**Nature of the Offense:** Intentional causation of death, an offense pursuant to Section

51(A) to the Security Provisions (Judea and Samaria) Order (No. 378), 5730-1970, and Section 14 to the Criminal Liability Order.

**<u>Details of the Offense:</u>**The above-named Defendant, while in the region, intentionally caused the death, with others, of a person on March 3, 1996.

On Wednesday morning, February 28, 1996. the Defendant and Hassan Salameh met in a mosque in Ramallah, as they had agreed earlier, and the latter informed the Defendant that he needs a suicide attacker to execute an additional suicide terror attack. The Defendant told him that he knows a person who answers to the name of Raed Abdel Karim Shaghnubi, an operative in the Islamic Bloc, who is interested in carrying out a terror attack.

11

SHATSKY-JD01130-T

CONFIDENTIAL

SHATSKY-JD01131-T

The two scheduled an additional meeting for the next day in the afternoon in the mosque to which the Defendant would bring Raed. On the evening of February 28, 1996, Hassan met with Ayman and Akram. The three decided that bus line 18 in Jerusalem would serve as the next planned suicide terror attack target, and Hassan instructed the two to meet him again on Saturday night, near the hospital, in order to bring the suicide attacker from Ramallah in advance of his execution of the suicide terror attack on Sunday morning.

On Thursday, February 29, 1996, the Defendant contacted Raed Shaghnubi and informed him that an operative in the Izz a-Din al-Qassam Brigades wishes to meet him regarding a military operation. Raed answered in the affirmative, and in the afternoon, in the mosque in Ramallah, the Defendant and Raed Shaghnubi met with Hassan Salameh. The Defendant left the two to discuss amongst themselves and returned to the college. Hassan offered to Raed to execute the suicide terror attack on behalf of the Izz a-Din al-Qassam Brigades. The latter gave his consent, and the two scheduled to meet for a second time the following evening, Friday, next to the mosque.

On Friday, March 1996, at the designated place and time, Hassan met with Raed and brought him to the safe house that served Muhi a-Din Sharif in Ramallah. There, Hassan assembled the explosive device in the manner that he assembled the explosive devices that are described in the Fifth Count, but instead of metal pellets, this time he used metal nails as shrapnel. Afterward, he placed it in the carrying case. The following day, on Saturday, March 2, 1996, around 7:00 pm, Raed and Hassan, with the case that contained the explosive device in their possession, met with Ayman and Akram next to the hospital in Ramallah. Hassan told the two that Raed is the suicide attacker and instructed them to bring him the next morning to the bus stop of bus line 18 in order that he execute the planned suicide terror attack. Raed, with the explosive device in tow, entered their vehicle, and the three traveled to Abu Dis.

On Sunday, March 3, 1996, around 6:20 am on Yafo Street, adjacent to the central post office branch in Jerusalem, Raed Shaghnubi detonated the explosive device while traveling on Egged bus line 18 in Jerusalem. As a result, Raed was killed. It also caused the death of Yoni Levi, of blessed memory. Yoni was 23 years old at his death.

<u>**Thirty-first Count:**</u>

**Nature of the Offense:** Intentional causation of death, an offense pursuant to Section 51(A) to the Security Provisions (Judea and Samaria) Order (No. 378), 5730-1970, and Section 14 to  the Criminal Liability Order.

**Details of the Offense:** The above-named Defendant, while in the region, on March 3, 1996, under the circumstances that are described in the Thirtieth Count, intentionally caused, together with others, the death of a person.

SHATSKY-JD01132-T

CONFIDENTIAL

To wit, at the aforementioned time, the Defendant intentionally caused, by his actions that are set forth in the Thirtieth Count, the death of Chaim Emedi, who was 19 years old at his death. Chaim, of blessed memory, found his death as a result of Raed Shaghnubi's detonation of an explosive device on Egged bus line 18 in Jerusalem.

SHATSKY-JD01132-T

**Thirty-second Count:**

**Nature of the Offense:** Intentional causation of death, an offense pursuant to Section 51(A) to the Security Provisions (Judea and Samaria) Order (No. 378), 5730-1970, and Section 14 to the Criminal Liability Order.

**Details of the Offense:** The above-named Defendant, while in the region, on March 3, 1996, under the circumstances that are described in the Thirtieth Count, intentionally caused, together with others, the death of a person.

To wit, at the aforementioned time, the Defendant intentionally caused, by his actions that are set forth in the Thirtieth Count, the death of Uzi Cohen, who was 42 years old at his death. Uzi, of blessed memory, found his death as a result of Raed Shaghnubi's detonation of an explosive device on Egged bus line 18 in Jerusalem.

**Thirty-third Count:**

**Nature** of the **Offense**: Intentional causation of death, an offense pursuant to Section 51(A) to the Security Provisions (Judea and Samaria) Order (No. 378), 5730-1970, and Section 14 to the Criminal Liability Order.

**Details of the Offense:** The above-named Defendant, while in the region, on March 3, 1996, under the circumstances that are described in the Thirtieth Count, intentionally caused, together with others, the death of a person.

To wit, at the aforementioned time, the Defendant intentionally caused, by his actions that are set forth in the Thirtieth Count, the death of Shem-Tov Sheikh, who was 63 years old at his death. Shem-Tov, of blessed memory, found his death as a result of Raed Shaghnubi's detonation of an explosive device on Egged bus line 18 in Jerusalem.

**Thirty-fourth Count:**

**Nature of the Offense:** Intentional causation of death, an offense pursuant to Section 51(A) to the Security Provisions (Judea and Samaria) Order (No. 378), 5730-1970, and Section 14 to the Criminal Liability Order.

SHATSKY-JD01132-T

CONFIDENTIAL

**Details of the Offense:** The above-named Defendant, while in the region, on March 3, 1996, under the circumstances that are described in the Thirtieth Count, intentionally caused, together with others, the death of a person.

To wit, at the aforementioned time, the Defendant intentionally caused, by his actions that are set forth in the Thirtieth Count, the death of Gavriel Shimeshilashvili, who was 43 years old at his death. Gavriel, of blessed memory, found his death as a result of Raed Shaghnubi's detonation of an explosive device on Egged bus line 18 in Jerusalem.

**Thirty-fifth Count:**

**Nature of the Offense:** Intentional causation of death, an offense pursuant to Section 51(A) to the Security Provisions (Judea and Samaria) Order (No. 378), 5730-1970, and Section 14 to the Criminal Liability Order.

**Details of the Offense:** The above-named Defendant, while in the region, on March 3, 1996, under the circumstances that are described in the Thirtieth Count, intentionally caused, together with others, the death of a person.

To wit, at the aforementioned time, the Defendant intentionally caused, by his actions that are set forth in the Thirtieth Count, the death of Maya Birkan, who was 59 years old at her death. Maya, of blessed memory, found her death as a result of Raed Shaghnubi's detonation of an explosive device on Egged bus line 18 in Jerusalem.

SHATSKY-JD01132-T

CONFIDENTIAL

CONFIDENTIAL

SAHTSKY-JD01133-T

**Thirty-sixth Count:**

**Nature of the Offense:** Intentional causation of death, an offense pursuant to Section 51(A) to the Security Provisions (Judea and Samaria) Order (No. 378), 5730-1970, and Section 14 to the Criminal Liability Order.

**Details of the Offense:** The above-named Defendant, while in the region, on March 3, 1996, under the circumstances that are described in the Thirtieth Count, intentionally caused, together with others, the death of a person.

To wit, at the aforementioned time, the Defendant intentionally caused, by his actions that are set forth in the Thirtieth Count, the death of Tasfance Gidawi, who was 23 years old at her death. Tasfance, of blessed memory, found her death as a result of Raed Shaghnubi's detonation of an explosive device on Egged bus line 18 in Jerusalem.

**Thirty-seventh Count:**

**Nature of the Offense:** Intentional causation of death, an offense pursuant to Section 51(A) to the Security Provisions (Judea and Samaria) Order (No. 378), 5730-1970, and Section 14 to the Criminal Liability Order.

**Details of the Offense:** The above-named Defendant, while in the region, on March 3, 1996, under the circumstances that are described in the Thirtieth Count, intentionally caused, together with others, the death of a person.

To wit, at the aforementioned time, the Defendant intentionally caused, by his actions that are set forth in the Thirtieth Count, the death of Angel Suriani, who was 45 years old at her death. Angel, of blessed memory, found her death as a result of Raed Shaghnubi's detonation of an explosive device on Egged bus line 18 in Jerusalem.

**Thirty-eighth Count:**

**Nature of the Offense:** Intentional causation of death, an offense pursuant to Section 51(A) to the Security Provisions (Judea and Samaria) Order (No. 378), 5730-1970, and Section 14 to the Criminal Liability Order.

**Details of the Offense:** The above-named Defendant, while in the region, on March 3, 1996, under the circumstances that are described in the Thirtieth Count, intentionally caused, together with others, the death of a person.

To wit, at the aforementioned time, the Defendant intentionally caused, by his actions that are set forth in the Thirtieth Count, the death of George Yunaan who was 39 years old at his death. George, of blessed memory, found his death as a result of Raed Shaghnubi's detonation of an explosive device on Egged bus line 18 in Jerusalem.

CONFIDENTIAL

SHATSKY-JD01133-T

CONFIDENTIAL

**Thirty-ninth Count:**

**Nature of the Offense:** Intentional causation of death, an offense pursuant to Section 51(A) to the Security Provisions (Judea and Samaria) Order (No. 378), 5730-1970, and Section 14 to the Criminal Liability Order.

**Details of the Offense:** The above-named Defendant, while in the region, on March 3, 1996, under the circumstances that are described in the Thirtieth Count, intentionally caused, together with others, the death of a person.

To wit, at the aforementioned time, the Defendant intentionally caused, by his actions that are set forth in the Thirtieth Count, the death of Naomi Zaguri, who was 66 years old at her death. Naomi, of blessed memory, found her death as a result of Raed Shaghnubi's detonation of an explosive device on Egged bus line 18 in Jerusalem.

CONFIDENTIAL

SHATSKY-JD01133-T

CONFIDENTIAL

**Fortieth Count:**

**Nature of the Offense:** Intentional causation of death, an offense pursuant to Section 51(A) to the Security Provisions (Judea and Samaria) Order (No. 378), 5730-1970, and Section 14 to the Criminal Liability Order.

**Details of the Offense:** The above-named Defendant, while in the region, on March 3, 1996, under the circumstances that are described in the Thirtieth Count, intentionally caused, together with others, the death of a person.

To wit, at the aforementioned time, the Defendant intentionally caused, by his actions that are set forth in the Thirtieth Count, the death of Raaya Daushvili, who was 41 years old at her death. Raya, of blessed memory, found her death as a result of Raed Shaghnubi's detonation of an explosive device on Egged bus line 18 in Jerusalem.

**Forty-first Count:**

**Nature of the Offense:** Intentional causation of death, an offense pursuant to Section 51(A) to the Security Provisions (Judea and Samaria) Order (No. 378), 5730-1970, and Section 14 to the Criminal Liability Order.

**Details of the Offense:** The above-named Defendant, while in the region, on March 3, 1996, under the circumstances that are described in the Thirtieth Count, intentionally caused, together with others, the death of a person.

To wit, at the aforementioned time, the Defendant intentionally caused, by his actions that are set forth in the Thirtieth Count, the death of Ana Shengulutz, who was 37 years old at her death. Ana, of blessed memory, found her death as a result of Raed Shaghnubi's detonation of an explosive device on Egged bus line 18 in Jerusalem.

**Forty-second Count:**

**Nature of the Offense:** Intentional causation of death, an offense pursuant to Section 51(A) to the Security Provisions (Judea and Samaria) Order (No. 378), 5730-1970, and Section 14 to the Criminal Liability Order.

**Details of the Offense:** The above-named Defendant, while in the region, on March 3, 1996, under the circumstances that are described in the Thirtieth Count, intentionally caused, together with others, the death of a person.

To wit, at the aforementioned time, the Defendant intentionally caused, by his actions that are set forth in the Thirtieth Count, the death of Yuleria Karkiyon, who was 44 years old at her death. Yuleria, of blessed memory, found her death as a result of Raed Shaghnubi's detonation of an explosive device on Egged bus line 18 in Jerusalem.

**Forty-third Count:**

**Nature of the Offense:** Intentional causation of death, an offense pursuant to Section 51(A) to the Security Provisions (Judea and Samaria) Order (No. 378), 5730-1970, and Section 14 to the Criminal Liability Order.

**Details of the Offense:** The above-named Defendant, while in the region, on March 3, 1996, under the circumstances that are described in the Thirtieth Count, intentionally caused, together with others, the death of a person.

CONFIDENTIAL

To wit, at the aforementioned time, the Defendant intentionally caused, by his actions that are set forth in the Thirtieth Count, the death of Daniel Patkena, who was 34 years old at his death. Daniel, of blessed memory, found his death as a result of Raed Shaghnubi's detonation of an explosive device on Egged bus line 18 in Jerusalem.

SHATSKY-JD01134-T                              15

CONFIDENTIAL

**Forty-fourth Count:**

**Nature of the Offense:** Intentional causation of death, an offense pursuant to Section 51(A) to the Security Provisions (Judea and Samaria) Ord 378), 5730-1970, and Section 14 to the Criminal Liability Order.

SAHTSKY-JD01135-T

**Details of the Offense:** The above-named Defendant, while in the region, on March 3, 1996, under the circumstances that are described in the Thirtieth Count, intentionally caused, together with others, the death of a person.

To wit, at the aforementioned time, the Defendant intentionally caused, by his actions that are set forth in the Thirtieth Count, the death of Marion Grafan, who was 40 years old at his death. Marion, of blessed memory, found his death as a result of Raed Shaghnubi's detonation of an explosive device on Egged bus line 18 in Jerusalem.

**Forty-fifth Count:**

**Nature of the Offense:** Intentional causation of death, an offense pursuant to Section 51(A) to the Security Provisions (Judea and Samaria) Order (No. 378), 5730-1970, and Section 14 to the Criminal Liability Order.

**Details of the Offense:** The above-named Defendant, while in the region, on March 3, 1996, under the circumstances that are described in the Thirtieth Count, intentionally caused, together with others, the death of a person.

To wit, at the aforementioned time, the Defendant intentionally caused, by his actions that are set forth in the Thirtieth Count, the death of Dimitro Kokorcho, who was 43 years old at his death. Dimitro, of blessed memory, found his death as a result of Raed Shaghnubi's detonation of an explosive device on Egged bus line 18 in Jerusalem.

**Forty-sixth Count:**

**Nature of the Offense:** Intentional causation of death, an offense pursuant to Section 51(A) to the Security Provisions (Judea and Samaria) Order (No. 378), 5730-1970, and Section 14 to the Criminal Liability Order.

**Details of the Offense:** The above-named Defendant, while in the region, on March 3, 1996, under the circumstances that are described in the Thirtieth Count, intentionally caused, together with others, the death of a person.

CONFIDENTIAL

To wit, at the aforementioned time, the Defendant intentionally caused, by his actions that are set forth in the Thirtieth Count, the death of Dominique Lumke, who was 29 years old at his death. Dominique, of blessed memory, found his death as a result of Raed Shaghnubi's detonation of an explosive device on Egged bus line 18 in Jerusalem.

## Forty-seventh Count:

**Nature** of the **Offense:** Intentional causation of death, an offense pursuant to Section 51(A) to the Security Provisions (Judea and Samaria) Order (No. 378), 5730-1970, and Section 14 to the Criminal Liability Order.

**Details of the Offense:** The above-named Defendant, while in the region, on March 3, 1996, under the circumstances that are described in the Thirtieth Count, intentionally caused, together with others, the death of a person.

To wit, at the aforementioned time, the Defendant intentionally caused, by his actions that are set forth in the Thirtieth Count, the death of Jeyefa Mirsaya, who was 39 years old at his death. Jeyefa, of blessed memory, found his death as a result of Raed Shaghnubi's detonation of an explosive device on Egged bus line 18 in Jerusalem.

SAHTSKY-JD01135-T

CONFIDENTIAL

SHATSKY-JD01136-T

in Ramallah, with his face masked, in order to meet with an additional person, who would brief him about the military operation that he would be carrying out. The Defendant even gave Mohammed the code word that he would use to identify the person whom he was supposed to meet. Afterward, the Defendant and Nabil Uwuda brought Mohammed to Ramadan's house, where they photographed him wearing a green headband, which symbolizes the Hamas movement, and brandishing an M-16 assault rifle and a kalashnikov, in order to publicize his picture as a "shahid" after his execution of the suicide terror attack.

At the appointed time, Mohammed met an anonymous person in the Abdel Nasser Mosque in Ramallah, but that person informed him that the terror attack was postponed to a later occasion. Mohammed notified the Defendant of the same. One week later, Mohammed Kalula was arrested by IDF forces.

