# Exhibit 150

CONFIDENTIAL                                    SHATSKY-JD01348-T

| [Palestinian Authority emblem] | |
| --- | --- |
| State of Palestine | |
| Ministry of Detainees and Ex-Detainees Affairs | |
| General Administration for Administrative and Financial Affairs | |
| Archive Department | |
| 18205 | **Mohammed Abdel-Basset Awda Haroub** |

Important note: The file contains two files of two separate prisoners.

Kindly pay attention to this to avoid confusing the two.

CONFIDENTIAL                                    SHATSKY-JD01348-T

7/28/21

j.b

**Salem 9**

SHATSKY-JD01351-T                                                                   CONFIDENTIAL

[in large handwriting:] *2486*

[handwritten in Arabic]: *Mohammed Abdel-Basset Haroub Decision and Order of March 19, 2017*

**Israel Defense Forces**

[blurred logo]

**The Military Court in Judea**                                              **Case No.: 1149/16**

**Before the Hon. Presiding Judge: Lieutenant Colonel Zvi Heilbraun**
**Before the Hon. Judge: Itai Adar**
**Before the Hon. Judge: Chaim Belilti**

**The Military Prosecution**
(by counsel, Lieutenant Yaala Tzeflowey and Captain Barak Tamir)

-v-

[handwritten in Arabic:] Awda Mohammed Awda Haroub

**the Defendant: Awda Mohammed Awda Haroub,** [Redacted] **7950/The Israel Prison Service - Present**

(by counsel, Attorney Khaled A'raj - Present)

<u>**Sentence**</u>

The abominable crimes of which the Defendant has been convicted were punctiliously planned for a protracted period of time, and on November 19, 2015, the most terrible of all occurred. Using an Uzi assault rifle and while driving, the Defendant took advantage of a traffic jam, pulled out the rifle, and began shooting without mercy. He replaced, during the course of the shooting, three empty magazines with full ones and fired no less than 75 bullets - three full magazines - toward the vehicles at the Gush Etzion junction. Even after the bullets were finished, the Defendant intentionally crashed the vehicle that he was driving into a vehicle bearing Israeli license plates with the objective of striking at and bringing about the death of Jews. As a result of the cruel shooting, three people lost their lives: Yaakov Don, Ezra Schwartz, and Shadi Urfa, of blessed memory. Additional citizens were hit and injured.

**The Account of the Offenses**

The Defendant who aimed, as aforementioned, already years prior thereto, to murder as many Jews as possible purchased a handgun for NIS 20,000 approximately two years before November 19, 2015. He planned to use the handgun to execute a terror attack one half year later, but while still in Be'er Sheva, he discerned many security forces and canceled his plan because he concluded that he would not succeed in causing an optimal terror attack. Subsequently, approximately one year prior to his arrest, he planned an additional terror attack but changed his mind due to a dispute with his family and his concern less he die prior to the resolution of the dispute.

In February 2015, the Defendant purchased additional weapons, an Uzi assault rifle and three compatible magazines and bullet boxes for NIS 22,000. Since then, once a month, the Defendant would practice shooting with the weapon, oiled it, took care of it, and even took it to someone to have it painted. Defendant additionally purchased compatible ammunition for the rifle.

In October 2015, the Defendant decided that the time had come for perpetrating the terror attack. He conducted a final training with the Uzi rifle and bought three bullet boxes for 600 shekels. A number of weeks afterward, the Defendant decided that

[Round stamp in Arabic:]
PLO
Department of Detainees and
Ex-detainees
07.10.2018
Gen. Dir. Of for Legal Affairs
Reviewed

[Handwritten in Arabic:] security

SHATSKY-JD01351-T

CONFIDENTIAL

SHATSKY-JD01352-T

CONFIDENTIAL

Date: March 19, 2017          The Military Court in Judea          Case No.: 1149/16

he would execute the terror attack on his 21st birthday, November 19, 2015. Two days prior thereto, the Defendant wrote a last will and testament for his family members and one day prior thereto, traveled to visit family members. Defendant gave the will to his brother.

Steeped in hatred, the Defendant departed in a vehicle bearing Israeli license plates and went in search of victims. At first, he thought of shooting toward a bus stop, but when he arrived at the scene, he discerned two soldiers and an older woman and decided that that was not sufficient. On his way back to the Gush Etzion junction, he discerned a traffic jam in the lane to his left. It was then that the Defendant took advantage of the slowdown in traffic, drew out the rifle from the left window of his vehicle while driving with his other hand and the other hand holding the rifle, and started shooting in every direction.

With frighteningly cool equanimity and burning hatred, the Defendant executed the terror attack. He shot toward a Citroen vehicle, causing the death of Yaakov Don, of blessed memory, and injuring Ora Liba Friedman in her face. Afterward, he fired approximately one full magazine while on automatic toward a Renault minivan, causing the death of Ezra Schwartz, of blessed memory, and attempting to cause the death of the remaining passengers of the vehicle: Yaakov Greener, Jason Geller, Shlomo Bijou, Michael Ben Zaken, Yosef Harari, and Luria Simeon. The Defendant continued shooting toward nearby vehicles, including toward a Volkswagen that Shadi Urfa, of blessed memory, was driving, thereby killing him. He also fired toward a Ford in which Maya Brenner, and her daughter, Darya, were traveling. The bullets penetrated the vehicle, but fortunately, the two were not hit. Finally, the Defendant fired toward an Egged bus and toward additional vehicles in order to increase the loss of life until the bullets in all three of the magazines that were in his possession were finished.

Even then the Defendant did not rest from his malice but decided to cause a collision in order to bring about the death of additional Jews. He crashed into a vehicle driven by Yonat Lemberger in order to cause her death. As result of the collision, Ms. Lemberger was struck and injured.

In light of all of the said actions, on the basis of his confession, the Defendant was convicted for three offenses of intentional causation of death, 10 attempts at intentional causation of death, two offenses of trading in military equipment, two offenses of weapons possession, and the offense of a breach of an Area Closure Order.

## The Evidence and the Arguments for the Sentence

The character of Ezra Schwartz was described to us in the testimony by his bereaved mother, Ms. Schwartz, and his friend, Michael Ben David, who was present with him in the vehicle at the moment of the terrible terror attack.

Ezra Schwartz, of blessed memory, was 19 years old at his death. He had come to Israel in order to learn in a yeshiva in Beit Shemesh, travel the land, and perform acts of kindness. The day on which he was brutally murdered was a routine day on which he had alighted the minibus on his way to perform works of kindness. The trip began as usual, accompanied with jokes. "It was the same, regular sunset. Nothing felt unusual. Around 4:30 pm, everything changed forever," his friend Michael Ben Zaken testified, a friend whose life was saved miraculously despite the massive firing of bullets toward the vehicle in which he traveled together with Ezra, of blessed memory, and others.

The decedent's mother described the character of her son, of blessed memory, much as everyone knew and described him, and as he will be preserved forever in the memory of his family members, his friend, and all of his peers:

"On a beautiful summer day this past August, we had the hakamat hamatzeva at Ezra's grave. We asked 25 of Ezra's friends to speak. Each of them spoke so perfectly. **Each of**

[Round stamp in Arabic:]
PLO
Department of Detainees and
Ex-detainees
07.10.2018
Gen. Dir. Of for Legal Affairs
Reviewed

2

SHATSKY-JD01352-T                                                                          CONFIDENTIAL

SHATSKY-JD01353-T

CONFIDENTIAL

<u>Date: March 19, 2017</u>          <u>The Military Court in Judea</u>          <u>Case No.: 1149/16</u>

> their stories was different but the same themes came
> through. Ezra was mischievous, Ezra was a leader, Ezra
> was kind, and Ezra was thoughtful." (emphasis added)

The decedent's sister described Ezra, of blessed memory, according to his mother, as the most caring, enthusiastic, intelligent, and entertaining person with whom she was fortunate to share her life and described the hole in her heart that was rent open since the incident. The mother further recounted how the decedent was dear and beloved to all of his friends, how everyone loved him and sought to be close to him, a closeness and friendship for life. We also learned that Ezra was a calm person, who inspired a sense of security for all of those around him, and who helped everyone, even people who were not close friends. The bereaved mother's words included many stories about his unique personality and his numerous qualities:

> "There are so many stories of Ezra's silliness, inclusiveness,
> kindness, and caring. We who knew Ezra are very lucky. We
> have so many memories and stories that have and will
> continue to enhance our lives."

Let it be, and may his memory be blessed.

The widow of Yaakov Don, of blessed memory, Ms. Sara Don, testified before us: She stated that a few moments after they parted at the entrance to the community, Yaakov, of blessed memory, was shot by the Defendant, whose sole desire was to murder as many Jews as possible. She described the decedent:

> "A man who was all love. Love for his dear parents, Yehuda and Malka Don, who survived
> Auschwitz, where they lost their entire family, and who established
> a glorious family in Israel. Yaakov took care of them and supported them. Love for the children and for me. His family
> always came before everything. Constant concern that it should be good for everyone. Exceptional love
> for his students. Over the course of the years, Yaakov was a beloved and admired educator for the youth of
> Gush Etzion, both as a high school teacher as well as a person who the youth of the region knew they could always turn
> to
> about anything and always get help. In the book that his students put out with their letters
> that they sent him, the statement repeats itself that Yaakov's love and acceptance as an educator
> and the belief in their ability shaped their lives. Hundreds of youths
> go around in Gush Etzion with the bracelet that I wear, on which it is written, 'In memory of
> Yaakov Don, a wide smile and a deep heart.' Yaakov loved, respected every person, Jew,
> Arab, everyone, regardless of his opinions or affiliation. Pure love."

She also described the family's feelings since the tragic incident:

> "In an instant, all of that goodness and love, all of that vitality was chopped off
> when it was met with evil and pure hatred, and we are forced to deal with, day in and day out,
> the powerful loss of Yaakov from our lives, a lack that will never be filled. Six months
> have past, and we are still having difficulty coming to grips with Yaakov not being here. It still -
> it does not seem real or possible that his heart and his existence are not heard. We are missing
> his warm, rolling laughter that filled the entire house, the loving hug

that embraced me and the children and the sense of security that he always gave us... and my children are continuing their lives when the father who was so important for them is not there to see them blossoming, growing, not there to give support and advice at life's junctures big and small, not there to love."

[Round stamp in Arabic:]
PLO
Department of Detainees and
Ex-detainees
07.10.2018
Gen. Dir. Of for Legal Affairs
Reviewed

3

CONFIDENTIAL

SHATSKY-JD01354-T

CONFIDENTIAL

Date: March 19, 2017          The Military Court in Judea          Case No.: 1149/16

The widow requested that the Defendant, who had knowingly set out on a campaign to murder, not see the light of day forever and that everyone who had assisted his crimes would be severely punished. She asked that everything be done to deter and prevent others from hurting additional families.

The brothers and sister of the decedent Yaakov, of blessed memory, also testified. We also learned from the words of the decedent's sister, Ms. Shulamit Fisher, that Yaakov, of blessed memory, was a man of peace and an admired teacher who made it a point to respect the dignity of every person as such. He was beloved to his neighbors, Jews and Arabs alike. Ms. Fisher described the tremendous pain with which the family - and particularly, the widow, Sara, of her brother, of blessed memory - deals and the great sorrow of his hundreds of students. She noted that the decedent recently received the education prize for his outstanding legacy. The brother of Mr. Don, of blessed memory, discussed the hierarchy of values of the decedent, values of human dignity, the sanctity of life, and the love of others that he imparted to his students and his orphaned children. Values pursuant to which one may not punish innocents even at times of difficult terror attacks in which Jews are murdered just because they are Jews.

The brother-in-law of the decedent, the brother of the widow, Mr. David Ben Dor, described how difficult the occasion was for him. He recounted that the decedent for him was "a real brother, a rare person of a good heart who did good for every person as such." He noted that it is impossible to describe the pain that he feels in seeing his amazing family - his sister full of the joy of life turning into a widow and his four children into orphans. A pain too hard to bear. He added:

"In a repaired world, it would not be possible to imagine evil and murderousness as that which is present here before us
in the revolting murderer... The despicable person who sits here before us chose the way of evil
and murder and left entire families destroyed. Everyone should know that our family,
which lived through the Holocaust and arrived in Israel and took part in establishing the state,
will not be broken. We have but one nation, one land, and one state. But we are left mourning
and missing the most dear to all of us... What is left for us is the duty to engage in repairing
the world and eliminating evil from the world. To make sure that this person, whom it is even difficult for me
to call a person in light of his act, will not see the light of the sun until his last day. That
will not bring back to us what he has taken from us, but that is the least that can be done
in the world that we want to repair."

May his memory be blessed.

The family of Shadi Urfa, of blessed memory, was not found by the Military Prosecution and did not come to the sentencing hearing. The Prosecution noted that he was an additional victim who is a world and all of its contents and that assuredly his loss is felt amongst his family and friends. May his memory be blessed.

At the sentencing hearing, the Prosecution discussed the circumstances surrounding the execution of the acts of murder. The Defendant's premeditated plan and the manner of execution of the murder without an ounce of mercy were described. The Defendant did not ascertain and was not interested in the identity of the people who were sitting in the vehicles on which he fired, whether they were women, children, adults, or even Palestinian residents of the area. Similarly, it was noted that it is difficult to comprehend the magnitude and severity of the act. The Prosecution also discussed the quantity of the bullets that were shot in the incident as opposed to the helplessness of the victims.

[Round stamp in Arabic:]
PLO
Department of Detainees and
Ex-detainees
07.10.2018
Gen. Dir. Of for Legal Affairs
Reviewed

4

SHATSKY-JD01354-T

CONFIDENTIAL

SHATSKY- JD01355-T                                                                CONFIDENTIAL

__Date: March 19, 2017__          __The Military Court in Judea__                    __Case No.: 1149/16__

The Prosecution noted that no punishment could be enough, there is no price that the Defendant could pay to atone for his deeds, and the Defendant expressed no sorrow nor regret for them. Alongside that, it sought to impose the maximum sentence that exists in the law in an attempt to create a sense of justice among those against whom the greatest iniquity of all was perpetrated.

