# Exhibit 153

CONFIDENTIAL                                  SHATSKY-JD01782-T

| [Palestinian Authority emblem] |
| :-: |

<table>
<tr><td colspan="2" align="center">State of Palestine</td></tr>
<tr><td colspan="2" align="center">Ministry of Detainees and Ex-Detainees Affairs</td></tr>
<tr><td colspan="2" align="center">General Administration for Administrative and Financial Affairs</td></tr>
<tr><td colspan="2" align="center">Archive Department</td></tr>
<tr><td><strong>17569</strong></td><td><strong>Yahia Muhamad Naif Abdullah Hajj Hamad</strong></td></tr>
</table>

Important note: The file contains two files of two separate prisoners.

Kindly pay attention to this to avoid confusing the two.

CONFIDENTIAL                                  SHATSKY-JD01782-T

7/28/21
j.b
**Salem 11**

CONFIDENTIAL                                                                    SHATSKY-JD01787-T

OK                                                _17569_

[English] Palestinian National Authority          [Emblem of the          [Arabic] Palestinian National Authority
Ministry of Detainees & Ex-detainees Affairs      Palestinian Authority]   Ministry of Detainees & Ex-detainees Affairs
Gen. Dep. Detainees & Ex-detainees                                         Gen. Dep. Detainees & Ex-detainees

Payments for first months due to family's material need after their house was _demolished_ (in an explosion)

**Main Prisoner Form** _256147 [illegible]_                                [Round stamp: PLO, Dep. Detainees & Ex-
                                                                           Detainees

| Form no.: | | | | | | | | 07-02-2016 |
|---|---|---|---|---|---|---|---|---|
| Form issuance date: | 12/1/2015 | | | Ministry's administration/branch: | | Nablus | | General Administration of Legal Affairs |

Checked

Indictments]

**1. Basic information concerning the prisoner:**

| ID no. (9 digits) | Redacted | | | | | 2 | 0 | 4 | 6 |
|---|---|---|---|---|---|---|---|---|---|
| **Four-part name** | **First name** | | **Father's name** | | **Grandfather's name** | | **Family name** | | |
| | Yahya | | Muhamad Naif | | Abdullah | | Hajj Hamad | | |
| **Mother's name:** | Hiyam | | | | **Gender:** | | ☑ Male | ☐ Female | |
| **DoB:** | Redacted /1991 | | | | **Place of birth:** | | Nablus | | |
| **Education:** | ☐ Illiterate | ☐ Elementary | ☐ High school | ☐ Diploma | ☑ University | | ☐ Higher education | | |
| **Profession prior to arrest:** | Student | | | | **Organization:** | | | | |
| **Arrest date:** | 10/8/2015 | | | | **Place of arrest:** | | Megiddo | | |
| **Arrest status:** | ☑ Detained | ☐ Sentenced | ☐ Administrative | | ☐ Free | | ☐ Other | | |
| **In case of life sentence according to ICRC Certificate** | **Day** | **Month** | **Year** Life sentence | **Expected release date according to verdict:** | | **Day** | **Month** | **Year** | |
| **Permanent residence:** | **Governorate:** | Nablus | | **Residential complex:** | | Redacted | | | |
| **Notes:** | | | | | | | | | |

**2. Information concerning previous arrests: _____. Only those attested to by ICRC certificates, in chronological order from newest to oldest.**

| No. | Arrest date | Arrest type | Release date | Arrest period | | | Notes |
|---|---|---|---|---|---|---|---|
| | | | | **Day** | **Month** | **Year** | |
| 1. | | | | | | | |
| 2. | | | | | | | 2-10-2016 |
| 3. | | | | | | | [handwritten signature] |
| 4. | | | | | | | |
| 5. | | | | | | | |
| 6. | | | | | | | |

1

CONFIDENTIAL                                                                    SHATSKY-JD01787-T

CONFIDENTIAL                                                    SHATSKY- JD01788-T

| [English] Palestinian National Authority | [Emblem of the | [Arabic] Palestinian National Authority |
|---|---|---|
| Ministry of Detainees & Ex-detainees Affairs | Palestinian Authority] | Ministry of Detainees & Ex-detainees Affairs |
| Gen. Dep. Detainees & Ex-detainees | | Gen. Dep. Detainees & Ex-detainees |

## 3. Social Status Information:

| Marital Status: | ☐ Single | ☐ Married | ☐ Divorced | ☐ Widow |
|---|---|---|---|---|
| If Married: | Enter data of spouse and children | | | |
| Spouse's ID No. | | | Marriage Contract Date | / / |
| Spouse Name | | | Number of Children: | |
| Data on children from first wife: (sons under 18, unmarried daughters of all ages) | | | | |

| No. | Name | DoB | Marital Status | Education |
|---|---|---|---|---|
| 1. | | | | |
| 2. | | | | |
| 3. | | | | |
| 4. | | | | |
| 5. | | | | |
| 6. | | | | |
| 7. | | | | |
| 8. | | | | |
| 9. | | | | |

## 4. Information of Authorized Representative (Beneficiary):

| Beneficiary's ID: | Redacted | | | | 1 | 8 | 6 | 3 |
|---|---|---|---|---|---|---|---|---|
| Authorized Representative – Beneficiary's Name: | Hiyam Jawdat Abdullah Hajj Hamad | | | | Relationship: | | His mother | |
| Date of Authorization if Available: | / / | | | Authorization's Period of Validity: | | | | |
| Bank: | Redacted | | Bank Branch: | | Redacted | | | |
| Account No.: | Redacted | | | | | | | |
| Landline Phone No.: | Redacted | | Cell Phone No.: | | | | | |
| Permanent Beneficiary's Address: | Governorate: | Nablus | Residential complex: | | | | | |
| Notes: | | | | | | | | |

| Applicant's Notes: | |
|---|---|
| Confirmation: | I the undersigned confirm and attest that all the information included within the request is correct and I bear the responsibility for it. |
| Applicant's Signature: | [handwritten signature] |

2

CONFIDENTIAL                                                    SHATSKY- JD01788-T

CONFIDENTIAL                                                                 SHATSKY- JD01789-T

| [English] State of Palestine | [Emblem of the Palestinian Authority] | [Arabic] State of Palestine |
|---|---|---|
| Ministry of Detainees & Ex-detainees Affairs | | Ministry of Detainees & Ex-detainees Affairs |
| Gen. Dep. Detainees & Ex-detainees | | Gen. Dep. Detainees & Ex-detainees |

**5. For Official Use:**

| Advisor/Employee's Name: | Hudaib | | |
|---|---|---|---|
| Advisor/Employee's Notes: | | | |
| Date: | 1/12/2015 | Signature: | [handwritten signature] |
| Administration Head's Name: | | | |
| Administration Head's Notes: | [handwritten signature] | | [Round stamp: P.A. / Dep. Detainees & Ex-detainees / Nablus Administration |
| Date: | | Stamps and Signature: | |

**Attached Documents: Check (V) alongside attached documents (confirmation and approval of the Administration's head)**

| ☐ | Prisoner/Ex-prisoner's copy of ID | ☑ | Beneficiary's copy of ID |
|---|---|---|---|
| ☑ | ICRC certificates | ☑ | Indictment |
| ☐ | Verdict decision (if available) | ☑ | Copy of bank account card |
| ☐ | Copy of authorized marriage certificate | ☐ | Copies of children's birth certificates |
| ☐ | Addendum of additional wife/wives | ☐ | Other (specify) |

**6. Confirmation and Approval:**

| 1. Confirmation by Prisoners' Affairs | ☐ I approve the confirmation of the Prisoner Form (per regulations and laws) | | |
|---|---|---|---|
| Name of authorized employee: | | | |
| Date: | /  / | Stamp and signature: | |
| | ☐ I do not approve the confirmation of the Prisoner Form | | |
| Reasons and causes: | | | |
| | | | |
| 2. Confirmation by Legal Affairs: | ☐ I approve the confirmation of the Prisoner Form (per regulations and laws) | | |
| Name of authorized employee: | | | |
| Date: | /  / | Stamp and signature: | |
| | ☐ I do not approve the confirmation of the Prisoner Form | | |
| Reasons and causes: | | | |

3

CONFIDENTIAL                                                                 SHATSKY- JD01789-T

SHATSKY-JD01790-T

| | | |
|---|---|---|
| **Israel** | **Defense** | **Forces** |
| in the Military Court | | Court File       15 / [illegible] |
| S A M A R I A | | Prosecution File: 2252/15 |
| Before  a Panel | | Police File:      3593/15 |
| | | 3202/15 |

This indictment was filed in the Military Court on: November 19, 2015. Recorded in the court docket as Case File Number [unclear] - 321 Signature: [Signature]

(Terrorist Activities Petah Tikva)

[Arabic stamp] PLO
Detainees & Ex-Detainees Department
February 7, 2016
Gen. Dir. for Legal Affairs
Checked
Indictments

In the case between:

**The Military Prosecutor**

-The Prosecution-

**v.**

**Yahia Muhamad Naif Abdullah Hajj Hamad**

**(Detained since October 3, 2015)**

ID No. <sup>Redacted</sup>2046, born <sup>Redacted</sup>, 1991, resident of Nablus

- The Defendant -

## Indictment

The above-captioned Defendant is hereby indicted for committing the following offenses:

**First Count:**

**Description of the Offense:** Nature of the Offense: Membership in an unlawful association, an offense pursuant to Sections 84 and 85(1)(A) of the Defense Regulations (Emergency), 1945.

**Details of the Offense:** The above-captioned Defendant, while in the region, was a member or acted as a member of an unlawful association, to wit:

Starting or around two years prior to his arrest, in Nablus or in proximity thereto, the **Defendant** was a member of the Hamas organization (hereinafter: **"Hamas"**), which constitutes an unlawful association. As part of his membership in the said

organization, the **Defendant** acted as stated in the following counts of indictment, as set forth below:

A. At or around approximately one and a half years prior to his arrest, in the grocery store owned (hereinafter: **the "Grocery Store"**) by Ragheb Ahmad Mohamed Aliwiya (hereinafter: "**Ragheb**") or in proximity thereto, the Defendant accepted Ragheb's offer to take military action against Israeli targets on behalf of the Hamas organization.

B. In or around January 2015, the **Defendant** contacted Karam Lutfi Fathi Rizq (hereinafter: "**Karam**") and offered that he take military action with him on behalf of the Hamas organization in the form of the execution of terror attacks against Israeli targets with the objective of causing the death of Jewish settlers later on. In or around March 2015,

*(1)*

SHATSKY-JD01790-T

SHATSKY-JD01791-T

the **Defendant** contacted him again and repeated his proposal that he take military action with him against Israeli targets. Karam responded in the affirmative to the proposal.

[Arabic language stamp] PLO
Detainees & Ex-Detainees
Department
February 7, 2016
Gen. Dir. for Legal Affairs
Checked

C.   At or around four months prior to his arrest, in the Grocery Store or in proximity thereto, after Amjad Adel Muhamad Aliwi (hereinafer: "**Amjad**") had recruited Ragheb into the Hamas military organization that aimed to execute shooting attacks on Israelis (hereinafter: the "**Military Cell**"), Ragheb contacted the **Defendant** and recruited the latter for Military Cell operations while explaining to the**Defendant** the Military Cell's objectives.

D.   Shortly after the recruitment of the **Defendant** into the Military Cell, as previously noted, the latter contacted Basam Rahami Daoud Abu Jazela (hereinafter "**Basam**") and proposed to him that he take military action with them and in particular, assist the **Defendant** in the preparation of weapons and other equipment that would serve in military operations. Basam later accepted the offer on two different occasions. The **Defendant** hid with Basam equipment that would later serve the Military Cell in its operations . Among other things, the **Defendant** transferred a sack containing vests to Basam.

E.   During that same period, the **Defendant** contacted Ragheb and requested his approval to recruit Karam into the Military Cell in light of the latter's consent to take military action as set forth above. Ragheb acceded to the request. The **Defendant** then recruited Karam into the Military Cell while explaining to him the cell's objectives, as noted above, and the existence of additional cell members.

F.   Later, and in light of Karam's recruitment, in or around Nablus, the **Defendant** conducted, on two different occasions, meetings between Karam and Ragheb in which the latter ascertained Karam's readiness to operate in any framework that would be required in order to realize military operations. Karam responded that he is ready to take any action necessary provided that he would not engage in shooting given his lack of skills in weapons

operation. Therefore, Ragheb offered that he would train him how to operate weapons. Karam accepted the offer.

G. In or around July 2015, in Ragheb's house in Nablus or proximity thereto, the **Defendant**, Karam, and Ragheb met. At the meeting, the last one trained the two former on the operation of an **M16** weapon, bearing imprinted number 700326K (hereinafter: the **"Weapon"**), and in particular, the dismantling and assembly thereof.

H. At or around the beginning of August 2015, in the Grocery Store or in proximity thereto, the **Defendant** discussed with Ragheb the incident wherein a residential home in the village of Duma was deliberately set on fire thereby causing the death of the Dawabsheh family. Already during their conversation, the Defendant and Ragheb agreed that a revenge operation must be undertaken. Similarly, the Defendant agreed to Ragheb's request for financial assistance to purchase weapons for the military operation. Therefore, the **Defendant** gave Ragheb the financial sum of NIS 7,400.

I. A number of days afterward or at a time in proximity thereto, in the Grocery Store on in proximity thereto, when the Defendant met with Ragheb, the latter introduced him to Samir Zuheir

SHATSKY-JD01791-T

SHATSKY-JD01792-T

[Arabic language stamp] PLO
Detainees & Ex-Detainees
Department
February 7, 2016
Gen. Dir. for Legal Affairs
Checked
Indictments

Ibrahim Kusa (hereinafter: "**Samir**"). During the course of that meeting, Ragheb explained to the two that from then on, they would work in tandem in the Military Cell. The three further agreed that the time had come to take military action given the events that had taken place during that period at the Al-Aksa Mosque and in response to the death of the aforementioned Dawabsheh family. Therefore, the three agreed that Samir and the **Defendant** would meet later that day, in the evening, and travel together to the area of the Beit Furiq junction for purposes of executing a shooting attack on the vehicles of Jewish settlers in order to cause the death of the latter. They also agreed that they would execute the said terror attack using the Weapon and the magazines that contained compatible bullets (hereinafter: the "**Ammunition**") that were in Ragheb's possession. Further for purposes of executing the said shooting attack, Ragheb asked the **Defendant** and Samir to gather intelligence regarding Jewish settler vehicular traffic and the presence of security forces on the road next to Beit Furiq and Beit Dajan. The **Defendant** and Samir complied with the request.

<u>**The Defendant's membership in Hamas and the Military Cell continued until the date of his arrest.**</u>

<u>**Second Count:**</u>

<u>**Description of the Offense:**</u>     Attempted intentional causation of death, an offense pursuant to Sections 198 and 209(a) to the Security Provisions     (Judea     and Samaria) Order [Consolidated Version] (No. 1651), 5770-2009.

