# Exhibit 158

CONFIDENTIAL                              SHATSKY-JD01857-T

| [PLO emblem] |
| Palestinian Liberation Organization |
| Department of Detainees and Ex-Detainees Affairs |
| General Administration for Administrative |
| Archive Department |

| 22063 | **Alaa Raed Saleh Zughayer** |
|-------|------------------------------|
|       |                              |

Important note: The file contains two files of two separate prisoners.

Kindly pay attention to this to avoid confusing the two.

CONFIDENTIAL                              SHATSKY-JD01857-T

7/28/21
j.b
**Salem 13**

CONFIDENTIAL                                                    SHATSKY-JD01862-T

# Israel        Defense        Forces

### The Military Court in Judea                    Case No. 6752/16

### Before the Hon. Presiding Judge: Lieutenant Colonel Eti Adar

### Before the Hon. Judge: Major Sebastian Osovsky

### Before the Hon. Judge: Major Lidor Drachman

**The Military Prosecution**

(Represented by Captain Avivit Tzemach)

- vs -

**The Defendant: Alaa Raed Saleh Zughayer** Redacted **8696 / Prison Services - present**

(Represented by Adv. Labib Habib - present)

**Shift Head: Corporal Adi Peretz**

**Translator: Corporal Benny Abramov**

**Date of Proceedings: 09/09/2019**

```
[Arabic language stamp:]
PLO
Detainees & Ex-Detainees
Department
11.13.2019
General Department for Legal Affairs
Checked
Indictments
```

### Proceedings

**The Court recognizes the Defendant.**

**The Defendant declares that Adv. Labib Habib is representing him.**

Military Prosecutor: There is no evidence for the purpose of sentencing.

Defense: There is no evidence for the purpose of sentencing. I present to the court the voucher for the deposit in the amount of NIS10,000 whose number is 0018211230 that was paid as the compensation that is part of the agreement.

Military Prosecutor summarizes: As part of the plea agreement, I will seek to impose on the Defendant an agreed sentence of 16 and a half years' actual imprisonment, a suspended sentence at the discretion of the court, and as noted by my colleague, compensation in the amount of NIS10,000 for which a deposit in that sum has been made. The justifications for the agreement are the Defendant's clean record, his admission of guilt and the saving of judicial time, while taking into account in the agreement and in the amendments to the indictment that this is someone who is not in the inner circle of perpetrators. Likewise, we took into consideration evidentiary difficulties regarding the awareness of the Defendant regarding the actions of the murderer, and took into consideration as well the waiver of the defense of significant evidentiary allegations regarding the interrogation of the Defendant. The family of Rabbi Michael Mark of blessed memory met with members of the prosecution here in

the Judea and Samaria Prosecution's office and the provisions of the agreement were clarified to them and a discussion took place with them regarding the Defendant and they are aware of the agreement and accept its provisions. The agreement regarding the compensation is that it will be for the benefit of the deceased's estate.

Defense summarizes: I request to honor the agreement. The Defense waived serious defense arguments in this case. There were evidentiary difficulties connected both to the versions that were in the file and to the method by which the Defendant was interrogated. At the end the Defendant preferred to take responsibility and admit to the amended indictment. There is also an expression of remorse regarding the actions of which it seems to us that the Defendant did not understand their seriousness in real time. I request that the suspended sentence be appropriate and extremely light considering the long period in which the Defendant is supposed to remain in actual imprisonment.

The Defendant's last remarks: I regret what I did, I didn't think that this is what it would mean. I'm sorry.

1

CONFIDENTIAL                                   SHATSKY-JD01862-T

CONFIDENTIAL                                    SHATSKY-JD01863-T

Date: 09/09/2019   The Military Court in Judea        Case No.: 6752/16

## Before the Hon. Presiding Judge: Lieutenant Colonel Eti Adar

## Before the Hon. Judge: Major Sebastian Osovsky

## Before the Hon. Judge: Major Lidor Drachman

### The Military Prosecution

(Represented by Captain Avivit Tzemach)

### - vs -

### The Defendant: Alaa Raed Saleh Zughayer [Redacted] 8696/Prison Services-present

(Represented by Adv. Labib Habib - present)

---

[Arabic language stamp:]
PLO
Detainees & Ex-Detainees
Department
11.13.2019
General Department for Legal
Affairs
Checked
Indictments

# Sentencing

**Background:**

1. The Defendant Alaa Raed Saleh Zughayer, was convicted according to his admission of the offense of aiding in intentionally causing death, pursuant to Sections 209(a) and 199e of the Security Provisions [combined version] Order 5770-2009 (hereinafter: the Order) and of three Counts of aiding an attempt to intentionally cause death, pursuant to Sections 198, 209(a) and 199e of the Order.

2. This plea agreement that was made between the parties, was presented for our review after we allowed the Defendant to retract his denial of guilt in the indictment at the stage of the prosecution's case. Prior to this, several testimonies were heard, among others regarding minor allegations raised by the Defendant. In the light of the agreement, the Defendant pleaded guilty to the amended indictment that recounts the incidents related to the murder of Rabbi Michael Mark of blessed memory (hereinafter: the Deceased) and injuring of his family - Chava Mark, Tehila Mark and Pedaya Mark.

**Facts of Indictment**

3. According to the amended indictment to which the Defendant has pleaded guilty, on 7.1.2016, two terrorists, Mohamed Jabara Ahmed Al-Faqih (hereinafter: **Faqih**) and Mohamed Abd Al Magid Mohamed Al-Amayreh (hereinafter: **Al-Amayreh**) went out to execute a shooting terror attack at Israeli targets.

4. The two drove on Route 60 in Faqih's **Hyundai** vehicle onto which they affixed Israeli license plates, while being in possession of two Kalashnikov rifles. They then noticed the car that the Deceased was driving that was in front of them, traveling in the direction of Jerusalem. Al-Amayreh sped up the Hyundai and passed the Deceased's car in order to enable Faqih to get one of the Kalashnikov rifles out the window and shoot at the Israeli car.

5. When the two were approximately only two meters away from the Deceased's car, Faqih began to shoot a massive volley of bullets at it. During the volley approximately 25 bullets struck the Deceased's car and led to it overturning. Even after the two passed

2

CONFIDENTIAL

SHATSKY-JD01863-T

CONFIDENTIAL                                              SHATSKY-JD01864-T

<u>Date: 09/09/2019   The Military Court in Judea</u>          <u>Case No.: 6752/16</u>

the Israeli car, they decided to turn around, with the intention of continuing to shoot at the car's occupants and verify their deaths. Faqih got out of the Hyundai vehicle and made his way to the Israeli car with the Kalashnikov rifle in his hands and shot one more time at the occupants of the Deceased's car. However, he was forced to stop because other vehicles were approaching the area.

6.  As a result of the shooting, **Faqih and Al-Amayreh intentionally caused the death of the driver of the car, Michael Mark of blessed memory, who was hit by five bullets to his body and another one to his head,** as well as causing **injuries to the car's occupants, his wife and two children.**

7.  The Defendant before us helped Faqih and Al-Amayreh carry out their plot. His activity began approximately two months prior to his arrest and continued after the execution of the terror attack. In essence, we will note that approximately two months prior to his arrest, Faqih contacted the Defendant with a request to help him acquire a video camera, Hamas headbands, Hamas flags, two pairs of army boots and two army uniforms. The Defendant referred him to his brother Abdullah, who accompanied Faqih to a store where he purchased army boots and uniforms. It should be noted that even then the Defendant understood that Faqih was planning to execute a terror attack together with an additional accomplice.

[Arabic language stamp:]
PLO
Detainees & Ex-Detainees
Department
11.13.2019
General Department for Legal
Affairs
Checked
Indictments

8.  Approximately three weeks prior to the terror attack, Faqih and the Defendant discussed a replacement for Faqih after his death, who would carry out another terror attack. The Defendant suggested his friend, Salim Muslim Yasser Mohamed Ahmed (hereinafter: "**Salim**") but Faqih requested that a different person be appointed as his replacement.

9.  Approximately a week before the terror attack, the Defendant helped Faqih purchase an Opel vehicle. Faqih planned to use this vehicle in order to execute the terror attack. At the end, Faqih decided not to use this vehicle but rather the Hyundai, as detailed above.

10. At the end of June, Faqih requested that the Defendant pay him the balance of the debt he owed him from a past loan, in the sum of NIS6,000, and noted to him that if he died, he should return the money to his brother, Suhib. From all these things, the Defendant grew more and more convinced that it was Faqih's intention to execute a terror attack in the near future.

11. In addition, also approximately a week before the terror attack, the Defendant acquiesced to Faqih's request to pass on a despatch for him to elements in Hamas. The Defendant put the despatch into his shoes, which were placed on a shelf of shoes in the Al-Kharas Mosque in Hebron, in accordance with the instructions that he received from Faqih. The Defendant opened the despatch and read what was inside. **"Surveillance of the target was carried out. Implementation must occur this Friday."** The Defendant waited until an unidentified person arrived who collected the despatch and, in its place, left another note which contained a message for Faqih that the Defendant also read. "We want to see you on Tuesday after the afternoon prayer in the Al-Ahli Mosque in Hebron." The Defendant passed on the despatch to Faqih with the understanding that the terror attack would occur on the coming Friday.

12. Several days prior to the execution of the terror attack, Faqih requested that the Defendant organize for him an apartment in which he could tape his will while dressed in a military uniform with a Hamas flag at his side. The Defendant contacted his friend Salim and received from him keys to an apartment in the dormitories of the university in Hebron.

3

SHATSKY-JD01864-T

CONFIDENTIAL

SHATSKY-JD01865-T

<u>Date: 09/09/2019   The Military Court in Judea</u>        <u>Case No.: 6752/16</u>

13. On 6.29.2016, the Defendant invited Faqih to join him for the fast-breaking meal in Salim's house. At this time, Faqih told the Defendant that everything was ready and asked that he pay the rest of his debt to his brother, Suhib.

14. **After the murder** the Defendant met with Faqih and the two discussed the terror attack. Faqih updated the Defendant that he intended to hide in a building that was in the process of being built, but the Defendant suggested that he sleep in the student dormitories of the university, and the latter agreed.

15. The Defendant even agreed to Faqih's requests, among them to let him use his cellular phone, to ensure the repair of a hole in the driver's door caused by the ejection of a bullet during the terror attack, and to charge a phone card for him. The Defendant also suggested to Faqih that he provide him with food.

16. In due course, the Defendant repaired Faqih's car with Salim's help. Later, the Defendant collected Faqih from the student dormitories together with his possessions, which included two satchels, military uniforms and a Kalashnikov weapon, and drove him to his parents' house. During the drive, the Defendant updated Faqih about additional messages. After reaching his parents' house, Faqih got out of the car and the Defendant told him that he would drive him back to Hebron in the evening. Likewise, on 7.3.2016, the Defendant transferred a backpack that was placed in a storage compartment in his brother's shop, and into which a passport had been put.

17. Thus far the facts arising from the indictment on the basis of which the accused was convicted for aiding in intentionally causing the death of **Rabbi Michael Mark of blessed memory,** as well as aiding in the attempt to cause the deaths of **Chava Mark, Tehila Mark and Pedaya Mark.**

18. The parties presented before us the plea agreement, in context of which they requested that we impose on the Defendant a sentence of 16 and a half years' actual imprisonment as well as a suspended sentence based on the discretion of the court.  This in addition to compensation in the amount of NIS10,000 that will be paid to the estate of the Deceased and for which an appropriate deposit has been made.

19. The parties have justified the settlement based on the clean record of the Defendant, his admission of guilt and the saving of judicial time. It was further

[Arabic language stamp:]
PLO
Detainees & Ex-Detainees
Department
11.13.2019
General Department for Legal
Affairs
Checked
Indictments

stated before us that the parties took into account the fact that the Defendant is not among the "inner circle of the perpetrators." They also took into account significant evidentiary difficulties that touch, among other things, on the issue of the Defendant's awareness of details of the occurrence of the terror attack and of Faqih's actions, and which led to the amendment of the indictment. In addition, it was claimed that in context of the agreement, the defense waived its allegations regarding the admissibility of the Defendant's confessions during his various interrogations. The prosecution added that it had updated the Deceased's family, some of whom were injured during the terror attack, as to the Counts of the plea agreement and that the agreement was acceptable to them.

20. In his "final remarks," the Defendant expressed regret for his actions, said that he was sorry for them and even added that he had not understood the immensity of the actions in which he had taken part.

4

CONFIDENTIAL

SHATSKY-JD01865-T

CONFIDENTIAL                                                      SHATSKY-JD01866-T

**Date: 09/09/2019   The Military Court in Judea**          **Case No.: 6752/16**

**Discussion and Determination**

21. The Defendant was convicted of serious security offenses. The offense of aiding in
    intentionally causing death as well as aiding in attempts to intentionally cause
    death. There is no need to overstate the severity of the Defendant's actions, which
    in practice decided the fate of an entire family and are an inseparable part of the
    chain of events that led to the murder of the Deceased.

22. In the said offenses there is a mortal violation of the value of the sanctity of life, a
    sacred value in any civilized society. With his actions, the Defendant contributed a
    significant blow to the said value, as well as to the right to bodily integrity and
    public order.

23. The circumstances of the commission of the offenses in our case indicate its great
    severity. The Defendant took active part in the circle that led to the murder of the
    Deceased and to the injuring of his family, and aided in the realization of the
    terror attack in all its stages, beginning with bringing the uniforms and Hamas
    symbols to one of the murderers, purchasing a vehicle for the purpose of its
    execution (even if at the end Faqih decided to use a different vehicle), passing on
    messages between Faqih and Hamas elements, finding a hiding place even before
    the terror attack occurred, and ending with rendering assistance after the attack.

24. In this context, the Defendant provided significant assistance to the perpetrators
    of the attack. This was assistance provided at very significant stages, over time,
    which justifies stiffening the sentence (compare according to 635/05 **Da'na v.
    State of Israel** (published in Nevo, 11/26/2007).

[Arabic language stamp:]
PLO
Detainees & Ex-
Detainees Department
11.13.2019
General Department for
Legal Affairs
Checked
Indictments

25. We have also taken into account that the terror attack that the Defendant aided in
    executing was executed out of nationalist motives whose purpose was to cause
    harm to Israelis and Jews wherever they are in this context. We have considered
    that all along the way the Defendant was aware that Hamas stands behind the
    terror attack. Accordingly, the things that were determined in the matter of
    **Mahajneh** are appropriate here:

    "The appellant committed the most severe security offenses, which

    could endanger human life and seriously harm public safety in Israel.

And executing terror attacks against Israelis must be clear and explicit.
A deterrent message must be sent with the required power against
any kind of cooperation in planning and executing murderous actions,
the fruit of insane motives, that are directed at every person in Israel"
(according to 3289/05 **Mahajneh v. the State of Israel** (Published in
Nevo, 10.10.2005).

26. On the side of the considerations to be lenient, we have taken into account that the indictment in the Defendant's case was amended, since at the end it was determined that he was not part of the inner circle of the perpetrators of the attack. The parties related to the evidentiary difficulties regarding proof of the Defendant's part, as one who was conversant with the details of the terror attack, and in the process, we even considered the waiver of the defense of its allegations. Among other things, detailed minor allegations that were raised in the context of the Defendant's retraction of guilt.

27. In summation, in the case before us, we have considered on the one hand the protected social values that have been harmed as a result of the offenses regarding which the Defendant has been convicted, at whose center is the value of the sanctity of life, as well as the ideological motive

5

CONFIDENTIAL                                              SHATSKY-JD01867-T

### Date: 09/09/2019  The Military Court in Judea          Case No.: 6752/16

that formed the basis of the Defendant's actions. We also have taken into account the fatal outcome to which the Defendant contributed with his actions, as well as the damages that were caused to the rest of those harmed by the offense. On the other hand, we have taken into consideration the relative part played by the Defendant, who was convicted of aiding and abetting the commission of these offenses, as we have detailed above, and the fact that he was not present at the terror attack that led to the death of the Deceased and the injuries to his family. We have further considered that we were interested in a plea agreement that was drawn up after the parties gave their opinion on the evidentiary difficulties in the case, and after the defense waived evidentiary allegations on the basis of which the evidence in the case began to be heard, due to the Defendant taking some kind of responsibility for his part in the offenses. After weighing all the above-stated circumstances, we are of the opinion that the agreement reached between the parties is a worthy one and we have therefore decided to honor it.

[Arabic language stamp:]
PLO
Detainees & Ex-Detainees
Department
11.13.2019
General Department for
Legal Affairs
Checked
Indictments

28. In view of the foregoing, we sentence the Defendant as follows:

   A.  16 and a half years' actual imprisonment, to be served starting from the day of his arrest.

   B.  Three years' suspended sentence that the Defendant will not serve unless within five years from the date of his release from prison he commits an offense of Intentionally causing death, including all its derivatives.

   C.  Compensation to the estate of the Deceased in the sum of NIS10,000 that will be paid via a voucher deposit that the Defendant deposited, whose number is 0018211230.

**The Sentence constitutes a reference to incarceration for Alaa Raed Saleh Zughayer, ID No. [Redacted] 8696**

**Right of appeal as a matter of law.**

Issued and announced today, 9.9.2019, in public, and in the presence of the parties involved.

[handwritten signature]    [handwritten signature]        [handwritten signature]

Judge                    Presiding Judge              Judge

6

CONFIDENTIAL                                    SHATSKY-JD01867-T

CONFIDENTIAL                                                         SHATSKY-JD01875-T

22063

| [English] State of Palestine | [Emblem of the Palestinian Authority] | [Arabic] State of Palestine |
|---|---|---|
| Ministry of Detainees & Ex-detainees Affairs | | Ministry of Detainees & Ex-detainees Affairs |
| Gen. Dep. Detainees & Ex-detainees | | Gen. Dep. Detainees & Ex-detainees |

## Personal Information of Prisoner / Ex-Prisoner

288017

Rasha

OK

| Form no.: | | Prisoner No.: according to regulations | | | | |
|---|---|---|---|---|---|---|
| Form issuance date: | 8/22/2016 | Ministry's administration/branch: | Hebron | | | |

## 1. Basic information concerning the prisoner/ex-prisoner:

[Round stamp: P.A. / Dep. Detainees & Ex-detainees / 3.7.2016 / Gen. Dep. Of Legal Affairs. Checked. Indictments.

| Doc. Type: | ☑ Palestinian | ☐ Jerusalem | ☐ Israeli | ☐ Passport | Other ( ) |
|---|---|---|---|---|---|
| Doc. No.: | Redacted | | 8 6 9 6 | | |

| Four-part name: | First name | Father's name | Grandfather's name | Family name |
|---|---|---|---|---|
| | Alaa | Raed | Saleh | Zughayer |

| DoB | Redacted /92 | Place of birth: | Hebron | |
|---|---|---|---|---|
| Gender: | ☑ Male   ☐ Female | Nationality: | Palestinian | |
| Religion: | Muslim | Mother's name: | Dina[*] | |
| Marital status: | ☑ Single | ☐ Married | ☐ Divorced | ☐ Widow |
| Education: | ☐ Illiterate | ☐ Elementary   ☐ High school | ☐ Diploma   ☑ University | ☐ Higher education |
| Specialty/Major | | | | |
| Organization: | | | | |
| Refugee status: | ☐ Registered refugee   ☐ Not a refugee | | | |
| Profession prior to arrest: | ☐ Public servant  ☐ Work No.: ( ) | | ☐ Other ( ) | |
| Work type: | ☐ Military  ☐ Civilian | | | |
| Permanent residence: | Country: Palestine | | Governorate: Hebron | |
| | Complex: Redacted | Neighborhood: | | |
| | Address: Redacted | | | |
| Landline Tel.: | | Fax No.: | | [Illegible] |
| Cellular Tel.: | Redacted | 2nd Cellular Tel.: | | |
| E-Mail: | | | | |
| Notes: | | | | |

25 – 10

1

CONFIDENTIAL                                                         SHATSKY-JD01875-T

CONFIDENTIAL                                                                        SHATSKY-JD01876-T

| [English] State of Palestine | [Emblem of the Palestinian Authority] | [Arabic] State of Palestine |
|---|---|---|
| Ministry of Detainees & Ex-detainees Affairs | | Ministry of Detainees & Ex-detainees Affairs |
| Gen. Dep. Detainees & Ex-detainees | | Gen. Dep. Detainees & Ex-detainees |

**3. Current Arrest Information:**

| Arrest date: | 7/5/2016 | | | Type of arrest: | ☐ Security | | ☐ Civilian |
|---|---|---|---|---|---|---|---|
| Arrested from: | ☐ Home  ☐ Crossing  ☐ Other | | | Current prison: | | | |
| Arrest status: | ☐ Detained | ☐ Sentenced | ☐ Administrative | | ☐ Other | | |
| In case of life sentence according to ICRC Certificate | Day | Month | Year | Expected release date according to verdict: | Day | Month | Year |
| | | | | | | | |
| Sentence date: | / | / | | Release date: | | | |
| Notes: | | | | | | | |

**4. Information concerning previous arrests:** Previous arrests: (Only those attested to by ICRC certificates)

| No. | Arrest type (security/civilian) | Arrest Date | Release date | Prison | Arrest period | | | Notes |
|---|---|---|---|---|---|---|---|---|
| | | | | | Day | Month | Year | |
| 1. | | | | | | | | |
| 2. | | | | | | | | |
| 3. | | | | | | | | |
| 4. | | | | | | | | |
| 5. | | | | | | | | |
| 6. | | | | | | | | |
| 7. | | | | | | | | |
| 8. | | | | | | | | |
| 9. | | | | | | | | |
| 10. | | | | | | | | |
| 11. | | | | | | | | |

**5. Health Condition (of the prisoner\ex-prisoner)**

| Do you suffer any illnesses? | ☐ Yes    ☐No | The illnesses: | |
|---|---|---|---|
| Date illness began: | /    / | | |
| Do you suffer from disability / handicap? | ☐ Yes    ☐No | Type of disability / handicap | ☐ Chronic   ☐ Temporary |
| Disability/handicap percentage | % | Disability attested to by a report: | ☐ Yes    ☐No |
| Medical report date: | | Issued by: | |
| Notes: | | | |

3

CONFIDENTIAL                                                                        SHATSKY-JD01876-T

CONFIDENTIAL                                                          SHATSKY-JD01877-T

| [English] State of Palestine | [Emblem of the Palestinian Authority] | [Arabic] State of Palestine |
|---|---|---|
| Ministry of Detainees & Ex-detainees Affairs | | Ministry of Detainees & Ex-detainees Affairs |
| Gen. Dep. Detainees & Ex-detainees | | Gen. Dep. Detainees & Ex-detainees |

**6. Information Concerning the Beneficiaries of the Prisoner/ex-Prisoner's Allowance:**

**A. First Beneficiary:**

| Name (First Beneficiary): | Alaa Raed Saleh Zughayer | | Relationship: | The prisoner himself |
|---|---|---|---|---|
| Document Type: | | | Doc. No.: | |
| Tel. No.: | | | Cellular Tel. No.: | |
| Governorate: | Hebron | | Complex: | Redacted |
| Bank: | Redacted | | Branch: | |
| Account No.: | Redacted | | Current account in shekels only | |
| In Case the Sum is Divided: | No.: | Percentage: | % | |

**B. Second Beneficiary (If Exists):**

| Name (First Beneficiary): | | | Relationship: | |
|---|---|---|---|---|
| Document Type: | | | Doc. No.: | |
| Tel. No.: | | | Cellular Tel. No.: | |
| Governorate: | | | Complex: | |
| Bank: | | | Branch: | |
| Account No.: | | | Current account in shekels only | |
| In Case the Sum is Divided: | No.: | Percentage: | % | |

| Applicant's Notes: | |
|---|---|
| Confirmation: | I the undersigned confirm and testify that all of the information provided in this application is correct and I take responsibility for it. |
| Applicant's Signature: | |

4

CONFIDENTIAL                                                          SHATSKY-JD01877-T

CONFIDENTIAL                                                    SHATSKY-JD01878-T

**7. For Official Use:**

| | |
|---|---|
| **Advisor/Employee's Name:** | Muhammad [illegible] |
| **Advisor/Employee's Notes:** | |

| **Date:** | 8/22/2016 | **Signature:** | [handwritten signature] |
|---|---|---|---|

| **Administration Head's Name:** | Ibrahim [illegible] | |
|---|---|---|
| **Administration Head's Notes:** | [handwritten signature] [illegible] | [Handwritten signature and round stamp: P.A. / Dep. Detainees & Ex-detainees / Hebron Administration |
| **Date:** | 8/29/2016 | **Stamp and Signature:** | |

**Attached Documents: Check (V) alongside attached documents (confirmation and approval of the Administration's head)**

| | | | |
|---|---|---|---|
| ☑ | Prisoner/Ex-prisoner's copy of ID | ☐ | ICRC certificates |
| ☑ | Indictment following arrest, after 1.1.2007 | ☐ | Verdict decision (if available) |
| ☑ | Copy of bank account card | ☐ | Copy of authorized marriage certificate |
| ☐ | Copies of children's birth certificates | ☐ | Addendum of additional wife/wives |
| ☐ | Copies of education certificates | ☐ | Original report for percentage of disability/handicap |
| ☐ | Other (specify) | | |

**8. Confirmation and Approval:**

| **1. Confirmation by Prisoners' Affairs** | ☐ I approve the confirmation of the Prisoner Form (per regulations and laws) | |
|---|---|---|
| **Name of authorized employee:** | | |
| **Date:** | **Stamp and signature:** | |
| | ☐ I do not approve the confirmation of the Prisoner Form | |
| **Reasons and causes:** | | |

| **2. Confirmation by Legal Affairs:** | ☐ I approve the confirmation of the Prisoner Form (per regulations and laws) | |
|---|---|---|
| **Name of authorized employee:** | | |
| **Date:** | **Stamp and signature:** | |
| | ☐ I do not approve the confirmation of the Prisoner Form | |
| **Reasons and causes:** | | |

5

CONFIDENTIAL                                                    SHATSKY-JD01878-T

CONFIDENTIAL                                              SHATSKY-JD01880-T

*[handwritten note in Arabic:] Alaa Raed Saleh Zughayer Abdel Nasser Al-Noubani*

*The Indictment . 16 August 2016*

## Israel              Defense                      Forces

**In the Military Court**      **Court File:**    **16/**

**Judea**                      **Prosecution File:   2629/16**

**Before a panel**             **Police File: 330558/16 (Ashkelon)**    *[handwritten note in Arabic:] [illegible word] to Wednesday. 16 August*

### In the case between

**The Military Prosecutor —**

#### The Plaintiff

**[handwritten in Arabic:]** *Alaa Raed Saleh Zughayer / Dura / Hebron*

- vs -

| The Military Court in Judea |
| --- |
| Received by: ____ Lital |
| _____ |
| On: 14 August 2016 |

**Alaa Raed Saleh Zughayer**

**ID No.** <sup>Redacted</sup>**8696, born** <sup>Redacted</sup> **1992, resident of Dura**

**Detained since 5 July 2016**

*[round stamp in Arabic:]*
*PLO*
*Department of Detainees and Ex-detainees*
*27 September 2016*
*General Department for Legal Affairs*
*Checked*
*Indictment*

#### The Defendant

# Indictment

**The abovenamed Defendant is hereby indicted for committing the following offenses:**

**First Count:**

**Nature of the Offense:** **Membership and activity in an unlawful association**, an offense pursuant to regulations 85(1)(a) of the Defense (Emergency) Regulations, 1945, and Section 199c of the Security Provisions Order [Consolidated Version] (Judea and Samaria) (No. 1651), 5770-2009.

**Details of the Offense:** The Defendant, within the Region, **during the period that began in 2013 and continued until the day of his arrest** or during a period thereabouts, was a member or acted as a member in an unlawful association, i.e.:

1. During 2013 the Defendant participated in a meeting where tens of operatives on behalf of the Islamic Bloc organization, which is an unlawful organization, attended. At the meeting, those present discussed the planning and organization of the upcoming elections.
2. In the course of the planning, tasks were distributed among the participants. The Defendant was asked to work at persuading students to vote for the Islamic Bloc, and he indeed did so.
3. In 2015 an Islamic Bloc operative, Shahim Qadi, approached the Defendant to request help in selling memory cards at a fair

**7/28/21**
j.b
**Salem 14**

organized by the Bloc. The Defendant brought ₪5,000 worth of merchandise from his business, and Abdel Qader sold it and paid the Defendant back for it.

4. During 2016, Ibrahim Salhub, an Islamic Bloc operative, approached the Defendant and asked him to give him merchandise for his business in order that it be sold via the Islamic Bloc, and the Defendant assented. However, Ibrahim was arrested before the Defendant brought the merchandise to him.

5. Also during 2016, the Defendant sold merchandise from his business to Muhammad Hmeidat, to the amount of ₪17,000, in order that he sell it later at the Islamic Bloc's fair in the context of Student Day at the Polytechnic University.

6. After the fair, Suhib Ali Shukri Jneidi (hereafter, **"Suhib Jneidi"**) came to the Defendant's business. Suhib Jneidi returned some of the merchandise to the Defendant and paid him consideration to the amount of ₪4,500. In addition, Suhib Jneidi told the Defendant that the Bloc owed him an additional ₪8,500.

CONFIDENTIAL

SHATSKY-JD01880-T

CONFIDENTIAL                                              SHATSKY-JD01881-T

*2) Alaa Zughayer*

7. Moreover, during 2016 Suhib Jneidi approached the Defendant and asked for his help in bringing election placards for the Bloc, containing pictures of the Bloc's operatives, for use as part of the election campaign at the university. The Defendant traveled to Ramallah and picked up the placards, which were used during the elections at the university in a presentation intended to persuade the students to vote for the Bloc.

8. By his actions as above, the Defendant was acting as a member of the Islamic Bloc, which is an unlawful association.

**Second Count:**

**Nature of the Offense: Intentional causation of death,** an offense pursuant to Sections 209(a) and 199c(b) of the Security Provisions Order [Consolidated Version] (Judea and Samaria) (No. 1651), 5770-2009.

**Details of the Offense:** The abovenamed Defendant, within the Region, intentionally caused the death of another person, i.e.:

1. Roughly two months before his arrest, Mohamed Jabara Ahmed Al-Faqih (hereafter, "**Faqih**") approached the defendant and requested his assistance in obtaining a video camera, Hamas headbands, Hamas flags, two pairs of army boots, and two army uniforms.

2. From the items requested, the Defendant understood that Faqih was planning to perpetrate a terror attack against Israeli targets, along with a partner, and that he intended to film his testament before perpetrating the terror attack.

3. The Defendant referred Faqih to the Defendant's brother Abdallah and suggested that he accompany him to a shop named Saafin. Faqih complied with the Defendant's advice, and together with Abdallah he went to the shop named Saafin. There, he purchased military boots and a military uniform.

4. Roughly three weeks before the terror attack, Faqih spoke with the Defendant and told him that he had been asked by his superiors to find a substitute who would serve in his stead, after he died, as perpetrator of a further terror attack. The Defendant suggested his friend Salim Muslim Yasser Mohamed Ahmed (hereinafter: "**Salim**"). But Faqih asked for a different able-bodied man.

5. Roughly a week before the terror attack, Faqih approached the defendant and told him that he was interested in purchasing a vehicle with which he could perpetrate the terror attack. Faqih asked the Defendant to join him for the purchase of the vehicle, and the Defendant assented.

[round stamp in Arabic:]
PLO
Department of Detainees and
Ex-detainees
27 September 2016
General Department for Legal
Affairs
Checked
Indictment

6. The Defendant set out in Faqih's vehicle, a Hyundai (**hereafter also "the Hyundai"**) which was carrying two Kalashnikov rifles and 4 full magazines of bullets, and the two of them made their way to the automobile showroom in Surif. There, they met a man and Faqih purchased an Opel (hereafter, "**the Opel**") from him. Then the Defendant and Faqih began the return trip to Dura.

7. While Faqih made his way back to Dura in the Hyundai, the Defendant had consented to drive the Opel back. However, knowing that the Opel would be used in perpetrating a terror attack, and fearing that he would be seen driving that vehicle and thus associated with the terror attack, he agreed to drive it only to the entrance to Dura. In Dura, the Defendant switched places with Faqih so that inside Dura, the Defendant was driving the Hyundai and Faqih was driving the Opel.

8. The Defendant parked the Opel near Faqih's home, and then Faqih drove the Defendant home in the Hyundai.

9. At or near the end of June, Faqih approached the Defendant and asked him to pay the remaining balance of **₪6,000** shekels from a loan that the Defendant had taken from Faqih. Faqih told the Defendant that he needed the money urgently because he was planning to undertake an action from which he might not return. Faqih asked that, in case of his death, the Defendant repay the balance of the debt to his brother Suhib. The Defendant assented. In light of that conversation, the Defendant understood that Faqih intended to perpetrate the terror attack soon.

CONFIDENTIAL

SHATSKY-JD01881-T

CONFIDENTIAL                                                SHATSKY-JD01882-T

*3) Alaa Zughayer*

10. Roughly a week before the terror attack, Faqih requested the Defendant's help in passing a message.

11. Faqih handed the Defendant a written note (hereafter, **"the Despatch")** and asked him to go to the Al-Kharas Mosque in Hebron and, having removed his shoes and placed them on the far left-hand shoe shelf, place the Despatch in his shoes for someone else to come retrieve. The Defendant assented to Faqih's request and took the Despatch from him.

