Original



كشف راتب أسير

رقم الأسير ......... 7681
اسم الأسير: اجود هاني محمد عليوي

رقم الملف: 916525587

| الرقم | رقم الحساب | الفرع | البنك | رقم البطاقة | اسم المستفيد | السنة | الشهر |
|---|---|---|---|---|---|---|---|

Redacted

٢ من ١ صفحة

CONFIDENTIAL

Shatsky-JD00527



كشف رائب أمير

رقم الأمر   7651
اسم الأمير   المجد عبد سعيد علبوي

رقم الحساب ................ رقم الرمز 916525597

| الراتب | رقم الحساب | الدرع | الدلك | رقم البطاقة | اسم المستفيد | الفئة | الشهر | السنة |
|---|---|---|---|---|---|---|---|---|

(Redacted large regions)

| 4,377.50 | Redacted | Redacted | Redacted 7002 | صبا يعقوب علبوي | 2020 | 4 |
| 4,377.50 | | | Redacted 7002 | صبا يعقوب علبوي | 2020 | 5 |
| 4,777.50 | | | Redacted 7002 | صبا يعقوب علبوي | 2020 | 5 |
| 4,377.85 | | | Redacted 7002 | صبا يعقوب علبوي | 2020 | 7 |
| 4,377.50 | | | Redacted 7002 | صبا يعقوب علبوي | 2020 | 8 |
| 4,377.50 | | | Redacted 7002 | صبا يعقوب علبوي | 2020 | 9 |
| 4,377.50 | | | Redacted 7002 | صبا يعقوب علبوي | 2020 | 10 |
| 4,777.50 | | | Redacted 7002 | صبا يعقوب علبوي | 2020 | 11 |
| 4,377.50 | | | Redacted 7002 | صبا يعقوب علبوي | 2020 | 12 |
| 4,377.55 | | | Redacted 7002 | صبا يعقوب علبوي | 2021 | 1 |
| 4,377.80 | | | Redacted 7002 | صبا يعقوب علبوي | 2021 | 2 |
| 4,377.50 | | | Redacted 7002 | صبا يعقوب علبوي | 2021 | 3 |
| 4,377.50 | | | Redacted 7002 | صبا يعقوب علبوي | 2021 | 4 |
| 4,377.50 | | | Redacted 7002 | صبا يعقوب علبوي | 2021 | 5 |

CONFIDENTIAL

Shatsky-JD00528

# Exhibit 164

CONFIDENTIAL                                    11680                          SHATSKY-JD01933-T

                                                  OK

[Round stamp:] PLO / Dep. Detainees & Ex-Detainees Affairs
03.03.2016 / Gen. Dir. Of Legal Affairs / Checked /
Indictments

[English] Palestinian National Authority        [Emblem of the          [Arabic] Palestinian National Authority
Ministry of Detainees & Ex-detainees Affairs    Palestinian Authority]   Ministry of Detainees & Ex-detainees Affairs
Gen. Dep. Detainees & Ex-detainees                                       Gen. Dep. Detainees & Ex-detainees

**Main Prisoner Form**   *32061* [illegible]                    *Arrest*

| Form no.: | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Form issuance date: | 1.28.2016 | | | Ministry's administration/branch: | | Jerusalem | | |

**1. Basic information concerning the prisoner:**

| ID no. (9 digits) | Redacted | | | | 1 | 1 | 7 | 7 |
|---|---|---|---|---|---|---|---|---|
| Four-part name: | First name | | Father's name | | Grandfather's name | | Family name | |
| | Bilal | | Omar | | Mahmoud | | Abu Ghanem | |
| Mother's name: | Ataf | | | | Gender: | | ☐ Male | ☐ Female |
| DoB: | Redacted / 1994 | | | | Place of birth: | | ~~Jerusalem~~ Jordan | |
| Education: | ☐ Illiterate | ☐ Elementary | | ☐ High school | ☐ Diploma | ☐ University | ☐ Higher education | |
| Profession prior to arrest: | Student | | | | Organization: | | -------------- | |
| Arrest date: | 10 / 13 / 2015 | | | | Place of arrest: | | Eshel | |
| Arrest status: | ☐ Detained | ☐ Sentenced | | ☐ Administrative | ☐ Free | | ☐ Other | |
| In case of life sentence according to ICRC Certificate | Day | Month | Year | Expected release date according to verdict: | Day | | Month | Year |
| | | | | | | | | |
| Permanent residence: | Governorate: | Jerusalem | Residential complex: | | Redacted | | | |
| Notes: | | | | | | | | |

[Two signatures]

**2. Information concerning previous arrests: ___1___. Only those attested to by ICRC certificates, in chronological order from newest to oldest.**

| No. | Arrest date | Arrest type | Release date | Arrest period | | | Notes |
|---|---|---|---|---|---|---|---|
| | | | | Day | Month | Year | |
| 1. | 9.1.2013 | Security | 10.5.2014 | | | | |
| 2. | | | | | | | |
| 3. | | | | | | | |
| 4. | | | | | | | |
| 5. | | | | | | | |
| 6. | | | | | | | |

3-6-13 [signature]

1

CONFIDENTIAL                                                              SHATSKY-JD01933-T

CONFIDENTIAL                                                    SHATSKY-JD01934-T

| [English] Palestinian National Authority | [Emblem of the | [Arabic] Palestinian National Authority |
|---|---|---|
| Ministry of Detainees & Ex-detainees Affairs | Palestinian Authority] | Ministry of Detainees & Ex-detainees Affairs |
| Gen. Dep. Detainees & Ex-detainees | | Gen. Dep. Detainees & Ex-detainees |

**3. Social Status Information:**

| Marital Status: | ☐ Single | | ☐ Married | | ☐ Divorced | | ☐ Widow | |
|---|---|---|---|---|---|---|---|---|
| If Married: | Enter data of spouse and children | | | | | | | |
| Spouse's ID No. | | | | | | Marriage Contract Date | / / | |
| Spouse Name | | | | | | | Number of Children: | |
| Data on children from first wife: (sons under 18, unmarried daughters of all ages) | | | | | | | | |
| No. | Name | | | DoB | Marital Status | Education | | |
| 1. | | | | | | | | |
| 2. | | | | | | | | |
| 3. | | | | | | | | |
| 4. | | | | | | | | |
| 5. | | | | | | | | |
| 6. | | | | | | | | |
| 7. | | | | | | | | |
| 8. | | | | | | | | |
| 9. | | | | | | | | |

**4. Information of Authorized Representative (Beneficiary):**

| Beneficiary's ID: | Redacted | | | | | 2 | 2 | 3 | 4 |
|---|---|---|---|---|---|---|---|---|---|
| Authorized Representative – Beneficiary's Name: | Ataf Ali Abu Ghanem | | | | | Relationship: | Mother | | |
| Date of Authorization if Available: | / / | | | Authorization's Period of Validity: | | | | | |
| Bank: | Redacted | | | Bank Branch: | | Redacted | | | |
| Account No.: | | | | Redacted | | | | | |
| Landline Phone No.: | | | | Cell Phone No.: | | | | | |
| Permanent Beneficiary's Address: | Governorate: | Jerusalem | | Residential complex: | | | | | |
| Notes: | | | | | | | | | |

| Applicant's Notes: | |
|---|---|
| Confirmation: | I the undersigned confirm and testify that all of the information provided in this application is correct and I take responsibility for it. |
| Applicant's Signature: | [signature] |

2

CONFIDENTIAL                                                    SHATSKY-JD01934-T

CONFIDENTIAL                                              SHATSKY-JD01938-T

[Handwritten in Arabic: *Presented 11.09.2015*]

**At the Jerusalem District Court**              **Serious Criminal Case 19668-11-15**

**Before a three-man panel**

**The State of Israel**

[Arabic language stamp:]                   via the District Attorney, Jerusalem Region
PLO
Detainees & Ex-Detainees Department                        **The Plaintiff:**
03-03-2016
General Department for Legal Affairs
Checked
Indictments                                        - versus -

[Notation handwritten in Arabic: Security]

**Bilal Abu Ghanem**

Father's name: Omar

ID No. ^Redacted^31177

Date of Birth ^Redacted^ 1994

Jabl Mukabbir, Jerusalem (currently in detention)

**The Defendant**

**Indictment**

The defendant is hereby indicted as follows:

**Background**

1. Beginning at the end of September 2015, against the background of continuing religious and nationalistic tensions, and among other things, in relation to the Temple Mount complex in Jerusalem, a wave of violent and murderous terror attacks against innocent Jewish citizens and security personnel swept the country. Every day, Arabs - mostly youth, and often even minors - attack Jewish passersby, women, men and children, and security personnel, with cold weapons (knives, axes, etc.) and hot weapons, in order to murder them (hereinafter: the Wave of Terror).

2. As a result of the Wave of Terror, by the date of the filing of the indictment, more than ten citizens and security personnel have been murdered, and many dozens injured, some seriously.

[Line cut off]
CONFIDENTIAL

CONFIDENTIAL                                              SHATSKY-JD01939-T

2.

3.  The Defendant, as will be described below in the indictment, committed that which is attributed to him as part of the Wave of Terror and in order to aid the enemies of Israel in their fight against it.

4.  On 6.22.1989, the Hamas organization was declared a terror organization in a government decision in accordance with its authority according to the Terrorism Prevention Ordinance - 5708-1948 (hereinafter: **Hamas**).

5.  Starting in the beginning of March 2013, the Defendant was a member of the Hamas organization, and began his activities in The Islamic Bloc, which is the student organization of Hamas - that had been declared an unlawful association by the Minister of Defense. The Defendant supported the Hamas organization since then and until the date he executed that which is attributed to him in the indictment.

6.  The facts listed in the background of the indictment constitute an integral part of this indictment.

[Arabic language stamp:]
PLO
Detainees & Ex-Detainees Department
03-03-2016
General Department for Legal Affairs
Checked
Indictments

**A. The Facts:**

7.  The Defendant is a student of Islam and Sharia in the Abu Dis College, lives with his parents in the Jabl Mukabbir neighborhood of Jerusalem (hereinafter: **the Neighborhood**) and has a job selling cocktails in the Neighborhood (hereinafter: **the Store**).

8.  The Defendant has in his possession a silver Honda moped, license plate number 37-767-78 (hereinafter: **the Moped**).

9.  The Defendant had a prior acquaintance with Bahaa Alyan (hereinafter: **Bahaa**), who also lived in the Neighborhood and worked in a printing shop in the Neighborhood (hereinafter: **the Print Shop**).

**The preparations for murder**

**The connection and preparation for a murderous, nationalistic terror attack**

10. On the night of 10.12.2015, at a time not exactly known to the Plaintiff, Bahaa came to the Store and told the Defendant that he has in his possession a sum of NIS20,000 which was to be used to purchase a gun with which he wanted to execute a terror attack against Jews (hereinafter: the Terror Attack). The Defendant told Bahaa that if he managed to get a gun, the Defendant would participate in the Terror Attack with him. The Defendant and Bahaa talked about the "breachings of Al-Aqsa," and how

CONFIDENTIAL                                           SHATSKY-JD01940-T

3

the settlers were murdering little children. On the above-mentioned basis, the two agreed to execute a murderous nationalistic Terror Attack against Jews in which they would use a gun and a knife.

11. In the course of that same evening, Bahaa drove to the Abu Dis neighborhood and purchased an FN pistol (hereinafter **the Pistol**) for the sum of NIS20,000 from a weapons dealer whose identity is unknown to the Plaintiff.

12. On 10.13.2015, at a time that is not exactly known to the Plaintiff around 10:30, Bahaa came to the Store and noticed a knife with a long, sharp blade (hereinafter: **the Knife**). Bahaa noted to the Defendant that the knife was suitable for the execution of the Terror Attack, took it and left the Store while finalizing with the Defendant that he would come to the Print Shop. The Defendant waited approximately ten minutes and then left the Store and walked on foot to the Print Shop.

13. When the Defendant reached the Print Shop, Bahaa showed him the Pistol and said that the cartridge of the Pistol contained fourteen bullets. The Defendant took the Pistol and Bahaa explained to the Defendant how to release the safety catch and use it for the purpose of carrying out the Terror Attack.

14. The Defendant put the Pistol in his pants close to his left hip, and Bahaa took the Knife and put it in his pants, close to his hip. After they armed themselves with the Pistol and the Knife, the two left the Print Shop in order to carry out their murderous plan.

15. The Defendant and Bahaa got onto the Moped, with the Defendant drive and Bahaa sitting behind him, and they drove in the direction of the Armon Hanatziv neighborhood in Jerusalem. The Defendant parked the Moped at the neighborhood health fund located near the Armon Hanatziv neighborhood, and the two walked to Armon Hanatziv. The two decided between themselves that they would murder Jewish passengers riding on a bus.

16. The Defendant and Bahaa waited at a bus stop for a bus to come, in order to get on the bus and execute there the Terror Attack.

### The murderous Terror Attack

17. When the 78 bus going towards the center of Jerusalem came, the two got on the bus, which was empty of all passengers except for the bus driver Y.Z. (hereinafter: **the Bus Driver**). The two sat down in the middle of the bus without paying for their ride, while promising Yisrael that they would pay soon, and waited for more passengers to get on in order to murder them with the Pistol and the Knife.

[Arabic language stamp:]
PLO
Detainees & Ex-Detainees Department
03-03-2016
General Department for Legal Affairs
Checked
Indictments
[Line cut off]   YAACHAK

CONFIDENTIAL

CONFIDENTIAL                                              SHATSKY- JD01941-T

4

18. Yisrael continued driving for another several stops, during which Alon Andrei Govberg (hereinafter: **Alon of blessed memory**), Richard Lakin (hereinafter **Richard of blessed memory**), Haviv Chaim (hereinafter: **Haviv of blessed memory**), his wife - **S.H., M.O, M.R., R.A.M., A.M., L.A.**, and other passengers (hereinafter, all of them together: **the Passengers**) got on the bus.

19. When the bus reached the junction of Olei Hagardom and Barazani Streets, the Defendant and Bahaa looked each other in the eye and Bahaa signaled to the Defendant to begin killing Passengers.

20. The Defendant pulled out the Pistol, turned to the back of the bus, and fired at the Passengers from close range toward their heads and upper bodies in order to cause their deaths. At the same time, Bahaa pulled out the Knife, approached the Passengers sitting in the front of the bus and began stabbing them many times in all parts of their bodies, and especially in the upper parts of their bodies, in order to cause their deaths.

21. The Driver, who noticed what was happening, stopped the bus and tried to open its doors to enable the Passengers to flee. Yisrael fled the bus but the Defendant and Bahaa closed the doors after him in order to cause the death of as many Passengers as possible.

22. The Defendant shot all the ammunition he had at the Passengers on the bus and Bahaa stabbed as many Passengers as he could.

23. During the incident, the Defendant shot, among others, one bullet into the head of Haviv of blessed memory, six bullets into the upper body of Alon of blessed memory, one bullet into the head of Richard of blessed memory, and two bullets into the stomach and right hand of S.H.

24. During the incident, Bahaa stabbed, among others, Alon of blessed memory four times in the stomach, Richard of blessed memory in his stomach, M.R. in her back and M.O. several times in her shoulder and chest.

25. When the Defendant finished shooting all the bullets in the cartridge, while Bahaa was stabbing Richard of blessed memory, the blade of the Knife broke and was left stuck in his body. At this point, Bahaa took the Pistol out of the Defendant's hands and one of the two started choking R.A.M. in order to murder him.

26. Border police and other police officers who had been called to the scene after receiving a report on the police communications network, arrived at the scene at this time. Bahaa aimed the empty Pistol at the police officers, who shot him to death and wounded the Defendant in his chest.

27. As a result of the shooting and the stabbing executed by the Defendant and Bahaa, the bus Passengers suffered, among others, the following injuries:  [Arabic language stamp:]

PLO
Detainees & Ex-Detainees Department
03-03-2016
General Department for Legal Affairs
Checked
Indictments
PAGE 05/15

[Line cut off]    YAACHAK

CONFIDENTIAL                                              SHATSKY- JD01941-T

CONFIDENTIAL

SHATSKY- JD01942-T

5

.28

a. Alon of blessed memory suffered many gunshot and stab wounds to his upper body that caused severe blood loss. Alon of blessed memory was killed on the spot.

b. Haviv of blessed memory suffered a head wound and many stab wounds to his upper body that caused him to lose a large amount of blood. Haviv of blessed memory died of his wounds that same day in the hospital.

c. Richard of blessed memory suffered many wounds to his head and internal organs that caused severe blood loss. On 10.27.2015, Richard of blessed memory died of his wounds.

d. S.H. suffered gunshot wounds to her stomach and right arm that caused internal bleeding and a severe blood loss, and she needed life-saving surgery under general anesthesia and many units of blood.

e. M.O. suffered many stab wounds to her upper body, among them a tear of her right lung, and she needed life-saving treatment under general anesthesia and a chest drain.

f. M.R. suffered a wound to her back and a tear of her right lung and needed stitches and a drain.

g. The rest of the Passengers on the bus suffered psychological anxiety injuries. [Arabic language stamp:]
PLO
Detainees & Ex-Detainees Department
03-03-2016
General Department for Legal Affairs
Checked
Indictments

29. Through his above-stated actions:

The Defendant intentionally caused the deaths of three people without any prior provocation, in circumstances in which he could have thought through and understood the consequences of his actions, and afterwards prepared himself to kill them. The Defendant also unlawfully attempted to cause the deaths of seven other people.

## B. Statutory provisions under which the Defendant is being charged:

1. **Murder** - an offense pursuant to Section 300(a)(2) of the Penal Law of 5737-1977 (hereinafter: **the Law**) - **3 counts**.

2. **Attempted Murder** - an offense pursuant to Section 305(1) of the Law - **7 counts**.

## C. Witnesses for the Prosecution:

1. Sergeant-Major Timor Shakur, Personal ID No. [Redacted]6457, Special Tasks Dept. Jerusalem, Israel Police (G.H.)

2. Sergeant-Major Ala Tafela, Personal ID No. [Redacted]6028, Special Tasks Dept. Jerusalem, Israel Police (G.H.)

[Line cut off]

PAGE 06/15

CONFIDENTIAL

SHATSKY- JD01942-T

# Original

CONFIDENTIAL

SHATSKY-JD01928



## TO WHOM IT MAY CONCERN

**CICR** This attestation is valid only if the English and Arabic parts match each other

According to the information received from the Israeli Authorities, the International Committee of the Red Cross attests that:

Mr: **BILAL OMAR MAHMOUD ABU-GHANEM**

11680

From: **EAST JERUSALEM**         ID NO: Redacted 1177

Was arrested by the Israeli Authorities on (dd/mm/yyyy):   **13.10.2015**

He is to date: **Awaiting Trial**



**CICR**

إلى من يهمه الأمر

هذه الشهادة سارية المفعول فقط في حالة تطابق بياناتها باللغتين العربية و الإنجليزية

استنادا الى المعلومات الواردة من السلطات الإسرائيلية، تشهد اللجنة الدولية للصليب الأحمر بأن:

السيد/ة الآنسة بلال عُمُر محمود أبو غانم

Redacted من القدس هوية رقم ١١٧٧

كان/ت قد اعتقل/ت من قبل السلطات الإسرائيلية في يوم ١٣ / شهر ١٠ / سنة ٢٠١٥

وهو/هي في هذا التاريخ :ينتظر المحاكمة ☒   محكوم/ة _____ اداري _____



**CERTIFIED UPDATE**

C **22 -12- 2016**
R International Committee
C of the Red Cross



ICRC Delegate

Date: **24.01.2016**
التاريخ

Place: **JER /AHA**
المكـــان

**ILJ-993395**

CONFIDENTIAL

SHATSKY-JD01928

CONFIDENTIAL

SHATSKY-JD01929





## TO WHOM IT MAY CONCERN

CICR  This attestation is valid only if the English and Arabic parts match each other

According to the information received from the Israeli Authorities, the International Committee of the Red Cross attests that:

Mr:  **BILAL OMAR MAHMOUD ABU-GHANEM**

11680

From:  *EAST JERUSALEM*        ID NO: Redacted **1177**

Was arrested by the Israeli Authorities on (dd/mm/yyyy):    **13.10.2015**

He is to date: **Awaiting Trial**

إلى من يهمه الأمر

هذه الشهادة سارية المفعول فقط في حالة تطابق بياناتها باللغتين العربية و الإنجليزية

استنادا الى المعلومات الواردة من السلطات الإسرائيلية، تشهد اللجنة الدولية للصليب الأحمر بأن:

السيد/ة الآنسة ــــــ بلال عمر محمد د أبو غانم ــــــ

من ــــــ القدس ــــــ Redacted هوية رقم ــــــ ١١٧٧ ــــــ

كان/ت قد اعتقل/ت من قبل السلطات الإسرائيلية في يوم ــــ ١٣ ــــ / شهر ــــ ١٠ ــــ /سنة ١٥ . ٢٠

وهو/هي في هذا التاريخ :(ينتظر المحاكمة) X ــــــ محكوم/ة ــــــ اداري ــــــ

Date: **24.01.2016**
التــاريـــخ
Place: **JER /AHA**
المكـــان

**ILJ-993395**

CONFIDENTIAL

SHATSKY-JD01929

CONFIDENTIAL

SHATSKY-JD01930



لجهد يد أكشاد



## TO WHOM IT MAY CONCERN

**CICR** This attestation is valid only if the English and Arabic parts match each other

According to the information received from the Israeli Authorities, the International Committee of the Red Cross attests that:

Mr:     **BILAL OMAR MAHMOUD ABU-GHANEM**

From:     *EAST JERUSALEM*     ID NO: Redacted **1177**

Was arrested by the Israeli Authorities on (dd/mm/yyyy):     **13.10.2015**

He is to date: **Awaiting Trial**

إلى من يهمه الأمر



**CICR**

هذه الشهادة سارية المفعول فقط في حالة تطابق بياناتها باللغتين العربية و الإنجليزية

استنادا الى المعلومات الواردة من السلطات الاسرائيلية، تشهد اللجنة الدولية للصليب الأحمر بأن:

السيد/ة الأنسة _____ بلال خُمر محـــــود أبو عَـانِم _____

من ____ القُـدس _____ هوية رقم _____ Redacted ١١٧٧ _____

كان/ت قد اعتقل/ت من قبل السلطات الاسرائيلية في يوم _ ١٣ _ / شهر __ ١٠ _ / سنة ٥ ١٠.٢ <

وهو/هي في هذا التاريخ :(ينتظر المحاكمة) X __ محكوم/ة _____ اداري _____



CERTIFIED UPDATE

25 -08- 2016

International Committee
of the Red Cross

Date: **24.01.2016**

التـــاريـــخ

Place: **JER /AHA**

المكـــان

**ILJ-993395**

CONFIDENTIAL

SHATSKY-JD01930

CONFIDENTIAL

SHATSKY-JD01931



## TO WHOM IT MAY CONCERN



**CICR**   This attestation is valid only if the English and Arabic parts match each other

According to the information received from the Israeli Authorities, the International Committee of the Red Cross attests that:

Mr:   **BILAL OMAR MAHMOUD ABU-GHANEM**

From:   **EAST JERUSALEM**   Redacted   ID NO:   **1177**

Was arrested by the Israeli Authorities on (dd/mm/yyyy):   **13.10.2015**

He is to date: **Awaiting Trial**

إلى من يهمه الأمر

**CICR**

هذه الشهادة سارية المفعول فقط في حالة تطابق بياناتها باللغتين العربية و الإنجليزية

استنادا الى المعلومات الواردة من السلطات الإسرائيلية, تشهد اللجنة الدولية للصليب الأحمر بأن:

السيد/ة الآنسة ___ بلال عمر محمود أبو غانم ___

من ___ القدس ___ هوية رقم ___ ١١٧٧ ___ Redacted

كان/ت قد اعتقل/ت من قبل السلطات الإسرائيلية في يوم ___ ١٣ ___ / شهر ___ ١٠ ___ / سنة ___ ٢٠١٥ ___

وهو/هي في هذا التاريخ: (ينتظر المحاكمة) ☒ ___ محكوم/ة ___ اداري ___



Date: **24.01.2016**
التاريخ
Place: **JER /AHA**
المكان

**ILJ-993395**

CONFIDENTIAL

SHATSKY-JD01931

CONFIDENTIAL
SHATSKY-JD01933

11680

Palestinian National Authority
Ministry of Detainees & Ex-detainees Affairs

Gen Dep. Detainees & Ex-detainees

السلطــة الوطنيــة الفلسطينية
وزارة شــؤون الأســرى والمحــررين
الإدارة العامة لشؤون الأسرى والمحررين

استمارة الأسير الرئيسية

| رقم الاستمارة: | | | | | | | |
| تاريخ تعبئة الاستمارة: | ٢٠١٦/١/٢٨ | المديرية/فرع الوزارة: | | | | | |

### ١. المعلومات الرئيسية للأسير:

| رقم الهوية: (تسع خانات) | | ٧ | ٧ | ١ | ١ |
|---|---|---|---|---|---|

| الاسم الرباعي: | اسم العائلة | اسم الجد | اسم الأب | الاسم الأول |
|---|---|---|---|---|
| | الوينات | محمود | عمر | بلال |

| اسم الأم: | عطاف |
| الجنس: | ☑ ذكر   ☐ أنثى |

| تاريخ الميلاد: | Redacted / ١٩٩٤ |
| مكان الولادة: | |

| المؤهل العلمي: | ☐ أمي   ☐ أساسية   ☐ ثانوي   ☐ دبلوم   ☑ جامعي   ☐ دراسات عليا |

| المهنة قبل الأسر: | طالب |
| التنظيم: | |

| تاريخ الأسر: | ٢٠١٥/٨/١٣ |
| مكان الاعتقال: | ايسار ٨ |

| الوضع الاعتقالي: | ☑ موقوف   ☐ محكم   ☐ إداري   ☐ محرر   ☐ أخرى |

| في حالة محكوم مدة الحكم حسب شهادة الصليب: | يوم | شهر | سنة | تاريخ الإفراج المتوقع | اليوم | الشهر | العام |

| حسب قرار الحكم: |
| العنوان الدائم: | المحافظة: | القدس | التجمع السكاني: Redacted |
| ملاحظات: | |

