**Details of the Offense:**Trafficking in military equipment, an offense pursuant to Section 2 of the Prohibition Against Trafficking in Military Equipment (Judea and Samaria) Order (No. 243), 5728-1968.

**Details of the Offense:**The above-named Defendant, within the Region, in or around April 2006, trafficked or dealt in a different way in military equipment without an authorization signed by the IDF commander in the Region or his representative, specifically:

On the said date, in or around Mazra'ah Qabilah, the Defendant gave Hasan Ladadweh a handgun without the authorization of the IDF commander of the region or his representative.

16

[cut off]                    To 0046111741        P 18/33

SHATSKY- JD01577-T                                              CONFIDENTIAL

**Fifty-seventh Count:**

**Nature of the Offense:** Providing a service to an unlawful association, an offense pursuant to Regulations 84 and 85(1)(c) of the Defense (Emergency) Regulations, 1945.

**Details of the Offense:** The above-named Defendant, within the Region, on or around 04.18.2006, did some kind of work or provided some kind of service for an unlawful association, specifically:

On the above-stated date, in or around Mazra'ah Qabilah, the Defendant met with Hasan Ladadweh.  The latter told the Defendant about his contacts with Hamas through Rami Abu Ri'ash, who thought that they were with the Gaza Strip The Defendant suggested to the above-named Hasan to work with him instead of with the activists from the Gaza Strip and Hasan agreed to this. The Defendant said that at the moment the goal of the military cells has to be kidnappings and not suicide terror attacks.

The Defendant told the above-named Hasan that he had come to his house in possession of a satchel of weapons and asked Hasan to use the computer in his house. Hasan agreed to this and afterwards the Defendant used the Defendant's computer and a portable memory card he had brought with him and, using the computer, printed out several documents that contained information about the activity of Hamas during the elections, the political status of Hamas and instructions regarding successful recruitment of a military cell. In addition, the Defendant copied to the portable memory card a document regarding an operative plan to kidnap Israeli civilians that included a list of people who could be kidnapping targets.

Afterwards, the Defendant and the above-named Hasan made sure to hide the satchel with the weapons in the yard of Hasan's house. The Defendant told Hasan that the weapons were meant for a military cell he would be establishing.

A short time later, IDF forces burst into the above-named Hasan's house but the Defendant and Hasan managed to flee and escaped together to the Iskan Region.

**Fifty-eighth Count:**

**Nature of the Offense:** Weapons possession, an offense pursuant to Section 53(a)(1) of the Security Provisions (Judea and Samaria) Order (No. 378), 5730-1970.

**Details of the Offense:** The above-named Defendant, within the Region, starting at a date unknown to the prosecution and until 04.18.2006 or thereabouts, had in his possession a firearm, ammunition, bomb, hand grenade, or explosive or incendiary device, instrument or object or thing intended or liable to cause death or serious injury, without a permit issued by or on behalf of a military commander, specifically:

During the above-stated period, the Defendant had in his possession a satchel which held the following weapons:

- 3 Kalachnikov assault rifles
- 5 empty cartridges
- 125 9mm bullets

**Fifty-ninth Count:**

**Nature of the Offense:** Weapons possession, an offense pursuant to Section 53(a)(1) of the Security Provisions (Judea and Samaria) Order (No. 378), 5730-1970.

**Details of the Offense:** The above-named Defendant, within the Region, starting at a date unknown to the prosecution and until 05.23.2006 or thereabouts, had in his possession a firearm, ammunition, bomb, hand grenade, or explosive or incendiary device, instrument or object or thing intended or liable to cause death or serious injury, specifically, without a permit issued by or on behalf of a military commander, specifically:

During the above-stated period, the Defendant had in his possession a satchel which held the following weapons:

- A revolver
- A Smith & Wesson handgun

- A Kalachnikov assault rifle
- A cartridge
- 54 bullets

17

[cut off] Yhouda        To 0046111741        P 19/33

SHATSKY- JD01578-T                                        CONFIDENTIAL

SHATSKY-JD01579-T                                                                        CONFIDENTIAL

Page: 18/29            To: 022954953          046111741        From:ADV-SALH-M        13-MAR-2011 17:19

**Sixtieth Count: (Police File 10283/01 Zion)**

**Nature of the Offense:** Intentionally causing death, an offense pursuant to Section 51(a) of the Security Provisions (Judea and Samaria) Order (No. 378), 5730-1970, and Section 14(a)(2) of the Criminal Liability (Judea and Samaria) Order (No. 225), 5728-1968.

**Details of the Offense:** The above-named Defendant, variously inside and outside the Region, on or around 12.01.2001, intentionally caused the death of another, specifically:

1. In October 2001 or thereabouts, Jamal Mohamed Farah Tawil (hereinafter: Jamal) contacted the Defendant and noted to him that there were two young men (hereinafter: Osama Mohamed Bahr and Nabil Mahmoud Jamil Halabiyeh) who had contacted him and were interested in taking part in Hamas military activity during the intifada. Jamal asked the Defendant if there was someone who could meet with them on the subject. The Defendant asked Jamal to inform one of the young men to come to a meeting with them in a place close to the hospital in Ramallah and even set a day and time for this meeting.

2. Afterwards, the Defendant contacted his friend, a senior Hamas activist, Saleh Telahmeh (hereinafter: Saleh), and updated him regarding the request of Osama Mohamed Bahr and Nabil Mahmoud Jamil Halabiyeh. The Defendant sent Saleh to the said meeting.

3. Upon his return from the meeting, Saleh noted to the Defendant that he had met with Osama Mohamed Bahr and updated him that the latter and Nabil Mahmoud Jamil Halabiyeh were interested in executing a suicide terror attack. Saleh and the Defendant discussed the issue and thought that in the long run, Hamas would benefit more if Osama Mohamed Bahr and Nabil Mahmoud Jamil Halabiyeh would help them with other issues, such as: gathering intelligence, since the two of them were Jerusalem residents, rather than sending them to execute a suicide terror attack.

4. Saleh updated the Defendant that he had met Osama Mohamed Bahr and Nabil Mahmoud Jamil Halabiyeh again and had tried to persuade them not to execute a suicide terror attack for the above-stated reason, but without success. Saleh noted to the Defendant that Osama Mohamed Bahr and Nabil Mahmoud Jamil Halabiyeh were determined to execute a double suicide terror attack in the center of Jerusalem in a place they knew, and that they knew what was the best time to execute the terror attack. The Defendant said in reaction to Saleh that he preferred that each one execute a separate terror attack several days apart and thus it would be considered two terror attacks that the organization had carried out.

5. Afterwards, Saleh updated the Defendant that Osama Mohamed Bahr and Nabil Mahmoud Jamil Halabiyeh refused to execute the terror attacks separately, as per the Defendant's said suggestion.

6. After the death of Hamas activist Mahmoud Abu Hanoud in the second half of October 2001, Saleh and the Defendant decided to send Osama Mohamed Bahr and Nabil Mahmoud Jamil Halabiyeh to execute a suicide terror attack together as revenge for his death.

7. For the purpose of executing the terror attack, Saleh and the Defendant informed Abdullah Ghaleb Abdullah Barghouti (hereinafter: Abdullah) via contact person Sayyid Abdel Karim Khadr Sheikh-Qasem, code-named Salah 2 (hereinafter: Salah 2) about the readiness of Osama Mohamed Bahr and Nabil Mahmoud Jamil Halabiyeh to execute a double suicide terror attack and requested that Abdullah construct explosive belts for them for this purpose. Abdullah agreed to do this.

8. Afterwards, Abdullah made an "Umm al-Abd" type of explosive from the raw material H2O2.

9. Abdullah constructed three explosive devices from the above-named explosives. Abdullah put the first explosive device into a computer box. He constructed the second explosive device in the shape of a suicide belt, while he put the third explosive device into a black cloth satchel. In addition to the above-named explosive, Abdullah put into the said explosive devices metal fragments consisting, among other things, of nails and nuts, in order to increase the intensity of the impact when they exploded. Abdullah attached activation mechanisms to all three

explosive devices, with the explosive devices in the shape of an explosive belt and in the computer box activated by pressing the activation switch, while the explosive device that was hidden inside the cloth black satchel activated via a stopwatch. Likewise, Abdullah put into the said explosive devices poisonous material in order to make the devices even deadlier.

10. Abdullah gave the three said explosive devices to Salah 2 so that the latter would could transfer them to Hamas activists who would use them to execute the planned terror attack. According to the plan, the double suicide terror attack would be combined with a car bomb that would explode via the explosive device that Abdullah had put into the black cloth satchel, as stated above.

11. Afterwards, the above-named explosive devices were transferred to Osama Mohamed Bahr and Nabil Mahmoud Jamil Halabiyeh and the explosive device hidden in the black cloth satchel was secreted in a blue-colored Opel Cadet vehicle, license plate number 47-749-87.

18

[cut off] Yhouda            To 0046111741            P 20/33
SHATSKY- JD01579-T                                                        CONFIDENTIAL

SHATSKY-JD01580-T

CONFIDENTIAL

12. On 12.01.2001, around 23:36, at or around the entrance to Ben Yehuda Street from Zion Square in Jerusalem, the suicide bomber Osama Mohamed Bahr activated the explosive device that had been constructed by Abdullah and hidden in a computer box as stated above, with the intention of causing the death of as many people as possible. The above-named explosive device detonated.

13. On the same day, at approximately the above-named time, at the junction of Ben Yehuda and Luntz Streets in Jerusalem or thereabouts (a distance of just a few meters from the explosion of the first device), the second suicide bomber, Nabil Mahmoud Jamil Halabiyeh, activated the explosive device that had been constructed by Abdullah in the shape of an explosive belt as stated above, with the intention of causing the death of as many people as possible. The above-named explosive device detonated.

14. On the same day, a few minutes after the two above-named suicide bombers activated the above-named explosive devices, the third explosive device, which had been hidden in a black cloth satchel, as stated above, was activated. The third explosive device was activated in an Opel Cadet vehicle, license plate number 47-749-87, which was parked on Rabbi Kook Street near Yaffo Street in Jerusalem (a distance of a few dozen meters from the site of the explosions of the two above-named explosive devices). The above-named explosive device was activated with the intention of causing the death of as many people as possible..

15. As a result of the detonation of the three above-named explosive devices, which were detonated as described above, 11 people were killed and approximately 191 people were injured, as will be detailed in the following Counts of the indictment.

16. With his actions as described above, the above-named Defendant intentionally caused the death of 18-year-old **Yosef El-Ezra of blessed memory**, who was killed as a result of the detonation of the explosive devices in central Jerusalem as described above.

**Sixty-first Count: (Police File 10283/01 Zion)**
**Nature of the Offense:** Intentionally causing death, an offense pursuant to Section 51(a) of the Security Provisions (Judea and Samaria) Order (No. 378), 5730-1970, and Section 14(a)(2) of the Criminal Liability (Judea and Samaria) Order (No. 225), 5728-1968.
**Details of the Offense:** The above-named Defendant, on the date and under the circumstances described in the sixtieth Count of the indictment, intentionally caused the death of another, specifically:
On the date and under the circumstances described above, the Defendant intentionally caused the death of **Assaf Avitan of blessed memory**.

**Sixty-second Count: (Police File 10283/01 Zion)**
**Nature of the Offense:** Intentionally causing death, an offense pursuant to Section 51(a) of the Security Provisions (Judea and Samaria) Order (No. 378), 5730-1970, and Section 14(a)(2) of the Criminal Liability (Judea and Samaria) Order (No. 225), 5728-1968.
**Details of the Offense:** The above-named Defendant, on the date and under the circumstances described in the sixtieth Count of the indictment, intentionally caused the death of another, specifically:
On the date and under the circumstances described above, the Defendant intentionally caused the death of **Guy Vaknin of blessed memory**.

**Sixty-third Count: (Police File 10283/01 Zion)**
**Nature of the Offense:** Intentionally causing death, an offense pursuant to Section 51(a) of the Security Provisions (Judea and Samaria) Order (No. 378), 5730-1970, and Section 14(a)(2) of the Criminal Liability (Judea and Samaria) Order (No. 225), 5728-1968.

**Details of the Offense:** The above-named Defendant, on the date and under the circumstances described in the sixtieth Count of the indictment, intentionally caused the death of another, specifically:

On the date and under the circumstances described above, the Defendant intentionally caused the death of **Yoni Korganov of blessed memory**.

**Sixty-fourth Count: (Police File 10283/01 Zion)**

**Nature of the Offense:** Intentionally causing death, an offense pursuant to Section 51(a) of the Security Provisions (Judea and Samaria) Order (No. 378), 5730-1970, and Section 14(a)(2) of the Criminal Liability (Judea and Samaria) Order (No. 225), 5728-1968.

**Details of the Offense:** The above-named Defendant, on the date and under the circumstances described in the sixtieth Count of the indictment, intentionally caused the death of another, specifically:

On the date and under the circumstances described above, the Defendant intentionally caused the death of **Yaakov Yisrael Danino of blessed memory**.

19

[cut off] Yhouda          To 0046111741          P 21/33

SHATSKY- JD01580-T

CONFIDENTIAL

SHATSKY-JD01581-T                                                          CONFIDENTIAL

Page: 20/29          To: 022954953          046111741          From:ADV-SALH-M          13-MAR-2011 17:20

**Sixty-fifth Count: (Police File 10283/01 Zion)**

**Nature of the Offense:** Intentionally causing death, an offense pursuant to Section 51(a) of the Security Provisions (Judea and Samaria) Order (No. 378), 5730-1970, and Section 14(a)(2) of the Criminal Liability (Judea and Samaria) Order (No. 225), 5728-1968.

**Details of the Offense:** The above-named Defendant, on the date and under the circumstances described in the sixtieth Count of the indictment, intentionally caused the death of another, specifically:

On the date and under the circumstances described above, the Defendant intentionally caused the death of **Michael Dahan of blessed memory**.

**Sixty-sixth Count: (Police File 10283/01 Zion)**

**Nature of the Offense:** Intentionally causing death, an offense pursuant to Section 51(a) of the Security Provisions (Judea and Samaria) Order (No. 378), 5730-1970, and Section 14(a)(2) of the Criminal Liability (Judea and Samaria) Order (No. 225), 5728-1968.

**Details of the Offense:** The above-named Defendant, on the date and under the circumstances described in the sixtieth Count of the indictment, intentionally caused the death of another, specifically:

On the date and under the circumstances described above, the Defendant intentionally caused the death of**Golan Turgeman of blessed memory**.

**Sixty-seventh Count: (Police File 10283/01 Zion)**

**Nature of the Offense:** Intentionally causing death, an offense pursuant to Section 51(a) of the Security Provisions (Judea and Samaria) Order (No. 378), 5730-1970, and Section 14(a)(2) of the Criminal Liability (Judea and Samaria) Order (No. 225), 5728-1968.

**Details of the Offense:** The above-named Defendant, on the date and under the circumstances described in the sixtieth Count of the indictment, intentionally caused the death of another, specifically:

On the date and under the circumstances described above, the Defendant intentionally caused the death of **Adam Weinstein of blessed memory**.

**Sixty-eighth Count: (Police File 10283/01 Zion)**

**Nature of the Offense:** Intentionally causing death, an offense pursuant to Section 51(a) of the Security Provisions (Judea and Samaria) Order (No. 378), 5730-1970, and Section 14(a)(2) of the Criminal Liability (Judea and Samaria) Order (No. 225), 5728-1968.

**Details of the Offense:** The above-named Defendant, on the date and under the circumstances described in the sixtieth Count of the indictment, intentionally caused the death of another, specifically:

On the date and under the circumstances described above, the Defendant intentionally caused the death of **Moshe Yedid-Levy of blessed memory**.

**Sixty-ninth Count: (Police File 10283/01 Zion)**

**Nature of the Offense:** Intentionally causing death, an offense pursuant to Section 51(a) of the Security Provisions (Judea and Samaria) Order (No. 378), 5730-1970, and Section 14(a)(2) of the Criminal Liability (Judea and Samaria) Order (No. 225), 5728-1968.

**Details of the Offense:** The above-named Defendant, on the date and under the circumstances described in the sixtieth Count of the indictment, intentionally caused the death of another, specifically:

On the date and under the circumstances described above, the Defendant intentionally caused the death of **Nir Haftzadi of blessed memory**.

**Seventieth Count: (Police File 10283/01 Zion)**

**Nature of the Offense:** Intentionally causing death, an offense pursuant to Section 51(a) of the Security Provisions (Judea and Samaria) Order (No. 378), 5730-1970, and Section 14(a)(2) of the Criminal Liability (Judea and Samaria) Order (No. 225), 5728-1968.

**Details of the Offense:** The above-named Defendant, on the date and under the circumstances described in the sixtieth Count of the indictment, intentionally caused the death of another, specifically:

On the date and under the circumstances described above, the Defendant intentionally caused the death of **Ido Cohen of blessed memory**.

**Seventy-first Count: (Police File 10283/01 Zion)**

**Nature of the Offense:** Attempt to intentionally cause death, an offense pursuant to Section 51(a) of the Security Provisions (Judea and Samaria) Order (No. 378), 5730-1970, and Sections 14(a), 19 and 20 of the Criminal Liability (Judea and Samaria) Order (No. 225), 5728-1968.

**Details of the Offense:** The above-named Defendant, variously inside and outside the Region, on or around 12.01.2001, attempted to intentionally cause the death of another, specifically:

The above-named Defendant, at the time and under the circumstances stated in the sixtieth Count of the indictment, with his actions as described in the sixtieth Count of the indictment, attempted to cause the death of as many people as possible. As a result of the detonation of the explosive devices that were activated as described in the sixtieth Count of the indictment, approximately **191 people** were injured.

20

[cut off]                    To 0046111741        P 22/33
SHATSKY- JD01581-T

                                                        CONFIDENTIAL

CONFIDENTIAL

**Witnesses for the Prosecution:**

1. Code-named "Allan"
2. Code-named "Yaron"
3. Code-named "Nurit"
4. Code-named "Abu Yousef"
5. Mohammed Hasan Ahmad Arman, ID No. Redacted 6259 (sentenced)
6. Abdullah Ghaleb Abdullah Barghouti, Jordanian passport Redacted 1198 (sentenced)
7. Walid Abdel Aziz Abdel Hadi Anjas, ID No. Redacted 8108 (sentenced)
8. Hudeifa Ibrahim Abdel Jalil Anjas, ID No Redacted 6538 (sentenced)
9. Wael Mahmoud Mohamed Ali Qasem, ID No. Redacted 2755 (sentenced)
10. Wisam Sa'id Musa Abbasi, ID No. Redacted 4403 (sentenced)
11. Mohamed Ishaq Awda, ID No. Redacted 1302 (sentenced)
12. Ala'a A-Din Mahmoud Abbasi, ID No. Redacted 4818. (sentenced).
13. Aslam Hasan Jamil Hamed, ID No. Redacted 7933. (sentenced).
14. Abdullah Isma'il Mohamed Hamed (sentenced).
15. Ribhi Ribhi Abdel Majid Hazaneh, ID No. Redacted 4466 (sentenced)
16. Hasan Abdel Rahman Hasan Ladadweh, ID No. Redacted 3486 (sentenced).
17. Adv. St. Sergeant-Major Khaled Sarkhan, Personal ID No. Redacted 1786, Coordination and Liaison Office [edits action report+seizure and marking minutes +clarification minutes].
18. Adv. St. Sergeant-Major David Cohen, Personal ID No. Re 3308, Benjamin Forensics Unit [exhibit chain+ exhibit chain report clarification].
19. Tzvi Sadeh, Benjamin Station [exhibit chain+edits exhibits delivery report].
20. Eyal Shahar, IDF (details in the prosecution file).
21. Meir Vanunu, Personal ID No. Reda 1849, Hebron Police (submits exhibits delivery to weapons lab report).
22. Sergeant-Major Maxim Gelfand, Personal ID No. Redacted 7119, in charge of Benjamin armory, IDF (exhibit chain).
23. Major Avinoam Betzalel, Personal ID No. Redacted 6557, IDF (submits seizure report).
24. Sr. Master Sergeant Ziva Hoter, Personal ID No. Reda 2699, Forensics Unit (submits acceptance of exhibits for examination report).
25. Exhibits Registration Card 277/06 Benjamin.
26. Avi Kaufman, weapons lab, national headquarters (edits expert opinion from 06.11.2006).
27. First Sergeant Yitzhak Yakovof, Personal ID No. Redact 8358 (takes the Defendant's statement from 07.18.2006)
28. Jamal Mohamed Farah Tawil, ID No. Redacted 0271 (details are in the prosecution file).

