# Exhibit 184

Prisoner Salary Statement

| Prisoner no. 11708 | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Prisoner Name:  Nasim Rashed Abd el-Wudud Za'tari | | | Document no. 040981870 | | | | | |
| Month | Year | Beneficiary | ID no. | Bank Name | | Branch | Account no. | Salary |



Redacted

Confidential

Shatsky-JD00333-T

| Prisoner Salary Statement | | | | | | | |
|---|---|---|---|---|---|---|---|
| Prisoner no. 11708 | | | | | | | |
| Prisoner Name:  Nasim Rashed Abd el-Wudud Za'tari | | | Document no. 040981870 | | | | |
| Month | Year | Beneficiary | ID no. | Bank Name | Branch | Account no. | Salary |



Redacted

Confidential

Shatsky-JD00334-T

| Prisoner Salary Statement | | | | | | | |
|---|---|---|---|---|---|---|---|
| Prisoner no. 11708 | | | | | | | |
| Prisoner Name:  Nasim Rashed Abd el-Wudud Za'tari | | | Document no. 040981870 | | | | |
| Month | Year | Beneficiary | ID no. | Bank Name | Branch | Account no. | Salary |



Redacted

Page 3 of 8

Confidential

Shatsky-JD00335-T

| | | | Prisoner Salary Statement | | | | |
|---|---|---|---|---|---|---|---|

Prisoner no. 11708
Prisoner Name:  Nasim Rashed Abd el-Wudud Za'tari        Document no. 040981870

| Month | Year | Beneficiary | ID no. | Bank Name | Branch | Account no. | Salary |
|---|---|---|---|---|---|---|---|



Redacted

Page 4 of 8

Confidential

Shatsky-JD00336-T

| Prisoner Salary Statement | | | | | | | |
|---|---|---|---|---|---|---|---|
| Prisoner no. 11708 | | | | | | | |
| Prisoner Name:  Nasim Rashed Abd el-Wudud Za'tari | | | | Document no. 040981870 | | | |
| Month | Year | Beneficiary | | ID no. | Bank Name | Branch | Account no. | Salary |



Redacted

Page 5 of 8

Confidential

Shatsky-JD00337-T

Prisoner Salary Statement

Prisoner no. 11708
Prisoner Name: Nasim Rashed Abd el-Wudud Za'tari      Document no. 040981870

| Month | Year | Beneficiary | ID no. | Bank Name | Branch | Account no. | Salary |
|-------|------|-------------|--------|-----------|--------|-------------|--------|



Redacted

Confidential

Shatsky-JD00338-T

| Prisoner Salary Statement | | | | | | | |
|---|---|---|---|---|---|---|---|
| Prisoner no. 11708 | | | | | | | |
| Prisoner Name:  Nasim Rashed Abd el-Wudud Za'tari | | | | Document no. 040981870 | | | |
| Month | Year | Beneficiary | ID no. | Bank Name | Branch | Account no. | Salary |
| | | | Redacted | | | | |
| 4 | 2020 | Kifa Taj  A-Din Za'tari | Redacted 3061 | | | | 1,500.00 |
| 4 | 2020 | Najwa Rashed Abd el-Wudud Hilwan | Redacted 4571 | | | | 5,985.00 |
| 5 | 2020 | Kifa Taj  A-Din Za'tari | Redacted 3061 | | | | 1,500.00 |
| 5 | 2020 | Najwa Rashed Abd el-Wudud Hilwan | Redacted 4571 | | | | 5,985.00 |
| 6 | 2020 | Kifa Taj  A-Din Za'tari | Redacted 3061 | | | | 1,500.00 |

Confidential

Shatsky-JD00339-T

## Prisoner Salary Statement

Prisoner no. 11708
Prisoner Name:  Nasim Rashed Abd el-Wudud Za'tari          Document no. 040981870

| Month | Year | Beneficiary | ID no. | Bank Name | Branch | Account no. | Salary (JD |
|---|---|---|---|---|---|---|---|
| 6 | | Najwa Rashed Abd el-Wudud Hilwan | Redacted 4571 | | | | |
| 7 | | Kifa Taj  A-Din Za'tari | Redacted 3061 | | | | 1,500.00 |
| 7 | | Najwa Rashed Abd el-Wudud Hilwan | Redacted 4571 | | | | 5,985.00 |
| 8 | | Kifa Taj  A-Din Za'tari | Redacted 3061 | | | | 500.00 |
| 8 | | Najwa Rashed Abd el-Wudud Hilwan | Redacted 4571 | | | | 5,985.00 |
| 9 | | Kifa Taj  A-Din Za'tari | Redacted 3061 | | | | 1,500.00 |
| 9 | | Najwa Rashed Abd el-Wudud Hilwan | Redacted 4571 | | | | 5,985.00 |
| 10 | | Kifa Taj  A-Din Za'tari | Redacted 3061 | | | | 1,500.00 |
| 10 | | Najwa Rashed Abd el-Wudud Hilwan | Redacted 4571 | | | | 5,985.00 |
| 11 | | Kifa Taj  A-Din Za'tari | Redacted 3061 | | | | 1,500.00 |
| 11 | | Najwa Rashed Abd el-Wudud Hilwan | Redacted 4571 | | | | 5,985.00 |
| 12 | | Kifa Taj  A-Din Za'tari | Redacted 3061 | | | | 1,500.00 |
| 12 | | Najwa Rashed Abd el-Wudud Hilwan | Redacted 4571 | | | | 6,385.00 |
| 1 | | Kifa Taj  A-Din Za'tari | Redacted 3061 | | | | 1,500.00 |
| 1 | | Najwa Rashed Abd el-Wudud Hilwan | Redacted 4571 | | | | 5,985.00 |
| 2 | | Kifa Taj  A-Din Za'tari | Redacted 3061 | | | | 1,500.00 |
| 2 | | Najwa Rashed Abd el-Wudud Hilwan | Redacted 4571 | | | | 5,985.00 |
| 3 | | Kifa Taj  A-Din Za'tari | Redacted 3061 | | | | 1,500.00 |
| 3 | | Najwa Rashed Abd el-Wudud Hilwan | Redacted 4571 | | | | 5,985.00 |
| 4 | | Kifa Taj  A-Din Za'tari | Redacted 3061 | | | | 1,500.00 |
| 4 | | Najwa Rashed Abd el-Wudud Hilwan | Redacted 4571 | | | | 5,985.00 |
| 5 | | Kifa Taj  A-Din Za'tari | Redacted 3061 | | | | 1,500.00 |
| 5 | | Najwa Rashed Abd el-Wudud Hilwan | Redacted 4571 | | | | 5,985.00 |

Page 8 of 8

Confidential

Shatsky-JD00340-T

# Original



CONFIDENTIAL



CONFIDENTIAL



CONFIDENTIAL

Shatsky-JD00335



CONFIDENTIAL



كشف رواتب أسير

رقم الأسير .......... 708 1:
اسم الأسير .......... نجم . بنت . عبدالودود الزهاوي

رقم الوظيفة 040881870 ..........

CONFIDENTIAL

Shatsky-JD00337



CONFIDENTIAL

Shatsky-JD00338



كشف رانب أسير

رقم الأسير  11705
اسم الأسير   فوزي راتب عبدالودود أبو حارب        رقم الدفعة  040881870

| الراتب | رقم الحساب | الفرع | الذكر | رقم البطاقة | تشير | السنة | اسم المستفيد | |
|---|---|---|---|---|---|---|---|---|

Redacted

| 1,500.00 | Redacted 3061 | | غلبي جمال الدين الغربي | 2020 | 4 |
| 5,955.00 | Redacted 4571 | | مبري رأفت عبدالودود حلوان | 2020 | 4 |
| 1,500.00 | Redacted 3061 | | كلبي تاج مدين الغربي | 2020 | 5 |
| 5,955.00 | Redacted 4571 | | جوري راشد عبدالودود حلوان | 2020 | 5 |
| 1,500.00 | Redacted 3061 | | شروفاح الدين الغربي | 2020 | 6 |

CONFIDENTIAL

Shatsky-JD00339

كشف رائب اسير

| رقم الأسير | 11706 |
| --- | --- |
| اسم الأسير | تمدن رشت عبدالوذو ادرنري |

رقم الهئة 04088870

| الراتب | رقم الحساب | الفرع | البنك | رقم السلطة | الاسم المصحح | السنة | الشهر |
| --- | --- | --- | --- | --- | --- | --- | --- |
| 4,335.00 | | | | Redacted 1571 | نموي رشت عبدالوذو حلوان | 2020 | 6 |
| 1,500.00 | | | | Redacted 3061 | كفر ناج هلبي الزعتري | 2020 | 7 |
| 5,935.00 | | | | Redacted 1571 | لمبرا ورائد سبدالوى ء حلوان | 2020 | 7 |
| 500.00 | | | | Redacted 3061 | غمر علاج الدين الزعتري، | 2020 | 6 |
| 6,985.50 | | | | Redacted 1571 | تتبريوم الله عبدالوذو حلوان | 2020 | 6 |
| 1,500.00 | | | | Redacted 3061 | كفر ناج الدين الزعتري | 2020 | 8 |
| 5,985.00 | | | | Redacted 1571 | تحوي رشت سبدالوذو ساون | 2020 | 9 |
| 1,500.00 | | | | Redacted 3061 | غني ذ ء الا ن الزعتري | 2020 | 10 |
| 5,885.00 | | | | Redacted 1571 | نجرفي رشت عبدالوذو حلوا | 2020 | 10 |
| 1,500.00 | | | | Redacted 3061 | كفر ج خلا و الزعتري | 2020 | 11 |
| 5,945.00 | | | | Redacted 4571 | نجري رشت عبدالوذو حلوان | 2020 | 11 |
| 500.00 | | | Redacted | Redacted 3061 | كفي نج الدين الزعتري | 2020 | 12 |
| 6,385.00 | | | | Redacted 1571 | نمير ورشت عبدالوذو حلوانى | 2020 | 12 |
| 1,500.50 | | | | Redacted 3061 | كفر علاج الدين الزعتري | 2021 | 1 |
| 5,985.50 | | | | Redacted 4571 | جوري رشت عبدالوذو حلوان | 2021 | 1 |
| 1,500.00 | | | | Redacted 3061 | كفي ناج الدين الزعتري | 2021 | 2 |
| 5,985.00 | | | | Redacted 1571 | نجوى رشت عبدالوذو حلو | 2021 | 2 |
| 1,500.00 | | | | Redacted 3061 | كفر ناج الدين الزعتري، | 2021 | 3 |
| 5,985.00 | | | | Redacted 1571 | نيري رشت ه بدالوذو حلوان | 2021 | 3 |
| 1,500.00 | | | | Redacted 3061 | كفر نج الدين الزعتري، | 2021 | 4 |
| 5,985.00 | | | | Redacted 4571 | نجوي رشت عبدالوذو حلوان | 2021 | 4 |
| 1,500.00 | | | | Redacted 3061 | كفي ناج كين الزعتري | 2021 | 5 |
| 5,985.00 | | | | Redacted 1571 | جوى رشت عبدالوذو حلوا | 2021 | 6 |

CONFIDENTIAL

Shatsky-JD00340

# Exhibit 185

CONFIDENTIAL                                                                    SHATSKY-JD01813-T

*18019*

| [English] Palestinian National Authority<br>Ministry of Detainees & Ex-detainees Affairs<br>Gen. Dep. Detainees & Ex-detainees | [Emblem of the<br>Palestinian Authority] | [Arabic] Palestinian National Authority<br>Ministry of Detainees & Ex-detainees Affairs<br>Gen. Dep. Detainees & Ex-detainees |

New
p. 256371

**Main Prisoner Form**

*Military clerk*

*Round stamp: P.A. /*
*Dep. Detainees & Ex-*
*detainees /*
*02.08.2016 / Gen.*
*Dep. Of Legal Affairs.*

*Checked.*

*Indictments.*

| Form no.: | | | | |
|---|---|---|---|---|
| Form issuance date: | 12/22/2015 | Ministry's administration/branch: | Nablus | |

## 1. Basic information concerning the prisoner:

| ID no. (9 digits) | Redacted | | | | 1 | 7 | 0 | 0 |
|---|---|---|---|---|---|---|---|---|

| Four-part name: | First name | | Father's name | | Grandfather's name | | Family name | |
|---|---|---|---|---|---|---|---|---|
| | Samir | | Zuheir | | Ibrahim | | Kusa | |

| Mother's name: | | Gender: | ☐ Male   ☐ Female |
|---|---|---|---|

| DoB: | 1982 | Place of birth: | Nablus |
|---|---|---|---|

| Education: | ☐ Illiterate | ☐ Elementary | ☐ High school | ☐ Diploma | ☐ University | ☐ Higher education |
|---|---|---|---|---|---|---|

| Profession prior to arrest: | National security forces serviceman | Organization: | Unknown |
|---|---|---|---|

| Arrest date: | 10/3/2015 | Place of arrest: | Megiddo |
|---|---|---|---|

| Arrest status: | ☐ Detained | ☐ Sentenced | ☐ Administrative | ☐ Free | ☐ Other |
|---|---|---|---|---|---|

| In case of life sentence according to ICRC Certificate | Day | Month | Year | Expected release date according to verdict: | Day | Month | Year |
|---|---|---|---|---|---|---|---|
| | | | | | | | |

| Permanent residence: | Governorate: | Nablus | Residential complex: | Redacted |
|---|---|---|---|---|

| Notes: | |
|---|---|

2. Information concerning previous arrests: _____. Only those attested to by ICRC certificates, in chronological order from newest to oldest.

| No. | Arrest date | Arrest type | Release date | Arrest period | | | Notes |
|---|---|---|---|---|---|---|---|
| | | | | Day | Month | Year | |
| 1. | | | | | | | *Audit* |
| 2. | | | | | | | *[erased]* |
| 3. | | | | | | | *3/21/2016* |
| 4. | | | | | | | |
| 5. | | | | | | | |
| 6. | | | | | | | |

1

CONFIDENTIAL                                                                    SHATSKY- JD01813-T

CONFIDENTIAL                                              SHATSKY-JD01817-T

<u>Israel</u>        **Defense**        **Forces**

in the Military  Court                          Court File        15/*3216*

S   A   M   A   R   I   A                 Prosecution File: 2253/15

| This indictment was filed in the Military Court |
Before        **a Panel**                 Police File:      3593/15

On 19 November 2015                              3202/15

Recorded in the court docket in File No. 3218/15

Signature:  Noy                 (Terrorist Activities Petah Tikva)

In the case between:

**The Military Prosecutor**

- The Plaintiff -

[round stamp in Arabic]            - vs -
PLO
Detainees & Ex-Detainees
Department                    **Samir Zuheir Ibrahim Kusa**
8 February 2016
General Directorate for Legal       **(Detained since 3 October 2015)**
Affairs
Checked                   ID No. <sup>Redacted</sup>1700, born <sup>Redacted</sup> 1982, resident of Nablus
Indictments

- The Defendant -

# Indictment

<u>The abovenamed Defendant is hereby indicted for committing the following offenses:</u>

**First Count:**

**Nature of the Offense:** Membership and activity in an unlawful association, an offense pursuant to Regulations 84 and 85(1)(a) of the Defense Regulations (Emergency), 1945.

**Details of the Offense:** The abovenamed Defendant, within the Region, was or acted as a member of an organization that is an unlawful association; specifically: Starting at or around four months before his arrest, in or near Nablus, the **Defendant** was a member of the Hamas organization (hereafter, "**Hamas**"), which constitutes an unlawful organization. In his capacity as a member of the said organization, the **Defendant** acted as described in the following counts of indictment and as detailed here:

A. Roughly a year and a half before his arrest, or thereabouts, the **Defendant** acceded to a request from Ragheb to take military action against Israeli targets on behalf of the Hamas organization.

B. During or around the month of January 2015, the **Defendant** approached Karam Lutfi Fathi Rizq (hereafter, "**Karam**") and proposed that they take military action together on behalf of the Hamas organization, in the form of perpetrating terror attacks against Israeli targets and with the purpose of bringing death to the Jewish residents. Later, in or around March 2015, the **Defendant** again approached him and repeated his proposal that they together take military action against Israeli targets. Karam responded in the affirmative to the proposal.

CONFIDENTIAL

SHATSKY-JD01817-T

CONFIDENTIAL

SHATSKY-JD01818-T

A. Four months prior to his arrest, or thereabouts, at the grocery store owned by Ragheb Ahmad Mohamed Aliwiya (hereafter, "**Amjad**") of a military cell operating on behalf of Hamas that had undertaken to perpetrate shooting attacks against Israeli targets (hereafter, "**the Military Cell**"), Ragheb approached the **Defendant** and recruited him for activity in the Military Cell, concurrently detailing the Military Cell's objectives to the **Defendant**.

B. Subsequently, Ragheb requested the **Defendant**'s help in locating a handgun for the military operation. The **Defendant** assented to the request and then approached Mousa Hashash (hereafter, "**Mousa**") for assistance from him in locating such a handgun. Mousa assented to the request and offered to purchase a handgun **at a price of approximately ₪18,000. The Defendant approached** Ragheb and set forth the details of the purchase transaction for him. Then Ragheb approached Amjad requesting that he fund the handgun, and Amjad entrusted him with the requested sum. In the end, with the **Defendant** as intermediary, Ragheb purchased an FN handgun imprinted with the number C06845 (hereafter, "**the Handgun**") and a magazine containing compatible bullets.

C. At or around the start of August, at or near the grocery, the **Defendant** met Ragheb and the latter introduced him to Yahia Muhamad Naif Abdullah Hajj Hamad (hereafter, "Yahia"). At that meeting, Ragheb explained to the other two that from now on they would be working together in the framework of the Military Cell. In addition, the three agreed that the time had come to take military action in light of the happenings of that time at the Al Aqsa Mosque and in response to the death of the abovementioned members of the Dawabsheh family. Accordingly, the three agreed that Yahia and the **Defendant** would meet later that day, in the evening, and travel together to the vicinity of Beit Furiq Junction or somewhere nearby in order to perpetrate a shooting terror attack against the vehicles of Jewish residents, the intent being to bring death to the latter. They also agreed that

---

[round stamp in Arabic]
PLO
Detainees & Ex-Detainees
Department
8 February 2016
General Directorate for Legal
Affairs
Checked
indictments

they would perpetrate that terror attack by means of an M16 rifle which was imprinted with the number K700326 (hereafter, "**the Weapon**") and a magazine containing compatible bullets (hereafter, "**the Ammunition**"), which were in Ragheb's possession. Also for the purpose of perpetrating that shooting terror attack, Ragheb asked the **Defendant** and Yahia to collect intelligence regarding the movement of Jewish residents' vehicles and the presence of security forces on the road near Beit Furiq and Beit Dajan. **The Defendant** and Yahia did as they were asked.

**<u>The Defendant's membership in Hamas and in the Military Cell continued until the date of his arrest.</u>**

CONFIDENTIAL

SHATSKY-JD01818-T

CONFIDENTIAL                                                      SHATSKY-JD01819-T

**Second Count:**

**Nature of the Offense:** Attempted intentional causation of death, an offense pursuant
to Sections 209(a) and 198 of the Security Provisions Order [Consolidated
Version] (Judea and Samaria) (No. 1651), 5770-2009.

**Details of the Offense:** The abovenamed Defendant, within the Region, attempted to
intentionally bring death to a person; specifically:

A.  As early as that same day, and further to the content of subsection
(e) in the previous count of indictment, the **Defendant** and Yahia,
according to prior agreement as stated, each separately surveilled
the traffic near Beit Furiq and Beit Dajan. Later, they updated
Ragheb on their findings regarding the absence of security forces
along the abovementioned route.

B.  Afterward, when the three had agreed on a strategic place for
perpetrating the terror attack, Yahia headed toward the grocery or
a nearby spot and received the Weapon and Ammunition from
Ragheb.