[Signature]

**Yael Isaac, Captain**

**Military Prosecutor**

<u>Witnesses for the Prosecution:</u>

1. Advanced Staff Sergeant Omer Zayidna (gathers the Defendant's confession)
2. Redacted 9214 Nabil Awawda  (detainee)
3. Redacted 8994 Mohammed Qalawla (sentenced)
4. Redacted 9022 Hassan Salameh (sentenced)

CONFIDENTIAL                                    Shatsky-JD01137-T

[English] Palestinian          [Emblem of the Palestinian          [Arabic] Palestinian
Authority                       National Authority]                    Authority
Ministry of Interior                                              Ministry of Interior
Department of Civil Affairs                                    Department of Civil Affairs

---

## Birth Certificate

**I.D. No.** Redacted 030 2

**Name:** Hamza                              **Father's Name:** Muhammad

**Grandfather's Name:** Atiya                **Family Name:** Abu Warda    **Father's Nationality:** Palestinian

**Mother's Name:** Noura                     **Mother's Family:** Al-Ja'bari   **Mother's Nationality:** Palestinian

**Gender:** Male                             **Religion:** Muslim

**Date of Birth:** Redacted .2003 Redacted          , Two-thousand and three

**Place of Birth:** Hebron                   **Hospital:** Al-Ahli - Hebron

**Address:**     Al-Fawar       0 – 0 -

---

**The details about the above-mentioned birth have been registered in the birth file of the year 2003**

**by the Department of Civil Affairs in:  Dura**  on: 04.29.2003

---

[Round stamp: Palestinian
Authority - Department of Civil
Affairs]

[Rectangle stamp: Stamp of the
Department]

Signature
Employee Signature
*[handwritten signature]*

CONFIDENTIAL                                    Shatsky-JD01137-T

CONFIDENTIAL                                    SHATSKY-JD01138-T

Date: 16 Kislev 5765                        Case No.: 1962/02
November 29, 2004

### The Military Court Judea

**Before Presiding Judge: Lt. Colonel Zvi Lekach**
**Judge: Captain Amir Dahan**
**Judge: Captain Shimon Leybo**
**The Military Prosecution**
(by Lieutenant Yotam Har Zion)

**v.**

**Defendant Mohammad Atiya Mahmoud Abu Warda**    ID No. <sup>Redacted</sup>5359 / The Israel
**Prison Service - Present**
(by counsel, Attorney Anwar Abu Omer and Attorney Basul - Present)
**Registrar: Sergeant Rozi Ivgi**
**Interpreter: Sergeant Karim Salama**

**The Presiding Judge opens the session and identifies the Defendant.**

### The course of the proceeding

Prosecution: I request to amend the indictment.

Defense: I request that the Defendant be allowed to retract his denial.

### Decision

We allow the Defendant to retract his denial, and we allow the Prosecution to amend the indictment.

**Issued and announced this day, the 29th of November, 2004, in public and in the presence of the parties.**

[Signature]          [Signature]                    [Signature]
**Judge**          **Presiding Judge**              **Judge**

Defense: I have read the amended indictment to my client. I explained to him its content. He understood it and admits to what is attributed to him.

Defendant: I confirm my defense attorney's statement and admit to the amended indictment.

- 1 -

CONFIDENTIAL                                    SHATSKY-JD01138-T

CONFIDENTIAL                                    SHATSKY-JD01139-T

Date: 16 Kislev 5765                            Case No.: 1962/02

November 29, 2004

### Adjudication

On the basis of his admission to the charge, we find the Defendant guilty of the crimes that are attributed to him in the amended indictment.

**Issued and announced this day, the 29th of November, 2004, in public and in the presence of the parties.**

[Signature] _____   [Signature] _____   [Signature] _____

**Judge**                    **Presiding Judge**                       **Judge**

Military Prosecutor: I submit the criminal record sheet. **Accepted and marked P/4.**

Defense: There is no evidence for the sentence.

The Public Prosecutor's delivers his summations: A mass murderer stands today before the Court. Not on every occasion and not on many occasions in recent years, has a defendant such as this one stood before the Court. Despite the many acts of terror, despite the fact that during the last four years, the Court has seen before it on more that one occasion lowly murderers and defendants who were convicted for serious terror attacks, nevertheless, the Defendant before us is different from them. The Defendant before us is responsible for the murder of 45 people. In the terror attacks that occurred in 1996, as indicated in the indictment, the time lapse between the attacks was a week. During the course of that week, there were three terror attacks. The Defendant before us was in contact with the operatives who perpetrated these attacks, Hasan Salameh and Mohammed Deif. The Defendant before us is the person who recruited the suicide attackers, who afterward were armed with explosive devices and caused the death of dozens of people. The Defendant was fully aware of the intent behind the recruitment of these people. The Defendant was aware of their plan to perpetrate suicide attacks. It is clear that he was a full partner to the plan and its performance. The murderous acts, to the best of our memory, and the brevity of the time elapsed between them not only caused the death of dozens of people but also delivered a heavy moral blow to the Israeli public. It was the days before the holiday of Purim, and the Defendant and his friends who perpetrated the terror attacks terminated the joy of the holiday and caused shock and sadness, but it is clear that the greatest sadness was the lot of the 45 families who lost those dear to them as a result of the Defendant's actions. These 45 families lost in an instant, at the moment that the explosive device detonated, their sons, daughters, brothers. We have stood on more than one occasion before the Court and remarked on the severity of the

murderous acts. We noted that man is created in the image, and that every person is a world and all of its contents, and that the cutting down of one life in Israel is tantamount to the destruction of the entire world. Every such life that the Defendant through his actions caused to be murdered destroyed an entire family. The world of these families is not what is was before those terror attacks. The Defendant demonstrated a lack of compassion, a lack of respect for mankind as such, and intense hatred for Israelis as such in his actions. It is difficult to say what the appropriate punishment for the Defendant would have been had we been in a society stripped of legal rules and had we not been limited in the sentence that could have been imposed on him. The sentence that is available to us is life imprisonment for each life that was taken, and it is this sentence that the Prosecution seeks for each count of terror attack that the Defendant perpetrated against dozens of injured. The Prosecution will seek to impose life imprisonment, such that ultimately, the Military Prosecution will seek to impose 48 life sentences on the Defendant to run cumulatively. The Prosecution will leave the sentence for the other acts to the discretion of the Court.

- 2 -

CONFIDENTIAL

SHATSKY-JD01139-T

CONFIDENTIAL                                         SHATSKY-JD01140-T

Date: 16 Kislev 5765                          Case No.: 1962/02

November 29, 2004

**The Military Court Judea**

**Before Presiding Judge: Lt. Colonel Zvi Lekach**

**Judge: Captain Amir Dahan**

**Judge: Captain Shimon Leybo**

**The Military Prosecution**

(by Lieutenant Yotam Har Zion)

v.

**Defendant Mohammad Atiya Mahmoud Abu Warda**      **ID No.** Redacted **5359 / The Israel**

**Prison Service**

(by counsel, Attorney Anwar Abu Omar and Attorney Basul)

---

### Sentence

The Defendant has been convicted pursuant to his admission to the indictment, one of the most severe that was ever submitted in the courts of this region and the State of Israel. The indictment, which includes 45 different counts, describes the part that the Defendant and his activities played in carrying out the suicide attacks that cumulatively caused the deaths of 45 people.

The Defendant is the one who recruited suicide attackers in accordance with the preplanning of Hasan Salameh and Mohammed Deif. The suicide attackers that the Defendant recruited at their request set out on February 25, 1996, one to a hitchikers pick-up spot in Ashkelon and the other got on bus line number 18 in Jerusalem. The suicide attacker who got on the bus detonated himself and caused the death of 24 innocent people and injury to many others. The suicide attacker who blew himself up next to the hitchikers pick-up spot in Ashkelon caused the death of one woman and injury to 36 people. Very fortunately, he did not succeed in causing the death of additional victims.

After the double terrorist attack, the Defendant sought to recruit another suicide attacker. The Defendant did so, and on March 3, 1996, that terrorist got on bus line 18 in Jerusalem, detonated himself, and caused the death of 20 people and injury to eight others.

The Military Prosecution requested that we impose life imprisonment on the Defendant for each one of those murdered as well as life imprisonment for each attempted intentional causing of death, meaning a total of 48 terms of life imprisonment.

We must state that the Defendant not only did not express remorse for his actions, but he even argued that his actions are not murderous acts but "legitimate acts of defiance." Actions in which the Defendant was a partner were carried out based on an orderly, murderous doctrine that he took pains to explain with brazenness before this panel. The distortion that lies at the foundation of the matter is so great that our words are insufficient to express the horror, repugnance, and abomination that we feel toward the Defendant and his dogma.

- 4 -

CONFIDENTIAL

SHATSKY-JD01140-T

CONFIDENTIAL

SHATSKY-JD01141-T

Date: 16 Kislev 5765

Case No.: 1962/02

November 29, 2004

There is no and cannot be any justification for murderous acts that do not distinguish between women, children, and men whose only sin was their being Israelis. This was a deliberate act that was premeditated, and its exclusive objective was the mass murder of innocents.

The human being within us is horrified at the cutting down of 45 lives, each and every one of whom had dreams, desires, aspirations that were cut down with the stroke of a perverted and intentional act, originating with the Defendant and his friends, in one fell swoop. It is not for naught that our sources say (Tractate Sanhedrin): "He who causes the loss of one life is as if he caused the loss of an entire world," because his blood and also the blood of his offspring are morally placed on the head of the murderer.

At the end of the day, we did not do justice for those who were murdered and their families. The law that we have the power to carry out, we will carry out.

We issue the following sentences to the Defendant:

1. Life imprisonment for the murder of Yonatan Barnea, 20 years old at his death.
2. Life imprisonment for the murder of Itzik Gabi, 16 years old at his death.
3. Life imprisonment for the murder of Moshe Reuven, 19 years old at his death.
4. Life imprisonment for the murder of Eliya Nimoytin, 19 years old at his death.
5. Life imprisonment for the murder of Sharone Chanuka, 20 years old at his death.
6. Life imprisonment for the murder of William (Yitzchak) Weinstein, 54 years old at his death.
7. Life imprisonment for the murder of Merav Nahum, 19 years old at her death.
8. Life imprisonment for the murder of Gad Shiloni, 22 years old at his death.
9. Life imprisonment for the murder of Gavriel Krauss, 24 years old at his death.
10. Life imprisonment for the murder of Anatoly Koshnirov, 36 years old at his death.
11. Life imprisonment for the murder of Jenna Koshnirov , 37 years old at her death.
12. Life imprisonment for the murder of Matityahu Eisenfeld, 25 years old at his death.
13. Life imprisonment for the murder of Sarah Duker , 23 years old at her death.
14. Life imprisonment for the murder of Celine Zaguri , 20 years old at her death.
15. Life imprisonment for the murder of Michael Yerigin, 16 years old at his death.
16. Life imprisonment for the murder of Yitzchak Yachnes, 54 years old at his death.
17. Life imprisonment for the murder of Boris Shrenopolsky, 55 years old at his death.
18. Life imprisonment for the murder of Peretz Gantz, 61 years old at his death.
19. Life imprisonment for the murder of Svetalana Gelezniak, 33 years old at her death.
20. Life imprisonment for the murder of Simeon Birekshvili, 60 years old at his death.
21. Life imprisonment for the murder of Yitzchak Elbaz, 57 years old at his death.
22. Life imprisonment for the murder of Amar Massudi, 59 years old at his death.
23. Life imprisonment for the murder of Aryeh Barashi, 39 years old at his death.
24. Life imprisonment for the murder of Navon Shevo, 23 years old at his death.
25. Life imprisonment for the murder of Waal Omer Mahmoud Qawasmeh, 24 years old at his death.

26.  Life imprisonment for the murder of Yoni Levi, 23 years old at his death.

27.  Life imprisonment for the murder of Chofit Ayish, 20 years old at her death.

28.  Life imprisonment for the murder of Chaim Emedi, 19 years old at his death.

29.  Life imprisonment for the murder of Uzi Cohen, 42 years old at his death.

- 5 -

CONFIDENTIAL

SHATSKY-JD01141-T

CONFIDENTIAL                                                          SHATSKY-JD01142-T

Date: 16 Kislev 5765                                    Case No.: 1962/02

November 29, 2004

30. Life imprisonment for the murder of Shem Tov Sheikh, 63 years old at his death.

31. Life imprisonment for the murder of Gavriel Shimeshyashvili, 43 years old at his death.

32. Life imprisonment for the murder of Maya Birkan, 59 years old at her death.

33. Life imprisonment for the murder of Tespance Gidawi, 23 years old at her death.

34. Life imprisonment for the murder of Angel Suriani, 45 years old at her death.

35. Life imprisonment for the murder of George Yunaan, 39 years old at his death.

36. Life imprisonment for the murder of Naomi Zaguri , 66 years old at her death.

37. Life imprisonment for the murder of Raaya Daushvili, 41 years old at her death.

38. Life imprisonment for the murder of Ana Shengulutz, 37 years old at her death.

39. Life imprisonment for the murder of Yuleria Karkiyon, 44 years old at her death.

40. Life imprisonment for the murder of Daniel Petkaneh, 34 years old at his death.

41. Life imprisonment for the murder of Marion Grafan, 40 years old at his death.

42. Life imprisonment for the murder of Dimitri Kokorchu, 43 years old at his death.

43. Life imprisonment for the murder of Dominique Lumke, 29 years old at his death.

44. Life imprisonment for the murder of Jiffa Marasya, 39 years old at his death.

45. Life imprisonment for the murder of Imri Ambrose, 52 years old at his death.

46. Life imprisonment for the thirty-six injured in the terror attack at the hitchikers pick-up spot in Ashkelon.

47. Life imprisonment for the fifty injured in the terror attack on bus line 18 that occurred on February 25, 1996.

48. Life imprisonment for the eight injured in the terror attack on bus line 18 that occurred on March 3, 1996.

**All of the sentences, a total of 48 terms of life imprisonment, will run cumulatively in succession.**

**The right to appeal runs for 30 days from today.**

**Issued and announced this day, the 29th of November, 2004, in public and in the presence of the parties.**

| [Signature] | [Signature] | [Signature] |
|---|---|---|
| **Judge** | **Presiding Judge** | **Judge** |

- 6 -

CONFIDENTIAL                              SHATSKY-JD01142-T

# Translator's Certification

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SHABTAI SCOTT SHATSKY, *et al.*,

                          Plaintiffs,                    Case No. 18-cv-12355 (MKV)

v.

THE PALESTINE LIBERATION
ORGANIZATION and THE PALESTINIAN
AUTHORITY,

                          Defendants.

## DECLARATION OF YANIV BERMAN

I, Yaniv Berman, declare pursuant to 28 U.S.C. § 1746, as follows:

1.       I am a professional translator with an M.A. degree in Middle Eastern Studies from the Hebrew University of Jerusalem (Israel).  I read Arabic, Hebrew, and English fluently, and I am qualified to translate from Arabic into English and from Hebrew into English.

2.       I certify that the attached documents are true and accurate translations of the Arabic and/or Hebrew originals with the corresponding Bates numbers.  The translations are labelled with Bates numbers that correspond to the original documents, with the addition of a "-T" at the end to indicate that it is a translation.

3.       To the extent that some of the information in the original documents was not clearly legible, I have translated such information into English to the best of my ability.  Such instances are marked with an asterisk ("[*]").

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated:  July 26, 2021

Yaniv Berman

2

# Original

CONFIDENTIAL

SHATSKY-JD01110



دولة فلســـــــطين

وزارة شؤون الأسرى والمحررين

الإدارة العامة للشؤون الإدارية والمالية

دائرة الأرشيــــــــــف

| 3203 | محمد | عطية | محمود | أبو وردة |
|------|------|------|-------|---------|

ملاحظة هامة: الملف يحتوي على ملفين لأسيرين منفصلين

يُرجى الإنتباه لذلك تلاشياً للخلط فيما بينهما

CONFIDENTIAL

SHATSKY-JD01110

CONFIDENTIAL

SHATSKY-JD01111



№  15801

## TO WHOM IT MAY CONCERN

 **CICR**   This certificate is valid only if the English and Arabic parts match each other

According to the information received from the Israeli Authorities, the International Committee of

the Red Cross certifies that :

Mr:   **MOHAMMAD ATIEH MAHMOUD  ABU-WARDEH**

From :   **HEBRON**                                             ID NO: Redacted**535-9**

Was arrested by the Israeli Authorities on (dd / mm / yyyy) :   **04.11.2002**

He is to date :          Sentenced

Length of sentence / administrative period : life sentence

He/She was released on (dd/mm/yyyy): XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX

08 -09- 2019

**CICR**   هذه الشهادة سارية المفعول فقط في حالة تطابق بياناتها باللغتين العربية والإنجليزية

استنادا إلى المعلومات الواردة من السلطات الإسرائيلية، تشهد اللجنة الدولية للصليب الأحمر بأن:

السيد/ة:_____

من _____ هوية رقم _____Redacted

كان/ت قد اعتقل/ت من قبل السلطات الإسرائيلية في يوم ____ / شهر ____ / سنة ____

وهو/هي في هذا التاريخ : ينتظر المحاكمة _____ محكوم/ة ____ إداري _____

محكوم/ة أو إداري لمدة _____.