In light of the murder of three people, the Prosecution sought to impose life imprisonment for each life. It also sought to impose an additional life imprisonment for the additional attempts to cause death pursuant to the "**Nofel** " ruling. The Prosecution described the tests that were established in that decision and noted that they are met in the instant case. In that context, the indiscriminate shooting, the proximity to the perfect crime, the potential level of danger, the meticulous planning, and the circumstances during that period of numerous incidents of terror were described. Given all of the aforementioned, it sought to impose a sentence of four cumulative life imprisonment terms and significant damages for the families of those who were murdered.

The defense attorney, in one opinion with his client, entered no plea regarding the sentence. The Defendant also did not say anything.

__Discussion and Determination__

The intentional taking of human life is a strike at the highest and most important value in civilized society - the sanctity of life. The Defendant deliberately desecrated and treaded on that value with precise and protracted planning. Obsessed, he set out to realize his malicious objective to bring about the murder of Jews and did not rest until he reached it and caused the death of three people. The Defendant's plan was formulated a good deal of time prior to the terrible incident and had not been realized only because of his criminal intent to kill as many Jews as possible and execute a multi-victim terror attack. Through his actions, the Defendant cut down, within a few seconds, the lives of three innocent people, struck and injured others, and attempted to perform many more attacks on body and spirit out of hatred for its own sake and indescribable cruelty. To strike at the value of the sanctity of life is the most severe harm from which there is no return.

The importance of the value of the sanctity of life has already been emphasized in Hebraic law sources and the literature of the sages. So writes Maimonides in his work, "Mishneh Torah":

"... A person was created solitary in this world to teach us that anyone who causes the loss of one life from the world is considered as if he caused the loss of an entire world and anyone who sustains one life in this world is considered as if he sustained the entire world. After all, everyone in the world is created in the form of Adam, and no one person's face is like that of his fellow. Therefore, each and every person can say, 'The world was created for me.'" (Maimonides, Mishneh Torah, **Laws of Sanhedrin**, Chapter 12, Rule 3)

Similarly, the Mishnah elucidates the tremendous loss involved in the killing of a person, comparable to an entire world being cut off:

"Know that capital cases are not like monetary cases. In monetary cases, a person can give money and be atoned. In capital cases, his blood and the blood of his offspring remain pending until the end of the world. Thus, we see that as to Cain, who killed his brother, as it is stated, 'The blood of your brothers are screaming out,' it does not say, 'The blood of your brother,' but the 'blood of your brothers,' his blood and the blood of his offspring." (Mishnah, Sanhedrin 4 ; 5)

[Round stamp in Arabic:]
PLO
Department of Detainees and
Ex-detainees
07.10.2018
Gen. Dir, Of for Legal Affairs
Reviewed

5

SHATSKY- JD01355-T                                              CONFIDENTIAL

SHATSKY- JD01356-T                                                                      CONFIDENTIAL

<u>Date: March 19, 2017</u>          <u>The Military Court in Judea</u>          <u>Case No.: 1149/16</u>

And, indeed, the Defendant not only caused the loss of the world of the three victims, but he also brought about the loss of their family members and dear ones. The severity of the acts and the intensity of the harm to the value of human life must receive explicit expression in strict and appropriate punishment, punishment that reflects, as noted previously, the exalted value of human life.

The Supreme Court also discussed the value and the sanctity of human life and its preeminence.
"A person - every person - is a world unto himself. A person – any person – is one, singular,
and special. And no person is like another person. Whoever was, will no longer be, and whoever is gone, will not
return...
Thus is the person, and that is his uniqueness." (CrimA 1742/91 **Popper v. State of Israel** 51 PD 5,
289, Opinion of the Hon. Justice Cheshin).

Similarly,
"Preserving the sanctity of life, including enshrining this sanctity in everyone's
consciousness - that is what stands as the highest purpose of punishment where the issue is the taking of human life,
and the Court must bear that in mind when imposing sentence
for murder and homicide offenses. It is with good reason that the Commandment, "You shall not kill," is set at the head
of the Commandments that express the basic rules of life in civilized society.
It is because there is nothing worse than that. (CrimA 4419/95 **Haddad v. State of Israel**, 50 PD
2, 752, Opinion of the Hon. Justice Kedmi).

The evil of the Defendant's actions and their consequences endure forever. His grave and callous acts deserve the most severe punishment on the books - incarceration behind lock and key forever. That punishment, while it cannot heal the result of the shocking crimes and return to the families the dear ones who were lost, at least it can lead to the distancing of the base Defendant from the society of humanity for the rest of his days.

As previously noted, the murderous acts took the lives of three victims, for which the Defendant was convicted of three offenses of intentional causation of death. In such case, and out of the belief in the value of the sanctity of human life, the Defendant must be punished by the imposition of sentence for each act of murder separately and cumulatively. That justification is valid and in force even if we are dealing with actions that were performed in the framework of a single event as defined in the law, as (the then) Chief Justice Shamgar has already written:
"All of the evil in a separate offense stands on its own legs, and beyond that -
it is appropriate and proper that the taking of a human life finds explicit, identified, and separate expression
in the punitive measures. The sentencing of overlapping penalties of imprisonment for a number of murderous acts,
even if they are performed consecutively, implies a type of mitigation
of the horror that was the malicious and intentional cause of death of a line of people...
Our fundamental understanding regarding the value of human life deserves to be given
expression also when we are adjudicating different and separate acts of murder..." (CivA 399/89
**State of Israel v. Zalum** 46 PD 2, 187 (1992); see also the opinion of the
Hon. Justice Dorner in **Popper**, p. 307).

Given the aforementioned and taking note of the appropriate sentencing policy in murder offenses, we believe that a sentence of three terms of life imprisonment should be imposed on the Defendant, to run cumulatively, for the intentional causation of death of Yaakov Don, of blessed memory, Ezra Schwartz, of blessed memory, and Shadi Urfa, of blessed memory.

> [Round stamp in Arabic:]
> PLO
> Department of Detainees and
> Ex-detainees
> 07.10.2018
> Gen. Dir. Of for Legal Affairs
> Reviewed

6

SHATSKY- JD01356-T                                                                CONFIDENTIAL

SHATSKY- JD01357-T                                                CONFIDENTIAL

Date: March 19, 2017          The Military Court in Judea               Case No.: 1149/16

From here, we move on to our plea that we impose on the Defendant an additional sentence of life imprisonment for the rest of the offenses of which he is convicted, among them, attempts at the intentional causation of death of additional people in the same incident. The Prosecution referenced the well-known decision in **Nofel**, where it was held:

"There are a number of circumstances that we can point to that can bring an offense of attempted intentional causation of death to the threshold of severity that warrants an examination of the use of this punishment.

As previously noted, the measure of proximity to the realization of the perfect crime will ordinarily constitute an appropriate

index for the examination of the severity of the offense. As a rule, someone who had the means that were compatible with causing death and took those actions that are sufficient to cause that result,

actions after which there is no possibility for the actor to impact

the result, his matter may be brought under the rubric of those cases that warrant the use

of the penalty of life imprisonment... Other cases wherein it is proper to consider such

sentence... where there was a single attempt to kill many people... The Court will also weigh,

among its considerations, not only the result that the attemptor hoped

to achieve but also the manner in which he intended to attain that objective and the target of the terror attack.

In that framework, a sentence of life imprisonment can be considered under those cases

that involve a great measure of cruelty in the means that the attemptor

used... And finally, the additional central consideration that the Court must take into account

relates to the scope of the criminal phenomenon that is revealed to us." (Judea and SamariaD

120/02 **Nofel v. The Military Prosecution**).

The tests that were established in the **Nofel** ruling are met in our case. We are dealing with a large number of attempts at intentional causation of death even though this was a single incident. The Defendant, it should be remembered, even set out, at earlier opportunities, with an intention and desire to perform terror attacks and even possessed a handgun for a long time prior to purchasing the rifle with which he executed the terrible terror attack. While it was a single event of protracted shooting, in its context, the Defendant sought to take the lives of many. We note that the Defendant possessed the appropriate means to cause death and also did so and murdered three people innocent of all crime. His attempts were dangerous, and only through good fortune, the results of this accursed incident were not more difficult and horrible. A portion of those involved whom the Defendant attempted to murder were injured, during the course of the incident, from the shooting. Bullets that the Defendant shot penetrated vehicles but miraculously, did not injure their passengers. The Defendant's actions were characterized by cruelty in that, for a part of the time, he shot on automatic at short range in the light of day solely in order to increase the killing. He did not cease from acting until all of the bullets in his magazines were finished, and even then, he tried to crash into another vehicle in order to bring about the death of the driver sitting therein. In light of the above and given the circumstances of the execution of the offenses and the motivation to execute them as well as the security situation at that time during which many fatal terror attacks were performed, some of which in the same manner, the imposition of an additional sentence of life imprisonment is warranted with respect to all of the ancillary offenses that will be served cumulatively.

A decade ago, in a similar context, the Supreme Court held:

"Each and every person has his own right to life and bodily integrity, and he who takes life

or who injures the body of a person contrary to law is charged with his actions and is subject to punishment. Thus it is

when harming one person. Whereas, where someone injures, contrary to law, a number of

persons... that someone is criminally charged and is subject to punishment for each and every one
of the harms. In an incident such as this, the Court is authorized to accrue
sentences back-to-back." (CrimA 9804/02 **Sar v. State of Israel**, 58 PD 4, 461).

Further in **Popper**:

"... When we are dealing with violent acts, each one of the casualties has an independent
interest in his bodily integrity. The harm to one person's bodily integrity does not constitute harm
to the bodily integrity of another. Even if, from a "technical" perspective, it is a question of one sequence of

> [Round stamp in Arabic:]
> PLO
> Department of Detainees and
> Ex-detainees
> 07.10.2018
> Gen. Dir. Of for Legal Affairs
> Reviewed

7

SHATSKY- JD01357-T                                                    CONFIDENTIAL

SHATSKY- JD01358-T                                                    CONFIDENTIAL

Date: March 19, 2017          The Military Court in Judea          Case No.: 1149/16

> actions that resulted in a number of victims, the harmful acts must be addressed
> individually. This is the necessary conclusion also from a moral standpoint, which recognizes
> the sanctity of a person's life as a fundamental value. The value of a human life and our profound revulsion from
> actions that harm it must also find an explicit and separate expression in the imposition of
> a sentence both regarding the number of penalties that should be imposed on the defendant as well as
> in the matter of their accumulation." (**Popper**, p. 307)

As to the damages component, we believe that the damage caused to each of the families of the deceased is tremendous and is not atonable and certainly not through the award of monetary damages. Nevertheless, we found that there is place to impose pecuniary damages if only symbolically for the benefit of each of the victims' families. Therefore, damages in the sum of 250,000 shekels will be imposed on the Defendant in favor of each of the decedents' estates.

Our ability to describe and express in words the revulsion from the Defendant's crimes falls short. It appears that words - are insufficient to faithfully describe the horror that they embody and the worlds that were laid waste in an instant. We do not purport to fill the vast void that has opened up at the door of the victims' families and not even to heal the wounds of the casualties. All that we have the power to do is to impose a sentence that can express condemnation of the offenses and the Defendant by human society. The Defendant, who violated the human image within him, his victims, and all of humankind, is no longer worthy of walking free among them.

**Conclusion**

We find to impose the following sentences on the Defendant:
**Life imprisonment for the murder of Yaakov Don, of blessed memory.**
**Life imprisonment for the murder of Ezra Schwartz, of blessed memory.**
**Life imprisonment for the murder of Shadi Urfa, of blessed memory.**
**An additional term of life imprisonment for the conviction of the Defendant of 10 offenses of attempted intentional causation of death of additional citizens and the offenses of trade in military equipment and the possession thereof.**

**The four terms of life imprisonment shall be served consecutively.**

**The Defendant shall compensate the estate of the decedent Yaakov Don, of blessed memory, with the sum of NIS 250,000, Voucher No.: 0000245115.**
**The Defendant shall compensate the estate of the decedent Ezra Schwartz, of blessed memory, with the sum of NIS 250,000, Voucher No.: 0000245215.**
**The Defendant shall compensate the estate of the decedent Shadi Urfa, of blessed memory, with the sum of NIS 250,000, Voucher No.: 0000245315.**
**The damages shall be paid within three years of today.**

**The right to appeal ends 30 days from today.**

**Issued and noticed today, March 19, 2017, to the public and in the presence of the parties.**

| [signature] | [signature] | [signature] |
| --- | --- | --- |
| Judge | Presiding judge | Judge |

[Round stamp in Arabic:]
PLO
Department of Detainees and
Ex-detainees
07.10.2018
Gen. Dir. Of for Legal Affairs
Reviewed

8

SHATSKY- JD01358-T                                                    CONFIDENTIAL

CONFIDENTIAL                    18205                    SHATSKY-JD01360-T

OK

| [English] State of Palestine | [Emblem of the Palestinian Authority] | [Arabic] State of Palestine |
|---|---|---|
| Ministry of Detainees & Ex-detainees Affairs | | Ministry of Detainees & Ex-detainees Affairs |
| Gen. Dep. Detainees & Ex-detainees | | Gen. Dep. Detainees & Ex-detainees |

266418

Ja'far

**Personal Information of Prisoner / Ex-Prisoner**

[Round stamp: P.A. / Dep. Detainees & Ex-detainees / 3.7.2016 / Gen. Dep. Of Legal Affairs. Checked. Indictments.

| Form no.: | | | | | | | | Prisoner No.: according to regulations | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Form issuance date: | 12.1.2016 | | | | | Ministry's administration/branch: | | Hebron | | | | | | |