<u>**Details of the Offense:**</u> The above-captioned Defendant, while in the region, attempted to intentionally cause the death of a person, to wit:

    **a.** Already on that day and further to what is stated in subsection I of the previous count, the **Defendant** and Samir, separately, pursuant to the said earlier agreement, reconnoitered the traffic intersection next to Beit Furiq and Beit Dajan. Later, they updated Ragheb

regarding their findings as to the absence of security forces along the said intersection.

b. Then, after the three agreed on a strategic location for the execution of the terror attack, the **Defendant** headed toward the Grocery Store or in proximity thereto, and Ragheb took the Weapon and the Ammunition. Even when the Weapon was being handed over, Ragheb gave guidance to the **Defendant** on how to operate the Weapon.

c. Afterward, Samir and the **Defendant** met as agreed, the latter with the Weapon and Ammunition in his possession. Then, the **Defendant** and Samir positioned themselves in the latter's vehicle, a Fiat Uno, bearing Palestinian license plate number 4-1480-90 (hereinafter: the "**Fiat**") such that the **Defendant** was driving and Samir with sitting in the backseat with the Weapon in his possession. The two began traveling toward the Beit Furiq junction, and when they reached their destination, they discerned a vehicle bearing Israeli license plates making its way from the Elon Moreh settlement toward the Tamar settlement [unclear], and after Samir stuck his upper body out from the car, the latter shot a number of bullets toward the Israeli vehicle at a distance of approximately six meters. Immediately afterward, the two escaped from the scene.

d. A short time after the execution of the said terror attack, the **Defendant** traveled, together with Samir, to the home of Karam in Nablus or in proximity thereto, where the **Defendant** met Karam while Samir

(3)

SHATSKY-JD01792-T

SHATSKY-JD01793-T

[Arabic language stamp] PLO
Detainees & Ex-Detainees
Department
February 7, 2016
Gen. Dir. for Legal Affairs
Checked

continued on his way. The **Defendant** asked Karam to prepare for him the weapon and ammunition that remained in his possession. The latter complied with his request. A number of days afterward, the **Defendant** returned to Karam's home and took possession of the weapon and ammunition. Similarly, subsequently, the **Defendant** provided Karam with 250 bullets that would later serve in the Military Cell's operations.

e. Twenty-four hours after execution of the shooting attack or in proximity thereto, the **Defendant** and Samir updated Ragheb regarding the execution and results of the shooting terror attack at the aforementioned Beit Furiq junction. <u>**Through their above-mentioned actions, the Defendant and his accomplices attempted to cause the death of another person.**</u>

<u>**Third Count:**</u>

<u>**Description of the Offense:**</u>       Conspiracy to intentional causation of death, an offense pursuant to Sections 209(A) and 254 of the Security Provisions [Consolidated Version] (Judea and Samaria) (No. 1651), 5770-2009.

<u>**Details of the Offense:**</u>  The above-captioned Defendant, while in the region, conspired to intentionally cause the death of a person, to wit:

A. In or around August 2015, the **Defendant** updated Ragheb regarding Karam's wish to take military action in which he would die. Then, the **Defendant**, together with Ragheb, set out for Ein Fara with the objective of examining the possibility of executing a shooting attack against the Jewish settlers at that destination. Later, after an examination of the area, the **Defendant** suggested to Karam that he execute the shooting attack at the said spring. Karam accepted the **Defendant's** suggestion but conditioned the execution of the terror attack on his later examination of the area. The **Defendant** and Karam headed toward Ein Fara pursuant to Karam's request. Then, when the two arrived at their destination, the **Defendant** surveyed the area's contours as part of the planning for the terror attack. At the end and, inter alia, given the presence of an Arab population in the place, they ceased from their planning.

**B.**   A short time afterward, Ragheb and the Defendant traveled, in the latter's vehicle, toward the Tomb of Joseph with the objective of examining the area as a possible target for the execution of a shooting attack. At the end and in light of the alert presence of security forces in the said area, the two withdrew from their plan.

**Fourth Count:**

**Description of the Offense:**   Attempted intentional causation of death, an offense pursuant to Sections 198 and 209(A) of the Security Provisions [Consolidated Version] (Judea and Samaria) (No. 1651), 5770-2009.

**Details of the Offense:** The above-captioned Defendant, while in the region, attempted to intentionally cause the death of a person, to wit:

**A.**   On or around August 30, 2015, when the **Defendant** met together with Ragheb and Samir in the Grocery Store in Nablus, the three discussed the failure of the above-described shooting attack and the possibility of executing an additional shooting attack with the objective of causing the death of a Jewish settler. To that end, Samir suggested that the shooting attack be executed during the night in the area of the Jit junction given the voluminous traffic of Jewish settlers' vehicles at that intersection. Despite the foregoing, Ragheb proposed that the shooting attack be executed already on the afternoon of that same day. The **Defendant** and Samir accepted the proposal.

4

SHATSKY-JD01793-T

SHATSKY-JD01794-T

B.  At or around an hour later, Samir drove the Fiat, as agreed, to the area of or around Beit Vizan. When Samir reached the destination, he met the **Defendant**, who entered the Fiat and positioned himself in the back seat with the Weapon and the Ammunition in his possession. The two then started traveling toward the Jit junction as planned.

C.  A short time afterward, when the two reached a dirt road, Samir stopped the Fiat at the roadside and switched the Palestinian license plates with Israeli license plates. Afterward, the two continued on their way to the Jit junction.

Later, when the **Defendant** and Samir reached their destination and did not spot Israelis further on, the two continued traveling in the direction of the Einav settlement in the attempt while still searching for Israeli vehicles. Then, when the two detected a Hyundai vehicle bearing Israeli license number 70-808-78 (hereinafter: the "**Israeli Vehicle**"), which was being driven at the time by Ronen Edri, who was traveling toward them, the two made a U-turn and started pursuing the Israeli Vehicle. Later, at or around the Jit junction, after Samir and the Defendant caught up with the Israeli Vehicle, the two stopped their vehicle to the left of the said vehicle. At the same time, the **Defendant** began shooting dozens of bullets toward the Israeli Vehicle at a distance of approximately six meters. Immediately after the shooting attack, the **Defendant** and Samir fled the scene.

As a result, the bullets penetrated the left side of the Israeli Vehicle and shattered its front left windshield. Given the aforementioned, the driver Ronen Edri was injured by the glass shards.

**Through their above-mentioned actions, the Defendant and his accomplices attempted to cause the death of Roni Edri.**

**Fifth Count:**

[Arabic language stamp] PLO
Detainees & Ex-Detainees
Department
February 7, 2016
Gen. Dir. for Legal Affairs
Checked

**Description of the Offense:**    Conspiracy to intentional causation of death, an offense pursuant to Sections 209(A) and 254 of the Security Provisions [Consolidated Version] (Judea and Samaria) (No. 1651), 5770-2009.

**Details of the Offense:**  The above-captioned Defendant, while in the region, conspired to intentionally cause the death of a person, to wit:

A. Twenty-four hours after execution of the shooting attack as set forth in the previous count or in proximity thereto, the **Defendant** headed toward the Grocery Store in Nablus, where he updated Ragheb regarding the execution and results of the shooting attack at the aforementioned Jit junction.        Approximately one week after what is stated in subsection a or in proximity thereto, the **Defendant** returned the Weapon and Ammunition to Ragheb pursuant to the latter's request. On or around September 23, 2015, on the night after the Day of Atonement, the **Defendant** met with Samir in the Grocery Store in Nablus or in a hotel in proximity thereto and agreed with him that they would go out, at nighttime, to execute an additional shooting attack in the area of the Beit Furiq junction.

B. Later, the **Defendant** contacted Ragheb and updated him regarding their planning to execute an additional shooting attack. At that point, the **Defendant** requested the Weapon from Ragheb for the sake of the execution of the said terror attack. Ragheb agreed to the request and gave the Weapon and Ammunition to the Defendant. Subsequently, the **Defendant** and Samir traveled in a Skoda Octavia taxi, bearing Palestinian license plate number 7-2876-30, which was in [[partially cut off] possession

5

SHATSKY-JD01794-T

SHATSKY-JD01795-T

(hereinafter: **"Skoda")**, toward the Beit Furiq junction in order to examine the intersection at which the shooting attack would later be executed.

C. Then, when the **Defendant** and Samir reached the area near the Beit Furiq junction, the two discerned the presence of security forces who were conducting a security check at the roadblock at that time. Therefore, and in light of the alert presence of security forces in the designated area, the two withdrew from their plan to execute a shooting attack at the said destination.

D .At the end, Samir and the **Defendant** retraced their steps with the weapon remaining in the **Defendant**'s possession. Later, the latter updated Ragheb that the shooting attack was not actually executed due to the presence of the said security forces.

[Arabic language stamp] PLO
Detainees & Ex-Detainees
Department
February 7, 2016
Gen. Dir. for Legal Affairs
Checked

**Sixth Count:**

**Description of the Offense:** Conspiracy to intentional causation of death, an offense pursuant to Sections 209(A) and 254A of the Security Provisions [Consolidated Version] (Judea and Samaria) (No. 1651), 5770-2009.

**Details of the Offense:** The above-captioned Defendant, while in the region, conspired to intentionally cause the death of a person, to wit:

A. At or around the end of September 2015, the Defendant had a discussion with Zeid Ziyad Jamil Amerhim (hereinafter: **"Zeid"**) in which he proposed to him to take part in the Military Cell. Zeid accepted the proposal.

B. Later and in light of Zeid's said consent, near the Dahiya mosque or in proximity thereto, the **Defendant** introduced Ragheb to Zeid in the latter's vehicle, a Golf (hereinafter: the **"Golf"**). During the meeting and before the three began discussions, Ragheb requested that they turn off the cellular phones that they had with them. Ragheb verified Zeid's readiness to take part in military operations. Then, the **Defendant** suggested to Ragheb to execute a drive-by shooting attack while riding on a motorcycle. Similarly, the

**Defendant** noted that the terror attack would be executed with Zeid's assistance given the latter's training in riding on a motorcycle. In response, Ragheb suggested to Zeid to execute the shooting attack in the aforementioned format. Then, Zeid explained that despite his training in riding a motorcycle and his ability to take on an additional passenger to ride with him, the outline of the proposed terror attack had a high-risk potential, and therefore, the three decided not to proceed with the planning of the said terror attack. At the end, the three discussed the need to train Zeid how to operate an M16 weapon with an emphasis on the dismantling, assembly, and carrying thereof. Ultimately, they did not manage to do so.

**Seventh Count:**

**Description of the Offense:** Intentional causation of death, an offense pursuant to Sections 199C (A and B) and 209(A) of the Security Provisions [Consolidated Version] (Judea and Samaria) (No. 1651), 5770-2009.

**Details of the Offense**: The above-captioned Defendant, while in the region, intentionally caused the death of a person, to wit:

A. At or around September 2015, in light of the Military Cell's failures in executing shooting attacks that they had executed prior thereto as described above, the **Defendant** and Ragheb discussed the need to execute a shooting attack the results of which would would reverberate

6

SHATSKY-JD01795-T

SHATSKY-JD01796-T

loudly in the public. Therefore, the **Defendant** accepted Ragheb's suggestion to meet in the future. Besides the central objective that guided the Military Cell, meaning, causing the death of Jewish settlers, the **Defendant** would attempt to kidnap a Jewish Settler (hereinafter: a **"Kidnapping Attack"**). Already at that meeting, Ragheb asked the **Defendant** to reconnoitre various targets for purposes of the Kidnapping Attack and update him. The **Defendant** did as requested.

B. Subsequently, given the agreement between the Defendant and Ragheb regarding the execution of the Kidnapping Attack, the latter contacted Amjad and requested his approval of and assistance in the execution of the said terror attack. In response, the latter said that he would first contact his supervisors and would afterward update Ragheb. A short time afterward, Amjad gave approval to Ragheb to execute the Kidnapping Attack and apprised him that he would help him transport and conceal the hostage as requested. The two also agreed that to the extent that the Kidnapping Attack would succeed, Ragheb would dial the cellular phone in Amjad's possession, wait for the duration of a single ring tone, hang up immediately thereafter, repeat the action, and thus, practically, would update Amjad that they succeeded in kidnapping a Jewish settler and he should get to the meeting point close to Alraouda College and take the hostage into his custody.

C. Later, approximately two weeks before execution of the terror attack, the **Defendant** met with Karam and updated him that the Military Cell intends to execute a shooting and kidnapping attack in the near future.

D. On or around September 28 2015, in the Grocery Store in Nablus or in proximity thereto, the **Defendant** met together with Ragheb and Samir, and the three discussed execution of the shooting and kidnapping attack. In that meeting, the three decided that they would execute the Kidnapping Attack on October 1, 2015 near Beit Furiq. Similarly, the **Defendant** agreed with Ragheb that if the Kidnapping Attack succeeds, he will update him in order that the cell would transfer the hostage to Ragheb's care. At the meeting,

[Arabic language stamp] PLO
Detainees & Ex-Detainees
Department
February 7, 2016
Gen. Dir. for Legal Affairs
Checked
Indictments

Ragheb instructed Samir to purchase zip ties and dark stickers for the Kidnapping Attack.

E.  Two days prior to the execution of the terror attack or in proximity thereto, the **Defendant**, clarified with Basam, on the background of the latter's family relationship with Mohamed Nismi Mohamed Amar (hereinafter: "**Mohamed**"), a physician, about the possibility of the latter medically treating a member of the Military Cell or, alternatively, the Jewish settler that they would kidnap, if required due to the injury of one of them during the course of the Kidnapping Attack. Basam agreed to assist the **Defendant**. Thereupon, the two agreed that to the extent that such medical treatment would be required, the **Defendant** would contact Basam and tell him the expression, "My heart hurts," or some other expression to the same effect, and thus, in fact, he would update Basam that he and Mohamed must come meet the **Defendant**.

F.  On the morning of October 1, 2015, as the **Defendant** picked-up Ragheb and Samir in a Kia taxi (hereinafter: the "**Kia**") in his possession, the three began preparing the Kidnapping Attack (hereinafter: the "**Preparation Meeting**"). During the course of the planning, it was agreed that in the evening, Samir and the **Defendant** would meet in the Iskan Rujib region in order to execute the Kidnapping Attack. As already planned in the Preparation Meeting and given the complexity inherent in that type of terror attack, it was decided to use an operations format that differed from the format that served the cell up until then.

7

SHATSKY-JD01796-T

SHATSKY-JD01797-T

In the framework of the new format, the latter decided to join additional operatives to carry out the terror attack, arm the executing cell with additional weapons, and use a spacious vehicle for purposes of transporting the hostage.

G. In accordance with the proposed format, it was decided that Karam, given his membership in the Military Cell and his already being informed of the planned terror attack, would participate in the Kidnapping Attack. Similarly, given Zeid's membership in the cell, the **Defendant** decided that Zeid would also take part in the terror attack. It was also agreed that in the evening, Ragheb would provide to the **Defendant** a handgun, which he had located in advance, for the cell's operations. Similarly, the three determined that they would execute the Kidnapping Attack with Samir's Skoda. Already during the preparations, the **Defendant** received into his possession zip ties, two pairs of gloves, and three face scarves that the cell members would use while executing the terror attack.

H. Subsequently, while traveling in the Kia, Samir brought Ragheb and the **Defendant** to a dirt road near Kafr Salem that leads to the Elon Moreh bypass road. At that point, the Defendant proposed to the other two that they perpetrate the Kidnapping Attack by means of that intersection — by parking their vehicle on the dirt road and proceeding on foot to the road. Ragheb and the **Defendant** declined Samir's proposal on the grounds that proceeding on foot would complicate the execution of the terror attack and increase the risk that the cell would be captured. Therefore, the three concluded that, as agreed in advance, the Kidnapping Attack would be executed at the intersection next to the Beit Furiq junction after they will have ascertained the absence of security forces immediately prior to the time for the terror attack.

I. Later that day, in the afternoon, near the Nablus cemetery, as arranged by the **Defendant**, Karam and Ragheb met. Then, the latter updated Karam that the Kidnapping Attack would be executed later that day, in the evening, and ascertained Karam's readiness to take part in the terror attack. The latter expressed his consent. At the same time, the **Defendant** met with Zeid with the

[Arabic language stamp] PLO
Detainees & Ex-Detainees
Department
February 7, 2016
Gen. Dir. for Legal Affairs
Checked
Indictments

request that the latter come to the **Defendant**'s house in the evening.

J. Still on that same day, in the evening, Zeid picked up the **Defendant** in his Golf vehicle, and the two rode to the Aldahiya region, where they met Ragheb. At that point, the latter gave the **Defendant**, as arranged, an FN handgun, imprinted with number C06845 (hereinafter: the "**Handgun**"), and a magazine containing compatible bullets that Ragheb had purchased ahead of time with Samir's and Amjad's assistance. Similarly, Ragheb gave the **Defendant** guidance on how to operate the Handgun.

K. Immediately afterward, Zeid and the **Defendant** continued on their way toward Alraouda College, where they picked up Karam. Then, the three rode toward the Iskan Rujib region, with the **Defendant** giving guidance to Karam about operating the Handgun on the way. When the cell members reached their destination, they met with Samir, who had arrived at the place in the Skoda as planned.