12. The Defendant set out for the Mosque in accordance with Faqih's instructions, but he forgot to leave the Despatch where Faqih had instructed him to leave it. Upon hearing that, Faqih told the Defendant to return to the Mosque because there were people waiting for confirmation. The Defendant quickly made his way back to the Mosque.

13. The Defendant opened the Despatch that Faqih had handed to him and read its content: **"The target has been monitored. Friday of this week must be the day for the feat."**

14. The Defendant returned to the Mosque and followed Faqih's instructions. The Defendant waited for the man who was to retrieve the Despatch. At a certain point, someone did arrive and retrieve the Despatch, replacing it with another note.

15. The Defendant took up the note that the person had left, and he opened it. Written there was: "You'll be expected at the Al-Ahli Mosque in Hebron after afternoon prayers Tuesday ."

16. From what he had read in the Despatch, the Defendant understood that the terror attack was to be perpetrated afterward on Friday.

17. Later, the Defendant met with Faqih and passed the note to him. The latter read it and then tore it up and threw it from the window.

18. Some days before the perpetration of the terror attack, Faqih asked the Defendant to arrange an apartment for him where, dressed in a military uniform and flanked by Hamas flags, he could record his testament before perpetrating the terror attack. From Faqih's request, the Defendant understood that Faqih intended to perpetrate the terror attack in the name of the Hamas organization.

19. The Defendant agreed to arrange an apartment for Faqih, and to that end he approached his friend Muslim and asked him for a key to the student dormitories, since he knew that, at that time, the dormitories were unoccupied because the students were on vacation. Muslim passed the Defendant the keys to a student apartment at the dormitories.

20. On 29 July 2016 the Defendant invited Faqih to join him for a fast-breaking meal at Muslim's home. The two walked to Muslim's home, and at the end of the meal, the Defendant went outside with Faqih. As

[round stamp in Arabic:]
PLO
Department of Detainees and
Ex-detainees
27 September 2016
General Department for Legal
Affairs
Checked
Indictment

they conversed, Faqih told the Defendant that everything was ready, and he asked that the rest of the debt be repaid to his brother Suhib.

21. The Defendant returned to Muslim's apartment and told him that there would soon be a terror attack.

22. On 1 July 2016, Faqih set out together with Mohamed Abdel Majid Mohamed Al-Amayreh (hereafter, **Mohamed Al-Amayreh**") to perpetrate a shooting terror attack against Israeli targets, with the intent of murdering Israelis. In the past, the two had made a number of attempts but without success.

23. The two met at the Salah A-Din school, where they replaced the Palestinian license plates of Faqih's **Hyundai** with Israeli license plates, so that their vehicle would not arouse suspicion and so that the military would not stop them.

24. Subsequently, the two made their way toward Route 60, armed with the Kalashnikov rifles, and searched for an Israeli vehicle that they could target in the shooting terror attack.

25. At the same time, a grey Toyota with license plate number 6313732 (hereafter, "the Toyota" and/or "the Israeli Vehicle") was making its way along Route 60 from Otniel toward Jerusalem, carrying Rabbi Michael Mark of blessed memory, his wife, and two of their children.

CONFIDENTIAL

SHATSKY-JD01882-T

CONFIDENTIAL                                                     SHATSKY-JD01883-T

### 4) Alaa Zughayer

26. Mohamed Al-Amayreh and Faqih noticed the Toyota with its Israeli license plates as it traveled in front of them toward Jerusalem. The two drove after the Toyota for some minutes, and then Mohamed Al-Amayreh drew closer to the Toyota and accelerated.

27. At this point, Faqih took one of the Kalashnikov rifles they had with them in the vehicle, cocked it, and prepared it for firing.

28. Faqih asked Mohamed Al-Amayreh to catch up with the Israeli Vehicle, and accordingly, Mohamed Al-Amayreh accelerated and drew alongside the Israeli Vehicle while driving at its left in the opposite lane.

29. When they were close to the Israeli Vehicle, Faqih extended the weapon from the vehicle's window and aimed it toward the Israeli Vehicle.

30. When the two were only 2 meters away from the Israeli Vehicle, Faqih began massively firing in its direction, hitting the Israeli Vehicle with **about 25 bullets**, and the Israeli Vehicle overturned with its occupants inside.

31. After several seconds of constant fire, the two passed the Israeli Vehicle and began moving slightly away from it. At a distance of about 20 meters, Mohamed Al-Amayreh turned the car around, back in the direction of the Israeli Vehicle, noticing that the Israeli Vehicle had overturned.

[round stamp in Arabic:]
PLO
Department of Detainees and
Ex-detainees
27 September 2016
General Department for Legal
Affairs
Checked
Indictment

32. At that point, Faqih left the Hyundai and made his way toward the Israeli Vehicle, holding a Kalashnikov rifle, in order to continue firing at the occupants of the vehicle and ensure that they were dead.

33. Upon reaching the Israeli Vehicle, Faqih shot again at its passengers, but was obliged to halt upon instruction from Mohamed Al-Amayreh, who noticed that additional vehicles were approaching the place.

34. Faqih returned to the vehicle, and the two made their way back to Dura.

35. **By his deeds as described above, Faqih and Mohamed Al-Amayreh intentionally caused the death of the vehicle's driver, Michael Mark of blessed memory, who was struck in the body by five bullets and in the head by one,** and they brought injury to the vehicle's passengers.

36. During their drive back to Dura, Faqih told Mohamed Al-Amayreh that in the vehicle they had shot at, there were small children but he didn't manage to shoot them.

37. Moreover, Faqih told Mohamed Al-Amayreh of his intent to carry out additional shooting attacks at Israeli targets after being

designated a wanted man, and even told him where he could find him after his designation as such.

38. When the two reached the Salah A-Din school, they replaced the vehicle's license plates with its regular Palestinian license plates and dropped the Israeli license plates into a trash can.

39. Afterwards, the two took their leave from each other. Each of them was carrying one of the Kalashnikov rifles that they had been armed with during the attack.

40. On that same day, Faqih contacted the Defendant and asked him to go quickly to the Great Mosque of Dura. The Defendant assented and set out. As he was traveling, the Defendant heard a news report of the shooting terror attack and understood that Faqih had perpetrated the attack. However, the Defendant, because of a request from his father, was obliged to postpone his meeting with Mohamed.

41. Later, the Defendant met with Faqih. The Defendant entered Faqih's Hyundai and the two of them spoke about the terror attack. The Defendant asked about the vehicle that had served for the terror attack, and Faqih explained that he had chosen to perpetrate the attack from the Hyundai rather than from the Opel because the Hyundai was faster, and he further related that he had replaced the vehicle's license plates with Israeli license plates.

CONFIDENTIAL

SHATSKY-JD01883-T

CONFIDENTIAL                                                  SHATSKY-JD01884-T

### 5) Alaa Zughayer

42. In addition, Faqih informed the Defendant that he intended to hide in a building that was under construction, but the Defendant suggested that Faqih sleep in the student dormitory of the university, and the Faqih agreed.

43. As they traveled, the Defendant allowed Faqih to use his mobile phone and Faqih sent text messages from it to his wife and to another person named Yusuf Hamdan.

44. During their conversation, Faqih showed the Defendant a hole in the driver's door, caused by a stray bullet during the terror attack. Faqih requested that the Defendant repair the hole and deduct the cost of the repair from the balance of the debt. The Defendant assented to Mohamad's request.

45. The Defendant led Faqih to an apartment in the student dormitories and opened it with the key that Muslim had previously given him.

46. On that same day, Faqih sent a message to the Defendant asking him **to top up his phone card by ₪15 and the defendant did so.** In addition, the Defendant sent a message to Faqih asking him whether he wished the Defendant to see to food for him.

47. The next day, the Defendant met with Muslim and informed him that Faqih had perpetrated the shooting terror attack; and he asked Muslim to help him repair the vehicle that had served Faqih in the terror attack and been damaged by a stray bullet. Muslim assented.

48. Muslim took his father's vehicle, which was a Kia Sportage, and set out together with the Defendant to a building supplies shop located near Faqih's home. There, the two purchased sealing material, automotive paint, and quick-acting glue.

49. Next, the two walked to Faqih's home and they noticed the Hyundai. Then the Defendant suggested that they drive in the two vehicles to the university quarter in Hebron and make the repair there. Muslim assented to the suggestion.

50. The Defendant set out in Faqih's vehicle to the university quarter in Hebron, while Muslim drove there in his father's vehicle; and there they repaired Faqih's vehicle by means of the materials that they had purchased.

51. When the repair was finished, the Defendant returned Faqih's vehicle to his home while Muslim drove behind him in his father's vehicle; and after he parked the vehicle, Muslim picked the Defendant up and drove him home.

52. On that same day, the Defendant took Muslim's father's vehicle and made his way to the student dormitories. There, the Defendant collected Faqih — together with Faqih's possessions, including two

[round stamp in Arabic:]
PLO
Department of Detainees and
Ex-detainees
27 September 2016
General Department for Legal
Affairs
Checked
Indictment

satchels, military uniforms and a Kalashnikov — and drove him to his parents' home.

53. As they traveled, the Defendant updated Faqih with more messages that Yusuf Hamdan had sent for Faqih, and Faqih took the Defendant's phone and used it to send further messages.

54. After they reached his parents' house, Faqih got out of the car and the Defendant told him that on the same evening he would drive him back to Hebron. Faqih's brother Suhib came to the vehicle that the Defendant was driving, took Faqih's satchels and the Kalashnikov rifle from it, and transferred them to a Peugeot.

55. On or around 3 July 2016, the Defendant transferred a backpack via Omar Aida. In a phone conversation with Omar Aida, the Defendant asked that after his brother Abdullah Zughayer opened his business, the Defendant would pass the backpack to him. Later, the Defendant arrived, put a passport into the backpack, and put the backpack into a storage compartment in the shop.

56. By performing the abovementioned deeds, the Defendant was an accomplice in intentionally causing the death of Rabbi Michael Mark of blessed memory.

CONFIDENTIAL

SHATSKY-JD01884-T

CONFIDENTIAL                                            SHATSKY-JD01885-T

*6) Alaa Zughayer*

<u>**Third Count:**</u>

<u>**Nature of the Offense:**</u> Attempting to intentionally cause death, an offense pursuant to Sections 198, 209(a) and 199c(b) of the Security Provisions Order [Consolidated Version] (Judea and Samaria) (No. 1651), 5770-2009.

<u>**Details of the Offense:**</u> The aforementioned Defendant, in the Region, tried to intentionally cause the death of another person, i.e.: The said Defendant, at the time and period stated in the second count of the indictment, by performing as stated in the second count of the indictment, was an accessory to the attempt to intentionally cause the death of Chava Mark.

<u>**Fourth Count:**</u>

<u>**Nature of the Offense:**</u> **Attempting to intentionally cause death**, an offense pursuant to Sections 198, 209(a) and 199c(b) of the Security Provisions Order [Consolidated Version] (Judea and Samaria) (No. 1651), 5770-2009.

<u>**Details of the Offense:**</u> The said Defendant, in the Region, attempted to intentionally cause the death of another person, i.e.: The said Defendant, at the time and period stated in the second count of the indictment, by performing as stated in the second count of the indictment, was an accessory to the attempt to intentionally cause the death of Tehila Mark.

<u>**Fifth Count:**</u>

<u>**Nature of the Offense:**</u> Attempting to intentionally cause death, an offense pursuant to Sections 198, 209(a) and 199c(b) of the Security Provisions Order [Consolidated Version] (Judea and Samaria) (No. 1651), 5770-2009.

<u>**Details of the Offense:**</u> The said Defendant, in the Region, attempted to intentionally cause the death of another person, i.e.: The said Defendant, at the time and period stated in the second count of the indictment, by performing as stated in the second count of the indictment, was an accessory to the attempt to intentionally cause the death of Padia Mark.

<u>**Witnesses for the Prosecution:**</u>

1. Sergeant Major Yosef Mashiach, Personal ID No. [Redacted]7743, Ashkelon (taker of the Defendant's statements of 7 July 2016 and 27 July 2016).
2. Sergeant Major Eihab Halabi, Personal ID No. [Redacted]7743, Ashkelon (taker of the Defendant's statements of 19 July 2016 and 25 July 2016).
3. Senior Staff Sergeant Major Benny Gavriel , Personal ID No. [Redacted]2867, Hebron (preparer of a forensic investigation summary and photo board from 3 July 2016 (chain of exhibit).
4. Advanced Staff Sergeant Major Eli Barsheshet, Personal ID No. [Redacted]2193, Hebron (preparer of a forensic investigation summary and photo board from 3 July 2016 and 11 July 2016 (chain of exhibit).

5. Senior Staff Sergeant Major Malul Hillel, Personal ID No. <sup>Redacted</sup>7958, Hebron (preparer of an action report from 10 July 2016).

6. Inspector Yisrael Ben Chamo, Personal ID No. <sup>Redacted</sup>7034, Hebron (preparer of a visit report from 3 July 2016).

7. Superintendent Ofer Chelouche, ID no. <sup>Redac</sup>5572, Forensics.

8. Padia Mark (details in the prosecution file)

9. Ma'amun Hija (details in the prosecution file)

10. Jihad Hija (details in the prosecution file)

11. Aslam Abdel Hamid Bad (details in the prosecution file)

12. Mohamed Abdel Majid Mahed al-Ameira, ID No. <sup>Redacted</sup>1792.

13. Suhib Jabara Ahmad Faqih, ID No. <sup>Redacted</sup>6702 .

14. Mouad Khaled Ahmed Faqih, ID No. <sup>Redacted</sup>7122 .

15. Mohamed Yousuf Mohamed Barwish, ID No. <sup>Redacted</sup>6427 .

16. Taghrid Jabara Ahmed Faqih, ID No. <sup>Redacted</sup>3536 .

> [round stamp in Arabic:]
> PLO
> Department of Detainees and
> Ex-detainees
> 27 September 2016
> General Department for Legal
> Affairs
> Checked
> Indictment

CONFIDENTIAL

CONFIDENTIAL                                                              SHATSKY-JD01886-T

*Alaa Zughayer*

17. Expert opinion by Yair Dalber.
18. Expert opinion by Avi Kaufmann.
19. Expert opinion by Prof. Uzi Motero.

Exhibits:

20. Toyota vehicle, Exhibit No. 0018933T
21. 6 bullet fragments, Exhibit No. 0051649T
22. Bullet from the victim's head, No. 0273187T
23. 20 bullet fragments, Exhibit No. 0209155T
24. Kalashnikov rifle (serial no. 2108787), Exhibit No. 0510392J
25. Hyundai vehicle, Exhibit No. 0510395J.

> [round stamp in Arabic:]
> PLO
> Department of Detainees and
> Ex-detainees
> 27 September 2016
> General Department for Legal
> Affairs
> Checked
> Indictment

[signature]

1st Lieutenant Meital Reihani

Military Prosecutor

# Translator's Certification

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SHABTAI SCOTT SHATSKY, *et al.*, | |
| Plaintiffs, | Case No. 18-cv-12355 (MKV) |
| v. | |
| THE PALESTINE LIBERATION ORGANIZATION and THE PALESTINIAN AUTHORITY, | |
| Defendants. | |

## DECLARATION OF YANIV BERMAN

I, Yaniv Berman, declare pursuant to 28 U.S.C. § 1746, as follows:

1.      I am a professional translator with an M.A. degree in Middle Eastern Studies from the Hebrew University of Jerusalem (Israel).  I read Arabic, Hebrew, and English fluently, and I am qualified to translate from Arabic into English and from Hebrew into English.

2.      I certify that the attached documents are true and accurate translations of the Arabic and/or Hebrew originals with the corresponding Bates numbers.  The translations are labelled with Bates numbers that correspond to the original documents, with the addition of a "-T" at the end to indicate that it is a translation.

3.      To the extent that some of the information in the original documents was not clearly legible, I have translated such information into English to the best of my ability.  Such instances are marked with an asterisk ("[*]").

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated:  July 26, 2021

_____
Yaniv Berman

2

Original

CONFIDENTIAL

SHATSKY-JD01857



منظمة التحرير الفلسطينية

هيئة شؤون الأسرى والمحررين

الإدارة العامة للشؤون الإدارية

دائرة الأرشيــــــــــــف

**22063**     علاء رائد صالح زغير

ملاحظة هامة: الملف يحتوي على ملفين لأسيرين منفصلين

يُرجى الإنتباه لذلك تلاشياً للخلط فيما بينهما

CONFIDENTIAL

SHATSKY-JD01857

CONFIDENTIAL

SHATSKY-JD01858



**CICR**

## TO WHOM IT MAY CONCERN

159

22063

This attestation is valid only if the English and Arabic parts match each other

According to the information received from the Israeli Authorities, the International Committee of the Red Cross attests that:

Mr: **ALAA RAED SALEH ZGHAYER**

From: **HEBRON**                    ID NO: Redacted3696

Was arrested by the Israeli Authorities on (dd/mm/yyyy):    **05.07.2016**

He is to date: Awaiting Trial



**CICR**

الى من يهمه الأمر

هذه الشهادة سارية المفعول فقط في حالة تطابق بياناتها باللغتين العربية و الإنجليزية

استنادا الى المعلومات الواردة من السلطات الإسرائيلية، تشهد اللجنة الدولية للصليب الأحمر بأن:

السيد/ة الآنسة ــــ عــلاء رائد صالح زغير ـــ

من ـــ الخليل ـــ هوية رقم ٨٧٩٦ Redacted ــــ

كان/ت قد اعتقل/ت من قبل السلطات الإسرائيلية في يوم ٥ / شهر ٧ / سنة ٢٠١٦

و هو/هي في هذا التاريخ : ينتظر المحاكمة ✓ محكوم/ة ــــ اداري ـــ





CERTIFIED UPDATE
12 -10- 2017
International Committee
of the Red Cross

Date: **17.07.2016**
التاريخ

Place: **HEBRON/AH**
المكـان

ICRC Delegate
توقيع مندوب اللجنة

ILJ-895197
CONFIDENTIAL

SHATSKY-JD01858

CONFIDENTIAL                                                                                          SHATSKY-JD01859



159792

## TO WHOM IT MAY CONCERN

This attestation is valid only if the English and Arabic parts match each other

*22063*

According to the information received from the Israeli Authorities, the International Committee of the Red Cross attests that:

Mr:  **ALAA RAED SALEH ZGHAYER**

From:  *HEBRON*                          ID NO: Redacted8696

Was arrested by the Israeli Authorities on (dd/mm/yyyy):  **05.07.2016**

He is to date: **Awaiting Trial**



الى من يهمه الأمر

هذه الشهادة سارية المفعول فقط في حالة تطابق بياناتها بالغتين العربية و الإنجليزية

استنادا الى المعلومات الواردة من السلطات الإسرائيلية، تشهد اللجنة الدولية للصليب الأحمر بأن:

السيد/ة الآنسة _____ علاء رائد صالح زغير _____

من _____ الخليل _____ هوية رقم _____ ٨٦٩٦Redacted _____

كان/ت قد اعتقل/ت من قبل السلطات الإسرائيلية في يوم ____ ٥ ____ / شهر ____ ٧ ____ / سنة ٢.١٦

وهو/هي في هذا التاريخ : ينتظر المحاكمة ____✓____ محكوم/ة _____ اداري _____



Date: **17.07.2016**
التاريـخ

Place: **HEBRON/AH**
المكـان

ICRC Delegate
توقيع مندوب اللجنة

CONFIDENTIAL LJ-895197                                                                        SHATSKY-JD01859

CONFIDENTIAL

SHATSKY-JD01860

159792



## TO WHOM IT MAY CONCERN

**CICR**

This attestation is valid only if the English and Arabic parts match each other

According to the information received from the Israeli Authorities, the International Committee of the Red Cross attests that:

Mr:   **ALAA RAED SALEH ZGHAYER**

From:   **HEBRON**                                    ID NO: Redacted8696

Was arrested by the Israeli Authorities on (dd/mm/yyyy):   **05.07.2016**

He is to date: **Awaiting Trial**



**CICR**

<div dir="rtl">

الى من يهمه الأمر

هذه الشهادة سارية المفعول فقط في حالة تطابق بياناتها بالغتين العربية و الانجليزية

استنادا الى المعلومات الواردة من السلطات الإسرائيلية، تشهد اللجنة الدولية للصليب الأحمر بأن:

السيدة الأنسة ____ علــدى رائــد جمــاح زغيــر

من ____ الخليل ____ هوية رقم ٨٦٩٦ Redacted

كان/ت قد اعتقل/ت من قبل السلطات الإسرائيلية في يوم ٥ / شهر ٧ / سنة ٢٠١٦

وهو/هي في هذا التاريخ : ينتظر المحاكمة ____ محكوم/ة ____ اداري ____

</div>

**CERTIFIED UPDATE**

26-03-2018

ICRC International Committee of the Red Cross

Date: 17.07.2016
التاريخ

Place: HEBRON/AH
المكان

ICRC Delegate
توقيع مندوب اللجنة

CONFIDENTIAL ILJ-895197

SHATSKY-JD01860

CONFIDENTIAL                                                                    SHATSKY-JD01861



## TO WHOM IT MAY CONCERN



**This attestation is valid only if the English and Arabic parts match each other**

According to the information received from the Israeli Authorities, the International Committee of the Red Cross attests that:

Mr:  **ALAA RAED SALEH ZGHAYER**

From:  **HEBRON**                          ID NO: Redacted**8696**

Was arrested by the Israeli Authorities on (dd/mm/yyyy):        **05.07.2016**

He is to date: **Sentenced**

Length of sentence / administrative period: **16.5.29 Period in years, months, days**



<div dir="rtl">

إلى من يهمه الأمر

هذه الشهادة سارية المفعول فقط في حالة تطابق بياناتها بالغتين العربية و الإنجليزية

استناداً إلى المعلومات الواردة من السلطات الإسرائيلية، تشهد اللجنة الدولية للصليب الأحمر بأن:

السيد/ة الآنسة _____ علاء رائد صالح زغير _____

من ___ الخليل _____ هوية رقم ___ ١-٦-٩-٨ Redacted _____

كان/ت قد اعتقل/ت من قبل السلطات الإسرائيلية في يوم ___ ٥ ___ / شهر ___ ٧ ___ / سنة ٢٠١٦

وهو/هي في هذا التاريخ : ينتظر المحاكمة _____ محكوم/ة ✓ ____ اداري _____

محكوم/ة أو إداري لمدة ____ ستة عشر عاماً (١٦) و خمسة أشهر (٥) و تسعة وعشرون يوماً (٢٩)

</div>

**CERTIFIED UPDATE**

I C R C
**0 9 -10- 2019**
I C R C

International Committee
of the Red Cross

Date: **09.10.2019**
التاريخ

Place: **HEBRON/AH**
المكان

ILJ-895197

*Rutom Popell*

ICRC Delegate
توقيع مندوب اللجنة

CONFIDENTIAL                                                                    SHATSKY-JD01861

CONFIDENTIAL

SHATSKY-JD01862

צ ב א ה ה ג נ ה ל י ש ר א ל



בית המשפט הצבאי ביהודה                                   **תיק מס׳:16/6752**

בפני כב׳ האב״ד: סא״ל אתי אדר

בפני כב׳ השופט: רס״ן סבסטיאן אוטובסקי

בפני כב׳ השופטת: רס״ן לידור דרכמן

**התביעה הצבאית**

(באמצעות ב״כ סרן אביבית צמח)

**נ ג ד**

**הנאשם: עלאא    ראאד    צאלח    זגיר    Redacted8696 / שב״ס - נוכח**

(באמצעות ב״כ עו״ד לביב חביב – נוכח)

רמ״שית: רב״ט עדי פרץ

מתורגמן: רב״ט בני אברמוב

תאריך הדיון: 09/09/19

**מהלך דיון**

**בית המשפט מזהה את הנאשם.**

**הנאשם מצהיר כי מייצג אותו עו״ד לביב חביב .**

תוב״ץ : אין ראיות לעונש.

סנגור: אין ראיות לעונש. אני מציג לביהמ״ש את שובר הפיקדון על סך 10,000 ₪ שמספרו 0018211230 ששולם לטובת פיצויים שחלק מהההסדר.

תוב״ץ מסכמת : במסגרת הסדר הטיעון, אבקש להשית על הנאשם עונש מוסכם של 16 וחצי שנות מאסר לריצוי בפועל, מאסר מותנה לשיקול דעת ביהמ״ש וכן כפי שציין חברי פיצויים על סך 10,000₪ אשר הופקד סכום פיקדון עבורו. הנזקים להם עברו נזקי של הנאשם, הודאתו באשמה וחיסכון בזמן שיפוטי. עוד אתמנו לקחנו בחשבון בהסדר ובתיקונים קשיים ראייתיים לעניין שמדובר במי שאינו בפועל הראשוני של המבצעים. כמו כן לקחנו בחשבון ויותר של ההגנה על טענת ראייתיות משמעותיות לעניין חקירתו של הנאשם. משפחתו של מרק זיל נפגשה עם גורמי התביעה כאן בפרקליטות איו״ש והובהר להם כיכבי ההסדר ונערך עימם שיח על עניינו של הנאשם והם מודעים להסדר ומקבלים את הרכיבים שלו. ההסכמה לגבי הפיצויים הם שהם יהיו לטובת עיזבון המנוח.

סנגור מסכם : אני מבקש לכבד את ההסדר. ההגנה יתרה בתיק הזה על טענות הגנה כבדות משקל. בתיק היו בעיות ראייתיות הקשורות גם לגרסאות שחיו בתיק וגם לאופן חקירת הנאשם. בסופו של דבר הנאשם העדיף לקחת אחריות ולהודות בכתב אישום המתוקן בכך גם ה בעת חרטה על המעשים שעשו. נראה לנו שהנאשם בזמן אמת לא הבין את חומרת הדברים. אבקש כי המאסר המותנה יהיה הולם ביותר וקל ביותר לאור התקופה הארוכה בה אמור לשהות הנאשם במאסר בפועל.

הנאשם בדברו האחרון : אני מתחרט על מה שעשיתי. לא חשבתי שזאת תהיה המשמעות. סליחה.

CONFIDENTIAL

SHATSKY-JD01862

CONFIDENTIAL

SHATSKY-JD01863

תיק מס' : 6752/16                    בית המשפט הצבאי ביהודה                    תאריך : 09/09/19

בפני כב' האב"ד : סא"ל אתי אדר
בפני כב' השופט : רס"ן סבסטיאן אוסובסקי
בפני כב' השופט : רס"ן לידור דרכמן

**התביעה הצבאית**

(באמצעות ב"כ סרן אביבית צמח)

**נגד**

**הנאשם: עלאא ראאד צאלח זגיר** 8696 Redacted / שב"ס - נוכח

(באמצעות ב"כ עו"ד לביב חביב – נוכח)

**ג ז ר - ד י ן**

<u>כללי</u>

1. הנאשם, עלאא ראאד צאלח זגייר, הורשע על פי הודאתו בעבירה של סיוע לגרימת מוות בכוונה, לפי סעיפים 209(א) ו-199ה' לצו ובדבר הוראות ביטחון (נוסח משולב) התשס"ע- 2009 (להלן: "הצו") ובשלוש עבירות שעניינן סיוע לניסיון לגרימת מוות בכוונה, לפי סעיפים 198, 209(א) ו-199ה לצו.

2. הסדר טיעון זה, אשר נרקם בין הצדדים, הוצג בפנינו לאחר שאפשרנו לנאשם לחזור מכפירתו בכתב האישום בשלב פרשת התביעה. קודם לכן, שמענו מספר עדויות, בין היתר לעניין טענות זוטא אותן העלה הנאשם. נוכח החסות, הודה הנאשם בכתב אישום מתוקן המגולל את האירועים הקשורים לרציחתו של הרב מיכאל מרק ז"ל (להלן: "המנוח") ולפגיעתם של בני משפחתו – חווה מרק, תחילה מרק ופדיה מרק.

<u>עובדות כתב האישום</u>

3. על פי כתב האישום המתוקן, בו הודה הנאשם, ביום 1.7.16, יצאו שני מחבלים, מחמד גבארה אחמד אלפקיה (להלן: "**פקייה**") ו-מחמד עבד אל מגיד מחמד אלעמאיירה (להלן : **אלעמאיירה**") לבצע פיגוע ירי לעבר מטרות ישראליות.

4. השניים נסעו בכביש 60 ברכבו של פקייה, מסוג "**יונדאי**", עליו הרכיבו לוחיות זיהוי ישראליות, כשברשותם שני רובי קלצ'ניקוב. אז, הבחינו ברכב בו נהג המנוח אשר נסע לפניהם לכיוון ירושלים. אלעמאיירה, האיץ את מהירות רכב היונדאי ועקף את רכב המנוח על מנת לאפשר לפקייה להוציא אחד מרובי הקלצ'ניקוב דרך החלון ולירות לעבר הרכב הישראלי.

5. כשהשניים במרחק של כשני מטרים בלבד מרכבו של המנוח, החל פקייה בירי מאסיבי לעברו, אשר במסגרתו פגעו כ-25 **כדורים** ברכב המנוח והובילו להתהפכותו. אף לאחר שחלפו השניים

CONFIDENTIAL

SHATSKY-JD01863

CONFIDENTIAL

SHATSKY-JD01864

תיק מס': 6752/16     בית המשפט הצבאי ביהודה     תאריך: 09/09/19

את הרכב הישראלי, החליטו להסתובב חזרה וזאת במטרה להמשיך בירי לעבר נוסעי הרכב ולגרום את מותם. פקייה ירד מרכב היונדאי ועשה את דרכו לעבר הרכב הישראלי כשרובה הקלצ'ניקוב בידיו, ירה יריות נוספת לעבר יושבי רכב של המנוח, אולם נאלץ לחדול מאחר שכלי רכב נוספים התקרבו למקום.

6. כתוצאה מהירי **גרמו פקייה ואלעמיירה בכוונה למותו של מיכאל מרק ז"ל, נהג הרכב, אשר חמישה כדורים פגעו בגופו ואחד בראשו, וכן גרמו לפציעתם של יושבי הרכב – אשתו ושני ילדיו.**

7. הנאשם שלפנינו סייע לפקייה ואלעמיירה לבצע את זממם. מעשיו החלו כחודשיים עובר למעצרו והמשיכו אף לאחר ביצוע הפיגוע. בתמצית נציין שכחודשיים עובר למעצרו, פנה פקייה לנאשם בבקשה כי יעזור לו להשיג מצלמת וידאו, סרטי ראש של החמאס, דגלי חמאס, שני זוגות מגפי צבא ושתי חליפות צבאיות. הנאשם הפנה אותו לאחיו, עבדאללה, אשר ליווה את פקייה לחנות בה רכש מגפיים ומדים צבאיים. יצוין שכבר אז הבין הנאשם כי פקייה מתכנן לבצע פיגוע ביחד עם שותף נוסף.

8. כשלושה שבועות עובר לפיגוע, שוחחו פקייה והנאשם על מחלופיו של פקייה לאחר מותו, אשר יבצע פיגוע נוסף. הנאשם הציע את חברו, מסלם יאסר מחמד אחמד (להלן: "מסלם"), ואולם פקייה ביקש שאדם אחר ימונה כמחליפו.

9. כשבוע לפני הפיגוע, סייע הנאשם לפקייה ברכישת רכב מסוג "אופל", באמצעותו תכנן פקייה לבצע את הפיגוע. לבסוף, החליט פקייה שלא להשתמש ברכב זה אלא ברכב מסוג יונדאי, כמפורט לעיל.

10. בסוף חודש יוני ביקש פקייה שהנאשם ישלם לו את יתרת החוב בגין הלוואה שנטל ממנו בעבר, בסך 6,000 ₪, וציין בפניו כי אם ימות ישיב את הכסף לאחיו צחייא. מהדברים הללו התחזקה בליבו של הנאשם ההבנה כי בכוונתו של פקייה לבצע את הפיגוע בקרוב.

11. בנוסף, גם כשבוע לפני הפיגוע, נעתר הנאשם לבקשתו של פקייה להעביר עבורו אשגר לגורמים מטעם ארגון החמאס. הנאשם הכניס את האשגר בתוך דף עליון, אשר הונחת במדף נעליים במסגד אל-חרס שבחברון, בהתאם להנחיות שקיבל מפקייה. הנאשם פתח את האשגר וקרא את הכתוב בו: "בוצע מעקב אחרי המטרה הביצוע צריך לחיות ביום שישי בשבוע זה". הנאשם המתין עד להגעתו של פלוני, אשר אסף את האשגר ובמקומו הניח פתק אחר, שם נכתב מסר עבור פקייה, אותו גם קרא הנאשם: "רוצים לראות אותך ביום שלישי אחרי תפילת אחר הצהריים במסגד אל-אהלי בחברון". הנאשם העביר את האשגר לפקייה תוך הבנה שהפיגוע יתרחש ביום שישי הקרוב.

12. מספר ימים עובר לביצוע הפיגוע, ביקש פקייה מהנאשם שיארגן לו דירה כדי שיוכל לצלם בה את צוואתו, כשהוא לבוש במדים צבאיים ולצידו דגלי חמאס. הנאשם פנה לחברו מסלם וקיבל ממנו את מפתחות דירת המגורים במעונות האוניברסיטה שבחברון.