### ٢. بيانات الاعتقالات السابقة:

عدد مرات الاعتقال السابقة: ____١____ فقط المثبت بشهادة صليب وبتسلسل زمني من الأحدث إلى الأقدم.

| الرقم | تاريخ الاعتقال | نوع الاعتقال | تاريخ الإفراج | مدة الاعتقال | | | ملاحظات |
|---|---|---|---|---|---|---|---|
| | | | | يوم | شهر | سنة | |
| ١. | ٢٠١٣/٩/١٩ | أمني | ٢٠١٤/١٠/٥ | | | | |
| ٢. | | | | | | | |
| ٣. | | | | | | | |
| ٤. | | | | | | | |
| ٥. | | | | | | | |
| ٦. | | | | | | | |

1

CONFIDENTIAL
SHATSKY-JD01933

CONFIDENTIAL

SHATSKY-JD01934

Palestinian National Authority

Ministry of Detainees & Ex-detainees Affairs

Gen Dep. Detainees & Ex-detainees

السلطة الوطنية الفلسطينية

وزارة شـؤون الأسـرى والمحـررين

الإدارة العامة لشؤون الأسرى والمهررين

3. بيانات الوضع الاجتماعي:

| الحالة الاجتماعية: | ▢ أعزب | ▢ متزوج | ▢ مطلق | ▢ أرمل |
|---|---|---|---|---|

| في حالة متزوج/ة: | تعبئة بيانات الزوج/ة والأبناء |
|---|---|

| رقم هوية الزوج/ة: | |
| اسم الزوج/ة: | |
| تاريخ عقد الزواج | / / |
| عدد الأولاد: | |

بيانات الأبناء من الزوجة الأولى:(الأبناء الذكور أقل من 18 عام، والبنات غير المتزوجات بغض النظر عن أعمارهن)

| الرقم | الاسم | تاريخ الميلاد | الحالة الاجتماعية | المؤهل العلمي |
|---|---|---|---|---|
| 1. | | | | |
| 2. | | | | |
| 3. | | | | |
| 4. | | | | |
| 5. | | | | |
| 6. | | | | |
| 7. | | | | |
| 8. | | | | |
| 9. | | | | |

4. بيانات الوكيل المستفيد:

| رقم الهوية المستفيد: | ٤ ٣ ح ح |
| اسم الوكيل المستفيد: | خطاف على ابو غناام |
| تاريخ الوكالة إن وجدت: | |
| البنك: | Redacted |
| رقم الحساب: | Redacted |
| رقم الهاتف الأرضي: | |
| العنوان الدائم للمستفيد: | المحافظة: القدس |
| ملاحظات: | |

Redacted

| صلة القرابة: | الام |
| مدة سريان الوكالة: | Redacted |
| فرع البنك: | Redacted |
| رقم الهاتف النقال: | Redacted |
| التجمع السكني: | |

| ملاحظات مقدم الطلب: | |
|---|---|

| إقرار: | أنا الموقع أدناه أقر وأشهد بأن كافة المعلومات الواردة في الطلب صحيحة وأتحمل مسؤوليتها. |
| توقيع مقدم الطلب: | |

2

CONFIDENTIAL

SHATSKY-JD01936



## TO WHOM IT MAY CONCERN



This attestation is valid only if the English and Arabic parts match each other

According to the information received from the Israeli Authorities, the International Committee of the Red Cross attests that:

Mr:   **BILAL OMAR MAHMOUD ABU-GHANEM**

From:   **EAST JERUSALEM**          ID NO: Redacted **1177**

Was arrested by the Israeli Authorities on (dd/mm/yyyy):   **13.10.2015**

He is to date: **Awaiting Trial**



الى من يهمه الأمر

هذه الشهادة سارية المفعول فقط في حالة تطابق بياناتها باللغتين العربية و الإنجليزية

استنادا الى المعلومات الواردة من السلطات الإسرائيلية, تشهد اللجنة الدولية للصليب الأحمر بأن:

السيدة/الأنسة _____ بلال عمر محمود أبو غانم _____

من _____ القدس _____ هوية رقم _____ Redacted ١١٧٧ _____

كان/ت قد اعتقل/ت من قبل السلطات الإسرائيلية في يوم ١٣ / شهر ١٠ / سنة ٢٠١٥

وهو/هي في هذا التاريخ :( ينتظر المحاكمة ) ☒   محكوم/ة _____   اداري _____

**CERTIFIED UPDATE**

ICRC   24 -01- 2016   International Committee of the Red Cross   ICRC Delegate

Date: **24.01.2016**
التاريخ

Place: **JER /AHA**
المكان

**ILJ-993395**

CONFIDENTIAL

SHATSKY-JD01936

CONFIDENTIAL

SHATSKY-JD01938

תפ"ח 15-11-19668

בית המשפט המחוזי בירושלים
בפני הרכב תלתא

מדינת ישראל

באמצעות פרקליטות מחוז ירושלים

- נ ג ד -



בלאל אבו גאנם

שם האב : עמר
ת.ז. 11177Redacted
יליד 1994Redated
ג'בל מוכבר, ירושלים) (כעת במעצר)

המאשימה

הנאשם

**כתב אישום**

הנאשם מואשם בזאת כדלקמן :

**חלק כללי:**

1. החל מסוף חודש ספטמבר 2015, על רקע של מתיחות דתית ולאומית נמשכת, ובין
השאר, בייחס למתחם הר הבית בירושלים, החל ברחבי הארץ גל של פיגועי טרור
רצחניים ואלימים נגד אזרחיה יהודים חפים מפשע ונגד אנשי כוחות הביטחון. מדי יום
ביומו, תוקפים ערבים - לרוב צעירים ולא פעם אף קטינים - עוברי אורח יהודים, נשים,
גברים וטף ואנשי כוחות בטחון - באמצעות כלי נשק קרים (סכינים, גרזנים ועוד) וכלי
נשק חמים, במטרה לרוצחם נפש (לחלן : "גל "הטרור").

2. כתוצאה מגל הטרור נרצחו, עד למועד הגשת כתב האישום, למעלה מעשרה אזרחים,
ואנשי כוחות הביטחון ועשרות רבות נפצעו, מהם גם פצועים באורח קשה.

CONFIDENTIAL

SHATSKY-JD01938

CONFIDENTIAL

SHATSKY-JD01939

2

3. הנאשם, כפי שיתואר לחלן במסגרת כתב האישום, ביצע את המיוחס לו כחלק מגל הטרור ובמטרה לסייע לאויבי ישראל במלחמותם בה.

4. בתאריך 22.6.1989 הוכרז ארגון "חחמאס" כארגון טרור על פי החלטת תממשלה בהתאם לסמכותה לפי חפקודת למניעת טרור תש"יח – 1948 (לחלן – "**תחמאס**").

5. החל מראשית חודש מרץ 2013 היה הנאשם חבר בארגון החמאס, וחתל לפעול במסגרות ארגון "חכותלתא אל איסלמיה" שהינו ארגון הסטודנטים של תנועת החמאס - שהוכרו כהתאחדות בלתי מותרת על ידי שר הביטרון. הנאשם תמך בארגון החמאס מאז ועד למועד ביצוע המיוחס לו בכתב האישום.

6. העובדות המפורטות בחלקן הכללי של כתב ראישום מהווה חלק בלתי נפרד מאישום ואישום.

**א.   העובדות:**

7. חנאשם הנו סטודנט לאסלאם ושריעת במכל'ת אבו דיס, מתגורר עם הוריו בשכונת ג'בל מוכבר בירושלים (לחלן : השכונה) ועבד :רתנות לממכר קוקטיילים בשכונה (לחלן : **חחנות**).

8. ברשותו של הנאשם קטנוע מסוג "חונדה" כסוף בעל לוחית זיהוי שמספרה 78-767-37 (לחלן: **הקטנוע**).

9. לנאשם הייתה חיכרות קודמת עם בתאא עליאן (לחלן : **בחאא**), שהתגורר גם חוא בשכונה, ועבד בחנות דפוס בשכונה (לחלן : **חנות חדפוס**).

**ההכנות ;רצח**

**תקשר וחתכנה לפגיני ן ;רצחני לאומני**

10. בליל ה-12.10.15, בשעה שאינה ידועה במדויק למאשימה, חגיע בחאא לחנות וסיפר לנאשם כי ברשותו סכום של 20,000 ₪, תמי'עד לרכישת אקדח, עמו הוא מעוניין לבצע פיגוע נגד יהודים (לחלן : הפיגוע). הנאשם אמר לבחאא כי אם יצליח לחשיג אקדח, חנאשם ישתתף איתו בפיגוע. חנאשם ובחא: שוחחו על "פריצות לאל אקצה"; ועל כך

CONFIDENTIAL

SHATSKY-JD01940

3

שהמתנחלים רוצחים ילדים קטנים. על רקע האמור, סיכמו השניים לבצע פיגוע לאומני
רצחני נגד יהודים בו ישתמשו באקדח ובסכין.

11.   בהמשך אותו לילה, נסע בהאא לשכונת אבו־דיס, ורכש מסוחר נשק, שזהותו אינה ידועה
למאשימה, אקדח מסוג FN (להלן: **האקדח**), בסכום של 20,000 ₪.

12.   ביום 13.10.15, בשעה שאינה ידועה במדויק למאשימה, עובר לשעה 10:30, הגיע בהאא
לחנות וחבוין בסכין בעלת להב ארוך ומחודד (להלן: **הסכין**). בהאא ציין בפני הנאשם
כי הסכין מתאימה לביצוע הפיגוע, נטל אותה יוצא מחתנות, תוך שהוא מסכים עם
הנאשם שיגיע לחנות הדפוס. הנאשם המתין בעשר דקות, ולאחר מכן יצא מחתנות וצעד
ברגל לחנות הדפוס.

13.   משהגיע הנאשם לחנות הדפוס, חצה בחאא (?)פני את האקדח ואמר כי מחסנית האקדח
מכילה ארבעה עשר כדורים. הנאשם נטל את האקדח לידיו, ובהאא הסביר לנאשם כיצד
לפתוח את נצרת האקדח ולהשתמש בו לצורך ביצוע הפיגוע.

14.   הנאשם הכניס את האקדח למכנסיו, צמוד למותנו השמאלית, ובהאא נטל את הסכין
והכניסה למכנסיו, צמוד למותנו שלו. לאחר שהתחמשו באקדח ובסכין, יצאו השניים
מחנות הדפוס, במטרה להוציא את תכניתם הרצחנית לפועל.

15.   הנאשם ובהאא עלו על הקטנוע, כאשר הנאשם נוהג ובהאא יושב מאחוריו, ונסעו לכיוון
שכונת ארמון הנציב בירושלים. הנאשם רחנה את הקטנוע בקופת חולים בשכונה,
הסמוכה לשכונת ארמון הנציב, והשניים צעדו לארמון הנציב. השניים סיכמו ביניהם כי
ירצחו נוסעים יהודים בנסיעה באוטובוס.

16.   הנאשם ובהאא המתינו בתחנת אוטובוס והמתינו לאוטובוס שיעבור, על מנת לעלות
לאוטובוס ולבצע בו את הפיגוע.

**<u>פיגוע הנ׳צח</u>**

17.   כשעבר אוטובוס שמספרו 78 הנוסע לכיוון מרכז העיר ירושלים, עלו השניים על
האוטובוס, שהיה ריק מנוסעים מלבד הנהג, י.ו (להלן: **הנהג**). השניים התייישבו במרכז
האוטובוס מבלי לשלם עבור הנסיעה, תוך נ׳חה מבטיחים לישראל כי ישלמו בהמשך,
והמתינו עד שיצטרפו לנסיעה נוסעים נוספים,  זאת במטרה לרוצחם באמצעות האקדח
והסכין.

CONFIDENTIAL

SHATSKY-JD01940

CONFIDENTIAL

SHATSKY-JD01941

4

18. ישראל חמשיך בנסיעה עד מספר תחנות, בח' עלו לאוטובוס אלון ואנדריי גוטברג (להלן: אלון ז״ל), ריצ׳רד לייקין ז״ל (להלן: ריצ׳רד ז״ל), חביב חיים ז״ל (להלן: חביב ז״ל), אשתו – ש.ח, מ.ו, ס.ר, ר.א.מ, א.ם, ל.א, וווניעים נוספים (להלן כולם יחד: הנוסעים).

19. כאשר חגיע האוטובוס לצומת הרחובות עלי הנגרדום וברזני, הביטו הנאשם ובהאא זה בעיניו של זה ובהאא סימן לנאשם להתחיל ל׳יצוח נוסעים.

20. הנאשם שלף את האקדח, פנה לחלקו האחור׳ של האוטובוס, וירח לעבר הנוסעים מטווח קצר לכיוון ראשיחם ופלג גופם העליון בכוונה לגרום למותם. במקביל, שלף בהאא את הסכין, ניגש לנוסעים שישבו בקדמת האוטובוס והחל לדקר אותם פעמים רבות בכל חלקי גופם, ובעיקר בפלג גופם העליון על מנת לגרום למותם.

21. הנהג, שהבחין במתרחש, עצר את האוטובוס וניסה לפתוח את דלנותיו כדי לאפשר לנוסעים להימלט. ישראל נמלט מהאוטובוס, אך הנאשם ובהאא סגרו את הדלתות אחריו, במטרה לגרום למותם של נוסעים רבים ככל חנ׳יתן.

22. הנאשם ירה את כל חתחמושת שחייתה ברישוותו לעבר נוסעים באוטובוס ובהאא דקר נוסעים ככל שהספיק.

23. במהלך האירוע, ירח הנאשם, בין השאר, כדור בראשו של חביב ז״ל, שישה כדורים בפלג גוף העליון של אלון ז״ל, כדור אחד בראשו ׳של ריצ׳ארד ז״ל ושני כדורים בבטנה ובחזה הימנית של ש.ח.

24. במחלך האירוע, דקר בהאא, בין השאר, את אלון ז״ל בבטנו ארבע פעמים, את ריצ׳ארד ז״ל בבטנו, את ס.ר בגבה, ואת מ.ו מספר דקירות בכתפה ובחזה.

25. משסיים הנאשם ליירות את כל חכדורים במר סנית, במחלך דקירותו של ריצ׳ארד ז״ל על ידי בהאא, נשבר להב הסכין ונותר נעוץ בגונ׳. בשלב זה, נטל בהאא את האקדח מידיו של הנאשם ואחד מחשניים החל לחנוק את ר א.מ במטרה לרוצחו.

26. שוטרי מג״ב ושוטרים נוספים שנזעקו למקוה׳ לאחר שקיבלו על כך דיווח ברשת הקשר המשטרתית, חגיעו אותה עת למקום. בחאא; כיוון את האקדח חריק לעבר השוטרים, שירו בו למוות, ופצעו את הנאשם בחזהו.

27. כתוצאה מחיר׳ והדקירות של הנאשם ושל בו/אא, נגרמו לנוסעי האוטובוס, בין השאר, פגיעות כדלקמן:

SHATSKY-JD01941

CONFIDENTIAL

SHATSKY-JD01942

5

28.

א. לאלון ז"ל נגרמו פצעי ירי ודקירה רבים בפלג גופו העליון, אשר גרמו לאיבוד דם רב. אלון ז"ל נהרג במקום.

ב. לחביב ז"ל נגרמו פציעות ראש ופצעי דקירה רבים בפלג גופו העליון, אשר גרמו לו לאיבוד דם רב. חביב ז"ל נפטר מפצעיו בא'תו יום בבית החולים.

ג. לריצ'רד ז"ל נגרמו פציעות רבות בראש ובאיברים פנימיים, אשר גרמו לאיבוד דם רב. ביום 27.10.15 נפטר ריצ'רד ז"ל מפצעיו.

ד. לש.ח נגרמו פצעי ירי בבטנה ובזרוע ימין, אשר גרמו לה לדימום פנימי ולאיבוד דם רב, והיא נזקקה לניתוח מציל חיים בחרדמה מלאה ולמנות דם רבות.

ח. למ.ו נגרמו פצעי דקירה רבים בפלג ג'פה העליון ובהם קרע בריאה תימנית, והיא נזקקה לטיפול מציל חיים בחרדמה מלאה ול.קז בחזה.

ו. למ.ר נגרמו פציעות בגבה וקרע בריאה  תימנית, והיא נזקקה לתפרים ולנקז.

ז. ליתר חוטטעים באוטובוס, נגרמו פגי"יות חרדה.

29.  במעשיו האמורים לעיל:

גרם הנאשם בכוונה תחילת למותם של שלושה אנשים מבלי שקדמה התגרות בתכף למעשה, בנסיבות שבהן יכול היה לחשוב ולהכין את תוצאות מעשיו, ולאחר שחכין עצמו לחמיתם. כן ניסה חנאשם שלא כדין לגרום למותם של שבעה אנשים נוספים.

ב.   <u>הוראות החיקוק לפיהן מואשם הנאשם :</u>

1.  <u>רצח</u> – עבירה לפי סעיף 300 (א)(2) לחוק העונשין, תשל"ז – 1977 (להלן:  "<u>החוק</u>") – 3 עבירות.

2.   ניסיון לרצח – עבירה לפי סעיף 305(1) לחוק – 7 עבירות.

ג.   עדי תביעה:

1.   רס"ל תימור שקור, מ.א 6457□□□, מת"מ ירושליכו, משטרת ישראל (ג'יה).

2.   רס"ל עלא טפלא, מ.א 6028(□, מת"ים ירושלים, משטרת ישראל (ג'יה)

CONFIDENTIAL

SHATSKY-JD01942

# Exhibit 165

Prisoner Salary Statement

Prisoner no. 32061
Prisoner Name:  Bilal Omar Mahmoud Abu Ghanem          Document no. 086931177

| Month | Year | Beneficiary | ID no. | Bank Name | Branch | Account no. | Salary |
|-------|------|-------------|--------|-----------|--------|-------------|--------|



Redacted

Page 1 of 2

Confidential

Shatsky-JD00529-T

Prisoner Salary Statement

Prisoner no. 32061

Prisoner Name: Bilal Omar Mahmoud Abu Ghanem          Document no. 086931177

| Month | Year | Beneficiary | ID no. | Bank Name | Branch | Account no. | Salary |
|---|---|---|---|---|---|---|---|
| | | | Redacted | | | | |
| 4 | 2020 | Ataf Ali Abu Ghanem | Redacted 2234 | | | | 4,635.00 |
| 5 | 2020 | Ataf Ali Abu Ghanem | Redacted 2234 | | | | 4,635.00 |
| 6 | 2020 | Ataf Ali Abu Ghanem | Redacted 2234 | | | | 5,035.00 |
| 7 | 2020 | Ataf Ali Abu Ghanem | Redacted 2234 | | | | 4,635.00 |
| 8 | 2020 | Ataf Ali Abu Ghanem | Redacted 2234 | | | | 4,635.00 |
| 9 | 2020 | Ataf Ali Abu Ghanem | Redacted 2234 | | | | 4,635.00 |
| 10 | 2020 | Ataf Ali Abu Ghanem | Redacted 2234 | | | | 4,635.00 |
| 11 | 2020 | Ataf Ali Abu Ghanem | Redacted 2234 | | | | 4,635.00 |
| 12 | 2020 | Ataf Ali Abu Ghanem | Redacted 2234 | | | | 5,035.00[*] |
| 1 | 2021 | Ataf Ali Abu Ghanem | Redacted 2234 | | | | 4,635.00 |
| 2 | 2021 | Ataf Ali Abu Ghanem | Redacted 2234 | | | | 4,635.00 |
| 3 | 2021 | Ataf Ali Abu Ghanem | Redacted 2234 | | | | 4,635.00 |
| 4 | 2021 | Ataf Ali Abu Ghanem | Redacted 2234 | | | | 4,635.00 |
| 5 | 2021 | Ataf Ali Abu Ghanem | Redacted 2234 | | | | 4,635.00 |

Confidential

Shatsky-JD00530-T

# Original



كشف رواتب أسير

| رقم الأسير | 3203 |
| اسم الأسير | بلال عمر محمود ابو غنم |

رقم الوثيقة 086031177

| الأشهر | السنة | اسم المستند | رقم البطاقة | البنك | الفرع | رقم الحساب | الراتب |

Redacted

صفحة 2

Shatsky-JD00529



كشف راتب أسير

رقم الأسير : 3206
اسم الأسير : بلال جبر محمود أبو غنم

رقم الهوية: 086931177

| براقب | رقم الحساب | البدل | البيان | رقم البطاقة | اسم المستفيد | السنة | الشهر |
|---|---|---|---|---|---|---|---|
| 4,635.00 | | | عطاف علي ابو غانم | Redacted 2234 | | 2020 | 4 |
| 6,535.00 | | | عطاف علي ابو هاشم | Redacted 2234 | | 2020 | 5 |
| 5,035.00 | | | هاتف علي ابو غانم | Redacted 2234 | | 2020 | 6 |
| 4,635.00 | | | عطاف علي ابو غانم | Redacted 2234 | | 2020 | 7 |
| 4,635.00 | | | عطاف علي ابو غانم | Redacted 2234 | | 2020 | 8 |
| 4,635.00 | | | عطاف علي ابو غانم | Redacted 2234 | | 2020 | 9 |
| 4,535.00 | | | عطاف علي ابو غانم | Redacted 2234 | | 2020 | 10 |
| 4,536.00 | | | عطاف علي ابو غانم | Redacted 2234 | | 2020 | 11 |
| 5,035.00 | | | عطاف علي ابو غانم | Redacted 2234 | | 2020 | 12 |
| 4,635.00 | | | عطاف علي ابو غانم | Redacted 2234 | | 2021 | 1 |
| 4,635.00 | | | عطاف علي ابو غانم | Redacted 2234 | | 2021 | 2 |
| 4,635.00 | | | هاتف علي ابو غانم | Redacted 2234 | | 2021 | 3 |
| 4,635.00 | | | عطاف علي ابو غانم | Redacted 2234 | | 2021 | 4 |
| 4,535.00 | | | عطاف علي ابو غانم | Redacted 2234 | | 2021 | 5 |

صفحة 2 من

CONFIDENTIAL

Shatsky-JD00530

# Exhibit 166

CONFIDENTIAL          300652                    8170            Civil[*] Police      SHATSKY-JD01918-T

| [English] Palestinian National Authority | [Emblem of the | [Arabic] Palestinian National Authority |
| Ministry of Detainees & Ex-detainees Affairs | Palestinian Authority] | Ministry of D... ...-detainees Affairs |
| Gen. Dep. Detainees & Ex-detainees | | ...es & Ex-detainees |

[Stamp: Palestinian National Authority
05.10.2011
Gen. Dep. Detainees & Ex-detainees
Checked
Indictments]

**Main Prisoner Form**          Registry

| Form no.: | | | | | | |
|---|---|---|---|---|---|---|
| Form issuance date: | 3.13.2011 | | Ministry's administration/branch: | | Bethlehem | |

**1. Basic information concerning the prisoner:**

| ID no. (9 digits) | Redacted | | | | 5 | 9 | 8 | 4 |
|---|---|---|---|---|---|---|---|---|

| Four-part name: | First name | Father's name | Grandfather's name | Family name |
|---|---|---|---|---|
| | Hilmi | Abd Al-Karim | Muhammad | Hamash |

| Mother's name: | | Gender: | ☒Male    ☐ Female | OK |
|---|---|---|---|---|

| DoB: | Redacted / 77 | Place of birth: | |
|---|---|---|---|

| Education: | ☐ Illiterate | ☐ Elementary | ☒High school | ☐ Diploma | ☐ University | ☐ Higher education |
|---|---|---|---|---|---|---|

| Profession prior to arrest: | Civil servant / Police | Organization: | Fatah |
|---|---|---|---|

| Arrest date: | 3/ 9 / 2004 | Place of arrest: | |
|---|---|---|---|

| Arrest status: | ☐ Detained | ☒ Sentenced | ☐ Administrative | ☐ Free | ☐ Other |
|---|---|---|---|---|---|

| In case of life sentence according to ICRC Certificate | Day | Month | Year Life term | Expected release date according to verdict: | Day | Month | Year |
|---|---|---|---|---|---|---|---|

| Permanent residence: | Governorate: | Bethlehem | Residential complex: | Redacted |
|---|---|---|---|---|
| Notes: | | | | |

**2. Information concerning previous arrests:** ___X___. Only those attested to by ICRC certificates, in chronological order from newest to oldest.

| No. | Arrest date | Arrest type | Release date | Arrest period | | | Notes |
|---|---|---|---|---|---|---|---|
| | | | | Day | Month | Year | |
| 1. | | | | | | | |
| 2. | | | | | | | |
| 3. | | | | | | | |
| 4. | | | | | | | |
| 5. | | | | | | | |
| 6. | | | | | | | |

1

CONFIDENTIAL                                                    SHATSKY-JD01919-T

| [English] Palestinian National Authority | [Emblem of the | [Arabic] Palestinian National Authority |
|---|---|---|
| Ministry of Detainees & Ex-detainees Affairs | Palestinian Authority] | Ministry of Detainees & Ex-detainees Affairs |
| Gen. Dep. Detainees & Ex-detainees | | Gen. Dep. Detainees & Ex-detainees |

## 3. Social Status Information:

| Marital Status: | ☐ Single | | ☐ Married | | ☒ Divorced | | ☐ Widow | |
|---|---|---|---|---|---|---|---|---|
| If Married: | Enter data of spouse and children | | | | | | | |
| Spouse's ID No. | | | | | | Marriage Contract Date | / / | |
| Spouse Name | | | | | | | Number of Children: | |
| Data on children from first wife: (sons under 18, unmarried daughters of all ages) | | | | | | | | |
| No. | Name | | | DoB | Marital Status | Education | | |
| 1. | | | | | | | | |
| 2. | | | | | | | | |
| 3. | | | | | | | | |
| 4. | | | | | | | | |
| 5. | | | | | | | | |
| 6. | | | | | | | | |
| 7. | | | | | | | | |
| 8. | | | | | | | | |
| 9. | | | | | | | | |

## 4. Information of Authorized Representative (Beneficiary):

| Beneficiary's ID: | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Authorized Representative – Beneficiary's Name: | The prisoner himself | | | | | Relationship: | | |
| Date of Authorization if Available: | / / | | | Authorization's Period of Validity: | | | | |
| Bank: | Redacted | | | Bank Branch: | | | Redacted | |
| Account No.: | Redacted | | | | | | | |
| Landline Phone No.: | | | | Cell Phone No.: | | | | |
| Permanent Beneficiary's Address: | Governorate: | Bethlehem | | Residential complex: | | | | |
| Notes: | | | | | | | | |

| Applicant's Notes: | |
|---|---|
| Confirmation: | I the undersigned confirm and testify that all of the information provided in this application is correct and I take responsibility for it. |
| Applicant's Signature: | [signature] |

2

CONFIDENTIAL                                                    SHATSKY-JD01919-T

CONFIDENTIAL                                                    SHATSKY-JD01922-T

**Israel Defense Forces**

In the Military Court                    Court File:        /04
Judea                              Prosecution File:   1300/04
Before a panel                         Police File:    1619/04 Hebron
                                                       9891/04 Jerusalem Special
                                                       Duties Department

In the case between

**The military prosecutor**

**- The Plaintiff -**

-v-

[Arabic: Hilmi]                      [Arabic: Hamash]
**Hilmi Abd Al-Karim Muhammad Hamash**

(detained since March 9, 2004)

ID No. <sup>Redacted</sup>5984, Date of Birth <sup>Redacted</sup>.1977, resident of the Deheyshe Refugee Camp

**-The Defendant -**

[Round stamp in
Arabic:
Palestinian National
Authority
Ministry of Detainees
and Ex-Detainees
Affairs
05.10.2011
Gen. Dir. of Detainees
and Ex-Detainees
Affairs
Checked
Indictments]

**Indictment**

The above-named Defendant is hereby accused of committing the following offenses:

**First Count**:

**Nature of the Offense**: Laying of a bomb, an offense pursuant to Regulation 58(b) of the
Defense Regulations (Emergency), 1945; and Section 14 of the Criminal Liability
(Judea and Samaria) Order (No. 225), 5728-1968.