**(Police File 268/02 Shafat**

29. Eyal Timor (details are in the prosecution file).
30. Sergei Tzaliban (details are in the prosecution file).
31. Chief Inspector Igor Peckerman, Personal ID No. Reda 1604, Bomb Department (submits expert opinion, submits seizure and marking report)
32. Sarah Abramowitz-Bar, Forensics Unit (submits expert opinion)
33. Exhibits Registration Card 183/02

**(Police File 1512/02 Moriah**

34. Daniel Turgeman (details are in the prosecution file)
35. Mordechai (Motti) Mizrachi (details are in the prosecution file)
36. Amir Moshe (details are in the prosecution file)
37. Ronen Mordechai (details are in the prosecution file)
38. Qawasmeh Qauri (details are in the prosecution file)
39. Avigayil Chen  (details are in the prosecution file)
40. Michal Rothschild  (details are in the prosecution file)
41. Dana Haimson (details are in the prosecution file)
42. Roey Bitton (details are in the prosecution file)

[cut off]

21

To 0046111741

P 23/33

SHATSKY- JD01582-T

CONFIDENTIAL

# Original

CONFIDENTIAL

SHATSKY-JD01550



**CICR**

123981

1383

## TO WHOM IT MAY CONCERN

This attestation is valid only if the English and Arabic parts match each other

According to the information received from the Israeli Authorities, the International Committee of the Red Cross attests that:

Mr:   **IBRAHIM JAMIL ABDELGHANI HAMED**

From:   *RAMALLAH*                                       ID NO: Redacted 0886

Was arrested by the Israeli Authorities on (dd/mm/yyyy):   **23.05.2006**

He is to date:  Sentenced

Length of sentence / administrative period: life sentence

He/She was released on (dd/mm/yyyy): XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX



**CICR**

إلى من يهمه الأمر

هذه الشهادة سارية المفعول فقط في حالة تطابق بياناتها باللغتين العربية والإنجليزية

استنادا إلى المعلومات الواردة من السلطات الإسرائيلية، تشهد اللجنة الدولية للصليب الأحمر بأن:

السيد/ة الآنسة  _____ ابراهيم جميل، عبدالغني حامد _____

من _____ رام الله _____ هوية رقم _____ Redacted .٨٨٦

كان/ت قد إعتقل/ت من قبل السلطات الإسرائيلية في يوم _____ ٢٣ / شهر _____ آيار / سنة _____ ٢٠٠٦

وهو/هي في هذا التاريخ : ينتظر المحاكمة _____ محكوم/ة _____ x _____ إداري _____

محكوم/ة أو إداري لمدة _____ مؤبـد _____

وهو/هي أطلق سراحة/ها في يوم _____ xx / شهر _____ xx / سنة _____ xx

Date:   **13.08.2013**
التاريخ

Place:   **RAMALLAH/NA**
المكان

ILJ-072662

FREDERIQUE DESC...
ICRC Delegate
ممثل مندوب اللجنة

CONFIDENTIAL

SHATSKY-JD01550

CONFIDENTIAL

SHATSKY-JD01551



الى لكرم عبدالفناعي

123981

1383

## TO WHOM IT MAY CONCERN

## CICR This attestation is valid only if the English and Arabic parts match each other

According to the information received from the Israeli Authorities, the International Committee of the Red Cross attests that:

Mr:   **IBRAHIM JAMIL ABDELGHANI HAMED**

From:   *RAMALLAH*                          ID NO: Redacted0886

Was arrested by the Israeli Authorities on (dd/mm/yyyy):   **23.05.2006**

He is to date:  Sentenced

Length of sentence / administrative period: life sentence

He/She was released on (dd/mm/yyyy): XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX



إلى من يهمه الأمر

## CICR هذه الشهادة سارية المفعول فقط في حالة تطابق بياناتها باللغتين العربية والإنجليزية

استنادا إلى المعلومات الواردة من السلطات الإسرائيلية، تشهد اللجنة الدولية للصليب الأحمر بأن:

السيد/ة الآنسة ___ ابـراهيم جميل عبدالغني حـامـد ___

مـن ___ راماللـــه ___ هوية رقم Redacted. ٨٨٦ ___

كان/ت قد إعتقل/ت من قبل السلطات الإسرائيلية في يوم ___ / شهر ٢٣ آبـار / سنة ٢٠٠٦

وهو/هي في هذا التاريخ : ينتظر المحاكمة ___ محكوم/ة × ___ إداري ___

محكوم/ة أو إداري لمدة ___ مــؤبـــد ___

وهو/هي أطلق سراحة/ها في يوم ___ / شهر xx / سنة xx

Date:   **13.08.2013**
التـاريـخ

Place:   **RAMALLAH/NA**
المكـان

FREDERIQUE DESGRAIS
ICRC Delegate
توقيع مندوب اللجنة

**ILJ-072662**

CERTIFIED UPDATE
1 3 -08- 2013
International Committee
of the Red Cross

CONFIDENTIAL

SHATSKY-JD01551

CONFIDENTIAL

SHATSKY-JD01557

123981



## TO WHOM IT MAY CONCERN

**CICR** This attestation is valid only if the English and Arabic parts match each other

According to the information received from the Israeli Authorities, the International Committee of the Red Cross attests that:

*1383*

Mr:   **IBRAHIM JAMIL ABDELGHANI HAMED**

From:   **RAMALLAH**                          ID NO: Redacted 886

Was arrested by the Israeli Authorities on (dd/mm/yyyy):   **23.05.2006**

He is to date:  Sentenced

Length of sentence / administrative period: life sentence

He/She was released on (dd/mm/yyyy): XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX



إلى من يهمه الأمر

**CICR** هذه الشهادة سارية المفعول فقط في حالة تطابق بياناتها باللغتين العربية والإنجليزية

استنادا إلى المعلومات الواردة من السلطات الإسرائيلية، تشهد اللجنة الدولية للصليب الأحمر بأن:

السيد/ة الآنسة:  ابـــــراهيم جميل  عبدالغني  حــامـــد

من ـــــــــــــــــــ رام الله ـــــــــــــــ  هوية رقم Redacted ٨٨٦

كان/ت قد إعتقل/ت من قبل السلطات الإسرائيلية في يوم ـــــ / شهر ـــــ ٢٣  آيار / سنة ـــــ ٢٠٠٦

وهو/هي في هذا التاريخ : ينتظر المحاكمة ـــــ محكوم/ة × ـــــ إداري ـــــ

محكوم/ة أو إداري لمدة ـــــــــ مـــؤبـــد ـــــــ

وهو/هي أطلق سراحة/ها في يوم ـــــ / شهر ×× ـــــ / سنة ×× ـــــ

Date:   **13.08.2013**
التــاريــخ

Place:   **RAMALLAH/NA**
المكـــان

ILJ-072662

CERTIFIED UPDATE
2 0 -07- 2017
International Committee
of the Red Cross

FREDERIQUE DESGRAIS
ICRC Delegate
توقيع مندوب اللجنة

CONFIDENTIAL

SHATSKY-JD01557



CONFIDENTIAL

SHATSKY-JD01559

Palestinian National Authority     السلطة الوطنية الفلسطينية

Ministry of Detainees & Ex-detainees Affairs     وزارة شـؤون الأسـرى والمحـررين

Gen Dep. Detainees & Ex-detainees     الإدارة العامة لشؤون الأسرى والمحررين



٣. بيانات الوضع الاجتماعي:

| | ☐ أرمل | ☐ مطلق | ☑ متزوج | ☐ أعزب | الحالة الاجتماعية: |
|---|---|---|---|---|---|

تعبئة بيانات الزوج/ة والأبناء     في حالة متزوج/ة:

| تاريخ عقد الزواج | ١٩٩٧/٩/٢٨ | | رقم هوية الزوج/ة: |
|---|---|---|---|

| عدد الأولاد: | ٢ | اسم الزوج/ة | اسماء عبد الرزاق مصلح |
|---|---|---|---|

بيانات الأبناء من الزوجة الأولى:(الأبناء الذكور أقل من ١٨ عام، والبنات غير المتزوجات بغض النظر عن أعمارهن)

| المؤهل العلمي | الحالة الاجتماعية | تاريخ الميلاد | الاسم | الرقم |
|---|---|---|---|---|
| | | Redacted | محمد | ١. |
| | | Redacted ١٩٩٨ | كريم | ٢. |
| | | | | ٣. |
| | | | | ٤. |
| | | | | ٥. |
| | | | | ٦. |
| | | | | ٧. |
| | | | | ٨. |
| | | | | ٩. |

٤. بيانات الوكيل "المستفيد":

| ٥ ٤ ٨ ٠ Redacted | | رقم الهوية "المستفيد": |
|---|---|---|

| محمد جميب عبد الغني حامد | ٢١ | صلة القرابة: | اسم الوكيل "المستفيد": |
|---|---|---|---|

| Redacted | مدة سريان الوكالة: | / / | تاريخ الوكالة (إن وجدت): |
|---|---|---|---|

| Redacted | فرع البنك: | Redacted | البنك: |
|---|---|---|---|

| | | Redacted | رقم الحساب: |
|---|---|---|---|

| | رقم الهاتف النقال: | | رقم الهاتف الأرضي: |
|---|---|---|---|

| | التجمع السكاني: | رام الله | المحافظة: | العنوان الدائم للمستفيد: |
|---|---|---|---|---|

| | | | ملاحظات: |
|---|---|---|---|

| | | ملاحظات مقدم الطلب: |
|---|---|---|

| أنا الموقع أدناه أقر وأشهد بأن كافة المعلومات الواردة في الطلب صحيحة وأتحمل مسؤوليتها. | إقــرار: |
|---|---|

| | توقيع مقدم الطلب: |
|---|---|

2

CONFIDENTIAL
SHATSKY-JD01562

15-MAR-2011 17:12 From:ADV-SA_H-M        046111741        To:022954953        Page 17/23

צבא                    המשפט        הצבאי        לישראל

בבית                   ה    ד    ה          ח           4446/05
המשפט                  הרכב                              3181/05
נ.פני                                                    268/תיב שפט
                                                         1512/תב מוריה
                                                         9638/תב רשל"צ
                                                         5601/תב רשל"צ
                                            Redacted     2881/תב גליילות
                                                         3975/תב לוד
                                                         9913/תב רחובות
                                                         1197/שם שלם
                                                         1444/סם חברון
                                                         10283/11 ציון

המשפט שבין:                                              המאשים
ה ממונה הצבאי

נגד:-

אברהים ג'מיל ע'אני תאמר (המכונה "אמו עליי, "עלאאה ג'י ראו "שייח")
ת/ז Redacted 0886 יליד 65 תושב טולוואד
עוצר מיום 23.5.05

כתב אישום מתוקן

הנאשם הנ"ל מאשם בזאת בעבירות הבאות:

פרט ראשון:
מהות העבירה: חברות ופעילות בהתאחדות בלתי מותרת, עבירה לפי תקנה ; 18)1א( לתקנות
ההגנה (שעת חירום), 1945.
פרטי העבירה: הנאשם הנ"ל, באיזור, חתל ממועד אשר אינו ידוע לתביעה ולכל המאוחר החל
משנת 1999 או ממועד הסמוך לכך ועד ליום מעצרו, היה חבר או פעל כחבר בהתאחדות בלתי
מותרת, דהיינו:
במהלך התקופה האמורה לעיל היה הנאשם חבר ב"תנדוי עז אדין אלקאסאם", הזרוע הצבאית של
ארגון החמאס שהוא התאחדות בלתי מותרת.
במסגרת חברותו בארגון פעל הנאשם כמתואר בפרטי האישום הבאים.

פרט שני:
מהות העבירה: נשיאת משרה בהתאחדות בלתי מותרת, עבירה לפי תקנה 85)נ.(ב.) לתקנות חזגנה
(שעת חירום), 1945.
פרטי העבירה: הנאשם הנ"ל, באיזור, במהלך תקופת האמורה בפרט מאשום  הקודם ניהל, או
עזר לתהנלת והתאחדות בלתי מותרת, או החזיק במשרה או עמדה כל שהוא ב"התאחדות בלתי
מותרת, דהיינו :
במהלך תקופה האמורה לעיל, שימש הנאשם כאחראי "גגדדי עז אדין אלקאסאם", הזרוע
הצבאית של ארגון החמאס, שהוא התאחדות בלתי מותרת ברמאללה.
במסגרת זו השתמש הנאשם בכינויים "אבו עליי, "יצלאחו "וישייח".

1

08046111741  O.1                    Aneda IPA0U-  ADV...

**פרט שלישי:**
**מהות העבירה:** ביצוע שירות עבור התאחדות בלתי מותרת, עבירה לפי תקנה 85(1)(א) לתקנות ההגנה (שעת חירום), 1945.
**פרטי העבירה:** הנאשם הנ"ל, באיזור, בסוף שנת 2001 או במועד הסמוך לכך, עשה עבודה כל שהוא או ביצע שירות כל שהוא בשביל התאחדות בלתי מותרת, דהיינו: יגדודי חללי אל אקצא"י, הזרוע הצבאית של ארגון התמאס שהוא התאחדות בלתי מותרת, גיום הנאשם לארגון את מחמוד חסן אחמד ערטמה, במעמד הגיוס העניק הנאשם למחמוד עמרחן הנ"ל את הכינוי האידיגוי "אבו מוצאב" [כחיל] ייאבו מוצאב"י, עודדן אותו כי פעילותו תכלול ביצוע פיגועים נגד מדינת ישראל וביקש ממנו לגייס אנשים נוטפים לארגון. כמו כן מצאה אותו הנאשם לשמש כאיש קשר בינו לבין חוליית חמאט, המורכבת מתושבי ירושלים (להלן חוליית סילואן).

**פרט רביעי:**
**מהות העבירה:** ביצוע שירות עבור התאחדות בלתי מותרת, עבירה לפי תקנה 85(1)(א) לתקנות ההגנה (שעת חירום), 1945.
**פרטי העבירה:** הנאשם חנ"ל, באיזור, החל מסוף שנת 2001 ועד לחודש אוגוסט 2005, עשה עבודה כל שהוא או ביצע שירות כל שהוא בשביל התאחדות בלתי מותרת, דהיינו: הנאשם קבם במהלך התקופות האמורה לעיל, ברמאללה או במקום הסמוך לכך ועבור הנאשם ודי חודשי סכום של כ-1,500 דולר ארה"ב לייאבו מוצאבי" וחודר לו בכדי שעועדו לבאאל מחמוד מחמד-עלי קאטם, המכונה "אבו סעדי" (להלן "אבו סעדי"), ראש חוליית סילואן.

**פרט חמישי:**
**מהות העבירה:** סחר בציוד מלחמתי, עבירה לפי סעיף 2 לצו בדבר איסור סחר בציוד מלחמתי (יהודה והשומרון) (מסי' 243), תשכ"ח1968-.
**פרטי העבירה:** הנאשם הנ"ל, באיזור, בסוף שנת 2001 - תחילת שנת 2002 או במועד לכך, סחר או עסק בצורה אחרת בציוד מלחמתי ללא היתר חתום על-ידי מפקד האיזור או מטעמו, דהיינו: במועד האמור לעיל, ברמאללה או בסמוך לכך, נפגש הנאשם עם "אבו מוצאב" וביקש ממנו לחשיג עבור כלי נשק. "אבו מוצאב" פנה אל מחמוד לוטפי מחמד אשקר ובילקש כי האחרון ישיג עבורו כלי נשק.
לאחר מספר ימים, ברמאללה או בסמוך לכך, רכש "אבו מוצאב" מידי מחמוד אשקר רוטי"ר קלצ'ניקוב עם מחסנית ו3- כדורים תמורת 2,000 דינר ירדני, אשר אותם קיבל למטרה זו מהנאשם, ומסרם לו, וזאת ללא היתר ממפקד האיזור או מטעמו.

**פרט שישי:**
**מהות העבירה:** סחר בציוד מלחמתי, עבירה לפי סעיף 2 לצו בדבר איסור סחר בציוד מלחמתי (יהודה והשומרון) (מסי' 243), תשכ"ח1968-.
**פרטי העבירה:** הנאשם חנ"ל, באיזור, בסוף שנת 2001 - תחילת שנת 2002 או במ מעד לכך, סחר או עסק בצורה אחרת בציוד מלחמתי ללא היתר חתום על-ידי מפקד האיזור או מטעמו, דהיינו: במועד האמור לעיל, ברמאללה או בסמוך לכך, נפגש הנאשם עם "אבו מוצאב" וביקש עבורו כלי נשק נוסף. "אבו מוצאב" פנה בשנית אל מחמוד לוטפי מחמד אשקר ובילקש כי האחרון ישיג עבורו כלי נשק.
לאחר מספר ימים, ברמאללה או בסמוך לכך, רכש "אבו מוצאב" מידי מחמוד אשקר ר אקדח שחור עם מחסנית ובדורים תמורת 1,000 דינר ירדני, אשר אותם קיבל למטרה זו מהנאשם ומסרם לו, וזאת ללא היתר ממפקד האיזור או מטעמו.

**פרט שביעי:**
**מהות העבירה:** סחר בציוד מלחמתי, עבירה לפי סעיף 2 לצו בדבר איסור סחר בציוד מלחמתי (יהודה והשומרון) (מסי' 243), תשכ"ח1968-.
**פרטי העבירה:** הנאשם הנ"ל, באיזור, בסוף שנת 2001 - תחילת שנת 2002 או בסמוך לכך, סחר או עסק בצורה אחרת בציוד מלחמתי ללא היתר חתום על-ידי מפקד האיזור או מטעמו, דהיינו: הנאשם הנ"ל, במועד האמור, ברמאללה או בסמוך לכך, נפגש הנאשם עם "אבו מוצאב" וביקש ממנו לחפש עבור כלי אקדח נוסף. "אבו מוצאב" פנה אל מחמוד לוטפי מחמד אשקר, מזד לאחרון את האקדח חנ"ל ובקש שממחמוד אשקר יתקן אותו.
לאחר מספר ימים, ברמאללה או בסמוך לכך, מיחזר אשקר חזרי"ר לייאבו מוצאב:" את ואקדות הנ"ל. לאחר שתוקן אותו. "אבו מוצאב" שילם עבור ניתקון האקדח 300 דינר ירד'ני, אשר אותם קיבל למטרה זו מהנאשם ומסרם לו, וזאת ללא היתר ממפקד האיזור או מטעמו.

CONFIDENTIAL                                                                SHATSKY-JD01563

CONFIDENTIAL
SHATSKY-JD01564

15-MAR-2011 17:13 From:ADV-SALH-M        046111741        To:022954953        Page:3/23

**פרט שמיני:** מהות העבירה: ביצוע שירות עבור התאחדות בלתי מותרת, עבירה לפי תקנה i 8(1)(א) לתקנות
ההגנה (שעת חירום), 1945.

**פרטי העבירה:** הנאשם הנ"ל, באיזור, בתחילת שנת 2002 או במועד הסמוך לכך, עשה עבודה כל
שהוא או ביצע שירות כל שהוא בשביל התאחדות בלתי מותרת, דהיינו : "גדודי
אל אקצאם", ברמאללה או במקום הסמוך לכך, במסגרת חבריהו של הנאשם, העביר הנאשם
לאקצאם ברצונו כ-1600 ₪ זאת לצורך ביצוע פיגועים בשם ארגון החמאס".