C.  Afterward, Yahia and the **Defendant** met as agreed, the former
with the Weapon and Ammunition in his possession. Then, Yahia
and the **Defendant** positioned themselves in the latter's vehicle, a
Fiat Uno bearing Palestinian license plate number 4-1480-90
(hereinafter, **"the Fiat"**) so as to make Yahia the driver while the
**Defendant** sat in the back seat with the Weapon in his possession.
The two began traveling toward Beit Furiq Junction, and when they
reached their destination, they discerned a vehicle bearing Israeli
license plates that was heading from inside the community of Elon
Moreh community toward the community of Itamar. Upon that,
the **Defendant** leant his upper body out from the car and fired a
number of bullets toward the Israeli vehicle from a distance of
approximately sixty meters. Immediately afterward, the two fled
the scene.

D.  One day after perpetrating the shooting attack, or thereabouts, the
**Defendant** and Yahia updated Ragheb regarding the perpetration

[round stamp in Arabic]
PLO
Detainees & Ex-Detainees
Department
8 February 2016
General Directorate for Legal
Affairs
Checked
Indictments

of the abovementioned shooting terror attack at Beit Furiq Junction and the attack's results.

**Through their abovementioned actions, the Defendant and his confederates attempted to cause the death of another person.**

**Third Count:**

**Nature of the Offense:** Attempted intentional causation of death, an offense pursuant to Sections 209(a) and 198 of the Security Provisions Order [Consolidated Version] (Judea and Samaria) (No. 1651), 5770-2009.

**Details of the Offense:** The abovenamed Defendant, within the Region, attempted to intentionally bring death to a person; specifically:

A.   On or around 30 August 2015, as the **Defendant** was meeting with Ragheb and Yahia at the grocery in Nablus, the three spoke about the failure of the shooting terror attack described above and discussed the possibility of perpetrating another shooting terror attack for the purpose of bringing death to a Jewish resident. Further to that idea, the **Defendant** suggested that the shooting terror attack be perpetrated during the night hours in the area of Jit Junction where many Jewish residents drive along that road. Ragheb, however, proposed that the shooting terror attack be perpetrated as early as midday on that same day. The **Defendant** and Yahia assented to the proposal.

B.   An hour later or thereabouts, the **Defendant** traveled in the Fiat, as agreed in advance, to the area of Bayt Wazan or to a place outside the scope of the known evidence. When the Defendant reached his destination, he met Yahia, who entered the Fiat and positioned himself in the back seat with the Weapon and Ammunition in his possession. Then the two began to travel toward Jit Junction as planned.

CONFIDENTIAL

SHATSKY-JD01819-T

CONFIDENTIAL                                          SHATSKY-JD01820-T

[round stamp in Arabic]
PLO
Detainees & Ex-Detainees
Department
8 February 2016
General Directorate for Legal
Affairs
Checked
Indictments

C.  A short time afterward, when the two reached a dirt road, the
Defendant stopped the Fiat at the side of the road and replaced
the Palestinian license plates with Israeli license plates. Afterward,
the two continued on their way to Jit Junction. Later, when the
**Defendant** and Yahia reached their destination and located no
Israeli vehicles there, the two continued traveling in the direction
of the community of Einav in their attempt while still searching for
Israeli vehicles. Then, when the two discerned a Hyundai bearing
Israeli license plate number 70-808-78 (hereafter, "**the Israeli
Vehicle**"), heading in their direction and driven at that moment by
Ronen Edri, the two u-turned and began pursuing the Israeli
Vehicle. Later, at or near Jit Junction, having caught up with the
Israeli Vehicle, Yahia and the **Defendant** stopped their vehicle to
the left of the abovementioned vehicle. At the same moment,
Yahia began firing tens of bullets toward the Israeli Vehicle from a
distance of approximately six meters. Immediately after
perpetrating the shooting terror attack, the **Defendant** and Yahia
fled the place. As a result, the bullets penetrated the left side of
the Israeli Vehicle and shattered its front left window. In
consequence of that, Ronen Edri the driver was injured by the
shards of glass.

**Through their abovementioned actions, the Defendant and his**
**confederates attempted to cause the death of another person.**

**Fourth Count:**

**Nature of the Offense:** Conspiracy to intentionally cause death, an offense pursuant to
Sections 209(a) and 254a of the Security Provisions Order
[Consolidated Version] (Judea and Samaria) (No. 1651), 5770-2009.

**Details of the Offense:** The abovenamed Defendant, within the Region, conspired to
cause the death of a person; specifically:

A.  On or around 23 September 2015, on the night that ends the Day
of Atonement, the **Defendant** met with Yahia at the grocery in

Nablus, or at a place nearby, and agreed with him that they would go out at nighttime to perpetrate an additional shooting attack in the area of Beit Furiq Junction.

B.  Then Yahia approached Ragheb and updated him on their plans to perpetrate another shooting terror attack. On that occasion, Yahia asked Ragheb to give him the Weapon for the purpose of perpetrating the said terror attack. Ragheb assented and gave the Weapon and Ammunition to Yahia. Subsequently, Yahia and the **Defendant** travelled in a Škoda Octavia taxi, bearing Palestinian license plate number 7-2876-30 and owned by the latter (hereafter, "**the Skoda**") toward Beit Furiq Junction in order to examine the route where they would be perpetrating the shooting terror attack.

C.  Then, when the **Defendant** and Yahia reached the surroundings of the Beit Furiq roadblock, the two discerned the presence of security forces who were conducting a security check at the roadblock at that time. Therefore, and in light of the active presence of security forces in the intended area, the two relinquished their plan of perpetrating a shooting attack at the said destination.

D.  Finally, the **Defendant** and Yahia returned the way they came, with the latter still in possession of the Weapon.

CONFIDENTIAL                                    SHATSKY-JD01820-T

CONFIDENTIAL                                               SHATSKY-JD01821-T

**Fifth Count:**

**Nature of the Offense:** Intentional causation of death, an offense pursuant to Sections 209(a) and 199c (a and b) of the Security Provisions Order [Consolidated Version] (Judea and Samaria) (No. 1651), 5770-2009.

**Details of the Offense:** The abovenamed Defendant, within the Region, conspired to intentionally cause the death of a person; specifically:

A. During September 2015 or thereabouts, Ragheb and Yahia agreed on a shooting terror attack to be perpetrated by the Military Cell, during which — besides the central objective guiding the Military Cell; in other words, besides bringing death to Jewish residents — the cell would attempt to kidnap a Jewish resident (hereafter, "**the Kidnapping Attack**").

B. Subsequently, having agreed with the **Defendant** regarding the perpetration of the Kidnapping Attack, Ragheb approached Amjad and asked that Amjad give the abovementioned terror attack his approval and assistance. Amjad responded that he would first consult his superiors and then let Ragheb know. Shortly thereafter, Amjad authorized Ragheb to perpetrate the Kidnapping Attack and promised to help by transporting him and by hiding the kidnap victim as requested. In addition, the two agreed that if the Kidnapping Attack succeeded, Ragheb would dial the cellular phone in Amjad's possession, wait for the duration of a single ring, hang up immediately thereafter, repeat the action, and thus achieve the effect of informing Amjad that they had succeeded in kidnapping a Jewish resident and that Amjad should go to the meeting point near Alraouda College and take the kidnap victim into his custody.

C. On or around 28 September 2015, at or near the grocery in Nablus, the **Defendant** met with Ragheb and Yahia, and the three of them spoke of perpetrating the Kidnapping Attack on 1 October 2015 near Beit Furiq. In addition, Yahia agreed with Ragheb that if the terror attack succeeded, he would inform him so that the cell could consign the kidnap victim into Ragheb's hands. On that occasion,

[round stamp in Arabic]
PLO
Detainees & Ex-Detainees
Department
8 February 2016
General Directorate for Legal Affairs
Checked
Indictments

Ragheb instructed the **Defendant** to purchase zip ties and dark stickers for the Kidnapping Attack.

D. During the morning of 1 October 2015, as Yahia was picking up Ragheb and the **Defendant** in a Kia taxi that was in Yahia's possession (hereafter, "**the Kia**), the three began a session of planning for the Kidnapping Attack (hereafter, "**the Preparatory Meeting**"). During this planning, it was agreed that during the evening, Yahia and the **Defendant** would meet for the purpose of perpetrating the Kidnapping Attack, as already planned in the Preparatory Meeting, and because of the complexity attending such a terror attack, a procedure was chosen that differed from the procedure that the cell had theretofore used. Thus the latter decided to recruit additional operatives for the terror attack, to arm the attackers with an additional weapon, and to use a roomy vehicle for transporting the kidnap victim.

E. In accordance with the proposed procedure, it was decided that Karam Lutfi Fathi Rizq (hereafter, "**Karam**"), being a member of the Military Cell and already informed of the planned terror attack, would participate in the Kidnapping Attack. In addition, since Zeid was a member of the cell, Yahia decided that Zeid Ziyad Jamil Amer (hereafter, "**Zeid**") would take part in the terror attack. It was also agreed that in the evening, Ragheb would pass a handgun, which he had located in advance, to Yahia

SHATSKY-JD01821-T

CONFIDENTIAL                                        SHATSKY-JD01822-T

for the cell's operation. The three further decided to perpetrate the Kidnapping Attack in the Skoda that was in the **Defendant**'s possession. Also during those preparations, Yahia received zip ties, 2 pairs of gloves, and 3 face scarves for the cell to use during the terror attack.

F.   Subsequently, as they were still traveling in the Kia, the **Defendant** guided Ragheb and Yahia to a dirt road near Kafr Salem that led to the Elon Moreh bypass road. At that point, the **Defendant** proposed to the other two that they perpetrate the Kidnapping Attack by using that route — by parking their vehicle on the dirt road and proceeding on foot to the roadway. Ragheb and Yahia declined the **Defendant**'s proposal, on the grounds that proceeding on foot would complicate the perpetration of the terror attack and increase the risk that the cell would be captured. Therefore the three concluded that as agreed in advance, the Kidnapping Attack would be perpetrated on the route near Beit Furiq after they had determined that security forces were not present in advance of, and immediately before, the occasion of the terror attack.

G.   On that same day, in the evening, Zeid picked Yahia up in the Golf that was in his possession and the two of them travelled to the Al Dahiyah area, where they met Ragheb. On that occasion, the latter passed to Yahia, as pre-arranged, the handgun and a magazine containing suitable bullets, which Ragheb had purchased with the assistance of the **Defendant** and Ragheb as related above.

H.   Immediately afterward, Zeid and Yahia continued on their way toward Alraouda College, and there they picked Karam up. Then the three began traveling toward the Iskan Rujib area. When the cell members reached their destination, they met the **Defendant**, who had come to the place in the Skoda as planned.

I.   Subsequently, near 10:00 p.m., the **Defendant** traveled together with Samir in the Skoda toward Beit Furiq Junction in order to examine the target site chosen for the perpetration of the Kidnapping Attack and confirm the absence of security forces at

[round stamp in Arabic]
PLO
Detainees & Ex-Detainees
Department
8 February 2016
General Directorate for Legal Affairs
Checked
Indictments

that site. Next, the **Defendant** and Yahia returned to the Iskan Rujib area or nearby and met Karam and Zeid. Then the **Defendant** and Karam traveled in the Skoda, at Yahia's request, toward the Al-Masakin area or thereabouts. At the same time, Zeid and Yahia traveled in the Golf toward the home of the latter. There, the latter took up the Weapon, the Ammunition, the zip ties, the gloves, and the face scarves, returned to Zeid's vehicle, and instructed him to drive toward the Al-Masakin area.

J.  When all the cell members finally met at Al-Masakin or nearby, Yahia turned to Zeid and instructed him to drive in the Golf toward Beit Furiq Junction and confirm the absence of security forces along the route, both for that purpose itself and, according to Yahia, as part of an attempt to distance Zeid from his involvement in perpetrating the Kidnapping Attack.

CONFIDENTIAL                                        SHATSKY-JD01822-T

CONFIDENTIAL                                                    SHATSKY-JD01823-T

K.  While Zeid was doing so, the other cell members began to disguise themselves in order to escape identification during the perpetration of the terror attack. At this point, Yahia and the **Defendant** applied black stickers, which the latter had supplied himself with in advance, to the license plates of the Skoda and to other identifying signs. In addition, the three donned the face scarves; and Yahia and Karam put the gloves on as well.

L.  Subsequently, Zeid signaled to the members of his cell that there were no security forces on the route; and immediately the **Defendant**, Karam, and Yahia began to travel toward Beit Furiq junction, with Yahia driving the Skoda. As they traveled, Yahia drew out the handgun and magazine and passed them to Karam. Then the three sought a target for the Kidnapping Attack.

M.  Later, near Beit Dajan Junction, the cell noticed a Mitsubishi bearing Israeli license plate 95-731-10 (hereafter, "**the Mitsubishi**") and occupied at the time by the Henkin family — Eitam Henkin of blessed memory, Na'ama Henkin of blessed memory, and their four small children — who were making their way from the community of Elon Moreh toward the community of Itamar. Thereupon, at Yahia's request, the Defendant u-turned and the cell began pursuing the Mitsubishi. Subsequently, the cell caught up with the Mitsubishi and, as they were passing it, Yahia leant the upper part of his body out the vehicle's window and fired tens of bullets from the Weapon, which was set to automatic, at the Mitsubishi.

N.  As a result of that gunfire, Eitam Henkin of blessed memory was injured. He stopped the vehicle at the roadside. Immediately thereafter, **the Defendant** stopped his vehicle. Next Yahia with the Weapon, and Karam with the handgun, alit and began walking toward the Mitsubishi in order to kidnap one of its occupants as planned. At the same time, Yahia replaced the magazine of the Weapon with another magazine he had and Karam loaded the handgun.

[round stamp in Arabic]
PLO
Detainees & Ex-Detainees
Department
8 February 2016
General Directorate for Legal
Affairs
Checked
Indictments

O.  When the two reached the Mitsubishi, Yahia went to its right front
    door while Karam went to the driver's door. Then Karam began to
    struggle with Eitam Henkin of blessed memory, who was doing all
    he could, with the last of his strength, to take the handgun from
    Karam's grasp. While Eitam Henkin of blessed memory was fighting
    for his life and for the lives of his family, the **Defendant** noticed
    what was happening and fired a burst of bullets at the victim from
    close range with the Weapon set to automatic, until the victim
    gave up the ghost.

    **<u>By the above deeds, the Defendant and his confederates
    intentionally caused the death of Eitam Henkin of blessed
    memory.</u>**

CONFIDENTIAL

SHATSKY-JD01823-T

CONFIDENTIAL                                                SHATSKY-JD01824-T

**Sixth Count:**

**Nature of the Offense:** Intentionally causing death, an offense pursuant to Sections 209(a) and 199c (a and b) of the Security Provisions Order [Consolidated Version] (Judea and Samaria) (No. 1651), 5770-2009.

**Details of the Offense:** The abovenamed Defendant, within the Region, intentionally caused the death of a person; specifically:

[round stamp in Arabic]
PLO
Detainees & Ex-Detainees
Department
8 February 2016
General Directorate for Legal
Affairs
Checked
Indictments

Immediately after the occurrences of the previous count of indictment, Na'ama Henkin of blessed memory began to struggle with Yahia in an attempt to survive. Then, without hesitation, Yahia fired a burst of bullets, point blank, at Na'ama Henkin of blessed memory and caused her death in front of her small children, who were watching the incident.

**With their deeds as above, the Defendant and his confederates intentionally caused the death of Na'ama Henkin of blessed memory.**

**Seventh Count:**

**Nature of the Offense:** Attempted kidnapping in aggravating circumstances, an offense pursuant to Sections 213(d) and 198 of the Security Provisions Order [Consolidated Version] (Judea and Samaria) (No. 1651), 5770-2009.

**Details of the Offense:** The abovenamed Defendant, within the Region, kidnapped a person while knowing that the kidnap victim's life would be in danger, or kidnapped a person for the purpose of extortion or threat; specifically:

By the deeds related in the seventh and eighth counts of indictment, the **Defendant** attempted to kidnap the occupants of the vehicle.

**Eighth Count:**

**Nature of the Offense:** Attempted intentional causation of death, an offense pursuant to Sections 209(a) and 198 of the Security Provisions [Consolidated Version] (Judea and Samaria) (No. 1651), 5770-2009.

**Details of the Offense:** The abovenamed Defendant, within the Region, attempted to intentionally bring death to a person; specifically:                By their deeds as recounted in subsection (m) of the seventh count of indictment, the **Defendant** and his confederates attempted to bring death to M.H., the 9-year-old son of Eitam and Na'ama Henkin of blessed memory.

**Ninth Count:**

**Nature of the Offense:** Attempted intentional causation of death, an offense pursuant to Sections 209(a) and 198 of the Security Provisions Order [Consolidated Version] (Judea and Samaria) (No. 1651), 5770-2009.

**Details of the Offense:** The abovenamed Defendant, within the Region, attempted to intentionally bring death to a person; specifically:

By their deeds as recounted in subsection (m) of the seventh count of indictment, the **Defendant** and his confederates attempted to bring death to N.H., the 7-year-old son of Eitam and Na'ama Henkin of blessed memory.

**Tenth Count:**

**Nature of the Offense:** Attempted intentional causation of death, an offense pursuant to Sections 209(a) and 198 of the Security Provisions Order [Consolidated Version] (Judea and Samaria) (No. 1651), 5770-2009.

**Details of the Offense:** The abovenamed Defendant, within the Region, attempted to intentionally bring death to a person; specifically:

CONFIDENTIAL

SHATSKY-JD01824-T

CONFIDENTIAL                                                    SHATSKY-JD01825-T

By his deeds as recounted in subsection (m) of the seventh count of indictment, the **Defendant** attempted to bring death to N.H., the 4-year-old son of Eitam and Na'ama Henkin of blessed memory.

**Eleventh Count:**

**Nature of the Offense:** Attempted intentional causation of death, an offense pursuant to Sections 209(a) and 198 of the Security Provisions Order [Consolidated Version] (Judea and Samaria) (No. 1651), 5770-2009.

**Details of the Offense:** The abovenamed Defendant, within the Region, attempted to intentionally bring death to a person; specifically:

By their deeds as recounted in subsection (m) of the seventh count of indictment, the **Defendant** and his confederates attempted to bring death to A.H., the 10-year-old son of Eitam and Na'ama Henkin of blessed memory.

**Twelfth Count:**

**Nature of the Offense:** Harboring, an offense pursuant to Sections 245 and 333 of the Security Provisions Order [Consolidated Version] (Judea and Samaria) (No. 1651), 5770-2009.

**Details of the Offense:** The abovenamed Defendant, within the Region, helped a person, or gave shelter to some person, who had violated security-related legislation or who was engaging, or had engaged, in some activity intended to harm the public welfare, the welfare of the forces and soldiers of the IDF, and the maintenance of public order, or who could be reasonably suspected of having done so, whether the means of help consisted of information, shelter, food, drink, money, clothing, weaponry, ammunition, supplies, fodder, means of transport, kerosene or any other fuel, or whether it was any other means; specifically:

A. Further to what the seventh count of indictment relates, the **Defendant**, while firing at Eitam Henkin of blessed memory, wounded Karam in the left hand with one of his bullets. As a result, Karam dropped the handgun to the ground and returned to the Skoda. Only a few seconds later, although after Yahia had brought death to Na'ama Henkin of blessed memory, Yahia also returned.

[round stamp in Arabic]
PLO
Detainees & Ex-Detainees Department
8 February 2016
General Directorate for Legal Affairs
Checked
Indictments

The Defendant drove the vehicle as they fled toward the Al-Masakin area from the scene of the terror attack.

B. Subsequently, after **the Defendant**, Karam, and Yahia had reached their destination, they met Zeid as pre-arranged. Then Yahia and Karam switched into Zeid's vehicle and traveled toward his home while **the Defendant** traveled away.

<u>Thirteenth Count:</u>

<u>Nature of the Offense:</u> Interference in legal proceedings, an offense pursuant to Section 228(a) of the Security Provisions Order [Consolidated Version] (Judea and Samaria) (No. 1651), 5770-2009.

<u>Details of the Offense:</u> The Defendant, within the area, acted with intent to prevent or thwart a legal process or to bring about a miscarriage of justice, whether by obstructing the summoning of a witness, by concealing evidence, or by any other means. Specifically:

A. By his deeds as recounted in subsection c of the third count of indictment, as he switched license plates on the Fiat, the Defendant interfered in a legal process.