وهو/هي أطلق سراحة/ها في يوم ____ / شهر ____ / سنة ____

Date:   **06.03.2005**

التاريخ

Place:   **HEBRON/IT**

المكان

SYLVAIN BEAUCHAMP
ICRC Delegate
توقيع مندوب اللجنة

CONFIDENTIAL

SHATSKY-JD01111

CONFIDENTIAL

SHATSKY-JD01112



320

# TO WHOM IT MAY CONCERN

№ 15801

**CICR**

This certificate is valid only if the English and Arabic parts match each other

According to the information received from the Israeli Authorities, the International Committee of the Red Cross certifies that :

Mr:  MOHAMMAD ATIEH MAHMOUD  ABU-WARDEH

From :  HEBRON

ID NO: Redacted 535-9

Was arrested by the Israeli Authorities on (dd / mm / yyyy) :  04.11.2002

He is to date :   Sentenced

Length of sentence / administrative period : life sentence

He/She was released on (dd/mm/yyyy): XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX



إلى من يهمه الأمر

**CICR**

هذه الشهادة سارية المفعول فقط في حالة تطابق بياناتها باللغتين العربية والإنجليزية

استنادا إلى المعلومات الواردة من السلطات الإسرائيلية، تشهد اللجنة الدولية للصليب الأحمر بأن:

السيد/ة الآنسة  محمد عطية محمود أبو وردة

من  الخليل  هوية رقم  ٥٣٥ Redacted

كان/ت قد إعتقل/ت من قبل السلطات الإسرائيلية في يوم  ٤  / شهر  ١١  / سنة  ٢٠٠٢

وهو/هي في هذا التاريخ : ينتظر المحاكمة _____ محكوم/ة  ✓  إداري _____

محكوم/ة أو إداري لمدة  مدى الحياة

وهو/هي أطلق سراحه/ها في يوم _____ في _____ سنة

**CERTIFIED UPDATE**

I C R C

2 3 -08- 2016

I C R C

International Committee of the Red Cross

SYLVAIN BEAUCHAMP
ICRC Delegate

توقيع مندوب اللجنة

Date:   06.03.2005

التاريخ

Place:  HEBRON/IT

المكان

CONFIDENTIAL

SHATSKY-JD01112

CONFIDENTIAL

SHATSKY-JD01113



## TO WHOM IT MAY CONCERN

№ 15801

3203

**CICR** This certificate is valid only if the English and Arabic parts match each other

According to the information received from the Israeli Authorities, the International Committee of the Red Cross certifies that :

Mr : MOHAMMAD ATIEH MAHMOUD  ABU-WARDEH

From : HEBRON                     ID NO: Redacted 535-9

Was arrested by the Israeli Authorities on (dd / mm / yyyy) :    04.11.2002

He is to date :        Sentenced

Length of sentence / administrative period : life sentence

He/She was released on (dd/mm/yyyy): XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX



إلى من يهمه الأمر

٤٤٩٣٣١

**CICR** هذه الشهادة سارية المفعول فقط في حالة تطابق بياناتها باللغتين العربية والإنجليزية

استنادا إلى المعلومات الواردة من السلطات الإسرائيلية، تشهد اللجنة الدولية للصليب الأحمر بأن:

السيد/ة/الآنسة محمد عطية محمود أبو وردة

من الخليل هوية رقم Redacted ٥٣٩

كان/ت قد إعتقل/ت من قبل السلطات الإسرائيلية في يوم ٤ / شهر ١١ / سنة ٢٠٠٢

وهو/هي في هذا التاريخ : ينتظر المحاكمة _____ محكوم/ة ___ إداري _____

محكوم/ة أو إداري لمدة مدى الحياة

وهو/هي أطلق سراحه/ها في يوم ///// / شهر ///// / سنة /////

Date:  06.03.2005          CERTIFIED UPDATE
التاريخ          1 4 -09- 2014
                International Committee
Place: HEBRON/IT    of the Red Cross
المكان

SYLVAIN BEAUCHAMP
ICRC Delegate
توقيع مندوب اللجنة

CONFIDENTIAL

SHATSKY-JD01113

CONFIDENTIAL

SHATSKY-JD01114



*3203*

 **TO WHOM IT MAY CONCERN**

№  15801

## CICR

This certificate is valid only if the English and Arabic parts match each other

According to the information received from the Israeli Authorities, the International Committee of the Red Cross certifies that :

Mr:  **MOHAMMAD ATIEH MAHMOUD   ABU-WARDEH**

*449331*

From :  **HEBRON**

ID NO: Redacted 535-9

Was arrested by the Israeli Authorities on (dd / mm / yyyy) :  **04.11.2002**

He is to date :  Sentenced

Length of sentence / administrative period : life sentence

He/She was released on (dd/mm/yyyy): XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX



إلى من يهمه الأمر

*449331*

## CICR

هذه الشهادة سارية المفعول فقط في حالة تطابق بياناتها باللغتين العربية والإنجليزية

استنادا إلى المعلومات الواردة من السلطات الإسرائيلية، تشهد اللجنة الدولية للصليب الأحمر بأن:

السيد/ة الآنسة _____ محمد عطية محمود أبو وردة _____

من _____ الخليل _____ هوية رقم ٩٣٥٢٠ Redacted _____

كان/ت قد إعتقل/ت من قبل السلطات الإسرائيلية في يوم ٤ / شهر ١١ / سنة ٢٠٠٢

وهو/هي في هذا التاريخ : ينتظر المحاكمة _____ محكوم/ة ___ إداري _____

محكوم/ة أو إداري لمدة _____ مدى الحياة _____

وهو/هي أطلق سراحة/ها في يوم ///// / شهر ///// / سنة /////

Date:  06.03.2005

التـاريـخ

Place:  HEBRON/IT

المكـان

CERTIFIED
22-11-2012
International Committee
of the Red Cross

SYLVAIN BEAUCHAMP
ICRC Delegate

توقيع مندوب اللجنة

P.P BARBARA LECO

CONFIDENTIAL

SHATSKY-JD01114

CONFIDENTIAL

SHATSKY-JD01115



3203

**TO WHOM IT MAY CONCERN**

№ 15801

**This certificate is valid only if the English and Arabic parts match each other**

According to the information received from the Israeli Authorities, the International Committee of the Red Cross certifies that :

Mr:   **MOHAMMAD ATIEH MAHMOUD   ABU-WARDEH**

From :   **HEBRON**                           ID NO: Redacted535-9

Was arrested by the Israeli Authorities on (dd / mm / yyyy) :     **04.11.2002**

He is to date :          Sentenced

Length of sentence / administrative period : life sentence

He/She was released on (dd/mm/yyyy): XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX



إلى من يهمه الأمر

هذه الشهادة سارية المفعول فقط في حالة تطابق بياناتها باللغتين العربية والإنجليزية

استنادا إلى المعلومات الواردة من السلطات الإسرائيلية، تشهد اللجنة الدولية للصليب الأحمر بأن:

السيد/ة الآنسة ـــــــــــــــــ محمد عطية محمود أبو وردة

من ـــــــــ الخليل ـــــــــ هوية رقم ٩ ٥ ٣ Redacted ـــــــــ

كان/ت قد إعتقل/ت من قبل السلطات الإسرائيلية في يوم ـــ / شهر ١١ / سنة ٢٠٠٢

وهو/هي في هذا التاريخ : بنتظر المحاكمة ـــــــ محكوم/ة ـــــ إداري ـــــ

محكوم/ة أو إداري لمدة ـــــ مدى الحياة ـــــ

وهو/هي أطلق سراحه/ها في يوم ـــ / شهر ـــ / سنة ـــ

Date:  **06.03.2005**

التـاريـخ

Place:  **HEBRON/IT**

المكـان

**CERTIFIED UPDATE**

0 ? -10- 2011

International Committee
of the Red Cross

SYLVAIN BEAUCHAMP
ICRC Delegate

توقيع مندوب اللجنة

CONFIDENTIAL

SHATSKY-JD01115

CONFIDENTIAL

SHATSKY-JD01116



Palestinian National Authority
Ministry of Detainees & Freed
Detainees Affair
Hebron

السلطة الوطنية الفلسطينية
وزارة شؤون الأسرى والمحررين
مديرية الخليل

استمارة الأسير الرئيسية

| رقم الاستماره | |
| تاريخ تعبئة الاستماره | 2011/3/27 | المديرية/فرع الوزارة: | الخليل |

٤٤٩٣٣١

1. المعلومات الرئيسيه للاسير:-

| رقم الهويه: (تسع خانات) | 9 | 5 | 3 | 5 |
| الاسم الرباعي: | | | | Redacted |
| | اسم العائله | اسم الجد | اسم الاب | الاسم الاول |
| اسم الام: | |
| الجنس: ◉ذكر ◯انثى | |
| تاريخ الميلاد: | Redacted |
| مكان الولاده: | |
| المؤهل العلمي: ◯أمي ◯الاساسيه ◯ثانوي ◯دبلوم ◉جامعي ◯دراسات عليا | |
| المهنه قبل الاسر: | |
| التنظيم: | |
| تاريخ الاسر: | 2004/11/4 |
| مكان الاعتقال: | |
| الوضع الاعتقالي: ◯موقوف ◉محكوم ◯محرر ◯اداري ◯اخري | |
| في حالة محكوم مدة الحكم حسب شهادة الصليب | يوم | شهر | سنه | تاريخ الافراج المتوقع حسب قرار الحكم | اليوم | الشهر | سنه |
| العنوان الدائم: المحافظة | الخليل | التجمع السكاني | Redacted |
| ملاحظات: | |

2- بيانات الاعتقالات السابقه:
عدد مرات الاعتقالات السابقه:------فقط المثبت بشهادة صليب وبتسلسل زمني من الأحدث الى الاقدم.

| الرقم | تاريخ الاعتقال | نوع الاعتقال | تاريخ الافراج | مدة الافراج يوم شهر سنه | ملاحظات |
|---|---|---|---|---|---|
| 1- | | | | | |
| 2- | | | | | |
| 3- | | | | | |
| 4- | | | | | |
| 5- | | | | | |

Ramallah, P.O. Box 2105
Tel: 022226423 02-2213993
Hebron/wad altofah st –almaha building
Tel: 02-2226423 Fax: 02-2213993
E-mail: asarehb@palnet.edu

رام الله ص.ب 2105
تلفون: 2226423-2213993
مديرية الخليل –شارع واد التفاح-عمارة المها
تلفون:02-2226423 فاكس: 2213993

CONFIDENTIAL

SHATSKY-JD01116

CONFIDENTIAL

SHATSKY-JD01117

بسم الله الرحمن الرحيم

Palestinian National Authority
Ministry of Detainees & Freed
Detainees Affair
Hebron

السلطة الوطنية الفلسطينية
وزارة شؤون الأسرى والمحررين
مديرية الخليل

3- بيانات الوضع الاجتماعي :

| | | | | | الحاله الاجتماعيه : |
|---|---|---|---|---|---|
| ○ أرمل | ○ مطلق | ○ متزوج | ✓ أعزب | | |

تعبئة بيانات الزوج/ ة والابناء

| | تاريخ عقد الزواج | Redacted | ٩ ٤ ٩ ٢ | رقم هوية الزوج/ة : |
|---|---|---|---|---|

اسم الزوج /ة : نور ارهاد ابو كنا فل ابودودم

عدد الاولاد : ١

بيانات الابناء من الزوجة الاولى :( الابناء الذكور اقل من 18 سنه , والبنات غير متزوجات بغض النظر عن اعمارهن)

| المؤهل العلمي | الحاله الاجتماعيه | تاريخ الميلاد Redacted | الاسم | الرقم |
|---|---|---|---|---|
| | | ٢٠٠٨ | عرث | 1 |
| | | | | 2 |
| | | | | 3 |
| | | | | 4 |
| | | | | 5 |
| | | | | 6 |
| | | | | 7 |
| | | | | 8 |
| | | | | 9 |

4- بيانات الوكيل " المستفيد"

Redacted

| | | ٩ ٩ ٤ ٤ | رقم هوية"المستفيد" |
|---|---|---|---|

اسم الوكيل "المستفيد": نور ارهاد ابوكنسى الندودم

| | تاريخ الوكالة: / / |
| زوجت | صلة القرابه: |
| | مدة سريان الوكاله: |
| | فرع البنك: |

البنك
رقم الحساب: Redacted / Redacted
رقم الهاتف الارضي:
العنوان الدائم للمستفيد: المحافظه: ١ لخليل    رقم الهاتف النقال: [Redacted]
ملاحظات: Redacted    التجمع السكاني: [Redacted]

ملاحظات مقدم الطلب:
اقرار: انا الموقع ادناه اقر واشهد بان كافة المعلومات الوارده في الطلب صحيحه واتحمل مسؤوليتها
توقيع مقدم الطلب: زوار

2

Ramallah, P.O. Box 2105
Tel: 022226423 02-2213993
Hebron/wad altofah st –almaha building
Tel: 02-2226423 Fax: 02-2213993
E-mail: asarehb@palnet.edu

رام الله ص.ب 2105
تلفون: 2226423-2213993
مديرية الخليل –شارع واد التفاح- عمارة المها
تلفون: 2226423-02 فاكس: 2213993

CONFIDENTIAL
SHATSKY-JD01117

CONFIDENTIAL

SHATSKY-JD01118

بسـم الله الرحمن الرحيـم

Palestinian National Authority
Ministry of Detainees & Freed
Detainees Affair
Hebron

السلطـة الوطنيـة الفلسطينيـة

وزارة شـؤون الأسـرى والمحرريـن

مديريـة الخليل

5 - للاستعمال الرسمي: -

| | | |
|---|---|---|
| | | اسم المرشد/ اسم الموظف |
| | | ملاحظات المرشد/ الموظف |
| الختم والتوقيع | 03 /12 /11 20 | التاريخ: |
| | | اسم مدير المديرية: |
| الختم والتوقيع: | | ملاحظـــــات مدير المديرية: |
| | | التاريخ: |

المستندات المرفقة ضع اشاره بجانب المستندات المرفق ( اعتماد ومصادقة مدير المديرية)

| | | | | |
|---|---|---|---|---|
| صورة هوية المستفيد | ○ | صورة هوية الاسير/ المحرر | ○ | |
| لائحة الاتهام | ○ | شهادات الصليب الاحمر | ○ | |
| صورة بطاقة الحساب البنكي | ○ | قرار الحكم | ○ | |
| صور شهادات الميلاد للابناء | ○ | صورة عقد الزواج مصدقة طبق الاصل | ○ | |
| امور اخرى (حدد) | ○ | ملحق اضافة زوجه/ زوجات | ○ | |

6 - الاعتماد والمصادقة: -

| | |
|---|---|
| ○ اصادق على اعتماد استمارة الاسير (مطابقة للانظمه والقوانين) | 1 - اعتماد شؤون لاسرى: |
| | اسم الموظف المعتمد: |
| الختم والتوقيع          /     / | التاريخ: |
| ○ لا اصادق على اعتماد استمارة الاسير | |
| | المبررات والاسباب: |
| ○ اصادق على اعتماد استمارة الاسير (مطابقة للانظمه والقوانين) | 2 - اعتماد الشؤون القانونيه: |
| | اسم الموظف المعتمد: |
| الختم والتوقيع          /     / | التاريخ: |
| ○ لا اصادق على اعتماد استمارة الاسير | |
| | المبررات والاسباب: |

Ramallah, P.O. Box 2105
Tel: 022226423 02-2213993
Hebron/wad altofah st –almaha building
Tel: 02-2226423 Fax: 02-2213993

E-mail: asarehb@palnet.edu

رام الله ص.ب 2105
تلفون: 2226423-022213993
مديرية الخليل - شارع واد التفاح - عمارة المها
تلفون: 02-2226423 فاكس: 2213993

CONFIDENTIAL

SHATSKY-JD01118

CONFIDENTIAL                                                    SHATSKY-JD01119



## TO WHOM IT MAY CONCERN                                № 15801

CICR   This certificate is valid only if the English and Arabic parts match each other

According to the information received from the Israeli Authorities, the International Committee of the Red Cross certifies that :

Mr:   **MOHAMMAD ATIEH MAHMOUD  ABU-WARDEH**

From :   **HEBRON**                          ID NO: Redacted535-9

Was arrested by the Israeli Authorities on (dd / mm / yyyy) :   **04.11.2002**

He is to date :        Sentenced

Length of sentence / administrative period : life sentence

He/She was released on (dd/mm/yyyy): XXXXXXXXXXXXXXXXXXXXXXXXXXXXXX



CICR

هذه الشهادة سارية المفعول فقط في حالة تطابق بياناتها باللغتين العربية والإنجليزية

إلى من يهمه الأمر

استنادا إلى المعلومات الواردة من السلطات الإسرائيلية، تشهد اللجنة الدولية للصليب الأحمر بأن:

السيد/ة المذكور   محمد عطية محمود أبو وردة

من   الخليل   هوية رقم ٢٥٩ Redacted

كان/ت قد إعتقل/ت من قبل السلطات الإسرائيلية في يوم ٤ / شهر ١١ / سنة ٢٠٠٢

وهو/هي في هذا التاريخ : ينتظر المحاكمة ___ محكوم/ة ___ إداري ___

محكوم/ة أو إداري لمدة صرى، الكمالى

وهو/هي أطلق سراحه/ها في يوم ____ / شهر ____ / سنة ____



Date:   06.03.2005

التاريخ

Place:  HEBRON/IT

المكان

SYLVAIN BEAUCHAMP
ICRC Delegate
توقيع مندوب اللجنة

P.P. MATTEO BENATTI

CONFIDENTIAL                                    SHATSKY-JD01119

CONFIDENTIAL

SHATSKY-JD01120

אל-קפ

| צבא | הגנה | לישראל |
|---|---|---|

| בבית | המשפט | הצבאי | תיק ביחמ"ש: 02/ ___ |
| במושבו | באזוריים | תיק תביעה: 993/02 |
| בפני | הרכב | תיק פ.א.: 4274/02 |

<u>במשפט שבין התובע הצבאי – הנאשים</u>

- <u>נגד</u> -

מחמוד עטיה מחמוד אבו-ורדה

ת.ז. , יליד 76 ~~Redacted~~ , תושב מ.פ. אלפוואר - חברון

עצור מיום 4/11/02

<u>הנאשם</u>

<u>כתב-אישום</u>

<u>הנאשם הנ"ל מואשם בזאת בביצוע העבירות הבאות:</u>

<u>פרט ראשון:</u>

<u>מהות העבירה:</u> חברות בהתאחדות בלתי מותרת, עבירה לפי ס' 85(1)(א) לתקנות ההגנה (שעת חירום), 1945.