**1. Basic information concerning the prisoner/ex-prisoner:**

| Doc. Type: | ☑ Palestinian | ☐ Jerusalem | | ☐ Israeli | | ☐ Passport | | Other ( ) | |
|---|---|---|---|---|---|---|---|---|---|
| Doc. No.: | Redacted | | | | 7 | 9 | 5 | 0 | |

| Four-part name: | First name | Father's name | Grandfather's name | Family name |
|---|---|---|---|---|
| | Mohammed | Abdel Basset | Awda | Haroub |

| DoB | Redacted .94 | Place of birth: | Dir [illegible] |
|---|---|---|---|
| Gender: | ☑ Male   ☐ Female | Nationality: | Palestinian |
| Religion: | Muslim | Mother's name: | Ataf |

| Marital status: | ☑ Single | ☐ Married | ☐ Divorced | ☐ Widow |
|---|---|---|---|---|

| Education: | ☐ Illiterate | ☐ Elementary | ☑ High school | ☐ Diploma | ☐ University | ☐ Higher education |
|---|---|---|---|---|---|---|
| Specialty/Major | | | | | | |
| Organization: | | | | | | |
| Refugee status: | ☐ Registered refugee   ☐ Not a refugee | | | | | |
| Profession prior to arrest: | ☐ Public servant  ☐ Work No.: ( ) | | | ☐ Other ( ) | | |
| Work type: | ☐ Military   ☐ Civilian | | | | | |

| Permanent residence: | Country: Palestine | Governorate: Hebron | |
|---|---|---|---|
| | Complex: Redacted | Neighborhood: | OK |
| | Address: Redacted | | |

| Landline Tel.: | | Fax No.: | |
|---|---|---|---|
| Cellular Tel.: | Redacted | 2nd Cellular Tel.: | |
| E-Mail: | | | |
| Notes: | | | |

1

CONFIDENTIAL                                        SHATSKY-JD01360-T

CONFIDENTIAL                                                         SHATSKY-JD01361-T

| [English] State of Palestine | [Emblem of the Palestinian Authority] | [Arabic] State of Palestine |
|---|---|---|
| Ministry of Detainees & Ex-detainees Affairs | | Ministry of Detainees & Ex-detainees Affairs |
| Gen. Dep. Detainees & Ex-detainees | | Gen. Dep. Detainees & Ex-detainees |

**3. Current Arrest Information:**

| Arrest date: | 11.19.2015 | | | Type of arrest: | | ☐ Security | | ☐ Civilian |
|---|---|---|---|---|---|---|---|---|
| Arrested from: | ☐ Home  ☐ Crossing  ☐ Other | | | Current prison: | | | | |
| Arrest status: | ☐ Detained | ☐ Sentenced | ☐ Administrative | | ☐ Other | | | |
| In case of life sentence according to ICRC Certificate | Day | Month | Year | Expected release date according to verdict: | | Day | Month | Year |
| | | | | | | | | |
| Sentence date: | | | | Release date: | | | | |
| Notes: | | | | | | | | |

**4. Information concerning previous arrests:  Previous arrests: (Only those attested to by ICRC certificates)**

| [Illegible] | [Illegible] | [Illegible] | [Illegible] | [Illegible] | [Illegible] | [Illegible] |
|---|---|---|---|---|---|---|
| 1. | | | | | | |
| 2. | | | | | | |
| 3. | | | | | | |
| 4. | | | | | | |
| 5. | | | | | | |
| 6. | | | | | | |
| 7. | | | | | | |
| 8. | | | | | | |
| 9. | | | | | | |
| 10. | | | | | | |

**5. Health Condition (of the prisoner/ex-prisoner)**

| Do you suffer any illnesses? | ☐ Yes    ☐No | The illnesses: | |
|---|---|---|---|
| Date illness began: | /      / | | |
| Do you suffer from disability / handicap? | ☐ Yes    ☐No | Type of disability / handicap | ☐ Chronic   ☐ Temporary |
| Disability/handicap percentage | % | Disability attested to by a report: | ☐ Yes    ☐No |
| Medical report date: | | Issued by: | |
| Notes: | | | |

3

CONFIDENTIAL                                                         SHATSKY-JD01361-T

CONFIDENTIAL                                                                                        SHATSKY-JD01362-T

| [English] State of Palestine | [Emblem of the Palestinian Authority] | [Arabic] State of Palestine |
|---|---|---|
| Ministry of Detainees & Ex-detainees Affairs | | Ministry of Detainees & Ex-detainees Affairs |
| Gen. Dep. Detainees & Ex-detainees | | Gen. Dep. Detainees & Ex-detainees |

**6. Information Concerning the Beneficiaries of the Prisoner/ex-Prisoner's Allowance:**

**A. First Beneficiary:**

| Name (First Beneficiary): | Ataf Jamil Mahmoud Haroub | | Relationship: | Mother |
|---|---|---|---|---|
| Document Type: | | | Doc. No.: | |
| Tel. No.: | | | Cellular Tel. No.: | |
| Governorate: | Hebron | | Complex: | redacted |
| Bank: | redacted | | Branch: | |
| Account No.: | | | Current account in shekels only | |
| In Case the Sum is Divided: | No.: | Percentage: | % | |

**B. Second Beneficiary (If Exists):**

| Name (First Beneficiary): | | Relationship: | |
|---|---|---|---|
| Document Type: | | Doc. No.: | |
| Tel. No.: | | Cellular Tel. No.: | |
| Governorate: | | Complex: | |
| Bank: | | Branch: | |
| Account No.: | | Current account in shekels only | |
| In Case the Sum is Divided: | No.: | Percentage: | % |

| Applicant's Notes: | |
|---|---|
| Confirmation: | I the undersigned confirm and testify that all of the information provided in this application is correct and I take responsibility for it. |
| Applicant's Signature: | |

4

CONFIDENTIAL                                                                                        SHATSKY-JD01362-T

CONFIDENTIAL                                            SHATSKY-JD01363-T

| [English] State of Palestine | [Emblem of the Palestinian Authority] | [Arabic] State of Palestine |
|---|---|---|
| Ministry of Detainees & Ex-detainees Affairs | | Ministry of Detainees & Ex-detainees Affairs |
| Gen. Dep. Detainees & Ex-detainees | | Gen. Dep. Detainees & Ex-detainees |

**7. For Official Use:**

| Advisor/Employee's Name: | Muhammad [illegible] | | |
|---|---|---|---|
| Advisor/Employee's Notes: | | | |
| Date: | 1.12.2016 | Signature: | [handwritten signature] |
| Administration Head's Name: | Ibrahim Dawud | | |
| Administration Head's Notes: | No objection | | [Handwritten signature and round stamp: P.A. / Dep. Detainees & Ex-detainees / Hebron Administration |
| Date: | 1.12.2016 | Stamp and Signature: | |

**Attached Documents: Check (V) alongside attached documents (confirmation and approval of the Administration's head)**

| | | | |
|---|---|---|---|
| ☑ | Prisoner/Ex-prisoner's copy of ID | ☑ | ICRC certificates |
| ☑ | Indictment following arrest, after 1.1.2007 | ☐ | Verdict decision (if available) |
| ☑ | Copy of bank account card | ☐ | Copy of authorized marriage certificate |
| ☐ | Copies of children's birth certificates | ☐ | Addendum of additional wife/wives |
| ☐ | Copies of education certificates | ☐ | Original report for percentage of disability/handicap |
| ☐ | Other (specify) | | |

**8. Confirmation and Approval:**

| 1. Confirmation by Prisoners' Affairs | ☐ I approve the confirmation of the Prisoner Form (per regulations and laws) | | |
|---|---|---|---|
| Name of authorized employee: | | | |
| Date: | /   / | Stamp and signature: | |
| | ☐ I do not approve the confirmation of the Prisoner Form | | |
| Reasons and causes: | | | |

| 2. Confirmation by Legal Affairs: | ☐ I approve the confirmation of the Prisoner Form (per regulations and laws) | | |
|---|---|---|---|
| Name of authorized employee: | | | |
| Date: | /   / | Stamp and signature: | |
| | ☐ I do not approve the confirmation of the Prisoner Form | | |
| Reasons and causes: | | | |

5

CONFIDENTIAL                                            SHATSKY-JD01363-T

SHATSKY-JD01365-T                                                    CONFIDENTIAL

<u>Israel Defense Forces</u>

In the Military Court                          Court File:      /15
Judea                                         Prosecution File: 4176/15
Before a panel                                Police File 503741/15 (Ashkelon)

<u>In the case between the Military Prosecutor – Prosecuting</u>

<u>- vs -</u>

**Mohammed Abdel-Basset Awda Haroub**
ID No. <sup>Redacted</sup> 7950, born Redacted   1994, resident of Deir Sammet

[Handwritten in Arabic] Security-related

**Detained since 19 November 2015**

| [Blurry Arabic stamps] |
| --- |

<u>the Defendant</u>

<u>Indictment</u>

<u>The above Defendant is hereby indicted for committing the following offenses:</u>

<u>First Count:</u>

<u>Nature of the Offense:</u> **Intentionally causing death**, an offense pursuant to Sections 209(a) and 199c of the Order Concerning Security Provisions [Consolidated Version] (Judea and Samaria) (No. 1651), 5770-2009.

<u>Details of the Offense:</u> The above-named Defendant, within the Region, on 19 November 2015 or thereabouts, intentionally caused the death of another, specifically:

1. For some years already, the Defendant had embraced the goal of perpetrating terror attacks against Jews and killing as many as possible.
2. Roughly two years before his arrest, the Defendant purchased a model 9 handgun for ₪22,000.
3. Roughly a year and half before his arrest, during Operation Protective Edge, the Defendant planned to bring death to Israeli citizens in Beersheba by means of a shooting terror attack with a model 9 handgun that he possessed, or alternatively to perpetrate a stabbing terror attack. The Defendant entered Beersheba, where he was employed. Upon noticing plentiful security forces, he concluded that he would not succeed in killing enough Jews and he dropped his plan.
4. Roughly a year before his arrest, the Defendant planned another terror attack against Israelis, but because he was at odds with his family and was reluctant to die before they were reconciled, he did not carry out the terror attack.
5. In or around February 2015, in or near Ramadin, the Defendant purchased from a man named Khadr al-Asla (hereafter, "**Khadr**") an Uzi assault rifle (hereafter, "**the Rifle**" or "**the Weapon**"), 3 compatible magazines, and 3 boxes containing ammunition for a 9 mm rifle, for ₪22,000. On the occasion of that purchase, Khadr taught the Defendant how to use the Rifle. The Defendant concealed the Rifle on a hill near his home. After purchasing the Rifle, the Defendant practiced firing the Weapon approximately once a month, aiming at trees and bottles near the place where the Weapon was hidden. He oiled and cared for it in order to keep it in working order.
6. Between the date of the Weapon's purchase and the date of his arrest, the Defendant purchased additional ammunition on roughly five occasions.

7.  Between July 2015 and the end of September 2015, or thereabouts, the Defendant noticed that the Weapon appeared rusty and he decided to paint it. To that purpose, the Defendant asked Awda Mohammed Awda Haroub (hereafter, **"Awda"**) to help him paint the Weapon. The Defendant brought the Weapon to Awda's home.

8.  Awda disassembled the Weapon, found that the Weapon was not rusty inside, and painted the exterior of the Weapon. As soon as the paint had dried, the Defendant took the Weapon back to its hiding place.

9.  In or around October 2015, the Defendant decided that the time had come for perpetrating the terror attack.

SHATSKY-JD01365-T                                       CONFIDENTIAL

SHATSKY-JD01366-T                                                     CONFIDENTIAL

26. Afterward, the Defendant continued traveling slowly and firing continually at the nearby vehicles. The Defendant fired at a Volkswagen that bore the Palestinian license plate 6-6694-93P, driven by Shadi Urfa of blessed memory, with the intent of bringing death to him. The gunfire perpetrated by the Defendant did bring death to Shadi Urfa of blessed memory.

27. In addition, the Defendant fired at a Ford that bore the Israeli license plate 62-974-71, occupied by Maya Brenner and her daughter Daria, with the intent of bringing death to them. The bullets that the Defendant fired penetrated into the vehicle but did not strike Maya or Daria.

28. Subsequently, the Defendant continued firing at a number of vehicles as he traveled, including an Egged bus and further private vehicles. The Weapon suddenly became stuck on automatic, and the Defendant kept firing — but directly out through the windshield from inside the vehicle — with the intent of bringing death to as many Jews as possible.

[Blurry Arabic stamp]

29. After exhausting all three magazines of their bullets, the Defendant decided to instigate an accident in order to bring death to further Jews.

30. To that end, the Defendant crashed into a Seat Ibiza that bore the Israeli license plate 76-258-76, driven by Yonat Lamberger, his intent being to bring death to her.

In doing so, the Defendant brought death intentionally to Yaakov Don of blessed memory.

**Second Count:**
**Nature of the Offense: Intentionally causing death**, an offense pursuant to Sections 209(a) and 199c of the Order Concerning Security Provisions [Consolidated Version] (Judea and Samaria) (No. 1651), 5770-2009.
**Details of the Offense:** The above-named Defendant, within the Region, on 19 November 2015 or thereabouts, intentionally caused the death of another, specifically: By his deeds as described in the first count of indictment, the Defendant brought death intentionally to Ezra Schwartz of blessed memory.

**Third Count:**
**Nature of the Offense: Intentionally causing death**, an offense pursuant to Sections 209(a) and 199c of the Order Concerning Security Provisions [Consolidated Version] (Judea and Samaria) (No. 1651), 5770-2009.
**Details of the Offense:** The above-named Defendant, within the Region, on 19 November 2015 or thereabouts, intentionally caused the death of another, specifically: By his deeds as described in the first count of indictment, the Defendant brought death intentionally to Shadi Arafa of blessed memory.

**Fourth Count:**
**Nature of the Offense: Attempting to intentionally cause death**, an offense pursuant to Sections 209(a), 198, and 199(c) of the Order Concerning Security Provisions [Consolidated Version] (Judea  and Samaria) (No. 1651), 5770-2009.
**Details of the Offense:** The above-named Defendant, within the Region, on 19 November 2015 or thereabouts, attempted to intentionally cause the death of another person, specifically:

1. By his deeds as described in the first count of indictment, the Defendant attempted to intentionally bring death to Ora Liba Friedman.
2. As a result of the gunfire, Ora Liba Friedman was wounded in the face.

**Fifth Count:**
**Nature of the Offense: Attempting to intentionally cause death**, an offense pursuant to Sections 209(a), 198, and 199(c) of the Order Concerning Security Provisions [Consolidated Version] (Judea and Samaria) (No. 1651), 5770-2009.

**Details of the Offense:** The above-named Defendant, within the Region, on 19 November 2015 or thereabouts, attempted to intentionally cause the death of another person, specifically:  By his deeds as described in the first count of indictment, the Defendant attempted to intentionally bring death to Yaakov Greiner.