L. Subsequently, around 8 pm., the **Defendant** traveled together with Samir in the Skoda toward the Beit Furiq junction in order to examine the target site that was chosen for the execution of the Kidnapping Attack and confirm the absence of security forces at the site. Then, Samir and the Defendant retraced

SHATSKY-JD01797-T

SHATSKY-JD01798-T

their steps to the Iskan Rujib area or in proximity thereto and met Karam and Zeid. Then the **Defendant** and Karam traveled in the Skoda, at the **Defendant**'s request, toward the Al-Masakin area or in proximity thereto. At the same time, Zeid and the **Defendant** traveled in the Golf toward the home of the latter. There, the **Defendant** took the Weapon, Ammunition, zip ties, gloves, and face scarves, returned to Zeid's vehicle, and instructed him to drive toward the Al-Masakin area.

[Arabic language stamp] PLO Detainees & Ex-Detainees Department February 7, 2016 Gen. Dir. for Legal Affairs Checked

M.  When all of the cell members finally met at Al-Masakin or in proximity thereto, the **Defendant** turned to Zeid and instructed him to drive the Golf toward the Beit Furiq junction and confirm the absence of security forces along the intersection. For that purpose, For that purpose and in an effort to distance Zeid from being involved in the execution of the Kidnapping Attack, the **Defendant** gave Karam's cell phone to Zeid. Zeid was requested to use it to update him as to the absence of security forces by calling the **Defendant's cell phone**, wait for a single ring, and hang-up. Similarly, the **Defendant** instructed Zeid that after finishing checking the intersection, he should continue on his way toward the beverage store, PriceTea, located in the Al-Masakin area. The latter did as he was told.

N.  While Zeid was doing so, the other cell members began to camouflage themselves in order to escape identification during the perpetration of the terror attack. At that point, the **Defendant** and Samir applied dark stickers, which the latter already had, to the Skoda's license plates and other identifying marks. In addition, the three donned the face scarves while the **Defendant** and Karam put on the gloves.

O.  Subsequently and immediately after Zeid signaled to the members of his cell that there were no security forces at the intersection, the **Defendant**, Karam, and Samir began to travel toward the Beit Furiq junction with the Defendant driving the Skoda. The **Defendant** drew out the Handgun and magazine, while they were driving, and passed them to Karam. Then the three sought a target for execution of the Kidnapping Attack.

P.  Further on, near the Beit Dajan junction, the cell noticed a Mitsubishi bearing Israeli license plate 95-731-10 (hereafter: the **"Mitsubishi"**), which was occupied at the time by the Henkin family — Eitam Henkin, of blessed memory, Na'ama Henkin, of blessed memory, and their four small children, which was making its way from the community of Elon Moreh toward the community of Itamar. Thereupon, at the **Defendant**'s request, Samir made a U-turn, and the cell began pursuing the Mitsubishi. They then caught up with the Mitsubishi, and, as they were passing it, the **Defendant** leaned the upper part of his body out of the vehicle's window and fired dozens of bullets from the Weapon, which was set to automatic, at the Mitsubishi.

Q.  As a result of the gunfire, Eitam Henkin, of blessed memory, was injured, who stopped his vehicle at the roadside. Immediately thereafter, Samir stopped the vehicle. Then the **Defendant**, with the Weapon, and Karam with the Handgun, got out of the vehicle and began walking toward the Mitsubishi

9

SHATSKY-JD01798-T

SHATSKY-JD01799-T

in order to kidnap one of its occupants as planned. At the same time, the **Defendant** replaced the magazine of the Weapon with another magazine that he had while Karam loaded the Handgun.

R.   When the two reached the Mitsubishi, the **Defendant** went to its right front door while Karam went to the driver's door. Then Karam began to struggle with Eitam Henkin, of blessed memory, who was doing all he could, with the last of his strength, to take the Handgun from Karam's grasp. While Eitam Henkin, of blessed memory, was fighting for his life and for the lives of his family, the **Defendant** noticed what was happening and fired a burst of bullets at the victim from close range with the Weapon set to automatic until the decedent breathed his last.

**By the above deeds, the Defendant and his accomplices intentionally caused the death of Eitam Henkin, of blessed memory.**

[Arabic language stamp] PLO
Detainees & Ex-Detainees
Department
February 7, 2016
Gen. Dir. for Legal Affairs
Checked
Indictments

**Eighth Count:**

**Description of the Offense:**   The intentional causation of death, an offense pursuant to Sections 199C (a and b) and 209(A) of the      Security      Provisions Order [Consolidated Version] (Judea and Samaria) (No. 1651), 5770-2009.

**Details of the Offense:** The above-captioned Defendant, while in the region, intentionally caused the death of a person, to wit:

Immediately after the occurrence of what is stated in the previous count, Na'ama Henkin, of blessed memory, began to struggle with the **Defendant** in an attempt to survive. Then, without hesitation, the **Defendant** fired a burst of bullets point blank at Na'ama Henkin, of blessed memory, and caused her death in front of her small children, who were witness to the incident.

**By the above deeds, the Defendant and his accomplices intentionally caused the death of Na'ama Henkin, of blessed memory.**

**Ninth Count:**

**Description of the Offense:**   Attempted kidnapping in aggravating circumstances, an offense pursuant to Sections 198 and 213(d) of the Security Provisions Order [Consolidated Version] (Judea and Samaria) (No. 1651), 5770-2009.

**Details of the Offense:** The above-named Defendant, while in the region, kidnapped a person while knowing that the hostage's life would be in danger or kidnapped a person for purposes of extortion or threat, to wit:

By the deeds related in the Seventh and Eighth Counts, the **Defendant attempted** to kidnap the vehicle's occupants.

**Tenth Count:**

**Description of the Offense**:   Attempted intentional causation of death, an offense pursuant to Sections 198 and 209(a) of the Security Provisions Order [Consolidated Version] (Judea and Samaria) (No. 1651), 5770-2009.

**Details of the Offense:** The above-named Defendant, while in the region, attempted to intentionally cause the death of a person, to wit:

By performing what is stated in subsection (p) of the Seventh Count, the **Defendant**attempted to cause the death of M.H., the 9-year-old son of Eitam and Na'ama Henkin, of blessed memory.

*10*

SHATSKY-JD01799-T

SHATSKY-JD01800-T

**Eleventh Count:**

**Description of the Offense:**   Attempted intentional causation of death, an offense pursuant to Sections 198 and 209(A) of the Security Provisions Order [Consolidated Version] (Judea and Samaria) (No. 1651), 5770-2009.

**Details of the Offense:** The above-captioned Defendant, while in the region, attempted to intentionally cause the death of a person, to wit:

By performing what is stated in subsection (p) of the Seventh Count, the **Defendant** attempted to cause the death of N.H., the 7-year-old son of Eitam and Na'ama Henkin, of blessed memory.

**Twelfth Count**

**Description of the Offense:**   Attempted intentional causation of death, an offense pursuant to Sections 198 and 209(A) of the Security Provisions Order [Consolidated Version] (Judea and Samaria) (No. 1651), 5770-2009.

**Details of the Offense:** The above-captioned Defendant, while in the region, attempted to intentionally cause the death of a person. To wit, by performing what is stated in subsection (p) of the Seventh Count, the **Defendant** attempted to cause the death of N.H., the 4-year-old son of Eitam and Na'ama Henkin, of blessed memory.

[Arabic language stamp] PLO Detainees & Ex-Detainees Department February 7, 2016 Gen. Dir. for Legal Affairs Checked

**Thirteenth Count:**

**Description of the Offense:**   Attempted intentional causation of death, an offense pursuant to Sections 198 and 209(A) of the Security Provisions Order [Consolidated Version] (Judea and Samaria) (No. 1651), 5770-2009.

**Details of the Offense:** The above-captioned Defendant, while in the region, attempted to intentionally cause the death of a person, to wit:

By performing what is stated in subsection (p) of the Seventh Count, the **Defendant** attempted to cause the death of A.H., the 10-month-old son of Eitam and Na'ama Henkin, of blessed memory.

**Fourteeenth Count:**

**Description of the Offense:**   Harboring, an offense pursuant to Sections 245 and 333 of the Security Provisions Order [Consolidated Version] (Judea and Samaria) (No. 1651), 5770-2009.

**Details of the Offense:** The above-captioned Defendant, while in the region, helped a person or gave shelter to any person who committed a violation of security legislation or who is engaged or had been engaged in any activity intended to harm the public welfare, the welfare of the forces and soldiers of the IDF, and the maintenance of public order, or who could be reasonably suspected of having done so, whether by means of providing information, shelter, food, drink, money, clothing, weaponry, ammunition, supplies, fodder, means of transport, kerosene or any other fuel, or whether by other means, to wit:

A. Further to what the Seventh Count of the indictment relates, while the **Defendant** was shooting at Eitam Henkin, of blessed memory, one of the bullets struck Karam and wounded him in the left hand. Karam dropped the Handgun to the ground as a result and went back to the Skoda. A few seconds afterward and after the **Defendant** had caused the death of Na'ama Henkin, of blessed memory, the latter also returned to the vehicle, and the three drove to the area of Al-Masakin. During the course of their ride, the **Defendant** called Basam on the phone and expressed the words, "My heart hurts," as they had agreed as mentioned above. Initially, Basam told the **Defendant** that he is busy and therefore, turned down the latter's request.

11

SHATSKY-JD01800-T

SHATSKY-JD01801-T

B. Subsequently, after Samir, Karam, and the **Defendant** reached their destination, they met Zeid as pre-arranged. Then the **Defendant** and Karam switched into Zeid's vehicle and drove to his house. While driving, the **Defendant** contacted Basam a second time and explained to him the urgency of the required aid. Basam complied with the **Defendant's** request for help and agreed to meet him at Zeid's house. Similarly, Ragheb contacted the **Defendant**. During the course of their conversation, the **Defendant** uttered the phrase, "Let's have a cocktail," or words to that effect, and thus, he updated Ragheb that the murderous terror attack was a success.

C. When the three reached their destination, Zeid headed toward his house and turned off the security cameras that were installed around it in order to thwart documentation of what was happening close to his home. Shortly thereafter, Basam arrived at the destination alone. Then Basam brought the **Defendant** and Karam into a nearby uninhabited apartment that belonged to one of his relatives (hereinafter: the "**Apartment**"). Similarly, Basam gave Zeid keys to a nearby storeroom that Basam owned in order to stow away the Weapon, the face scarves, and the gloves that were used in the execution of the homicidal terror attack.

D. Later, given Karam's injury, Basam led Mohammed to the Apartment. Then, the latter administered first aid to Karam and indicated that, given the severity of his injury, he should be evacuated to a hospital. At the same time, the **Defendant** led Ragheb to the Apartment, where Ragheb examined Karam's condition and decided to evacuate him to a hospital and directed the **Defendant** to travel with Karam to the Al-Arabi Al-Takhasusi hospital in Rafidiya. When they reached their destination, the two rejoined Ragheb, who accompanied Karam to receive medical treatment.

**Fifteenth Count:**

[Arabic language stamp] PLO
Detainees & Ex-Detainees
Department
February 7, 2016
Gen. Dir. for Legal Affairs
Checked
Indictments

**Description of the Offense:**    Obstruction of legal proceedings, an offense pursuant to Section 228(a) of the Security Provisions Order [Consolidated Version] (Judea and Samaria) (No. 1651), 5770-2009.

**Details of the Offense:** The Defendant, while in the region, acted with intent to prevent or thwart a legal process or to bring about a miscarriage of justice whether by obstructing the summoning of a witness, by concealing evidence, or by any other means, to wit:

By performing what is stated in subsection (m) of the Seventh Count, when he applied dark stickers to the Skoda, the Defendant obstructed legal proceedings.

**Sixteenth Count:**

**Description of the Offense:**    Trading in military equipment, an offense pursuant to Sections 199 (a and b) and 233(b) of the Security Provisions Order [Consolidated Version] (Judea and Samaria) (No. 1651), 5770-2009.

**Details of the Offense:** The above-captioned Defendant, while in the region, traded or otherwise dealt in military equipment without a permit signed by or on behalf of the regional commander, to wit:

12

SHATSKY-JD01801-T

SHATSKY-JD01802-T

[Arabic language stamp] PLO
Detainees & Ex-Detainees
Department
February 7, 2016
Gen. Dir. for Legal Affairs
Checked
Indictments

A.   In performing what is stated in the previous counts, when the Defendant took into his possession or transferred into another's possession the Weapon and the Handgun, he traded in military supplies without a duly authorized permit.

B.   When performing what is stated in subsection d to the Second Count, the Defendant conducted trade in bullets without a duly authorized permit.

**Witnesses for the Prosecution:**

1.   Police File 3593:

2.   Redacted 5025 Senior Staff Sergeant Major Nadi Sadar (taker of the Defendant's statements dated October 4, 2015).

3.   Redacted 5588 Master Sergeant Radi Hatib (taker of the Defendant's statements of October 5, 2015 and November 10, 2015).

4.   Redacted 6618 Advanced Staff Sergeant Firas Jabar (taker of the Defendant's statements of October 18, 2015, November 12, 2015, and October 28, 2015, and preparer of the cover sheet for the exhibits dated October 19, 2015).

5.   Redacted 3520 Superintendent Asaf Malka (preparer of the activity report dated November 13, 2015).

6.   Redacted 9462 Ertiom Tsarnogli (preparer of the cover sheet for the exhibits dated October 2, 2015).

7.   Redacted 1175 Sharif Uwida (preparer of the memorandum dated October 1, 2015 and the cover sheet for the exhibits, activity report, and transmittal of the exhibits to the ballistics lab form dated October 2, 2015 and October 6, 2015).

8.   Redacted 1572 Advanced Staff Sergeant Yoel Hagai (preparer of the receipt form for exhibits for review dated October 2, 2015 and October 6, 2015).

9.   Redacted 2978 Amar Saliman (preparer of the cover sheet for the exhibits dated October 4, 2015, October 5, 2015, and October 6, 2015, preparer of the certificate of receipt of investigation material from the police dated October 28, 2015, and preparer of the memorandum dated November 10, 2015).

10.  Superintendent Meir Dokel (preparer of the memorandum dated October 8, 2015).

11. [Redac]1917 Advanced Staff Sergeant Yifat Biton Levanon (preparer of the verification of the confession to causation of harm as a result of operations hostile to Israel dated November 6, 2015).

12. [Redacted]6069 Advanced Staff Sergeant Avi Nakar (preparer of the photo sheet dated October 1, 2015, forensic examination reports dated October 1, 2015 and October 4, 2015, exhibits seizure report dated October 4, 2015, and report documenting the processing of fingerprints dated October 6, 2015).

13. [Redacted]3833 Sergeant Major Tomer Ahrak (preparer of the memorandum dated November 10, 2015).

14. [Redac]3290 Senior Staff Sergeant Major Yaacov Yerushalmi (preparer of the memorandum dated November 16, 2015).

15. [Redac]5117 Senior Non-Commissioned Officer Haim Cohen (preparer of the photo sheet dated October 15, 2015 and exhibits seizure report dated October 18, 2015).

16. [Redac]2471 Advanced Staff Sergeant Amar Hassan (preparer of the memorandum dated October 6, 2015).

17. [Redacted]9898 Master Sergeant Sima Avrahami (preparer of the receipt for exhibits for review dated October 19, 2015).

18. [Redacted]7380 Yaacov Grenik (preparer of the exhibits seizure report dated October 4, 2015).

13

SHATSKY-JD01802-T

SHATSKY-JD01803-T

19. Redacted 7893 Sergeant Major Majed Shufi (chain of exhibits)

20. Redacted 0730 Inspector Shlomo Siton (preparer of the activity report dated October 6, 2015).

21. Redacted 3995 Senior Staff Sergeant Major Yosi Larnav (preparer of the activity report dated October 6, 2015).

22. Redacted 2542 Master Sergeant Shmuel Alya (preparer of the activity report dated October 3, 2015).

23. Redacted 9571 Master Sergeant Ouni Yujenk (preparer of the activity report dated October 1, 2015).

24. Redacted 8272 Senior Staff Sergeant Major Eran Ashkenazi (preparer of the activity report dated October 1, 2015).

25. Redacted 2695 Senior Staff Sergeant Major Alex Vino (preparer of the activity report dated October 1, 2015).

26. Redacted 6577 Master Sergeant Eyal Kalo (preparer of the activity report dated October 1, 2015).

27. Redacted 6354 Superintendent Michal Levin Elad (preparer of the examination reports dated October 12, 2015 and November 5, 2015).