3

CONFIDENTIAL

SHATSKY-JD01864

CONFIDENTIAL

SHATSKY-JD01865

תאריך : 09/09/19              בית המשפט הצבאי ביהודה              תיק מס׳ : 6752/16

13. ביום 29.6.2016 הזמין הנאשם את פקייה להצטרף אליו לארוחת שבירת הצום בביתו של מסלם. במועד זה אמר פקייה לנאשם כי הכל מוכן וביקש כי את יתרת חובו ישלם לאחיו צהייב.

14. **לאחר הרצח** נפגש הנאשם עם פקייה והשניים שוחחו על אודות הפיגוע. פקייה עדכן את הנאשם, כי בכוונתו להסתתר בבניין הנמצא כעת בשלבי בנייה, אך הנאשם הציע לו ללון במעונות הסטודנטים של האוניברסיטה, והאחרון הסכים.

15. הנאשם אף הסכים לבקשות שונות של פקייה ובין היתר לעשות שימוש בטלפון הנייד שלו, לדאוג לתיקון חור שנגרם בדלת הנהג, כתוצאה מפליטת כדור במהלך הפיגוע, ולהטעין עבורו כרטיס טלפון. כן, הציע הנאשם לפקייה לספק לו מזון.

16. בהמשך, תיקן הנאשם את רכבו של פקייה בסיועו של מסלם. מאוחר יותר, אסף הנאשם את פקייה ממעונות הסטודנטים ביחד עם חפציו, בהם שני תיקים, מדים צבאיים ונשק קלצ׳ניקוב, והסיעו לבית הוריו. במהלך הנסיעה עדכן הנאשם את פקייה על הודעות נוספות שקיבל מאיש חמאס, ופקייה לקח את מכשיר חטולפון של הנאשם ובאמצעותו שלח הודעות נוספות. לאחר שהגיע לבית הורים, פקייה ירד מהאוטו, והנאשם אמר לו כי בערב יסיע חזרה לחברון. כמו כן, ביום 3.7.2016 העביר הנאשם תיק גב, שהונח בתא אחסון בתנות אחיו, ושאליו הוכנו דרכו.

17. עד כאן העובדות העולות מכתב האישום שבגינם הורשע הנאשם בסיועו לגרימת מוות בכוונה של **הרב מיכאל מרק ז״ל** וכן בסיועו לניסיון לגרום למותם של **חווה מרק, תהילה מרק ופדיה מרק.**

18. הצדדים הציגו לפניינו הסדר טיעון, במסגרתו ביקשו כי נשלח על הנאשם עונש של 16 שנות מאסר ומחצה לריצוי בפועל, לצד מאסר מותנה לשיקול דעת בית המשפט. זאת, בנוסף לפיצויים בסך 10,000 ש״ח שישולמו לטובת עזבון המנוח ושעבורם הופקד סכום כסף מתאים.

19. הצדדים נימקו את ההסדר בעברם הנקי של הנאשם, הודאתו באשמה והחיסכון בזמן שיפוטי. עוד צוין לפנינו כי הצדדים לקחו בחשבון את העובדה כי הנאשם אינו מצוי ב״מעגל הראשוני של המבצעים״. כן התחשבנו בקשיים ראייתיים משמעותיים, הנוגעים, בין היתר, לעניין מודעות הנאשם לפרטי תחרושת הפיגוע ולפעילותו של פקייה, ואשר הובילו לתיקון כתב האישום. בנוסף נטען, כי במסגרת ההסדר ויתרה התגנה על טענותיה לעניין קבילות הודאותיו של הנאשם בחקירותיו השונות. התביעה הוסיפה כי עדכנה את בני משפחתו המנוח, אשר חלקם נפגע במהלך הפיגוע, בפרטי הסדר הטיעון וכי ההסדר מקובל עליהם.

20. ב״דברו האחרון״, הביע הנאשם חרטה על מעשיו, מסר כי הוא מצטער עליהם ואף הוסיף ואמר כי לא הבין את גודל המעשים שבהם נטל חלק.

4

SHATSKY-JD01865

CONFIDENTIAL

SHATSKY-JD01866

| תאריך : 09/09/19 | בית המשפט הצבאי ביהודה | תיק מס׳ : 6752/16 |
|---|---|---|

**דיון והכרעה**

21. הנאשם הורשע בעבירות ביטחוניות חמורות – עבירה שעניינה סיוע לגרימת מוות בכוונה, לצד
סיוע לניסיונות לגרימת מוות בכוונה. אין צורך להכביר במילים בנוגע לחומרתם של מעשי
הנאשם, אשר בפועל חרצו את גורלה של משפחה שלמה והם חלק בלתי נפרד ממשרשרת האירועים
אשר הובילו לרציחתו של המנוח.

22. בעבירות האמורות ישנה פגיעה אנושה בערך קדושת החיים, ערך מקודש בכל חברה מתוקנת.
הנאשם במעשיו תרם לפגיעה משמעותית בערך האמור, כמו גם בזכות לשלמות הגוף ובסדר
הציבורי.

23. נסיבות ביצוע העבירות בענייננו מצביעות על חומרתן הרבה. הנאשם לקח חלק פעיל במעגל
שהוביל לרציחתו של המנוח ולפציעתם של בני משפחתו וסייע להתגשמות הפיגוע בכל שלביו,
החל מהבאת המדים וסמלי החמאס לידי אחד המרצחים, קניית רכב לצורך ביצועו (גם אם
בסופו של דבר החליט פקיר/ה להשתמש ברכב אחר), העברת מסרים בין פקיר/ה לבין גורמים
בחמאס, מציאת מקום מסתור עוד קודם להתרחשות הפיגוע וכלה בסיוע לאחר המעשה.

24. במסגרת זו העניק הנאשם סיוע משמעותי למבצעי הפיגוע. מדובר בסיוע בשלבים משמעותיים
ביותר, לאורך זמן, המצדיק החמרה בעונשה **(השוו : ע"פ 635/05 דעג'א נ' מדינת ישראל** (פורסם
בנבו, 26/11/07)).

25. עוד לקחנו בחשבון כי הפיגוע לו סייע הנאשם בוצע ממניע לאומני, אשר מטרתו לגרום לפגיעה
בישראלים ויהודים באשר הם. בהקשר זה, נתנו את דעתנו לכך שלאורך כל הדרך הנאשם היה
מודע כי ארגון החמאס עומד מאחורי הפיגוע. לעניין זה, יפים הדברים שנקבעו בעניין **מחאג'נה :**

> "המערער עבר עבירות ביטחוניות חמורות ביותר, שיש בהן כדי
> לסכן חיי אדם ולפגוע פגיעה עמוקה בשלומו של הציבור בישראל.
> המסר העונשי ביחס לעבירות שכרוך בהן קשר פלילי לסיוע בארגון
> וביצוע פיגועי טרור כנגד ישראלים, חייב להיות ברור ובהיר... יש
> להדגיש בעוצמה הנדרשת את מסר ההרתעה מפני כל סוג של
> שותפות בתכנון וביצוע של מעשי דמים, פרי מניעי טרור, המכוונים
> כלפי כל אדם בישראלי" **(ע"פ 3289/05 מחאג'נה נ' מדינת ישראל**
> (פורסם בנבו, 10.10.2005)).

26. בצד השיקולים לקולא, נתנו דעתנו לכך שכתב האישום בעניינו של הנאשם תוקן, כך שבסופו של
דבר נקבע כי הוא לא היה חלק מהמנגנון הפנימי של מבצעי העבירה. הצדדים התייחסו לקשיים
הראייתיים בדבר הוכחת חלקו של הנאשם כמי ששלל ניסה בפרט הפיגוע ובתוך כך, שקלנו אף את
ויתור ההגנה על טענותיו – בין היתר טענות זוטא מפורטות שהועלו במסגרת כפירתו של הנאשם
באשמה.

27. לסיכום, במקרה שלפנינו, נתנו דעתנו מחד גיסא לערכים החברתיים המוגנים שנפגעו כתוצאה
מהעבירות שבהן הורשע הנאשם, שבמרכזם ערך קדושת החיים, כמו גם למניע האידיאולוגי

CONFIDENTIAL

SHATSKY-JD01866

CONFIDENTIAL

SHATSKY-JD01867

תאריך: 09/09/19       בית המשפט הצבאי ביהודה       תיק מס': 6752/16

שעמד בבסיס מעשי הנאשם. עוד לקחנו בחשבון את התוצאה הקטלנית, לה תרם הנאשם במעשיו, לצד הנזקים שנגרמו לשאר נפגעי העבירה. מאידך גיסא, התחשבנו בחלקו היחסי של הנאשם אשר הורשע כמסייע בביצוע עבירות אלו, כפי שפירטנו לעיל, ובעובדה כי לא נכח בפיגוע שהוביל למות המנוח ולפציעתם של בני משפחתו. עוד נתנו דעתנו לכך שעניינינו בהסדר טיעון שנרקם לאחר שהצדדים נתנו את דעתם לקשיים הראייתיים בתיק ולאחר שהההגנה ויתרה על טענות ראייתיות שבגינן החלו להישמע ראיות בתיק. בכך יש משום נטילת אחריות של הנאשם על חלקו במעשה העבירה. לאחר ששקלנו את מכלול הנסיבות שפורטו לעיל, סברנו כי ההסדר שאליו הגיעו הצדדים ראוי ועל כן החלטנו לכבדו.

28.   נוכח האמור, אנו גוזרים על הנאשם את העונשים הבאים:

    א.   16 שנות מאסר ומחצה לריצוי בפועל מיום מעצרו.

    ב.   שלוש שנות מאסר על תנאי אותן לא ירצה הנאשם אלא אם בתוך חמש שנים מיום שחרורו ממאסר יעבור עבירה של גרימת מוות בכוונה, על נגזרותיה.

    ג.   פיצוי לעיזבון המנוח בסך של 10,000 ש"ח שישולם באמצעות שובר שהופקד הנאשם שמספרו 0018211230.

**גזר הדין מהווה אסמכתא לכליאה עבור עלאא ראאד צלאח זג'ייר ת.ז. 8696.**Redacted

**זכות ערעור כחוק.**

ניתן והודע היום, 9.9.2019, בפומבי ובמעמד הצדדים.

CONFIDENTIAL

SHATSKY-JD01867

CONFIDENTIAL

SHATSKY-JD01868



**CICR**

159792

## TO WHOM IT MAY CONCERN

This attestation is valid only if the English and Arabic parts match each other

According to the information received from the Israeli Authorities, the International Committee of the Red Cross attests that:

Mr:      **ALAA RAED SALEH ZGHAYER**

From:    **HEBRON**                    ID NO:  Redacted**8696**

Was arrested by the Israeli Authorities on (dd/mm/yyyy):      **05.07.2016**

He is to date: **Awaiting Trial**



**CICR**

الى من يهمه الأمر

هذه الشهادة سارية المفعول فقط في حالة تطابق بياناتها باللغتين العربية و الإنجليزية

استنادا الى المعلومات الواردة من السلطات الإسرائيلية، تشهد اللجنة الدولية للصليب الأحمر بأن:

السيد/ة الأنسة _____ علاء رائد صالح زغير _____ من __ الخليل ___ هوية رقم _____ Redacted ٨٦٩٦

كان/ت قد اعتقل/ت من قبل السلطات الإسرائيلية في يوم ___ ٥ __ / شهر ___ ٧ ___ / سنة ٢٠١٦

و هو/هي في هذا التاريخ : ينتظر المحاكمة _✓_ محكوم/ة _____ اداري _____

**CERTIFIED UPDATE**

I C R C   **26 -12- 2018**   I C R C
International Committee
of the Red Cross

Date: **17.07.2016**
التـاريـخ

Place: **HEBRON/AH**
المكـــان

ICRC Delegate
توقيع مندوب اللجنة

ILJ-895197

CONFIDENTIAL

SHATSKY-JD01868

CONFIDENTIAL

SHATSKY-JD01869



159732

CICR

## TO WHOM IT MAY CONCERN

22063

This attestation is valid only if the English and Arabic parts match each other

According to the information received from the Israeli Authorities, the International Committee of the Red Cross attests that:

Mr:   **ALAA RAED SALEH ZGHAYER**

From:   *HEBRON*                    ID NO: Redacted 8696

Was arrested by the Israeli Authorities on (dd/mm/yyyy):   **05.07.2016**

He is to date: **Awaiting Trial**



CICR

إلى من يهمه الأمر

هذه الشهادة سارية المفعول فقط في حالة تطابق بياناتها باللغتين العربية و الإنجليزية

استنادا إلى المعلومات الواردة من السلطات الإسرائيلية، تشهد اللجنة الدولية للصليب الأحمر بأن:

السيدة الآنسة علاء را ئد حبلح زغير

من الخليل                    هوية رقم Redacted ٨٦٩٦

كان/ت قد اعتقل/ت من قبل السلطات الإسرائيلية في يوم ٥ / شهر ٧ / سنة ٢.١٦

وهو/هي في هذا التاريخ : ينتظر المحاكمة ✓     محكوم/ة     اداري

**CERTIFIED UPDATE**

I C R C
2 4 -06- 2019
I C R C
International Committee
of the Red Cross

Date: 17.07.2016
التاريخ

Place: HEBRON/AH
المكان

ICRC Delegate
مندوب/مندوبة اللجنة

CONFIDENTIAL
ICV-895197                    SHATSKY-JD01869

22063

159792

CICR

## TO WHOM IT MAY CONCERN

This attestation is valid only if the English and Arabic parts match each other

According to the information received from the Israeli Authorities, the International Committee of the Red Cross attests that:

Mr: ALAA RAED SALEH ZGHAYER

From: *HEBRON* ID NO: Redacted8696

Was arrested by the Israeli Authorities on (dd/mm/yyyy): 05.07.2016

He is to date: Awaiting Trial

CICR

## الى من يهمه الأمر

هذه الشهادة سارية المفعول فقط في حالة تطابق بياناتها بالغتين العربية و الإنجليزية

استنادا الى المعلومات الواردة من السلطات الإسرائيلية, تشهد اللجنة الدولية للصليب الأحمر بأن:

السيد/ة الآنسة علاء رائد صالح زغير

من الخليل هوية رقم Redacted٨٦٩٦

كان/ت قد اعتقل/ت من قبل السلطات الإسرائيلية في يوم ٥ / شهر ٧ / سنة ٢٠١٦

وهو/هي في هذا التاريخ : ينتظر المحاكمة ✓ محكوم/ة ____ اداري ____

CERTIFIED UPDATE
ICRC 28-12-2016 ICRC
International Committee of the Red Cross

Date: 17.07.2016

التـــاريــخ

Place: HEBRON/AH

المكـــان

ICRC Delegate

توقيع مندوب اللجنة

IL-895197

CONFIDENTIAL

SHATSKY-JD01871

159792



CICR

## TO WHOM IT MAY CONCERN

This attestation is valid only if the English and Arabic parts match each other

According to the information received from the Israeli Authorities, the International Committee of the Red Cross attests that:

Mr: **ALAA RAED SALEH ZGHAYER**

From: **HEBRON**                    ID NO: Redacted 8696

Was arrested by the Israeli Authorities on (dd/mm/yyyy):     **05.07.2016**

He is to date: **Awaiting Trial**

CICR

إلى من يهمه الأمر

27 -03- 2017

ICRC
International Committee

هذه الشهادة سارية المفعول فقط في حالة تطابق بياناتها باللغتين العربية و الإنجليزية

استنادا الى المعلومات الواردة من السلطات الإسرائيلية، تشهد اللجنة الدولية للصليب الأحمر بأن:

السيد/ة الآنسة ــ علاء راند صالح زغير ـــــــــــ

من ـــ الخليل ـــــــــــ هوية رقم ٨ ٦ ٩ ٦ Redacted

كان/ت قد اعتقل/ت من قبل السلطات الإسرائيلية في يوم ٥ / شهر ٧ / سنة ٢.١٦

وهو/هي في هذا التاريخ : ينتظر المحاكمة ــ ✓ ــ محكوم/ة ــــــ اداري ــــــ

Date: **17.07.2016**

التــاريـخ

Place: **HEBRON/AH**

المكـــان

ICRC Delegate

توقيع مندوب اللجنة

CONFIDENTIAL
ILJ-895197                                                                 SHATSKY-JD01871

CONFIDENTIAL

SHATSKY-JD01872

159792



## TO WHOM IT MAY CONCERN

CICR

This attestation is valid only if the English and Arabic parts match each other

22063

According to the information received from the Israeli Authorities, the International Committee of the Red Cross attests that:

Mr:     ALAA RAED SALEH ZGHAYER

From:   *HEBRON*                          ID NO: Redacted3696

Was arrested by the Israeli Authorities on (dd/mm/yyyy):     **05.07.2016**

He is to date: **Awaiting Trial**



CICR

إلى من يهمه الأمر

هذه الشهادة سارية المفعول فقط في حالة تطابق بياناتها باللغتين العربية و الإنجليزية

استنادا الى المعلومات الواردة من السلطات الإسرائيلية, تشهد اللجنة الدولية للصليب الأحمر بأن:

السيد/ة الأنسة   علاء  راند  حماح  زغير

من   الخليل   هوية رقم   ٨٦٩٦   Redacted

كان/ت قد اعتقل/ت من قبل السلطات الإسرائيلية في يوم   ٥   /شهر   ٧   / سنة   ٢٠١٦

وهو/هي في هذا التاريخ : ينتظر المحاكمة   ✓   محكوم/ة   اداري

**CERTIFIED UPDATE**

ICRC  26 -06- 2018  ICRC
International Committee
of the Red Cross

Date: **17.07.2016**
التـاريـخ

Place: **HEBRON/AH**
المكــان

ICRC Delegate
توقيع مندوب اللجنة

CONFIDENTIAL ILJ-895197

SHATSKY-JD01872

CONFIDENTIAL

SHATSKY-JD01873





159792

## TO WHOM IT MAY CONCERN

CICR

This attestation is valid only if the English and Arabic parts match each other

According to the information received from the Israeli Authorities, the International Committee of the Red Cross attests that:

Mr:      ALAA RAED SALEH ZGHAYER

From:     HEBRON                                      ID NO: Redacted8696

Was arrested by the Israeli Authorities on (dd/mm/yyyy):      05.07.2016

He is to date: Awaiting Trial



CICR

إلى من يهمه الأمر

هذه الشهادة سارية المفعول فقط في حالة تطابق بياناتها باللغتين العربية و الإنجليزية

استنادا الى المعلومات الواردة من السلطات الإسرائيلية, تشهد اللجنة الدولية للصليب الأحمر بأن:

السيد/ة الآنسة ـ علاء رائد صالح زغير

من ـ الخليل ـ هوية رقم Redacted٨٦٩٦

كان/ت قد اعتقل/ت من قبل السلطات الإسرائيلية في يوم ٥ / ٧ / سنة ٢٠١٦

وهو/هي في هذا التاريخ : ينتظر المحاكمة ـ محكوم/ة ـ اداري ـ

Date: 17.07.2016
التـاريـخ

Place: HEBRON/AH
المكــان

ICRC Delegate
توقيع مندوب اللجنة

CONFIDENTIAL
ILJ-895197

SHATSKY-JD01873

CONFIDENTIAL

SHATSKY-JD01874





## TO WHOM IT MAY CONCERN

**CICR**

This attestation is valid only if the English and Arabic parts match each other

According to the information received from the Israeli Authorities, the International Committee of the Red Cross attests that:

Mr:     **ALAA RAED SALEH ZGHAYER**

From:   *HEBRON*                                    ID NO: Redacted8696

Was arrested by the Israeli Authorities on (dd/mm/yyyy):   **05.07.2016**

He is to date: **Awaiting Trial**



إلى من يهمه الأمر

هذه الشهادة سارية المفعول فقط في حالة تطابق بياناتها بالغتين العربية و الإنجليزية

استنادا الى المعلومات الواردة من السلطات الإسرائيلية، تشهد اللجنة الدولية للصليب الأحمر بأن:

السيد/ة الآنسة   علاء راند الله صالح زغير

من   الخليل   هوية رقم   ٨٦٩٦Redacted

كان/ت قد اعتقل/ت من قبل السلطات الإسرائيلية في يوم   ٥ / شهر   ٧ / سنة   ٢.١٦

وهو/هي في هذا التاريخ : ينتظر المحاكمة   ✓   محكوم/ة   اداري

CERTIFIED UPDATE
25 -07- 2017
International Committee
of the Red Cross

Date: 17.07.2016
التـاريــخ

Place: HEBRON/AH
المكــان

ICRC Delegate
توقيع مندوب اللجنة

CONFIDENTIALILJ-895197                                                                 SHATSKY-JD01874

CONFIDENTIAL

SHATSKY-JD01875



CONFIDENTIAL

SHATSKY-JD01876



STATE OF PA...

...
G-9 ... Detainees & Ex-detainees

وزارة شؤون الأسرى والمحررين
الإدارة العامة لشؤون الأسرى والمحررين

CONFIDENTIAL

SHATSKY-JD01876

CONFIDENTIAL

SHATSKY-JD01877



الإدارة العامة لشؤون الأسرى والمحررين

Gen Dep. Detainees & Ex-detainees

٤- بيانات المستفيدين من راتب الأسير/الأسير المحرر:

المستفيد الأول:

| | صلة القرابة: | | الاسم: ( المستفيد الأول) |
| | رقم الولادة: | | نوع الوثيقة: |
| | رقم الهاتف النقال: | | رقم الهاتف: |
| Redacted | التجمع: | | المحافظة: |
| | الفرع: | Redacted | البنك: |
| الحساب جاري شيكل فقط | | Redacted | رقم الحساب: |
| % | نسبة: | ربما: | في حالة تجزئة المبلغ: |

المستفيد الثاني ( إن وجد):

| | صلة القرابة: | | الاسم: ( المستفيد الثاني) |
| | رقم الولادة: | | نوع الوثيقة: |
| | رقم الهاتف النقال: | | رقم الهاتف: |
| | التجمع: | | المحافظة: |
| | الفرع: | | البنك: |
| الحساب جاري شيكل فقط | | | رقم الحساب: |
| % | نسبة: | ربما: | في حالة تجزئة المبلغ: |

| | ملاحظات مقدم الطلب: |
| أنا الموقع أدناه أقر وأشهد بأن كافة المعلومات الواردة في الطلب صحيحة وأتحمل مسؤوليتها. | الإقرار: |
| | توقيع مقدم الطلب: |

٤

CONFIDENTIAL

SHATSKY-JD01878

STATE OF PALESTINE

دولة فلسطين
وزارة شؤون الأسرى والمحررين
الإدارة العامة لشؤون الأسرى والمحررين

٧. الاتصال الرسمي:
م. المرشد/الموظف:
ملاحظات المرشد/الموظف:
التاريخ:
اسم مدير المديرية:
ملاحظات مدير المديرية:
التاريخ: ٢٠٠٨/٦/١

المرفقات المطلوبة: ضع إشارة بجانب المطلوبات المرفقة (اعتماد وحدارة عليه إجباري)

| | | | |
|---|---|---|---|
| ☑ | شهادات الصاليب الأحمر | ☑ | صورة فردية للأخ / الأمور |
| ☐ | قرار حكم (إن وجد) | ☑ | لائحة الاتهام من اعتباره ٢٠٠٧/٠١ |
| ☐ | صورة عقد الزواج | ☐ | صورة بطاقة للحساب البنكي |
| ☑ | ملحق إضافية زوجة/زوجات | ☐ | صور شهادات الميلاد للأبناء |
| ☐ | تقرير لجنة العجز والإعاقة الصحية | ☐ | صورة عن الميدانيات العليا |
| | | ☐ | أخرى (عدد) |

٨. الاعتماد والمصادقة:
اسم الموظف المعتمد:
التاريخ:
المبررات والأسباب:

☑ أسافق على اعتماد استمارة الأسير (مطابقة للأنظمة والقوانين)

الختم والتوقيع /  /

☐ ٢ أسافق على اعتماد استمارة الأسير

☐ أسافق على اعتماد استمارة الأسير (مطابقة للأنظمة والقوانين)

اسم الموظف المعتمد:
التاريخ:

الختم والتوقيع /  /

☐ لا أسافق على اعتماد استمارة الأسير

المبررات والأسباب:

5

CONFIDENTIAL                                                SHATSKY-JD01879



159792

## TO WHOM IT MAY CONCERN

CICR

This attestation is valid only if the English and Arabic parts match each other

According to the information received from the Israeli Authorities, the International Committee of the Red Cross attests that:

Mr:   **ALAA RAED SALEH ZGHAYER**

From:   **HEBRON**                          ID NO: Redacted**8696**

Was arrested by the Israeli Authorities on (dd/mm/yyyy):   **05.07.2016**

He is to date: **Awaiting Trial**



CICR

<div dir="rtl">

إلى من يهمه الأمر

هذه الشهادة سارية المفعول فقط في حالة تطابق بياناتها باللغتين العربية و الإنجليزية

استنادا إلى المعلومات الواردة من السلطات الإسرائيلية تشهد اللجنة الدولية للصليب الأحمر بأن:

السيد/ة الآنسة  علاء راند حمايل زغير

من  الخليل  هوية رقم  ٨٦٩ Redacted

كان/ت قد اعتقل/ت من قبل السلطات الإسرائيلية في يوم  ٥ / شهر  ٧ / سنة ٢٠١٦

وهو/هي في هذا التاريخ : ينتظر المحاكمة  محكوم/ة  اداري

</div>

CERTIFIED UPDATE
17 -07- 2016
ICRC International Committee
of the Red Cross

Date: **17.07.2016**
التـاريـخ

Place: **HEBRON/AH**
المكــان

ICRC Delegate
توقيع مندوب اللجنة

CONFIDENTIAL 895197                                    SHATSKY-JD01879

CONFIDENTIAL

SHATSKY-JD01880

علاء زائد صلاح زعير / ع.ب. عبد للناصر الشوبكي
رئيسة أركان / ١٦ - ٨ - ٩٦

| צבא | הגנה | לישראל |

| בית | המשפט | הצבאי |
| בפני | ה | ו | ד | ה | תרכב |

תיק ביהמ"ש : 16/
תיק תביעה: 2629/16
תיק פ.א.: 330558/16 (אשקלון)

**במשפט שבין**

سعيد داود صلاح نشيد / عبد اللطيف

התובע הצבאי —

-נגד-

עלאא ראאד צלאח זעיר
ת.ז. 8696Redacted ילוד Redacted1992, תושבת דורא
עצור מיום 05/07/16

החאשים
בימ"ש הצבאי יהודה
נתקבל ע"י
בתאריך 11/8/16

תנאשם

## כתב-אישום

**הנאשם תנ"ל מואשם בזאת בביצוע העבירות הבאות:**

**פרט אישום ראשון:**

**מהות העבירה:** חברות ופעילות בהתאחדות בלתי מותרת, עבירה לפי תקנות 85(1)(א) לתקנות תחגנה (שעת חירום) 1945 וסעיף 199 לצו בדבר הוראות ביטחון [נוסח משולב] (יהודה והשומרון) (מס' 1651), תשע"ע-2009.

**פרטי העבירה:** הנאשם, באזור, **בתקופה שתחילתה בשנת 2013 ועד ליום** מעצרו או בתקופה הסמוכה לכך, היה חבר או פעל כחבר בהתאחדות בלתי מותרת, דהיינו:

1. במהלך שנת 2013 השתתף הנאשם באסיפה בה נכחו עשרות פעילים מטעם ארגון הכותלה האסלאמית, שהינה התאחדות בלתי מותרת, במהלכה דנו הנוכחים בתכנון הבחירות הקרובות וארגונן.

2. במסגרת תכנון הבחירות חילקו תפקידים בין המשתתפים והנאשם התבקש לפעול לשכנוע סטודנטים להצביע עבור ארגון הכותלה האסלאמית ואכן עשה זאת.

3. בשנת 2015 פנה לנאשם פעיל מטעם הכותלה האסלאמית, שהאין קאדי, בבקשה לסיוע במכירת כרטיסי זיכרון ביריד אשר ארגן ע"י הכותלה הנאשם הבא מעסקים סחורה בסך 5,000 ₪ וע"יא קאדר מכר אותה ושלם לנאשם תמורתה.

4. במהלך שנת 2016 פנה אבראהים סלהוב, פעיל חבותלה האסלאמית, לנאשם וביקש ממנו כי ייזון לו סחורה מעסקים לצורך מכירתה באמצעות ארגון הכותלה האסלאמית, והנאשם הסכים. אולם, אברחים נעצר בטרם העביר הנאשם את הסחורה לידיו.

5. כמו כן, במהלך 2016 מכר חנאשם למחמד חמדיאת סחורה מעסקו, בסך של 17,000 ₪, וזאת כדי שיוכל למכור אותה בהמשך ביריד של הכותלה האסלאמית, וזאת בטיטנת יום הסטודנט באוניברסיטת פוליטכניק.

6. לאחר חיריד, הגיע צחייב עלי שוכרי גינידי (לחלן: "צהייב ג'נידי") לעסקו של הנאשם. צחייב גינידי השיב חלק מחסחורה האמורה ושילם כו תמורה בסך של 4,500 ₪. כמו כן, הודיע צהייב גינידי לנאשם, כי ארגון הכותלה חייב לו כסף נוסף בסך של 8,500 ₪.

SHATSKY-JD01880

CONFIDENTIAL

SHATSKY-JD01881

/08/2016   11:05   025887810                                      PAGE   21/31

*(2) עמוד נוסף*

7. בנוסף, במהלך שנת 2016 פנה צהייב גינידי לנאשם וביקש את עזרתו בהבאת
כרוזי בחירות מטעם ארגון הכותלה, בהם תמונות של פעילי הכותלה, שניתן
יהא לעשות בהם שימוש במסגרת הבחירות באוניברסיטה, כחלק ממסע
הבחירות.  הנאשם נסע לרמאללה ואסף את השלטים אשר שימשו במהלך
הבחירות באוניברסיטה על מנת לשכנע את הסטודנטים להצביע לכותלה.

8. בעשותו את האמור לעיל, פעל הנאשם כחבר בארגון הכותלה האסלאמית,
שחינו התאהדות בלתי מותרת.

**פרט אישום שני :**

**מהות העבירה :** גרימת מוות בכוונה, עבירה לפי סעיף 209(א) וסעיף 199(ב) לצו בדבר הוראות
ביטחון [נוסח משולב] (יהודה ושומרון) (מסי 1651), התשנ"ט-2009.

**פרטי העבירה :** הנאשם הנ"ל, באזור, גרם בכוונה למותו של אחר, דהיינו :

1. כחודשיים עובר למעצרו, פנה מחמד גבארה אחמד אלפקיה
(להלן : "פקייה") לנאשם בבקשה כי יעזור לו להשיג מעלמו וידאו, סרטי
ראש של חמאמס, דגלי חמאמס, שני זוגות מגפי צבא ושתי חליפות צבאיות.

2. נוכח הדברים שביקש, חבין הנאשם כי פקייה מתכנן לבצע פיגוע ניהד עם
שותף נוסף, נגד מטרות ישראליות, וכי בכוונתו לצלם את עצואתו בטרם
ביצוע הפיגוע.

3. הנאשם הפנה את פקייה לאחיו של הנאשם, עבדאללה, וחציע לו ללכת עימו
לחנות בשם סעאפין. פקייה עשה כעצת הנאשם, וביחד עם עבדאללה הלך
לחנות סעאפין, שם רכש מגפיים ומדים צבאיים.

4. כשלושה שבועות עובר למעצר, פקייה שוחח עם הנאשם ואמר לו, כי הוא
נתבקש על ידי האחראים עליו למצוא מחליף, שיחליף אותו לאחר מותו,
בביצוע פיגוע נוסף. הנאשם חשב להצעיע את חבר מסלם יאסר מחמד אחמ ד
(להלן : "מסלם"), ואולם פקייה ביקש בחור אחר.

5. בשבוע לפני הפיגוע, פנה פקייה לנאשם וסיפר לו כי הוא מעוניין לקחת וכ ב
באמצעותו יוכל לבצע את הפיגוע. פקייה ביקש מהנאשם לחצטרף אליו
לקניית הרכב והנאשם נענה בחיוב.

6. הנאשם יצא ברכבו של פקייה, מסוג יונדאי (להלן גם: **"רכב היונדאי")**,
כשברכב שני רובי קלצ'ניקוב ו-4 מחסניות מלאות בכדורים, והשניים עשו
את דרכם לאולם תצוגת כלי רכב בצוריף, שם פגשו בבחור רכש פקייה
רכב מסוג יאופולי (להלן : **"רכב האופלי")**. לאחר מכן חחלו הנאשם ופקיידה
את דרכם חזרה לדורא.

7. בעוד פקייה עושה את דרכו חזרה לדורא ברכב היונדאי, הסכים הנאשם
להסיע חזרה את רכב האופל. אולם, מאחר שידע כי רכב האופל ישמ ש
לביצוע פיגוע ומחשש כי יראו אותו נוהג ברכב זה ויקשרו אותו לפיגוע,
חסכים להסיע עד לכניסה לדורא ובדורא החתחלף הנאשם עם פקייה, ך ד
שבדרורא נהג הנאשם ברכב היונדאי ופקייה נהג ברכב האופל.