**Details of the Offense**: The above-named Defendant, within the Region, during 2003 or
thereabouts, placed a bomb with the intention of causing the death or injury of
another person, specifically:

At the above-named time, the above-named Defendant went with his colleague,
Rami Kamil Musleh, while in possession of an explosive device made of a gas
cylinder in order to place it against IDF forces.

They both placed the explosive device on the main road leading to Deheyshe
Refugee Camp in a place where military vehicles regularly passed.

When a military vehicle passed near the site at which the explosive device had been placed, the Defendant activated the explosive device, but the explosive device did not detonate.

CONFIDENTIAL                                                                    SHATSKY-JD01922-T

CONFIDENTIAL                                              SHATSKY-JD01923-T

2

**Second Count**:

**Nature of the Offense**: Membership in an unlawful association, an offense pursuant to
Regulations 85(1)(a) and 84(1)(a) of the Defense Regulations (Emergency), 1945.

**Details of the Offense**: The above-named Defendant, within the Region, from early 2004 or
thereabouts, was a member of an unlawful association, specifically:

At the above-named time, the above-named Defendant joined a military cell of
the Al-Aqsa Martyrs Brigades through a member of the organization, Ahmed
Salah Ahmed Salah (code-named: Ahmed Abu Ghadab) (hereinafter – **Ahmed
Abu Ghadab**).

The membership of the Defendant in the organization continued until the day of
his arrest.

**Third Count**:

**Nature of the Offense**: Shooting at a person or a place in which people may be, an offense
pursuant to Regulation 58(a) of the Defense Regulations (Emergency), 1945; and
Section 14 of the Criminal Liability (Judea and Samaria) Order (No. 225), 5728-
1968.

**Details of the Offense**: The above-named Defendant, within the Region, in early 2004 or
thereabouts, was an accomplice in the shooting at a person or place in which
people may be, specifically:

At the above-named time, the above-named Defendant went with the fellow
members of his military cell, Ahmed Tawfik Taya, Wail Khalil Faraj and Ahmed
Abu Ghadab, who was armed with a Kalashnikov rifle and a hand grenade, in
order to carry out a shooting terror attack against IDF forces in the DCO military
base. When they arrived at the site, Ahmed Taya and Ahmed Abu Ghadab
alighted from the vehicle while possessing the weapons in order to carry out the
shooting attack, while the Defendant and his colleague Wail Faraj remained in the
vehicle.

After a few minutes, Ahmed Abu Ghadab and his colleague fired at a military
vehicle; thereafter the Defendant and his colleague fled from the site towards the
home of Ahmed Abu Ghadab.

There, they waited for Ahmed Abu Ghadab to return.

**Fourth Count**:        **(Police File 09891/04 Jerusalem Special Duties Department)**

**Nature of the Offense**: Intentionally causing death, an offense pursuant to Section 51(a) and 7(c) of the Security Provisions (Judea and Samaria) Order (No. 378), 5730-1970 and Sections 14 and 2 of the Criminal Liability (Judea and Samaria) Order (No. 225), 5728-1968.

**Details of the Offense**: The above-named Defendant, variously inside and outside the Region, on or around January 29, 2004, intentionally caused the death of another, specifically:

1.   In early January 2004 or thereabouts, Abdul Rahman (Zuheir) Yusuf Abd A-Rahman Miqdad (hereinafter: **Abdul Rahman Miqdad**) contacted military operative

CONFIDENTIAL                                SHATSKY-JD01923-T

CONFIDENTIAL                                SHATSKY-JD01923-T

CONFIDENTIAL                                   SHATSKY-JD01924-T

10

[Translator's note: It seems that pages 3-9 of the original document are missing here]

25.    Redacted 6614 Naim Barzawi (details in the prosecution file).

26.    Redacted 9134 Sarah Keisar (details in the prosecution file).

27.    Redacted 5395 Lidia Weiner (details in the prosecution file).

28.    Redacted 4362 Bahira Saadu (details in the prosecution file).

29.    Lic. No. Red 3774 Dr. Kumber (medical documents related to Mr. Naim Barzawi).

30.    Lic. No. Red 4151 Dr. Michlevsky (medical documents related to Ms. Sarah Keisar).

31.    Lic. No. Red 5068 Dr. Yutkin (medical documents related to Ms. Bahira Saadu).

32.    Dr. A. Wolf (medical documents related to Ms. Bahira Saadu).

33.    Expert opinion of bomb disposal laboratory (to be forwarded later).

34.    Medical documents.

35.    List of casualties (institutional record).

CONFIDENTIAL                                   SHATSKY-JD01924-T

CONFIDENTIAL                                      SHATSKY-JD01925-T

Date: 3 Tishrei 5766                                    Case No.: 2303/04
September 25, 2006

**Judea Military Court**
**Before the Honorable Presiding Judge:    Major Yair Tirosh**
**The Judge:    Major Ze'ev Afik**
**The Judge:    Major Amir Dahan**

**The Military Prosecution**
(Represented by Captain Sagiv Lichtman)

-v-

**The Defendant: Hilmi Abd Al-Karim Muhammad Hamash, Identity No.** <sup>Redacted</sup> **5984/ IPS**
(Represented by Adv. Osama Ouda)

---

## Sentence

After having heard the arguments of the parties, we have decided to sentence the Defendant to the following:

A.    Life imprisonment for intentionally causing the death of **Avraham Balahsan of blessed memory.**

B.    Life imprisonment for intentionally causing the death of **Hanna Bonder of blessed memory.**

C.    Life imprisonment for intentionally causing the death of **Anat Darom of blessed memory.**

D.    Life imprisonment for intentionally causing the death of **Yechezkel Goldberg of blessed memory.**

E.    Life imprisonment for intentionally causing the death of **Vladi Tzadik Manbara of blessed memory.**

F.    Life imprisonment for intentionally causing the death of **Viorel Octavian Florescu of blessed memory.**

G.    Life imprisonment for intentionally causing the death of **the late Ms. Rose Boneh of blessed memory.**

H.   Life imprisonment for intentionally causing the death of **Dana Itah of blessed memory.**

I.   Life imprisonment for intentionally causing the death of **Roman Hondiashvili of blessed memory.**

J.   Life imprisonment for intentionally causing the death of **Eli Tzfira of blessed memory.**

K.   Life imprisonment for intentionally causing the death of **Natalia Gamril of blessed memory.**

An additional term of life imprisonment for the additional offenses of which he has been convicted.

All sentences are to be served cumulatively to the effect that the Defendant will serve twelve life imprisonment terms, to be served cumulatively.

**The full explanation of the verdict will be given at a later date. Issued today, 10.25. 2006.**

[Stamp] Amir Dahan, Judge

| [Signature] | [Signature] | [Signature] |
|---|---|---|
| **Judge** | **Presiding Judge** | **Judge** |

09.25.2006

-1-

CONFIDENTIAL                                    SHATSKY-JD01925-T

Original

CONFIDENTIAL

SHATSKY-JD01909



№ 04725

## TO WHOM IT MAY CONCERN



**CICR** This certificate is valid only if the English and Arabic parts match each other

According to the information received from the Israeli Authorities, the International Committee of the Red Cross certifies that :

Mr:   **HELMI ABDELKARIM MOHAMMAD   HAMASH**

From :   **BETHLEHEM**   ID NO: Redacted **598-4**

Was arrested by the Israeli Authorities on (dd / mm / yyyy) :   **09.03.2004**

He is to date :   Sentenced

Length of sentence / administrative period : life sentence

He/She was released on (dd/mm/yyyy): XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX



**CICR**

إلى من يهمه الأمر

هذه الشهادة سارية المفعول فقط في حالة تطابق بياناتها باللغتين العربية والإنجليزية

استنادا إلى المعلومات الواردة من السلطات الإسرائيلية، تشهد اللجنة الدولية للصليب الأحمر بأن:

السيد/ة الآنسة   حلمي عبد الكريم محمد حماش   Redacted

من   بيت لحم   هوية رقم   598-4

كان/ت قد إعتقل/ت من قبل السلطات الإسرائيلية في يوم   9   / شهر   3   / سنة   2004

وهو/هي في هذا التاريخ : ينتظر المحاكمة   محكوم/ة   X   إداري

محكوم/ة أو إداري لمدة   مدى الحياة

وهو/هي أطلق سراحه/ها في يوم   X X X / شهر   X X X   / سنة   X X X

Date:  **18.10.2006**

التاريخ

Place:  **BETHLEHEM/NR**

المكان

**TANGUY DE BLAUWE**
ICRC Delegate

توقيع مندوب اللجنة

CONFIDENTIAL

SHATSKY-JD01909

CONFIDENTIAL

SHATSKY-JD01910



№ 04725

# TO WHOM IT MAY CONCERN

**CICR**  This certificate is valid only if the English and Arabic parts match each other

According to the information received from the Israeli Authorities, the International Committee of the Red Cross certifies that :

Mr:  **HELMI ABDELKARIM MOHAMMAD  HAMASH**

From :  **BETHLEHEM**                    ID NO: Redacted **598-4**

Was arrested by the Israeli Authorities on (dd / mm / yyyy) :   **09.03.2004**

He is to date :        Sentenced

Length of sentence / administrative period : life sentence

He/She was released on (dd/mm/yyyy): XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX



إلى من يهمه الأمر

**CICR**

هذه الشهادة سارية المفعول فقط في حالة تطابق بياناتها باللغتين العربية والإنجليزية

استنادا إلى المعلومات الواردة من السلطات الإسرائيلية، تشهد اللجنة الدولية للصليب الأحمر بأن:

السيد/ة الآنسة   حلمي  عبد الكريم  محمد  صبا ـــــ

من ـــــ بيت لحم ـــــ  Redacted 598-4  هوية رقم ـــــ

كان/ت قد إعتقل/ت من قبل السلطات الإسرائيلية في يوم ـــــ ٩ ـــ / شهر ـــــ ٣ ـــ / سنة ٢٠٠٤

وهو/هي في هذا التاريخ : ينتظر المحاكمة ـــــ  محكوم/ة ـــــ X ـــــ إداري ـــــ

محكوم/ة أو إداري لمدة ـــــ  سجن المؤبد ـــــ

وهو/هي أطلق سراحة/ها في يوم ـــــ X X X / شهر ـــــ X X X ـــ / سنة ـ X X X

Date:  **18.10.2006**

التــاريـخ

Place:  **BETHLEHEM/NR**              TANGUY DE BLAUWE

المكـــان                              ICRC Delegate

                                     توقيع مندوب اللجنة

03 -01- 2018

onal Committee
of the Red Cross

SHATSKY-JD01910

CONFIDENTIAL                                                                    SHATSKY-JD01911



300652 لمعرفة سبب الحسومات مسالراتب

№  04725

## TO WHOM IT MAY CONCERN

**CICR**  This certificate is valid only if the English and Arabic parts match each other

According to the information received from the Israeli Authorities, the International Committee of
the Red Cross certifies that :

Mr:    **HELMI ABDELKARIM MOHAMMAD  HAMASH**

From :    **BETHLEHEM**

ID NO: Redacted **598-4**

Was arrested by the Israeli Authorities on (dd / mm / yyyy) :    **09.03.2004**

He is to date :        Sentenced

Length of sentence / administrative period : life sentence

He/She was released on (dd/mm/yyyy): XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX

**CICR**

إلى من يهمه الأمر

هذه الشهادة سارية المفعول فقط في حالة تطابق بياناتها باللغتين العربية والإنجليزية

استنادا إلى المعلومات الواردة من السلطات الإسرائيلية، تشهد اللجنة الدولية للصليب الأحمر بأن:

السيد/ة الآنسة ــــــ حلمي عبد الكريم محمد حماش ـــــ

من ـــــ بيت لحم ـــــ هوية رقم 598-4 Redacted ـــــ

كان/ت قد إعتقل/ت من قبل السلطات الإسرائيلية في يوم ــ 9 ـ / شهر ــ 3 ـ / سنة 2004

وهو/هي في هذا التاريخ : ينتظر المحاكمة ـــــ محكوم/ة ــ X ــ إداري ـــــ

محكوم/ة أو إداري لمدة ــــ سجن المؤبد ــــ

وهو/هي أطلق سراحة/ها في يوم ــ X X X ـ/ شهر ــ X X X ـ / سنة ــ X X X ـ

Date:  **18.10.2006**

التـاريـخ

**CERTIFIED UPDATE**

0 4 -01- 2015
International Committee
of the Red Cross

**TANGUY DE BLAUWE**
ICRC Delegate

توقيع مندوب اللجنة

Place:  **BETHLEHEM/NR**

المكـان

CONFIDENTIAL                                                                    SHATSKY-JD01911

CONFIDENTIAL

SHATSKY-JD01912



№ 04725

8170

## TO WHOM IT MAY CONCERN

**CICR**   This certificate is valid only if the English and Arabic parts match each other

According to the information received from the Israeli Authorities, the International Committee of the Red Cross certifies that :

Mr:   **HELMI ABDELKARIM MOHAMMAD  HAMASH**

From :   **BETHLEHEM**                                    ID NO:Redacted **598-4**

Was arrested by the Israeli Authorities on (dd / mm / yyyy) :        **09.03.2004**

He is to date :          Sentenced

Length of sentence / administrative period : life sentence

He/She was released on (dd/mm/yyyy): XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX



<div dir="rtl">

إلى من يهمه الأمر

**CICR**

هذه الشهادة سارية المفعول فقط في حالة تطابق بياناتها باللغتين العربية والإنجليزية

استنادا إلى المعلومات الواردة من السلطات الإسرائيلية، تشهد اللجنة الدولية للصليب الأحمر بأن:

السيد/ة الآنسة ____ حلمي عبد الكريم محمد حماش ____

من ____ بيت لحم ____ هوية رقم ____ 598-4 ____ Redacted

كان/ت قد إعتقل/ت من قبل السلطات الإسرائيلية في يوم ___ 9 ___ / شهر ___ 3 ___ / سنة ٢٠٠٤

وهو/هي في هذا التاريخ : ينتظر المحاكمة _____ محكوم/ة ___ X ___ إداري _____

محكوم/ة أو إداري لمدة ____ مدى الحياة ____

وهو/هي أطلق سراح/ها في يوم ___ XXX ___/ شهر ___ X X X ___ / سنة ___ X X X ___

</div>

Date:   **18.10.2006**

التاريخ

Place:   **BETHLEHEM/NR**

المكان

24 -03- 2014

**TANGUY DE BLAUWE**
ICRC Delegate

توقيع مندوب اللجنة

CONFIDENTIAL

SHATSKY-JD01912

CONFIDENTIAL

SHATSKY-JD01914



زيادة راتب 300652

№ 04725

## <u>TO WHOM IT MAY CONCERN</u>

٥اصنوات

**This certificate is valid only if the English and Arabic parts match each other**

According to the information received from the Israeli Authorities, the International Committee of the Red Cross certifies that

Mr.  **HELMI ABDELKARIM MOHAMMAD  HAMASH**

From :  **BETHLEHEM**          Redacted
ID NO:          ̇98-4

Was arrested by the Israeli Authorities on (dd / mm / yyyy) :   09.03.2004

He is to date .        Sentenced

Length of sentence / administrative period : life sentence

He/She was released on (dd/mm/yyyy): XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX



الى من يهمه الأمر

هذه الشهادة سارية المفعول فقط في حالة تطابق بياناتها باللغتين العربية والإنجليزية

استنادا إلى المعلومات الواردة من السلطات الإسرائيلية، تشهد اللجنة الدولية للصليب الأحمر بأن:

السيد/ة الآنسة ____ حلمي عبد الكريم محمد حماش ____

من ____ بيت لحم ____ هوية رقم 598-4 Redacted

كان/ت قد إعتقل/ت من قبل السلطات الإسرائيلية في يوم ___ ٩ ___ / شهر ___ ٣ ___ / سنة ___ ٢٠٠٤

وهو/هي في هذا التاريخ : ينتظر المحاكمة ____ محكوم/ة ___ X ___ إداري ____

محكوم/ة أو إداري لمدة ____ مدى الحياة ____

وهو/هي أطلق سراحة/ها في يوم ___ X X X ___ / شهر ___ X X X ___ / سنة ___ X X X

Date:   **18.10.2006**
التـاريـخ

Place:   **BETHLEHEM/NR**
المكـان

UPDATE
08-07-2012
International Committee
of the Red Cross
P.P BARBARA LECQ

TANGUY DE BLAUWE
ICRC Delegate
توقيع مندوب اللجنة

CONFIDENTIAL

SHATSKY-JD01914

CONFIDENTIAL   SHATSKY-JD04918

8170        3006552

**Palestinian National Authority**
**Ministry of Detainees & Ex-detainees Affairs**
**Gen Dep. Detainees & Ex-detainees**



السلطة الوطنية الفلسطينية
وزارة شؤون الأسرى والمحررين
الإدارة العامة لشؤون الأسرى والمحررين

## استمارة الأسير الرئيسية

| | | | | | | رقم الاستمارة: |
|---|---|---|---|---|---|---|
| | | | | | المديرية/فرع الوزارة: | تاريخ تعبئة الاستمارة: ١٢ / ٣ / ١ / ٢ |

### 1. المعلومات الرئيسية للأسير:

| | | | | |
|---|---|---|---|---|
| | ٥ | ٩ | ٨ | ٤ | رقم الهوية: (تسع خانات) |

**Redacted**

| اسم العائلة | اسم الجد | اسم الأب | الاسم الأول | الاسم الرباعي: |
|---|---|---|---|---|
| داود | محمد | عبد الكريم | جهاد | |

| | | | اسم الأم: |
|---|---|---|---|

| الجنس: ☒ ذكر ☐ أنثى | تاريخ الميلاد: Redacted |
|---|---|
| مكان الولادة: | |
| المؤهل العلمي: ☐ أمي ☐ أساسية ☒ ثانوي ☐ دبلوم ☐ جامعي ☐ دراسات عليا | |
| المهنة قبل الأسر: | التنظيم: |
| تاريخ الأسر: ٩ / ٣ / ١ / ٢٠٠٢ | مكان الاعتقال: |
| الوضع الاعتقالي: ☐ موقوف ☒ محكوم ☐ إداري ☐ محرر ☐ أخرى | |
| في حالة محكوم مدة الحكم: يوم شهر سنة | تاريخ الإفراج: متوقع الأمد اليوم العام |
| حسب شهادة الصليب: | حسب قرار الحكم: |
| العنوان الدائم: | المحافظة: | التجمع السكاني: Redacted |
| ملاحظات: | | |

### 2. بيانات الاعتقالات السابقة:

عدد مرات الاعتقال السابقة: ........ فقط المثبت بشهادة صليب وبتسلسل زمني من الأحدث إلى الأقدم.

| الرقم | تاريخ الاعتقال | نوع الاعتقال | تاريخ الإفراج | مدة الاعتقال | | | ملاحظات |
|---|---|---|---|---|---|---|---|
| | | | | يوم | شهر | سنة | |
| ١. | | | | | | | |
| ٢. | | | | | | | |
| ٣. | | | | | | | |
| ٤. | | | | | | | |
| ٥. | | | | | | | |
| ٦. | | | | | | | |

1

SHATSKY-JD01918

CONFIDENTIAL

SHATSKY-JD01919

**Palestinian National Authority**

**Ministry of Detainees & Ex-detainees Affairs**

**Gen Dep. Detainees & Ex-detainees**



الســلطــة الوطـنيـة الفـلـسـطينية

وزارة شـــؤون الأسـرى والمـحـررين

الإدارة العامة لشؤون الأسرى والمحررين

**3. بيانات الوضع الاجتماعي:**

| الحالة الاجتماعية: | ☑ أعزب | | ☑ متزوج | ☑ مطلق | ☑ أرمل |
|---|---|---|---|---|---|
| في حالة متزوج/ة: | تعبئة بيانات الزوج/ة والأبناء | | | | |
| رقم هوية الزوج/ة: | | | | تاريخ عقد الزواج | / / |
| اسم الزوج/ة | | | | عدد الأولاد: | |

بيانات الأبناء من الزوجة الأولى:(الأبناء الذكور أقل من 18 عام، والبنات غير المتزوجات بغض النظر عن أعمارهن)

| الرقم | الاسم | تاريخ الميلاد | الحالة الاجتماعية | المؤهل العلمي |
|---|---|---|---|---|
| 1. | | | | |
| 2. | | | | |
| 3. | | | | |
| 4. | | | | |
| 5. | | | | |
| 6. | | | | |
| 7. | | | | |
| 8. | | | | |
| 9. | | | | |

**4. بيانات الوكيل "المستفيد":**

| رقم الهوية "المستفيد": | | | |
|---|---|---|---|
| اسم الوكيل "المستفيد": | الاسمعه | صلة القرابة: | |
| تاريخ الوكالة إن وجدت: | / / | مدة سريان الوكالة: | |
| البنك: | Redacted | فرع البنك: | Redacted |
| رقم الحساب: | Redacted | | |
| رقم الهاتف الأرضي: | | رقم الهاتف النقال: | |
| العنوان الدائم للمستفيد: | المحافظة: | التجمع السكني: | |
| ملاحظات: | | | |

| ملاحظات مقدم الطلب: | |
|---|---|
| إقـرار: | أنا الموقع أدناه أقر وأشهد بأن كافة المعلومات الواردة في الطلب صحيحة وأتحمل مسؤوليتها. |
| توقيع مقدم الطلب: | |

2

CONFIDENTIAL



Redacted   SHATSKY-JD01921

04725

## TO WHOM IT MAY CONCERN

**CICR**   This certificate is valid only if the English and Arabic parts match each other

According to the information received from the Israeli Authorities, the International Committee of the Red Cross certifies that :

Mr:   **HELMI ABDELKARIM MOHAMMAD  HAMASH**

From :   **BETHLEHEM**                    ID NO Redacted**1598-4**

Was arrested by the Israeli Authorities on (dd / mm / yyyy) :   **09.03.2004**

He is to date :   Sentenced

Length of sentence / administrative period : life sentence

He/She was released on (dd/mm/yyyy): XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX

إلى من يهمه الأمر

**CICR**

هذه الشهادة سارية المفعول فقط في حالة تطابق بياناتها باللغتين العربية والإنجليزية

استنادا إلى المعلومات الواردة من السلطات الإسرائيلية، تشهد اللجنة الدولية للصليب الأحمر بأن:

السيد/ة الآنسة ــــ حلمي عبد الكريم محمد حماش ـــ

من ـــ بيت لحم ـــ هوية رقم ــ 1598-4 Redacted ـــ

كان/ت قد إعتقل/ت من قبل السلطات الإسرائيلية في يوم ـ 9 / شهر ـ 3 / سنة 2004 ـ

وهو/هي في هذا التاريخ : ينتظر المحاكمة ـــ محكوم/ة ـ X ـ إداري ـــ

محكوم/ة أو إداري لمدة ـــ مدى الحياة ـــ

وهو/هي أطلق سراحه/ها في يوم ـ XXX / شهر ـ XXX / سنة ـ XXX ـ

Date:   **18.10.2006**

التاريــخ

p.p. Serge ZOGG

**TANGUY DE BLAUWE**
ICRC Delegate
توقيع مندوب اللجنة

Place:   **BETHLEHEM/NR**

المكـــان

CONFIDENTIAL

SHATSKY-JD01922

צבא      הגנה      לישראל

תיק בימ"ש /04

בבית המשפט הצבאי

תיק תביעה 1300/04

ב י ה ו ד ה

תיק פ.א. 1619/04 חברון

בפני    הרכב

9891/04 מתי"מ י-ם

במשפט שבין:

התובע הצבאי

- המאשים -

- נ ג ד -

חלמי ע"א-כרים מוחמד המאש

(עצור מיום 9/3/04)

ת.ז. 5984 Redacted יליד 77/ ממ.פ. דהיישה

- הנאשם -

## כתב אישום

הנאשם הנ"ל ביצע בשטח יו"אה, בביצוע העבירות הבאות:

### פרט ראשי

### מהות העבירה

הנחת פצצה. עבירה לפי תקנה 59(ב) לתקנות ההגנה (שעת חירום) 5-19 יסעיף 14 לצו בדבר כללי האחריות לעבירה (יו"ש) מס' 225), תשכ"ד - 1968.