**פרט תשיעי: (פ.א. 268/02 שכם)** גיסינו לגרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון
(יהודה והשומרון) (מס' 378), תשנ"ל 1970 וסעיפים 14(א)(2)(ב) 19- לצו בדבר כללי האחריות
לעבירה (יהודה והשומרון) (מס' 225), תשכ"ח 1968.

**פרטי העבירה:** הנאשם הנ"ל, הן באיזור והן מחוצה לו, בחודש 03.02.02 או במועד הסמוך לכך,
ניסה לגרום בכוונה למותו של אחר, דהיינו :

1.  בסוף חודש ינואר או במועד הסמוך לכך, נפגש הנאשם ברמאללה "אבו מ'אנז'", ומסר לו
    מטען תבלה בתוך קרטון מיץ. הנאשם ביקש "מאבו מראונ'י" להעביר את מנ על התבלה הנ"ל
    ליידי "אבו סעדי", על מנת שהאחרון ביחד חבריו חוליות סלחיו ינחו אותו כי ישלים וזאת על
    מנת לגרום למותם של אנשים רבים ככל האפשר. בתוך קרטון מיץ הניח הנ"ו: גם שלט רחוק,
    אשר באמצעותו נותן היה להפעיל את מטען התבלה הנ"ל.
2.  ביום 03.02.02 או במועד הסמוך לכך, נסע "אבו מואסא" עם מטען התבלה הנ"ל לבית אחואפה
    והעבירו לידי "אבו סעדי" על מנת שהאחרון ביחד עם חבריו יבצע באמצעותו את פיגוע וותופה
    המתוכנן. "אבו מואסא" אף הסביר ל"אבו סעדי" כיצד מפעילים את מטען וחונ לה הנ"ל.
3.  באותו היום, "אבו סעדי" וסאם סעדי עצאכ"ה הניחו את מטען התבלה הנ"ל בשבילה פסגת
    זאב ביריושלים ליד רכב חונה ברחוב סיירות דזיףים, לפתוצו על מנת לגרום
    למותם של אנשים רבים ככל האפשר. עקב תקלה טכנית מטען התבלה הנ"ל לא התפוצץ, אשר
    כליהם שעברו במקום שבו הונח מטען התבלה הנ"ל גילו אותו והזמינו כוחות משטרה, אשר
    פוצצו את מטען התבלה הנ"ל בפיצוץ מבוקר.
4.  "אבו סעדי" דיווח ל"אבו מואסא" כי מטען התבלה הנ"ל לא התפוצץ בער. שניסו להפעילו
    באמצעות השלט הנ"ל. "אבו מואסא" מסר ל"נאשם על אי-הצלחות הפיגוע הנ"ל.

**פרט עשירי: (פ.א. 1512/02 מוזיח)** גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ו ביטחון (יהודה
מהות העבירה: והשומרון) (מס' 378), תשנ"ל-1970, סעיף 14(א)(2) לצו בדבר כללי האחריות לעבירה (יהודה
והשומרון) (מס' 225), תשכ"ח-1968.

**פרטי העבירה:** הנאשם הנ"ל, הן באיזור והן מחוצה לו, ביום 09.03.02 או בכ.עד הסמוך לכך,
גרם בכוונה למותו של אחר, דהיינו :

1.  בתחילת חודש מרץ 2002, ברמאללה או בסמוך לכך, נפגש הנאשם עם עבדאללה עיאב
    עבדאלאה ברגותי, הממונה "החמ'מדסי" (לרלן) "ההמנ'נדסי") וביקש ממנו ליצער חגורת נפץ
    עבור מחבל מתאבד, על מנת שהאחרון יבצע פיגוע התאבדות בכוונה לגרום למותם של
    אנשים רבים ככל הניתן.
2.  "החמ'מדסי" הסכים לבקשתו של הנאשם ויצער, חגורת נפץ. חגורת הנפץ אשר וזרכבה
    מחגורת מבד דמוי עור, עליה הודבקו ברגים ובקבוקי שמנו מלאים בחומר נפץ.
    "החמ'מדסי" הרכיב גם ממננו הפעלת לחגורת הנפץ הנ"ל.
3.  לאחר ש"החמ'מדסי" סיים להכין את חגורת הנפץ העבירה באמצעות סיד עברים חדר
    שיתר-קאסם, המכונה "צלאם 2", איש חקשר של "נאשם את חגורת הנפץ וזאת לצורך
    וההוצאה לפועל של פיגוע התאבדות המתוכנן.
4.  באותה התקופה, ברמאללה או בסמוך לכך, נפגש הנאשם עם איש הקשר שלו לייחולייה
    סילמאו, "אבו מואאה" ומסר לו כי ברצונו להוציא לפועל פיגוע התא.בדות בתוך מדינת
    ישראל בכוונה לגרום למותם של אנשים רבים ככל האפשר, וזאת מנקם: על מותם של בני
    משפחתו אבו-קרוק ברמאללה.
5.  הנאשם מסר ל"אבו מואסא" כי ישנו אדם שמוכן לבצע פיגוע התאבדות וביקש ממנו כי
    תנה וב "אבו סעדי", ובכסף מאהאחרון לאתר מקום מתאים לביצוע פיגוע: ההתאבדות.
6.  "אבו מואסא" נפגש עם "אבו סעדי" ומסר לאחרון את בקשתו של הנ:אשם לאתר מקום
    בישראל המתאים לביצוע פיגוע ההתאבדות. לאחר מספר ימים "אבו" ועד" פנה אל "אבו

3

P.05/23        01 80461117d1        למחלה 10101 Bianc וmophenno

CONFIDENTIAL
13-MAR-2011 17:13 From:ADV-SALH-M          046111741                    To:022954953          SHATSKY-JD01565
                                                                                                Page:4/29

מוצאי" ומסר כי אותר מקום המתאים לביצוע פיגוע ההתאבדות המתוכ ן והוא - בית-
קפה "מומנטו", הנמצא ברחוב עזה בירושלים. "אבו סעדי", ביחד עם וסם סעזף מנסא
עבאסי ומחמד אסחאמ עזדה, ביצע סיורים באיזור בית-קפה "מומנטו" לצורך תכנון פיגוע
ההתאבדות. "אבו מוצאי" דיווח לנאשם אודות המקום שאותר עלי-ו "אבו טעז"
וחבריו.

7. ביום 08.03.02 או בסמוך לכך, יצא "אבו מוצאי" על מנת לבדוק את ה'דרך מרמאללה
לבית חנינא, אשר בה תכנו לחעביר ביום למחבל את המחבל המתאבד לביצוע פיגוע
ההתאבדות המתוכנן. "אבו מוצאי" יצא ביחד עם וליד עעויו ע'נאדי אנא אס מרמאללה
ונסע לבית חנינא לצורך בדיקת נוכחות כוחות הביטחון הישראליים בדרך האמורה. "אבו
מוצאי" וליד אנ'אס נכחו לדעת כי אין כוחות הביטחון בדרך האמורה.

8. לאחר מכן, "אבו מוצאי", ביחד עם וליד אנ'אס, נפגש ברמאללה, בעזרג מילות חקוד
שקיבל מהנאשם, עם פאד אסמאעיל אלחוראני, שהוא המחבל המתאבד ואשר היה אמור
לבצע את פיגוע ההתאבדות המתוכנ.

9. "אבו מוצאי" התקשר אל "אבו סעדי" ומסר לאחרון כי עליו לפגוש את פ.אד אלחוראני,
המחבל המתאבד שאמור לבצע את פיגוע ההתאבדות המתוכנ, בבי ת חנינא בשעה
22:00 ביום 09.03.02.

10. ביום שבת, 09.03.02, בסביבות השעה 20:00, ברמאללה או בסמוך לכך, נפגש הנאשם עם
"אבו מוצאי" עם פאד אלחוראני. הנאשם ופאד אלחוראני עזבו את מקום המפגש
למשך כחצי שעה על מנת שפוחד אלחוראני ילבש חגורת נפ.

11. לאחר מכן, "אבו מוצאי" וליד אנ'אס, ליו את פאד אלחוראני, אשר נ'א על גופו את
חגורת הנפ, לתחנת מוניות "קלנדיה" ברמאללה והעלוה את האחרון לרכ. הסעות שנסע
לבית חנינא. "אבו מוצאי", וליד אנ'אס ופאד אלחוראני נסעו ביחד לבית חנינא ברכ
הסעות. "אבו מוצאי" וליד אנ'אס הובילו את פאד אלחוראני למקום המפגש, אשר
אותו קבע "אבו מוצאי" עם "אבו סעדי".

12. "אבו סעדי" נפגש עם המחבל המתאבד, פאד אלחוראני, ולאחר מכן, ביחד
עם וסא עבאסי, הסיע את המחבל המתאבד לירושלים. "אבו סעדי" וסא עבאסי
הובילו את פאד אלחוראני לבית-קפה "מומנטו" הנמצא עזה בירושלים.

13. בסמוך לשעה 22:30, ביום 09.03.02 או במועד הסמוך לכך, פאד אלחורא'נ' אשר נשא על
גופו את חגורת הנפ, כאמור לעיל, נכנס אל תוך בית-קפה "מומנטו", אור ז'ה באותה
שעה חומר אדם, והפעיל את חגורת הנפ תי'ל בכוונה לגרום למות של ל שים רבים ככל
האפשר.

14. כתוצאה מפיצוץ חגורת הנפ כמותואר לעיל, נהרגו 11 אנשים, נפצעו 65 או שים ונגרם נזק
רב לרכוש.

15. במעשיו המתוארים לעיל, גרם הנאשם בכוונה למותו של אברהם רחמים ז"ל.

**פרט אחד עשר, (פ.א. 1512/02 מורייח)** לצו דבר הוראות ביטחון (יהודה
**מות העבירה:** גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר כללי האחריות (יהודה
והשומרון) (מס' 378), תשי"ל-1970 וסעיף 14א(א)(2) לצו בדבר כללי האחריות (יהודה
והשומרון) (מס' 225), תשכ"ח-1968.
**פרטי העבירה:** הנאשם תני'ל, במועד ובנסיבות המתוארות בפרט האישום העשירי, גרם בכוונה
למותו של אחר, דהיינו:
במועד ובנסיבות האמורות לעיל, גרם הנאשם בכוונה למותו של ניר בורוכוב ז"ל.

**פרט שניים עשר,** (פ.א. 1512/02 מורייח) לצו בדבר הוראות ביטחון (יהודה
**מות העבירה:** גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר כללי האחריות (יהודה
והשומרון) (מס' 378), תשי"ל-1970 וסעיף 14א(א)(2) לצו בדבר כללי האחריות (יהודה
והשומרון) (מס' 225), תשכ"ח-1968.
**פרטי העבירה:** הנאשם תני'ל, במועד ובנסיבות המתוארות בפרט האישום העשירי, גרם בכוונה
למותו של אחר, דהיינו:
במועד ובנסיבות האמורות לעיל, גרם הנאשם בכוונה למותו של לימור בן שוחט ז"ל.

4

CONFIDENTIAL                                                                SHATSKY-JD01565

CONFIDENTIAL

SHATSKY-JD01566
Page:5/25

<div dir="rtl">

<u>פרט שלושה עשר:</u> (פ.א. 1512/02 מוריה)

<u>מהות העבירה:</u> גרימת מוות בכוונה, עבירה לפי סעיף 51(א) ולפי הוראו  ביטחון (יהודה והשומרון) (מס' 378), ותשי"ל-1970 (וסעיף 14(א)(2) ולפי בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס' 225), תשכ"ח 1968-.

<u>פרטי העבירה:</u> הנאשם חייל, במועד ובנסיבות המתוארות בפרט האישום העשירי, גרם בכוונה למותו של אחר, דהיינו:
במועד ובנסיבות האמורות לעיל, גרם הנאשם בכוונה למותו של דן אימוני ז"ל.

<u>פרט ארבעה עשר:</u> (פ.א. 1512/02 מוריה)

<u>מהות העבירה:</u> גרימת מוות בכוונה, עבירה לפי סעיף 51(א) ולפי בדבר הוראו  ביטחון (יהודה והשומרון) (מס' 378), ותשי"ל-1970- וסעיף 14(א)(2) ולפי בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס' 225), תשכ"ח 1968.

<u>פרטי העבירה:</u> הנאשם חייל, במועד ובנסיבות המתוארות בפרט האישום העשירי, גרם בכוונה למותו של אחר, דהיינו:
במועד ובנסיבות האמורות לעיל, גרם הנאשם בכוונה למותו של דנית דגן ז"ל.

<u>פרט חמישה עשר:</u> (פ.א. 1512/02 מוריה)

<u>מהות העבירה:</u> גרימת מוות בכוונה, עבירה לפי סעיף 51(א) ולפי בדבר הוראו. ביטחון (יהודה והשומרון) (מס' 378), ותשי"ל1970- וסעיף 14(א)(2) ולפי בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס' 225), תשכ"ח 1968-.

<u>פרטי העבירה:</u> הנאשם חייל, במועד ובנסיבות המתוארות בפרט האישום העשי  ירי, גרם בכוונה למותו של אחר, דהיינו:
במועד ובנסיבות האמורות לעיל, גרם הנאשם בכוונה למותו של אורי פליקס ז"ל.

<u>פרט שישה עשר:</u> (פ.א. 1512/02 מוריה)

<u>מהות העבירה:</u> גרימת מוות בכוונה, עבירה לפי סעיף 51(א) ולפי בדבר הוראו. ביטחון (יהודה והשומרון) (מס' 378), ותשי"ל1970- וסעיף 14(א)(2) ולפי בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס' 225), תשכ"ח 1968-.

<u>פרטי העבירה:</u> הנאשם חייל, במועד ובנסיבות המתוארות בפרט האישום העשירי, גרם בכוונה למותו של אחר, דהיינו:
במועד ובנסיבות האמורות לעיל, גרם הנאשם בכוונה למותו של ברוך לרנר ז"ל.

<u>פרט שבעה עשר:</u> (פ.א. 1512/02 מוריה)

<u>מהות העבירה:</u> גרימת מוות בכוונה, עבירה לפי סעיף 51(א) ולצו בדבר הוראו. ביטחון (יהודה והשומרון) (מס' 378), ותשי"ל1970- וסעיף 14(א)(2) ולצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס' 225), תשכ"ח 1968-.

<u>פרטי העבירה:</u> הנאשם חייל, במועד ובנסיבות המתוארות בפרט האישום העשירי, גרם בכוונה למותו של אחר, דהיינו:
במועד ובנסיבות האמורות לעיל, גרם הנאשם בכוונה למותו של טלי אליהו ז"ל.

<u>פרט שמונה עשר:</u> (פ.א. 1512/02 מוריה)

<u>מהות העבירה:</u> גרימת מוות בכוונה, עבירה לפי סעיף 51(א) ולצו בדבר הוראו. ביטחון (יהודה והשומרון) (מס' 378), ותשי"ל1970- וסעיף 14(א)(2) ולצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס' 225), תשכ"ח 1968-.

<u>פרטי העבירה:</u> הנאשם חייל, במועד ובנסיבות המתוארות בפרט האישום העשירי, גרם בכוונה למותו של אחר, דהיינו:
במועד ובנסיבות האמורות לעיל, גרם הנאשם בכוונה למותו של לבנת דבש ז"ל.

<u>פרט תשעה עשר:</u> (פ.א. 1512/02 מוריה)

<u>מהות העבירה:</u> גרימת מוות בכוונה, עבירה לפי סעיף 51(א) ולצו בדבר הוראו. ביטחון (יהודה והשומרון) (מס' 378), ותשי"ל1970- וסעיף 14(א)(2) ולצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס' 225), תשכ"ח 1968-.

<u>פרטי העבירה:</u> הנאשם חייל, במועד ובנסיבות המתוארות בפרט האישום העשירי, גרם בכוונה למותו של אחר, דהיינו:
במועד ובנסיבות האמורות לעיל, גרם הנאשם בכוונה למותו של אורית אזרזיב ז"ל.

</div>

5

CONFIDENTIAL

SHATSKY-JD01566

CONFIDENTIAL

15-MAR-2011  17:14  From:ADU-SALH-M          046111741          To:022954953          SHATSKY-JD01567
                                                                                      Page:6/33

**פרט עשירים: (ס.א. 1512/02 מודית)**
מהות העבירה: גרימת מות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה
והשומרון) (מס' 378), תשל"ל-1970- וסעיף 14(א)(2) לצו בדבר כללי האחריות לעבירה (יהודה
והשומרון) (מס' 225), תשכ"ח 1968-.
פרטי העבירה: הנאשם הנ"ל, במועד ובנסיבות המתוארות בפרט האישום העשר רי, גרם בכוונה
למותו של אחר, דהיינו:
במועד ובנסיבות האמורות לעיל, גרם הנאשם בכוונה למותו של נאנאל כופבי ז"ל.

**פרט עשירים אחד: (ס.א. 1512/02 מודית)**
מהות העבירה: ניסיון לגרימת מות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון
(יהודה והשומרון) (מס' 378), תשל"ל-1970- וסעיפים 14(א), 19 ו-20 לצו בדבר כללי האחריות
לעבירה (יהודה והשומרון) (מס' 225), תשכ"ח-1968.
פרטי העבירה: הנאשם הנ"ל, במועד ובנסיבות המתוארות בפרט האישום חקו"ם, ניסה לגרום
בכוונה למותו של אחר, דהיינו:
במועד ובנסיבות המתוארות לעיל ניסה  הנאשם לגרום למותם של אזרחים רבים ככל האפשר.
כתוצאה מפיצוץ החבלה שחולקול כפי שתוואר בפרט האישום העשירי, נפצעו 6! בני אדם.

**פרט עשירים שניים**
מהות העבירה: ניסיון לגרימת מות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון
(יהודה והשומרון) (מס' 378), תשל"ל-1970- וסעיפים 14(א)(2), 19 ו-20 לצו בדבר כללי האחריות
לעבירה (יהודה והשומרון) (מס' 225), תשכ"ח 1968.
פרטי העבירה: הנאשם הנ"ל, באזור, בסוף חודש מרץ 2002 או בסמוך לכך, ניסה לגרום בכוונה
למותו של אחר, דהיינו:

1.   בסערד האמור לעיל, ברמאללה או במקום הסמוך לכך, נפגש הנאשם עם "אבן מועאזי" וביקש
     ממנו לפנותו, לפי מילות קוד, אדם, אשר אמור לבצע פיגוע התאבדות בישראל בכוונה לגרום
     למותם של אנשים רבים ככל האפשר (להלך : המתאבד).

2.   בעקבות הבקשה הנ"ל, ביום 27.03.02 או במועד הסמוך לכך, נפגש "אבן מו אזי" ברמאללה
     עם המתבל המתאבד וחובלו ליידיה, אשר אותה הראה לו המאשם יום יב לכן. לאותח
     הדירה הביא "אבן מועאזי" גם את "אבן סעד".

3.   מאוחר יותר הגיע לדירה האמורה גם הנאשם בעצמו, וזאת כשהוא ראות פני ר ולוחם כפמהו.
     הנאשם הביא עמו חגורת נפץ אשר נועדה למתבל הממתאבד לצורך ביצוע פיגוע התאבדות
     התוכנן.

4.   הנאשם והבריר חנ"ל תכננו כי עוד באותו חללה "אבן סעד" יוביל את המתאבד המתאבד,
     כשהוא נושא את חגורת הנפץ הנ"ל, לביציאת פיגוע ההתאבדות שמולכל.

5.   תנאשם, בכוחותיה של "אבן מועו" ו"אבן סעד", בדירה הנ"ל, לימד את המתבל המתאבד
     לכבות את חגורת הנפץ הלחועלתה.