B. By his deeds as recounted in subsection (k) of the fifth count of indictment, as he applied dark stickers to the surface of the Skoda, the Defendant interfered in a legal process.

CONFIDENTIAL

SHATSKY-JD01825-T

CONFIDENTIAL                                                          SHATSKY-JD01826-T

**Fourteeenth Count:**

**Nature of the Offense:** Trading in war materiel, an offense pursuant to Sections 233(b) and 199 (a and b) of the Security Provisions Order [Consolidated Version] (Judea and Samaria) (No. 1651), 5770-2009.

**Details of the Offense:** Details of the Offense: The abovenamed Defendant, within the Region, traded or otherwise dealt with war materiel while having no permit signed by or on behalf of the regional commander; specifically:

A. By his deeds as described in subsection (d) of the first count of indictment, the Defendant traded in war materiel without a legal permit to do so.

[round stamp in Arabic]
PLO
Detainees & Ex-Detainees
Department
8 February 2016
General Directorate for Legal Affairs
Checked
Indictments

**Witnesses for the Prosecution:**

1. Police File 3593/15:
2. <sup>Redacted</sup>5588 Master Sergeant Radi Hatib (taker of the Defendant's statements of 5 October 2015 and 20 October 2105).
3. <sup>Redac</sup>6618 Advanced Staff Sergeant Firas Jabar (taker of the Defendant's statements of 8 November 2015 and 12 November 2015, and preparer of the form accompanying exhibits from 19 October 2015).
4. <sup>Redacted</sup>3520 Superintendent Asaf Malka (preparer of an activity report from 13 November 2015.
5. <sup>Redacted</sup>9462 Ertiom Tsarnogli (preparer of a form accompanying exhibits from 2 October 2015)
6. <sup>Redacted</sup>1175 Sharif Uwida (preparer of a memorandum from 1 October 2015, a form accompanying exhibits, an activity report, and a form for sending exhibits to the ballistics lab from 2 October 2015 and 6 October 2015).
7. <sup>Redacted</sup>1572 Advanced Staff Sergeant Yoel Hagai (preparer of a receipt form for exhibits to be examined from 2 October 2015 and 6 October 2015).
8. <sup>Redacted</sup>2978 Amar Sliman (preparer of a form accompanying exhibits from 4 October 2015, 5 October 2015, and 6 October 2015, preparer of an acknowledgement of investigation material received from the police on 28 October 2105, and preparer of a memorandum from 10 November 2015).
9. Superintendent Meir Dokel (preparer of a memorandum from 8 October 2015)

10. [Redac] 1917 Advanced Staff Sergeant Yifat Biton Levanon (preparer of a certification of confession to causing harm as a result of hostile activity against Israel from 6 November 2015)

11. [Redacted] 6069 Advanced Staff Sergeant Avi Nakar (preparer of an array of photos from 1 October 2015, a forensic examination report from 1 October 2015 and 4 October 2015, a report on seizure of exhibits from 4 October 2015, and a report documenting the processing of fingerprints from 6 October 2015.

12. [Redacted] 3833 Sergeant Major Tomer Ahrak (preparer of a memorandum from 10 November 2015)

13. [Redac] 3290 Senior Staff Sergeant Major Yaacov Yerushalmi (preparer of a memorandum from 16 November 2015)

14. [Redac] 5117 Senior Non-Commissioned Officer Haim Cohen (preparer of an array of photos from 15 October 2015 and a report on seizure of exhibits from 18 October 2015).

15. [Redac] 2471 Advanced Staff Sergeant Amar Hassan (preparer of a memorandum from 6 October 2015)

16. [Redacted] 9898 Master Sergeant Sima Avrahami (preparer of a receipt for exhibits to be examined from 19 October 2015).

CONFIDENTIAL

SHATSKY-JD01826-T

CONFIDENTIAL                                              SHATSKY-JD01827-T

17.  <sup>Redacted</sup>7380 Yaacov Grenik (preparer of a report on seizure of exhibits from 4 October 2015).

18.  <sup>Redacted</sup>7893 Sergeant Major Majed Shufi (chain of exhibit)

19.  <sup>Redacted</sup>0730 Chief Inspector Shlomo Siton (preparer of an activity report from 6 October 2015)

20.  <sup>Redac</sup>3995 Senior Staff Sergeant Major Yosi Larnav (preparer of an activity report from 6 October 2015)

21.  <sup>Redacted</sup>2542 Master Sergeant Shmuel Alya (preparer of an activity report from 3 October 2015)

22.  <sup>Redacted</sup>9571 Master Sergeant Ouni Yujenk (preparer of an activity report from 1 October 2015)

23.  <sup>Redacted</sup>8272 Senior Staff Sergeant Major Eran Ashkenazi (preparer of an activity report from 1 October 2015)

24.  <sup>Redac</sup>2695 Senior Staff Sergeant Major Alex Vino (preparer of an activity report from 1 October 2015)

25.  <sup>Redacted</sup>6577 Master Sergeant Eyal Kalo (preparer of an activity report from 1 October 2015)

26.  <sup>Redacted</sup>6354 Superintendent Michal Levin Elad (preparer of an examination report from 12 October 2015 and 5 November 2015).

27.  <sup>Redacted</sup>3485 Chief Inspector Tomer Arbeli (preparer of an examination report from 12 October 2015, 18 October 2015, 19 October 2015, and 5 November 2015).

28.  Superintendent Moshe Spitzen (preparer of an expert opinion from 9 November 2015)

29.  Superintendent Avi Kaufman (preparer of an expert opinion from 13 October 2015 and 27 October 2015 and preparer of a confession to conspiracy for the series of open incidents from 13 October 2015).

30.  Chief Superintendent Dr. Yuri Mezin (preparer of a death announcement from 1 October 2015)

31.  Yosi Eisen (preparer of a certification of disclosure from 15 October 2015)

32.  Captain Shmuel Rabinowitz (IDF, details with the Prosecution)

33.  First Lieutenant Shahar Yonah (IDF, details with the Prosecution)

[round stamp in Arabic]
PLO
Detainees & Ex-Detainees
Department
8 February 2016
General Directorate for Legal
Affairs
Checked
Indictments

34. Redacted 2046 Yahia Muhamad Naif Abdullah Hajj Hamad (detainee, Prosecution File 2252/15)

35. Redacted 8869 Karam Lutfi Fathi Rizq (detainee, Prosecution File 2250/15).

36. Redacted 7710 Zeid Ziyad Jamil Amer (detainee, Prosecution File 2251/15).

37. Redacted 1855 Bassam Ramhi Daoud Abu Jezala (detainee, Prosecution File 2255/15)

38. Redacted 5587 Amjad Adel Mohamed Aliwi (detainee)

39. Redacted 1328 Ragheb Ahmad Mohamed Aliwiya (detainee, Prosecution File 2283/15)

40. Redacted 0262 Mohamed Nazmi Mohamed Amar (released)

41. Amihai Azulai (details with the Prosecution)

42. Noa Shalgi (details with the Prosecution)

43. Elitzur Eliahu Trabelsi (details with the Prosecution)

44. Zvi Goren (details with the Prosecution)

45. Ovadia Reisenzvi (details with the prosecution)

CONFIDENTIAL                                              SHATSKY-JD01827-T

CONFIDENTIAL                                           SHATSKY-JD01828-T

46. "Shefer" (by code name) (General Security Services) (details with the Prosecution)

47. "Maurice" (by code name) (General Security Services) (details with the Prosecution)

**Police File 3202/15:**

48. <sup>Redacted</sup>6831 Advanced Staff Sergeant Sassi Ezra (preparer of a receipt for exhibits to be examined from 8 September 2015)

49. Superintendent Ezra Shoshani (preparer of an expert opinion from 16 September 2015)

50. <sup>Redacted</sup>5117 Senior Non-Commissioned Officer Haim Cohen (preparer of a report on seizure of exhibits from 31 August 2015 and a report on forensic examination from 6 September 2015).

51. <sup>Redacted</sup>5782 Boaz Hindig Cohen (preparer of a report on seizure of exhibits from 31 August 2015 and preparer of an array of photos and a forensic examination report from 6 September 2015 and 4 November 2015).

52. <sup>Redacted</sup>9141 Advanced Staff Sergeant Hagai Eckler (preparer of a certification of confession to causing harm as a result of hostile activity against Israel from 31 August 2015)

53. <sup>Redacted</sup>7778 Yuval Shucher (preparer of a form for sending exhibits to the ballistics lab from 1 September 2015).

54. Roni Edri (details with the Prosecution).

[round stamp in Arabic]
PLO
Detainees & Ex-Detainees
Department
8 February 2016
General Directorate for Legal
Affairs
Checked
Indictments

Rotem Cohen          First

Lieutenant

Military Prosecutor

[signature]

CONFIDENTIAL                                           SHATSKY-JD01828-T

Original

CONFIDENTIAL

SHATSKY-JD01807

165240

**CICR**

## TO WHOM IT MAY CONCERN

This attestation is valid only if the English and Arabic parts match each other

According to the information received from the Israeli Authorities, the International Committee of the Red Cross attests that:

Mr:   **SAMIR ZOHEIR IBRAHIM KOUSA**

From:   **NABLUS**                    ID NO: Redacted **1700**

*(18019)*

Was arrested by the Israeli Authorities on (dd/mm/yyyy):   **03.10.2015**

He is to date: **Sentenced**

Length of sentence / administrative period: **Life Sentence**



إلى من يهمه الأمر

هذه الشهادة سارية المفعول فقط في حالة تطابق بياناتها باللغتين العربية و الإنجليزية

استنادا إلى المعلومات الواردة من السلطات الإسرائيلية, تشهد اللجنة الدولية للصليب الأحمر بأن:

السيد/ة الآنسة _____ سمير زهير إبراهيم كوسا _____

من _____ نابلس _____ هوية رقم ____ Redacted _____

كان/ت قد إعتقل/ت من قبل السلطات الإسرائيلية في يوم ___ ٣ / شهر ___ ١٠ / سنة ___ ٢٠١٥

وهو/هي في هذا التاريخ: _____ ينتظر المحاكمة _____ محكوم/ة ___ X ___ إداري _____

محكوم/ة أو إداري لمدة _____ مدى الحياة _____

**CERTIFIED UPDATE**
**07 -02- 2017**
International Committee
of the Red Cross

Date: **04.07.2016**          التاريخ
Place: **NABLUS**          المكان

ICRC Delegate
توقيع مندوب اللجنة

ILJ-887628

CONFIDENTIAL                    SHATSKY-JD01807

CONFIDENTIAL

SHATSKY-JD01808



165240

## TO WHOM IT MAY CONCERN

# CICR

This attestation is valid only if the English and Arabic parts match each other

According to the information received from the Israeli Authorities, the International Committee of the Red Cross attests that:

Mr:   **SAMIR ZOHEIR IBRAHIM KOUSA**

From:   **NABLUS**

*18019*

ID NO: Redacted **1700**

Was arrested by the Israeli Authorities on (dd/mm/yyyy):   **03.10.2015**

He is to date: **Sentenced**

Length of sentence / administrative period: **Life Sentence**



الى من يهمه الأمر

# CICR

هذه الشهادة سارية المفعول فقط في حالة تطابق بياناتها باللغتين العربية و الإنجليزية

استنادا الى المعلومات الواردة من السلطات الإسرائيلية، تشهد اللجنة الدولية للصليب الأحمر بأن:

السيدة الآنسة   سمير زهير ابراهيم كوسا

من   نابلس   هوية رقم   Redacted

كان/ت قد اعتقل/ت من قبل السلطات الإسرائيلية في يوم ___ / شهر ١٠ / سنة ٢٠١٥

وهو/هي في هذا التاريخ : ينتظر المحاكمة ___ محكوم/ة   X   اداري ___

محكوم/ة أو اداري لمدة   مدى الحياة

Date: **04.07.2016**

التاريخ

Place: **NABLUS**

المكان

20 -10- 2016

International Committee
of the Red Cross

ICRC Delegate

توقيع مندوب اللجنة

ILJ-887628

CONFIDENTIAL

SHATSKY-JD01808

CONFIDENTIAL

SHATSKY-JD01809

165240

## TO WHOM IT MAY CONCERN

This attestation is valid only if the English and Arabic parts match each other

According to the information received from the Israeli Authorities, the International Committee of the Red Cross attests that:

Mr:   **SAMIR ZOHEIR IBRAHIM KOUSA**

From:   **NABLUS**                              ID NO: Redacted**1700**

Was arrested by the Israeli Authorities on (dd/mm/yyyy):   **03.10.2015**

He is to date: **Sentenced**

Length of sentence / administrative period: **Life Sentence**

الى من يهمه الأمر

هذه الشهادة سارية المفعول فقط في حالة تطابق بياناتها باللغتين العربية و الإنجليزية

استنادا الى المعلومات الواردة من قبل السلطات الإسرائيلية، تشهد اللجنة الدولية للصليب الأحمر بأن:

السيدة/الآنسة ـــــــــــ سمير زهير ابراهيم كوسا ــــــــــ

من ـــــ نابلس ـــــ هوية رقم  ٦ ٦ ٧ Redacted

كان/ت قد اعتقل/ت من قبل السلطات الإسرائيلية في يوم ــــ ٣ ـــ / شهر ــــ ١٠ ــــ / سنة ٢٠١٥

وهو/هي في هذا التاريخ : ينتظر المحاكمة ـــــــــ محكوم/ة  X  إداري ـــــــــ

محكوم/ة أو إداري لمدة ـــــ مؤبد ١٦٥ ـــــ

CERTIFIED COPY

0 6 -10- 2016

International Committee
of the Red Cross

Date: 04.07.2016
التاريخ

Place: NABLUS
المكـان

ILJ-887628

ICRC Delegate
توقيع مندوب اللجنة

CONFIDENTIAL

SHATSKY-JD01809

CONFIDENTIAL

SHATSKY-JD01810



165240

## TO WHOM IT MAY CONCERN

**CICR**

This attestation is valid only if the English and Arabic parts match each other

According to the information received from the Israeli Authorities, the International Committee of the Red Cross attests that:

Mr:     **SAMIR ZOHEIR IBRAHIM KOUSA**

From:   **NABLUS**                          ID NO: Redacted**1700**

Was arrested by the Israeli Authorities on (dd/mm/yyyy):     **03.10.2015**

He is to date: **Sentenced**

Length of sentence / administrative period: **Life Sentence**

**CICR**

إلى من يهمه الأمر

هذه الشهادة سارية المفعول فقط في حالة تطابق بياناتها باللغتين العربية و الإنجليزية

استنادا الى المعلومات الواردة من السلطات الإسرائيلية, تشهد اللجنة الدولية للصليب الأحمر بأن:

السيد/ة الآنسة _____ سمير زهير ابراهيم كوسا _____

من _____ نابلس _____ هوية رقم ___ ___ ___ Redacted

كان/ت قد اعتقل/ت من قبل السلطات الإسرائيلية في يوم ___ يوم / ___ ١٠ شهر / ___ سنة ٢٠١٥

وهو/هي في هذا التاريخ : ينتظر المحاكمة _____ محكوم/ة ___ X ___ اداري _____

محكوم/ة أو اداري لمدة _____ مدى الحياة _____

Date: **04.07.2016**

التاريخ

Place: **NABLUS**

المكان

International Committee
of the Red Cross

ICRC Delegate

توقيع مندوب اللجنة

20 -10- 2016

ILJ-887628

CONFIDENTIAL

SHATSKY-JD01810

CONFIDENTIAL

SHATSKY-JD01812



165240

## TO WHOM IT MAY CONCERN



This attestation is valid only if the English and Arabic parts match each other

According to the information received from the Israeli Authorities, the International Committee of the Red Cross attests that:

Mr:     SAMIR ZOHEIR IBRAHIM KOUSA

0597 498 462

From:   NABLUS

ID NO: Redacted1700

Was arrested by the Israeli Authorities on (dd/mm/yyyy):   03.10.2015

He is to date: Sentenced

256371

Length of sentence / administrative period: Life Sentence



إلى من يهمه الأمر

نجديد اعتماد
محكوم

هذه الشهادة سارية المفعول فقط في حالة تطابق بياناتها بالغتين العربية والإنجليزية

استنادا الى المعلومات الواردة من السلطات الإسرائيلية، تشهد اللجنة الدولية للصليب الأحمر بأن:

السيد/ة الآنسة  سمير زهير ابراهيم كوسا

من  نابلس  هوية رقم  Redacted ____١٧

كان/ت قد اعتقل/ت من قبل السلطات الإسرائيلية في يوم  ٣  / شهر  ١٠  / سنة  ٢٠١٥

وهو/هي في هذا التاريخ : ينتظر المحاكمة ____  محكوم/ة  X  اداري ____

محكوم/ة أو اداري لمدة  مدى الحياة

Date: 04.0...

CERTIFIED UPDATE

التاريخ   11 -02- 2019

Place: NABLUS

International Committee
of the Red Cross

المكان

ICRC Delegate

توقيع مندوب اللجنة

ILJ-887628

CONFIDENTIAL

SHATSKY-JD01812

CONFIDENTIAL
SHATSKY-JD01813

18019



Palestinian National Authority

Ministry of Detainees & Ex-detainees Affairs

Gen Dep. Detainees & Ex-detainees

السلطة الوطنية الفلسطينية

وزارة شؤون الأسرى والمحررين

الإدارة العامة لشؤون الأسرى والمحررين

استمارة الأسير الرئيسية

256371

| | | | | | | | رقم الاستمارة: |
|---|---|---|---|---|---|---|---|

| المديرية/فرع الوزارة: | تاريخ تعبئة الاستمارة: ٢٢ / ١٢ / ٢٠١٥ |
|---|---|

**1. المعلومات الرئيسية للأسير:**

| Redacted | | رقم الهوية: (ضع خانات) | ١ | ٢ | | ٠ | |
|---|---|---|---|---|---|---|---|

| اسم العائلة | اسم الجد | اسم الأب | الاسم الأول | |
|---|---|---|---|---|
| كوبا | ابراهيم | رشيد | سعيد | الاسم الرباعي: |

| | اسم الأم: |
|---|---|

| ☐ أنثى | ☑ ذكر | الجنس: |
|---|---|---|

| مكان الولادة: نابلس | تاريخ الميلاد: ١ / ١٩٨٢ |
|---|---|

| ☐ دراسات عليا | ☑ جامعي | ☐ دبلوم | ☐ ثانوي | ☑ الأساسية | ☐ أمي | المؤهل العلمي: |
|---|---|---|---|---|---|---|

| التنظيم: | المهنة قبل الأسر: عامل ادنى ملي |
|---|---|

| ☐ مدني | ☐ محرر | ☐ إداري | مكان الأسر: | تاريخ الأسر: ٧ / ١٠ / ٢٠١٥ |
|---|---|---|---|---|

| | | | ☐ موقوف | ☑ محكوم | الوضع الاعتقالي: |
|---|---|---|---|---|---|

| العام | الشهر | اليوم | تاريخ الإفراج المتوقع | سنة | شهر | يوم | في حالة محكوم مدة الحكم |
|---|---|---|---|---|---|---|---|
| | | | حسب قرار الحكم: | | | | حسب شهادة الصليب: |

| Redacted | التجمع السكاني: | المحافظة: نابلس | العنوان الدائم: |
|---|---|---|---|

| | ملاحظات: |
|---|---|

**2. بيانات الاعتقالات السابقة:**

عدد مرات الاعتقال السابقة والحالية: . . . . . . . . . فقط المثبت بشهادة صليب وبتسلسل زمني من الأحدث إلى الأقدم

| ملاحظات | مدة الاعتقال | | | تاريخ الإفراج | نوع الاعتقال | تاريخ الاعتقال | الرقم |
|---|---|---|---|---|---|---|---|
| | يوم | شهر | سنة | | | | |
| | | | | | | | 1. |
| | | | | | | | 2. |
| | | | | | | | 3. |
| | | | | | | | 4. |
| | | | | | | | 5. |
| | | | | | | | 6 |

1

CONFIDENTIAL
SHATSKY-JD01813

CONFIDENTIAL

SHATSKY-JD01817

צבא      הגנה      לישראל

בבית המשפט הצבאי

תיק בימ"ש 15/ 6 /3216

ש ו מ ר ו ן

תיק תביעה 2253/15

בפני      הרכב

תיק פ.א. 3593/15

3202/15

(פחיע"ז פיית)

במשפט שבין:

התובע הצבאי

- המאשים -

- נ ג ד -

סמיר זהיר אבראהים כוסא

(עצור מיום: 03/10/2015)

ת.ז: 1700 Redacted, יליד Redacted/1982, תושב: שכם

- והנאשם -

## כתב אישום

הנאשם הנ"ל מואשם בזאת בביצוע העבירות הבאות:

**פרט אישום ראשון:**

**מהות העבירה:** חברות ופעילות בהתאחדות בלתי מותרת, עבירה לפי תקנות 84 +85(1)(א)
לתקנות ההגנה (שעת חירום)-1945.

**פרטי העבירה:** הנאשם הנ"ל, באזור, היה חבר או פעל כחבר בארגון שהוא התאחדות בלתי
מותרת, דהיינו:

החל מארבעה חודשים טרם מעצרו או במועד הסמוך לכך, בשכם או במקום
הסמוך, היה **הנאשם** חבר בארגון החמאס (להלן: **"החמאס"**), המהווה
התאחדות בלתי מותרת. במסגרת חברותו בארגון האמור פעל **הנאשם** כאמור
בפרטי האישום הבאים וכמפורט להלן:

א. כשנה ומחצה טרם מעצרו או במועד הסמוך לכך, , נעתר **הנאשם** להצעתו של
ראגיב לפעול צבאית כנגד מטרות ישראליות מטעם ארגון החמאס.