<u>פרטי העבירה:</u> הנאשם הנ"ל, בהיותו באזור, מאז השנים 1992-1993 או מועד סמוך לכך ועד ליום מעצרו היה חבר בהתאחדות בלתי מותרת.

דהיינו, במועד האמור לעיל גויס הנאשם ע"י אבראהים צראחנה כחבר לארגון החמא"ס, שהינו התאחדות בלתי מותרת. במסגרת חברותו בארגון פעל הנאשם כמתואר בכתב האישום.

חברותו של הנאשם בארגון נמשכה עד ליום מעצרו.

<u>פרט שני:</u>

<u>מהות העבירה:</u> חברות בהתאחדות בלתי מותרת, עבירה לפי ס' 85(1)(א) לתקנות ההגנה (שעת חירום), 1945.

<u>פרטי העבירה:</u> הנאשם הנ"ל, בהיותו באזור, מאז שנת 1993 או מועד סמוך לכך ועד ליום מעצרו היה חבר בהתאחדות בלתי מותרת.

דהיינו, בתקופה האמור לעיל, במהלך לימודיו במכללת "דאר אלמועלמין" ברמאללה, היה הנאשם חבר בתנועה ח"יכותלה איסלמיה", שהינה התאחדות בלתי מותרת. במסגרת חברותו זו נשא הנאשם משרות בתנועה כמתואר בפרטי האישום השלישי והרביעי.

SHATSKY-JD01120

CONFIDENTIAL

SHATSKY-JD01121

<div dir="rtl">

<u>פרט שלישי:</u>

<u>מהות העבירה:</u> נשיאת משרה בהתאחדות בלתי מותרת, עבירה לפי ס' 85(1)(ב) לתקנות ההגנה (שעת חירום), 1945.

<u>פרטי העבירה:</u> הנאשם הנ"ל, בחיותו באזור, מאז שנת 1993 או מועד סמוך לכך ועד לשנת 1996 או מועד סמוך לכך, במסגרת חברותו בי"כותלה איסלמיהי", נשא משרה מטעם התאחדות בלתי מותרת.

דהיינו, בתקופה האמורה לעיל כיהן הנאשם כחבר בועדת התרבות מטעם תנועת הי"כותלה איסלמיהי", שהינה התאחדות בלתי מותרת. במסגרת זו ארגן הנאשם אירועים שונים, תהלוכות ועצרות בשם התנועה.

<u>פרט רביעי:</u>

<u>מהות העבירה:</u> נשיאת משרה בהתאחדות בלתי מותרת, עבירה לפי ס' 85(1)(כ) לתקנות ההגנה (שעת חירום), 1945.

<u>פרטי העבירה:</u> הנאשם הנ"ל, בחיותו באזור, במהלך שנת 1996 עד למעצרו ע"י חרש"פ, במסגרת חברותו בי"כותלה איסלמיהי", נשא משרה מטעם התאחדות בלתי מותרת.

דהיינו, בתקופה האמורה לעיל כיהן הנאשם כאמיר ח"כותלה איסלמיהי", שהינה התאחדות בלתי מותרת. כהונתו זו של הנאשם נקטעה עם מעצרו ע"י חרש"פ ביום 4.3.96.

<u>פרט חמישי:</u>

<u>מהות העבירה:</u> גרימת מוות בכוונה, עבירה לפי ס' 51(א) לצו בדבר הוראות ביטחון, התש"ל-1970 + ס' 14 לצו בדבר כללי אחריות לעבירה.

<u>פרטי העבירה:</u> הנאשם הנ"ל, בחיותו באזור, ביום 25.2.02, גרם בכוונה ביחד עם אחרים למותו של אדם.

דהיינו, בעוזה, סמוך לאחר מותו של יחיא עיאש, ראש "גדודי עז א-דין אלקסאם" שחינם הזרוע הצבאית של ארגון החמא"ס, פנה יורשו בתפקיד, מחמד דיף, לחסן ע"ר רחמאן חסן סלאמה, חבר בארגון האמור, והודיע לו כי בכוונות הארגון לבצע פיגועי תופת בישראל כנקמה על הריגתו של יחיא עיאש ע"י כוחות צה"ל. לאחר שחסן נתן הסכמתו לכך, מסר לו מחמד כי ישלח מעזה לישראל חוליית בת שני חברים, אבו-האני וסוהיל, שתצוייד בטלפון סלולרי, על מנת שתגנוב רכב ותכין מקום מסתור בתוך פרדס באשדוד. לכשיסיימו את משימתם ייצרו עמו קשר באמצעות הטלפון הסלולרי ואז יצא לקראתם הוא, חסן, כשעמו שלוש מזוודות שיכילו 13 ק"ג חומר נפץ מסוג T.N.T. כעבור שבוע, ולאחר שהודיעו חברי החוליה למחמד דיף כי ביצעו את משימתם בהצלחה, צייד מחמד את חסן במזוודות ובהן חומר חנפצ, בתיק קטן ובו 6 רימוני יד ושני אקדחים, בטלפון סלולרי ובסכום של 1,500 דינאר. מחמד אף מסר לחסן את שמותיהם של אכרם קואסמה ואימן אלראזם, חברי ארגון החמא"ס

</div>

SHATSKY-JD01121

CONFIDENTIAL

SHATSKY-JD01122

המתגוררים בירושלים, אשר אומנו על-ידו בשימוש בנשק בעזה, ומספרי הטלפון
של איימן, חראה לו את תמונותיהם על מנת שיוכל לזהותם, והודיע לו כי הללו
מוכנים לפעולה וכי הם מצפים לשיחת טלפון ממנו. חסן סלאמה נטל את
הכבודה האמורה, חסתנ׳נ׳ו דרך הגדר המקיפה את שטחי הרשות הפלסטינית
לתוך ישראל וטלפן לחברי החוליה שהיו מצויים באשדוד על מנת שאלו יגיעו
לאוסף. משהגיעו חשניים למקום המפגש, העמיסו את מזוודות חומר הנפץ
לרכב שגנבו והסיעו את חסן לפרדס באשדוד. חסן סלאמה חותיר את מזוודות
חומר הנפץ בידי אבו-האני וסוהיל בפרדס באשדוד ועשה דרכו לגדה המערבית,
לחברון, משם הובל, לבקשתו, לרמאללה ע״י סלימאן קואסמה, חבר חמא״ס
המוביל לחסן מתקופת שהותם יחדיו בכלא בישראל. חסן עשה דרכו למעונות
הסטודנטים באבו-דיס, יצר קשר עם איימן ראמה וביקשו לפוגשו ביחד עם
אכרם קואסמה במתת המכללה. עוד באותו לילה נפגשו השלושה וסיכמו כי
למחרת בערב ייסעו ברכב לאשדוד לפרדס באשדוד ויטלו עמם
את חומר נפץ ואשר האמלי״ח שהביא עמו חסן מעזה. למחרת היום, סמוך לשעה
18:30, עשו השלושה את דרכם לפרדס באשדוד ברכב מסוג נולדר בצבע לבן אשר
סיפקו איימן ואכרם, נטלו עמם את מזוודות חומר הנפץ ואת הנפץ הקטן
שהכיל את האמלי״ח ונסעו לירושלים, שם חסתירום במסגר המצוי בשכונת ראס
אלעמוד. למחרת בבוקר הסיעו אכרם ואיימן את חסן לרמאללה ונפרדו ממנו,
לא לפני שסיכמו כי באותו ערב יעבירו השניים את מזוודות חומר הנפץ
לרמאללה. סמוך לשעה 18:30, באזור בית החולים ברמאללה, פגש חסן סלאמה
באכרם ואיימן שהביאו עמם את מזוודות חומר הנפץ, נטלן מידיהם והורה להם
לתור אחר אתרים מתאימים לביצוע הפיגועים המתוכננים בישראל, כאלה אשר
ימותו בהם חובה ורבה אזרחים ישראלים. חסן סיכם עם השניים כי מעתה ייפגשו כל
שבוע במועד ובמקום מסויים, על מנת שיעדכנם בהתפתחויות. לאחר מכן שבו
השניים לירושלים ואלו חסן עשה דרכו עם מזוודות חומר הנפץ, לבית המטונור
ברמאללה של מוחי א-דין שריף, פעיל בכיר ב״גזוודי עז א-דין אלקסאם״
המבוקש לישראל, שם הסתירן.

לאחר מכן, ביום שבת 17.2.96, נפגש חסן סלאמה במכללת דאר אלמועלמין
ברמאללה עם עבד רבו שיח׳ אל-עיד, חבר חמא״ס המוכר לחסן מתקופת
שהותם יחדיו בכלא בישראל, ומסר לו כי הוא זקוק לאנשים המוכנים לבצע
פיגוע התאבדות. עבד רבו סיפר לחסן כי הנאשם יוכל לסייע לו בעניין והשניים
סיכמו כי ייפגשו שנית ביום שני הקרוב, על מנת שחסן יוכל לשוחח בעניין עם
הנאשם.

למחרת, יום ראשון 18.2.96, פנה עבד רבו אל הנאשם, סיפר לו כי חברו, אדם
שהוא נוטל בו אמון מוחלט, זקוק לאדם נוסף שיפעל עמו פעולות צבאית
במסגרת ״גדודי עז א-דין אלקסאם״, וחציע לו להצטרף אליו. הנאשם ביקש
לשקול את ההצעה, וכעבור כמצית השעה השיב לעבד רבו כי ברצונו להפגש עם
חברו. עוד באתו היום, נפגש חסן סלאמה עם איימן ואכרם ואלו מסרו לחסן כי
אוטובוס קו 18 בירושלים וצומת אשקלון מתאימים לביצוע פיגועי התאבדות

CONFIDENTIAL

CONFIDENTIAL

SHATSKY-JD01123

בהם. אכרם חסיע את חסן לצומת אשקלון על מנת שיוכל לבחון בעצמו את
התאמת חמקום לצרכיהם וזה נתן אישורו לביצוע פיגוע התאבדות במקום.
בשעות הלילה שבו חשניים לירושלים, שם לן חסן בביתו של איימן.

למחרת בבוקר, יום שני 19.2.96, הורה חסן לאכרם ואיימן לשכור בית באבו-
דיס בדחיפות, על מנת שיוכל לחביא אליו את המפגשים המתאבדים שיגיעו,
וסיבכו עמם כי יפגשום ביום רביעי סמוך לבית חחולים ברמאללה. לאחר מכן
חוביל אכרם את חסן לרמאללה.

סמוך לשעוה 12:00 נפגש חסן עם עבד רבו והנאשם במסגד זייד כותום
ברמאללה, כפי שסוכם בין חסן לעבד רבו. לאחר שעבד רבו חותיר את חשניים
ביחידות, · הציע חסן לנאשם לפעול פעילות צבאית במסגרת
"גדודי עז א-דין אלקאסם". הנאשם חשיב לחסן כי הוא תומך נלהב בדרכו של
הארגון, אך עקב מעמסת לימודיו אין ביכולתו לסייע לו בעצמו בפעילות
הצבאית. חסן שאל את חנאשם האם ביכולתו לגייס שני אנשים לביצוע פיגוע
התאבדות, וזה השיבו כי יפעל לשם כך. השניים קבעו מפגש נוסף ביום רביעי
בבוקר במסגד, על מנת שהנאשם יוכל לעדכן את חסן בדבר התקדמותו בביצוע
המשימה.

עוד באותו היום פנה חנאשם לאבראחים צראחנה ולמג'די מחמוד מחמוד אבו-
ורדה וחציע לחם לבצע פיגוע התאבדות בשם "גדודי עז א-דין אלקאססי".
השניים נתנו הסכמתם לכך.

ביום רביעי, 21.2.96, במקום ובמועד המיועדים נפגשו השניים. הנאשם עדכן את
חסן בדבר גיוסם של מג'די אבו-ורדה ואבראחים צראחנה על-ידו לביצוע פיגועי
התאבדות המתוכננים, וסוכם כי הוא יוביל את השניים למפגש עם חסן
למחרת היום במסגד. בשעות הערב נפגש חסן עם אכרם ואיימן סמוך לבית
חחולים ברמאללה, בהתאם לסיכום עמם, ועודכן על-ידם כי שכרו בית באבו-
דיס, כפי שנתבקשו על-ידו. חסן סיפר לשניים כי איתר שני מפגעים מתאבדים
לביצוע הפיגועים המתוכננים והשלושה החליטו כי הפיגועים באוטובוס קו 18
ובצומת אשקלון יצאו אל הפועל ביום ראשון הקרוב, 25.2.96. לאחר מכן הודיע
חסן לשניים כי ימתין לחם ביום שישי ברמאללה עם המפגעים המתאבדים
וחורה לחם לאוספם ולחובילים לבית שכרו באבו-דיס.

ביום חמישי, 22.2.96, חוביל הנאשם את מג'די אבו-ורדה ואבראחים צראחנה
למפגש עם חסן סלאמח במסגד ברמאללה, והותיר אותם לשוחח ביחידות. חסן
הודיע לשניים כי יפגשם ביום שישי לאחר תפילת הצחריים במסגד ברמאללה.

ביום שישי, 23.2.96, במקום ובמועד המיועדים, פגש חסן בשניים והובילם לבית
המסתורו שמשם את מומי א-דין שריף ברמאללה. בשעות הערב שלף חסן את
שלוש מזווודות חומר חנפץ, חוציא מתוכן כ-3 ק"ג חומר נפץ, כך שנותרו בהן 10
ק"ג T.N.T, ויצא בשעות הערב ביחד עם מג'די ואבראחים כשהוא מצוייד בתיקי
הנשיאה ובחם מטעני החבלה, בשני האקדחים וב-5 מתוך שש רימוני חיד
שקיבל ממוחמד דיף, לאווו בית החולים ברמאללה. שם נפגשו השלושה באיימן

CONFIDENTIAL

SHATSKY-JD01123

CONFIDENTIAL

SHATSKY-JD01124

ואכרם שהגיעו למקום במכונית סובארו, והובילו את השלושה, על כבודהם, לבית ששכרו באבו-דיס.

למחרת, יום שבת 24.2.96 תתקין חסן סלאמה את שני מטעני החבלה מ-10 ק"ג כ.נ.T, טוללה וכזרוריות מותכך רבית שישמשו כרטס לתהגברת התהרג, הניחם בתוך שני תיקי נשיאה) וחסביר למגידי ואלאבראהאוה כיצד להפעילם. לאחר מכן מסרו איימן ואכרם למגידי, שיועד לבצע את פיגוע התהתאבדות באוטובוס קו 18 בירושלים, בגדים חדשים ולאבראהים, שיועד לבצע את פיגוע התהתאבדות בצומת אשקלון, מדי צה"ל, והשעניים נותרו ללון את הלילה בבית השכור באבו-דיס, בעוד שחסן חוסע לרמאללה ע"י אכרם, לא לפני שקבע פגישה בעיר עם אכרם ואיימן ביום רביעי, 28.2.96.