**Sixth Count:**

**Nature of the Offense: Attempting to intentionally cause death**, an offense pursuant to Sections 209(a), 198, and 199(c) of the Order Concerning Security Provisions [Consolidated Version] (Judea and Samaria) (No. 1651), 5770-2009.

**Details of the Offense:** The above-named Defendant, within the Region, on 19 November 2015 or thereabouts, attempted to intentionally cause the death of another person, specifically:

SHATSKY-JD01366-T                                                                          CONFIDENTIAL

SHATSKY-JD01367-T                                                                    CONFIDENTIAL

    2.  As a result of the accident, Yonat Lamberger was injured and battered.

**Fourteeenth Count:**

**Nature of the Offense: Trading in war materiel,** an offense pursuant to Sections 233(b) and 199c of the Order Concerning Security Provisions [Consolidated Version] (Judea and Samaria) (No. 1651), 5770-2009.

**Details of the Offense:** The abovenamed Defendant, within the Region, roughly two years before his arrest or thereabouts, traded or otherwise dealt with war materiel while having no permit signed by or on behalf of the regional commander; specifically: By his deeds as described in the second subsection of the first count of indictment, the Defendant traded in war materiel without a permit.

**Fifteenth Count:**

**Nature of the Offense: Trading in war materiel,** an offense pursuant to Sections 233(b) and 199c of the Order Concerning Security Provisions [Consolidated Version] (Judea and Samaria) (No. 1651), 5770-2009.

**Details of the Offense:** The abovenamed Defendant, in or around February 2015, traded in or otherwise dealt with war materiel while having no permit signed by or on behalf of the regional commander; specifically: By his deeds as described in the fifth subsection of the first count of indictment, the Defendant traded in war materiel without a permit.

**Sixteenth Count:**

**Nature of the Offense: Carrying, possessing, and manufacturing weaponry,** an offense pursuant to Sections 230(b) and 199c of the Order Concerning Security Provisions [Consolidated Version] (Judea and Samaria) (No. 1651), 5770-2009.

**Details of the Offense:** The abovenamed Defendant, in the period starting that started roughly two years before his arrest and ended on the day of his arrest, or near in time to that period, within the Region, carried, possessed, or manufactured weaponry with no permit from or on behalf of a military commander, or in violation of the terms of a permit, specifically: During the abovementioned period, in or near Deir Sammet, the Defendant possessed a model 9 handgun with no legal permit.

**Seventeenth Count:**

**Nature of the Offense: Carrying, possessing, and manufacturing weaponry,** an offense pursuant to Sections 230(b) and 199c of the Order Concerning Security Provisions [Consolidated Version] (Judea and Samaria) (No. 1651), 5770-2009.

**Details of the Offense:** The abovenamed Defendant, during the period that started in February 2015 and ended on the day of his arrest, or near in time to that period, within the Region, carried, possessed, or manufactured weaponry with no permit from or on behalf of a military commander, or in violation of the terms of a permit, specifically: During the abovementioned period, in or near Deir Sammet, the Defendant possessed the Rifle with no legal permit.

**Eighteenth Count:**

**Nature of the Offense: Violating an order that closes an area,** an offense pursuant to Sections 318(f), 333, and 199c of the Order Concerning Security Provisions [Consolidated Version] (Judea and Samaria) (No. 1651), 5770-2009.

**Details of the Offense:** The abovenamed Defendant, within the Region, in or around 2014, violated an order announcing the closure of an area or place, or the conditions of a permit issued under that order, specifically: During the abovementioned period, in or near Ramadin, the Defendant violated an order closing an area, in that he crossed beyond the limits of the area through an opening in a fence and he entered Israel without a permit and in violation of law. During that period, the Defendant was working in Beersheba.

**Witnesses for the Prosecution:**

    1.  Senior Staff Sergeant Awni Maklada, Badge No. <sup>Redac</sup>0126, Ashkelon (taker and translator of a statement from the Defendant)

2. Sergeant Major Yosef Mashiakh, Badge No. [Redacted] 7743, Ashkelon (taker and translator of a statement from the Defendant)

3. Advanced Staff Sergeant Haim Alshami, Badge No. [Redacted] 5306, Ashkelon (taker and translator of a statement from the Defendant)

4. code-named "Banda"

5. code-named "Abu Bassam"

6. Yael Fagel Shironi, Forensics (preparer of fingerprint identification report)

7. Superintendent Yair Delbar, Badge No. [Redacted] 9091, Criminal Identification Department (preparer of an expert opinion)

8. Superintendent Avi Kaufman, Criminal Identification Department (preparer of an expert opinion)

SHATSKY-JD01367-T                                                              CONFIDENTIAL

# Translator's Certification

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SHABTAI SCOTT SHATSKY, *et al.*,

                                        Plaintiffs,                    Case No. 18-cv-12355 (MKV)

v.

THE PALESTINE LIBERATION
ORGANIZATION and THE PALESTINIAN
AUTHORITY,

                                        Defendants.

## DECLARATION OF YANIV BERMAN

I, Yaniv Berman, declare pursuant to 28 U.S.C. § 1746, as follows:

1.       I am a professional translator with an M.A. degree in Middle Eastern Studies from the Hebrew University of Jerusalem (Israel). I read Arabic, Hebrew, and English fluently, and I am qualified to translate from Arabic into English and from Hebrew into English.

2.       I certify that the attached documents are true and accurate translations of the Arabic and/or Hebrew originals with the corresponding Bates numbers. The translations are labelled with Bates numbers that correspond to the original documents, with the addition of a "-T" at the end to indicate that it is a translation.

3.       To the extent that some of the information in the original documents was not clearly legible, I have translated such information into English to the best of my ability. Such instances are marked with an asterisk ("[*]").

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated:  July 26, 2021

Yaniv Berman

2

Original

CONFIDENTIAL

SHATSKY-JD01348



دولة فلســــــــــــطين

وزارة شؤون الأسرى والمحررين

الإدارة العامة للشؤون الإدارية والمالية

دائرة الأرشيـــــــــــــف

| | | | | |
|---|---|---|---|---|
| حروب | عودة | الباسط | عبد | محمد | 18205 |

ملاحظة هامة: الملف يحتوي على ملفين لأسيرين منفصلين

يُرجى الإنتباه لذلك تلاشياً للخلط فيما بينهما

CONFIDENTIAL

SHATSKY-JD01348

CONFIDENTIAL

SHATSKY-JD01349





152747

## TO WHOM IT MAY CONCERN

## CICR

This attestation is valid only if the English and Arabic parts match each other

According to the information received from the Israeli Authorities, the International Committee of the Red Cross attests that:

Mr:  **MOHAMMAD ABDELBASSET AWDEH HROUB**

From:  **HEBRON**  ID NO: Redacted 7950

Was arrested by the Israeli Authorities on (dd/mm/yyyy):  . 19.11.2015

He is to date: **Awaiting Trial**



<div dir="rtl">

إلى من يهمه الأمر

هذه الشهادة سارية المفعول فقط في حالة تطابق بياناتها باللغتين العربية و الإنجليزية

استنادا إلى المعلومات الواردة من السلطات الإسرائيلية، تشهد اللجنة الدولية للصليب الأحمر بأن:

السيد/ة الأنسة _كمحمد عبدالباسط عودة حروب_

من _الخليل_ هوية رقم _Redacted ٧٩٥٠_

كان/ت قد اعتقل/ت من قبل السلطات الإسرائيلية في يوم _١٩_ / شهر _١١_ / سنة _٢٠١٥_

وهو/هي في هذا التاريخ : بانتظار المحاكمة _X_ محكوم/ة _____ اداري _____

</div>

CERTIFIED UPON

2 8 -05- 2017

International Committee
of the Red Cross

Date: **12.01.2016**
التاريخ

Place: **HEBRON/NS**
المكان

ICRC Delegate
توقيع مندوب اللجنة

CONFIDENTIALLJ-887758

SHATSKY-JD01349

CONFIDENTIAL

SHATSKY-JD01350



83903

## TO WHOM IT MAY CONCERN

# CICR

This attestation is valid only if the English and Arabic parts match each other

According to the information received from the Israeli Authorities, the International Committee of the Red Cross attests that:

Mr:   **MOHAMMAD ABDELBASSET AWDEH HROUB**

From:   **HEBRON**   ID NO: Redacted**7950**

Was arrested by the Israeli Authorities on (dd/mm/yyyy):   **19.11.2015**

He is to date: **Sentenced**

Length of sentence / administrative period: **Life Sentence**



# CICR

إلى من يهمه الأمر

هذه الشهادة سارية المفعول فقط في حالة تطابق بياناتها باللغتين العربية و الإنجليزية

استنادا إلى المعلومات الواردة من السلطات الإسرائيلية, تشهد اللجنة الدولية للصليب الأحمر بأن:

السيد/ة الآنسة ___ محمد عبد الباسط عوده حروب ___

من ___ الخليل ___ هوية رقم ٧٩٥٠ ___ Redacted

كان/ت قد اعتقل/ت من قبل السلطات الإسرائيلية في يوم ___ ١٩ ___ / شهر ___ ١١ ___ / سنة ٢٠١٥

وهو/هي في هذا التاريخ : ينتظر المحاكمة ___ محكوم/ة ___ ✓ ___ اداري ___

محكوم/ة أو اداري لمدة ___ مدى الحياة ___

**CERTIFIED UPDATE**

0 3 -07- 2018

I C R C
International Committee
of the Red Cross

ICRC Delegate
توقيع مندوب اللجنة

Date: **21.08.20 17**
التــاريـخ

Place: **HEBRO N/AH**
المكـــان

**ILJ-887758**

CONFIDENTIAL

SHATSKY-JD01350

CONFIDENTIAL

**2486**

צבא ההגנה לישראל



תיק מס׳ 16/1149

בית המשפט הצבאי ביהודה

בפני כב׳ האב״ד : סא״ל צבי היילברון
בפני כב׳ ה״שופט: רס״ן אותי אדר
בפני כב׳ השופט: רס״ן חיים בליוטי

**והתביעה הצבאית**

ובאמצעות ב״כ סגן ועקב ופלאוי וסרן ברק טגויר)

.גור ........ .......... .......

**הנאשם:** מחמוד עבד אלמאטסט עודה חרוב , 9050 Redacted שב״ס - נוכח
יבאמצעות ב״כ עו״ד תאמלי אערגי- נוכח)

**גזר דין**

הפשעים דיגועים בהב הורשע הנאשם וזוכמנו בחפידה ולאורך תקופה ממושכה ובים 19/11/2015 .....

**משנת העבירות**

הנאשם ששם על לסטרה, כאטור, כבר שנים קודם לכן לרצות יהודים רבים ......

CONFIDENTIAL
SHATSKY-JD01351

CONFIDENTIAL
SHATSKY-JD01352

תאריך: 19/03/17      בית המשפט הצבאי ביהודה      תיק מס': 1149/16

את הפיגוע יבצע ביום הולדתו ה-21, ב-19/11/15. יומיים לפני כן כתב הנאשם צוואה לבני משפחתו ויום יותר לכן נסע לבקר בני משפחה. הנאשם מסר את הצוואה לאחיו

חודי שאמר יצא הנאשם ברכב הנשא לוחות היהו ישראליו ותר אחר קורבנות תחייה חטב
לבצע ירי לעבר תחנת אוטובוס, אך משהגיע למקום הבחין בשני חיילים ואישה מבוגרת והחליט
שאין מנך די. בדרכו חורה לעבר צומת גוש עציון הבחין בפקק תנועה בנתיב שלממולו או אז נוצל
הנאשם את האטת התנועה, שלף את הרובה מן החלון השב,אלני של רכבו תוך שהוא נוהג בידו
האחת והשנייה אוחוז ברובה והחל ליירות לכל עבר

כפי ירי ברצוף אחרונ ובשאח יחד ביצע הנאשם את הפיגוע ירה ירה לעבר רכב מסוג סיטרואן –
הבית לצומת של יעקב רון ל"י ופצע את אורה ליבא מרידמן בפנים לאחר מכן, ירה כמחטיזו שלשה
במצב אוטומטי לעבר מייונבוס מסוג רנו – תביא למותו של עזרא שוורץ ל"י וזיטה לגרום למותם
של יותר נוסעי הרכב יעקב גרויבר, גייסון גלר, שלמה בייר,מיקל בן זכ, יוסף הררי ולוירה
סינייל. הנאשם המשיך ב'רי לעבר רכבים סמוכים ובכלל זה לעצר רכב מסוג פולקסווגן בו נהג
שאדי עוֹקאן ל"י והביא למותו. עוד ירה לעבר רכב מסוג פורד בו נסע מאיה ברנר וביתה דריה,
הב'רויים חדר לרכב, אך המרבה המזל לא נפגע השתיים. לבסוף, ירה הנאשם לעבר אוטובוס של
חברת "אגד" ולעבר רכבים נוספים על מנת להירבוות פגיעה בחיי אדם עד שתמנו הכדורים בכל שלוט
המחסני,זלן שהיו ברשותו.

נס או לא היה הנאשם נורֹשע והחליט ונחליט לגרום לתהבאיה להביא למותם של יהודים נוספים. הוא
ה1נגש ערﻚ בו נהגר יוה למברצר על מנת לגרום למותם כתוצאה מן התונגנשות נפצעה ונחבלה
גבי למברצר

לאחר מְכﻞﭔﻞ המעשים האמורים, על יסוד וזו'זאתו, הוﺍ'שע הנאשם, בשלוש עבירות של גרימת מוות
בכוינה, בעשרה ניסיונות לגרימת מוות בכוונה, בשתי עבירות של סחר בציוד מלחמתי, בשתי
עבירות שﺍﻞ החזקת נשק ובעבירות של הפרת הוראה בדבר סגירת שטח

**הראיות והטיעונים לעונש**

דמותו של עזרא שוורץ תיארת בפנינו עדות של אפני השכולה, חב' שוורץ וחברו נייקיל
בן דיד, אשר נכח עמו ברכב ברגע הפיגוע הנורא.