28. Redacted 3485 Inspector Tomer Arbeli (preparer of the examination reports dated October 12, 2015, October 18, 2015, and November 5, 2015).

29. Superintendent Moshe Spitzen (preparer of the expert opinion dated November 9, 2015).

30. Superintendent Avi Kaufman (preparer of the expert opinion dated October 13, 2015 and October 27, 2015 and preparer of the confession to conspiracy for the series of pending incidents dated October 13, 2015).

31. Deputy Commissioner Dr. Yuri Mezin (preparer of the death certificate dated October 1, 2015).

32. Yosi Eisen (preparer of the discovery verification October 15, 2015).

33. Captain Shmuel Rabinowitz (IDF, details at the Prosecution)

34. First Lieutenant Shahar Yonah (IDF, details at the Prosecution)

35. Redacted 1700 Samir Zuheir Ibrahim Kusa (detainee, Prosecution File 2253/15).

36. Redacted 8869 Karam Lutfi Fathi Rizq (detainee, Prosecution File 2250/15).

37. Redacted 7710 Zeid Ziyad Jamil Amer (detainee, Prosecution File 2251/15).

38. Redacted 1855 Basam Ramhi Daoud Abu Jezala (detainee, Prosecution File 2255/15).

[Arabic language stamp] PLO
Detainees & Ex-Detainees
Department
February 7, 2016
Gen. Dir. for Legal Affairs
Checked
Indictments

39. <sup>Redacted</sup> 5587 Amjad Adel Mohamed Aliwi (detainee)

40. <sup>Redacted</sup> 1328 Ragheb Ahmad Mohamed Aliwiya (detainee, Prosecution File 2283/15).

41. <sup>Redacted</sup> 0262 Mohamed Nazmi Mohamed Amar (released)

42. Amihai Azulai (details at the Prosecution)

43. Noa Shalgi (details at the Prosecution)

44. Elitzur Eliahu Trabelsi (details at the Prosecution)

45. Zvi Goren (details at the Prosecution)

46. Ovadia Reisenzvi (details at the Prosecution)

47. aka "Shefer" (the General Security Service) (details at the Prosecution)

14

SHATSKY-JD01803-T

SHATSKY-JD01804-T

48. aka "Maurice" (the General Security Service ) (details at the Prosecution)

**Police File 3202/15:**

49. [Redacted] 6831 Advanced Staff Sergeant Sassi Ezra (preparer of the receipt for exhibits for review dated September 8, 2015).

50. Superintendent Ezra Shoshani (preparer of the expert opinion dated September 16, 2015).

51. [Redacted] 5117 Senior Non-Commissioned Officer Haim Cohen (preparer of the exhibits seizure report dated August 31, 2015 and the forensic examination report dated September 6, 2015).

52. [Redacted] 5782 Boaz Hindig Cohen (preparer of the exhibits seizure report dated August 31, 2015 and the photo sheet and forensic examination report dated September 6, 2015 and November 4, 2015).

53. [Redacted] 9141 Advanced Staff Sergeant Hagai Eckler (preparer of the verification of the confession to causation of harm as a result of operations hostile to Israel dated August 31, 2015).

54. [Redacted] 7778 Yuval Shucher (preparer of the transmittal of the exhibits to the ballistics lab form dated September 1, 2015).

55. Roni Edri (details at the Prosecution).

Rotem          Cohen,

First Lieutenant

Military Prosecutor

[Arabic language stamp] PLO
Detainees & Ex-Detainees
Department
February 7, 2016
Gen. Dir. for Legal Affairs
Checked
Indictments

[Handwritten in Arabic]: Follow-up on the matter with Abdullah Haj Mohammed, Yahya's brother.....15

Redacted

15

# Translator's Certification

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SHABTAI SCOTT SHATSKY, *et al.*,<br><br>                              Plaintiffs,<br><br>v.<br><br>THE PALESTINE LIBERATION<br>ORGANIZATION and THE PALESTINIAN<br>AUTHORITY,<br><br>                              Defendants. | Case No. 18-cv-12355 (MKV) |

### DECLARATION OF YANIV BERMAN

I, Yaniv Berman, declare pursuant to 28 U.S.C. § 1746, as follows:

1.      I am a professional translator with an M.A. degree in Middle Eastern Studies from the Hebrew University of Jerusalem (Israel).  I read Arabic, Hebrew, and English fluently, and I am qualified to translate from Arabic into English and from Hebrew into English.

2.      I certify that the attached documents are true and accurate translations of the Arabic and/or Hebrew originals with the corresponding Bates numbers.  The translations are labelled with Bates numbers that correspond to the original documents, with the addition of a "-T" at the end to indicate that it is a translation.

3.      To the extent that some of the information in the original documents was not clearly legible, I have translated such information into English to the best of my ability.  Such instances are marked with an asterisk ("[*]").

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated:  July 26, 2021

Yaniv Berman

2

# Original

CONFIDENTIAL

SHATSKY-JD01782



**دولة فلســـــــــطين**

**وزارة شؤون الأسرى والمحررين**

**الإدارة العامة للشؤون الإدارية والمالية**

**دائرة الأرشيــــــــــــف**

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| حمد | حج | عبدالله | نايف | محمد | يحيى | 17569 |

ملاحظة هامة: الملف يحتوي على ملفين لأسيرين منفصلين

يُرجى الإنتباه لذلك تلاشياً للخلط فيما بينهما

CONFIDENTIAL

SHATSKY-JD01782

CONFIDENTIAL

SHATSKY-JD01783



137444

## TO WHOM IT MAY CONCERN

**CICR**

This attestation is valid only if the English and Arabic parts match each other

According to the information received from the Israeli Authorities, the International Committee of the Red Cross attests that:

Mr:     YEHYA MOHAMMADNAYEF ABDALLAH HAJ-HAMAD

From:   **NABLUS**          *17569*          ID NO: Redacted2046

Was arrested by the Israeli Authorities on (dd/mm/yyyy):          **03.10.2015**

He is to date: **Awaiting Trial**



**CICR**

الى من يهمه الأمر

هذه الشهادة سارية المفعول فقط في حالة تطابق بياناتها بالقسمين العربية و الإنجليزية

استنادا الى المعلومات الواردة من السلطات الإسرائيلية، تشهد اللجنة الدولية للصليب الأحمر بأن:

السيد/ة الآنسة  يحيى محمد نايف عبد الله حج حمد

من  نابلس  هوية رقم  Redacted ٢،٤٦

كان/ت قد اعتقل/ت من قبل السلطات الإسرائيلية في يوم  ٣ / شهر  ١٠ / سنة  ٢٠١٥

وهو/هي في هذا التاريخ : ينتظر المحاكمة  XXX محكوم/ة  اداري

Date: **23.11.2015**
التـاريــخ

Place: **NABLUS**
المكـــان

CERTIFIED UPDATE
26 -06- 2016

ICRC Delegate
توقيع مندوب اللجنة

IL-J-888374

CONFIDENTIAL

SHATSKY-JD01783

CONFIDENTIAL SHATSKY-JD01784



137444

## TO WHOM IT MAY CONCERN

This attestation is valid only if the English and Arabic parts match each other

According to the information received from the Israeli Authorities, the International Committee of the Red Cross attests that:

Mr: **YEHYA MOHAMMADNAYEF ABDALLAH HAJ-HAMAD**

From: **NABLUS** 17569    ID NO: Redacted2046

Was arrested by the Israeli Authorities on (dd/mm/yyyy): **03.10.2015**

He is to date: **Awaiting Trial**



هذه الشهادة سارية المفعول فقط في حالة تطابق بياناتها بالعربية و الإنجليزية

استنادا الى المعلومات الواردة من السلطات الإسرائيلية، تشهد اللجنة الدولية للصليب الأحمر بأن:

السيدة الأنسة _____ من _____ هوية رقم _____ Redacted

كان/ت قد اعتقل/ت من قبل السلطات الإسرائيلية في يوم __٢__ / شهر __١١__ / سنة __٥.١.٢__

وهو/هي في هذا التاريخ : ينتظر المحاكمة __XXX__ محكوم/ة _____ اداري _____





Date: **23.11.2015**
التاريـخ

Place: **NABLUS**
المكـان

ILJ-888374

ICRC Delegate
توقيع مندوب اللجنة

CONFIDENTIAL

SHATSKY-JD01785

165238



## TO WHOM IT MAY CONCERN

تحرير مهم (أخير) إدراج ... حفظة السيد الدلائل زنه بيوم
للوارد الدعب دخت ... اله بات ...
ICRC

This attestation is valid only if the English and Arabic parts match each other

(17569)

According to the information received from the Israeli Authorities, the International Committee of the Red Cross attests that:

Mr:   YEHYA MOHAMMADNAYEF ABDALLAH HAJ-HAMAD

From:   **NABLUS**   ID NO: Redacted2046

Was arrested by the Israeli Authorities on (dd/mm/yyyy):   **06.10.2015**

He is to date: **Sentenced**

Length of sentence / administrative period: **Life Sentence**

26.2.2016

المحرر من يهمه الأمر

هذه الشهادة سارية المفعول فقط في حالة تطابق بياناتها باللغتين العربية و الإنجليزية

استنادا الى المعلومات الواردة من السلطات الإسرائيلية، تشهد اللجنة الدولية للصليب الأحمر بأن:

السيد/ة الأنسة ___ يحيى محمد نايف عبدالله ح حمد ___

من ___ نابلس ___ هوية رقم ___ Redacted،٢،٦ ___

كان/ت قد اعتقل/ت من قبل السلطات الإسرائيلية في يوم ___ ٦ ___ /شهر ___ ١٠ ___ /سنة ___ ٢٠١٥ ___

وهو/هي في هذا التاريخ : ينتظر المحاكمة ___ محكوم/ة ✓ ___ اداري ___

محكوم/ة أو اداري لمدة ___ سجن المؤبد ___

Date: **04.07.2016**   CERTIFIED UPDATE   18 -07- 2016   التاريخ
International Committee
Place: **NABLUS**   of the Red Cross

ICRC Delegate
توقيع مندوب اللجنة

المكــــان

CONFIDENTIAL
ILJ-888374

SHATSKY-JD01785

CONFIDENTIAL

SHATSKY-JD01786

137444



## TO WHOM IT MAY CONCERN

**CICR**

This attestation is valid only if the English and Arabic parts match each other

According to the information received from the Israeli Authorities, the International Committee of the Red Cross attests that:

Mr:   **YEHYA MOHAMMADNAYEF ABDALLAH HAJ-HAMAD**

From:   **NABLUS**      ID NO: Redacted **2046**

*17569*

Was arrested by the Israeli Authorities on (dd/mm/yyyy):      **03.10.2015**

He is to date: **Awaiting Trial**



إلى من يهمه الأمر

هذه الشهادة سارية المفعول فقط في حالة تطابق بياناتها بالغتين العربية و الإنجليزية

استنادا الى المعلومات الواردة من السلطات الإسرائيلية, تشهد اللجنة الدولية للصليب الأحمر بأن:

السيد/ة الآنسة ــــــ يحيى محمد نايف عبدالله حج حمد

من ــــــ نابلس ــــــ هوية رقم ٢.٤٦

كان/ت قد اعتقل/ت من قبل السلطات الإسرائيلية في يوم ٣ / شهر ١٠ / سنة ٢٠١٥

وهو/هي في هذا التاريخ : ينتظر المحاكمة  XXX  محكوم/ة ـــــ   اداري ـــــ

Date: **23.11.2015**

التاريخ

Place: **NABLUS**

المكان

ILJ-888374

ــــــــــــــ
ICRC Delegate
توقيع مندوب اللجنة

CONFIDENTIAL

SHATSKY-JD01786

CONFIDENTIAL

SHATSKY-JD01787

17569

Palestinian National Authority

السلطة الوطنية الفلسطينية

Ministry of Detainees & Ex-detainees Affairs

وزارة شؤون الأسرى والمحررين

Gen Dep Detainees & Ex-detainees

الإدارة العامة لشؤون الأسرى والمحررين

256147

استمارة الأسير الرئيسية

| | | | | رقم الاستمارة |
|---|---|---|---|---|
| | المديرية/إدر ع الوزارة | 2015/12/1 | | تاريخ تعبئة الاستمارة |

1  المعلومات الرئيسية للأسير

| | | 2 0 4 6 | رقم الهوية (سبع خانات) |
|---|---|---|---|
| اسم العائلة | اسم الجد | اسم الأب | الاسم الأول | الاسم الرباعي |
| ☑ أنثى  ☑ ذكر | الجنس | | | اسم الأم |
| | مكان الولادة | 1991 | تاريخ الميلاد |
| ☑ دراسات عليا  ☑ جامعي | ☑ دبلوم  ☑ ثانوي  ☑ الأساسية  ☑ أمي | المؤهل العلمي |
| | التنظيم | | المهنة قبل الأسر |
| ☑ مدني  ☑ إداري  ☑ مقاوم  ☑ مكان الأسر | ☑ موقوف  ☑ محكوم | 3/1/2015 | تاريخ الأسر |
| | | | الوضع الاعتقالي |
| العام  الشهر  اليوم  تاريخ الإفراج المتوقع | يوم  شهر  سنة | في حالة محكوم مدة الحكم |
| | حسب قرار الحكم | | حسب شهادة الصليب |
| Redacted  التجمع السكاني | المحافظة | | العنوان الدائم |
| | | | ملاحظات |

2  بيانات الاعتقالات السابقة

عدد مرات الاعتقال السابقة والحالية

فقط المثبت بشهادة صليب وبتسلسل رقمي من الأحدث إلى الأقدم

| ملاحظات | مدة الاعتقال | | | تاريخ الإفراج | نوع الاعتقال | تاريخ الاعتقال | الرقم |
|---|---|---|---|---|---|---|---|
| | يوم | شهر | سنة | | | | 1 |
| | | | | | | | 2 |
| | | | | | | | 3 |
| | | | | | | | 4 |
| | | | | | | | 5 |
| | | | | | | | 6 |

CONFIDENTIAL

SHATSKY-JD01787

Palestinian National Authority
Ministry of Detainees & Ex-detainees Affairs
Gen Dep Detainees & Ex-detainees

السلطة الوطنية الفلسطينية
وزارة شؤون الأسرى والمحررين
الإدارة العامة لشؤون الأسرى والمحررين

3. بيانات الوضع الاجتماعي

| | | | | |
|---|---|---|---|---|
| الحالة الاجتماعية | ☒ أعزب | ☐ متزوج | ☐ مطلق | ☐ أرمل |
| في حالة متزوج/ة | تعبئة بيانات الزوج/ة والأبناء | | | |
| رقم هوية الزوج/ة | | | تاريخ عقد الزواج | / / |
| اسم الزوج/ة | | | عدد الأولاد | |

بيانات الأبناء من الزوجة الأولى (الأبناء الذكور أقل من 18 عام، والبنات غير المتزوجات بغض النظر عن أعمارهن)

| الرقم | الاسم | تاريخ الميلاد | الحالة الاجتماعية | المؤهل العلمي |
|---|---|---|---|---|
| 1 | | | | |
| 2 | | | | |
| 3 | | | | |
| 4 | | | | |
| 5 | | | | |
| 6 | | | | |
| 7 | | | | |
| 8 | | | | |
| 9 | | | | |

4. بيانات الوكيل "المستفيد"

Redacted

| | | | |
|---|---|---|---|
| رقم الهوية "المستفيد" | 1 9 6 3 | | |
| اسم الوكيل "المستفيد" | صباح محمود خيرالله فرج محمد | صلة القرابة | والدته |
| تاريخ الوكالة | / / | مدة سريان الوكالة | [redacted] |
| البنك | [redacted] | فرع البنك | |
| رقم الحساب | | رقم الهاتف النقال | |
| رقم الهاتف الأرضي | | | |
| العنوان الدائم للمستفيد | المحافظة: [illegible] | التجمع السكاني: | |
| ملاحظات: | | | |

| | |
|---|---|
| ملاحظات مقدم الطلب | |
| إقرار | أنا الموقع أدناه أقر وأشهد بأن كافة المعلومات الواردة في الطلب صحيحة وأتحمل مسؤوليتها |
| توقيع مقدم الطلب | |