8. הנאשם חנה את רכב האופל בסמוך לביתו של פקייה ולאחר מכן חסיע
פקייה את הנאשם ברכב היונדאי חזרה לביתו.

9. בסוף חודש יוני או במועד הסמוך לכך, פנה פקייה לנאשם וביקש ממנו כי
ישלם לו את יתרת חובו על סך 6,000 ש, בעקבות חלוואה אותה נטל
הנאשם מפקייה. פקייה ציין בפני הנאשם, כי הוא צריך את הכסף בדחיפות
מכיוון שהוא מתכנן לעשות דבר שממנו ייתכן שלא יחזור. פקייה ביש
מהנאשם, כי במידה ויחזור יחזיר הנאשם את יתרת חוב לאחיו צחייב
והנאשם הסכים. נוכח דברים אלו, חבין הנאשם כי בכוונתו של פקייה לנב ע
את הפיגוע בקרוב.

CONFIDENTIAL

SHATSKY-JD01881

CONFIDENTIAL

SHATSKY-JD01882

‏(13) עמ׳ ‎?

‏10. כשבוע עובר לפיגוע, ביקש פקייה את עזרתו של הנאשם בהעברת מסר.

‏11. פקייה העביר לידיו של חנאשם פתק (להלן: "אשגר") וביקש ממנו כי יגש
‏למוסד אל-חורס שבחברון, ולאחר שיחלוף לאט נעליו ויניחם במדף חנעליים
‏האחרון מצד שמאל, יניח את האשגר בעליו ואחר יניע ויאסף. הנאשם
‏נענה בחיוב לבקשתו של פקייה ולקח ממנו את האשגר.

‏12. הנאשם יצא למסגד, כהתאם להנחייתו של פקייה, ואולם שכח לחניח את
‏האשגר במקום שבו הורה לו פקייה. משׁשׁמע זאת פקייה, הורה לנאשם
‏לגשת למסגד בשנית, מאחר שישׁנם אנשים המחכים לאשגר. הנאשם עשה
‏את דרכו במהירות חזרה למסגד.

‏13. הנאשם פתח את האשגר שהעביר לו פקייה וקרא את הכתוב בו :

‏*"בוצע מעקב אחרי חמטרה חביצוע צריך לחיות ביום שישׁי בשבוע זה".*

‏14. הנאשם ניגש למסגד בשנית ופעל בחחׁאם לחדרכותו של פקייה. הנאשם
‏המתין לבחור שיאסוף את האשגר. בשלב מסוים, הגיע פלוני ואסף את
‏האשגר ובמקומו חניח פתק אחר.

‏15. הנאשם נטל את הפתק אשר חניח פלוני, פתח אותו וגׁן היה כתוב *"רוצים
‏לראות אותך ביום שלישׁי אחרי תפילת אחר הצהריים במסגד אל-אחלי
‏בחברון"*

‏16. מקריאת האשנרים, חבין הנאשם כי הפיגוע אמור להתובצע ביום שישׁי
‏לאחר מכן.

‏17. מאוחר יותר נפגש הנאשם עם פקייה והעביר לו את חפתק, וזה קרא אותן
‏ולאחר מכן קרעו ותשליכו דרך חחלון.

‏18. מספר ימים עובר לביצוע הפיגוע, ביקש פקייה מהנאשם שיארגן לו דירה
‏כדי שׁיוכל לצלם בה את צוואתו כשהוא לבוש במדים צבאיים ולעׁגׁדׁרׁ דגלי
‏חמאס, וזאת בטרם יצבע את הפיגוע. נוכח בקשתו של פקייה, חבין הנאשם
‏כי הפקייה מתכנן לבצע את הפיגוע בשם ארגון החמאס.

‏19. הנאשם חסכים לארגן לפקייה דירה, ולשם כך פנה לחברו מסלם וביקש
‏ממנו מפתח למעונות האוניברסיטה, מאחר שׁידע כי המעונות יחיו ריקים
‏מאנשים נוכח חופשׁת חסטודנטים אותה עת. מסלם מסר לנאשם את
‏מפתחות דירת המגורים במעונות.

‏20. ביום 29/07/16 הזמין הנאשם את פקייה להצטרף אליו לארוחת שבירת
‏חצום בביתו של מסלם. השניים הלכו לביתו של מסלם ונתנו הארוחה יצא
‏הנאשם חחוצה ביחד עם פקייה. בשיחתם אמר פקייה לנאשם כי הכל מוכן
‏וביקש כי את יתרת חובו ישלם לו לאחיו בהציב.

‏21. הנאשם חזר לדירתו של מסלם וחודיע לו כי בקרוב יחיה פיגוע.

‏22. ביום 01/07/16, יצא פקייה ביחד עם מחמד עבד אל מגׁיד מחמד
‏אלעמאירה (להלן : "*מחמד אלעמאאירה*") לבצע פיגוע ירי לעבר מסׁתׁרׁת
‏ישראלית, וזאת במטרה לרצוח ישראלים, לאחר שחשניים ביצעו מספר
‏ניסיונות בעבר, אשר לא צלח.

‏23. השניים נפגשו בבית חספר צלאח אלדׁין, שׁם חחליפו את לוחיות חזיהוׁי
‏הפלסׁטיניות של רכבו של פקייה, מסוג *"יונדאי"*, ללוחיות ישראליות,
‏וזאת כדי שׁרכבם לא יעורר חשד וכדי שהצבא לא יעצרם.

‏24. לאחר מכן, עשו השניים את דרכם לעבר ציר 60, כשׁבשׁומׁתׁם שׁני רובי
‏קלצׁניקוב, ותרו אחר רכב ישׁראלי, לעׁבׁרׁו יוכלו לבצע את פיגוע חירי.

‏25. אותח עת, עשה שׁה דרכו על ציר 60 רכב מׁפׁר מסוג *"טויוטח"*, בעל לוחית
‏זיהוׁי שׁמׁסׁפׁרׁה 6313732, מכיוון עתׁניאל לכיוון ירושלים, ובו חרב מיכאל
‏מרק ז"ל, אשׁתו ושׁניים מילדיחם (להלן : *"רכב הטויוטח"*) ו/או *"חרבׁ
‏הישׁראלי".*

CONFIDENTIAL

SHATSKY-JD01882

CONFIDENTIAL

SHATSKY-JD01883

/08/2016   11:05      025887810                                    PAGE   22/3.

(۴۱) عسد بنر

26. מחמד אלעמאיירה ופקייה הבחינו ברכב הטויוטה, בעל לוחיות הזיהוי
הישראליות, אשר נסע לפניהם לכיוון ירושלים. השניים נסעו אחר רכב
הטויוטה במשך מספר דקות. מחמד אלעמאיירה התקרב לרכב הטויוטה
והאיץ את מהירותו.

27. בשלב זה, נטל פקייה את אחד מרובי הקלצ'ניקוב אשר נשאו עימם ברכב,
דרך אותו והכינו לירי.

28. פקייה ביקש ממחמד אלעמאיירה לעקוף את הרכב הישראלי, ומשכך,
מחמד אלעמאיירה האיץ את מהירותו ועקף את הרכב הישראלי, מצידו
השמאלי, תוך כדי שהוא נוסע בנתיב הנגדי.

29. משהגיעו בסמוך לרכב הישראלי, הוציא פקייה את הנשק מחלון הרכב
וכיוונו לעבר הרכב הישראלי,

30. כשהשניים במרחק של כ-2 מטר בלבד מהרכב הישראלי, החל פקייה בירי
מאסיבי לעברו, אשר במסגרתו פגעו ברכב הישראלי ב-25 כדורים והרכב
הישראלי התהפך, על יושביו.

31. כעבור מספר שניות של ירי רצוף, חלפו השניים את הרכב הישראלי והחלו
מתרחקים ממנו במקצת. במרחק של כ-20 מטר הסתובב מחמד
אלעמאיירה עם הרכב חזרה לכיוון הרכב הישראלי, תוך שהוא מבחין, כי
רכב הישראלי התהפך.

32. או אז, ירד פקייה מרכב היונדאי ועשה את דרכו לעבר הרכב הישראלי
כשברובה הקלצ'ניקוב בידיו, ואת במטרה להמשיך בירי לעבר נוסעי הרכב
ולוודא את מותם.

33. בהגיעו לרכב הישראלי, ירה פקייה ירייה נוספת לעבר יושביו, אולם, נאלץ
לחדול בהוראות מחמד אלעמאיירה, אשר הבחין כי כלי רכב נוספים
מתקרבים למקום.

34. פקייה חזר לרכב והשניים עשו את דרכם חזרה לדורא.

35. **בעשותם את האמור לעיל, גרמו פקייה ומחמד אלעמאיירה בכוונה למותו**
**של מיכאל מרק ז״ל, נהג הרכב, אשר חמישה כדורים פגעו בגופו ואחד**
בראשו, וכן גרמו לפציעתם של יושבי הרכב.

36. במהלך נסיעתם חזרה לדורא, סיפר פקייה למחמד אלעמאיירה כי ברכב,
שלעברו ביצעו את הירי, היו ילדים קטנים, אולם לא הספיק לירות בהם

37. בנוסף, פקייה הביע את כוונתו בפני מחמד אלעמאיירה לבצע פיגועי ירי
נוספים לעבר מטרות ישראליות, לאחר שיוכרז כמבוקש ואף אמר לו היכן
יוכל למצוא אותו לאחר שיוכרז ככזה.

38. כשהגיעו השניים לבית הספר צלאח אלדין, החליפו חזרה את לוחיות
הזיהוי של הרכב לוחיות זיהוי פלסטיניות וחשליכו את לוחיות הזיהוי
הישראליות לפח האשפה.

39. לאחר מכן, נפרדו השניים, כשכל אחד מהם נושא עימו את אחד מרובי
הקלצ'ניקוב, שחיו עימם במהלך הפיגוע.

40. עוד באותו יום, יצר פקייה קשר עם הנאשם וביקש ממנו להגיע במהירות
למסגד הגדול בדורא. הנאשם חסכים ויצא לדרך. במהלך נסיעתו, שמע
הנאשם דיווח בחדשות על פיגוע הירי והבין כי פקייה ביצע את הפיגוע.
ואולם, הנאשם נאלץ לחזות את פגישותו עם מחמד נכח בקשת אביו.

41. מאוחר יותר, נפגש הנאשם עם פקייה. הנאשם נכנס למכונית היונדאי של
פקייה והשניים שוחחו על אודות הפיגוע. הנאשם חחעניין לגבי הרכב
שישמש לפיגוע, ופקייה הסביר כי בחר לבצע את הפיגוע באמצעות רכב
היונדאי ולא רכב האופל מאחר שרכב היונדאי מהיר יותר, ואף סיפר לו כי
החליפו את לוחיות הזיהוי של הרכב בלוחיות זיהוי ישראליות.

CONFIDENTIAL

SHATSKY-JD01883

CONFIDENTIAL

SHATSKY-JD01884

מקודם (5)

42. בנוסף, עדכן פקייה את הנאשם, כי בכוונתו להסתתר בבניין הנמצא כעת בשלבי בנייה, אך חנאשם הציע לפקייה ללון במעונות חסטודנטים של האוניברסיטה, והאחרון הסכים.

43. כשהלך חנסיעה נתן הנאשם לפקייה לעשות שימוש בטלפון חנייד שכו וזה שלח באמצעותו מסרונים לאשתו ולאדם נוסף בשם יוסף חמדאן.

44. במהלך שיחתם, הציג פקייה לנאשם חור בדלת הנהג, אשר נגרם כתוצאה מפליטת כדור במלך הפיגוע. פקייה ביקש מהנאשם כי יתקן את החור וויורו את מחיר התיקון מסכום החוב. הנאשם הסכים לבקשתו של מחמד.

45. הנאשם הוביל את פקייה לדירות חמגורים במעונות הסטודנטים ופתחה באמצעות מפתחה אשר מסר לו מסלם קודם לכן.

46. עוד באותו יום, שלח פקייה הודעת לנאשם בה הוא מבקש שיטעין לו את יונית כרטיס הטלפון ב- 15 ש"ח והנאשם עשה זאת. בנוסף, שלח הנאשם הודעת לפקייה ושאל אם הוא רוצה שהנאשם ידאג לו למזון.

47. למחרת, נפגש הנאשם עם מסלם ועדכן אותו כי פקייה ביצע את פיגוע הירי וביקש ממסלם לעזור לו בתיקון הרכב אשר שימש את פקייה בפיגוע, ואשר נפגע כתוצאת מפליטת כדור ירי, ומסלם הסכים.

48. מסלם לקח את רכבו של אביו, מסוג קיה ספורטאז׳, ויצא ביחד עם חנאשם לחנות וומחורי בניין, חנמצאת בסמוך לביתו של פקייה. שם, רכש חנאשם חומר איטום, צבע כלי רכב ודבק מהיר.

49. לאחר מכן, הלכו השניים לביתו של פקייה והבחינו ברכב היונדאי או אן, הציע הנאשם כי ייסעו בשני הרכבים לשכונת האוניברסיטה שבאחרון ושם יבצעו את התיקון. מסלם הסכים להצעה זו.

50. הנאשם יצא ברכבו של פקייה, בעוד מסלם נהג ברכבו של אביו לשכונת האוניברסיטה שבאחרון ושם ביצעו את תיקון הרכב של פקייה, באמצעות החומרים אותם רכשו.

51. עם סיום התיקון, החזיר הנאשם את רכבו של פקייה חזרה לביתו, כשמסלם נוסע אחריו ברכבו של אביו, ולאחר שהחנה את הרכב, אסף מסלם את הנאשם חזרה לביתו.

52. עוד באותו יום, לקח הנאשם את רכבו של אביו של מסלם ועשה את דרכו למעונות הסטודנטים. שם אסף את פקייה ביחד עם חפציו, בהם שני תיקים, מדים צבאיים ונשק קלצ'ניקוב, והסיעו לבית הוריו.

53. במהלך ונסיעתו עדכן הנאשם את פקייה בהודעות נוספות שקיבל פקייה מיוסף חמדאן ופקידים לקח את מכשיר הטלפון של הנאשם ובאמצעותו שלח הודעות נוספות.

54. לאחר שהגיע לבית הוריו, פקייה ירד מהאוטו והנאשם אמר לו כי בערב יסיע חזרה לחברון. צהריים אחיו של פקייה, חגיע לרכב בו נהג הנאשם ולקח ממנו את תיקיו של פקייה ואת רובח הקלצ'ניקוב והעבירם לרכב מסוג "פיג'ו".

55. ביום 03/07/16 או במועד הסמוך לכך העביר הנאשם באמצעות עומר עזיה תיק נוב. בשיחת טלפון עם עמר עיד, ביקש הנאשם מעמר כי לאחר שאחיו, עבדאללה וג'ייר, יפתח את חנסק חעביר הנאשם לידיו את התיק. מאוחר יותר הגיע הנאשם והכניס לתיק דרכון וחעביר את תיק לתא אחסון בחנות.

56. נעשותו את האמור לעיל היה הנאשם שותף לגרימת מות בכוונה של הרב מיכאל מרק ז"ל.

CONFIDENTIAL   SHATSKY-JD01884

CONFIDENTIAL

SHATSKY-JD01885

05/2016  11:05   025987810

(א) בסעיף (8)

**פרט אישום שלישי:**

**מהות העבירה:** נסיון לגרימת מוות בכוונה, עבירה לפי סעיף 198, סעיף 209(א) וסעיף 199נגב)
לצו בדבר הוראות ביטחון (נוסח משולב) (יהודה והשומרון) (מס' 1651), התשע"ו-
.2009

**פרטי העבירה:** הנאשם הנ"ל, באזור, ניסה לגרום גרם בכוונה למותו של אחר, דהיינו:
הנשם הנ"ל, במועד ובתקופה האמורים בפרט האישום השני, בעשותו את האמור
בפרט האישום השני, היה שותף לניסיון לגרימת מותה בכוונה של חווה מרק.

**פרט אישום רביעי:**

**מהות העבירה:** נסיון לגרימת מוות בכוונה, עבירה לפי סעיף 198, סעיף 209(א) וסעיף 199נגב)
לצו בדבר הוראות ביטחון (נוסח משולב) (יהודה והשומרון) (מס' 1651), התשע"ו-
.2009

**פרטי העבירה:** הנאשם הנ"ל, באזור, ניסה לגרום גרם בכוונה למותו של אחר, דהיינו:
הנשם הנ"ל, במועד ובתקופה האמורים בפרט האישום השני, בעשותו את האמור
בפרט האישום השני, היה שותף לניסיון לגרימת מותה בכוונה של תחילה מרק.

**פרט אישום חמישי:**

**מהות העבירה:** נסיון לגרימת מוות בכוונה, עבירה לפי סעיף 198, סעיף 209(א) וסעיף 199נגב)
לצו בדבר הוראות ביטחון (נוסח משולב) (יהודה והשומרון) (מס' 1651), התשע"ו-
.2009

**פרטי העבירה:** הנאשם הנ"ל, באזור, ניסה לגרום גרם בכוונה למותו של אחר, דהיינו:
הנשם הנ"ל, במועד ובתקופה האמורים בפרט האישום השני, בעשותו את האמור
בפרט האישום השני, היה שותף לניסיון לגרימת מותו בכוונה של פדיה מרק.

**עדי התביעה:**

1.   רס"ל יוסף משילת, מ.א. 7743 Redacted, אשקלון (גובה אמרות נאשם מיום 07/07/16,
27/07/16).

2.   רס"ב איתאב חלכי, מ.א. 0060 Redacted, אשקלון (גובה אמרת נאשם מיום 19/07/16,
25/07/16).

3.   רס"ב בני גבריאל, מ.א. 2867 Redacted, חברון (ערך דו"ח מסכם מז"פ ולות צילומים ומיום
03/07/16, שרשרת מוצג).

4.   רס"מ אלי ברשנט, מ.א. 2193 Redacted, חברון (ערך דו"ח מסכם חקירה מז"פ ולות צילומים
מיום 03/07/16 ומיום 11/07/16, שרשרת מוצג).

5.   רס"ב מלול הלל, מ.א. 7958 Redacted, חברון (ערך דו"ח פעולה מיום 10/07/16).

6.   מפקח ישאל כן חמו, מ.א. 7034 Redacted, חברון (ערך דו"ח ביקור מיום 03/07/16).

7.   רס"ב יעל שלום, מ.א. 5572 Redacted, מז"פ.

8.   פדיה מרק (פרטים בתביעה).

9.   מאמון חגה (פרטים בתביעה).

10.   האהד תחה(פרטים בתביעה).

11.   אסלאם עבדאלחמיד באד (פרטים בתביעה).

12.   מחמד עיאא מניד מחד אל עמאירה, ת.ז. 1792 Redacted.

13.   נהויב ג'נאברה אחמד אלפקהר, ת.ז. 5702 Redacted.

14.   מועאד' האלד אחמד אלפקיה, ת.ז. 7122 Redacted.

15.   מחמד יוסף מחמד ברויש, ת.ז. 5427 Redacted.

16.   ונג'יריד ג'באברה אחמד אלפקיה, ת.ז. 3536 Redacted.

CONFIDENTIAL

SHATSKY-JD01885

CONFIDENTIAL

SHATSKY-JD01886

17. חוות דעת מומחה על שם יאיר דלבר.
18. חוות דעת מומחה על שם אבי קופמן.
19. חוות דעת על שם פרופ' עוזי מוטרו.

<u>מוצגים:</u>
20. רכב טויוטה, מסי מוצג T0018933
21. 6 חלקיקי קליעים, מסי מוצג T0051649
22. קליע מראשו של הקרבן, מסי T0273187
23. 20 חלקי קליע, מסי מוצג T0209155
24. רובה קלצ'ניקוב (מסי מוחת – 2108787), מסי מוצג J0510392
25. רכב יונדאי, מסי מוצג J0510395

מיטל ריחני ר'.
סגן תובעת
צבאית

CONFIDENTIAL

SHATSKY-JD01886

Exhibit 159

Prisoner Salary Statement

| Prisoner no. 288017 | | | | | | | |
| Prisoner Name: Alaa Raed Saleh Zughayer | | | Document no. 851368696 | | | | |
| Month | Year | Beneficiary | ID no. | Bank Name | Branch | Account no. | Salary |



Redacted

Page 1 of 2

Confidential

7/28/21

j b

**Salem 12**

Shatsky-JD00533-T

שגיאה! שם מאפיין מסמך לא ידוע.

Prisoner Salary Statement

Prisoner no. 288017
Prisoner Name: Alaa Raed Saleh Zughayer    Document no. 851368696

| Month | Year | Beneficiary | ID no. | Bank Name | Branch | Account no. | Salary |
|---|---|---|---|---|---|---|---|
| | | | Redacted | | | | |
| 4 | 2020 | Alaa Raed Saleh Zughayer | 8696 | | | | 2,000.00 |
| 5 | 2020 | Alaa Raed Saleh Zughayer | Redacted 8696 | | | | 2,000.00 |
| 6 | 2020 | Alaa Raed Saleh Zughayer | Redacted 8696 | | | | 2,400.00 |
| 7 | 2020 | Alaa Raed Saleh Zughayer | Redacted 8696 | | | | 2,000.00 |
| 8 | 2020 | Alaa Raed Saleh Zughayer | Redacted 8696 | | Redacted | | 2,000.00 |
| 9 | 2020 | Alaa Raed Saleh Zughayer | Redacted 8696 | | | | 2,000.00 |
| 10 | 2020 | Alaa Raed Saleh Zughayer | Redacted 8696 | | | | 2,000.00 |
| 11 | 2020 | Alaa Raed Saleh Zughayer | Redacted 8696 | | | | 2,000.00 |
| 12 | 2020 | Alaa Raed Saleh Zughayer | 8696 | | | | 2,400.00 |
| 1 | 2021 | Alaa Raed Saleh Zughayer | Redacted 8696 | | | | 2,000.00 |
| 2 | 2021 | Alaa Raed Saleh Zughayer | Redacted 8696 | | | | 2,000.00 |
| 3 | 2021 | Alaa Raed Saleh Zughayer | 8696 | | | | 2,000.00 |
| 4 | 2021 | Alaa Raed Saleh Zughayer | Redacted 8696 | | | | 2,000.00 |
| 5 | 2021 | Alaa Raed Saleh Zughayer | 8696 | | | | 2,000.00 |

Page 2 of 2

Confidential

Shatsky-JD00534-T

שגיאה! שם מאפיין מסמך לא ידוע.

# Translator's Certification

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SHABTAI SCOTT SHATSKY, *et al.*,

Plaintiffs,                          Case No. 18-cv-12355 (MKV)

v.

THE PALESTINE LIBERATION
ORGANIZATION and THE PALESTINIAN
AUTHORITY,

Defendants.

## DECLARATION OF YANIV BERMAN

I, Yaniv Berman, declare pursuant to 28 U.S.C. § 1746, as follows:

1.      I am a professional translator with an M.A. degree in Middle Eastern Studies from
the Hebrew University of Jerusalem (Israel).  I read Arabic and English fluently, and I am
qualified to translate from Arabic into English.

2.      I certify that the attached documents are true and accurate translations of the
Arabic originals designated as "Shatsky-JD00012" through "Shatsky-JD00534."   The
translations are labelled with Bates numbers that correspond to the original documents, with the
addition of a "-T" at the end to indicate that it is a translation.

3.      To the extent that some of the information in the original documents was not
clearly legible, I have translated such information into English to the best of my ability.  Such
instances are marked with an asterisk ("[*]").

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated:  June 24, 2021

Yaniv Berman

2

Original



كشف راتب أسير

رقم الأسير ..........285017
ا. م الأسير ............ ...........
رقم الوثيقة 851368696

| الرقم | رقم الحساب | الفرع | البنك | رقم البطاقة | اسم المستفيد | السنة | الشهر |
|---|---|---|---|---|---|---|---|

Redacted

٢ من أصفحة

CONFIDENTIAL

كشف رائب أبري

| رقم الأسرة | 293017 |
| اسم الأسرة | علاء رائد صالح زغير |

رقم الوثيقة: 851363696

| الرواتب | رقم الحساب | الفرع | البنك | رقم البطاقة | اسم المستفيد | السنة | الشهر |
|---|---|---|---|---|---|---|---|
| Redacted | | | | | Redacted | | |
| 2,000.00 | | | | Redacted 3696 | علاء رائد صالح زغير | 2020 | 4 |
| 2,000.00 | | | | 3696 | علاء رائد صالح زغير | 2020 | 5 |
| 2,400.00 | | | | Redacted 3696 | علاء رائد صالح زغير | 2020 | 6 |
| 2,000.00 | | | | 3696 | علاء رائد صالح زغير | 2020 | 7 |
| 2,000.00 | | | | 3696 | علاء رائد صالح زغير | 2020 | 8 |
| 2,000.00 | | | | Redacted 3696 | علاء رائد صالح زغير | 2020 | 9 |
| 2,000.00 | Redacted | | | 3696 | علاء رائد صالح زغير | 2020 | 10 |
| 2,000.00 | | | | 3696 | علاء رائد صالح زغير | 2020 | 11 |
| 2,400.00 | | | | 3696 | علاء رائد صالح زغير | 2020 | 12 |
| 2,000.00 | | | | 3696 | علاء رائد صالح زغير | 2021 | 1 |
| 2,000.00 | | | | 3696 | علاء رائد صالح زغير | 2021 | 2 |
| 2,000.00 | | | | Redacted 3696 | علاء رائد صالح زغير | 2021 | 3 |
| 2,000.00 | | | | 3696 | علاء رائد صالح زغير | 2021 | 4 |
| 2,000.00 | | | | Redacted 3696 | علاء رائد صالح زغير | 2021 | 5 |

صفحة 2 من

CONFIDENTIAL

Shatsky-JD00534

# Exhibit 160

SHATSKY-JD01666-T                                                    CONFIDENTIAL

3

the Defendant, and performed advance reconnaissance at the place the Defendant had found. The Defendant and Abdul Rahman Miqdad reached the vicinity of the Talita Kumi School and found the place suitable for the perpetration of the terror attack. The Defendant instructed Abdul Rahman Miqdad to perpetrate a shooting terror attack at that place together with additional operatives.

2.  At around the same time, Abdul Rahman Miqdad asked Ali Mohamed Hammad Haliel (hereafter, "**Ali Abu Haliel**"), a military operative, to go perform advance reconnaissance in the area of the Talita Kumi School because a shooting terror attack in that vicinity was being planned. Ali Abu Haliel assented and set out for the place at approximately 2:00 in order to make sure there were no obstacles along the way. In addition, Abdul Rahman Miqdad recruited Izz al-Din Halid Hussain al-Hamamra (otherwise known as Izz al-Din Alyan; and hereafter, "**Izz al-Din Alyan**") and military operative Ismail Abdul Rahman Mohamed Al-Farajin (hereafter, "**Ismail Al-Farajin**") for the perpetration together of the shooting terror attack.

3.  At around 3:00, Ali Abu Haliel called Abdul Rahman Miqdad and updated him, telling him that there was no impediment to perpetrating the planned attack.

4.  Accordingly, Abdul Rahman Miqdad, armed with a Kalashnikov rifle, headed out with Izz al-Din Alyan, who was armed with an M16 rifle, as well as Ismail Al-Farajin, who was armed with an M16, toward the place in order to carry out the terror attack. Ismail Al-Farajin drove them in a vehicle that he had brought.

5.  When they reached the intended vicinity, Abdul Rahman instructed Ali Abu Haliel to return home; and Abdul Rahman Miqdad and Izz al-Din Alyan hid near the spot, at a distance of 20 meters from the road, ready to ambush passing Israeli vehicles. Ismail Al-Farajin stayed inside the vehicle.

6.  At 3:30, a military jeep passed by and Abdul Rahman Miqdad and his comrade opened fire at the jeep.

7.  The jeep continued driving, Abdul Rahman Miqdad and his comrade fled toward the vehicle where Ismail Al-Farajin was waiting for them, and they fled the place together.

**Fifth Count: (Police File 09891/04, Special Duties Department – Jerusalem)**
**Nature of the Offense:** Intentionally causing death, an offense pursuant to Sections 51(a) and 7(c) of the Security Provisions (Judea and Samaria) Order (No. 378), 5730-1970; and Sections 2 and 14 of the Criminal Liability (Judea and Samaria) Order (No. 225), 5728-1968.
**Details of the Offense:** The abovenamed Defendant, within and outside the Region, on 29 January 2004, was party to intentionally causing the deaths of others; specifically:

SHATSKY-JD01666-T                                                    CONFIDENTIAL

SHATSKY-JD01667-T

CONFIDENTIAL

4

1.  At the start of January 2004 or thereabouts, Abdul Rahman Miqdad contacted military operative Ahmad Mughrabi and asked the latter to introduce him to military operatives who would help him manufacture explosive substances and explosive devices with the intent of perpetrating terror attacks against Israeli targets. He also asked for help in locating potential suicides for the purpose of mounting suicide terror attacks. Accordingly, Ahmad Mughrabi contacted military operative Ali Abu Haliel and proposed that the latter meet someone (meaning Abdul Rahman Miqdad) and assist him in his military activity. Ali Abu Haliel met with Abdul Rahman Miqdad in accordance with Ahmad Mughrabi's instructions. At the meeting, Abdul Rahman Miqdad asked for his help in manufacturing explosive materials. Ali Abu Haliel assented.

2.  Around the same time, military operative Hilmi Abd Al-Karim Muhammad Hamash (hereafter, "**Hilmi Hamash**") approached Ali Ju'ara and suggested introducing him to a military operative who would send him to perpetrate a suicide terror attack. Ali Ju'ara (hereafter, "**the Suicide Bomber**") expressed his willingness.

    Accordingly, Hilmi Hamash introduced **the abovenamed Defendant** to the Suicide Bomber, and at that meeting, the Defendant assessed his readiness to perpetrate the suicide terror attack.

    During the meeting, the Suicide Bomber expressed readiness to perpetrate the terror attack. Accordingly, the Defendant asked the Suicide Bomber to prepare to perpetrate the suicide terror attack.

3.  At around the same time, Ali Abu Haliel approached Abdul Rahman Miqdad and informed him that he had succeeded in obtaining two kilograms of explosive material of the "Umm al-Abd" type, and some acetone as well. On that occasion, Ali Abu Haliel gave Abdul Rahman Miqdad the "Umm al-Abd" explosive material and Abdul Rahman Miqdad asked him to pass the acetone to him, and some hydrogen peroxide as well, as used in the manufacture of explosive materials.

4.  The next day, Abdul Rahman Miqdad met with Ali Abu Haliel and received from him 36 liters of acetone along with 10 liters of hydrogen peroxide. Abdul Rahman Miqdad told Ali Abu Haliel that he intended to use those materials in manufacturing explosive materials to serve a suicide bomber in the perpetration of a suicide terror attack. On this occasion, Ali Abu Haliel explained to Abdul Rahman Miqdad how to mix the materials in order to manufacture the explosive material. Abdul Rahman Miqdad concealed the materials in his home.

5.  Some days later, the Defendant came to the home of Abdul Rahman and told him that he had found a person willing to perpetrate a suicide terror attack.

    On 28 January 2004 or thereabouts, the Defendant approached Abdul Rahman Miqdad again and asked him to urgently prepare an explosive satchel with the explosive material

at his disposal because he intended to send the Suicide Bomber out for the suicide terror attack.

At that point, Abdul Rahman Miqdad asked the Defendant to buy him materials for assembling the explosive satchel [which included, inter alia, a satchel, batteries, a switch, etc. ...]. The Defendant assented;

SHATSKY-JD01667-T

CONFIDENTIAL

SHATSKY-JD01669-T   CONFIDENTIAL

6

**Sixth Count: (Police File 09891/04, Special Duties Department – Jerusalem)**

**Nature of the Offense:** Intentionally causing death, an offense pursuant to Sections 51(a) and 7(c) of the Security Provisions (Judea and Samaria) Order (No. 378), 5730- 1970; and Sections 2 and 14 of the Criminal Liability (Judea and Samaria) Order (No. 225), 5728-1968.

**Details of the Offense:** The abovenamed Defendant, within and outside the Region, on 29 January 2004, was party to intentionally causing the deaths of others; specifically:

The Suicide Terror Attack perpetrated by Ali Ju'ara the Suicide Bomber, which was intended to bring death to Israeli citizens and to which the Defendant was a party as stated in the fourth count of indictment, brought death to [handwritten:] **Ms. Hannah Bonder of blessed memory**.

**Seventh Count: (Police File 09891/04, Special Duties Department – Jerusalem)**

**Nature of the Offense:** Intentionally causing death, an offense pursuant to Sections 51(a) and 7(c) of the Security Provisions (Judea and Samaria) Order (No. 378), 5730-1970; and Sections 2 and 14 of the Criminal Liability (Judea and Samaria) Order (No. 225), 5728-1968.

**Details of the Offense:** The abovenamed Defendant, within and outside the Region, on 29 January 2004, was party to intentionally causing the deaths of others; specifically:

The Suicide Terror Attack perpetrated by Ali Ju'ara the Suicide Bomber, which was intended to bring death to Israeli citizens and to which the Defendant was a party as stated in the fourth count of indictment, brought death to [handwritten:] **Ms. Anat Darom of blessed memory**.