### פרטי העבירה

הנאשם הנ"ל באיזור, במהלך שנת 03' או בסמוך לכך, הניח פצצה מיתד כיינר לגרום למותו של אחר או לפציעתו, דהיינו:

במועד הנ"ל. יצא הנאשם הנ"ל יחד עם חברו ראמי כאמל מוצלח בשברשותם מטען חבלה המורכב מבלון גז עימו להניח אותו כנגד כוחות צה"ל.

שניהם הניחו את מטען החבלה בדרך הראשית המובילה למ.פ. דהיישה במקום שבו עוברים כלי רכב צבאיים.

כשעבר בסמוך למקום הנחת המטען כלי רכב צבאי הפעיל הנאשם את מטען החבלה, אולם המטען לא התפוצץ.

SHATSKY-JD01922

CONFIDENTIAL

SHATSKY-JD01923

2

### פרט שני:

**מהות העבירה:** חברות בהתאחדות בלתי מותרת, עבירה לפי תקנה 85(1)(א) ו- 84(1)(א) לתקנות ההגנה (שעת חירום), 1945.

**פרטי העבירה:** הנאשם הנ"ל, באזור, החל מתחילת שנת '04 או בסמוך לכך, היה חבר בהתאחדות בלתי מותרת, דהיינו:

במועד הנ"ל, הצטרף הנאשם הנ"ל לחוליה צבאית של ארגון גדודי חללי "אלאקצא" ע"י חבר הארגון  אחמד צלאח אחמד צלאח (המכונה: אחמד אבו-עידב) (להלן – **אחמד אבו-ע/דב)**.

חברותו של הנאשם בארגון נמשכה עד יום מעצרו.

### פרט שלישי:

**מהות העבירה:** ירי לעבר אדם או מקום שבני אדם עשויים להימצא בו, עבירה לפי תקנה 58(א) לתקנות ההגנה (שעת חירום), 1945; וסעיף 14 לצו בדבר כללי האחריות לעבירה (יו"ש) (מס' 225), תשכ"ח – 1968.

**פרטי העבירה:** הנאשם הנ"ל, באזור, בתחילות שנת '04 או בסמוך לכך, היה שותף לירי לעבר אדם או מקום שבני אדם עשויים להימצא בו, דהיינו:

במועד הנ"ל, יצא הנאשם הנ"ל יחד עם חברו חוקייהו הצבאית אחמד האופי תאריר יאיר חיכו פרו יאחמד אבו-עידב שהיה חמיש ברוב רחב ניהוג ורומיו יה יגאה ע"ש לבצע פיגוע ירי כנגד כוחות צה"ק בבסיס הצבאי של ה- DCO שבהישור למקום ירדו אחמד תאריה יאחמד אבו-עידב מהרכב כשברשותם האמריי ע"ש לבצע את פיגוע הירי וינלו הנאשמי וחברו פרני נותרו ברכב.

לעבור מספר דקות ירו אחמד אבו-עידב וחברו לעבר כדי רכב צבאי. אי-אז נמלטו הנאשמים וחברו מהמקום לכיוון ביתו של אחמד אבו-עידב שם המתינו לחזרתו של אחמד אבו-עידב.

### פרט רביעי:    (פ"א 09891/04 מת"מ ירושלים)

**מהות העבירה:** גרימת מוות בכוונה, עבירה לפי סעיף 51(א) ו- 7(ג) לצו בדבר הוראות ביטחון (יו"ש) (מס' 378), תש"ל – 1970; וסעיף 14 ו- 2 לצו בדבר כללי האחריות לעבירה (יו"ש) (מס' 225), תשכ"ח – 1968.

**פרטי העבירה:** הנאשם הנ"ל, באזור ומחוץ לאזור, בתאריך 29/1/04, היה שותף לגרימת מותם של אחרים בכוונה, דהיינו:

1. בתחילת חודש ינואר '04 או בסמוך לכך, יצר ע"א-רחמאן (זאהר) יוסף ע"א-רחמאן מקדאד (להלן – **ע"א-רחמאן מקדאד)** קשר עם הפעיל הצבאי

CONFIDENTIAL

25. 6614Redacted נעים ברזאוי (פרטים בתביעה).

26. 9134Redacted) שרה קיסר (פרטים בתביעה).

27. 395Redacted לידייה ווינר (פרטים בתביעה).

28. 362Redacted) בהירה סעדו (פרטים בתביעה).

29. מ.ר. 3774Redacted ד"ר קומבר (מסמכים רפואיים הנוגעים למר נעים ברזאוי).

30. מ.ר. 151Redacted ד"ר מיכלבסקי (מסמכים רפואיים הנוגעים לגב' שרה קיסר).

31. מ.ר. 5068Redacted ד"ר יוטקין (מסמכים רפואיים הנוגעים לגב' בהירה סעדו)

32. ד"ר א. וולף (מסמכים רפואיים הנוגעים לגב' בהירה סעדו)

33. חוו"ד מעבדת הבלה (תועבר בהמשך)

34. מסמכים רפואיים

35. רשימות נפגעים (רשומה מוסדית)

CONFIDENTIAL

SHATSKY-JD01925

תיק מס׳ : 2303/04

תאריך : ג׳ תשרי, תשס״ו
25 ספטמבר, 2006

ב י ת   ה מ ש פ ט   ה צ ב א י   י ה ו ד ה

בפני כב׳ האב״ד : רס״ן יאיר תירוש
השופט : רס״ן זאב אפיק
השופט : רס״ן אמיר דהאן

התביעה הצבאית
(באמצעות סרן שגיב ליכטמן)

נגד

הנאשם : חלמי עבד אלכרים מוחמד הב:אש, ת.ז 5984.^Redacted / שב״ס
(באמצעות ב״כ עו״ד אוסאמה עודה)

---

## גזר דין

לאחר ששמענו את טיעוני הצדדים החלטנו לגזור על הנאשם את העונשים הבאים :

א. מאסר עולם בגין גרימת מותו בכוונה של **אברהם בלחסן ז״ל**.

ב. מאסר עולם בגין גרימת מותו בכוונה של **חנה בונדר ז״ל**.

ג. מאסר עולם בגין גרימת מותו בכוונה של **ענת דרום ז״ל**.

ד. מאסר עולם בגין גרימת מותו בכוונה של **יחזקאל גולדברג ז״ל**.

ה. מאסר עולם בגין גרימת מותו בכוונה של **ולדי צדיק מנברה ז״ל**.

ו. מאסר עולם בגין גרימת מותו בכוונה של **ויורל אוקטביא פלורסקו ז״ל**.

ז. מאסר עולם בגין גרימת מותה בכוונה **רוזה בונה ז״ל**.

ח. מאסר עולם בגין גרימת מותה בכוונה של **דנה איטח ז״ל**.

ט. מאסר עולם בגין גרימת מותו בכוונה של **רומן חונדיאשווילי ז״ל**.

י. מאסר עולם בגין גרימת מותו בכוונה של **אלי ציפורה ז״ל**.

יא. מאסר עולם בגין גרימת מותו בכוונה של **נטליה גמריל ז״ל**.

מאסר עולם נוסף בגין העבירות הנוספות בהן הורשע.

כל העונשים ירוצו במצטבר כך שעל הנאשם יושתו שניים עשר מאסרי עולם לריצוי במצטבר.

נימוקי גזר הדין המלאים יינתנו בהמשך. ניתן היום, 25/09/06.

שופט                    אב״ד                    אמיר דהאן, שופט
                                                12 5 -09- 2006

-1-

CONFIDENTIAL

SHATSKY-JD01925

# Exhibit 167

| Prisoner Salary Statement | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Prisoner no. 1722 | | | | | | | | |
| Prisoner Name:  Hilmi Abd Al-Karim Muhammad Hamash | | | | Document no. 901415984 | | | | |
| Month | Year | Beneficiary | | ID no. | Bank Name | Branch | Account no. | Salary |
| | | | Redacted | | | | | |
| 4 | 2020 | Hilmi Abd Al-Karim Muhammad Hamash | | Redacted 5984 | | | | 3,056.25 |
| 5 | 2020 | Hilmi Abd Al-Karim Muhammad Hamash | | Redacted 5984 | | | | 3,056.25 |
| 6 | 2020 | Hilmi Abd Al-Karim Muhammad Hamash | | Redacted 5984 | | | | 3,413.71 |
| 7 | 2020 | Hilmi Abd Al-Karim Muhammad Hamash | | Redacted 5984 | | | | 3,013.71 |
| 8 | 2020 | Hilmi Abd Al-Karim Muhammad Hamash | | Redacted 5984 | | | | 3,013.71 |
| 9 | 2020 | Hilmi Abd Al-Karim Muhammad Hamash | | Redacted 5984 | | | | 3,013.71 |
| 10 | 2020 | Hilmi Abd Al-Karim Muhammad Hamash | | Redacted 5984 | | | | 3,013.71 |
| 11 | 2020 | Hilmi Abd Al-Karim Muhammad Hamash | | Redacted 5984 | | | | 3,013.71 |
| 12 | 2020 | Hilmi Abd Al-Karim Muhammad Hamash | | Redacted 5984 | | | | 3,413.71 |
| 1 | 2021 | Hilmi Abd Al-Karim Muhammad Hamash | | Redacted 5984 | | | | 3,013.71 |
| 2 | 2021 | Hilmi Abd Al-Karim Muhammad Hamash | | Redacted 5984 | | | | 3,013.71 |

Confidential

Shatsky-JD00505-T

| Prisoner Salary Statement | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Prisoner no. 1722 | | | | | | | | |
| Prisoner Name:  Hilmi Abd Al-Karim Muhammad Hamash | | | | Document no. 901415984 | | | | |
| Month | Year | Beneficiary | ID no. | Bank Name | Branch | Account no. | | Salary |
| 3 | 2021 | Hilmi Abd Al-Karim Muhammad Hamash | Redacted 5984 | | | | | 3,013.71 |
| 4 | 2021 | Hilmi Abd Al-Karim Muhammad Hamash | Redacted 5984 | | | | | 3,013.71 |
| 5 | 2021 | Hilmi Abd Al-Karim Muhammad Hamash | Redacted 5984 | | | | | 3,013.71 |

Page 2 of 2



Confidential

Shatsky-JD00506-T

Original

كشف راتب أسير

رقم الأسير : 722
اسم الأسير : حلمي عبد الكريم محمد هملتي

رقم الوثيقة 901415984

| الشهر | السنة | اسم المستحق | رقم البطاقة | البنك | الفرع | رقم الحساب | الراتب |
|---|---|---|---|---|---|---|---|
| | | | | Redacted | | | |
| 4 | 2020 | حلمي عبد الكريم محمد هملتي | Redacted 5984 | | | | 3,058.25 |
| 5 | 2020 | حلمي عبد الكريم محمد هملتي | Redacted 5984 | | | | 3,050.25 |
| 6 | 2020 | حلمي عبد الكريم محمد هملتي | Redacted 5984 | | | | 3,413.71 |
| 7 | 2020 | حلمي عبد الكريم محمد هملتي | Redacted 5984 | | | | 3,013.71 |
| 8 | 2020 | حلمي عبد الكريم محمد هملتي | Redacted 5984 | | | | 3,013.71 |
| 9 | 2020 | حلمي عبد الكريم محمد هملتي | Redacted 5984 | | | | 3,013.71 |
| 10 | 2020 | حلمي عبد الكريم محمد هملتي | Redacted 5984 | | | | 3,013.71 |
| 11 | 2020 | حلمي عبد الكريم محمد هملتي | Redacted 5984 | | | | 3,013.71 |
| 12 | 2020 | حلمي عبد الكريم محمد هملتي | Redacted 5984 | | | | 3,413.71 |
| 1 | 2021 | حلمي عبد الكريم محمد هملتي | Redacted 5984 | | | | 3,013.71 |
| 2 | 2021 | حلمي عبد الكريم محمد هملتي | Redacted 5984 | | | | 3,013.71 |

Redacted

١ من صفحة

CONFIDENTIAL

كشف راتب أسير

| الضمير | السنة | اسم المستفيد | رقم الطلقة | البنك | الفرع | رقم الحساب | الراتب |
|---|---|---|---|---|---|---|---|
| | | | | | | | رقم الأسير   1722 |
| | | | | | | اسم الأسير   حلمي عبد الكريم محمد صابر | |
| | | | رقم الوحدة   901416984 | | | | |
| 3 | 2021 | حلمي عبد الكريم محمد صابر | Redacted 5984 | | Redacted | | 3,013.71 |
| 4 | 2021 | حلمي عبد الكريم محمد صابر | Redacted 5984 | | | | 3,013.71 |
| 5 | 2021 | حلمي عبد الكريم محمد صابر | Redacted 5984 | | | | 3,013.71 |

2 - من الصفحة

CONFIDENTIAL

Shatsky-JD00506

# Exhibit 168

CONFIDENTIAL                                              SHATSKY-JD01764-T

| [English] State of Palestine | [Emblem of the Palestinian Authority] | [Arabic] State of Palestine |
|---|---|---|
| Ministry of Detainees & Ex-detainees Affairs | | Ministry of Detainees & Ex-detainees Affairs |
| Gen. Dep. Detainees & Ex-detainees | | Gen. Dep. Detainees & Ex-detainees |

**3. Current Arrest Information:**

| Arrest date: | 7.11.2014 | | | Type of arrest: | ☑ Security | ☐ Civilian | |
|---|---|---|---|---|---|---|---|
| Arrested from: | ☐ Home  ☐ Crossing  ☑ Other | | | Current prison: | | | |
| Arrest status: | ☑ Detained | ☐ Sentenced | ☐ Administrative | | ☐ Other | | |
| In case of life sentence according to ICRC Certificate | Day | Month | Year | Expected release date according to verdict: | Day | Month | Year |
| | | | | | | | |
| Sentence date: | | | | Release date: | | | |
| Notes: | | | | | | | |

**4. Information concerning previous arrests:**  Previous arrests: (Only those attested to by ICRC certificates)

| No. | Arrest type (security/civilian) | Arrest Date | Release date | Prison | Arrest period | | | Notes |
|---|---|---|---|---|---|---|---|---|
| | | | | | Day | Month | Year | |
| 1. | | | | | | | | |
| 2. | | | | | | | | |
| 3. | | | | | | | | |
| 4. | | | | | | | | |
| 5. | | | | | | | | |
| 6. | | | | | | | | |
| 7. | | | | | | | | |
| 8. | | | | | | | | |
| 9. | | | | | | | | |
| 10. | | | | | | | | |
| 11. | | | | | | | | |

**5. Health Condition (of the prisoner\ex-prisoner)**

| Do you suffer any illnesses? | ☐ Yes    ☐No | The illnesses: | |
|---|---|---|---|
| Date illness began: | | | |
| Do you suffer from disability / handicap? | ☐ Yes    ☐No | Type of disability / handicap | ☐ Chronic  ☐ Temporary |
| Disability/handicap percentage | % | Disability attested to by a report: | ☐ Yes    ☐No |
| Medical report date: | | Issued by: | |
| Notes: | | | |

3

CONFIDENTIAL                                              SHATSKY-JD01764-T

CONFIDENTIAL                                                          SHATSKY-JD01765-T

| [English] State of Palestine | [Emblem of the Palestinian Authority] | [Arabic] State of Palestine |
|---|---|---|
| Ministry of Detainees & Ex-detainees Affairs | | Ministry of Detainees & Ex-detainees Affairs |
| Gen. Dep. Detainees & Ex-detainees | | Gen. Dep. Detainees & Ex-detainees |

**6. Information Concerning the Beneficiaries of the Prisoner/ex-Prisoner's Allowance:**

**A. First Beneficiary:**

| Name (First Beneficiary): | Ghada Atef Jum'a Qawasme | | | Relationship: | His wife |
|---|---|---|---|---|---|
| Document Type: | | | | Doc. No.: | Redacted 6519 |
| Tel. No.: | | | | Cellular Tel. No.: | |
| Governorate: | Hebron | | | Complex: | |
| Bank: | Redacted | | | Branch: | Redacted |
| Account No.: | | | | Current account in shekels only | |
| In Case the Sum is Divided: | No.: | | Percentage: | % | |

**B. Second Beneficiary (If Exists):**

| Name (First Beneficiary): | | | | | | Relationship: | |
|---|---|---|---|---|---|---|---|
| Document Type: | | | | | | Doc. No.: | |
| Tel. No.: | | | | | | Cellular Tel. No.: | |
| Governorate: | | | | | | Complex: | |
| Bank: | | | | | | Branch: | |
| Account No.: | | | | | | Current account in shekels only | |
| In Case the Sum is Divided: | No.: | | | Percentage: | | % | |

| Applicant's Notes: | |
|---|---|
| Confirmation: | I the undersigned confirm and testify that all of the information provided in this application is correct and I take responsibility for it. |
| Applicant's Signature: | |

4

CONFIDENTIAL                                                          SHATSKY-JD01765-T

SHATSKY-JD01779-T                                                CONFIDENTIAL

**Israel Defense Forces**

**In the Military Court**                        Court File:    /14
**Judea**                                         Prosecution File: 3365/14
**Before a panel**                                Police File:  259539/14

In re: The Military Prosecutor – the Prosecution

-v-

[Handwritten in Arabic] *Hussam Ali Hasan Qawasme*
**Hussam Ali Hasan Qawasme**                      ┌─────────────────┐
ID No <sup>Redacted</sup> 7866, born Redacted   1973, resident of Hebron   │ [Faded stamp in │
**detained since July 11, 2014**                  │ Arabic]         │
                                                  └─────────────────┘

the Defendant

                                                  [Handwritten in Arabic] *Security*

Indictment

**The above-captioned Defendant is hereby indicted for committing the following offenses:**

**First Count:**
**Description of the Offense:** Aid in infusing enemy funds into the region, an offense pursuant to Sections 3 and 7 to the Infusion of Funds into the Region Order (Judea and Samaria) (No. 973), 5742-1982, and Section(a)(3) to the Security Provisions Order [Consolidated Version] (Judea and Samaria) (No. 1651), 5750-2009.
**Details of the Offense:**    The Defendant, while in the region, in or around 2013, in Hebron or in proximity thereto, the Defendant aided in the receipt of funds of the enemy outside of the region or the infusion of enemy funds into the region without permit and in contravention of said order, to wit:

At the aforementioned time, the Defendant met with Marwan Sa'di Abdel Afu Qawasme (hereinafter: "**Marwan**) at the Defendant's workplace. Marwan asked for the Defendant's assistance in securing funds from the Al-Nur Association, which is affiliated with Hamas, which is an unlawful association. The Defendant agreed to help Marwan and contacted his brother, Mahmoud Ali Hasan Qawasme (hereinafter: "**Mahmoud**"), who is known to the Defendant as a Hamas operative, who was expelled from Gaza in the Shalit deal and works in the Al-Nur Association, which is affiliated with Hamas. The Defendant asked Mahmoud to help Marwan, and Mahmoud promised to do so.

Two months later, Marwan updated the Defendant that the funds were transferred to him.

**Second Count:**
**Description of the Offense:** Nature of the Offense: Provision of a service to an unlawful association, an offense pursuant to Section 85(1)(c) to the Defense Regulations (Emergency), 1945.
**Details of the Offense:** The Defendant, while in the region, performed any work or service for an unlawful association, to wit:

At the aforementioned time, at the place stated in the First Count, the Defendant executed the activities set forth in the First Count. Thus, he performed a service for the Al-Nur Association, which is affiliated with Hamas, which is an unlawful association.

**Third Count:**

**Description of the Offense**: Intentional causation of death, an offense pursuant to Section 209(a) to the Security Provisions Order [Consolidated Version] (Judea and Samaria) (No. 1651), 5770-1982, and Section201(a)(2) to the Security Provisions Order [Consolidated Version] (Judea and Samaria) (No. 1651), 5750-2009.

**Details of the Offense:**   The above-captioned Defendant, while in the region, on June 12, 2014, caused the death of another person, to wit:

    1.  In April 2014, the Defendant met with Marwan. Marwan and the Defendant discussed the difficulties of Palestinian prisoners in Israel, and Marwan expressed his desire to work toward their release.

<div align="center">1</div>

SHATSKY-JD01779-T                                                   CONFIDENTIAL

SHATSKY-JD01780-T

CONFIDENTIAL

Hussam Ali Qawasme.jpg Statement0003

[In Arabic] September 8, 2014

Marwan offered the Defendant to join him in executing a kidnapping of a Jew in order to bring about the release of Palestinian prisoners incarcerated in Israel. The Defendant assented.

2.   The Defendant indicated to Marwan that abducting a Jew for purposes of bargaining is a most complicated matter and there is a chance that such an operation would end in their arrest and the death of the hostage. He also noted the past cases of Nachshon Waxman and Nissim Toledano, of blessed memory.

3.   Marwan replied to the Defendant that they would make sure to execute the kidnapping attack without getting caught and they would succeed in using the hostage as a bargaining chip for a prisoner release deal.

4.   The Defendant and Marwan met a few more times, in Hebron, at which meetings, they planned the details of the abduction.

5.   The Defendant made up with Marwan that they would maintain great secrecy in their operations as well as instructed Marwan to recruit others to their cell to assist them in executing the kidnapping. Marwan agreed with the Defendant and told him that he had already recruited another person who would help them.

6.   Marwan and the Defendant planned additional details of the kidnapping. The Defendant raised the issue of vehicles and said that the kidnapping should be executed through the use of a number of vehicles: the first vehicle, which would be used for the abduction that would bear yellow license plates and would be destroyed at the conclusion of the kidnapping as well as a second vehicle, which they would use for escape after they destroy the abduction vehicle in order to cover up their tracks.

7.   The Defendant and Marwan again discussed the manner of the kidnapping and agreed that it would be executed through the use of a number of vehicles, as the Defendant instructed.

The two discussed how the abduction vehicle would be destroyed and decided that it would be destroyed by burning.

The two discussed the location of the kidnapping and decided that the kidnapping would be executed in Gush Etzion because of its proximity to Hebron.

Similarly, the two discussed places to hide the hostages and the times at which they would be transferred from one hiding place to another, and they set aside two designated hiding places in the Hebron area.

8.   After the two finalized the various abduction details, they divided the tasks amongst themselves: Maran would be the one that would set out in a stolen Israeli vehicle in tandem with the third partner and kidnap the Jew as well as be in charge of obtaining the vehicle, and the Defendant would constitute the "command center level." He would finance the terror attack, supply the required weapons for its execution, and supply all that was necessary for hiding the hostages after the abduction, including supplying food and drink to the hiding place. It was also agreed that the Defendant would bear the responsibility for securing the hiding place of the hostages by reconnoitering and guarding against the arrival of security forces at the place.

9.   The two set out to perform the preparations for the terror attack as they agreed. The Defendant turned to obtaining the financing that was necessary for executing the terror attack and purchasing the weapons and vehicles that they would use in the terror attack.

10. To that end, the Defendant contacted his brother Mahmoud who works in the Al-Nur Association, which is affiliated with Hamas. The Defendant asked him to transfer monies to him from Gaza to the region. Mahmoud, transferred to the Defendant, by way of their mother who lives in Hebron, approximately NIS 150,000 in five separate transfers.

11. The Defendant and Marwan met after the Defendant obtained the required sum, and Marwan updated him that he even succeeded in obtaining NIS 70,000 for purposes of executing the terror attack. With the help of these sums, Marwan secured, with the help of his partner Amer Omar Abdel Qader Abu Eisha (hereinafter: "**Amer**"), a stolen Israeli vehicle for purposes of executing the terror attack and apprised the Defendant of the same. The Defendant instructed him to purchase an additional vehicle that would serve as an escape vehicle after he will have destroyed the first vehicle with which they would kidnap the Jew.

12. At the end of May 2014, after the manner of financing was settled, and the two vehicles were purchased, the Defendant turned toward obtaining the weapons.