6.   בסופו של דבר, החליט נאשם לדחות את ביצוע הפיגוע לילם שלמחרין, וזאת מכיוון
     שהדרכים באותה הלילה הנ"ל היו סגורות עקב חילופו אש בין כוחות צה"ל לבין חבלים באזור
     רמאללה.

7.   הפיגוע המתוכנן בוטל בסופו של הדבר כי באותו הלילה, בין 27.03.02 לבין 28.03.02, הוצע
     פיגוע התאבדות במלון "פארק" בנתניה. הנאשם ביקש מ"אבו מועאני" לזרוע על ביטול
     תתכנון ל"אבו סעד" ולמתאבד המתאבד, והנ"ל עשה כן.

8.   המתבל המתאבד הנ"ל ביצע מאוחר יותר את פיגוע התאבדות במועדון "שפילד-קלאב"
     בראשון לציון, כפי שיפורט בפרט האישום העשרים וארבעה.

**פרט עשירים ושלושת**
מהות העבירה: סחר בציוד מלחמתי, עבירה לפי סעיף 2 לצו בדבר איסור סחר בציוד מלחמתי
(יהודה והשומרון) (מס' 243), תשכ"ח-1968.
פרטי העבירה: הנאשם הנ"ל, באזור, בתחילת חודש אפריל 2002 או בסמוך לכך, סחר או עסק
בצורה אחרת בציוד מלחמתי ללא הינתר חתום על-ידי מפקד האזור או מטעמו, דהיינו:
במועד האמור לעיל נפגש הנאשם עם "אבן מועאזי", בקש להוציא מדירת המסתור שברמאללה
חגורת נפץ, והמיאות בפרט האישום הקודם, וכן שני מטעני תבלה נוספים, וזו על מנת שלא
יתפסם על-ידי כוחות צה"ל.
על-פי בקשתו של "אבן מועאזי", מתמד לוקפר מתבל אשקר העביר את חגורת הנפי חנ"ל ביחד עם
מטעני החבלה הנ"ל לעיין עריק. לאחר כשעה, גם "אבן מועאזי" חגיע למון עריק וה ז תיר את מטעני

6

CONFIDENTIAL                                                                          SHATSKY-JD01567

CONFIDENTIAL
SHATSKY-JD01566

23-MAR-2011  17:14  From:ADV-SEC_H-M                046.111741                    To:022954953                    Page:7/23

התחבלה הניצל ואת חגורת הנפץ ליד עץ בשטח הפתוח בסמוך לעץ עריף.
לאחר מספר ימים, הגיע "אבו מואעז" למקום וזמוכתה, הוציא את מטעני חח-בלה ואת חגורת
הנפץ העבירם, ביחד עם וליד עעזיו ע/תאדיי אנג'אס, למקום מסתור אחר הנמצא בסמוך לבית
ענאו.

בסוף חודש אפרל 2002 העביר "אבו מואעז" את שני מטעני החבלה הנ"ל לרמא'לה ומסום לידי
חטאמש, וזאת ללא חיתור מספקף חאיזור או מטעמא.

### פרט עשירים וארבעתם : (מ.א. 5601/02 ראשל"צ)

**מהות העבירה:** גרימות מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראה ביטחון (יהודה
והשומרון) (מס' 378), תש"ל 1970- וסעיף 14(א)(2) לצו בדבר כללי האחריות לעבירית (יהודה
והשומרון) (מס' 225), תשכ"ח 1968-.

**פרטי העבירה:** חטאמש הנ"ל, הן באיזור ותון מתוצה לו, ביום 07.05.02 או במועד הסמוך לכך,
גרם בכוונה למוותו של אחר, דוזיינו :

1. בסוף חודש אפריל 2002, ברמאללה או בסמוך לכך, נפגש **הנאשם עם "אבו** כ'וטא'י" והורה לו
   לבצע פיגוע וזאת במסגרת לרגום למותם של אנשים רבים ככל האפשר. **הנאשם** אף מסר
   ל"אבו מואעז" כי יש לו אדם שמוכן לבצע את פיגוע ההתאבדות.

2. לאחר מספר ימים, ברמאללה או בסמוך לכך, **הנאשם** וחכיר ל"אבן מואעז" את מתכמד גמיל
   אחמד מועט (לחילו), המחבל המתאבד), אשר היה אמור לבצע את פיגוע ההתאבדות
   המתוכנן. במהלך הפגישה סוכם כי לאחר מספר ימים **הנאשם** יביא את המתאבד
   לפגישתו עם "אבו מואעז" ברמאללה והלו יימכר את המחבל המתאבד' לביצוע פיגוע
   ההתאבדות המתוכנן.

3. ביום 07.05.02, נפגש "אבו מואעז" עם המחבל המתאבד ברמאללה לפי הסיכום הנ"ל. על-פי
   בקשתו של "אבו מואעז", וליד עעזיו ע/תאדיי אנג'אס ליווה את המחבל המתאבד ברמאללה
   לכפא, בצם חשוים הניל נפשעו עם "אבו מואעז" ונסעו ביחד לבית ענאו. ה"אבו מואעז"
   מסר לוליד ממתבד וסמתאבד את חגורת הנפץ, שהסתיר בגבקם, כפי שוטמו בפרק האישום
   הקודם. "אבו מואעזי חלקש את חגורת הנפץ חוי על גופו של המחבל המתאבד וכן נתן
   לאחרין וניק עם מטען חבלה נוסף.

4. לאחר מכן "אבו מואעזי" יצר קשר עם מתמוד מתמוד עטאללה אנג'אס וויפסר לאחרון כי
   ברצונו לחדעיר סחורה גנובה לבית אלכסא. "אבו מואעזי" ביקש לדעת אם י'ד פתח'ומים של
   צחיל בדרד לבית אלכסא. מתמוד אנג'אס מסר ל"אבן מואעזי" כי לפני זמן קצר נסע בדרד
   האמצרית ולא ראה כוחות צחיל. בעקבות זאת, "אבו מואעזי" הסיע בה'ד'ב את המחבל
   המתאבד עם מטען חבלה ועם חגורת הנפץ מבית ענאו לבית אלכסא.

5. בבית אלכסא או בסמוך לכך, "אבו מואעזי" והמחבל המתאבד נפשו ב "אבו זעד'י", אשר לקח
   את המחבל המתאבד לביצוע הפיגוע והמתוכנן.

6. באותו הערב, "אבו סעד'י" ביחד עם וסאם שעדי עבאסי הסיעו את המחבל המתאבד לראשון
   לציון ושם ליוו אותו עד למעוזן "שופלי-קלאבי" הנמצא ברחוב סחרוב 1 ,אוזיר התעשייה
   החדש, אשר אחרי קודם לבן על-ידי ע/ל-ידי "אבו סעד'י", מתמוד אסתאמון עודד, וסאם עבאסי ועלאמא
   אין-יי מתמוד עבאסי כמכלף מתאים לביצוע פיגוע ההתאבדות. "אבו סעד'י וסאם עבאסי
   הפגיעו למתבד המתאבד על מעוזמן ואמסר וביטרו וכ'לי זה המקום שב' עליו לבצע את
   פיגוע ההתאבדות המתוכנן.

7. במועד לשעת 22:50, ביום 07.05.02 או במועד הסמוך לכך, המחבל המתאבד ד נכנס למעוזן
   חיל הטפעול את חגורת הנפצ וגם ואת מטען החבלה הנ'וסף, אשר אותם קיבל מ"טורות זו "אבו
   מואעזי", וזאת בכוונה לרגום למותם של אנשים רבים ככל האפשר.

8. לחתרות, "אבן מואעזי" נפשע עם "אבו סעד'י", אשר דיווח אודות ביצוע פיגוע ההתאבדות
   בראשון-לציון.

9. כתוצאה מפיצוע חגורת הנפץ כמתואר לעיל, נחרגו 15 אנשים, נפצעו 59 אנש' ם וגרם נזק רב
   לירכוש.

10. במעשיו ומחדליו לעיל, גרם הנאשם בכוונה למותם של **רחמים קמחי** ז"ל, אשר נהרג
    כתוצאה מפיצוע מטען החבלה כפי שתאולו לעיל.

### פרט עשרים וחמישה: (מ.א. 5601/02 ראשל"צ)

**מהות העבירה:** גרימות מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראה ביטחון (יהודה
והשומרון) (מס' 378), תשי"1970- וסעיף 14(א)(2) לצו בדבר כללי האחריות לעבירית (יהודה
והשומרון) (מס' 225), תשכ"ח 1968-.

**פרטי העבירה:** הנאשם הנ"ל, במועד ובנסיבות המתוארות בפרט האישום העשר' ם וארבעה, גרם
בכוונה למוותו של אחר, דהיינו :

P.09/33                      1741115808 01                   Dsnsuol Iaoi3 inamoU

CONFIDENTIAL
SHATSKY-JD01566

CONFIDENTIAL

במועד ובנסיבות האמורות לעיל, גרם הנאשם בכוונה למותו של **רפאל חיים** ז"ל.

**פרט עשרים וששה : (פ.א. 5601/02 ראשל"צ)**
**מהות העבירה:** גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות: ביטחון (יהודה
והשומרון) (מס' 378), תשכ"ל-1970) - וסעיף 14(א)(2) לצו בדבר כללי האחריות לעבירה (יהודה
והשומרון) (מס' 225), תשכ"ח 1968-.
**פרטי העבירה:** הנאשם הנ"ל, במועד ובנסיבות המתוארות בפרט האישום העשרים וארבעה, גרם
בכוונה למותו של אחר, דהיינו:
במועד ובנסיבות האמורות לעיל, גרם הנאשם בכוונה למותו של **ענת טרמפורש** ז"ל.

**פרט עשרים ושבעה : (פ.א. 5601/02 ראשל"צ)**
**מהות העבירה:** גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראו: ביטחון (יהודה
והשומרון) (מס' 378), תשכ"ל-1970) - וסעיף 14(א)(2) לצו בדבר כללי האחריות לעבירה (יהודה
והשומרון) (מס' 225), תשכ"ח 1968-.
**פרטי העבירה:** הנאשם הנ"ל, במועד ובנסיבות המתוארות בפרט האישום העשרים וארבעה, גרם
בכוונה למותו של אחר, דהיינו:
במועד ובנסיבות האמורות לעיל, גרם הנאשם בכוונה למותו של **אברהם בייז** ז"ל.

**פרט עשרים ושמונה : (פ.א. 5601/02 ראשל"צ)**
**מהות העבירה:** גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראו: ביטחון (יהודה
והשומרון) (מס' 378), תשכ"ל-1970) - וסעיף 14(א)(2) לצו בדבר כללי האחריות לעבירה (יהודה
והשומרון) (מס' 225), תשכ"ח 1968-.
**פרטי העבירה:** הנאשם הנ"ל, במועד ובנסיבות המתוארות בפרט האישום העשרים וארבעה, גרם
בכוונה למותו של אחר, דהיינו:
במועד ובנסיבות האמורות לעיל, גרם הנאשם בכוונה למותו של **אתי בבלאר** ז"ל.

**פרט עשרים ותשעה : (פ.א. 5601/02 ראשל"צ)**
**מהות העבירה:** גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראו: ביטחון (יהודה
והשומרון) (מס' 378), תשכ"ל-1970) - וסעיף 14(א)(2) לצו בדבר כללי האחריות לעבירה (יהודה
והשומרון) (מס' 225), תשכ"ח 1968-.
**פרטי העבירה:** הנאשם הנ"ל, במועד ובנסיבות המתוארות בפרט האישום העשרים וארבעה, גרם
בכוונה למותו של אחר, דהיינו:
במועד ובנסיבות האמורות לעיל, גרם הנאשם בכוונה למותו של **יצחק בבלאר** ז"ל.

**פרט שלושים : (פ.א. 5601/02 ראשל"צ)**
**מהות העבירה:** גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראו: ביטחון (יהודה
והשומרון) (מס' 378), תשכ"ל-1970) - וסעיף 14(א)(2) לצו בדבר כללי האחריות לעבירה (יהודה
והשומרון) (מס' 225), תשכ"ח 1968-.
**פרטי העבירה:** הנאשם הנ"ל, במועד ובנסיבות המתוארות בפרט האישום העשרים וארבעה, גרם
בכוונה למותו של אחר, דהיינו:
במועד ובנסיבות האמורות לעיל, גרם הנאשם בכוונה למותו של **ישראל שיקאר** ז"ל.

**פרט שלושים ואחד : (פ.א. 5601/02 ראשל"צ)**
**מהות העבירה:** גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראו: ביטחון (יהודה
והשומרון) (מס' 378), תשכ"ל-1970) - וסעיף 14(א)(2) לצו בדבר כללי האחריות לעבירה (יהודה
והשומרון) (מס' 225), תשכ"ח 1968-.
**פרטי העבירה:** הנאשם הנ"ל, במועד ובנסיבות המתוארות בפרט האישום העשרים וארבעה, גרם
בכוונה למותו של אחר, דהיינו:
במועד ובנסיבות האמורות לעיל, גרם הנאשם בכוונה למותו של **שושנה מגמרי** ז"ל.

**פרט שלושים ושניים : (פ.א. 5601/02 ראשל"צ)**
**מהות העבירה:** גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר כללי האחריות: ביטחון (יהודה
והשומרון) (מס' 378), תשכ"ל-1970) - וסעיף 14(א)(2) לצו בדבר כללי האחריות לעבירה (יהודה
והשומרון) (מס' 225), תשכ"ח 1968-.
**פרטי העבירה:** הנאשם הנ"ל, במועד ובנסיבות המתוארות בפרט האישום העשרים וארבעה, גרם
בכוונה למותו של אחר, דהיינו:
במועד ובנסיבות האמורות לעיל, גרם הנאשם בכוונה למותו של **שאריק רסאן** ז"ל.

8

CONFIDENTIAL

SHATSKY-JD01570
Page:3/23

**פרט שלושים ושלושה:** (ת.א. 5601/02 ראשל"צ)
**מהות העבירה:** גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ג' ביטחון (יהודה והשומרון) (מס' 378), תשי"ל-1970- וסעיף 14(א)(2) לצו בדבר כללי האחריות לעבירות (יהודה והשומרון) (מס' 225), תשכ"ח 1968-.
**פרטי העבירה:** הנאשם חו"ל, במועד ובנסיבות המתוארות בפרט האישום העשוי יים וארבעה, גרם בכוונה למותו של אחר, דהיינו:
במועד ובנסיבות האמורות לעיל, גרם הנאשם בכוונה למותו של **נואה חינמזי** ז"ל.

**פרט שלושים וארבעה:** (ת.א. 5601/02 ראשל"צ)
**מהות העבירה:** גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תשי"ל-1970- וסעיף 14(א)(2) לצו בדבר כללי האחריות לעבירות (יהודה והשומרון) (מס' 225), תשכ"ח 1968-.
**פרטי העבירה:** הנאשם חו"ל, במועד ובנסיבות המתוארות בפרט האישום העשוי יים וארבעה, גרם בכוונה למותו של אחר, דהיינו:
במועד ובנסיבות האמורות לעיל, גרם הנאשם בכוונה למותו של **ניר לובשטין** ז"ל.

**פרט שלושים וחמישה:** (ת.א. 5601/02 ראשל"צ)
**מהות העבירה:** גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראאות ביטחון (יהודה והשומרון) (מס' 378), תשי"ל-1970- וסעיף 14(א)(2) לצו בדבר כללי האחריות לעבירות (יהודה והשומרון) (מס' 225), תשכ"ח 1968-.
**פרטי העבירה:** הנאשם חו"ל, במועד ובנסיבות המתוארות בפרט האישום העשוי יים וארבעה, גרם בכוונה למותו של אחר, דהיינו:
במועד ובנסיבות האמורות לעיל, גרם הנאשם בכוונה למותו של **רגינה מלכה בוס** ז"ל.

**פרט שלושים ושישה:** (ת.א. 5601/02 ראשל"צ)
**מהות העבירה:** גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תשי"ל-1970- וסעיף 14(א)(2) לצו בדבר כללי האחריות לעבירות (יהודה והשומרון) (מס' 225), תשכ"ח 1968-.
**פרטי העבירה:** הנאשם חו"ל, במועד ובנסיבות המתוארות בפרט האישום העשוי יים וארבעה, גרם בכוונה למותו של אחר, דהיינו:
במועד ובנסיבות האמורות לעיל, גרם הנאשם בכוונה למותו של דליזא מסח ז"ל.

**פרט שלושים ושבעה:** (ת.א. 5601/02 ראשל"צ)
**מהות העבירה:** גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראואת ביטחון (יהודה והשומרון) (מס' 378), תשי"ל-1970- וסעיף 14(א)(2) לצו בדבר כללי האחריות לעבירות (יהודה והשומרון) (מס' 225), תשכ"ח 1968-.
**פרטי העבירה:** הנאשם חו"ל, במועד ובנסיבות המתוארות בפרט האישום העשוי יים וארבעה, גרם בכוונה למותו של אחר, דהיינו:
במועד ובנסיבות האמורות לעיל, גרם הנאשם בכוונה למותו של פגניה חיקרי ז"ל.

**פרט שלושים ושמונה:** (ת.א. 5601/02 ראשל"צ)
**מהות העבירה:** גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראואו: ביטחון (יהודה והשומרון) (מס' 378), תשי"ל-1970- וסעיף 14(א)(2) לצו בדבר כללי האחריות לעבירות (יהודה והשומרון) (מס' 225), תשכ"ח 1968-.
**פרטי העבירה:** הנאשם חו"ל, במועד ובנסיבות המתוארות בפרט האישום וארבעה, גרם בכוונה למותו של אחר, דהיינו:
במועד ובנסיבות האמורות לעיל, גרם הנאשם בכוונה למותו של עדינה כהן ז"ל.

**פרט שלושים ותשעה:** (ת.א. 5601/02 ראשל"צ)
**מהות העבירה:** ניסיון לגרימת מוות בכוונה, עבירה לפי סעיף הוראות ביטחון (יהודה והשומרון) (מס' 378), תשי"ל-1970- וסעיפים 14(א), 19 ו-20 לצו בדבר כללי האחריות לעבירות (יהודה והשומרון) (מס' 225), תשכ"ח-1968-.
**פרטי העבירה:** הנאשם חו"ל, במועד ובנסיבות המתוארות בפרט האישום העשרים וארבעה, ניסה לגרום בכוונה למותו של אחר, דהיינו:
במועד ובנסיבות האמורות לעיל, ניסה הנאשם לגרום בכוונה למותם של או"חים רבים בכל האפשר, כתוצאה ממטען מטעני החבלה שהופעל כפי שתוארו בפרט האישום העשרים וארבעה, נפגעו 59 בני אדם.

9

CONFIDENTIAL                                                                                    SHATSKY-JD01571

13-MAR-2011 17:15 From:ADV-SALH-M          046111741          To:022954953          Page:10/29

פרט א/רביעי: (ל.ע.) 2881/02 גלילות) על סעיף 15(א) לצו בדבר הוראות ביטחון

מהות העבירה: ניסיון לגרימת מוות בכוונה, עבירה לפי סעיף 15(א) לצו בדבר
(יהודה והשומרון) (מס' 378), תשי"ל-1970, ו-סעיף(ב)(2)14 19 ו-20 לצו בדבר כלי התחמושת
לעבירה (יהודה והשומרון) (מס' 225), תשכ"ח-1968).

פרטי העבירה: הנאשם הנ"ל, חן ואיירו והן מוחצר לו, ביום 23.05.02 או במועד הסמוך לכך,
ניסה לגרום בכוונה למותו של אחר, דהיינו:

1.  בחודש מאי 2002, ברמאללה או במקום הסמוך לכך, נפגש הנאשם עם "אבו מועז/נ", ומסר כי
    ברצונו לבצע פיגוע נגדי תחת הלפנות דלק, בכוונה לגרום למותם של אנשים רבים
    ככל האפשר. "אבו מועזא/ו הבטיח לנאשם לבדוק בדבר: פגוע תוכף

2.  "אבו מועז/ו נפגש עם "אבו סעד", וסיפר לו אודות תכונו של הנאשם לבצע, את ניסו לעשות.
    כאמור לעיל, "אבו סעד" אמר ל"אבו מועזא/ו כי יבדוק את העניין ויראה מה ניתן לעשות.