ב. במהלך חודש ינואר לשנת 2015 או במועד הסמוך לכך, פנה **הנאשם** לכרם
לוטפי פתחי רזק (להלן: **"כרם"**) והציע לאחרון לבצע עמו פעילות צבאית,
מטעם ארגון החמאס, בדמות ביצוע פיגועים כנגד יעדים ישראליים במטרה
לגרום למותם של מתיישבים יהודים. בהמשך, בחודש מרץ לשנת 2015 או
במועד הסמוך לכך, פנה **הנאשם** לכרם בשנית ושב על הצעתו לפעול עמו
צבאית כנגד יעדים ישראלים. כרם נענה בחיוב להצעה.

CONFIDENTIAL

SHATSKY-JD01817

CONFIDENTIAL

SHATSKY-JD01818

ג.   ארבעה חודשים טרם מעצרו או במועד הסמוך לכך, כ"מרכול שבבעלותו של
     ראג'יב אחמד מחמוד עליווי (להלן: "ראג'יב") שבשכנם (להלן: "המרכול") או
     במקום הסמוך לכך, לאחר שגויים ראג'יב, על ידי אמג'ד עאדל מחמוד עליווי
     (להלן: "אמג'ד"), לחוליה צבאית מטעם ארגון החמאס אשר שמה לה
     למטרה לבצע פיגועי ירי לעבר יעדים ישראלים (להלן: "החוליה הצבאית"),
     פנה ראג'יב לנאשם וגייס את האחרון לטובת פעילות בחוליה הצבאית תוך
     שהוא מפרט בפני הנאשם את מטרת החוליה.

ד.   בהמשך, ביקש ראג'יב מהנאשם את סיועו באיתור אקדח לטובת הפעילות
     הצבאית. הנאשם נעתר לבקשה. אז, פנה הנאשם למוטא חשאש (להלן:
     "מוטא") וביקש את סיועו של האחרון באיתור אקדח כאמור. מוטא נעתר
     לבקשה והציע לנאשם לרכוש אקדח בעלות של כ- 18,000 ₪. הנאשם פנה
     לראג'יב ופירט בפניו את פרטי עסקת המכר. אז, פנה ראג'יב לאמג'ד בבקשה
     למימון האקדח והלה מסר לידיו את הסכום המבוקש. לבסוף, רכש ראג'יב
     בתיווכו של הנאשם אקדח מסוג FN, הנושא מספר טבוע C06845 (להלן:
     "האקדח") ומחסנית המכילה כדורי ירי תואמים.

ה.   בראשיתו של חודש אוגוסט או במועד הסמוך לכך, במרכול או במקום
     הסמוך לכך, עת פגש הנאשם בראג'יב ערך האחרון היכרות בינו לבין יחיא
     מחמד נאיף עבדאללה חג' חמד (להלן: "יחיא"). במסגרת הפגישה האמורה
     הסביר ראג'יב לשניים כי מעתה יפעלו בצוותא במסגרת החוליה הצבאית.
     עוד החליטו השלושה כי הגיעה העת לפעול צבאית נוכח האירועים
     שהתחרשו באותה תקופה במסגד אלאקצא ובתגובה למותם של בני
     משפחה דואגשה כאמור. על-כן, סיכמו השלושה כי יחיא והנאשם יפגשו
     בהמשך היום, בשעות הערב, וייסעו יחדיו לאזור צומת בית פוריק או למקום
     הסמוך לכך, לשם ביצוע פיגוע ירי לעבר רכבי מתיישבים יהודים וזאת
     במטרה לגרום למותם של האחרונים. עוד סיכמו כי יבצעו את הפיגוע
     האמור באמצעות כלי נשק מסוג M16, הנושא מספר טבוע K700326
     (להלן: "כלי הנשק") ומחסניות המכילות כדורי ירי תואמים (להלן:
     "התחמושת") המצויים בחזקתו של ראג'יב. עוד לצורך מימוש פיגוע הירי
     האמור, ביקש ראג'יב מהנאשם ויחיא לאסוף מודיעין באשר לתנועת רכבי
     מתיישבים יהודים ונוכחות כוחות הביטחון בככביש הסמוך לבית פוריק ובית
     דגן. הנאשם ויחיא פעלו כמבוקש.

**חברותו של הנאשם בארגון החמאס ובחוליה הצבאית נמשכה עד למועד**
**מעצרו.**

CONFIDENTIAL
SHATSKY-JD01819

<u>**פרט אישום שני:**</u>

<u>**מהות העבירה**</u>   ניסיון לגרימת מוות בכוונה, עבירה לפי סעיפים 209(א) ו-198 לצו בדבר הוראות
ביטחון [נוסח משולב] (יו״ש)(מס׳ 1651), התשס״ע- 2009

<u>**פרטי העבירה:**</u>   הנאשם הנ״ל, באזור, ניסה לגרום למותו של אדם בכוונה, דהיינו:

א.   עוד באותו היום ובהמשך לאמור בסי״ק ה׳ לפרט האישום הקודם, ערכו
הנאשם ויחיא, בנפרד, בהתאם לסיכום מוקדם כאמור, תצפיות לעבר ציר
התנועה הסמוך לבית פוריק ובית דגן. בהמשך, עדכנו האחרונים את ראג׳ב
אודות ממצאיהם בדבר היעדר נוכחות כוחות ביטחון לאורך הציר האמור

ב.   אז, ולאחר שסיכמו השלושה על מיקום אסטרטגי לביצוע הפיגוע, שם יחיא
פעמיו לעבר המרכול או למקום הסמוך לכך, ונטל מראגיב את כלי הנשק
והתחמושת.

ג.   לאחר מכן, נפגשו יחיא והנאשם כמסוכם, כאשר ברשות הראשון כלי הנשק
והתחמושת. אז התמקמו יחיא והנאשם ברכבו של האחרון מסוג פיאט אונו,
הנושא לוחיות זיהוי פלסטיניות שמספרה 4-1480-90, להלן: ״רכב הפיאט״)
כך שיתא נהג והנאשם ישב במושב האחורי כשברשותו כלי הנשק. השניים
החלו בנסיעתם לעבר אזור צומת בית פוריק, ומשהגיעו ליעדם, הבחינו ברכב
הנושא לוחיות זיהוי ישראליות, אשר עושה דרכו מתוך הישוב אלון מורה
לכיוון הישוב איתמר. או אז, ולאחר שהוציא הנאשם את פלג גופו העליון
מבעד לרכב ירה האחרון מספר כדורים לעבר הרכב הישראלי וזאת ממרחק
של כשישה מטרים. מיד לאחר מכן, נמלטו השניים מהמקום.

ד.   יממה לאחר ביצוע פיגוע הירי או במועד הסמוך לכך, עדכנו הנאשם ויחיא
את ראגיב אודות ביצוע פיגוע הירי בצומת בית פוריק כאמור ובתוצאותיו.

<u>**במעשיהם האמורים ניסו הנאשם ושותפיו לגרום למותו של אחר.**</u>

<u>**פרט אישום שלישי:**</u>

<u>**מהות העבירה:**</u>   ניסיון לגרימת מוות בכוונה, עבירה לפי סעיפים 209(א) ו-198 לצו בדבר הוראות
ביטחון [נוסח משולב] (יו״ש)(מס׳ 1651), התשס״ע- 2009

<u>**פרטי העבירה:**</u>   הנאשם הנ״ל, באזור, ניסה לגרום למותו של אדם בכוונה, דהיינו:

א.   ביום 30/08/2015 או במועד הסמוך לכך, עת נפגש הנאשם יחד עם ראגיב
ויחיא במרכול שבשכם שוחחו השלושה אודות כישלון פיגוע הירי המתואר
לעיל ודנו באפשרות לבצע פיגוע ירי נוסף במטרה לגרום למותו של מתיישב
יהודי. לאור כך, הציע הנאשם לבצע את פיגוע הירי בשעות הלילה, באזור
צומת גיית נוכח תנועה ערה של רכבי מתיישבים יהודים בציר זה.  חרף
האמור הציע ראגיב לבצע את פיגוע הירי עוד בצהריי אותו היום. הנאשם
ויחיא נעתרו להצעה.

ב.   שעה לאחר מכן או במועד הסמוך לכך, נסע הנאשם ברכב הפיאט, כמסוכם,
לאזור גיית וזאת חון או למקום הסמוך לכך. עת הגיע הנאשם ליעד פגש ביחיא,
אשר נכנס לרכב הפיאט והתמקם במושב האחורי כשברשותו כלי הנשק
והתחמושת. אז, החלו השניים בנסיעתם לעבר צומת גיית כמתוכנן.

CONFIDENTIAL
SHATSKY-JD01819

CONFIDENTIAL

SHATSKY-JD01820

ג. זמן קצר לאחר מכן, כאשר הגיעו השניים לדרך עפר, עצר ה**נאשם** את רכב
הפיאט בצידי הדרך והחליף את לוחיות הזיהוי הפלסטיניות בלוחיות זיהוי
ישראליות. לאחר מכן, המשיכו השניים בדרכם לצומת גית.

בהמשך, עת הגיעו ה**נאשם** ויחיא ליעדם ומשלא איתרו האחרונים רכבים
ישראלים, המשיכו השניים בנסיעתם לכיוון ההתיישבות עינב בניסיון בעוד
תרים אחר רכבים ישראלים. אז, משהבחינו השניים ברכב מסוג יונדאי בעל
לוחית זיהוי ישראלית שמספרה 78-808-70 (להלן: "**הרכב הישראלי**"), בה
נהג באותה העת רונן אדרי, אשר נסע לקראתם, ביצעו האחרונים פניית
פרסה והחלו דולקים אחר הרכב הישראלי. בהמשך, בצומת גית או במקום
הסמוך לכך, לאחר שהשיגו יחיא וה**נאשם** את הרכב הישראלי, עצרו
האחרונים את רכבם משמאלו של הרכב האמור. בד בבד, החל יחיא לירות
לעבר הרכב הישראלי עשרות כדורי ירי וזאת ממרחק של כשישה מטרים
מיד לאחר ביצוע פיגוע הירי נסו ה**נאשם** ויחיא מהמקום.

כתוצאה מכך, חדרו כדורי הירי את צידו השמאלי של הרכב הישראלי וניפצו
את שמשתו השמאלית קדמית. נוכח האמור נפגע הנהג רונן אדרי משברי
הזכוכית.

**במעשיהם האמורים ניסו הנאשם ושותפיו לגרום למותו של רונן אדרי.**

**פרט אישום רביעי :**

**מהות העבירה:** קשירת קשר לגרימת מוות בכוונה, עבירה לפי סעיפים 209(א) ו-254א לצו בדבר
הוראות ביטחון [נוסח משולב] (יו"ש)(מס' 1651), התשע"ו - 2009.

**פרטי העבירה:** הנאשם הנ"ל, באזור, קשר קשר לגרום למותו של אדם בכוונה, דהיינו:

א. ביום 23/09/2015 או במועד הסמוך לכך, במוצאי יום כיפור, נפגש ה**נאשם**
עם יחיא במרכול שבשכם או במקום הסמוך לכך וסיכם עמו כי יצאו, בשעות
הלילה, לבצע פיגוע ירי נוסף באזור צומת בית פוריק.

ב. אז, פנה יחיא לראאייב ועדכנו בדבר תכנונם לבצע פיגוע ירי נוסף. במעמד זה
ביקש יחיא מראאייב את כלי הנשק לטובת ביצוע הפיגוע כאמור. ראאייב נעתר
לבקשה ומסר לידיו את כלי הנשק והתחמושת.

בהמשך, נסעו יחיא וה**נאשם** במכונית מסוג סקודה אוקטביה, הנושאת לוחית
זיהוי פלסטינית שמספרה 2876-30-7, המצויה בחזקתו של האחרון (להלן
"**רכב הסקודה**"), לעבר צומת בית פוריק וזאת לצורך בחינת הציר בו עתיד
להתבצע פיגוע הירי.

ג. אז, עת הגיעו ה**נאשם** ויחיא לאזור הסמוך למחסום בית פוריק, הבחינו
השניים בנוכחותם של כוחות הביטחון שערכו בידוק ביטחוני במחסום
באותה העת. משכך ולאור נוכחותם הערה של כוחות הביטחון באזור
המיועד, נסוגו השניים מתוכניתם לבצע את פיגוע הירי כיעד האמור.

ד. לבסוף, חזרו ה**נאשם** ויחיא על עקבותיהם כאשר הנשק נותר ברשותו של
האחרון.

CONFIDENTIAL

SHATSKY-JD01821

פרט אישום חמישי :

**מהות העבירה** : גרימת מוות בכוונה, עבירה לפי סעיפים 209(א) ו-199ג(א)(א+ב) לצו בדבר הוראות ביטחון (נוסח משולב)(יו"ש)(מס' 1651), התשע"ו- 2009

**פרטי העבירה** : הנאשם הנ"ל, באזור, גרם למותו של אדם בכוונה, דהיינו :

א. במהלך חודש ספטמבר לשנת 2015 או במועד הסמוך לכך, סיכמו ראג'ב ויחיא אודות פיגוע ירי שתבצע החוליה הצבאית, שבמהלכו מלבד המטרה המרכזית שהונחתה את החוליה הצבאית, קרי, גרימת מוות של מתיישבים יהודים, תנסה החוליה לחטוף מתיישבים יהודי (להלן : **"פיגוע החטיפה"**).

ב. בהמשך, נוכח הסיכום בין ה**נאשם** לראג'ב בדבר ביצוע פיגוע החטיפה, פנה האחרון לאמגיד וביקש את אישורו וסיועו בביצוע הפיגוע האמור. בתגובה מסר האחרון כי הוא קצר תחילה לממונים עליו ולאחר מכן יעדכן את ראג'ב. זמן קצר לאחר מכן, אישר אמגיד לראג'ב לבצע את פיגוע החטיפה ועדכנו כי יסייע לו בשיגוריו והסתתרו של החטוף כמבוקש.

עוד סיכמו השניים כי במידה ופיגוע החטיפה יצלח, יחיא ראג'ב למכשיר הסלולר שברשות אמגיד, ימתין משך צליל חיוג בודד וינתק. מיד לאחר מכן, יחזור על פעולה זו בשנית, וכך למעשה יעדכנו את אמגיד כי הצליחו לחטוף מתיישב יהודי ועליו להגיע לנקודת המפגש בסמוך למכללת אלראודה ולקחת תחת חסותו את החטוף.

ג. ביום 28/09/2015 או במועד הסמוך לכך, במרכול שבשכם או במקום הסמוך לכך, נפגש ה**נאשם** יחד עם ראג'ב ויחיא והשלושה שוחחו אודות ביצוע פיגוע הירי והחטיפה. במסגרת פגישה זו, החליטו השלושה כי יבצעו את פיגוע החטיפה ביום 01/10/2015, בסמוך לבית פוריק. כמו כן, סיכם יחיא עם ראג'ב כי במידה ופיגוע החטיפה יצלח, יעדכנו וזאת על מנת שהחוליה תמסור את החטוף לטיפולו של ראג'ב. במעמד זה הנחה ראג'ב את ה**נאשם** לרכוש חבקים ומדבקות כהות לטובת פיגוע החטיפה.

ד. ביום 01/10/2015, בשעות הבוקר, אסף יחיא את ראג'ב וה**נאשם** במכונית מסוג קיה (להלן : **"רכב הקיה"**), הנמצאת בחזקתו של יחיא, החל השלושה לתכנן את פיגוע החטיפה (להלן : **"פגישת ההכנה"**). במהלך תכנון זה סוכם כי בשעות הערב יפגש יחיא וה**נאשם** באזור אסכאן רוג'יב לשם ביצוע פיגוע החטיפה כמתוכנן. עוד בפגישת ההכנה, נוכח המורכבות הטמונה בפיגוע מעין זה, הוחלט על מתוות פעולה שונה מהמתווה אשר שימש את החוליה עד כה. אז אם, החליטו האחרונים לצרף פעילים נוספים לביצוע הפיגוע, לחמש את החוליה המבצעת בכלי נשק נוסף ולהשתמש ברכב מרווח לשם הובלת החטוף.

ה. בהתאם למתוווה המוצע, הוחלט כי כרם לוטפי פתחי רזק (להלן : **"כרם"**), נוכח היותו חבר בחוליה הצבאית ולאור ידיעתו המוקדמת אודות תכנון הפיגוע, ישתתף בפיגוע החטיפה. כמו כן, לנוכח חברותו של זיד בחוליה, החליט יחיא כי גם זיד זיאד ג'מיל עאמר (להלן : **"זיד"**) ייטול חלק בפיגוע. עוד סוכם כי ראג'ב ימסור ליחיא, בשעות הערב, אקדח אשר איתר מבעוד



CONFIDENTIAL

SHATSKY-JD01822

מועד לטובת פעילות החוליה. כמו כן, קבעו השלושה כי יבצעו את פיגוע החטיפה ברכב הסקודה הנמצא בחזקתו של **הנאשם**. עוד במעמד ההכנה קיבל יחיא לידיו חבקים, 2 זוגות כפפות ו- 3 רעלות לכיסוי הפנים אשר ישמשו את חברי החוליה בביצוע הפיגוע.

ו.   בהמשך, בעודם נוסעים ברכב הקיה, הוביל **הנאשם** את ראג'יב ויחיא לדרך עפר בסמוך לכפר סאלם, שמוביל<br>ה לכביש העוקף של הישוב אלון מורה  אז, הציע **הנאשם** לשניים לבצע את פיגוע החטיפה באמצעות ציר זה תוך שהם יחנו **את** רכבם בדרך העפר ויצעדו רגלית לעבר הכביש. ראג'יב יחיא סירבו להצעתו של **הנאשם** בתואנה שההליכה הרגלית תסרבל את ביצוע הפיגוע ותגדיל את סיכויי החוליה להילכד. לכן, החליטו השלושה כי כפי שסיכמו מראש, פיגוע החטיפה יעשה בציר הסמוך לצומת בית פוריק וז<br>את לאחר שיוודאו היעדר נוכחותם של כוחות הביטחון בטרם ובסמוך למועד הפיגוע.