ביום ראשון, 25.2.96, סמוך לשעה 6:45 בבוקר, ברחוב יפו פינת רח' שרי ישראל בירושלים, פוצץ מגידי אבו-ורדה את מטען החבלה בעת שנסע בתוך אוטובוס אגד קו 18 בירושלים. כתוצאה מכך נהרג מגידי ונגרם מותו של יונתן ברנע ז"ל. יונתן חיה חיה בן 20 במותו.

במקביל, סמוך לשעה 7:30 בבוקר, בקרבת הטרמפיאודה בצומת אשקלון בכיוון דרום, פוצץ אבראהים וראהנא, שהיה לבוש במדי צה"ל, את מטען החבלה שנשא עמו. כתוצאה מכך נהרג אבראהים.

<u>פרט שישי:</u>

<u>מהות העבירה:</u> גרימת מוות בכוונה, עבירה לפי ס' 51(א) לצו בדבר הוראות ביטחון, התש"ל-1970 + ס' 14 לצו בדבר כללי אחריות לעבירה.

<u>פרטי העבירה:</u> הנאשם חנ"ל, בהיותו באזור, ביום 25.2.02, בנסיבות המתוארות בפרט האישום החמישי, גרם בכוונה ביחד עם אחרים למותו של אדם.

דהיינו, במועד האמור לעיל גרם הנאשם בכוונה במעשיו האמורים בפרט האישום החמישי, למותו של איציק גבי ז"ל, בן 16 במותו. איציק ז"ל מצא את מותו כתוצאה מפיצוץ מטען חבלה ע"י מגידי אבו-ורדה באוטובוס אגד קו 18 בירושלים.

<u>פרט שביעי:</u>

<u>מהות העבירה:</u> גרימת מוות בכוונה, עבירה לפי ס' 51(א) לצו בדבר הוראות ביטחון, התש"ל-1970 + ס' 14 לצו בדבר כללי אחריות לעבירה.

<u>פרטי העבירה:</u> הנאשם חנ"ל, בהיותו באזור, ביום 25.2.02, בנסיבות המתוארות בפרט האישום החמישי, גרם בכוונה ביחד עם אחרים למותו של אדם.

דהיינו, במועד האמור לעיל גרם הנאשם בכוונה במעשיו האמורים בפרט האישום החמישי, למותו של משה ראובן ז"ל, בן 19 במותו. משה ז"ל מצא את מותו כתוצאה מפיצוץ מטען חבלה ע"י מגידי אבו-ורדה באוטובוס אגד קו 18 בירושלים.

CONFIDENTIAL

SHATSKY-JD01124

CONFIDENTIAL

SHATSKY-JD01125

<div dir="rtl">

**פרט שמיני:**

**מהות העבירה:** גרימת מוות בכוונה, עבירה לפי ס' 51(א) לצו בדבר הוראות ביטחון, התש"יל-
1970 + ס' 14 לצו בדבר כללי אחריות לעבירה.

**פרטי העבירה:** הנאשם הנ"ל, בהיותו באזור, ביום 25.2.02, בנסיבות המתוארות בפרט האישום
החמישי, גרם בכוונה ביחד עם אחרים למותו של אדם.
דהיינו, במועד האמור לעיל גרם הנאשם בכוונה במעשיו האמורים בפרט
האישום החמישי, למותו של איליה נימוייטין ז"יל, בן 19 במותו. איליה ז"יל מצא
את מותו כתוצאה מפיצוץ מטען החבלה ע"יי מגידי אבו-ורדה באוטובוס אגד קו
18 בירושלים.

**פרט תשיעי:**

**מהות העבירה:** גרימת מוות בכוונה, עבירה לפי ס' 51(א) לצו בו'בר חוראות ביטחון, חתש"יל-
1970 + ס' 14 לצו בדבר כללי אחריות לעבירה.

**פרטי העבירה:** הנאשם הנ"ל, בהיותו באזור, ביום 25.2.02, בנסיבות המתוארות בפרט האישום
החמישי, גרם בכוונה ביחד עם אחרים למותו של אדם.
דהיינו, במועד האמור לעיל גרם הנאשם בכוונה במעשיו האמורים בפרט
האישום החמישי, למותו של שרון חנוכה ז"יל, בן 20 במותו. שרון ז"יל מצא את
מותו כתוצאה מפיצוץ מטען החבלה ע"יי מגידי אבו-ורדה באוטובוס אגד קו 18
בירושלים.

**פרט תשיעי:**

**מהות העבירה:** גרימת מוות בכוונה, עבירה לפי ס' 51(א) לצו בדבר הוראות ביטחון, התש"יל-
1970 + ס' 14 לצו בדבר כללי אחריות לעבירה.

**פרטי העבירה:** הנאשם הנ"ל, בהיותו באזור, ביום 25.2.02, בנסיבות המתוארות בפרט האישום
החמישי, גרם בכוונה ביחד עם אחרים למותו של אדם.
דהיינו, במועד האמור לעיל גרם הנאשם בכוונה במעשיו האמורים בפרט
האישום החמישי, למותו של וייליאם (יצחק) וויינשטין ז"יל, בן 54 במותו. ויליאם
ז"יל מצא את מותו כתוצאה מפיצוץ מטען החבלה ע"יי מגידי אבו-ורדה
באוטובוס אגד קו 18 בירושלים.

**פרט עשירי:**

**מהות העבירה:** גרימת מוות בכוונה, עבירה לפי ס' 51(א) לצו בדבר הוראות ביטחון, התש"יל-
1970 + ס' 14 לצו בו'בר כללי אחריות לעבירה.

**פרטי העבירה:** הנאשם הנ"ל, בחיותו באזור, ביום 25.2.02, בנסיבות המתוארות בפרט האישום
החמישי, גרם בכוונה ביחד עם אחרים למותו של אדם.
דהיינו, במועד האמור לעיל גרם הנאשם בכוונה במעשיו האמורים בפרט
האישום החמישי, למותו של מירב נחום ז"יל, בת 19 במותה. מירב ז"יל מצאה
את מותה כתוצאה מפיצוץ מטען החבלה ע"יי מגידי אבו-ורדה באוטובוס אגד קו
18 בירושלים.

</div>

6

CONFIDENTIAL

SHATSKY-JD01126

<div dir="rtl">

**פרט אחד-עשר:**

**מהות העבירה:** גרימת מוות בכוונה, עבירה לפי סי' 51(א) לצו בדבר הוראות ביטחון, התשי"ל-
1970 + סי' 14 לצו בדבר כללי אחריות לעבירה.

**פרטי העבירה:** הנאשם הנ"ל, בהיותו באזור, ביום 25.2.02, בנסיבות המתוארות בפרט האישום
החמישי, גרם בכוונה ביחד עם אחרים למותו של אדם.
דהיינו, במועד האמור לעיל גרם הנאשם בכוונה במעשיו האמורים בפרט
האישום החמישי, למותו של גד שילוני ז"ל, בן 22 במותו. גד ז"ל מצא את מותו
כתוצאה מפיצוץ מטען החבלה ע"י נגדי׳ אבו-ורדה באוטובוס אגד קו 18
בירושלים

**פרט שנים-עשר:**

**מהות העבירה:** גרימת מוות בכוונה, עבירה לפי סי' 51(א) לצו בדבר הוראות ביטחון, התשי"ל-
1970 + סי' 14 לצו בדבר כללי אחריות לעבירה.

**פרטי העבירה:** הנאשם הנ"ל, בהיותו באזור, ביום 25.2.02, בנסיבות המתוארות בפרט האישום
החמישי, גרם בכוונה ביחד עם אחרים למותו של אדם.
דהיינו, במועד האמור לעיל גרם הנאשם בכוונה במעשיו האמורים בפרט
האישום החמישי, למותו של גבריאל קראוס ז"ל, בן 24 במותו. גבריאל ז"ל מצא
את מותו כתוצאה מפיצוץ מטען החבלה ע"י נגדי׳ אבו-ורדה באוטובוס אגד קו
18 בירושלים

**פרט שלושה-עשר:**

**מהות העבירה:** גרימת מוות בכוונה, עבירה לפי סי' 51(א) לצו בדבר הוראות ביטחון, התשי"ל-
1970 + סי' 14 לצו בדבר כללי אחריות לעבירה.

**פרטי העבירה:** הנאשם הנ"ל, בהיותו באזור, ביום 25.2.02, בנסיבות המתוארות בפרט האישום
החמישי, גרם בכוונה ביחד עם אחרים למותו של אדם.
דהיינו, במועד האמור לעיל גרם הנאשם בכוונה במעשיו האמורים בפרט
האישום החמישי, למותו של אנטולי קושנירוב ז"ל, בן 36 במותו. אנטולי ז"ל
מצא את מותו כתוצאה מפיצוץ מטען החבלה ע"י נגדי׳ אבו-ורדה באוטובוס
אגד קו 18 בירושלים.

**פרט ארבעה-עשר:**

**מהות העבירה:** גרימת מוות בכוונה, עבירה לפי סי' 51(א) לצו בדבר הוראות ביטחון, התשי"ל-
1970 + סי' 14 לצו בדבר כללי אחריות לעבירה.

**פרטי העבירה:** הנאשם הנ"ל, בהיותו באזור, ביום 25.2.02, בנסיבות המתוארות בפרט האישום
החמישי, גרם בכוונה ביחד עם אחרים למותו של אדם.
דהיינו, במועד האמור לעיל גרם הנאשם בכוונה במעשיו האמורים בפרט
האישום החמישי, למותו של גינה קושנירוב ז"ל, בת 37 במותה. גינה ז"ל מצאה
את מותה כתוצאה מפיצוץ מטען החבלה ע"י נגדי׳ אבו-ורדה באוטובוס אגד קו
18 בירושלים.

</div>

CONFIDENTIAL

CONFIDENTIAL

SHATSKY-JD01127

<div dir="rtl">

**פרט חמישה-עשר:**

**מהות העבירה:** גרימת מוות בכוונה, עבירה לפי ס' 51(א) לצו בדבר הוראות ביטחון, התשי"ל-1970 + סי' 14 לצו בדבר כללי אחריות לעבירה.

**פרטי העבירה:** הנאשם הנ"ל, בחיותו באזור, ביום 25.2.02, בנסיבות המתוארות בפרט האישום החמישי, גרם בכוונה ביחד עם אחרים למותו של אדם.

דהיינו, במועד האמור לעיל גרם הנאשם בכוונה במעשיו האמורים בפרט האישום החמישי, למותו של מתיתיהו אייסנפלד ז"ל, בן 25 במותו. מתיתיהו ז"ל מצא את מותו כתוצאה מפיצוץ מטען חבלה ע"י מג'די אבו-ורדה באוטובוס אגד קו 18 בירושלים.

**פרט שישה-עשר:**

**מהות העבירה:** גרימת מוות בכוונה, עבירה לפי ס' 51(א) לצו בדבר הוראות ביטחון, התשי"ל-1970 + סי' 14 לצו בדבר כללי אחריות לעבירה.

**פרטי העבירה:** הנאשם הנ"ל, בחיותו באזור, ביום 25.2.02, בנסיבות המתוארות בפרט האישום החמישי, גרם בכוונה ביחד עם אחרים למותו של אדם.

דהיינו, במועד האמור לעיל גרם הנאשם בכוונה במעשיו האמורים בפרט האישום החמישי, למותו של שרה דוקר ז"ל, בת 23 במותה. שרה ז"ל מצאה את מותה כתוצאה מפיצוץ מטען חבלה ע"י מג'די אבו-ורדה באוטובוס אגד קו 18 בירושלים.

**פרט שבעה-עשר:**

**מהות העבירה:** גרימת מוות בכוונה, עבירה לפי ט' 51(א) לצו בדבר הוראות ביטחון, התשי"ל-1970 + סי' 14 לצו בדבר כללי אחריות לעבירה.

**פרטי העבירה:** הנאשם הנ"ל, בחיותו באזור, ביום 25.2.02, בנסיבות המתוארות בפרט האישום החמישי, גרם בכוונה ביחד עם אחרים למותו של אדם.

דהיינו, במועד האמור לעיל גרם הנאשם בכוונה במעשיו האמורים בפרט האישום החמישי, למותו של סלין זנגרי ז"ל, בת 20 במותה. סלין ז"ל מצאה את מותה כתוצאה מפיצוץ מטען חבלה ע"י מג'די אבו-ורדה באוטובוס אגד קו 18 בירושלים.

**פרט שמונה-עשר:**

**מהות העבירה:** גרימת מוות בכוונה, עבירה לפי ס' 51(א) לצו בדבר הוראות ביטחון, התשי"ל-1970 + סי' 14 לצו בדבר כללי אחריות לעבירה.

**פרטי העבירה:** הנאשם הנ"ל, בחיותו באזור, ביום 25.2.02, בנסיבות המתוארות בפרט האישום החמישי, גרם בכוונה ביחד עם אחרים למותו של אדם.

דהיינו, במועד האמור לעיל גרם הנאשם בכוונה במעשיו האמורים בפרט האישום החמישי, למותו של מיכאל ירינ'גין ז"ל, בן 16 במותו. מיכאל ז"ל מצא את מותו כתוצאה מפיצוץ מטען חבלה ע"י מג'די אבו-ורדה באוטובוס אגד קו 18 בירושלים.

</div>

8

SHATSKY-JD01127

CONFIDENTIAL

**פרט תשעה-עשר:**

**מהות העבירה:** גרימת מוות בכוונה, עבירה לפי ס' 51(א) לצו בדבר הוראות ביטחון, התש"ל-1970 + ס' 14 לצו בדבר כללי אחריות לעבירה.

**פרטי העבירה:** הנאשם הנ"ל, בהיותו באזור, ביום 25.2.02, בנסיבות המתוארות בפרט האישום החמישי, גרם בכוונה ביחד עם אחרים למותו של אדם.

דהיינו, במועד האמור לעיל גרם הנאשם בכוונה במעשיו האמורים בפרט האישום החמישי, למותו של יצחק יכנס ז"ל, בן 54 במותו. יצחק ז"ל מצא את מותו כתוצאה מפיצוץ מטען החבלה ע"י מג'די אבו-ורדה באוטובוס אגד קו 18 בירושלים.

**פרט עשרים:**

**מהות העבירה:** גרימת מוות בכוונה, עבירה לפי ס' 51(א) לצו בדבר הוראות ביטחון, התש"ל-1970 + ס' 14 לצו בדבר כללי אחריות לעבירה.

**פרטי העבירה:** הנאשם הנ"ל, בהיותו באזור, ביום 25.2.02, בנסיבות המתוארות בפרט האישום החמישי, גרם בכוונה ביחד עם אחרים למותו של אדם.

דהיינו, במועד האמור לעיל גרם הנאשם בכוונה במעשיו האמורים בפרט האישום החמישי, למותו של בוריס שרנופולסקי ז"ל, בן 55 במותו. בוריס ז"ל מצא את מותו כתוצאה מפיצוץ מטען החבלה ע"י מג'די אבו-ורדה באוטובוס אגד קו 18 בירושלים.

**פרט עשרים ואחד:**

**מהות העבירה:** גרימת מוות בכוונה, עבירה לפי ס' 51(א) לצו בדבר הוראות ביטחון, התש"ל-1970 + ס' 14 לצו בדבר כללי אחריות לעבירה.

**פרטי העבירה:** הנאשם הנ"ל, בהיותו באזור, ביום 25.2.02, בנסיבות המתוארות בפרט האישום החמישי, גרם בכוונה ביחד עם אחרים למותו של אדם.

דהיינו, במועד האמור לעיל גרם הנאשם בכוונה במעשיו האמורים בפרט האישום החמישי, למותו של פרץ גנץ ז"ל, בן 61 במותו. פרץ ז"ל מצא את מותו כתוצאה מפיצוץ מטען החבלה ע"י מג'די אבו-ורדה באוטובוס אגד קו 18 בירושלים.

**פרט עשרים ושניים:**

**מהות העבירה:** גרימת מוות בכוונה, עבירה לפי ס' 51(א) לצו בדבר הוראות ביטחון, התש"ל-1970 + ס' 14 לצו בדבר כללי אחריות לעבירה.

**פרטי העבירה:** הנאשם הנ"ל, בהיותו באזור, ביום 25.2.02, בנסיבות המתוארות בפרט האישום החמישי, גרם בכוונה ביחד עם אחרים למותו של אדם.

דהיינו, במועד האמור לעיל גרם הנאשם בכוונה במעשיו האמורים בפרט האישום החמישי, למותה של סבטלנה ג'לוזניאק ז"ל, בת 33 במותה. סבטלנה ז"ל מצאה את מותה כתוצאה מפיצוץ מטען החבלה ע"י מג'די אבו-ורדה באוטובוס אגד קו 18 בירושלים.