עזֹרא שﻞﺍרץ ל"י, בן 19 היה במותו הוא תגיע לארץ ללמור ב'שיבה בבית-שמש, לטייל בארץ
ולמעשות ﻡﻋﺎﻢﺷﻰ חסד. היום בו נרצח באכזריות היה הוהם שגרתי שבו עלה על המיניבוס בדרכו לעשיות
חסד הטפ'שות חהלה כרגל, מלוהה בביריחות, "הייהה אותם ש'קימה בדרך הרגילה, שום דבר לא
הרגﻝ'ﻮ לצא דומ' בערך בשעה 18 30 הכול השמונה לתמנדי". העיד בפנינו חברו נ'ייקל ל' בן זין, חבר
אשר ﺔﻴﭔﻞ וצלו בנס חרﻑﻮרי מסיבו של כדורים לעבר הרכב בו נסע צצוותא עם עזרא ל"י ואחרים

אמו שﻞﺍ הנ,ונה תיארה את דמותו של בנר ל"י, כפי שהכול הארונו והכירוהו, וכפי שינצרו אותו
לעד בני משפחתו, חברﬣﻮ וכל חבריﬣ



'On a beautiful summer day this past August we had the
hakanat hamatzeva at Ezra's grave, we asked 25 of Ezra's
friends to speak, Each of them spoke so perfectly. Each of

CONFIDENTIAL
SHATSKY-JD01352

CONFIDENTIAL
SHATSKY-JD01353

תיק. מסי 1149/16    בית המשפט הצבאי ביהודה    התאריך 19/03/17

their stories was different but the same themes came
through. Ezra was mischievous, Ezra was a leader, Ezra
was kind and Ezra was thoughtful."(חתימה מוספה)

אות הכזונה תיארה. מפי אמו. את עזרא וייל כאדם הדואג, הנרגש, האינטליגנטי והמשעשע
ביותר עזר זכתה לחלוק את חייה וכי נפער חור בליבה מאז האירוע ואם תוסיף וsוספרה כיצד
היה הסגנון אתו זיכר. לכל חבריו, כיצד אהבתה הכול. ורצו בקורבתו - קרבה וחברות לחיים עד
למדוֹ כי עזרא היה אדם רגוע. שתשרה ביטחון על סובביו והרבה לעורר לכל אחד. גם אם לא היה
מדובר בחבריו הקרובים. סיפורים רבים אודות אופיו הייחודי ומעלותיו הרבות הוזכרו בדברי
האם השכולה

"There are so many stories of Ezra's silliness, inclusiveness,
kindness and caring. We who knew Ezra are very lucky. We
have so many memories and stories that have and will
continue to enhance our lives."

לי יחל, ויהי זכרו ברוך

אלמנתו של יעקב דון ז"ל, הגב' שרה דון, העידה בפנינו  כך נסקרו כי דקות ספורות לאחר שפורדו
בפתח הישוב, נוה יעקב ז"ל על ידי מחבלים, שכל רצונו היה להרוח כמה שיוונ יחודים. והיא
תיארה את המוות –

"איש שכולו אהבה אהבה להוריו היקרים, יהודה ומלכה דון, שיודו
את אחיותיו בה אבדיו את כל משפחתם. וחקירנו בארני משפחתם
כאהבתה. יעקב טיפל בהם וסער אותם אהבה ליודיעו ולי. המשפחה
שלו ומשיך קדומה לכל דאות מוזרמת ויכולסם וחתן טוב. אהבת יוצאת
דופן לתלמידיו  יעקב היה במשך שנים מחנך אהוב. ונערך של נער גוש
עציון. הן מהנך בתיכון וחן אדם שנושר האנוני ידע שתמיד ניהם לפנות
אליו בכל דבר ותמיד לכבל עזרה. בספר שהנושאי תלמידיו גם מברכים
שלהם אליו. חוזרת האמירה שהאהבה והכבוד של יעקב. בהנגד
והאמונה ביכולתם עיצבה את חייהם  בני ובנות נער נאמות שהם
שהתובבנו ניהת גדש עשיון עם הכנית שאני לבשה שערים כונג "זוכר" של
יעקב דון, היין ורחב ולב יעקב' יעקב אהב. כיבד ד'יעב כל אדם יעוד'ר.
עזוב, כל אדם ליא קשור לדעותיו או שיוכל אהבה בהוורר–

עד תיאדה את תחושת המשפחה מאז האירוע הטרגי –

"לזכרנו אוד., כל הטוב והאהבה הזאת, כל הביחית הזאת, גדועה
כשופשה בדרו ושאתה טהורה ואנו נאלצים הולנוסד יום יום עם
הוחסר העצום של יעקב שלנו בחיינו  חסר שלעולם לא יתמלא. עבדו
שישה עשר חודשים ואנו עדיין מתקשים להתיק שעזב אינני. זה עדיין
זה נראה לא אמיתי ואפשרי שליבני ישוחו לא נשומים. אמו חסרים את
הצחוק חוזק ותמונגלול שלו שימלא את כל הבית. את החיתון. השניוב
מעולם אותו ואת הולדים יחמותו הביטחון שיוימיו מון לט.. וילדרי
ממשיכים את חייהם כשהאבא שהיה כל כך מיששישות עבורם לא שם
כדי לראות אותם צוחחים. גדילים, לא שם לתינויד וליימעד בצגותי חיים
מזולים וקטנים לא שם כדי לאהוב"



1 0 -07- 2018

CONFIDENTIAL
SHATSKY-JD01354

תאריך: 19/03/17       בית המשפט הצבאי ביהודה       תיק מס׳: 1149/16

האלמנה ביקשה כי הנאשם, אשר יצא באופן נודע למסע הרצח, לא יראה אור יום לעולם, וכי כל מי שסייע לפשעיו יענש כחומרה. היא ביקשה כי יעשה חבל׳ להרתיע ולמנוע מאחרים לפגוע במשפחות נוספות.

עוד העידו אחיו ואחותו של המנוח, יעקב ז״ל גם מפי אחות המנוח, הגב׳ שלומית כישר. לימדונו כי יעקב ז״ל היה איש שלום, מורה נערץ אשר דרך בשמירה על כבוד האדם באשר הוא אדם. הוא היה אהוב על שכניו, הנוכרים וערבים כאחד. הגב׳ פישר תיארה את הכאב העצום עמו מתמודדת המשפחה ותארה אלמונה של אחיה ז״ל, הגב׳ שרה, ואת הצער הרב של מאות תלמידיו. היא ציינה כי המנוח קיבל לאחרונה פרס חינוך על מושחות הסובלנה. אחיו של מר דוד ז״ל עמד על טוב העדכים של המנוח ערכים של כבוד האדם. קדושת החיים ואהבת הזולת שהנחיל לתלמידיו וילדיו היתומים. ערכים לפיהם אין להעשיר חפש ממשע גם בעתות של פיגועים קשים בהם נרצחו יהודים, אך בשל היותם יהודים.

גיסו של המנוח, אחיו אלמונה, מר דוד בן דוד, ותאר כיצד קשה ממעמד עבורו הוא מסר כי המנוח היה לו יאח ממש אדם נדיר של טוב לב ועשיית טוב לכל אדם באשר הוא׳ הוא צין כי לא ניתן לתאר את הכאב שהיא ח׳ש לראות את משפחתו המקימה — אם אחותו מלאת שמחת חיים הופכת לאלמנה ואת ארבעת ילדיו ליתומים. כאב קשה מנשוא, עוד הוסיף -

> ״בעולם מתוקן לא יעלה על הדעת רוע ורצחנות כמו שנוכח פה לנגיני
> בוצא הקתדענ. האדם הנוק׳ה שיושב פה לפניני נחר בדרך של רוע
> ורצח, והותיר משפחות שלמות הרוסים. שיודע הכול שמשפחתנו
> שבערה אח השואה והנער: לארץ ולקחה חלק בהקמת המדינה לא
> חשבר ׳ו כנו רק עם אחד, אר׳ אחת ומדינה אחת, אבל נתנינו אבנים
> וחסרינו את היקר לנו מכל.... מה שוות לנו זאת החובה לעסוק נחיכון
> עתיב ולבצר את הרוע נהיאלם. לדאגו שהאדם הזה שמשה ׳יי אחריו
> לקירים ולו אדם לאור נמשתא. לא יראה אור שמש עד יומו האחרון. זה
> לא ישיב ׳לנו את מה שנלקח מיחינו על ׳דו, אך זה הטעט שנ׳ת׳ לעשות
> שמלם אותו אנו רוצים לתתן׳״

יהי זברו ברוך

בנן שמלחתו של יאאד׳ עליפה ז״ל לא אותרו על ידי התביעה הצ׳באית, ולא הגיעו למעמד הטיעונים לעונש׳ ותביעה צינה כי מדובר בקורבן נוסף שהינו עולם ומלוא, וכי אין שחסרונו מורגש בקרב משפחתו וחבריו. יהי זברו ברוך

בטינונ׳לה לעונש עמדה התביעה על נסיבות בצוע מעשי הרצח. תוארת ונכינתו המוקדמימ של הנאשם ואופן ביצוע הטבח ללא טיפת רחמים הנאשם לא הביחין ולא התענ׳ין בזהות האנשים היתומ׳ה׳ה נרכבם אליהם ׳רה, ואם מדובר בנשים, ילדים תנוקות או אפילו פלסטיניים, תוימב׳ האזור, כמותו צ׳ון כי קשה לתפוס את גודל וחומרת המעשה׳  עוד עמדה התב׳עה על מיכה הכז׳ולים אשר נורו באויר׳ז, אל מול חוסר האנגים של המסורבנות.



4

CONFIDENTIAL
SHATSKY-JD01355

תאריך : 19/03/15          בית המשפט הצבאי ביהודה          תיק מס' 1149/15

החביאה אינה כי אין עונש שיחא מספקו ואין נאחר שיוכל וחנעלם לשלם כדי לכפר על מעשיו, וכי הנאשם לא הביע כל צער או חרוטה עליהם. לצד זאת, עתרה להישתת העונש המורבי הקיים בחוק בניזימין ליצור חתיוש צדק בקרבו אלו שעמשה להם העוול הגדול מכל

לאור רציחתם של 3 אנשים עתרה התביעה להשתת מאסר עולם בגין כל נפש, עוד עתרה להשתת מאסר עולם נוסף בגין מניסיונות הנוספים לגרימת מוות, בהתאם להלכת "יוספי" התביעה יתאזה או הסבכנתים שנקבעו בפסקי דין זה וצינה כי אלן מתקיימים בצורה ועל ואף היוי ללא חבונה, הקרבה לעגנה המושלמת, מידת הסכנה הפוטונציאלית, התכנו המונקפד ובונסיבות באותן ולעומה של אירוע טרור מרובים לנוכח מכלול האמור, עתרה להשתת עונש של 4 מאסרי עולם באונ מצעובר וליצר משמעותי למשפטות הנרצחים

הסנגור, בעצה אחת עם מרשו, לא טען לעניין העונש גם הנאשם לא אמר דבר


דיון והכרעה

נטילת חייו של אדם בכוונה היא פגיעה בערך העליון והחשוב בחברה מתוהנת - קדושת החיים התאשמים חילו ורמס ערך זה מתוך כוונה תחילה וחוך תכנון דיוקדני וממושך אחרו טירוף יצא להשתתף טרחת הודזויות להבריא לרציחת היהודים ולא גם עד שהשעלימה והביאו למנוס של שלושה תכנונם יזו תנאשם נתבצעה ומן רב לפני יום האירוע ונורא ולא הפעול, רק לאור כוונתו הנכלשת, לחרוג כמה שיותר יהודים ולבצע פיגוע רב נפגעים בעמשיו, גדו הנאשם בתוך שניית סדורות את חיים של שלושה אנשים חפים מפשע, פצע ופגע אחרים ונסיה להיותף וחלו בות פגיעת עונו ונפש מתוך שאזה בשמה ובאכוריות בל תתואר פגיעתו בערך קדושת החיים הינה הכבעה הקשות ביותר ואין ממנה תורה.

חשיבותו ערך קדושת החיים הודגשה כבר בקירורות המשנט העברי ובספרות חז"ל כך כתב הרמב"ם בספרו "משנה תורה"

" .. נברא אדם יחידי בעולם ללמד שכל הנאבד נפש אחת או העולם מעלין עליו כאילו איבד עולם מלא. וכל המקיים נפש אחת העולם מעלין עליו כאילו קיים עולם מלא. הרי כל באי עולם בצורה אדם הראשון הם נבראים ואין פני כל אחד מהן דומין לפני חבירו לפיכך כל אחד ואחד יסל לומר, בשבילי נברא העולם" (משנה תורה לרמב"ם, הלכות סנהדרין, פרק י"ב, הלכה ג'),

וכן במשנה, בה חוידד את האבדן העצום הנלווה לקטיעת אדם, מושל נוצר עולם מלא

"יתוו חוימייץ שלא בכדיני נמומות דיני נפשות. דיני מומונות אדם נותן מומון ומתכפר לו. דיני נפשות דמו ורם זרעיותיו ותלויים בו עד סוף העולם, שכן מציונו בקין שהרג את אחיו שנאמר דמי אחיך צועקים. אינו אומר דם אחיך אלי דמי אחיך, דמו ורם זרעיותיהיו" (משנה. סנהדרין, ד', ה')



CONFIDENTIAL
SHATSKY-JD01355

ואנו לא רק את עליליהם של שלושת הקורבנות איבד הנאשם אלא את עולמם של בני משפחותיהם
ויקירהם. חוזרור המעשים ועצמת הפגיעה בערך חיי האדם חייבת לקבל ביטוי מוגרש בעונשה
מזעזעת ונלוות. עניינך המשקפת את ערכם הנעלה של חיי האדם כאמור.

גם בפסיקת בית המשפט העליון עמדו על ערך קדושת החיים ועליונותו -

> "אדם - כל אדם - הוא עולם לעצמו, אדם - כל אדם - הוא אחד, יחיד
> ומיוחד. ואין אדם כאדם, מי שהינו לא עוד והוא "מי שוכל לא ישוב.
> כך הוא האדם, וזה יחודיו" (ע"פ 1742/91 **מסורי נ' מדינת ישראל** פ"ד
> מ"ח(3), 947, בפסק דינו של השופט חשין).