CONFIDENTIAL

SHATSKY-JD01789

Palestinian National Authority
Ministry of Detainees & Ex-detainees Affairs
Gen Dep  Detainees & Ex-detainees

دولة فلسطين السلطة الوطنية طسطينية
وزارة شؤون الاسرى والمحررين
الإدارة العامة لشؤون الاسرى والمحررين

| | | 5 للاستعمال الرسمي |
|---|---|---|
| | | اسم المرشد/الموظف |
| | | ملاحظات المرشد/الموظف |
| | 2015 / 12 / 1 | التاريخ |
| | | اسم مدير المديرية |
| | | ملاحظات مدير المديرية |
| | / / | التاريخ |

المستندات المرفقة  ضع إشارة بجانب المستندات المرفقة (اعتماد ومصادقة مدير المديرية)

| | | | |
|---|---|---|---|
| صورة هوية المستعيد | ☐ | صورة هوية الأسير/المحرر | ☐ |
| لائحة الاتهام | ☐ | شهادات الصليب الأحمر | ☐ |
| صورة بطاقة الحساب البنكي | ☐ | قرار الحكم (إن وجد) | ☐ |
| صور شهادات الميلاد للأبناء ، | ☐ | صورة عقد الزواج | ☐ |
| أخرى (حدد) | ☐ | ملحق إصابة زوجة/زوجات | ☐ |

6 الاعتماد والمصادقة

| | |
|---|---|
| 1: اعتماد دائرة الأسرى: | ☐ أصادق على اعتماد استمارة الأسير (مطابقة للأنظمة والقوانين) |
| اسم الموظف المعتمد: | |
| التاريخ: / / | الختم والتوقيع: |
| | ☐ لا أصادق على اعتماد استمارة الأسير |
| المبررات والأسباب: | |
| 2. اعتماد الدائرة القانونية: | ☐ أصادق على اعتماد استمارة الأسير (مطابقة للأنظمة والقوانين) |
| اسم الموظف المعتمد: | |
| التاريخ: / / | الختم والتوقيع: |
| | ☐ لا أصادق على اعتماد استمارة الأسير |
| المبررات والأسباب: | |

CONFIDENTIAL

SHATSKY-JD01789

CONFIDENTIAL SHATSKY-JD01790

צבא    הגנה    לישראל

תיק בימ"ש 15/ ־ ־ :? ־

תיק תביעה 2252/15

תיק פ.א. 3593/15
3202/15

(פחיע פ"ית)

כתב אישום זה הוגש בביהמ"ש הצבאי
בתאריך:
נרשם ביומן בית המשפט
כתיק מספר: (1) ־־ ־: ־
חתימה:

בית המשפט הצבאי
ש ו מ ר ו ן
הרכב
בפני

במשפט שבין:

התובע הצבאי                                          - המאשים -

- נ ג ד -

יחיא מוחמד נאיף עבדאללה חג חמד
(עצור מיום 03/10/2015)
ת.ז 2046 Redacted ־ יליד 1991 Redacted ־ תושב: שכם

- הנאשם -

## כתב אישום

הנאשם הנ"ל מואשם בזאת בביצוע העבירות הבאות:

**פרט אישום ראשון:**

**מהות העבירה:** חברות ופעילות בהתאחדות בלתי מותרת, עבירה לפי תקנות 84 +85+(1)(א)
לתקנות ההגנה (שעת חירום)-1945.

**פרטי העבירה:** הנאשם הנ"ל, באזור, היה חבר או פעל כחבר בארגון שהוא התאחדות בלתי
מותרת, דהיינו
החל משנתיים טרם מעצרו או במועד הסמוך לכך, בשכם או במקום הסמוך, היה
הנאשם חבר בארגון החמאס (להלן "החמאס"), המהווה התאחדות בלתי
מותרת במסגרת חברותו בתאו בארגון כאמור פעל הנאשם בפרטי האישום
הבאים וכמפורט להלן:

א. כשנה ומחצה טרם מעצרו או במועד הסמוך לכך, במרכול שבבעלותו של
ראובג אחמד מחמד עליויה (להלן "ראג'יב") שבשכם (להלן "המרכול") או
במקום הסמוך לכך, נעתר הנאשם להצעתו של ראג'יב לפעול צבאית כנגד
מטרות ישראליות מטעם ארגון החמאס

ב. במהלך חודש ינואר לשנת 2015 או במועד הסמוך לכך, פנה הנאשם לכוס
לוטפי פתחי רזק (להלן "כרם") והציע לאחרון לבצע עמו פעילות צבאית,
מטעם ארגון החמאס, בדמות ביצוע פיגועים כנגד יעדים ישראלים במטרה
לגרום למותם של מתיישבים יהודים בהמשך, בחודש מרץ לשנת 2015 או



CONFIDENTIAL

SHATSKY-JD01791

במועד הסמוך לכך, פנה **הנאשם** לכרם בשנית ושב על הצעתו לפעול עמו צבאית כנגד יעדים ישראלים כרם נענה בחיוב להצעה.

ג. ארבעה חודשים טרם מעצרו או במועד הסמוך לכך, במרכול שבשכם או במקום הסמוך לכך, ולאחר שגויס ראגיב, על ידי אמגיד עאדל מחמוד עלייו (להלן: **"אמג'ד"**), לחוליה צבאית מטעם ארגון החמאס אשר שכם לוז למטרה לבצע פיגועי ירי לעבר יעדים ישראלים (להלן: **"החוליה הצבאית"**), פנה ראגיב ל**נאשם** וגייס את האחרון לטובת פעילות בחוליה הצבאית, תוך שהוא מפרט בפני ה**נאשם** את מטרות החוליה.

ד. זמן קצר לאחר גיוסו של ה**נאשם** לחוליה הצבאית כאמור, פנה האחרון לבסאם רחמי דאוד אבו ג'יאלה (להלן: **"בסאם"**) והציע לו לפעול עמו צבאית ובפרט לסייע ל**נאשם** בהכמנת אמצעי לחימה וציוד נוסף שישמש לטובת פעילותו הצבאית. בסאם נעתר להצעה בהמשך, נשתי הזדמנויות שונות, הכמין ה**נאשם** אצל בסאם ציוד שעתיד לשמש את החוליה הצבאית בפעילותה, בין היתר העביר ה**נאשם** לבסאם שקית המכילה אפודים.

ה. עוד באותה תקופה, פנה ה**נאשם** לראגיב וביקש את אישורו לגיוסו של כרם לחוליה הצבאית וזאת לאור הסכמתו של האחרון לפעול צבאית כמפורט לעיל ראגיב נעתר לבקשה. אז, גייס ה**נאשם** את כרם לחוליה הצבאית, תוך שהוא מפרט בפניו את מטרות החוליה כאמור ואת קיומם של חברי החוליה נוספים

ו. במהשך, ולאור גיוסו של כרם, בשכם או במקום הסמוך לכך, קיים ה**נאשם**, בשתי הזדמנויות שונות, מפגשים בין כרם לראגיב, במסגרתם ווידא האחרון את נכונותו של כרם לפעול בכל מתווה שיידרש לשם מימוש הפעילות הצבאית כתגובה נוסר כרם כי הינו מוכן לפעול ככל שיידרש ובלבד שלא יבצע ירי לנוכח חוסר מיומנותו בתפעול כלי נשק משכך, הציע ראגיב כי ידריכו אודות תפעול כלי נשק כרם נעתר להצעה.

ז. בחודש יולי לשנת 2015 או במועד הסמוך לכך, בביתו של ראגיב שבשכם או במקום הסמוך לכך, נפגשו ה**נאשם**, כרם וראגיב. במעמד זה הדריך האחרון את השניים אודות תפעול כלי נשק מסוג M16, הנשאו מספר טבוע K700326 (להלן: **"כלי הנשק"**). ובפרט אודות פירוקו והרכבתו

ח. בראשיתו של חודש אוגוסט לשנת 2015 או במועד הסמוך לכך, במרכול או במקום הסמוך לכך, שוחח ה**נאשם** עם ראגיב אודות אירוע הצתת בית מגורים בכפר דומא במסגרתו מצאו בני משפחת דוואבשה את מותם. עוד במסגרת שיחתם, סיכמו ה**נאשם** וראגיב כי ישנו צורך בביצוע פעולת נקם כמו כן, נעתר ה**נאשם** לבקשתו של ראגיב לסייע לכלכלית ברכישת כלי נשק לטובת הפעילות הצבאית משכך, מסר ה**נאשם** לראגיב סכום כספי בסך 7,400 ₪.

ט. מספר ימים לאחר מכן או במועד הסמוך לכך, במרכול או במקום הסמוך לכך, עת פגש ה**נאשם** בראגיב ערך האחרון היכרות בינו לבין סמיר זוהיר

CONFIDENTIAL

SHATSKY-JD01791

CONFIDENTIAL

SHATSKY-JD01792

אברהאים כוסא [להלן '' **סמיר**"] במיטגרת הפגישה האנורה הסביר ראגיב
לשניים כי מעתה יפעלו בצוותא במיטגרת החוליה הצבאית   עוד החליטו
והיוושקש כי הגיעה העת לפעול בצבאית נוכח האירועים שהתחרשו באותה
התקופה במיסגר אלאמקצא ובמתגובה למותם של בני משפחת דואאבשה
כאמור  על-כן,  סיכמו השלושה כי סמיר והנאשם יפגשו בהמשך היום,
בשעות הערב, וייסעו יחדיו לאזור צימת בית פוריק או למקום הסמוך לכך,
לשם ביצוע פיגוע ירי לעבר רכבי מתיישבים יהודים וזאת במטרה לגרום
למותם של האחרונים  עוד סיכמו כי יבצעו את הפיגוע האמור באמצעות כלי
הנשק ומחסניות המכילות כדורי ירי תואמים (להלן: "יהתחמושת")
המצויים בחזקתו של ראגיב  עוד לצורך מימוש פיגוע הירי האמור, ביקש
ראגיב מהנאשם וסמיר לאסוף מודיעיו באשר לתנועת רכב מתיישבים
יהודים ונוכחות כוחות הביטחון בכביש הסמוך לבית פוריק ובית דגן
הנאשם וסמיר פעלו כמבוקש

<u>**חברותו של הנאשם בארגון החמאס ובחוליה הצבאית נמשכה עד למועד
מעצרו.**</u>

<u>פרט אישום שני:</u>

<u>מהות העבירה:</u> ניסיון לגרימת מוות בכוונה, עבירה לפי סעיפים 209(א) ו-198 לצו בדבר הוראות
ביטחון (נוסח משוכלב] (יו'ש)(מס' 1651), התש'ע- 2009

<u>פרטי העבירה:</u> הנאשם הנ''ל, באזור, ניסה לגרום למותו של אדם בכוונה, דהיינו

א  עוד באותו היום ובהמשך לאמור בס"ק ט' לפרט האישום הקודם, ערכו
הנאשם וסמיר, כנפרד, בהתאם לסיכום מוקדם כאמור, תצפיות לעבר ציר
התנועה הסמוך לבית פוריק ובית דגן  בהמשך, עדכנו האחרונים את ראגיב
אודות ממצאיהם בדבר היעדר ניכחות כוחות ביטחון לאורך הציר האמור

ב  אז, ולאחר שסיכמו השלושה על מיקום אסטרטגי לביצוע הפיגוע, שם
הנאשם פעניו לעבר המרכול או למקום הסמוך לכך, ונטל מראגיב את כלי
הנשק והתחמושת  עוד במעמד מסירת כלי הנשק, הדריך ראגיב את הנאשם
אודות תפעול כלי הנשק

ג  לאחר מכן, נפגשו סמיר והנאשם כמסוכם, כאשר ברשות האחרון כלי הנשק
והתחמושת  אז התמקמו הנאשם וסמיר ברכבו של האחרון מסוג פיאט אונו
הנושא לוחיות זיהוי פלסטיניות שמספרה 90-1480-4, להלן: "רכב הפיאט")
כך שהנאשם נהג וסמיר ישב במושב האחורי כשברשותו כלי הנשק השניים
החלו בנסיעתם לעבר אזור צומת בית פוריק, ומשהגיעו ליעדם, הבחינו ברכב
הנושא לוחיות זיהוי ישראליות, אשר עושה דרכו מתוך הישוב אלון מורה
לכיוון הישוב איתמר  אז אז, ולאחר שהוציא סמיר את פלג גופו העליון מבעד
לרכב ירה האחרון מספר כדורים לעבר הרכב הישראלי וזאת ממרחק של
כשישה מטרים  מיד לאחר מכן, נמלטו השניים מהמקום

ד  זמן קצר לאחר ביצוע הפיגוע כאמור, נסע הנאשם יחד עם סמיר לביתו של
כרם שבשכם או למקום רסמוך לכך, שם פגש הנאשם בכרם בעוד שסמיר

CONFIDENTIAL

SHATSKY-JD01793

המשיך לדרכו.  אז ביקש **הנאשם** מכרם להכמין בעבורו את כלי הנשק
והתחמושת שנותרה ברשותו הלה נעתר לבקשתו  ימים ספורים לאחר מכן,
שב **הנאשם** לביתו של כרם ונטל לרשותו את כלי הנשק והתחמושת  כמו כן,
במועד מאוחר יותר מסר **הנאשם** לידי כרם כ-250 כדורי ירי אשר עתידים
לשמש את פעילות החוליה הצבאית.

ה.   יממה לאחר ביצוע פיגוע הירי או במועד הסמוך לכך, עדכנו **הנאשם** וסמיר
את ראג'ב אודות ביצוע פיגוע הירי בצומת בית פוריק כאמור  ובהתוצאותיו

**במעשיהם האמורים  ניסו הנאשם ושותפיו לגרום למותו של אחד.**

**פרט אישום שלישי:**

**מהות העבירה :**   קשירת קשר לגרימת מוות בכוונה, עבירה לפי סעיפים 209(א) ו-A254, לצו בדבר
הוראות ביטחון [נוסח משולב] (יו"ש)(מס' 1651), התשע"ו- 2009.

**פרטי העבירה:**   הנאשם הנ"ל, באיזור, קשר קשר לגרום למותו של אדם בכוונה, דהיינו:

א   במהלך חודש אוגוסט לשנת 2015 או במועד הסמוך לכך, עדכן **הנאשם** את
ראג'ב אודות רצונו של כרם לבצע פעילות צבאית במסגרתה ימצא את מותו
אז, יצא **הנאשם** יחד עם ראג'ב למעיין פארה במטרה לבחון את האפשרות
לבצע פיגוע ירי כנגד מתיישבים יהודים ביעד זה. בהמשך ולאחר בחינת
האזור, הציע **הנאשם** לכרם לבצע את פיגוע הפיגוע לאחר בחינתו את השטח
להצעת **הנאשם** אך תתנה את ביצוע הפיגוע לאחר בחינתו את השטח
במהשך, שמו **הנאשם** וכרם פעמיהם לעבר מעיין פארה בהתאם לבקשתו של
כרם. אז, עת הגיעו השניים ליעדם תיעד **הנאשם** את תוואי השטח כחלק
מתכנון הפיגוע. לבסוף ובין היתר נוכח הימצאותה של אוכלוסייה ערבית
במקום חדלו האחרונים מתכנונם.

ב.   תקופה קצרה לאחר מכן, נסעו ראג'ב **והנאשם,** ברכבו של האחרון, לכיוון
קבר יוסף במטרה לבחון את האזור כיעד אפשרי לביצוע פיגוע הירי. לבסוף
ולאור נוכחות ערה של כוחות הביטחון באזור האמור, נסוגו השניים
מתוכניתם.

**פרט אישום רביעי:**

**מהות העבירה :**   ניסיון לגרימת מוות בכוונה, עבירה לפי סעיפים 209(א) ו-198 לצו בדבר הוראות
ביטחון [נוסח משולב] (יו"ש)(מס' 1651), התשע"ו- 2009.