**Eighth Count: (Police File 09891/04, Special Duties Department – Jerusalem)**

**Nature of the Offense:** Intentionally causing death, an offense pursuant to Sections 51(a) and 7(c) of the Security Provisions (Judea and Samaria) Order (No. 378), 5730-1970; and Sections 2 and 14 of the Criminal Liability (Judea and Samaria) Order (No. 225), 5728-1968.

**Details of the Offense:** The abovenamed Defendant, within and outside the Region, on 29 January 2004, was party to intentionally causing the deaths of others; specifically:

The Suicide Terror Attack perpetrated by Ali Ju'ara the Suicide Bomber, which was intended to bring death to Israeli citizens and to which the Defendant was a party as stated in the fourth count of indictment, brought death to [handwritten:] **Mr. Yechezkel Goldberg of blessed memory**.

SHATSKY-JD01669-T   CONFIDENTIAL

SHATSKY-JD01670-T                                                 CONFIDENTIAL

7

**Ninth Count: (Police File 09891/04, Special Duties Department – Jerusalem)**

**Nature of the Offense:** Intentionally causing death, an offense pursuant to Sections 51(a) and 7(c) of the Security Provisions (Judea and Samaria) Order (No. 378), 5730-1970; and Sections 2 and 14 of the Criminal Liability (Judea and Samaria) Order (No. 225), 5728-1968.

**Details of the Offense:** The abovenamed Defendant, within and outside the Region, on 29 January 2004, was party to intentionally causing the deaths of others; specifically:

The Suicide Terror Attack perpetrated by Ali Ju'ara the Suicide Bomber, which was intended to bring death to Israeli citizens and to which the Defendant was a party as stated in the fourth count of indictment, brought death to [handwritten:] **Mr. Vladi Zadik Manbera of blessed memory**.

**Tenth Count: (Police File 09891/04, Special Duties Department – Jerusalem)**

**Nature of the Offense:** Intentionally causing death, an offense pursuant to Sections 51(a) and 7(c) of the Security Provisions (Judea and Samaria) Order (No. 378), 5730-1970; and Sections 2 and 14 of the Criminal Liability (Judea and Samaria) Order (No. 225), 5728-1968.

**Details of the Offense:** The abovenamed Defendant, within and outside the Region, on 29 January 2004, was party to intentionally causing the deaths of others; specifically:

The Suicide Terror Attack perpetrated by Ali Ju'ara the Suicide Bomber, which was intended to bring death to Israeli citizens and to which the Defendant was a party as stated in the fourth count of indictment, brought death to [handwritten:] **Mr. Viorel Octavian Florescu of blessed memory**.

**Eleventh Count: (Police File 09891/04, Special Duties Department – Jerusalem)**

**Nature of the Offense:** Intentionally causing death, an offense pursuant to Sections 51(a) and 7(c) of the Security Provisions (Judea and Samaria) Order (No. 378), 5730-1970; and Sections 2 and 14 of the Criminal Liability (Judea and Samaria) Order (No. 225), 5728-1968.

**Details of the Offense:** The abovenamed Defendant, within and outside the Region, on 29 January 2004, was party to intentionally causing the deaths of others; specifically:

The Suicide Terror Attack perpetrated by Ali Ju'ara the Suicide Bomber, which was intended to bring death to Israeli citizens and to which the Defendant was a party as stated in the fourth count of indictment, brought death to [handwritten:] **Ms. Rose Boneh of blessed memory**.

SHATSKY-JD01670-T                                                 CONFIDENTIAL

SHATSKY-JD01671-T                                                CONFIDENTIAL

8

**Twelfth Count: (Police File 09891/04, Special Duties Department – Jerusalem)**

**Nature of the Offense:** Intentionally causing death, an offense pursuant to Sections 51(a) and 7(c) of the Security Provisions (Judea and Samaria) Order (No. 378), 5730-1970; and Sections 2 and 14 of the Criminal Liability (Judea and Samaria) Order (No. 225), 5728-1968.

**Details of the Offense:** The abovenamed Defendant, within and outside the Region, on 29 January 2004, was party to intentionally causing the deaths of others; specifically:

The Suicide Terror Attack perpetrated by Ali Ju'ara the Suicide Bomber, which was intended to bring death to Israeli citizens and to which the Defendant was a party as stated in the fourth count of indictment, brought death to [handwritten:] **Ms. Dana Itach of blessed memory**.

**Thirteenth Count: (Police File 09891/04, Special Duties Department – Jerusalem)**

**Nature of the Offense:** Intentionally causing death, an offense pursuant to Sections 51(a) and 7(c) of the Security Provisions (Judea and Samaria) Order (No. 378), 5730-1970; and Sections 2 and 14 of the Criminal Liability (Judea and Samaria) Order (No. 225), 5728-1968.

**Details of the Offense:** The abovenamed Defendant, within and outside the Region, on 29 January 2004, was party to intentionally causing the deaths of others; specifically:

The Suicide Terror Attack perpetrated by Ali Ju'ara the Suicide Bomber, which was intended to bring death to Israeli citizens and to which the Defendant was a party as stated in the fourth count of indictment, brought death to [handwritten:] **Mr. Roman Hondiashvili of blessed memory**.

**Fourteenth Count: (Police File 09891/04, Special Duties Department – Jerusalem)**

**Nature of the Offense:** Intentionally causing death, an offense pursuant to Sections 51(a) and 7(c) of the Security Provisions (Judea and Samaria) Order (No. 378), 5730-1970; and Sections 2, 14, and 19-20 of the Criminal Liability (Judea and Samaria) Order (No. 225), 5728-1968.

**Details of the Offense:** The abovenamed Defendant, within and outside the Region, on 29 January 2004, was party to intentionally causing the deaths of others; specifically:

The Suicide Terror Attack perpetrated by Ali Ju'ara the Suicide Bomber, which was intended to bring death to Israeli citizens and to which the Defendant was a party as stated in the fourth count of indictment, brought death to [handwritten:] **Mr. Eli Zfira of blessed memory**.

SHATSKY-JD01671-T                                                CONFIDENTIAL

CONFIDENTIAL

9

### Fifteenth Count: (Police File 09891/04, Special Duties Department – Jerusalem)

**Nature of the Offense:** Intentionally causing death, an offense pursuant to Sections 51(a) and 7(c) of the Security Provisions (Judea and Samaria) Order (No. 378), 5730-1970; and Sections 2 and 14 of the Criminal Liability (Judea and Samaria) Order (No. 225), 5728-1968.

**Details of the Offense:** The abovenamed Defendant, within and outside the Region, on 29 January 2004, was party to intentionally causing the deaths of others; specifically:

The Suicide Terror Attack perpetrated by Ali Ju'ara the Suicide Bomber, which was intended to bring death to Israeli citizens and to which the Defendant was a party as stated in the fourth count of indictment, brought death to [handwritten:] **Ms. Natalia Gamril of blessed memory**.

### Sixteenth Count: (Police File 09891/04, Special Duties Department – Jerusalem)

**Nature of the Offense:** Attempting to intentionally cause death, an offense pursuant to Section 51(a) and 7(c) of the Security Provisions (Judea and Samaria) Order (No. 378), 5730-1970; and Sections 2, 14, and 19-20 of the Criminal Liability (Judea and Samaria) Order (No. 225), 5728-1968.

**Details of the Offense:** The abovenamed Defendant, within and outside the Region, on 29 January 2004, was party to an attempt to intentionally cause the deaths of others; specifically:

The Suicide Terror Attack perpetrated by Ali Ju'ara the Suicide Bomber, which intended to bring death to Israeli citizens and to which the Defendant was a party as stated in the fourth count of indictment, dealt injuries, some light and some heavy, to more than 50 citizens, and the Suicide Bomber died.

### Seventeenth Count (Police File 17869/04, Moriah Station)

**Nature of the Offense:** Intentionally causing death, an offense pursuant to Sections 51(a) and 7(c) of the Security Provisions (Judea and Samaria) Order (No. 378), 5730- 1970; and Sections 2 and 14 of the Criminal Liability (Judea and Samaria) Order (No. 225), 5728-1968.

**Details of the Offense:** The abovenamed Defendant, within and outside the Region, on 22 February 2004, was party to intentionally causing the death of others, as follows:

1. Some days before the abovementioned date, Abdul Rahman Miqdad and military operative Izz A-Din Alyan were planning to perpetrate a suicide terror attack with the objective of bringing death to Israeli citizens.

   Izz A-Din Alyan notified Abdul Rahman Miqdad that he had located a man named Muhammad Za'ul (hereafter, **"the Suicide Bomber"**) who was willing to carry out the suicide terror attack.

CONFIDENTIAL

Original

CONFIDENTIAL
SHATSKY-JD01660



№ 14658


TO WHOM IT MAY CONCERN

16 334



This certificate is valid only if the English and Arabic parts match each other

According to the information received from the Israeli Authorities, the International Committee of the Red Cross certifies that :

Mr.      AHMAD SALAH AHMAD   SALAH                        ID NO: Redacted 965-6

From :   BETHLEHEM

Was arrested by the Israeli Authorities on (dd / mm / yyyy) :    08.03.2004

He is to date :        Sentenced

Length of sentence / administrative period : life sentence XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX

He/She was released on (dd/mm/yyyy): XXXX-XXXX  XXXXXXXXXXXXXXXXXXXXXXXXXXXXX



إلى من يهمه الأمر

هذه الشهادة سارية المفعول فقط في حالة تطابق بياناتها باللغتين العربية والإنجليزية

استنادا إلى المعلومات الواردة من السلطات الإسرائيلية، فإن اللجنة الدولية للصليب الأحمر بأن:

السيد/ة الآنسة ــــــــــ أحمد صلاح أحمد صلاح ـــــــــ

من ـــــ بيت لحم ـــــ هوية رقم Redacted 965-6 ـــــ

كان/ت قد إعتقل/ت من قبل السلطات الإسرائيلية في يوم ــ٨ـ / شهر ـ٣ـ / سنة ٢٠٠٤

وهو/هي في هذا التاريخ : ينتظر المحاكمة ـــــ

محكوم/ة أو إداري لمدة ـ سجن مؤبد ـ محكوم/ة ـ✓ـ       إداري ـــــ

وهو/هي أطلق سراحه/ها في يوم ــــــ / شهر ــــــ / سنة ــــــ

Date    24.01.2007                                           TANGUY DE BLAUWE
تاريخ                                                         ICRC Delegate
                                                            توقيع مندوب اللجنة

Plac e: BETHLEHEM/NR
مكان

09 -01- 2010
...onal Committee
of the Red Cross

CONFIDENTIAL
SHATSKY-JD01660

CONFIDENTIAL

SHATSKY-JD01661



№  14063

## TO WHOM IT MAY CONCERN

16334

**CICR** This certificate is valid only if the English and Arabic parts match each other

According to the information received from the Israeli Authorities, the International Committee of the Red Cross certifies that :

Mr:   AHMAD SALAH AHMAD  SALAH

From :   BETHLEHEM                                      ID NO: Redacted 965-6

Was arrested by the Israeli Authorities on (dd / mm / yyyy) :   08.03.2004

He is to date :        Sentenced

Length of sentence / administrative period : life sentence

He/She was released on (dd/mm/yyyy): XXXXXXXX XXXXXXXXXXXXXXXXXXXXXXXXXXXX



إلى من يهمه الأمر

**CICR**

هذه الشهادة سارية المفعول فقط في حالة تطابق بياناتها باللغتين العربية والإنجليزية

استنادا إلى المعلومات الواردة من السلطات الإسرائيلية، تشهد اللجنة الدولية الصليب الأحمر بأن:

السيد/ة الآنسة أحمد صلاح أحمد صلاح

من بيت لحم _____ هوية رقم Redacted 65-6 _____

كان/ت قد إعتقل/ت من قبل السلطات الإسرائيلية في يوم ٨ / شهر ٣ / سنة ٢٠٠٤

وهو/هي في هذا التاريخ : ينتظر المحاكمة _____ محكوم/ة ___ إداري _____

محكوم/ة أو إداري لمدة مدى الحياة _____

وهو/هي أطلق سراحه/ها في أي يوم _____ / شهر _____ / سنة _____

Date:   04.01.2007

التاريخ

Place:   BETHLEHEM/NR

المكان

TANGUY DE BLAUWE

ICRC Delegate

توقيع مندوب اللجنة

CERTIFIED UPDATE
ICRC
14 -01- 2015
International Committee
of the Red Cross

CONFIDENTIAL

SHATSKY-JD01661

CONFIDENTIAL

SHATSKY-JD01666

3

הנאשם וערך סיור מקדים במקום שאותו איתר הנאשם. הנאשם ועי"א-רחמאן מקדאד הגיעו לאיזור בית-הספר "תליתא קומי" ומצאו כי מקום זה טוב לביצוע הפיגוע. הנאשם הורה לעי"א-רחמאן מקדאד לבצע במקום פיגוע ירי יחד עם פעילים נוספים.

2. בסמוך לכך, ביקש עי"א-רחמאן מקדאד מהפעיל הצבאי עלי מחמד חמאד אבו-הלאיל (להלן – **עלי אבו-הלאיל**) לצאת ולבצע סיור מקדים באיזור בית-הספר "תליתא קומי" וזאת מכיוון שמתוכנן פיגוע ירי באזור. עלי אבו-הלאיל נענה בחיוב, ויצא בסמוך לשעה 2:00 למקום וזאת כדי לוודא שאין מכשולים בדרך. בנוסף גייס עי"א-רחמאן מקדאד את עז-אלדין חיאלד חסין חמאמרה (המכונה עז-אלדין עליאן) (להלן – **עז-אלדין עליאן**) והפעיל הצבאי אסמאעיל עי"א-רחמאן מחמד אלפראגין (להלן – **אסמאעיל אלפראגין**) לביצוע יחד עימם את פיגוע הירי.

3. בסמוך לשעה 3:00, התקשר עלי אבו-הלאיל לעי"א-רחמאן מקדאד ועידכן אותו כי אין מניעה לבצע את הפיגוע המתוכנן.

4. בהתאם לכך, יצא עי"א-רחמאן מקדאד כשהוא חמוש ברובה קלצ'ניקוב יחד עם עז-אלדין עליאן שהיה חמוש ברובה M-16 ואסמאעיל אלפראגין כשהוא חמוש ברובה 16 – M לכיוון האיזור עי"מ לבצע את הפיגוע; אסמאעיל אלפראגין הסיע אותם ברכב שהביא.

5. כשהגיעו לאיזור המתוכנן, הורה עי"א-רחמאן לעלי אבו-הלאיל לחזור לביתו, ועי"א-רחמאן מקדאד ועז-אלדין עליאן ארבו בסמוך למקום במרחק 20 מטר מהכביש לכלי רכב ישראליים שיעברו במקום. אסמאעיל אלפראגין נותר ברכב.

6. בסמוך לשעה 3:30, עבר במקום ג'יפ צבאי; או-אז פתחו עי"א-רחמאן מקדאד וחברו באש לעבר הג'יפ.

7. הג'יפ המשיך בנסיעה, עי"א-רחמאן מקדאד וחברו נמלטו לכיוון הרכב בו המתין להם אסמאעיל אלפראגין, וביחד נמלטו מהמקום.

**פרט חמישי:** (פ"א 09891/04 מת"מ ירושלים)

**מהות העבירה:** גרימת מוות בכוונה, עבירה לפי סעיף 51(א) ו- 7(ג) לצו בדבר הוראות ביטחון (יו"ש) (מס' 378) תשכ"ר – 14/ט; וסעיף 14 ו- 2 לצו בדבר ככלי האחריות *לעבירה* (יו"ש) (מס' 225), תשכ"ח – 1968.

**פרטי העבירה:** הנאשם הנ"ל, באזור ומחוץ לאזור, בתאריך 29/1/04, היה שותף לגרימת מותם של אחרים בכוונה, דהיינו:

CONFIDENTIAL

SHATSKY-JD01666

CONFIDENTIAL

SHATSKY-JD01667

4

1. בתחילת חודש ינואר 04' או בסמוך לכך, יצר עו"א-רחמאן מקדאד קשר עם
הפעיל הצבאי אחמד מוגירבי וביקש ממנו כי יכיר לו פעילים צבאיים
שיעזרו לו בייצור חומרי נפץ ומטעני חבלה וזאת עו"מ לבצע פיגועים נגד
מטרות ישראליות, וכן איתור מתאבדים לצורך ביצוע פיגועי התאבדות.
בהתאם לכך, יצר אחמד מוגירבי קשר עם הפעיל הצבאי עלי אבו-הלאיל
וביקש ממנו כי ייפגש עם פלוני (בכוונו לעו"א-רחמאן מקדאד) עו"מ לעזור לו
בפעילותו הצבאית. עלי אבו-הלאיל נפגש עם עו"א-רחמאן מקדאד בהתאם
לתוכניותו של אחמד מוגירבי, בפגישתו ביקש ממנו עו"א-רחמאן מקדאד כי
יעזור לו בייצור חומרי נפץ. הלה הסכים לכך.

2. בסמוך לכך פנה הפעיל הצבאי חלמי עו"א-כרים מחמד המאש (להלן – **חלמי
המאש**) אל עלי גיעארה והציע לו להפגישו עם פעיל צבאי שישלח אותו
לביצוע פיגוע התאבדות. עלי גיעארה (להלן – **המתאבד**) הביע נכונות לכך.

בהתאם לכך, הפגיש חלמי המאש את **הנאשם** הנ"ל עם המתאבד בפגישה
שבמהלכה בירר הנאשם עם המתאבד את מידת נכונותו לבצע פיגוע
התאבדות.

במהלך הפגישה הביע המתאבד נכונות לבצע את הפיגוע. בהתאם ביקש
הנאשם מהמתאבד להתכונן לביצוע פיגוע ההתאבדות.

3. בסמוך לכך, פנה עלי אבו-הלאיל לעו"א-רחמאן מקדאד ועידכן אותו כי
הצליח להשיג שני ק"ג חומר נפץ מסוג אום-אלעבד וכן חומר כימי מסוג
אצטון. בהזדמנות זו העביר עלי אבו-הלאיל לעו"א-רחמאן מקדאד את חומר
הנפץ מסוג אום-אלעבד, ועו"א-רחמאן מקדאד ביקש ממנו כי יעביר אליו
את האצטון ובנוסף חומר כימי מסוג מי-חמצן המשמשים לייצור חומר נפץ.

4. ביום שלמחרת, נפגש עו"א-רחמאן מקדאד עם עלי אבו-הלאיל וקיבל ממנו
36 ליטר של אצטון וכן 10 ליטר של מי-חמצן; עו"א-רחמאן מקדאד סיפר
לעלי אבו-הלאיל כי בכוונתו להשתמש בחומרים אלה עו"מ לייצר חומר נפץ
שישמש מתאבד בביצוע פיגוע התאבדות; בהזדמנות זו הסביר עלי אבו-
הלאיל לעו"א-רחמאן מקדאד כיצד יש לערבב את החומרים כדי ליצור את
חומר הנפץ. עו"א-רחמאן מקדאד הסתיר את החומרים בביתו.

5. כעבור מספר ימים הגיע הנאשם לביתו של עו"א-רחמאן מקדאד וסיפר לו כי איתר
אדם המוכן לבצע פיגוע התאבדות.

ביום 28/1/04 או בסמוך לכך, פנה שוב הנאשם לעו"א-רחמאן מקדאד,
וביקש ממנו כי יכין בדחיפות תיק נפץ באמצעות חומר הנפץ שברשותו וזאת
מאחר ובכוונתו לשלוח את המתאבד לפיגוע ההתאבדות.

או-אז, ביקש עו"א-רחמאן מקדאד מהנאשם כי יקנה עבורו חומרים לייצור
תיק הנפץ [שכללו בין היתר: תיק, סוללות, מפסק וכו'...]. הנאשם נענה

CONFIDENTIAL

SHATSKY-JD01667

CONFIDENTIAL

SHATSKY-JD01669

6

**פרט שישי** :(פ"א 09891/04 מת"מ ירושלים)

**מהות העבירה** : גרימת מוות בכוונה, עבירה לפי סעיף 51(א) ו- 7(ג) לצו בדבר הוראות ביטחון (יו"ש) (מס׳ 378), תש"ל – 1970 ; וסעיף 14 ו- 2 לצו בדבר כללי האחריות לעבירה (יו"ש) (מס׳ 225), תשכ"ח – 1968.

**פרטי העבירה** : הנאשם הנ"ל, באזור ומחוץ לאזור, בתאריך 29/1/04, היה שותף לגרימת מותם של אחרים בכוונה, דהיינו :

כתוצאה מפיגוע התאבדות שאותו ביצע המתאבד עלי ג׳יעארה בכוונה לגרום למותם של אזרחים ישראליים ושהנאשם היה שותף לו כאמור בפרט האישום הרביעי – נגרם מוות של גב׳ **חנה בונדר ז"ל**.

**פרט שביעי** :(פ"א 09891/04 מת"מ ירושלים)

**מהות העבירה** : גרימת מוות בכוונה, עבירה לפי סעיף 51(א) ו- 7(ג) לצו בדבר הוראות ביטחון (יו"ש) (מס׳ 378), תש"ל – 1970 ; וסעיף 14 ו- 2 לצו בדבר כללי האחריות לעבירה (יו"ש) (מס׳ 225), תשכ"ח – 1968.

**פרטי העבירה** : הנאשם הנ"ל, באזור ומחוץ לאזור, בתאריך 29/1/04, היה שותף לגרימת מותם של אחרים בכוונה, דהיינו :

כתוצאה מפיגוע התאבדות שאותו ביצע המתאבד עלי ג׳יעארה בכוונה לגרום למותם של אזרחים ישראליים ושהנאשם היה שותף לו כאמור בפרט האישום הרביעי – נגרם מוות של גב׳ **ענת דרום ז"ל**.

**פרט שמיני** :(פ"א 09891/04 מת"מ ירושלים)

**מהות העבירה** : גרימת מוות בכוונה, עבירה לפי סעיף 51(א) ו- 7(ג) לצו בדבר הוראות ביטחון (יו"ש) (מס׳ 378), תש"ל – 1970 ; וסעיף 14 ו- 2 לצו בדבר כללי האחריות לעבירה (יו"ש) (מס׳ 225), תשכ"ח – 1968.

**פרטי העבירה** : הנאשם הנ"ל, באזור ומחוץ לאזור, בתאריך 29/1/04, היה שותף לגרימת מותם של אחרים בכוונה, דהיינו :

כתוצאה מפיגוע התאבדות שאותו ביצע המתאבד עלי ג׳יעארה בכוונה לגרום למותם של אזרחים ישראליים ושהנאשם היה שותף לו כאמור בפרט האישום הרביעי – נגרם מוות של **מר יחזקאל גולדברג ז"ל**.

CONFIDENTIAL

SHATSKY-JD01669

CONFIDENTIAL

SHATSKY-JD01670

7

**פרט תשיעי:** (פ"א 09891/04 מת"מ ירושלים)

**מהות העבירה** : גרימת מוות בכוונה, עבירה לפי סעיף 51(א) ו- 7(ג) לצו בדבר הוראות ביטחון (יו"ש) (מס' 378), תש"ל – 1970 ; וסעיף 14 ו- 2 לצו בדבר כללי האחריות לעבירה (יו"ש) (מס' 225), תשכ"ח – 1968.

**פרטי העבירה** : הנאשם הנ"ל, באזור ומחוץ לאזור, בתאריך 29/1/04, היה שותף לגרימת מותם של אחרים בכוונה, דהיינו :

כתוצאה מפיגוע ההתאבדות שאותו ביצע המתאבד עלי גיעארה בכוונה לגרום למותם של אזרחים ישראליים ושהנאשם היה שותף לו כאמור בפרט האישום הרביעי – נגרם מותו של <u>מר לולדי צדיק מנברה ז"ל</u>

**פרט עשירי:** (פ"א 09891/04 מת"מ ירושלים)

**מהות העבירה** : גרימת מוות בכוונה, עבירה לפי סעיף 51(א) ו- 7(ג) לצו בדבר הוראות ביטחון (יו"ש) (מס' 378), תש"ל – 1970 ; וסעיף 14 ו- 2 לצו בדבר כללי האחריות לעבירה (יו"ש) (מס' 225), תשכ"ח – 1968.

**פרטי העבירה** : הנאשם הנ"ל, באזור ומחוץ לאזור, בתאריך 29/1/04, היה שותף לגרימת מותם של אחרים בכוונה, דהיינו :

כתוצאה מפיגוע ההתאבדות שאותו ביצע המתאבד עלי גיעארה בכוונה לגרום למותם של אזרחים ישראליים ושהנאשם היה שותף לו כאמור בפרט האישום הרביעי – נגרם מותו של <u>מר ויויל אוקטביוס פלורסקה ז"ל</u>

**פרט אחד עשר :** (פ"א 09891/04 מת"מ ירושלים)

**מהות העבירה** : גרימת מוות בכוונה, עבירה לפי סעיף 51(א) ו- 7(ג) לצו בדבר הוראות ביטחון (יו"ש) (מס' 378), תש"ל – 1970 ; וסעיף 14 ו- 2 לצו בדבר כללי האחריות לעבירה (יו"ש) (מס' 225), תשכ"ח – 1968.

**פרטי העבירה** : הנאשם הנ"ל, באזור ומחוץ לאזור, בתאריך 29/1/04, היה שותף לגרימת מותם של אחרים בכוונה, דהיינו :

כתוצאה מפיגוע ההתאבדות שאותו ביצע המתאבד עלי גיעארה בכוונה לגרום למותם של אזרחים ישראליים ושהנאשם היה שותף לו כאמור בפרט האישום הרביעי -- נגרם מותה של <u>גב' רוזה בונה ז"ל</u>

CONFIDENTIAL

SHATSKY-JD01670

CONFIDENTIAL

SHATSKY-JD01671

8

**פרט שנים עשר (פ"א 09891/04 מת"מ ירושלים):**

**מהות העבירה:** גרימת מוות בכוונה, עבירה לפי סעיף 51(א) ו- 7(ג) לצו בדבר הוראות ביטחון
(יו"ש) (מס' 378), תש"ל – 1970 ; וסעיף 14 ו- 2 לצו בדבר כללי האחריות לעבירה
(יו"ש) (מס' 225), תשכ"ח – 1968.

**פרטי העבירה:** הנאשם הנ"ל, באזור ומחוץ לאזור, בתאריך 29/1/04, היה שותף לגרימת מותם
של אחרים בכוונה, דהיינו :

כתוצאה מפיגוע ההתאבדות שאותו ביצע המתאבד עלי ג'עארה בכוונה לגרום
למותם של אורחים ישראליים ושהנאשם היה שותף לו כאמור בפרט האישום
הרביעי – נגרם מותה של גב' דינה איטח ז"ל.

**פרט שלושה עשר (פ"א 09891/04 מת"מ ירושלים):**

**מהות העבירה:** גרימת מוות בכוונה, עבירה לפי סעיף 51(א) ו- 7(ג) לצו בדבר הוראות ביטחון
(יו"ש) (מס' 378), תש"ל – 1970 ; וסעיף 14 ו- 2 לצו בדבר כללי האחריות לעבירה
(יו"ש) (מס' 225), תשכ"ח – 1968.

**פרטי העבירה:** הנאשם הנ"ל, באזור ומחוץ לאזור, בתאריך 29/1/04, היה שותף לגרימת מותם
של אחרים בכוונה, דהיינו :

כתוצאה מפיגוע ההתאבדות שאותו ביצע המתאבד עלי ג'עארה בכוונה לגרום
למותם של אורחים ישראליים ושהנאשם היה שותף לו כאמור בפרט האישום
הרביעי – נגרם מותו של מר רומן חונדיאשוווילי ז"ל.

**פרט ארבעה עשר (פ"א 09891/04 מת"מ ירושלים):**

**מהות העבירה:** גרימת מוות בכוונה, עבירה לפי סעיף 51(א) ו- 7(ג) לצו בדבר הוראות ביטחון
(יו"ש) (מס' 378), תש"ל – 1970 ; וסעיף 14 ו- 2 לצו בדבר כללי האחריות לעבירה
(יו"ש) (מס' 225), תשכ"ח – 1968.

**פרטי העבירה:** הנאשם הנ"ל, באזור ומחוץ לאזור, בתאריך 29/1/04, היה שותף לגרימת מותם
של אחרים בכוונה, דהיינו :

כתוצאה מפיגוע ההתאבדות שאותו ביצע המתאבד עלי ג'עארה בכוונה לגרום
למותם של אורחים ישראליים ושהנאשם היה שותף לו כאמור בפרט האישום
הרביעי – נגרם מותו של מר אלי צפורה ז"ל.

SHATSKY-JD01671

CONFIDENTIAL

SHATSKY-JD01672

9

<div dir="rtl">

<u>פרט חמישה עשר (פ"א 09891/04 מחמ"מ ירושלים):</u>

<u>מהות העבירה</u> : גרימת מוות בכוונה, עבירה לפי סעיף 51(א) ו- 7(ג) לצו בדבר הוראות ביטחון (יוש"ש) (מס' 378), תש"ל – 1970; וסעיף 14 ו- 2 לצו בדבר כללי האחריות לעבירה (יוש"ש) (מס' 225), תשכ"ח – 1968.

<u>פרטי העבירה</u> : הנאשם הנ"ל, באזור ומחוץ לאזור, בתאריך 29/1/04, היה שותף לגרימת מותם של אחרים בכוונה, דהיינו :

כתוצאה מפיגוע ההתאבדות שאותו ביצע המתאבד עלי ג'עארה בכוונה לגרום למותם של אזרחים ישראליים ושהנאשם היה שותף לו כאמור בפרט האישום הרביעי – נגרם מותה של <u>גב' נטליה גמריל ז"ל</u>.

<u>פרט שישה עשר (פ"א 09891/04 מחמ"מ ירושלים):</u>

<u>מהות העבירה</u> : ניסיון גרימת מוות בכוונה, עבירה לפי סעיף 51(א) ו- 7(ג) לצו בדבר הוראות ביטחון (יוש"ש) (מס' 378), תש"ל – 1970; וסעיפים 20-19, 14 ו- 2 לצו בדבר כללי האחריות לעבירה (יוש"ש) (מס' 225), תשכ"ח – 1968.

<u>פרטי העבירה</u> : הנאשם הנ"ל, באזור ומחוץ לאזור, בתאריך 29/1/04, היה שותף לניסיון גרימת מותם של אחרים בכוונה, דהיינו :

כתוצאה מפיגוע ההתאבדות שאותו ביצע המתאבד עלי ג'עארה בכוונה לגרום למותם של אזרחים ישראליים ושהנאשם היה שותף לו כאמור בפרט האישום הרביעי – נפצעו יותר מ-50 אזרחים בדרגות פציעה קשות וקלות ; וכן מת המחבל המתאבד.

<u>פרט שבעה עשר (פ"א 17869/04 תחנת מוריה):</u>

<u>מהות העבירה</u> : גרימת מוות בכוונה, עבירה לפי סעיף 51(א) ו- 7(ג) לצו בדבר הוראות ביטחון (יוש"ש) (מס' 378), תש"ל – 1970; וסעיף 14 ו- 2 לצו בדבר כללי האחריות לעבירה (יוש"ש) (מס' 225), תשכ"ח – 1968.

<u>פרטי העבירה</u> : הנאשם הנ"ל, באזור ומחוץ לאזור, בתאריך 22/2/04, היה שותף לגרימת מותם של אחרים בכוונה, דהיינו :

1. מספר ימים לפני המועד הנ"ל, תיכנן ע"א-רחמאן מקדאד והפעיל הצבאי עז-אלדין עליאן לרצוח פיגוע התאבדות ויאה רחירה לירים למרכז של אזרחים ישראליים.

עז-אלדין עליאן הודיע לע"א-רחמאן מקדאד כי איתר אדם בשם מוחמד זעול (כהלן – <u>המתאבד</u>) המוכן לבצע פיגוע התאבדות.

</div>

CONFIDENTIAL

SHATSKY-JD01672

CONFIDENTIAL

SHATSKY-JD01683



№ 14083

## TO WHOM IT MAY CONCERN

This certificate is valid only if the English and Arabic parts match each other

According to the information received from the Israeli Authorities, the International Committee of the Red Cross certifies that :

Mr:     AHMAD SALAH AHMAD  SALAH

From :    BETHLEHEM                    ID NO: Redacted965-6

Was arrested by the Israeli Authorities on (dd / mm / yyyy) :     08.03.2004

He is to date :        Sentenced

Length of sentence / administrative period : life sentence

He/She was released on (dd/mm/yyyy): XXXXXXXX .XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX

CICR

هذه الشهادة سارية المفعول فقط في حالة تطابق بياناتها باللغتين العربية والإنجليزية

استنادا إلى المعلومات الواردة من السلطات الإسرائيلية، تشهد اللجنة الدولية للصليب الأحمر بأن:

السيد/ة الآنسة _____

من _____ هوية رقم Redacted 965-6

كان/ت قد إعتقل/ت من قبل السلطات الإسرائيلية في يوم ٨ / شهر ٣ / سنة ٢٠٠٤

وهو/هي في هذا التاريخ : ينتظر المحاكمة _____ محكوم/ة _____ إداري _____

محكوم/ة أو إداري لمدة _____

وهو/هي أطلق سراحة/ها في يوم _____/ شهر _____ / سنة _____

Date:   04.01.2007
التاريخ

Place:  BETHLEHEM/NR
المكان

TANGUY DE BLAUWE
ICRC Delegate
توقيع مندوب اللجنة

PATRICIA E. GUIOTE

CONFIDENTIAL                                                                SHATSKY-JD01683

CONFIDENTIAL   SHATSKY-JD01687





№  14053

9712

## TO WHOM IT MAY CONCERN

**This certificate is valid only if the English and Arabic parts match each other**

According to the information received from the Israeli Authorities, the International Committee of the Red Cross certifies that :

Mr:    AHMAD SALAH AHMAD  SALAH

From :    BETHLEHEM                          ID NO: Redacted965-6

Was arrested by the Israeli Authorities on (dd / mm / yyyy) :    08.03.2004

He is to date :        Sentenced

Length of sentence / administrative period : life sentence

He/She was released on (dd/mm/yyyy): XXXXXXXX   XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX



المندوب عن اللجنة

هذه الشهادة سارية المفعول فقط في حالة تطابق بياناتها باللغتين العربية والإنجليزية

استنادا إلى المعلومات الواردة من السلطات الإسرائيلية، تشهد اللجنة الدولية للصليب الأحمر بأن:

السيد/ة الآنسة _____ أحمد _____ أحمد _____

من ___ بيت لحم ___ هوية رقم Redacted965-6 _____

كان/ت قد إعتقل/ت من قِبل السلطات الإسرائيلية في يوم _٨_ / شهر _٣_ / سنة _٢٠٠٤_

وهو/هي في هذا التاريخ : ينتظر المحاكمة _____ محكوم/ة ____ إداري _____

محكوم/ة أو إداري لمدة ___ مدى الحياة .