13. The Defendant contacted Iyad Qawasme and Adnan Mahmoud Eid Azad [faded] (hereinafter: "**Adnan**") with the request that they buy weapons. Iyad declined to sell weapons to the Defendant, and Adnan agreed.

14. The Defendant purchased **two M-16 rifles, two handguns, and compatible ammunition** from Adnan for a total of NIS 190,000. The Defendant transferred approximately NIS 170,000

2

1/1                              https://drive.google.com/?authuser=0&usp=gmail#my-drive

SHATSKY-JD01780-T                                                    CONFIDENTIAL

SHATSKY-JD01781-T                                                          CONFIDENTIAL

prior to the transfer of the weapons and agreed with Adnan on the transfer of the balance of the sum afterward.

15. A number of days afterward, Adnan updated the Defendant that his order had been executed and the weapons were ready. The Defendant notified Marwan, and after a number of days, the Defendant received from Marwan the weapons and ammunition hidden in cardboard boxes. Shortly thereafter, the Defendant transferred the weapons to Marwan.

16. At the beginning of June, the Defendant and Marwan met at the Zahra Mosque in Hebron for a summarizing meeting in advance of the execution of the terror attack. The Defendant examined Marwan's preparedness for the terror attack, and Marwan put the Defendant's mind at ease and told him that he acted as he was requested and that with the help of his partner, purchased two vehicles, one vehicle for executing the abduction and an additional vehicle for the escape as the Defendant instructed.

17. Marwan agreed with the Defendant that the date for the execution of the terror attack would be Tuesday of the week following their meeting, meaning, on June 10, 2014. Two days later, the Defendant and Marwan met again at the A-Shafi mosque. The Defendant ascertained that the terror attack would indeed be put into action on the planned date, and Marwan confirmed that indeed such would be the case.

18. Marwan and the Defendant agreed that after the execution of the kidnapping, Marwan would make a predetermined mark on the traffic sign at the agreed-upon place, thus signaling to the Defendant to begin supplying food and drink to the hiding places that were predetermined as well as begin to securing those places from security forces.

19. On June 10, 2014, the Defendant waited next to the agreed-upon point and not having found the agreed-upon mark, returned to his home.

20. On the next day, June 11, 2014, the Defendant arrived at Marwan's workplace and wondered why the terror attack had not been put into action as agreed. Marwan told him that he had set out with his partner to execute the terror attack, but they did not succeed in kidnapping anyone as they did not locate a suitable target. The Defendant and Marwan agreed that the next day, Marwan and his partner would set out again and put the terror attack into action.

21. **On June 12, 2014, as the Defendant and Marwan agreed, Marwan and his partner Amer set out in a stolen Hyundai, bearing yellow license plates number 30-151-30, toward Gush Etzion. The two were armed with weapons that the Defendant had purchased and sought after their prey.**

   **Around 10:30 pm, Marwan and Amer arrived at the bus stop next to the Alon Shevut settlement where they observed the three youths, Eyal Yifrach, Gil-ad Shaar, and Yakov Naftali Fraenkel, of blessed memory, who were on their way home at the end of their school week.**

   **Marwan and Amer picked up the three youths in their vehicle with assurances that they would bring them to their desired destination.**

   **After the three youths got into the backseat of Marwan and Amer's vehicle, Marwan drew out a handgun, pointed it to them, and explained to them that they are hostages and must keep quiet.**

   **When the youths refused to make peace with their fate and refused to listen to the instructions of their captors, Marwan and Amer decided to kill the three youths.**

   **Marwan instructed the three to lower their heads.**

**At that point, Marwan and Amer pointed the barrels of the handguns that they carried toward the three youths and executed them in an accurate volley of bullets toward their upper bodies while they were still in the vehicle.**

**Eyal, Gil-ad, and Naftali, of blessed memory, three teenagers in the prime of their lives, were killed on the spot.**

22. After the killing of the three youths, Marwan and Amer continued on their way toward Hebron. In the Wadi Hasaka region, Marwan and Amer wrapped the bodies in black plastic bags and threw out the bodies of the teenagers in a plot of land there. Similarly, they poured gasoline on the abduction vehicle and burned it, including the personal effects of the three hostages.

23. Marwan and Amer continued from there in another vehicle, which had been prepared in advance, to Hebron, arriving at the A-Shuhada mosque, where they split up.

24. During that time, the Defendant, as agreed between him and Marwan, arrived at the spot agreed upon between them and hoped to see the mark that they agreed Marwan would etch on the traffic sign that would bear the tidings of the success of the kidnapping and the Defendant's continued operations in the framework of the cell.

3

SHATSKY-JD01781-T

CONFIDENTIAL

Original

CONFIDENTIAL

SHATSKY-JD01743

  

## TO WHOM IT MAY CONCERN

CICR  This attestation is valid only if the English and Arabic parts match each other

According to the information received from the Israeli Authorities, the International Committee of

the Red Cross attests that:

Mr   **HOSSAM ALI HASSAN QAWASMEH**

From:   **HEBRON**         ID NO Redacted**7866**

Was arrested by the Israeli Authorities on (dd/mm/yyyy):   **11.07.2014**

He is to date: Sentenced

Length of sentence / administrative period: life sentence

He/She was released on (dd/mm/yyyy): XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX



إلى من يهمه الأمر

CICR   هذه الشهادة سارية المفعول فقط في حالة تطابق بياناتها باللغتين العربية والإنجليزية

استنادا إلى المعلومات الواردة من السلطات الإسرائيلية، تشهد اللجنة الدولية للصليب الأحمر بأن :

السيد/الآنسة _____

من _____ هوية رقم _____ Redacted

كان/ت قد إعتقل/ت من قبل السلطات الإسرائيلية في يوم __١١__ / شهر __٧__ / سنة __٢٠١٤__

وهو/هي في هذا التاريخ : ينتظر المحاكمة _____ محكوم/ة __XX__ إداري

محكوم/ة أو إداري لمدة _____

وهو/هي أطلق سراحه/ها في يوم __XX__ / شهر __XX__ / سنة __XX__

Date:   **12.02.2015**
التاريخ

Place :   **HEBRON NS**
المكان

II J-9 ___ 61

MAXIME DOHOGNE

ICRC Delegate
توقيع مندوب اللجنة

CERTIFIED UPDATE

1 8 10 10 2016

International Committee
of the Red Cross

CONFIDENTIAL

SHATSKY-JD01743



CONFIDENTIAL

145929 SHATSKY-JD01744

## TO WHOM IT MAY CONCERN

**CICR** This attestation is valid only if the English and Arabic parts match each other

According to the information received from the Israeli Authorities, the International Committee of the Red Cross attests that:

Mr: **HOSSAM ALI HASSAN QAWASMEH**

From: **HEBRON**

ID NO: Redacted 7866

Was arrested by the Israeli Authorities on (dd/mm/yyyy): **11.07.2014**

He is to date: Sentenced

Length of sentence / administrative period: life sentence

He/She was released on (dd/mm/yyyy): XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX



إلى من يهمه الأمر

**CICR** هذه الشهادة سارية المفعول فقط في حالة تطابق بياناتها باللغتين العربية والإنجليزية

استنادا إلى المعلومات الواردة من السلطات الإسرائيلية، تشهد اللجنة الدولية للصليب الأحمر بأن:

السيد/ة الآنسة _____ حسام علي حسن قواسمة _____

من ____ الخليل ____ هوية رقم ٧٨٦٦ Redacted

كان/ت قد اعتقل/ت من قبل السلطات الإسرائيلية في يوم ١١ / شهر ٧ / سنة ٢٠١٤

وهو/هي في هذا التاريخ : بنتظر المحاكمة _____ محكوم/ة ٧٧ _____ إداري _____

محكوم/ة أو إداري لمدة ____ مؤبد الحياة ____

وهو/هي أطلق سراحه/ها في يوم XX / شهر XX / سنة XX

Date: **12.02.2015**
التاريخ

Place: **HEBRON NS**
المكان

ILJ-901561

07 -10- 2015
ICRC International Committee of the Red Cross
CERTIFIED UPDATE

MAXIME DOHOGNE
ICRC Delegate
توقيع مندوب اللجنة

CONFIDENTIAL

SHATSKY-JD01744

CONFIDENTIAL

SHATSKY-JD01748

145919



## TO WHOM IT MAY CONCERN

CICR This attestation is valid only if the English and Arabic parts match each other

According to the information received from the Israeli Authorities, the International Committee of

the Red Cross attests that:

Mr: **HOSSAM ALI HASSAN QAWASMEH**

From: *HEBRON*　　　　　　　　　　　ID NO: Redacted**7866**

Was arrested by the Israeli Authorities on (dd/mm/yyyy):　**11.07.2014**

He is to date: Sentenced

Length of sentence / administrative period: life sentence

He/She was released on (dd/mm/yyyy): XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX



إلى من يهمه الأمر

CICR هذه الشهادة سارية المفعول فقط في حالة تطابق بياناتها باللغتين العربية والإنجليزية

استناداً إلى المعلومات الواردة من السلطات الإسرائيلية، تشهد اللجنة الدولية للصليب الأحمر بأن:

السيد/ة الآنسة _____ حسام _____ علي _____ حسن _____ قواسمة

من __ الخليل __ هوية رقم ٧٨٦٦ Redacted

كان/ت قد إعتقل/ت من قبل السلطات الإسرائيلية في يوم __ ١١ __ / شهر __ ٧ __ / سنة ٢٠١٤ C

وهو/هي في هذا التاريخ : ينظر المحاكمة _____ محكوم/ة __ XX __ إداري _____

محكوم/ة أو إداري لمدة ____ مدى الحياة _____ .

وهو/هي أطلق سراحة/ها في يوم __ XX __ / شهر __ XX __ / سنة __ XX __

Date:　**12.02.2015**
التاريخ

Place:　**HEBRON NS**
المكان

ILJ-901561

**CERTIFIED UPDATE**

ICRC
0 3 -01- 2019
International Committee
of the Red Cross

**MAXIME DOHOGNE**
ICRC Delegate
توقيع مندوب اللجنة

CONFIDENTIAL

SHATSKY-JD01748

CONFIDENTIAL                                                                SHATSKY-JD01761



149919

**TO WHOM IT MAY CONCERN**

CICR This attestation is valid only if the English and Arabic parts match each other

According to the information received from the Israeli Authorities, the International Committee of

the Red Cross attests that:

Mr:    **HOSSAM ALI HASSAN QAWASMEH**

From:    *HEBRON*                          ID NO: Redacted7866

Was arrested by the Israeli Authorities on (dd/mm/yyyy):    **11.07.2014**

He is to date:  Sentenced

Length of sentence / administrative period: life sentence

He/She was released on (dd/mm/yyyy): XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX



إلى من يهمه الأمر

CICR هذه الشهادة سارية المفعول فقط في حالة تطابق بياناتها باللغتين العربية والإنجليزية

استنادا إلى المعلومات الواردة من السلطات الإسرائيلية، تشهد اللجنة الدولية للصليب الأحمر بأن:

السيد/ة الآنسة _____ حسام علي حسن قواسمة

من _____ الخليل _____ هوية رقم ٧٨٦٦ Redacted

كان/ت قد إعتقل/ت من قبل السلطات الإسرائيلية في يوم ١١ / شهر ٧ / سنة ٢٠١٤ م

وهو/هي في هذا التاريخ : ينتظر المحاكمة _____ محكوم/ة XX _____ إداري _____

محكوم/ة أو إداري لمدة _____ مدى الحياة م.

وهو/هي أطلق سراحة/ها في يوم ____ XX ____ / شهر ____ XX ____ / سنة ____ XX ____

Date:    **12.02.2015**
التــاريــخ

Place:    **HEBRON NS**
المكـــان

MAXIME DOHOGNE
ICRC Delegate
توقيع مندوب اللجنة

ILJ-901561

CONFIDENTIAL                                                                SHATSKY-JD01761

CONFIDENTIAL

SHATSKY-JD01764

| STATE OF PALESTINE | | دولـــــة فلســـــطين |
|---|---|---|
| Ministry of Detainees & Ex-detainees Affairs | | وزارة شؤون الأسرى والمحررين |
| Gen Dep. Detainees & Ex-detainees | | الإدارة العامة لشؤون الأسرى والمحررين |

3. بيانات الاعتقال الحالي:

| | | | | | نوع الاعتقال | ☑ أمني | ☐ مدني | تاريخ الاعتقال: | 2014 / 7 / 11 |
|---|---|---|---|---|---|---|---|---|---|
| | | | السجن الحالي: | | ☑ المنزل | ☐ المعبر | ☑ أخرى | مكان إجراء الاعتقال: | |
| | ☐ محرر | ☐ إداري | ☑ محكوم | ☑ موقوف | | | الحالة الاعتقالية: | |
| | سنة | شهور | يوم | | | | في حالة محكوم مدة الحكم: | |
| | | | | | | | حسب شهادة الصليب: | |
| تاريخ الإفراج: | / / | | / / | | | | تاريخ الحكم: | |
| | | | | | | | ملاحظات: | |

4. بيانات الاعتقالات السابقة: الاعتقالات السابقة: (فقط المثبتة بشهادة صليب).

| الأرقام | نوع الاعتقال (أمني/مدني) | تاريخ الاعتقال | تاريخ الإفراج | السبب | تاريخ الاعتقال | مكان الاعتقال |
|---|---|---|---|---|---|---|
| 1. | | | | | | |
| 2. | | | | | | |
| 3. | | | | | | |
| 4. | | | | | | |
| 5. | | | | | | |
| 6. | | | | | | |
| 7. | | | | | | |
| 8. | | | | | | |
| 9. | | | | | | |
| 10. | | | | | | |

5. الوضع الصحي (الأسير/الأسير المحرر)

| هل تعاني من أمراض: | ☑ نعم | ☐ لا | الأمراض: | | |
|---|---|---|---|---|---|
| تاريخ ظهور الأمراض: | / / | | | | |
| هل تعاني من عجز/إعاقة: | ☑ نعم | ☐ لا | نوع العجز/الإعاقة: | ☐ دائمة | ☑ مؤقتة |
| نسبة العجز/الإعاقة: | % | | العجز مثبت بتقرير: | ☐ نعم | ☐ لا |
| تاريخ التقرير الطبي: | | | جهة الاصدار: | | |
| ملاحظات: | | | | | |

3

CONFIDENTIAL

SHATSKY-JD01764

CONFIDENTIAL

SHATSKY-JD01765

| STATE OF PALESTINE | | دولــة فلســـطين |
|---|---|---|
| Ministry of Detainees & Ex-detainees Affairs | | وزارة شؤون الأسرى والمحررين |
| Gen Dep. Detainees & Ex-detainees | | الإدارة العامة لشؤون الأسرى والمحررين |

٥. بيانات المستفيدين من رانب الأسير/الأسير المحرر .

أ . المستفيد الأول:

| الاسم: ( المستفيد الأول) | خادم حافظ | صلة القرابة: | Redacted 65197 |
|---|---|---|---|
| نوع الوثيقة: | | رقم الوثيقة: | |
| رقم الهاتف: | | رقم الهاتف النقال: | |
| المحافظة: | Redacted | التجمع: | Redacted |
| البنك: | | الفرع: | Redacted |
| رقم الحساب: | | | الحساب بجاري شيكل فقط |
| في حالة تجزئة المبلغ: | رقماً: | نسبة: | % |

ب . المستفيد الثاني (إن وجد):

| الاسم: ( المستفيد الثاني) | | صلة القرابة: | |
|---|---|---|---|
| نوع الوثيقة: | | رقم الوثيقة: | |
| رقم الهاتف: | | رقم الهاتف النقال: | |
| المحافظة: | | التجمع: | |
| البنك: | | الفرع: | |
| رقم الحساب: | | | الحساب بجاري شيكل فقط |
| في حالة تجزئة المبلغ: | رقماً: | نسبة: | % |

| ملاحظات مقدم الطلب: | |
|---|---|
| إقرار : | أنا الموقع أدناه أقر وأشهد بأن كافة المعلومات الواردة في الطلب صحيحة وأتحمل مسؤوليتها. |
| توقيع مقدم الطلب: | |

CONFIDENTIAL

SHATSKY-JD01779

Redacted    Redacted

כתב-אישום

## כתב-אישום

פרק אישום ראשון:

פרק אישום שני:

פרק אישום שלישי:

CONFIDENTIAL

SHATSKY-JD01779

CONFIDENTIAL

SHATSKY-JD01780

SHATSKY-JD01780

CONFIDENTIAL

SHATSKY-JD01781

CONFIDENTIAL

SHATSKY-JD01781

Exhibit 169

Prisoner Salary Statement

| Prisoner no. 2676 | | | | | | | |
| Prisoner Name:  Hussam Ali Hasan al-Gawasmeh | | | | Document no. 959337866 | | | |
| Month | Year | Beneficiary | ID no. | Bank Name | Branch | Account no. | Salary |



Redacted

Page 1 of 4

Confidential

Prisoner Salary Statement

| | | | | | | | |
|---|---|---|---|---|---|---|---|
Prisoner no. 2676
Prisoner Name: Hussam Ali Hasan al-Qawasmeh          Document no. 959337866

| Month | Year | Beneficiary | ID no. | Bank Name | Branch | Account no. | Salary |
|---|---|---|---|---|---|---|---|



Redacted

Confidential

Shatsky-JD00521-T



| Prisoner Salary Statement | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Prisoner no. 2676 | | | | | | | | |
| Prisoner Name:  Hussam Ali Hasan al-Qawasmeh | | | | Document no. 959337866 | | | | |
| Month | Year | Beneficiary | ID no. | Bank Name | Branch | Account no. | Salary |

Redacted

Page 3 of 4

Confidential

Shatsky-JD00522-T

| Prisoner Salary Statement | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Prisoner no. 2676 | | | | | | | | |
| Prisoner Name:  Hussam Ali Hasan al-Qawasmeh | | | | Document no. 959337866 | | | | |
| Month | Year | Beneficiary | | ID no. | Bank Name | Branch | Account no. | Salary |
| | | | | Redacted | | | | |
| 4 | 2020 | Ghada Atef Jum'a al-Qawasmeh | | Redacted 6519 | | | | 6,372.50 |
| 5 | 2020 | Ghada Atef Jum'a al-Qawasmeh | | Redacted 6519 | | | | 6,372.50 |
| 6 | 2020 | Ghada Atef Jum'a al-Qawasmeh | | Redacted 6519 | | | | 6,772.50 |
| 7 | 2020 | Ghada Atef Jum'a al-Qawasmeh | | Redacted 6519 | | | | 6,372.50 |
| 8 | 2020 | Ghada Atef Jum'a al-Qawasmeh | | Redacted 6519 | | | | 6,372.50 |
| 9 | 2020 | Ghada Atef Jum'a al-Qawasmeh | | Redacted 6519 | | | | 6,372.50 |
| 10 | 2020 | Ghada Atef Jum'a al-Qawasmeh | | Redacted 6519 | | | | 6,372.50 |
| 11 | 2020 | Ghada Atef Jum'a al-Qawasmeh | | Redacted 6519 | | | | 6,372.50 |
| 12 | 2020 | Ghada Atef Jum'a al-Qawasmeh | | Redacted 6519 | | | | 6,372.50 |
| 1 | 2021 | Ghada Atef Jum'a al-Qawasmeh | | Redacted 6519 | | | | 6,372.50 |
| 2 | 2021 | Ghada Atef Jum'a al-Qawasmeh | | Redacted 6519 | | | | 6,341.97 |
| 3 | 2021 | Ghada Atef Jum'a al-Qawasmeh | | Redacted 6519 | | | | 6,325.00 |
| 4 | 2021 | Ghada Atef Jum'a al-Qawasmeh | | Redacted 6519 | | | | 6,325.00 |
| 5 | 2021 | Ghada Atef Jum'a al-Qawasmeh | | Redacted 6519 | | | | 6,325.00 |

Page 4 of 4

Confidential

Shatsky-JD00523-T

Original



كشف راتب أسير

| الوظيفة | رقم الحساب | الفرع | البنك | رقم البطاقة | اسم تعلمليد | السنة | الشهر |
|---|---|---|---|---|---|---|---|

رقم الأسير 2376
اسم الأسير: حسم علي حسين الفراعمة
ر.ق المؤسسة 959337866

Redacted

4 من اسدة

CONFIDENTIAL

Shatsky-JD00520



كشف راتب أمير

رقم الأمير   2678
اسم الأمير   مقدم علي حسن القواسمة

رقم لا ثبت: 969337866

| الراتب | رقم الحساب | الفرع | البنك | رقم البطاقة | اسم المستفيد | السنة | الشهر |
|--------|-----------|-------|-------|-------------|-------------|-------|-------|

Redacted

4 من 2 الصفحة

CONFIDENTIAL

كشف راتب شهر

رقم الأمر   2676
قسم الأمر   ........................ على بحسن التوسعة

رقم الوظيفة   959337866

| الراتب | رقم الحساب | الفرع | رقم البطاقة | بنك | المستفيد | اسم المستفيد | اسئلة | التعهد |
|---|---|---|---|---|---|---|---|---|



Redacted

الصفحات

CONFIDENTIAL

كشف راتب أسير

رقم الأسير 2676 .................

اسم الأسير بشار علي حسين القواسمة .................

رقم الوثيقة 9583378GG

| الراتب | رقم الحساب | الفرع | البنك | رقم البطاقة | اسم المستفيد | السنة | الشهر |
|---|---|---|---|---|---|---|---|
| | | | Redacted | | | | |
| 6,372.50 | | | | Redacted 3510 | ٢٩٨ جمال ـ جمعة الف ـب | 2020 | ٤ |
| 6,372.50 | | | | Redacted 3510 | عبد عطلب ـ جمعة القر ـب | 2020 | ٥ |
| 6,372.50 | | | | Redacted 3510 | عبد عطلب جمعة القر سمة | 2020 | ٦ |
| 6,372.50 | | | | Redacted 3510 | عبد عطلب جمعة القر سب | 2020 | ٧ |
| 6,372.50 | | | | Redacted 3510 | عبد عطلب جمعة القر سمة | 2020 | ٨ |
| 6,372.50 | | | | Redacted 3510 | عبد عطلب جمعة القر سمة | 2020 | ٩ |
| 6,372.50 | | Redacted | | Redacted 3510 | عبد عطلب جمعة القر سمة | 2020 | 10 |
| 6,372.50 | | | | Redacted 3510 | عبد عطلب جمعة القر سمة | 2020 | 11 |
| 6,372.50 | | | | Redacted 3510 | عبد عطلب جمعة القر سمة | 2020 | 12 |
| 6,372.50 | | | | Redacted 3510 | عبد عطلب جمعة القر سمة | 2021 | ١ |
| 6,341.67 | | | | Redacted 3510 | عبد عطلب جمعة القر سمة | 2021 | ٢ |
| 6,325.00 | | | | Redacted 3510 | عبد عطلب جمعة القر سمة | 2021 | ٣ |
| 6,325.00 | | | | Redacted 3510 | عبد عطلب جمعة القر سمة | 2021 | ٤ |
| 6,325.00 | | | | Redacted 3510 | عبد عطلب جمعة القر سمة | 2021 | ٥ |

٤ من صفحة

CONFIDENTIAL

Shatsky-JD00523

# Exhibit 170

CONFIDENTIAL  *Check number of children*                    SHATSKY- JD01551-T



[English:] **TO WHOM IT MAY CONCERN**              123981

*1383*

**C I C R  This certificate is valid only if the English and Arabic parts match each other.**

According to the information received from the Israeli Authorities, the International Committee of the Red Cross attests that

**Mr: IBRAHIM JAMIL ABDELGHANI HAMED**

**From:** <u>RAMALLAH</u>   **ID No.** <sup>Redacted</sup><u>088-6</u>

**Was arrested by the Israeli Authorities on (DD/MM/YYYY): 23.05.2006**

**He is to date: Sentenced**

**Length of sentence / administrative period:** <u>life sentence</u>

**He/She was released on (DD/MM/YYYY):** xxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxx

**(Tick the box and underline the correct designation)**



**[Arabic:] TO WHOM IT MAY CONCERN**

*462221*

**C I C R**

This certificate is valid only if the English and Arabic parts match each other.

According to the information received from the Israeli Authorities, the International Committee of the Red Cross attests that

**Mr: IBRAHIM JAMIL ABDELGHANI HAMED**

**From:** <u>RAMALLAH</u>   **ID No.** <sup>Redacted</sup><u>088-6</u>

**Was arrested by the Israeli Authorities on Day:** <u>23</u> **Month:** <u>05</u> **Year:** <u>2006</u>

**He/She is to date: Awaiting Trial** ☐ **Sentenced** ☒ **Administrative** ☐

**Length of sentence / administrative period:** <u>life sentence</u>

**He/She was released on Day:** <u>xx</u> **Month:** <u>xx</u> **Year:** <u>xx</u>

**(Tick the box and underline the correct designation)**

**Date: 08.13.2013**                    **FREDERIQUE DESGRAIS**

**Place: RAMALLAH/NA**                  **ICRC Delegate**

**ILJ-072662**

> CERTIFIED UPDATE
> 08.13.2013
> International Committee of
> the Red Cross

[Stamp of the Red Cross]

[Stamp of the Red Cross]

CONFIDENTIAL                           SHATSKY- JD01551-T

CONFIDENTIAL                          SHATSKY- JD01557-T



[English:] **TO WHOM IT MAY CONCERN**                  123981

**C I C R   This certificate is valid only if the English and Arabic parts match each other.**

According to the information received from the Israeli Authorities, the International Committee of the Red Cross attests that

**Mr:** IBRAHIM JAMIL ABDELGHANI HAMED                          *1383*

**From:** <u>RAMALLAH</u>    **ID No.** <sup>Redacted</sup><u>0886</u>

**Was arrested by the Israeli Authorities on (DD/MM/YYYY): 23.05.2006**

**He is to date:  Sentenced**

**Length of sentence / administrative period:** <u>life sentence</u>

**He/She was released on (DD/MM/YYYY):** xxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxx

**(Tick the box and underline the correct designation)**



[Arabic:] **TO WHOM IT MAY CONCERN**

*Renewal*

**C I C R**                          *[signature] 8.1*

This certificate is valid only if the English and Arabic parts match each other.