3.  לאחר מספר ימים, נפגש "אבו מועזא/ו בשנית עם "אבו סעד". "אבו סעד" מסר כ"אבו מועזא/ו
    כי הוא וחבריו איתרו מיכלית דלק מתאימה באזור קבוע לאתר "פי גלילות".

4.  ביום 22.05.02, נפגש "אבו מועזא/ו עם הנאשם ברמאללה ודיווחו לו אודות חפוכלית הדלק
    הנ"ל. הנאשם ביקש לחופש עם "אבו מועזא/ו בעוד מספר שעות באותו המקום

5.  לאחר מספר שעות נפגש הנאשם בשנית עם "אבו מועזא/ו ברמאללה. הנאשם מסר לידי "אבו
    מועזא/ו מטען תבלה המופעל באמצעות מכשיר טלפון סלולארי נוסף, אשר נמצא יש להתקינו את המחשיר
    הנאשם לידי אבו מועזא/ו מכשיר טלפון סלולארי, תבהם הסביר "אבו מועזא/ו כיו ד להפעיל את
    הממתח למטען התבלה על מנת לחפעילו. הנאשם הסביר כמו כן, הבהיר הנאשם "לאבו מועזא/ו
    מטען התבלה הנ"ל באמצעות מכשירי חטלפון הנ"ל. לצורך לבצל את מכשיר הטלפון חסלולא רי אשר ממנו
    כי לאחר חפעלת מטען התבלה חמטומ/ת את מטען התבלה.
    וכתבצע חוותוכשרות המטומ/ת את מטען התבלה.

6.  "אבו מועזא/ו מסר את מטען התבלה הנ"ל לידי ולידי עע/ויו עה/אדי אנג'אס אשר העבירו,
    על-פי בקשת "אבו מועזא/ו, לצפא. "אבו מועזא/ו חניע לצפא וממש נסע בםבמ/ניתו, ביחד עם
    וליד אנג'אס, לבית אונכסא.

7.  "אבו מועזא/ו ווליד אנג'אס נסע ברכבו של "אבו מועזא/ו, כאשר "אבו מועזא/ו נוחג ברכב
    ואלו וליד אנג'אס ישב במושב האחורי ומחזיק בידיו את מטען התבלה. וזה נוכ חיה כי אם
    "אבו מועזא/ו וליד אנג'אס יתקף ובו כוחות הביטחון הישראלים, ולידי אנג'א.ו יקפוץ מהרכב
    עם מטען תבלה וימגום מהמקום או שירווק את מטען התבלה מהרכב.

8.  "אבו מועזא/ו נפגש שם עם "אבו סעד" וביחד עם ולדי אנג'אס מסר לידי "אבו סעד" את מטען
    התבלה הנ"ל עם מכשיר טלפון סלולארי המחובר אלו וכן את מכשיר חל/לפון הנ"ל באמצעו/ת
    הנסף. "אבו מועזא/ו הסביר ל"אבו סעד" כיצד להפעיל את מטען התבלה הנ"ל, היו מחוברים "ואבו
    מכשירי חטלפון הסלולאריים. חוט׳ה חחשמל במנטע התבלה לפרצה לפני שמסר את ה מטען הנ"ל לידי "אבו
    מועזא/ו חיבורן על מנת להכין את מטען התבלה לפרצה, הנ"ל.
    סעד".

9.  בשעות הבוקר המוקדמות למחרת, יום 23.05.02, "אבו סעד" נסע לחולון ביחד עם וסאמ
    סעד עבאסי, כשברשותם מטען התבלה הנ"ל. בחולון, "אבו סעד" חצמאד׳ את מטען התבלה
    הנ"ל באמצעות מנגנו אל תלקום וקבלמ־ים התחתנ שתל מיכל חדלק המורכב על גבי וכלית דלק, מ.ר.
    2622700. מיכלית הדלק הנ"ל אותרה קודם לכן פיעד להגעה סינוע תוטף על ידו וסאמ עבאסי
    ולאאמ א־דין מרחמוד עבאסי. "אבו סעד" המתין ברכבו עד שחגיע ה/בא.ו סעד" וידא כי
    מכן נסע אחר מיכלית חדלק הנ"ל עד לאתר "פי גלילות". לאחר שי/אב.ו סעד" "פי גלילות", אבו
    מיכלית חדלק, אשר אליה חובר מטען התבלה הנ"ל, וכססה אל תוך האתר "פי גלילות", ויוזמ בכוונה לגרום
    סעד חפעיל את מטען התבלה הנ"ל באמצעות מכשיר טלפון סלולאין,
    למותם של אנשים רבים ככל האפשר.

10. מטען התבלה הנ"ל התפוצצ וגורם נזק כבד למיכלית הדלק הנ"ל.

11. לאחר מכן, נפגש "אבו מועזא/ו עם הנאשם ברמאללה ודיווח לו אודות בי/ו,וע הפיגוע במוזתוקו
    "פי גלילות".

10

P.17/33                     T0 046111741                    Inoia nuda Fransi   Chi:/ 2222- מ"ר ירר ם/

CONFIDENTIAL                                                                                    SHATSKY-JD01571

CONFIDENTIAL

25-May-2011  17:16  From:ADV-SALH-M          046111741          To:022954953          Page:11/39

**פרטי אראים וחומר: (ת.פ.א. 3975/02 לוד)**
**מהות העבירה:** ניסיון לגרימת מוות בכוונה, עבירה לפי סעיף 305(א) לצו בדבר הוראות ביטחון
(יהודה ושומרון) (מס' 378), ונשי-1970- וסעיפים 14(א) ו- 19 ו-20 לצו בדבר כלני ואחריות
לעבירות (יהודה והשומרון) (מס' 225), תשכ"ח-1968-.
**פרטי העבירה:** תנאשם הנ"ל, חן באיזור וחן מהזור לו, ביום 30.06.02 או במועד סמוך לכך,
ניסה לגרום בכוונה למותו של אחר, דהיינו:

1. בחודש יוני 2002, ברמאללה או במקום הסמוך לכך, נפש הנאשם עם "אבו מוש ה" ותצע לו
   לצע פיגוע תופה באמצעות תחות מטען חבלה על פסי רבבת בתוך מדינת ישראל ואת מתוך
   כוונה לגרום למותם של אנשים רבים ככל האפשר.

2. "אבו מתאאו" פנה אל "אבו סעדי", ובקש ממנו לבדוק אפשרות של בצוע פיגוע ונופה על פסי
   חרבבת בישראל. לאחר זמן מה, "אבו סעדי" פנה אל "אבו מתאאו" ומסר לו כי מצא מקום
   מתאים לבצע הפיגוע המוכנן. היאבו מתאאו" דיווח על כך לנאשם.

3. לאחר זמן מה, "אבו מתאאו" נפגש ברמאללה עם הנאשם, אשר מסר ל"אבו מוע אי" חומרים
   ליוצר מטען חבלה מאופעל באמצעות מכשיר טלפון סלולארי, וזאת לצורך הר וצאת לפועל
   של הפיגוע המוכנן. "אבו מתאאו", בחזרתה בני הארץ או בסמוך לכך, ביתר עב: וליצר עעיור
   ע"השאר אנגאס, ויצר מהחומרים הנ"ל מטען חבלה המופעל באמצעות מכשיר טלפון
   סלולארי, אותו ו רש למנותוח זו ברמאללה.

4. ביום 29.06.02 או בסמוך לכך, "אבו מתאאו" העביר את מטען החבלה הנ"ל ביחז' עם מכשיר
   הטלפון הסלולארי ליזיי ה"אבו סעדי" והסביר לאחרון כיצד מפעילים את מטען ו חבלה הנ"ל.

5. חוטר החתשמל במטעו וחבלה מאאור לא היה מתוברהים ל"אבו מתאאו". חיבים על כנת לחחק'ן
   את מטעו חבלה ליפעל וזאת לפני שמסר את המטעו לידי "אבו סעד".

6. בשעות הערב באותו היום, "אבו סעדי" ביחד עם וסאם סעיף עבאסי נסע ללדר וה-חת את מטעו
   החבלה הנ"ל על פסי הרבבת בלדר במקום לפן כמהאים לביצוע הפ'גוע המתוכנן
   על-ידי וסאם עבאסי ועלאא א-יד מתמור עבאסי. לאחר מכן, "אבו סעדי" וסאק עבאסי חזרו
   לירושלים.

7. בשעות המוקדמות של תאריך למחרת, 30.06.02, "אבו סעדי" וסאם עבאסי נסע ללדר וסאמו
   עבאסי חתמקם לו מטעו החבלה שהונח כאמור לפעל על פסי הרבבת. בסמוך לשעה 07:00,
   עבאסי וסאם חתמקם ליד מטעו וחבלה חביור הרבבת והמתקרבת למקום האמור, הוא הודיע ל"אבו סעדי", אשר
   הפעיל את מטען החבלה הנ"ל באמצעות מכשיר טלפון סלולארי, וזאת בכוונה "גרם למותם
   של אנשים רבים ככל האפשר.

8. מטעו החבלה הנ"ל התפוצץ.

9. כתוצאה מפיצוץ מטעו החבלה הנ"ל נפצעו 4 בני אדם. כמו כן נגרם נזק "וקטר הרכבת
   ולמסילות הברזל.

10. לאחר שהפיגוע הנ"ל בוצע, "אבו מואעו" נפגש עם "אבו סעדי", אשר דיווח כי חוא וחבריו
    הניחו את מטעו החבלה הנ"ל על פסי הרבבת בלוד.

**פרטי ארבעים העייניו: (ת.פ.א. 9938/02 רחומטם)**
**מחות העבירה:** ניסיון לגרימת מוות בכוונה, עבירה לפי סעיף 305(א) לצו בדבר הוראות ביטחון
(יהודה והשומרון) (מס' 378), ותש"ל 1970- וסעיפים 14(א)(א)(ב) 19 ו-20, לצו בדבר כללי האחריות
לעבירות (יהודה והשומרון) (מס' 225), תשכ"ח 1968.
**פרטי העבירה:** תנאשם הנ"ל, חן באיזור וחן מהזור לו, ביום 21.07.02 או במועד סמוך לכך,
ניסה לגרום בכוונה למותו של אחר, דהיינו:

1. בחודש יולי 2002, ברמאללה או במקום סמוך לכך, נפגש הנאשם עם "אבו מואעו" והצע
   לבצע פיגוע תופה נוסף באמצעות חנחת מטען חבלה על פסי רכבת בתוך מדינת ישראל וזאת
   מתוך כוונה לגרום למותם של אנשים רבים ככל האפשר.

2. "אבו מתאאו" פנה אל "אבו סעדי", ובקש ממנו למצוא מקום מתאים לבצע פיגוע נוסף על פסי
   חרבבת בישראל. לאחר זמן מה, "אבו סעדי" פנה אל "אבו מתאאו" ומסר לו כי מצא מקום
   מתאים לבצע הפיגוע המוכנן.

3. לאחר זמן מה, נפגש הנאשם עם "אבו מתאאו" ומסר לו חומרים ליוצר מטעו חבלה המופעל
   באמצעות מכשיר טלפון סלולארי, וזאת לצורך החוצאת לפועל של הפיגוע המוכנן. "אבו
   מתאאו", בחזרתה בני הארץ או בסמוך לכך, ביחד עם וליצר עעיור ע"השאר אנגאס, ויצר
   מהחומרים הנ"ל מטעו חבלה המופעל באמצעות מכשיר טלפון סלולארי, א'תו רכש "אבו
   מתאאו" למנותוח זו ברמאללה.

11

CONFIDENTIAL
SHATSKY-JD01573

4. ביום 20.07.02, "אבו מועאז" מסר את מטען החבלה הנ"ל לילדי עמויזו עתאונדי אנגאאס
   ובקש מנזאאנין לוובירו לפפא. לאחר מכן, חגע "אבו מועאז" לצפא ונמצא יום עם וליד
   אנגאאס משם, חי"אבו מועאז" וליד אנגאאס נסע בניה ביתו לבית איכסא.

5. "אבו מועאז" וליד אנגאאס נסע ברכבו של "אבן מועאז", כאשר "אבו מועאז" נהג ברכב
   ואבו וליד אנגאאס יושב במושב האחורי ומחזיק בידיו את מטען החבלה. תוכנן כי אם "אבו
   מתאאזי" וליד אנגאאס יתקלו בכוחות הביטחון הישראליים, וליד אנגאאס יפצל מהרכב עם
   מטען החבלה ויפמילט מהמקום או שזורק את מטען החבלה הנ"ל בידיד עם ומשערי

6. בבית איכסא, "אבן מתאאזי" וליד אנגאאס העבירו את מטען החבלה הנ"ל בידיד עם ומשערי
   הטלפון הסלולאריים לידי "אבו סעדי". "אבו מועאז" חסבירי לאחארון כיצד מפעיל ה את מטעו
   החבלה הנ"ל.

7. חוטי תשמשל במטעני חבלה האמור לא היו מחוברים וי"אבו מועאז" חיברם עי! מנת להכין
   את מטעו החבלה לפיצוץ ואת וזה שמסר את המטעו לידי "אבו סעדי".

8. באוונו הלילה, "אבו סעדי", ביחד עם נסאם טעדר עבאסי ועלא אא אי"אין מחמוד" נבאסי, נסעו
   לאיזור רמובנות ונהים את מטעו החבלה הנ"ל על-די-ידי "אבו סעדי" ונסאם עבאסי. לאחר נכנו חשלושה
   כפר גבריאל, מקום שנסתיר קודם לכן על-די-ידי "אבו סעדי" ונסאם עבאסי. לאחר נכנו חשלושה
   חורו לירושלים.

9. למחרת, 21.07.02, בשעות הבוקר המוקדמות, "אבו סעדי" ונסאמל עבאסי נסעו למקום שבו
   הונח מטעו החבלה הנ"ל. בסמוך לשעה 07.30, "אבו סעדי" הפעיל את מטעו החבלה הנ"ל
   חונא מטעו החבלה הנ"ל. בסמוך לשעה 07.30, "אבו סעדי" הפעיל את מטעו החבלה הנ"ל
   מקשיר טלפון סלולארי כי רכבת מטעיה למטעו מטען החבלה. כמו כן, נגרם נזק
   לקטר הרכבת ולמסילת הברזל.

10. מטעו החבלה הנ"ל התפוצץ. כתוצאה מפיצוץ מטעו החבלה נפצעו אדם אחד

**פרט ארבעים ושלושה :** עבורה לפי סעיף 2 לצו בדבר איסור סחר ביוד מלחמתי
**מהות העבירה:** סחר בציוד מלחמתי, באיוור, במחוצת השנה של חודש יולי 2002, כשבג ל לפני שביצע
**פרטי העבירה:** הנאשם הנ"ל, הסכים לכך, בסמוך לכך, סחר או עשק בציוד בגוזרה אחרת בצדיד מלחמתי ללא
את האמונ בפרט האיושום זהא, או במטעמו, דהיינו:
חיד חום תום על-ידי מפמיר האזוד או מטעמו, דהיינו:
במעוד האמונ לעיל, ברמאאלת או במקום הסמנד מסר הנאשם "לאבו מועאזי" ק "כון, שבמכו
היו חגורת נפי, 50 כדורים וחיק "ייימם מוני" מלא בתוני חשמל, ברגים וסלילולות. "אבו טועאזי"
מסר את החפצים הנ"ל לולד עמויזו עתאאני ובקש מאחרון להסתירם.

**פרט ארבעים וארבעה:** (א.א. 1197/02 שלם) (א)51 לצו בדבר הוראות :יטחון) (יהודה
**מהות העבירה:** גרמת מוות בכוונה, עבורה לפי סעיף (א)51 לצו בדבר אחריות לצבירת (יהודה
והשומרון) (מסי 378), ושנ"ל 1970 וחיע (ב) (2) 14אחריות בלבי לצבירת (יהודה
והשומרון) (מסי 225), ושנ"ל 1968. ביום 31.07.02 או במועד הזומנ לכד, גרם
**פרטי העבירה:** הנאשם הנ"ל למתאו חיים, בתוך יולי 2002, פנה אל
בכוונה למחאו של אחר, דהיינו :
1. לאחר מותו של מפצל בכיר של ארגון החמאס, צלאח שחאדה, צלאח שחאדה.
   הנאשם אל "אבו מועאזי" ומסר לו כבוונתו לנקום את מותו של צלאח שחאדה.
2. "אבו מועאזי" פנה אל "אבו סעדי", ובקש מהאחרון לאתר מקום מתאים לביה:וע פיצוע תופח
   בכפתו על מותו של צלאח שחאדה, וזאת בכוונה לגרום למותם של אנשים רבים ככל האפשר.
3. לאחר מספר ימים, (פגש "אבו מועאזי" בשעינו את "אבו סעדי", אשר מסר ::: אותר מקום
   מתאים לביצוע פיגוע המוני תמור והוא האוניברסיטה העברית בירושלים, קמפוס חר-הצופים.
4. "אבו מתאאזי" "אבו מועאזי" מטעו חבלה, בשקול של כ:-
   לצורך ביצוע פיגוע התופח המתוכנן, יצר "אבו מתאאזי" מטעו חבלה, בשקול של כ:-
   קילוגרמים, המורכב משלושה בקבוקי שמפו מלאים בחומר נפ, המחוברים זנייחם בחוטים.
   את חומר הנפמ עבור מטעו החבלה הנ"ל, חיבר "אבו מתאאזי" מנגגנו
   מ.מר מ.זמנ, אשר אותם רכש למטרח זו. למטעו החבלה הנ"ל חיבר "אבו מתאאזי" מנגגנו
   הפעלת המחורבת ממכשיר טלפון סלולאלי.
5. לאחר מכן, נסע "אבו מתאאזי" ביחד עם וליד עמויזו עתאאני לבית איכסא.
   לחעביר את מטעו החבלה הנ"ל ל"אבו סעדי" על מנת שהאחרון ביחד עם חבריו :בצע באמצעותו
   את פיגוע התופעה המתוכנו.

12

CONFIDENTIAL

APR-2011 17:17 From:ADU-SA_H-M          046111741          To:022954953

6. "אבו מועאד" וולידי אנג'אס נסעו ברכבו של "אבו מועאז", כאשר "אבו מועאד' נוהג ברכב
ואלו ולדי אנג'אס ישב במשך האחורי ומחזיק בידיו את מטעו החבלה. תוכנן כי אם "אבו
מועאד" וולדי אנג'אס ייתקלו בכוחות הביטחון ישראלים, ולדי אנג'אס יפוצץ' מחזיק עם
מטעו החבלה וימולט מחמקום או שיזרוק את מטעו וחבלה מחרכב.

7. בבית אימם "אבו מועאד" וולדי מועאד" נפגשו עם "אבו סעדי". "אבו מועאד" מוזר לידי "אבו
סעדי" את מטעו חחבלה חני'ל יחד עם שני מכשירי טלפון סלולאריים, כאשר מבו'יר אחד היה
מחובר למטעון וחבלה ושימם כמנגנון הפעלה. "אבו מועאד" הסביר לייאבו סעדי" כיצד להפעיל
את מטעו התתלבה חני'ל.