ז.   עוד באותו היום, בשעות הערב, אסף זיד ברכב הגולף שברשותו את יחיא והשניים נסעו לאזור אלדואחיה ופגשו בראג'יב. במעמד זה, מסר האחרון ליחיא כמנתואם, האקדח ומחסנית המכילה כדורי ירי תואמים, אשר רכש ראג'יב בסיועם של **הנאשם** ואמגד כאמור לעיל.

ח.   מיד לאחר מכן, המשיכו זיד ויחיא בדרכם לעבר מכללת אלראודה שם אספו את כרם. אז, החלו השלושה בנסיעה לעבר אזור אסכאן רוג'יב. בהגיעם של חברי החוליה ליעדם, פגשו ב**נאשם** אשר הגיע למקום ברכב הסקודה כמותכנן.

ט.   לאחר מכן, בסמוך לשעה 20:00, נסע ה**נאשם** יחד עם יחיא ברכב הסקודה לעבר צומת בית פוריק וזאת על מנת לבחון את היעד שנבחר לצורך ביצוע פיגוע החטיפה ולשלול נוכחות כוחות ביטחון ביעד האמור. בהמשך, שכו ה**נאשם** ויחיא על עקבותיהם לאזור אסכאן רוג'יב או למקום הסמוך לכך ופגשו בכרם בזיד. אז, נסעו ה**נאשם** וכרם ברכב הסקודה, לבקשתו של יחיא, לעבר אזור אלמסאכן או למקום הסמוך לכך. בד בבד נסעו זיד ויחיא ברכב הגולף לעבר ביתו של האחרון. שם נטל האחרון לידיו את כלי הנשק, התחמושת, החבקים, הכפפות ורעלות הפנים, שב לרכבו של זיד והנחה את האחרון לנסוע לעבר אזור אלמסאכן.

י.   לבסוף, נפגשו כלל חברי החוליה באלמסאכן או במקום הסמוך לכך. אז, פנה יחיא לזיד והנחה את האחרון לנסוע ברכב הגולף לעבר צומת בית פוריק ולוודא את היעדר נוכחותם של כוחות הביטחון לאורך ציר התנועה. לשם כך, ולאור ניסיון להרחיק את זיד ממעורבותו בביצוע פיגוע החטיפה, מסר יחיא

CONFIDENTIAL

SHATSKY-JD01823

יא. במקביל לפעולותו של זיד, החלו יתר חברי החוליה להסוות עצמם וזאת בכדי
למנוע את זיהויים בעת ביצוע הפיגוע. לפיכך, הדביקו יחיא **והנאשם**
מדבקות כהות שהיו ברשות האחרון מבעוד מועד, על גבי לוחיות הזיהוי של
רכב הסקודה ועל גבי סימני זיהוי נוספים. כמו כן, עטו השלושה את רעלות
הפנים בעוד שיחיא וכרם גם לבשו את הכפפות.

יב. בהמשך, ומיד לאחר שוויד אותו לחבריו חולייתו אודות היעדר נוכחותם של
כוחות הביטחון בציר התנועה, החלו **הנאשם**, החלו ויחיא בנסיעה לעבר
צומת בית פוריק כאשר האחרון נוהג ברכב הסקודה. במהלך נסיעתם, שלף
יחיא את האקדח והמחסנית ומסר אותם לידי כרם. אז, תרו השלושה אחר
מטרה לשם ביצוע פיגוע החטיפה.

יג. בהמשך, בסמוך לצומת בית דין, הבחינה החוליה ברכב מסוג מיצובישי,
הנושא לוחיות זיהוי ישראלית שמספרה 10-731-95 (להלן: **"רכב**
**המיצובישי"**), בו נסעו באותה העת בני משפחת הנקין; איתם הנקין ז"ל,
נעמה הנקין ז"ל וארבעת ילדיהם הקטנים, אשר עשה דרכו מהיישוב אלון
מורה לכיוון היישוב איתמר. אז, לבקשת יחיא, ביצע **הנאשם** פניית פרסה
והחוליה החלה דולקת אחר רכב המיצובישי. בהמשך, השיגו האחרונים את
רכב המיצובישי ועקפוהו. בו בעת, הוציא יחיא את פלג גופו העליון מבעד
לחלון הרכב וירה מכלי הנשק, עת היה מכוון על מצב ירי אוטומטי, עשרות
כדורים לעבר רכב המיצובישי.

יד. כתוצאה מהירי האמור נפצע איתם הנקין ז"ל אשר עצר את רכבו בצד הדרך
מיד לאחרי עצר **הנאשם** את הרכב. אז ירדו מהרכב יחיא, כשברשותו כלי
הנשק, וכרם, כשברשותו האקדח, והחלו צועדים לעבר רכב המיצובישי על
מנת לחטוף את אחד מיושביו כמתוכנן. בד בבד, החליף יחיא את מחסנית
הנשק במחסנית הנוספת שהייתה ברשותו בעוד שכרם טען את האקדח.

טו. משהגיעו השניים בסמוך לרכב המיצובישי, ניגש יחיא לדלת הימנית קדמית
של הרכב בעוד שכרם ניגש לדלת הנהג. אז החל כרם להתעמת עם איתם
הנקין ז"ל, אשר בכוחותיו האחרונים עשה כל שביכולתו על מנת ליטול את
האקדח מידיו של כרם. בעוד איתם הנקין ז"ל נאבק על חייו ועל חיי
משפחתו הבחין יחיא במתרחש וירה, מטווח קצר, לעברו של המנוח צרור
כדורים, עת הנשק היה מכוון על ירי במצב אוטומטי, עד שנפחה נשמתו של
המנוח.

**במעשיהם האמורים גרמו הנאשם ושותפיו, בכוונה, למותו של איתם הנקין**
**ז"ל.**

CONFIDENTIAL

SHATSKY-JD01823

CONFIDENTIAL

SHATSKY-JD01824

<div dir="rtl">

פרט אישום שישי:

**מהות העבירה:** גרימת מוות בכוונה, עבירה לפי סעיפים 209(א) ו-199(ג)(א+ב) לצו בדבר הוראות
ביטחון [נוסח משולב] (יו"ש)(מס' 1651), התשע"ו- 2009.

**פרטי העבירה:** הנאשם הנ"ל, באזור, גרם למותו של אדם בכוונה, דהיינו :

מיד לאחר האמור בפרט האישום הקודם, החלה נעמה הנקין ז"ל להיאבק ביחיא
בניסיון להינצל. אז, וללא היסוס, ירה יחיא צרור כדורים, מטווח אפס, לעבר
נעמה הנקין ז"ל וגרם למותה מול ילדיה הקטנים שחזו במתרחש.

**במעשיהם האמורים גרמו הנאשם ושותפיו, בכוונה, למותה של נעמה הנקין
ז"ל.**

פרט אישום שביעי:

**מהות העבירה:** ניסיון לחטיפה בנסיבות מחמירות, עבירה לפי סעיפים 213(ד) ו- 198 לצו בדבר
הוראות ביטחון [נוסח משולב] (יהודה והשומרון) (מס' 1651), התשע"ו-2009.

**פרטי העבירה:** הנאשם הנ"ל, באזור, חטף אדם בידיעה שהנחטוף יהיה צפוי לסכנת חיים, או
חטף אדם כדי לסחוט או לאיים, דהיינו :

בעשותו את האמור בפרט האישום השביעי והשמיני, ניסה הנאשם לחטוף את
יושבי הרכב.

פרט אישום שמיני:

**מהות העבירה:** ניסיון לגרימת מוות בכוונה, עבירה לפי סעיפים 209(א) ו-198 לצו בדבר הוראות
ביטחון [נוסח משולב] (יו"ש)(מס' 1651), התשע"ו- 2009.

**פרטי העבירה:** הנאשם הנ"ל, באזור, ניסה לגרום למותו של אדם בכוונה, דהיינו :

במעשיהם האמורים בס"ק יג' לפרט האישום השביעי, ניסו הנאשם ושותפיו
לגרום למותו של מ.ה., בן ה-9, בנם של איתם ונעמה הנקין ז"ל.

פרט אישום תשיעי:

**מהות העבירה:** ניסיון לגרימת מוות בכוונה, עבירה לפי סעיפים 209(א) ו-198 לצו בדבר הוראות
ביטחון [נוסח משולב] (מס' 1651), התשע"ו- 2009.

**פרטי העבירה:** הנאשם הנ"ל, באזור, ניסה לגרום למותו של אדם בכוונה, דהיינו :

במעשיהם האמורים בס"ק יג' לפרט האישום השביעי, ניסו הנאשם ושותפיו
לגרום למותו של נ.ה., בן ה-7, בנם של איתם ונעמה הנקין ז"ל.

פרט אישום עשירי:

**מהות העבירה:** ניסיון לגרימת מוות בכוונה, עבירה לפי סעיפים 209(א) ו-198 לצו בדבר הוראות
ביטחון [נוסח משולב] (יו"ש)(מס' 1651), התשע"ו- 2009.

**פרטי העבירה:** הנאשם הנ"ל, באזור, ניסה לגרום למותו של אדם בכוונה, דהיינו :

</div>

SHATSKY-JD01824

CONFIDENTIAL

SHATSKY-JD01825

במעשיהם האמורים בס"ק יו לפרט האישום השביעי, ניסו הנאשם וישותפו

לגרום למותו של נ ה , בן ה-4, בגם של איתם ונעמה הנקין ז"ל

**פרט אישום אחד עשר:**

**מהות העבירה** : ניסיון לגרימת מוות בכוונה, עבירה לפי סעיפים 209(א) ו-198 לצו בדבר הוראות

ביטחון [נוסח משולב] (יו"ש)(מסי 1651), התשע"ע- 2009

**פרטי העבירה** : הנאשם הנ"ל, באזור, ניסה לגרום למותו של אדם בכוונה, דהיינו

במעשיהם האמורים בס"ק יגי לפרט האישום השביעי, ניסו **הנאשם** וישותפו

לגרום למותו של א.ה. , בן 10 חודשים, בנם של איתם ונעמה הנקין ז"ל

**פרט אישום שנים עשר:**

**מהות העבירה** : מתן מקלט, עבירה לפי סעיפים 245 ו-333 לצו בדבר הוראות ביטחון [נוסח

משולב] (יהודה והשומרון)(מסי 1651), התשיע"ע - 2009

**פרטי העבירה** : הנאשם הנ"ל, באזור, עזר לאדם או נתן מקלט לכל אדם שעבר עבירה על תחיקת

הביטחון או העוסק או שהיה עוסק בכל פעולה שמטרתה לפגוע בשלום הציבור,

שלום כוחות צה"ל וחייליו וקיום הסדר הציבורי או שיש יסוד סביר לחשוד כי

עשה כן, בין ע"י מתן ידיעות, מחסה, מזון, משקה, כסף, בגדים, נשק,

תחמושת, אספקה, מספוא, אמצעי תובלה, נפט או דלק מסוג כלשהו ובין בדרך

אחרת, דהיינו :

א.  בהמשך לאמור בפרט האישום החמישי, עת ירה **הנאשם** לעבר איתם הנקין

ז"ל, פגע אחד הקליעים בכרם ופצעו בידו השמאלית. כתוצאה מכך, הפיל

כרם את האקדח ארצה וסר בחזרה לרכב הסקודה. שניות ספורות לאחר

מכן, ואחרי שגרם יחיא למותם של נעמה הנקין ז"ל, שב האחרון גם הוא תוך

**שהנאשם** נוהג ברכב וממלטם מזירת האירוע לעבר אזור אלמסאבן

ב.  בהמשך, ומשהגיעו **הנאשם**, כרם ויחיא ליעדם, פגשו האחרונים בויד

כמסוכה. אז, עברו יחיא וכרם לרכבו של ויד ונסעו לעבר ביתו של האחרון

בעוד **שהנאשם** נסע מהמקום

**פרט אישום שלושה עשר:**

**מהות העבירה** : שיבוש הליכי משפט, עבירה לפי סעיף 228(א) לצו בדבר הוראות ביטחון [נוסח

משולב] (יהודה והשומרון) (מסי 1651), התשיע"ע-2009

**פרטי העבירה** : הנאשם, באזור, עשה דבר בכוונה למנוע או להכשיל הליך שיפוטי או להביא לידי

עיוות דין, בין בסיכול הזמנתו של עד, בין בהעלמת ראיה ובין בדרך אחרת.

דהיינו :

א.  בעשותו את האמור בס"ק ג' לפרט האישום השלישי, עת החליף הנאשם את

לוחיות הזיהוי ברכב הפיאט, שיבש הנאשם הליכי משפט.

ב.  בעשותו את האמור בס"ק יא' לפרט האישום החמישי, עת הדביק הנאשם

מדבקות כהות על גבי רכב הסקודה, שיבש הנאשם הליכי משפט.

SHATSKY-JD01825

CONFIDENTIAL

SHATSKY-JD01826

<div dir="rtl">

**פרט אישום ארבעה עשר :**

**מהות העבירה** : סחר בציוד מלחמתי, עבירה לפי סעיפים 233(ב) ו-199(א)(א+ב) לצו בדבר הוראות בטחון (נוסח משולב) (יהודה והשומרון) (מס' 1651), התשע"ע-2009.

**פרטי העבירה** : הנאשם הנ"ל, באזור, סחר או עסק בצורה אחרת בציוד מלחמתי, ללא היתר חתום ממפקד האזור או מטעמו, דהיינו :

בעשותו את האמור בס"ק ד' לפרט האישום הראשון, סחר האחרון באמלי"ח ללא היתר כדין לכך.

**עדי התביעה :**

1. **פ.א. 3593/15 :**

2. 5588 <sup>Redacted</sup> רס"ר ראדי חטיב (גובה אמרות הנאשם מיום 20/10/15 ומיום 05/10/15 ומיום 02/11/15 ועורך שחזור)

3. 5618 <sup>Redacted</sup> רס"מ פארס גיבר (גובה אמרות הנאשם מיום 12/11/15 ו- 08/11/15 ועורך טופס לוואי מוצגים מיום 19/10/15).

4. 3520 <sup>Redacted</sup> רפ"ק אסף מלכה (עורך דו"ח פעולה מיום 13/11/15).

5. 9462 <sup>Redacted</sup> ארטיום צרנוגלז (עורך טופס לוואי מוצגים מיום 02/10/15).

6. 1175 <sup>Redacted</sup> שריף עוווידה (עורך מזכר מיום 01/10/15, טופס לוואי מוצגים, דו"ח פעולה וטופס משלוח מוצגים למעבדת נשק מיום 02/10/15 ו- 06/10/15).

7. 1572 <sup>Redacted</sup> רס"מ יואל חגי (עורך טופס קבלת מוצגים לבדיקה מיום 02/10/15 ו- 06/10/15).

8. 2978 <sup>Redacted</sup> עאמר סלימאן (עורך טופס לוואי מוצגים מיום 04/10/15, 05/10/15 ו- 06/10/15, עורך אישור קבלת חומר חקירה מהמשטרה מיום 28/10/15 ועורך מזכר מיום 10/11/15)

9. רפ"ק מאיר דוקל (עורך מזכר מיום 08/10/15).

10. 5017 <sup>Redacted</sup> רס"מ יפעת ביטון לבנון (עורכת אישור הודעה על גרימת נזק כתוצאה מפעולות איבה נגד ישראל מיום 06/11/15).

11. 6069 <sup>Redacted</sup> רס"מ אבי נקר (עורך לוח צילומים מיום 01/10/15, דו"ח בדיקה מז"פ מיום 01/10/15 ו- 04/10/15, דו"ח תפיסת מוצגים מיום 04/10/15 ודו"ח תיעוד פיתוח טביעות אצבע מיום 06/11/15)

12. 3833 <sup>Redacted</sup> רס"ל תומר אחרק (עורך מזכר מיום 10/11/15).

13. 3290 <sup>Redacted</sup> רס"ב יעקב ירושלמי (עורך מזכר מיום 16/11/15).

14. 3117 <sup>Redacted</sup> רנ"ג חיים כהן (עורך לוח צילומים מיום 15/10/15 ודו"ח תפיסת מוצגים מיום 18/10/15)

15. 2471 <sup>Redacted</sup> רס"מ עאמר חסן (עורך מזכר מיום 06/10/15)

16. 9898 <sup>Redacted</sup> רס"ר סימה אברהמי (עורכת קבלת מוצגים לבדיקה מיום 19/10/15)

</div>

CONFIDENTIAL

SHATSKY-JD01826

CONFIDENTIAL
SHATSKY-JD01827



17. 380 ᴿᵉᵈᵃᶜᵗᵉᵈ יעקב גורדון (עורך דו"ח ותפיסת מוצגים מיום 10/15 04/)

18. 7893 רס"ל מג'ד שופי (שרשרת מוצג)

19. 0730 ᴿᵉᵈᵃᶜᵗᵉᵈ פקד שלמה סיטון (עורך דו"ח פעולה מיום 06/10/15)

20. 3995 ᴿᵉᵈᵃᶜᵗᵉᵈ רס"ב יוסי לרנב (עורך דו"ח פעולה מיום 06/10/15)

21. 2542 ᴿᵉᵈᵃᶜᵗᵉᵈ רס"ר שמואל עליה (עורך דו"ח פעולה מיון 03/10/15)

22. 9571 ᴿᵉᵈᵃᶜᵗᵉᵈ רס"ר רועי יונגיק (עורך דו"ח פעולה מיום 01/10/15)

23. 3272 ᴿᵉᵈᵃᶜᵗᵉᵈ רס"ב נרן אשכנזי (עורך דו"ח פעולה מיום 01/10/15)

24. 2695 ᴿᵉᵈᵃᶜᵗᵉᵈ רס"ב אלכס וינו (עורך דו"ח פעולה מיום 01/10/15)

25. 6577 ᴿᵉᵈᵃᶜᵗᵉᵈ רס"ר אייל קלו (עורך דו"ח פעולה מיום 01/10/15)

26. 6354 ᴿᵉᵈᵃᶜᵗᵉᵈ רפ"ק מיכל לוין אלעד (עורכת דו"ח בדיקה מיום 12/10/15 ו- 05/11/15)

27. 3485 ᴿᵉᵈᵃᶜᵗᵉᵈ פקד תומר ארבלי (עורך דו"ח בדיקה מיום 12/10/15, 18/10/15, 19/10/15, ו- 05/11/15)

28. רפ"ק משה שפיצן (עורך חוות דעת מומחה מיום 09/11/15)

29. רפ"ק אבי קופמן (עורך חוות דעת מומחה מיום 13/10/15 ומיום 27/10/15 וערך הודעה על קשר לאוסף האירועים הפתוחים מיום 13/10/15).

30. סנ"צ ד"ר יורי מזין (עורך הודעת פטירה מיום 01/10/15)

31. יוסי איסו (עורך אישור גילוי מיום 15/10/15)

32. סרן שמואל רבינוביץ' (צה"ל, פרטים בידי התביעה)

33. סגן שחר יונה (צה"ל, פרטים בידי התביעה).

34. 1046 ᴿᵉᵈᵃᶜᵗᵉᵈ יחיא מוחמד נאיף עבדאללה חג חמד (עצור, ת.ת 2252/15)

35. 8869 ᴿᵉᵈᵃᶜᵗᵉᵈ כרם לוטפי פתחי רזק (עצור, ת ת 2250/15)

36. 7710 ᴿᵉᵈᵃᶜᵗᵉᵈ זיד זיאד ג'מיל עאמר (עצור, ת.ת 2251/15).

37. 1855 ᴿᵉᵈᵃᶜᵗᵉᵈ בסאם רמחי דאוד אבו ג'זאלה (עצור, ת.ת 2255/15)

38. 5587 ᴿᵉᵈᵃᶜᵗᵉᵈ אמנ'ד עאדל מוחמד עליוי (עצור).

39. 1328 ᴿᵉᵈᵃᶜᵗᵉᵈ ראביג אחמד מחמד עליויה (עצור, ת ת 2283/15)

40. 0262 ᴿᵉᵈᵃᶜᵗᵉᵈ מוחמד נזמי מוחמד עאמר (משוחרר)

41. עמיחי אזולאי (פרטים בידי התביעה)

42. נעה שלוי (פרטים בידי התביעה).