CONFIDENTIAL

CONFIDENTIAL

SHATSKY-JD01129

<div dir="rtl">

<u>**פרט עשרים ושלושה:**</u>

<u>**מהות העבירה:**</u> גרימת מוות בכוונה, עבירה לפי ס' 51(א) לצו בדבר הוראות ביטחון, התש"ל-1970 + ס' 14 לצו בדבר כללי אחריות לעבירה.

<u>**פרטי העבירה:**</u> הנאשם הנ"ל, בחיותו באזור, ביום 25.2.02, בנסיבות המתוארות בפרט האישום החמישי, גרם בכוונה ביחד עם אחרים למותו של אדם.

דהיינו, במועד האמור לעיל גרם הנאשם בכוונה במעשיו האמורים בפרט האישום החמישי, למותו של סמיון בירקשׁולי זׄ"ל, בן 60 במותו. סמיון זׄ"ל מצא את מותו כתוצאה מפיצוץ מטען החבלה עׄ"י מגידי אבו-ורדה באוטובוס אגד קו 18 בירושלים.

<u>**פרט עשרים וארבעה:**</u>

<u>**מהות העבירה:**</u> גרימת מוות בכוונה, עבירה לפי ס' 51(א) לצו בדבר הוראות ביטחון, התש"ל-1970 + ס' 14 לצו בדבר כללי אחריות לעבירה.

<u>**פרטי העבירה:**</u> הנאשם הנ"ל, בחיותו באזור, ביום 25.2.02, בנסיבות המתוארות בפרט האישום החמישי, גרם בכוונה ביחד עם אחרים למותו של אדם.

דהיינו, במועד האמור לעיל גרם הנאשם בכוונה במעשיו האמורים בפרט האישום החמישי, למותו של יצחק אלבז זׄ"ל, בן 57 במותו. יצחק זׄ"ל מצא את מותו כתוצאה מפיצוץ מטען החבלה עׄ"י מגידי אבו-ורדה באוטובוס אגד קו 18 בירושלים.

<u>**פרט עשרים וחמישה:**</u>

<u>**מהות העבירה:**</u> גרימת מוות בכוונה, עבירה לפי ס' 51(א) לצו בדבר הוראות ביטחון, הונש"ל-1970 + ס' 14 לצו בדבר כללי אחריות לעבירה.

<u>**פרטי העבירה:**</u> הנאשם הנ"ל, בחיותו באזור, ביום 25.2.02, בנסיבות המתוארות בפרט האישום החמישי, גרם בכוונה ביחד עם אחרים למותו של אדם.

דהיינו, במועד האמור לעיל גרם הנאשם בכוונה במעשיו האמורים בפרט האישום החמישי, למותו של עמר מסעודי זׄ"ל, בן 59 במותו. עמר זׄ"ל מצא את מותו כתוצאה מפיצוץ מטען החבלה עׄ"י מגידי אבו-ורדה באוטובוס אגד קו 18 בירושלים.

<u>**פרט עשרים ושישה:**</u>

<u>**מהות העבירה:**</u> גרימת מוות בכוונה, עבירה לפי ס' 51(א) לצו בדבר הוראות ביטחון, התש"ל-1970 + ס' 14 לצו בדבר כללי אחריות לעבירה.

<u>**פרטי העבירה:**</u> הנאשם הנ"ל, בחיותו באזור, ביום 25.2.02, בנסיבות המתוארות בפרט האישום החמישי, גרם בכוונה ביחד עם אחרים למותו של אדם.

דהיינו, במועד האמור לעיל גרם הנאשם בכוונה במעשיו האמורים בפרט האישום החמישי, למותו של אריה ברשי זׄ"ל, בן 39 במותו. אריה זׄ"ל מצא את מותו כתוצאה מפיצוץ מטען החבלה עׄ"י מגידי אבו-ורדה באוטובוס אגד קו 18 בירושלים.

</div>

10

CONFIDENTIAL

SHATSKY-JD01129

CONFIDENTIAL

SHATSKY-JD01130

<div dir="rtl">

**פרט עשרים ושבעה:**

**מהות העבירה:** גרימת מוות בכוונה, עבירה לפי ס' 51(א) לצו בדבר הוראות ביטחון, התש"י-1970 + ס' 14 לצו בדבר כללי אחריות לעבירה.

**פרטי העבירה:** הנאשם הנ"ל, בהיותו באזור, ביום 25.2.02, בנסיבות המתוארות בפרט האישום החמישי, גרם בכוונה ביחד עם אחרים למותו של אדם.

דהיינו, במועד האמור לעיל גרם הנאשם בכוונה במעשיו האמורים בפרט האישום החמישי, למותו של נבון שבו זיו נ', בן 23 במותו. נבון נ"ל מצא את מותו כתוצאה מפיצוץ מטען חבלה ע"י מגידי אבו-ורדה באוטובוס אגד קו 18 בירושלים.

**פרט עשרים ושמונה:**

**מהות העבירה:** גרימת מוות בכוונה, עבירה לפי ס' 51(א) לצו בדבר הוראות ביטחון, התש"י-1970 + ס' 14 לצו בדבר כללי אחריות לעבירה.

**פרטי העבירה:** הנאשם הנ"ל, בהיותו באזור, ביום 25.2.02, בנסיבות המתוארות בפרט האישום החמישי, גרם בכוונה ביחד עם אחרים למותו של אדם.

דהיינו, במועד האמור לעיל גרם הנאשם בכוונה במעשיו האמורים בפרט האישום החמישי, למותו של ואאל עומר מוחמוד קוואסמה זיו, בן 24 במותו. ואאל זיו מצא את מותו כתוצאה מפיצוץ מטען חבלה ע"י מגידי אבו-ורדה באוטובוס אגד קו 18 בירושלים.

**פרט עשרים ותשעה:**

**מהות העבירה:** גרימת מוות בכוונה, עבירה לפי ס' 51(א) לצו בדבר הוראות ביטחון, התש"י-1970 + ס' 14 לצו בדבר כללי אחריות לעבירה.

**פרטי העבירה:** הנאשם הנ"ל, בהיותו באזור, ביום 25.2.02, בנסיבות המתוארות בפרט האישום החמישי, גרם בכוונה ביחד עם אחרים למותו של אדם.

דהיינו, במועד האמור לעיל גרם הנאשם בכוונה במעשיו האמורים בפרט האישום החמישי, למותה של חופית אייש, בת 20 במותה. חופית זיו מצאה את מותה כתוצאה מפיצוץ מטען חבלה ע"י אברהאים צראחנה סמוך לטרמפיאדה בצומת אשקלון.

**פרט שלושים:**

**מהות העבירה:** גרימת מוות בכוונה, עבירה לפי ס' 51(א) לצו בדבר הוראות ביטחון, התש"י-1970 + ס' 14 לצו בדבר כללי אחריות לעבירה.

**פרטי העבירה:** הנאשם הנ"ל, בהיותו באזור, ביום 3.3.96, גרם בכוונה ביחד עם אחרים למותו של אדם.

ביום רביעי בבוקר, 28.2.96, נפגשו הנאשם וחסן סלאמה במסגד ברמאללה, בהתאם לסיכום מוקדם, והיאחרון מסר לנאשם כי הוא זקוק למפגע המתאבד לניצוע פיגוע התאבדות נוסף. הנאשם סיפר לו כי הוא מכיר אדם העונה לשם ראאד ע"א כרים שעיינבי, פעיל "כותלה איסלמייה", המעוניין לבצע פיגוע,

</div>

CONFIDENTIAL

SHATSKY-JD01131

והשניים קבעו מפגש נוסף למחרת היום בשעות הצהריים במסגד, אליו יביא הנאשם את ראאד. בליל 28.2.96 פגש חסן באימן ואכרם. השלושה החליטו כי אוטובוס קו 18 בירושלים ישמש כיעד פיגוע ההתאבדות הבא המתוכנן, וחסן והורה לשניים לפגושו שוב במוצאי שבת סמוך לבית החולים, לשם הובלת המפגע הימתאבד מרמאללה, לקראת ביצוע פיגוע ההתאבדות על-ידו ביום ראשון בבוקר.

ביום חמישי, 29.2.96, פנה הנאשם לראאד שעינובי ומסר לו כי פעול "גדודי עז א-דין אלקסאם" מעוניין לפגושו בנוגע לפעילות צבאית. ראאד השיב בחיוב ובצהרי היום, במסגד ברמאללה, פגש הנאשם וראאד שעינובי בחסן סלאמה. הנאשם הותיר את השניים לשוחח ביחידות ושב למוכללה. חסן הציע לראאד לבצע פיגוע ההתאבדות מטעם "גדודי עז א-דין אלקסאם". האחרון הביע הסכמתו לכך והשניים קבעו להפגש שנית למחרת בערב, יום שישי, סמוך למסגד.

ביום שישי 1. 3.96, במועד ובמקום המיועדים, פגש חסן בראאד והובילו לבית המסתתר ששימש את מוחי א-דין שריף ברמאללה. שם התקין חסן את מטען החבלה באופן בו וזתקין את מטעני החבלה המתוארים בפרט האישום החמישי, אך במקום בכדוריות מתכת, השתמש הפעם כרסס במסמרי מתכת. לאחר מכן הניח בתוך תיק נשיאה. למחרת, יום שבת 2.3.96, סמוך לשעה 19.00, נפגשו ראאד וחסן, כשעמם התיק וכן מטען החבלה, עם אימן ואכרם ליד בית החולים ברמאללה. חסן סיפר לשניים כי ראאד הינו המפגע המתאבד והורה להם לחובילו למחרת בבוקר לתחנת אוטובוס קו 18, על מנת שיבצע בו את פיגוע ההתאבדות המתוכנן. ראאד נכנע לרכבם של השניים כשמטען חבלה עמו והשלושה נסעו לאבו-דיס.

ביום ראשון, 3.3.96, סמוך לשעה 6:20 בבוקר, ברחוב יפו ליד סניף הדואר המרכזי בירושלים, פוצץ ראאד שעינובי את מטען החבלה בעת שנסע בתוך אוטובוס אגד קו 18 בירושלים. כתוצאה מכך נהרג ראאד ונגרם מותו של יוני לוי ז"ל. יוני היה בן 23 במותו.

**פרט שלושים ואחד:**

**מהות העבירה:** גרימת מוות בכוונה, עבירה לפי ס' 51(א) לצו בדבר הוראות ביטחון, התשי"ל- 1970 + ס' 14 לצו בדבר כללי אחריות לעבירה.

**פרטי העבירה:** הנאשם הנ"ל, בהיותו באזור, ביום 3.3.96, בנסיבות המתוארות בפרט האישום השלושים, גרם בכוונה ביחד עם אחרים למותם של אדם.

דהיינו, במועד האמור לעיל, במעשיו האמורים בפרט האישום השלושים, גרם הנאשם בכוונה למותו של חיים עמדי, בן 19 במותו. חיים ז"ל מצא את מותו כתוצאה מפיצוץ מטען החבלה ע"י ראאד שעינובי באוטובוס אגד קו 18 בירושלים.

CONFIDENTIAL

29-DEC-2002 16:38 FROM:ROSENTHAL & YAHIR

SHATSKY-JD01131

CONFIDENTIAL

SHATSKY-JD01132

<div dir="rtl">

**פרט שלושים ושניים:**

**מהות העבירה:** גרימת מוות בכוונה, עבירה לפי סי' 51(א) לצו בדבר הוראות ביטחון, התש"י-
1970 + סי 14 לצו בדבר כללי אחריות לעבירה.

**פרטי העבירה:** הנאשם הנ"ל, בהיותו באזור, ביום 3.3.96, בנסיבות המתוארות בפרט האישום
השלושים, גרם בכוונה ביחד עם אחרים למותו של אדם.
דהיינו, במועד האמור לעיל, במעשיו האמורים בפרט האישום השלושים, גרם
הנאשם בכוונה למותו של עוזי כהן, בן 42 במותו. עוזי ז"ל מצא את מותו
כתוצאה מפיצוץ מטען החבלה ע"י ראאד שעינובי באוטובוס אגד קו 18
בירושלים.

**פרט שלושים ושלושה:**

**מהות העבירה:** גרימת מוות בכוונה, עבירה לפי סי' 51(א) לצו בדבר הוראות ביטחון, התש"י-
1970 + סי 14 לצו בדבר כללי אחריות לעבירה.

**פרטי העבירה:** הנאשם הנ"ל, בהיותו באזור, ביום 3.3.96, בנסיבות המתוארות בפרט האישום
השלושים, גרם בכוונה ביחד עם אחרים למותו של אדם.
דהיינו, במועד האמור לעיל, במעשיו האמורים בפרט האישום השלושים, גרם
הנאשם בכוונה למותו של שם-טוב שייך, בן 63 במותו. שם-טוב ז"ל מצא את
מותו כתוצאה מפיצוץ מטען החבלה ע"י ראאד שעינובי באוטובוס אגד קו 18
בירושלים.

**פרט שלושים וארבעה:**

**מהות העבירה:** גרימת מוות בכוונה, עבירה לפי סי' 51(א) לצו בדבר הוראות ביטחון, התש"י-
1970 + סי 14 לצו בדבר כללי אחריות לעבירה.

**פרטי העבירה:** הנאשם הנ"ל, בהיותו באזור, ביום 3.3.96, בנסיבות המתוארות בפרט האישום
השלושים, גרם בכוונה ביחד עם אחרים למותו של אדם. גרם
דהיינו, במועד האמור לעיל, במעשיו האמורים בפרט האישום השלושים, גרם
הנאשם בכוונה למותו של גבריאל שינמשילאשווילי, בן 43 בנותו. גבריאל ז"ל
מצא את מותו כתוצאה מפיצוץ מטען החבלה ע"י ראאד שעינובי באוטובוס אגד
קו 18 בירושלים.

**פרט שלושים וחמישה:**

**מהות העבירה:** גרימת מוות בכוונה, עבירה לפי סי' 51(א) לצו בדבר הוראות ביטחון, התש"י-
1970 + סי 14 לצו בדבר כללי אחריות לעבירה.

**פרטי העבירה:** הנאשם הנ"ל, בהיותו באזור, ביום 3.3.96, בנסיבות המתוארות בפרט האישום
השלושים, גרם בכוונה ביחד עם אחרים למותו של אדם.
דהיינו, במועד האמור לעיל, במעשיו האמורים בפרט האישום השלושים, גרם
הנאשם בכוונה למותה של מאיה בירקן, בת 59 במותה. מאיה ז"ל מצאה את
מותה כתוצאה מפיצוץ מטען החבלה ע"י ראאד שעינובי באוטובוס אגד קו 18
בירושלים.

</div>

CONFIDENTIAL

SHATSKY-JD01132

CONFIDENTIAL

SHATSKY-JD01133

## פרט שלושים ושישה:

<u>מהות העבירה</u>: גרימת מוות בכוונה, עבירה לפי סי' 51(א) לצו בדבר הוראות ביטחון, התש"ל-1970 + סי' 14 לצו בדבר כללי אחריות לעבירה.

<u>פרטי העבירה</u>: הנאשם הנ"ל, בהיותו באזור, ביום 3.3.96, בנסיבות המתוארות בפרט האישום השלושים, גרם בכוונה ביחד עם אחרים למותו של אדם.

דהיינו, במעוד האמור לעיל, במעשיו האמורים בפרט האישום השלושים, גרם הנאשם בכוונה למותה של טטפנס גידאווי, בת 23 במותה. טטפנס ז"ל מצאה את מותה כתוצאה מפיצוץ מטען החבלה ע"י ראאד שעינובי באוטובוס אגד קו 18 בירושלים.

## פרט שלושים ושבעה:

<u>מהות העבירה</u>: גרימת מוות בכוונה, עבירה לפי סי' 51(א) לצו בדבר הוראות ביטחון, התש"ל-1970 + סי' 14 לצו בדבר כללי אחריות לעבירה.

<u>פרטי העבירה</u>: הנאשם הנ"ל, בהיותו באזור, ביום 3.3.96, בנסיבות המתוארות בפרט האישום השלושים, גרם בכוונה ביחד עם אחרים למותו של אדם.

דהיינו, במעוד האמור לעיל, במעשיו האמורים בפרט האישום השלושים, גרם הנאשם בכוונה למותה של אנג'יל סוריאני, בת 45 במותה. אנג'יל ז"ל מצאה את מותה כתוצאה מפיצוץ מטען החבלה ע"י ראאד שעינובי באוטובוס אגד קו 18 בירושלים.

## פרט שלושים ושמונה:

<u>מהות העבירה</u>: גרימת מוות בכוונה, עבירה לפי סי' 51(א) לצו בדבר הוראות ביטחון, התש"ל-1970 + סי' 14 לצו בדבר כללי אחריות לעבירה.