> "השמירה על קדושת החיים - לרבות קביעתה של קדושה זו בחברת
> הכלל - היא העומדת בראש תכליות העניישה במשום שמדובר בנטילת
> חיי אדם ועל ועל בית המשפט לשוות זאת לנגד עיניו בגזרו את הדין
> בעבירות רצח והרונג. לא כזדי הובע הדינים לא תרצח בראש
> הידיברות המבטאים את הכללים הבסיסיים של חיים בחברה מתוקנת.
> שאין לך מעשה נורא הימנו". (ע"פ 4419/95 תדד ני מדינת ישראל, פ"ד
> נ(3) 752, בפסק דינו של השופט קדמי)

ריע מומנטו של הנאשם ורוצאותיהם לפוילם ניצבות מעשים המרורים וקשים אלו, ראויים שעונש
החמור עליו סבר - כלואים מאורר סורג נברים עד עולם. עשיות זו, שאין בה כדי לרפא את תוצאת
הפשעים המזעזעים ולהשיר לבני המשפחות את יקיריהם שאבדו, תביא, לכל הפחות להרחקה
הנאשם השפל מ"ד כל בני האנוש לשאריית ימיו

זעמי רוצח של הנאשם גבר. כאמור, 3 קורבנות בגופם ובנפשם ורושע זורואה בשלוש עבירות של
גרימה מוות בכוונה בכפו דא. ומתוך האמונה בערך קדושה חיי האדם, דין חוב ני עונשו של
הנאשם יוגר על ידי הטלת עונש בשל כך מעושה רצת נפרד ובמצטבר. התצדקה שרירה ותוקפה אך
אם עשקיעו במעישה שבוצעו במסגרת אירוע אחד כמשמועו כיום, כפי שכתב זו מככד הושיא
(כתואר) דא) שמצר

> "יכל הרעעה בעבירה נפרדת עומדת, על רגליה שלך. ומעבר לכך, קיפוח
> חיי שלל אדם מן הראוי והנכון שיימצא ביטוי מפורש, מוזהה ונפרד
> בנעדרים הניעישים. גזירת עוניש מאסר חופפים על מספר מעשי רצח –
> אף אם מדובר באללה שבוצעו ברצני אחד יש בה תכללא ששום מזעוור
> של הוזויה שברגם המות הזוינו והמכוון של שורה של אנשים.
> תפיסתינו הייתה שלנו בעניני ערכם של חיי אדם מן הראוי שתבואר לידי
> ביטוי גב בעת שדינים במעשי רצת שונים ונפרדים." (ע"פ 1994/89
> **מדינת ישראל ני זלום** פ"ד מ"ו(2) 187 (1992); כך ראו פסק דינה של
> השופטת דורנר בפרשת **פופר,** עמי 307)

לנוכח האמור, ובשים לב למדיניות הענישה הראויה בעבירויות הרצח סבריו כי יש להשית על
הנאשם שנוש של שלושר מאסרי עולם, אשר ירוצו במצטבר, בגין גרימת מותם בכוונה של יעקב
דין ז"כ. עזרא שוורץ ז"ל ושאדרי ערפת ז"ל



תיק מס'. 1149/16          בית המשפט הצבאי ביהודה          תאריך: 19/03/17

מכאן לענייננו כי נטיית של הנאשם עונש נוסף של מאסר עולם בגין יתר העבירות כהן הורשע,
ביניהן עשרה ניסיונות לגרימת מוות, בכוונה של אנשים נוספים באותו אירוע, התביעה הפנתה
לפני"ד המזכיר בעניין נופל, שם נקבעו הדברים הבאים

> "יינינו להבחין על מספר נסיבות אשר יש בהן להביא עבירה זו של ניסיון
> לגרימת מוות בכוונה לסף חתומרה המצדיק בחעת שינוים בעונש זה.
> כאמור, מודד הקרבה לתנשמת העבירה, המושלמת, תהווה, ברגיל, מדד
> ראוי לבחינת חומרת העבירה. בכלל, מי שאחז באמצעים המתאימים
> לגרום מוות, ועשה אותם מעשים אשר יש בהן, לרוב, להתממש זו,
> מעשה איר לאחריהם אין עד לטשות כל אמצעיה להשפיע על
> התוצאה, עשוי להביא את עניין בגדר אותם מקרים המצדיקים שינוים
> בעונש מאסר העולם... מקרים נוספים בהם נכון יהיה לשקול עונש
> כאמור מקום בו מעשה ניסיון בודד לקטול חיי רבים, יש יבא
> ביהמייש בחשבון שיקולו לא רק את התוצאה אשר קיווה המנסה
> לתשיר, אלא אף את האזון בו התכוון לתשיר תוצאה זו ואת יעד הפגיעי,
> במסגרת זו, נתון יהיה לשקול עונש של מאסר עולם באותם מקרים
> בהם ברוכה גוידה רבה של אדזיורים באמצעות בהם שיתמנש
> הדמומה... לבסוף, שיקול מרכזי נוסף אשר יהיה על ביהמייש לשקלו,
> נוגע להיקפה של התופעה העבריינית המטלכלה לעניין" (ע'ן איר"
> 120/02 נופל נ' תתביעה הצבאית)

הסיכונים שנקבעו בהלכת נופל מתקיימים בעניינו. מדובר בנשאר רב של ניסיונות לגרימת מוות
בכוונה, על-אף שמדובר באירוע אחד הנאשם, יש לזכור, יצא אח"כ בחודמונים מתוך כוונה
ורצון לבצע פיגוע ואף החזיק בצקה ומו ר"ב לפני שרבט את הרובה בו בצע את הפיגוע הוראה
אוגלת מידובר באירוע אחד של ירי מתמשר, אך בנסיונתו ביקש הנאשם לקטול חיי רבים יש לציין
כי הנאשם החזיק באמנעצות המתאימים לגרום מוות זאך עשה כן ורצה ב 3 חפים מפשע. ניסיונותיו
הי מסוכנים ואך בפל לא היו תוצאותיו של אירוע זה קשות ומראות יותר וזלב כן הנאשם
המימרבבים אותם ניסה ורצאשם לרצות נפעו במהלך האירוע מן הירי, סליתצים אותם יותר כאשר
חזיר לפני הרכב אל בנס לא פצע את הנאשם של הנאשם מעשיו של הנאשם רתאבייי באכזריות כאשר
ביצע בלתק מן ההזן ירי אוטומטי מטומט קצו ולאור יום רב בידי לצרבו. גרב, הוא לא חדל
מייימשיו עד שמו הבורחים בנחהטניות ואיי או ניסה לחתנבב ברכב אחר כדי לחביא למיתה של
הנהדע הייתסו בו. לאהי האמנו ובחינאו כלל נטיבתו ביצוע העבירות והיתיו לביימוע, כמו גם
הבצרדאצת הביתוחתנו באיה אתם, במהלכך בוצעו פיגועים שתזלליים רבים, חלקים באיזו אופן.
מגעמדית הקטלת עונש של מאסר עולם נוסף, בגין כלל העבירות הנגלות, אשר ירודה במצנטבר.

בהקשר דומה קבע ביה הנשפט העליון העליון לפני יותר מעשור

> "לבל אדם ואדם זכות משלו לחיים ולשלמות הגוף, והנקפח חיים או
> הפוגע בגופו של אדם בנינ ימה הענ הגתחייב במעשיו חנפו לעונש. כך הוא
> בפגיעה באדם אחד ואיי ואיך בימקום בו פוגע מלוני בגופנ ולידין באנשים
> אחזים. ומיר הוא גלוני בפו'חניי ובפו רומנ הוא לענש בנין כל אחת ואחת
> מן הפגיעות. בארינו מינן זה עגדית לי לבית השושבט פטמנות לצברר
> שונשים זה אל זה (ע"פ 9804/02 שר נ' מדינת ישראל, פ"ד נח(1), 461)

ועוד בפרשת טופר

> "..כאשר מדובר בנמעשי אליפות קיום לכל אחד מן הנפגעים אינטרס
> עצמא לשליימות גופו, הפגיעה בשלמות גופו של אחד אינה שחווה פגיעה
> בשלמות גופו של אתר. גם את מבחיית "טכנית" נדובר ברצף אחד של



תאריך: 19/03/17    בית המשפט הצבאי ביהודה    תיק מס': 1149/16

מעשים שגרם לקורבנות מספר, יש להתייחס יכן כאל מעשי פגיעה
נפרדים. מסקנה זאת היא וכירחית גם נוכחת הלבט נוספרות, הסכירה
בקדישת חיו של אדם כעין כעין יישוד, ערך חיי האדם והלידותו העכורות
ממעשים חביוננים בן חייבים למצוא ביטוי מכרש גם בנסמ×ת
נזירת העונש, הן לעניין נוספר העונשים שיש ×ינור על הנאשם והן
לעניין הסובכרותם" (עניין פופר, עמ' 307).

אשר להכיב הפרגיעים, סברנו כי חנזק אשר נגרם נומשפחות חמנוחים עצום ו×ינו בר
כפרה. ודאי שלא כפסיקה מיצוי כספי עם זאת. מצ×נו כי יש מקום להשחלת פיצו¹ כספ¹ ולו ב×ופן
סמלי לטונת כל אחת מנשפחות הקורבנות. לפיכך. על הנאשם ישתו פיצויים לטונת כל אחד
מ×נ'×נ'צ×ת המנוחים בסמ×ה של 250,000 שקלים

קצ×ה יד¹נו נתנאר ויכבא במלים את הסליידת מפשעי הנאשט¹ ודמה כי מלים - אין י¹ בהן כד¹
ליאר ל×הטנה את הווזיה× הגלומה בהם ו×ת העורכמות שרבו× ×ח¹נו ×ינו מתיימר×יס למלא× את
התדהים הבעות לפמחתם של בני משפחות הקורבנות ו×ף לא ל×מא ×ת פצע× הנפגועים  כ× שבנ×תנו
היא לחטיל עונש שהיה בו לכטא הוקעתה של העבירות ותנ×שם מתוך חברת בני ×דאם. הנאשם
אשר ×ילף צלם האדם שבו. שבכלכרבנותיו ושבכלל בני האדם. ×וב ×ינו ר×וי להלך חופשי ביניהם

<u>סוף דבר</u>

נ×ציאי לנזר על הנאשם ×ת העונשים הבאים.
**מ×סר עולם בגין רציחתו¹ של יעקב דון ז"ל.**
מ×סר עולם בגין רציחתו¹ של עזרא שוורץ ז"ל.
מ×מר עולם בגין רציחתו¹ של שאד¹ ערפה ז"ל.
מ×סר עולם בגין ודרשעתו של הנאשם בעשר עבירות של ניסיון לגרימת מות של מ×זרחים
נוטפים.ועבירות של סחר בצ¹וד מלחמ×ת¹ והחזקתם.

<u>אריכ×ת מ×סר¹ העולם ירוצו במצטבר.</u>

על ×האנאשם לפצות ×ת עזבו¹ חמנוח יעקב דון ז"ל בסכום של 250,000ש"מ. מס' שובר: 0000245115.
על הנאשם לפצות ×ת עזבו¹ המנוח עזרא שוורץ ז"ל בסכום כולל של 250,000ש"מ. מס' שובר:
0000245215.
על הנאשם לפצות ×ת¹ עזבו¹ המנוח שאד¹ ערפה ז"ל בסכום כולל של 250,000ש"מ. מס' שובר:
0000245315.
הפיצוי¹ים ישולמנו בתוך 3 שנים מחיום.

זכות ערעור תוך 30 יום.

ניתן והודע היום, 17/03/19, בסומב¹ ובמעמד הצדדים.

─────────        ─────────        ─────────
שופט             אב"ד              שוספט¹



CONFIDENTIAL

SHATSKY-JD01359



152747

## TO WHOM IT MAY CONCERN

# CICR

This attestation is valid only if the English and Arabic parts match each other

According to the information received from the Israeli Authorities, the International Committee of the Red Cross attests that:

Mr: **MOHAMMAD ABDELBASSET AWDEH HROUB**

From: **HEBRON** 18205 ID NO. Redacted 7950

Was arrested by the Israeli Authorities on (dd/mm/yyyy): **19.11.2015**

He is to date: **Awaiting Trial**

266418



# CICR

إلى من يهمه الأمر

هذه الشهادة سارية المفعول فقط في حالة تطابق بياناتها باللغتين العربية و الإنجليزية

استنادا إلى المعلومات الواردة من السلطات الإسرائيلية، تشهد اللجنة الدولية للصليب الأحمر بأن:

السيد/ة الآنسة _____ محمد عبدالباسط عودة حروب _____

من _____ الخليل _____ هوية رقم ٠٩٥٠ Redacted

كان/ت قد اعتقل/ت من قبل السلطات الإسرائيلية في يوم ١٩ / شهر ١١ / سنة ٢٠١٥

وهو/هي في هذا التاريخ : ينتظر المحاكمة XX _____ محكوم/ة _____ اداري _____

**CERTIFIED UPDATE**

I C R C

2 3 -05- 2016

International Committee of the Red Cross

I C R C

Date: 12.01.2016
التاريــخ

Place: HEBRON/NS
المكـــان

ILJ-887758

ICRC Delegate
توقيع مندوب اللجنة

CONFIDENTIAL

SHATSKY-JD01359

CONFIDENTIAL

SHATSKY-JD01360

18205   ○ ⫽



| STATE OF PALESTINE | دولـــة فلســـطين |
|---|---|
| Ministry of Detainees & Ex-detainees Affairs | وزارة شؤون الأسرى والمحررين |
| Gen Dep. Detainees & Ex-detainees | الإدارة العامة لشؤون الأسرى والمحررين |

266418

ذاتية الأسير / الأسير المحرر

رقم الاستمارة:

تاريخ تعبئة الاستمارة:   المديرية/فرع الوزارة:   رقم الأسير:

أ. البيانات الرئيسية للأسير/الأسير المعرر:



| نوع الوثيقة: | فلسطينية | قدس | إسرائيلية | جواز سفر | أخرى( ) |
| رقم الوثيقة: | Redacted | | | | |
| الاسم الرباعي: | | | | | |
| تاريخ الميلاد: | Redacted | مكان الولادة: | | | |
| الجنس: | ذكر | أنثى | الجنسية: | | |
| الديانة: | | اسم الأم: | | | |
| الحالة الاجتماعية: | أعزب | متزوج | مطلق | أرمل | |
| المؤهل العلمي : | أمي | الأساسية | ثانوي | دبلوم | جامعي | دراسات عليا |
| التخصص العلمي : | | | | | |
| التعليم: | | | | | |
| حالة الدراسة: | لاجئ مسجل | غير لاجئ | | | |
| العمل قبل الأسر: | موظف حكومي | الرقم الوظيفي:( ) | الأخرى:( ) | |
| طبيعة العمل: | عسكري | مدني | | | |
| العنوان الحالي: | الدولة: | | المحافظة: | | |
| | التجمع: | | الحي: | | |
| | العنوان: | Redacted | | | |
| رقم الهاتف الأرضي: | رقم الفاكس: | | | | |
| الهاتف النقال1: | الهاتف النقال2: | Redacted | | | |
| البريد الإلكتروني: | | | | | |
| ملاحظات : | | | | | |

CONFIDENTIAL

CONFIDENTIAL

SHATSKY-JD01361

| STATE OF PALESTINE | | دولـــة فلســــطين |
| Ministry of Detainees & Ex-detainees Affairs | | وزارة شؤون الأسرى والمحررين |
| Gen Dep. Detainees & Ex-detainees | | الإدارة العامة لشؤون الأسرى والمحررين: |

**3 . بيانات الاعتقال الحالي:**

| □ مدني | □ أمني | □ نوع الاعتقال: | ١٩ / ١ / ٢٠١٥ | تاريخ الاعتقال: |
| | | السجن الحالي: | □ النقب □ المعبر □ أخرى | مكان إجراء الاعتقال: |
| □ محرر | □ إداري | | □ موقوف □ محكوم | الحالة الاعتقالية: |
| | | | | في حالة محكوم مدة الحكم |
| | | | | حسب شهادة الصليب: |
| / / | تاريخ الافراج : | | / / | تاريخ الحكم: |
| | | | | ملاحظات: |

**4. بيانات الاعتقالات السابقة: الاعتقالات السابقة: (فقط المثبتة بشهادة صليب):**



| | | | | |
| --- | --- | --- | --- | --- |
| | | | | .1 |
| | | | | .2 |
| | | | | .3 |
| | | | | .4 |
| | | | | .5 |
| | | | | .6 |
| | | | | .7 |
| | | | | .8 |
| | | | | .9 |
| | | | | .10 |

**5. الوضع الصحي (الأسير/الأسير الشهيد):**

| | | الأمراض: | □ لا □ نعم | هل تعاني من أمراض: |
| --- | --- | --- | --- | --- |
| □ مؤقتة □ دائمة | نوع العجز/الإعاقة: | | / / | تاريخ ظهور الأمراض: |
| □ لا □ نعم | العجز مثبت بتقرير: | % | □ لا □ نعم | هل تعاني من عجز/إعاقة: |
| | جهة الإصدار: | | | نسبة العجز/الإعاقة: |
| | | | | تاريخ التقرير الطبي: |
| | | | | ملاحظات: |

3

CONFIDENTIAL

SHATSKY-JD01362

| STATE OF PALESTINE | | دولـــة فلســـطين |
|---|---|---|
| Ministry of Detainees & Ex-detainees Affairs | | وزارة شؤون الأسرى والمحررين |
| Gen Dep. Detainees & Ex-detainees | | الإدارة العامة لشؤون الأسرى والمحررين |

٥. بيانات المستفيدين من راتب الأسير/الأسرى المشرور .

أ . المستفيد الأول:

| | | صلة القرابة: | عرفات جميل حرب | الاسم: ( المستفيد الأول) |
|---|---|---|---|---|
| | | رقم الولادة: | | نوع الولادة: |
| Redacted | | رقم الهاتف النقال: | | رقم الهاتف: |
| | | التجمع: | | المحافظة: |
| الحساب جاري شيكل فقط | Redacted | الفرع: | Redacted | البنك: |
| % | | نسبة: | رقماً: | في حالة تجزئة المبلغ: |

ب . المستفيد الثاني (إن وجد):

| | | صلة القرابة: | | الاسم: ( المستفيد الثاني) |
|---|---|---|---|---|
| | | رقم الولادة: | | نوع الولادة: |
| | | رقم الهاتف النقال: | | رقم الهاتف: |
| | | التجمع: | | المحافظة: |
| الحساب جاري شيكل فقط | | الفرع: | | البنك: |
| % | | نسبة: | رقماً: | في حالة تجزئة المبلغ: |

| | ملاحظات مقدم الطلب: |
|---|---|
| لقد اطلعت أنا/أقر وأشهد بأن كافة المعلومات الواردة في الطلب صحيحة وأتحمل مسؤوليتها. | إقرار: |
| | توقيع مقدم الطلب: |

CONFIDENTIAL

SHATSKY-JD01362

CONFIDENTIAL
SHATSKY-JD01363

| STATE OF PALESTINE | | دولــــة فلســـطين |
| Ministry of Detainees & Ex-detainees Affairs | | وزارة شؤون الأسرى والمحررين |
| Gen Dep. Detainees & Ex-detainees | | الإدارة العامة لشؤون الأسرى والمحررين |

7. للاتصال الرسمي:

| | اسم المرشد/الضابط : |
| ١٢/١١/٦١٢ التوقيع: | ملاحظات المرشد/الضابط: |
| التاريخ: | |
| | اسم مدير المديرية: |
| ١٨/١٨ التاريخ والتوقيع | ملاحظات مدير المديرية: |
| | التاريخ: |

المستندات المرفقة: ضع إشارة بجانب المستندات المرفقة (اعتماد وتصديق من المديرية)

| | ☑ | شهادات الصليب الأحمر |  | ☑ | صورة هوية الأسير/المحرر |
| | ☑ | قرار الحكم (إن وجد) |  | ☑ | لائحة الاتهام عن اعتقال بعد 2007/01/01 |
| | ☑ | صورة عقد الزواج |  | ☑ | صورة بطاقة الحساب البنكي |
| | ☑ | ملحق إضافة زوجة/زوجات |  | ☑ | صور شهادات الميلاد للأبناء |
| | ☑ | تقرير نسبة العجز والإعاقة الأصلي |  | ☑ | صورة عن المؤهلات العلمية |
| | | |  | ☑ | أخرى (حدد) |

8. الاعتماد والمصادقة:

| | ☑ أسادق على اعتماد استمارة الأسير (مطابقة للأنظمة والقوانين) |
| اسم الموظف المعتمد: | |
| التاريخ: / / | الختم والتاريخ: |
| المبررات والأسباب: | ☑ ٢ أسادق على اعتماد استمارة الأسير |
| | |
| | ☑ أسادق على اعتماد استمارة الأسير (مطابقة للأنظمة والقوانين) |
| اسم الموظف المعتمد: | |
| التاريخ: / / | الختم والتاريخ: |
| المبررات والأسباب: | ☑ لا أسادق على اعتماد استمارة الأسير |
| | |

5



## TO WHOM IT MAY CONCERN

**CICR**

This attestation is valid only if the English and Arabic parts match each other

According to the information received from the Israeli Authorities, the International Committee of the Red Cross attests that:

Mr:    **MOHAMMAD ABDELBASSET AWDEH HROUB**

From:    **HEBRON**    ID NO: Redacted 7950

Was arrested by the Israeli Authorities on (dd/mm/yyyy):    **19.11.2015**

He is to date: **Awaiting Trial**



إلى من يهمه الأمر

هذه الشهادة سارية المفعول فقط في حالة تطابق بياناتها بالغتين العربية و الإنجليزية

استنادا الى المعلومات الواردة من قبل السلطات الإسرائيلية، تشهد اللجنة الدولية للصليب الأحمر بان:

السيد/ة الآنسة    كحمد عبدالباسط عودة حروب

من الخليل    هويةرقم    ٧٩٥٠    Redacted

كان/ت قد اعتقل/ت من قبل السلطات الإسرائيلية في يوم    ١٩ / شهر    ١١ / سنة ٢٠١٥

وهو/هي في هذا التاريخ : ينتظر المحاكمة   X X  محكوم/ة _____ اداري _____

12 -01- 2015

International Committee
of the Red Cross

Date: **12.01.2016**
التاريـخ

Place: **HEBRON/NS**
المكـــان

**ICRC Delegate**
توقيع مندوب اللجنة

ILJ-887758
CONFIDENTIAL

SHATSKY-JD01364

CONFIDENTIAL

SHATSKY-JD01365

צבא

| | | | | | בבית |
| --- | --- | --- | --- | --- | --- |
| | הגנה | | משפט | | י |
| לישראל | | הצבאי | ד | ו ח | ח |
| | | ה | | | בפני |
| 15/ | תיק ביהמ"ש : | הרכב | | | |
| 4176 / 15 | תיק תביעה : | | | | |
| 503741/ 15 (אשקלון) | תיק פ.א. : | | | | |



**במשפט שבין התובע הצבאי – המאשים**

**‐ נגד‐**

מחמוד עבד אלבאסט עודה חרוב
ת.ז. Redacted7950
יליד Redacted 1994
עצור מיום 19/11/2015, תושב דיר סאמת

**הנאשם**

## כתב‐אישום

הנאשם הנ"ל מואשם בזאת בביצוע העבירות הבאות:

**פרט אישום ראשון:**

**מהות העבירה:** גרימת מוות בכוונה, עבירה לפי סעיף 209(א) וסעיף 199 לצו בדבר הוראות
ביטחון (נוסח משולב) (יהודה והשומרון) (מס' 1651), תשע"ט-2009.

**פרטי העבירה:** הנאשם הנ"ל, באזור, ביום 19/11/2015 או במועד הסמוך לכך, גרם בכוונה למותו
של אחר, דהיינו :

1. מזה מספר שנים, שם לו הנאשם למטרה לבצע פיגועים נגד יהודים ולחזק
רבים ככל היותו.

2. כשנתיים עובר למעצרו, רכש הנאשם מפלוני אקדח 9 תמורת 22,000 ₪.

3. כשנה וחצי עובר למעצרו, במהלך מבצע "צוק איתן", תכנן הנאשם לגרום
למותם של אזרחים ישראלים בבאר שבע באמצעות ביצוע פיגוע ירי באקדח 9
אשר ברשותו או לחלופין, באמצעות ביצוע פיגוע דקירה. לאחר שהתחיל בכוונות ביטחון רבים, חסיק כי לא יצליח
להרוג מספר מספק של יהודים וכיתל את תוכניתו. הנאשם נכנס לבאר
שבע, שם עמד. לאחר שהתחין בכוונות ביטחון רבים, חסיק כי לא יצליח.

4. כשנה עובר למעצרו, תכנן הנאשם פיגוע נוסף נגד ישראלים, אולם כיוון
שהיה מסוכסך עם משפחתו וחשש למות כל עוד הסכסוך לא נפתר, לא ביצע
את הפיגוע.

5. בחודש פברואר 2015 או במועד הסמוך לכך, ברמאלדין או במקום הסמוך
לכך, רכש הנאשם מאדם בשם חידר אל אצלע (להלן: **"חידר"**) רובה סער
מסוג "עוזי" (להלן: **"הרובה"** או **"הנשק"**), 3 מחסניות תואמות ו-1-3
קופסאות תמכילות תחמושת לרובה בקוטר 9 מ"מ, תמורת 22,000 ₪.
במעמד רכישת הנשק, לימד חידר את הנאשם כיצד לתפעל את הרובה. את
הנשק החתיר הנאשם בתר הסמוך לביתו. לאחר רכישת הרובה, ובהתירות
מסתור הנשק, שימן אותו הנאשם בירי בנשק לעבר עצים ובקבוקים במקום.

6. החל ממועד רכישת הנשק ועד ליום מעצרו, רכש הנאשם בחמש הזדמנויות
שונות, תחמושת נוספת לנשק.

7. בתקופה שהתחילה בחודש יולי 2015 וסופה בחודש ספטמבר 2015 או
בתקופה הסמוכה לכך, הבחין הנאשם כי הנשק נראה חלוד והחליט לצבוע
אותו. לשם כך, ביקש הנאשם מעודה מחמוד עודה חרוב (להלן: **"עודה"**) עזרה
בצביעת הנשק. הנאשם הביא את הנשק לביתו של עודה.

8. עודה פירק את הנשק, הבחין כי הנשק אינו חלוד מבפנים וצבע את הנשק
מבחוץ. ברגע שהתצבע התייבש, לקח הנאשם את הנשק חזרה למקום
המסתקא.

9. בחודש אוקטובר 2015 או במועד הסמוך לכך, החליט הנאשם כי הגיעה העת
לביצוע הפיגוע.

CONFIDENTIAL
SHATSKY-JD01366

26. לאחר מכן, המשיך הנאשם בנסיעה איטית וירי מתמשך לכיוון הרכבים
הפלסטיניים שמספרה P6-6694-93, בו מסוג פולקסווגן, הנאשם לוחית זיהוי
ערפא. כתוצאה מהירי אותו ביצע הנאשם, גרם האחרון למותו של שאדי

27. כמו כן, ירה הנאשם לעבר רכב מסוג פורד פוקוס הנושא לוחית זיהוי ישראלית
שמספרה 62-974-71, בו נסעו מאיה ברנר ובתה דריה בזמן הרצח.

28. לאחר האמור, המשיך הנאשם חדרו את הרכב, אך לא פגעו במאיה ובדריה.
בניהם אוטובוס של חברת "אגד" ורכבים פרטיים נוספים.
העוזי על מצב אוטומט והנאשם המשיך לירות, אף מתוך רכב נתקע עד
ודרך שמשת הרכב הקדמית, במטרה לגרום למותם של כמה שותף יהודים.

29. לאחר שגנמת הנאשם לירות לעבר מספר רכבים תוך כדי נסיעתו,
לגרום לתאונה על מנת להביא רכב.

30. לשם כך, התנגש הנאשם ברכב מסוג סיאט איביזה, הנאשם לוחית זיהוי
ישראלית שמספרה 76-258-76, בו נהגה יונת למברצר על מנת לגרום למותה.

בעשותו את האמור לעיל, גרם הנאשם למותו בכוונה של יעקב דון ז"ל.