**פרטי העבירה:**   הנאשם הנ"ל, באיזור, ניסה לגרום למותו של אדם בכוונה, דהיינו:

א.   ביום 30/08/2015 או במועד הסמוך לכך, עת נפגש **הנאשם** יחד עם ראג'ב
וסמיר במרכבל שבשכם שוחחו השלושה אודות כישלון פיגוע הירי המתואר
לעיל ודנו באפשרות לבצע פיגוע ירי נוסף במטרה לגרום למותו של מתיישב
יהודי  לאור כך, הציע סמיר לבצע את פיגוע הירי בשעות הלילה, באיזור
צומת גית נוכח תנועה ערה של רכבי מתיישבים יהודים בציר זה  חרף
האמור הציע ראג'ב לבצע את פיגוע הירי עוד בצהריי אותו היום **הנאשם**
וסמיר נעתרו להצעה

CONFIDENTIAL

SHATSKY-JD01793

CONFIDENTIAL

SHATSKY-JD01794

ב.   שעה לאחר מכן או בסמוך הסמוד לכד נסע סמיר ברכב הפיאט, כמוכח,
     לאזור בית וזן או למקום הסמוד לכד עת הגיע סמיר ליעד פגש בנאשם, אשר
     נכנס לרכב הפיאט והתמקמם במושב האחורי כשברשותו כלי הנשק
     והתחמושת אז, החלו השניים בנסיעה לעבר צומת גית כנתוכנן.

ג.   זמן קצר לאחר מכן, כאשר הגיעו השניים לדרך עפר, עצר סמיר את רכב
     הפיאט בצידי הדרך והחליף את לוחיות הזיהוי הפלסטיניות בלוחיות זיהוי
     ישראליות, לאחר מכן, המשיכו השניים ביעדם ונמלא איתרו האחרונים דכנכם
     בהמשך עת הגיעו הנאשם וסמיר ליעדם נסיעתם לכיוון ההתרשובות עינב בניסיון בעודם
     ישראלים, המשיכו השניים בנסיעתם ברכב מסוג יאצ'אי בעל
     תורים אחר רכבים ישראלים אז, משהבחינו השניים ברכב מסוג יאצ'אי בעל
     לוחית זיהוי ישראלית שמספרה 78-808-70 (להלן:  "הרכב הישראלי", אף
     נהג באותה העת רונן אדרי, אשר נסע לקראתם, ביצעו האחרונים פניית
     פרסה והחלו דוקקים אחר הרכב הישראלי בהמשך, כצומת גית אזי במקום
     הסמוך לכד, לאחר שהשיגו סמיר והנאשם את הרכב הישראלי, עצרו
     האחרונים את רכבם משמאלו של הרכב האמור, בד בבד, החל הנאשם
     מטרים מיד לאחר ביצוע פיגוע הירי נסו הנאשם וסמיר מהמקום
     מטרים מיד לאחר ביצוע פיגוע הירי נסו הנאשם וסמיר מהמקום
     כתוצאה מכד, חדרי כדורי הירי את צידו השמאלי של הרכב הישראלי וניפצו
     את שמשתו השמאלית הקדמית, נוכח האמור נפצע הנהג רונן אדרי נשברי
     הזכויות

<u>**במעשיהם האמורים ניסו הנאשם ושותפיו לגרום למותו של רונן אדרי:**</u>

<u>**פרט אישום חמישי:**</u>

<u>**מהות העבירה:**</u>   קשירת קשר לגרימת מוות בכוונה, עבירה לפי סעיפים 209(א) ו-254א לצו בדבר
     הוראות ביטחון [נוסח משולב] (יו"ש)(מס' 1651), התשע"ו- 2009

<u>**פרטי העבירה:**</u>   א.   במועד לאחר ביצוע פיגוע הירי כאמור נפרט האישום הקודם או נמועד
     הנאשם הנ"ל, באזור, קשר קשר לגרימת כמותו של אדם בכוונה, דהיינו:
     הסמוד לכד שם הנאשם פעמים לעבר המרכול שבשכם, שם עדכן את ראג'ב
     אודות ביצוע פיגוע הירי בצומת גית כאמור ובתוצאותיו.
     כשבוע לאחר האמור בס"יק א' או במועד הסמוד לכד, השיב הנאשם לראג'ב 09/2015/23
     בהתאם לבקשתו של האחרון, את כלי הנשק והתחמושת ביום
     או במועד הסמוד לכד, במוצאי יום כיפור, נפגש הנאשם עם סמיר במרכול או במועד הסמוד לכד, במוצאי יום כיפור, נפגש הנאשם עם סמיר במרכול, לכבל
     שבשכם לו במקום הסמוד לכד וסיכם עמו כי יצאו, בשעות הלילה, לבצע
     פיגוע ירי נוסף כאזור צומת בית פוריד
     בהמשך, פנה הנאשם מראגיב אל כלי הנשק לטובת ביצוע הפיגוע.

     ב.   במעמד זה ביקש הנאשם מראגיב את כלי הנשק והתחמושת הנושא
     כאמור ראג'ב נעתר לבקשתו ומסר לידי הנאשם את כלי הנשק הנושא
     בהמשך נסעו הנאשם וסמיר במונית מסוג סקודה אוקטביה, המצויה בחזקתו של האחר
     כוחית זיהוי פלסטינית שמספרה 7-2876-30.

CONFIDENTIAL

SHATSKY-JD01794

CONFIDENTIAL                                                                     SHATSKY-JD01795

(להלן "**רכב הסקודה**"), לעבר צומת בית פוריכ וזאת לצורך בחינת הציר בו
עתיד להתבצע פיגוע בית פוריכ.

ג. אז, עת הגיעו ה**נאשם** וסמיר לאיזור הסמוך למחסום בית פוריכ, הבחינו
השניים בנוכחותם של כוחות הביטחון שערכו בידוק ביטחוני במחסום
באותה העת. משכך ולאור נוכחותה הערה של כוחות הביטחון באיזור
המיועד, נסוגו השניים מתוכניתם לבצע את פיגוע הירי בייד האמור.

ד. לבסוף, חזרו סמיר וה**נאשם** על עקבותיהם כאשר הנשק נותר ברשותו של
ה**נאשם** בהמשך. עדכן האחרון את ראג'ב כי פיגוע הירי לא יצא אל הפועל
בשל נוכחותם של כוחות הביטחון כאמור.

---

**פרט אישום שישי:** קשירת קשר לגרימת מוות בכוונה, עבירה לפי סעיפים 209(א) ו-254א לצו בדבר

**מהות העבירה** הוראות ביטחון [נוסח משולב] (יו"ש)(מס' 1651), התשע"ע- 2009

**פרטי העבירה:** הנאשם הנ"ל, באיזור, קשר קשר לגרום למותו של אדם בכוונה, דהיינו: עם

א. בשלהי חודש ספטמבר לשנת 2015 או במועד הסמוך לכך, שוחח ה**נאשם** עם
זיד זיאד ג'מיל עאמר (להלן "**זיד**") והציע לאחרון לפעול במסגרת החוליה
הצבאית. זיד נענה בחיוב להצעה.

ב. בהמשך, ולאור הסכמתו של זיד כאמור, בסמוך למסגד שבדיאחיה או
במקום הסמוך לכך, הגניש ה**נאשם** בין ראג'ב לזיד ברכבו של האחרון מסוג
גולף (להלן "**רכב הגולף**") במסגרת הפגישה, וטרם החלו השלושה לשוחח
ביניהם, ביקש ראג'ב מה**נאשם** ומזיד לכבות את מכשירי הסלולר אשר
ברשותם במעמד זה, אימת ראג'ב את נכונותם של זיד לפעול צבאית
אז,הציע ה**נאשם** לראג'ב לבצע פיגוע במתחוה של ירי תוך כדי נסיעה
באומנע. כמו-כן ציין ה**נאשם** כי הפיגוע יבוצע בסיוונו של זיד נוכח הכשרתו
של האחרון ברכיבה על אופנוע. בתגובה, הציע ראג'ב לזיד לבצע את פיגוע
הירי במתחוה האמור   אז, מסר זיד כי על אף הכשרתו ברכיבה על אופנוע
ויכולתו להרכיב עמו נוסע נוסף, הרי שמתחוה הפיגוע המוצע הינו בעל
פוטנציאל סיכון רב. משכך, החליטו השלושה שלא לקדם את תכנון הפיגוע
האמור לבסוף, דנו השלושה אודות הצורך בהדרכתו של זיד בתפעול כלי
נשק מסוג M16 בדגש על פירוקו. הרכבתו ונישיאתו. לבסוף, עלה בידם
לעשות כן.

---

**פרט אישום שביעי:** גרימת מוות בכוונה, עבירה לפי סעיפים 209(א) ו-199(א)(א+ב) לצו בדבר הוראות

**מהות העבירה** ביטחון [נוסח משולב] (יו"ש)(מס' 1651), התשע"ע- 2009

**פרטי העבירה:** הנאשם הנ"ל, באיזור, גרם למותו של אדם בכוונה, דהיינו:

א. במהלך חודש ספטמבר לשנת 2015 או במועד הסמוך לכך, לאור כישלונות
החוליה הצבאית בביצוע פיגועי הירי שביצעו קודם לכן כמתואר לעיל,
שוחחו ה**נאשם** וראג'ב אודות הצורך בביצוע פיגוע ירי שתוצאותיו יובילו

SHATSKY-JD01795

CONFIDENTIAL

SHATSKY-JD01796

כהד ציבורי נרחב לפיכך. נעתר הנאשם להצעתו של ראג'יב כי בפיגוע
העונייני, מלבד המטרה המרכזית שהנחתה את החוליה הצבאית, קרי, גרימת
מותם של מתיישבים יהודים, ינסה הנאשם לחטוף מתיישב יהודי (להלן
"פיגוע החטיפה"). עוד במעמד זה, ביקש ראג'יב מהנאשם כי יתצפת על
יעדים שונים לצורך פיגוע החטיפה ועדכנו הנאשם פעל כמבוקש.

ב   בהמשך. נוכח הסיכים בין הנאשם לראג'יב בדבר ביצוע פיגוע החטיפה, פנה
האחרון לאמג'ד וביקש את אישורו וסיועו בביצוע הפיגוע האמור בתגובה
מסר האחרון כי הוא יפנה תחילה לממונים עליו ולאחר מכן יעדכן את
ראג'יב זמן קצר לאחר מכן, אישר אמג'ד לראג'יב לבצע את פיגוע החטיפה
ועדכנו כי בשיועו לו בשיגועו והסתרתו של החטיף כמבוקש

עוד סיכמו השניים כי במידה ופיגוע החטיפה יצלח, יהג'יב ראג'יב למכשיר
הסומלר שברשות אמג'ד. ימתין משך צליל חיוג בודד ויתק. מיד לאחר מכן
יחזור על פעולה זו בשנית. וכך למעשה יעדכנו את אמג'ד כי הצליחו לחטוף
מתיישב יהודי ועליו להגיע לנקודות המפגש בסמוך למכללת אלראודה ולקחת
תחת חסותו את החטוף

ג   בהמשך  כשבועיים לפני ביצוע הפיגוע, נפגש הנאשם עם כרם ועדכנו כי
בכוונת החוליה הצבאית לבצע פיגוע ירי וחטיפה בעתיד הקרוב

ד   ביום 28/09/2015 או במועד הסמוך לכך, במברכול שבשכם או במקום הסמוך
לכך, נפגש הנאשם יחד עם ראג'יב וסמיר והשלושה שוחחו אודות ביצוע פיגוע
הירי והחטיפה  כמסורת פגישה זו, החליטו השלושה כי יבצעו את פיגוע
החטיפה ביום 01/10/2015, בסמוך לבית פוריק כמו כן, סיכמו הנאשם עם
ראג'יב כי במידה ופיגוע החטיפה יצלח, ועדכנו וזאת על מנת שהחוליה
תמסור את החטוף לטיפולו של ראג'יב  במעמד זה הנחה ראג'יב את סמיר
לירכוש חבקים ומדבקות כהות לטובת פיגוע החטיפה

ה   יומיים טרם ביצוע הפיגוע או במועד הסמוך לכך, בירר הנאשם עם בסאם,
על רקע קרבתו המשפחתית של האחרון עם  מיאחמד נזמי מיאחמד עאמר
(להלן  "מיאחמד"), רופא במקצועו, אודות אפשרות סיועו של האחרון במתן
טיפול רפואי כאחד מיאחביר החוליה או לחילופין למתיישב היהודי שיחטופו
באם ידרוש לכך בשל פציעתו של אחד מהאחרונים במהלך פיגוע החטיפה
בסאם נעתר לסיוע לנאשם  או אז. סיכמו השניים כי במידה ויידרש סיוע
רפואי כאמור, ייצור הנאשם קשר עם בסאם ויאמר לו את הניטוי "הלב שלי
כואב" או ביטוי בעל משמעות דומה וכך למעשה יעדכן את בסאם כי עליו ועל
מיאחמד לסור לפגוש את הנאשם

ו   ביום 01/10/2015, בשעות הבוקר. עת אסף הנאשם את ראג'יב וסמיר במכונית
מסוג קיה (להלן  "רכב הקיה"), הנמצאת בחזקתו, החלו השלושה לתכנן את
פיגוע החטיפה (להלן  "פגישת ההכנה"). במהלך תכנון זה סוכם כי בשעות
הערב יפשטו סמיר והנאשם בזור אסכאן רוגי'יב לשם ביצוע פיגוע החטיפה מעין זה,
כמתוכנן  עוד בפגישת ההכנה, ונוכח המורכבות הטמונה בפיגוע מעין זה,
הוחלט על מתווה בעליה שונה מ-שעונוה אשר שימש את החוליה עד כה

7

CONFIDENTIAL

SHATSKY-JD01797

במסגרת המתווה החדש, החליטו האחרונים לצרף פעילים נוספים לביצוע
הפיגוע, לחמש את החוליה המבצעת בכלי נשק נוסף ולהשתמש ברכב מרווח
לשם הובלת החטוף

ז   בהתאם למתווה המוצע, הוחלט כי כרם, נוכח היותו חבר בחוליה הצבאית
ולאור ידיעתו המוקדמת אודות תכנון הפיגוע, ישתתף בפיגוע החטיפה. כמו
כן, לנוכח חברותו של זיד בחוליה, החליט **הנאשם** כי גם זיד ייטול חלק
בפיגוע עוד טרם כי ראוב ימסור ל**נאשם**. בשעות הערב, אקדח אשר איתר
מבעוד מועד לטובת פעילות החוליה. כמו כן, קבע השלושה כי יבצעו את
פיגוע החטיפה ברכב הסקודה הנמצא בחזקתו של סמיר   עוד, במעמד ההפגש
ישמשו את חברי החוליה בביצוע הפיגוע   קיבל **הנאשם** לידיו חבקים, 2 זוגות כפפות ו- 3 רגלות לכיסוי הפנים אשר

ח   בהמשך, בעודם נוסעים ברכב הקיה, הוביל סמיר את ראוב **והנאשם** לדרך
עפר בסמוך לכפר סאלם, שמוכילה לכביש העוקף של הישוב אלון מורה  אז,
הציע סמיר לשניים לבצע את פיגוע החטיפה באמצעות ציר זה תוך שהם יחנו
את רכבם בדרך העפר וצעדו רגלית לעבר   הכביש ראוב **והנאשם** סירבו
להצעתו של סמיר בתואנה שההליכה הרגלית תסרבל את ביצוע הפיגוע
ותגדיל את סיכויי החוליה להילכד לפיכך, החליטו השלושה כי כפי שסיכמו
מראש, פיגוע החטיפה יעשה בציר הסמוך לצומת בית פוריק וזאת לאחר
שיוודאו היעדר נוכחותם של כוחות הביטחון בטרם ובסמוך למועד הפיגוע,

ט   בהמשך היום, בשעות הצהריים, בסמוך לבית הקברות שבשכם, כתיכונו של
**הנאשם**, נפגשו כרם וראב״ג. אז, עדכן האחרון את כרם כי פיגוע החטיפה
עתיד להתבצע בהמשך היום, בשעות הלילה, ובירר אודות נכונותו של כרם
ליטול חלק בפיגוע. האחרון הביע את הסכמתו  במקביל, פגש **הנאשם** את
זיד וביקש מהאחרון שיסור לביתו של **הנאשם** בשעות הערב

י   עוד באותו היום, בשעות הערב, אסף זיד את ברכב הגולף שברשותו את **הנאשם**
והשניים נסעו לאזור אלדאחיה ופגשו בראב״ג. במעמד זה, מסר האחרון
ל**נאשם** כמתואם, אקדח מסוג FN, הנשא מספר סידורי טבעי C06845 (להלן:
**"האקדח"**), ומחסנית המכילה כדורי ירי תואמים, אשר רכש ראב״ג בסיועם
של סמיר ואמג״ד מבעוד מועד. כמו כן, הדריך ראב״ג את **הנאשם** אודות
תפעולו של האקדח.