وهو/هي أطلق سراحة/ها في يوم ____ / شهر ____ / سنة ____

Date:   04.01.2007
التـاريـخ

Place:  BETHLEHEM/NR
المكـان

TANGUY DE BLAUWE
ICRC Delegate
توقيع مندوب اللجنة

CONFIDENTIAL   SHATSKY-JD01687

Exhibit 161

| Prisoner Salary Statement | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Prisoner no. 51520 | | | | | | | | |
| Prisoner Name: Ahmed Salah Ahmad Salah | | | | Document no. 901739656 | | | | |
| Month | Year | Beneficiary | ID no. | Bank Name | Branch | Account no. | Salary |
| | | | Redacted | | | | |
| 4 | 2020 | Ahmed Salah Ahmad Salah | Redacted 9656 | | | | 2,141.56 |
| 5 | 2020 | Ahmed Salah Ahmad Salah | Redacted 9656 | | | | 2,141.56 |
| 6 | 2020 | Ahmed Salah Ahmad Salah | Redacted 9656 | | | | 2,541.56 |
| 7 | 2020 | Ahmed Salah Ahmad Salah | Redacted 9656 | | | | 2,141.56 |
| 8 | 2020 | Ahmed Salah Ahmad Salah | Redacted 9656 | | | | 2,141.56 |
| 9 | 2020 | Ahmed Salah Ahmad Salah | Redacted 9656 | | | | 2,141.56 |
| 10 | 2020 | Ahmed Salah Ahmad Salah | Redacted 9656 | | | | 2,141.56 |
| 11 | 2020 | Ahmed Salah Ahmad Salah | Redacted 9656 | | | | 2,141.56 |
| 12 | 2020 | Ahmed Salah Ahmad Salah | Redacted 9656 | | | | 2,541.56 |
| 1 | 2021 | Ahmed Salah Ahmad Salah | Redacted 9656 | | | | 2,141.56 |
| 2 | 2021 | Ahmed Salah Ahmad Salah | Redacted 9656 | | | | 2,141.56 |

Confidential

Shatsky-JD00494-T

| Prisoner Salary Statement | | | | | | | |
|---|---|---|---|---|---|---|---|
| Prisoner no. 51520 | | | | | | | |
| Prisoner Name:  Ahmed Salah Ahmad Salah | | | | Document no.  901739656 | | | |
| Month | Year | Beneficiary | ID no. | Bank Name | Branch | Account no. | Salary |
| 3 | 2021 | Ahmed Salah Ahmad Salah | Redacted 9656 | | | | 2,141.56 |
| 4 | 2021 | Ahmed Salah Ahmad Salah | Redacted 9656 | | | | 2,089.38 |
| 5 | 2021 | Ahmed Salah Ahmad Salah | Redacted 9656 | | | | 2,089.38 |

Page 2 of 2

Confidential

Shatsky-JD00495-T

Original

كشف راتب الأسير

رقم الأسير   51520
اسم الأسير   احمد صلاح احمد صلاح                رقم البطاقة   901739656

| الراتب | رقم التحويل | النوع | رقم البطاقة | البنك | اسم المستفيد | السنة | الشهر |
|---|---|---|---|---|---|---|---|
| | | | | | | | |

Redacted

| 2,141.55 | | | Redacted 0656 | | احمد صلاح احمد صلاح | 2020 | 4 |
| 2,141.55 | | | Redacted 6656 | | احمد صلاح احمد صلاح | 2020 | 5 |
| 2,541.58 | | | Redacted 6656 | | احمد صلاح احمد صلاح | 2020 | 6 |
| 2,141.58 | | | Redacted 6656 | | احمد صلاح احمد صلاح | 2020 | 7 |
| 2,141.58 | | | Redacted 6656 | | احمد صلاح احمد صلاح | 2020 | 8 |
| 3,141.56 | | | Redacted 6656 | | احمد صلاح احمد صلاح | 2020 | 9 |
| 2,141.58 | | | Redacted 6656 | | احمد صلاح احمد صلاح | 2020 | 10 |
| 2,141.56 | | | Redacted 6656 | | احمد صلاح احمد صلاح | 2020 | 11 |
| 2,54.56 | | | Redacted 6656 | | احمد صلاح احمد صلاح | 2020 | 12 |
| 2,14.56 | | | Redacted 6656 | | احمد صلاح احمد صلاح | 2021 | |
| 2,14.56 | | | Redacted 6656 | | احمد صلاح احمد صلاح | 2021 | 2 |

Redacted

CONFIDENTIAL

Shatsky-JD00494

كشف راتب أسير

| | وقم الأسير | 51520 |
| اسم الأسير | احمد صلاح احمد صلاح | |

رقم الرتبة 901738656

| الراتب | رقم الحساب | الموقع | البنك | رقم البطاقة | اسم المستفيد | السنة | الشهر |
|---|---|---|---|---|---|---|---|
| 2,141.56 | | | | Redacted 9656 | احمد صلاح احمد صلاح | 2021 | 3 |
| 2,089.39 | Redacted | | | Redacted 9656 | احمد صلاح احمد صلاح | 2021 | 4 |
| 2,089.38 | | | | Redacted 1656 | احمد صلاح احمد صلاح | 2021 | 5 |

٢ من ٢صفحة

CONFIDENTIAL

Shatsky-JD00495

# Exhibit 162

CONFIDENTIAL                                    SHATSKY-JD01954-T

Palestinian National Authority          In the name of Allah, the      Palestinian National Authority
Ministry of Detainees & Ex-detainees affairs   Merciful, the Compassionate   Ministry of Detainees & Ex-detainees affairs
Ex-detainees Rehabilitation Program     [Palestine emblem]     Ex-detainees Rehabilitation Program

7681                                            Date: 9.25.2016

Honorable General Director of Detainees & Ex-detainees affairs,   17883

Greetings,

Re: Coupling a previous arrest period with the current period

Please join together the previous arrest periods and the current arrest period of the prisoner
_Amjad Adel Muhamad Aliwi_ bearer of ID no. Redacted _5587_ who is currently detained, on
_10.6.2015_, as we have confirmed his arrest periods and revealed they are security-related.
See them as follows:

|   |   |   | Year | Month | Days |
|---|---|---|---|---|---|
| OK | 1- 4.8.2002 until 10.8.2002 | | - | 6 | - |
| OK | 2- 3.4.2003 until 6.14.2004 | | 1 | 3 | 10 |
| OK | 3- 8.31.1995 until 1.10.1996 | | - | 4 | 10 |
| OK | 4- 10.26.1992 until 7.5.1993 | | - | 8 | 9 |
| OK | 5- 3.8.2007 until 9.2.2008 | | 1 | 6 | -6 |
| | | | 2 | 27 | 23 |
| | | | 4 | 3 | 23 |

[Illegible]

_Please attach indictments and court rulings to the [illegible]
before taking the measures._

_Audit_

_11.21.2016_

With the utmost respect and appreciation

OK

[Stamp:]  PLO                        [Stamp:]  PLO
Detainees and Ex-Detainees                     Detainees and Ex-Detainees
Affairs Commission                             Affairs Dept.
Nablus Directorate                             [Illegible]

Palestine Ramallah P.O. Box 2105 Tel 02-2428571/2   Palestine Ramallah P.O. Box 2105 Tel 02-2428571/2

Directorate Nablus – Tel 09-2374125 – Fax 09-2330123   Directorate Nablus – Tel 09-2374125 – Fax 09-2330123

CONFIDENTIAL                                    SHATSKY-JD01954-T

CONFIDENTIAL                                    17889                        SHATSKY-JD01963-T

*OK*

| [English] Palestinian National Authority<br>Ministry of Detainees & Ex-detainees Affairs<br>Gen. Dep. Detainees & Ex-detainees | [Emblem of the<br>Palestinian Authority] | [Arabic] Palestinian National Authority<br>Ministry of Detainees & Ex-detainees Affairs<br>Gen. Dep. Detainees & Ex-detainees |

**Main Prisoner Form**                                          7681 [illegible]

| Form no.: | | | | | | | | |
|-----------|---|---|---|---|---|---|---|---|
| Form issuance date: | 1.25.2016 | | | Ministry's administration/branch: | | Nablus | | |

[Round stamp:] PLO / Dep. Detainees & Ex-Detainees Affairs
03.02.2016 / Gen. Dir. Of Legal Affairs / Checked /
Indictments

**1. Basic information concerning the prisoner:**

| ID no. (9 digits) | Redacted | | | | | 5 | 5 | 8 | 7 |
|---|---|---|---|---|---|---|---|---|---|
| Four-part name: | First name | | Father's name | | Grandfather's name | | | Family name | |
| | Amjad | | Adel | | Muhamad | | | Aliwi | |

| Mother's name: | Sabiha | | Gender: | ☒ Male | ☐ Female |
|---|---|---|---|---|---|
| DoB: | Redacted / 1972 | | Place of birth: | | |
| Education: | ☐ Illiterate | ☐ Elementary | ☐ High school | ☐ Diploma | ☐ University | ☐ Higher education |
| Profession prior to arrest: | Laborer | | Organization: | | |
| Arrest date: | 10 / 6 / 2015 | | Place of arrest: | | Megido Detention Center |

| Arrest status: | ☐ Detained | ☐ Sentenced | ☐ Administrative | ☐ Free | ☐ Other |
|---|---|---|---|---|---|

| In case of life sentence according to ICRC Certificate | Day | Month | Year | Expected release date according to verdict: | Day | Month | Year |
|---|---|---|---|---|---|---|---|
| | | | | | | | |

| Permanent residence: | Governorate: | Nablus | Residential complex: | Redacted |
|---|---|---|---|---|

| Notes: | |
|---|---|

**2. Information concerning previous and current arrests:** Sixth arrest. Only those attested by ICRC certificates, in chronological order from newest to oldest.

| No. | Arrest date | Arrest type | Release date | Arrest period | | | Notes |
|---|---|---|---|---|---|---|---|
| | | | | Day | Month | Year | |
| 1. | 10.6.2015 | | In the detention center | | | | |
| 2. | 3.8.2007 | | 9.2.2008 | | | | |
| 3. | 10.26.1992 | Security | 7.5.1993 | | | | 3.6.15 [signature] |
| 4. | 3.4.2003 | | 6.14.2004 | | | | |
| 5. | 4.8.2002 | | 10.8.2002 | | | | |
| 6. | 8.31.1995 | | 1.10.1996 | | | | |

1

CONFIDENTIAL                                                    SHATSKY- JD01963-T

SHATSKY-JD01966-T [Redacted]

CONFIDENTIAL

[handwritten: 1.4.2016]

**Israel Defense Forces**

In the Military Court

Samaria

Before **a panel**

[stamp: This indictment was filed in the Military Court on: [handwritten: 17 December 2015]

Recorded in the court docket, file number: [handwritten: 3568/15]

Signature: [Signature]]

In the case of

Court file:        3568/15

Prosecution file: 2393/15

Police File:       3593/15

                   3202/15

                   4257/15

(Terrorist Activities Petah Tikva)

**The Military Prosecutor**

**- The Plaintiff -**

- versus -

[Handwritten in Arabic: Security-related]

[Arabic language stamp:]
PLO
Detainees & Ex-Detainees Department
2 March 2016
General Department for Legal Affairs
Checked
Indictments

**Amjad Adel Mohamed Aliwi**

(Detained since **6 October 2015**)

ID No. Redacted 5587, born Redacted 1972, resident of Nablus

**- the Defendant -**

**Indictment**

The abovenamed Defendant is hereby indicted for committing the following offenses:

<u>First Count:</u>

<u>Nature of the Offense:</u> Membership and activity in an unlawful association, an offense pursuant to Regulations 84 and 85(1)(a) of the Defense Regulations (Emergency) – 1945.

<u>Details of the Offense:</u> The abovenamed Defendant, within the Region, was a member or acted as a member of an unlawful association; to wit:

Starting at a date not known precisely to the Prosecution but no earlier than the second half of 2014, or thereabouts, the **Defendant** was a member of the Hamas organization (hereafter, "**Hamas**"), which is an unlawful association. As a member of that organization, the **Defendant** acted as stated in the following counts of indictment and as described below:

a. During the second half of 2014 or thereabouts, Bassem Amin Mohamed Saeh (hereafter, "**Bassem**") spoke with the **Defendant** about joint military activity under the aegis of Hamas. Subsequently, the **Defendant** introduced Amjad to Fares Sa'di Abdallah Khalfa (hereafter, "**Fares**") and Mohammed Imad Ramadan Qutb (hereafter, "**Mohammed**") in hopes that the latter two would join with Amjad in military activity.

b. Thereafter, having been instructed by Bassem, Fares headed to the Al-Hamidiyya Mosque, or a place nearby, and met with the **Defendant**. At that meeting,

SHATSKY-JD01966-T

CONFIDENTIAL

SHATSKY-JD01967-T                                                    CONFIDENTIAL

the **Defendant** and Fares spoke about future military activity. At the same meeting, the **Defendant** informed Fares of his desire to find explosives for the purpose of military activity. Then, prompted by the words of the **Defendant**, Fares told the former that he was able to perform the necessary activity, specifically including the manufacture of explosive material for the military activity. Subsequently, before parting, the **Defendant** and Fares agreed to meet again in order to make progress on the military activity.

c. During July 2014 or thereabouts, the **Defendant** and Omar Mohammed Salim Abdel Karim Breik (hereafter, "**Omar**") spoke about joint military activity in the form of terror attacks against Israeli targets.  On that occasion, the **Defendant** detailed to Omar his desire to find explosives and financial backing for the activity. In response, Omar agreed to assist the **Defendant** in the matter.

d. In February 2015 or thereabouts, in Nablus or the vicinity, the **Defendant** assented to a proposal from Iyad Wadi' Tawfiq Abu Zahra (hereafter, "**Iyad**") to take military action on behalf of the Hamas organization. On this occasion, the **Defendant** proposed to Iyad the recruitment of Ragheb Ahmad Mohammed Aliwa (hereafter, "**Ragheb**"). The **Defendant** agreed to that recruitment.

e. In April 2015 or thereabouts, in or near Nablus, the **Defendant** recruited Ragheb to a military cell (hereafter, "**the Military Cell**") under the Hamas organization. The Military Cell had set itself the objective of perpetrating a shooting attack against Israeli targets, and it intended to use weaponry that the **Defendant** would find for the purpose.  In addition, the **Defendant** asked Ragheb to recruit an additional person to help the Military Cell in its activity. The latter assented to the request on condition that he would not reveal the additional recruit's identity to the **Defendant**.

f. During April 2015 or thereabouts, the **Defendant** and Bassem spoke about the joint military activity. On that occasion, the **Defendant** informed Bassem about further people who had long numbered among the Military Cell, and the two agreed that Bassem would help in the financing of the Military Cell's activities, specifically including funding of the war materiel that it would use, while the **Defendant** would see to the recruitment of further operatives for the cell and to the transfer of the war materiel into their hands. The two also agreed that Mohammed would help them with their military activity. Then Bassem approached Hamza Saleh Rif'at Ya'ish (hereafter, "**Hamza**") and proposed to the latter the purchase of weaponry some of which would be used for the cell's military activity. The latter assented to the proposal.

g. In May 2015 or thereabouts, Bassem passed to the **Defendant** approximately ₪53,000 which he had received from Hamza for the purpose of procuring weaponry to be used for the Military Cell's activity. Then the **Defendant** approached Ghaleb Sa'id Ghaleb Kharyush (hereafter, "**Ghaleb**") and asked assistance from the latter in finding weaponry. The latter did as requested.

Subsequently, the **Defendant** and Mohammed made their way toward Al-Rawda Street. When they arrived,

[Arabic language stamp:]
PLO
Detainees & Ex-Detainees
Department
2 March 2016
General Department for Legal
Affairs
Checked
Indictments

SHATSKY-JD01967-T                                                    CONFIDENTIAL

SHATSKY-JD01968-T                                                                CONFIDENTIAL

h.  Subsequently, the **Defendant** transferred to Mohammed a box containing bullets. Then, as instructed by Bassem, Mohammed put the abovementioned box into a hiding place.

i.  During August 2015 or thereabouts, and in light of Ragheb's request, the **Defendant** approached Bassem and asked for the return of the handgun for the purpose of the Military Cell's activity. Accordingly, Bassem gave the handgun to Mohammed and asked the latter to pass it to the **Defendant**. As requested, Mohammed passed the handgun to the **Defendant**, who then, as stated, passed it to Ragheb.

j.  On a number of occasions during the activity of the Military Cell, the **Defendant** received various sums of money from Iyad, amounting to thousands of shekels, for the purpose of the cell's activity.

**The Defendant's membership in Hamas and in the Military Cell continued until the date of his arrest.**

> [Arabic language stamp:]
> PLO
> Detainees & Ex-Detainees
> Department
> 2 March 2016
> General Department for Legal
> Affairs
> Checked
> Indictments

**Second Count:**

**Nature of the Offense:** Attempted intentional causation of death, an offense pursuant to Sections 209(a) and 198 of the Security Provisions Order [Consolidated Version] (Judea and Samaria) (No. 1651), 5770-2009.

**Details of the Offense:** The abovenamed Defendant, within the Region, attempted to intentionally bring death to a person; to wit:

a.  During August or thereabouts, at Beit Furiq Junction or nearby, using the weapon that the **Defendant** had purchased and passed to Ragheb as stated above, and under the agreement with Ragheb, the members of the Military Cell under the responsibility of **the Defendant** — Yahya and Samir — perpetrated a shooting terror attack against an Israeli vehicle with the intent of bringing death to a Jewish resident as part of their activity in the Military Cell.

b.  One day after perpetrating the shooting attack, or thereabouts, Yahya and Samir updated Ragheb regarding the perpetration of the abovementioned shooting terror attack at Beit Furiq Junction and the attack's results.

c.  Some time afterward, Ragheb approached the **Defendant** and updated him regarding the perpetration of the abovementioned terror attack. After that, the latter updated Bassem and Iyad regarding the shooting terror attack that the cell's members had perpetrated. **By their deeds as stated above, the members of the cell attempted to bring death to a Jewish resident.**

**Third Count:**

**Nature of the Offense:** Attempted intentional causation of death, an offense pursuant to Sections 209(a) and 198 of the Security Provisions Order [Consolidated Version] (Judea and Samaria) (No. 1651), 5770-2009.

**Details of the Offense:** The abovenamed Defendant, within the Region, attempted to intentionally bring death to a person; to wit:

    a.   On 30 August 2015, at Beit Jit Junction or nearby, using the weapon that the **Defendant** had purchased and passed to Ragheb as stated above, Yahya and Samir perpetrated an additional shooting terror attack, at close range, against an Israeli vehicle, a Hyundai with Israeli license plate number 70-808-78 (hereafter, "**the Israeli Vehicle**") driven by

SHATSKY-JD01968-T                                                    CONFIDENTIAL

CONFIDENTIAL

[Translator's note: the fact that the next paragraph is "H", means that this page should probably have been places after SHATSKY-JD01970-T]

M16 model, engraved with serial number 700326K (hereafter, "**the Weapon**"). Immediately afterward, Mohammed and the **Defendant** met Ragheb. Then the **Defendant** passed the Weapon to Ragheb, who would be using it for military activity.

h. In June 2015 or thereabouts, the **Defendant** asked Mohammed to inform Bassem that there was another M16 weapon (hereafter, "**the Additional Weapon**"), priced at ₪53,000, which the **Defendant** wished to purchase. Mohammed did as requested. Two days afterward, or thereabouts, the **Defendant** received the sum of ₪50,000 from **Bassam**, with Mohammed as intermediary. Subsequently, the **Defendant** asked Iyad to examine the abovementioned weapon before the purchase. then, after the weapon was examined by

[from here onward on this page, reading is impossible because another page was placed on this one]

SHATSKY-JD01970-T

CONFIDENTIAL

[handwritten in Arabic: continues from [illegible]]

    Ronen Edri at the same time, with the intent of bringing death to the latter. The last-mentioned perpetrated the above deeds as part of their activity in the Military Cell.

b.  One day after perpetrating the shooting attack, or thereabouts, Yahya and Samir updated Ragheb regarding the perpetration of the abovementioned shooting terror attack at Beit Jit Junction and the attack's results.

c.  Sometime afterward, Ragheb approached the **Defendant** and updated him regarding the perpetration of the abovementioned terror attack. After that, the latter updated Iyad and Bassem regarding the mounting of the shooting terror attack that the cell's members had perpetrated.

    **By their deeds as stated above, the members of the cell attempted to bring death to Ronen Edri.**

[Arabic language stamp:]
PLO
Detainees & Ex-Detainees
Department
2 March 2016
General Department for Legal Affairs
Checked
Indictments

**Fourth Count:**

**Nature of the Offense:** Intentional causation of death, an offense pursuant to Sections 209(a) and 199c (a and b) of the Security Provisions Order [Consolidated Version] (Judea and Samaria) (No. 1651), 5770-2009.

**Details of the Offense:** The abovenamed Defendant, within the Region, intentionally caused the death of a person; specifically:

a.  During September 2015 or thereabouts, Ragheb and Yahya agreed on a shooting terror attack to be perpetrated by the Military Cell, during which — besides the central objective guiding the Military Cell; in other words, besides bringing death to Jewish residents — the cell would attempt to kidnap a Jewish resident (hereafter, "**the Kidnapping Attack**").

b.  Subsequently, with Yahya and Ragheb having agreed regarding the perpetration of the Kidnapping Attack, the latter approached the **Defendant** and asked his approval and assistance for the abovementioned terror attack. The latter responded that he would first consult his superiors and then let Ragheb know. Shortly thereafter, Amjad approached Iyad and Bassem, among others, and informed them of the cell's desire to perpetrate a kidnapping attack, and he requested their approval. They gave their blessing to the plan for the abovementioned terror attack. Then the **Defendant** informed Ragheb that they had approval for perpetrating the Kidnapping Attack and that, as requested, he would help him to transport and hide the kidnap victim.

c.  On 1 October 2015, at Beit Furiq Junction or nearby, the Military Cell over which the **Defendant** and others were responsible — and the members of which included, among others, Ragheb, Yahya, Samir, Karam Lutfi Fathi Rizq (hereafter, "**Karam**"), Zeid Ziyad Jamil Amer (hereafter, "**Zeid**") — perpetrated a shooting terror attack, by use of the Weapon and handgun that the **Defendant** had purchased and passed to Ragheb, against a Mitsubishi vehicle carrying Israeli license plate number 95-731-10 (hereafter, "**the**

**Mitsubishi**") and occupied at the time by members of the Henkin family: Eitam Henkin of blessed memory, Na'ama Henkin of blessed memory, and their four small children. **By the abovestated deeds, the members of the cell intentionally brought death to Eitam Henkin of blessed memory.**

**Fifth Count:**

SHATSKY-JD01970-T

CONFIDENTIAL

SHATSKY-JD01971-T                                                        CONFIDENTIAL

**Nature of the Offense**: Intentional causation of death, an offense pursuant to Sections 209(a) and 199c (a and b) of the Security Provisions Order [Consolidated Version] (Judea and Samaria) (No. 1651), 5770-2009.

**Details of the Offense**: The abovenamed Defendant, within the Region, intentionally caused the death of a person; specifically:

By the deeds stated in Subsection c of the previous count of indictment, **the members of the cell intentionally brought death to Na'ama Henkin of blessed memory.**

**Sixth Count:**

**Nature of the Offense**: Attempted kidnapping in aggravating circumstances, an offense pursuant to Sections 213(d) and 198 of the Security Provisions Order [Consolidated Version] (Judea and Samaria) (No. 1651), 5770-2009.

**Details of the Offense**: The abovenamed Defendant, within the Region, kidnapped a person while knowing that the kidnap victim's life would be in danger, or kidnapped a person for the purpose of extortion or threat;

to wit:

By the deeds stated in the fourth count of indictment, the members of the cell attempted to kidnap the occupants of the vehicle.

[Arabic language stamp:]
PLO
Detainees & Ex-Detainees
Department
2 March 2016
General Department for Legal
Affairs
Checked
Indictments

**Seventh Count:**

**Nature of the Offense**: Attempted intentional causation of death, an offense pursuant to Sections 209(a) and 198 of the Security Provisions Order [Consolidated Version] (Judea and Samaria) (No. 1651), 5770-2009.

**Details of the Offense**: The abovenamed Defendant, within the Region, attempted to intentionally bring death to a person; to wit:

By the deeds stated in the fourth count of indictment, the members of the cell attempted to bring death to M.H., the 9-year-old son of Eitam and Na'ama Henkin of blessed memory.

**Eighth Count:**

**Nature of the Offense**: Attempted intentional causation of death, an offense pursuant to Sections 209(a) and 198 of the Security Provisions Order [Consolidated Version] (Judea and Samaria) (No. 1651), 5770-2009.

**Details of the Offense**: The abovenamed Defendant, within the Region, attempted to intentionally bring death to a person; to wit:

By the deeds stated in the fourth count of indictment, the members of the cell attempted to bring death to N.H., the 7-year-old son of Eitam and Na'ama Henkin of blessed memory.

**Ninth Count:**

**Nature of the Offense:** Attempted intentional causation of death, an offense pursuant to Sections 209(a) and 198 of the Security Provisions Order [Consolidated Version] (Judea and Samaria) (No. 1651), 5770-2009.

**Details of the Offense:** The abovenamed Defendant, within the Region, attempted to intentionally bring death to a person; to wit:

By the deeds stated in the fourth count of indictment, the members of the cell attempted to bring death to N.H., the 4-year-old son of Eitam and Na'ama Henkin of blessed memory.

**Tenth Count:**

CONFIDENTIAL

SHATSKY-JD01972-T                                                  CONFIDENTIAL

**Details of the Offense**: The abovenamed Defendant, within the Region, attempted to intentionally bring death to a person; to wit:

By the deeds stated in the fourth count of indictment, the members of the cell attempted to bring death to I.H., the 10-month-old son of Eitam and Na'ama Henkin of blessed memory.

**Eleventh Count:**

**Nature of the Offense**: Harboring, an offense pursuant to Sections 245 and 333 of the Security Provisions Order [Consolidated Version] (Judea and Samaria) (No. 1651), 5770-2009.

**Details of the Offense**: The abovenamed Defendant, within the Region, helped a person, or gave shelter to some person, who had violated security-related legislation or who was engaging, or had engaged, in some activity intended to harm the public welfare, the welfare of the forces and soldiers of the IDF, and the maintenance of public order, or who could be reasonably suspected of having done so, whether the means of help consisted of information, shelter, food, drink, money, clothing, weaponry, ammunition, supplies, fodder, means of transport, kerosene or any other fuel, or whether it was any other means; to wit:

a. Further to what the fourth count of indictment relates, one of the bullets struck Karam during the murderous attack and wounded him in the left arm. Karam was therefore taken to Al-Arabi Al-Takhasusi Hospital, in Rafidiya (hereafter, "**the Hospital**)", for medical treatment.

b. A day later or thereabouts, Ragheb approached the **Defendant**, informed him of Karam's injury, and asked him to help financially in funding the medical treatment. At that point, the **Defendant** approached Mohammed, informed him regarding the injury that Karam had sustained in the course of the terror attack, and asked Mohammad to urgently approach Bassem in hopes that the latter would help fund the medical treatment. Mohammad did as asked, informing Bassem of the murderous attack and its consequences. Then Bassem gave Mohammad the sum of ₪9,000 for funding Karam's medical treatment, and the latter passed the funds to the **Defendant** as agreed.

c. Concurrently, the **Defendant** approached Iyad, informed him regarding the injury that Karam had sustained in the course of the terror attack, and asked Iyad too for assistance in funding the medical treatment. Then the **Defendant** passed the sum of ₪5,000 to Amjad for the purpose of funding Karam's medical treatment.

d. Shortly afterward, when the **Defendant** had received the money for funding the medical treatment from his superiors, he gave Ragheb the sum of ₪6,000. On the same occasion, the **Defendant** asked that Karam be moved from the Hospital to Karam's own home, so as to be treated there by a physician whom the **Defendant** had found for the purpose.

[Arabic language stamp:]
PLO
Detainees & Ex-Detainees
Department
2 March 2016
General Department for Legal Affairs
Checked
Indictments

e.  Eventually, Ragheb approached the **Defendant** and asked his permission to move Karam back to the Hospital because of the latter's medical condition. The **Defendant** assented to the request and told Ragheb to move Karam to the Hospital.

CONFIDENTIAL

SHATSKY-JD01973-T                                                    CONFIDENTIAL

**Twelfth Count:**

**Nature of the Offense**: Unlicensed manufacture of an explosive object, an offense pursuant to Section 230
(a and b) of the Security Provisions Order [Consolidated Version] (Judea
and Samaria) (No. 1651), 5770-2009.

**Details of the Offense**: The abovenamed Defendant, within the Region, manufactured an explosive device
with no permit given by or on behalf of a military commander, or in violation of the
terms of the permit; to wit:

a.  In September 2014 or thereabouts, in Nablus or nearby, and in accordance with planning
by the **Defendant** and Omar regarding the manufacture of explosive material as stated in
the first count of indictment, Omar gave the **Defendant** materials for manufacturing an
explosive material.

b.  Subsequently, on Fatair Street in Nablus, or nearby, and by prior agreement, the
**Defendant** and Fares met in order to carry out their plan regarding the manufacture of
explosive material as stated in the first count of indictment. During the abovementioned
meeting, the **Defendant** gave Fares chemicals including carbolic acid, nitric acid,
hydrochloric acid, some 6 kilograms of ammonium chloride, and other chemicals. The
**Defendant** received those materials, among others, from Omar as stated above in
Subsection a, for the purpose of manufacturing an explosive material.

[Arabic language stamp:]
PLO
Detainees & Ex-Detainees
Department
2 March 2016
General Department for Legal
Affairs
Checked
Indictments

c.  A month later or thereabouts, in the Old City of Nablus or nearby, Fares and the
**Defendant** met and the latter took a list of equipment that Fares required for the
manufacture of the explosive material. After another two weeks, or thereabouts, in keeping
with Fares' request, the **Defendant** gave him the equipment that he had requested for the
purpose of manufacturing an explosive material. It included a scale, funnel, beakers, an
Erlenmeyer flask, and a filter for straining.

d.  In addition, during their abovementioned meeting, the **Defendant** asked Fares to teach
further operatives about manufacturing explosives. The latter declined the **Defendant's**
request and suggested the alternative of passing the **Defendant** a compact disc
containing video lessons on preparing explosives. The latter accepted the suggestion.
Then the **Defendant** made duplicates of the abovementioned compact disc and passed
them to the **Defendant**.

e.  Subsequently, having learned about other chemicals that he required in order to
manufacture an explosive material, Fares approached the **Defendant** and gave him a list
of additional materials that he would need. After another month, or thereabouts, in keeping
with the abovementioned request from Fares, the **Defendant** passed him 10 kilograms
more of ammonium chloride.

f.  At the start of 2015 or thereabouts, in the Old City of Nablus or nearby, the **Defendant**
met with Fares. On that occasion, the **Defendant** asked Fares to manufacture explosive
material for him. The latter assented to the request and replied that for the purpose, he
would require sulfuric acid. Accordingly, Fares and the **Defendant** traveled to a petrol

station on Beit Ibba Street in Nablus, or somewhere nearby, and there the **Defendant** purchased sulfuric acid as requested.

SHATSKY-JD01973-T

CONFIDENTIAL

SHATSKY-JD01974-T                                              CONFIDENTIAL

g.  During that same time together, and in light of Fares' failures in manufacturing explosive material, the latter gave the **Defendant** a letter containing questions regarding how to prepare explosive material. The **Defendant** took that letter and passed it to Iyad.

h.  Subsequently, in the back yard of the house in Nablus or thereabouts, Fares manufactured an explosive material by means of the chemicals and laboratory equipment that he had received from the **Defendant**. Later, and in the light of his failure to manufacture explosive material, he approached the **Defendant** and requested more sulfuric acid. Then, on Feisal Street or nearby, the **Defendant** gave Fares additional sulfuric acid.

i.  Later the same day, or thereabouts, Fares manufactured explosive material according to the instructional videos for manufacturing explosive material which he had previously watched as stated. In the end, the latter gave the **Defendant** approximately 10 grams of explosive material.