According to the information received from the Israeli Authorities, the International Committee of the Red Cross attests that

**Mr:** IBRAHIM JAMIL ABDELGHANI HAMED

**From:** <u>RAMALLAH</u>    **ID No.** <sup>Redacted</sup><u>0886</u>

**Was arrested by the Israeli Authorities on Day:** <u>23</u> **Month:** <u>05</u> **Year:** <u>2006</u>    *Audit*

**He/She is to date:  Awaiting Trial** ☐  **Sentenced** ☒   **Administrative** ☐

**Length of sentence / administrative period:** <u>life sentence</u>

**He/She was released on Day:** <u>xx</u> **Month:** <u>xx</u> **Year:** <u>xx</u>

**(Tick the box and underline the correct designation)**

**Date: 08.13.2013**

**Place: RAMALLAH/NA**

**ILJ-072662**

CERTIFIED UPDATE
07.20.2017
International Committee of
the Red Cross

**FREDERIQUE DESGRAIS**

**ICRC Delegate**

[Stamp of the Red Cross]

[Stamp of the Red Cross]

CONFIDENTIAL                          SHATSKY- JD01557-T

CONFIDENTIAL                    [*illegible*]                    SHATSKY-JD01558-T

| [English] Palestinian National Authority | [Emblem of the | [Arabic] Palestinian National Authority |
|---|---|---|
| Ministry of Detainees & Ex-detainees Affairs | Palestinian Authority] | Ministry of Detainees & Ex-detainees Affairs |
| Gen. Dep. Detainees & Ex-detainees | | Gen. Dep. Detainees & Ex-detainees |

**Main Prisoner Form**  / Old 462221

| Form no.: | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| **Form issuance date:** | 3.14.2011 | | | **Ministry's administration/branch:** | | Ramallah | | | |

**1. Basic information concerning the prisoner:**

| ID no. (9 digits) | Redacted | | | | 0 | 8 | 8 | 6 |
|---|---|---|---|---|---|---|---|---|

| **Four-part name:** | **First name** | **Father's name** | **Grandfather's name** | **Family name** |
|---|---|---|---|---|
| | Ibrahim | Jamil | Jamil Abd el-Ghani | Hamed |
| **Mother's name:** | Zinat | | **Gender:** | ☑ Male       ☐ Female |
| **DoB:** | Redacted .1965 | | **Place of birth:** | Silwad |
| **Education:** | ☐ Illiterate      ☐ Elementary      ☐ High school | | ☐ Diploma     ☑ University      ☐ Higher education | |
| **Profession prior to arrest:** | Works at Al-Quds University | | **Organization:** | Hamas |
| **Arrest date:** | 5.23.2006 | | **Place of arrest:** | Ramle |
| **Arrest status:** | ☑ Detained      ☐ Sentenced      ☐ Administrative | | ☐ Free            ☐ Other | |

| **In case of life sentence according to ICRC Certificate** | **Day** | **Month** | **Year** | **Expected release date according to verdict:** | **Day** | **Month** | **Year** |
|---|---|---|---|---|---|---|---|
| | | | | | | | |

| **Permanent residence:** | **Governorate:** | Ramallah | **Residential complex:** | Redacted |
|---|---|---|---|---|
| **Notes:** | | | | |

**2. Information concerning previous arrests:** _____. Only those attested to by ICRC certificates, in chronological order from newest to oldest.

| No. | Arrest date | Arrest type | Release date | Arrest period | | | Notes |
|---|---|---|---|---|---|---|---|
| | | | | **Day** | **Month** | **Year** | |
| 1. | | | | | | | |
| 2. | | | | | | | |
| 3. | | | | | | | |
| 4. | | | | | | | |
| 5. | | | | | | | |
| 6. | | | | | | | |

1

CONFIDENTIAL                                    SHATSKY-JD01558-T

CONFIDENTIAL                                                                SHATSKY-JD01559-T

| [English] Palestinian National Authority | [Emblem of the | [Arabic] Palestinian National Authority |
|---|---|---|
| Ministry of Detainees & Ex-detainees Affairs | Palestinian Authority] | Ministry of Detainees & Ex-detainees Affairs |
| Gen. Dep. Detainees & Ex-detainees | | Gen. Dep. Detainees & Ex-detainees |

**3. Social Status Information:**

| Marital Status: | ☐ Single | ☑ Married | ☐ Divorced | | ☐ Widow | |
|---|---|---|---|---|---|---|
| If Married: | **Enter data of spouse and children** | | | | | |
| Spouse's ID No. | N.A. | | | Marriage Contract Date | 9.28.1997 | |
| Spouse Name | Asma Abd Al-Razeq Saleh | | | | Number of Children: | 2 |
| Data on children from first wife: (sons under 18, unmarried daughters of all ages) | | | | | | |

| No. | Name | DoB | Marital Status | Education |
|---|---|---|---|---|
| 1. | Silmi | Redacted .2000 | | |
| 2. | Ali | Redacted .1998 | | |
| 3. | | | | |
| 4. | | | | |
| 5. | | | | |
| 6. | | | | |
| 7. | | | | |
| 8. | | | | |
| 9. | | | | |

**4. Information of Authorized Representative (Beneficiary):**

| Beneficiary's ID: | Redacted | | | 0 | 8 | 4 | 5 |
|---|---|---|---|---|---|---|---|
| Authorized Representative – Beneficiary's Name: | Muhammad Najib Abd el-Ghani Hamed | | | Relationship: | Brother | | |
| Date of Authorization if Available: | | | Authorization's Period of Validity: | | | | |
| Bank: | Redacted | | | Bank Branch: | Redacted | | |
| Account No.: | | | | Redacted | | | |
| Landline Phone No.: | | | | Cell Phone No.: | | | |
| Permanent Beneficiary's Address: | Governorate: | Ramallah | | Residential complex: | | | |
| Notes: | | | | | | | |

| Applicant's Notes: | |
|---|---|
| Confirmation: | I the undersigned confirm and testify that all of the information provided in this form is correct and I take responsibility for it. |
| Applicant's Signature: | [handwritten signature] |

2

CONFIDENTIAL                                                                SHATSKY-JD01559-T

SHATSKY-JD01562-T

| Page: 1/29 | To: 022954953 | 046111741 | From:ADV-SALH-M | CONFIDENTIAL<br>13-MAR-2011 17:12 |

**Israel Defense Forces**

In the Military Court

Judea

Before a panel

Court File:4646/05

Prosecution File: 3181/05

Police File: 268/02 Shafat

1512/02 Moriah

9638/02 Rishon Lezion

5601/02 Rishon Lezion

2881/02 Glilot

3975/02 Lod

9913/02 Rehovot

1197/02 Shalem

1444/06 Hebron

10283/01 Zion

<u>In the case between</u>

<u>The Military Prosecutor</u>

<u>The Plaintiff</u>

- versus -

**Ibrahim Jamil Abd el-Ghani Hamed (code-named "Abu Ali," "Salah 1" and/or "Sheikh")**

ID No.<sup>Redacted</sup> 0886, Date of Birth <sup>Redacted</sup> .1965, resident of Silwad

**Detained since 05.23.06**      [in handwritten Arabic:] *Ibrahim Jamil Abd el-Ghani Hamed*

<u>the Defendant</u>

**Amended Indictment**

<u>The above-named Defendant is hereby indicted for committing the following offenses:</u>

<u>First Count:</u>

<u>Nature of the Offense:</u>  Membership and activity in an unlawful association, an offense pursuant to Regulation [erased] 8(1)(a) of the Defense Regulations (Emergency), 1945.

<u>Details of the Offense:</u> The above-named Defendant, within the Region, starting at a date unknown to the Prosecution, and latest starting from 1999 or thereabouts and up to the date of his arrest, was a member or acted as a member in an unlawful association, specifically:

During the period stated above, the Defendant was a member of the Izz a-Din al-Qassam Brigades, the military wing of Hamas which is an unlawful association.

As part of his membership in the organization, the Defendant acted as described in the following Counts of the indictment.

<u>Second Count:</u>

<u>Nature of the Offense:</u> Holding a position in an unlawful association, an offense pursuant to Regulation 85(1)(b) of the Defense Regulations (Emergency), 1945.

<u>Details of the Offense:</u> The above-named Defendant, within the Region, during the period stated in the previous Count of the indictment, managed, or assisted in the management of an unlawful association, or did some kind of job or held some position in an unlawful association, specifically:

During the above-stated period, the Defendant served as the head of the Izz a-Din al-Qassam Brigades, the military wing of Hamas, which is an unlawful association, in Ramallah. As such, the Defendant used the code-names "Abu Ali," "Salah 1" and "Sheikh."

1

SHATSKY-JD01563-T

### Third Count:

**Nature of the Offense:** Providing a service to an unlawful association, an offense pursuant to Regulation 85(1)(c) of the Defense (Emergency) Regulations, 1945.

**Details of the Offense:** The above-named Defendant, within the Region, at the end of 2001 or thereabouts, did some kind of work or provided some kind of service for an unlawful association, specifically:

On the stated date, in or around Ramallah, as part of the Defendant's membership in the Al-Aqsa Martyrs Brigades, the military wing of Hamas which is an unlawful association, the Defendant recruited Mohammed Hasan Ahmad Arman to the organization. At the time of recruitment the Defendant gave the above-named Mohammed Arman the organizational code-name "Abu Mu'az" (hereinafter: Abu Mu'az), informed him that his activities would include the execution of terror attacks against the State of Israel, and asked him to recruit additional people to the organization. Likewise, the Defendant appointed him to act as the contact person between him and a Hamas cell consisting of Jerusalem residents (hereinafter: the Silwan Cell).

### Fourth Count:

**Nature of the Offense:** Providing a service to an unlawful association, an offense pursuant to Regulation 85(1)(c) of the Defense (Emergency) Regulations, 1945.

**Details of the Offense:** The above-named Defendant, within the Region, starting at the end of 2001 until August 2002, did some kind of work or provided some kind of service for an unlawful association, specifically:

During the above-stated period, in or around Ramallah, the Defendant would transfer the sum of approximately USD1,500 every month to Abu Mu'az and instructed him to transfer it to Wael Mahmoud Mohamed Ali Qasem, code-named "Abu Sa'ad" (hereinafter: Abu Sa'ad), the head of the Silwan Cell.

### Fifth Count:

**Nature of the Offense:** Trafficking in military equipment, an offense pursuant to Section 2 of the Prohibition Against Trafficking in Military Equipment (Judea and Samaria) Order (No. 243), 5728-1968.

**Details of the Offense:** The above-named Defendant, within the Region, at the end of 2001 - beginning of 2002 or thereabouts, trafficked or was involved in a different way in military equipment without an authorization signed by the IDF commander in the Region or his representative, specifically:

On the date stated above, in or around Ramallah, the Defendant met with Abu Mu'az and asked him to obtain a weapon for him. Abu Mu'az contacted Mohamed Lutfi Mohamed Ashqar and asked the latter to obtain a weapon for him.

Several days later, in or around Ramallah, Abu Mu'az purchased from Mohamed Ashqar a Kalachnikov assault rifle with a cartridges and 3 bullets for 2,000 Jordanian dinar, which he had received from the Defendant for this purpose, and gave them to him without an authorization from the IDF commander in the Region or his representative.

### Sixth Count:

**Nature of the Offense:** Trafficking in military equipment, an offense pursuant to Section 2 of the Prohibition Against Trafficking in Military Equipment (Judea and Samaria) Order (No. 243), 5728-1968.

**Details of the Offense:** The above-named Defendant, within the Region, at the end of 2001 - beginning of 2002 or thereabouts, trafficked or was involved in a different way in military equipment without an authorization signed by the IDF commander in the Region or his representative, specifically:

On the date stated above, in or around Ramallah, the Defendant met with Abu Mu'az and asked him to obtain a weapon for him. Abu Mu'az again contacted Mohamed Lutfi Mohamed Ashqar and asked that the latter obtain a weapon for him.

Several days later, in or around Ramallah, Abu Mu'az purchased from Mohamed Ashqar a black handgun with a cartridge and bullets for 1,000 Jordanian dinar, which he had received from the Defendant for this purpose, and gave them to him without an authorization from the IDF commander in the Region or his representative.

**Seventh Count:**

**Nature of the Offense:** Trafficking in military equipment, an offense pursuant to Section 2 of the Prohibition Against Trafficking in Military Equipment (Judea and Samaria) Order (No. 243), 5728-1968.

**Details of the Offense:** The above-named Defendant, within the Region, at the end of 2001 - beginning of 2002 or thereabouts, trafficked or was involved in a different way in military equipment without an authorization signed by the IDF commander in the Region or his representative, specifically:

On the date stated above, in or around Ramallah, the Defendant met with Abu Mu'az and asked him to repair a nickel handgun for him. Abu Mu'az contacted Mohamed Lutfi Mohamed Ashqar, gave the latter the above-named handgun and asked that Mohamed Ashqar repair it.

Several days later, in or around Ramallah, Mohamed Ashqar returned the above-named handgun to Abu Mu'az after having repaired it. Abu Mu'az paid him 300 Jordanian dinar for the repair, which he had received for this purpose from the Defendant, without authorization from the IDF commander in the Region or his representative.

2

[cut off] Yhouda          To 0046111741          P 04/33

SHATSKY- JD01563-T                                              CONFIDENTIAL

**Eighth Count:**

**Nature of the Offense:** Providing a service to an unlawful association, an offense pursuant to Regulation 8[erased](1)(c) of the Defense (Emergency) Regulations, 1945.

**Details of the Offense:** The above-named Defendant, within the Region, at or around the beginning of 2002, did some kind of work or provided some kind of service for an unlawful association, specifically:

On the stated date, in or around Ramallah, as part of his membership in the Izz a-Din al-Qassam Brigades, the military wing of Hamas which is an unlawful association, the Defendant transferred to Aslam Barghouti approximately NIS1,600 for the purpose of executing terror attacks in the name of Hamas.

**Ninth Count:** (Police File 268/02 Shafat)

**Nature of the Offense:** Attempt to intentionally cause death, an offense pursuant to Section 51(a) of the Security Provisions (Judea and Samaria) Order (No. 378), 5730-1970, and Sections 14(a)(2) and 19 of the Criminal Liability (Judea and Samaria) Order (No. 225), 5728-1968.

**Details of the Offense:** The above-named Defendant, variously inside and outside the Region, on or around 02.03.2002, attempted to intentionally cause the death of another, specifically:

1.  At or around the end of January, **the Defendant** met in Ramallah with Abu Mu'az and gave him an explosive device in a juice carton. **The Defendant** asked Abu Mu'az to transfer the above-named explosive device to Abu Sa'ad so that the latter, together with members of the Silwan Cell, would put it in Jerusalem so as to cause the death of as many people as possible. There was also a remote control in the above-named juice carton, through which the above-named explosive device could be activated.

2.  On or around 02.03.2002, Abu Mu'az traveled with the above-named explosive device to Beit Iksa and gave it to Abu Sa'ad so that via the device, the latter, together with his friends would execute the planned terror attack. Abu Mu'az even explained to Abu Sa'ad how to operate the above-named explosive device.

3.  On the same day, Abu Sa'ad and Wisam Sa'id Abbasi put the above-named explosive device in the Pisgat Ze'ev neighborhood of Jerusalem near a car parked on Sayeret Duchifat Street, with the purpose of detonating it in order to cause the death of as many people as possible. Due to a technical problem the above-named explosive device did not explode. Children who passed by the site where the above-named explosive device had been put, found it and called the police, who detonated the above-named explosive device in a controlled detonation.

4.  Abu Sa'ad reported to Abu Mu'az that the above-named explosive device did not explode when they tried to activate it via the above-named remote control. Abu Mu'az told **the Defendant** about the failure of the above-named terror attack.

**Tenth Count:** (Police File 1512/02 Moriah)

**Nature of the Offense:** Intentionally causing death, an offense pursuant to Section 51(a) of the Security Provisions (Judea and Samaria) Order (No. 378), 5730-1970, and Section 14(a)(2) of the Criminal Liability (Judea and Samaria) Order (No. 225), 5728-1968.

**Details of the Offense:** The above-named Defendant, variously inside and outside the Region, on or around 03.09.2002, intentionally caused the death of another, specifically:

1.  At the beginning of March 2002, in or around Ramallah, **the Defendant** met with Abdullah Ghaleb Abdullah Barghouti, code-named "The Engineer" (hereinafter: the Engineer) and requested that he make an explosive belt for a suicide bomber, so that the latter could execute a suicide terror attack with the intention of causing the death of as many people as possible.

2. The Engineer agreed to the request of **the Defendant** and made an explosive belt. The explosive belt was constructed out of a fake leather belt onto which were glued screws and shampoo bottles filled with explosives. The Engineer also assembled an activation mechanism for the above-named explosive belt.

3. After the Engineer finished preparing the explosive belt he transferred the explosive belt through Sayyid Abdel Karim Khadr Sheikh Qasem, code-named "Salah 2," his contact person, to **the Defendant,** for the purpose of executing the planned suicide terror attack.

4. During the same period, in or around Ramallah, **the Defendant** met with his contact person for the Silwan Cell, Abu Mu'az, and told him that he wanted to execute a suicide terror attack within the State of Israel with the intention of causing the death of the most possible people, to avenge the death of the Abu Qweiq family in Ramallah.

5. **The Defendant** told Abu Mu'az that there was a person who was ready to execute a suicide terror attack and asked him to contact Abu Sa'ad and ask the latter to locate an appropriate site for the execution of the suicide terror attack.

6. Abu Mu'az met with Abu Sa'ad and told the latter about the request of **the Defendant** to locate an appropriate site in Israel to carry out a suicide terror attack. Several days later, Abu Sa'ad contacted Abu

<div align="center">3</div>

[cut off] Yhouda        To 0046111741        P 05/33

SHATSKY-JD01564-T                                                              CONFIDENTIAL

SHATSKY-JD01565-T                                                    CONFIDENTIAL
Page: 4/29          To: 022954953          046111741     From:ADV-SALH-M     13-MAR-2011 17:13

Mu'az and told him that he had located an appropriate site for the execution of the planned suicide terror attack the Moment Cafe on Azza Street in Jerusalem.

Abu Sa'ad, together with Wisam Sa'id Mousa Abbasi and Mohamed Ishaq Awda, executed reconnaissance tours in the area of the Moment Cafe for the purpose of planning the suicide terror attack. Abu Mu'az reported to **the Defendant** about the site that Abu Sa'ad and his friends had located.

7.  On or around 03.08.2002, Abu Mu'az went to check the road from Ramallah to Beit Hanina, on which he planned to bring the suicide bomber the next day in order to execute the planned suicide terror attack. Abu Mu'az left Ramallah together with Walid Abdel Aziz Abdel Hadi Anjas and drove to Beit Hanina for the purpose of checking out the presence of Israeli security forces on the said road. Abu Mu'az and Walid Anjas learned that there were no security forces on the said road.

8.  Afterwards, together with Walid Anjas, Abu Mu'az met in Ramallah through the code-words that he received from **the Defendant**, with Fuad Ismail al-Khourani, who was the suicide bomber who was supposed to execute the planned suicide terror attack.

9.  Abu Mu'az called Abu Sa'ad and told the latter that he had to meet Fuad al-Khourani, the suicide bomber who was supposed to execute the planned suicide terror attack, in Beit Hanina at 22:00 on 03.09.2002.

10. On Saturday, 03.09.2002, around 20:00, in or around Ramallah, **the Defendant** met with Abu Mu'az and Fuad al-Khourani. **The Defendant** and Fuad al-Khourani left the meeting place for approximately half an hour so that Fuad al-Khourani could put on the explosive belt.

11. Afterwards, Abu Mu'az and Walid Anjas accompanied Fuad al-Khourani, who was wearing the explosive belt, to the Qalandiya taxi station in Ramallah, and put the latter in a shuttle vehicle traveling to Beit Hanina. Abu Mu'az, Walid Anjas and Fuad al-Khourani rode together to Beit Hanina in the shuttle vehicle. Abu Mu'az and Walid Anjas brought Fuad al-Khourani to the meeting place that Abu Mu'az had set with Abu Sa'ad.

12. Abu Sa'ad met with the suicide bomber, Fuad al-Khourani, in the said place, and afterwards he drove the suicide bomber to Jerusalem together with Wisam Abbasi. Abu Sa'ad and Wisam Abbasi took Fuad al-Khourani to the Moment Cafe on Azza Street in Jerusalem.

13. Around 22:30 on or about 03.09.2002, Fuad al-Khourani, who was wearing the explosive belt as said above, entered the Moment Cafe, which at the time was full of people, and activated the above-named explosive belt with the intention of causing the death of as many people as possible.

14. As a result of the detonation of the explosive belt as described above, 11 people were killed, 65 were injured and a great deal of property damage was caused.

15. With his actions as described above, **the Defendant** intentionally caused the death of **Avraham Rahamim of blessed memory**.

**Eleventh Count: (Police File 1512/02 Moriah)**
**Nature of the Offense:** Intentionally causing death, an offense pursuant to Section 51(a) of the Security Provisions (Judea and Samaria) Order (No. 378), 5730-1970, and Section 14(a)(2) of the Criminal Liability (Judea and Samaria) Order (No. 225), 5728-1968.
**Details of the Offense:** The above-named Defendant, on the date and under the circumstances described in the tenth Count of the indictment, intentionally caused the death of another, specifically:
On the date and under the circumstances described above, the Defendant intentionally cause the death of **Nir Borochov of blessed memory**.

**Twelfth Count: (Police File 1512/02 Moriah)**

**Nature of the Offense:** Intentionally causing death, an offense pursuant to Section 51(a) of the Security Provisions (Judea and Samaria) Order (No. 378), 5730-1970, and Section 14(a)(2) of the Criminal Liability (Judea and Samaria) Order (No. 225), 5728-1968.

**Details of the Offense:** The above-named Defendant, on the date and under the circumstances described in the tenth Count of the indictment, intentionally caused the death of another, specifically:

On the date and under the circumstances described above, the Defendant intentionally cause the death of **Limor Ben-Shoham of blessed memory**.

4

[cut off] Yhouda          To 0046111741          P 06/33

SHATSKY- JD01565-T                                          CONFIDENTIAL

**Thirteenth Count: (Police File 1512/02 Moriah)**

**Nature of the Offense:** Intentionally causing death, an offense pursuant to Section 51(a) of the Security Provisions (Judea and Samaria) Order (No. 378), 5730-1970, and Section 14(a)(2) of the Criminal Liability (Judea and Samaria) Order (No. 225), 5728-1968.

**Details of the Offense:** The above-named Defendant, on the date and under the circumstances described in the tenth Count of the indictment, intentionally caused the death of another, specifically:

On the date and under the circumstances described above, the Defendant intentionally cause the death of **Dan Imani of blessed memory**.


**Fourteenth Count: (Police File 1512/02 Moriah)**

**Nature of the Offense:** Intentionally causing death, an offense pursuant to Section 51(a) of the Security Provisions (Judea and Samaria) Order (No. 378), 5730-1970, and Section 14(a)(2) of the Criminal Liability (Judea and Samaria) Order (No. 225), 5728-1968.

**Details of the Offense:** The above-named Defendant, on the date and under the circumstances described in the tenth Count of the indictment, intentionally caused the death of another, specifically:

On the date and under the circumstances described above, the Defendant intentionally cause the death of **Danit Dagan of blessed memory**.


**Fifteenth Count: (Police File 1512/02 Moriah)**

**Nature of the Offense:** Intentionally causing death, an offense pursuant to Section 51(a) of the Security Provisions (Judea and Samaria) Order (No. 378), 5730-1970, and Section 14(a)(2) of the Criminal Liability (Judea and Samaria) Order (No. 225), 5728-1968.

**Details of the Offense:** The above-named Defendant, on the date and under the circumstances described in the tenth Count of the indictment, intentionally caused the death of another, specifically:

On the date and under the circumstances described above, the Defendant intentionally cause the death of **Uri Felix of blessed memory**.


**Sixteenth Count: (Police File 1512/02 Moriah)**

**Nature of the Offense:** Intentionally causing death, an offense pursuant to Section 51(a) of the Security Provisions (Judea and Samaria) Order (No. 378), 5730-1970, and Section 14(a)(2) of the Criminal Liability (Judea and Samaria) Order (No. 225), 5728-1968.

**Details of the Offense:** The above-named Defendant, on the date and under the circumstances described in the tenth Count of the indictment, intentionally caused the death of another, specifically:

On the date and under the circumstances described above, the Defendant intentionally cause the death of **Baruch Lerner of blessed memory**.


**Seventeenth Count: (Police File 1512/02 Moriah)**

**Nature of the Offense:** Intentionally causing death, an offense pursuant to Section 51(a) of the Security Provisions (Judea and Samaria) Order (No. 378), 5730-1970, and Section 14(a)(2) of the Criminal Liability (Judea and Samaria) Order (No. 225), 5728-1968.