8. ביום 28.07.02, "אבו סעד', ביחד עם מחממ' אסתאקל עודה, ועבירות את מטעו חבלה חני'ל
לירושלים. "אבו סעדי' ומחממ' עודד' הכניסו את מטעו וחבלה חני'ל אל תוך קמפוס הר-
הצופים של האוניברסיטה העברית בירושלים. מחממ' עודה הכיר מיטוב, את המקום מכיון
שעבד שם בעבר אף עשה שיעמו בכרטיס עובד, אשר עדיין נשאר ברשותו, כדי לחיכנס אל
תוך הקמפוס חאמו'. מחממ' עודה הניח את מטעו חחבלה הני'ל בתוך הקפהסו יח חנמצאת
בבניינ ע'יש פרנק סינטרה בקמפום חני'ל. לאחר מכן, "אבו סעדי" ומחממ' עודד ניסו להפעיל
את מטעו חחבלה חני'ל באמצעות מכשיר טלפון סלולאיי, אך מטעו החבלה לא התפוצץ עקב
תקלה שבד. לאחר מכן, מחממ' עודד חזר וחזר אל המקום שב זונית את מטעו החבלה חני'ל, אסף
את מטעו חחבלה ובחזר עם "אבו סעדי" נסע לבית לבית אימפאס.

9. לאחר מכן, ביום 29.07.02, "אבו מתאי" וולדי אנג'אס נפגשו שוב עם "אבו סעד'. "אבו סעד''
חזר ל"אבו מועאד" את מטעו וחבלה חני'ל. "אבו סעד'י מסר לייאבו מועאד" כי הוא וחבריו
הניחו את מטעו וחבלה חני'ל באוניברסיטה העברית בירושלים. קמפסו הר-חו'ופים, בכוונה
למצא ולגרום למוותם של אנשים רבים בכל האפשר, אך מטעו החבלה חני'ל לא התפוצץ'.
"אבו סעד'" ניקש כי "אבו מתאזים" יתקן את מטעו חחבלה חני'ל. "אבו מתאזן" וולדי אנג'אס
העבירו את מטעו חחבלה חני'ל לחדירתם בני חארס.

10. "אבו מועאד" ותיקן את מטעו חחבלה חני'ל. לאחר שבדק אוזו ונולה כי יש ע'וה עם חוטי
חחשמל.

11. יום למחרת, ביום 30.07.02, נפגש "אבו מועאד" שוב עם ולדי אנג'אס ובית' עם חאחרון
העבירו את מטעו חחבלה חני'ל לבית אימכאס.

12. יום החבלה "אבו מועאד" וולדי אנג'אס נסעו ברכבו של "אבו מועאד", כאשר "אבו מועד יח נ'וחג ברכב
ואילו ולדי אנג'אס ישב במושב האחורי ומחזיק בידיו את מטעו החבלה. תוכנ כי אם "אבו
מועאד" וולדי אנג'אס יתקל בכוחות הביטחון ישראליים, ולדי אנג'אס יקנון מהרוכב עם
מטעו חחבלה וימולט מחמקום או שיזרוק את מטעו החבלה מחרכב.

13. בבית אימכאס "אבו מועאד" וולדי אנג'אס נפגשו עם "אבו סעד'י". "אבו מועאד" מסר לידי "אבו
סעד'י" את מטעו חחבלה חני'ל. לפני שיי"אבו מועאד" מסר את מטעו חחבלה ה'יל לידי "אבו
סעד'", את מטעו חחבלה חני'ל. מכשיר חטלפון סלולרי.

14. באותו חלילה, "אבו סעדי" ומחממ' אסחאק עודה לקחו את מטעו חחבלה ח'יל לירושלים
והסתירו אותו בין העצים בגן צמוני חר-חצופום של חאוניברסיטה ר-חצופים של הגבירה.

15. למחרת, ביום 31.07.02, "אבו סעד'" ומחממ' עודה נסע ע'יש למ'מטו ר חב'ום, מחממ' עודה נכנס את תוך הקמפום,
האוניברסיטה הבערית בחבלה. בעת שיאבו סעד'י" חהנתין בחו'ן, מחממ' עודה נכנס את תוך הקמפוס,
אסף את מטעו חחבלה חני'ל ומנחיו בקפהטוריא העברית בירושלים. לאחר שממחמ' עודה, בסמו' לשעה 13:30,
הרי-חנבמהס של חאוניברסיטה העברית אל "אבו סעדי", "אבו סעד'י" הפעיל את מטעו חחבלה חני'ל
עזב את שטח הקמפום ותצטרף אל "אבו סעד'', בכוונה לגרום למותם של אנשים רבים בכל האפשר.
באמצעות מכשיר טלפון סלולאיי, וזאת בכוונה לגרום הפעיל את הפעיל זכולאם בשמהו לשעה 11:00 מאהר שלפי
"אבו סעד'" ומחממ' עודה בקפהטריה המתוער לעיל, בשעה האמורה יש ריכוז גדול של בני אדם.

16. כתוצאה מפיצוץ מטעו חחבלה המתוער לעיל, חיריג 9 אנשים, נפצעו 81 אנשי וננרם נזק רב
לרכוש.

17. במעשיו המתוארים לעיל, גרם הנאשם בכוונה למוותח של דמונה שפו'רד ז'יל.

פרט הפרשיע וחמיישע: (ם.א 1197/02 שלום) נ'חו'דה
מחחת העבירה: גרמת מוות בכוונה, עבירה לפי סעיף (א)151) לצו בדבר הוראות ביטחון (יהודה
והשומרון) (מסי 378), תשל-1970), · (סעיף (א)14(א)2) לצו בדבר כללי האחריות עעבירה (יהודה
והשומרון) (מסי 225), תשכ-ח 1968), ·
פרטי חעבירה: הנאשם חני'ל, במ'עמו ובנסיבות המתוארות בפרט חאישום מא-במ'גם וארבעה,
גרם בכוונה למותח של אחר, דהיינו ·
במועד ובנסיבות האמוארות לעיל, גרם הנאשם בכוונה למוותח של מידלה אן בנט ז'יל

CONFIDENTIAL

SHATSKY-JD01574

CONFIDENTIAL
13-MAR-2011 17:17 From:ADV-SALH-M        046111741        To:022954953        Page: SHATSKY-JD01575

**פרט ארבעים ושישה: (פ.א. 1197/02 שלם)**
מחות העבירה: גרימת מוות בכוונה, עבירה לפי סעיף 51(א)(א) לצו בדבר הוראות ביטחון (יהודה
ושומרון) (מס' 378), תש"ל-1970- וסעיף 14(א)(2) לצו בדבר כללי האחריות לעבירה (יהודה
ושומרון) (מס' 225), תשכ"ח-1968.
פרטי העבירה: הנאשם הנ"ל, במועד ובנסיבות המתוארות בפרט הנאשום הארבעים וארבעה,
גרם בכוונה למותו של אחר, דהיינו:
במועד ובנסיבות האמורות לעיל, גרם הנאשם בכוונה למותו של דינה קרטר ז"ל.

**פרט ארבעים ושבעה: (פ.א. 1197/02 שלם)**
מחות העבירה: גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ב טחון (יהודה
ושומרון) (מס' 378), תש"ל-1970- וסעיף 14(א)(2) לצו בדבר כללי האחריות לעבירה (יהודה
ושומרון) (מס' 225), תשכ"ח-1968.
פרטי העבירה: הנאשם הנ"ל, במועד ובנסיבות המתוארות בפרט האשום הארבעים וארבעה,
גרם בכוונה למותו של אחר, דהיינו:
במועד ובנסיבות האמורות לעיל, גרם הנאשם בכוונה למותו של בנימין תומאשב בלוט שטיין ז"ל.

**פרט ארבעים ושמונה: (פ.א. 1197/02 שלם)**
מחות העבירה: גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה
ושומרון) (מס' 378), תש"ל-1970- וסעיף 14(א)(2) לצו בדבר כללי האחריות לעבירה (יהודה
ושומרון) (מס' 225), תשכ"ח-1968.-
פרטי העבירה: הנאשם הנ"ל, במועד ובנסיבות המתוארות בפרט האשום הארבעים וארבעה,
גרם בכוונה למותו של אחר, דהיינו:
במועד ובנסיבות האמורות לעיל, גרם הנאשם בכוונה למותו של דויאל בראשי ז"ל.

**פרט ארבעים ותשעה: (פ.א. 1197/02 שלם)**
מחות העבירה: גרימת מוות בכוונה, עבירה לפי סעיף 51 (א) לצו בדבר הוראות ביטחון (יהודה
ושומרון) (מס' 378), תש"ל-1970- וסעיף 14(א)(2) לצו בדבר כללי האחריות לעבירה (יהודה
ושומרון) (מס' 225), תשכ"ח-1968.-
פרטי העבירה: הנאשם הנ"ל, במועד ובנסיבות המתוארות בפרט האשום הארבעים וארבעה,
גרם בכוונה למותו של אחר, דהיינו:
במועד ובנסיבות האמורות לעיל, גרם הנאשם בכוונה למותו של דוד (ראיאגל) לזובסעף ז"ל.

**פרט חמישים: (פ.א. 1197/02 שלם)**
מחות העבירה: גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה
ושומרון) (מס' 378), תש"ל-1970- וסעיף 14(א)(2) לצו בדבר כללי האחריות לעבירה (יהודה
ושומרון) (מס' 225), תשכ"ח-1968.-
פרטי העבירה: הנאשם הנ"ל, במועד ובנסיבות המתוארות בפרט האשום חמישים ואו וארבעה,
גרם בכוונה למותו של אחר, דהיינו:
במועד ובנסיבות האמורות לעיל, גרם הנאשם בכוונה למותו של לוינא שפולרא ז"ל.

**פרט חמישים ואחד: (פ.א. 1197/02 שלם)**
מחות העבירה: גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה
ושומרון) (מס' 378), תש"ל-1970- וסעיף 14(א)(2) לצו בדבר כללי האחריות לעבירה (יהודה
ושומרון) (מס' 225), תשכ"ח-1968.-
פרטי העבירה: הנאשם הנ"ל, במועד ובנסיבות המתוארות בפרט האשום חא בעים וארבעה,
גרם בכוונה למותו של אחר, דהיינו:
במועד ובנסיבות האמורות לעיל, גרם הנאשם בכוונה למותו של גינוא רות קולסד ז"ל.

**פרט חמישים ושניים: (פ.א. 1197/02 שלם)**
מחות העבירה: גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה
ושומרון) (מס' 378), תש"ל-1970- וסעיף 14(א)(2) לצו בדבר כללי האחריות לעבירה (יהודה
ושומרון) (מס' 225), תשכ"ח-1968.-
פרטי העבירה: הנאשם הנ"ל, במועד ובנסיבות המתוארות בפרט האשום חארבעים וארבעה,
גרם בכוונה למותו של אחר, דהיינו:
במועד ובנסיבות האמורות לעיל, גרם הנאשם בכוונה למותו של דוד גריץ ז"ל.

14

CONFIDENTIAL                                                    SHATSKY-JD01575

CONFIDENTIAL                                                                                                    SHATSKY-JD01576
13-MAR-2011 17:18 From:PDU-SALH-M          046111741          To:022954953          Page:32/33

<div dir="rtl">

**החמישים ושלושה: (ת.פ. 1197/02 שלם)**

**מהות העבירה:** ניסיון לגרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו ו-בדבר חו"ראות ביטחון
(יהודה והשומרון) (מס' 378), תש"ל-1970-. וסעיפים 14א(ב)(2), 19 ו-20 לצו בדבר כ"ללי האחריות
לעבירה (יהודה והשומרון) (מס' 225), תשכ"ח-1968-.

**פרטי העבירה:** במועד ובנסיבות המתוארות בפרט החמישים וארבעים וארבעה, ניסה לגרום
בכוונה למותו של אחר, דהיינו :
הנאשם הנ"ל, במועד ובנסיבות האמורות לעיל, ניסה לגרום בכוונה למותם של אזר-ים רבים ב-כל
האפשר. בהוצאת מפיצוץ מטען חבלה שהופעל כפי שתואר בפרט החמישים הארגעים וארבעה,
ופגיע ב88 בני אדם.

**פרט החמישים והארבעה: (ת.א 9638/02 ראש"ע)**

**מהות העבירה:** ניסיון לגרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר ה-ראות ביטחון
(יהודה והשומרון) (מס' 378), תש"ל-1970-. וסעיפים 14א(ב)(2) 19 ו-20 לצו בדבר כללי האחריות
לעבירה (יהודה והשומרון) (מס' 225), תשכ"ח-1968-.

**פרטי העבירה:** הנאשם הנ"ל, בין באיזור ובין מחוצה לו, ביום 07.08.02 או במועד- הסמוך לכך,
ניסה לגרום בכוונה למותו של אחר, דהיינו :

1. בראשית חודש אוגוסט 2002, פנה "אבו סעדי" אל "אבו מועאוי", וביקש לקבל" מטען חבלה.
"אבו סעדי" חשכ"ף ל"אבו מועאוי" כי בכוונתו לתקוף את מטען חבלה מנתחת ל-רבב ולפוצצו
בכוונה לגרום למותם של אזרחים ישראליים רבים ב-כל האפשר.

2. "אבו מועאוי" פנה אל ה**נאשם** וביקש לקבל מטען חבלה לאורך ביצוע הפיגוע המתוכנן. לאחר
מספר ימים, ברמאללה או במועד לכך, העביר ה**נאשם** לידי ה"אבו מועאוי" מטען חבלה
חמושתר בתוך קרטון מיץ וכן שלט רצון לצורך הפעלת מטען חבלה הנ"ל. הנאשם תרא ה
ל"אבו מועאוי" כיצד מפעילים את מטען חבלה הנ"ל.

3. בא"וו חיום, 06.08.02, "אבו מועאוי", ביחד עם ולד ל'עעירו ע'אחדי אנג'אס נסעו לבית
א"כתם כאשר ברשותם מטען חבלה הנ"ל.

4. "אבו מועאוי" וולד אנג'אס נסעו ברכבו של "אבו מועאוי", כאשר "אבו מוע'זי" נהנ ברכב
א'ינל ולד אנג'אס ישב במושב האחורי ומחזיק בידיו את מטע חבלה. הונכנ כי אם "אבו
מועאוי" וולד אנג'אס יתקולו בכוחות הביטחון הישראליים, ולד אנג'אס יק ץ-ץ מהרכב עם
מטען חבלה ויימלק ממקום או שיורותם את מטען חבלה מהרכב.

5. בבית א"כתם, "אבו מועאוי" וולד אנג'אס נפגשו עם "אבו סעדי" והעבירו י'ידו את מטען
חבלה הנ"ל עם שלט רחוק. "אבו מועאוי" הסביר ל"אבו סעדי" כיצד לה'עיל את מטען
חבלה הנ"ל.

6. הוטו תחשומ במצעון חבלה האמנור לא היו מחוברים, ו"אבו מועאוי" חיברב על מנת לחכ"ין
את מטע חבלה למצעון וזאת לפני שמסר את הצעון לידי "אבו סעדי".

7. ביום המחרת, 07.08.02, "אבו סעדי" ו'סאס סעיף עבאטי חבבוני את מטען חבלה הנ"ל
למיכלית דלק, מ.ר 3383. שנהתנה בשכונת וסטנה ואב בירושלים או בס-ודך לכך. לאחר
מספר שעות, בסמוך לשעה 13:50, "אבו סעדי" הפעיל את מטען חבלה הנ"ל באמצעות
ממשיר טלפון סלולרי, וזאת בכוונה לגרום למותם של אנשים רבים בכל וכא-משר. כמטען
שהונח במיכלית חד'לק האמורה התפוצ, וזאת כאשר מיכלית חד'לק היתה ב-מוך ברחוב
שמוטקין 23 בראשון לציון, התפוצ.

8. כתוצאה מפצוץ מטען חבלה הנ"ל נגרם נזק למיכלית חד'לק ורק בנס אש לו נפגע.

9. לאחר ימים, "אבו מועאוי" נפגע שוב עם "אבו סעדי", אשר מסר ל"אבו מועאוי" כי הוא
וחברנו הניחו את מטען חבלה הנ"ל מתחת לרכב במסרת לפוצצו ולגרום למותם של
אזרחים רבים ב-כל האפשר, אך מטען חבלה הנ"ל לא התפוצ.

10. מיד לאחר מכן, ה"אבו מועאוי" נפגש עם ה**נאשם** וד-יווח לאחרון על אי-הצלחת הפיגוע
המתוכנן.

**פרט החמישים וחמ-ישה:**

**מהות העבירה:** ניסיון לגרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו ב-דבר הוראות ביטחון
(יהודה והשומרון) (מס' 378), תש"ל- 1970 וסעיפים 14א(ב)(2) 19 ו-20 לצו בדנו- כללי האחריות
לעבירה (יהודה והשומרון) (מס' 225), תשכ"ח 1968-.

**פרטי העבירה:** הנאשם הנ"ל, באיזור, במהצית הראשונה של חודש אוגוסט 200; או בסמוך לכך,
ניסה לגרום בכוונה למותו של אחר, דהיינו :

1. במועד האמור לעיל, נפגש עם ה**נאשם** עם "אבו מועאוי" ומסר לו ברצונו ל-בצע פיגוע תופת
נוסף בכוונה לגרום למותם של אזרחים רבים ב-כל האפשר, וזאת בנקמה ו-ל' מותו ו-ל' פעיל
בכיר בארגון התחמאס צלאח שחאתה. ה**נאשם** מסר ל"אבו מועאוי" כי ראו-: בטלוויזיה שיש

</div>

15

CONFIDENTIAL                                                          SHATSKY-JD01577

מוער ון בשם "צוותא" בתל-אביב וביקש ממנו לבדוק את המקום ויאסוף מידע לקראת ביצוע פיגוע חותפת במועדון האמור.

2.   הנאשם ביקש מי"אבו מועטי" לרכוש בחנות של גילאני בית חנינא מי חומל לצורך יצור חומרי נפץ. "אבו מועטי" אף קיבל מהנאשם סכום של 2,200 ש"ח לצורך רכישת המוצרים הנ"ל. "אבו מועטי" פנה אל "אבו סעדי", וביקש מאחרון לרכוש את החומרים הכימיים הנ"ל.

3.   למחרת "אבו סעדי" נפגש שוב עם "אבו מועאו" ומסר כי חנות של גילאני לא נמצאת בבית חנינא, אלא בא-ראם. "אבו מועטי" מסר זאת לנאשם אשר ביקש כי "אבו ואחזי" ידרוש באמצעות אדם שלישי בחנות האמורה 60 ליטר של מי חמצן, 3-5 ליטר של צבע וטודה באשים, כאשר כל החומרים הנ"ל נועדו לייצור חומרי נפץ. "אבו מועטי" יצר כשר טלפוני עם חנות של גילאני בא-ראם וביקש לרכוש את החומרים הכימים הנ"ל. "אבו מועטי" סיכם עם בעל גילאני הנ"ל, אחמד גילאני, כי "אבו מועאו" יגע ביום ראשון לקחת את החומרים הכימיים הנ"ל.

4.   "אבו מועטי" פנה אל אחמד לוטפי ממחד אשקר ובקש מהאחרון להביא את החומרים הכימיים הנ"ל מחנותו של גילאני בא-ראם לרפואלמה. לאחר שמחמד אשקר הסכים, "אבו מועטי" מסר לו סכום של 2,200 ש"ח, אותם קיבל מהנאשם האמור לעיל.

5.   לאחר כשבוע ממחד אשקר הביא מחנותו הנ"ל אל "אבו מועטי" ברמאללה 60 ליטר של מי חמצן. "אבו מועטי" שילם למחמד אשקר עבור שירותו הנ"ל 70 ש"ח. "אבו מועטי" העביר את 60 ליטר ממי החומצן הנ"ל לידי הנאשם.

6.   לאחר מכן, בתחבתא בני הארץ, "אבו מועאו" ביחד עם ולד י' ענגוזו עהאדי אנג'אס, יצרו מיתרנץ מי הוחמצו הנ"ל חומרי נפץ.