43. אליעזר אליהו טרבלסי (פרטים בידי התביעה)

44. צבי גורן (פרטים בידי התביעה)

45. עובדיה ריזוגצבי (פרטים בידי התביעה)

CONFIDENTIAL
SHATSKY-JD01827

CONFIDENTIAL

SHATSKY-JD01828

46. המכונה ״יספרי״ (שרות הביטחון הכללי)(פרטים בידיי התביעה)

47. המכונה ״נוריס״ (שרות הביטחון הכללי)(פרטים בידיי התביעה)

**פ.א. 3202/15:**

48. 6831 Redacted רס״מ ששי עזרא (עורך קבלת מוצגים לבדיקה מיום 08/09/15)

49. רפ״ק עזרא שושני (עורך חוות דעת מומחה מיום 16/09/15)

50. 5117 Redacted רנ״ג חיים כהן (עורך דו״ח תפיסת מוצגים מיום 31/08/15 ודו״ח בדיקת מז״פ מיום 06/09/15)

51. 5782 Redacted בועז הינדיג כהן (עורך דו״ח תפיסת מוצגים מיום 31/08/15 ועורך לוח צילומים ודו״ח בדיקת מז״פ מיום 06/09/15 ומיום 04/11/15)

52. 9141 Redacted רס״מ חנאי אקלר (עורך אישור הודעה על גרימת נזק כתוצאה מפעולות איבה נגד ישראל מיום 31/08/15)

53. 7778 Redacted יובל שוכר (עורך טופס משלוח מוצגים למעבדת נשק מיום 01/09/15)

54. רונן אדרי (פרטים בידי התביעה).

סגן      רויתם כהן ,

**צבאית**      תובעת

CONFIDENTIAL

SHATSKY-JD01828

# Exhibit 186

Prisoner Salary Statement

Prisoner no. 256371[*]
Prisoner Name:  Samir Zuheir Ibrahim Kusa          Document no. 907541700

| Month | Year | Beneficiary | ID no. | Bank Name | Branch | Account no. | Salary |
|-------|------|-------------|--------|-----------|--------|-------------|--------|
| | | | | Redacted | | | |
| 11 | 2020 | Samir Zuheir Ibrahim Kusa | Redacted 1700 | | | | 2,074.00 |
| 12 | 2020 | Samir Zuheir Ibrahim Kusa | Redacted 1700 | | | | 2,474.00 |
| 1 | 2021 | Samir Zuheir Ibrahim Kusa | Redacted 1700 | | | | 2,074.00 |
| 2 | 2021 | Samir Zuheir Ibrahim Kusa | Redacted 1700 | | | | 2,074.00 |
| 3 | 2021 | Samir Zuheir Ibrahim Kusa | Redacted 1700 | | | | 2,074.00 |
| 4 | 2021 | Samir Zuheir Ibrahim Kusa | Redacted 1700 | | | | 2,074.00 |
| 5 | 2021 | Samir Zuheir Ibrahim Kusa | Redacted 1700 | | | | 2,074.00 |

Confidential

Shatsky-JD00526-T

Original



كشف رواتب أسير

ر. قم الأسير   258371
اسم الأسير   سمير زهير ابراهيم كوسا

رقم الوثيقة   907541700

| الشهر | السنة | اسم المستفيد | البنك | رقم البطاقة | المبلغ | رقم للحساب | الراتب |
|---|---|---|---|---|---|---|---|
| 11 | 2020 | سمير زهير ابراهيم كوسا | | Redacted 1700 | | | 2,074.00 |
| 12 | 2020 | سمير زهير ابراهيم كوسا | | Redacted 1700 | | | 2,474.00 |
| 1 | 2021 | سمير زهير ابراهيم كوسا | | Redacted 1700 | | | 2,074.00 |
| 2 | 2021 | سمير زهير ابراهيم كوسا | | Redacted 1700 | | | 3,074.00 |
| 3 | 2021 | سمير زهير ابراهيم كوسا | | Redacted 1700 | | | 2,074.00 |
| 4 | 2021 | سمير زهير ابراهيم كوسا | | Redacted 1700 | | | 2,074.00 |
| 5 | 2021 | سمير زهير ابراهيم كوسا | | Redacted 1700 | | | 2,074.00 |

Redacted

من 1 صفحة

CONFIDENTIAL

Shatsky-JD00526

Exhibit 187

CONFIDENTIAL                                                              SHATSKY-JD01840-T

01-16-19 03:06 FROM – legal affairs      2411319      T-687    P0001/0005    F-968
01-16-19 13:31 FROM – ADDAMEER           022960446    T-030    P0001/0004    F-059

## Israel Defense Forces          [Handwritten in Arabic:] *Security*

## The Military Court in Judea                    Case No.: 6811/16

### Before Hon. Presiding Judge: Lieutenant Colonel Eti Adar      *[illegible word in Arabic]*

### Before the Hon. Judge: Major Sebastian Otovsky *344/2016*

### Before the Hon. Judge: Major Lidor Drachman  *[handwritten in Arabic:] Decision [illegible]*

**The Military Prosecution**

**(represented by attorney Captain Ben Barr)**

          - vs -

*[in Arabic:] Suhib Jabara Ahmad Faqih*

**The Defendant: Suhib Jabara Ahmad Faqih**          Redacted **6702 / Israel Prison Service — Present**

**(represented by Atty. Qawasmeh on behalf of Atty. Araj — Present)**

> [Round stamp in Arabic]
> The Palestinian National Authority
> Department of Detainees and Ex-detainees
> 11.30.2019
> Gen. Dir. of Legal Affairs
> Reviewed
> Indictments

**Court stenographer: Elia Lavie**

**Translator: Sergeant Ayman Kasrawi**

**Date of hearing: 22 October 2018**

## <u>Proceedings</u>

**The Court recognizes the Defendant.**

**The Defendant declares that he is represented by Atty. Qawasmeh on behalf of Atty. Araj.**

The Parties:    We do not object to the replacement of the panel.

The Military Prosecutor:    No evidence for the purpose of sentencing.

The Attorney for the Defense:    No evidence for the purpose of sentencing.

CONFIDENTIAL                                                      SHATSKY-JD01840-T

CONFIDENTIAL                                          SHATSKY-JD01841-T

01-16-19 03:06 FROM – legal affairs    2411319      T-687   P0002/0005   F-968
01-16-19 13:31 FROM – ADDAMEER         022960446    T-031   P0001/0004   F-059

# Israel Defense Forces

**The Military Court in Judea**                    **Case No.: 6811/16**

**Before Hon. Presiding Judge: Lieutenant Colonel Eti Adar**

**Before the Hon. Judge: Major Sebastian Otovsky**    *344/2016*

**Before the Hon. Judge: Major Lidor Drachman**

                              *[handwritten in Arabic:] Decision [illegible]*

**The Military Prosecution**

**(represented by attorney Captain Ben Barr)**

| |
|---|
| [Round stamp in Arabic] |
| The Palestinian National Authority |
| Department of Detainees and Ex-detainees |
| 11.30.2019 |
| Gen. Dir. of Legal Affairs |
| Reviewed |
| Indictments |

  **- vs -**

*[in Arabic:] Suhib Jabara Ahmad Faqih*

**The Defendant: Suhib Jabara Ahmad Faqih**    Redacted **6702 / Israel Prison Service — Present**

**(represented by Atty. Qawasmeh on behalf of Atty. Araj — Present)**

**Court stenographer: Elia Lavie**

**Translator: Sergeant Ayman Kasrawi**

**Date of hearing: 22 October 2018**

<u>Proceedings</u>

**The Court recognizes the Defendant.**

**The Defendant declares that he is represented by Atty. Qawasmeh on behalf of Atty. Araj.**

The Parties:     We do not object to the replacement of the panel.

The Military Prosecutor:        No evidence for the purpose of sentencing.

The Attorney for the Defense:  No evidence for the purpose of sentencing.

The Military Prosecutor's Summation:  As part of the plea bargain, I request that an agreed sentence of 16 years' actual imprisonment be imposed, plus, for each offense in the conviction, the deterrent of a **suspended sentence according to the discretion of the Court**, and lastly a fine of ₪10,000 or alternatively 10 months' imprisonment. The grounds for the plea bargain are the Defendant's clean record, his admission of guilt, and the great savings of time for the Court. Also considered was the nature of the complicity, which indicates that the Defendant belonged to the outer circle of those involved in the offense. We also took into consideration that the conviction was for an offense of complicity. In weighing the fact that the primary terrorist is the Defendant's brother, we considered the family ties and the killing of the primary terrorist. In answer to the Court's question, those injured in the offense have been informed of the plea bargain's details.

The Defense Attorney's Summation:    I endorse the words of my colleague the prosecutor and I ask that the plea bargain be honored. Granted, the Defendant's deeds meet the legal definition of complicity; but in

deliberations regarding sentencing, certainly we must consider the nature of the complicity and the degree to which the complicity contributed to the completion of the offense. In this case, to our understanding, the complicity did not significantly contribute to bringing the offense to completion. I ask that the plea bargain be honored.

The Defendant, in his final statement: I have nothing to add.

1

CONFIDENTIAL                                        SHATSKY-JD01841-T

[Translator's note: There has been a confusion in the order of the pages in the original text. JD01843 should come before JD01842]

CONFIDENTIAL
SHATSKY-JD01842-T

| 01-16-19 03:06 FROM – legal affairs | 2411319 | T-687 | P0003/0005 | F-968 |
| 01-16-19 13:31 FROM – ADDAMEER | 022960446 | T-031 | P0002/0004 | T-059 |

**Date: 22 October 2018**      **The Military Court in Judea**      **Case No.: 6811/16**

The parties have presented a plea bargain to us asking that we sentence the Defendant to an agreed term of 16 years' actual imprisonment, plus, for each offense in the conviction, the deterrent of a suspended sentence according to the discretion of the Court, **and lastly a fine of ₪10,000 or alternatively 10 months' imprisonment.**

As grounds for the plea bargain, the parties cited the Defendant's clean record, his admission of guilt, and the great savings of time for the Court. It was also mentioned before us that the parties had considered the Defendant's manner of participation in the offense to place him in the outer circle of those involved. The Prosecution also took into consideration that the primary terrorist was the Defendant's brother. In answer to a question from the Court, the Prosecution added that those injured in the offense have been informed of the plea bargain's details. The Defense asked to point out that the Defendant's deeds did not in themselves actually contribute significantly to bringing the offense to completion and perpetration.

As we set about considering the plea bargain presented by the parties, we paid attention to the fact that the offenses of which the Defendant has been convicted involve complicity in the perpetration of the most severe offense in the law book, the offense of Intentionally causing death. By his deeds, which aided in bringing death to Rabbi Mark of blessed memory and injury to his family, the Defendant severely violated a set of values protected by society, foremost among them the supreme value sanctifying life, along with the necessity of preserving the public's safety and welfare. In light of the grim consequences of the terror attack, the degree to which those values have been violated is obviously severe and extreme.

By his deeds, the Defendant provided both practical and moral assistance to his brother, the perpetrator of the terror attack. Thus, according to the facts in the indictment to which the Defendant has confessed, the Defendant was made aware of his brother's malevolent plan at an early stage, and between then and the time of the terror attack's perpetration, he assented to his brother's request to purchase equipment for him and to hide weaponry for him. After the terror attack was perpetrated, the Defendant helped his brother by supplying equipment and by bringing him to a hiding place, and moreover the Defendant even suggested hiding places which he believed would be suitable and were located in a good place of concealment. The ideological principle underlying the deeds of the principal perpetrator, who told the Defendant that his intent was to perpetrate a shooting terror attack in order to die as a "holy martyr," also weighs against the Defendant. Sadly, the harm done by the deeds of the Defendant and of the perpetrators of the terror attack is severe, painful, and irreversible: the loss of human life.

Examination of the prevailing policy for the offense of Intentionally causing death indicates that for reasons of recompense, abhorrence of the deeds, and the necessity of protecting the public welfare, such offenses incur severe and deterrent prison sentences, and further suspended sentences as well. The Military Court of Appeals addressed the matter of punishment for this offense and it stated that

"... The practice of ruling in the Region has seen fit to establish a scale within the offense of complicity in causing death   intentionally,   and   in   the   appropriate   punishments.   The punishments are scaled according to the degree of involvement   by the defendant   in the deeds that caused death, and according to the number of victims. The          punishments thus may vary from a few years' imprisonment to life imprisonment... Regarding the scaling of punishments for complicity in murder, the court system in the Region follows the example of Israeli rulings, because it is a matter of court systems and death, governed by similar values and with similar principles of punishment for deeds of

<div align="center">3</div>

CONFIDENTIAL                                                   SHATSKY-JD01842-T

CONFIDENTIAL                                                     SHATSKY-JD01843-T

| | | | | |
|---|---|---|---|---|
| 01-16-19 03:06 FROM – legal affairs | 2411319 | T-687 | P0004/0005 | F-968 |
| 01-16-19 13:31 FROM – ADDAMEER | 022960446 | T-031 | P0003/0004 | T-031 |

**Date: 22 October 2018    The Military Court in Judea    Case No.: 6811/16**

## Before Hon. Presiding Judge: Lieutenant Colonel Eti Adar

## Before the Hon. Judge: Major Sebastian Otovsky

## Before the Hon. Judge: Major Lidor Drachman

The Military Prosecution

**(represented by attorney Captain Ben Barr)**                    *[illegible word in Arabic]*

**The Defendant: Suhib Jabara Ahmad Faqih**    ^Redacted 6702 / Israel Prison Service — Present

**(represented by Atty. Qawasmeh on behalf of Atty. Araj — Present)**

### Sentencing

The Defendant has been convicted, in accordance with his confession in the context of a plea bargain, to a series of serious offenses, the foremost being complicity in Intentionally causing the death of Rabbi Michael Mark of blessed memory and in attempting to bring death to his wife and two children.

According to the indictment to which the Defendant has confessed, during May 2016 Mohamed Faqih, the Defendant's brother, told of his intention to commit a terror attack. Mohamed Faqih showed a handgun and a Kalashnikov rifle to the Defendant and asked him to help keep the weapons safe by hiding them in his home. The Defendant assented to his brother's request and hid the weapons in his home for some time. Roughly ten days before the date of the terror attack, the Defendant bought an IDF military uniform for his brother, at his request, and with that uniform Mohamed Faqih would enter Israeli communities and collect intelligence for the terror attack. On the day of the terror attack, the Defendant accompanied his brother in his car and brought him, at his request, a bag containing elbow guards. On that same occasion, the Defendant noticed that his brother had Israeli license plates, which he had last attached prior to the terror attack in order not to arouse suspicion. On 1 July 2016, Mohamed Faqih set out together with Mohamed Al-Amayreh toward Highway 60, where they perpetrated a shooting terror attack. Together with Mohamed Al-Amayreh, Mohamed Faqih fired at highway 60, committing a terror attack in the course of which Mohamed Faqih fired approximately 25 bullets at an Israeli vehicle and it flipped over together with its occupants. That terror attack brought death to Rabbi Michael Mark of blessed memory and injured the rest of the vehicle's occupants: Chava Mark and the minors T. Mark and P. Mark.

On that same day, after the terror attack, Mohamed Faqih told the Defendant that he had perpetrated the said terror attack. Mohamed Faqih asked the Defendant to go to his home and bring his bag. The Defendant did so. Mohamed Faqih announced that he intended to hide in order to escape the security forces. Accordingly, the Defendant took up his car keys and gave them to his brother in order to help him escape from the Region with the bag that contained his clothing and his weaponry. Later, the Defendant suggested to his bother that he hide his belongings in an abandoned building, and he acceded to a request from the latter that he drive him back to the

village. In addition, the Defendant purchased food for his brother and even offered him lodgings at his home, although the latter declined for fear that he would be arrested.

On the basis of those facts, the Defendant was convicted of complicity in Intentionally causing death, of three counts of complicity in attempting to intentionally cause death, and of an offense of possessing weaponry. In addition, the Defendant was convicted, in accordance with his confession, of the offense of membership and activity in an unlawful association in consequence of his membership in a military cell under the Hamas organization during the period beginning in late 2015 and continuing until his arrest.

2

CONFIDENTIAL

SHATSKY-JD01843-T

CONFIDENTIAL                                                  SHATSKY-JD01844-T

| 01-16-19 03:06 FROM – legal affairs | 2411319 | T-687 | P0005/0005 | F-968 |
| 01-16-19 13:31 FROM - ADDAMEER | 022960446 | T-031 | P0004/0004 | T-031 |

### Date: 22 October 2018      The Military Court in Judea      Case No.: 6811/16

similar severity. And indeed the Military Court of Appeals has not been hasty to impose life sentences for complicity in intentionally causing death but has instituted a scaling of punishments... The rulings in the Region show a broad range of levels of punishment, from a few years' imprisonment to life imprisonment." (Case 1342/03, The Military Prosecutor vs Iyad Abayat) (Published in Nevo, 28 February 2011)

Indeed the range of sentencing for those offenses is broad, paralleling the nature of the complicity and the degree of the defendant's closeness to the inner circle of the offense's perpetrators. Thus the appropriate punishment is determined according to the particular circumstances of each individual case and in keeping with the scope of the involvement in planning and perpetrating the offense, so as to preserve a reasonable scaling of punishment among the various people involved.

As we set about examining the plea bargain concluded by the parties, we considered on the one hand the severity of the offenses in which the Defendant was complicit and the severe consequences of the destruction of human life and wounding of additional victims, and on the other hand we took into account that the Defendant was positioned in the outer circle of those involved in the offense and that some of the deeds of which he has been convicted were by way of help to his fleeing brother after the offense was committed.

In these circumstances, we have found that the proposed plea bargain falls within the range of suitable punishment, and therefore we have decided not to diverge from it.

Accordingly, we impose the following punishments on the Defendant:

A.   16 years' imprisonment, to be served in actuality, starting from the day of his arrest.

B.   Three (3) years' imprisonment, suspended on condition that during five (5) years from the date of his release, the Defendant does not commit any offense relating to intentionally causing death, attempting to commit such an offence, or complicity in either committing or attempting to commit such an offense.

C.   18 months' imprisonment, suspended on condition that during 5 years from the date of his release, the Defendant does not commit any offense relating to membership and activity in an unlawful association or any offense that involves an element of handling war materiel.