<u>פרטי העבירה</u>: הנאשם הנ"ל, בהיותו באזור, ביום 3.3.96, בנסיבות המתוארות בפרט האישום השלושים, גרם בכוונה ביחד עם אחרים למותו של אדם.

דהיינו, במעוד האמור לעיל, במעשיו האמורים בפרט האישום השלושים, גרם הנאשם בכוונה למותו של ג'ורג'י יונאן, בן 39 במותו. ג'ורג'י ז"ל מצא את מותו כתוצאה מפיצוץ מטען החבלה ע"י ראאד שעינובי באוטובוס אגד קו 18 בירושלים.

## פרט שלושים ותשעה:

<u>מהות העבירה</u>: גרימת מוות בכוונה, עבירה לפי סי' 51(א) לצו בדבר הוראות ביטחון, התש"ל-1970 + סי' 14 לצו בדבר כללי אחריות לעבירה.

<u>פרטי העבירה</u>: הנאשם הנ"ל, בהיותו באזור, ביום 3.3.96, בנסיבות המתוארות בפרט האישום השלושים, גרם בכוונה ביחד עם אחרים למותו של אדם.

דהיינו, במעוד האמור לעיל, במעשיו האמורים בפרט האישום השלושים, גרם הנאשם בכוונה למותה של נעמי זגורי, בת 66 במותה. נעמי ז"ל מצאה את מותה כתוצאה מפיצוץ מטען החבלה ע"י ראאד שעינובי באוטובוס אגד קו 18 בירושלים.

CONFIDENTIAL

SHATSKY-JD001133

CONFIDENTIAL

SHATSKY-JD01134

<u>פרט ארבעים:</u>

<u>מהות העבירה:</u>  גרימת מוות בכוונה, עבירה לפי סי 51(א) לצו בדבר הוראות ביטחון, התשייל-
1970 + סי 14 לצו בדבר כללי אחריות לעבירה.

<u>פרטי העבירה:</u>  הנאשם הנייל, בחיותו באזור, ביום 3.3.96, בנסיבות המתוארות בפרט האישום
השלושים, גרם בכוונה ביחד עם אחרים למותו של אדם.
דהיינו, במועד האמור לעיל, במעשיו האמורים בפרט האישום השלושים, גרם
הנאשם בכוונה למותה של רעיה דאושבוילי, בת 41 במותה. רעיה זייל מצאה את
מותה כתוצאה מפיצוץ מטען החבלה עייי ראאד שעינובי באוטובוס אגד קו 18
בירושלים.

<u>פרט ארבעים ואחד:</u>

<u>מהות העבירה:</u>  גרימת מוות בכוונה, עבירה לפי סי 51(א) לצו בדבר הוראות ביטחון, התשייל-
1970 + סי 14 לצו בדבר כללי אחריות לעבירה.

<u>פרטי העבירה:</u>  הנאשם הנייל, בחיותו באזור, ביום 3.3.96, בנסיבות המתוארות בפרט האישום
השלושים, גרם בכוונה ביחד עם אחרים למותו של אדם.
דהיינו, במועד האמור לעיל, במעשיו האמורים בפרט האישום השלושים, גרם
הנאשם בכוונה למותה של אנה שנגולוץ, בת 37 במותה. אנה זייל מצאה את
מותה כתוצאה מפיצוץ מטען החבלה עייי ראאד שעינובי באוטובוס אגד קו 18
בירושלים.

<u>פרט ארבעים ושניים:</u>

<u>מהות העבירה:</u>  גרימת מוות בכוונה, עבירה לפי סי 51(א) לצו בדבר הוראות ביטחון, התשייל-
1970 + סי 14 לצו בדבר כללי אחריות לעבירה.

<u>פרטי העבירה:</u>  הנאשם הנייל, בחיותו באזור, ביום 3.3.96, בנסיבות המתוארות בפרט האישום
השלושים, גרם בכוונה ביחד עם אחרים למותו של אדם.
דהיינו, במועד האמור לעיל, במעשיו האמורים בפרט האישום השלושים, גרם
הנאשם בכוונה למותה של יולריה קרקיון, בת 44 במותה. יולרייה זייל מצאה את
מותה כתוצאה מפיצוץ מטען החבלה עייי ראאד שעינובי באוטובוס אגד קו 18
בירושלים.

<u>פרט ארבעים ושלושה:</u>

<u>מהות העבירה:</u>  גרימת מוות בכוונה, עבירה לפי סי 51(א) לצו בדבר הוראות ביטחון, התשייל-
1970 + סי 14 לצו בדבר כללי אחריות לעבירה.

<u>פרטי העבירה:</u>  הנאשם הנייל, בחיותו באזור, ביום 3.3.96, בנסיבות המתוארות בפרט האישום
השלושים, גרם בכוונה ביחד עם אחרים למותו של אדם.
דהיינו, במועד האמור לעיל, במעשיו האמורים בפרט האישום השלושים, גרם
הנאשם בכוונה למותה של דניאל פטקנה, בן 34 במותו. דניאל זייל מצא את מותו
כתוצאה מפיצוץ מטען החבלה עייי ראאד שעינובי באוטובוס אגד קו 18
בירושלים.

CONFIDENTIAL

SHATSKY-JD01134

CONFIDENTIAL

SHATSKY-JD01135

<u>פרט ארבעים וארבעה:</u>

<u>מהות העבירה:</u> גרימת מוות בכוונה, עבירה לפי סי׳ 51(א) לצו בדבר הוראות ביטחון, התשי״ל-1970 + סי׳ 14 לצו בדבר כללי אחריות לעבירה.

<u>פרטי העבירה:</u> הנאשם הנ״ל, בחיותו באזור, ביום 3.3.96, בנסיבות המתוארות בפרט האישום השלושים, גרם בכוונה ביחד עם אחרים למותו של אדם.

דהיינו, במועד האמור לעיל, במעשיו האמורים בפרט האישום השלושים, גרם הנאשם בכוונה למותו של מריאן גרפאן, בן 40 במותו. מריאן ז״ל מצא את מותו כתוצאה מפיצוץ מטען החבלה ע״י ראאד שעינובי באוטובוס אגד קו 18 בירושלים.

<u>פרט ארבעים וחמישה:</u>

<u>מהות העבירה:</u> גרימת מוות בכוונה, עבירה לפי סי׳ 51(א) לצו בדבר הוראות ביטחון, התשי״ל-1970 + סי׳ 14 לצו בדבר כללי אחריות לעבירה.

<u>פרטי העבירה:</u> הנאשם הנ״ל, בחיותו באזור, ביום 3.3.96, בנסיבות המתוארות בפרט האישום השלושים, גרם בכוונה ביחד עם אחרים למותו של אדם.

דהיינו, במועד האמור לעיל, במעשיו האמורים בפרט האישום השלושים, גרם הנאשם בכוונה למותו של דימיטרו קוקורוצ׳ה, בן 43 במותו. דימיטרו ז״ל מצא את מותו כתוצאה מפיצוץ מטען החבלה ע״י ראאד שעינובי באוטובוס אגד קו 18 בירושלים.

<u>פרט ארבעים ושישה:</u>

<u>מהות העבירה:</u> גרימת מוות בכוונה, עבירה לפי סי׳ 51(א) לצו בדבר הוראות ביטחון, התשי״ל-1970 + סי׳ 14 לצו בדבר כללי אחריות לעבירה.

<u>פרטי העבירה:</u> הנאשם הנ״ל, בחיותו באזור, ביום 3.3.96, בנסיבות המתוארות בפרט האישום השלושים, גרם בכוונה ביחד עם אחרים למותו של אדם.

דהיינו, במועד האמור לעיל, במעשיו האמורים בפרט האישום השלושים, גרם הנאשם בכוונה למותו של דומיניק לומקה, בן 29 במותו. דומיניק ז״ל מצא את מותו כתוצאה מפיצוץ מטען החבלה ע״י ראאד שעינובי באוטובוס אגד קו 18 בירושלים.

<u>פרט ארבעים ושבעה:</u>

<u>מהות העבירה:</u> גרימת מוות בכוונה, עבירה לפי סי׳ 51(א) לצו בדבר הוראות ביטחון, התשי״ל-1970 + סי׳ 14 לצו בדבר כללי אחריות לעבירה.

<u>פרטי העבירה:</u> הנאשם הנ״ל, בחיותו באזור, ביום 3.3.96, בנסיבות המתוארות בפרט האישום השלושים, גרם בכוונה ביחד עם אחרים למותו של אדם.

דהיינו, במועד האמור לעיל, במעשיו האמורים בפרט האישום השלושים, גרם הנאשם בכוונה למותו של ג׳יפה מירציה, בן 39 במותו. ג׳יפה ז״ל מצא את מותו כתוצאה מפיצוץ מטען החבלה ע״י ראאד שעינובי באוטובוס אגד קו 18 בירושלים.

CONFIDENTIAL

SHATSKY-JD01135

ברמאללה, כשהוא רעול פנים, על מנת להפגש עם אדם נוסף, שיתדרכו אודות
הפעילות הצבאית שהוא עתיד לבצע. הנאשם אף מסר למחמד את מילת הקוד
שתשמש לזיהוי אותו אדם שעליו לפגוש. לאחר מכן הובילו חנאשם ונכיל
עוואודה את מחמד לביתו של  רמדאן, שם צילמוהו כשלראשו סרט ירוק
המסמל את תנועת החומאו"ס והוא אוחז בידו רוסי"רי M-16 וקלצ'יניקוב, לשם
פרסום ותמונתו כ"שהיד" לאחר ביצוע פיגוע חהתאבדות על-ידו.

במועד שנקבע פגש מחמד באלמוני במסגד ע"א נאצר ברמאללה, אך זה מסר לו
כי ביצוע הפיגוע נדחה למועד מאוחר יותר. מחמד הודיע לנאשם על כך. שבוע
לאחר מכן נעצר מחמד קלאולה ע"י כוחות צה"יל.


סרן                   יעל   אייזיק,
צבעית        תובעת

### עדי התביעה:

1.  רסיי"מ עומר זוידנה (גובה הודאת חנאשם).
2.  נביל עוואודה (עצור). 9214 <sup>Redacted</sup>
3.  מחמד קלאולה (שפוט). 8994 <sup>Redacted</sup>
4.  חסן סלאמה (שפוט). 9022 <sup>Redacted</sup>

CONFIDENTIAL                                                                                SHATSKY-JD01136

CONFIDENTIAL

SHATSKY-JD01137



Palestinian Authority
Ministry of Interior
Department of Civil Affairs

السلطـة الفلسطينيـة
وزارة الداخليــة
مديرية الأحوال المدنية

شــهـادة مـيـلاد

رقم الهوية   Redacted 030 2

الإسم   حمزه

اسم الأب   محمد

دنسية الأب   فلسطيني   اسم العائلة   أبو وردة

دنسية الأم   فلسطينية   عائلة الأم   الجعبري   إسم الأم   نورا

الديانة   مسلم   الجنس   ذكر

Redacted   تاريخ الميلاد   Redacted 2003،

المستشفى   الأهلي - الخليل   مكان الميلاد   الخليل

( ) - ( )   العنوان   الفوار

إن التفاصيل المدونة بولادة المذكور اعلاه ادرجت في سجل المواليد لــ
من قبل مديرية الأحوال المدنية بــ   دورا

2003/04/29   بتاريــخ

المـوظف
Employee Signature

ختم الدائرة
Seal

CONFIDENTIAL

SHATSKY-JD01137

CONFIDENTIAL

SHATSKY-JD01138

תיק מס': 1962/02

תאריך: ט"ז כסלו, תשס"ה
29 נובמבר, 2004

ב י ת   ה מ ש פ ט   ה צ ב א י   י ה ו ד ה

בפני אב"ד: סא"ל צבי לקח
שופט: סרן אמיר דהאן
שופט: סרן שמעון לייבו

התביעה הצבאית
(באמצעות סגן יותם הר-ציון)

נגד

הנאשם: מחמד עטיה מחמוד אבו ורדה   ת.ז 5359 Redacted / שב"ס - נוכח
(באמצעות ב"כ עו"ד אנאאר אבו עומר ועו"ד בסול - נוכח)

רשמת: סמל רוזי אבגי
מתורגמן: סמל כרים סלאמה

אב"ד פותח את הישיבה ומזהה את הנאשם.

<u>מהלך הדיון</u>

תובע: אבקש לתקן את כתב האישום.

סניגור: אבקש להתיר לנאשם לחזור בו מכפירתו.

<u>ה ח ל ט ה</u>

אנו מתירים לנאשם לחזור בו מכפירתו ולתביעה לתקן את כתב האישום.

<u>ניתן והודע היום, 29/11/2004, בפומבי ובמעמד הצדדים.</u>

שופט                     אב"ד                     שופט

סניגור: הקראתי למרשי את כתב האישום המתוקן, הסברתי לו את תוכנו, הוא הבינו ומודה במיוחס לו בו.

נאשם: אני מאשר את דברי סניגורי ומודה בכתב האישום המתוקן.

-1-

CONFIDENTIAL

SHATSKY-JD01138

CONFIDENTIAL

SHATSKY-JD01139

תאריך : ט״ז כסלו, תשס״ה
29 נובמבר, 2004

תיק מס׳ : 1962/02

ה כ ר ע ת – ד י ן

1
2
על יסוד הודאתו באשמה, אנו מרשיעים את הנאשם בעבירות המיוחסות לו בכתב                3
האישום המתוקן.                4
5
ניתן והודע היום, 29/11/2004, בפומבי ובמעמד הצדדים.                6
7
8
9
10
שופט        אב״ד          שופט                11
12
תוב״ע : אני מגיש גיליון רישום פלילי. מתקבל ומסומן ת/4.                13
14
סניגור : אין ראיות לעונש.                15
16
17
תוב״ע מסכם : מול ביהמ״ש ניצב היום רוצח המונים. לא כל פעם ולא פעמים רבות                18
למרות שבארבע השנים האחרונות, ניצב מול ביהמ״ש נאשם שכזה. למרות מעשי הטרור הרבים,                19
ונאשמים אשר הורשעו בגין פיגועי טרור חמורים, ראה ביהמ״ש לא פעם מולו רוצחים שפלים                20
שונה מהם. הנאשם שבפנינו אחראי לרציחתם של 45 בני אדם. בפגיעתו הטרור אשר                21
אירעו בשנת 96, כפי שמציין כתב האישום, פער הזמנים בין הפיגועים היה שבע                22
הפעילים אשר הוציאו לפועל שלושת הפיגועים. הנאשם שבפנינו היה בקשר עם                23
הנאשם שבפנינו פיגועים אלו לפועל, מדובר בחסאן סלאמה ומחמד דף.                24
החבלה גרמו למותם של עשרות בני אדם. הנאשם היה מודע באופן מלא לכוונה                25
מאוחרי גיוסם של אנשים אלה. הנאשם היה מודע לתוכניתם לבצע פיגוע תאבדות.                26
וחפר הכל כל מוטע בינינים, לא רק שגרמו למותם של עשרות בני אדם, אלא גרמו                27
לפגיעה מורלית לא קלה בקרב הציבור הישראלי. הימים היו ימי טרום חג הפורים                28
להדהמה ועצב, אך ברור כי ברור כי העצב הגדול ביותר הוא מנת חלקם של 45 משפחות                29
אשר איבדו את יקיריהם כתוצאה ממעשיו של הנאשם. 45 משפחות אלו נידו                30
באחת, בעת פיצוץ מטען החבלה את בניהם, בנותיהם, אחיהם. עמדנו לא אחת בפני                31
אדם הינו עולם ומלואו וכי גדיעת נפש אחת גדיעה של עולם. ציינו כי אדם נברא בצלם, וכי כל                32
של משפחות אלו אינו כמו לפני אותם פיגועים. הנאשם במעשיו הוא ושמאן עזה לישראלים באשר הם.                33
חוסר כבוד לבן אנוש כזה הוא שנאמן כמו אותם                34
איזהו העונש הראוי לנאשם, אם היינו בחברה נטולת כללים משפטיים, ולולא היינו                35
מוגבלים בעונש אשר אותו ניתן להשית עליהם. קשה לומר                36
בגין כל נפש אשר נלקחה, ואת העונש הזה מבקשת התביעה, בגין כל פרט אישום של                37
שבסופו של דבר, ובכתב התביעה גרם לעשרות פצועים, ובקש התביעה להשית מאסר עולם, כך                38
שירוצו במצטבר. התביעה תשאיר לשיקול דעת ביהמ״ש את העונש בגין שאר                39
המעשים.                40

-2-

SHATSKY-JD01139

CONFIDENTIAL

CONFIDENTIAL

SHATSKY-JD01140

תאריך : ט״ז כסלו, תשס״ה                              תיק מס׳ : 1962/02
29 נובמבר, 2004