**פרט אישום שני:**
**מהות העבירה:** גרימת מוות בכוונה, עבירה לפי סעיף 209(א) וסעיף 199 לצו בדבר הוראות
**פרטי העבירה:** הנאשם הנ"ל, באזור, ביום 19/11/2015, או במועד הסמוך לכך, גרם בכוונה
למותו של אחר, דהיינו: (מס' 1651), התשל"ע-2009.
בעשותו את האמור בפרט האישום הראשון, גרם הנאשם למותו בכוונה של
שורץ ז"ל.

**פרט אישום שלישי:**
**מהות העבירה:** גרימת מוות בכוונה, עבירה לפי סעיף 209(א) וסעיף 199 לצו בדבר הוראות
**פרטי העבירה:** הנאשם הנ"ל, באזור, ביום 19/11/2015, או במועד הסמוך לכך, גרם בכוונה
למותו של אחר, דהיינו: (מס' 1651), התשל"ע-2009.
בעשותו את האמור בפרט האישום הראשון, גרם הנאשם למותו בכוונה של
ערפא ז"ל.

**פרט אישום רביעי:**
**מהות העבירה:** ניסיון לגרימת מוות בכוונה, עבירה לפי סעיף 209(א), 198 וסעיף 199גג לצו בדבר
**פרטי העבירה:** הוראות בטחון [נוסח משולב] (יהודה והשומרון) (מס' 1651), התשל"ע-2009.
הנאשם הנ"ל, באזור, ביום 19/11/2015, או במועד הסמוך לכך, ניסה לגרום
בכוונה למותו של אחר, דהיינו:

1. בעשותו את האמור בפרט האישום הראשון, ניסה הנאשם לגרום למותה של
   אורח ליבא פרידמן.
2. כתוצאה מהירי, אורח ליבא פרידמן נפגעה בפניה.

**פרט אישום חמישי:**
**מהות העבירה:** ניסיון לגרימת מוות בכוונה, עבירה לפי סעיף 209(א), 198 וסעיף 199גג לצו בדבר
**פרטי העבירה:** הוראות בטחון [נוסח משולב] (יהודה והשומרון) (מס' 1651), התשל"ע-2009.
הנאשם הנ"ל, באזור, ביום 19/11/2015, או במועד הסמוך לכך, ניסה לגרום
בכוונה למותו של אחר, דהיינו:
בעשותו את האמור בפרט האישום הראשון, ניסה הנאשם לגרום למותו בכוונה
של יעקב גרינר.

**פרט אישום שישי:**
**מהות העבירה:** ניסיון לגרימת מוות בכוונה, עבירה לפי סעיף 209(א), 198 וסעיף 199גג לצו בדבר
**פרטי העבירה:** הנאשם הנ"ל, באזור, ביום 19/11/2015, או במועד הסמוך לכך, ניסה לגרום
בכוונה למותו של אחר, דהיינו: (מס' 1651), התשל"ע-2009.

CONFIDENTIAL
SHATSKY-JD01366

CONFIDENTIAL
SHATSKY-JD01367

2.   כתוצאה מהתאונה, יונת למברגר נפצעה ונחבלה.

<u>פרט אישום ארבעה-עשר:</u>
<u>מהות העבירה</u>: סחר בציוד מלחמתי, עבירה לפי סעיף 233(ב) וסעיף 199 לצו לבר הוראות בטחון [נוסח משולב] (יהודה והשומרון) (מס' 1651), התשע"ו-2009.
<u>פרטי העבירה</u>: הנאשם הנ"ל, באזור, כשבנתיים עובר למעצרו או במועד הסמוך לכך, סחר או עסק דהיינו : בצורה אחרת בציוד מלחמתי, ללא היתר חתום ממפקד האזור או מטעמו, בעשותו את האמור בפרט האישום הראשון בסעיף קטן 2, סחר הנאשם באמל"ח ללא היתר.

<u>פרט אישום חמישה-עשר:</u>
<u>מהות העבירה</u>: סחר בציוד מלחמתי, עבירה לפי סעיף 233(ב) וסעיף 199 לצו לבר הוראות בטחון [נוסח משולב] (יהודה והשומרון) (מס' 1651), התשע"ו-2009.
<u>פרטי העבירה</u>: הנאשם הנ"ל, באזור, בחודש פברואר 2015 או במועד הסמוך לכך, סחר או עסק דהיינו : בצורה אחרת בציוד מלחמתי, ללא היתר חתום ממפקד האזור או מטעמו, בעשותו את האמור בפרט האישום הראשון בסעיף קטן 5, סחר הנאשם באמל"ח ללא היתר.

<u>פרט אישום שישה-עשר:</u>
<u>מהות העבירה</u>: נשיאת, החזקת וייצור נשק, עבירה לפי סעיף 230(ב) וסעיף 199 לצו לבר הוראות בטחון [נוסח משולב] (יהודה והשומרון) (מס' 1651), התשע"ו-2009.
<u>פרטי העבירה</u>: הנאשם הנ"ל, בתקופה שתחילתה כשנתיים עד .ר למעצרו ועד ליום מעצרו או בתקופה הסמוכה לכך, באזור, נשא, החזיק או ייצר, כלי נשק, ללא תעודת היתר ממפקד צבא"א או מטעמו, או שלא בהתאם לתנאיה של תעודת היתר, דהיינו : בתקופה האמורה לעיל, בדיר סאמת או במקום הסמוך לכך, החזיק הנאשם באקדח 9 ללא היתר כדין.

<u>פרט אישום שבעה-עשר:</u>
<u>מהות העבירה</u>: נשיאת, החזקת וייצור נשק, עבירה לפי סעיף 230(ב) וסעיף 199 לצו לבר הוראות בטחון [נוסח משולב] (יהודה והשומרון) (מס' 1651), התשע"ו-2009.
<u>פרטי העבירה</u>: הנאשם הנ"ל, בתקופה שתחילתה בחודש פברואר 2015 ועד מעצרו או בתקופה הסמוכה לכך, באזור, נשא, החזיק או ייצר, כלי נשק, ללא תעודת היתר ממפקד צבא"א או מטעמו, או שלא בהתאם לתנאיה של תעודת היתר, דהיינו : ברובה ללא היתר כדין.

<u>פרט אישום שמונה-עשר:</u>
<u>מהות העבירה</u>: הפרת הוראה בדבר סגירת שטח, עבירה לפי סעיפים 318(1), 333 ו-199 לצו לבר הוראות הבטחון [נוסח משולב] (יהודה והשומרון) (מס' 1651), התשע"ו - 2009.
<u>פרטי העבירה</u>: הנאשם הנ"ל, באזור, בשנת 2014 או במועד הסמוך לכך, חפר הוראה חוקית בדבר סגירת שטח/או מקום או תנאי היתר שניתנו על פי סעיף זה, דהיינו : במועד האמור לעיל, בראמדין או במקום הסמוך לכך, הפר הנאשם הוראה בדבר סגירת שטח בכך שיצא את תחומי האזור דרך פרצה בגדר ונכנס לישראל ללא היתר ושלא כדין. בתקופה זו, עבד הנאשם בבאר שבע.

<u>עדי התביעה:</u>
1.   רס"ב עצאוני מקלדה, מ.א. 0126 ₐ₊ אשקלון (גובה ומתרגם אמרת הנאשם)
2.   רס"ל יוסף משילח, מ.א. 7743 ₐ₊ אשקלון (גובה ומתרגם אמרת הנאשם)
3.   רס"מ חיים אלשאמי, מ.א. 5306 ₐ₊ אשקלון (גובה ומתרגם אמרת הנאשם)
4.   חמכונה "בנדה"
5.   החמכונה "אבן בסאס"
6.   יעל פגל שירוני, מז"יפ (עורכת דו"ח זיהוי טביעות אצבע)
7.   רפ"ק יאיר דלבר, מ.א. 9091 ₐ₊ , מז"יפ (עורך חוות דעת מומחה)
8.   רפ"ק אבי קופמן, מז"יפ (עורך חוות דעת מומחה)

07-03-2016

# Exhibit 151



| | | | Prisoner Salary Statement | | | | | |
|---|---|---|---|---|---|---|---|---|
| Prisoner no. 266418[*] | | | | | | | | |
| Prisoner Name: Mohammed Abdel-Basset Awda Haroub | | | | | Document no. 859317950 | | | |
| Month | Year | Beneficiary | | ID no. | Bank Name | Branch | Account no. | Salary |

Redacted

Page 1 of 2

Confidential



**7/28/21**
j b
**Salem 8**

Shatsky-JD00363-T

שגיאה! שם מאפיין מסמך לא ידוע.

Prisoner Salary Statement

| Month | Year | Beneficiary | ID no. | Bank Name | Branch | Account no. | Salary |
|---|---|---|---|---|---|---|---|

Prisoner no. 264418[*]
Prisoner Name: Mohammed Abd Al-Basset Awda Haroub     Document no. 859317950

Redacted

Redacted

| Month | Year | Beneficiary | ID no. | Bank Name | Branch | Account no. | Salary |
|---|---|---|---|---|---|---|---|
| 4 | 2020 | Afa Jamil Mahmoud Haroub | Redacted 9920 | | | | 2,000.00 |
| 5 | 2020 | Afa Jamil Mahmoud Haroub | 9920 | | | | 2,000.00 |
| 6 | 2020 | Afa Jamil Mahmoud Haroub | Redacted 9920 | | | | 2,400.00 |
| 7 | 2020 | Afa Jamil Mahmoud Haroub | Redacted 9920 | | | | 2,000.00 |
| 8 | 2020 | Afa Jamil Mahmoud Haroub | Redacted 9920 | | | | 2,000.00 |
| 9 | 2020 | Afa Jamil Mahmoud Haroub | Redacted 9920 | | | | 2,000.00 |
| 10 | 2020 | Afa Jamil Mahmoud Haroub | Redacted 9920 | | | | 2,000.00 |
| 11 | 2020 | Afa Jamil Mahmoud Haroub | Redacted 9920 | | | | 2,865.65[*] |
| 12 | 2020 | Afa Jamil Mahmoud Haroub | Redacted 9920 | | | | 4,350.00 |
| 1 | 2021 | Afa Jamil Mahmoud Haroub | Redacted 9920 | | | | 3,950.00 |
| 2 | 2021 | Afa Jamil Mahmoud Haroub | Redacted 9920 | | | | 3,950.00 |
| 3 | 2021 | Afa Jamil Mahmoud Haroub | Redacted 9920 | | | | 3,950.00 |
| 4 | 2021 | Afa Jamil Mahmoud Haroub | Redacted 9920 | | | | 3,950.00 |
| 5 | 2021 | Afa Jamil Mahmoud Haroub | 9920 | | | | 3,950.00 |

Confidential

Shatsky-JD00364-T

שגיאה! שם מאפיין מסמך לא ידוע.

# Translator's Certification

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SHABTAI SCOTT SHATSKY, *et al.*,<br><br>                              Plaintiffs,<br><br>v.<br><br>THE PALESTINE LIBERATION<br>ORGANIZATION and THE PALESTINIAN<br>AUTHORITY,<br><br>                              Defendants. | Case No. 18-cv-12355 (MKV) |

## DECLARATION OF YANIV BERMAN

I, Yaniv Berman, declare pursuant to 28 U.S.C. § 1746, as follows:

1.      I am a professional translator with an M.A. degree in Middle Eastern Studies from the Hebrew University of Jerusalem (Israel).  I read Arabic and English fluently, and I am qualified to translate from Arabic into English.

2.      I certify that the attached documents are true and accurate translations of the Arabic originals designated as "Shatsky-JD00012" through "Shatsky-JD00534."   The translations are labelled with Bates numbers that correspond to the original documents, with the addition of a "-T" at the end to indicate that it is a translation.

3.      To the extent that some of the information in the original documents was not clearly legible, I have translated such information into English to the best of my ability.  Such instances are marked with an asterisk ("[*]").

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated:  June 24, 2021

Yaniv Berman

2

Original

كشف راتب أسير

| رقم الأسير | 256418 |
| اسم الأسير | محمد عبد الباسط خويتة عروبي |

رقم الوثيقة 850317950

| الرتب | رقم الحساب | | الشرع | أبنك | رقم البطاقة | اسم المستفيد | الشهر | السنة | الشهر |



Redacted

٢ من اصفحة

CONFIDENTIAL

Shatsky-JD00363

كشف رائب أسير

| رقم الوثيقة 859317950 | | رقم الأسير 266418 |
| | | فـرع الأسير ... مدمت عدد الماسط عدة ة هروبة |

| الرتبة | رقم الحساب | الفرع | البنك | رقم البطاقة | اسم المستفيد | السنة | الشهر |
|---|---|---|---|---|---|---|---|
| Redacted | Redacted | Redacted | | Redacted | | | |
| 2,000.00 | | | | Redacted 9920 | عالف، جميل، محمرد حروب | 2020 | 4 |
| 2,000.00 | | | | Redacted 0020 | عالف، جميل، محمود، حروب | 2020 | 5 |
| 2,400.00 | | | | Redacted 8620 | عالف، جميل، محمود، حروب | 2020 | 6 |
| 2,000.00 | | | | Redacted 9920 | عالف، جميل، محمود، حروب | 2020 | 7 |
| 2,000.00 | | | | Redacted 0020 | عالف، جميل، محمود، حروب | 2020 | 8 |
| 2,000.00 | | | | Redacted 0020 | عالف، جميل، محمود، حروب | 2020 | 9 |
| 2,000.00 | | | | Redacted 8920 | عالف، جميل، محمود، حروب | 2020 | 10 |
| 2,888.85 | | | | Redacted 0030 | عالف، جميل، محمود، حروب | 2020 | 11 |
| 4,350.00 | | | | Redacted 9920 | عالف، جميل، محمود، حروب | 2020 | 12 |
| 3,950.00 | | | | Redacted 9920 | عالف، جميل، محمود، حروب | 2021 | 1 |
| 3,950.00 | | | | Redacted 9920 | عالف، جميل، محمود، حروب | 2021 | 2 |
| 3,950.00 | | | | Redacted 9920 | عالف، جميل، محمود، حروب | 2021 | 3 |
| 3,950.00 | | | | Redacted 8920 | عالف، جميل، محمود، حروب | 2021 | 4 |
| 3,950.00 | | | | Redacted 9020 | عالف، جميل، محمود، حروب | 2021 | 5 |

2 من 2 صفحة

CONFIDENTIAL

Shatsky-JD00364