יא   מיד לאחר מכן, המשיכו זיד ו**הנאשם** בדרכם לעבר מכללת אלראודה שם
אספו את כרם  אז, החלו השלושה בנסיעה לעבר אזור אסכאן רוג׳יב כאשר
במהלך הנסיעה הדריך **הנאשם** את כרם אודות תפעול האקדח. בהגיעם של
חברי החוליה ליעדם, פגשו בסמיר אשר הגיע למקום ברכב הסקודה
כמתוכנן.

יב   לאחר מכן, נסע **הנאשם** יחד עם סמיר ברכב הסקודה
לעבר צומת בית פוריק וזאת על מנת לבחון את היעד שנבחר לצורך ביצוע
פיגוע החטיפה ולשלול נוכחות כוחות ביטחון ביעד האמור. בהמשך, שבו

CONFIDENTIAL

SHATSKY-JD01797

CONFIDENTIAL

SHATSKY-JD01796

סמיר **והנאשם** על עקבותיהם לאזור אסכאן רוגיב או למקום הסמוך לכך
ופגשו ברכב וזיד או אז. נסעו סמיר וכרם ברכב הסקודה, לבקשתו של
**הנאשם** בד בבד נסעו זיד לכך למקום הסמוך אלמסאכן אזור לעבר
**והנאשם** ברכב הגולף לעבר ביתו של האחרון. כשהגיעו ליעדם נטל **הנאשם**
ליידיו את כלי הנשק, החמושת, החבקים, הכפפות ורעלות הפנים, שב לרכבו
של זיד והניח את האחרון לנסוע לעבר אזור אלמסאכן

יג. לבסוף, נגשו כלל חברי החוליה באלמסאכן או במקום הסמוך לכך אז, פנה
**הנאשם** וזיד והניחה את האחרון לנסוע ברכב הגולף לעבר צומת בית פוריק
ולוודא את היעדר נוכחותם של כוחות הביטחון לאורך ציר התנועה לשם כך,
לשם כך. ולאור ניסיון להרחיק את זיד מעורבנותו בביצוע פיגוע החטיפה של
זיד, מסר **הנאשם** ליידיו של זיד את מכשיר הסלולר שלו כרם, **באמצעותו**
נתבקש זיד לעדכנו באשר להעדר נוכחות כוחות הביטחון באזור **שיחיין, כמו**
כן, הורה **הנאשם** לזיד כי בסיום נדידת הציר, ימשיך משך צליל **ויתחבק, כמו**
למכשיר הסלולר שברשות **הנאשם**. ימתין משך צליל בודד **בנסיעתו לעבר חנות**
משקאות בשם "פרוסטי" הנמצאת באזור אלמסאכן הלה **מעלה במבוקש** על

יד. נמקביל לפעולתו של זיד, התלו יתר חברי החוליה להסוות עצמם וואת בכדי
למנוע את זיהויים בעת ביצוע הפיגוע או אז, הדביקו **הנאשם** וסמיר
רכב הסקודה ועל גבי סימני זיהוי נוספים כמו כן, עטו השלושה את רעלות
מדבקות כהות שהיו ברשות האחרון מבעוד מועד, על גבי לוחיות הזיהוי של
הפנים בעוד שה**נאשם** וכרם גם כבשו את הכפפות

טו. בהמשך, ומיד לאחר שזיד אותת לחברי חוליתו אודות היעדר נוכחות של
כוחות הביטחון בציר התנועה, החלו ה**נאשם**, כרם וסמיר בנסיעה לעבר
צומת בית פוריק כאשר האחרון נוהג ברכב הסקודה, במהלך נסיעתם, שלף
**הנאשם** את האקדח והמחסנית ומסר אותם ליידי כרם אז, תרו השלושה

טז. בהמשך בסמוך לצומת בית דגן, הבחינה החוליה ברכב מסוג מיצובישי
אחר מכרה לשם ביצוע פיגוע החטיפה

**רכב** (נוהל 10-1ג7-95). איתם הנקון זיי, ישראלית שמספרה לוחית זיהוי
**המיצובישי**). בו נסעו באיתה העת בני משפחתם הנקין, איתם הנקון זיי,
יעמדה הנדרן זיי וארבעת ילדיהם הקטנים. אשר עשה דרכו מהיישוב אלון
מורה לכוונו היישוב איתמר אז, לבקשת ה**נאשם**, ביצע סמיר פניית **פרסה**
והחוליה החלה בדליקת אחר רכב המיצובישי. בהמשך, השיגו האחרוניים את
רכב המיצובישי ועקפוהו בו בעת הוציא ה**נאשם** את פלג גופו העליון מ**בעד**
לחלון הרכב וירה מכלי הנשק, עת היה מכוון על מצב ירי אוטומטי, **עשרות**
כדורים לעבר רכב המיצובישי

יז. כתוצאה מהירי האמור נפצע איתם הנקין זי"ל אשר עצר את רכבו **בצד הדרך**
מיד לאחרונו עצר סמיר את הרכב אז ירדו מהרכב ה**נאשם, כשבושרצו** כלי
הנשק. וכרם. כשברשותו האקדח, והחלו צועדים לעבר רכב המיצונ **שי עשר** על

 g

CONFIDENTIAL

SHATSKY-JD01796

CONFIDENTIAL

SHATSKY-JD01799

מנת לחטוף את אחד מיושביו כמתוכנן. בד בבד, החליף הנאשם את מחסנית

הנשק במחסנית הנוספת שהייתה ברשותו בעוד שכרם טען את האקדח

יח. משהגיעו השניים בסמוך לרכב המיצובישי, ניגש הנאשם לדלת הימנית

קדמית של הרכב בעוד שכרם ניגש לדלת הנהג. אז החל כרם להתעמת עם

איתם הנקין ז"ל, אשר בכוחותיו האחרונים עשה כל שביכולתו על מנת

ליטול את האקדח מידו של כרם. בעוד איתם הנקין ז"ל נאבק על חייו ועל

חיי משפחתו החבוי הנאשם במתרחש יורה, מטווח קצר, לעברו של המולח

צרור כדורים, עת הנשק היה מכוון על ירי במצב אוטומטי, עד שנפחה נשמתו

של המנוח

**במעשיהם האמורים גרמו הנאשם ושותפיו, בכוונה, למותו של איתם הנקין**

**ז"ל.**

**פרט אישום שמיני:** גרימת מוות בכוונה, עבירו לפי סעיפים 209(א) ו-199ג(א+ב) לצו בדבר הוראות

**מהות העבירה:** גרימת מוות בכוונה (וי"ש)(מס' 1651), התשי"ע- 2009

**פרטי העבירה:** הנאשם הנ"ל, באזור, גרם למותו של אדם בכוונה, דהיינו להיאבק

מיד לאחר האמור בפרט האישום הקודם, החלה נעמה הנקין ז"ל להיאבק

בנאשם בניסיון להינצל. אז, וללא היסוס, ירה הנאשם צרור כדורים, מטווח

אפס, לעבר נעמה הנקין ז"ל וגרם למותה למול ילדיה הקטנים שחזו במתרחש

**במעשיהם האמורים גרמו הנאשם ושותפיו, בכוונה, למותה של נעמה הנקין**

**ז"ל.**

**פרט אישום תשיעי:** ניסיון לחטיפה בנסיבות מחמירות, עבירה לפי סעיפים 213(ד) ו- 198 לצו בדבר

**מהות העבירה:** ניסיון (נוסח משולב) (יהודה והשומרון) (מס' 1651), התשי"ע-2009

הוראות בטחון (נוסח משולב) באזור, חטף אדם בידיעה שהנחטף יהיה צפוי לסכנת חיים, או

**פרטי העבירה:** הנאשם הנ"ל, באזור, חטף אדם בידיעה, דהיינו

חטף אדם כדי לסחוט או לאיים, דהיינו בעשותו את האמור בפרט האישום השביעי והשמיני, ניסה הנאשם לחטוף את

יושבי הרכב

**פרט אישום עשירי:** ניסיון לגרימת מוות בכוונה, עבירה לפי סעיפים 209(א) ו-198 לצו בדבר הוראות

**מהות העבירה:** ניסיון (נוסח משולב) (וי"ש)(מס' 1651), התשי"ע- 2009

**פרטי העבירה:** הנאשם הנ"ל, באזור, ניסה לגרום למותו של אדם בכוונה, דהיינו בטחון באזור, ניסה הנאשם לגרום

בעשותו את האמור בס"ק טז' לפרט האישום השביעי, ניסה הנאשם לגרום

למותו של מ.ה., בן ה-9, בנם של איתם ונעמה הנקין ז"ל.

CONFIDENTIAL

SHATSKY-JD01800

<u>פרט אישום אחד עשר</u>: ניסיון לגרימת מוות בכוונה, עבירה לפי סעיפים 209(א) ו-198 לצו בדבר הוראות

<u>מהות העבירה</u>: ניסיון לגרימת מוות בכוונה, עבירה לפי סעיפים 209(א) ו-198 לצו בדבר הוראות
ביטחון [נוסח משולב] (יו"ש)(מס' 1651), התש"ע- 2009

<u>פרטי העבירה</u>: הנאשם הנ"ל, באזור, ניסה לגרום למותו של אדם בכוונה, ניסה הנאשם לגרום
בעשותו את האמור בס"ק ט' לפרט האישום השביעי,
למותו של נ.ה , בן ה-7, בנם של איתם ונעמה הנקין ז"ל

<u>פרט אישום שניים עשר</u>: ניסיון לגרימת מוות בכוונה, עבירה לפי סעיפים 209(א) ו-198 לצו בדבר הוראות

<u>מהות העבירה</u>: ניסיון לגרימת מוות בכוונה, עבירה לפי סעיפים 209(א) ו-198 לצו בדבר הוראות
ביטחון [נוסח משולב] (יו"ש)(מס' 1651), התש"ע- 2009

<u>פרטי העבירה</u>: הנאשם הנ"ל, באזור, ניסה לגרום למותו של אדם בכוונה, ניסה הנאשם לגרום
בעשותו את האמור בס"ק ט' לפרט האישום השביעי,
למותו של נ.ה , בן ה-4, בנם של איתם ונעמה הנקין ז"ל

<u>פרט אישום שלושה עשר</u>: ניסיון לגרימת מוות בכוונה, עבירה לפי סעיפים 209(א) ו-198 לצו בדבר הוראות

<u>מהות העבירה</u>: ניסיון לגרימת מוות בכוונה, עבירה לפי סעיפים 209(א) ו-198 לצו בדבר הוראות
ביטחון [נוסח משולב] (יו"ש)(מס' 1651), התש"ע- 2009

<u>פרטי העבירה</u>: הנאשם הנ"ל, באזור, ניסה לגרום למותו של אדם בכוונה, ניסה הנאשם לגרום
בעשותו את האמור בס"ק ט' לפרט האישום השביעי,
למותו של א.ה , בן 10 חודשים, בנם של איתם ונעמה הנקין ז"ל

<u>פרט אישום ארבעה עשר</u>: עבירה לפי סעיפים 245 ו-333 לצו בדבר הוראות ביטח[חי נ]יסח

<u>מהות העבירה</u>: מתן מקלט, עבירה לפי סעיפים 245, התש"ע - 2009
משולב] (יהודה והשומרון)(מס' 1651), התש"ע - 2009

<u>פרטי העבירה</u>: הנאשם הנ"ל, או שהיה עוסק בכל פעולה שמטרתה לפגוע בשלום הציבור.
הביטחון או העוסק או שהוא הסדר הציבורי או שש יסוד סביר לחשוד כי
שלום כוחות צה"ל וחייליו וקוים הסדר הציבורי או, משקה, כסף, בגדים, נשק,
עשה כו. בין על ידי מתן ידיעות, מחסה, מזון, נפט או דלק מסוג כלשהו וביו בדרך
תחמושת, אספקה, מספואי, אמצעי תובכה.

א   בהמשך לאמור בפרט האישום השביעי, עת ירה הנאשם לעבר איתם הנקין
ז"ל, פגע אחד הכליעים בכרם ופצעו בידו השמאלית  כתוצאה מכך. הפיל
כרם את האקדח ארצה וסר בחזרה לרכב הסקורה שניית ספורות לאחר
מכן, ואחרי שגרם הנאשם למותה של ונעמה הנקין ז"ל, שב האחרון גם הוא
לרכב והשלושה נסעו לעבר אזור אלמסאכן. במהלך נסיעתם. יצר הנאשם
קשר טלפוני עם בסאם והתבטא במילים "כואב לי בלב" כפי שסיכמו כאמור
לעיל בתחילה מסר בסאם לנאשם כי הוא עסוק ומשכך סרב לבקשתו שי
האחרון

//

CONFIDENTIAL

SHATSKY-JD01800

CONFIDENTIAL

SHATSKY-JD01801

ב. בהמשך, ומשהגיעו סמיר, כרם **והנאשם** ליעדם, פגשו האחרונים בזיד
כמסוכם. אז, עברו **הנאשם** וכרם לרכבו של זיד ונסעו לעבר ביתו של
האחרון בהמלך נסיעתם יצר **הנאשם**, בשנית, קשר עם בסאם והסכיר לו
את דחיפות הסיוע הנדרש. בסאם נעתר לבקשתו של **הנאשם** לסייע, וטיכס
להיפעס עימו בביתו של זיד. כמו כן, ייצר ראג'ב קשר עם **הנאשם**, במהלך
שיחתם אמר **הנאשם** לראג'ב את צמד המילים "נשתה קוקטיילי" או מילים
בעל משמעות דומה וכך למעשה עדכן את ראג'ב כי פיגוע הרצח צלח

ג. משהגיעו השלושה ליעדם, שם זיד פעמיו לעבר ביתו וכיבה את המצלמות
האבטחה המותקנות סביבו, על מנת לשבש את תיעוד המתרחש בקרבת
ביתו  זמן קצר לאחר מכן, הגיע בסאם ליעד בגפו  אז, הכניס בסאם אותו
**הנאשם** וכרם לדירה סמוכה שאינה מאוכלסת ואשר שייכת לקרוב משפחתו אשר
(להלן: "**הדירה**") כמו כן, מסר בסאם לזיד מפתחות למחסן סמוך, אשר
נמצא בבעלותו של בסאם וזאת לצורך הכמנת כלי הנשק, רעולת הפנים
ו כפפות שישימשו לביצועו הרצח, הובל את מוחמד והביאו לדירה.

ד. בהמשך, ולנוכח פצעיתו של כרם, הובל בסאם את מוחמד והביאו לדירה.
אז, מסר האחרון לכרם טיפול רפואי ראשוני וציין כי נוכח חומרת פצעיתו יש
צורך לפנותו לבית החולים. במקביל, הוביל **הנאשם** את ראג'ב לדירה, שם
בחן ראג'ב את מצבו של כרם לבית החולים אלערבי אלתחאססי שברפידיה
והחליט כי יש לפנותו לבית החולים. **הנאשם** לנסוע יחד עם כרם לבית החולים אלערבי אלתחאססי שברפידיה
משהגיעו ליעדם, חברו השניים לראג'ב בשנית אשר ליווה את כרם לקבלת
טיפול רפואי

<u>**פרט אישום חמישה עשר:**</u>
<u>**מהות העבירה:**</u> שיבוש הליכי משפט, עבירה לפי סעיף 228(א) לצו בדבר הוראות ביטחון [נוסח
משולב] (יהודה והשומרון) (מס' 1651), התשע"ע-2009.

<u>**פרטי העבירה:**</u> הנאשם, באזור, עשה דבר בכוונה למנוע או להכשיל הליך שיפוטי או להביא לידי
עיוות דין, בין בסיכול הזמנתו של עד, בין בהעלמת ראיות ובין בדרך אחרת,
דהיינו

בעשותו את האמור בס"ק יג' לפרט האישום השביעי, עת הדביק הנאשם מדבקות
כהות על גבי רכב הסקודה, שיבע הנאשם הליכי משפט.