**Thirteenth Count:**

**Nature of the Offense**: Trading in military equipment, an offense pursuant to Sections 233 (b) and 199c (a and b) of the Security Provisions Order [Consolidated Version] (Judea and Samaria) (No. 1651), 5770-2009.

**Details of the Offense**: The abovenamed Defendant, within the Region, traded or otherwise dealt with war materiel while having no permit signed by or on behalf of the regional commander; to wit:

By acting as stated in the preceding counts of indictment, as the **Defendant** procured, took possession of, or passed to someone else the Weapon, ammunition, and handgun, he was dealing in war materiel without a legal license to do so.

[Arabic language stamp:]
PLO
Detainees & Ex-Detainees
Department
2 March 2016
General Department for Legal
Affairs
Checked
Indictments

**Fourteenth Count:**

**Nature of the Offense**: Trading in military equipment, an offense pursuant to Sections 233(b) and 198 of the Security Provisions Order [Consolidated Version] (Judea and Samaria) (No. 1651), 5770-2009.

**Details of the Offense**: The abovenamed Defendant, within the Region, traded or otherwise dealt with war materiel while having no permit signed by or on behalf of the regional commander; to wit:

In July 2015 or thereabouts, in Nablus or nearby, Iyad requested the **Defendant's** help in procuring hand grenades. The latter assented to the request. Accordingly, Iyad gave the **Defendant** the sum of ₪6,000 for the purpose of that purchase. In the end, the **Defendant** did not procure the requested war materiel.

**Witnesses for the Prosecution:**

**Police File 3593/15:**

[handwritten in Arabic: Officer Nathir Sadar]

1.  <sup>Redacted</sup>5025 Senior Staff Sergeant Major Nathir Sadar (taker of the Defendant's statements from 8 October 2015 and 6 December 2015).

[handwritten in Arabic: Officer Ghassan Beibar]

2.  <sup>Redacted</sup>8039 Master Sergeant Ghassan Beibar (taker of the Defendant's statements from 22 November 2015 and 15 [unclear] 2015).

[handwritten in Arabic: Officer Radi Khatib]

3.  <sup>Redacted</sup>5588 Master Sergeant Radi Khat b (taker of the Defendant's statements from 13 October 2015, 20 October 2015, 26 October 2015, 3 November 2015, and 7 December 2015.)

CONFIDENTIAL

SHATSKY-JD01975-T                                                          CONFIDENTIAL

[handwritten in Arabic: Officer Fares Jabr]
4.  *Redacted*6618 Advanced Staff Sergeant Fares Jabr (preparer of a cover sheet for exhibits dated 19 October 2015).

[handwritten in Arabic: Asaf Ma ka]
5.  *Redacted*3520 Superintendent Asaf Malka (preparer of an activity report dated 13 November 2015).

[handwritten in Arabic: Ertion [illegible]]
6.  *Redacted*9462 Ertiom Tsamoglez (preparer of a cover sheet for the exhibits dated 2 October 2015).

[handwritten in Arabic: Sharif Uwida]
7.  *Redacted*1175 Sharif Uweida (preparer of a memorandum dated 1 October 2015, and a cover sheet for exhibits, an activity report, and a form for sending  exhibits to the ballistics lab dated 2 October 2015 and 6 October 2015).

[handwritten in Arabic: Officer Yoel Haji]
8.  *Redacted*1572 Advanced Staff Sergeant Yoel Hagai (preparer of a receipt form for exhibits for review dated 2 October 2015 and 6 October 2015).

[handwritten in Arabic: Amer Suleiman]
9.  *Redacted*2978 Amer Suleiman (preparer of a cover sheet for exhibits dated 4 October 2015, 5 October 2015, and 6 October 2015, preparer of an acknowledgement of investigation material received from the police on 28 October 2105, and preparer of a memorandum from 10 November 2015).

[handwritten in Arabic: Meir Doke ]
10. Superintendent Meir Dokel (preparer of a memorandum dated 8 October 2015).

[handwritten in Arabic: Officer Yifat Biton]                [handwritten in Arabic: Calculation of estimates regarding damage and losses sustained by Israel]
11. *Redacted*1917 Advanced Staff Sergeant Yifat Biton Levanon (preparer of the verification of a confession to causation of harm as a result of operations hostile to Israel dated 6 November 2015).

[handwritten in Arabic: Officer Avi Nakar]           [handwritten in Arabic: Expert in fingerprints]
12. *Redacted*6069 Advanced Staff Sergeant Avi Nakar (preparer of a photo board dated 1 October 2015, a forensic examination report dated 1 October 2015 and 4 October 2015, a report on seizure of exhibits dated 4 October 2015, and a report documenting the processing of fingerprints dated 6 October 2015).

[handwritten in Arabic: Officer Tomer Ahrak]
13. *Redacted*3833 Sergeant Major Tomer Ahrak (preparer of a memorandum dated 10 November 2015).

[handwritten in Arabic: Officer Yaacov Yerushalmi]
14. *Redacted*3290 Senior Staff Sergeant Major Yaacov Yerushalmi (preparer of a memorandum dated 16 November 2015).

[handwritten in Arabic: Officer Haim Cohen]
15. *Redacted*5117 Senior Non-Commissioned Officer Haim Cohen (preparer of a photo board dated 15 October 2015 and an exhibits seizure report dated 18 October 2015).

[handwritten in Arabic: Officer Amar Hassan]                          [Arabic language stamp:]
16. *Redacted*2471 Advanced Staff Sergeant Amar Hassan (preparer of a memorandum dated 6 October 2015).          PLO
                                                                                                              Detainees & Ex-Detainees
[handwritten in Arabic: Officer Sima Avrahami]                                                                      Department
17. *Redacted*9898 Master Sergeant Sima Avrahami (preparer of a receipt for exhibits for review dated 19 October 2015).   2 March 2016
                                                                                                       General Department for Legal
[handwritten in Arabic: Yaacov Grenik]                                                                            Affairs
18. *Redacted*7380 Yaacov Grenik (preparer of an exhibits seizure report dated 4 October 2015).                    Checked
                                                                                                                  Indictments
[handwritten in Arabic: Officer Majed Shuf ]
19. *Redacted*7893 Sergeant Major Majed Shufi (chain of exhibit).

[handwritten in Arabic: Inspector Shlomo Siton]
20. *Redacted*0730 Inspector Shlomo Siton (preparer of an activity report dated 6 October 2015).

[handwritten in Arabic: Officer Yosi Larnav]
21. *Redacted*3995 Senior Staff Sergeant Major Yosi Larnav (preparer of an activity report dated 6 October 2015).

[handwritten in Arabic: Officer Shmuel Alya]
22. *Redacted*2542 Master Sergeant Shmuel Alya (preparer of an activity report dated 3 October 2015).

[handwritten in Arabic: Officer Ouni Yujenk]
23. *Redacted*9571 Master Sergeant Ouni Yujenk (preparer of an activity report dated 1 October 2015).

[handwritten in Arabic: Officer Eran Ashkenazi]
24. *Redacted*8272 Senior Staff Sergeant Major Eran Ashkenazi (preparer of an activity report dated 1 October 2015).

[handwritten in Arabic: Officer Alex Vino]
25. *Redacted*2695 Senior Staff Sergeant Major Alex Vino (preparer of an activity report dated 1 October 2015).

[handwritten in Arabic: Officer Eyal Kalo]

26.   Redacted 6577 Master Sergeant Eyal Kalo (preparer of an activity report dated 1 October 2015).

[handwritten in Arabic: Michal Levin Elad]

27.   Redacted 6354 Superintendent Michal Levin Elad (preparer of an examination report dated 12 October 2015 and 5 November 2015).

SHATSKY-JD01975-T                                                                                                    CONFIDENTIAL

SHATSKY-JD01976-T                                                    CONFIDENTIAL

[handwritten in Arabic: Officer Tomer Arbeli]

28.   Redakt 3485 Inspector Tomer Arbeli (preparer of an examination report dated 12 October 2015, 18 October 2015, 19 October 2015, and 5 November 2015).

[handwritten in Arabic: Officer Moshe Spitzen]

29.   Superintendent Moshe Spitzen (preparer of an expert opinion dated 9 November 2015).

[handwritten in Arabic: Officer Avi Kaufman]

30.   Superintendent Avi Kaufman (preparer of an expert opinion dated 13 October 2015 and 27 October 2015 and preparer of a confession to conspiracy for the series of pending incidents dated 13 October 2015).

[handwritten in Arabic: Dr. Yuri Mezin]

31.   Deputy Commissioner Dr. Yuri Mezin (preparer of a death certificate dated 1 October 2015). [handwritten in Arabic: Death certificates]

[handwritten in Arabic: Yosi Eisen]

32.   Yosi Eisen (preparer of a discovery verification dated 15 October 2015).

[handwritten in Arabic: Captain Shmuel Rabinowish, Defense Forces, details with the Prosecution]

33.   Captain Shmuel Rabinowitz (IDF, details with the Prosecution)

[handwritten in Arabic: Officer Shahar Yonah, Defense Forces,, details with the Prosecution]

34.   First Lieutenant Shahar Yonah (IDF, details with the Prosecution)

[handwritten in Arabic: Samir Zuheir Ibrahim Kusa]

35.   Redacted 1700 Samir Zuheir Ibrahim Kusa (detainee, Prosecution File 2253/15).

[handwritten in Arabic: Karam Lutfi Fathi Rizq]

36.   Redacted 8869 Karam Lutfi Fathi Rizq (detainee, Prosecution File 2250/15).

[handwritten in Arabic: Zeid Ziyad Jamil Amer]

37.   Redacted 7710 Zeid Ziyad Jamil Amer (detainee, Prosecution File 2251/15).

[handwritten in Arabic: Basam Ramhi Daoud Abu Jezala]

38.   Redacted 1855 Basam Ramhi Daoud Abu Jezala (detainee, Prosecution File 2255/15).

[handwritten in Arabic: Yahia Muhamad Naif Abdullah Hajj Hamad]

39.   Redacted 2046 Yahia Muhamad Naif Abdullah Hajj Hamad (detainee, Prosecution File 2252/15).

[handwritten in Arabic: Muhammad Nasuh Abd Ashliyeh]

40.   Redacted 1447 Muhammad Nasuh Abd Ashtiyeh (detainee, Prosecution File 2239/15).

[handwritten in Arabic: Ghaleb Sa'di Ghaleb Kharyush]

41.   Redacted 2142 Ghaleb Sa'di Ghaleb Kharyush (detainee, Prosecution File 2248/15).

[handwritten in Arabic: Bassam Amin Mohammed Sayeh]

42.   Redacted 8834 Bassam Amin Mohammed Sayeh (detainee, Prosecution File 2305/15).

[handwritten in Arabic: Muhammad Imad Ramadan Qutb]

43.   Redacted 5744 Muhammad Imad Ramadan Qutb (detainee, Prosecution File 2285/15).

[handwritten in Arabic: Fares Sa'di Abdallah Khalfa]

44.   Redacted 7294 Fares Sa'di Abdallah Khalfa (detainee, Prosecution File 2386/15).

[handwritten in Arabic: Hamza Saleh Rif'at Ya'ish]

45.   Redacted 4104 Hamza Saleh Rif'at Ya'ish (detainee).

[handwritten in Arabic: Omar Mohammed Salim Abdel Karim Breik]

46.   Redacted 3882 Omar Mohammed Salim Abdel Karim Breik (detainee).

[handwritten in Arabic: Mohamed Nazmi Mohamed Amar]

47.   Redacted 0262 Mohamed Nazmi Mohamed Amar (released)

[handwritten in Arabic: Fares Sa'di Abdallah Khalfa]

48.   Redacted 7286 Fares Sa'di Abdallah Khalfa (released, mobile phone number 0599596433).

[handwritten in Arabic: Amihai Azulai]                [handwritten in Arabic: details with the Prosecution]

49.   Amihai Azulai (details with the Prosecution).

[handwritten in Arabic: Noa Shalki]

50.   Noa Shalgi (details with the Prosecution)

[handwritten in Arabic: Elitzur Eliahu Trabelsi] [handwritten in Arabic: details with the Prosecution]

51.   Elitzur Eliahu Trabelsi (details with the Prosecution).

[handwritten in Arabic: Zvi Goren]

52.   Zvi Goren (details wi h the Prosecution)

[handwritten in Arabic: Ovadia Reisensivi]

53.   Ovadia Reisenzvi (details with the Prosecution)

[handwritten in Arabic: The figure code-named Sheffer]        [handwritten in Arabic: General Security Services]

54.   The figure code-named "Sheffer" (General Security Service) (details with the Prosecution)

[handwritten in Arabic: The figure code-named Maurice]        [handwritten in Arabic: General Security Services]

55.   The figure code-named "Maurice" (General Security Service) (details with the Prosecution)

[Arabic language stamp:]
PLO
Detainees & Ex-Detainees Department
2 March 2016
General Department for Legal Affairs
Checked
Indictments

SHATSKY-JD01976-T                                                    CONFIDENTIAL

SHATSKY-JD01977-T                                                                    CONFIDENTIAL

**Police File 3202/15:**        [handwritten in Arabic: Officer Sassi Ezra]

56. ᴿᵉᵈᵃᶜᵗⁱⁿᵍ6831 Advanced Staff Sergeant Sassi Ezra (preparer of a receipt for exhibits for review dated 8 September 2015).

        [handwritten in Arabic: Ezra Shoshani (expert)]

57. Superintendent Ezra Shoshani (preparer of an expert opinion dated 16 September 2015).

        [handwritten in Arabic: Haim Cohen]

58. ᴿᵉᵈᵃᶜᵗⁱⁿᵍ5117 Senior Non-Commissioned Officer Haim Cohen (preparer of an exhibits seizure report dated 31 August 2015 and a forensic examination report dated 6 September 2015).

        [handwritten in Arabic: Boaz Hindik Cohen]

59. ᴿᵉᵈᵃᶜᵗⁱⁿᵍ5782 Boaz Hindig Cohen (preparer of an exhibits seizure report dated 31 August 2015 and a photo sheet and forensic examination report dated 6 September 2015 and 4 November 2015).

        [handwritten in Arabic: Officer Hagai Eckler]

60. ᴿᵉᵈᵃᶜᵗⁱⁿᵍ9141 Advanced Staff Sergeant Hagai Eckler (preparer of a verification of a confession to causation of harm as a result of operations hostile to Israel, dated 31 August 2015).

        [handwritten in Arabic: Yuval Shucher]

61. ᴿᵉᵈᵃᶜᵗⁱⁿᵍ7778 Yuval Shucher (preparer of a form, dated 1 September 2015, for sending exhibits to the ballistics lab.).

        [handwritten in Arabic: Itamar Konfino, Defense Forces, details with the Prosecution]

62. Itamar Konfino (IDF, details with the Prosecution).

        [handwritten in Arabic: Ronen Edri, details with the Prosecution]          [handwritten in Arabic: [wounded in the incident at Kafr Jit]]

63. Ronen Edri (details with the Prosecution).


**Police File [deleted]**        [handwritten in Arabic: Officer Fares Jabr]

64. [deleted] Advanced Staff Sergeant Fares Jabar (preparer of a cover sheet for exhibits, dated 17 November 2015).

        [handwritten in Arabic: Officer Yaniv Fadida]

65. ᴿᵉᵈᵃᶜᵗⁱⁿᵍ7270 Superintendent Yaniv Fadida (preparer of a form for sending material and a seizure-and-marking report dated 8 November 2015).

        [Handwritten in Arabic: Sarah Abramowitz]

66. Sarah Abramowitz Barr (preparer of an expert opinion dated 24 November 2015).

        [Handwritten in Arabic: Alfonso Ben Tulila]

67. ᴿᵉᵈᵃᶜᵗⁱⁿᵍ5101 Superintendent Alfonso Ben Tulila (preparer of an examination report dated 29 November 2015).

        [handwritten in Arabic: Yael Chelouche]

68. ᴿᵉᵈᵃᶜᵗⁱⁿᵍ5572 Superintendent Yael Chelouche (preparer of a receipt for exhibits to be examined, dated 18 November 2015).



[Arabic language stamp:]
PLO
Detainees & Ex-Detainees Department
2 March 2016
General Department for Legal Affairs
Checked
Indictments

                                                                    [signature]
                                                          **Rotem Cohen**, First Lieutenant
                                                                **Military Prosecutor**

# Original

CONFIDENTIAL

SHATSKY-JD01954



**Palestinian National Authority**
Ministry of Detainees & Ex-Detainees Affairs
Ex-detainees Rehabilitation Program

بسم الله الرحمن الرحيم

السلطة الوطنية الفلسطينية
وزارة شؤون الأسرى والمحررين
برنامج تأهيل الأسرى المحررين

٧٦٨١

التاريخ :

السيد مدير عام شؤون الاسرى والمحررين المحترم .
تحية طيبة وبعد ،،،

الموضوع : ربط فترة اسر قديمة بالفترة الحالية

يرجـى دمـــج وربــط فتـرات الاسـر القديمـة بفتـرة الاسـر الحاليـة

Redacted

للاسير _____ حامل هوية رقم _____

والمعتقل حاليا بتاريخ _____ حيث قمنا بالتأكد من فترات اسره وتبين

انها امنيه وهي كالاتي .

١- ٥/ ع _____ حتى _____
٢- ٥/ ع _____ حتى _____
٣- ٥/ ع _____ حتى _____
٤- ٥/ ع _____ حتى ١٩٩ _____
٥- ٥/ع ١٨ _____ حتى _____

وتفضلوا بقبول فائق الاحترام

مدير مديرية نابلس
سامر عمارو

CONFIDENTIAL

SHATSKY-JD01954

CONFIDENTIAL

SHATSKY-JD01955

165260



## TO WHOM IT MAY CONCERN

**CICR**

This attestation is valid only if the English and Arabic parts match each other

According to the information received from the Israeli Authorities, the International Committee of the Red Cross attests that:

Mr:  **AMJAD ADEL MOHAMMAD ELEIWI**

From:  **NABLUS**                    ID NO: Redacted **5587**

Was arrested by the Israeli Authorities on (dd/mm/yyyy):  **06.10.2015**

He is to date: **Sentenced**

Length of sentence / administrative period: **Life Sentence**





إلى من يهمه الأمر

هذه الشهادة سارية المفعول فقط في حالة تطابق بياناتها بالغتين العربية و الإنجليزية

استنادا الى المعلومات الواردة من السلطات الإسرائيلية، تشهد اللجنة الدولية للصليب الأحمر بأن:

السيد/ة الأسمة _____ أحمد عادل محمد عليوي _____

من _____ نابلس _____    هوية رقم Redacted ٥٥٨٧

كان/ت قد اعتقل/ت من قبل السلطات الإسرائيلية في يوم ٦ / شهر ١٠ / سنة ٢٠١٥

وهو/هي في هذا التاريخ : ينتظر المحاكمة _____ محكوم/ة X _____ اداري _____

محكوم/ة أو إداري لمدة _____ مؤبد على الكلام _____

Date: **10.07.2016**
التاريخ

Place: **NABLUS**
العكــان

IL.J-030252

ICRC Delegate
توقيع مندوب اللجنة

SHATSKY-JD01955

CONFIDENTIAL

SHATSKY-JD01962



165260

## TO WHOM IT MAY CONCERN

CICR

This attestation is valid only if the English and Arabic parts match each other

According to the information received from the Israeli Authorities, the International Committee of the Red Cross attests that:

Mr:     **AMJAD ADEL MOHAMMAD ELEIWI**

From:   **NABLUS**          ID NO: Redacted**5587**

Was arrested by the Israeli Authorities on (dd/mm/yyyy):     **06.10.2015**

He is to date: **Sentenced**

Length of sentence / administrative period: **Life Sentence**

CICR

إلى من يهمه الأمر

هذه الشهادة سارية المفعول فقط في حالة تطابق بياناتها باللغتين العربية و الإنجليزية

استنادا الى المعلومات الواردة من السلطات الإسرائيلية, تشهد اللجنة الدولية للصليب الأحمر بأن:

السيد/ة الآنسة ____ أمجد عادل محمد عليوي ____

من ____ نابلس ____ هوية رقم Redacted ٥٥٨٧

كان/ت قد اعتقل/ت من قبل السلطات الإسرائيلية في يوم ____ ٦ / شهر ____ ١٠ / سنة ٢٠١٥

وهو/هي في هذا التاريخ : ينتظر المحاكمة ____ محكوم/ة X الداري ____

محكوم/ة أو إداري لمدة ____ مدى الحياة مؤبد ____

Date: 10.07.2016
التاريخ

Place: NABLUS
المكان

ILJ-030252

ICRC Délegate
توقيع مندوب اللجنة

CONFIDENTIAL

SHATSKY-JD01962

CONFIDENTIAL

SHATSKY-JD01963

17883

**Palestinian National Authority**
**Ministry of Detainees & Ex-detainees Affairs**
**Gen Dep. Detainees & Ex-detainees**



السلطة الوطنية الفلسطينية
وزارة شؤون الأسرى والمحررين
الإدارة العامة لشؤون الأسرى والمحررين

7681

## استمارة الأسير الرئيسية

| | | | | | | | رقم الاستمارة: |
|---|---|---|---|---|---|---|---|
| المديرية/فرع الوزارة: | | ٢٠١٦ / ١ / ٢٥ | | | | | تاريخ تعبئة الاستمارة: |

**1. المعلومات الرئيسية للأسير:**

| | | ٥ ٥ | ٨ | ٧ | | رقم الهوية: (تسع خانات) |
|---|---|---|---|---|---|---|
| اسم العائلة | اسم الجد | اسم الأب | الاسم الأول | | الاسم الرباعي: |
| علمر | | عذار | احمد | | |
| ◼ أنثى   ◼ ذكر | الجنس: | | | | اسم الأم: |
| | مكان الولادة: | ١٩٧٥ Redacted | | | تاريخ الميلاد: |
| ◼ دراسات عليا   ◼ جامعي | ◼ ثانوي   ◼ دبلوم   ◼ الأساسية   ◼ أمي | | | | المؤهل العلمي: |
| | التنظيم: | | | | المهنة قبل الأسر: |
| ◼ مدني   ◼ محرر   ◼ إداري | مكان الأسر: | ٢٠١٥/٨/١٧ | | | تاريخ الأسر: |
| | | ◼ محكوم   ◼ موقوف | | | الوضع الاعتقالي: |
| العام | الشهر | اليوم | تاريخ الإفراج المتوقع | سنة | شهر | يوم | في حالة محكوم مدة الحكم |
| Redacted | | | حسب قرار الحكم | | | | حسب شهادة الصليب: |
| | التجمع السكاني: | | | | المحافظة: | | العنوان الدائم: |
| | | | | | | | ملاحظات: |

**2. بيانات الاعتقالات السابقة:**

عدد مرات الاعتقال السابقة والحالية: .......... فقط المثبت بشهادة صليب وبتسلسل زمني من الأحدث إلى الأقدم.

| ملاحظات | مدة الاعتقال | | | تاريخ الإفراج | نوع الاعتقال | تاريخ الاعتقال | الرقم |
|---|---|---|---|---|---|---|---|
| | يوم | شهر | سنة | | | | |
| | | | | | | ٢٠١٥ /٨/١٧ | .1 |
| | | | | ٢٠٠٤/٩/١ | | ٢٠٠٤/٢/١ | .2 |
| ٦ | | | | ١٩٩٤/٤/٥ | | ١٩٩٤/١/٢٦ | .3 |
| | | | | ٢٠٠٤/٢/١ | | ٢٠٠٤/٢/١ | .4 |
| ٥ | | | | ٢٠٠٤/١٠/٨ | | ٢٠٠٤/٤/٨ | .5 |
| | | | | ١٩٩٢/١/٨ | | ١٩٩٢/١/٢١ | .6 |

CONFIDENTIAL 1

CONFIDENTIAL



SHATSKY-JD01966

צבא הגנה לישראל

בבית המשפט הצבאי
ש ו מ ר ו ן
בפני חרכב

תיק בימ"ש 15/
תיק תביעה 2393/15
תיק פ.א. 3593/15
3202/15
4257/15
(פח"ע פ"ד)

במשפט שבין

התובע הצבאי

- המאשים -

- נ ג ד -

אמג'ד עאדל מוחמד עליוי
(עצור מיום 06/10/2015)
ת. ז. 5587 יליד 1972, תושב שכם

- הנאשם -

כתב אישום

הנאשם הנ"ל מואשם בזאת בביצוע העבירות הבאות:

פרט אישום ראשון:

מהות העבירה: חברות ופעילות בהתאחדות בלתי מותרת, עבירה לפי תקנה 84 +85(1)(א)
לתקנות ההגנה (שעת חירום)-1945.

פרטי העבירה: הנאשם הנ"ל, באזור, היה חבר או פעל כחבר בארגון שהוא התאחדות בלתי
מותרת, דהיינו:

החל ממועד שאינו בידיעת התביעה במדייק אך שאינו מוקדם למחציתה השנייה
של שנת 2014 או במועד הסמוך לכך, היה הנאשם חבר בארגון החמאס שהינו
התאחדות בלתי מותרת (להלן: "החמאס") במסגרת חברותו בארגון האמור פעל
הנאשם כאמור בפרטי האישום הבאים וכמפורט להלן:

א. במהלך המחצית השנייה של שנת 2014 או במועד הסמוך לכך, שוחח נאשם
אמיין מוחמד סאיח (להלן: "באסם") עם הנאשם אודות פעילות צבאית
משותפת במסגרת החמאס בהמשך, הפגיש הנאשם בין אמג'ד לפארס סעדי
עבדאללה חילפה (להלן: "פארס") ומוחמד עמאד רמדאן קוטב (להלן:
"מוחמד") וזאת על מנת שהאחרונים יפעלו צבאית בצוותא עם אמג'ד

ב. בהמשך, ולאחר הנחייתו של באסם, שם פארס פעמיי לעבר מסגד אלחמיזיה
או למקום הסמוך לכך ונפגש נאשם במעמד הפגישה האמורה, שוחחו

CONFIDENTIAL

SHATSKY-JD01967

הנאשם ופארס אודות פעילות צבאית עתידית. עוד באותו מעמד, עדכן
הנאשם את פארס בדבר רצונו לאתר לצורך הפעילות הצבאית חומרי נפץ
אז, ולאור דבריו של הנאשם, מסר פארס לראשונה כי ביכולתו לבצע כל
פעילות אשר תידרש ובפרט לייצר חומר נפץ לטובת הפעילות הצבאית.
בהמשך, טרם נפרדו לשלום, סיכמו הנאשם ופארס להיפגש בשנית לשם
קידום הפעילות הצבאית.

ג. במהלך חודש יולי לשנת 2014 או במועד הסמוך לכך, שוחחו הנאשם ועמאר
מוחמד סלים עבד אלכרים בריך (להלן: "עמאר") אודות פעילות צבאית
משותפת בדמות פיגועים כנגד מטרות ישראליות. במעמד זה, פירט הנאשם
בפני עמאר כי ברצונו לאתר חומרי נפץ ומימון כללי לטובת הפעילות.
בתגובה נעתר עמאר לסייע לנאשם בדבר.

ד. בחודש פברואר 2015 או במועד הסמוך לכך, בשכם או במועד הסמוך לכך,
נעתר הנאשם להצעתו של איאד ודיע תאופיק אבו זהרה (להלן: "איאד")
לפעול צבאית מטעם ארגון החמאס. במעמד זה הציע הנאשם לאיאד את
גיוסו של ראג'יב אחמד מוחמד עליוה (להלן: "ראג'יב"). הנאשם נתן הסכמתו
לגיוס האמור.

ה. בחודש אפריל לשנת 2015 או במועד הסמוך לכך, בשכם או במקום הסמוך
לכך, גייס הנאשם את ראג'יב לחוליית צבאית מטעם ארגון החמאס אשר
שמה לה למטרה לבצע פיגועי ירי לעבר יעדים ישראלים (להלן: "החוליה
הצבאית"), וזאת באמצעות כלי נשק אותם איתר הנאשם לצורך כך. כמו כן,
ביקש הנאשם מראג'יב לגייס אדם נוסף לטובת הפעילות בחוליה הצבאית.
הלה נעתר לבקשתו ובלבד שלא יחשוף את זהות המגויים הנוסף בפני הנאשם.

ו. במהלך חודש אפריל לשנת 2015 או במועד הסמוך לכך, שוחחו הנאשם
ובאסם אודות פעילות צבאית משותפת. במעמד זה עדכן הנאשם את באסם
אודות נוספים הנמנים על שורותיה של החוליה הצבאית זה מכבר והשניים
סיכמו כי באסם יסייע במימון פעילותה של החוליה הצבאית ובפרט במינון
האמל"ח אשר ישמשה, בעוד שהנאשם ידאג לגיוס הפעילים הנוספים
בחוליה והעברת האמל"ח לרשותם. כמו כן סיכמו השניים כי מוחמד יסייע
לשניים במסגרת פעילותם הצבאית. אז, פנה באסם לחמזה צאלח רפעת
יעיש (להלן: "חמזה") והציע לאחרון לרכוש כלי נשק אשר חלקם ישמש
לטובת הפעילות הצבאית של החוליה. הלה נעתר להצעה.

ז. בחודש מאי לשנת 2015 או במועד הסמוך לכך, מסר באסם לידיו של
הנאשם כ־53,000 ₪ אותם קיבל מחמזה וזאת לשם רכישת כלי נשק שישמש
לטובת פעילותה של החוליה הצבאית. אז, פנה הנאשם לעי'אלב סעיד עיאלב
חיריוש (להלן: "עי'אלב") וביקש את סיועו של האחרון באיתור כלי נשק.
הלה פעל כמבוקש.

בהמשך, שמו הנאשם ומוחמד פעמיהם לעבר רחוב אלרודיה, משהגיעו

JD01967

CONFIDENTIAL

SHATSKY-JD01968

יב. בהמשך, מסר ה**נאשם** למוחמד ארגז המכיל כדורי ירי. אז, ובהתאם
להנחייתו של באסם, הניח מוחמד את הארגז האמור בנקודת משלש.

יג. במהלך חודש אוגוסט לשנת 2015 או במועד הסמוך לכך, ולאור בקשתו של
ראביע, פנה ה**נאשם** לבאסם וביקש חזרה את האקדח לטובת פעילותה של
החוליה הצבאית. משכך, מסר באסם את האקדח למוחמד וביקש מהאחרון
להעבירו לידי ה**נאשם**. מוחמד פעל כמבוקש והעביר את האקדח ל**נאשם**
אשר העבירו לראביע כאמור.

יד. במהלך פעילותו בחוליה הצבאית, במספר הזדמנויות שונות, קיבל ה**נאשם**
לידיו מאיאד סכומי כסף שונים בסכום אלפי שקלים לטובת פעילות
החוליה.

<u>**חברותו של הנאשם בארגון החמאס ובחוליה הצבאית נמשכה עד למועד
מעצרו.**</u>

<u>**פרט אישום שני:**</u>

**מהות העבירה**: ניסיון לגרימת מוות בכוונה, עבירה לפי סעיפים 209(א) ו-198 לצו בדבר הוראות
ביטחון [נוסח משולב] (יו"ש)(מס' 1651), התש"ע- 2009.

**פרטי העבירה**: הנאשם הנ"ל, באזור, ניסה לגרום למותו של אדם בכוונה, דהיינו:

א. במהלך **חודש אוגוסט** או במועד הסמוך לכך, בצומת בית פוריק או במקום
הסמוך לכך, באמצעות כלי חנשק אותו רכש ה**נאשם** ומסר לראביע כאמור
לעיל, ובהתאם לסיכום עם ראביע, ביצעו חברי החוליה הצבאית עליה אמון
ה**נאשם**, יחיא וסמיר, פיגוע ירי לעבר כלי רכב ישראלי, בכוונה לגרום למותו
של מתיישב יהודי וזאת במסגרת פעילותם בחוליה הצבאית.

ב. יממה לאחר ביצוע פיגוע הירי או במועד הסמוך לכך, עדכנו יחיא וסמיר את
ראביע אודות ביצוע פיגוע הירי בצומת בית פוריק ובנסיבותיו.

ג. זמן מה לאחר מכן, פנה ראביע ועדכן את ה**נאשם** אודות ביצוע הפיגוע
כאמור. בהמשך, עדכן האחרון את באסם ואיאד אודות ביצוע פיגוע הירי
שביצעו חברי החוליה.

<u>**במעשיהם האמורים ניסו חברי החוליה לגרום למותו של מתיישב יהודי.**</u>

<u>**פרט אישום שלישי:**</u>

**מהות העבירה**: ניסיון לגרימת מוות בכוונה, עבירה לפי סעיפים 209(א) ו-198 לצו בדבר הוראות
ביטחון [נוסח משולב] (יו"ש)(מס' 1651), התש"ע- 2009.