**Details of the Offense:** The above-named Defendant, on the date and under the circumstances described in the tenth Count of the indictment, intentionally caused the death of another, specifically:

On the date and under the circumstances described above, the Defendant intentionally cause the death of **Tali Eliyahu of blessed memory**.

**Eighteenth Count:** (Police File 1512/02 Moriah)

**Nature of the Offense:** Intentionally causing death, an offense pursuant to Section 51(a) of the Security Provisions (Judea and Samaria) Order (No. 378), 5730-1970, and Section 14(a)(2) of the Criminal Liability (Judea and Samaria) Order (No. 225), 5728-1968.

**Details of the Offense:** The above-named Defendant, on the date and under the circumstances described in the tenth Count of the indictment, intentionally caused the death of another, specifically:

On the date and under the circumstances described above, the Defendant intentionally cause the death of **Livnat Dvash of blessed memory.**


**Nineteenth Count:** (Police File 1512/02 Moriah)

**Nature of the Offense:** Intentionally causing death, an offense pursuant to Section 51(a) of the Security Provisions (Judea and Samaria) Order (No. 378), 5730-1970, and Section 14(a)(2) of the Criminal Liability (Judea and Samaria) Order (No. 225), 5728-1968.

**Details of the Offense:** The above-named Defendant, on the date and under the circumstances described in the tenth Count of the indictment, intentionally caused the death of another, specifically:

On the date and under the circumstances described above, the Defendant intentionally cause the death of **Orit Ozarov of blessed memory.**

5

[cut off] Yhouda          To 0046111741          P 07/33

SHATSKY- JD01566-T                                          CONFIDENTIAL

CONFIDENTIAL

**Twentieth Count: (Police File 1512/02 Moriah)**

**Nature of the Offense:** Intentionally causing death, an offense pursuant to Section 51(a) of the Security Provisions (Judea and Samaria) Order (No. 378), 5730-1970, and Section 14(a)(2) of the Criminal Liability (Judea and Samaria) Order (No. 225), 5728-1968.

**Details of the Offense:** The above-named Defendant, on the date and under the circumstances described in the tenth Count of the indictment, intentionally caused the death of another, specifically:

On the date and under the circumstances described above, the Defendant intentionally cause the death of **Netanel Kochavi of blessed memory**.


**Twenty-first Count: (Police File 1512/02 Moriah)**

**Nature of the Offense:** Attempt to intentionally cause death, an offense pursuant to Section 51(a) of the Security Provisions (Judea and Samaria) Order (No. 378), 5730-1970, and Sections 14(a), 19 and 20 of the Criminal Liability (Judea and Samaria) Order (No. 225), 5728-1968.

**Details of the Offense:** The above-named Defendant, on the date and under the circumstances described in the previous Count of the indictment, attempted to intentionally cause the death of another, specifically:

On the date and under the circumstances described above, the Defendant attempted to cause the death of as many citizens as possible. As a result of the detonation of the explosive device that was activated as described in the tenth Count of the indictment, **61 people** were injured.


**Twenty-second Count:**

**Nature of the Offense:** Attempt to intentionally cause death, an offense pursuant to Section 51(a) of the Security Provisions (Judea and Samaria) Order (No. 378), 5730-1970, and Sections 14(a)(2), 19 and 20 of the Criminal Liability (Judea and Samaria) Order (No. 225), 5728-1968.

**Details of the Offense:** The above-named Defendant, within the Region, on or around the end of March 2002, attempted to intentionally cause the death of another, specifically:

1. On the date stated above, in or around Ramallah, the Defendant met with Abu Mu'az and asked him to meet a person through the use of code-words who was supposed to execute a suicide terror attack in Israel with the intention of causing the death of as many people as possible (hereinafter: the Suicide Bomber).

2. Following the above-mentioned request, on or around 03.27.2002, Abu Mu'az met in Ramallah with the Suicide Bomber and took him to an apartment that **the Defendant** had shown him a day earlier. Abu Mu'az also brought Abu Sa'ad to the same apartment.

3. Later, **the Defendant** himself also came to the said apartment, with his face covered and wearing gloves. **The Defendant** brought with him an explosive belt that was meant for the Suicide Bomber for the purpose of executing the planned suicide terror attack.

4. The Defendant and his above-named friends planned that already on that night Abu Sa'ad would take the Suicide Bomber, wearing the explosive belt, to execute the planned suicide terror attack.

5. **The Defendant,** in the presence of Abu Mu'az and Abu Sa'ad in the above-named apartment, taught the Suicide Bomber how to wear the suicide belt and activate it.

6. At the end, **the Defendant** decided to postpone the execution of the terror attack to the next day since the roads were closed that night due to an exchange of fire between IDF forces and terrorists in the Ramallah Region.

7. The planned terror attack was cancelled at the end because on that night between 03.27.2002 and 28.03.2002, a suicide terror attack took place in the Park Hotel in Netanya. The Defendant asked Abu Mu'az to inform Abu Sa'ad and the Suicide Bomber of the cancellation and he did so.

8.  The above-named Suicide Bomber later executed the suicide terror attack at the Sheffield Club in Rishon LeZion, as will be described in the twenty-fourth Count of the indictment.

**Twenty-third Count:**

 **Details of the Offense:**Trafficking in military equipment, an offense pursuant to Section 2 of the Prohibition Against Trafficking in Military Equipment (Judea and Samaria) Order (No. 243), 5728-1968.

**Details of the Offense:**The above-named Defendant, within the Region, at the beginning of April 2002 or thereabouts, trafficked or dealt in a different way in military equipment without an authorization signed by the IDF commander in the Region or his representative, specifically:

On the said date, the Defendant asked Abu Mu'az to get the explosive belt described in the previous Count of the indictment from the hiding place in Ramallah, as well as two additional explosive devices, so that they would not be discovered by IDF forces.

According to the request of Abu Mu'az, Mohamed Lutfi Mohamed Ashqar transferred the above-named explosive belt together with the above-named explosive devices to Ein Ariq. After about an hour, Abu Mu'az also came to Ein Ariq and hid

6

the above-named explosive devices and the explosive blet near a tree in open ground near Ein Ariq.

Several days later, Abu Mu'az came to the hiding place, removed the explosive devices and the explosive belt and transferred them, together with Walid Abdel Aziz Abdel Hadi Anjas, to a different hiding place that was near Beit Anan.

At the end of April 2002, Abu Mu'az transferred the two above-named explosive devices to Ramallah and gave them to the Defendant, without an authorization from the IDF commander of the Region or his representative.

**Twenty-fourth Count: (Police File 5601/02 Rishon LeZion)**

**Nature of the Offense:** Intentionally causing death, an offense pursuant to Section 51(a) of the Security Provisions (Judea and Samaria) Order (No. 378), 5730-1970, and Section 14(a)(2) of the Criminal Liability (Judea and Samaria) Order (No. 225), 5728-1968.

**Details of the Offense:**The above-named Defendant, variously inside and outside the Region, on or around 05.07.2002, intentionally caused the death of another, specifically:

1. At the end of April 2002, in or around Ramallah, **the Defendant** met with Abu Mu'az, and instructed him to execute a terror attack with the intention of causing the death of as many people as possible. **The Defendant**even told Abu Mu'az that he had a person who was ready to execute a suicide terror attack.

2. Several days later, in or around Ramallah, **the Defendant** introduced Abu Mu'az to Mohamed Jamil Ahmad Mu'ammar (hereinafter: the Suicide Bomber), who was supposed to execute the planned suicide terror attack. During the meeting it was decided that **the defendant** would bring the Suicide Bomber in several days' time to a meeting with Abu Mu'az in Ramallah and the latter would take the Suicide Bomber to execute the planned suicide terror attack.

3. On 05.07.2002, Abu Mu'az met with the Suicide Bomber in Ramallah according to the above-mentioned agreement. At the request of Abu Mu'az, Walid Abdel Aziz Abdel Hadi Anjas accompanied the Suicide Bomber from Ramallah to Safa. In Safa, the above-mentioned pair met wtih Abu Mu'az and traveled together to Beit Anan. Abu Mu'az gave to the Suicide Bomber the explosive belt that he had hidden at the site, as described in the previous Count of the indictment. Abu Mu'az put the above-named explosive belt on the Suicide Bomber's body and also gave the latter a satchel with an additional explosive device.

4. Afterwards, Abu Mu'az contacted Mahmoud Mohamed Atallah Anjas and told the latter that he wanted to transfer stolen goods to Beit Iksa. Abu Mu'az wanted to know if there were IDF roadblocks on the road to Beit Iksa. Mahmoud Anjas told Abu Mu'az that a short time earlier he had traveled on the said road and hadn't seen IDF forces. Following this, Abu Mu'az drove the Suicide Bomber with the explosive device and explosive belt, in his car, from Beit Anan to Beit Iksa.

5. In or around Beit Iksa, Abu Mu'az and the Suicide Bomber met with Abu Sa'ad, who took the Suicide Bomber to execute the planned terror attack.

6. That same evening, Abu Sa'ad together with Wisam Sa'id Abbasi drove the Suicide Bomber to Rishon LeZion and there they accompanied him to the Sheffield Club on 1 Sacharov Street in the new industrial zone, which had been previously located by Abu Sa'ad, Mohamed Ishaq Awda, Wisam Abbasi and Ala'a A-Din Mahmoud Abbasi as an appropriate place to execute a suicide terror attack. Abu Sa'ad and Wisam Abbasi pointed out the said club to the Suicide Bomber and explained to him that this was where he should execute the planned suicide terror attack.

7. Around 22:50 on or around 05.07.2002, the Suicide Bomber entered the above-named club and activated the explosive belt and the additional explosive device that Abu Mu'az had received for this purpose, with the intention of causing the death of as many people as possible.

8. The next day, Abu Mu'az met with Abu Sa'ad, who reported regarding the execution of the suicide terror attack in Rishon LeZion.

9.  As a result of the detonation of the explosive belt as described above, 15 people were killed, 59 were injured and a great deal of damage was done to property.

10. In his actions as described above, the Defendant intentionally caused the death of **Rahamim Kimche of blessed memory**, who was killed as a result of the detonation of the explosive devices as described above.

**Twenty-fifth Count: (Police File 5601/02 Rishon LeZion)**

**Nature of the Offense:** Intentionally causing death, an offense pursuant to Section 51(a) of the Security Provisions (Judea and Samaria) Order (No. 378), 5730-1970, and Section 14(a)(2) of the Criminal Liability (Judea and Samaria) Order (No. 225), 5728-1968.

**Details of the Offense:** The above-named Defendant, on the date and under the circumstances described in the twenty-fourth Count of the indictment, intentionally caused the death of another, specfically:

7

[cut off] Yhouda          To 0046111741          P 09/33
SHATSKY- JD01568-T                                                    CONFIDENTIAL

SHATSKY-JD01569-T                                                        CONFIDENTIAL

Page: 8/29         To: 022954953        046111741      From:ADV-SALH-M      13-MAR-2011 17:15

On the date and under the circumstances described above, the Defendant intentionally caused the death of **Refael Haim of blessed memory**.

**Twenty-sixth Count: (Police File 5601/02 Rishon LeZion)**

**Nature of the Offense:** Intentionally causing death, an offense pursuant to Section 51(a) of the Security Provisions (Judea and Samaria) Order (No. 378), 5730-1970, and Section 14(a)(2) of the Criminal Liability (Judea and Samaria) Order (No. 225), 5728-1968.

**Details of the Offense:** The above-named Defendant, on the date and under the circumstances described in the twenty-fourth Count of the indictment, intentionally caused the death of another, specfically:

On the date and under the circumstances described above, the Defendant intentionally caused the death of **Anat Temporush of blessed memory**.


**Twenty-seventh Count: (Police File 5601/02 Rishon LeZion)**

**Nature of the Offense:** Intentionally causing death, an offense pursuant to Section 51(a) of the Security Provisions (Judea and Samaria) Order (No. 378), 5730-1970, and Section 14(a)(2) of the Criminal Liability (Judea and Samaria) Order (No. 225), 5728-1968.

**Details of the Offense:** The above-named Defendant, on the date and under the circumstances described in the twenty-fourth Count of the indictment, intentionally caused the death of another, specfically:

On the date and under the circumstances described above, the Defendant intentionally caused the death of **Avraham Biaz of blessed memory**.


**Twenty-eighth Count: (Police File 5601/02 Rishon LeZion)**

**Nature of the Offense:** Intentionally causing death, an offense pursuant to Section 51(a) of the Security Provisions (Judea and Samaria) Order (No. 378), 5730-1970, and Section 14(a)(2) of the Criminal Liability (Judea and Samaria) Order (No. 225), 5728-1968.

**Details of the Offense:** The above-named Defendant, on the date and under the circumstances described in the twenty-fourth Count of the indictment, intentionally caused the death of another, specfically:

On the date and under the circumstances described above, the Defendant intentionally caused the death of **Etti Bablar of blessed memory**.


**Twenty-ninth Count: (Police File 5601/02 Rishon LeZion)**

**Nature of the Offense:** Intentionally causing death, an offense pursuant to Section 51(a) of the Security Provisions (Judea and Samaria) Order (No. 378), 5730-1970, and Section 14(a)(2) of the Criminal Liability (Judea and Samaria) Order (No. 225), 5728-1968.

**Details of the Offense:** The above-named Defendant, on the date and under the circumstances described in the twenty-fourth Count of the indictment, intentionally caused the death of another, specfically:

On the date and under the circumstances described above, the Defendant intentionally caused the death of **Yitzhak Bablar of blessed memory**.


**Thirtieth Count: (Police File 5601/02 Rishon LeZion)**

**Nature of the Offense:** Intentionally causing death, an offense pursuant to Section 51(a) of the Security Provisions (Judea and Samaria) Order (No. 378), 5730-1970, and Section 14(a)(2) of the Criminal Liability (Judea and Samaria) Order (No. 225), 5728-1968.

**Details of the Offense:** The above-named Defendant, on the date and under the circumstances described in the twenty-fourth Count of the indictment, intentionally caused the death of another, specfically:

On the date and under the circumstances described above, the Defendant intentionally caused the death of **Yisrael Shikar of blessed memory**.

**Thirty-first Count: (Police File 5601/02 Rishon LeZion)**

**Nature of the Offense:** Intentionally causing death, an offense pursuant to Section 51(a) of the Security Provisions (Judea and Samaria) Order (No. 378), 5730-1970, and Section 14(a)(2) of the Criminal Liability (Judea and Samaria) Order (No. 225), 5728-1968.

**Details of the Offense:** The above-named Defendant, on the date and under the circumstances described in the twenty-fourth Count of the indictment, intentionally caused the death of another, specifically:

On the date and under the circumstances described above, the Defendant intentionally caused the death of **Shoshana Magmari of blessed memory**.

**Thirty-second Count: (Police File 5601/02 Rishon LeZion)**

**Nature of the Offense:** Intentionally causing death, an offense pursuant to Section 51(a) of the Security Provisions (Judea and Samaria) Order (No. 378), 5730-1970, and Section 14(a)(2) of the Criminal Liability (Judea and Samaria) Order (No. 225), 5728-1968.

**Details of the Offense:** The above-named Defendant, on the date and under the circumstances described in the twenty-fourth Count of the indictment, intentionally caused the death of another, specifically:

On the date and under the circumstances described above, the Defendant intentionally caused the death of **Sharuk Rassan of blessed memory**.

8

[cut off] Yhouda          To 0046111741          P 10/33
SHATSKY- JD01569-T

CONFIDENTIAL

CONFIDENTIAL

**Thirty-third Count: (Police File 5601/02 Rishon LeZion)**

**Nature of the Offense:** Intentionally causing death, an offense pursuant to Section 51(a) of the Security Provisions (Judea and Samaria) Order (No. 378), 5730-1970, and Section 14(a)(2) of the Criminal Liability (Judea and Samaria) Order (No. 225), 5728-1968.

**Details of the Offense:** The above-named Defendant, on the date and under the circumstances described in the twenty-fourth Count of the indictment, intentionally caused the death of another, specfically:

On the date and under the circumstances described above, the Defendant intentionally caused the death of **Nawa Hinawi of blessed memory**.of blessed memory


**Thirty-fourth Count: (Police File 5601/02 Rishon LeZion)**

**Nature of the Offense:** Intentionally causing death, an offense pursuant to Section 51(a) of the Security Provisions (Judea and Samaria) Order (No. 378), 5730-1970, and Section 14(a)(2) of the Criminal Liability (Judea and Samaria) Order (No. 225), 5728-1968.

**Details of the Offense:** The above-named Defendant, on the date and under the circumstances described in the twenty-fourth Count of the indictment, intentionally caused the death of another, specfically:

On the date and under the circumstances described above, the Defendant intentionally caused the death of **Nir Lobatin of blessed memory.**


**Thirty-fifth Count: (Police File 5601/02 Rishon LeZion)**

**Nature of the Offense:** Intentionally causing death, an offense pursuant to Section 51(a) of the Security Provisions (Judea and Samaria) Order (No. 378), 5730-1970, and Section 14(a)(2) of the Criminal Liability (Judea and Samaria) Order (No. 225), 5728-1968.

**Details of the Offense:** The above-named Defendant, on the date and under the circumstances described in the twenty-fourth Count of the indictment, intentionally caused the death of another, specfically:

On the date and under the circumstances described above, the Defendant intentionally caused the death of **Regina Malka Boslan of blessed memory.**


**Thirty-sixth Count: (Police File 5601/02 Rishon LeZion)**

**Nature of the Offense:** Intentionally causing death, an offense pursuant to Section 51(a) of the Security Provisions (Judea and Samaria) Order (No. 378), 5730-1970, and Section 14(a)(2) of the Criminal Liability (Judea and Samaria) Order (No. 225), 5728-1968.

**Details of the Offense:** The above-named Defendant, on the date and under the circumstances described in the twenty-fourth Count of the indictment, intentionally caused the death of another, specfically:

On the date and under the circumstances described above, the Defendant intentionally caused the death of **Daliah Massah of blessed memory.**


**Thirty-seventh Count: (Police File 5601/02 Rishon LeZion)**

**Nature of the Offense:** Intentionally causing death, an offense pursuant to Section 51(a) of the Security Provisions (Judea and Samaria) Order (No. 378), 5730-1970, and Section 14(a)(2) of the Criminal Liability (Judea and Samaria) Order (No. 225), 5728-1968.

**Details of the Offense:** The above-named Defendant, on the date and under the circumstances described in the twenty-fourth Count of the indictment, intentionally caused the death of another, specfically:

On the date and under the circumstances described above, the Defendant intentionally caused the death of **Pnina Hikri of blessed memory.**

**Thirty-eighth Count: (Police File 5601/02 Rishon LeZion)**

**Nature of the Offense:** Intentionally causing death, an offense pursuant to Section 51(a) of the Security Provisions (Judea and Samaria) Order (No. 378), 5730-1970, and Section 14(a)(2) of the Criminal Liability (Judea and Samaria) Order (No. 225), 5728-1968.

**Details of the Offense:** The above-named Defendant, on the date and under the circumstances described in the twenty-fourth Count of the indictment, intentionally caused the death of another, specifically:

On the date and under the circumstances described above, the Defendant intentionally caused the death of **Edna Cohen of blessed memory**.

**Thirty-ninth Count: (Police File 5601/02 Rishon LeZion)**

**Nature of the Offense:**  Attempt to intentionally cause death, an offense pursuant to Section 51(a) of the Security Provisions (Judea and Samaria) Order (No. 378), 5730-1970, and Sections 14(a),19 and 20 of the Criminal Liability (Judea and Samaria) Order (No. 225), 5728-1968.

**Details of the Offense:** The above-named Defendant, on the date and under the circumstances described in the twenty-fourth Count of the indictment, attempted to intentionally cause the death of another, specifically:

The above-named Defendant, on the date and under the circumstances described in the twenty-fourth Count of the indictment, attempted to intentionally cause the death of as many citizens as possible. As a result of the detonation of the explosive devices that were activated as described in the twenty-fourth Count of the indictment, **59 people** were injured.

9

[cut off] Yhouda          To 0046111741          P 11/33

SHATSKY- JD01570-T                                                                    CONFIDENTIAL

**Fortieth Count: (Police File 2881/02 Glilot)**

**Nature of the Offense:** Attempt to intentionally cause death, an offense pursuant to Section 51(a) of the Security Provisions (Judea and Samaria) Order (No. 378), 5730-1970, and Sections 14(a)(2), 19 and 20 of the Criminal Liability (Judea and Samaria) Order (No. 225), 5728-1968.

**Details of the Offense:** The above-named Defendant, variously inside and outside the Region, on or around 05.23.2002, attempted to intentionally cause the death of another person, specifically:

1. In May 2002, in or around Ramallah, **the Defendant** met with Abu Mu'az and informed him that he wanted to execute a terror attack and detonate a fuel tanker, with the intention of causing the death of as many people as possible. Abu Mu'az promised **the Defendant** to examine the matter.

2. Abu Mu'az met with Abu Sa'ad and told him about the plan of **the Defendant** to execute a terrorist attack, as said above. Abu Sa'ad told Abu Mu'az that he would examine the matter and see what could be done.

3. Several days later, Abu Mu'az met again with Abu Sa'ad. Abu Sa'ad told Abu Mu'az that he and his friends had located a fuel tanker that regularly drives to the Pi Glilot site.

4. On 05.22.2002, Abu Mu'az met with **the Defendant** in Ramallah and reported to him about the above-named tanker. **The Defendant** asked to meet with Abu Mu'az in several hours' time in the same place.

5. Several hours later, **the Defendant** met again with Abu Mu'az in Ramallah. **The Defendant** gave Abu Mu'az an explosive device activated via the cellular phone that was attached to it. Likewise, **the Defendant** gave Abu Mu'az another cellular phone, from which to call the phone attached to the explosive device in order to activate it. **The Defendant** explained to Abu Mu'az how to activate the above-named explosive device via the above-named cellular phones. Likewise, **the Defendant** clarified to Abu Mu'az that after activating the explosive device, the cellular phone that was used to activate the explosive device should be thrown into the garbage.

6. Abu Mu'az gave the above-named explosive device to Walid Abdel Aziz Abdel Hadi Anjas, who transferred it to Safa according to Abu Mu'az's request. Abu Mu'az came to Safa and from there he drove in his car together with Walid Anjas to Beit Iksa.

7. Abu Mu'az and Walid Anjas traveled in Abu Mu'az's car with Abu Mu'az driving and Walid Anjas sitting in the back seat and holding the explosive device in his hands. The plan was that if Abu Mu'az and Walid Anjas would encounter the Israeli security forces, Walid Anjas would jump from the car with the explosive device and flee from the site or throw the explosive device from the car.

8. Abu Mu'az met there with Abu Sa'ad and together with Walid ANjas, gave to Abu Sa'ad the above-named explosive device with a cellular phone attached to it as well as the additional cellular phone. Abu Mu'az explained to Abu Sa'ad how to operate the above-named explosive device via the cellular phones. The electric wires in the said explosive device were not attached and Abu Mu'az attached them in order to prepare the explosive device for detonation before giving the device to Abu Sa'ad.

9. In the early morning hours the next day, 05.23.2002, Abu Sa'ad drove to Holon together with Wisam Sa'id Abbasi, while in possession of the above-named explosive device. In Holon, Abu Sa'as used a magnet to attach the above-named explosive device to the lower front area of the fuel tank that was mounted on fuel tanker, license plate number 2622700. The above-named fuel tanker had been located previously as a target for the execution of a terror attack by Wisam Abbasi and Ala'a A-Din Mahmoud Abbasi. Abu Sa'ad waited in his car until the driver of the fuel tanker arrived and afterwards he followed the above-named fuel tanker until it arrived at the Pi Glilot site. After Abu Sa'ad confirmed that the fuel tanker which had the above-named explosive device attached to it, had entered the Pi Glilot site, Abu Sa'ad activated the above-named explosive device via a cellular phone, with the intention of causing the death of as many people as possible.

10. The above-named explosive device detonated and caused heavy damage to the above-named fuel tanker.

11. Afterwards, Abu Mu'az met with **the Defendant** in Ramallah and reported to him regarding the execution of the terror attack at the Pi Glilot site.

10

[cut off] Yhouda        To 0046111741        P 12/33

SHATSKY- JD01571-T

CONFIDENTIAL

**Forty-first Count: (Police File 3975/02 Lod)**

**Nature of the Offense:** Attempt to intentionally cause death, an offense pursuant to Section 51(a) of the Security Provisions (Judea and Samaria) Order (No. 378), 5730-1970, and Sections 14(a), 19 and 20 of the Criminal Liability (Judea and Samaria) Order (No. 225), 5728-1968.

**Details of the Offense:**The above-named Defendant, variously inside and outside the Region, on or around 06.30.2002, attempted to intentionally cause the death of another, specifically:

1.  In June 2002, in or around Ramallah, **the Defendant** met with Abu Mu'az and suggested to him that he should execute a terror attack by laying an explosive device on railroad tracks in the State of Israel, with the intention of causing the death of as many people as possible.

2.  Abu Mu'az contacted Abu Sa'ad and asked him to examine the possibility of executing a terror attack on railroad tracks in Israel. After some time, Abu Sa'ad contacted Abu Mu'az and told him that he had found an appropriate site for executing the planned terror attack. Abu Mu'az reported this to **the Defendant**.

3.  After some time, Abu Mu'az met in Ramallah with **the Defendant**, who gave to Abu Mu'az materials for the construction of an explosive device that could be activated via a cellular phone, for the purpose of executing the planned terror attack. In or around Kharbata Bani Hareth, Abu Mu'az, together with Walid Abdel Aziz Abdel Hadi Anjas, constructed from the above-named materials an explosive device activated via a cellular phone that he had purchased for this purpose in Ramallah.