7.   לצורך ביצוע פיגוע התופת המתוכנן, "אבו מועאו", ביחד עם ולד אנג'אס, בחובאו בני הארץ או בסטארז' לכך, יצרו מטען חבלה המורכב משני מיכל י' שמופל המלאים בחו צר הנפץ הנ"ל. "אבו מועאו" וולד אנג'אס חיברו מנגנ י' הפעלה והחשמל מחברו מנגנ י' ההפעלה למיהון הנ"ל.

8.   לאחר מכן, ביום 17.08.02, "אבו מועאו", ביחד עם ולד אנג'אס, כאשר "אבו מועאו" נהבלה הנ"ל. "אבו מועטי" וולד אנג'אס נסע ברכבו של "אבו מועאו" וסתבר כי נתו הרכב ואינו ולד אנג'אס ושב במוהש האחורי ומחזיק בידיו את מטען התבלה. ובכנ/סתם של צה"ל, אם "אבו מועטי" וולד אנג'אס יתקלו בכוחות הבטליאלים הישראליים או שיזרוק את מטען החבלה וליד אנג'אס יקפוץ מהרכב עם מטען חבלה וימלט מהמקום או שורוק את מהרכב.

9.   בעת איתכם "אבו מועטי" וולד אנג'אס נפגש עם "אבו סעדי". "אבו מועטי" ביקש מי"אבו סעדי" לאסתור מידע לקראת פיגוע התופת המתוכנן במועדון "צוותא" בתל-אביב. וכן מסר לידי "אבו סעדי" את מטען התבלה הנ"ל לצורך חודלצאת לפעול של הפיגוע. "אבו מועטי" רשם על מ סכת קרטון, אותה מסר לי"אבו סעדי" "מועדון צוותא" (בשפה הע"בית) וכן מ ספר הטלפון הסלולריי המחולוו אל מטע חבלה הנ"ל, כאשר החזיק למ ספר ה אמור מפעיל את מטע התבלה הנ"ל.

10.  "אבו סעדי" מסר לי"אבו מועאו" כי ניתן לבצע את הפיגוע המתוכנן גם בזעצוורת המתמצאת בצומת מ ספטית (צומת ראם).

11.  הפיגוע המתוכנן לא יצא אל הפועל, מכיוות שבלילה, שלאחר הפגישה עם "א.ו' מועאו", "אבו סעדי" נעצר על-ידי כוחות הביטחון הישראליים. גם "אבו מועאו" נעצר על-ידי כוחות הביטחון ביום 18.08.02.

## פרט התשיעי ושישה:
**מחזת העבירה:** סחר בצ יוד מלחמתי, עבירה לפי סעיף 2 לצו בדבר איסור סח' בצ יוד מלחמתי (יהודה והשומרון) (מס' 243), תשכ"ח 1968.
**פרטי העבירה:** הנאשם הנ"ל, באיזור, בחודש אפריל 2006 או במועד הסמוך לכך, סחר או עסק בצ יוד אחרת בציוד מלחמתי, ללא היתר חתום על-ידי מפקד האיזור או מטעמו, דהינו: במטען האמ ור, במזרעו קבלו או בסמוך לכך, מסר הנאשם לאחו לדאורות אקדח וזאת ללא היתר האמ ור ממפקד האיזור או מטעמו.

16

CONFIDENTIAL
SHATSKY-JD01578

APR-14-2011  17:18  From:GOV-SALH-M        846111741        To:022954953        Page:17/33

פרט חמישים ושבעה:
מהות העבירה: ביצוע שירות עבור התאחדות בלתי מותרת, עבירה לפי סעיפים 84 85-(1)(א)(ג)

פרטי העבירה: בשנת התאחדות בלתי מותרת, 1945.

פרטי העבירה: הנאשם הנ"ל, באיזור", ביום 18.04.06 או בסמוך לכך, עשה כל עבודה או
ביצע כל שירות בשביל התאחדות בלתי מותרת, דהיינו: הגיע
במועד האמור לעיל, במגרעת שבילו או במקום הסמוך לכך, נפגש הנאשם עם חסן לד־זרווה. הגיע
עיכוב את הנאשם לנגד ותתשרותיהם עם ארגון הנמא"ס באמצעות ראמזי אבו ריאש, אשר העריך
כי הינו עם רצועת עזה. הנאשם מצוע לחסן הניע הניע הג"ל לפעול עם הפעילים עם הפעילים הגרצועת עזה
וחסן הסכים לכך. הנאשם אמר כי כובע מטרת התהליות חובאיות צריכה להיות חסיפת דלא
פוגעני התהאבדות.

הנאשם מסר לחסן תניל כי מגע לבית והישרשות ותניע ובן בלי נשק וביקש מחוון להשתמש
הנאשם מסר לחסן הניל כי ושאחר מכן ושתמשה הנאשם במחשב הנאשם ו:ד־רטיט זכרון
במחשב שבביתו. וחסן הסכים לכך ולאחר מכן ושתמשה הנאשם במחשב הנאשם ברום מיחץ לגבי פעולות ארגון
נייר אותו תמיא עמו ודפיס של ארגון הנמא"ס וחנהיניע לעזוס תולייה צבי ות מצליחה.
התמא"ס בפאירות, ומצג תפליטו של ארגון הנמא"ס ונהניניע לעזוס תולייה צבי ות מצליחה.
בנוסף תעתיק הנאשם לכרטיס הזכרון הגייד מטמון בנוגע לונוכנית אורפית לתק־יפת אזרחים
ישראלכים שכלל רשימה של אנשים המחווים יעד לחטיפה.
אחד כך, דאגו הנאשם וחסן הניל לחסלקלות הנוק עם בלי הנשק בחצר ביתו של חסן. הנאשם מסר
לחסן שהוציע נועד לחזלית צבא"יל ותיון צבא"יל אותם עלעי יקום.
ומן קצר לאחר מכן, פשטו כוחות צה"יל של ביתו של חסן הניל אולם הנאשם וחסן הנ ליתו
לחימלט וברחו בשנוותא לאזור "אסכאן".

פרט חמישים ושמונה:
מהות העבירה: התזקת אמלייה, עבירה לפי סעיף 53(א)(1) לצו בדבר הוראות :טוחו (יהודה
והשומרון (מס' 378), תשי"ל-1970.

פרטי העבירה: הנאשם תניל, באיזור, חאל ממומר אשר אינו ידוע לתובע ועד לדים 18.04.06 או
בסמוך לכך, החזיק ברשותו כלי־ירה, תחמושת, מצצה, ריטון־יד או תפץ טניר או מבעיר,
כלי או תפץ או דבר הממתוכן או מטוגל לגרום מוות או חבלה חמורה, ללא הנאתדותי־ית ייותר שהוענקה
על־ידי מפקד צבאי או מטעמו, דהיינו:

במהלך חתקופה והאמורה לעיל, החזיק הנאשם בתיק ובו אמצעי הלחימה הבאים:
* 3 רובי סער "קלצ׳ניקוב"
* 5 מחסניות ריקות
* 125 כדורי תחמושת בקוטר 9 מ"מ.

פרט חמישים ותשעה:
מהות העבירה: החזקת אמלייה, עבירה לפי סעיף 53(א)(ג) לצו בדבר הוראות בטחון (יהודה
והשומרון (מס' 378), תשי"ל-1970.

פרטי העבירה: הנאשם תניל, באיזור, החל ממומר אשר אינו ידוע לתובע ועד ד יום 23.5.06 או
במועד הסמוך לכך, החזיק ברשותו כלי־ירה, תחמושת, מצצה, רימון־יד או תפץ טניר או מבעיר,
כלי או תפץ או דבר הממתוכן או מטוגל לגרום מוות או חבלה חמורה, ללא הנאתדותי־ית ייותר שהוענקה
על־ידי מפקד צבאי או מטעמו, דהיינו:

במהלך חתקופה והאמורה לעיל, החזיק הנאשם בתיק ובו אמצעי הלחימה הבאים:
* אקדח תופי
* אקדח "שמית" (וטסון)"
* רובי"ע קלצ'ניקוב
* מחסנית
* 54 כדורים.

P.19/33        ID:846111741        IU        משפחהat Iשם           13-23-2881-2681
CONFIDENTIAL                                                                SHATSKY-JD01578

CONFIDENTIAL
13-MAR-2011 17:19 From:ADV-SALH-M            046111741            To:022954953            Page:19/29            SHATSKY-JD01579

פרט שישינם (ת.פ.א. 10283/01 ציון)

מהות העבירות: גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה
והשומרון) (מס' 378), תשל"ו-1970 וסעיף 14(א)(2) לצו בדבר כללי האחריות לעבירה (יהודה
והשומרון) (מס' 225), תשכ"ח-1968. הנאשם הנ"ל, הן בעצמו והן מתוצו לו, ביום 01 1.12 או בסמוך לכך גרם במוונה
למותם של אחר, דהיינו:

1. בחודש אוקטובר 2001 או בסמוך לכך, פנה גימאל מחמד פתח טוויל (להלן: "גימאל") למנהל של פעילים לטשום וציין בפניו כי ישנם שני בחורים עם קשר והמעונינים לפעול במסגרת האינתיפאדה במסגרת ארגון "יהודאמא"ט" (להלן: אוסאמה מחמד בחיר צבאיים במחלל גימאל חלביה). גימאל שאל את הנאשם האם יש משהו שיוכל לפעש אותם ובכל מחמד גימאל חלביה). גימאל שייט כי גימאל יודיע לאחד מתבחורים להגיע לפגישה / ומם במקום הסמוך לבית החולים ברמאללה וקבע אף יום ושעה לפגישה זו.

2. לאחר מכן, פנה הנאשם לצבאיר, פעיל חמא"ית בכיר, צאלח תלחמה (להלן: "ז'ח אלחי"), ועדכן אותו בבקשתנם של אוסאמה מחמד בחיר ונבל מחמוד גימאל חלביה. הנא אם שלח את צאלח למושות האמורה.

3. בשובו מן הפגישה, ציין צאלח בפני הנאשם כי נפגש עם אוסאמה מחמד בחיר ועדכני כי דבר האחרון ונבל מחמוד גימאל חלביה מעונינים לבצע פיגוע התאבדות. צאלח הונאשם דנו בנושא וסברו כי לטוות הארון ארגון החמא"ים יפיק תועלת גדולה יוחר אם אוסאמה מחמד בחיר ונבל מחמוד גימאל חלביה יסיעו לתם עם אחרים, כגון / א' סוף מוד'יעין, מאחר ושניהם תשבי ירושלים, וזאת על פני שלחחתם לבצע פיגוע התאבדות.

4. צאלח עדכן את הנאשם כי נפגש פעם נוספת עם אוסאמה מחמד בחיר ונבל מחמוד גימאל חלביה ונעזת לחניהם מלבצע פיגוע התאבדות מסקינים המנוים לעיל, אולם ללא הצלחה. צאלח ציין בפני הנאשם מאחד בחיר ונבל מחמוד גימאל חלביה נחושים בדעתם לבצע פיגוע התאבדות בפול במרכז ירושלים במקום המוכר לחם / ג' חם ידיעים בירושלים הוטב ביותר לביצוע חמיגוע. הנאשם אמר בתגובה לצאלח כי הוא מעדיף שכל מחו חמושו יבצע פיגוע בקצר של מספר ימים / כד חביבצ יוחטב. כשני פיגוענים שהאחרון יוצא אל חפעל.

5. לאחר מכן, צאלח עדכן את הנאשם כי אוסאמה מחמד בחיר ונבל מחמוד גימאל חלביה מסרבים לבצע פיגוע בנפרד, כהצעת הנאשם האמורה.

6. לאחר מותו של פעיל החמא"ים, מחמוד אבו חנוד, במחצית השנייה של חדש אוקטובר 2001, גמר צאלח בדעתו מאשם אומר בליבו לשלוח את אוסאמה מחמד בחיר ונבל מחמוד גימאל חלביה לבצע פיגוע התאבדות יחדיני כנקמה על מותו.

7. לצורך הוצאת הפיגוע אל הפועל, ידע צאלח את עבדאללה את עבדאללה ברוגות' (להלן: "עבדאללה"), באמצעות סלפיק הקשר סימר עכרים חדיר / שוק"קאפס המכונה "צלאח '2'" (להלן: "צלאח '2'"), בדבר מובנותם של אוסאמה מחמד בחיר ונבל מחמוד גימאל חלביה. עבדאללה חסכים לבצע לפועל בעיילין.

8. לאחר מכן, יצר עבדאללה חומר נפי מטוב אלפבי"מ מחמוד הגלם 20וא.

9. נמחמר חנפני, יצר עבדאללה שלושה משטעני חבלה. את מטעני החבלה הראשון והשני עבדאללה אל תוך נאמר מחשב, את מטעני החבלה השני תהיך בצורת של חגורת נפש ואילו עבדאללה השלישי הכניס את תוך נאמר בד שחור. בנטף לחומר הנפי' הנ"ל, מכניס את מטעני השלישי הכניס דסק מתכתי, ומדורבצ, בין חיתור, ממה מרגם ואומם, עבדאללה למטעני התאבדו דסק מתכתי במצם. בשלושת מטעני חהנבלה, חורבץ על מנת להגביר את עוצמת הפעות בעת פעלצם. / במהרז תמשחב עבדאללה מנגנוני הפעלה, מחשר מטעני החבלה שחורבצה בתוה בד שחור חופעלו על-ידי לחיצה על מפסק התחפלחה ואילו מטעי חבלה האמורים חומר ראעיל חופעל באמצעות שעון עצר. כמו כן, הכניס עבדאללה למטעני חבלה האמורים חומר ראעיל

10. עבדאללה מסר את שלושת מטעני החבלה הנ"ל לצלאצא '2' על מנת שהאחרון ידאג להעביר את מטעני חמא"ים, אשר יבצעו באמצעותם את הפיגוע ומהוכני. עפ"י התניכית, תשולב בפעות התאבדות הכפל ממוניח תוחף אשר התפצצ אמצעות מטען תחבלה אותו חכניס עבדאללה לתוך מוד' השיוון, כאמור לעיל.

11. לאחר מכן, מטעני חחבלה חנ"ל הוברו לידי אוסאמה מחמד בחיר ונב"ל מחמוד גימ"ל חלביה ומטען החבלה, אשר הוסתר בתיק בד שחור, הוטמן בתוך רכב נצבע כחול מסוג אופל קדם, מ.ר. 67-749-47.

18

CONFIDENTIAL
13-MAR-2011 17:19 From:ADV-SALH-M          046111741          To:022954953

SHATSKY-JD01580
Page:19/33

12. ביום 01.12.01, בסמוך לשעה 36 :23, בכניסה מכיכר ציון לרחוב בן יהודה בירושלים או
בסמוך לכך, הפעיל המתאבד אוסאמה מחמוד בחיר הפעיל את מטען התבניה, אשר יוצר
על-ידי עבד'אללה והוטמן בתוך מאריז מחשב כאמור לעיל, וזאת בכוונה לגרום למותם של
אנשים רבים ככל האפשר. מטען חבלה הנ"ל התפוצץ.

13. באותו היום, בסמוך לשעה הנ"ל, בצומת הרחובות בן-יהודה - לוטי בירושלים או בסמוך
לכך (גרחוב של מטרים ספורים ממקום פיצוץ המטען הראשון), המחבל המתאבד תשני
נביל מחמוד ביגמיל חלבני הפעיל את מטען חבלה, אשר יוצר על-ידי עבד'אללה בצורה של
חגורת נפץ כאמור לעיל, וזאת בכוונה לגרום למותם של אנשים רבים ככל האפשר. מטען
חבלה הנ"ל התפוצץ.

14. באותו היום, מספר דקות לאחר ששני המחבלים המתאבדים הנ"ל הפעילו את מטעני
חבלת הנ"ל, הופעל מטען חבלה השלישי אשר הוטמן בתוך רכב של שתי כאמור לעיל.
מטען חבלה השלישי הופעל ברכב מסוג מסדא אופל קדט, מ.ר. 87-749-47, אשר חנה ברחוב
הרב קוק בסמוך לפינת רחוב יפו בירושלים (גרחוב של כמה עשרות מטרים ממקום
פיצוצם של שני מטעני חבלה הנ"ל) הופעל בכוונה לגרום למותם של
אנשים רבים ככל האפשר.

15. כתוצאה מהפעיל שלושת מטעני חבלה הנ"ל, אשר פוצצו כפי שתואר לעיל, נרצחו 11
אנשים ונפצעו כ-191 בני אדם, כפי שיפורטו בפרטי האישום הבאים.

16. במעשיו המתוארים לעיל, הנאשם חנ"ל גרם בכוונה למותם של יוסף אלעזרה ז"ל, בן 18
כמותו, אשר נהרג כתוצאה מפיצוץ מטעני חבלת במרכז ירושלים כפי שתואר לעיל.

**פרט שישים ואחד : (א.פ.) 10283/01 ציון:)**

**מהות העבירה:** גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה
ושומרון) (מס' 378), תשי"ל-1970 וסעיף 14(א)(2) לצו בדבר כללי האחריות לעבירה (יהודה
והשומרון) (מס' 225), תשכ"ח-1968.

**פרטי העבירה:** הנאשם הנ"ל, במועד ובנסיבות המתוארות בפרט האישום חמישים, גרם בכוונה
למותו של אחר, דהיינו :
במועד ובנסיבות האמורות לעיל, גרם הנאשם בכוונה למותו של אסף אבישר ז"ל.

**פרט שישים ושניים : (א.פ.) 10283/01 ציון:)**

**מהות העבירה:** גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה
ושומרון) (מס' 378), תשי"ל-1970 וסעיף 14(א)(2) לצו בדבר כללי האחריות לעבירה (יהודה
והשומרון) (מס' 225), תשכ"ח-1968.

**פרטי העבירה:** הנאשם הנ"ל, במועד ובנסיבות המתוארות בפרט האישום השישים, גרם בכוונה
למותו של אחר, דהיינו :
במועד ובנסיבות האמורות לעיל, גרם הנאשם בכוונה למותו של גיא וקנין ז"ל.

**פרט שישים ושלושה : (א.פ.) 10283/01 ציון:)**

**מהות העבירה:** גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחוני (יהודה
ושומרון) (מס' 378), תשי"ל-1970 וסעיף 14(א)(2) לצו בדבר כללי האחריות לעבירה (יהודה
והשומרון) (מס' 225), תשכ"ח-1968.

**פרטי העבירה:** הנאשם הנ"ל, במועד ובנסיבות המתוארות בפרט האישום חשי'ויום, גרם בכוונה
למותו של אחר, דהיינו :
במועד ובנסיבות האמורות לעיל, גרם הנאשם בכוונה למותו של יוני קורוגוב ז"ל.

**פרט שישים וארבעה : (א.פ.) 10283/01 ציון:)**

**מהות העבירה:** גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות:ני (יהודה
ושומרון) (מס' 378), תשי"ל-1970 וסעיף 14(א)(2) לצו בדבר כללי האחריות לעבירה (יהודה
והשומרון) (מס' 225), תשכ"ח-1968.

**פרטי העבירה:** הנאשם הנ"ל, במועד ובנסיבות המתוארות בפרט האישום השי'שים, גרם בכוונה
למותו של אחר, דהיינו :
במועד ובנסיבות האמורות לעיל, גרם הנאשם בכוונה למותו של יעקב ישראל דינו ז"ל.

19

CONFIDENTIAL

SHATSKY-JD01580

CONFIDENTIAL
15-MAR-2011 17:20 From:ADV-SALH-M          046111741          To:022954953          Page:20/25          SHATSKY-JD01581

**פרט שישים וחמישה: (פ.א. 10283/01 ציון):** לצו בדבר הוראות בין חזון (יהודה
**מהות העבירה:** גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר כללי האחריות לעב רה (יהודה
והשומרון) (מסי 378), תשי"ל-1970) וסעיף 14(א)(2) לצו בדבר כללי
והשומרון (מסי 225), תשכ"ח-1968.
**פרטי העבירה:** הנאשם חייל, במועד ובנסיבות המתוארות בפרט האשים חמישים, גרם בכוונה
למותו של אחר, דהיינו :
במועד ובנסיבות האמורות לעיל, גרם הנאשם בכוונה למותו של מיכאל דהאן ז"ל.