D.   A monetary fine of 10,000 shekels, or 10 months' imprisonment instead. The fine must be paid on or before the date of the Defendant's release from prison, and as a condition for his release. Coupon no.: 0018113637,

**The sentence may be appealed within 30 days.**

**Issued and proclaimed on this 22nd day of October 2018 in public and in the presence of the parties**

| [handwritten signature] | [handwritten signature] | [handwritten signature] |
| Judge | Presiding Judge | Judge |

4

CONFIDENTIAL                           SHATSKY-JD01844-T

CONFIDENTIAL                                                          SHATSKY-JD01847-T

| [English] State of Palestine | [Emblem of the Palestinian Authority] | [Arabic] State of Palestine |
|---|---|---|
| Ministry of Detainees & Ex-detainees Affairs | | Ministry of Detainees & Ex-detainees Affairs |
| Gen. Dep. Detainees & Ex-detainees | | Gen. Dep. Detainees & Ex-detainees |

3. Current Arrest Information:

| Arrest date: | 7/4/2016 | | | Type of arrest: | | ☐ Security | ☐ Civilian |
|---|---|---|---|---|---|---|---|
| Arrested from: | ☐ Home  ☐ Crossing  ☐ Other | | | Current prison: | | | |
| Arrest status: | ☐ Detained | ☐ Sentenced | ☐ Administrative | | ☐ Other | | |
| In case of life sentence according to ICRC Certificate | Day | Month | Year | Expected release date according to verdict: | Day | Month | Year |
| Sentence date: | | | | Release date: | | | |
| Notes: | | | | | | | |

4. Information concerning previous arrests:  Previous arrests: (Only those attested to by ICRC certificates)

| No. | Arrest type (security/civilian) | Arrest Date | Release date | Prison | Arrest period | | | Notes |
|---|---|---|---|---|---|---|---|---|
| | | | | | Day | Month | Year | |
| 1. | | | | | | | | |
| 2. | | | | | | | | |
| 3. | | | | | | | | |
| 4. | | | | | | | | |
| 5. | | | | | | | | |
| 6. | | | | | | | | |
| 7. | | | | | | | | |
| 8. | | | | | | | | |
| 9. | | | | | | | | |
| 10. | | | | | | | | |
| 11. | | | | | | | | |

5. Health Condition (of the prisoner\ex-prisoner)

| Do you suffer any illnesses? | ☐ Yes    ☐No | The illnesses: | |
|---|---|---|---|
| Date illness began: | | | |
| Do you suffer from disability / handicap? | ☐ Yes    ☐No | Type of disability / handicap | ☐ Chronic  ☐ Temporary |
| Disability/handicap percentage | % | Disability attested to by a report: | ☐ Yes    ☐No |
| Medical report date: | | Issued by: | |
| Notes: | | | |

3

CONFIDENTIAL

SHATSKY-JD01848-T

| [English] State of Palestine | [Emblem of the Palestinian Authority] | [Arabic] State of Palestine |
|---|---|---|
| Ministry of Detainees & Ex-detainees Affairs | | Ministry of Detainees & Ex-detainees Affairs |
| Gen. Dep. Detainees & Ex-detainees | | Gen. Dep. Detainees & Ex-detainees |

**6. Information Concerning the Beneficiaries of the Prisoner/ex-Prisoner's Allowance:**

**A. First Beneficiary:**

| Name (First Beneficiary): | Yusra Hasan Al-Faqih | | Relationship: | Mother |
|---|---|---|---|---|
| Document Type: | | | Doc. No.: | |
| Tel. No.: | | | Cellular Tel. No.: | |
| Governorate: | Hebron | | Complex: | |
| Bank: | Redacted | | Branch: | Redacted |
| Account No.: | | | | |
| In Case the Sum is Divided: | No.: | Percentage: | % | |

**B. Second Beneficiary (If Exists):**

| Name (First Beneficiary): | | | | | | | Relationship: | |
|---|---|---|---|---|---|---|---|---|
| Document Type: | | | | | | | Doc. No.: | |
| Tel. No.: | | | | | | | Cellular Tel. No.: | |
| Governorate: | | | | | | | Complex: | |
| Bank: | | | | | | | Branch: | |
| Account No.: | | | | | | | Current account in shekels only | |
| In Case the Sum is Divided: | No.: | | | Percentage: | | | % | |

| Applicant's Notes: | |
|---|---|
| Confirmation: | I the undersigned confirm and testify that all of the information provided in this application is correct and I take responsibility for it. |
| Applicant's Signature: | |

4

CONFIDENTIAL

SHATSKY-JD01848-T

CONFIDENTIAL                                                    SHATSKY-JD01851-T

<u>Israel</u>                 **Defense**                              <u>Forces</u>

in the Military  Court                      Court File: 16/

in Judea                                    Prosecution File: 2651/16

Before a Panel                              Police File: 288060/16 (Ashkelon)

<u>In the case between</u>

<u>The Military Prosecutor</u>

[Handwritten in Arabic:] *Suhib*

<u>The Plaintiff</u>

- vs -

┌─────────────────────────────┐
│ The Military Court in Judea  │
│ Received by: 8/16            │
│ on [illegible]               │
│       14:50                  │
└─────────────────────────────┘

<u>Suhib Jabara Ahmad Faqih</u>

ID No. ^Redacted 6702, born on ^Redacted 1995, resident of Dura

**(detained since July 4, 2016)**

┌──────────────────────────┐
│ [round stamp in Arabic]  │
│ PLO                      │
│ Detainees & Ex-Detainees │
│ Department               │
│ Sept. 27, 2016           │
│ General Department for Legal │
│ Affairs                  │
│ Checked                  │
│ Indictments              │
└──────────────────────────┘

<u>the Defendant</u>

<u>Indictment</u>   *[handwritten Arabic:] indictment*

<u>The abovenamed Defendant is hereby indicted for committing the following</u>
<u>offenses:</u>

<u>First Count:</u>

<u>Description of the Offense:</u>   **Membership and activity in an unlawful association**,
an offense pursuant to regulations 85(1)(a) of the Defense
(Emergency) Regulations, 1945, and Section 199 c(a) of the Security
Provisions (Judea and Samaria) Order (No. 1651), 5770-2009.

<u>Details of the Offense:</u>The defendant, during the period that began at the end of the
month of November, 2015, and ended with the day he was arrested or
thereabouts, was a member or was active as a member in an unlawful
association, i.e.:

1. In the month of November 2015 or thereabouts, at Abu Dis
   University or thereabouts, Salem Mousa Abdel Majid Shadid
   (henceforth: **"Salem"**) and Izz A-Din Sa'id Mohamed Talahmeh
   (henceforth: **Izz A-Din**) established a military cell for the Hamas
   organization.

2. While in this cell, Salem and Izz A-Din contacted Mohamed Adib
   Ahmed al-Qiq (henceforth: **"Mohamed"**), whom Izz A-Din was
   acquainted with as a former officer in the Islamic Bloc
   organization at , a number of times, in order to receive guidance
   and funding for the cell so that weapons could be purchased.

3. After Mohamed was arrested on Nov. 15, 2021, Salem and Izz A-
   Din decided to recruit others to the military cell. Accordingly,
   Salem contacted the defendant and proposed that he join the
   cell. In order to persuade him, Salem told the defendant that the

military cell already had funding and weapons, and the defendant agreed to join the cell.

4. Salem recruited Shadad Hamoudah Mohamed Abu Qarandal (henceforth: "Shadad") and Ali Mohamed Ali Rajoub (henceforth: "Ali").

5. Moreover, at a later date, Salem asked each of the members of the cell to begin physical training in order to be ready for action. Salem also gave the defendant, Suhib, and Izz A-Din, separately, a flash drive with information he had downloaded from the internet on the Hamas organiation and its military wing, connected to investigations performed by Israeli security entities, in order to strengthen their connection to the cell.

6. The defendant began physical training, and read the information that was on the flash drive. Later, he destroyed the drive.

7. By performing the aforementioned action, the defendant became a member in an unlawful association.

CONFIDENTIAL

SHATSKY-JD01851-T

CONFIDENTIAL                                    SHATSKY-JD01852-T

**Second Count:**

**Nature of the Offense:** **Conspiracy to intentionally cause death,** an offense pursuant
to Sections 209(a) and 199e of the Security Provisions [Consolidated
Version] (Judea and Samaria) (No. 1651), 5770-2009.

**Details of the Offense:** Details of the Offense: The above-named Defendant, in the
region, intentionally caused the death of a person, i.e.:

1. In May, 2016, the defendant met with his brother, Mohamed
   Jabara Ahmed Al-Faqih (henceforth: "Faqih"), who told him that
   he had a house and a wife, and that all he had left was to meet
   God.
2. About ten days before the month of Ramadan, the defendant set
   out to the Hebron market with Faqih, where the latter bought
   several items, including kafiyyahs, knee guards, elbow guards,
   and ski masks to cover their faces. Moreover, Fakih asked the
   defendant to buy him two uniforms, and the defendant agreed.
3. Thereabouts, Faqih presented the defendant with a 14 mm.
   pistol, a Kalashnikov rifle and 5 loaded magazines.  Faqih told the
   defendant that he had another 7 weapons.
4. Furthermore, at that time, Faqih told the defendant that he
   planned to carry out an attack and die "in Martyrdom". Faqih
   asked the defendant to take care of his wife and return her to
   Dura after he had carried out the attack.
5. Afterwards, when they returned, Faqih told the defendant that
   the time to carry out the attack was drawing near, but the
   leaders of Al-Qassam Brigades asked him to postpone the time of
   the attack, because a war was expected between Gaza and Israel.
6. Faqih asked the defendant to keep the weapons, and showed him
   where to conceal them, if the army were to arrive. The defendant
   concealed the weapon in the third floor of him house, which was
   under construction. The defendant, along with Faqih, would
   maintain the weapons, such that the defendant would unload the
   weapons and Faqih would clean them.
7. During the time that the weapons were in the defendant
   possession, Faqih would take the weapons from the defendant
   during the day, and return them at night.
8. Faqih asked the defendant to go to his home and collect gold and
   pictures before the army took them, after he carried out the
   attack, and the defendant agreed.
9. About ten days before the attack was carried out, the defendant
   bought two IDF uniforms for Faqih, as he had agreed to do, as
   stated in subclause 2. Faqih would wear the uniforms that the
   defendant purchased when he would enter Israeli settlements.
   While Faqih was disguised as an IDF soldier, another person who
   was with him was disguised as a settler, and this is how they
   operated in order to gather intelligence before the attack.
10. About three days before the attack was carried out, Faqih
    notified the defendant that in light of a number of recent attacks

[round stamp in Arabic]
PLO
Delainees & Ex-Detainees
Department
Sept. 27, 2016
General Department for Legal
Affairs
Checked
Indictments

and the fear that he will be arrested before he carries out the attack, he had received approval to carry out the attack.

11. Faqih told the defendant that he had started reconnoitering in the area, walking around the settlements and gathering intelligence, so that he could locate a target for the attack.

12. On July 1, 2016, the defendant noticed Faqih, who was wearing black army pants and army boots. Faqih told the defendant that he would carry out the attack on that day. The defendant accompanied Faqih to his car, a Hyundai vehicle. Faqih asked the defendant to bring him a bag from the house containing elbow guards, and the former did what he had asked. The defendant noticed that Faqih had brought along Israeli license plates.

13. That same day, Faqih set out, along with Mohamed Al-Amayreh, to carry out a shooting attack against Israeli targets, in order to murder Israelis.

14. The two met at Salah A-Din school, where they replace's Faqih's **"Hyundai"** vehicle's Palestinian license plates with Israeli license plates, so that their vehicle would not arouse suspicion, and so that the military would not stop them.

CONFIDENTIAL                                        SHATSKY-JD01852-T

CONFIDENTIAL   SHATSKY-JD01853-T

15. Afterwards, the two made their way toward Route 60, with two Kalashnikov rifles, and sought out an Israeli vehicle that they could shoot at.

16. At the same time, a grey Toyota vehicle was making its way down Route 60 from Otniel to Jersualem, with Rabbi Michael Mark, of blessed memory, his wife and two of their children (henceforth: "**the Toyota Vehicle**" and/or "**the Israeli vehicle**").

17. Mohamed Al-Amayreh and Faqih noticed the Toyota Vehicle with its Israeli license plates, which was driving in front of them toward Jerusalem. The two drove behind the Toyota vehicle for several minutes. Mohamed Al-Amayreh drew close to the Toyota vehicle and accelerated.

18. At this point, Faqih took one of the Kalashnikov rifles they had with them in the vehicle, cocked it and prepared it for firing.

19. Faqih asked Mohamed Al-Amayreh to pass the Israeli Vehicle, and as such, Mohamed Al-Amayreh accelerated and passed the Israeli Vehicle on the left, while driving down the opposite lane.

20. When they were adjacent to the Israeli Vehicle, Faqih held the weapon out of the vehicle's window and aimed at the Israeli vehicle.

21. When the two were only 2 meters away from the Israeli Vehicle, Faqih began massively firing at it, hitting the Israeli Vehicle with about **25 bullets**, and the Israeli vehicle overturned, along with its passengers.

22. After several seconds of constant fire, the two passed the Israeli Vehicle and began moving away at it. At a distance of about 20 meters, Mohamed Al-Amayreh turned the car around, back in the direction of the Israeli Vehicle, noticing that the Israeli Vehicle had overturned.

23. At that point, Faqih left the Hyundai Vehicle and made his way toward the Israeli Vehicle, holding the Kalashnikov rifle, in order to continue firing at the passengers of the vehicle and ensure that they were dead.

24. Once he was at the Israeli Vehicle, Faqih shot another round at its passengers, but was forced to abort at the orders of Mohamed Al-Amayreh, who noticed that additional vehicles were approaching the area.

25. Faqih returned to the vehicle, and the two made their way back to Dura.

26. **By doing the aforementioned, Faqih and Mohamed Al-Amayreh had intentionally caused the death of Michael Mark, of blessed memory, who drove the vehicle. Five bullets hit his body, and one hit his head.** They also wounded the passengers of the vehicle.

27. During their drive back to Dura, Faqih told Mohamed Al-Amayreh that there were small children in the vehicle they had shot at, but he didn't manage to shoot them.

[round stamp in Arabic]
PLO
Detainees & Ex-Detainees
Department
Sept. 27, 2016
General Department for Legal
Affairs
Checked

28. Moreover, Faqih told Mohamed Al-AmayrehAl-Amayreh of his desire to carry out additional shooting attacks at Israeli targets, after he is designated as a suspect, and even told him where he could find him after he was designated as such.

29. When the two reached Salah A-Din school, they replaced the vehicle's license plates with Palestinian license plates, and disposed of the Israeli license plates.

30. Afterwards, the two took their leave from each other. Each of them was carrying one of the Kalashnikov rifles that they had with them during the attack.

31. On the day after the attack was carried out, the defendant noticed Faqih driving a Hyundai vehicle. Faqih motioned to the defendant to drive behind him, and the latter drove behind him in his "Peugot" vehicle toward Ghanaim. There, Faqih told the defendant that he had carried out a shooting attack, during which he fired at a settler and his family, and that Faqih's vehicle was hit during the attack. Also,

CONFIDENTIAL

SHATSKY-JD01853-T

CONFIDENTIAL                                     SHATSKY-JD01854-T

Faqih told the defendant that he wanted to shoot at another car, but he was forced to stop shooting because a Palestinian vehicle was approaching, and he decided to flee the area.

[round stamp in Arabic]
PLO
Detainees & Ex-Detainees
Department
Sept. 27, 2016
General Department for Legal
Affairs
Checked

32. Faqih asked the defendant to go to his home and bring him his bag, and the defendant did so, but on his way back to Ghanaim, Faqih called the defendant and asked him to go to the home of Abu Hamzah Khaled Faqih (henceforth: **"Hamza"**). When he reached Hamza's home, the defendant noticed Faqih sitting there with workers next to him. Faqih ordered the defendant not to take the bag down so that the workers wouldn't noticed it. Faqih showed the defendant the news reports on the shooting attack on a mobile phone, and afterwards, the defendant returned home.

33. That very day, Faqih contacted Alaa Raed Saleh Zughayer (henceforth: **"Alaa"**), asking him to help fix a hole in the Hyundai Vehicle that was caused by a bullet that was fired, and the latter agreed.

34. Moreover, Faqih told Alaa that he intended to hide out in a building that was under construction, but Alaa suggested to Faqih that he spend the night at the university's student dorms, which are in Hebron's Al-Jami'a neighborhood, and the latter agreed.

35. The following day, Alaa assisted Faqih in his attempts to evade security forces, by taking him and his belongings from place to place. Inter alia, Faqih drove him to his parents' home. Upon arriving at his parents' home, the defendant got out, took Faqih's bag out of Alaa's car, and placed it in his Peugot vehicle.

36. After hearing the army entering the village, and fearing that the army would arrest Faqih, Faqih asked the defendant for the keys to his car, and the defendant gave the car keys to Faqih so that the latter could flee from the area. Faqih took the defendant's car, with his bag, containing his clothes and weapons, in his possession.

37. In the evening, Faqih returned to the defendant's home, and joined for the breaking the fast meal.

38. After the meal, the defendant headed out in his vehicle, along with Faqih, with his bag and his weapon. Faqih told the defendant that he was interested in concealing his bags. The defendant suggested to Faqih to conceal them in an abandoned house in the area between Ghanaim and Wadi Dor. The Defendant chose this place because he had thought that it was suitable for someone interested in hiding out and concealing equipment. Faqih agreed to the defendant's suggestion, took his bag and weapon, and exited the vehicle. The two agreed that they would meet later, at Ayed Faqih's home.

39. Later, the two met at Ayed Faqih's home. Faqih asked the defendant to drive him back to the village, and the defendant agreed. During their drive, Faqih made several phone calls, but they weren't answered. Faqih told the defendant that he

intended to carry out another attack and die the death of "Martyrdom". At Faqih's behest, he defendant bought him food.

40. The defendant suggested to Faqih that he sleep at his home, but the latter refused, fearing that they would come to their house and they would arrest him. The defendant took Faqih back to the abandoned house.

41. By performing the aforementioned act, the defendant assisted in intentionally causing the death of Rabbi Michael Mark of blessed memory.

**Third Count:**

**Nature of the Offense:** **Aiding and abetting an attempt to intentionally cause death**, and offense pursuant to Sections 198, 209(a) and 199e of the Security Provisions [Consolidated Version] (Judea and Samaria) (No. 1651), 5770-2009.

**Details of the Offense:** The aforementioned defendant, in the Region, tried to intentionally cause the death of another person, i.e.: the said defendant, at the time and period stated in the second count of the indictment, by performing what is stated in the second count of the indictment, was an accessory to the attempt to intentionally cause the death of Chava Mark.

CONFIDENTIAL

SHATSKY-JD01854-T

CONFIDENTIAL                                         SHATSKY-JD01855-T

**Fourth Count:**

**Nature of the Offense:** **Aiding and abetting an attempt to intentionally cause death**, and offense pursuant to Sections 198, 209(a) and 199e of the Security Provisions [Consolidated Version] (Judea and Samaria) (No. 1651), 5770-2009.

**Details of the Offense:** The said defendant, in the Region, attempted to intentionally cause the death of another person, i.e.: the said defendant, at the time and period stated in the second count of the indictment, by performing what is stated in the second count of the indictment, was an accessory to the attempt to intentionally cause the death of T. Mark.

**Fifth Count:**

**Nature of the Offense:** **Aiding and abetting an attempt to intentionally cause death**, and offense pursuant to Sections 198, 209(a) and 199e of the Security Provisions [Consolidated Version] (Judea and Samaria) (No. 1651), 5770-2009.

**Details of the Offense:** The said defendant, in the Region, attempted to intentionally cause the death of another person, i.e.: the said defendant, at the time and period stated in the second count of the indictment, by performing what is stated in the second count of the indictment, was an accessory to the attempt to intentionally cause the death of P. Mark.

**Sixth Count:**

**Nature of the Offense:** **Carrying, possessing and producing weapons**, an offense under Sections 230(b) and 199e of the Security Provisions [Consolidated Version] (Judea and Samaria) (No. 1651), 5770-2009.

**Details of the Offense:** The said defendant, **at the times and places stated in the first count of the indictment,** in the Region, carried, possessed or produced a weapon, without a permit certificate from the military commander or on his behalf, or not in accordance with the conditions of the permit certificate, i.e.:

To intentionally cause the death of another, i.e.: at the times and places stated above, and in doing what was stated in clauses 6-7 of the second count of the indictment. the defendant had possessed a weapon, without a permit certificate from the military commander.

**Witnesses for the Prosecution:**

1.  SFC Yosef Mashiach, Personal ID No. <sup>Redacted</sup>7743, Ashkelon (who took the defendant's statements on July 5, 2016, July 11, 2016, July 18, 2016, and July 19, 2016.

2. Sergeant Major Benny Gavriel , Personal ID No. <sup>Redac</sup>2867, Hebron (prepared the summary forensic report and photo board from July 3, 2016 and July 11, 16 (chain of exhibits).