ב י ת   ה מ ש פ ט   ה צ ב א י   י ה ו ד ה                    1
2
בפני אב״ד : סא״ל צבי לקח                                        3
שופט: סרן אמיר דהאן                                            4
שופט: סרן שמעון לייבו                                           5
6
התביעה הצבאית                                                  7
(באמצעות סגן יותם הר-ציון)                                     8
9
נגד                                                           10
11
הנאשם: מחמד עטיה מחמוד אבו ורדה   ת.ז 5359 ^Redacted / שב״ס   12
(באמצעות ב״כ עו״ד אנואר אבו עומר ועו״ד בסול)                   13
14
15
16
ג ז ר - ד י ן                                                 17
18
הנאשם הורשע, על פי הודאתו, בכתב אישום מן החמורים ביותר שהוגשו אי פעם   19
בבתי המשפט באזור ובמדינת ישראל. כתב האישום הכולל חמישים וארבעה פרטי   20
אישום שונים, מגולל את חלקו של הנאשם ופעילותו להוצאתם לפועל של שלושה   21
פיגועי התאבדות, אשר גרמו במצטבר למותם של 45 בני אדם.               22
23
הנאשם היה זה אשר גייס את המחבלים המתאבדים בהתאם לתכנון מוקדם של   24
חסן סלאמה ומחמד דף. המחבלים המתאבדים אותם גייס הנאשם לבקשת השניים,   25
יצאו ביום 25/02/96, האחד לטרמפיאדה באשקלון, והשני עלה על אוטובוס קו 18   26
בירושלים. המחבל המתאבד אשר עלה על האוטובוס, פוצץ עצמו וגרם למותם של   27
24 אנשים חפים מפשע, ולפציעתם של רבים אחרים. המחבל המתאבד אשר פוצץ   28
עצמו בסמוך לטרמפיאדה באשקלון גרם למותה של אשה אחת ולפציעתם של 36   29
אנשים. למרבה המזל, לא הצליחו לגרום למותם של קורבנות נוספים.         30
31
לאחר פיגוע כפול זה, התבקש הנאשם לגייס מחבל מתאבד נוסף. הנאשם עשה כן,   32
ומחבל זה, ביום 03/03/96, עלה על אוטובוס קו 18 בירושלים, פוצץ עצמו וגרם   33
למותם של 20 בני אדם ולפציעתם של 8 נוספים.                          34
35
התביעה הצבאית ביקשה כי נשית על הנאשם מאסר עולם בגין כל אחד מהנרצחים,   36
וכן מאסר עולם בגין כל אחד מהניסיונות לגרימת מוות בכוונה, דהיינו, סך הכל 48   37
מאסרי עולם.                                                    38
39
יש לומר כי הנאשם לא רק שלא הביע כל חרטה על מעשיו, אלא טען כי מעשיו אינם   40
מעשי רצח, אלא ״מעשים התנגדות לגיטימיים״.                           41
42
המעשים להם היה שותף הנאשם נעשו מתוך משנה רצחנית סדורה, אותה טרח   43
ומסר במצא נחושה לפני מותב זה. העוונות שעמדו בבסיס הדברים גדול כל כך, עד כי   44
מילותינו לא יהיה בהן די כדי לבטא את החלחלה, המיאוס והתועבה שאנו חשים   45
כלפי הנאשם ותורתו.                                             46
47

-4-

CONFIDENTIAL

SHATSKY-JD01140

SHATSKY-JD01141

CONFIDENTIAL

תאריך : ט"ז כסלו, תשס"ה
29 נובמבר, 2004

תיק מס' : 1962/02

אין ולא יכולה להיות כל הצדקה למעשי רצח חסרי אבחנה של נשים, ילדים וגברים, 1
אשר כל חטאם היה בהיותם ישראלים. המדובר במעשה מכוון, שבוצע במחשבה 2
תחילה, ומטרתו הבלעדית הינה הרג המוני של חפים מפשע. 3
4
האדם שבנו, מתחלחל על גדיעת ארבעים וחמש נפשות, אשר לכל אחת ואחת מהן 5
היו חלומות, מאוויים, שאיפות, שבמחי מעשה מעוות ומכוון, שמקורו בנאשם 6
וחבריו, נגדעו באבחה אחת. לא לחינם נאמר במקורותינו (מסכת סנהדרין) "כל 7
המאבד נפש אחת כאילו איבד עולם מלא" שכן דמו ודם זרעותיו אף הם תלויים 8
מוסרית בראשו של הרוצח. 9
10
סוף דבר, צדק לא עשינו עם הנרצחים ומשפחותיהם, משפט שבכוחנו לעשות נעשה. 11
12
אנו גוזרים על הנאשם את העונשים הבאים : 13
14
א. מאסר עולם בגין רציחתו של יונתן ברנע, בן 20 במותו. 15
ב. מאסר עולם בגין רציחתו של איציק גבי, בן 16 במותו. 16
ג. מאסר עולם בגין רציחתו של משה ראובן, בן 19 במותו. 17
ד. מאסר עולם בגין רציחתו של איליה נימויטין, בן 19 במותו. 18
ה. מאסר עולם בגין רציחתו של שרון חנוכה, בן 20 במותו. 19
ו. מאסר עולם בגין רציחתו של ויליאם (יצחק) וינשטיין, בן 54 במותו. 20
ז. מאסר עולם בגין רציחתו של מירב נחום, בת 19 במותה. 21
ח. מאסר עולם בגין רציחתו של גד שילוני, בן 22 במותו. 22
ט. מאסר עולם בגין רציחתו של גבריאל קוריאוט, בן 24 במותו. 23
י. מאסר עולם בגין רציחתו של אנטולי קושנירוב, בן 36 במותו. 24
יא. מאסר עולם בגין רציחתה של גינה קושנירוב, בת 37 במותה. 25
יב. מאסר עולם בגין רציחתו של מתתיהו איסנפלד, בן 25 במותו. 26
יג. מאסר עולם בגין רציחתו של שרה דוקר, בת 23 במותה. 27
יד. מאסר עולם בגין רציחתו של סלין זגורי, בת 20 במותה. 28
טו. מאסר עולם בגין רציחתו של מיכאל ירגין, בן 16 במותו. 29
טז. מאסר עולם בגין רציחתו של יצחק יכנס, בן 54 במותו. 30
יז. מאסר עולם בגין רציחתו של בוריס שרנופולסקי, בן 55 במותו. 31
יח. מאסר עולם בגין רציחתו של פרץ גנץ, בן 61 במותו. 32
יט. מאסר עולם בגין רציחתה של סבטלנה גילזוניאק, בת 33 במותה. 33
כ. מאסר עולם בגין רציחתו של סמיון בירקשווילי, בן 60 במותו. 34
כא. מאסר עולם בגין רציחתו של יצחק אלבז, בן 57 במותו. 35
כב. מאסר עולם בגין רציחתו של עמר מיעודי, בן 59 במותו. 36
כג. מאסר עולם בגין רציחתו של אריה בנשיו, בן 39 במותו. 37
כד. מאסר עולם בגין רציחתו של נבון שבו, בן 23 במותו. 38
כה.מאסר עולם בגין רציחתו של ואאל עומר מחמוד קואסמה, בן 24 במותו. 39
כו. מאסר עולם בגין רציחתו של יוני לוי, בן 23 במותו. 40
כז. מאסר עולם בגין רציחתה של חופית אייש, בת 20 במותה. 41
כח. מאסר עולם בגין רציחתו של חיים עמדי, בן 19 במותו. 42
כט. מאסר עולם בגין רציחתו של עוזי כהן, בן 42 במותו. 43

-5-

SHATSKY-JD01141

CONFIDENTIAL

CONFIDENTIAL

SHATSKY-JD01142

תיק מס׳: 1962/02

תאריך: ט״ז כסלו, תשס״ה
29 נובמבר, 2004

ל.   מאסר עולם בגין רציחתו של שם טוב שייח, בן 63 במותו.
לא. מאסר עולם בגין רציחתו של גבריאל שימשיאשווילי, בן 43 במותו.
לב. מאסר עולם בגין רציחתה של מאיה בירקן, בת 59 במותה.
לג. מאסר עולם בגין רציחתו של סטפנס גידאווי, בת 23 במותה.
לד. מאסר עולם בגין רציחתה של אנג׳ל סוריאני, בת 45 במותה.
לה. מאסר עולם בגין רציחתו של ג׳ורג׳ יונאן, בן 39 במותו.
לו.  מאסר עולם בגין רציחתו של עמי זגורי, בת 66 במותה.
לז. מאסר עולם בגין רציחתה של רעיה ז׳אושווילי, בת 41 במותה.
לח. מאסר עולם בגין רציחתה של אנה שנגולוץ, בת 37 במותה.
לט. מאסר עולם בגין רציחתה של יולריה קרקינוו, בת 44 במותה.
מ.   מאסר עולם בגין רציחתו של דניאל פטסקנה, בן 34 במותו.
מא. מאסר עולם בגין רציחתו של מריאן גרפאן, בן 40 במותו.
מב. מאסר עולם בגין רציחתו של דימיטורי קוקורצ׳, בן 43 במותו.
מג. מאסר עולם בגין רציחתו של דומיניק לומקה, בן 29 במותו.
מד. מאסר עולם בגין רציחתו של ג׳יפה מרסיה, בן 39 במותו.
מה. מאסר עולם בגין רציחתו של אימרי אמברונו, בן 52 במותו.
מו.  מאסר עולם בגין שלושים וששה הפצועים בפיגוע בטרמפיאדה באשקלון.
מז.  מאסר עולם בגין 50 הפצועים בפיגוע בקו 18 שהתרחש ביום 25/02/96.
מח. מאסר עולם בגין 8 הפצועים בפיגוע קו 18 שהתרחש ביום 03/03/96.

כל העונשים, ס״ך הכל 48 מאסרי עולם, ירוצו במצטבר זה לזה.

זכות ערעור תוך 30 יום מהיום.

ניתן והודע היום, 29/11/2004, בפומבי ובמעמד הצדדים.

_____          _____          _____
     שופט                        אב״ד                        שופט

-6-

SHATSKY-JD01142

# Exhibit 144

Prisoner Salary Statement

Prisoner no. 9460

Prisoner Name: Mohammad Ativa Mahmoud Abu Warda    Document no. 901065359

| Month | Year | Beneficiary | ID no. | Bank Name | Branch | Account no. | Salary |
|-------|------|-------------|--------|-----------|--------|-------------|--------|



Redacted

Page 1 of 8



Prisoner **Salary** Statement

Prisoner no. 9460
Prisoner Name: Mohammad Atiya Mahmoud Abu Warda

Document no. 901065359

| Month | Year | Beneficiary | ID no. | Bank Name | Branch | Account no. | Salary |
|-------|------|-------------|--------|-----------|--------|-------------|--------|

Redacted

Page 2 of 8

Confidential

Shatsky-JD00260-T

שגיאה! שם מאפיין מסמך לא ידוע.



Prisoner Salary Statement

| Prisoner no. 9460 | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Prisoner Name: Mohammad Atiya Mahmoud Abu Warda | | | Document no. 901065359 | | | | | |
| Month | Year | Beneficiary | ID no. | Bank Name | | Branch | Account no. | Salary |

Redacted

Page 3 of 8

Confidential

Shatsky-JD00261-T

שגיאה! שם מאפיין מסמך לא ידוע.



| Prisoner Salary Statement | | | | | | | |
|---|---|---|---|---|---|---|---|
| Prisoner no. 9460 | | | | | | | |
| Prisoner Name: Mohammad Atiya Mahmoud Abu Warda | | | Document no. 901065359 | | | | |
| Month | Year | Beneficiary | ID no. | Bank Name | Branch | Account no. | Salary |

Redacted

Page 4 of 8

Shatsky-JD00262-T

Confidential

שגיאה! שם מאפיין מסמך לא ידוע.



| | | Prisoner Salary Statement | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Prisoner no. 9460 | | | | | | | | |
| Prisoner Name: Mohammad Ativa Mahmoud Abu Warda | | | Document no. 901065359 | | | | | |
| Month | Year | Beneficiary | ID no. | Bank Name | | Branch | Account no. | Salary |
| | | | | Redacted | | | | |

Confidential

Shatsky-JD00263-T

שגיאה! שם מאפיין מסמך לא ידוע.



| | Prisoner **Salary** Statement | | | | | |
|---|---|---|---|---|---|---|

Prisoner no. 9460
Prisoner Name: Mohammad Ativa Mahmoud Abu Warda          Document no. 901065359

| Month | Year | Beneficiary | ID no. | Bank Name | Branch | Account no. | Salary |
|---|---|---|---|---|---|---|---|

Redacted

Confidential

Shatsky-JD00264-T

שגיאה! שם מאפייו מסמך לא ידוע.



Prisoner **Salary** Statement

| Prisoner no. 9460 | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Prisoner Name: Mohammad Atiya Mahmoud Abu Warda    Document no. 901065359 | | | | | | | | |
| Month | Year | Beneficiary | | ID no. | Bank Name | Branch | Account no. | Salary |

Redacted

Confidential

Shatsky-JD00265-T

שגיאה! שם מאפיין מסמך לא ידוע.

## Prisoner Salary Statement

Prisoner no. 9460
Prisoner Name: Mohammad Ativa Mahmoud Abu Warda      Document no. 901065359

| Month | Year | Beneficiary | ID no. | Bank Name | Branch | Account no. | Salary |
|-------|------|-------------|--------|-----------|--------|-------------|--------|
| | | | Redacted | | | | |
| 4 | 2020 | Nura Burhan A-Din Ja'abri | Redacted 4499 | | | | 7,132.50 |
| 5 | 2020 | Nura Burhan A-Din Ja'abri | Redacted 4499 | | | | 7,132.50[*] |
| 6 | 2020 | Nura Burhan A-Din Ja'abri | Redacted 4499 | | | | 7,532.20 |
| 7 | 2020 | Nura Burhan A-Din Ja'abri | Redacted 4499 | | | | 7,132.50 |
| 8 | 2020 | Nura Burhan A-Din Ja'abri | Redacted 4499 | | | | 7,132.50 |
| 9 | 2020 | Nura Burhan A-Din Ja'abri | Redacted 4499 | | | | 7,132.50 |
| 10 | 2020 | Nura Burhan A-Din Ja'abri | Redacted 4499 | | | | 7,132.50[*] |
| 11 | 2020 | Nura Burhan A-Din Ja'abri | Redacted 4499 | | | | 7,532.20 |
| 12 | 2020 | Nura Burhan A-Din Ja'abri | Redacted 4499 | | | | 7,132.50 |
| 1 | 2021 | Nura Burhan A-Din Ja'abri | Redacted 4499 | | | | 7,132.50 |
| 2 | 2021 | Nura Burhan A-Din Ja'abri | Redacted 4499 | | | | 7,132.50[*] |
| 3 | 2021 | Nura Burhan A-Din Ja'abri | Redacted 4499 | | | | 7,119.84 |
| 4 | 2021 | Nura Burhan A-Din Ja'abri | Redacted 4499 | | | | 7,085.00 |
| 5 | 2021 | Nura Burhan A-Din Ja'abri | Redacted 4499 | | | | |

Confidential

Shatsky-JD00266-T

שגיאה! שם מאפיין מסמך לא ידוע.

# Translator's Certification

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SHABTAI SCOTT SHATSKY, *et al.*,

                                    Plaintiffs,

v.                                                              Case No. 18-cv-12355 (MKV)

THE PALESTINE LIBERATION
ORGANIZATION and THE PALESTINIAN
AUTHORITY,

                                    Defendants.

## DECLARATION OF YANIV BERMAN

I, Yaniv Berman, declare pursuant to 28 U.S.C. § 1746, as follows:

1.      I am a professional translator with an M.A. degree in Middle Eastern Studies from the Hebrew University of Jerusalem (Israel).  I read Arabic and English fluently, and I am qualified to translate from Arabic into English.

2.      I certify that the attached documents are true and accurate translations of the Arabic originals designated as "Shatsky-JD00012" through "Shatsky-JD00534."   The translations are labelled with Bates numbers that correspond to the original documents, with the addition of a "-T" at the end to indicate that it is a translation.

3.      To the extent that some of the information in the original documents was not clearly legible, I have translated such information into English to the best of my ability.  Such instances are marked with an asterisk ("[*]").

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated:  June 24, 2021

Yaniv Berman





كشف رائب سير

رقم الأسير   9430
اسم الأسير   عطية محمود أبو ورده

رقم البطاقة   901065359

CONFIDENTIAL

Shatsky-JD00259



CONFIDENTIAL

Shatsky-JD00260



كشف راتب أسير

رقم الأخير 9460

رقم الوثيقة 901065389

اسم الأسير محمد خديجة محمود ابوزيد

| الرقم | رقم الحساب | النوع | البنك | رقم الدفعة | اسم المستفيد | السنة | الشهر |
|---|---|---|---|---|---|---|---|

Redacted

Redacted

لا مرزتصفحة

CONFIDENTIAL