<u>**פרט אישום שישה עשר:**</u>
<u>**מהות העבירה:**</u> סחר בציוד מלחמתי, עבירה לפי סעיפים 233(ב) ו-199(א+ב) לצו בדבר הוראות
בטחון [נוסח משולב] (יהודה והשומרון) (מס' 1651), התשע"ע-2009.

<u>**פרטי העבירה**</u> הנאשם הנ"ל, באזור. סחר או עסק בצורה אחרת בציוד מלחמתי, ללא היתר
חתום ממפקד האזור או מטעמו, דהיינו

CONFIDENTIAL

SHATSKY-JD01801

CONFIDENTIAL

SHATSKY-JD01802

א. בעשותו את האמור בפרטי האישום הקודמים, עת נטל הנאשם לחזקתו או
העביר לידי אחר את כלי הנק והאקדח, סחר האחרון באמל"ח ללא היתר
כדין לכך.

ב. בעשותו את האמור בס"ק ד' לפרט האישום השני, סחר הנאשם בכדורי ירי
וזאת ללא היתר כדין לכך

עדי התביעה :

1   מ.א. 3593/15:
2   5025   רס"ב נדיר סאדר (גובה אמרת הנאשם מיום 04/10/15)
3   5588   רס"ר ראדי חטיב (גובה אמרות הנאשם מיום 05/10/15 ומיום 10/11/15)
4   6618   רס"מ פארס ג'בר (גובה אמרות הנאשם מיום 18/10/15, 12/11/15 ו- 28/10/15)
    ועורך טופס לוואי מוצגים מיום 19/10/15
5   3520   רפ"ק אסף מלכה (עורך דו"ח פעולה מיום 13/11/15)
6   9462   ארטיום צרנוגלז (עורך טופס לוואי מוצגים מיום 02/10/15)
7   1175   שריף עווידר (עורך מזכר מיום 01/10/15, טופס לוואי מוצגים, דו"ח פעולה
    וטופס משלוח מוצגים למעבדת נשק; מיום 02/10/15 ו- 06/10/15,
8   1572   רס"מ יואל חגי (עורך טופס לוואי מוצגים מיום 04/10/15, 05/10/15 ו-
    06/10/15)
9   2978   עאמר סלימאן (עורך טופס לוואי מוצגים מיום 28/10/15 ועורך מזכר מיום
    10/11/15)
10  רפ"ק מאיר דוקל (עורך מזכר מיום 08/10/15 ועורכת אישור הודעה על גרימת נזק כתוצאה מפעילה.
11  9017   רס"מ יפעת ביטון (הגני) (עורך מזכר מיום 01/10/15, דו"ח בדיקה מז"פ מיום
    06/11/15)
12  6069   רס"מ אבי נקר (עורך לוח צילומים מיום 01/10/15, ודו"ח תעוד פיתוח טביעות
    אצבע מיום 01/10/15 ו- 04/10/15, דו"ח תפיסת מוצגים מיום 04/10/15)
13  3833   רס"ק תומר אחרק (עורך מזכר מיום 10/11/15)
14  3290   רס"נ יעקב ירושלמי (עורך מזכר מיום 16/11/15)
15  5117   רנ"ג חיים כהן (עורך לוח צילומים מיום 15/10/15 ודו"ח תפיסת מוצגים מיום
    18/10/15)
16  2471   רס"מ עאמר חסן (עורך מזכר מיום 06/10/15)
17  9898   רס"ר סימה אברהמי (עורכת קבלת מוצגים לבדיקה מיום 19/10/15)
18  7380   יעקב גרניק (עורך דו"ח תפיסת מוצגים מיום 04/10/15)

13

CONFIDENTIAL

SHATSKY-JD01802

CONFIDENTIAL

19. רס"ל מג'ד שופי (שרשרת מוצגן). 7893 <sup>Redacted</sup>

20. פקד שלמה סיטון (עורך דו"ח פעולה מיום 06/10/15). 0730 <sup>Redacte</sup>

21. רס"ב יוסי לרנ (עורך דו"ח פעולה מיון 03/10/15). 3995 <sup>Redact</sup>

22. רס"ר שמואל עליה (עורך דו"ח פעולה מיום 01/10/15). 2542 <sup>Redacte</sup>

23. רס"ר רועי יונג'ק (עורך דו"ח פעולה מיום 01/10/15). 9571 <sup>Redacted</sup>

24. רס"ב ערן אשכנזי (עורך דו"ח פעולה מיום 01/10/15). 9272 <sup>Redacted</sup>

25. רס"ב אלכס וינו (עורך דו"ח פעולה מיום 01/10/15). 2695 <sup>Redac</sup>

26. רס"ר אייל קלו (עורך דו"ח בדיקה מיום 12/10/15 ו-05/11/15). 6577 <sup>Redacated</sup>

27. רפ"ק מיכל לוין אלעד (עורכת דו"ח בדיקה מיום 12/10/15, 18/10/15, 19/10/15 ו-). 6354 <sup>Redact</sup>

28. פקד תומר ארבלי (עורך דו"ח בדיקה מיום 05/11/15). 3485 <sup>Redacted</sup>

29. רפ"ק משה שפיצן (עורך חוות דעת מומחו מיום 09/11/15).

30. רפ"ק אבי קופמן (עורך חוות דעת מומחה מיום 13/10/15 ומיום 27/10/15 ועורך הודעה על קשר לאוסף האירועים הפתוחים מיום 13/10/15).

31. סנ"צ ד"ר יורי מזין (עורך הודעת פטירה מיום 01/10/15).

32. יוסי איסן (עורך אישור גילוי מיום 15/10/15).

33. סרן שמואל רבינוביץי (צה"ל, פרטים בידי התביעה).

34. סגן שחר יונה (צה"ל, פרטים בידי התביעה).

35. סמיר זוהיר אבראהים כוסא (עצור, ת.ח 2253/15). 1700 <sup>Redacted</sup>

36. כרם לוטפי פתחי רזק (עצור, ת.ת 2250/15). 3869 <sup>Redacted</sup>

37. זיד זיאד ג'מיל עאמר (עצור, ת.ת 2251/15). 7710 <sup>Redacted</sup>

38. בסאם רמחי דאוד אבו ג'יאלה (עצור, ת.ת 2255/15). 91855 <sup>Redacted</sup>

39. אמג'ד עאדל מוחמד עליוי (עצור). 5587 <sup>Redacted</sup>

40. ראג'יב אחמד מחמד עליווה (עצור, ת.ת 2283/15). 1328 <sup>Redacted</sup>

41. מוחמד נזמי מוחמד עאמר (משוחרר). 0262 <sup>Redicted</sup>

42. עמיחי אזולאי (פרטים בידי התביעה).

43. נעה שלגי (פרטים בידי התביעה).

44. אליעזר אליהו טרבלסי (פרטים בידי התביעה).

45. צבי גורן (פרטים בידי התביעה).

46. עובדיה ריונצבי (פרטים בידי התביעה).

47. המכונה "ששפר" (שרות הביטחון הכללי/פרטים בידי התביעה).

CONFIDENTIAL

SHATSKY-JD01804

48 המכונה "עזורי" (שרות הביטחון הכללי)(פרטים בידיי התביעה)

**ת.א. 3202/15:**

49 6831 רס"מ ששי עזרא (עורך קבלת מוצגים לבדיקה מיום 08/09/15)

50 רס"ק עזרא שושני (עורך חוות דעת מומחה מיום 16/09/15)

51 5117 רנ"ג חיים כהן (עורך דו"ח תפיסת מוצגים מיום 31/08/15 ודו"ח בדיקת מז"פ מיום 06/09/15)

52 5782 בועז הינדיג כהן (עורך דו"ח תפיסת מוצגים מיום 31/08/15 ועורך לוח צילומים ודו"ח בדיקת מז"פ מיום 06/09/15 ומיום 04/11/15)

53 9141 רס"מ חגאי אקרר (עורך אישור הודעה על גרימת נזק כתוצאה מפעולות איבה נגד ישראל מיום 31-08-15)

54 7778 יובל שוכר (עורך טופס משלוח מוצגים למעבדת נשק מיום 01/09/15)

55 רונן אדרי (פרטים בידי התביעה)

סגן
צבאית

רותם כהן
תובעת

CONFIDENTIAL

SHATSKY-JD01804

CONFIDENTIAL                                                                              SHATSKY-JD01805



137444

## TO WHOM IT MAY CONCERN

**CICR**

This attestation is valid only if the English and Arabic parts match each other

According to the information received from the Israeli Authorities, the International Committee of the Red Cross attests that:

Mr:      YEHYA MOHAMMADNAYEF ABDALLAH HAJ-HAMAD

From:    **NABLUS**                          ID NO: Redacted**2046**

Was arrested by the Israeli Authorities on (dd/mm/yyyy):      **03.10.2015**

He is to date: **Awaiting Trial**



الى من يهمه الأمر

هذه الشهادة سارية المفعول فقط في حالة تطابق بياناتها باللغتين العربية و الإنجليزية

استنادا الى المعلومات الواردة من قبل السلطات الإسرائيلية، تشهد اللجنة الدولية للصليب الأحمر بأن:

السيد/ة الآنسة ــــــ يحيى محمد نايف عبدالله حج حمد

من ــــــ نابلس ــــــ هوية رقم ٢،٤٦ Redacted

كان/ت قد اعتقل/ت من قبل السلطات الإسرائيلية في، يوم ٣ / شهر ١٠ /سنة ٢٠١٥

وهو/هي في هذا التاريخ : ينتظر المحاكمة _XXX_ محكوم/ة ــــــ اداري ــــــ

CERTIFIED COPY
2 3 -11- 2015
International Committee
of the Red Cross

Date: **23.11.2015**
التاريخ

Place: **NABLUS**
المكان

ILJ-888374

ICRC Delegate
توقيع مندوب اللجنة

CONFIDENTIAL                                                                              SHATSKY-JD01805

# Exhibit 154



Prisoner Salary Statement

Prisoner no. 256147
Prisoner Name: Yahia Muhamad Naif Abdullah Hajj Hamad
        Document no. 854332046

| Month | Year | Beneficiary | ID no. | Bank Name | Branch | Account no. | Salary |
|-------|------|-------------|--------|-----------|--------|-------------|--------|

Redacted

Page 1 of 2

Confidential

**7/28/21**
j b
**Salem 10**

שגיאה! שם מאפיין מסמך לא ידוע.

| | | | | Prisoner Salary Statement | | | | |
|---|---|---|---|---|---|---|---|---|

**Prisoner no.** 256147

**Prisoner Name:** Yahia Muhamad Naif Abdullah Hajj Hamad          **Document no.** 854332046

| Month | Year | Beneficiary | ID no. | Bank Name | Branch | Account no. | Salary |
|---|---|---|---|---|---|---|---|
| | | | Redacted | | | | |
| | | | Redacted | | | | |
| 4 | 2020 | Hiyam Jawdat Abdullah Hajj Hamad | Redacted 1863 | | | | 2,000.00 |
| 5 | 2020 | Hiyam Jawdat Abdullah Hajj Hamad | Redacted 1863 | | | | 2,000.00 |
| 6 | 2020 | Hiyam Jawdat Abdullah Hajj Hamad | Redacted 1863 | | | | 2,000.00 |
| 7 | 2020 | Hiyam Jawdat Abdullah Hajj Hamad | Redacted 1863 | | | | 2,400.00 |
| 8 | 2020 | Hiyam Jawdat Abdullah Hajj Hamad | Redacted 1863 | | | | 2,000.00 |
| 9 | 2020 | Hiyam Jawdat Abdullah Hajj Hamad | Redacted 1863 | | | | 2,000.00 |
| 10 | 2020 | Hiyam Jawdat Abdullah Hajj Hamad | Redacted 1863 | | | | 2,000.00 |
| 11 | 2020 | Hiyam Jawdat Abdullah Hajj Hamad | Redacted 1863 | | | | 3,888.72[*] |
| 12 | 2020 | Hiyam Jawdat Abdullah Hajj Hamad | Redacted 1863 | | | | 3,950.00 |
| 1 | 2021 | Hiyam Jawdat Abdullah Hajj Hamad | Redacted 1863 | | | | 4,350.00[*] |
| 2 | 2021 | Hiyam Jawdat Abdullah Hajj Hamad | Redacted 1863 | | | | 3,950.00 |
| 3 | 2021 | Hiyam Jawdat Abdullah Hajj Hamad | Redacted 1863 | | | | 3,950.00 |
| 4 | 2021 | Hiyam Jawdat Abdullah Hajj Hamad | Redacted 1863 | | | | 3,950.00 |
| 5 | 2021 | Hiyam Jawdat Abdullah Hajj Hamad | 1863 | | | | 3,950.00 |

Confidential

Shatsky-JD00525-T

שגיאה! שם מאפיין מסמך לא ידוע.

# Translator's Certification

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SHABTAI SCOTT SHATSKY, *et al.*,<br><br>                              Plaintiffs,<br><br>v.<br><br>THE PALESTINE LIBERATION<br>ORGANIZATION and THE PALESTINIAN<br>AUTHORITY,<br><br>                              Defendants. | Case No. 18-cv-12355 (MKV) |

### DECLARATION OF YANIV BERMAN

I, Yaniv Berman, declare pursuant to 28 U.S.C. § 1746, as follows:

1.      I am a professional translator with an M.A. degree in Middle Eastern Studies from the Hebrew University of Jerusalem (Israel).  I read Arabic and English fluently, and I am qualified to translate from Arabic into English.

2.      I certify that the attached documents are true and accurate translations of the Arabic originals designated as "Shatsky-JD00012" through "Shatsky-JD00534."  The translations are labelled with Bates numbers that correspond to the original documents, with the addition of a "-T" at the end to indicate that it is a translation.

3.      To the extent that some of the information in the original documents was not clearly legible, I have translated such information into English to the best of my ability.  Such instances are marked with an asterisk ("[*]").

I declare under penalty of perjury under the laws of the United States of America that the
foregoing is true and correct.

Dated:  June 24, 2021

Yaniv Berman

2

Original



CONFIDENTIAL

كشف راتب اسم

رقم الأمر 256147
اسم الأمر بجبر محمد الذيب عبد الله حج حمد

رقم البطاقة B54332046

| الراتب | رقم الحساب | الفرع | البنك | رقم البطاقة | اسم المستفيد | السنة | الشهر |
|---|---|---|---|---|---|---|---|

Redacted

| 2,000.00 | | | Redacted | 1863 | عبد فرحات عبد الله حج حمد | 2020 | 4 |
| 2,000.00 | | | Redacted | 1863 | عبد فرحات عبد الله حج حمد | 2020 | 5 |
| 2,400.00 | | | Redacted | 1863 | جوام فرحات عبد الله حج حمد | 2020 | 6 |
| 2,000.00 | | | Redacted | 1863 | جوام فرحات عبد الله حج حمد | 2020 | 7 |
| 2,000.00 | | | Redacted | 1863 | جوام فرحات عبد الله حج حمد | 2020 | 8 |
| 2,000.00 | | | Redacted | 1863 | جوام فرحات عبد الله حج حمد | 2020 | 9 |
| 2,898.72 | | Redacted | | Redacted | 1863 | جوام فرحات عبد الله حج حمد | 2020 | 10 |
| 3,950.00 | | | Redacted | 1863 | جوام فرحات عبد الله حج حمد | 2020 | 11 |
| 4,350.00 | | | Redacted | 1863 | جوام فرحات عبد الله حج حمد | 2020 | 12 |
| 3,650.00 | | | Redacted | 1863 | جوام فرحات عبد الله حج حمد | 2021 | 1 |
| 3,950.00 | | | Redacted | 1863 | جوام فرحات عبد الله حج حمد | 2021 | 2 |
| 3,950.00 | | | Redacted | 1863 | جوام فرحات عبد الله حج حمد | 2021 | 3 |
| 3,950.00 | | | Redacted | 1863 | جوام فرحات عبد الله حج حمد | 2021 | 4 |
| 3,950.00 | | | Redacted | 1863 | جوام فرحات عبد الله حج حمد | 2021 | 5 |

2 من الصفحة

CONFIDENTIAL