**פרטי העבירה**: הנאשם הנ"ל, באזור, ניסה לגרום למותו של אדם בכוונה, דהיינו:

א. ביום 30/08/15, בצומת בית גית או במקום הסמוך לכך, באמצעות כלי
חנשק אותו רכש ה**נאשם** ומסר לראביע כאמור לעיל, ביצעו יחיא וסמיר
פיגוע ירי נוסף, מטווח קצר, לעבר כלי רכב ישראלי מסוג יונדאי בעל לוחית
זיהוי ישראלית שמספרה 808-78-70 ולהלן: "**הרכב הישראלי**") רו ו-

מסוג M16, הנושא מספר טבוע K700326 (להלן: **"כלי הנשק"**). מיד לאחר מכן פגשו מוחמד ו**הנאשם** בראגיב. אז, מסר **הנאשם** לידי ראגב את כלי הנשק אשר ישמשם לטובת פעילותם הצבאית.

ח. בחודש יוני לשנת 2015 או במועד הסמוך לכך, ביקש **הנאשם** ממוחמד לעדכן את באסם כי ישנו כלי נשק נוסף מסוג M16 (להלן: **"כלי הנשק הנוסף"**) בעלות של 53,000 ₪ אותו מבקש **הנאשם** לרכוש. מוחמד פעל כמבוקש. יומיים לאחר מכן או במועד הסמוך לכך, בתיווכו של מוחמד קיבל **הנאשם** מבאסם סכום כסף של 50,000 ₪. בהמשך, ביקש **הנאשם** מאיאד לבחון את כלי הנשק האמור בטרם רכישתו. אז, ולאחר בחינת כלי הנשק על ידי ...יון, רכש **הנאשם** את כלי הנשק האמור. זמן קצר לאחר מכן, נטל ...כלי הנשק הנוסף, בהתאם להנחייתו של **הנאשם**, זאת על מנת ... לאחר מכן, עדכן מוחמד את באסם אודות כלי הנשק ...אחרון למוחמד להחזיק את הנשק ברשותו למשך ...את כלי הנשק הנוסף לידי **הנאשם**. או אז, פגש ... הנשק.

...ך, בשכם או במקום הסמוך לכך, ...צבאית כאמור, פנה ראגיב ...א") ולסמיר זוהיר ...חוליה הצבאית

...ר כי

ט. ...ם ... בית פוריכ או במקום ... מסר לראגיב כאמור ... **הצב**... ביקש ... הלה נעת...

י. במהלך חוד... ובאסם אודו... אודות נוספים ו... סיכמו כי באסם ... האמל"ח אשר ישנ... בחוליה והעברת האמ... לשניים במסגרת פעילו... יעיש (להלן: **"חמזה"**) וה... לטובת הפעילות הצבאית ש...

...רה. הנשק לבקשתו.

ז. בחודש מאי לשנת 2015 או ב... **הנאשם** כ- 53,000₪ אותם קיבל ... לטובת פעילותה של החוליה הצבאי... חיריוש (להלן: **"יע'אלב"**) וביקש את ... הלה פעל כמבוקש.

בהמשך, שמו **הנאשם** ומוחמד פעמיהם

CONFIDENTIAL

SHATSKY-JD01970

באותה העת רונן אדרי בכוונה לגרום למותו של האחרון. האחרונים ביצעו

את האמור במסגרת פעילותם בחוליה הצבאית.

ב.   יממה לאחר ביצוע פיגוע הירי או במועד הסמוך לכך, עדכן יחיא וסמיר את

ראב"ג אודות ביצוע פיגוע הירי בצומת בית ג'ית כאמור ובתוצאותיו.

ג.   זמן מה לאחר מכן, פנה ראב"ג ועדכן את הנאשם אודות ביצוע פיגוע

הירי כאמור. בהמשך, עדכן האחרון את אור ובאסם אודות ביצוע פיגוע הירי

כאמור. בהמשך, שבצעו חברי החוליה.

**במעשיהם האמורים ניסו חברי החוליה לגרום למותו של רונן אדרי.**

**פרט אישום רביעי:**

**מהות העבירה:**   גרימת מוות בכוונה, עבירה לפי סעיפים 209(א) ו-199(א+ב) לצו בדבר הוראות

ביטחון [נוסח משולב] (יו"ש)(מס' 1651), התשע"ו-2009.

**פרטי העבירה:**   הנאשם הנ"ל, באזור, גרם למותו של אדם בכוונה הסמוך לכך, סיכמו ראב"ג

א.   במהלך חודש ספטמבר לשנת 2015 או במועד הסמוך לכך, במהלכו מלבד

ויחיא אודות ביצוע פיגוע ירי שתבצע החוליה הצבאית, קרי, גרימת מותם של

המטרה המרכזית שהנחתה את החוליה הצבאית לחטוף מתיישבי יהודי (להלן: **"פיגוע**

מתיישבים יהודים, תנסה החוליה לחטוף מתיישבי יהודי (להלן: **"פיגוע**

**החטיפה"**).

ב.   בהמשך, נוכח הסיכום בין יחיא לראב"ג בדבר ביצוע פיגוע החטיפה, פנה

האחרון לנאשם וביקש את אישורו וסיועו בביצוע הפיגוע האמור. בתגובה

מסר האחרון כי הוא יפנה תחילה לממונים עליו ולאחר מכן יעדכן את

ראב"ג. זמן קצר לאחר מכן, פנה אמג'ד, בין היתר, לאיאד ובאסם ועדכנם

אודות רצון החוליה לבצע פיגוע חטיפה וביקש את אישורם. האחרונים נתנו

ברכתם לביצוע הפיגוע המתוכנן האמור. אז, עדכן הנאשם את ראב"ג כי יש

להם אישור לבצע את פיגוע החטיפה וכי יסייע לו בשינועו והסתרתו של

החטוף כמבוקש.

ג.   ביום 01/10/15, בצומת בית פוריכ או במקום הסמוך לכך, ביצעה החוליה

הצבאית, אשר עליה אמונים הנאשם ומספים ועל שורזיתיה נמנים, בין

היתר, ראב"ג, יחיא, סמיר, כרם לוטפי פתחי רוק (להלן: **"כרם"**) נויד זיאד

גימל עטמר (להלן: **"זיד"**), פיגוע ירי, באמצעות כלי הנשק והאקדח אותם

רכש הנאשם ומסרם לידי ראב"ג, לעבר רכב מסוג מיצובישי, הנושא לוחית

זיהוי ישראלית שמספרה 95-731-10 (להלן: **"רכב המיצובישי"**), בו נסעו

באותה העת בני משפחת הנקין; איתם הנקין ז"ל, נעמה הנקין ז"ל וארבעת

ילדיהם הקטנים.

**בעשותם את המעשים האמורים גרמו חברי החוליה למותם, בכוונה, של**

**איתם הנקין ז"ל.**

**פרט אישום חמישי:**

CONFIDENTIAL



SHATSKY-JD01971

<div dir="rtl">

**מהות העבירה:** גרימת מוות בכוונה, עבירה לפי סעיפים 209(א) ו-199ג(א+ב) לצו בדבר הוראות
ביטחון [נוסח משולב] (יו"ש)(מס' 1651), התש"ע- 2009.

**פרטי העבירה:** הנאשם הנ"ל, באזור, גרם למותו של אדם בכוונה, דהיינו:

בעשותם את האמור בס"ק ג' לפרט האישום הקודם, <u>גרמו חברי החוליה למותה,
בכוונה, של נעמה הנקין ז"ל.</u>

**פרט אישום שישי:**

**מהות העבירה:** ניסיון לחטיפה בנסיבות מחמירות, עבירה לפי סעיפים 213(ד) ו- 198 לצו בדבר
הוראות בטחון [נוסח משולב] (יהודה והשומרון) (מס' 1651), התשי"ע-2009.

**פרטי העבירה:** הנאשם הנ"ל, באזור, חטף אדם בידיעה שהנחטף יהיה צפוי לסכנת חיים, או
חטף אדם כדי לסחוט או לאיים, דהיינו:

במעשים האמורים בפרט האישום הרביעי, ניסו חברי החוליה לחטוף את <u>נוסעי</u>
הרכב.

**פרט אישום שביעי:**

**מהות העבירה:** ניסיון לגרימת מוות בכוונה, עבירה לפי סעיפים 209(א) ו-198 לצו בדבר הוראות
ביטחון [נוסח משולב] (יו"ש)(מס' 1651), התש"ע- 2009.

**פרטי העבירה:** הנאשם הנ"ל, באזור, ניסה לגרום למותו של אדם בכוונה, דהיינו:

במעשים האמורים בפרט האישום הרביעי, ניסו חברי החוליה לגרום למותו של
מ.ה., בן ה-9, בנם של איתם ונעמה הנקין ז"ל.

**פרט אישום שמיני:**

**מהות העבירה:** ניסיון לגרימת מוות בכוונה, עבירה לפי סעיפים 209(א) ו-198 לצו בדבר הוראות
ביטחון [נוסח משולב] (יו"ש)(מס' 1651), התש"ע- 2009.

**פרטי העבירה:** הנאשם הנ"ל, באזור, ניסה לגרום למותו של אדם בכוונה, דהיינו:

במעשים האמורים בפרט האישום הרביעי, ניסו חברי החוליה לגרום למותו של
נ.ה., בן ה-7, בנם של איתם ונעמה הנקין ז"ל.

**פרט אישום תשיעי:**

**מהות העבירה:** ניסיון לגרימת מוות בכוונה, עבירה לפי סעיפים 209(א) ו-198 לצו בדבר הוראות
ביטחון [נוסח משולב] (יו"ש)(מס' 1651), התש"ע- 2009.

**פרטי העבירה:** הנאשם הנ"ל, באזור, ניסה לגרום למותו של אדם בכוונה, דהיינו:

במעשים האמורים בפרט האישום הרביעי, ניסו חברי החוליה לגרום למותו של
נ.ה., בן ה-4, בנם של איתם ונעמה הנקין ז"ל.

**פרט אישום עשירי:**

</div>

CONFIDENTIAL   SHATSKY-JD01971

CONFIDENTIAL

SHATSKY-JD01972

<u>**פרטי העבירה**</u> : הנאשם הנ"ל, באזור, ניסה לגרום למותו של אדם בכוונה, דהיינו :

במעשים האמורים בפרט האישום הרביעי, ניסו חברי החוליה לגרום למותו של א.ה., בן 10 חודשים, בנם של איתם ונעמה הנקין ז"ל.

<u>**פרט אישום אחד עשר**</u> :

<u>**מהות העבירה**</u> : מתן מקלט, עבירה לפי סעיפים 245 ו-333 לצו בדבר הוראות ביטחון [נוסח משולב] (יהודה והשומרון)(מס' 1651), התשע"ו - 2009.

<u>**פרטי העבירה**</u> : הנאשם הנ"ל, באזור, עזר לאדם או נתן מקלט לכל אדם שעבר עבירה על תחיקת הביטחון או העוסק או שהיה עוסק בכל פעולה שמטרתה לפגוע בשלום הציבור, שלום כוחות צה"ל וחייליו וקיום הסדר הציבורי או שיש יסוד סביר לחשוד כי עשה כן, בין על ידי מתן ידיעות, מחסה, מזון, משקה, כסף, בגדים, נשק, תחמושת, אספקה, מסמכים, אמצעי תובלה, נפט או דלק מסוג כלשהו ובין בדרך אחרת, דהיינו :

א. בהמשך לאמור בפרט האישום הרביעי, במהלך פיגוע הרצח, פגע אחד הקליעים בכרם ופצעו ופצעו בידו השמאלית. לפיכך, פונה האחרון לקבלת טיפול רפואי בית החולים "אלערבי אלתחסיס" שברפידיה (להלן: **"בית החולים"**).

ב. יממה לאחר מכן או במועד הסמוך לכך, פנה ראובן **לנאשם ועדכנו** את האחרון אודות פציעתו של כרם וביקש את סיועו הכלכלי **למימון הטיפול** הרפואי. אז, פנה **הנאשם למוחמד**, עדכנו אודות פציעתו **של** כרם במהלך הפיגוע וביקש מהאחרון הטיפול לפנות, באופן בהול, **לצאאם** על **מנת** שהאחרון יסייע במימון הטיפול הרפואי. **מוחמד** פעל כמבוקש **ועדכן** את באסם אודות פיגוע הרצח ותוצאותיו. אז, מסר באסם לידי **מוחמד סכום** של 9,000 ₪ לצורך מימון טיפולי הרפואי של כרם, וזה העבירם **לידי הנאשם** כמבוקש.

ג. בד בבד, פנה **הנאשם** לאיאד ועדכנו אודות פציעתו של כרם במהלך הפיגוע וביקש גם מהאחרון את סיועו במימון הטיפול הרפואי. אז, מסר **הנאשם** לידי אמג'ד סכום של כ- 5,000 ₪ לצורך מימון טיפולי הרפואי של כרם

ד. זמן קצר לאחר מכן, ומשקיבל **הנאשם** לידיו את הכספים לצורך מימון הטיפול הרפואי מהממונים עליו, מסר לידי ראג'ב סכום של 6,000 ₪. עוד באותו מעמד ביקש **הנאשם** מראג'ב לפנות את כרם מבית החולים לביתו של האחרון שם יטופל על ידי רופא שישתר **הנאשם** לצורך כך

ה. לבסוף, פנה ראג'ב **לנאשם** וביקש את אישורו לפנות את כרם, בשנית, לבית החולים וזאת נוכח מצבו הרפואי של האחרון **הנאשם** נעתר לבקשה והניחה את ראג'ב לפנות את כרם לבית החולים

CONFI...
JD01972

CONFIDENTIAL

SHATSKY-JD01973

**פרט אישום שניים עשר:**

<u>מהות העבירה</u>: ייצור חפץ נפיץ ללא היתר, עבירה לפי סעיפים 230(א+ב) לצו כדבר הוראות
ביטחון [נוסח משולב] (יהודה והשומרון) (מסי 1651), התשס"ע-2009.

<u>פרטי העבירה</u>: הנאשם הנ"ל, באזור, ייצר חפץ נפיץ ללא תעודת היתר ממפקד צבאי או מטעמו
או שלא בהתאם לתנאיה של תעודת ההיתר, דהיינו :

א.  בחודש ספטמבר לשנת 2014 או במועד הסמוך לכך, בשכם או במקום
הסמוך לכך, ובהתאם לתכנונם של **הנאשם** ועמאר לייצר חומר נפץ כאמור
בפרט האישום הראשון, מסר עמאר לידי **הנאשם** חומרים לייצור חומר
הנפץ.

ב.  בהמשך, ברחוב פטאיר שבשכם או במקום הסמוך לכך, בהתאם לסיכום
מוקדם, נפגשו **הנאשם** ופארס וזאת על מנת להוציא לפועל את תכנונם כדבר
ייצור חומר נפץ כאמור בפרט האישום הראשון. במהלך הפגישה האמורה,
מסר **הנאשם** לידיו של פארס חומרים כימיים ובכלל זה; חומצה קרבוליט,
חומצה חנקתית, חומצה הידרוכלורית, כ-6 ק"ג של אמוניק גבישי וחומרים
כימיים נוספים. את החומרים האמורים קיבל **הנאשם**, בין היתר, מידי
עמאר כאמור בס"ק אי וזאת לטובת ייצור חומר הנפץ.

ג.  חודש לאחר מכן או במועד הסמוך לכך, בעיר העתיקה שבשכם או במקום
הסמוך לכך, נפגשו פארס **והנאשם**, אז נטל האחרון לידיו רשימת ציוד אשר
דרוש לפארס לצורך ייצור חומר נפץ. שבועיים לאחר מכן או במועד הסמוך
לכך, ולאור בקשתו של פארס, מסר לו **הנאשם** את הציוד אשר ביקש לצורך
ייצור חומר הנפץ ובכלל זה; משקל, משפך, כוסות כימיות, בקבוק ארלנמייר
ופילטר לסינון.

ד.  כמו כן, במהלך פגישותיהם האמורות, ביקש **והנאשם** מפארס ללמד פעילים
נוספים אודות ייצור חומר נפץ. האחרון סירב לבקשתו של **הנאשם** והציע,
כחלופה, למסור לידי **הנאשם** תקליטור המכיל סרטוני הדרכה לייצור חומר
נפץ. האחרון נעתר להצעה. אז, שכפל **הנאשם** עותקים מהתקליטור האמור
ומסרם לידי **הנאשם**.

ה.  בהמשך, ולאחר שבירר פארס אודות חומרים כימים נוספים הדרושים לו
לייצור חומר נפץ, פנה האחרון **לנאשם** ומסר לידיו רשימת חומרים נוספים
להם נזקק. חודש לאחר מכן או במועד הסמוך לכך, ולאור דרישתו האמורה
של פארס, מסר **הנאשם** לידיו כ-10 קילו נוספים של אמוניק גבישי

ו.  בראשיתה של שנת 2015 או במועד הסמוך לכך, בעיר העתיקה שבשכם או
במקום הסמוך לכך, נפגש **הנאשם** עם פארס. אז, ביקש **הנאשם** מפארס
לייצר בעבורו חומר נפץ. האחרון נעתר לבקשה ומסר כי לצורך כך נדרשת לו
חומצה גופרתית. משכך, נסעו פארס **והנאשם** לעבר תחנת הדלק ברחוב בית
איבא שבשכם או למקום הסמוך לכך, שם רכש **הנאשם** חומצה גופרתית
כמבוקש

CONFIDE    SHATSKY-JD01973

CONFIDENTIAL

SHATSKY_ID01974

ז. עוד במהלך הפגישות האמורות, ולאור כישלונותיו של פארס בייצור חומר הנפץ, מסר האחרון לידי **הנאשם** מכתב ובו שאילתות אודות אופן ייצור חומר נפץ. **הנאשם** נטל את המכתב האמור ומסרו לאיאד

ח. בהמשך, בחצר האחורית של ביתו שבשכם או במקום הסמוך לכך, ייצר פארס חומר נפץ באמצעות החומרים הכימיים וציוד המעבדה שקיבל מהנאשם. בהמשך, ולאור כישלונו בייצור חומר הנפץ. פנה **לנאשם** וביקש חומצה גופרתנית נוספת. אז, ברחוב פייצל או במקום הסמוך לכך, מסר **הנאשם** לפארס חומצה גופרתנית נוספת

ט. בהמשך אותו חיום או במועד הסמוך לכך, ייצר פארס חומר נפץ וזאת לפי סרטוני הדרכה לייצור חומר נפץ נהם צפה מבעוד מועד כאמור. לבסוף, מסר האחרון **לנאשם** כ-10 גרם של חומר נפץ.

## <u>פרט אישום שלושה עשר:</u>

<u>מהות העבירה:</u> סחר בציוד מלחמתי, עבירה לפי סעיפים 233(ב) ו-199(א)(א+ב) לצו בדבר הוראות בטחון (נוסח משולב) (יהודה והשומרון) (מס' 1651), התשע"ע-2009

<u>פרטי העבירה:</u> הנאשם הנ"ל, באזור, סחר או עסק בצורה אחרת בציוד מלחמתי, ללא היתר חתום ממפקד האזור או מטעמו, דהיינו :

בעשותו את האמור בפרטי האישום הקודמים, עת **הנאשם** רכש, נטל לחזקתו או חעביר לידי אחר או כלי הנשק, התחמושת והאקדח, סחר האחרון באמל"ח ללא היתר כדין לכך.

## <u>פרט אישום ארבעה עשר:</u>

<u>מהות העבירה:</u> ניסיון לסחר בציוד מלחמתי, עבירה לפי סעיפים 233(ב) ו-198 לצו בדבר הוראות בטחון (נוסח משולב) (יהודה והשומרון) (מס' 1651), התשע"ע-2009

<u>פרטי העבירה:</u> הנאשם הנ"ל, באזור, סחר או עסק בצורה אחרת בציוד מלחמתי, ללא היתר חתום ממפקד האזור או מטעמו, דהיינו :

בחודש יולי לשנת 2015 או במועד הסמוך לכך, בשכם או במקום הסמוך לכך, ביקש איאד את סיועו של **הנאשם** ברכישת רימוני יד. האחרון נעתר לבקשה. משכך, מסר איאד לידי **הנאשם** סכום כסף בסך כ- 6,000 ₪ לטובת הרכישה. לבסוף, **הנאשם** לא רכש את האמל"ח המבוקש.

## <u>עדי התביעה:</u>

<u>ת.א. 3593/15:</u>   الضابط تحرير بدر

| | | |
|---|---|---|
| 1 | 5025 | רס"ב נדיר סאדר (גובה אמרות הנאשם מיום 06/12/15 ומיום 08/10/15)  الضابط عناد بدر |
| 2 | 8039 | רס"ר נסאן ביבאן (גובה אמרות הנאשם מיום 22/11/15 ומיום 15/15/15)  الضابط راغب خلف |
| 3 | 5588 | רס"ר ראזי חטיב (גובה אמרות הנאשם מיום 07/12/15, 03/11/15, 26/10/15, 20/10/15 ו-13/10/15) |

CONFIDENTIAL

SHATSKY-JD01975



الضابط ... ر جم

4   5618   רס"מ פארס ניבד (עורך טופס לוואי מוצגים מיום 19/10/15).
ا ... محما

5   3520   פ"ק אסף מלכה (עורך דו"ח פעולה מיום 13/11/15).
ارطوى سمار

6   9462   ארטיום צרנוגוב (עורך טופס לוואי מוצגים מיום 02/10/15).
.. عز يز ..

7   175   שריף עווידה (עורך דו"ח מזכר מיום 01/10/15, טופס לוואי מוצגים, דו"ח פעולה
וטופס משלוח מוצגים למעבדת נשק מיום 02/10/15 ו- 06/10/15).
ا نضابط ... عى ..

8   1572   רס"מ יואל חגי (עורך טופס קבלת מוצגים לבדיקה מיום 02/10/15 ו- 06/10/15).
ناصر ... با .

9   2978   עאמר סלימאן (עורך טופס לוואי מוצגים מיום 04/10/15, 05/10/15 ו-
06/10/15, עורך אישור קבלת חומר חקירה מהמשטרה מיום 28/10/15 ועורך מזכר מיום
10/11/15).
ا نضابط مير ... ام

10   רפ"ק מאיר דוקל (עורך מזכר מיום 08/10/15).
ا نضابط نعت بطون

11   5017   רס"מ יפעת ביטון לבנון (עורכת אישור הודעה על גרימת נזק כתוצאה מפעולות
איבה נגד ישראל מיום 06/11/15).
ا نضابط اقل ... ك

12   5069   רס"מ אבי נקר (עורך לוח צילומים מיום 01/10/15, דו"ח בדיקה מו"ף מיום
01/10/15 ו- 04/10/15, דו"ח תפיסת מוצגים מיום 04/10/15 ודו"ח תיעוד פיתוח טביעות
אצבע מיום 06/10/15).
ا نضابط ... ر احرم

13   3833   רס"ל תומר אחרק (עורך מזכר מיום 10/11/15).
ا نضابط ... ب ... كوب

14   3290   רס"ק יעקב ירושלמי (עורך מזכר מיום 16/11/15).
ا نظام ... بى .. قم

15   5117   רנ"ג חיים כהן (עורך לוח צילומים מיום 15/10/15 ודו"ח תפיסת מוצגים מיום
18/10/15).
ا نضابط عام ... .

16   2471   רס"מ נאסר חסן (עורך מזכר מיום 06/10/15).
ا نضابط .. ا .. م

17   9898   רס"ר סימה אברהמי (עורכת קבלת מוצגים לבדיקה מיום 19/10/15).
.. ب .. يب بل

18   7380   יעקב גרניק (עורך דו"ח תפיסת מוצגים מיום 04/10/15).
ا نضابط ... يم ... ول

19   7893   רס"ל מג'ד שופי (שרשרת מוצג).
قاص .. و ... ف

20   0730   פקד שלמה סיטון (עורך דו"ח פעולה מיום 06/10/15).
ا نضابط ... ش

21   3995   רס"ב יוסי לרב (עורך דו"ח פעולה מיום 06/10/15).
.. صابط .. و ... لبه

22   2542   רס"ר שמואל עליה (עורך דו"ח פעולה מיון 03/10/15).
ا نضابط ... م ... ب

23   9571   רס"ר רועי יונגינק (עורך דו"ח פעולה מיום 01/10/15).
ا نضابط ... ا ... ي

24   8272   רס"ר ארון אשכנזי (עורך דו"ח פעולה מיום 01/10/15).
ا نضابط ... و

25   2695   רס"ב אלקס יין (עורך דו"ח פעולה מיום 01/10/15).
ا نضابط ... ل .. لدد

26   5577   רס"ר אייל קלו (עורך דו"ח פעולה מיום 01/10/15).
ا نضابط ... ل ... و

27   6354   רפ"ק מיכל לוין אלעד (עורכת דו"ח בדיקה מיום 12/10/15 ו- 05/11/15).

SHATSKY-JD01975

CONFIDENTIAL

SHATSKY_JD01976

28  1485  פקד תומר ארבלי (עורך דו"ח בדיקה מיום 12/10/15, 18/10/15, 19/10/15 ו-
05/11/15)

29  רפ"ק משה שפיצן (עורך חוות דעת מומחה מיום 09/11/15)

30  רפ"ק אבי קלפמן (עורך חוות דעת מומחה מיום 13/10/15 ומיום 27/10/15 ועורך הודעה
על קשר לאוסף האירועים הפתוחים מיום 13/10/15)

31  סני"צ ד"ר יורי מזין (עורך הודעת פטירה מיום 01/10/15)

32  יוסי איסן (עורך אישור אישור גילוי מיום 15/10/15)

33  סרן שמואל רבינוביץ' (צה"ל, פרטים בידי התביעה)

34  סגן שחר יונה (צה"ל, פרטים בידי התביעה)

35  1700  סמיר זוהיר אבראהים כוסא (עצור, ת.ת 3/225/15)

36  8869  כרם לוטפי פתחי רזק (עצור, ת.ת 2250/15)

37  7710  זיד זיאד גמאל עאמר (עצור, ת.ת 2251/15)

38  1855  נסאם רמזי ראוד אבו ריזאלה (עצור, ת.ת 2255/15)

39  2046  יחיא מוחמד נאיף עבדאללה וזו חנוד (עצור, ת.ת 2252/15)

40  1447  מחמוד נצוח עבד שתיה (עצור, ת.ת 2239/15)

41  2142  עיאלב סעיד עיאלב חירוש (עצור, ת.ת 2248/15)

42  3834  נסאם אמין מחמד סאיח (עצור, ת.ת 2305/15)

43  5744  מחונד עמאד רמדאן קוטב (עצור, ת.ת 2285/15)

44  7294  פארס סעדי עבדאללה חלפה (עצור, ת.ת 2386/15)

45  4104  חמזה גאלח רפעת יוסי (עצור)

46  3882  עמאר מוחמד סלים עבד אכרם בריכ (עצור)

47  2262  מוחמד נזמי מוחמד עאמר (משוחרר)

48  7286  פראס סעדי עבדאללה חלפה (משוחרר, מספר נייד 0599596433)

49  עמיחי אזולאי (פרטים בידי התביעה)

50  נעה שלבי (פרטים בידי התביעה)

51  אליעזר אליהו טרבלסי (פרטים בידי התביעה)

52  צבי נורן (פרטים בידי התביעה)

53  עודדיה ריזונצני (פרטים בידי התביעה)

54  המכונה "שבכר" (שרות הביטחון הכללי/פרטים בידי התביעה)

55  המכונה "מוריס" (שרות הביטחון הכללי/פרטים בידי התביעה)

JD01976

CONFIDENTIAL



**פ.א. 3202/15:**

56. 6831 Redacted רס"מ ששי עזרא (עורך קבלת מוצגים לבדיקה מיום 08/09/15)

57. רפ"ק עזרא שושני (עורך חוות דעת מומחה מיום 16/09/15)

58. 5117 Redac רנ"ג חיים כהן (עורך דו"ח תפיסת מוצגים מיום 31/08/15 ודו"ח בדיקת מז"פ מיום 06/09/15)

59. 5782 Redacted בועז הינדיג כהן (עורך דו"ח תפיסת מוצגים מיום 31/08/15 ועורך לוח צילומים ודו"ח בדיקת מז"פ מיום 06/09/15 ומיום 04/11/15).

60. 9141 Redacte רס"מ חנאי אקלר (עורך אישור הודעה על גרימת נזק כתוצאה מפעולות איבה נגד ישראל מיום 31/08/15).

61. 7778 Redacted יובל שוכר (עורך טופס משלוח מוצגים למעבדת נשק מיום 01/09/15)

62. איתמ[illegible] קונינו (צה"ל, פרטים בידי התביעה)

63. [illegible] אדרי ([illegible] בידי התביעה)

64. Redacted

الضابط فارس جبر

[illegible] Redacted [illegible] (עורך טופס [illegible] מוצגים [illegible] 17/11/15)

65. [illegible] Redact רפ"ק יניב פוידה (עורך טופס העברת חומר ודו"ח תפיסה וסימון מיום 08/11/15)

66. שרה [illegible]ברמוביץ בר (עורכת חוות דעת מומחה מיום 24/11/15)

67. 5105 Redacted רפ"ק אלפונסו בן טולילה (עורך דו"ח בדיקה מיום 29/11/15)

68. 5572 Redac רפ"ק יעל שלוש (עורך קבלת מוצגים לבדיקה מיום 18/11/15).

רותם כהן, סגן

תובעת צבאית

CONFIDENTIAL

CONFIDENTIAL

SHATSKY-JD02008

165260



## TO WHOM IT MAY CONCERN

**CICR**

This attestation is valid only if the English and Arabic parts match each other

According to the information received from the Israeli Authorities, the International Committee of the Red Cross attests that:

Mr:  **AMJAD ADEL MOHAMMAD ELEIWI**

From:  **NABLUS**

ID NO: Redacted **5587**

Was arrested by the Israeli Authorities on (dd/mm/yyyy):  **06.10.2015**

He is to date. **Sentenced**

Length of sentence / administrative period: **Life Sentence**

**CICR**

إلى من يهمه الأمر

هذه الشهادة سارية المفعول فقط في حالة تطابق بياناتها باللغتين العربية و الإنجليزية

استنادا الى المعلومات الواردة من السلطات الإسرائيلية, تشهد اللجنة الدولية للصليب الأحمر بأن:

السيد/ة الآنسة _____

من _____ هوية رقم Redacted ٥٥٨٧

كان/ت قد اعتقل/ت من قبل السلطات الإسرائيلية في يوم ٦ / شهر ١٠ / سنة ٢٠١٥

و هو/هي في هذا التاريخ : بنتظر المحاكمة _____ محكوم/ة ☒   اداري _____

محكوم/ة أو إداري لمدة _____

Date: **10.07.2016**
التـــاريـــخ

Place: **NABLUS**
المكـــان

**ILJ-030252**

**ICRC Delegate**
توقيع مندوب اللجنة

CONFIDENTIAL

SHATSKY-JD02008

Exhibit 163

| Prisoner Salary Statement | | | | | | | |
|---|---|---|---|---|---|---|---|
| Prisoner no. 7681 | | | | | | | |
| Prisoner Name:  Amjad Adel Muhamad Aliwi | | | Document no. 916525587 | | | | |
| Month | Year | Beneficiary | ID no. | Bank Name | Branch | Account no. | Salary |



Redacted

Confidential

Shatsky-JD00527-T

| Prisoner Salary Statement | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Prisoner no. 7681 | | | | | | | | |
| Prisoner Name: Amjad Adel Muhamad Aliwi | | | Document no. 916525587 | | | | | |
| Month | Year | Beneficiary | ID no. | Bank Name | Branch | Account no. | | Salary |
| | | | | Redacted | | | | |
| 4 | 2020 | Miya[*] Ya'qub Aliwi | Redacted 7002 | | | | | 4,377.50 |
| 5 | 2020 | Miya[*] Ya'qub Aliwi | Redacted 7002 | | | | | 4,377.50 |
| 6 | 2020 | Miya[*] Ya'qub Aliwi | Redacted 7002 | | | | | 4,777.50 |
| 7 | 2020 | Miya[*] Ya'qub Aliwi | Redacted 7002 | | | | | 4,377.50 |
| 8 | 2020 | Miya[*] Ya'qub Aliwi | Redacted 7002 | | | | | 4,377.50 |
| 9 | 2020 | Miya[*] Ya'qub Aliwi | Redacted 7002 | | | | | 4,377.50 |
| 10 | 2020 | Miya[*] Ya'qub Aliwi | Redacted 7002 | | | | | 4,377.50 |
| 11 | 2020 | Miya[*] Ya'qub Aliwi | Redacted 7002 | | | | | 4,377.50 |
| 12 | 2020 | Miya[*] Ya'qub Aliwi | Redacted 7002 | | | | | 4,777.50 |
| 1 | 2021 | Miya[*] Ya'qub Aliwi | Redacted 7002 | | | | | 4,377.50 |
| 2 | 2021 | Miya[*] Ya'qub Aliwi | Redacted 7002 | | | | | 4,377.50 |
| 3 | 2021 | Miya[*] Ya'qub Aliwi | Redacted 7002 | | | | | 4,377.50 |
| 4 | 2021 | Miya[*] Ya'qub Aliwi | Redacted 7002 | | | | | 4,377.50 |
| 5 | 2021 | Miya[*] Ya'qub Aliwi | Redacted 7002 | | | | | 4,377.50 |

Confidential

Shatsky-JD00528-T