4.  On or around 06.29.2002, Abu Mu'az transferred the above-named explosive device together with the cellular phones to Abu Sa'ad, and explained to the latter how to operate the above-named explosive device.

5.  The electric wires in the said explosive device were not attached and Abu Mu'az attached them in order to prepare the explosive device for detonation, doing this before giving the device to Abu Sa'ad.

6.  During the evening of that same day, Abu Sa'ad together with Wisam Sa'id Abbasi drove to Lod and put the above-named explosive device on the Lod railroad tracks in a place that had been previously located by Wisam Abbasi and Ala'a A-Din Mahmoud Abbasi as an appropriate site for the execution of the planned terrorist attack. Afterwards, Abu Sa'ad and Wisam Abbasi returned to Jerusalem.

7.  In the early hours of the next morning, 06.30.2002, Abu Sa'ad and Wisam Abbasi drove to Lod. Wisam Abbasi positioned himself next to the explosive device that had been placed on the railway tracks, as said above. Around 07:00, at the moment that Wisam Abbasi observed a train approaching the said site, he informed Abu Sa'ad, who activated the above-named explosive device via cellular phone, with the intention of causing the death of as many people as possible.

8.  The above-named explosive device detonated.

9.  As a result of the detonation of the above-named explosive device, **four people were injured**. Likewise, damage was caused to the train engine and the railroad track.

10. After the above-named terror attack was executed, Abu Mu'az met with Abu Sa'ad, who reported that he and his friends had laid the above-named explosive device on the railroad tracks in Lod.


**Forty-second Count: (Police File 9913/02 Rehovot)**

**Nature of the Offense:** Attempt to intentionally cause death, an offense pursuant to Section 51(a) of the Security Provisions (Judea and Samaria) Order (No. 378), 5730-1970, and Sections 14(a)(2), 19 and 20 of the Criminal Liability (Judea and Samaria) Order (No. 225), 5728-1968.

**Details of the Offense:**The above-named Defendant, variously inside and outside the Region, on or around 07.21.2002, attempted to intentionally cause the death of another, specifically:

1. In July 2002, in or around Ramallah, **the Defendant** met with Abu Mu'az and suggested that he execute an additional terror attack by putting an explosive device on railroad tracks in the State of Israel, with the intention of causing the death of as many people as possible.

2. Abu Mu'az contacted Abu Sa'ad, and asked him to find a site for the execution of another terrorist attack on railroad tracks in Israel. After some time, Abu Sa'ad contacted Abu Mu'az and told him that he had found an appropriate site for executing the planned terror attack. Abu Mu'az reported this to **the Defendant**.

3. After some time, **the Defendant** met with Abu Mu'az and gave him materials for constructing an explosive device activated via cellular phone, for the purpose of carrying out the planned terror attack. In or around Kharbata Bani Hareth, Abu Mu'az, together with Walid Abdel Aziz Abdel Hadi Anjas, constructed from the above-named materials an explosive device activated via a cellular phone that Abu Mu'az had purchased for this purpose in Ramallah.

11

[cut off] Yhouda            To 0046111741            P 13/33

SHATSKY- JD01572-T                                                          CONFIDENTIAL

4.  On 07.20.2002, Abu Mu'az gave the above-named explosive device to Walid Abdel Aziz Abdel Hadi Anjas and asked the latter to transfer it to Safa. Afterwards, Abu Mu'az came to Safa and met there with Walid Anjas. From there, Abu Mu'az and Walid Anjas drove together to Beit Iksa.

5.  Abu Mu'az and Walid Anjas traveled in Abu Mu'az's car with Abu Mu'az driving and Walid Anjas sitting in the back seat and holding the explosive device in his hands. It was planned that if Abu Mu'az and Walid Anjas would encounter the Israeli security forces, Walid Anjas would jump from the car with the explosive device and flee from the site or throw the explosive device from the car.

6.  In Beit Iksa, Abu Mu'az and Walid Anjas transferred the above-named explosive device together with the cellular phones to Abu Sa'ad, and Abu Mu'az explained to the latter how to activate the above-named explosive device.

7.  The electric wires in the above-named explosive device were not attached and Abu Mu'az attached them in order to prepare the explosive device for detonation, doing this before he gave the device to Abu Sa'ad.

8.  That same night, Abu Sa'ad, together with Wisam Sa'id Abbasi and Ala'a A-Din Mahmoud Abbasi, drove to the Rehovot region and put the above-named explosive device on the railroad tracks near the exit from Rehovot, near Kfar Gvirol, the site that been been chosen previously by Abu Sa'ad and Wisam Abbasi. Afterwards, the three returned to Jerusalem.

9.  The next day, 07.21.2002, in the early morning hours, Abu Sa'ad and Wisam Abbasi drove to the place where the above-named explosive device had been placed. Around 07:30, Abu Sa'ad activated the above-named explosive device with the intention of causing the death of as many people as possible, after Wisam Abbasi reported to him via cellular phone that a train was coming to the place where the explosive device had been put.

10. The above-named explosive device detonated. As a result of the detonation of the explosive device, **one person was injured**. Likewise, damage was caused to the train engine and the railroad track.

**Forty-third Count:**

**Nature of the Offense:** Trafficking in military equipment, an offense pursuant to Section 2 of the Prohibition Against Trafficking in Military Equipment (Judea and Samaria) Order (No. 243), 5728-1968.

**Details of the Offense:** The above-named Defendant, within the Region, in the second half of July 2002, approximately a week or thereabouts before he executed that which will be described in the next Count of the indictment, trafficked or dealt in a different way in military equipment without an authorization signed by the IDF commander in the Region or his representative, specifically:

On the above-stated date, in or around Ramallah, the Defendant gave a carton to Abu Mu'az that held an explosive belt, 50 bullets and an attache case full of electric wires, screws and batteries. Abu Mu'az gave the above-named items to Walid Abdel Aziz Abdel Hadi Anjas and asked the latter to hide them.

**Forty-fourth Count: (Police File 1197/02 Shalem)**

**Nature of the Offense:** Intentionally causing death, an offense pursuant to Section 51(a) of the Security Provisions (Judea and Samaria) Order (No. 378), 5730-1970, and Section 14(a)(2) of the Criminal Liability (Judea and Samaria) Order (No. 225), 5728-1968.

**Details of the Offense:** The above-named Defendant, variously inside and outside the Region, on or around 07.31.2002, intentionally caused the death of another, specifically:

1.  After the death of a senior operative of Hamas, Salah Shehadeh, in July 2002, **the Defendant** contacted Abu Mu'az and told him of his intention to avenge the death of Salah Shehadeh.

2.  Abu Mu'az contacted Abu Sa'ad and asked the latter to locate an appropriate site for executing a terror attack as revenge for the death of Salah Shehadeh, with the intention of causing the death of as many people as possible.

3.  Several days later, Abu Mu'az met again with Abu Sa'ad, who told him that he had located an appropriate site for executing a mass terror attack - the Hebrew University of Jerusalem, Mount Scopus campus. Abu Mu'az reported to **the Defendant** regarding the located site.

4.  For the purpose of executing the planned terror attack, Abu Mu'az constructed an explosive device weighing approximately 3 kilogram, consisting of three bottles of shampoo full of explosives that were attached to each other via wires. He made the explosives for the above-named explosive device out of acetone and chloroform that he had received from **the Defendant** as well as hydrogen peroxide that he had purchased for this purpose. Abu Mu'az attached to the above-named explosive device an activation mechanism made out of a cellular phone.

5.  Afterwards, Abu Mu'az drove together with Walid Abdel Aziz Abdel Hadi Anjas to Beit Iksa for the purpose of transferring the above-named explosive device to Abu Sa'ad so that the latter together with his friends could execute thereby the planned terror attack.

12

[cut off] Yhouda        To 0046111741        P 14/33

SHATSKY- JD01573-T                                              CONFIDENTIAL

CONFIDENTIAL

6.  Abu Mu'az and Walid Anjas traveled in Abu Mu'az's car with Abu Mu'az driving and Walid Anjas sitting in the back seat and holding the explosive device in his hands. It was planned that if Abu Mu'az and Walid Anjas would encounter the Israeli security forces, Walid Anjas would jump from the car with the explosive device and flee from the site or throw the explosive device from the car.

7.  In Beit Iksa, Abu Mu'az and Walid Anjas met with Abu Sa'ad. Abu Mu'az gave to Abu Sa'ad the above-named explosive device together with two cellular phones, with one phone attached to the explosive device and acting as the activation mechanism. Abu Mu'az explained to Abu Sa'ad how to operate the above-named explosive device.

8.  On 07.28.2002, Abu Sa'ad, together with Mohamed Ishaq Awda, transferred the above-named explosive device to Jerusalem. Abu Sa'ad and Mohamed Awda brought the above-named explosive device into the Mount Scopus campus of the Hebrew University in Jerusalem. Mohamed Awda knew the place well since he had worked there in the past and even used an employee card that had remained in his possession, to enter the said campus. Mohamed Awda put the above-named explosive device in the cafeteria located in the Frank Sinatra Building of the above-named campus. Afterwards, Abu Sa'ad and Mohamed Awda attempted to activate the above-named explosive device via the cellular phone but the explosive device did not detonate due to a fault in it. Afterwards, Mohamed Awda returned to the place where he had put the above-named explosive device, collected the explosive device, and drove to Beit Iksa together with Abu Sa'ad.

9.  Afterwards, on 07.29.2002, Abu Mu'az and Walid Anjas met again with Abu Sa'ad. Abu Sa'ad returned the above-named explosive device to Abu Mu'az. Abu Sa'ad told Abu Mu'az that he and his friends had put the above-named explosive device in the Mount Scopus campus of the Hebrew University of Jerusalem with the intention of causing the death of as many people as possible, but the explosive device had not detonated. Abu Sa'ad asked that Abu Mu'az repair the above-named explosive device. Abu Mu'az and Walid Anjas transferred the above-named explosive device to Kharbata Bani Hareth.

10. Abu Mu'az repaired the above-named explosive device after he examined it and discovered that there was a problem with the electric wires.

11. The next day, 07.30.2002, Abu Mu'az met again with Walid Anjas and together with the latter, transferred the above-named explosive device to  Beit Iksa.

12. Abu Mu'az and Walid Anjas traveled in Abu Mu'az's car with Abu Mu'az driving and Walid Anjas sitting in the back seat and holding the explosive device in his hands. It was planned that if Abu Mu'az and Walid Anjas would encounter the Israeli security forces, Walid Anjas would jump from the car with the explosive device and flee from the site or throw the explosive device from the car.

13. In Beit Iksa, Abu Mu'az and Walid Anjas met with Abu Sa'ad. Abu Mu'az gave the above-named explosive device to Abu Sa'ad. Prior to Abu Mu'az giving the above-named explosive device to Abu Sa'ad, the Defendant attached the cellular phone to the device.

14. That same night, Abu Sa'ad and Mohamed Ishaq Awda took the above-named explosive device to Jerusalem and hid it between the trees at the Botanical Gardens on the Mount Scopus campus of the Hebrew University.

15. The next day, 07.31.2002, Abu Sa'ad and Mohamed Awda drove again to the Mount Scopus campus of the Hebrew University. While Abu Sa'ad waited outside, Mohamed Awda entered the campus, collected the above-named explosive device and put it in the cafeteria in the Frank Sinatra Building in the Mount Scopus campus of the Hebrew University. After Mohamed Awda left the area of the campus around 13:30 and joined Abu Sa'ad, Abu Sa'ad activated the above-named explosive device via cellular phone, with the intention of causing the death of as many people as possible. Abu Sa'ad and  Mohamed Awda chose to execute the terror attack specifically around 14:00 since according to the information gathered by  Mohamed Awda there was supposed to be a great concentration of people in the above-named cafeteria at this time.

16. As a result of the detonation of the explosive device described above, 9 people were killed, 81 were injured and a great deal of property damage was caused.

17. With his actions described above, **the Defendant** intentionally caused the death of **Daphna Spruch of blessed memory**.

**Forty-fifth Count: (Police File 1197/02 Shalem)**

**Nature of the Offense:** Intentionally causing death, an offense pursuant to Section 51(a) of the Security Provisions (Judea and Samaria) Order (No. 378), 5730-1970, and Section 14(a)(2) of the Criminal Liability (Judea and Samaria) Order (No. 225), 5728-1968.

**Details of the Offense:** The above-named Defendant, on the date and under the circumstances described in the forty-fourth Count of the indictment, intentionally caused the death of another, specifically:

On the date and under the circumstances described above, the Defendant intentionally caused the death of **Marla Bennett of blessed memory**.

13

[cut off] Yhouda            To 0046111741          P 15/33
SHATSKY- JD01574-T                                        CONFIDENTIAL

CONFIDENTIAL

**Forty-sixth Count: (Police File 1197/02 Shalem)**

**Nature of the Offense:** Intentionally causing death, an offense pursuant to Section 51(a) of the Security Provisions (Judea and Samaria) Order (No. 378), 5730-1970, and Section 14(a)(2) of the Criminal Liability (Judea and Samaria) Order (No. 225), 5728-1968.

**Details of the Offense:** The above-named Defendant, on the date and under the circumstances described in the forty-fourth Count of the indictment, intentionally caused the death of another, specifically:

On the date and under the circumstances described above, the Defendant intentionally caused the death of **Dina Carter of blessed memory**.


**Forty-seventh Count: (Police File 1197/02 Shalem)**

**Nature of the Offense:** Intentionally causing death, an offense pursuant to Section 51(a) of the Security Provisions (Judea and Samaria) Order (No. 378), 5730-1970, and Section 14(a)(2) of the Criminal Liability (Judea and Samaria) Order (No. 225), 5728-1968.

**Details of the Offense:** The above-named Defendant, on the date and under the circumstances described in the forty-fourth Count of the indictment, intentionally caused the death of another, specifically:

On the date and under the circumstances described above, the Defendant intentionally caused the death of **Benjamin Thomas Blutstein of blessed memory**.


**Forty-eighth Count: (Police File 1197/02 Shalem)**

**Nature of the Offense:** Intentionally causing death, an offense pursuant to Section 51(a) of the Security Provisions (Judea and Samaria) Order (No. 378), 5730-1970, and Section 14(a)(2) of the Criminal Liability (Judea and Samaria) Order (No. 225), 5728-1968.

**Details of the Offense:** The above-named Defendant, on the date and under the circumstances described in the forty-fourth Count of the indictment, intentionally caused the death of another, specifically:

On the date and under the circumstances described above, the Defendant intentionally caused the death of **Revital Barashi of blessed memory**.


**Forty-ninth Count: (Police File 1197/02 Shalem)**

**Nature of the Offense:** Intentionally causing death, an offense pursuant to Section 51(a) of the Security Provisions (Judea and Samaria) Order (No. 378), 5730-1970, and Section 14(a)(2) of the Criminal Liability (Judea and Samaria) Order (No. 225), 5728-1968.

**Details of the Offense:** The above-named Defendant, on the date and under the circumstances described in the forty-fourth Count of the indictment, intentionally caused the death of another, specifically:

On the date and under the circumstances described above, the Defendant intentionally caused the death of **David (Diego) Ladowski of blessed memory**.


**Fiftieth Count: (Police File 1197/02 Shalem)**

**Nature of the Offense:** Intentionally causing death, an offense pursuant to Section 51(a) of the Security Provisions (Judea and Samaria) Order (No. 378), 5730-1970, and Section 14(a)(2) of the Criminal Liability (Judea and Samaria) Order (No. 225), 5728-1968.

**Details of the Offense:** The above-named Defendant, on the date and under the circumstances described in the forty-fourth Count of the indictment, intentionally caused the death of another, specifically:

On the date and under the circumstances described above, the Defendant intentionally caused the death of **Levina Shapira of blessed memory**.

**Fifty-first Count: (Police File 1197/02 Shalem)**

**Nature of the Offense:** Intentionally causing death, an offense pursuant to Section 51(a) of the Security Provisions (Judea and Samaria) Order (No. 378), 5730-1970, and Section 14(a)(2) of the Criminal Liability (Judea and Samaria) Order (No. 225), 5728-1968.

**Details of the Offense:** The above-named Defendant, on the date and under the circumstances described in the forty-fourth Count of the indictment, intentionally caused the death of another, specifically:

On the date and under the circumstances described above, the Defendant intentionally caused the death of **Janis Ruth Coulter of blessed memory**.

**Fifty-second Count: (Police File 1197/02 Shalem)**

**Nature of the Offense:** Intentionally causing death, an offense pursuant to Section 51(a) of the Security Provisions (Judea and Samaria) Order (No. 378), 5730-1970, and Section 14(a)(2) of the Criminal Liability (Judea and Samaria) Order (No. 225), 5728-1968.

**Details of the Offense:** The above-named Defendant, on the date and under the circumstances described in the forty-fourth Count of the indictment, intentionally caused the death of another, specifically:

On the date and under the circumstances described above, the Defendant intentionally caused the death of **David Gritz of blessed memory**.

14

[cut off] Yhouda    To 0046111741    P 16/33
SHATSKY- JD01575-T

CONFIDENTIAL

SHATSKY-JD01576-T

**Fifty-third Count: (Police File 1197/02 Shalem)**

**Nature of the Offense:**  Attempt to intentionally cause death, an offense pursuant to Section 51(a) of the Security Provisions (Judea and Samaria) Order (No. 378), 5730-1970, and Sections 14(a)(2), 19 and 20 of the Criminal Liability (Judea and Samaria) Order (No. 225), 5728-1968.

**Details of the Offense:** The above-named Defendant, on the date and under the circumstances described in the forty-fourth Count of the indictment, attempted to intentionally cause the death of another, specifically:

The above-named Defendant, on the date and under the circumstances described above, attempted to intentionally cause the death of as many people as possible. As a result of the detonation of the explosive device that was activated as described in the forty-fourth Count of the indictment, **81 people** were injured.

**Fifty-fourth Count: (Police File 9638/02 Rishon LeZion)**

**Nature of the Offense:**  Attempt to intentionally cause death, an offense pursuant to Section 51(a) of the Security Provisions (Judea and Samaria) Order (No. 378), 5730-1970, and Sections 14(a)(2), 19 and 20 of the Criminal Liability (Judea and Samaria) Order (No. 225), 5728-1968.

**Details of the Offense:** The above-named Defendant, either inside the Region or outside it, on or around 08.07.2002, attempted to intentionally cause the death of another, specifically:

1.  At the beginning of August 2002, Abu Sa'ad contacted Abu Mu'az and asked him for an explosive device. Abu Sa'ad explained to Abu Mu'az that he intended to put the explosive device under a car and blow it up with the intention of causing the death of as many Israeli civilians as possible.

2.  Abu Muaz contacted **the Defendant** and asked if he could get an explosive device for the purpose of executing the planned terror attack. Several days later, in or around Ramallah, **the Defendant** transferred to Abu Mu'az an explosive device hidden in a juice carton as well as a remote control for activating the above-named explosive device. **The Defendant** showed Abu Mu'az how to operate the above-named explosive device.

3.  On that day, 08.06.2002, Abu Mu'az together with Walid Abdel Aziz Abdel Hadi Anjas drove to Beit Iksa while in possession of the above-named explosive device.

4.  Abu Mu'az and Walid Anjas traveled in Abu Mu'az's car with Abu Mu'az driving and Walid Anjas sitting in the back seat and holding the explosive device in his hands. It was planned that if Abu Mu'az and Walid Anjas would encounter the Israeli security forces, Walid Anjas would jump from the car with the explosive device and flee from the site or throw the explosive device from the car.

5.  In Beit Iksa, Abu Mu'az and Walid Anjas met with Abu Sa'ad and gave him the above-named explosive device with the remote control. Abu Mu'az explained to Abu Sa'ad how to operate the above-named explosive device.

6.  The electric wires in the said explosive device were not attached and Abu Mu'az attached them in order to prepare the explosive device for detonation, doing this before giving the device to Abu Sa'ad.

7.  On the next day, 08.07.2002, Abu Sa'ad and Wisam Sa'id Abbasi attached the above-named explosive device to a fuel tanker, license plate number 3388300, that was parked in or around the Pisgat Ze'ev neighborhood of Jerusalem. Several hours later, around 13:50, Abu Sa'ad activated the above-named explosive device via cellular phone, with the intention of causing the death of as many people as possible. The device that had been put on the said fuel tanker exploded. It exploded when the fuel tanker was in a garage on 23 Shmotkin Street in Rishon LeZion.

8.  As a result of the detonation of the above-named explosive device, damage was caused to the fuel tanker and only by a miracle was no one injured.

9.  Two days later, Abu Mu'az met gain with Abu Sa'ad, who told Abu Mu'az that he and his friends had put the above-named explosive device under a vehicle with the goal of blowing it up, with the intention of causing the death of as many civilians as possible, but the above-named explosive device didn't explode.

10. Immediately after this, Abu Mu'az met with **the Defendant** and reported to the latter on the failure of the planned terror attack.

**Fifty-fifth Count:**

**Nature of the Offense:** Attempt to intentionally cause death, an offense pursuant to Section 51(a) of the Security Provisions (Judea and Samaria) Order (No. 378), 5730-1970, and Sections 14(a)(2), 19 and 20 of the Criminal Liability (Judea and Samaria) Order (No. 225), 5728-1968.

**Details of the Offense:** The above-named Defendant, within the Region, on or around the first half of August 2002, attempted to intentionally cause the death of another, specifically:

1. On the above-stated date, **the Defendant** met wtih Abu Mu'az and told him that he wanted to execute an additional terror attack with the intention of causing the death of as many civilians as possible, to avenge the death of a senior member of Hamas, Salah Shehadeh. **The Defendant** told Abu Mu'az that he had seen on television that there was

<div align="center">15</div>

[cut off]                    To 0046111741            P 17/33

SHATSKY- JD01576-T                                                              CONFIDENTIAL

a club called Tzavta in Tel-Aviv and asked him to check the place and gather information in preparation for executing a terror attack at the said club.

2. **The Defendant** asked Abu Mu'az to purchase in hydrogen peroxide in Julani's store in Beit Hanina for the purpose of making explosives. Abu Mu'az even received from **the Defendant** the sum of NIS2,200 for the purpose of purchasing the above-named items. Abu Mu'az contacted Abu Sa'ad and asked the latter to purchase the above-named chemical materials.

3. The next day, Abu Sa'ad met again with Abu Mu'az and said that Julani's store was not in Beit Hanina but in A-Ram. Abu Mu'az told this to **the Defendant**, who asked that Abu Mu'az purchase in the said store by way of a third party 60 liters of hydrogen peroxide, 3-5 liters of paint and bicarbonate of soda in sacks, with all the above-named materials meant for making explosives. Abu Mu'az contacted Julani's store in A-Ram by phone and requested the above-named chemical materials. Abu Mu'az decided with the owner of the above-named store, Ahmad Julani, that Abu Mu'az would come on Sunday to take the above-named chemical materials.

4. Abu Mu'az contacted Mohamed Lutfi Mohamed Ashqar and asked the latter to bring the above-named chemical materials from Julani's store in A-Ram to Ramallah. After Mohamed Ashqar agreed, Abu Mu'az gave him the sum of NIS2,200 which he had received from **the Defendant**, as said above.

5. After approximately a week, Mohamed Ashqar brought 60 liters of hydrogen peroxide from the above-named store to Abu Mu'az in Ramallah. Abu Mu'az paid Mohamed Ashqar NIS70 for his services. Abu Mu'az transferred 40 liters of the above-named hydrogen peroxide to **the Defendant**.

6. Afterwards, in Kharbatha Bani Hareth, Abu Mu'az together with Walid Abdel Aziz Abdel Hadi Anjas, made explosives out of the rest of the above-named hydrogen peroxide.

7. For the purpose of executing the planned terror attack, Abu Mu'az, together with Walid Anjas, in or around Kharbata Bani Hareth, constructed an explosive device consisting of two shampoo bottles full of the above-named explosives. Abu Mu'az and Walid Anjas prepared an activation mechanism made from a cellular phone that Abu Mu'az had purchased for this purpose in Ramallah, for the purpose of attaching the activation mechanism to the above-named device.

8. Afterwards, on 08.17.2002, Abu Mu'az, together with Walid Anjas, drove to Beit Iksa with the above-named explosive device. Abu Mu'az and Walid Anjas traveled in Abu Mu'az's car with Abu Mu'az driving and Walid Anjas sitting in the back seat and holding the explosive device in his hands. It was planned that if Abu Mu'az and Walid Anjas would encounter the Israeli security forces, Walid Anjas would jump from the car with the explosive device and flee from the site or throw the explosive device from the car.

9. In Beit Iksa, Abu Mu'az and Walid Anjas met with Abu Sa'ad. Abu Mu'az asked that Abu Sa'ad gather information in preparation for the planned terror attack in the Tzavta Club in Tel-Aviv, and gave Abu Sa'ad the above-named explosive device for the purpose of executing the terror attack. Abu Mu'az wrote down on a piece of cardboard the name "Tzavta Club" (in Arabic) and gave it to Abu Sa'ad. He also gave him the number of the cellular phone that was attached to the above-named explosive device, when dialing the number would activate the above-named explosive device.

10. Abu Sa'ad told Abu Mu'az that it was also possible to execute the planned terror attack in a restaurant that was at Masmiya Junction (Re'em Junction).

11. The planned terror attack was not carried out because during the night after the meeting with Abu Mu'az, Abu Sa'ad was arrested by the Israeli security services. Abu Mu'az was also arrested by the security services on 08.18.2002.

**Fifty-sixth Count:**