**פרט שישים ושישה: (פ.א. 10283/01 ציון):** לצו בדבר הוראות ביחזון (יהודה
**מהות העבירה:** גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות בליחזון (יהודה
והשומרון (מסי 378), תשי"ל-1970) וסעיף 14(א)(2) לצו בדבר כללי האחריות לעבירה (יהודה
והשומרון (מסי 225), תשכ"ח-1968.
**פרטי העבירה:** הנאשם חייל, במועד ובנסיבות המתוארות בפרט האשים וחמישים, גרם בכוונה
למותו של אחר, דהיינו :
במועד ובנסיבות האמורות לעיל, גרם הנאשם בכוונה למותו של גולן תורג'מן ז"ל.

**פרט שישים ושבעה: (פ.א. 10283/01 ציון):** לצו בדבר הוראות ביטחון (יהודה
**מהות העבירה:** גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר כללי האחריות לע-בירה (יהודה
והשומרון (מסי 378), תשי"ל-1970) וסעיף 14(א)(2) לצו בדבר כללי
והשומרון (מסי 225), תשכ"ח-1968.
**פרטי העבירה:** הנאשם חייל, במועד ובנסיבות המתוארות בפרט האשים השישים גרם בכוונה
למותו של אחר, דהיינו :
במועד ובנסיבות האמורות לעיל, גרם הנאשם בכוונה למותו של אדם וינשטיין ז"ל.

**פרט שישים ושמונה: (פ.א. 10283/01 ציון):** לצו בדבר הוראות ב-טחון (יהודה
**מהות העבירה:** גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר כללי האחריות לעבירה (יהודה
והשומרון (מסי 378), תשי"ל-1970) וסעיף 14(א)(2) לצו בדבר כללי
והשומרון (מסי 225), תשכ"ח-1968.
**פרטי העבירה:** הנאשם חייל, במועד ובנסיבות המתוארות בפרט האשים השישיך, גרם בכוונה
למותו של אחר, דהיינו :
במועד ובנסיבות האמורות לעיל, גרם הנאשם בכוונה למותו של משה יונה-לוי ז"ל.

**פרט שישים ותשעה: (פ.א. 10283/01 ציון):** לצו בדבר הוראות ביטחון (יהודה
**מהות העבירה:** גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר כללי האחריות ליגבירה (יהודה
והשומרון (מסי 378), תשי"ל-1970) וסעיף 14(א)(2) לצו בדבר כללי
והשומרון (מסי 225), תשכ"ח-1968.
**פרטי העבירה:** הנאשם חייל, במועד ובנסיבות המתוארות בפרט האשים חמישים, גרם בכוונה
למותו של אחר, דהיינו :
במועד ובנסיבות האמורות לעיל, גרם הנאשם בכוונה למותו של ניר חפצדי ז"ל.

**פרט שבעים: (פ.א. 10283/01 ציון):** עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה
**מהות העבירה:** גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר כללי האחריות יעבירה (יהודה
והשומרון (מסי 378), תשי"ל-1970) וסעיף 14(א)(2) לצו בדבר כללי
והשומרון (מסי 225), תשכ"ח-1968.
**פרטי העבירה:** הנאשם חייל, במועד ובנסיבות המתוארות בפרט האשים חמישים, גרם בכוונה
למותו של אחר, דהיינו :
במועד ובנסיבות האמורות לעיל, גרם הנאשם בכוונה למותו של עידו כהן ז"ל.

**פרט שבעים ואחד : (פ.א. 10283/01 ציון):** עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון
**מהות העבירה:** ניסיון לגרימת מוות בכוונה, עבירה לפי סעיף 14(א)(2)(ב), 19, ו-20 לצו בדבר כללי האחריות
(יהודה והשומרון) (מסי 378), תשי"ל-1970) וסעיף (מסי 225), תשכ"ח-1968.
לעבירה (יהודה והשומרון) (מסי 225), הנאשם חייל, הן באזור ורן מחוצה לו, ביום 01.12.01 או במו נד הסמוך לכך,
**פרטי העבירה:** הנאשם חייל, דהיינו :
ניסה לגרום בכוונה למותו של אחר, במעשיו ה נתוארים בפרט
חמישים חייל, במועד ובנסיבות האמורים רבים כפל כל האשמר.
האשאם השישים, ניסה לגרום למותם של אזרחים רבים בפרט האישים חמישים, בצע כ-191 בני
כתוצאה מפצצו מטען חתבלה שחתפעל כפי שתנאר בפרט האישים חמישים,
אדם.

20

CONFIDENTIAL
13-MAR-2011 17:50 From:ADV-SALH-M          046111741          To:022954953          SHATSKY-JD01582
Page:21/29

**עדי התביעה:**

1. חמטנא "אלוי".
2. חמטנה "ירדו".
3. חמטנה "נורנו".
4. חמטנה "אבו יוסף".
5. מחמד חטן אחמד ערכטן, ת.ז. 6259 [Redacted] (שפוט).
6. עבדאללה עיאלב עבדאללה בירטוני, דרכון ירדני 1198 [Redacted] (שפוט).
7. וליד עעניו עראמאני אנגאס, ת.ז 8108 [Redacted] (שפוט).
8. חזיפה אברהים עג'ילי אנגאס, ת.ז 6538 [Redacted] (שפוט).
9. ואאל מחמוד מחמד צלי קאסם, ת.ז. 2755 [Redacted] (שפוט).
10. וסאם סעיד מוסא עבאסי, ת.ז. 1403 [Redacted] (שפוט).
11. מחמד אסדאק עודה, ת.ז. 1302 [Redacted] (נשפוט).
12. עלאא א-דין מחמוד עבאסי, ת.ז. 4818 [Redacted] (שפוט).
13. אסלאם חטן גמיל חאמו, ת.ז 7933 [Redacted] (שפוט).
14. עבדאללה אסמעיל מחמד תאמד (שפוט).
15. רבחי רבחי עימגיד חזון, ת.ז 4466 [Redacted] (נשפוט).
16. חטן ערחמן חטן לראהזוה, ת.ז 3486 [Redacted] (שפוט).
17. רסים האלד סרהאן, מ.א. 1786 [Red] , מתי"ק (עורך דו"ח מעלה+וכ"ד ופטיסו וסימון+זכ"ד חבוחה).
18. רסים דוד כהן, מ.א. 3308 [Red] מז"ים בזימין (שרשרת מוצג+דו"ח שרשרת מצגו ה-חהרח).
19. צבי שדה, תחנת בנימין (שרשרת מוצג+ערוך טופס משלוח מוצגים).
20. אייל שחר, צחי"ל (פרטים בתביעה).
21. מאיר וענונו, מ.א 1849 [Red] משטרת וברון (מגיש טופס משלוח מוצגים למעבדה נשק).
22. רסיל מקסים פלמור, מ.א 7119 [Red] אחראי נשקיויה בנימין, צחי"ל (שרשרת מו' ג).
23. רסיל אבניעם בצאלאל, מ.א 6557 [Red] צחי"ל (מגיש דו"ח תפיסה).
24. רסיל זיות חוטר, מ.א 2699 מז"ים (מגישת דו"ח קבלת מוצגים לבדיקה).
25. כרטיס לרישום מוצגים 277/06 בנימין.
26. אבי קופמן, מעבדות נשק, מטא"ר (עורך חוות דעת מומחה מיום 11.6.06).
27. רסיל יצחק יעקבוף מ.א 8358 [Red] (גובה אמרת הנאשם מיום 18.7.06).
28. מיכאל מחמד פרח טוויל ת.ז. 0271 [Redacted] (פרטים בתביעה).

**ת.א 268/02 שבע**

29. אויל תיעטר (פרטים בתביעה)
30. סרגיי צליבניב (פרטים בתביעה)
31. פקד איגור פקרמן, מ.א 1604 [Red] מחלקת חבלה (מגיש חו"יד מומחה, מגיש דו"ה תפיסת וסימון)
32. שרח אברמוביץ'-בר, מז"ים (מגישת חו"יד מומחה)
33. כרטיס לרישום מוצגים 183/02

**ת.א 1512/02 טוריה**

34. דניאל תורצימן (פרטים בתביעה)
35. מרדכי (מוטו) מורחי (פרטים בתביעה)
36. אמיר משה (פרטים בתביעה)
37. רונן מרדכי (פרטים בתביעה)
38. קוטיימק קאזרו (פרטים בתביעה)
39. אבניגיל חן (פרטים בתביעה)
40. מיכל דטשטולד (פרטים בתביעה)
41. דנה חיימזון (פרטים בתביעה)
42. רועי ביטון (פרטים בתביעה)

CONFIDENTIAL                                                           SHATSKY-JD01582

Exhibit 171

| Prisoner Salary Statement | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Prisoner no. 21418 | | | | | | | | |
| Prisoner Name:  Ibrahim Jamil Abd el-Ghani Hamed | | | | | | | | |
| Document no. 991260886 | | | | | | | | |
| Month | Year | Beneficiary | ID no. | Bank Name | | Branch | Account no. | Salary |



Redacted

Page 1 of 8

Confidential

Shatsky-JD00442-T

| Prisoner Salary Statement | | | | | | | |
|---|---|---|---|---|---|---|---|
| Prisoner no. <u>21418</u> | | | | | | | |
| Prisoner Name:  !brahim Jamil Abd El-Ghani Hamed | | | Document no. <u>991260886</u> | | | | |
| Month | Year | Beneficiary | ID no. | Bank Name | Branch | Account no. | Salary |



Redacted

Page 2 of 8

Confidential

Shatsky-JD00443-T

Case 1:18-cv-12355-MKV-DCF  Document 177-26  Filed 05/16/22  Page 42 of 56

| | | | Prisoner Salary Statement | | | | | |
|---|---|---|---|---|---|---|---|---|

Prisoner no. 21418
Prisoner Name:  Ibrahim Jamil Abd el-Ghani Hamed     Document no. 991260886

| Month | Year | Beneficiary | ID no. | Bank Name | Branch | Account no. | Salary |
|---|---|---|---|---|---|---|---|

Redacted

Confidential

Shatsky-JD00444-T

| Prisoner Salary Statement | | | | | | | |
|---|---|---|---|---|---|---|---|
| Prisoner no. 21418 | | | | | | | |
| Prisoner Name:  Ibrahim Jamil Abd el-Ghani Hamed | | | Document no. 991260886 | | | | |
| Month | Year | Beneficiary | ID no. | Bank Name | Branch | Account no. | Salary |



Redacted

Page 4 of 8

Confidential

Shatsky-JD00445-T

| Prisoner Salary Statement | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Prisoner no. 21418 | | | | | | | | |
| Prisoner Name:  Ibrahim Jamil Abd el-Ghani Hamed | | | | Document no. 991260886 | | | | |
| Month | Year | Beneficiary | | ID no. | Bank Name | Branch | Account no. | Salary |



Redacted

Confidential

Shatsky-JD00446-T

Prisoner Salary Statement

Prisoner no. 21418
Prisoner Name: Ibrahim Jamil Abd el-Ghani Hamed     Document no. 991260886

| Month | Year | Beneficiary | ID no. | Bank Name | Branch | Account no. | Salary |
|-------|------|-------------|--------|-----------|--------|-------------|--------|



Redacted

Page 6 of 8

Confidential

| Prisoner Salary Statement | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Prisoner no. 21418 | | | | | | | | |
| Prisoner Name:  Ibrahim Jamil Abd el-Ghani Hamed | | | Document no. 991260886 | | | | | |
| Month | Year | Beneficiary | ID no. | Bank Name | Branch | Account no. | | Salary |
| | | | | | | | | |
| 4 | 2020 | Muhammad Najib Jamil Hamed | Redacted 0845 | | | | | 6,085.00 |
| 4 | 2020 | Al-Karamah Housing Cooperative for [last word cut off] | 202020 | | | | | 1,000.00 |
| 5 | 2020 | Muhammad Najib Jamil Hamed | Redacted 0845 | | | | | 6,085.00 |
| 5 | 2020 | Al-Karamah Housing Cooperative for [last word cut off] | 202020 | | | | | 1,000.00 |
| 6 | 2020 | Muhammad Najib Jamil Hamed | Redacted 0845 | | | | | 6,485.00 |
| 6 | 2020 | Al-Karamah Housing Cooperative for [last word cut off] | 202020 | | | | | 1,000.00 |
| 7 | 2020 | Muhammad Najib Jamil Hamed | Redacted 0845 | | | | | 6,085.00 |
| 7 | 2020 | Al-Karamah Housing Cooperative for [last word cut off] | 202020 | | | | | 1,000.00 |
| 8 | 2020 | Muhammad Najib Jamil Hamed | Redacted 0845 | | | | | 6,085.00 |
| 8 | 2020 | Al-Karamah Housing Cooperative for [last word cut off] | 202020 | | | | | 1,000.00 |
| 9 | 2020 | Muhammad Najib Jamil Hamed | Redacted 0845 | | | | | 6,085.00 |

Confidential

Shatsky-JD00448-T

| Prisoner Salary Statement | | | | | | | |
|---|---|---|---|---|---|---|---|
| Prisoner no. 21418 | | | | | | | |
| Prisoner Name:  Ibrahim Jamil Abd El-Ghani Hamed | | | Document no. 991260886 | | | | |
| Month | Year | Beneficiary | ID no. | Bank Name | Branch | Account no. | Salary |
| 9 | 2020 | Al-Karamah Housing Cooperative for [last word cut off] | 202020 | | | | 1,000.00 |
| 10 | 2020 | Muhammad Najib Jamil Hamed | Redacted 0845 | | | | 6,085.00 |
| 10 | 2020 | Al-Karamah Housing Cooperative for [last word cut off] | 202020 | | | | 1,000.00 |
| 11 | 2020 | Muhammad Najib Jamil Hamed | Redacted 0845 | | | | 6,085.00 |
| 11 | 2020 | Al-Karamah Housing Cooperative for [last word cut off] | 202020 | | | | 1,000.00 |
| 12 | 2020 | Muhammad Najib Jamil Hamed | Redacted 0845 | | | | 6,485.00 |
| 12 | 2020 | Al-Karamah Housing Cooperative for [last word cut off] | 202020 | | | | 1,000.00 |
| 1 | 2021 | Muhammad Najib Jamil Hamed | Redacted 0845 | | | | 6,085.00 |
| 1 | 2021 | Al-Karamah Housing Cooperative for [last word cut off] | 202020 | | | | 1,000.00 |
| 2 | 2021 | Muhammad Najib Jamil Hamed | Redacted 0845 | | | | 6,085.00 |
| 2 | 2021 | Al-Karamah Housing Cooperative for [last word cut off] | 202020 | | | | 1,000.00 |
| 3 | 2021 | Muhammad Najib Jamil Hamed | Redacted 0845 | | | | 6,085.00 |
| 3 | 2021 | Al-Karamah Housing Cooperative for [last word cut off] | 202020 | | | | 1,000.00 |
| 4 | 2021 | Muhammad Najib Jamil Hamed | Redacted 0845 | | | | 6,056.00 |
| 4 | 2021 | Al-Karamah Housing Cooperative for [last word cut off] | 202020 | | | | 1,000.00 |
| 5 | 2021 | Muhammad Najib Jamil Hamed | Redacted 0845 | | | | 6,085.00 |
| 5 | 2021 | Al-Karamah Housing Cooperative for [last word cut off] | 202020 | | | | 1,000.00 |

Page 8 of 8

Confidential

Original



كشف رواتب أسير

رقم الأسير 21418
اسم الأسير ابو بكر جمال عبدالغني خلف

رقم الوثيقة 991260586

| الراتب | رقم الحساب | الفرع | البنك | رقم البطاقة | اسم المستفيد | السنة | الشهر |
|---|---|---|---|---|---|---|---|

Redacted

٨ من أصفحة

CONFIDENTIAL



CONFIDENTIAL

Shatsky-JD00443



كشف راتب أسير

رقم الأسير   21418
اسم الأسير   ابراهيم حسن صلاح فطير حامد

رقم الوثيقة   991260266



كشف رواتب أسير

رقم الأسير 2148
اسم الأسير ابراهيم جبر عبدالله حامد

رقم الوثيقة 991260386

| القرات | رقم الحساب | الفرع | البنك | رقم البطاقة | اسم المستفيد | الجنسية | م |
|---|---|---|---|---|---|---|---|

Redacted

Redacted

لا من اصفحة

CONFIDENTIAL



كشف راتب أسير

رقم الأسير  21418
إ م الأسير  أدريغرم جميل عبدالغني حشش                رقم الوثيقة  991260835

| الراتب | رقم الحساب | الفرع | الاثن | رقم البطاقة | اسم المستحق | السنة | الشهر |
|--------|-----------|-------|-------|------------|-------------|-------|-------|

Redacted        Redacted

4 من 5 نسخة

CONFIDENTIAL

Shatsky-JD00446



كشف رواتب أسير

| الرتب | رقم الحساب | الفرع | البنك | رقم البطاقة | اسم المستفيد | الشهر | السنة | التأمين |
|---|---|---|---|---|---|---|---|---|

رقم الأسير   21418
اسم الأسير   أبو جيم جميل عبدالغني حامد
رقم الوثيقة   991260686

Redacted

Redacted

CONFIDENTIAL

Shatsky-JD00447



CONFIDENTIAL

كشف رواتب أسير

رقم الأسير .......... 21418
اسم الأسير .. عبد الفني حلمد جمال إبراهيم

رقم الوظيفة .......... 991260886

| الراتب | رقم الحساب | اليوم | البنك | رقم البطاقة | اسم المستفيد | السنة | الرقم |
|---|---|---|---|---|---|---|---|
| 1,000.00 | | | | 202020 Redacted 0845 | جمعية إسكان الكرامة التعاونية لذ | 2020 | 5 |
| 6,055.00 | | | | | محمد جود.. جميل حامد | 2020 | 10 |
| 1,000.00 | | | | 202020 Redacted 0845 | ..بية سكان الكرامة التعاونية لذ | 2020 | 10 |
| 6,085.00 | | | | | محمد سع ... زول حامد | 2020 | 11 |
| 1,000.00 | | | | 202020 Redacted 0845 | جمعية إسكان الكرامة التعاونية لذ | 2020 | 11 |
| 6,485.00 | | | | | محمد لحبيب جميل حامد | 2020 | 12 |
| 1,000.00 | | | | 202020 Redacted 0845 | جمعية إسكان الكرامة التعاونية لذ | 2020 | 12 |
| 6,055.00 | | | | | محمد حبيب جميل حامد | 2021 | 1 |
| 1,000.00 | | | | 202020 Redacted 0845 | ..مية إسكان الكرامة التعاونية لذ | 2021 | 1 |
| 6,085.00 | Redacted | | | | محمد لحبيب جميل حامد | 2021 | 2 |
| 1,000.00 | | | | 202020 Redacted 0845 | جمعية سكان الكرامة التعاونية لذ | 2021 | 2 |
| 6,085.00 | | | | | محمد لحبيب جميل حامد | 2021 | 3 |
| 1,000.00 | | | | 202020 Redacted 0845 | جمعية إ.. الكرامة التعاونية لذ | 2021 | 3 |
| 6,055.00 | | | | | ..محمد جيف جميل حامد | 2021 | 4 |
| 1,000.00 | | | | 202020 Redacted 0845 | جمعية ة سكان الكرامة التعاونية لذ | 2021 | 4 |
| 6,085.00 | | | | | ..حمد حبيب جميل حامد | 2021 | 5 |
| 1,000.00 | | | | 202020 | جمعية إسكان الكرامة التعاونية لذ | 2021 | 5 |

CONFIDENTIAL

Shatsky-JD00449