3. First Sergeant Eli Barsheshet, ID No. <sup>Redacted</sup>2193, Hebron (prepared the forensic investigation summary and photo board from July 3, 2016 and July 11, 2016 (chain of exhibits)

4. Sergeant Major Malul Hillel, ID No. <sup>Redacted</sup>7958, Hebron (prepared the action report on July 10, 2016).

5. Inspector Yesh'el Ben Chamo, ID no. <sup>Redacted</sup>7034, Hebron (submitted visit report from July 3, 2016)

6. Superintendent Ofer Shalush, ID no. <sup>Redac</sup>5572, Forensics.

7. Padia Mark (details in the prosecution file)

8. Ma'amun Hija (details in the prosecution file)

9. Jihad Hija (details in the prosecution file)

10. Islam Abdul Hamid Bad ( details in the prosecution file)

11. Alaa Raed Saleh Zughayer, ID No.<sup>Redacted</sup>8696

12. Suhib Jabara Ahmad Faqih, ID No. <sup>Redacted</sup>6702

13. Mouad Khaled Ahmed Faqih ID No. <sup>Redacted</sup>7122

14. Mohamed Yousuf Mohamed Barwish, ID No. <sup>Redacted</sup>6427

15. Taghrid Jabara Ahmed Faqih, ID No. <sup>Redacted</sup>3536

16. Salem Mousa Abdel Majid Shadid, ID No. <sup>Redacted</sup>2770

17. Izz A-Din Sa'id Mohamed Talahmeh, ID No. <sup>Redacted</sup>5197

18. Ali Mohamed Ali Rajoub, ID No. <sup>Redacted</sup>3833.

CONFIDENTIAL                                           SHATSKY-JD01856-T

19. Expert opinion by Yair Dalber.
20. Expert opinion by Avi Kaufmann.
21. Expert opinion by Prof. Uzi Motero.

**Exhibits**:

1. Toyota vehicle, exhibit number 0018933T
2. 6 bullet particles, exhibit number 0051649T
3. Bullet from the victim's head, number 0273187T
4. 20 bullet particles, exhibit number 0209155T
5. Kalashnikov rifle (ID No. 2108787), exhibit number 0510392J
6. Hyundai vehicle, exhibit number 0510395J.
7. Peugeot car

1st Lieutenant Meital Reihani

Military Prosecutor

# Original

CONFIDENTIAL

SHATSKY-JD01839



## TO WHOM IT MAY CONCERN

**This attestation is valid only if the English and Arabic parts match each other**

207724

According to the information received from the Israeli Authorities, the International Committee of the Red Cross attests that:

Mr:   SOHAIB JBARAH AHMAD FAQIH

From:   *HEBRON*                     ID NO: Redacted 6702

22838

Was arrested by the Israeli Authorities on (dd/mm/yyyy):   04.07.2016

He is to date: **Sentenced**

Length of sentence / administrative period: **15.11.28 Period in years, months, days**



إلى من يهمه الأمر

هذه الشهادة سارية المفعول فقط في حالة تطابق بياناتها باللغتين العربية و الإنجليزية

استنادا الى المعلومات الواردة من السلطات الإسرائيلية، تشهد اللجنة الدولية للصليب الأحمر بأن:

السيد/ة الأفتتة _____

من _____ هوية رقم ____Redacted__

كان/ت قد اعتقل/ت من قبل السلطات الإسرائيلية في يوم ____ / شهر ____ / سنة ____

وهو/هي في هذا التاريخ : ينتظر المحاكمة ____ محكوم/ة ____ اداري ____

محكوم/ة أو اداري لمدة _____

**CERTIFIED UPDATE**

16 -01- 2019
ICRC International Committee
of the Red Cross

Date: 16.01.2019
التاريخ

Place: HEBRON/IT
المكان

ILJ-895199
CONFIDENTIAL

ICRC Delegate
توقيع مندوب اللجنة

SHATSKY-JD01839

CONFIDENTIAL
SHATSKY-JD01840

```
01-16-'19 03:06 FROM-  legal affairs          2411319              T-687  P0001/0005 F-968
01-16-'19 13:11 FROM-  ADDAMEER               022960446            T-030  P0001/0004 F-059
```

צבא הגנה לישראל

תיק מס׳: 6811/16

בית המשפט הצבאי ביהודה

1   בפני כב׳ האב״ד: סא״ל אתי אדר

2   בפני כב׳ השופט: רס״ן סבסטיאן אוסובסקי

3   בפני כב׳ השומרת: רס״ן לידור דרכמן

4

5   התביעה הצבאית

6   (באמצעות ב״כ סרן בן בר)

7

8

9   הנאשם: צותיב    גבארה    אחמד    אלמקיה    / שב״ס – נוכח

10  (באמצעות ב״כ עו״ד קוסמה בשם עורך דין עארגי– נוכח)

11

12  רמ״שית: טור׳ אליה לביא

13  מתורגמן: סמל אימן כסראוי

14

15  תאריך הדיון:18/10/22, יום שני י״ג חשון תשע״יט

16

17  <u>מהלך הדיון</u>

18

19  ביהמ״ש מזהה את הנאשם.

20  הנאשם מצהיר כי מייצג אותו עו״ד קוסמה בשם עורך דין עארג׳.

21
22
23  צדדים: אין לנו התנגדות להחלפת חמותב.
24
25  ותוב״יצ: אין ראיות לעונש.
26
27  סנגור: אין ראיות לעונש.
28

מאסר ........ לכאורה זה הוגשה ווגשה מוחרה של 16 שנות מאסר

SHATSKY-JD01840

CONFIDENTIAL

SHATSKY-JD01841

01-16-'19 03:06 FROM-　legal affairs
01-16-'19 15:51 FROM-　ADDAMEER

2411319
022960446

T-687　P0002/0005　F-968
T-031　P0001/0004　F-059



צבא הגנה לישראל

תיק מס': 6811/16

בית משפט הצבאי ביהודה

1  בפני כב' האב"ד: סא"ל אתי אדר
2  בפני כב' השופט: רס"ן סבסטיאן אוסובסקי
3  בפני כב' השופטת: רס"ן לידור דולקמן
4
5  התביעה הצבאית
6  (באמצעות ב"כ סרן בן בר)
7
8                                    سمير علي ، ١ جد الفقير
9  הנאשם: עותיב    גבארה    אחמד    אלפקיה   6702  / שב"ס – נוכח
10 (באמצעות ב"כ עו"ד קוואסמה בשם עורך דין עארג'- נוכח)
11
12 רמ"שית: טור' אליד לביא
13 מתורגמן: סמל אימן כסראוי
14
15 תאריך הדיון:22/10/18, יום שני י"ג חשון תשע"ט
16
17 מהלך הדיון
18
19 ביהמ"ש מזהה את הנאשם.
20 הנאשם מצהיר כי מייצג אותו עו"ד קוואסמה בשם עורך דין עארג'.
21
22 צדדים: אין לנו התנגדות להחלפת חומותב.
23
24 תוב" צ: אין ראיות לעונש.
25
26
27 סנגור: אין ראיות לעונש.
28
29 תוב"צ מסכם: במסגרת הסדר הטיעון, אבקש להשית על הנאשם עונש מוסכם של 16 שנות מאסר
30 לריצוי בפועל, מאסר מותנה מרתיע לשיקול דעת ביהמ"ש על כל עבירה בה הורשע וכן קנס בסך
31 10,000 ש"ח או 10 חודשי מאסר תמורתו. הנימוקים להסדר הם עברו הנקי של הנאשם, הודאתו
32 באשמה והחיסכון חרב בזמן השיפוטי. עוד נשקל טיב חסיון שמצביע על כך שהנאשם זית במעגל
33 חיוניגו של המעורבים בעבירה. עוד לקחנו בחשבון שהוא הורשע בעבירות סיוע. שלקנו את
34 העובדה כי המפגע העיקרי הוא אחיו של הנאשם, לאור הקשר המשפחתי תהי המפגע העיקרי נהרג.
35 לשאלת ביהמ"ש נפגעי העבירה מעודכנים בפרטי ההסדר.
36
37 סנגור מסכם: אנו מצטרף לדברי חברי התובע ומבקש לכבד את ההסדר. אומנם מעשיו של הנאשם
38 עונים על ההגדרה של סיוע מבחינה משפטית, אך כאשר אנו מדברים על טיעונים לעונש בוודאי
39 שיש לשקול את טיב חסיון ועד כמה חסיון עזר להשלמת העבירה. במקרה הזה, לטעמינו, הסיוע
40 לא עזר לקדם את השלמת העבירה בצורה משמעותית. אבקש לכבד.
41
42 הנאשם בדברו האחרון: אין לי מה להוסיף.
43
44

1

CONFIDENTIAL

SHATSKY-JD01841

CONFIDENTIAL                                                                                    SHATSKY-JD01842

01-16-'19 03:06 FROM- legal affairs        2411319        T-687  P0003/0005 F-968
01-16-'19 13:31 FROM- ADUAMEEK             0229b0446       T-031  P0002/0004 F-059

תאריך: 22/10/18      בית המשפט הצבאי ביהודה      תיק מס': 6811/16

1

2   הצדדים הציגו בפנינו הסדר טיעון אשר במסגרתו מבקשים שנשות על הנאשם עונש מוסכם של 16

3   שנות מאסר לריצוי בפועל, מאסר מותנה מרתיע לשיקול דעת ביהמ"ש על כל עבירה בת חורשה וכן

4   קנס בסך 10,000 ₪ או 10 חודשי מאסר תמורתו.

5

6   הצדדים נימקו את ההסדר בעברו חנכיי של הנאשם, חודאתו באשמה וחחיסכון הרב בזמן שיפוטי.

7   עוד ציון בפנינו כי הצדדים שקלו אוג העובדה כי חלקו של הנאשם במעשה העבירה מצוי במעגל

8   החיצוני של המעורבים. עוד שקלה התבחנו כי המפגוע העינקרי חיה אחיו של הנאשם. התביעה

9   חוטיחה לשאלת בית המשפט, כי נפגעי העבירה מעודכנים בפרטי חחסדר. החגנה ביקשה לצ'ין כי

10   מעשיו של הנאשם כשנעצעמם לא תרמו בפועל תרומה משמעותית להשלמת העבירה ולביצועה.

11

12   בבואנו לשקול את חסדר הטיענו שהצגו הצדדים, נתנו דעתנו לכך שהעבירות שבהן הורשע

13   הנאשם עוסקות בסיוע לביצוע חעבירה החמורה ביותר שבספר החוקים, חיא עבירת גרימת

14   המוות בכוונה. במעשיו, אשר סיוע לגרימת מותו של הרב מרק ז"ל ולפצ'נעתם של בני משפחתו,

15   פגע הנאשם באופן קשה בשורת ערכים חברתיים מוגנים ובראשם בערך העליון של קדושת החיים,

16   כמו גם בצורך לשמור על ביטחון חציבור ושלומו. נוכח תוצאותיו הקשות של חפיגוע, הרי שמידת

17   הפגיעה בערכים אלה קשה וחמורה.

18

19   במעשיו של הנאשם חיח כדי לסייע לאחיו, מבצע חפיגוע, וחן ברמה המוראלית וחן ברמה המעשית.

20   כך, על פי עובדות כתב האישום שבו חודה הנאשם, חלח התוודע לתכניות חזוונית של אחיו בשלב

21   מוקדם למדיי, ובמשך חתקופה שעד לחוצאת חפיגוע לפועל, נענה לבקשת אחיו לרכוש עבורו ציוד

22   ולהחביא עבורו כלי נשק. לאחר ביצוע חפיגוע, סייע הנאשם לאחיו באספקת ציוד ובחובלבלו

23   למקום מסתור, ואף הגדיל לעשות והציע לו מקומות מסתור שבהר צר יתאימו לו כמקום מחבוא

24   מוצלח. המניע חאידיאולוגי שעמד בבסיס מעשיו של חמבצע העינקרי -- שמסר לנאשם כי בכוונתו

25   לבצע פיגוע ירי על מנת למנות למות "מות קדושים" -- אף חוא עומד לחובת הנאשם. לדאבון חלב, הנוק

26   שנגרם ממעשיו של הנאשם ושל מבצע חפיגוע הוא קשה, כואב ובלתי חפיך – אובדן חיי אדם.

27

28   עיון במדיניות העינשים חנוהוגה בעגירות של סיוע לגרימת מוות בכוונה מעלה כי משיקולי גמול,

29   הוקמת המעשים וחוצרך בחגנה על שלום חצינור, מוטלים בעבירות אלה עונשי מאסר חמורים

30   ומרתעיים, לצד עונשי מאסר מותנים. בית המשפט הצבאי לערעורים נדרש בעבר למדיניות

31   העינשה בעבירה זו ובקבע כי:

32

33   "... חפסיקה באזור ראתח לנכון לקבוע מדרג בעבירות הסיוע לגרימת

34   מוות בכוונה, ובעונשים חראויים לחן. חעונשים מדורגים לפי מידת

35   מעורבותם של הנאשם במעשים שגרמו למוות, ולפי מספר הקורבנות.

36   חעונשים יכולים אפוא לנוע בין שנות מאסר ספורות, לבין מאסר

37   עולם... בסוגיית מדרג העונשים של המסייעים לרצח חולכת מערכת

38   המשפט באזור בדרכה של חפסיקה בישראל, כיוון שחמדנבר במעשית

39   משפט ומוג, בערכים דומים, ובכללי ענישה דומים למעשים בעלי

3

CONFIDENTIAL

SHATSKY-JD01843

```
01-16-'19 03:07 FROM-  legal affairs          2411319        T-687  P0004/0005 F-968
                       ADAWEEK                 072480446      I-031  P0003/0004 F-059
```

תאריך: 22/10/18                    בית המשפט הצבאי ביהודה                    תיק מס': 6811/16

1  בפני כב' האב"ד: סא"ל אתי אדר
2  בפני כב' השופט: רס"ן סבסטיאן אוסובסקי
3  בפני כב' השופט: רס"ן לידור דרכמן
4
5  התביעה הצבאית
6  (באמצעות ב"כ סרן צח בר)
7                                    נגד
8  הנאשם: צוחיב    גבארה    אחמד    אלפקיה    6702 Redacted    / שב"ס - נוכח
9  (באמצעות ב"כ עו"ד קוסומן בשם עורך דין עארני- נוכח)
10
11
12
13
14    <u>ג ז ר - ד י ן</u>

הנאשם הורשע על פי הודאתו במסגרת הסדר טיעון, בשורה עבירות חמורות ובראשן בכך שסייע
לגרימת מוות בכוונה של הרב מיכאל מרק ז"יל ולניסיון לגרום למותם של רעייתו ושני ילדיו.

על פי כתב האישום שבו הודה הנאשם, במהלך חודש מאי 2016 סיפר מוחמד פקייה, אחיו של
הנאשם, כי בכוונתו לבצע פיגוע. מוחמד פקייה הציג לנאשם אקדח ורובה קלצ'ינקוב וביקש את
סיועו בשמירת כלי הנשק והחבאתם בביתו. הנאשם נענה בחיוב לבקשת אחיו והחביא את כלי
הנשק בביתו למשך תקופה. כעשרה ימים עובר למועד הפיגוע, רכב הנאשם עבור אחיו וכלכשתו
מדי צבא של צה"ל, עימם נהג מוחמד פקייה להיכנס לישׁובים ישראליים ולאסוף מודיעין לקראת
הפיגוע. ביום הפיגוע, ליווה הנאשם את אחיו לרכבו וחביא לו, לבקשתו, שקית ובה מגני מרפקים.
באותו מעמד, הבחין הנאשם כי לאחיו לוחיות זיהוי של כלי רכב ישראליים, בום עשה האחרון
שימוש לקראת הפיגוע על מנת שלא לעורר חשד. ביום 1.7.2016 יצא מוחמד פקייה בצוותא עם
מחמד אלעמיראת לעבר כביש 60, שם ביצעו פיגוע ירי, במהלכו ירה מוחמד פקייה 25-כ כדורים
לעבר כלי רכב ישראלי אשר התהפך על יושביו. בפיגוע זה מצא את מותו הרב מיכאל מרק ז"יל
ונפצעו שאר יושבי הרכב, חוה מרק וחקטיניים ת' מרק ו-פי מרק.

באותו יום לאחר הפיגוע, סיפר מוחמד פקייה לנאשם כי ביצע את פיגוע חירי כאמור. מוחמד
פקייה ביקש מהנאשם לגשת לביתו ולהביא את,תיקו והנאשם עשה כן. מוחמד פקייה הודיע כי
בכוונתו להסתתר על מנת לחמוק מכוחות הביטחון ולפיכך, נטל הנאשם את מפתחות רכבו ונתנם
לאחיו, על מנת לטיווי לו לגרום מהאזור כשברשותו תיק ובו בגדיו ונשקו. בהמשך, הציע הנאשם
לאחיו לחהביא את חפציו בנית נטוש נטוש ונענה לבקשת האחרון להסיעו לחורה לכפר. כמו כן, הנאשם
רכש עבור אחיו מזון ואף הגיע לו ללון בביתו, אולם האחרון סירב מששש כי ייעצר.

בגין תשתית עובדתית זו, הורשע הנאשם בעבירות של סיוע לגרימת מוות בכוונה; בשלושה פרטי
אישום של סיוע לניסיון לגרימת מוות בכוונה ובעבירה של נשיאת וחזקת נשק. בנוסף, הורשע
הנאשם על פי הודאתו בעבירה בעבירה של חברות ופעילות בהתאחדות בלתי מותרת, בגין חברותו בחוליית
צבאית מטעם ארגון החמאס בתקופה שתחילתה משלהי שנת 2015 ועד למעצרו.

2

SHATSKY-JD01843

CONFIDENTIAL

SHATSKY-JD01844

01-16-'19 03:07 FROM- legal affairs   2411319   T-687 P0005/0005 F-968

תיק מס': 6811/16 | בית המשפט הצבאי ביהודה | תאריך: 22/10/18

1 חומרה דומה. ואכן, בית המשפט הצבאי לערעורים לא מיהר לגזור
2 מאסרי עולם בעבירות של סיוע לגרימת מוות בכוונה, אלא יצר מדרג
3 עונשים... ניתן למצוא בפסיקת האזור מנעד רחב של רמות ענישה,
4 משנות מאסר ספורות ועד מאסר עולם" (תיק 1342/03 התביעה
5 הצבאית נ' איאד עביאת (פורסם בנבו, 28.2.2011)).

8 ואכן, מנעד הענישה בעבירות אלה רחב, בהתאם לטיב חסיוע ומידת קרבת הנאשם למעגל הפנימי
9 של מבצעי העבירה. העונש ההולם נקבע, אפוא, על פי נסיבותיו המיוחדות של כל מקרה ומקרה
10 ובהתאמה להיקף המעורבות בתכנון העבירה ובביצועה, באופן שבו יישמר מדרג סביר של ענישה
11 בין המעורבים השונים.

13 בבואנו לבחון את הסדר הטיעון שבו נקשרו הצדדים, נתנו דעתנו לחומרת העבירות שהנאשם סייע
14 לביצוען ולתוצאותן הקשה שהביאה לפגיעה בחיי אדם ולפצעיהם של נוספים מחד גיסא, ומאידך
15 גיסא, נתנו דעתנו לכך שהנאשם מצוי במעגל חיצוני של המעורבים בעבירה ולכך שחלק
16 מהמעשים שבהם הורשע, נוגעים לסיוע לאחיו המבוקש, לאחר ביצוע העבירה.

18 בנסיבות אלה, מצאנו כי הסדר המוצע מצוי במותחם העונש ההולם ועל כן החלטנו שלא לסטות
19 ממנו.

21 משכך, אנו גוזרים על הנאשם את העונשים הבאים:

23 א. 16 שנות מאסר לריצוי בפועל מיום מעצרו.
24 ב. שלוש (3) שנות מאסר על תנאי והתנאי הוא שבמשך חמש (5) שנים מיום שחרורו לא
25 יעבור הנאשם עבירה שעניינה גרימת מוות בכוונה, ניסיון לבצע עבירה כאמור או סיוע
26 לביצוע עבירה כאמור או לניסיון לבצעה.
27 ג. 18 חודשי מאסר על תנאי והתנאי הוא שבמשך 5 שנים מיום שחרורו לא יעבור הנאשם
28 עבירה שעניינה חברות ופעילות בהתאחדות בלתי מותרת או כל עבירה שיש בה יסוד של
29 עיסוק באמל"ח.
30 ד. קנס כספי בסך 10,000ש"ח או 10 חודשי מאסר תמורתו. הקנס ישולם עד למועד שחרורו של
31 הנאשם מן המאסר וכתנאי לו. מס' שובר: 0018113637.

34 זכות ערעור תוך 30 יום.
35 ניתן והודע היום, 22/10/18, בפומבי ובמעמד הצדדים.

שופט            אב"ד            שופטת

4

CONFIDENTIAL

SHATSKY-JD01847



CONFIDENTIAL

SHATSKY-JD01847